WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007
Richard P. Krasnow, Esq.
Christopher J. Marcus, Esq.

Attorneys for Debtors
and Debtors in Possession

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

```
-------------------------------------------------------------x
                                    :
In re                               :        Chapter 11 Case No.
                                    :
LEXINGTON PRECISION CORP., et al.,  :        08- _____ (   )
                                    :
        Debtors.                    :        (Jointly Administered)
                                    :
-------------------------------------------------------------x
```

**DEBTORS' MOTION PURSUANT TO SECTIONS 105(a), 345(b), 363(c) AND 364(a) OF THE BANKRUPTCY CODE FOR (A) AUTHORIZATION TO (i) CONTINUE USING EXISTING CENTRALIZED CASH MANAGEMENT SYSTEM, (ii) IMPLEMENT AN AUTOMATIC TRANSFER OF LOCKBOX FUNDS TO THE MASTER OPERATING ACCOUNT, AND (iii) MAINTAIN EXISTING BANK ACCOUNTS AND BUSINESS FORMS AND (B) AN EXTENSION OF TIME TO COMPLY WITH SECTION 345(b) OF THE BANKRUPTCY CODE**

TO THE HONORABLE UNITED STATES BANKRUPTCY JUDGE:

Lexington Precision Corporation ("Lexington Precision") and Lexington Rubber Group, Inc. ("Lexington Rubber Group" and, together with Lexington Precision, "Lexington" or the "Debtors"), as debtors and debtors in possession, respectfully represent:

<u>Background</u>

1.      On the date hereof (the "Commencement Date"), the Debtors each commenced with this Court a voluntary case under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code"). The Debtors are authorized to continue to operate their

businesses and manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

2.          Contemporaneously herewith, the Debtors filed a motion seeking joint administration of their chapter 11 cases pursuant to Rule 1015(b) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").

### Lexington's Businesses

3.          Lexington manufactures large volumes of high-quality rubber and metal components at competitive prices for use primarily in automobiles and medical devices. Lexington operates through two operating segments—the Rubber Group and the Metals Group. Lexington's components are generally sold to other manufacturers.

4.          Lexington is one of North America's largest manufacturers of rubber components for the automotive industry.  The Rubber Group's principal products are connector seals used in primary wire harnesses and insulators for ignition wire sets.  The Rubber Group also manufactures and sells rubber components used in a variety of medical devices, including drug delivery systems, syringes, laparoscopic instruments, and catheters, which are sold to some of the world's largest medical device manufacturers.

5.          The Metals Group manufactures high-volume aluminum, brass, steel, and stainless steel components machined from bars, forgings, and cold-headed blanks primarily for manufacturers within the automotive industry.  These components are used in many applications, including heating and cooling systems, airbag systems, solenoids, switches, and valves.

6.          Lexington is headquartered in New York, New York, and maintains manufacturing plants in New York, Georgia, Ohio, and South Carolina.  As of February 29, 2008, Lexington employed approximately 651 permanent and 22 temporary employees, of which

134 are salaried employees and 517 are hourly employees.  In 2007, Rubber Group net sales totaled $74.5 million and Metals Group net sales totaled $13.8 million.  As of December 31, 2007, Lexington's consolidated unaudited financial statements reflected assets totaling approximately $52.6 million, and current liabilities totaling approximately $88.5 million. Notwithstanding the Debtors' negative "book net worth" calculated in accordance with generally accepted accounting principles, the Debtors have received a number of offers for all or portions of the assets and business of the Lexington Rubber Group, the largest of the Debtors' operations and the generator of the preponderance of the Debtors' sales and earnings, each of which clearly indicates that the value of the Debtors' assets far exceeds the Debtors' liabilities. Consequently, the Debtors believe that they are solvent and that the equity securities of Lexington Precision have significant value.

## Jurisdiction and Venue

7.      This Court has jurisdiction to consider this matter pursuant to 28 U.S.C. §§ 157 and 1334.  This is a core proceeding pursuant to 28 U.S.C. § 157(b). Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

## Relief Requested

8.      To efficiently and seamlessly manage their businesses, the Debtors utilize a centralized cash management system (the "Cash Management System") to collect and transfer the funds generated by the collective operations of the Debtors and disburse funds to satisfy their obligations.  The Cash Management System facilitates the Debtors' cash monitoring, forecasting, and reporting, and enables the Debtors to maintain control over the administration of their bank accounts (the "Bank Accounts") located at the banks (the "Banks") listed on Exhibit A annexed hereto.

