WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007
Richard P. Krasnow, Esq.
Christopher J. Marcus, Esq.

Attorneys for Debtors
and Debtors in Possession

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---------------------------------------------------------------x
: 
**In re** : **Chapter 11 Case No.**
:
**LEXINGTON PRECISION CORP., et al.,** : 08- _____ ( )
:
Debtors. : **(Jointly Administered)**
:
---------------------------------------------------------------x

**DEBTORS' MOTION PURSUANT TO SECTIONS 105(a), 345(b), AND 363(c) OF THE BANKRUPTCY CODE FOR AN INTERIM ORDER (I) AUTHORIZING THE IMPLEMENTATION OF INVESTMENT GUIDELINES AND (II) SCHEDULING A HEARING TO CONSIDER SUCH RELIEF ON A FINAL AND PERMANENT BASIS**

TO THE HONORABLE UNITED STATES BANKRUPTCY JUDGE:

Lexington Precision Corporation ("Lexington Precision") and Lexington Rubber Group, Inc. ("Lexington Rubber Group" and, together with Lexington Precision, "Lexington" or the "Debtors"), as debtors and debtors in possession, respectfully represent:

**Background**

1.   On the date hereof (the "Commencement Date"), the Debtors each commenced with this Court a voluntary case under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code"). The Debtors are authorized to continue to operate their businesses and manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

NY2:\1858277\01\13T%T01!.DOC\26690.0008

2. Contemporaneously herewith, the Debtors filed a motion seeking joint administration of their chapter 11 cases pursuant to Rule 1015(b) of the Federal Rules of Bankruptcy Procedure (the "<u>Bankruptcy Rules</u>").

**<u>Lexington's Businesses</u>**

3. Lexington manufactures large volumes of high-quality rubber and metal components at competitive prices for use primarily in automobiles and medical devices. Lexington operates through two operating segments—the Rubber Group and the Metals Group. Lexington's components are generally sold to other manufacturers.

4. Lexington is one of North America's largest manufacturers of rubber components for the automotive industry. The Rubber Group's principal products are connector seals used in primary wire harnesses and insulators for ignition wire sets. The Rubber Group also manufactures and sells rubber components used in a variety of medical devices, including drug delivery systems, syringes, laparoscopic instruments, and catheters, which are sold to some of the world's largest medical device manufacturers.

5. The Metals Group manufactures high-volume aluminum, brass, steel, and stainless steel components machined from bars, forgings, and cold-headed blanks primarily for manufacturers within the automotive industry. These components are used in many applications, including heating and cooling systems, airbag systems, solenoids, switches, and valves.

6. Lexington is headquartered in New York, New York, and maintains manufacturing plants in New York, Georgia, Ohio, and South Carolina. As of December 31, 2007, Lexington employed approximately 651 permanent and 22 temporary employees, of which 134 are salaried employees and 517 are hourly employees. In 2007, Rubber Group net sales totaled $74.5 million and Metals Group net sales totaled $13.8 million. As of December 31,

2007, Lexington's consolidated unaudited financial statements reflected assets totaling approximately $52.6 million, and current liabilities totaling approximately $88.5 million. Notwithstanding the Debtors' negative "book net worth" calculated in accordance with generally accepted accounting principles, the Debtors have received a number of offers for all or portions of the assets and business of the Lexington Rubber Group, the largest of the Debtors' operations and the generator of the preponderance of the Debtors' sales and earnings, each of which clearly indicates that the value of the Debtors' assets far exceeds the Debtors' liabilities. Consequently, the Debtors believe that they are solvent and that the equity securities of Lexington Precision have significant value.

## Jurisdiction and Venue

7. This Court has jurisdiction to consider this matter pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b). Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

## Relief Requested

8. By this Motion, pursuant to sections 105(a), 345(b), and 363(c) of the Bankruptcy Code, the Debtors request entry of an interim order (a) authorizing the proposed investment guidelines annexed hereto as Exhibit A for any funds the Debtors deposit in the bank accounts the Court may approve under Debtors' motion, dated April 1, 2008 (the "Cash Management Motion"), seeking authorization to (i) continue using existing centralized cash management system; (ii) implement an automatic transfer of lockbox funds to the master operating account; (iii) maintain existing bank accounts and business forms; and (iv) an extension of time to comply with section 345(b) of the Bankruptcy Code; and (b) scheduling a hearing to consider the relief requested herein on a final and permanent basis.

