WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007
Richard P. Krasnow, Esq.
Christopher J. Marcus, Esq.

Attorneys for Debtors and
Debtors in Possession

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

```
------------------------------------------------------------x
                                          :
In re                                     :        Chapter 11 Case No.
                                          :
LEXINGTON PRECISION CORP., et al.,        :        08- _____ (   )
                                          :
          Debtors.                        :        (Jointly Administered)
                                          :
------------------------------------------------------------x
```

**DEBTORS' MOTION PURSUANT TO SECTIONS 105(a)**
**AND 363(b) OF THE BANKRUPTCY CODE AND BANKRUPTCY**
**RULES 6003 AND 6004 FOR AN ORDER (I) AUTHORIZING, BUT NOT**
**DIRECTING, PAYMENT OF WAGES, COMPENSATION, AND EMPLOYEE**
**BENEFITS (II) AUTHORIZING FINANCIAL INSTITUTIONS TO HONOR AND**
**PROCESS CHECKS AND TRANSFERS RELATED TO SUCH OBLIGATIONS AND**
**(III) SCHEDULING A FINAL HEARING FOR THE RELIEF SOUGHT IN THE MOTION**

TO THE HONORABLE UNITED STATES BANKRUPTCY JUDGE:

Lexington Precision Corporation ("Lexington Precision") and Lexington Rubber

Group, Inc. ("Lexington Rubber Group" and, together with Lexington Precision, "Lexington" or

the "Debtors"), as debtors and debtors in possession, respectfully represent:

**Background**

1.        On the date hereof (the "Commencement Date"), the Debtors each

commenced with this Court a voluntary case under chapter 11 of title 11 of the United States

Code (the "Bankruptcy Code"). The Debtors are authorized to continue to operate their

businesses and manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

2.       Contemporaneously herewith, the Debtors filed a motion seeking joint administration of their chapter 11 cases pursuant to Rule 1015(b) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").

### Lexington's Businesses

3.       Lexington manufactures large volumes of high-quality rubber and metal components at competitive prices for use primarily in automobiles and medical devices. Lexington operates through two operating segments—the Rubber Group and the Metals Group. Lexington's components are generally sold to other manufacturers.

4.       Lexington is one of North America's largest manufacturers of rubber components for the automotive industry.  The Rubber Group's principal products are connector seals used in primary wire harnesses and insulators for ignition wire sets.  The Rubber Group also manufactures and sells rubber components used in a variety of medical devices, including drug delivery systems, syringes, laparoscopic instruments, and catheters, which are sold to some of the world's largest medical device manufacturers.

5.       The Metals Group manufactures high-volume aluminum, brass, steel, and stainless steel components machined from bars, forgings, and cold-headed blanks primarily for manufacturers within the automotive industry.  These components are used in many applications, including heating and cooling systems, airbag systems, solenoids, switches, and valves.

6.       Lexington is headquartered in New York, New York, and maintains manufacturing plants in New York, Georgia, Ohio, and South Carolina.  As of February 29, 2008, Lexington employed approximately 651 permanent and 22 temporary employees, of which

134 are salaried employees and 517 are hourly employees.  In 2007, Rubber Group net sales

totaled $74.5 million and Metals Group net sales totaled $13.8 million.  As of December 31,

2007, Lexington's consolidated unaudited financial statements reflected assets totaling

approximately $52.6 million, and current liabilities totaling approximately $88.5 million.

Notwithstanding the Debtors' negative "book net worth" calculated in accordance with generally

accepted accounting principles, the Debtors have received a number of offers for all or portions

of the assets and business of the Lexington Rubber Group, the largest of the Debtors' operations

and the generator of the preponderance of the Debtors' sales and earnings, each of which clearly

indicates that the value of the Debtors' assets far exceeds the Debtors' liabilities. Consequently,

the Debtors believe that they are solvent and that the equity securities of Lexington Precision

have significant value.

**Jurisdiction and Venue**

7.      This Court has jurisdiction to consider this matter pursuant to 28 U.S.C.

§§ 157 and 1334.  This is a core proceeding pursuant to 28 U.S.C. § 157(b).  Venue is proper

before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

**Relief Requested**

8.      By this Motion, pursuant to sections 105(a) and 363(b) of the Bankruptcy

Code and Bankruptcy Rules 6003 and 6004, the Debtors request entry of an order (A)(i) on an

interim basis authorizing the Debtors to continue the various practices and policies in effect on

the Commencement Date and as may be modified, amended, or supplemented from time to time

in the ordinary course of business with respect their Compensation Obligations, Severance

Obligations, Employer Payroll Tax Obligations, Temporary Agency Obligations, Welfare Plan

Obligations, 401(k) Plan Obligations, Fidelity Administration Obligations, Reimbursement

Obligations, PTO Obligations, and the Flexible Spending Obligations (each as defined below and collectively, the "Employee Programs"); (ii) on an interim basis authorizing, but not directing, the Debtors to pay, in their sole discretion, all prepetition accrued and unpaid obligations relating to the Employee Programs as they come due (the "Employee Obligations"); (iii) on a final basis authorizing the continuation of the Debtors' various practices and policies in effect on the Commencement Date and as may be modified, amended, or supplemented from time to time in the ordinary course of business with respect to the Employee Programs; and (iv) on a final basis authorizing, but not directing, the Debtors to pay, in their sole discretion, all prepetition accrued and unpaid obligations relating to the Employee Obligations as they come due; (B) authorizing applicable banks and other financial institutions (collectively, the "Banks") to receive, process, and pay any and all checks, electronic fund transfers, and automatic payroll transfers drawn on the Debtors' payroll and general disbursement accounts (collectively, the "Disbursement Accounts"), to the extent that such checks or transfers relate to any of the prepetition Employee Obligations; and (C) schedule a final hearing on the Motion (the "Final Hearing").

## I.

## The Debtors' Prepetition Employee Obligations

9.      The Debtors currently employ 651 full-time employees, of which 134 are salaried employees (the "Salaried Employees") and 517 are hourly employees (the "Hourly Employees" and together with the Salaried Employees, the "Employees") and 22 temporary employees, who are compensated through a temporary agency on an hourly basis (the "Temporary Employees"), to assist the Debtors in their day-to-day operations.  In the ordinary course of their businesses, the Debtors incur payroll and various other obligations, including benefit obligations, to their Employees for the performance of services.

10.     The Debtors have costs and obligations in respect of the Employees relating to the period prior to the Commencement Date.  In certain instances, these costs and obligations are outstanding and due and payable, and in other instances, these costs and obligations will become due and payable in the ordinary course of the Debtors' businesses on and after the Commencement Date.

**A.     Compensation Obligations**

11.     As noted above, the Debtors pay their employees on either an hourly or a salaried basis.  The Debtors' average monthly gross payroll for all Employees is approximately $2,000,000.

