WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007
Richard P. Krasnow, Esq.
Christopher J. Marcus, Esq.

Attorneys for Debtors
and Debtors in Possession

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---------------------------------------------------------------x
: 
**In re** : **Chapter 11 Case No.**
: 
**LEXINGTON PRECISION CORP., et al.,** : 08- _____ (   )
: 
**Debtors.** : **(Jointly Administered)**
: 
---------------------------------------------------------------x

**DEBTORS' MOTION FOR AN ORDER PURSUANT TO SECTIONS 105(a), 363, 503(b)(1), 1107(a), AND 1108 OF THE BANKRUPTCY CODE AND BANKRUPTCY RULE 6003 GRANTING AUTHORITY TO HONOR CERTAIN PREPETITION CUSTOMER PROGRAMS AND SCHEDULING A FINAL HEARING**

TO THE HONORABLE UNITED STATES BANKRUPTCY JUDGE:

        Lexington Precision Corporation ("Lexington Precision") and Lexington Rubber Group, Inc. ("Lexington Rubber Group" and, together with Lexington Precision, "Lexington" or the "Debtors"), as debtors and debtors in possession, respectfully represent:

**Background**

        1.      On the date hereof (the "Commencement Date"), the Debtors each commenced with this Court a voluntary case under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code"). The Debtors are authorized to continue to operate their businesses and manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

2.    Contemporaneously herewith, the Debtors filed a motion seeking joint administration of their chapter 11 cases pursuant to Rule 1015(b) of the Federal Rules of Bankruptcy Procedure (the "<u>Bankruptcy Rules</u>").

## Lexington's Business

1.    Lexington manufactures large volumes of high-quality rubber and metal components at competitive prices for use primarily in automobiles and medical devices. Lexington operates through two operating segments—the Rubber Group and the Metals Group. Lexington's components are generally sold to other manufacturers.

2.    Lexington is one of North America's largest manufacturers of rubber components for the automotive industry. The Rubber Group's principal products are connector seals used in primary wire harnesses and insulators for ignition wire sets. The Rubber Group also manufactures and sells rubber components used in a variety of medical devices, including drug delivery systems, syringes, laparoscopic instruments, and catheters, which are sold to some of the world's largest medical device manufacturers.

3.    The Metals Group manufactures high-volume aluminum, brass, steel, and stainless steel components machined from bars, forgings, and cold-headed blanks primarily for manufacturers within the automotive industry. These components are used in many applications, including heating and cooling systems, airbag systems, solenoids, switches, and valves.

4.    Lexington is headquartered in New York, New York, and maintains manufacturing plants in New York, Georgia, Ohio, and South Carolina. As of February 29, 2008, Lexington employed approximately 651 permanent and 22 temporary employees, of which 134 are salaried employees and 517 are hourly employees. In 2007, Rubber Group net sales totaled $74.5 million and Metals Group net sales totaled $13.8 million. As of December 31,

2007, Lexington's consolidated unaudited financial statements reflected assets totaling approximately $52.6 million, and current liabilities totaling approximately $88.5 million. Notwithstanding the Debtors' negative "book net worth" calculated in accordance with generally accepted accounting principles, the Debtors have received a number of offers for all or portions of the assets and business of the Lexington Rubber Group, the largest of the Debtors' operations and the generator of the preponderance of the Debtors' sales and earnings, each of which clearly indicates that the value of the Debtors' assets far exceeds the Debtors' liabilities. Consequently, the Debtors believe that they are solvent and that the equity securities of Lexington Precision have significant value.

## Jurisdiction

3. This Court has jurisdiction to consider this matter pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b). Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

## Relief Requested

4. By this Motion, the Debtors request, pursuant to sections 105(a), 363, 503(b)(1), 1107(a), and 1108 of the Bankruptcy Code and Bankruptcy Rule 6003, that the Court (i) authorize the Debtors to (a) perform and honor, on an interim basis, their prepetition obligations related to the Customer Programs as they deem appropriate and (b) continue, renew, replace, and/or terminate one or more customer programs and to implement new customer programs, in each case, as they deem appropriate in the ordinary course of business, without further application to the Court; (ii) schedule a final hearing (the "Final Hearing") to consider entry of an order granting the relief requested herein on a permanent basis (the "Final Order"); and (iii) entry of the Final Order.

