WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007
Richard P. Krasnow, Esq.
Christopher J. Marcus, Esq.

Attorneys for Debtors
and Debtors in Possession

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

----------------------------------------------------------------x
In re                                                           :
                                                                : **Chapter 11 Case No.**
                                                                :
**LEXINGTON PRECISION CORP., et al.**,                          : 08- _____ (     )
                                                                :
              Debtors.                                          : **(Jointly Administered)**
                                                                :
----------------------------------------------------------------x

**DEBTORS' MOTION PURSUANT TO SECTIONS 105(a), AND 363(b)(1) OF THE
BANKRUPTCY CODE FOR ENTRY OF AN ORDER (a) AUTHORIZING THE
DEBTORS TO PAY COMMON CARRIER CHARGES, THIRD PARTY PROCESSOR,
FEES AND WAREHOUSE FEES AND (b) SCHEDULING A FINAL HEARING**

TO THE HONORABLE UNITED STATES BANKRUPTCY JUDGE:

Lexington Precision Corporation ("Lexington Precision") and Lexington Rubber

Group, Inc. (together, the "Debtors"), as debtors and debtors in possession, respectfully

represent:

**Background**

1.     On the date hereof (the "Commencement Date"), the Debtors each

commenced with this Court a voluntary case under chapter 11 of title 11 of the United States

Code (the "Bankruptcy Code").  The Debtors are authorized to continue to operate their

businesses and manage their properties as debtors in possession pursuant to sections 1107(a) and

1108 of the Bankruptcy Code.

2. Contemporaneously herewith, the Debtors filed a motion seeking joint administration of their chapter 11 cases pursuant to Rule 1015(b) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").

**Lexington's Businesses**

3. Lexington manufactures large volumes of high-quality rubber and metal components at competitive prices for use primarily in automobiles and medical devices. Lexington operates through two operating segments—the Rubber Group and the Metals Group. Lexington's components are generally sold to other manufacturers.

4. Lexington is one of North America's largest manufacturers of rubber components for the automotive industry. The Rubber Group's principal products are connector seals used in primary wire harnesses and insulators for ignition wire sets. The Rubber Group also manufactures and sells rubber components used in a variety of medical devices, including drug delivery systems, syringes, laparoscopic instruments, and catheters, which are sold to some of the world's largest medical device manufacturers.

5. The Metals Group manufactures high-volume aluminum, brass, steel, and stainless steel components machined from bars, forgings, and cold-headed blanks primarily for manufacturers within the automotive industry. These components are used in many applications, including heating and cooling systems, airbag systems, solenoids, switches, and valves.

6. Lexington is headquartered in New York, New York, and maintains manufacturing plants in New York, Georgia, Ohio, and South Carolina. As of February 29, 2008, Lexington employed approximately 651 permanent and 22 temporary employees, of which 134 are salaried employees and 517 are hourly employees. In 2007, Rubber Group net sales totaled $74.5 million and Metals Group net sales totaled $13.8 million. As of December 31,

2007, Lexington's consolidated unaudited financial statements reflected assets totaling approximately $52.6 million, and current liabilities totaling approximately $88.5 million. Notwithstanding the Debtors' negative "book net worth" calculated in accordance with generally accepted accounting principles, the Debtors have received a number of offers for all or portions of the assets and business of the Lexington Rubber Group, the largest of the Debtors' operations and the generator of the preponderance of the Debtors' sales and earnings, each of which clearly indicates that the value of the Debtors' assets far exceeds the Debtors' liabilities. Consequently, the Debtors believe that they are solvent and that the equity securities of Lexington Precision have significant value.

## Jurisdiction

7.      This Court has jurisdiction to consider this application pursuant to 28 U.S.C. §§ 157 and 1334.  This is a core proceeding pursuant to 28 U.S.C. § 157(b).  Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

## Relief Requested

8.      By this Motion, the Debtors request, pursuant to sections 105 and 363(b)(1) of the Bankruptcy Code, that the Court (a) authorize the Debtors, on an interim basis, to pay undisputed prepetition Common Carrier Charges (as defined below); (b) schedule a hearing to consider entry of the Final Order (the "<u>Final Hearing</u>") to consider entry of an order granting on a permanent basis the relief requested herein (the "<u>Final Order</u>"); and (c) enter the Final Order.

