**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-----------------------------------------------------------------x
                                            :
In re                                       :        **Chapter 11 Case No.**
                                            :
**LEXINGTON PRECISION CORP., et al.,**       :        **08-11153 (MG)**
                                            :
            **Debtors.**                     :        **(Jointly Administered)**
                                            :
-----------------------------------------------------------------x

**INTERIM ORDER PURSUANT TO BANKRUPTCY CODE SECTIONS 105, 361,**
**362, 363, AND 364 (I) AUTHORIZING DEBTORS TO USE CASH COLLATERAL,**
**(II) GRANTING ADEQUATE PROTECTION TO PREPETITION SECURED**
**LENDERS, (III) AUTHORIZING POSTPETITION FINANCING, AND**
<u>**(IV) SCHEDULING A FINAL HEARING PURSUANT TO BANKRUPTCY RULE 4001**</u>

Upon the Motion, dated April 1, 2008 (the "<u>Motion</u>") of Lexington Precision

Corporation ("<u>Lexington Precision</u>") and Lexington Rubber Group, Inc. ("<u>Lexington Rubber</u>"

and, together with Lexington Precision, the "<u>Debtors</u>"), as debtors and debtors in possession, for

an order pursuant to sections 105(a), 361, 362, 363, 364(c)(1), and 364(e) of chapter 11 of title

11 of the United States Code (the "<u>Bankruptcy Code</u>") and Rule 4001 of the Federal Rules of

Bankruptcy Procedure (the "<u>Bankruptcy Rules</u>") authorizing them to (i) use Cash Collateral (as

defined below), (ii) grant adequate protection to the Debtors' Prepetition Senior Lenders (as

defined below), and (iii) obtain postpetition financing, on a super-priority, unsecured basis, in the

amount of $4,000,000 (the "<u>DIP Loans</u>"), of which $2,000,000 is sought to be used on an interim

basis, and requesting the scheduling of a final hearing (the "<u>Final Hearing</u>") on the Motion, all as

more fully described in the Motion; and the Court having jurisdiction to consider the Motion and

the relief requested therein pursuant to 28 U.S.C. §§ 157 and 1334 and the Standing Order M-61

Referring to Bankruptcy Judges for the Southern District of New York Any and All Proceedings

Under Title 11, dated July 10, 1984 (Ward, Acting C.J.); and consideration of the Motion and the

relief requested therein being a core proceeding pursuant to 28 U.S.C. § 157(b); and venue being proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409; and due and proper notice of the Motion having been provided to (i) the United States Trustee for the Southern District of New York (the "U.S. Trustee"), (ii) the attorneys for the agents for the Debtors' prepetition senior lenders, (iii) the attorneys for the proposed postpetition lenders, (iv) the attorneys for the ad hoc committee of noteholders, and (v) the holders of the 30 largest unsecured claims against the Debtors (on a consolidated basis); and it appearing that no other or further notice need be provided; and the relief requested being within the guidelines for financing requests set forth in General Order M-274 of the United States Bankruptcy Court for the Southern District of New York; and the relief requested in the Motion being in the best interests of the Debtors and their estates and creditors; and the Court having reviewed the Motion; and based on the evidence adduced at a hearing before the Court (the "Interim Hearing") in support of the Motion; and the appearances of all interested parties having been noted in the record of the Interim Hearing; and the Court having determined that the legal and factual bases set forth in the Motion and at the Interim Hearing establish just cause for the relief granted herein; and upon all of the proceedings had before the Court and after due deliberation and sufficient cause appearing therefor,

**THE COURT HEREBY FINDS:**

A.      On April 1, 2008 (the "Commencement Date"), Debtors filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code.

B.      Debtors have retained possession of their property and continue to operate and manage their business as debtors in possession pursuant to sections 1107 and 1108 of the Bankruptcy Code.  No trustee, examiner, statutory committee of unsecured creditors (the "Committee") or any other committee has yet been appointed in these chapter 11 cases.

C.      Prior to the Commencement Date, the Prepetition Senior Lenders (as defined below) made certain loans and other financial accommodations available to the Debtors pursuant to, among other things, the following documents (collectively, with any and all other agreements, instruments, and related documents, including without limitation, guaranties, pledges, and discretionary funding letters executed by any Debtor and any Other Documents (as defined in each of the Credit Agreement (defined below) and the Loan Agreement (defined below)), the "Prepetition Senior Lender Loan Documents"):

(i)      that certain Credit and Security Agreement, dated May 31, 2006 (as amended to date and as may be amended, restated or otherwise modified from time to time, the "Credit Agreement"), between the Debtors, as borrowers, and CapitalSource Finance LLC ("CapitalSource"), as a lender, as collateral agent and administrative agent for itself and other lenders under the Credit Agreement (CapitalSource, when acting in such capacity, is herein called the "Revolver Agent"), and as Co-Documentation Agent, and Webster Business Credit Corporation ("Webster") as a lender (CapitalSource and Webster, as lenders, collectively the "Prepetition Revolver Lenders") and as Co-Documentation Agent;

(ii)      that certain Loan and Security Agreement, dated May 31, 2006 (as amended to date and as may be amended, restated or otherwise modified from time to time, the "Loan Agreement"), between the Debtors, as borrowers, and CSE Mortgage LLC ("CSE"), as a lender and as collateral agent for itself and each other lender under the Loan Agreement (CSE, when acting in such capacity, is herein called the "Term Loan Agent") (Revolver Agent and Term Loan Agent, collectively, the "Agents"), and DMD Special Situations Funding LLC, ("DMD"), as a lender under the Loan Agreement (DMD and CSE, as the Term Loan Agent and a

lender under the Loan Agreement, along with the Revolver Agent and the Prepetition Revolver

Lenders, collectively, the "Prepetition Senior Lenders");

(iii)    that certain First Amendment and Default Waiver Agreement between

Debtors and CapitalSource, Webster, CSE and DMD in their various capacities dated as of

November 20, 2006; and

(iv)    that certain Agreement dated as of May 18, 2007 by and among the

Debtors, Agents (in their capacities as agents and lenders) and the other Prepetition Senior

Lenders, as amended by that certain First Amendment to Forbearance Agreement, dated as of

July 20, 2007, as further amended by that certain Second Amendment to Forbearance Agreement

effective as of September 24, 2007, and as further amended by that certain Third Amendment to

Forbearance Agreement executed December 11, 2007 and deemed effective as of November 26,

2007 (collectively, the "Forbearance Agreement").

D.    Debtors acknowledge that as of March 31, 2008, the aggregate principal amount

of $21,416,893.71 and $152,310.42 in accrued but unpaid interest was outstanding under the

Credit Agreement and $907,000.00 of letters of credit that were issued under the Credit

Agreement were outstanding, and the aggregate principal amount of $13,838,888.91 and

$126,158.92 in accrued but unpaid interest was outstanding under the Loan Agreement

(collectively with all other Obligations, as defined in the Prepetition Senior Lender Loan

Documents, including, without limitation, costs, fees and expenses that were outstanding under

the Prepetition Senior Lender Loan Documents as of the Commencement Date, the "Prepetition

Senior Secured Debt").

