TROUTMAN SANDERS LLP
The Chrysler Building
405 Lexington Ave
New York, NY 10174
Telephone: (212)704-6000
Facsimile: (212)704-6288
Lee W. Stremba, Esq.
Garrett A. Nail Esq.

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-----------------------------------------------------------------x
                                                    :
**In re**                                           :    Chapter 11 Case No.
                                                    :
**LEXINGTON PRECISION CORP., <u>et al.</u>,**       :    08-11153 (MG)
                                                    :
         **Debtors.**                               :    (Jointly Administered)
                                                    :
-----------------------------------------------------------------x

**GEORGIA POWER COMPANY'S OBJECTION TO DEBTORS' MOTION PURSUANT TO SECTIONS 105(a) AND 366 OF THE BANKRUPTCY CODE FOR AN ORDER (I) APPROVING DEBTORS PROPOSED ADEQUATE ASSURANCE OF PAYMENT; (II) RESOLVING OBJECTIONS BY UTILITY COMPANIES; AND (III) PROHIBITING UTILITIES FROM ALTERING, REFUSING OR DISCONTINUING SERVICE**

Georgia Power Company ("Georgia Power") by and through its undersigned counsel, objects to Debtors' Motion Pursuant to Sections 105(a) and 366 of the Bankruptcy Code for an Order (I) Approving Debtors' Proposed Adequate Assurance of Payment; (II) Resolving Objections by Utility Companies; and (III) Prohibiting Utilities from Altering, Refusing or Discontinuing Service (the "Utility Motion"). In support of its objection, Georgia Power represents as follows:

**INTRODUCTION**

1.      Lexington Precision Corp., *et al.* ("Debtors") seek to circumvent the procedures expressly established by the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005

("BAPCPA") for handling adequate assurance payments to utility providers. The Utility Motion supplants BAPCPA's protections afforded to utility providers with a procedure unsupported by the Bankruptcy Code and in contravention to Congressional intent. Therefore, Georgia Power respectfully requests the Court deny Debtors' Utility Motion.

## BACKGROUND

2.    Debtors filed a voluntary petition for relief under Chapter 11 of Title 11 of the United States Code on April 1, 2008 (the "Petition Date").

3.    Georgia Power provides electric utility service to Debtors' facilities located at 1076 Ridgewood Road, Jasper, Georgia 30143, under five (5) individual accounts.

4.    The Utility Motion, which was filed on April 2, 2008, requests that the Court enter an order, among other things: (i) approving Debtors' offer of a deposit equal to the average utility consumption for a two week period as adequate assurance of payment (the "Proposed Deposit"); (ii) resolving any objections to the Utility Motion by utility companies; (iii) shortening the time periods set forth under Section 366 of the Bankruptcy Code; (iv) deeming utilities accepting the proposed adequate assurance as having received adequate assurance under Section 366 of the Bankruptcy Code; and (v) prohibiting utility providers from altering, refusing, or discontinuing service on the basis of the commencement of this case or a debt that is owed by Debtors for pre-petition services.

5.    Georgia Power requests from customers in bankruptcy a post-petition security deposit representing the average electrical usage for a two month period, calculated by referring to consumption during the twelve months preceding the bankruptcy filing.

6.      Georgia Power "reads" the service meter on a monthly basis, thus determining electrical consumption for the approximately 30 days preceding the reading. A few days after the meter reading, Georgia Power issues a bill representing the charges for the previous month's services. Payment is due 10 days after the rendering of the bill and Georgia Power does not consider the account delinquent until after the payment date has passed. Thus, Georgia Power extends service to its customers on credit for approximately 45 days before payment is due.

7.      Thereafter, if the customer has not timely paid the outstanding invoice, Georgia Power's Rules and Regulations require Georgia Power to provide notice of non-payment and additional time before Georgia Power may terminate electric service. Accordingly, Georgia Power often provides more than 60 days of electric service before it seeks to terminate service. Therefore, a deposit representing the average electricity usage for a two month period is necessary to adequately assure Georgia Power payment for electrical service provided. Moreover, a request for a two month deposit complies with Georgia Power's Rules and Regulations, as approved by the Public Service Commission of Georgia.