9.      By this Motion, pursuant to sections 105(a), 345(b), 363(c), and 364(a) of the Bankruptcy Code, the Debtors request (i) authority to continue to operate the Cash Management System on a modified basis to effectuate their use of their prepetition lenders' cash collateral, and as may be necessary or appropriate in connection with the Debtors' proposed postpetition financing agreement, (ii) an extension of time to comply with section 345(b) of the Bankruptcy Code, and pending such compliance or other agreement of the Office of the United States Trustee for the Southern District of New York (the "U.S. Trustee"), to maintain existing Bank Accounts, and (iii) authority to maintain existing business forms.

## I.

### The Debtors' Corporate Group

10.     The Debtors are two affiliated legal entities comprised of separate divisions, which are organized along product lines (the "Divisions").  Each Division operates as a separate organization within the Debtors' corporate group.  Below is a corporate chart depicting the Debtors and their Divisions.



11.     Each Division maintains its own customer base and back-office operations.  In its daily operations, each Division enters into its own contracts, invoices its customers independently from the other Divisions, and is invoiced by its suppliers independently from the other Divisions.

## II.

## The Cash Management System

12.     The Debtors are party, among other things, to a Credit and Security Agreement, dated May 31, 2006 (the "Prepetition Credit Facility") with CapitalSource Finance LLC ("CapitalSource") and Webster Business Credit Corporation ("Webster") (and together with CapitalSource, the "Prepetition Secured Lenders") pursuant to which the Prepetition Secured Lenders provided the Debtors with a revolving line of credit (the "Revolver") and a term loan to fund their operations.

13.     Prior to the Commencement Date, the Debtors' ability to borrow funds under the Revolver was subject to certain availability formulas based on the level of the Debtors' accounts receivable and inventories.  On a daily basis, the Debtors drew against the line of credit to pay their payables, cover wire transfers, and meet other day-to-day cash needs.  The Prepetition Secured Lenders, in turn, used collections on the Debtors' receivables to pay down the Revolver.

14.     In the ordinary course of business prior to the Commencement Date, the Debtors used the Cash Management System, which is similar to those utilized by other large companies, to efficiently collect, transfer, and distribute funds generated by the Debtors' business operations.  The Debtors then accurately recorded such collections, transfers, and

disbursements as they were made.  The components of the Cash Management System are

organized around three principal functions: cash collection, concentration, and disbursements.

**A.**     **Cash Collection and Concentration**

15.     Each Division maintains a lockbox account (collectively, the "Individual

Lockboxes") at FirstMerit Bank N.A., Akron, Ohio ("FirstMerit"), for collecting its accounts

receivable from customers.  On a daily basis, funds received into the Individual Lockboxes are

automatically swept into a consolidation account maintained at FirstMerit in the name of

Lexington Precision (the "Master Lockbox Account" and together with the Individual

Lockboxes, the "Lockboxes").  In accordance with the terms of a blocked account agreement

between the Prepetition Secured Lenders and FirstMerit, the funds in the Master Lockbox

Account are automatically wired daily to the Prepetition Secured Lenders.  The Prepetition

Secured Lenders then use these funds to repay borrowings under the Revolver, pursuant to the

terms of the Prepetition Credit Facility.  Only the Prepetition Secured Lenders are able to access

the funds in the Lockboxes.

**B.**     **Disbursements**

16.     The Debtors maintain a master operating account in the name of

Lexington Precision (the "Master Operating Account") at FirstMerit.  For intercompany and

interdivision bookkeeping purposes, each of the six divisions maintains a sub-account at

FirstMerit.  There are also separate sub-accounts for the corporate office, flexible spending, and

self-insured medical programs (collectively with the individual divisions' sub-accounts, the

"Individual Operating Accounts").

17.     As described above, each Division operates as its own business.  Thus,

with respect to cash disbursements, each Division receives billings directly from its suppliers and

pays approved billings by check through its Individual Operating Account.  Medical insurance
and flexible spending claims and expenses are also paid from the applicable Individual Operating
Account.  As checks written against the Individual Operating Accounts are presented to
FirstMerit for payment, they are paid with funds in the Master Operating Account, but credited
against the Individual Operating Accounts.  Additionally, from time to time, in the ordinary
course of business, the Debtors make intercompany and interdivision transfers of funds for cash
management purposes.  On a daily basis, Lexington calculates the funds needed to cover cleared
checks, wire transfers, and other charges from all of the Individual Operating Accounts and
notifies the Prepetition Secured Lenders of the amount of funds that would be necessary to cover
such charges.  The Prepetition Secured Lenders, subject to availability would wire the requested
funds to the Master Operating Account under the terms of the Revolver.

**III.**

**Continuation of the Debtors' Centralized
Cash Management System, as Modified, Is in the Best
<u>Interests of the Debtors, Their Estates, and All Parties in Interest</u>**

18.     The Debtors' Cash Management System constitutes an ordinary course,
essential business practice providing significant benefits to the Debtors including, <u>inter</u> <u>alia</u>, the
ability to (i) control corporate funds, (ii) ensure the availability of funds when necessary, and (iii)
reduce costs and administrative expenses by facilitating the movement of funds and the
development of more timely and accurate account balance information.  Any disruption of the
Cash Management System could have a severe and adverse impact upon the Debtors'
reorganization efforts.