**Investment Guidelines**

9.      Section 345 of the Bankruptcy Code governs a debtor's cash deposits during a chapter 11 case and authorizes deposits of money as "will yield the maximum reasonable net return on such money, taking into account the safety of such deposit or investment."  11 U.S.C. § 345(a).

10.     Under the Debtors' prepetition cash management system (the "Prepetition Cash Management System"), each of the operating divisions of the Debtors maintain a lockbox account (collectively, the "Individual Lockboxes") at FirstMerit Bank N.A., Akron, Ohio ("FirstMerit"), for collecting its accounts receivable from customers.  On a daily basis, funds received into the Individual Lockboxes are automatically swept into a consolidation account maintained at FirstMerit in the name of Lexington Precision (the "Master Lockbox Account" and together with the Individual Lockboxes, the "Lockboxes").  In accordance with the terms of a blocked account agreement between the Debtors' prepetition secured lenders (the "Prepetition Secured Lenders") and FirstMerit, the funds in the Master Lockbox Account are automatically wired daily to the Prepetition Secured Lenders.  Accordingly, under the Prepetition Cash Management System, the Debtors had no need for investment guidelines because they had no funds to invest.

11.     On the Commencement Date, the Debtors filed a motion (the "DIP Motion") seeking authorization to (i) use cash collateral, (ii) grant adequate protection, and (iii) obtain postpetition financing on an interim basis in the amount of $2,000,000 and on a final basis in the amount of $4,000,000 (the "DIP Loan").  The proceeds of the DIP Loan will then be deposited in an account (the "DIP Account") authorized by the United States Trustee.  Under the system contemplated under the Cash Management Motion, the sweeping of the funds from the

Master Lockbox Account and wiring of such funds to the Prepetition Secured Lenders will stop. Instead, such funds will be wired to the Debtors' master operating account (the "Master Operating Account"), as agreed to by the Prepetition Secured Lenders.

12. Accordingly, upon approval of the DIP Motion and Cash Management Motion, the Debtors anticipate that they will have funds in the Master Operating Account and the DIP Account and may need to implement certain investment guidelines. Section 345 of the Bankruptcy Code authorizes deposits or investments of money as "will yield the maximum reasonable net return on such money, taking into account the safety of such deposit or investment." 11 U.S.C. § 345(a). The Debtors propose to invest the cash in the Master Operating Account and the DIP Account in overnight investment accounts to generate additional income. Accordingly, the Debtors request authority to implement the investment guidelines attached hereto as Exhibit A (the "Investment Guidelines"), and to invest their cash and cash equivalents in accordance therewith.

13. The Investment Guidelines proposed by the Debtors permit investments only in (i) high quality, United States dollar-denominated money market obligations, such as money market obligations that received the highest short-term rating from at least two Nationally Recognized Statistical Rating Organizations ("NRSROs"); (ii) high quality, United States dollar-denominated fixed/variable rate longer-term obligations, such as longer-term obligations that received a long-term debt rating of better than single "A" by at least two NRSROs; and (iii) securities issued or directly and fully guaranteed or insured by United States governmental agencies. The investments permitted by the Investment Guidelines are limited to U.S. investments which will provide the greatest amount of return for the Debtors while taking into account the safety of the investments. The Investment Guidelines also limit investments in

money market funds to those funds holding assets at least 95% of which fall within the types of investments indicated above. Furthermore, the Investment Guidelines require all investments (other than investments in tax exempt obligations and money market mutual funds) to have maturities of not more than six months, and in the case of repurchase obligations seven days, from the date of acquisition. These maturity limitations further protect the Debtors' investments by insulating them from certain market fluctuations.