12.     Hourly Employees (including Temporary Employees) are paid on a weekly basis, one week in arrears.  The Debtors' average weekly gross payroll for Hourly Employees is approximately $350,000 (the "Hourly Employee Obligations").  As of the Commencement Date, the accrued and unpaid prepetition Hourly Employee Obligations, inclusive of the Hourly Employees' portion of federal, state, and local income taxes,[1] aggregate approximately $364,000 for services rendered for the period ending March 30, 2008 and March 31, 2008 and are due and payable on or about April 1, 2008 and April 10, 2008.  The Hourly Employee Obligations with respect to each Hourly Employee for this prepetition period do not exceed the $10,950 cap under section 507(a)(4) of the Bankruptcy Code.

13.     The Debtors pay their Salaried Employees on a semi-monthly basis.  The Debtors' average semi-monthly gross payroll for Salaried Employees is approximately $315,000 (the "Salaried Employee Obligations" and, together with the Hourly Employee Obligations, the "Compensation Obligations").  As of the Commencement Date, the accrued and unpaid

---

[1] The amount relating to federal, state, and local income taxes (the "Trust Fund Taxes") for the Hourly Obligations is approximately $123,000 for the prepetition period described above.

prepetition Salaried Employee Obligations, inclusive of the Salaried Employees' portion of federal, state, and local income taxes, aggregate approximately $0 for services rendered for the period ending March 31, 2008 and were paid on or about March 31, 2008.

14.     The obligations relating to the Trust Fund Taxes withheld from the Hourly Employee Obligations and Salaried Employee Obligations are remitted to the appropriate taxing authorities (collectively, the "Taxing Authorities") at the time the Compensation Obligations are satisfied.

15.     The Salaried Employee Obligations include payments due to an "Insider" (as defined under the Bankruptcy Code).  The compensation of Dennis J. Welhouse, the Debtors' Chief Financial Officer, Senior Vice President, Secretary, and Assistant Treasurer, is included in the Debtors' Salaried Employee Obligations.  Like the other prepetition Salaried Employee Obligations, the amounts owing to Mr. Welhouse do not exceed the cap under section 507(a)(4) of the Bankruptcy Code.

**B.     Payroll Administration**

16.     The Debtors employ Ceridian Corporation ("Ceridian") as their payroll administrator to process Compensation Obligations and coordinate the payment of the Employer Payroll Tax Obligations (the "Payroll Administration Obligations").  On a weekly basis, Ceridian calculates the Compensation Obligations and the Employer Payroll Tax Obligations based upon information provided by the Debtors.  Ceridian's compensation is approximately $10,000 per month for these services and paid on a weekly basis.  As of the Commencement Date, the accrued and unpaid prepetition Payroll Administration Obligations aggregate approximately $2,500 for services rendered the week ending March 21, 2008.

Approximately 2-3 three days prior to the payment of the Compensation Obligations, the Debtors submit a funding request to their prepetition secured lenders in an amount equal to such obligations. Approximately one day prior to the payment of the Compensation Obligations, Ceridian debits the Debtors' master operating bank account and tenders payment to the Debtors' Employees.

## C.    Severance Obligations

17.    The Debtors have a policy of providing their employees with severance benefits upon the Debtors' termination of their employment (the "Severance Obligations"). Generally, a terminated Employee is entitled to a continuation of the salary in effect at the time of termination for a period determined by the senior management of the Debtors (the "Salary Continuation Period"). The Salary Continuation Period has been based primarily upon the Employee's level of seniority and, to a lesser degree, by the length of the Employee's tenure with the Debtors. The Salary Continuation Period has ranged from two weeks to 26 weeks; generally, if the Salary Continuation Period is longer than eight (8) weeks and the terminated Employee secures new employment within the Salary Continuation Period, the Debtors' salary continuation payments thereafter are reduced by the amount of the former Employee's compensation from his or her new employer. As of the Commencement Date, there were no unpaid salary continuation payments outstanding.

## D.    Employer Payroll Tax Obligations

18.    The Debtors are also required to pay matching amounts from their own funds such as social security and Medicare taxes and additional amounts for state and federal unemployment insurance based on a percentage of gross payroll, employment training taxes, and state disability insurance contributions (the "Employer Payroll Tax Obligations"). The Employer

Payroll Tax Obligations aggregate approximately $187,000 per month.  As of the

Commencement Date, the accrued and unpaid prepetition Employer Payroll Tax Obligations

related to the prepetition Compensation Obligations for the periods described above aggregate

approximately $95,000.

**E.    Temporary Employees**

19.    The Debtors employ the Temporary Employees, provided through

temporary agencies, to assist the Debtors with clerical and quality control work.  The Debtors

pay the temporary agencies (the "Temporary Agency Obligations") on a weekly basis for wages

associated with the Temporary Employees.  As of the Commencement Date, the accrued and

unpaid prepetition Temporary Agency Obligations aggregate approximately $70,000 for the

period ending March 31, 2008.

**II.**

**The Welfare Plans**

20.    The Debtors sponsor numerous health and welfare plans to provide for

their Employees, including, without limitation, (i) medical, dental, and other health plans,

(ii) flexible spending programs for medical and dependent care, (iii) life, accidental death and

dismemberment ("AD&D"), and business travel accident insurance, and (iv) disability benefits

(collectively, the "Welfare Plans").  A schedule of the Welfare Plans is annexed hereto as

Exhibit A.

21.    The Debtors believe that their annual expenditures under the Welfare

Plans aggregate approximately $4,112,000.  All obligations with respect to the Welfare Plans

(including insurance policies and coverage) are hereinafter referred to as the "Welfare Plan

Obligations," which include the obligations arising under the various plans described below

within this section.  Because of the manner in which expenses are incurred and claims are

processed under the Welfare Plans, it is difficult for the Debtors to determine or estimate not only the accrued and unpaid prepetition Welfare Plan Obligations but any such obligations regardless of when they were incurred.  As of the Commencement Date, the Debtors believe that the accrued and unpaid prepetition Welfare Plan Obligations aggregate approximately $544,000 for the period ending March 31, 2008.  Below, the Debtors have broken down the amounts that comprise a substantial amount of the $544,000 prepetition Welfare Plan Obligations.

A.    **Medical, Dental, and Other Health Plans**

22.    The Debtors offer various health benefits, including, among others, medical (including mental health), vision, prescription drug, and dental coverage (the "Medical, Dental, and Other Health Plans").  The Medical, Dental, and Other Health Plans are offered to Employees after 90 days of employment.  In addition, certain of the Debtors' former employees are offered limited benefits under this plan for prescription drug and health benefits, not to exceed $1,000 per year.  The Debtors pay approximately $300,000 per month in respect of the Medical, Dental, and Other Health Plans.

23.    The Medical, Dental, and Other Health Plans offered to all of the Debtors' Employees other than the Lexington Precision's Lexington Machining division's facility in Rochester, New York (the "Rochester Facility") are self-insured plans up to cap of $200,000 per claim.  The excess of any medical claim above $200,000 is covered by a medical coverage policy with National Benefit Resources (UnitedHealth Group Company).  United Medical Resources, Inc. ("UMR") administers the Debtors' dental and medical coverage under this particular Medical, Dental, and Other Health Plan.  UMR is authorized to (i) review Employee claims for eligibility under the relevant Medical, Dental, and Other Health Plan, (ii) pay claims, (iii)

maintain proper books and records, and (iv) perform such other tasks as may be necessary to carry out the terms of the applicable plan.