**The Customer Programs**

5.  Before the Commencement Date and in the ordinary course of their businesses, the Debtors offered certain customer programs and engaged in certain customer practices to develop and sustain a positive reputation in the marketplace for their services and to engender customer loyalty (collectively, "Customer Programs"). Most of the Debtors' products are manufactured according to certain specifications provided to the Debtors by their customers. If the Debtors' products fail to meet customers' specifications (a "Non-Spec Product"), the Debtors have in place certain Customer Programs pursuant to which customers are permitted to return the Non-Spec Product. To return a Non-Spec Product, the customer contacts the Debtors to obtain a return material authorization number ("RMA Number"). Once the customer obtains a RMA Number, the Debtors will send replacement parts to the customer and issue a new invoice for the replacement parts. Upon receipt of the returned parts, the Debtors will also issue the customer a credit memo, which the customer may apply to the original invoice.

6.  In 2007, customers returned parts in the aggregate amount of approximately $1,022,000 (representing 1.1% of sales for the year). The Debtors do not expect the level of returns to change significantly during 2008. The Debtors estimate that, as of the Commencement Date, approximately $20,000 worth of returns are being processed. Absent the commencement of these chapter 11 cases, the Debtors would issue credit memos and ship the replacement parts in the ordinary course of business.

7.  The Debtors submit that it is essential that they be permitted to honor their Customer Programs in accordance with their prepetition practices and customers' expectations in order to ensure overall customer loyalty and maintain the public's confidence in the Debtors' commitment to their customers. The Debtors' customers expect that the replacement parts to be

shipped in less than a week after the customer obtains the RMA Number and that credit memos will be issued within 24 hours after the Debtors receive the returned goods.  If any interruption or discontinuation of the Customer Programs occurs, the Debtors risk the alienation or other dissatisfaction of customers, causing immediate and irreparable harm.  In contrast, the uninterrupted continuation of the Customer Programs will enable the Debtors to retain valuable relationships which, in turn, help strengthen the Debtors' businesses.  Because the Debtors anticipate that they will have to issue credit memos and replacement parts under the Customer Programs during the period prior to entry of the Final Order (the "Interim Period"), immediate relief is required in order to avoid immediate and irreparable harm to the Debtors and their estates.

**Ample Support Exists to Authorize the
Debtors to Continue Their Customer Programs**

8.      Under section 503(b)(1) of the Bankruptcy Code, a debtor may incur, and the court, after notice and hearing, shall allow as administrative expenses, among other things, "the actual, necessary costs and expenses of preserving the estate."  11 U.S.C. § 503(b)(1).  Under section 363(b) of the Bankruptcy Code, a debtor may, in the exercise of its sound business judgment and after notice and hearing, use property of the estate outside of the ordinary course of business.  Id. § 363(b).  Although processing returns and issuing credits under the Customer Programs are not cash obligations of the Debtors, to the extent honoring the Customer Programs uses property of the estates, the Debtors believe such use of property is permitted by sections 503(b)(1) and 363(b) of the Bankruptcy Code as necessary costs of preserving the estates.

9.      In addition, section 363(c) of the Bankruptcy Code authorizes a debtor in possession operating its business pursuant to section 1108 of the Bankruptcy Code to use property of the estate in the ordinary course of business without notice or a hearing.

Consequently, continuing, renewing, replacing, initiating and/or terminating their Customer Programs, in the ordinary course of business, is permitted by sections 363(c), 1107(a), and 1108 of the Bankruptcy Code, without further application to the Court. However, out of an abundance of caution, the Debtors request the relief stated herein.