## Lexington's Obligations

**A.      Common Carriers**

9.      To expedite the shipment of raw materials and other goods from vendors and the delivery of the Debtors' products to their customers and distributors, the Debtors employ

Commercial Traffic, as a third-party shipping consultant, in the ordinary course of business. By aggregating the shipping needs of multiple companies, Commercial Traffic negotiates lower bulk shipping rates and passes the savings along to its customers, including the Debtors. Commercial Traffic also audits and arranges for pass-through payment of freight invoices. While Commercial Traffic charges a fee for its services, the fee is more than offset by the savings gained from the lower bulk shipping rates.

10. To ship goods, the Debtors will contact third-party common carriers under contract with Commercial Traffic (the "Common Carriers"), which will invoice Commercial Traffic. After auditing the Common Carriers' invoices, Commercial Traffic will, each Friday, invoice the Debtors and the Debtors will authorize a debit to be deducted from the Debtors' bank accounts in respect of (a) the amounts to be paid to the Common Carriers and (b) Commercial Traffic's servicing fee (collectively, the "Common Carrier Charges"). Commercial Traffic then distributes the appropriate amount of debited funds to the various Common Carriers. In short, the Debtors effectuate payments to the Common Carriers through Commercial Traffic. The Common Carriers are not paid unless Commercial Traffic is paid. The Debtors estimate a two-to-three week delay exists between the shipment of goods and the Debtors' payment for that shipment.

11. While the amount Commercial Traffic debits fluctuates, the average weekly amount debited over the last two months was approximately $20,000. The estimated value of the goods in transit on the Commencement Date is approximately $350,000. As of the Commencement Date, the Debtors estimate they owe Commercial Traffic and the common carriers paid through Commercial Traffic approximately $60,000, which, absent the

commencement of these chapter 11 cases, would be debited over the course of the next two to three weeks.

12. The Debtors are concerned that, pursuant to applicable law, the Common Carriers may have possessory liens in the goods in their possession absent payment of the Common Carrier Charges and may refuse to deliver the goods. Without delivery of the goods, the Debtors' operations will suffer immediate and irreparable harm because the Debtors will cease to receive the materials necessary to continue their operations and customers will not receive their orders. In contrast, prompt and continued payment of the Common Carrier Charges promotes the uninterrupted flow of goods and the smooth continuation of the Debtors' operations.

13. As such, by this Motion and to avoid immediate and irreparable harm to the Debtors and their estates pending entry of the Final Order, the Debtors request the Court grant the Debtors authority to pay the Common Carrier Charges consistent with their customary practices in the ordinary course of their businesses.

### B. Third Party Processors

14. In the ordinary course of business, the Debtors have engaged 24 third-party component processors (the "Third Party Processors") to provide services, including plating, grinding, heat treating, and other processing of (a) mechanical components produced by the Metals Group and (b) components of molds and other equipment produced by the Debtors for use in producing components made by the Rubber Group. The overall estimated book value of the components in the Third Party Processors' possession is approximately $174,768.00. As of the Commencement Date, the Debtors estimate the Debtors owe the Third Party Processors approximately $97,257.00. Payments to Third Party Processors are traditionally due 30 days or more after return of the component.

15. The Debtors are concerned that, pursuant to applicable law, the Third Party Processors may have possessory liens in the Debtors' components in their possession absent payment of the Third Party Processor Fees and may refuse to return the Debtors' components. Because these components are either (a) required by the Debtors to be shipped to customers of the Metals Group or (b) required by the Debtors to permit the Rubber Group to produce molded parts for, the Debtors submit they will suffer significant harm and will be unable to meet their commitments to customers.

16. As such, by this Motion, the Debtors request, upon entry of the Final Order, that the Court grant the Debtors authority to pay the Third Party Processor Fees.

C. **Warehouses**

17. To store excess inventory and spare equipment, the Debtors employ five Warehouses in the ordinary course of business. The estimated book value of the goods and equipment in the Warehouses' possession is approximately $953,000.00. As of the Commencement Date, the Debtors owe the Warehouses approximately $37,183.61.

18. The Debtors are concerned that, pursuant to applicable law, the Warehouses may have possessory liens in the Debtors' property absent payment of the Warehouse Fees and may not turn over the Debtors' property in their possession. Without access to the equipment and inventory, the Debtors will suffer significant harm and their operations may be aversely affected. In contrast, payment of the Warehouse Fees will allow the Debtors to continue the use of the Warehouses to store and access inventory and equipment.

19. As such, by this Motion, the Debtors request that, upon entry of the Final Order, the Court grant authority to pay the Warehouse Fees.