E.    Without prejudice to the rights of any other party (including the Committee or any

other statutory committee that may be appointed in these chapter 11 cases), but subject to the

time limitations specified in paragraph 29 below, the Debtors represent, stipulate, acknowledge, and agree that:

(i)    the Prepetition Senior Secured Debt is (i) legal, valid, binding, and enforceable against each Debtor; and (ii) not subject to any contest, objection, recoupment, defense, counterclaim, offset, claim of subordination, claim of re-characterization, claim of avoidance of any nature, attack or challenge under the Bankruptcy Code, other applicable non-bankruptcy law, or otherwise;

(ii)    all the Prepetition Senior Secured Debt is secured by the security interests in the Collateral (as defined below) previously granted under the Prepetition Senior Lender Loan Documents to the Prepetition Senior Lenders, that the Agents have, and will continue to have after entry of this Order, a legal, valid, enforceable, non-avoidable and continuing duly-perfected first priority security interest (and junior security interest, as applicable, subject to the terms of that certain Intercreditor Agreement dated as of May 31, 2006 between Revolver Agent, as agent and lender, Revolver Lenders, Term Loan Agent, as agent and lender, and Term Loan Lenders (the "Intercreditor Agreement")) in and lien on the Collateral, as more fully described and defined in the Prepetition Senior Lender Loan Documents (all such "Collateral", as the same existed on or at any time prior to the Commencement Date, together with all cash and non-cash proceeds thereof, shall be hereinafter referred to as "Senior Lender Prepetition Collateral" and such liens thereon shall be referred to as the "Senior Lender Prepetition Liens"), subject to no liens or security interests other than the liens expressly permitted under the Prepetition Senior Lender Loan Documents;

08-11153-scc   Doc 18   Filed 04/02/08   Entered 04/02/08 13:21:20   Main Document
Pg 6 of 36

(iii)    nothing contained herein in any way impairs the Prepetition Senior

Lenders' first and junior (as applicable in accordance with the terms of the Intercreditor

Agreement) priority lien status in the Senior Lender Prepetition Collateral;

(iv)    as of the Commencement Date, and without giving effect to this Order, the

Debtors are not aware of any liens or security interests having priority over the Senior Lender

Prepetition Liens, except certain "Permitted Encumbrances" (as defined in the applicable

Prepetition Senior Lender Loan Documents);

(v)     the Senior Lender Prepetition Liens in the Senior Lender Prepetition

Collateral were granted to the Prepetition Senior Lenders for fair consideration and reasonably

equivalent value, and were granted contemporaneously with the making of the loans secured

thereby; and

(vi)    all cash of the Debtors wherever located on the Commencement Date

(other than the funds in the DIP Account (as defined below)) represents either proceeds of loans

under the Prepetition Senior Lender Loan Documents or proceeds of the Senior Lender

Prepetition Collateral; and pursuant to the Prepetition Senior Lender Loan Documents and

section 552(b) of the Bankruptcy Code, the Prepetition Senior Lenders have a valid, duly

perfected, first-priority lien upon and security interest in and to all of the cash of the Debtors

(other than the cash in the DIP Account (as defined below)), and these funds, along with the

proceeds of the Senior Lender Prepetition Collateral, constitute "cash collateral" within the

meaning of section 363(a) of the Bankruptcy Code (the "Cash Collateral").

F.     The Debtors have an immediate need to use Cash Collateral and obtain funds in

order to permit, among other things, the orderly continuation of the operation of their businesses,

to maintain business relationships with vendors, suppliers and customers, to meet payroll, to

make capital expenditures and to satisfy other working capital and operational needs.  Good

cause has been shown for the entry of this Order.  Use of Cash Collateral and the obtaining of

funds is vital to avoid immediate and irreparable harm to Debtors' estates.

G.       The Debtors are unable to obtain the funds being provided pursuant to the DIP

Loans on more favorable terms than those contained in the form of note (the "Note") attached

hereto as Exhibit A.  The Debtors are unable to obtain the required funds in the forms of (x)

unsecured credit or debt allowable under section 503(b)(1) of the Bankruptcy Code, or (y) an

administrative expense pursuant to section 364(a) or (b) of the Bankruptcy Code.

H.       The Debtors have requested that the Prepetition Senior Lenders consent to the use

of their Cash Collateral.  The ability of the Debtors to continue their businesses and reorganize

under chapter 11 of the Bankruptcy Code depends upon the Debtors using such Cash Collateral.

The Prepetition Senior Lenders have consented to the Debtors' use of Cash Collateral in reliance

upon the terms outlined in this Order. The adequate protection provided herein and other benefits

and privileges contained herein are consistent with and authorized by the Bankruptcy Code,

Bankruptcy Rules 4001 and 6003 and Local Bankruptcy Rule 4001-3 and are necessary in order

to obtain such consent or non-objection of the Prepetition Senior Lenders.

I.       The Debtors have also requested that, pursuant to the terms of the Note(s), the

DIP Lenders make DIP Loans to the Debtors, which are to be used in the event that Cash

Collateral is insufficient to fund working capital requirements and general corporate purposes

relating to the Debtors' postpetition operations and for other expenditures authorized by this

Order, the final order granting the relief requested in the Motion (the "Final Order"), or that are

otherwise authorized by the Court; provided, however, that no portion of the proceeds shall be

used, directly or indirectly, to (a) finance or make any payment or prepayment to any person with

respect to a prepetition indebtedness unless authorized by this Order or another order of the

Court; or (b) finance in any way any investigation, adversary action, suit, arbitration, proceeding

or other litigation of any type against the DIP Lenders or the Prepetition Senior Lenders.  The

DIP Lenders are willing to make the DIP Loans only on a super-priority, unsecured basis,

pursuant to the terms of the Note(s), subject to the limitations set forth herein.

J.        The Debtors have requested immediate entry of this Order pursuant to Bankruptcy

Rule 4001(b)(2) and 4001(c)(2).  The ability of the Debtors to continue their businesses and

reorganize under chapter 11 of the Bankruptcy Code depends upon the Debtors using Cash

Collateral and obtaining the DIP Loans.  Accordingly, the relief requested in the Motion is

necessary, essential and appropriate for the continued operation of the Debtors' businesses, the

management and preservation of their assets and properties, and is in the best interests of the

Debtors, their estates and creditors.  Use of Cash Collateral and the Interim DIP Loan (as defined

below) under the terms and conditions set forth herein and in the Note(s) is necessary to avoid

immediate and irreparable harm to the estate pending the Final Hearing.  Accordingly, good,

adequate and sufficient cause has been shown to justify the granting of the relief requested

herein, and the immediate entry of this Order.

K.        Based on the record before the Court, (i) the terms of the use of the Prepetition

Senior Lenders' Cash Collateral as provided in this Order and (ii) the terms of the Note(s),

pursuant to which the DIP Loans will be made to the Debtors by the DIP Lenders, have been

negotiated at arms' length and in "good faith," as that term is used in section 364(e) of the

Bankruptcy Code, and are in the best interests of the Debtors, their estates and creditors.