8.      Georgia Power requested a deposit in the amount of $141,305.00, which represents the aggregate two month average use for all accounts, based upon consumption during the twelve months preceding the Petition Date. A true and correct copy of Georgia Power's request is attached hereto as "Exhibit A." Georgia Power's counsel negotiated in good faith with counsel for Debtors, but the parties not reach a resolution regarding adequate assurance of payment.

**Governing Law: 11 U.S.C. § 366**

9. Before BAPCPA, debtors commonly provided non-tangible forms of adequate assurance which were generally already available through other provisions in the Bankruptcy Code. See e.g. Virginia Elec. & Power Co. v. Caldor, Inc., 117 F.3d 646 (2d Cir. 1997) (finding that the granting of an administrative expense priority qualified as adequate assurance of payment, notwithstanding that the utility provider already was entitled to an administrative expense claim for post-petition electric service). In enacting BAPCPA, Congress amended Section 366 by promulgating subsection (c) and overruling the Caldor line of cases.

10. Subsection (c) provides:

> (c)(1)(A)  For purposes of this subsection, the term "assurance of payment" means—
>
> (i)   a cash deposit;
>
> (ii)  a letter of credit;
>
> (iii) a certificate of deposit;
>
> (iv)  a surety bond;
>
> (v)   a prepayment of utility consumption; or
>
> (vi)  another form of security that is mutually agreed on between the utility and the debtors or trustee.
>
> (B)   For purposes of this subsection an administrative expense priority shall not constitute an assurance of payment.
>
> (2)   Subject to paragraphs (3) and (4), with respect to a case filed under Chapter 11, a utility referred to in subsection (a) may alter, refuse, or discontinue utility service, if during the 30-day period beginning on the date of the filing of the petition, the utility does not receive from the debtors or the trustee adequate assurance of payment for utility service that is satisfactory to the utility.

(3)(A)  On request of a party in interest and after notice and a hearing, the court may order modification of the amount of an assurance of payment under paragraph (2).

(B)  In making a determination under this paragraph, whether an assurance of payment is adequate, the court may not consider –

(i)  the absence of security before the date of the filing of the petition;

(ii)  the payment by the debtors of charges for utility service in a timely manner before the date of the filing of the petition; or

(iii)  the availability of an administrative expense priority.

(4)  Notwithstanding any other provision of law, with respect to a case subject to this subsection, a utility may recover or set off against a security deposit provided to the utility by the debtors before the date of filing of the petition without notice or order of the court.

11. The amended Section 366 substantially altered the procedures commonly followed for providing adequate assurance to utility providers. Subsection (c) specifically provides that granting utility providers an administrative expense claim no longer qualifies as adequate assurance. Rather, only certain tangible forms of security are acceptable unless a particular utility provider is willing to consent to an alternative arrangement, and the determination of what form is acceptable lies within the sole discretion of the utility provider.

12. Moreover, Section 366(c) unequivocally places the burden of promptly providing adequate assurance on the debtor, not on the utilities. Specifically, Paragraph (2) authorizes a utility to alter, refuse or disconnect service if it does not receive, within 30 days of the filing of the petition, assurance of payment <u>it deems satisfactory</u>. Thus, a debtor who fails to promptly provide adequate assurance, satisfactory to the utility, faces the risk of having the utility provider discontinue service.

13. Section 366(c)(3)(A) authorizes a party in interest to seek a modification of the adequate assurance provided in Paragraph (2); however, it may do so only *after* the debtor has delivered such assurance to the utility. In In re Lucre, 333 B.R. 151, 154 (W.D. Mich. 2005), the debtor requested an injunction to prevent a utility from disconnecting service. The injunction would continue beyond the thirty day period provided for in subsection (a). The court denied the request, finding that because the debtor did not provide adequate assurance satisfactory to the utility, it could not seek modification of the adequate assurance.