19.     Because, however, the Debtors do not have access to any of the
Lockboxes, they would not be able to access funds that exist in the Lockboxes today or funds
that are received into the Lockboxes after the Commencement Date.  Therefore, in connection

with the Debtors' proposed use of the Prepetition Secured Lenders' cash collateral, the Debtors

request that the Court authorize and direct FirstMerit to commence the automatic transfer of all

available funds from the Lockboxes to the Master Operating Account on a daily basis. The

Debtors further request that the order provide that FirstMerit not have any liability to any party

for its compliance therewith.

20.     The automatic transfer of cash collateral is necessary to implement the

relief requested in the Debtors' cash collateral/postpetition financing motion and will not

prejudice the Prepetition Secured Lenders, who have consented to the Debtors' use of cash

collateral subject to certain terms and conditions, all as described in said motion and provided for

in the proposed order attached thereto. Section 362 of the Bankruptcy Code prohibits the

Prepetition Secured Lenders from accessing the funds in the Lockboxes and applying such funds

to repay the Revolver. Moreover, the Prepetition Secured Lenders are currently oversecured, and

the requested cash collateral/postpetition financing motion, if granted, will provide the

Prepetition Secured Lenders with bargained-for adequate protection for the Debtors' use of such

cash collateral. Finally, the Debtors will be subject to various restrictions on the use of cash

collateral, as set forth in the budget agreed to by the Prepetition Secured Lenders.

21.     The Debtors will maintain their books and records relating to the Cash

Management System to the same extent the books and records were maintained before the

Commencement Date. The Debtors do not intend to "freeze" any intercompany balances that

existed as of the Commencement Date, and will continue to maintain all receipts and

disbursements and records of all transfers within the Cash Management System utilized

postpetition. In this way, all transfers and transactions will be properly documented, and

accurate intercompany balances will be maintained. As a result, the Debtors will be able to

accurately document and record the transactions occurring within the Cash Management System,

including intercompany and interdivision transfers, for the benefit of all parties in interest.

22.     Section 363(c)(1) of the Bankruptcy Code authorizes the debtor in

possession to "use property of the estate in the ordinary course of business without notice or a

hearing." 11 U.S.C. § 363(c)(1).  The purpose of section 363(c)(1) of the Bankruptcy Code is to

provide a debtor in possession with the flexibility to engage in the ordinary course transactions

required to operate its business without unneeded oversight by its creditors or the court.  Med.

Malpractice Ins. Ass'n v. Hirsch (In re Lavigne), 114 F.3d 379, 384 (2d Cir. 1997); In re Enron

Corp., No. 01-16034 (ALG), 2003 WL 1562202, at *15 (Bankr. S.D.N.Y. Mar. 21, 2003);

Chaney v. Official Comm. of Unsecured Creditors of Crystal Apparel, Inc. (In re Crystal

Apparel, Inc.), 207 B.R. 406, 409 (S.D.N.Y. 1997).  Included within the purview of section

363(c) is a debtor's ability to continue the "routine transactions" necessitated by a debtor's cash

management system.  Amdura Nat'l Distrib. Co. v. Amdura Corp. (In re Amdura Corp.), 75 F.3d

1447, 1453 (10th Cir. 1996).  Accordingly, the Debtors seek authority under section 363(c)(1) of

the Bankruptcy Code to continue the collection, concentration, and disbursement, including

intercompany and interdivision transfers, of cash pursuant to their Cash Management System

described above.

23.     The Bankruptcy Code also provides a debtor in possession the freedom to

obtain unsecured credit and incur unsecured debt in the ordinary course of business without

notice and hearing.  11 U.S.C. § 364(a); see, e.g., In re Amdura Corp., 75 F.3d at 1453 (10th Cir.

1996); LNC Inv., Inc. v. First Fidelity Bank, 247 B.R. 38, 45 (S.D.N.Y. 2000); Mulligan v.

Sobiech, 131 B.R. 917, 921 (S.D.N.Y. 1991).  The Debtors, therefore, seek authorization, to the

extent necessary, to obtain unsecured credit and incur unsecured debt in the ordinary operation of

their Cash Management System.

24.     The Court may exercise its equitable powers to grant the relief requested

herein.  Section 105(a) of the Bankruptcy Code empowers the Court to "issue any order, process,

or judgment that is necessary to carry out the provisions of this title."  11 U.S.C. § 105(a).

Continuing the Cash Management System is vital to the efficient and economic administration of

these chapter 11 cases, and the automatic transfers are necessary to allow meaningful use of the

Cash Management System and to effectuate the relief requested in the Cash Collateral Motion.