14. Section 345(b) requires that for deposits or investments that are not "insured or guaranteed by the United States or by a department, agency, or instrumentality of the United States or backed by the full faith and credit of the United States," the Debtors obtain from the entity with which the money is deposited or invested a bond in favor of the United States and secured by the undertaking of an adequate corporate surety, unless the Court for cause orders otherwise. In the alternative, the estate may require the entity to deposit governmental securities pursuant to 31 U.S.C. § 9303 (2000). Section 9303 provides that when a person is required by law to give a surety bond, that person, in lieu of a surety bond, may provide a governmental obligation. 31 U.S.C. § 9303 (2000).

15. Investment of cash in strict compliance with the requirements of section 345(b) of the Bankruptcy Code would, in a case such as this, be inconsistent with section 345(a), which permits a debtor in possession to make such investments of money of the estate "as will yield the maximum reasonable net return on such money." 11 U.S.C. § 345(a) 2000). Thus, in 1994, to avoid "needlessly handcuff[ing] larger, more sophisticated debtors," Congress amended section 345(b) of the Bankruptcy Code to provide that its strict investment requirements may be waived or modified if the Court so orders "for cause." 140 Cong. Rec. H 10,767 (Oct. 4, 1994), 1994 WL 545773.

16. The Debtors believe that investments made in accordance with the Investment Guidelines will provide the protection contemplated by section 345(b) of the Bankruptcy Code, notwithstanding the absence of a "corporate surety" requirement. The Investment Guidelines permit the Debtors to invest only in those investments that will provide the greatest amount of return for the Debtors while taking into account the safety of the investments. Furthermore, the Investment Guidelines limit the Debtors from investing too large a percentage of their total assets in any one issuer or in any one industry.

17. Strict compliance with the requirements of section 345 of the Bankruptcy Code would not be practical in these chapter 11 cases. As to investments in securities of private entities, any corporate surety that might be obtained to guarantee the safety of an investment would likely not have significantly greater strength than the private and public entities in which the Debtors would invest under the Investment Guidelines. Moreover, a bond secured by the undertaking of a corporate surety, if available at all, would be prohibitively expensive and could offset much of the financial gain derived from investing in private as well as federal or federally guaranteed securities. Also, the yield on investments under the Investment Guidelines will be greater than if the Debtors were restricted to direct investment solely in government securities.

18. While the Investment Guidelines do not require a corporate surety for investments, they mandate the placement of investments with financially strong entities and require ample diversification. The Debtors believe that as long as their investments are restricted in accordance with the Investment Guidelines, no corporate surety is required to afford protection to creditors.

19. Bankruptcy courts in this district have granted relief identical to that which the Debtors are seeking herein. See, e.g., Atkins Nutritionals, Inc., et al., Case No. 05-

15913 (ALG) (Bankr. S.D.N.Y. Aug. 1, 2005) [Doc. No. 37]; and In re Loral Space & Communications, et al., Case No. 03-41710 (RDD) (Bankr. S.D.N.Y. July 16, 2003) [Doc. No. 30], (Bankr. S.D.N.Y. Dec. 4, 2003) [Doc. No. 682].

20. Based on the foregoing, the Debtors believe the Investment Guidelines are reasonable and satisfy the requirements under section 345 of the Bankruptcy Code.

## Memorandum of Law

21. The Debtors submit that the relevant authorities are set forth herein, and accordingly, that the requirement contained in Local Bankruptcy Rule 9013-1(b) for the filing of a separate memorandum in support of the Motion is satisfied.

## Notice

22. No trustee, examiner, or statutory creditors' committee has been appointed in these chapter 11 cases. Notice of this Motion has been provided to (i) the United States Trustee, (ii) the attorneys for the agents for the Debtors' prepetition lenders, (iii) the attorneys for the Debtors' proposed postpetition lenders, (iv) the attorneys for the ad hoc committee of noteholders, and (v) the holders of the 30 largest unsecured claims against the Debtors (on a consolidated basis). The Debtors submit that no other or further notice need be provided.

23. No previous request for the relief sought herein has been made to this or any other Court.

WHEREFORE, the Debtors respectfully request entry of an order granting the relief requested herein and such other and further relief as is just.