24.     Employees at the Debtors' Rochester Facility are offered another Medical, Dental, and Other Health Plan that is fully insured through either Excellus Blue Cross Blue Shield or Preferred Care (together, the "<u>Lexington Machining Facility Plans</u>").  The Debtors pay premiums of approximately $60,000 per month under the Lexington Machining Facility Plans. As of the Commencement Date, there are prepetition obligations in the approximate amount of $60,000 under the Lexington Machining Facility Plans.

25.     The Debtors' Medical, Dental, and Other Health Plans also offer Employees (subject to the 90-day employment requirement) prescription drug benefits and a vision program through Systemed L.L.C. and Vision Plan Services.  The Debtors pay premiums to Systemed L.L.C. and Vision Plan Services in the aggregate amount of $2,000 on a monthly basis.  As of the Commencement Date, the accrued and unpaid prepetition amounts owing to Systemed L.L.C. and Vision Plan Services is approximately $2,000 for the period of March 2008.

**B.      Life, AD&D, and Business Travel Accident Insurance**

26.     The Debtors maintain basic life and AD&D coverage for all Employees (subject to the 90-day employment requirement).  For Salaried Employees, this coverage includes a company-paid life and AD&D insurance benefit in an amount equal to 150% of the salary of each eligible Employee, not to exceed $250,000.  For Hourly Employees, the company-paid life and AD&D insurance benefit ranges from $10,000 to $25,000 per Hourly Employee, with the exception of the Hourly Employees of Lexington Machining, which offers its eligible hourly Employees benefits equal to 100% of a participating Employee's wages.  Employees are

also offered an additional optional life insurance plan, participation in which is voluntary and funded entirely by Employee contributions.

27.    In addition, the Debtors provide business travel accident insurance to cover Employees in the event they are harmed or fatally injured while traveling on business. Reliance Standard Life Insurance Co. ("Reliance") provides the company-paid and the optional, Employee-paid life insurance, and the AD&D insurance, and CIGNA Life Insurance Company of North America ("CIGNA") provides the business travel accident insurance. The Debtors pay a fixed premium to Reliance and CIGNA in respect of the company-paid policies on a monthly basis in the amounts of $5,200 and $3,587, respectively. While as of the Commencement Date, there are no outstanding prepetition obligations to CIGNA, there are prepetition amounts outstanding to Reliance of approximately $5,200 for the period of March 2008.

## C.    Disability Benefits

28.    The Debtors maintain both short- and long-term disability plans for their Employees. Except for Employees employed in New York State, the Debtors' short-term disability plan is self-insured and provides short-term disability income to Employees for up to 13 weeks (the "Short Term Disability Plan"). UMR, as administrator of the short-term disability plan, pays eligible Employees from the Debtors' medical disbursement account (the "Short Term Disability Obligations"). As of the Commencement Date, the accrued and unpaid prepetition Short Term Disability Obligations are difficult to estimate because the claims constantly fluctuate and are determined on a division-by-division basis.

29.    For Employees in New York state, the Debtors provide short-term disability ("NY Short Term Disability Plan") insurance through Security Mutual Life Insurance Company of New York ("Security Mutual") on a fixed premium basis (the "NY Short Term

Disability Obligations"). Security Mutual's compensation is approximately $12,100. As of the Commencement Date, the accrued and unpaid premiums in respect of the prepetition NY Short Term Disability Obligations are approximately $12,100 for March 2008, which amount would be due and payable in April of 2008.

30. The Debtors also provide long-term disability coverage for Employees who are disabled and unable to work beyond the period covered by the short-term disability plan (the "Long Term Disability Plan" and together with the Short Term Disability Plan and NY Short Term Disability Plan, the "Disability Plans"). Reliance is the provider under the Long Term Disability Plan and is compensated on a monthly basis (the "Long Term Disability Obligations"). As of the Commencement Date, the accrued and unpaid prepetition Long Term Disability Obligations are approximately $2,500 for March 2008, which amount in the ordinary course would be due and payable in April of 2008.

**D.      Welfare Administration Obligations**

31. UMR administers the Welfare Plans. The Debtors pay UMR an administration fee of approximately $18,000 per month for administering the Welfare Plans (the "Welfare Administration Obligations"). As of the Commencement Date, no Welfare Administration Obligations are and due payable.

**E.      401(k) Plan**

32. The Debtors maintain a retirement and savings plan pursuant to section 401 of the Internal Revenue Code (the "401(k) Plan"). All Employees are entitled to participate in the 401(k) Plan after meeting certain eligibility requirements. Those Employees who are eligible and participate in the 401(k) Plan may contribute up to 60% of their annual compensation up to the statutorily prescribed dollar amounts. Under the 401(k) Plan, the

Debtors match Employee contributions at a rate of 50% of the Employee's contribution, up to a maximum contribution of 3% of such Employee's annual compensation. Contributions by the Debtors to an Employee's 401(k) Plan vest at a rate of 20% per year commencing in the Employee's second year of service and vest fully after six years of service.

33.    The Debtors deposit Employee and employer matching contributions with the trustee of the 401(k) Plan no more than three business days after the Compensation Obligations are satisfied(the "401(k) Plan Obligations"). As of the Commencement Date, the accrued and unpaid prepetition 401(k) Plan Obligations aggregate approximately $44,000 and $13,000 of which relates to the Debtors' contribution for the week ending March 21, 2008 and are due and payable no more than three business days after the Compensation Obligations are satisfied.

34.    The Debtors utilize the services of Fidelity Management Trust Company ("Fidelity") to administer their 401(k) plan. Fidelity is compensated on a quarterly basis. As of the Commencement Date, the accrued and unpaid prepetition amounts owing to Fidelity are approximately $5,274, covering the period from December 2007 through February 2008, which are due and payable in April of 2008 (the "Fidelity Administration Obligation"). Subsequent to the Commencement Date, a portion of the Fidelity Administration Obligation will be in respect of prepetition services rendered during the period of March 2008.

F.    **Paid Time Off**

35.    Under the Debtors' paid time-off policy (the "PTO Policy"), Employees are eligible, in certain circumstances, to receive their full wages for vacation, personal days, sick days, bereavement, and holidays ("PTO Obligations"). Employees accrue paid vacation time based on their length of service with the Debtors. Accrued but unused paid vacation time may not be carried over from year to year. The Debtors do, however, pay Employees upon

termination (voluntary or involuntary) for unused vacation time that has accrued during the year

of termination.  The Debtors also provide Employees with a certain number of sick and personal

days, as determined by each individual division.  All Employees are entitled to 10 paid holidays

per year pursuant to the Debtors' schedule of holidays.  As of the Commencement Date, the

Debtors estimate that they have approximately $890,000 of PTO Obligations that Employees

have earned but have not used relating to the period from January 1, 2008 to the Commencement

Date.  This amount is not a current cash pay obligation as Employees receive these benefits as

they continue in the ordinary course and Employees can only receive payment for accrued and

unused vacation time upon termination.