10. Furthermore, to supplement the explicit powers described above, section 105(a) of the Bankruptcy Code empowers the Court to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C. § 105(a). A bankruptcy court's use of its equitable powers to "authorize the payment of prepetition debt when such payment is needed to facilitate the rehabilitation of the debtor is not a novel concept." In re Ionosphere Clubs, Inc., 98 B.R. 174, 175 (Bankr. S.D.N.Y. 1989). "Under Section 105, the court can permit pre-plan payment of a pre-petition obligation when essential to the continued operation of the debtor." In re NVR L.P., et al., 147 B.R. 126, 127 (Bankr. E.D. Va. 1992) (citing Ionosphere Clubs, 98 B.R. at 177); see also In re Tropical Sportswear Int'l Corp., 320 B.R. 15 (Bankr. M.D. Fla. 2005) (recognizing and applying sections 105(a) and 363 of the Bankruptcy Code to justify the payment of prepetition obligations in appropriate circumstances); In re Gulf Air, Inc., 112 B.R. 152, 153 (Bankr. W.D. La. 1989) ("While prepetition claims are normally disposed of in a plan of reorganization and in accordance with statutory priorities, there are well-established 'necessity of payment' and similar exceptions."); In re Lehigh & N. England Ry. Co., 657 F.2d 570, 581 (3d Cir. 1981). The Debtors submit that the continuing support of their customers is imperative to the ongoing operations and viability of the Debtors.

11. In a long line of well-established cases, federal courts have consistently permitted postpetition payment of prepetition obligations where necessary to preserve or enhance the value of a debtor's estate for the benefit of all creditors. See, e.g., Miltenberger v.

Logansport Ry., 106 U.S. 286, 312 (1882) (payment of pre-receivership claim prior to reorganization permitted to prevent "stoppage of [crucial] business relations"); Dudley v. Mealey, 147 F.2d 268 (2d Cir. 1945), cert. denied 325 U.S. 873 (1945) (Second Circuit extends doctrine for payment of prepetition claims beyond railroad reorganization cases); Mich. Bureau of Workers' Disability Compensation v. Chateaugay Corp. (In re Chateaugay Corp.), 80 B.R. 279, 285-86 (S.D.N.Y. 1987), appeal dismissed 838 F.2d 59 (2d Cir. 1988) (approving lower court order authorizing payment of prepetition wages, salaries, expenses, and benefits).

12. The "doctrine of necessity" functions in chapter 11 cases as a mechanism by which the bankruptcy court can exercise its equitable power to allow payment of critical prepetition claims not explicitly authorized by the Bankruptcy Code. See In re Boston & Me. Corp., 634 F.2d 1359, 1382 (1st Cir. 1980) (recognizing the existence of a judicial power to authorize trustees to pay claims for goods and services that are indispensably necessary to the debtors' continued operation). The doctrine is frequently invoked early in chapter 11 cases, particularly in connection with payment of prepetition claims. The court in In re Structurelite Plastics Corp., 86 B.R. 922, 931 (Bankr. S.D. Ohio 1988), indicated its accord with "the principle that a bankruptcy court may exercise its equity powers under section 105(a) to authorize payment of prepetition claims where such payment is necessary to 'permit the greatest likelihood of survival of the debtor and payment of creditors in full or at least proportionately.'" The court stated that "a per se rule proscribing the payment of prepetition indebtedness may well be too inflexible to permit the effectuation of the rehabilitative purposes of the Code." Id. at 932. The rationale for the doctrine of necessity rule is consistent with the paramount goal of chapter 11 — "facilitating the continued operation and rehabilitation of the debtor." Ionosphere Clubs,

98 B.R. at 176.  Accordingly, pursuant to section 105(a) of the Bankruptcy Code, this Court is empowered to grant the relief requested herein.

13. As described above, the loyalty and continued patronage of the Debtors' customers is critical to the Debtors' financial health and reorganization.  Where retaining loyalty and patronage of customers is critical to a successful reorganization, courts in this and other districts have granted relief similar to that requested here.  See e.g., In re Quebecor World (Inc.), Case No. 08-10152 (JMP) (Bankr. S.D.N.Y. Jan, 23, 2008) [Docket No. 45]; In re New York Racing Association, Inc., 06-12618 (JMP) (Bankr. S.D.N.Y. Nov. 3, 2006) [Docket No. 19]; In re Silicon Graphics, Inc., Case No. 06-10977 (BRL) (Bankr. S.D.N.Y. May 9, 2006) [Docket No. 44]; and In re Atkins Nutritionals, Inc., Case No. 05-15913 (ALG) (Bankr. S.D.N.Y. Aug. 1, 2005) [Docket No. 35].

14. Accordingly, the Debtors request that they be authorized, but not directed, in their business judgment, to (i) perform and honor their prepetition obligations related to the Customer Programs as they deem appropriate and (ii) continue, renew, replace, and/or terminate one or more customer programs and impalement new customer programs, in each case, as they deem appropriate in the ordinary course of business, without further application to the Court.