**Payment of the Common Carrier Charges, the Third Party Processor Fees
the Warehouse Fees is in the Best Interests of the Debtors and Their Estates**

20.     If the Common Charges, Third Party Processor Fees, and Warehouse Fees are not paid, the Debtors believe the goods, inventory and equipment held by the Common Carriers, Third Party Processors, and Warehouses may be subject to possessory liens under applicable law.  Any delay in the timely delivery of goods resulting from the retention of such goods by the Common Carriers and the inability to access components processed by the Third Party Processors could immediately disrupt and irreparably harm the Debtors' operations.  Further, the inability to access equipment and inventory stored in the Warehouses will harm the Debtors' long-term operations.  Moreover, the payment of fees which may be subject to possessory liens under applicable law is merely a timing issue because the Debtors anticipate that they will be able to pay their secured creditors in full.

21.     Section 363(b)(1) of the Bankruptcy Code provides that, after notice and a hearing, the trustee "may use, sell, or lease, other than in the ordinary course of business, property of the estate."  11 U.S.C. § 363(b)(1).  The Debtors further submit that section 105(a) of the Bankruptcy Code empowers the Court to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title."  11 U.S.C. § 105(a).  A bankruptcy court's use of its equitable powers to "authorize the payment of prepetition debt when such payment is needed to facilitate the rehabilitation of the debtor is not a novel concept." In re Ionosphere Clubs, Inc., 98 B.R. 174, 175 (Bankr. S.D.N.Y. 1989).  "Under Section 105, the court can permit pre-plan payment of a pre-petition obligation when essential to the continued operation of the debtor."  In re NVR L.P., et al., 147 B.R. 126, 127 (Bankr. E.D. Va. 1992) (citing Ionosphere Clubs, 98 B.R. at 177).

22.     In a long line of well-established cases, federal courts have consistently permitted postpetition payment of prepetition obligations where necessary to preserve or enhance the value of a debtor's estate for the benefit of all creditors.  See, e.g., Miltenberger v. Logansport Ry., 106 U.S. 286, 312 (1882) (payment of pre-receivership claim prior to reorganization permitted to prevent "stoppage of [crucial] business relations"); Dudley v. Mealey, 147 F.2d 268 (2d Cir. 1945), cert. denied, 325 U.S. 873 (1945) (Second Circuit extends doctrine for payment of prepetition claims beyond railroad reorganization cases); Michigan Bureau of Workers' Disability Compensation v. Chateaugay Corp. (In re Chateaugay Corp.), 80 B.R. 279, 285-86 (S.D.N.Y. 1987), appeal dismissed, 838 F.2d 59 (2d Cir. 1988) (approving lower court order authorizing payment of prepetition wages, salaries, expenses, and benefits); In re Boston & Me. Corp., 634 F.2d 1359, 1382 (1st Cir. 1980) (recognizing the existence of a judicial power to authorize trustees to pay claims for goods and services that are indispensably necessary to debtors' continued operation); In re Payless Cashways, Inc., 268 B.R. 543, 546 (Bankr. W.D. Mo. 2001) ("Since the enactment of the Code, various courts have permitted debtors-in-possession to pay pre-petition debts on the grounds that payment of such claims was necessary to effectuate a successful reorganization, or at least to give the debtor the opportunity to propose any type of plan at all.").

23.     This doctrine of necessity functions in a chapter 11 case as a mechanism by which the bankruptcy court can exercise its equitable power to facilitate a successful reorganization by allowing payment of critical prepetition claims not explicitly authorized by the Bankruptcy Code.  See Just for Feet, 242 B.R. at 824 (recognizing that "[c]ertain pre-petition claims by employees and trade creditors . . . may need to be paid to facilitate a successful reorganization").  The doctrine is frequently invoked early in a chapter 11 case.  The court in In

re Structurelite Plastics Corp., 86 B.R. 922, 931 (Bankr. S.D. Ohio 1988), indicated its accord with "the principle that a bankruptcy court may exercise its equity powers under section 105(a) to authorize payment of prepetition claims where such payment is necessary to permit the greatest likelihood of survival of the debtor and payment of creditors in full or at least proportionately." The court stated that "a per se rule proscribing the payment of prepetition indebtedness may well be too inflexible to permit the effectuation of the rehabilitative purposes of the Code." Id. at 932. The rationale for the doctrine of necessity rule is consistent with the paramount goal of chapter 11 - "facilitating the continued operation and rehabilitation of the debtor." Ionosphere Clubs, 98 B.R. at 176. Accordingly, pursuant to section 105(a) of the Bankruptcy Code, this Court is empowered to grant the relief requested herein.