**NOW, THEREFORE, IT IS HEREBY ORDERED:**

1.      The Motion is hereby granted on an interim basis as provided herein, with the foregoing findings incorporated herein by reference, and with any objections to the Motion that have not previously been withdrawn or resolved being hereby overruled.

<u>Authorization to Use Cash Collateral</u>

2.      Subject to the terms and conditions set forth in this Order, the Debtors are authorized, pursuant to section 363(c)(2)(B) of the Bankruptcy Code, to use the Cash Collateral for the period of time from the date hereof until the earlier of two hundred seventy (270) days after the Commencement Date or the occurrence of a Termination Event (as defined below).

3.      Upon entry of an order by the Court on or about the date hereof approving the Debtors' motion to use, as modified, the Debtors' centralized cash management system (the "<u>Cash Management Order</u>"), FirstMerit Bank N.A., Akron, Ohio ("<u>FirstMerit</u>") shall, subject to the terms of the Cash Management Order (including the reservation of Debtors' rights to modify their cash management system to comply with section 345(b) of the Bankruptcy Code), commence immediately the automatic transfers on a daily basis of all available funds currently in or received in the Debtors' lockbox accounts and the consolidation account at FirstMerit into the Debtors' master operating account at FirstMerit (the "<u>Master Operating Account</u>"), without the necessity to comply with any lockbox or blocked account agreement or any preexisting transfer arrangement concerning such accounts; <u>provided</u>, <u>however</u>, that the Master Operating Account, along with all other bank accounts, deposit accounts and securities accounts established or in existence on or after the Commencement Date, shall be subject to any and all security interests and liens granted hereunder and this Order shall be deemed the only action necessary to perfect such liens in favor of the Revolver Agent for the benefit of the Senior Prepetition Lenders.

4.      The Debtors shall use Cash Collateral only for (a) working capital and capital expenditures, (b) other general corporate purposes of the Debtors (including, without limitation, the making of Adequate Protection Payments (as defined below)), and (c) the costs of administration of these chapter 11 cases, with each of the foregoing in compliance with an eleven (11) week budget (the "Budget"), the initial form of which is annexed hereto as Exhibit B and incorporated herein by reference, subject to the permitted variances as provided for in this Order.

5.      Debtors may, with the prior written consent of the Revolver Agent and Term Loan Agent, use Cash Collateral in excess of the limits set forth in the Budget or the New Budget (as defined below), as applicable; provided, however, that such consent shall not be necessary for variances that do not exceed, in the aggregate, 10% of the cumulative expenditures set forth in the Budget and the New Budget, as applicable, as measured from the Commencement Date through the Date of Determination (as defined below), with bi-weekly reports due to the Revolver Agent and Term Loan Agent by 5:00 p.m. on Tuesday following the end of the second week being reported, showing comparisons and percentage variance by line item as well as on a cumulative basis; provided further that the Debtors shall be allowed to make advance cash payments or deposits of cash (collectively, "Advances") in the amount of goods and services to be provided, if required by vendors, so long as all projected Advances are included as expenditures in the Budget and the New Budget, as applicable, and all actual Advances are included in the reconciliation referred to in paragraph 11(vi)(a).  The "Date of Determination" shall initially be the third Friday after the Commencement Date, and subsequently shall be every other Friday thereafter.

6.      Two (2) weeks prior to the expiration of the eleven (11) week period covered by the Budget (or such other schedule as the parties may agree), Debtors shall provide a

proposed new budget (said budget and all subsequent budgets, the "New Budget") for Revolver

Agent's and Term Loan Agent's approval, to cover the subsequent thirteen (13) week period (the

said interim eleven (11) week period, the thirteen (13) week period, and all periods covered by

subsequent budgets, the "Budget Period") ; and one (1) week prior to the expiration of the

Budget Period (or such other schedule as the parties may agree), Revolver Agent and Term Loan

Agent shall approve or reject the New Budget; provided, however, that the New Budget shall

automatically be deemed to be approved if (a) the average weekly disbursements reflected in the

New Budget do not exceed 110% of the average weekly expenditures reflected in the budget

then in effect and (b) the New Budget indicates that the Debtors have adequate financing to

operate their business in accordance with the New Budget (assuming the continued use of Cash

Collateral and proceeds from the DIP Loans).   For the avoidance of doubt, subject to the proviso

in the preceding sentence, failure to secure Revolver Agent's and Term Loan Agent's approval

of the New Budget prior to the expiration of the Budget Period shall result in the expiration of

the Budget Period.  Extension of the Budget Period shall occur in the same manner with respect

to each New Budget.  Notwithstanding the foregoing, the failure of the Revolver Agent or Term

Loan Agent to object to the Budget or the New Budget, or the consent or agreement of the

Revolver Agent and Term Loan Agent to the Budget does not constitute an admission, nor shall

it be deemed an admission, that any such budgeted expenses constitute reasonable, necessary

costs, and expenses of preserving or disposing of the Senior Lender Prepetition Collateral.

Subject to the entry of the Final Order, in no event shall any costs or expenses of administration

be imposed upon the Prepetition Senior Lenders or any of the Senior Lender Prepetition

Collateral pursuant to sections 506(c) and/or 105(a) of the Bankruptcy Code or otherwise, except

as set forth in paragraphs 7, 8 and 23.

7.    Notwithstanding anything herein to the contrary, no Cash Collateral
(including without limitation the amounts held in the Master Operating Account) may be used by
any of the Debtors (or any subsequent trustee), the Committee, any other statutory committee or
any other person or entity (i) to object to or contest in any manner, or raise any defense or contest
to, the validity, perfection, priority or enforceability of the Prepetition Senior Secured Debt, the
Senior Lender Prepetition Liens, and the Prepetition Senior Lender Loan Documents or under
this Order, or to assert or prosecute any action for preferences, fraudulent conveyances, other
avoidance power claims (whether under chapter 5 of the Bankruptcy Code or otherwise) or any
other claims or causes of action against the Prepetition Senior Lenders, including without
limitation for lender liability or pursuant to sections 105, 510, 544, 547, 548, 549, or 550 of the
Bankruptcy Code (collectively, the "Claims and Defenses"); provided, however, that, subject to
the time limitations specified in paragraph 29 below, Cash Collateral may be used directly or
indirectly by the Committee or any other statutory committee to investigate the obligations and
liens under the Prepetition Senior Lender Loan Documents, in an amount not to exceed an
amount to be negotiated with the Committee; or (ii) subject to paragraph 11(x) below, to sell any
portion of the Senior Lender Prepetition Collateral (other than sales of inventory in the ordinary
course of business, sales to customers of tooling and equipment that will be used by the Debtors
to produce inventory for sale to such customers in the ordinary course of business, and sales of
surplus or obsolete equipment, provided that the fair market value of the surplus or obsolete
equipment to be sold after the Commencement Date shall not exceed $50,000 in the case of any
single transaction or $200,000 in the aggregate) without either providing for the indefeasible
payment of the Prepetition Senior Secured Debt in full in cash on the sale closing date (subject to
the provisions of paragraphs 8(i) and 24 hereof) or obtaining prior written consent to such sale

from the Agents (subject to the Intercreditor Agreement); (iii) to incur any new indebtedness that would be *pari passu* with or have priority over the Prepetition Senior Secured Debt; or (iv) to modify the rights of the Prepetition Senior Lenders under this Order.