14. Congress intends to provide greater protection to utility providers with the addition of subsection (c). The subsection recognizes the exposure utilities face when providing post-petition service to debtors, and therefore expressly grants them the discretion to determine adequate assurance of payment. Moreover, the subsection requires expediency on a debtor's behalf, as the utility's exposure increases with the passing of time. Finally, many utilities, including Georgia Power, are restricted by state law from requesting a deposit greater than a debtor's average use during a two month period.

## The Utility Motion Does Not Comply With Section 366

15. The Utility Motion's proposed adequate assurance procedures are in contravention of Section 366.

16. First, the Proposed Deposit is not "adequate" to protect Georgia Power against a post-petition payment default. As discussed above, Georgia Power is exposed to a substanital post-petition payment default representing greater than 60 days of utility service, yet Debtors submit that a deposit equal to 14 days adequately protects Georgia Power. It is inconceivable to suggest a deposit equaling 14 days somehow qualifies as "adequate assurance of payment" for

- 6 -

60-plus days of utility service. Simply put, Georgia Power's exposure is substantial and the near-meaningless assurance offered by Debtors falls far from adequately protecting Georgia Power's interests. Accordingly, the Court should not endorse the Proposed Deposit, as it does not comply with subsection (c) of Section 366 of the Bankruptcy Code.

17. The Utility Motion also improperly places the burden of obtaining adequate assurance on the utility company, by requiring it to request adequate assurance within 15 days of the Petition Date. Section 366(c)(2) authorizes a utility provider to refuse, modify or terminate the service provided to a debtor <u>if the utility does not receive</u> within 30 days from the filing of a bankruptcy petition assurance of payment the <u>utility deems satisfactory</u>. Only thereafter, in accordance with subsection (c)(3) of Section 366, may a debtor file a motion seeking a modification of the assurance provided to the utility.

18. There is no provision in Section 366 that places the onus of receiving a deposit on the utilities; rather, the Bankruptcy Code clearly establishes that, to defeat the possibility of disconnection, a debtor must provide to the utility satisfactory assurance of payment. Moreover, there is no provision in the Bankruptcy Code which requires a utility to make a request within a certain number of days from a petition, or otherwise face waiving the right to request a deposit. The Utility Motion asks the Court to ignore the procedures set forth in the plain language of Section 366.

19. Additionally, the Utility Motion requires a utility objecting to the Proposed Deposit to provide an objection, in writing, setting forth: (i) the amount and form of deposit requested, (ii) the location for which the relevant utility services are provided, (iii) the Debtors' payment history, including a list of any deposits or other security currently held, and (iv) the

- 7 -

reasons the utility believes the Proposed Deposit does not constitute adequate assurance. Moreover, the Utility Motion requires the utility to make such request within 15 days from the Petition Date. Notwithstanding that the Debtor already possesses much of the information it requests, Section 366 does not require utilities to provide such information. Rather, Section 366(c)(3)(B) prohibits the Court from considering historical account activity in determining whether to modify the amount of adequate assurance previously provided to Georgia Power (notwithstanding that Georgia Power has yet to receive assurance it deems satisfactory).

20. Finally, the Utility Motion impermissibly requires a utility accepting the Proposed Deposit to waive its right to request additional assurance at a later date. Section 366 neither expressly nor implicitly prohibits a utility from requiring additional adequate assurance, should the Debtor's financial situation change.

## **RELIEF REQUESTED**

20. Based upon the foregoing, Georgia Power requests that the Court enter an order:

(i) denying the Utility Motion;

(ii) denying Debtors' request for approval of the procedures set forth in the Utility Motion;

(iii) requiring Debtors to deliver to Georgia Power a cash deposit in the amount of $141,305.00; and

(iv) granting to Georgia Power such other relief the Court deems just and proper.