Therefore, it is within the Court's equitable power under section 105(a) to approve the continued

use of the Cash Management System, as modified herein.

25.     These procedures are similar to those employed by comparable corporate

enterprises.  Moreover, the relief requested herein is routinely granted in other chapter 11 cases.

See, e.g., Silicon Graphics, Inc., et al., Case No. 06-10977 (BRL) (Bankr. S.D.N.Y. May 10,

2006) [Doc. No. 47], (Bankr. S.D.N.Y. July 19, 2006) [Doc. No. 375]; Atkins Nutritionals, Inc.,

et al., Case No. 05-15913 (ALG) (Bankr. S.D.N.Y. Aug. 1, 2005) [Doc. No. 36]; In re Footstar,

Inc. et al., Case No. 04-22350 (ASH) (Bankr. S.D.N.Y. Mar. 3, 2004) [Doc. No. 43], (Bankr.

S.D.N.Y. Mar. 31, 2004) [Doc. No. 250]; and In re Loral Space & Commc'ns LTD., et al. Case

No. 03-41710 (RDD) (Bankr. S.D.N.Y. July 16, 2003) [Doc. No. 26].  Similar authorization is

appropriate in these chapter 11 cases.

## IV.

## Section 345(b) of the Bankruptcy Code

26.     As a result of the automatic transfers to the Master Operating Account and

the Debtors' borrowings under their postpetition financing agreement, the Debtors' Bank

Accounts and the DIP Account (as defined below) are likely to contain funds in excess of the

amounts insured by the Federal Deposit Insurance Corporation (the "FDIC").  Section 345 of the

Bankruptcy Code governs a debtor's cash deposits during a chapter 11 case and authorizes

deposits of money as "will yield the maximum reasonable net return on such money, taking into

account the safety of such deposit or investment."  11 U.S.C. § 345(a).  For deposits that are not

"insured or guaranteed by the United States or by a department, agency, or instrumentality of the

United States or backed by the full faith and credit of the United States," section 345(b) requires

the estate to obtain from the entity with which the money is deposited a bond in favor of the

United States and secured by the undertaking of an adequate corporate surety, unless the Court

for cause orders otherwise.  11 U.S.C. § 345(a)-(b).  In the alternative, the estate may require the

entity to deposit governmental securities pursuant to 31 U.S.C. § 9303.  Section 9303 provides

that when a person is required by law to give a surety bond, that person, in lieu of a surety bond,

may provide a governmental obligation.  31 U.S.C. § 9303.

### A. Debtors Are in Compliance With Section 345 of the Bankruptcy Code With Respect to DIP Account

27.     By motion filed concurrently herewith, the Debtors are seeking

authorization to borrow $4,000,000 under a proposed unsecured, super-priority postpetition

financing agreement (the "DIP Loan") (with $2,000,000 sought to be borrowed on an interim

basis).  Upon the Court's approval of the DIP Loan, the Debtors intend to deposit the funds

borrowed under the DIP Loan into a new interest-bearing bank account at a bank that has been

approved by the Office of the U.S. Trustee as an authorized bank depository (the "DIP

Account").  The DIP Account will permit the Debtors to maintain books and records for the

funds borrowed under the DIP Loan that are separate from the books and records relating to the

Cash Management System and the funds governed under such system.  The Debtors request that

the Court authorize and direct financial institutions to honor the Debtors' request to open the DIP
Account.

28.     Because the DIP Account will be maintained at a bank that has been
approved by the U.S. Trustee as an authorized bank depository (an "Authorized Bank
Depository"), the Debtors believe that the proceeds from the DIP Loan (even those in excess of
the amounts insured by the FDIC) that are deposited in the DIP Account are secure.
Accordingly, the Debtors believe that with respect to the DIP Account, they are in compliance
with section 345 of the Bankruptcy Code.

**B.**     **To the Extent Necessary, the Debtors Seek a 45-Day**
       **Extension to Come Into Compliance with Section 345**
       **of the Bankruptcy Code With Respect to Bank Accounts**

29.     Although the Debtors' Bank Accounts are at FirstMerit, which is not
currently an Authorized Bank Depository, the Debtors believe that to the extent the cash in the
Bank Accounts exceeds the amounts insured by the FDIC, such amounts will be secure.  Among
other considerations, FirstMerit is a highly rated and secure federally chartered bank subject to
supervision by federal banking regulators, and the Debtors retain the right to remove funds held
at FirstMerit.  Nonetheless, the Debtors propose to engage the Office of the U.S. Trustee in
discussions to determine what modifications to the Bank Accounts, if any, would be appropriate
under the circumstances.