Dated: April 1, 2008
New York, New York

/s/ Richard P. Krasnow
Richard P. Krasnow, Esq.
Christopher J. Marcus, Esq.

WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York  10153
Telephone:  (212) 310-8000
Facsimile:   (212) 310-8007

Attorneys for the Debtor
and the Debtor in Possession

# EXHIBIT A

# INVESTMENT GUIDELINES

The Debtors generally may invest their cash and cash equivalents in only the following U.S. investments:

(i) securities issued or directly and fully guaranteed or insured by the United States Government or any agency or instrumentality thereof having maturities of not more than six months from the date of acquisition;

(ii) time deposits and certificates of deposit of any domestic commercial bank having capital and surplus in excess of $500,000,000 the holding company of which has a commercial paper rating meeting the requirements specified in clause (iv) below having maturities of not more than six months from the date of acquisition;

(iii) repurchase obligations with a term of not more than seven days for underlying securities of the types described in clauses (i) and (ii) entered into with any bank meeting the qualifications specified in clause (ii) above;

(iv) commercial paper rated at least A-1 or the equivalent thereof by Standard & Poor's ("S&P") or P-1 or the equivalent thereof by Moody's and in either case maturing within six months after the date of acquisition;

(v) tax exempt obligations rated at least A2 or the equivalent thereof by Moody's and A or the equivalent thereof by S&P;

(vi) money market mutual funds;

(vii) commercial paper (other than commercial paper referred to in the preceding clause (iv)) rated at least A-2 or the equivalent thereof by S&P or P-2 or the equivalent thereof by Moody's in an aggregate principal amount not in excess of 25% of the liquid assets of the Debtors and in either case maturing within six months after the date of acquisition; and

(viii) money market funds at least 95% of the assets of which constitute cash equivalents of the kinds described in (i) through (vii) above.

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-------------------------------------------------------------x
                                                                    :

In re                                                  :         **Chapter 11 Case No.**

**LEXINGTON PRECISION CORP., et al.,**     :         **08- _____ ( )**

        **Debtors.**                               :         **(Jointly Administered)**

-------------------------------------------------------------x

**INTERIM ORDER PURSUANT TO SECTIONS 105(a), 345(b), AND 363(c) OF THE BANKRUPTCY CODE FOR AN INTERIM ORDER (I) AUTHORIZING THE IMPLEMENTATION OF INVESTMENT GUIDELINES AND (II) SCHEDULING A HEARING TO CONSIDER SUCH RELIEF ON A FINAL AND PERMANENT BASIS**

Upon the motion, dated April 1, 2008 (the "Motion"), of Lexington Precision Corporation and Lexington Rubber Group, Inc. as debtors and debtors in possession, (together, the "Debtors"), for an order pursuant to sections 105(a), 345(b), and 363(c) of chapter 11 of title 11 of the United States Code (the "Bankruptcy Code"), for entry of an interim order (i) authorizing the implementation of investment guidelines attached hereto as Exhibit A (the "Investment Guidelines"); and (ii) scheduling a hearing (the "Final Hearing") to consider such relief on a final and permanent basis, all as more fully described in the Motion; and the Court having jurisdiction to consider the Motion and the relief requested therein in accordance with 28 U.S.C. §§ 157 and 1334 and the Standing Order M-61 Referring to Bankruptcy Judges for the Southern District of New York Any and All Proceedings Under Title 11, dated July 10, 1984 (Ward, Acting C.J.); and consideration of the Motion and the relief requested therein being a core proceeding pursuant to 28 U.S.C. § 157(b); and venue being proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409; and due and proper notice of the Motion having been provided to (i) the United States Trustee for the Southern District of New York (the "U.S. Trustee"), (ii) the attorneys for the agents for the Debtors' prepetition lenders, (iii) the attorneys

for the Debtors' proposed postpetition lenders, (iv) the attorneys for the ad hoc committee of noteholders, and (v) the holders of the 30 largest unsecured claims against the Debtors (on a consolidated basis), and it appearing that no other or further notice need be provided; and a hearing having been held to consider the relief requested in the Motion (the "Hearing"); and the appearances of all interested parties having been noted in the record of the Hearing; and upon the Affidavit of Dennis J. Welhouse, pursuant to Local Bankruptcy Rule 1007-2, sworn to on April 1, 2008 (the "Welhouse Affidavit"), the record of the Hearing, and all of the proceedings had before the Court; and the Court having found and determined that the relief sought in the Motion is in the best interests of the Debtors, their estates and creditors, and all parties in interest and that the legal and factual bases set forth in the Motion establish just cause for the relief granted herein; and after due deliberation and sufficient cause appearing therefor, it is