### G.    <u>Flexible Spending Programs for Medical and Dependent Care</u>

36.    The Debtors maintain flexible spending programs, administered by UMR,

that allow participating Employees to contribute up to $5,000 per year of pre-tax income,

through payroll deductions, for eligible out-of-pocket medical expenses for participating

Employees or their family members (the "<u>Employee Flexible Spending Program</u>").  In addition,

the Debtors offer a dependent care flexible spending program (the "<u>Dependent Flexible Spending

Program</u>" and with the Employee Flexible Spending Program, the "<u>Flexible Spending

Programs</u>") which allows participating Employees to contribute up to $5,000 per year of pre-tax

income, through payroll deductions, for eligible child care or eldercare expenses incurred by

such Employees.  If an Employee does not use the pre-tax income prior to December 31, 2008,

then the Employee loses the balance.

37.    As of the Commencement Date, the Debtors are holding approximately $10,600 (the "Flexible Spending Obligations") in pre-tax income contributed by approximately 62 Employees during the period of January 1, 2008 through February, 29, 2008.

## H.    Reimbursement Obligations

38.    The Debtors customarily reimburse their Employees and directors for a variety of business expenses incurred in the ordinary course of employment.  These reimbursable expenses include, among other things, travel and relocation expenses, equipment, equipment parts, tools, and other goods used by such Employees for the benefit of the Debtors' businesses (the "Reimbursement Obligations").  Employees and directors pay from their own funds or use an corporate card to pay such expenses.  When Employees and directors pay from their own funds (the "Out-of-Pocket Expenses"), the expenses are reimbursed to the director or Employee upon the individual's submission of a claim itemizing the business expenses.  Employees and directors are also issued American Express corporate credit cards to make such purchases (the "American Express Expenses").  The Debtors are billed directly by American Express for expenses charged on the corporate cards, but the Employees and directors are personally liable for purchases on the cards.

39.    As of the Commencement Date, the estimate of accrued and unpaid prepetition Reimbursement Obligations aggregate approximately $115,135 for the period ending March 31, 2008 and are due and payable no later than April 9, 2008.  The estimate for the Out-of-Pocket Expenses are approximately $10,000 for the period ending March 31, 2008.  The American Express Expenses are approximately $77,800 for the period ending March 20, 2008, and estimated to be approximately $27,200 for the period ending March 31, 2008.  Subsequent to

the Commencement Date, the Debtors anticipate that the prepetition Reimbursement Obligations

might change but such change is likely to be <u>de minimis</u>.

### III.

### Payment of Prepetition Employee<br>Obligations Is Warranted Under the Circumstances

40.    Pursuant to section 507(a)(4)(A) of the Bankruptcy Code, employee

claims for "wages, salaries, or commissions, including vacation, severance, and sick leave pay"

earned within 180 days before the Commencement Date are afforded priority unsecured status to

the extent of $10,950 per employee.  Similarly, section 507(a)(5) of the Bankruptcy Code

provides that employees' claims for contributions to certain employee benefit plans are also

afforded priority unsecured status to the extent of $10,950 per employee covered by such plan,

less any amount paid pursuant to section 507(a)(4).

41.    Furthermore, section 363(b)(1) of the Bankruptcy Code provides that

"[t]he trustee, after notice and a hearing, may use, sell, or lease, other than in the ordinary course

of business, property of the estate."  11 U.S.C. § 363(b)(1).  Section 105(a) of the Bankruptcy

Code further provides:

> The court may issue any order, process, or judgment that is necessary or
> appropriate to carry out the provisions of this title.  No provision of this
> title providing for the raising of an issue by a party in interest shall be
> construed to preclude the court from, <u>sua sponte</u>, taking any action or
> making any determination necessary or appropriate to enforce or
> implement court orders or rules, or to prevent an abuse of process.

11 U.S.C. § 105(a).  In addition, Bankruptcy Rule 6003 permits a debtor to use property of the

estate during the first 20-days of a case only to the extent it is necessary to avoid immediate and

irreparable harm.

42.    The Debtors believe that the majority of the Employee Obligations relating to the period prior to the Commencement Date constitute priority claims under sections 507(a)(4) and (5) of the Bankruptcy Code, except, for instances, the <u>de</u> <u>minimus</u> fees owed to the various administrators of the various plans discussed above.  As priority claims, the Employee Obligations must be paid in full before any general unsecured obligations of the Debtors may be satisfied.  Accordingly, the relief requested may affect only the timing of the payment of these priority obligations and will not prejudice the rights of general unsecured creditors or other parties in interest.

43.    The "necessity of payment" doctrine "recognizes the existence of the judicial power to authorize a debtor in a reorganization case to pay prepetition claims where such payment is essential to the continued operation of the debtor."  <u>In re Ionosphere Clubs, Inc.</u>, 98 B.R. 174, 176 (Bankr. S.D.N.Y. 1989) (authorizing the payment of prepetition employee wages and benefits); <u>see</u> <u>also</u> <u>Mich. Bureau of Workers' Disability Compensation v. Chateaugay Corp. (In re Chateaugay Corp.</u>), 80 B.R. 279, 285-86 (S.D.N.Y. 1987) (approving lower court order authorizing payment of prepetition wages, salaries, expenses, and benefits).  This doctrine is consistent with the paramount goal of chapter 11 of "facilitating the continued operation and rehabilitation of the debtor."  <u>Ionosphere Clubs</u>, 98 B.R. at 176.

44.    Section 105(a) of the Bankruptcy Code empowers the Court to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title."  11 U.S.C. § 105(a).  A bankruptcy court's use of its equitable powers to "authorize the payment of prepetition debt when such payment is needed to facilitate the rehabilitation of the debtor is not a novel concept."  <u>Ionosphere Clubs</u>, 98 B.R. at 175.  "Under Section 105, the court can permit pre-plan payment of a pre-petition obligation when essential to the continued

operation of the debtor." In re NVR L.P., et al., 147 B.R. 126, 127 (Bankr. E.D. Va. 1992)

(citing Ionosphere Clubs, 98 B.R. at 177). Moreover, section 363(b)(1) of the Bankruptcy Code

provides that "[t]he trustee, after notice and a hearing, may use, sell, or lease, other than in the

ordinary course of business, property of the estate." 11 U.S.C. § 363(b)(1).

45.    The Debtors are seeking interim and final authority to pay, at their

discretion, the following accrued and unpaid prepetition obligations:

(a)    Compensation Obligations in the approximate of $364,000.

(b)    Employer Payroll Tax Obligations in the approximate amount of $95,000.

(c)    Temporary Agency Obligations in the approximate amount of $123,000.

(d)    Pay Roll Administration Obligations in the approximate amount of $2,500.