15. Nothing contained herein is intended or should be construed as an admission as to the validity of any claim against the Debtors, a waiver of the Debtors' right to dispute any claim, or an approval or assumption of any agreement, contract or lease under section 365 of the Bankruptcy Code.  Likewise, if this Court grants the relief sought herein, any payment made pursuant to the Court's order granting the Motion is not intended and should not be construed as an admission as to the validity of any claim or a waiver of the Debtors' rights to subsequently dispute such claim.

**Interim Approval Should be Granted**

16.     Bankruptcy Rule 6003(b) provides "to the extent that relief is necessary to avoid immediate and irreparable harm, the court shall not, within 20 days after the filing of the petition, grant relief regarding . . . a motion to use, lease or otherwise incur an obligation regarding property of the estate, including a motion to pay all or part of a claim that arose before filing of the petition. . . ." The Debtors submit that because the interim relief requested in this Motion is necessary to avoid immediate and irreparable harm to the Debtors for the reasons set forth herein, Bankruptcy Rule 6003 has been satisfied.

17.     Further, to successfully implement the foregoing, the Debtors request that, pursuant to Bankruptcy Rule 6004(h), the Court direct that the order granting the requested relief be effective immediately upon entry.

18.     Based upon the foregoing, the Debtors submit that the relief requested herein is essential, appropriate, and in the best interest of the Debtors' estates and creditors, and therefore should be granted in these chapter 11 cases.

**Waiver of Memorandum of Law**

19.     The Debtors submit that the relevant authorities are set forth herein, and accordingly, that the requirement contained in Local Bankruptcy Rule 9013-1(b) for the filing of a separate memorandum in support of the Motion is satisfied.

**Notice**

20.     No trustee, examiner, or statutory creditors' committee has been appointed in these chapter 11 cases. Notice of this Motion has been provided to (i) the United States Trustee for the Southern District of New York, (ii) the attorneys for the agents for the Debtors' prepetition lenders, (iii) the attorneys for the Debtors' proposed postpetition lenders, (iv) the attorneys for the ad hoc committee of noteholders, and (v) the holders of the 30 largest unsecured

claims against the Debtors (on a consolidated basis).  The Debtors submit that no other or further notice need be provided.

21.    No previous request for the relief sought herein has been made to this or any other Court.

WHEREFORE, the Debtors respectfully request entry of an order granting the relief requested herein and such other and further relief as the Court may deem just and appropriate.

Dated: April 1, 2008
       New York, New York

/s/ Richard P. Krasnow
Richard P. Krasnow, Esq.
Christopher J. Marcus, Esq.

WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York  10153
Telephone:   (212) 310-8000
Facsimile:    (212) 310-8007

Attorneys for Debtors
and Debtors in Possession

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------------------x
:
In re                                                              :        Chapter 11 Case No.
                                                                   :
**LEXINGTON PRECISION CORP., et al.,**    :        08- _____ (   )
                                                                   :
    Debtors.                                                 :        (Jointly Administered)
                                                                   :
------------------------------------------------------------x

**INTERIM ORDER PURSUANT TO SECTIONS 105(a), 363, 503(b)(1), 1107(a), AND 1108 OF THE BANKRUPTCY CODE AND BANKRUPTCY RULE 6003 (i) AUTHORIZING THE DEBTORS TO HONOR CERTAIN PREPETITION CUSTOMER PROGRAMS AND (ii) SCHEDULING A FINAL HEARING**

Upon the motion, dated April 1, 2008 (the "Motion"), of Lexington Precision Corporation and Lexington Rubber Group, Inc., as debtors and debtors in possession (together, the "Debtors"), pursuant to sections 105(a), 363, 503(b)(1), 1107(a), and 1108 of title 11 of the United States Code (the "Bankruptcy Code") and Rule 6003 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), for entry of an order, among other things, (a) authorizing the Debtors to perform and honor, in the Debtors' discretion, the Debtors' prepetition obligations related to certain customer programs and practices ("Customer Programs"), and (b) scheduling a hearing to consider entry of an order granting the relief requested on a permanent basis (the "Final Hearing"), as more fully described in the Motion; and the Court having jurisdiction to consider the Motion and the relief requested therein in accordance with 28 U.S.C. §§ 157 and 1334 and the Standing Order M-61 Referring to Bankruptcy Judges for the Southern District of New York Any and All Proceedings Under Title 11, dated July 10, 1984 (Ward, Acting C.J.); and consideration of the Motion and the relief requested therein being a core proceeding pursuant to 28 U.S.C. § 157(b); and venue being proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409; and due and proper notice of the Motion having been provided to (i) the United States