24. Courts in this and other districts have granted similar relief in other chapter 11 cases. See, e.g., In re Silicon Graphics, Inc., et al., Case No 06-10977 (BRL) (Bankr. S.D.N.Y. May, 10 2006) [Docket No. 46]; In re Footstar, Inc., et al, Case No. 04-22350 (ASH) (Bankr. S.D.N.Y. Mar. 3, 2004) [Docket No. 44], (Bankr. S.D.N.Y. Mar. 31, 2004) [Docket No. 257]; In re Loral Space & Communications Ltd., et al., Case No. 03-41710 (RDD) (Bankr. S.D.N.Y. July 16, 2003) [Docket No. 41]; and In re WestPoint Stevens, Inc., Case No. 03-13532 (RDD) (Bankr. S.D.N.Y. June 3, 2003) [Docket No. 48]. The Debtors submit that similar authorization is appropriate in these chapter 11 cases.

25. Authorization of the payment of all charges requested herein shall not be deemed to constitute postpetition assumption or adoption of any of the related agreements pursuant to section 365 of the Bankruptcy Code. The Debtors reserve all of their rights under the Bankruptcy Code with respect thereto. Nothing in this Motion shall be an admission as to any possessory lien.

**Interim Approval Should be Granted**

26.     Bankruptcy Rule 6003(b) provides "to the extent that relief is necessary to avoid immediate and irreparable harm, the court shall not, within 20 days after the filing of the petition, grant relief regarding . . . a motion to use, lease or otherwise incur an obligation regarding property of the estate, including a motion to pay all or part of a claim that arose before filing of the petition. . . ." The Debtors submit that because the interim relief requested in this Motion is necessary to avoid immediate and irreparable harm to the Debtors for the reasons set forth herein, Bankruptcy Rule 6003(b) has been satisfied.

27.     Further, to successfully implement the foregoing, the Debtors request that, pursuant to Bankruptcy Rule 6004(h), the Court direct that the order granting the requested relief be effective immediately upon entry.

28.     Based upon the foregoing, the Debtors submit that the relief requested herein is essential, appropriate, and in the best interest of the Debtors' estates and creditors, and therefore should be granted in these chapter 11 cases.

**Memorandum of Law**

29.     The Debtors submit that the relevant authorities are set forth herein, and accordingly, that the requirement contained in Local Bankruptcy Rule 9013-1(b) for the filing of a separate memorandum in support of the Motion is satisfied.

**Notice**

30.     No trustee, examiner, or statutory creditors' committee has been appointed in these chapter 11 cases. Notice of this Motion has been provided to (i) the United States Trustee for the Southern District of New York, (ii) the attorneys for the agents for the Debtors' prepetition lenders, (iii) the attorneys for the Debtors' proposed postpetition lenders, (iv) the attorneys for the ad hoc committee of noteholders, and (v) the holders of the 30 largest unsecured

claims against the Debtors (on a consolidated basis).  The Debtors submit that no other or further notice need be provided.

31. No previous motion for the relief sought herein has been made to this or any other court.

WHEREFORE, the Debtors respectfully request entry of an order granting the relief requested herein and such other or further relief as is just.

Dated: April 1, 2008
       New York, New York

/s/ Richard P. Krasnow
Richard P. Krasnow, Esq.
Christopher J. Marcus, Esq.

WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York  10153
Telephone:   (212) 310-8000
Facsimile:    (212) 310-8007

Attorneys for Debtors
and Debtors in Possession

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---------------------------------------------------------------x
In re                                              :
                                                        :     **Chapter 11 Case No.**
                                                        :
**LEXINGTON PRECISION CORP., et al.,**         :     08- _____ (     )
                                                        :
           **Debtors.**                       :     **(Jointly Administered)**
                                                        :
---------------------------------------------------------------x

**INTERIM ORDER PURSUANT TO SECTIONS 105(a) AND 363(b)(1) OF THE BANKRUPTCY CODE (a) AUTHORIZING THE DEBTORS TO PAY COMMON CARRIER CHARGES AND (b) SCHEDULING A FINAL HEARING**