<u>Adequate Protection</u>

8.    As adequate protection for the use of Cash Collateral, the Prepetition Senior Lenders shall receive:

(i)    adequate protection payments ("<u>Adequate Protection Payments</u>") in amounts equal to the following amounts, <u>provided</u>, only in the event that it is determined that the claims of the Agents and the Prepetition Senior Lenders are not fully secured, the Adequate Protection Payments shall be subject to reallocation, recharacterization, or disgorgement, after notice and a hearing before the Court:

(a)  interest payments (at the contractual non-default rate) and principal payments due under the Prepetition Senior Lender Loan Documents, according to the schedule of interest and principal payments contained therein; <u>provided</u> that in consideration for the receipt of principal payments, Prepetition Senior Lenders shall forever waive any and all claims for the difference between the contractual non-default rate and the contractual default rate (the "<u>Default Rate Differential</u>") from the Commencement Date until the occurrence of a Termination Event; <u>provided</u>, <u>further</u> that (i) the Debtors (x) acknowledge that sections 3.1 of each of the Credit Agreement and the Loan Agreement refer to the payment of default interest and (y) refer to said sections as to the terms and provisions thereof, and (ii) the Prepetition Senior Lenders reserve their rights to assert that the Debtors have an obligation to pay the Default Rate Differential on or after the occurrence of a Termination Event and the Debtors and all other parties-in-interest shall have the right to challenge or otherwise object to the payment of such Default Rate Differential.

For the avoidance of doubt, in the event Prepetition Senior Secured Debt is, and the amounts due to the Prepetition Senior Lenders hereunder are, indefeasibly paid in full in cash prior to the occurrence of or in connection with a Termination Event (subject to the provisions of paragraph 24 hereof), Prepetition Senior Lenders shall automatically be deemed to forever waive their claims to the Default Rate Differential with respect to the period between the Commencement Date and the date of such payment; and

(b)  payment of reasonable fees and expenses of (i) two legal counsel (i.e., two law firms) for the Agents, one of which shall be local counsel, (ii) a single financial advisor (one financial advisor firm) for the Agents, provided that, until a Termination Event shall have occurred, the fees and expenses of such financial advisor shall not exceed $20,000 per month in the aggregate (the "Financial Advisor Monthly Cap") on a rolling basis, such that any overages may be carried over and recovered from any subsequent month's amounts to the extent such subsequent month's amount is less than the Financial Advisor Monthly Cap; (iii) other legal counsel retained by any of the Prepetition Senior Lenders, provided that, until a Termination Event shall have occurred, the fees and expenses of each such counsel shall not exceed $7,500 per month in the aggregate with respect to each Prepetition Senior Lender (the "Participant Monthly Cap") on a rolling basis, such that any overages may be carried over and recovered from any subsequent month's amounts to the extent such subsequent month's amount is less than the Participant Monthly Cap; provided, however, that nothing in this paragraph 8(i) shall prejudice the rights of (x) any Prepetition Senior Lender under section 506(b) of the Bankruptcy Code to seek its reasonable fees and expenses pursuant to the Prepetition Senior Lender Loan Documents and (y) the Debtors to challenge or otherwise object to any such request;

(ii)     for any diminution in the value of the Prepetition Senior Lenders' interests in the Cash Collateral from and after the Commencement Date, (a) replacement security interests in and liens upon  all of the Debtors' assets in which the Agents, for the benefit of the Prepetition Senior Lenders, had liens on the Commencement Date (including, without limitation, cash and receivables and the proceeds thereof, whether existing or hereafter acquired after the Commencement Date and whether or not deposited in the Master Operating Account), (b) first priority security interests and liens upon any and all unencumbered assets of the Debtors, including without limitation the Master Operating Account, the DIP Account, and, subject to entry of the Final Order, causes of action under sections 542, 543, 544, 545, 547, 548, 549, 550, 551, or 553 of the Bankruptcy Code, and (c) junior liens on all encumbered assets which were not otherwise subject to the Prepetition Secured Lenders' liens as of the Commencement Date (collectively, the "<u>Adequate Protection Liens</u>"); <u>provided</u>, <u>however</u>, that the Adequate Protection Liens shall (w) be subject to the Carve-Out (as defined below), (x) exclude any insurance policy (but not exclude the Debtors' entitlement, if any, to payments thereunder (subject to the Senior Lender Prepetition Liens and the Adequate Protection Liens) net of any amounts that may be due to an Insurance Premium Finance Party (as such term is defined in the Prepetition Senior Lender Loan Documents) with respect to such policy) where, subject to authorization of the Court, security interests and liens are granted to an Insurance Premium Finance Party on the Insurance Premium Collateral (as such term is defined in the Prepetition Senior Lender Loan Documents, <u>provided</u> that in no instance will the Insurance Premium Finance Party be granted a security interest in or lien on the DIP Account or the Master Operating Account) to secure the indebtedness of the Debtors to an Insurance Premium Finance Party in connection with insurance policies maintained by the Debtors arising as a result of such Insurance Premium Finance Party

entering into arrangements to allow the Debtors to pay all or a portion of the applicable insurance premiums on such insurance policies in installments rather than in one lump sum annual payment; provided that the Debtors shall continue to abide by the requirements under sections 4.11 of each of the Credit Agreement and the Loan Agreement, provided, however, that notwithstanding anything contained in said sections to the contrary, amounts payable to Agents as loss payees under a casualty or property insurance coverage shall be reduced by amounts owed, if any, to the Insurance Premium Finance Parties with respect to such policies; and provided further that such indebtedness of the Debtors to all Insurance Premium Finance Parties shall not exceed the aggregate principal amount outstanding of $800,000 at any one time ("Insurance Premium Financing"); and (y) neither prime nor impair any perfected liens or perfected security interests in the same collateral that are senior in rank and priority to the Senior Lender Prepetition Liens or the Adequate Protection Liens under applicable nonbankruptcy law as of the Commencement Date, such as statutory liens, if any, that are senior in priority as a result of being perfected under applicable state law prior to the granting of the Adequate Protection Liens; and provided further, however, except as expressly set forth in this Order, the Adequate Protection Liens granted herein shall not be subject to any liens that are avoided and preserved for the benefit of any of the Debtors' estates under section 551 of the Bankruptcy Code, and shall not be subordinated to or made *pari passu* with any other lien under section 364(d) or any other section of the Bankruptcy Code or otherwise; and

(iii)    for any diminution in the value of the Prepetition Senior Lenders' interests in the Cash Collateral from and after the Commencement Date, an administrative expense claim pursuant section 507(b) of the Bankruptcy Code (the "Adequate Protection Claim"), which shall

be senior to any and all other claims (including the DIP Super-Priority Claim, as defined below), but subject to the Carve-Out (as defined below).