- 9 -

Dated:  April 16, 2008

/s/ Lee W. Stremba
Lee W. Stremba, Esq.
Troutman Sanders LLP
405 Lexington Ave
New York, New York   10174
Telephone:    (212) 704-6000
Facsimile:      (212) 704-6288

Garrett A. Nail (Ga. Bar No. 997924)
Troutman Sanders LLP
Bank of America Plaza, Suite 5200
600 Peachtree Street
Atlanta, Georgia 30308
Telephone:    (404) 885-3000
Facsimile:      (404) 962-6625

Attorneys for Georgia Power Company

TROUTMAN SANDERS LLP
The Chrysler Building
405 Lexington Ave
New York, NY 10174
Telephone: (212)704-6000
Facsimile: (212)704-6288
Lee W. Stremba, Esq.
Garrett A. Nail Esq.

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-----------------------------------------------------------------x
                                                :
**In re**                                       :   **Chapter 11 Case No.**
                                                :
**LEXINGTON PRECISION CORP., <u>et al.</u>,**   :   **08-11153 (MG)**
                                                :
       **Debtors.**                             :   **(Jointly Administered)**
                                                :
-----------------------------------------------------------------x

## CERTIFICATE OF SERVICE

This is to certify that, on April 16, 2008, the undersigned served ***GEORGIA POWER COMPANY'S OBJECTION TO DEBTORS' MOTION PURSUANT TO SECTIONS 105(a) AND 366 OF THE BANKRUPTCY CODE FOR AN ORDER (I) APPROVING DEBTORS PROPOSED ADEQUATE ASSURANCE OF PAYMENT; (II) RESOLVING OBJECTIONS BY UTILITY COMPANIES; AND (III) PROHIBITING UTILITIES FROM ALTERING, REFUSING OR DISCONTINUING SERVICE*** upon the following by causing a copy of the notice to be deposited in the United States mail, with adequate first-class postage affixed thereto, addressed as follows:

| | |
|---|---|
| Lexington Precision Corp.<br>800 Third Avenue<br>15th Floor<br>New York, New York   10023<br><br>Attn:  Michael A. Lubin | Weil, Gotshal & Manges LLP<br>767 Fifth Avenue<br>New York, New York   10153<br><br>Attn:  Christopher J. Marcus, Esq.<br>          John W. Lucas, Esq. |

- 2 -

| | |
|---|---|
| Office of the U.S. Trustee for the<br>  Southern District of New York<br>33 Whitehall Street<br>21st Floor<br>New York, New York   10004<br><br>Attn:  Paul Schwartzberg, Esq. | Waller, Landsden, Dortch & Davis, LLP<br>511 Union Street<br>Suite 2700<br>Nashville, Tennessee   37219<br><br>Attn:  John C. Tishler, Esq. |
| O'Melveny & Meyers, LLP<br>Times Square Tower<br>7 Times Square<br>New York, New York   10036<br><br>Attn:  Gerald Bender, Esq. | |

/s/ Garrett Nail
Lee W. Stremba, Esq.
Troutman Sanders LLP
405 Lexington Ave
New York, New York   10174
Telephone:     (212) 704-6000
Facsimile:     (212) 704-6288

Garrett A. Nail (Ga. Bar No. 997924)
Troutman Sanders LLP
Bank of America Plaza, Suite 5200
600 Peachtree Street
Atlanta, Georgia 30308
Telephone:     (404) 885-3000
Facsimile:     (404) 962-6625

Attorneys for Georgia Power Company

Exhibit A

# TROUTMAN SANDERS LLP
ATTORNEYS AT LAW
A LIMITED LIABILITY PARTNERSHIP

BANK OF AMERICA PLAZA
600 PEACHTREE STREET, N.E. - SUITE 5200
ATLANTA, GEORGIA 30308-2216
www.troutmansanders.com
TELEPHONE: 404-885-3000
FACSIMILE: 404-885-3900

Garrett Nail
garrett.nail@troutmansanders.com

Direct Dial: 404-885-3093
Direct Fax: 404-962-6625

April 7, 2008

John Lucas, Esq.
Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, New York 10153
United States of America

RE:     **In re Lexington Precision Corp.**, Case No. 08-11153, U.S. Bankruptcy Court for the Southern District of New York.