30.     Accordingly, the Debtors request a 45-day extension (or such additional
time as the U.S. Trustee may agree to) of the time period in which to either come into
compliance with section 345(b) of the Bankruptcy Code or to make other arrangements that
would be acceptable to the U.S. Trustee.  The Debtors believe that the benefits of the requested

extension far outweigh any harm to the estates.  See generally In re Serv. Merchandise Co., Inc.,

240 B.R. 894 (Bankr. M.D. Tenn. 1999).

C.    **The Debtors Seek Authority to Modify the
Cash Management System to the Extent Necessary**

31.    If pursuant to the foregoing discussions with the U.S. Trustee or the

implementation of the Investment Guidelines (as defined in the Investment Guidelines Motion)[1]

it shall become necessary to modify the Cash Management System, the Debtors request authority

to make such modifications to the Cash Management System.  The Debtors anticipate that the

modifications to the Cash Management System may include, without limitation, the opening of

new bank or investment accounts.

32.    The Debtors request that the Court authorize and direct financial

institutions to honor the Debtors' requests to open or close, as the case may be, the Bank

Accounts or additional bank or investment accounts as may be necessary in connection with the

foregoing.

## V.

### Maintenance of the Debtors' Existing Bank
### Accounts and Business Forms Is Warranted

33.    As part of the Cash Management System, the Debtors maintain four (4)

Lockbox Accounts and nine (9) Individual Operating Accounts with the financial institutions

identified on Exhibit A annexed hereto.  The Debtors routinely deposit and withdraw funds from

the Bank Accounts by checks, wire transfers, and automated clearinghouse transfers.

---

[1] Contemporaneously herewith, the Debtors filed a Motion Pursuant to Sections 105(a), 345(b), and 363(c) of the Bankruptcy Code for an Interim Order (I) Authorizing the Implementation of Investment Guidelines and (II) Scheduling a Hearing to Consider Such Relief on a Final and Permanent Basis (the "Investment Guidelines Motion").

34.     Ordinarily the U.S Trustee would require, as of the Commencement Date, the closure of the Debtors' prepetition bank accounts, the opening of new accounts, and the immediate printing of new checks with a "Debtor in Possession" designation on them, as set forth in the "Operating Guidelines and Financial Reporting Requirements."  The Debtors believe, however, that their transition to chapter 11 will be smoother and more orderly, and disruption and harm to their Cash Management System will be minimized, if the Bank Accounts are continued following the commencement of these cases with the same account numbers; provided, however, that checks issued or dated prior to the Commencement Date will not be honored absent a prior order of the Court.

35.     Unless otherwise ordered by this Court, no Bank shall honor or pay any check issued on account of a prepetition claim.  The Banks may honor any checks issued on account of prepetition claims where this Court has specifically authorized such checks to be honored.  Furthermore, notwithstanding anything to the contrary in any other "first day" order or other order of this Court, the Debtors request the Banks be authorized to accept and honor all representations from the Debtors as to which checks should be honored or dishonored consistent with any order(s) of this Court, whether or not the checks are dated prior to, on, or subsequent to the Commencement Date.  The Banks shall not be liable to any party for following the Debtors' instructions or representations regarding which checks should be honored or for implementing the automatic transfer of funds from the Lockbox Accounts to the Master Operating Account.

36.     By preserving business continuity and avoiding disruption and delay to the Debtors' disbursement obligations, including payroll, that would necessarily result from closing the Bank Accounts and opening new accounts, all parties in interest, including employees,

vendors, and customers, will be best-served.  The confusion that would otherwise result, absent

the relief requested herein, would ill-serve the Debtors' rehabilitative efforts.

37.    Accordingly, the Debtors respectfully request authority to maintain the

Bank Accounts in the ordinary course of business, to continue utilizing the Cash Management

System to manage cash in a manner consistent with prepetition practices, and to pay any ordinary

course bank fees that may be incurred in connection with the Bank Accounts, the DIP Account

or any other new bank account that may be opened pursuant to an order of this Court following

the Commencement Date.

38.    In addition, to minimize expenses, the Debtors further request they be

authorized to continue to use their correspondence and business forms, including, but not limited

to, purchase orders, multi-copy checks, letterhead, envelopes, promotional materials, and other

business forms (collectively, the "Business Forms"), substantially in the forms existing

immediately before the Commencement Date, without reference to their status as debtors in

possession, provided, however, that the Debtors shall commence marking "Debtor in Possession"

and the chapter 11 case number under which these cases are being jointly administered on their

existing check stock, business stock, and wire transfer instructions instead of having new stock

printed with such marking.  If and when the Debtors requires new stock, they shall print "Debtor

in Possession" and the chapter 11 case number under which these cases are being jointly

administered on the stock.