ORDERED that the Motion is hereby granted on an interim basis; and it is further

ORDERED that the Debtors are authorized to implement the Investment Guidelines and invest and deposit their cash and cash equivalents in accordance therewith in addition to the investments permitted by section 345 of the Bankruptcy Code, while the Debtors operate as debtors in possession; and it is further

ORDERED that the Investment Guidelines may be amended by order of the Court from time to time upon motion by the Debtors or any party in interest; and it is further

ORDERED that the Debtors' compliance with the Investment Guidelines shall be deemed to constitute compliance with section 345 of the Bankruptcy Code, and the Debtors are relieved from the obligations under section 345(b) to obtain a bond from any entity with which money is deposited or invested in accordance with the Investment Guidelines; and it is further

ORDERED that the Final Hearing to consider entry of an order granting the relief requested in the Motion on a permanent basis shall be held on April __, 2008 at __:00 a.m. (Eastern time); and any objections to entry of such order shall be in writing, filed with the Court in accordance with General Order M-242, and served upon (i) the attorneys for the Debtors; (ii) the U.S. Trustee; (iii) the attorneys for the agents for the Debtors' prepetition lenders, (iv) the attorneys for the Debtors' proposed postpetition lenders, and (v) the attorneys for any statutory committee appointed in these cases, in each case so as to be received no later than 4:00 p.m. (Eastern Time) on April __, 2008; and it is further

ORDERED that within three business after entry of this Order, the Debtors shall serve a copy of this Order on (i) the U.S. Trustee, (ii) the attorneys for the Debtors' prepetition lenders, (iii) the attorneys for the Debtors' proposed postpetition lenders; (iv) the attorneys for the ad hoc committee of noteholders and (v) the Debtors' 30 largest unsecured creditors (on a consolidated basis); and it is further

ORDERED that the requirement set forth in Local Bankruptcy Rule 9013-1(b) for the filing of a separate memorandum of law in support of the Motion is satisfied.

Dated: April ___, 2008
      New York, New York

                                                                                                  United States Bankruptcy Judge

## EXHIBIT A

## INVESTMENT GUIDELINES

The Debtors generally may invest their cash and cash equivalents in only the following U.S. investments:

(ix) securities issued or directly and fully guaranteed or insured by the United States Government or any agency or instrumentality thereof having maturities of not more than six months from the date of acquisition;

(x) time deposits and certificates of deposit of any domestic commercial bank having capital and surplus in excess of $500,000,000 the holding company of which has a commercial paper rating meeting the requirements specified in clause (iv) below having maturities of not more than six months from the date of acquisition;

(xi) repurchase obligations with a term of not more than seven days for underlying securities of the types described in clauses (i) and (ii) entered into with any bank meeting the qualifications specified in clause (ii) above;

(xii) commercial paper rated at least A-1 or the equivalent thereof by Standard & Poor's ("S&P") or P-1 or the equivalent thereof by Moody's and in either case maturing within six months after the date of acquisition;

(xiii) tax exempt obligations rated at least A2 or the equivalent thereof by Moody's and A or the equivalent thereof by S&P;

(xiv) money market mutual funds;

(xv) commercial paper (other than commercial paper referred to in the preceding clause (iv)) rated at least A-2 or the equivalent thereof by S&P or P-2 or the equivalent thereof by Moody's in an aggregate principal amount not in excess of 25% of the liquid assets of the Debtors and in either case maturing within six months after the date of acquisition; and

(xvi) money market funds at least 95% of the assets of which constitute cash equivalents of the kinds described in (i) through (vii) above.