(e)    Welfare Plan Obligations in the approximate amount not to exceed $544,000 per month.

(f)    401(k) Plan Obligations in the approximate amount of $13,000.

(g)    Flexible Spending Obligations in the approximately amount of $10,600.

(h)    Fidelity Administration Obligations in the approximate amount of $5,274.

(i)    Reimbursement Obligations in the aggregate amount of approximately $115,135. ]

46.    The majority of these obligations as they relate to each Employee either (i)

do not exceed the cap under section 507(a)(4) and (5) of the Bankruptcy Code (including the

Compensation Obligations, Welfare Plan Obligations, and 401(k) Plan Obligations); (ii) are

entitled to priority as a claim to the Taxing Authorities under section 507(a)(8) of the Bankruptcy

Code (Trust Fund Taxes and Employer Payroll Tax Obligations); or (iii) are essential to

administering benefits giving rise to the Employees' claims (Temporary Agency Obligations,

Payroll Administration Obligations, Fidelity Administration Obligations, and Reimbursement Obligations).

47.    As to the funds relating to the Employee Payroll Tax Obligations, they are held in trust for the benefit of the Taxing Authorities at the time they are withheld from an Employee's wages and salaries.  As such, these Payroll Taxes are not property of the Debtors' estate under section 541 of the Bankruptcy Code.  <u>See</u>, <u>e.g.</u>, <u>Begier v. IRS</u>, 496 U.S. 53 (1990) (holding that because withholding taxes are property a debtor holds in trust for another, withholding taxes are not property of the debtor's estates).

48.    The continued utilization of Temporary Employees is necessary for the efficient operation of the Debtors' businesses.  If the Debtors do not honor the prepetition Temporary Agency Obligations the Debtors risk that the Temporary Agencies might cease doing business with the Debtors, thereby causing significant damage to the Debtors' operations in excess of the <u>de</u> <u>minimis</u> amounts they are owed.  Similarly, payment of the Payroll Administration Obligations and the Fidelity Administration Obligations is essential because without Ceridian's and Fidelity's services there could be a delay in the payment of wages and salaries, medical or dental benefits, or investment in the 401(k) Plan, jeopardizing the Employees' access to essential benefits.

49.    As discussed above, it is difficult for the Debtors to determine or estimate the accrued and unpaid prepetition amounts outstanding under the Welfare Plans because expenses and claims are in flux and are processed at different times.  On its face, the $544,000 of accrued and unpaid prepetition Welfare Plan Obligations appears large, but it actually represents on the average less than $835 per Employee.

50.     The Reimbursement Obligations relate to charges for travel, including

airfare and hotel, equipment and tools, and other goods Employees use in conjunction with their

services benefiting the Debtors' businesses.  It would be inequitable to require the Debtors'

Employees or directors to bear personally the cost of any business expenses they incurred

prepetition for the benefit of the Debtors with the understanding that they would be reimbursed

or, in the case of purchases on American Express corporate cards, that the Debtors would pay for

the purchases.  In addition, all of the individual seeking reimbursement are Employees except

two individuals, Messrs. Lubin and Delano, who will not seek reimbursement until this Motion is

considered on a final basis.

51.     The Debtors' Employees are central to their operations and are vital to

these chapter 11 cases.  A significant deterioration in Employee morale at this critical time would

undoubtedly have a devastating impact on the Debtors, their customers and vendors, the value of

the Debtors' assets and businesses, and the Debtors' ability to continue operations.  The Debtors

submit that any delay or failure to pay accrued and unpaid prepetition Employee Obligations, in

the amounts described above, would impair the morale, dedication, confidence, and cooperation

of the Debtors' Employees, which in turn would subject the Debtors' businesses to immediate

and irreparable harm adversely affecting the Debtors' relationship with their Employees at a time

when the Employees' support is critical to the success of the Debtors' chapter 11 cases.  At this

early stage, the Debtors simply cannot risk the substantial damage to their business that would

inevitably attend any decline in their Employees' morale.

52.     The total amount sought to be paid herein is relatively modest and in the

aggregate less than the limitations set forth under section 507(a) of the Bankruptcy Code to the

extent such Employee Obligations relate to section 507(a)(4) and (a)(5).  Therefore, any amounts

paid now will not affect distributions to general unsecured claimholders because they are not entitled to payment on their claims until all or the vast majority of the Employee Obligations are satisfied in full.

53.    The Debtors do not seek to alter their compensation, vacation, or other benefit policies at this time.  This Motion is intended only to permit the Debtors, in their discretion, to make payments consistent with the Debtors' existing policies to the extent that, without the benefit of an order approving this Motion, such payments may be inconsistent with the relevant provisions of the Bankruptcy Code, and that the Debtors, in their discretion, be permitted to continue to honor their existing practices, programs, and policies with respect to their Employees, as such practices, programs and policies were in effect as of the Commencement Date.  Payment of all Employee Obligations in accordance with the Debtors' prepetition business practices is in the best interests of the Debtors' estates, their creditors, and all parties in interest, and will enable the Debtors to continue to operate their businesses in an economical and efficient manner without disruption.

54.    Because the facts cited herein demonstrate that the relief requested herein is necessary to avoid immediate and irreparable harm, Bankruptcy Rule 6003 has been satisfied.

55.    In other chapter 11 cases, courts in this district have approved payment of prepetition claims for compensation, benefits, and expense reimbursements similar to those described herein.  See, e.g., In re Fortunoff Fine Jewelry and Silverware, LLC, Case No. 08-10353 (JMP) (Bankr. S.D.N.Y. Feb. 29, 2008)[Docket No. 302], (Bankr. S.D.N.Y. Feb. 5, 2008)[Docket No. 44] ; PRC, LLC, Case No. 08- 08-10239 (MG) (Bankr. S.D.N.Y. Jan. 24, 2008); Quebecor World (USA) Inc., Case No. 08-10152 (JMP) (Bankr. Jan. 23, S.D.N.Y. 2008)[Docket No. 41]; Silicon Graphics, Inc., Case No. 06-10977 (BRL) (Bankr. S.D.N.Y. May

31, 2006)[Docket No. 146], (Bankr. S.D.N.Y. May 10, 2006)[Docket No. 51]; In re Atkins

Nutritionals, Inc., et al., Case No. 05-15913 (ALG) (Bankr. S.D.N.Y. Aug. 1, 2005)[Docket No.

31]; In re Footstar, Inc., et al., Case No. 04-22350 (ASH) (Bankr. S.D.N.Y. Mar. 3,

2004)[Docket No. 58].

56.    Accordingly, by this Motion, the Debtors seek authority, pursuant to

sections 105(a) and 363(b) of the Bankruptcy Code and Bankruptcy Rules 6003 and 6004, to pay

each of the prepetition Employee Obligations on an interim basis, to the extent it is necessary as

discussed herein, and the postpetition Employee Obligations as they become due and owing

during the pendency of these cases, and to continue, uninterrupted, their practices, programs, and

policies with respect to their Employees, as such practices, programs, and policies were in effect

as of the Commencement Date.