NY2:\1296330\15\RS9615!.DOC\26690.0008

Trustee for the Southern District of New York (the "U.S. Trustee"), (ii) the attorneys for the agents for the Debtors' prepetition lenders, (iii) the attorneys for the Debtors' proposed postpetition lenders, (iv) the attorneys for the ad hoc committee of noteholders, and (v) the holders of the 30 largest unsecured claims against the Debtors (on a consolidated basis), and it appearing that no other or further notice need be provided; and a hearing having been held to consider the relief requested in the Motion (the "Interim Hearing"); and the appearances of all interested parties having been noted in the record of the Interim Hearing; and upon the Affidavit of Dennis J. Welhouse Pursuant to Local Bankruptcy Rule 1007-2, sworn to upon April 1, 2008 (the "Welhouse Affidavit"), the record of the Interim Hearing, and all of the proceedings had before the Court; and the Court having found and determined that the relief sought in the Motion is in the best interests of the Debtors, their estates and creditors, and all parties in interest and that the legal and factual bases set forth in the Motion establish just cause for the relief granted herein; and after due deliberation and sufficient cause appearing therefor, it is

ORDERED that the Motion is granted on an interim basis; and it is further

ORDERED that, pursuant to sections 105(a), 363, 503(b)(1), 1107(a) and 1108 of the Bankruptcy Code and Bankruptcy Rule 6003, the Debtors, in their business judgment, are authorized on an interim basis, but not directed, to perform and honor their prepetition obligations related to the Customer Programs as they deem appropriate, in the ordinary course of business, without further application to the Court; and it is further

ORDERED that nothing herein shall be construed to limit, or in any way affect, the Debtors' ability to dispute any claim by a customer with respect to any Customer Program; and it is further

ORDERED that nothing contained in this Order shall be deemed to constitute an assumption of any executory contract pursuant to section 365 of the Bankruptcy Code; and it is further

ORDERED that entry of this Order is necessary to avoid immediate and irreparable harm and to the extent the relief granted herein implicates the use of property of the estate and section 363 of the Bankruptcy Code, the requirements under Bankruptcy Rule 6003 have been satisfied; and it is further

ORDERED that entry of this Order shall be without prejudice to the right of any statutory committee appointed in these chapter 11 cases to object to the relief granted herein; provided, that such objection is filed no later than thirty (30) days after the appointment of such committee; and it is further

ORDERED that pursuant to Bankruptcy Rule 6004(h), this Order shall be effective immediately upon entry; and it is further

ORDERED that the Final Hearing to consider entry of an order granting the relief requested in the Motion on a permanent basis shall be held on April __, 2008 at __:00 a.m. (Eastern time); and any objections to entry of such order shall be in writing, filed with the Court in accordance with General Order M-242, and served upon (i) the attorneys for the Debtors; (ii) the U.S. Trustee; (iii) the attorneys for the agents for the Debtors' prepetition lenders, (iv) the attorneys for the Debtors' proposed postpetition lenders, and (v) the attorneys for any statutory committee appointed in these cases, in each case so as to be received no later than 4:00 p.m. (Eastern Time) on April __, 2008; and it is further

ORDERED that the Debtors shall serve this Order within three business days of its entry on (i) the U.S. Trustee, (ii) the attorneys for the agents for the Debtors' prepetition

lenders, (iii) the attorneys for the Debtors' proposed postpetition lenders, (iv) the attorneys for the <u>ad</u> <u>hoc</u> committee of noteholders, and (v) the holders of the 30 largest unsecured claims against the Debtors (on a consolidated basis); and it is further

ORDERED that the requirement set forth in Local Bankruptcy Rule 9013-1(b) for the filing of a separate memorandum of law in support of the Motion is satisfied.

Dated: April __, 2008
New York, New York

_____
United States Bankruptcy Judge