Upon the motion, dated April 1, 2008 (the "Motion") of Lexington Precision Corporation and Lexington Rubber Group, Inc. (together, the "Debtors"), as debtors and debtors in possession, pursuant to sections 105(a), and 363(b)(1) of title 11 of the United States Code (the "Bankruptcy Code") for entry of an order, among other things, (a) authorizing the debtors to pay undisputed prepetition obligations to certain common carriers and the Debtors' third-party shipping consultant (collectively, the "Common Carrier Charges"); and (b) scheduling a hearing to consider entry of an order granting the relief requested on a permanent basis (the "Final Hearing"), as more fully described in the Motion; and the Court having jurisdiction to consider the Motion and the relief requested therein in accordance with 28 U.S.C. §§ 157 and 1334 and the Standing Order M-61 Referring to Bankruptcy Judges for the Southern District of New York Any and All Proceedings Under Title 11, dated July 10, 1984 (Ward, Acting C.J.); and consideration of the Motion and the relief requested therein being a core proceeding pursuant to 28 U.S.C. § 157(b); and venue being proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409; and due and proper notice of the Motion having been provided to (i) the United States Trustee for the Southern District of New York (the "U.S. Trustee"), (ii) the attorneys for the agents for the Debtors' prepetition lenders, (iii) attorneys for the proposed postpetition lenders,

(iv) the attorneys for the ad hoc committee of noteholders, and (v) the holders of the 30 largest unsecured claims against the Debtors (on a consolidated basis), and it appearing that no other or further notice need be provided; and a hearing having been held to consider the relief requested in the Motion (the "Interim Hearing"); and the appearances of all interested parties having been noted in the record of the Interim Hearing; and upon the Affidavit of Dennis J. Welhouse Pursuant to Local Bankruptcy Rule 1007-2, dated April 1, 2008 (the "Welhouse Affidavit"), the record of the Hearing, and all of the proceedings had before the Court; and the Court having determined that the relief sought in the Motion is in the best interests of the Debtors, their creditors and all parties in interest; and the Court having determined that the legal and factual bases set forth in the Motion establish just cause for the relief granted herein; and after due deliberation and sufficient cause appearing therefor, it is

ORDERED that the Motion is granted on an interim basis; and it is further

ORDERED that the Debtors are authorized to pay all undisputed prepetition Common Carrier Charges consistent with their customary practices in the ordinary course of their businesses; and it is further

ORDERED that nothing in this Order or the Motion shall be construed as prejudicing any rights the Debtors may have to dispute or contest the amount of or basis for any claims against the Debtors arising in connection with the Common Carrier Charges; and it is further

ORDERED that nothing herein shall be deemed to constitute an assumption or rejection of any agreement pursuant to section 365 of the Bankruptcy Code; and it is further

ORDERED that entry of this Order is necessary to avoid immediate and irreparable harm and to the extent the relief granted herein implicates the use of property of the

estate and section 363 of the Bankruptcy Code, the requirements under Bankruptcy Rule 6003(b) have been satisfied; and it is further

ORDERED that entry of this Order shall be without prejudice to the right of any statutory committee appointed in these chapter 11 cases to object to the relief granted herein; provided, that such objection is filed no later than thirty (30) days after the appointment of such committee; and it is further

ORDERED that pursuant to Bankruptcy Rule 6004(h), this Order shall be effective immediately upon entry; and it is further

ORDERED that the Final Hearing to consider entry of an order granting the relief requested in the Motion on a permanent basis shall be held on April __, 2008 at __:00 a.m. (Eastern time); and any objections to entry of such order shall be in writing, filed with the Court in accordance with General Order M-242, and served upon (i) the attorneys for the Debtors; (ii) the U.S. Trustee; (iii) the attorneys for the agents for the Debtors' prepetition lenders, (iv) the attorneys for the Debtors' proposed postpetition lenders, and (v) the attorneys for any statutory committee appointed in these cases, in each case so as to be received no later than 4:00 p.m. (Eastern Time) on April __, 2008; and it is further

ORDERED that the Debtors shall serve this Order within three business days of its entry on (i) the U.S. Trustee, (ii) the attorneys for the agents for the Debtors' prepetition lenders, (iii) the attorneys for the Debtors' proposed postpetition lenders, (iv) the attorneys for the ad hoc committee of noteholders, and (v) the holders of the 30 largest unsecured claims against the Debtors (on a consolidated basis); and it is further

ORDERED that the requirement set forth in Local Bankruptcy Rule 9013-1(b) for the filing of a separate memorandum of law in support of the Motion is satisfied.

Dated: April __, 2008
      New York, New York

_____
United States Bankruptcy Judge