9.      The Adequate Protection Liens on property of the Debtors' estates granted herein, including without limitation the security interests and liens in postpetition cash and receivables, the Master Operating Account, the DIP Account and proceeds of each of the foregoing, are valid, binding, effective, enforceable, and fully perfected, and no filing or recordation or other act in accordance with any applicable local, state, for federal law, rule, or regulation, is necessary to create or perfect such Adequate Protection Liens.  The above provision notwithstanding, Debtors shall cooperate with Prepetition Senior Lenders to execute such documents and instruments, and do such other things as Prepetition Senior Lenders may reasonably request, to evidence and perfect such Adequate Protection Liens for the convenience and information of third parties, and to evidence the obligations undertaken by the Debtors hereunder.

10.     None of the Prepetition Senior Lenders shall be deemed to be in control of the Debtors or their operations or to be acting as a "responsible person," "managing agent," or "owner or operator" with respect to the operation or management of the Debtors.

<u>Termination Events</u>

11.     With respect to the use of Cash Collateral hereunder, each of the following shall constitute a  "<u>Termination Event</u>":

(i)      the closing or dismissal of the chapter 11 cases;

(ii)     the conversion of the Debtors' cases to cases under chapter 7 of the Bankruptcy Code;

(iii)    the appointment in these chapter 11 cases of a chapter 11 trustee or an examiner with expanded powers to operate or manage the financial affairs, the businesses or the reorganization of any Debtor;

(iv)    non-compliance by any Debtor with any of the terms or provisions of this Order;

(v)    expiration of the applicable Budget Period without extension pursuant to paragraph 6 above;

(vi)    (a) the Debtors' cumulative expenditures from the Commencement Date through the Date of Determination are more than 110% of the cumulative expenditures for such periods, as set forth in the Budget and the New Budgets, or (b) the aggregate of the Debtors' short-term investments and the cash available in their Master Operating Account and the DIP Account, is less than $1,000,000 at the close of business on May 2, 2008, less than $500,000 at the close of business on May 30, 2008 and on the last day of each four-week period thereafter;

(vii)    if on a cumulative basis, measured every four weeks from the Commencement Date through the last day of every four-week period thereafter, net sales are less than 90% of the net sales reflected in the Budget or any New Budget; provided, that the Debtors shall report such net sales in writing certified by Debtors' CFO within five (5) days of the end of each four-week period and provide comparison to the amounts reflected in the Budget and the New Budgets with a narrative explaining the reasons for any deviations, provided, however, that "net sales" shall not include any sales of tooling or equipment provided for in paragraph 7(i) above or other sales of Debtors' assets;

(viii)    Debtors' failure to (1) file, within ninety (90) days from the Commencement Date, a plan of reorganization (the "Plan") providing for the indefeasible

payment of the Prepetition Senior Secured Debt in full in cash on the effective date of such Plan

(subject to the provisions of paragraphs 8(i) and 24 hereof); or (2) file a disclosure statement

regarding such Plan within one hundred twenty (120) days of the Commencement Date; or (3)

consummate such Plan and emerge from chapter 11 of the Bankruptcy Code within two hundred

seventy (270) days of the Commencement Date, <u>provided</u> such consummation of the Plan and

emergence from chapter 11 of the Bankruptcy Code actually results in the indefeasible payment

of the Prepetition Senior Secured Debt in full in cash on the effective date of the Plan, subject to

the provisions of paragraphs 8(i) and 24 hereof;

(ix)    expiration of thirty (30) days after entry of this Order unless the Final

Order is entered prior to the expiration of such thirty (30) day period;

(x)    entry of an order providing for the sale of more than $1,000,000 (to be

measured in aggregate purchase price and/or book value, whichever is greater for each asset

sold) of the Debtors' assets that does not provide that the proceeds of such sale (less all costs,

expenses and fees related thereto) shall be applied to the Prepetition Senior Secured Debt in

accordance with the terms set forth in the Prepetition Senior Lender Loan Documents (subject to

the Intercreditor Agreement) on the sale closing date, or for which sale the Prepetition Senior

Lenders have not provided prior written consent (subject to the Intercreditor Agreement);

<u>provided</u>, <u>however</u>, that in no case shall the aggregate of any sales permitted hereunder exceed

$5,000,000;

(xi)    the lapse or termination of Debtors' exclusive periods to file and solicit a

plan of reorganization pursuant to section 1121 of the Bankruptcy Code;

(xii)    entry of any order pursuant to section 364 of the Bankruptcy Code

authorizing Debtors to obtain credit that is *pari passu* with or has priority over the Prepetition

Senior Secured Debt and does not provide for the indefeasible payment in full in cash of the

Prepetition Senior Secured Debt (subject to the provisions of paragraphs 8(i) and 24 hereof) and

any outstanding Adequate Protection Payments on the closing date of such financing;

(xiii)    the automatic stay is lifted as to any party in order to take possession or to

permit foreclosure on any portion of the Senior Lender Prepetition Collateral or any other

collateral subject to the Adequate Protection Liens, the value of which, as measured by fair

market value or book value, whichever is greater, exceeds $1,000,000 in the aggregate; or

(xiv)    any uninsured loss with respect to the Senior Lender Prepetition Collateral

or any other collateral subject to the Adequate Protection Liens in an amount equal to or

exceeding $1,000,000.

12.    Following the occurrence of a Termination Event, Debtors shall have five

(5) business days after receipt of written notice from Revolver Agent and Term Loan Agent, on

behalf of themselves, and the Prepetition Senior Lenders to cure such Termination Event, if it is

capable of cure (the "Cure Period").  The Revolver Agent and the Term Loan Agent shall serve

notice of the Termination Event on the Debtors, the U.S. Trustee, the Committee, and, if no

Committee is yet appointed, on the top 20 creditors holding unsecured claims.

13.    If, upon the expiration of the Cure Period, the Debtors have not cured the

Termination Event (assuming such Termination Event is curable) and the notice referred to in

paragraph 12 has not been withdrawn (herein referred to as the "Termination Date"), (a) the

Debtors shall cease all use of Cash Collateral and any authority of Debtors under this Order to

use Cash Collateral shall terminate; and (b) the Prepetition Senior Lenders shall be granted,

without further action of the Prepetition Senior Lenders or the Court, immediate and automatic

relief from the automatic stay under section 362 of the Bankruptcy Code, which shall be

automatically terminated as it relates to the Senior Lender Prepetition Collateral and all other

collateral in which Adequate Protection Liens have been granted without further action of the

Prepetition Senior Lenders or this Court.  Notwithstanding the occurrence of the Termination

Date or anything herein to the contrary, all of the rights, remedies, benefits, and protections

provided to the Prepetition Senior Lenders under this Order shall survive the Termination Date.