Dear John,

As we discussed last week, this firm represents Georgia Power Company ("Georgia Power"), a creditor in the above-referenced case. Georgia Power is a Utility Company as such term is defined in *Debtor's Motion Pursuant to Sections 105(a) and 366 of the Bankruptcy Code For an Order (I) Approving Debtor's Proposed Form of Adequate Assurance of Payment; (II) Resolving Objections By Utility Companies and (III) Prohibiting Utilities From Altering, Refusing, or Discontinuing Service* (the "Motion").

We are writing to request adequate assurance of payment for post-petition electric services provided by Georgia Power to Lexington Precision, *et al.* (the "Debtors"). We hope to reach an agreement before the April 16, 2008 deadline to file an objection to the Motion.

The Debtors have five (5) post-petition active accounts for electric service with Georgia Power. Georgia Power requests a post-petition deposit on these accounts as follows:

| Pre-Petition Account No. | Post-Petition Account No. | Service Address | Deposit Requested |
|---|---|---|---|
| 00033-26805 | 23211-05008 | 1076 Ridgewood Road, Jasper, Georgia 30143 | $ 136,870.00 |
| 27237-31004 | 27237-31013 | 1076 Ridgewood Road, Jasper, Georgia 30143 | $ 195.00 |
| 27237-31102 | Pending | 1076 Ridgewood Road, Jasper, Georgia 30143 | $ 650.00 |
| 27447-31004 | 27447-31013 | 1076 Ridgewood Road, Jasper, Georgia 30143 | $ 30.00 |
| 27657-31004 | 27657-31013 | 1076 Ridgewood Road, Jasper, Georgia 30143 | $ 3,560.00 |

The total deposit amount requested is **$141,305.00**. This amount is in compliance with Georgia Power's Rules and Regulations, as approved by the Georgia Public Service Commission, and is equal to two times the average monthly balance of the active accounts of the Debtors based on

**TROUTMAN SANDERS LLP**
ATTORNEYS AT LAW
A LIMITED LIABILITY PARTNERSHIP

John Lucas, Esq.
April 7, 2008
Page 2

the twelve months preceding the filing of the Debtors' petition. Account activity reports for this time period are too voluminous to attach but can be made available upon request. Georgia Power is willing to accept a deposit in the form of cash, a letter of credit, a certificate of deposit, a surety bond, or a prepayment of utility consumption.

Georgia Power provided the Debtors with pre-petition utility service and has continued to provide the Debtors with post-petition utility service. Under Georgia Power's billing cycle, the Debtors receive approximately one month of utility service before Georgia Power issues a bill for such service. Once a bill issues, the Debtors have approximately 15 to 30 days to pay the applicable bill. If the Debtors fail to timely pay the bill, Georgia Power issues a past due notice and imposes a late fee on the account. If the Debtors fail to pay the bill after the issuance of the past due notice, Georgia Power will issue a notice informing the Debtors that they must cure the arrearage within a certain period of time or face a possible service disconnection. Accordingly, under Georgia Power's billing cycle, the Debtors could receive 2 to 2 1/2 months of unpaid service before a post-petition payment default will result in service termination. A deposit equal to two months of average monthly usage is therefore a reasonable request given the Georgia Power's exposure.

Georgia Power holds a deposit on two pre-petition accounts: (i) a deposit totaling $653.56 secures pre-petition account number 27237-31102, and (ii) a deposit totaling $3,441.12 secures pre-petition account number 27657-31004. In accordance with Section 366(c)(4) of the Bankruptcy Code, Georgia Power will apply these deposits against outstanding pre-petition balances. Georgia Power does not anticipate any remaining credits available for application to the deposit request.

Please contact me at your earliest convenience to discuss resolving this matter.

Yours sincerely,

Garrett A. Nail

cc:    P. James Maynard

1927555v1