39.    If the Debtors are not permitted to maintain and utilize their current Bank

Accounts and their existing Business Forms, the resultant prejudice will include significant (i)

disruption to the Debtors' ordinary financial affairs and business operations, (ii) delay in the

administration of the Debtors' estates, and (iii) cost to the estates to set up new systems, open new accounts, print new business forms, and print new checks.

40.    In other chapter 11 cases, bankruptcy courts have recognized that strict enforcement of the requirement that a debtor in possession close its bank accounts does not serve the rehabilitative process of chapter 11.  Accordingly, these courts have waived such requirements and replaced them with alternative procedures similar to those proposed here.  See e.g., Silicon Graphics, Inc., et al., Case No. 06-10977 (BRL) (Bankr. S.D.N.Y. May 10, 2006) [Doc. No. 47], (Bankr. S.D.N.Y. July 19, 2006) [Doc. No. 375]; Atkins Nutritionals, Inc., et al., Case No. 05-15913 (ALG) (Bankr. S.D.N.Y. Aug. 1, 2005) [Doc. No. 36]; In re Footstar, Inc. et al., Case No. 04-22350 (ASH) (Bankr. S.D.N.Y. Mar. 3, 2004) [Doc. No. 43], (Bankr. S.D.N.Y. Mar. 31, 2004) [Doc. No. 250]; and In re Loral Space & Commc'ns LTD., et al. Case No. 03-41710 (RDD) (Bankr. S.D.N.Y. July 16, 2003) [Doc. No. 26].  Similar authorization is appropriate in these chapter 11 cases.

## **Memorandum of Law**

41.    The Debtors submit that the relevant authorities are set forth herein, and accordingly, that the requirement contained in Local Bankruptcy Rule 9013-1(b) for the filing of a separate memorandum in support of the Motion is satisfied.

## **Notice**

42.    No trustee, examiner, or statutory creditors' committee has been appointed in these chapter 11 cases.  Notice of this Motion has been provided to (i) the U.S. Trustee, (ii) the attorneys for the agents for the Debtors' prepetition lenders, (iii) the attorneys for the Debtors' proposed postpetition lenders, (iv) the attorneys for the ad hoc committee of noteholders, and

(v) the holders of the 30 largest unsecured claims against the Debtors (on a consolidated basis).

The Debtors submit that no other or further notice need be provided.

43.     No previous request for the relief sought herein has been made to this or

any other Court.

WHEREFORE, the Debtors respectfully request entry of an order granting the

relief requested herein and such other and further relief as is just.

Dated: April 1, 2008
       New York, New York

/s/ Richard P. Krasnow
Richard P. Krasnow, Esq.
Christopher J. Marcus, Esq.

WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York  10153
Telephone:   (212) 310-8000
Facsimile:   (212) 310-8007

Attorneys for Debtors
and Debtors in Possession

## EXHIBIT A

### BANK ACCOUNTS

### DISBURSEMENT ACCOUNTS

| Bank Name and Address | Account Number |
|---|---|
| FirstMerit Bank N.A. | 5999000546 |
| 295 FirstMerit Circle | 5999000554 |
| Akron, OH 44307 | 5999000562 |
| Attn: Thomas Heidy | 5999000570 |
| | 5999000588 |
| | 5999000596 |
| | 5999000619 |
| | 5999000627 |
| | 5999000855 |

### MASTER OPERATING (DISBURSEMENT) ACCOUNT

| Bank Name and Address | Account Number |
|---|---|
| FirstMerit Bank N.A. | 5923007871 |
| 295 FirstMerit Circle, | |
| Akron, Ohio 44307 | |
| Attn: Thomas Heidy | |

### INDIVIDUAL LOCKBOX ACCOUNTS

| Bank Name and Address | Account Number |
|---|---|
| FirstMerit Bank N.A. | 76074 |
| 295 FirstMerit Circle | 76075 |
| Akron, OH 44307 | 76076 |
| Attn: Thomas Heidy | 76077 |

### MASTER LOCKBOX ACCOUNT

| Bank Name and Address | Account Number |
|---|---|
| FirstMerit Bank N.A. | 5923007889 |
| 295 FirstMerit Circle | |
| Akron, OH 44307 | |
| Attn: Thomas Heidy | |

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
------------------------------------------------------------------x
                                              :
In re                                         :        Chapter 11 Case No.
                                              :
**LEXINGTON PRECISION CORP., et al.,**        :        08- _____ (   )
                                              :
            Debtors.                          :        (Jointly Administered)
                                              :
------------------------------------------------------------------x