57.    Furthermore, the Debtors seek a waiver of the notice requirements under

Bankruptcy Rule 6004(a) and the stay of the order authorizing the use, sale, or lease of property

under Bankruptcy Rule 6004(h).[2]

## IV.

### Applicable Banks Should be Authorized
### to Honor and Pay Checks Issued and Make
### Other Transfers to Pay the Employee Obligations

58.    As a result of the commencement of the Debtors' chapter 11 cases, and in

the absence of an order of the Court providing otherwise, the Banks may reject or dishonor the

Debtors' checks, wire transfers and direct deposit transfers with respect to prepetition Employee

Obligations.  Therefore, the Debtors request that the Court authorize the Banks listed on Exhibit

---

[2] Bankruptcy Rule 6004(h) is an interim bankruptcy rule adopted pursuant to standing General Order M-308 of the United States Bankruptcy Court for the Southern District of New York, signed on October 11, 2005 by Chief Judge Stuart M. Bernstein.

B hereto, and any other bank authorized by the Court to administer the Debtors' bank accounts under the "Cash Management Motion"[3] to receive, process, honor, and pay all prepetition and postpetition checks issued by the Debtors, and funds transfers requested by the Debtors, in each case, with respect to the Employee Obligations.  The Debtors also seek authority to issue new postpetition checks, or effect new funds transfers, on account of prepetition Employee Obligations to replace any prepetition checks or funds transfer requests that may be dishonored or rejected.

59.    The Debtors represent that each of these checks or transfers is or will be drawn on the Debtors' payroll and general disbursement accounts and can be readily identified as relating directly to payment of the Employee Obligations.  The Debtors believe that prepetition checks and transfers, other than those for Employee Obligations, or those authorized by another order of the Court, will not be honored inadvertently.

60.    Authorization to pay all amounts on account of prepetition Employee Obligations shall not be deemed to constitute postpetition assumption or adoption of any contract, program, or policy pursuant to section 365 of the Bankruptcy Code.  The Debtors are in the process of reviewing these matters and reserve all of their rights under the Bankruptcy Code with respect thereto.  Moreover, authorization to pay all amounts in respect of prepetition Employee Obligations shall not affect the Debtors' right to contest the amount or validity of any Employee Obligation, including without limitation, the Payroll Taxes that may be due to any Taxing Authority.

---

[3] Debtors' Motion Pursuant to Sections 105(a), 345(b), 363(c) and 364(a) of the Bankruptcy Code for (A) Authorization to (i) Continue Using Existing Centralized Cash Management System, (ii) Implement an Automatic Transfer of Lockbox Funds to the Master Operating Account; and (iii) Maintain Existing Bank Accounts and Business Forms, and (B) an Extension of Time to Comply with Section 345(b) of the Bankruptcy Code.

## V.

## **Memorandum of Law**

61.    The Debtors submit that the relevant authorities are set forth herein, and accordingly, that the requirement contained in Local Bankruptcy Rule 9013-1(b) for the filing of a separate memorandum in support of the Motion is satisfied.

## **Notice**

62.    No trustee, examiner, or statutory creditors' committee has been appointed in these chapter 11 cases.  Notice of this Motion has been provided to (i) the United States Trustee for the Southern District of New York, (ii) the attorneys for the Debtors' prepetition lenders, (iii) the attorneys for the Debtors' proposed postpetition lenders; (iv) the attorneys for the ad hoc committee of noteholders and (v) the Debtors' 30 largest unsecured creditors (on a consolidated basis).  The Debtors submit that no other or further notice need be provided.

63.    No previous request for the relief sought herein has been made to this or any other Court.

WHEREFORE the Debtors respectfully request (a) entry of an interim order substantially in the form annexed hereto (i) granting the relief requested herein; and (ii) scheduling a Final Hearing to consider the relief requested herein on a final basis; (b) following the conclusion of the Final Hearing, entry of the Final Order substantially in the form annexed hereto granting the relief requested herein on a final basis; and (c) such other and further relief as is just.

Dated:  April 1, 2008
        New York, New York


                                    /s/ Richard P. Krasnow
                                    Richard P. Krasnow, Esq.
                                    Christopher J. Marcus, Esq.


                                    WEIL, GOTSHAL & MANGES LLP
                                    767 Fifth Avenue
                                    New York, New York  10153
                                    Telephone:  (212) 310-8000
                                    Facsimile:   (212) 310-8007

                                    Attorneys for Debtors and
                                    Debtors in Possession

**EXHIBIT A**

| Type of Coverage | Company | Policy Period | Policy # |
|---|---|---|---|
| Medical Plan | Self-insured*, † | Calendar 2008 | NA |
| Medical Plan - Insured | BlueCross BlueShield of the Rochester Area Excellus Companies | Calendar 2008 | 7806-001 8 |
| Medical Plan - Insured | Preferred Care of Buffalo, New York | Calendar 2008 | A00264 |
| Dental Plan | Self-insured* | Calendar 2008 | NA |
| Flexible Spending Plan | Self-insured* | Calendar 2008 | NA |
| Life and AD&D Insurance | Reliance Standard Life Insurance Co. | 08/01/07 to 08/01/08 | 142607 |
| Optional Employee Life Insurance Plan‡ | Reliance Standard Life Insurance Co. | 08/01/07 to 08/01/08 | 142607 |
| Medical Stop Loss Insurance | National Benefit Resources (UnitedHealth Group Company) | 07/01/08 to 12/31/08 | UHIC-102626 |
| Salaried Long-Term Disability Plan | Reliance Standard Life Insurance Co. | 08/01/07 to 08/01/08 | 116542 |
| Hourly Short-Term Disability Plan | Self-insured* | Calendar 2008 | NA |
| Vision Plan | Vision Plan Services | 1/01/07 to 12/31/08 | 12183414 |
| Travel-Accident Insurance | CIGNA Life Insurance Company of North America | 12/7/07 to 12/6/08 | ABY 010716 |
| Short-term disability (New York state Employees) | Security Mutual Life Insurance Company of New York | 1/1/08 to 12/31/08 | Unavailable |

* Administered by United Medical Resources, Inc.

† Includes prescription drug coverage, administered by Systemed L.L.C., a subsidiary of Medco Health Solutions, Inc.

‡ Participation in this plan is voluntary and is funded entirely by employee contributions.