In addition, upon the occurrence of the Termination Date, if instructed by the Revolver Agent

and the Term Loan Agent, FirstMerit or any other bank or financial institution with which the

Debtors establish an account, shall transfer all of the available funds on deposit in such account

as directed by the Revolver Agent and the Term Loan Agent; provided, however, that if it is

subsequently determined that the Prepetition Senior Lenders did not have Senior Lender

Prepetiton Liens or Adequate Protection Liens on such accounts, the Prepetition Secured Lenders

shall disgorge and repay to the Debtors' estates such portion of the funds as to which they did not

have Senior Lender Prepetiton Liens or Adequate Protection Liens; provided, further, however,

that notwithstanding the foregoing, (i) any existing deposit account control agreements shall

continue in full force and effect subject to the terms of this Interim Order, and (ii) within 45 days

of the establishment of a new bank account, deposit account, securities account or other account,

the Debtors, the Revolver Agent (for the benefit of the Prepetition Senior Lenders, subject to the

Intercreditor Agreement) and each bank or financial institution with which the Debtors establish

such deposit account shall enter into a deposit account control agreement or similar applicable

agreement, which shall be in form and substance reasonably satisfactory to the Revolver Agent;

provided, further, that the Debtors shall notify the Revolver Agent in writing within five (5)

business days thereof of the establishment of any new bank account, deposit account, securities

account, or other account.

The DIP Loans

14.    The Debtors are hereby authorized to obtain an interim unsecured DIP Loan in the amount of $2,000,000 (the "Interim DIP Loan") to be evidenced by a Note, and on terms and conditions, substantially in the form annexed hereto as Exhibit A, including, without limitation, monthly payment of interest on the Interim DIP Loan at the rate set forth therein and payment of a fee in the amount of $40,000.

15.    The Debtors are hereby authorized to execute a Note substantially in the form attached hereto as Exhibit A and are hereby authorized and directed to do and perform all acts, including, without limitation, making, executing, and delivering all instruments and documents, that may be necessary or desirable to implement the Interim DIP Loan and perform under the Note.

16.    The Debtors are hereby authorized and directed to deposit the proceeds of the Interim DIP Loan into a new bank account at a bank that has been approved by the Office of the U.S. Trustee as an authorized bank depository (the "DIP Account") and no other funds or Cash Collateral of the Debtors shall be commingled with the proceeds of the Interim DIP Loan or deposited into the DIP Account; provided, however, that the DIP Account shall be subject to any and all security interests and liens granted hereunder and hereby perfected in favor of the Senior Prepetition Lenders, including without limitation the requirements for entering into a deposit account control agreement set forth in paragraph 13.

17.    Upon entry of this Order, and subject to the terms of the Note, the Debtors' obligations under the Note shall constitute valid, binding, and enforceable obligations of the Debtors.

18.      No obligation, payment, or transfer under the Interim DIP Loan or this

Order shall be stayed, restrained, voidable, or recoverable under the Bankruptcy Code or under

any applicable law except as may be in violation of the terms of this Order.

Use of the Interim DIP Loan

19.      The Debtors are hereby authorized to use proceeds of the Interim DIP

Loan only to the extent Cash Collateral is insufficient to fund working capital requirements and

general corporate purposes relating to the Debtors' postpetition operations and for other

expenditures authorized by this Order, the Final Order or that are otherwise authorized by the

Court; provided, however, that no portion of the proceeds shall be used, directly or indirectly, to

(a) finance or make any payment or prepayment to any person with respect to a prepetition

indebtedness unless authorized by this Order or another order of the Court; or (b) finance in any

way any investigation, adversary action, suit, arbitration, proceeding or other litigation of any

type against the DIP Lenders or the Prepetition Senior Lenders.

Super-Priority Claim

20.      Pursuant to section 364(c)(1) of the Bankruptcy Code, the DIP Lenders are

hereby granted a super-priority claim (the "DIP Super-Priority Claim") payable from any

prepetition and postpetition property of the Debtors and all proceeds thereof and senior to any

and all other unsecured claims, including, without limitation, all administrative expenses or other

claims arising under sections 105, 326, 328, 330, 331, 503(b), 506(c), 507(a), 507(b), 726, 1113

or 1114 of the Bankruptcy Code, provided, however, that notwithstanding the foregoing, the DIP

Super-Priority Claim shall be junior, subordinate, and subject to the Adequate Protection Claim,

the Prepetition Senior Secured Debt, the Senior Lender Prepetition Liens, the Carve-Out (as

defined below), and the Adequate Protection Liens.  As provided above, under no circumstances

are the DIP Lenders to be paid any amount (other than the interest, fees and expenses required to

be paid under the Note(s) and in accordance with the Budget or the New Budget, as applicable)

in respect of any claim or obligation under the Interim DIP Loan or the DIP Loans, unless and

until the Prepetition Senior Secured Debt is indefeasibly paid in full in cash, subject to the

provisions of paragraphs 8(i) and 24 hereof.

        21.    Subject to the Carve-Out, the Adequate Protection Liens, the Prepetition

Senior Secured Debt and the Adequate Protection Claim, the DIP Super-Priority Claim shall at

all times be senior to any unsecured claims of any creditor or other entity in this and any

subsequent case under the Bankruptcy Code, and with the exception of the Carve-Out, the

Adequate Protection Liens, Prepetition Senior Secured Debt and the Adequate Protection Claim,

no cost or expense of administration or any claims in this case, including those resulting from or

incurred after any conversion of this case pursuant to section 1112 of the Bankruptcy Code shall

rank prior to, or on parity with, the DIP Super-Priority Claims.

Maturity Date

        22.    The Debtors may continue to use the Interim DIP Loan proceeds until the

earliest of (i) the one year anniversary of the Commencement Date, (ii) the effective date of a

confirmed chapter 11 plan of reorganization in these chapter 11 cases, (iii) the conversion of any

of these chapter 11 cases to cases under chapter 7 of the Bankruptcy Code, and (iv) the

appointment of a chapter 11 trustee in any of these chapter 11 cases or the appointment of an

examiner with expanded powers to operate or manage the financial affairs, the business or the

reorganization of any Debtor, and (v) the date of acceleration by the DIP Lenders pursuant to

section 7 (Events of Default) of the Note (collectively, the "Maturity Date").

Carve-Out

           23.      The Senior Lender Prepetition Liens, the Adequate Protection Claim, the

Adequate Protection Liens, and the DIP Super-Priority Claim shall be subject to the payment of

the following items (collectively, the "Carve-Out"): (i) fees of the clerk of the Bankruptcy Court,

the clerk of any court to which an appeal may be taken, and the United States Trustee pursuant to

28 U.S.C. § 1930(a) and (b); (ii) pursuant to section 726(b) of the Bankruptcy Code, reasonable

fees and expenses of a trustee that are incurred after the conversion of these chapter 11 cases to a

case under chapter 7 of the Bankruptcy Code, in an amount not to exceed $100,000; and (iii)

upon the occurrence of the Termination Date or the Maturity Date (which occurrences shall be

the trigger dates of this clause and not the measuring points with respect to any fees or expenses),

the aggregate allowed unpaid professional fees and expenses payable under sections 330 and 331

of the Bankruptcy Code to professionals retained pursuant to an order of the Court by the