**ORDER PURSUANT TO SECTIONS 105(a), 345(b), 363(c) AND 364(a) OF THE
BANKRUPTCY CODE (A) AUTHORIZING DEBTORS TO (i) CONTINUE
TO USE EXISTING CENTRALIZED CASH MANAGEMENT SYSTEM, (ii)
IMPLEMENT AN AUTOMATIC TRANSFER OF LOCKBOX FUNDS TO THE
DEBTORS' MASTER OPERATING ACCOUNT, AND (iii) MAINTAIN EXISTING
BANK ACCOUNTS AND BUSINESS FORMS; AND (B) EXTENDING THE DEBTORS'
TIME TO COMPLY WITH SECTION 345(b) OF THE BANKRUPTCY CODE**

Upon the motion, dated April 1, 2008 (the "Motion"), of Lexington Precision

Corporation and Lexington Rubber Group, Inc. as debtors and debtors in possession, (together,

the "Debtors"), for an order, pursuant to sections 105(a), 345(b), 363(c) and 364(a) of chapter 11

of title 11 of the United States Code (the "Bankruptcy Code"), (A) authorizing (i) the

continuation of the Debtors' centralized cash management system, as modified from time to time

by the Debtors (the "Cash Management System"); (ii) the implementation of an automatic

transfer of funds in the Debtors' lockbox accounts to the Debtors' master operating account; (iii)

the opening of a new bank account for the deposit of the proceeds of the Debtors' borrowings

under the postpetition financing agreement; (iv) the maintenance and utilization of existing bank

accounts (the "Bank Accounts") and business forms (the "Business Forms"); and (v)

modifications to the Cash Management System, including the closing of any existing Bank

Account(s) and the opening of any new bank accounts, as may be necessary in connection with

section 345 of the Bankruptcy Code; and (B) authorizing and directing financial institutions to

honor the Debtors' requests to open or close, as the case may be, the Bank Accounts or

additional bank or investment accounts; and (C) extending the time to comply with section

345(b) of the Bankruptcy Code, all as more fully described in the Motion; and the Court having

jurisdiction to consider the Motion and the relief requested therein in accordance with 28 U.S.C.

§§ 157 and 1334 and the Standing Order M-61 Referring to Bankruptcy Judges for the Southern

District of New York Any and All Proceedings Under Title 11, dated July 10, 1984 (Ward,

Acting C.J.); and consideration of the Motion and the relief requested therein being a core

proceeding pursuant to 28 U.S.C. § 157(b); and venue being proper before this Court pursuant to

28 U.S.C. §§ 1408 and 1409; and due and proper notice of the Motion having been provided to

(i) the United States Trustee for the Southern District of New York (the "U.S. Trustee"), (ii) the

attorneys for the agents for the Debtors' prepetition lenders, (iii) the attorneys for the Debtors'

proposed postpetition lenders, (iv) the attorneys for the ad hoc committee of noteholders, and

(v) the holders of the 30 largest unsecured claims against the Debtors (on a consolidated basis),

and it appearing that no other or further notice need be provided; and a hearing having been held

to consider the relief requested in the Motion (the "Hearing"); and the appearances of all

interested parties having been noted in the record of the Hearing; and upon the Affidavit of

Dennis J. Welhouse, pursuant to Local Bankruptcy Rule 1007-2, sworn to on April 1, 2008 (the

"Welhouse Affidavit"), the record of the Hearing, and all of the proceedings had before the

Court; and the Court having found and determined that the relief sought in the Motion is in the

best interests of the Debtors, their estates and creditors, and all parties in interest and that the

legal and factual bases set forth in the Motion establish just cause for the relief granted herein;

and after due deliberation and sufficient cause appearing therefor, it is

ORDERED that the Motion is hereby granted; and it is further

ORDERED that the Debtors are authorized and empowered, pursuant to sections 105(a) and 363(c) of the Bankruptcy Code, to continue to manage their cash pursuant to the Cash Management System maintained by the Debtors prior to the commencement of their chapter 11 cases (the "Commencement Date"), as modified by this Order, and to collect, concentrate, and disburse cash in accordance with the Cash Management System, including intercompany and interdivision transfers of funds; and it is further

ORDERED that pursuant to section 105(a) of the Bankruptcy Code, FirstMerit Bank, N.A. ("FirstMerit") is authorized and directed to commence immediately automatic transfers (the "Automatic Transfers") on a daily basis of all available funds currently in or received into its lockbox accounts maintained in the Debtors' names, account numbers 76074, 76075, 76076, 76077, and 5923007889 (the "Lockboxes"), to the Debtors' master operating account at FirstMerit Bank, N.A., account number 5923007871 (the "Master Operating Account"), without the need to comply with any lockbox or blocked account agreement or any preexisting transfer arrangement concerning said accounts; and it is further

ORDERED that FirstMerit shall have no liability to any party for the Automatic Transfers of funds from the Lockboxes to the Master Operating Account pursuant to this Order; and it is further