## EXHIBIT B

### BANKS & PAYROLL ACCOUNTS

| Bank Name & Address | Account Number | Account Name |
|---|---|---|
| FirstMerit Bank<br>295 FirstMerit Circle<br>Akron, OH 44307<br>Attn:  Thomas Heidy | 5999000562 | Medical Disbursement Account |
| FirstMerit Bank<br>295 FirstMerit Circle<br>Akron, OH 44307<br>Attn:  Thomas Heidy | 5999000570 | Flexible Spending Disbursement Account |
| FirstMerit Bank<br>c/o Lexington Precision Corporation – Vienna Facility<br>295 FirstMerit Circle<br>Akron, OH 44307<br>Attn:  Thomas Heidy | 5999000588 | Operating Account |
| FirstMerit Bank<br>c/o Lexington Precision Corporation – Liquid Molding Facility<br>295 FirstMerit Circle<br>Akron, OH 44307<br>Attn:  Thomas Heidy | 5999000855 | Operating Account |
| FirstMerit Bank<br>c/o Lexington Precision Corporation – Jasper Facility<br>295 FirstMerit Circle<br>Akron, OH 44307<br>Attn:  Thomas Heidy | 5999000596 | Operating Account |
| FirstMerit Bank<br>c/o Lexington Precision Corporation – Rock Hill Facility<br>295 FirstMerit Circle<br>Akron, OH 44307<br>Attn:  Thomas Heidy | 5999000627 | Operating Account |

| Bank Name & Address | Account Number | Account Name |
|---|---|---|
| FirstMerit Bank<br>c/o Lexington Precision Corporation – Engineering Center<br>295 FirstMerit Circle<br>Akron, OH 44307<br>Attn:  Thomas Heidy | 5999000619 | Operating Account |
| FirstMerit Bank<br>c/o Lexington Precision Corporation – Rochester Facility<br>295 FirstMerit Circle<br>Akron, OH 44307<br>Attn:  Thomas Heidy | 5999000546 | Operating Account |
| FirstMerit Bank<br>c/o Lexington Precision<br>295 FirstMerit Circle<br>Akron, OH 44307<br>Attn:  Thomas Heidy | 5999000554 | Operating Account |
| FirstMerit Bank<br>295 FirstMerit Circle<br>Akron, OH 44307<br>Attn:  Thomas Heidy | 5923007871 | Company-wide master clearing account for all disbursements |

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-------------------------------------------------------------x
                                        :
In re                                   :        **Chapter 11 Case No.**
                                        :
**LEXINGTON PRECISION CORP., et al.,**   :        **08- _____ (   )**
                                        :
        **Debtors.**                    :        **(Jointly Administered)**
                                        :
-------------------------------------------------------------x

## INTERIM ORDER PURSUANT TO SECTIONS 105(a) AND 363(b) OF THE BANKRUPTCY CODE AND BANKRUPTCY RULES 6003 AND 6004 (I) AUTHORIZING, BUT NOT DIRECTING, PAYMENT OF WAGES, COMPENSATION, AND EMPLOYEE BENEFITS (II) AUTHORIZING FINANCIAL INSTITUTIONS TO HONOR AND PROCESS CHECKS AND TRANSFERS RELATED TO SUCH OBLIGATIONS AND (III) SCHEDULING A FINAL HEARING THE RELIEF SOUGHT IN THE MOTION

Upon the motion, dated April 1, 2008 (the "Motion"), of Lexington Precision Corporation and Lexington Rubber Group, Inc. as debtors and debtors in possession, (together, the "Debtors"), are seeking entry of an order, pursuant to sections 105(a) and 363(b) of title 11 of the United States Code (the "Bankruptcy Code") and Rule 6003 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), authorizing, but not directing, the Debtors to pay wages, compensation, and all other Employee Obligations[1] and authorizing financial institutions to honor and process checks and transfers related to such obligations, all as more fully described in the Motion; and the Court having jurisdiction to consider the Motion and the relief requested therein in accordance with 28 U.S.C. §§ 157 and 1334 and the Standing Order M-61 Referring to Bankruptcy Judges for the Southern District of New York Any and All Proceedings Under Title 11, dated July 10, 1984 (Ward, Acting C.J.); and consideration of the Motion and the relief requested therein being a core proceeding pursuant to 28 U.S.C. § 157(b);

---

[1] Capitalized terms used herein and not otherwise defined herein have the meanings ascribed to such terms in the Motion.

and venue being proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409; and due and

proper notice of the Motion having been provided to (i) the United States Trustee for the

Southern District of New York, (ii) the attorneys for the agents for the Debtors' prepetition

lenders, (iii) the attorneys for the Debtors' proposed postpetition lenders, (iv) the attorneys for

the ad hoc committee of noteholders, and (v) the holders of the 30 largest unsecured claims

against the Debtors (on a consolidated basis), and it appearing that no other or further notice

need be provided; and a hearing having been held to consider the relief requested in the Motion

(the "Hearing"); and the appearances of all interested parties having been noted in the record of

the Hearing; and upon the Affidavit of Dennis J. Welhouse Pursuant to Local Bankruptcy Rule

1007-2, sworn to on April 1, 2008 (the "Welhouse Affidavit"), the record of the Hearing, and all

of the proceedings had before the Court; and the Court having found and determined that the

relief sought in the Motion is in the best interests of the Debtors, their estates and creditors, and

all parties in interest and that the legal and factual bases set forth in the Motion establish just

cause for the relief granted herein; and after due deliberation and sufficient cause appearing

therefor, it is

ORDERED that the Motion is granted on an interim basis as provided herein; and

it is further

ORDERED that pursuant to sections 105(a) and 363(b) of the Bankruptcy Code.

the Debtors are authorized, but not directed, to continue to honor existing practices, programs,

and policies with respect to their Employees as such practices, programs, and policies were in

effect as of the date of the commencement of the Debtors' chapter 11 cases; and it is further

ORDERED that pursuant to sections 105(a) and 363(b) of the Bankruptcy Code,

the Debtors are authorized, but not required, to make all payments with respect to prepetition

Employee Obligations in the amount as described in the Motion with respect to prepetition

Compensation Obligations, Severance Obligations, Employer Payroll Tax Obligations,

Temporary Agency Obligations, Payroll Administration Obligations, Welfare Obligations

(including the obligations arising from the plans listed on Exhibit A annexed hereto), 401(k) Plan

Obligations, the Fidelity Administration Obligations, and the Reimbursement Obligations

(excluding reimbursements to Messrs. Lubin and Delano, which will be considered at the Final

Hearing on the Motion), in accordance with the Debtors' prepetition practices and policies; and it

is further

ORDERED that the banks set forth on Exhibit B annexed hereto and any other

bank authorized to administer the Debtors bank accounts under the Cash Collateral Motion (the

"Banks") shall be, and hereby are authorized, when the Debtors request in the Debtors' sole

discretion, to receive, process, honor and pay any and all checks drawn on the Debtors' payroll

or disbursement accounts and any other transfers that are related to the prepetition Employee

Obligations and the costs and expenses incidental thereto, whether those checks were presented

prior to or after the Commencement Date, provided that sufficient funds are available in the

accounts to make such payments; and it is further

ORDERED that any Bank may rely on the representations of the Debtors with

respect to whether any check or other transfer drawn or issued by the Debtors prior to the

Commencement Date should be honored pursuant to this Order, and such Bank shall not have

any liability to any party for relying on such representations by the Debtors as provided for

herein; and it is further

ORDERED that the Debtors are authorized (consistent with this Order) to issue

postpetition checks or to effect postpetition funds transfer requests in replacement of any checks

or funds transfer requests related to Employee Obligations dishonored or rejected as a consequence of the commencement of the Debtors' chapter 11 cases; and it is further