Debtors and any statutory committee(s) appointed in the Debtors' chapter 11 cases for services

rendered and expenses incurred, as well as fees and expenses payable to any trustee or examiner

appointed or elected in these chapter 11 cases, to the extent this Court allows the payment

thereof, in an amount not to exceed $500,000, provided that the first $400,000 only shall be paid

from the assets subject to Senior Lender Prepetition Liens and the Adequate Protection Liens

(including Cash Collateral) and that would otherwise be paid to the Prepetition Senior Lenders in

respect of the Adequate Protection Claim (the "Prepetition Senior Lenders' Fee Carve-Out

Amount"), and the balance between $500,000 and the Prepetition Senior Lenders' Fee Carve-Out

Amount shall be paid from whatever assets would be distributed on account of the DIP Super-

Priority Claim; provided, however, that prior to the occurrence of the Termination Date or the

Maturity Date, the Debtors shall be permitted to pay from the Cash Collateral and the Interim

DIP Loan, as the same may be due and payable, all professional fees and expenses pursuant to

sections 330 and 331 of the Bankruptcy Code as authorized by the Court that were rendered or

incurred, as applicable, prior to the occurrence of the Termination Date or the Maturity Date.

For the avoidance of doubt, with respect to the Prepetition Senior Lenders, the Carve-Out for

clauses (ii) and (iii) of the preceding sentence shall not exceed $500,000 in the aggregate.

Protection of Prepetition Senior Lenders and DIP Lenders' Rights

      24.     With respect to any issued and outstanding letters of credit  (collectively,

the "Outstanding Letters of Credit"), the Debtors shall comply with the terms of section 2.7(k) of

the Credit Agreement, provided that in any event, such Outstanding Letters of Credit shall be

released and returned to the holder thereof within ninety (90) days of indefeasible payment in

full of the Senior Lender Prepetition Debt (subject to the provisions of paragraph 8(i) hereof),

including without limitation any such payment in full in connection with the Plan referenced in

paragraph 11(viii) hereof.

      25.     The provisions of the Interim DIP Loan and this Order are binding upon

all the parties in interest in these chapter 11 cases, including, without limitation, the Prepetition

Senior Lenders, the DIP Lenders and the Debtors, the Committee, and their respective successors

and assigns (including any chapter 7 or chapter 11 trustee hereafter appointed or elected for the

estates of the Debtors or an examiner appointed pursuant to section 1104 of the Bankruptcy

Code), and inure to the benefit of the Prepetition Senior Lenders, the DIP Lenders and the

Debtors and, except with respect to any trustee hereinafter appointed or elected for the estates of

the Debtors, their respective successors and assigns.  In addition, neither the terms of this Order,

nor the filing of these bankruptcy cases generally, shall be deemed to modify or affect the

respective rights and obligations among the Prepetition Senior Lenders under the Intercreditor

Agreement.

26.    Notwithstanding anything herein to the contrary, this Order is without prejudice to, and does not constitute a waiver (other than the waiver set forth in paragraph 8(i) regarding the Default Rate Differential), expressly or implicitly, of the rights of the Prepetition Senior Lenders to seek additional adequate protection should circumstances warrant.

27.    Entry of this Order shall not in any way (i) constitute agreement, consent, or acquiescence to the terms of any plan of reorganization by virtue of any term or provision of this Order; or (ii) prevent the Prepetition Senior Lenders or the DIP Lenders from objecting, for any reason, to any requests, motions or applications made in this Court (other than this Order), including any applications for interim or final allowances of compensation for services rendered or reimbursement of expenses incurred under sections 105(a), 330 or 331 of the Bankruptcy Code, by any party in interest.

28.    The Prepetition Senior Lenders and the DIP Lenders, having been found to be acting in good faith, shall be entitled to the full protection of section 364(e) of the Bankruptcy Code and, therefore, if any or all of the provisions of this Interim Order are hereafter reversed, stayed, modified, or vacated, such reversal, stay, modification, or vacation shall not affect (i) the validity of any obligation, indebtedness, or liability incurred by the Debtors to the Prepetition Senior Lenders or the DIP Lenders prior to written notice to such party of the effective date of such reversal, stay, modification, or vacation, or (ii) the validity and enforceability of any priority authorized or created hereby or pursuant to the Note with respect to any such indebtedness, obligation, or liability, including, without limitation, the Adequate Protection Liens, the Adequate Protection Claim, the DIP Super-Priority Claim, the Prepetition Senior Secured Debt, and the Senior Lender Prepetition Liens.  Notwithstanding any such reversal, stay, modification, or vacation, any indebtedness, obligations, or liabilities incurred by the Debtors to

the Prepetition Senior Lenders and the DIP Lenders prior to written notice to such party of the

effective date of such reversal, stay, modification, or vacation shall be governed in all respects by

the original provisions of this Order, and the Prepetition Senior Lenders and the DIP Lenders

shall be entitled to all the claims, priorities, rights, remedies, privileges, and benefits granted

herein and/or pursuant to the Note until the Senior Prepetition Secured Debt (subject to the

provisions of paragraphs 8(i) and 24 hereof),  Adequate Protection Claim and all of the

obligations under the Note are indefeasibly paid in full and discharged in cash.

Releases

             29.     All representations, stipulations, acknowledgments, and agreements of the

Debtors above, are for all purposes subject to the rights of the Committee, any other statutory

committee or, as authorized by the Court, any other party in interest (other than the Debtors or

any successor to the Debtors, including, without limitation, any chapter 11 trustee or chapter 7

trustee), to file a complaint pursuant to Bankruptcy Rule 7001 seeking to invalidate, subordinate

or otherwise challenge (including, without limitation, a determination of the validity, priority,

and extent of any lien) the obligations under the Prepetition Senior Lender Loan Documents or

the Senior Lender Prepetition Liens, including asserting any other Claims and Defenses;

provided, however, (i) that any such complaint must be filed in this Court within the later of

sixty (60) days from the date of entry of the order approving the appointment of counsel for such

committee (or if no committee is formed, seventy five (75) days from the Commencement Date)

or any subsequent date that may be ordered by the Court for cause shown before the expiration

of such period (the "Challenge Period"); and (ii) if no such action is commenced during the

Challenge Period, all Claims and Defenses shall be deemed, immediately, and without further

action by the Prepetition Senior Lenders or the Court, to have been forever relinquished and

waived by the Committee and any other person or entity with actual or constructive notice of these chapter 11 cases, including any chapter 11 trustee or chapter 7 trustee.