ORDERED that the Debtors shall maintain accurate records of all transfers within the Cash Management System so that all postpetition transfers and transactions shall be adequately and promptly documented in, and readily ascertainable from, their books and records, to the same extent maintained by the Debtors prior to the Commencement Date; and it is further

ORDERED that the Debtors are authorized to: (i) designate, maintain and continue to use any or all of their existing Bank Accounts listed on Exhibit A, annexed hereto, in

the names and with the account numbers existing immediately prior to the Commencement Date,

(ii) deposit funds in and withdraw funds from such accounts by all usual means including,

without limitation, checks, wire transfers, automated clearinghouse transfers and other debits,

(iii) pay any bank fees or charges associated with the Bank Accounts, and (iv) treat their

prepetition Bank Accounts for all purposes as debtors in possession accounts; and it is further

ORDERED that except as otherwise provided in this Order, all financial

institutions in which the Debtors maintain the Bank Accounts as of the commencement of their

chapter 11 cases are authorized and directed to continue to maintain, service, and administer such

Bank Accounts without interruption and in the usual and ordinary course, and to receive,

process, honor and pay any and all checks, drafts, wires, or other transfers by the holders or

makers thereof, as the case may be; provided, however, that nothing contained herein shall

authorize any such financial institution to honor any check, draft, wire, or other transfer issued or

dated prior to the Commencement Date, except as otherwise provided by further order of this

Court; provided, however, that any such financial institution may rely on the representations of

the Debtors with respect to whether any check, draft, wire, or other transfer drawn or issued by

the Debtors prior to the Commencement Date should be honored pursuant to an order of this

Court, and such bank shall not have any liability to any party for relying on such representation

by the Debtors as provided for herein; and it is further

ORDERED that upon the Court's entry of an interim order approving the

Debtors' request to incur postpetition financing (the "DIP Loan"), the Debtors are authorized to

open a new interest-bearing bank account (the "DIP Account") at a bank that has been approved

by the U.S. Trustee as an authorized bank depository (an "Authorized Bank Depository")

specifically for the funds borrowed under the DIP Loan; and it is further

ORDERED that the Debtors' maintenance of the DIP Account at an Authorized Bank Depository shall constitute compliance with section 345(b) of the Bankruptcy Code with respect to the DIP Account; and it is further

ORDERED that the Debtors shall have 45 days (or such additional time as the U.S. Trustee may agreed to) from the entry of this Order (the "Extension Period") to either come into compliance with section 345(b) of the Bankruptcy Code or to make such other arrangements as the U.S. Trustee may agree to; and it is further

ORDERED that within seven (7) days after the Commencement Date the Debtors shall mark "Debtor in Possession" and the chapter 11 case number under which these cases are being jointly administered on their check stock, business form stock, and wire transfer instructions and shall not be required to order new stock with such marking until they exhaust their current stock; and it is further

ORDERED that, pursuant to section 364(a) of the Bankruptcy Code, the Debtors are authorized in connection with the ordinary course of their Cash Management System to obtain unsecured credit and incur unsecured debt in the ordinary course of business without notice and a hearing; and it is further

ORDERED that the Debtors are authorized, but not directed, to pay prepetition amounts outstanding as of the Commencement Date, if any, owed to their banks as service charges for the maintenance of the Cash Management System; and it is further

ORDERED that the requirement set forth in Local Bankruptcy Rule 9013-1(b) for

the filing of a separate memorandum of law in support of the Motion is satisfied.


Dated: April ___, 2008
      New York, New York

                        _____
                         United States Bankruptcy Judge

## <u>EXHIBIT A</u>

## BANK ACCOUNTS

## DISBURSEMENT ACCOUNTS

| Bank Name and Address | Account Number |
|---|---|
| FirstMerit Bank N.A.<br>295 FirstMerit Circle<br>Akron, OH 44307<br>Attn: Thomas Heidy | 5999000546<br>5999000554<br>5999000562<br>5999000570<br>5999000588<br>5999000596<br>5999000619<br>5999000627<br>5999000855 |

## MASTER OPERATING (DISBURSEMENT) ACCOUNT

| Bank Name and Address | Account Number |
|---|---|
| FirstMerit Bank N.A.<br>295 FirstMerit Circle,<br>Akron, Ohio 44307<br>Attn: Thomas Heidy | 5923007871 |

## INDIVIDUAL LOCKBOX ACCOUNTS

| Bank Name and Address | Account Number |
|---|---|
| FirstMerit Bank N.A.<br>295 FirstMerit Circle<br>Akron, OH 44307<br>Attn: Thomas Heidy | 76074<br>76075<br>76076<br>76077 |

## MASTER LOCKBOX ACCOUNT

| Bank Name and Address | Account Number |
|---|---|
| FirstMerit Bank N.A.<br>295 FirstMerit Circle<br>Akron, OH 44307<br>Attn: Thomas Heidy | 5923007889 |