ORDERED that nothing in the Motion shall be deemed a request by the Debtors for authority to assume, and nothing in this Order shall be deemed authorization or approval to assume, any executory contract or unexpired lease pursuant to section 365 of the Bankruptcy Code; and it is further

ORDERED that nothing in the Motion or this Order shall be construed as impairing the Debtors' right to contest the validity or amount of any Employee Obligation, including without limitation any taxes that may be due to any Taxing Authority; and it is further

ORDERED that Bankruptcy Rule 6003(b) has been satisfied; and it is further

ORDERED that notwithstanding any applicability of Bankruptcy Rules 6004(h),[2] 7062, or 9014, the terms and conditions of this Order shall be immediately effective and enforceable upon its entry; and it is further

ORDERED that notice of the Motion as provided therein shall be deemed good and sufficient notice of such Motion and the requirements of Bankruptcy Rules 4001(d) and 6004(a) are waived; and it is further

ORDERED that the Final Hearing to consider entry of an order granting the relief requested in the Motion on a permanent basis shall be held on April __, 2008 at __:00 a.m. (Eastern time); and any objections to entry of such order shall be in writing, filed with the Court in accordance with General Order M-242, and served upon (i) the attorneys for the Debtors; (ii) the U.S. Trustee; (iii) the attorneys for the agents for the Debtors' prepetition lenders, (iv) the

---

[2] Bankruptcy Rule 6004(h) is an interim bankruptcy rule adopted pursuant to standing General Order M-308 of the United States Bankruptcy Court for the Southern District of New York, signed on October 11, 2005 by Chief Judge Stuart M. Bernstein.

attorneys for the Debtors' proposed postpetition lenders, and (v) the attorneys for any statutory

committee appointed in these cases, in each case so as to be received no later than 4:00 p.m.

(Eastern Time) on April __, 2008; and it is further

ORDERED that within three business after entry of this Order, the Debtors shall

serve a copy of this Order on (i) the United States Trustee for the Southern District of New York,

(ii) the attorneys for the Debtors' prepetition lenders, (iii) the attorneys for the Debtors' proposed

postpetition lenders; (iv) the attorneys for the <u>ad hoc</u> committee of noteholders and (v) the

Debtors' 30 largest unsecured creditors (on a consolidated basis); and it is further

ORDERED that the requirement set forth in Local Bankruptcy Rule 9013-1(b) for

the filing of a separate memorandum of law in support of the Motion is satisfied.

Dated:  April __, 2008
        New York, New York

_____
UNITED STATES BANKRUPTCY JUDGE

**EXHIBIT A**

| Type of Coverage | Company | Policy Period | Policy # |
|---|---|---|---|
| Medical Plan | Self-insured[*, †] | Calendar 2008 | NA |
| Medical Plan - Insured | BlueCross BlueShield of the Rochester Area Excellus Companies | Calendar 2008 | 7806-001 8 |
| Medical Plan - Insured | Preferred Care of Buffalo, New York | Calendar 2008 | A00264 |
| Dental Plan | Self-insured[*] | Calendar 2008 | NA |
| Flexible Spending Plan | Self-insured[*] | Calendar 2008 | NA |
| Life and AD&D Insurance | Reliance Standard Life Insurance Co. | 08/01/07 to 08/01/08 | 142607 |
| Optional Employee Life Insurance Plan[‡] | Reliance Standard Life Insurance Co. | 08/01/07 to 08/01/08 | 142607 |
| Medical Stop Loss Insurance | National Benefit Resources (UnitedHealth Group Company) | 07/01/08 to 12/31/08 | UHIC-102626 |
| Salaried Long-Term Disability Plan | Reliance Standard Life Insurance Co. | 08/01/07 to 08/01/08 | 116542 |
| Hourly Short-Term Disability Plan | Self-insured[*] | Calendar 2008 | NA |
| Vision Plan | Vision Plan Services | 1/01/07 to 12/31/08 | 12183414 |
| Travel-Accident Insurance | CIGNA Life Insurance Company of North America | 12/7/07 to 12/6/08 | ABY 010716 |
| Short-term disability (New York state Employees) | Security Mutual Life Insurance Company of New York | 1/1/08 to 12/31/08 | Unavailable |

[*] Administered by United Medical Resources, Inc.

[†] Includes prescription drug coverage, administered by Systemed L.L.C., a subsidiary of Medco Health Solutions, Inc.

[‡] Participation in this plan is voluntary and is funded entirely by employee contributions.

## EXHIBIT B

### BANKS & PAYROLL ACCOUNTS

| Bank Name & Address | Account Number | Account Name |
| --- | --- | --- |
| FirstMerit Bank<br>295 FirstMerit Circle<br>Akron, OH 44307<br>Attn: Thomas Heidy | 5999000562 | Medical Disbursement Account |
| FirstMerit Bank<br>295 FirstMerit Circle<br>Akron, OH 44307<br>Attn: Thomas Heidy | 5999000570 | Flexible Spending Disbursement Account |
| FirstMerit Bank<br>c/o Lexington Precision Corporation – Vienna Facility<br>295 FirstMerit Circle<br>Akron, OH 44307<br>Attn: Thomas Heidy | 5999000588 | Operating Account |
| FirstMerit Bank<br>c/o Lexington Precision Corporation – Liquid Molding Facility<br>295 FirstMerit Circle<br>Akron, OH 44307<br>Attn: Thomas Heidy | 5999000855 | Operating Account |
| FirstMerit Bank<br>c/o Lexington Precision Corporation – Jasper Facility<br>295 FirstMerit Circle<br>Akron, OH 44307<br>Attn: Thomas Heidy | 5999000596 | Operating Account |
| FirstMerit Bank<br>c/o Lexington Precision Corporation – Rock Hill Facility<br>295 FirstMerit Circle<br>Akron, OH 44307<br>Attn: Thomas Heidy | 5999000627 | Operating Account |

| Bank Name & Address | Account Number | Account Name |
|---|---|---|
| FirstMerit Bank<br>c/o Lexington Precision Corporation – Engineering Center<br>295 FirstMerit Circle<br>Akron, OH 44307<br>Attn:  Thomas Heidy | 5999000619 | Operating Account |
| FirstMerit Bank<br>c/o Lexington Precision Corporation – Rochester Facility<br>295 FirstMerit Circle<br>Akron, OH 44307<br>Attn:  Thomas Heidy | 5999000546 | Operating Account |
| FirstMerit Bank<br>c/o Lexington Precision<br>295 FirstMerit Circle<br>Akron, OH 44307<br>Attn:  Thomas Heidy | 5999000554 | Operating Account |
| FirstMerit Bank<br>295 FirstMerit Circle<br>Akron, OH 44307<br>Attn:  Thomas Heidy | 5923007871 | Company-wide master clearing account for all disbursements |