30.    In consideration of Debtors' use of Cash Collateral, the Debtors (on behalf of themselves and any successor to the Debtors, including any chapter 11 trustee or chapter 7 trustee) voluntarily and knowingly release and forever discharge the Prepetition Senior Lenders in all their respective capacities, their predecessors, agents, attorneys, financial advisors, direct and indirect parents, subsidiaries and affiliates, members, managers, servicers, directors, officers, employees, successors and assigns from all possible claims, counterclaims, demands, actions, causes of action, damages, costs, expenses and liabilities whatsoever, known or unknown, anticipated or unanticipated, suspected or unsuspected, at law or in equity, originating in whole or in part on or before the date hereof, which the Debtors may now know or hereafter come to know they have against Prepetition Senior Lenders in all of their respective capacities, their predecessors, agents, attorneys, direct and indirect parents, subsidiaries and affiliates, members, managers, servicers, directors, officers, employees, successors and assigns, if any, and irrespective of whether any such claims arise out of contract, tort, violation of law or regulations, or otherwise; provided, however, that these releases shall not preclude the Committee or any other statutory committee appointed in these chapter 11 cases, if so authorized by the Court, from commencing, fully prosecuting, and collecting upon, any and all claims of whatever kind or nature that the Debtors' estates could otherwise assert but for the releases contained herein but subject in any event to the terms of paragraph 29.

31.    No provision of the Interim DIP Loan or the implementation thereof is intended to or shall be deemed to create any claim or cause of action against the DIP Lenders or

any of their affiliates or disallowance or subordination of any of the claims of the DIP Lenders or

any of their affiliates based upon lender liability, equitable subordination or otherwise.

<u>Reporting</u>

        32.      Existing reporting requirements shall continue, including without

limitation full financial reports required under the Prepetition Senior Lender Loan Documents,

which shall be provided on a monthly basis within thirty (30) days of the end of each month and

on a quarterly and yearly basis pursuant to and in the form prescribed by the Prepetition Senior

Lender Loan Documents (or on such other schedule or in such other form as the parties may

agree); <u>provided</u>, <u>however</u>, that the deadline for delivery of the Debtors' report on Form 10-K for

the fiscal year ended December 31, 2007, is extended by thirty (30) days and the deadlines for

delivery of the Debtors' reports on Form 10-Q for the fiscal quarters ending March 31 and June

30, 2008 are extended by fifteen (15) days.  In addition, and without limiting the foregoing or

any other reporting requirement contained hereunder, the Debtors shall prepare and submit (a)

the reports referred to in paragraphs 5 and 11(vii) hereof prior to the deadlines set forth therein,

(b) reports indicating any and all information that is required by the borrowing base certificates

under the Prepetition Senior Lender Loan Documents for the previous week prior to 5:00 p.m. on

Tuesday following the week being reported (or by such other date and time as the parties may

agree); and (c) any other and further reports reasonably requested by the Prepetition Senior

Lenders.  Commencing on or about April 16, 2008, the Prepetition Senior Lenders and the

Debtors shall have a bi-weekly phone conference (the "<u>Status Call</u>"), on such dates, at such

times, and on such other schedule as the parties may agree, to update the Prepetition Senior

Lenders on the Debtors' financial and operational status, including updates as to relations with

customers, vendors and suppliers.

33.    The Debtors shall also provide the Prepetition Senior Lenders copies of all reports made for or documents given to the United States Trustee in these chapter 11 cases.

34.    Debtors shall permit representatives, agents, and/or employees of the Prepetition Senior Lenders, including professionals retained by the Prepetition Senior Lenders' legal professionals, to have reasonable access to its premises and records during normal business hours (without unreasonable interference with the proper operation of Debtors' businesses) and shall cooperate, consult with, and provide to such persons all such non-privileged information as they may reasonably request.

<u>Modifications/Amendments</u>

35.    Any material and substantive modifications to the terms of this Order, the Interim DIP Loans or the Note require the prior written consent of the Prepetition Senior Lenders.  Any modifications to the terms of the Interim DIP Loans or the Note require the prior written consent of the DIP Lenders, and any material and substantive modifications to the terms of this Order require the prior written consent of the DIP Lenders.

<u>Notice</u>

36.    Under the circumstances, the notice given by the Debtors of the Motion and of the Interim Hearing constitutes due and sufficient notice of the Motion and of the Interim Hearing.  The Debtors shall promptly mail copies of this Order to the parties given notice of the Interim Hearing, any party that has filed a request for notices with this Court, and any statutory committee appointed in these bankruptcy cases or its counsel.

<u>Final Hearing</u>

37.    The Court shall conduct the Final Hearing on the Motion to consider entry of the Final Order on April 17, 2008, at 2:00 p.m., prevailing Eastern Time. Any party in interest

objecting to the relief sought at the Final Hearing must file a written objection with the Clerk of

the United States Bankruptcy Court for the Southern District of New York, and serve any such

objection on the following parties, so that it is <u>received</u> no later than five (5) business days before

the Final Hearing:  (a) Counsel for the Debtors, Weil, Gotshal & Manges LLP, 767 Fifth

Avenue, New York, NY 10153, Attention: Richard P. Krasnow, Esq. (Facsimile: 212.310.8007),

Christopher Marcus, Esq. (Facsimile: 212.310.8007), (b) Counsel for the Prepetition Senior

Lenders: Waller Lansden Dortch & Davis, LLP, 511 Union Street, Suite 2700, Nashville, TN

37219, Attention: John C. Tishler, Esq., (Facsimile: 615-244-6804), Robert L. Welhoelter, Esq.

(Facsimile: 615-244-6804); Day Pitney LLP, 200 Campus Drive, Florham Park, NJ 07932,

Attention Scott Zuber, Esq. (Facsimile: 973-966-1015); Katten Muchin Rosenman LLP, 525

West Monroe Street, Chicago, IL 60661, Attention Jeffrey L. Elegant, Esq. (Facsimile: 312-577-

4676); (c) the DIP Lenders, c/o Michael A. Lubin, Lexington Precision Corporation, 800 Third

Avenue, 15th Floor, New York, NY 10022 (Facsimile: 212.319.4659), (e) counsel for the DIP

Lenders, O'Melveny & Myers LLP, 7 Times Square, New York, NY 10036, Attention:  Gerald

C. Bender, Esq. (Facsimile:  212-362-2061); and (f) the Office of the United States Trustee for

the Southern District of New York.

      38.     In the event that any provision of this Order conflicts with any term of the

Note, this Order shall govern.

39.     The requirement set forth in Local Bankruptcy Rule 9013-1(b) for the

filing of a separate memorandum of law in support of the Motion is satisfied.

Dated: April 2, 2008.
New York, New York

<u>**s/Arthur J. Gonzalez**</u>

United States Bankruptcy Judge

Acknowledgement:

Prepetition Senior Lenders hereby consent to the use of Cash Collateral as provided in this
Order, including, without limitation, the waiver of the Default Rate Differential in paragraph 8(i)
of this Order.

By:  /s/ John C. Tishler
     John C. Tishler, Esq.
     WALLER LANSDEN DORTCH & DAVIS, LLP
     511 Union Street, Suite 2700
     Nashville, TN 37219

By: /s/ Scott Zuber
     Scott Zuber, Esq.
     DAY PITNEY LLP
     200 Campus Drive
     Florham Park, NJ 07932

By: /s/ Jeffrey L. Elegant
     Jeffrey L. Elegant, Esq.
     KATTEN MUCHIN ROSENMAN LLP
     525 West Monroe Street
     Chicago, IL 60661

Attorneys for the Prepetition Secured Lenders

**<u>EXHIBIT A</u>**

Form of Note

**<u>EXHIBIT B</u>**

Budget