UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------------x
                                               :

In re                                  :        Chapter 11 Case No.
                                               :

LEXINGTON PRECISION CORP., et al.,   :        08-11153 (MG)
                                               :

        Debtors.                  :        (Jointly Administered)
                                               :
------------------------------------------------------------------x

**FINAL ORDER PURSUANT TO BANKRUPTCY CODE SECTIONS 105, 361, 362, 363, AND 364 (I) AUTHORIZING DEBTORS TO USE CASH COLLATERAL, (II) GRANTING ADEQUATE PROTECTION TO PREPETITION SECURED LENDERS, AND (III) AUTHORIZING POSTPETITION FINANCING**

      Upon the Motion, dated April 1, 2008 (the "Motion") of Lexington Precision

Corporation ("Lexington Precision") and Lexington Rubber Group, Inc. ("Lexington Rubber"

and, together with Lexington Precision, the "Debtors"), as debtors and debtors in possession, for

an order pursuant to sections 105(a), 361, 362, 363, 364(c)(1), and 364(e) of chapter 11 of title

11 of the United States Code (the "Bankruptcy Code") and Rule 4001 of the Federal Rules of

Bankruptcy Procedure (the "Bankruptcy Rules") authorizing them to (i) use Cash Collateral (as

defined below), (ii) grant adequate protection to the Debtors' Prepetition Senior Lenders (as

defined below), and (iii) obtain postpetition financing, on a super-priority, unsecured basis, in the

amount of $4,000,000 (the "DIP Loans"), all as more fully described in the Motion; and the

Court having jurisdiction to consider the Motion and the relief requested therein pursuant to 28

U.S.C. §§ 157 and 1334 and the Standing Order M-61 Referring to Bankruptcy Judges for the

Southern District of New York Any and All Proceedings Under Title 11, dated July 10, 1984

(Ward, Acting C.J.); and consideration of the Motion and the relief requested therein being a

core proceeding pursuant to 28 U.S.C. § 157(b); and venue being proper before this Court

pursuant to 28 U.S.C. §§ 1408 and 1409; and due and proper notice of the Motion having been

provided to (i) the United States Trustee for the Southern District of New York (the "U.S. Trustee"), (ii) the attorneys for the agents for the Debtors' prepetition senior lenders, (iii) the attorneys for the proposed postpetition lenders, (iv) the attorneys for the ad hoc committee of noteholders, and (v) the holders of the 30 largest unsecured claims against the Debtors (on a consolidated basis); and it appearing that no other or further notice need be provided; and a hearing having been held on April 2, 2008, to consider the interim relief requested in the Motion; and an order having been entered on April 2, 2008, granting the interim relief requested in the Motion (the "Interim Order"); and a final hearing to consider the Motion having been held on April 17, 2008 (the "Final Hearing"); and the relief requested in the Motion being within the guidelines for financing requests set forth in General Order M-274 of the United States Bankruptcy Court for the Southern District of New York; and the relief requested in the Motion being in the best interests of the Debtors and their estates and creditors; and the Court having reviewed the Motion; and based on the evidence adduced at the Final Hearing in support of the Motion; and the appearances of all interested parties having been noted in the record of the Final Hearing; and the Court having determined that the legal and factual bases set forth in the Motion and at the Final Hearing establish just cause for the relief granted herein; and upon all of the proceedings had before the Court and after due deliberation and sufficient cause appearing therefor,

**THE COURT HEREBY FINDS:**

A.        On April 1, 2008 (the "Commencement Date"), Debtors filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code.

B.        Debtors have retained possession of their property and continue to operate and manage their business as debtors in possession pursuant to sections 1107 and 1108 of the

Bankruptcy Code.  On April 11, 2008, a statutory committee of unsecured creditors (the "Committee") was appointed in these chapter 11 cases.  No trustee, examiner, or any other committee has yet been appointed in these chapter 11 cases.

C.    Prior to the Commencement Date, the Prepetition Senior Lenders (as defined below) made certain loans and other financial accommodations available to the Debtors pursuant to, among other things, the following documents (collectively, with any and all other agreements, instruments, and related documents, including without limitation, guaranties, pledges, and discretionary funding letters executed by any Debtor and any Other Documents (as defined in each of the Credit Agreement (defined below) and the Loan Agreement (defined below)), the "Prepetition Senior Lender Loan Documents"):

(i)    that certain Credit and Security Agreement, dated May 31, 2006 (as amended to date and as may be amended, restated or otherwise modified from time to time, the "Credit Agreement"), between the Debtors, as borrowers, and CapitalSource Finance LLC ("CapitalSource"), as a lender, as collateral agent and administrative agent for itself and other lenders under the Credit Agreement (CapitalSource, when acting in such capacity, is herein called the "Revolver Agent"), and as Co-Documentation Agent, and Webster Business Credit Corporation ("Webster") as a lender (CapitalSource and Webster, as lenders, collectively the "Prepetition Revolver Lenders") and as Co-Documentation Agent;

(ii)    that certain Loan and Security Agreement, dated May 31, 2006 (as amended to date and as may be amended, restated or otherwise modified from time to time, the "Loan Agreement"), between the Debtors, as borrowers, and CSE Mortgage LLC ("CSE"), as a lender and as collateral agent for itself and each other lender under the Loan Agreement (CSE, when acting in such capacity, is herein called the "Term Loan Agent") (Revolver Agent and

Term Loan Agent, collectively, the "<u>Agents</u>"), and DMD Special Situations Funding LLC, ("<u>DMD</u>"), as a lender under the Loan Agreement (DMD and CSE, as the Term Loan Agent and a lender under the Loan Agreement, along with the Revolver Agent and the Prepetition Revolver Lenders, collectively, the "<u>Prepetition Senior Lenders</u>");

(iii)    that certain First Amendment and Default Waiver Agreement between Debtors and CapitalSource, Webster, CSE and DMD in their various capacities dated as of November 20, 2006; and

(iv)    that certain Agreement dated as of May 18, 2007 by and among the Debtors, Agents (in their capacities as agents and lenders) and the other Prepetition Senior Lenders, as amended by that certain First Amendment to Forbearance Agreement, dated as of July 20, 2007, as further amended by that certain Second Amendment to Forbearance Agreement effective as of September 24, 2007, and as further amended by that certain Third Amendment to Forbearance Agreement executed December 11, 2007 and deemed effective as of November 26, 2007 (collectively, the "<u>Forbearance Agreement</u>").

D.    Debtors acknowledge that as of the Commencement Date, the aggregate principal amount of $22,552,802.12 and $5,077.76 in accrued but unpaid interest was outstanding under the Credit Agreement and $907,000.00 of letters of credit that were issued under the Credit Agreement were outstanding, and the aggregate principal amount of $13,777,777.80 and $3,973.36 in accrued but unpaid interest was outstanding under the Loan Agreement (collectively with all other Obligations, as defined in the Prepetition Senior Lender Loan Documents, including, without limitation, costs, fees and expenses that were outstanding under the Prepetition Senior Lender Loan Documents as of the Commencement Date, the "Prepetition Senior Secured Debt").  Without limiting the foregoing and in addition to any other amounts

included in the Prepetition Senior Secured Debt, (i) the Debtors (a) acknowledge that section 14.1 of the Credit Agreement and section 3.8 of the Loan Agreement refer to the payment of prepayment premiums and/or termination fees (the "Prepayment Fees") and (b) refer to said sections as to the terms and provisions thereof, and (ii) the Prepetition Senior Lenders (a) reserve their rights to assert that the Debtors have an obligation to pay such Prepayment Fees and (b) acknowledge that the Debtors and all other parties-in-interest shall have the right to challenge or otherwise object to the payment of such Prepayment Fees.

E.      Without prejudice to the rights of any other party (including the Committee or any other statutory committee that may be appointed in these chapter 11 cases), but subject to the time limitations specified in paragraph 29 below, the Debtors represent, stipulate, acknowledge, and agree that:

(i)      the Prepetition Senior Secured Debt is (i) legal, valid, binding, and enforceable against each Debtor; and (ii) not subject to any contest, objection, recoupment, defense, counterclaim, offset, claim of subordination, claim of re-characterization, claim of avoidance of any nature, attack or challenge under the Bankruptcy Code, other applicable non-bankruptcy law, or otherwise;

(ii)      all the Prepetition Senior Secured Debt is secured by the security interests in the Collateral (as defined below) previously granted under the Prepetition Senior Lender Loan Documents to the Prepetition Senior Lenders, that the Agents have, and will continue to have after entry of this Order, a legal, valid, enforceable, non-avoidable and continuing duly-perfected first priority security interest (and junior security interest, as applicable, subject to the terms of that certain Intercreditor Agreement dated as of May 31, 2006 between Revolver Agent, as agent and lender, Revolver Lenders, Term Loan Agent, as agent and lender, and Term Loan Lenders

(the "Intercreditor Agreement")) in and lien on the Collateral, as more fully described and

defined in the Prepetition Senior Lender Loan Documents (all such "Collateral", as the same

existed on or at any time prior to the Commencement Date, together with all cash and non-cash

proceeds thereof, shall be hereinafter referred to as "Senior Lender Prepetition Collateral" and

such liens thereon shall be referred to as the "Senior Lender Prepetition Liens"), subject to no

liens or security interests other than the liens expressly permitted under the Prepetition Senior

Lender Loan Documents;

(iii)    nothing contained herein in any way impairs the Prepetition Senior

Lenders' first and junior (as applicable in accordance with the terms of the Intercreditor

Agreement) priority lien status in the Senior Lender Prepetition Collateral;

(iv)    as of the Commencement Date, and without giving effect to this Order, the

Debtors are not aware of any liens or security interests having priority over the Senior Lender

Prepetition Liens, except certain "Permitted Encumbrances" (as defined in the applicable

Prepetition Senior Lender Loan Documents);

(v)    the Senior Lender Prepetition Liens in the Senior Lender Prepetition

Collateral were granted to the Prepetition Senior Lenders for fair consideration and reasonably

equivalent value, and were granted contemporaneously with the making of the loans secured

thereby; and

(vi)    all cash of the Debtors wherever located on the Commencement Date

(other than the funds in the DIP Account (as defined below)) represents either proceeds of loans

under the Prepetition Senior Lender Loan Documents or proceeds of the Senior Lender

Prepetition Collateral; and pursuant to the Prepetition Senior Lender Loan Documents and

section 552(b) of the Bankruptcy Code, the Prepetition Senior Lenders have a valid, duly

perfected, first-priority lien upon and security interest in and to all of the cash of the Debtors

(other than the cash in the DIP Account (as defined below)), and these funds, along with the

proceeds of the Senior Lender Prepetition Collateral, constitute "cash collateral" within the

meaning of section 363(a) of the Bankruptcy Code (the "Cash Collateral").

F.      The Debtors have an immediate need to use Cash Collateral and obtain funds in

order to permit, among other things, the orderly continuation of the operation of their businesses,

to maintain business relationships with vendors, suppliers and customers, to meet payroll, to

make capital expenditures and to satisfy other working capital and operational needs. Good

cause has been shown for the entry of this Order. Use of Cash Collateral and the obtaining of

funds is vital to avoid immediate and irreparable harm to Debtors' estates.

G.      The Debtors are unable to obtain the funds being provided pursuant to the DIP

Loans on more favorable terms than those contained in the form of note (the "Note") attached

hereto as Exhibit A. The Debtors are unable to obtain the required funds in the forms of (x)

unsecured credit or debt allowable under section 503(b)(1) of the Bankruptcy Code, or (y) an

administrative expense pursuant to section 364(a) or (b) of the Bankruptcy Code.

H.      The Debtors have requested that the Prepetition Senior Lenders consent to the use

of their Cash Collateral. The ability of the Debtors to continue their businesses and reorganize

under chapter 11 of the Bankruptcy Code depends upon the Debtors using such Cash Collateral.

The Prepetition Senior Lenders have consented to the Debtors' use of Cash Collateral in reliance

upon the terms outlined in this Order. The adequate protection provided herein and other benefits

and privileges contained herein are consistent with and authorized by the Bankruptcy Code,

Bankruptcy Rules 4001 and 6003 and Local Bankruptcy Rule 4001-3 and are necessary in order

to obtain such consent or non-objection of the Prepetition Senior Lenders.

I.      The Debtors have also requested that, pursuant to the terms of the Note(s), the

DIP Lenders make DIP Loans to the Debtors, which are to be used in the event that Cash

Collateral is insufficient to fund working capital requirements and general corporate purposes

relating to the Debtors' postpetition operations and for other expenditures authorized by the

Interim Order, this Order, or that are otherwise authorized by the Court; provided, however, that

no portion of the proceeds shall be used, directly or indirectly, to (a) finance or make any

payment or prepayment to any person with respect to a prepetition indebtedness unless

authorized by this Order or another order of the Court; or (b) finance in any way any

investigation, adversary action, suit, arbitration, proceeding or other litigation of any type against

the DIP Lenders (in their capacity as DIP Lenders) or the Prepetition Senior Lenders.  The DIP

Lenders are willing to make the DIP Loans only on a super-priority, unsecured basis, pursuant to

the terms of the Note(s), subject to the limitations set forth herein.

J.      The Debtors have requested immediate entry of this Order pursuant to Bankruptcy

Rule 4001(b)(2) and 4001(c)(2).  The ability of the Debtors to continue their businesses and

reorganize under chapter 11 of the Bankruptcy Code depends upon the Debtors using Cash

Collateral and obtaining the DIP Loans.  Accordingly, the relief requested in the Motion is

necessary, essential and appropriate for the continued operation of the Debtors' businesses, the

management and preservation of their assets and properties, and is in the best interests of the

Debtors, their estates and creditors.

K.      Based on the record before the Court, (i) the terms of the use of the Prepetition

Senior Lenders' Cash Collateral as provided in this Order and (ii) the terms of the Note(s),

pursuant to which the DIP Loans will be made to the Debtors by the DIP Lenders, have been

negotiated at arms' length and in "good faith," as that term is used in section 364(e) of the

Bankruptcy Code, and are in the best interests of the Debtors, their estates and creditors.

**NOW, THEREFORE, IT IS HEREBY ORDERED:**

1.      The Motion is hereby granted on a final basis, with the foregoing findings

incorporated herein by reference, and with any objections to the Motion that have not previously

been withdrawn or resolved being hereby overruled.

<u>Authorization to Use Cash Collateral</u>

2.      Subject to the terms and conditions set forth in this Order, the Debtors are

authorized, pursuant to section 363(c)(2)(B) of the Bankruptcy Code, to use the Cash Collateral

for the period of time from the date hereof until the earlier of three hundred thirty (330) days

after the Commencement Date or the occurrence of a Termination Event (as defined below).

3.      Pursuant to an order of the Court entered on April 2, 2008, approving the

Debtors' motion to use, as modified, the Debtors' centralized cash management system (the

"<u>Cash Management Order</u>"), FirstMerit Bank N.A., Akron, Ohio ("<u>FirstMerit</u>") shall, subject to

the terms of the Cash Management Order (including the reservation of Debtors' rights to modify

their cash management system to comply with section 345(b) of the Bankruptcy Code),

commence immediately the automatic transfers on a daily basis of all available funds currently in

or received in the Debtors' lockbox accounts and the consolidation account at FirstMerit into the

Debtors' master operating account at FirstMerit (the "<u>Master Operating Account</u>"), without the

necessity to comply with any lockbox or blocked account agreement or any preexisting transfer

arrangement concerning such accounts; <u>provided</u>, <u>however</u>, that the Master Operating Account,

along with all other bank accounts, deposit accounts and securities accounts established or in

existence on or after the Commencement Date, shall be subject to any and all security interests

and liens granted hereunder and this Order shall be deemed the only action necessary to perfect

such liens in favor of the Revolver Agent for the benefit of the Senior Prepetition Lenders.

       4.     The Debtors shall use Cash Collateral only for (a) working capital and

capital expenditures, (b) other general corporate purposes of the Debtors (including, without

limitation, the making of Adequate Protection Payments (as defined below)), and (c) the costs of

administration of these chapter 11 cases, with each of the foregoing in compliance with an eleven

(11) week budget (the "Budget"), the initial form of which is annexed hereto as Exhibit B and

incorporated herein by reference, subject to the permitted variances as provided for in this Order.

       5.     Debtors may, with the prior written consent of the Revolver Agent and

Term Loan Agent, use Cash Collateral in excess of the limits set forth in the Budget or the New

Budget (as defined below), as applicable; provided, however, that such consent shall not be

necessary for variances that do not exceed, in the aggregate, 10% of the cumulative expenditures

set forth in the Budget and the New Budget, as applicable, as measured from the Commencement

Date through the Date of Determination (as defined below), with bi-weekly reports due to the

Revolver Agent and Term Loan Agent by 5:00 p.m. on Tuesday following the end of the second

week being reported, showing comparisons and percentage variance by line item as well as on a

cumulative basis; provided further that the Debtors shall be allowed to make advance cash

payments or deposits of cash (collectively, "Advances") in the amount of goods and services to

be provided, if required by vendors, so long as all projected Advances are included as

expenditures in the Budget and the New Budget, as applicable, and all actual Advances are

included in the reconciliation referred to in paragraph 11(vi)(a). The "Date of Determination"

shall initially be the third Friday after the Commencement Date, and subsequently shall be every

other Friday thereafter.

6.        Two (2) weeks prior to the expiration of the eleven (11) week period covered by the Budget (or such other schedule as the parties may agree), Debtors shall provide a proposed new budget (said budget and all subsequent budgets, the "New Budget") for Revolver Agent's and Term Loan Agent's approval, to cover the subsequent thirteen (13) week period (the said interim eleven (11) week period, the thirteen (13) week period, and all periods covered by subsequent budgets, the "Budget Period") ; and one (1) week prior to the expiration of the Budget Period (or such other schedule as the parties may agree), Revolver Agent and Term Loan Agent shall approve or reject the New Budget; provided, however, that the New Budget shall automatically be deemed to be approved if (a) the average weekly disbursements reflected in the New Budget do not exceed 110% of the average weekly expenditures reflected in the budget then in effect and (b) the New Budget indicates that the Debtors have adequate financing to operate their business in accordance with the New Budget (assuming the continued use of Cash Collateral and proceeds from the DIP Loans).   For the avoidance of doubt, subject to the proviso in the preceding sentence, failure to secure Revolver Agent's and Term Loan Agent's approval of the New Budget prior to the expiration of the Budget Period shall result in the expiration of the Budget Period.  Extension of the Budget Period shall occur in the same manner with respect to each New Budget.  Notwithstanding the foregoing, the failure of the Revolver Agent or Term Loan Agent to object to the Budget or the New Budget, or the consent or agreement of the Revolver Agent and Term Loan Agent to the Budget does not constitute an admission, nor shall it be deemed an admission, that any such budgeted expenses constitute reasonable, necessary costs, and expenses of preserving or disposing of the Senior Lender Prepetition Collateral.  In no event shall any costs or expenses of administration be imposed upon the Prepetition Senior

Lenders or any of the Senior Lender Prepetition Collateral pursuant to sections 506(c) and/or

105(a) of the Bankruptcy Code or otherwise, except as set forth in paragraphs 7, 8 and 23.

7.      Notwithstanding anything herein to the contrary, no Cash Collateral

(including without limitation the amounts held in the Master Operating Account) may be used by

any of the Debtors (or any subsequent trustee), the Committee, any other statutory committee or

any other person or entity (i) to object to or contest in any manner, or raise any defense or contest

to, the validity, perfection, priority or enforceability of the Prepetition Senior Secured Debt, the

Senior Lender Prepetition Liens, and the Prepetition Senior Lender Loan Documents or under

this Order, or to assert or prosecute any action for preferences, fraudulent conveyances, other

avoidance power claims (whether under chapter 5 of the Bankruptcy Code or otherwise) or any

other claims or causes of action against the Prepetition Senior Lenders, including without

limitation for lender liability or pursuant to sections 105, 510, 544, 547, 548, 549, or 550 of the

Bankruptcy Code (collectively, the "Claims and Defenses"); provided, however, that, subject to

the time limitations specified in paragraph 29 below, Cash Collateral may be used directly or

indirectly by the Committee or any other statutory committee to investigate the obligations and

liens under the Prepetition Senior Lender Loan Documents, in an amount not to exceed $25,000;

or (ii) subject to paragraph 11(x) below, to sell any portion of the Senior Lender Prepetition

Collateral (other than sales of inventory in the ordinary course of business, sales to customers of

tooling and equipment that will be used by the Debtors to produce inventory for sale to such

customers in the ordinary course of business, and sales of surplus or obsolete equipment,

provided that the fair market value of the surplus or obsolete equipment to be sold after the

Commencement Date shall not exceed $50,000 in the case of any single transaction or $200,000

in the aggregate) without either providing for the indefeasible payment of the Prepetition Senior

Secured Debt in full in cash on the sale closing date (subject to the provisions of paragraphs 8(i)

and 24 hereof) or obtaining prior written consent to such sale from the Agents (subject to the

Intercreditor Agreement); (iii) to incur any new indebtedness that would be *pari passu* with or

have priority over the Prepetition Senior Secured Debt and that would not provide for the

indefeasible payment in full in cash of the Prepetition Senior Secured Debt (subject to the

provisions of paragraphs 8(i) and 24 hereof) and any outstanding Adequate Protection Payments

on the closing date of such financing; or (iv) to modify the rights of the Prepetition Senior

Lenders under this Order.

<u>Adequate Protection</u>

8.      As adequate protection for the use of Cash Collateral, the Prepetition

Senior Lenders shall receive:

(i)      adequate protection payments ("<u>Adequate Protection Payments</u>") in

amounts equal to the following amounts, <u>provided</u>, only in the event that it is determined that the

claims of the Agents and the Prepetition Senior Lenders are not fully secured, the Adequate

Protection Payments shall be subject to reallocation, recharacterization, or disgorgement, after

notice and a hearing before the Court:

(a)  interest payments (at the contractual non-default rate) and principal

payments due under the Prepetition Senior Lender Loan Documents, according to the schedule of

interest and principal payments contained therein; <u>provided</u> that in consideration for the receipt

of principal payments, Prepetition Senior Lenders shall forever waive any and all claims for the

difference between the contractual non-default rate and the contractual default rate (the "<u>Default

Rate Differential</u>") from the Commencement Date until the occurrence of a Termination Event;

<u>provided</u>, <u>further</u> that (i) the Debtors (x) acknowledge that sections 3.1 of each of the Credit

Agreement and the Loan Agreement refer to the payment of default interest and (y) refer to said sections as to the terms and provisions thereof, and (ii) the Prepetition Senior Lenders reserve their rights to assert that the Debtors have an obligation to pay the Default Rate Differential on or after the occurrence of a Termination Event and the Debtors and all other parties-in-interest shall have the right to challenge or otherwise object to the payment of such Default Rate Differential. For the avoidance of doubt, in the event Prepetition Senior Secured Debt is, and the amounts due to the Prepetition Senior Lenders hereunder are, indefeasibly paid in full in cash prior to the occurrence of or in connection with a Termination Event (subject to the provisions of paragraph 24 hereof), Prepetition Senior Lenders shall automatically be deemed to forever waive their claims to the Default Rate Differential with respect to the period between the Commencement Date and the date of such payment; and

(b)  payment of reasonable fees and expenses of (i) two legal counsel (i.e., two law firms) for the Agents, one of which shall be local counsel, (ii) a single financial advisor (one financial advisor firm) for the Agents, provided that, until a Termination Event shall have occurred, the fees and expenses of such financial advisor shall not exceed $20,000 per month in the aggregate (the "Financial Advisor Monthly Cap") on a rolling basis, such that any overages may be carried over and recovered from any subsequent month's amounts to the extent such subsequent month's amount is less than the Financial Advisor Monthly Cap; (iii) other legal counsel retained by any of the Prepetition Senior Lenders, provided that, until a Termination Event shall have occurred, the fees and expenses of each such counsel shall not exceed $7,500 per month in the aggregate with respect to each Prepetition Senior Lender (the "Participant Monthly Cap") on a rolling basis, such that any overages may be carried over and recovered from any subsequent month's amounts to the extent such subsequent month's amount is less than

the Participant Monthly Cap; provided, however, that nothing in this paragraph 8(i) shall

prejudice the rights of (x) any Prepetition Senior Lender under section 506(b) of the Bankruptcy

Code to seek its reasonable fees and expenses pursuant to the Prepetition Senior Lender Loan

Documents and (y) the Debtors to challege or otherwise object to any such request;

       (ii)     for any diminution in the value of the Prepetition Senior Lenders' interests

in the Cash Collateral from and after the Commencement Date, (a) replacement security interests

in and liens upon  all of the Debtors' assets in which the Agents, for the benefit of the Prepetition

Senior Lenders, had liens on the Commencement Date (including, without limitation, cash and

receivables and the proceeds thereof, whether existing or hereafter acquired after the

Commencement Date and whether or not deposited in the Master Operating Account), (b) first

priority security interests and liens upon any and all unencumbered assets of the Debtors,

including without limitation the Master Operating Account, the DIP Account, and causes of

action under sections 542, 543, 544, 545, 547, 548, 549, 550, 551, or 553 of the Bankruptcy

Code, and (c) junior liens on all encumbered assets which were not otherwise subject to the

Prepetition Secured Lenders' liens as of the Commencement Date (collectively, the "Adequate

Protection Liens"); provided, however, that the Adequate Protection Liens shall (w) be subject to

the Carve-Out (as defined below), (x) exclude any insurance policy (but not exclude the Debtors'

entitlement, if any, to payments thereunder (subject to the Senior Lender Prepetition Liens and

the Adequate Protection Liens) net of any amounts that may be due to an Insurance Premium

Finance Party (as such term is defined in the Prepetition Senior Lender Loan Documents) with

respect to such policy) where, subject to authorization of the Court, security interests and liens

are granted to an Insurance Premium Finance Party on the Insurance Premium Collateral (as such

term is defined in the Prepetition Senior Lender Loan Documents, provided that in no instance

will the Insurance Premium Finance Party be granted a security interest in or lien on the DIP

Account or the Master Operating Account) to secure the indebtedness of the Debtors to an

Insurance Premium Finance Party in connection with insurance policies maintained by the

Debtors arising as a result of such Insurance Premium Finance Party entering into arrangements

to allow the Debtors to pay all or a portion of the applicable insurance premiums on such

insurance policies in installments rather than in one lump sum annual payment; provided that the

Debtors shall continue to abide by the requirements under sections 4.11 of each of the Credit

Agreement and the Loan Agreement, provided, however, that notwithstanding anything

contained in said sections to the contrary, amounts payable to Agents as loss payees under a

casualty or property insurance coverage shall be reduced by amounts owed, if any, to the

Insurance Premium Finance Parties with respect to such policies; and provided further that such

indebtedness of the Debtors to all Insurance Premium Finance Parties shall not exceed the

aggregate principal amount outstanding of $800,000 at any one time ("Insurance Premium

Financing"); and (y) neither prime nor impair any perfected liens or perfected security interests

in the same collateral that are senior in rank and priority to the Senior Lender Prepetition Liens

or the Adequate Protection Liens under applicable nonbankruptcy law as of the Commencement

Date, such as statutory liens, if any, that are senior in priority as a result of being perfected under

applicable state law prior to the granting of the Adequate Protection Liens; and provided further,

however, except as expressly set forth in this Order, the Adequate Protection Liens granted

herein shall not be subject to any liens that are avoided and preserved for the benefit of any of

the Debtors' estates under section 551 of the Bankruptcy Code, and shall not be subordinated to

or made *pari passu* with any other lien under section 364(d) or any other section of the

Bankruptcy Code or otherwise; and

(iii)    for any diminution in the value of the Prepetition Senior Lenders' interests in the Cash Collateral from and after the Commencement Date, an administrative expense claim pursuant section 507(b) of the Bankruptcy Code (the "Adequate Protection Claim"), which shall be senior to any and all other claims (including the DIP Super-Priority Claim, as defined below), but subject to the Carve-Out (as defined below).

9.    The Adequate Protection Liens on property of the Debtors' estates granted herein, including without limitation the security interests and liens in postpetition cash and receivables, the Master Operating Account, the DIP Account and proceeds of each of the foregoing, are valid, binding, effective, enforceable, and fully perfected, and no filing or recordation or other act in accordance with any applicable local, state, for federal law, rule, or regulation, is necessary to create or perfect such Adequate Protection Liens.  The above provision notwithstanding, Debtors shall cooperate with Prepetition Senior Lenders to execute such documents and instruments, and do such other things as Prepetition Senior Lenders may reasonably request, to evidence and perfect such Adequate Protection Liens for the convenience and information of third parties, and to evidence the obligations undertaken by the Debtors hereunder.

10.    None of the Prepetition Senior Lenders shall be deemed to be in control of the Debtors or their operations or to be acting as a "responsible person," "managing agent," or "owner or operator" with respect to the operation or management of the Debtors.

Termination Events

11.    With respect to the use of Cash Collateral hereunder, each of the following shall constitute a  "Termination Event":

(i)    the closing or dismissal of the chapter 11 cases;

(ii)      the conversion of the Debtors' cases to cases under chapter 7 of the Bankruptcy Code;

(iii)     the appointment in these chapter 11 cases of a chapter 11 trustee or an examiner with expanded powers to operate or manage the financial affairs, the businesses or the reorganization of any Debtor;

(iv)      non-compliance by any Debtor with any of the terms or provisions of this Order;

(v)       expiration of the applicable Budget Period without extension pursuant to paragraph 6 above;

(vi)      (a) the Debtors' cumulative expenditures from the Commencement Date through the Date of Determination are more than 110% of the cumulative expenditures for such periods, as set forth in the Budget and the New Budgets, or (b) the aggregate of the Debtors' short-term investments and the cash available in their Master Operating Account and the DIP Account, is less than $1,000,000 at the close of business on May 2, 2008, less than $500,000 at the close of business on May 30, 2008 and on the last day of each four-week period thereafter;

(vii)     if on a cumulative basis, measured every four weeks from the Commencement Date through the last day of every four-week period thereafter, net sales are less than 90% of the net sales reflected in the Budget or any New Budget; provided, that the Debtors shall report such net sales in writing certified by Debtors' CFO within five (5) days of the end of each four-week period and provide comparison to the amounts reflected in the Budget and the New Budgets with a narrative explaining the reasons for any deviations, provided, however, that "net sales" shall not include any sales of tooling or equipment provided for in paragraph 7(i) above or other sales of Debtors' assets;

(viii)    Debtors' failure to (1) file, within ninety (90) days from the Commencement Date, a plan of reorganization (the "Plan") providing for the indefeasible payment of the Prepetition Senior Secured Debt in full in cash on the effective date of such Plan (subject to the provisions of paragraphs 8(i) and 24 hereof); or (2) file a disclosure statement regarding such Plan within one hundred twenty (120) days of the Commencement Date; or  (3) consummate such Plan and emerge from chapter 11 of the Bankruptcy Code within three hundred thirty (330) days of the Commencement Date, provided such consummation of the Plan and emergence from chapter 11 of the Bankruptcy Code actually results in the indefeasible payment of the Prepetition Senior Secured Debt in full in cash on the effective date of the Plan, subject to the provisions of paragraphs 8(i) and 24 hereof;

(ix)    expiration of thirty (30) days after entry of the Interim Order unless this Order is entered prior to the expiration of such thirty (30) day period;

(x)    entry of an order providing for the sale of more than $1,000,000 (to be measured in aggregate purchase price and/or book value, whichever is greater for each asset sold) of the Debtors' assets that does not provide that the proceeds of such sale (less all costs, expenses and fees related thereto) shall be applied to the Prepetition Senior Secured Debt in accordance with the terms set forth in the Prepetition Senior Lender Loan Documents (subject to the Intercreditor Agreement) on the sale closing date, or for which sale the Prepetition Senior Lenders have not provided prior written consent (subject to the Intercreditor Agreement);

(xi)    the lapse or termination of Debtors' exclusive periods to file and solicit a plan of reorganization pursuant to section 1121 of the Bankruptcy Code;

(xii)    entry of any order pursuant to section 364 of the Bankruptcy Code authorizing Debtors to obtain credit that is *pari passu* with or has priority over the Prepetition

Senior Secured Debt and does not provide for the indefeasible payment in full in cash of the

Prepetition Senior Secured Debt (subject to the provisions of paragraphs 8(i) and 24 hereof) and

any outstanding Adequate Protection Payments on the closing date of such financing;

(xiii)   the automatic stay is lifted as to any party in order to take possession or to

permit foreclosure on any portion of the Senior Lender Prepetition Collateral or any other

collateral subject to the Adequate Protection Liens, the value of which, as measured by fair

market value or book value, whichever is greater, exceeds $1,000,000 in the aggregate; or

(xiv)   any uninsured loss with respect to the Senior Lender Prepetition Collateral

or any other collateral subject to the Adequate Protection Liens in an amount equal to or

exceeding $1,000,000.

12.   Following the occurrence of a Termination Event, Debtors shall have five

(5) business days after receipt of written notice from Revolver Agent and Term Loan Agent, on

behalf of themselves, and the Prepetition Senior Lenders to cure such Termination Event, if it is

capable of cure (the "Cure Period").  The Revolver Agent and the Term Loan Agent shall serve

notice of the Termination Event on the Debtors, the U.S. Trustee, the Committee, and, if no

Committee is yet appointed, on the top 20 creditors holding unsecured claims.

13.   If, upon the expiration of the Cure Period, the Debtors have not cured the

Termination Event (assuming such Termination Event is curable) and the notice referred to in

paragraph 12 has not been withdrawn (herein referred to as the "Termination Date"), (a) the

Debtors shall cease all use of Cash Collateral and any authority of Debtors under this Order to

use Cash Collateral shall terminate; and (b) the Prepetition Senior Lenders shall be granted,

without further action of the Prepetition Senior Lenders or the Court, immediate and automatic

relief from the automatic stay under section 362 of the Bankruptcy Code, which shall be

automatically terminated as it relates to the Senior Lender Prepetition Collateral and all other

collateral in which Adequate Protection Liens have been granted without further action of the

Prepetition Senior Lenders or this Court; provided, however, that upon the occurrence of a

Termination Event pursuant to paragraph 11(iii), the termination of authority and relief referred

to in clauses (a) and (b) above shall not be effective until the expiration of five (5) business days

from such Termination Event under paragraph 11(iii).  Notwithstanding the occurrence of the

Termination Date or anything herein to the contrary, all of the rights, remedies, benefits, and

protections provided to the Prepetition Senior Lenders under this Order shall survive the

Termination Date.  In addition, upon the occurrence of the Termination Date, if instructed by the

Revolver Agent and the Term Loan Agent, FirstMerit or any other bank or financial institution

with which the Debtors establish an account, shall transfer all of the available funds on deposit in

such account as directed by the Revolver Agent and the Term Loan Agent; provided, however,

that if it is subsequently determined that the Prepetition Senior Lenders did not have Senior

Lender Prepetiton Liens or Adequate Protection Liens on such accounts, the Prepetition Secured

Lenders shall disgorge and repay to the Debtors' estates such portion of the funds as to which

they did not have Senior Lender Prepetiton Liens or Adequate Protection Liens; provided,

further, however, that notwithstanding the foregoing, (i) any existing deposit account control

agreements shall continue in full force and effect subject to the terms of this Order, and (ii)

within 45 days of the establishment of a new bank account, deposit account, securities account or

other account, the Debtors, the Revolver Agent (for the benefit of the Prepetition Senior Lenders,

subject to the Intercreditor Agreement) and each bank or financial institution with which the

Debtors establish such deposit account shall enter into a deposit account control agreement or

similar applicable agreement, which shall be in form and substance reasonably satisfactory to the

Revolver Agent; provided, further, that the Debtors shall notify the Revolver Agent in writing within five (5) business days thereof of the establishment of any new bank account, deposit account, securities account, or other account.

The DIP Loans

14.    The Debtors are hereby authorized to obtain unsecured DIP Loans in the aggregate amount of $4,000,000 (the "DIP Loans") to be evidenced by one or more Notes, and on terms and conditions, substantially in the form annexed hereto as Exhibit A, including, without limitation, monthly payment of interest on the DIP Loans at the rate set forth therein and payment of a fee in the aggregate amount of $80,000 ($40,000 of which was paid pursuant to the Interim Order).

15.    The Debtors are hereby authorized to execute one or more Notes substantially in the form attached hereto as Exhibit A and are hereby authorized and directed to do and perform all acts, including, without limitation, making, executing, and delivering all instruments and documents, that may be necessary or desirable to implement the DIP Loans and perform under the Note(s).

16.    The Debtors are hereby authorized and directed to deposit the proceeds of the DIP Loans into a new bank account at a bank that has been approved by the Office of the U.S. Trustee as an authorized bank depository (the "DIP Account") and no other funds or Cash Collateral of the Debtors shall be commingled with the proceeds of the DIP Loans or deposited into the DIP Account; provided, however, that the DIP Account shall be subject to any and all security interests and liens granted hereunder and hereby perfected in favor of the Senior Prepetition Lenders, including without limitation the requirements for entering into a deposit account control agreement set forth in paragraph 13.

17.     Upon entry of this Order, and subject to the terms of the Note(s), the Debtors' obligations under the Note(s) shall constitute valid, binding, and enforceable obligations of the Debtors.

18.     No obligation, payment, or transfer under the DIP Loans or this Order shall be stayed, restrained, voidable, or recoverable under the Bankruptcy Code or under any applicable law except as may be in violation of the terms of this Order.

Use of the DIP Loans

19.     The Debtors are hereby authorized to use proceeds of the DIP Loans only to the extent Cash Collateral is insufficient to fund working capital requirements and general corporate purposes relating to the Debtors' postpetition operations and for other expenditures authorized by the Interim Order, this Order, or that are otherwise authorized by the Court; provided, however, that no portion of the proceeds shall be used, directly or indirectly, to (a) finance or make any payment or prepayment to any person with respect to a prepetition indebtedness unless authorized by this Order or another order of the Court; or (b) finance in any way any investigation, adversary action, suit, arbitration, proceeding or other litigation of any type against the DIP Lenders (in their capacity solely as DIP Lenders) or the Prepetition Senior Lenders.

Super-Priority Claim

20.     Pursuant to section 364(c)(1) of the Bankruptcy Code, the DIP Lenders are hereby granted a super-priority claim (the "DIP Super-Priority Claim") payable from any prepetition and postpetition property of the Debtors and all proceeds thereof and senior to any and all other unsecured claims, including, without limitation, all administrative expenses or other claims arising under sections 105, 326, 328, 330, 331, 503(b), 506(c), 507(a), 507(b), 726, 1113

or 1114 of the Bankruptcy Code, <u>provided</u>, <u>however</u>, that notwithstanding the foregoing, the DIP

Super-Priority Claim shall be junior, subordinate, and subject to the Adequate Protection Claim,

the Prepetition Senior Secured Debt, the Senior Lender Prepetition Liens, the Carve-Out (as

defined below), and the Adequate Protection Liens.  As provided above, under no circumstances

are the DIP Lenders to be paid any amount (other than the interest, fees and expenses required to

be paid under the Note(s) and in accordance with the Budget or the New Budget, as applicable)

in respect of any claim or obligation under the DIP Loans, unless and until the Prepetition Senior

Secured Debt is indefeasibly paid in full in cash, subject to the provisions of paragraphs 8(i) and

24 hereof.

   21. Subject to the Carve-Out, the Adequate Protection Liens, the Prepetition

Senior Secured Debt and the Adequate Protection Claim, the DIP Super-Priority Claim shall at

all times be senior to any unsecured claims of any creditor or other entity in this and any

subsequent case under the Bankruptcy Code, and with the exception of the Carve-Out, the

Adequate Protection Liens, Prepetition Senior Secured Debt and the Adequate Protection Claim,

no cost or expense of administration or any claims in this case, including those resulting from or

incurred after any conversion of this case pursuant to section 1112 of the Bankruptcy Code shall

rank prior to, or on parity with, the DIP Super-Priority Claims.

<u>Maturity Date</u>

   22. The Debtors may continue to use the DIP Loans proceeds until the earliest

of (i) the one year anniversary of the Commencement Date, (ii) the effective date of a confirmed

chapter 11 plan of reorganization in these chapter 11 cases, (iii) the conversion of any of these

chapter 11 cases to cases under chapter 7 of the Bankruptcy Code, and (iv) the appointment of a

chapter 11 trustee in any of these chapter 11 cases or the appointment of an examiner with

expanded powers to operate or manage the financial affairs, the business or the reorganization of any Debtor, and (v) the date of acceleration by the DIP Lenders pursuant to section 7 (Events of Default) of the Note(s) (collectively, the "Maturity Date").

Carve-Out

23.    The Senior Lender Prepetition Liens, the Adequate Protection Claim, the Adequate Protection Liens, and the DIP Super-Priority Claim shall be subject to the payment of the following items (collectively, the "Carve-Out"): (i) fees of the clerk of the Bankruptcy Court, the clerk of any court to which an appeal may be taken, and the United States Trustee pursuant to 28 U.S.C. § 1930(a) and (b); (ii) pursuant to section 726(b) of the Bankruptcy Code, reasonable fees and expenses of a trustee that are incurred after the conversion of these chapter 11 cases to a case under chapter 7 of the Bankruptcy Code, in an amount not to exceed $100,000; and (iii) upon the occurrence of the Termination Date or the Maturity Date (which occurrences shall be the trigger dates of this clause and not the measuring points with respect to any fees or expenses), the aggregate allowed unpaid professional fees and expenses payable under sections 330 and 331 of the Bankruptcy Code to professionals retained pursuant to an order of the Court by the Debtors and any statutory committee(s) appointed in the Debtors' chapter 11 cases for services rendered and expenses incurred, as well as fees and expenses payable to any trustee or examiner appointed or elected in these chapter 11 cases, to the extent this Court allows the payment thereof, in an amount not to exceed $500,000, provided that the first $400,000 only shall be paid from the assets subject to Senior Lender Prepetition Liens and the Adequate Protection Liens (including Cash Collateral) and that would otherwise be paid to the Prepetition Senior Lenders in respect of the Adequate Protection Claim (the "Prepetition Senior Lenders' Fee Carve-Out Amount"), and the balance between $500,000 and the Prepetition Senior Lenders' Fee Carve-Out

Amount shall be paid from whatever assets would be distributed on account of the DIP Super-Priority Claim; provided, however, that prior to the occurrence of the Termination Date or the Maturity Date, the Debtors shall be permitted to pay from the Cash Collateral and the DIP Loans, as the same may be due and payable, all professional fees and expenses pursuant to sections 330 and 331 of the Bankruptcy Code as authorized by the Court that were rendered or incurred, as applicable, prior to the occurrence of the Termination Date or the Maturity Date.  For the avoidance of doubt, with respect to the Prepetition Senior Lenders, the Carve-Out for clauses (ii) and (iii) of the preceding sentence shall not exceed $500,000 in the aggregate.

Protection of Prepetition Senior Lenders and DIP Lenders' Rights

24.    With respect to any issued and outstanding letters of credit  (collectively, the "Outstanding Letters of Credit"), the Debtors shall comply with the terms of section 2.7(k) of the Credit Agreement, provided that in any event, such Outstanding Letters of Credit shall be released and returned to the holder thereof within ninety (90) days of indefeasible payment in full of the Senior Lender Prepetition Debt (subject to the provisions of paragraph 8(i) hereof), including without limitation any such payment in full in connection with the Plan referenced in paragraph 11(viii) hereof.

25.    The provisions of the DIP Loans and this Order are binding upon all the parties in interest in these chapter 11 cases, including, without limitation, the Prepetition Senior Lenders, the DIP Lenders and the Debtors, the Committee, and their respective successors and assigns (including any chapter 7 or chapter 11 trustee hereafter appointed or elected for the estates of the Debtors or an examiner appointed pursuant to section 1104 of the Bankruptcy Code), and inure to the benefit of the Prepetition Senior Lenders, the DIP Lenders and the Debtors and, except with respect to any trustee hereinafter appointed or elected for the estates of the Debtors, their respective successors and assigns.  In addition, neither the terms of this Order,

nor the filing of these bankruptcy cases generally, shall be deemed to modify or affect the

respective rights and obligations among the Prepetition Senior Lenders under the Intercreditor

Agreement.

26.    Notwithstanding anything herein to the contrary, this Order is without

prejudice to, and does not constitute a waiver (other than the waiver set forth in paragraph 8(i)

regarding the Default Rate Differential), expressly or implicitly, of the rights of the Prepetition

Senior Lenders to seek additional adequate protection should circumstances warrant.

27.    Entry of this Order shall not in any way (i) constitute agreement, consent,

or acquiescence to the terms of any plan of reorganization by virtue of any term or provision of

this Order; or (ii) prevent the Prepetition Senior Lenders or the DIP Lenders from objecting, for

any reason, to any requests, motions or applications made in this Court (other than this Order),

including any applications for interim or final allowances of compensation for services rendered

or reimbursement of expenses incurred under sections 105(a), 330 or 331 of the Bankruptcy

Code, by any party in interest.

28.    The Prepetition Senior Lenders and the DIP Lenders, having been found to

be acting in good faith, shall be entitled to the full protection of section 364(e) of the Bankruptcy

Code and, therefore, if any or all of the provisions of the Interim Order or this Order are hereafter

reversed, stayed, modified, or vacated, such reversal, stay, modification, or vacation shall not

affect (i) the validity of any obligation, indebtedness, or liability incurred by the Debtors to the

Prepetition Senior Lenders or the DIP Lenders prior to written notice to such party of the

effective date of such reversal, stay, modification, or vacation, or (ii) the validity and

enforceability of any priority authorized or created hereby or pursuant to the Note(s) with respect

to any such indebtedness, obligation, or liability, including, without limitation, the Adequate

Protection Liens, the Adequate Protection Claim, the DIP Super-Priority Claim, the Prepetition

Senior Secured Debt, and the Senior Lender Prepetition Liens.  Notwithstanding any such

reversal, stay, modification, or vacation, any indebtedness, obligations, or liabilities incurred by

the Debtors to the Prepetition Senior Lenders and the DIP Lenders prior to written notice to such

party of the effective date of such reversal, stay, modification, or vacation shall be governed in

all respects by the original provisions of this Order, and the Prepetition Senior Lenders and the

DIP Lenders shall be entitled to all the claims, priorities, rights, remedies, privileges, and

benefits granted herein and/or pursuant to the Note(s) until the Senior Prepetition Secured Debt

(subject to the provisions of paragraphs 8(i) and 24 hereof),  Adequate Protection Claim and all

of the obligations under the Note(s) are indefeasibly paid in full and discharged in cash.

<u>Releases</u>

29.    All representations, stipulations, acknowledgments, and agreements of the

Debtors above, are for all purposes subject to the rights of the Committee, any other statutory

committee or, as authorized by the Court, any other party in interest (other than the Debtors or

any successor to the Debtors, including, without limitation, any chapter 11 trustee or chapter 7

trustee), to file a complaint pursuant to Bankruptcy Rule 7001 seeking to invalidate, subordinate

or otherwise challenge (including, without limitation, a determination of the validity, priority,

and extent of any lien) the obligations under the Prepetition Senior Lender Loan Documents or

the Senior Lender Prepetition Liens, including asserting any other Claims and Defenses;

<u>provided</u>, <u>however</u>, (i) that any such complaint must be filed in this Court within the later of

sixty (60) days from the date of entry of the order approving the appointment of counsel for such

committee (or if no committee is formed, seventy five (75) days from the Commencement Date)

or any subsequent date that may be ordered by the Court for cause shown before the expiration

of such period (the "Challenge Period"); and (ii) if no such action is commenced during the

Challenge Period, all Claims and Defenses shall be deemed, immediately, and without further

action by the Prepetition Senior Lenders or the Court, to have been forever relinquished and

waived by the Committee and any other person or entity with actual or constructive notice of

these chapter 11 cases, including any chapter 11 trustee or chapter 7 trustee.

        30.    In consideration of Debtors' use of Cash Collateral, the Debtors (on behalf

of themselves and any successor to the Debtors, including any chapter 11 trustee or chapter 7

trustee) voluntarily and knowingly release and forever discharge the Prepetition Senior Lenders

in all their respective capacities, their predecessors, agents, attorneys, financial advisors, direct

and indirect parents, subsidiaries and affiliates, members, managers, servicers, directors, officers,

employees, successors and assigns from all possible claims, counterclaims, demands, actions,

causes of action, damages, costs, expenses and liabilities whatsoever, known or unknown,

anticipated or unanticipated, suspected or unsuspected, at law or in equity, originating in whole

or in part on or before the date hereof, which the Debtors may now know or hereafter come to

know they have against Prepetition Senior Lenders in all of their respective capacities, their

predecessors, agents, attorneys, direct and indirect parents, subsidiaries and affiliates, members,

managers, servicers, directors, officers, employees, successors and assigns, if any, and

irrespective of whether any such claims arise out of contract, tort, violation of law or regulations,

or otherwise; provided, however, that these releases shall not preclude the Committee or any

other statutory committee appointed in these chapter 11 cases, if so authorized by the Court,

from commencing, fully prosecuting, and collecting upon, any and all claims of whatever kind or

nature that the Debtors' estates could otherwise assert but for the releases contained herein but

subject in any event to the terms of paragraph 29.

31.     No provision of the DIP Loans or the implementation thereof is intended to or shall be deemed to create any claim or cause of action against the DIP Lenders or any of their affiliates (solely in their capacity as DIP Lenders) or disallowance or subordination of any of the claims of the DIP Lenders or any of their affiliates, which are direcly related to the DIP Loans, based upon lender liability, equitable subordination or otherwise.

Reporting

32.     Existing reporting requirements shall continue, including without limitation full financial reports required under the Prepetition Senior Lender Loan Documents, which shall be provided on a monthly basis within thirty (30) days of the end of each month and on a quarterly and yearly basis pursuant to and in the form prescribed by the Prepetition Senior Lender Loan Documents (or on such other schedule or in such other form as the parties may agree); provided, however, that the deadline for delivery of the Debtors' report on Form 10-K for the fiscal year ended December 31, 2007, is extended by thirty (30) days and the deadlines for delivery of the Debtors' reports on Form 10-Q for the fiscal quarters ending March 31 and June 30, 2008 are extended by fifteen (15) days.  In addition, and without limiting the foregoing or any other reporting requirement contained hereunder, the Debtors shall prepare and submit (a) the reports referred to in paragraphs 5 and 11(vii) hereof prior to the deadlines set forth therein, (b) reports indicating any and all information that is required by the borrowing base certificates under the Prepetition Senior Lender Loan Documents for the previous week prior to 5:00 p.m. on Tuesday following the week being reported (or by such other date and time as the parties may agree); and (c) any other and further reports reasonably requested by the Prepetition Senior Lenders.  Commencing on or about April 16, 2008, the Prepetition Senior Lenders and the Debtors shall have a bi-weekly phone conference (the "Status Call"), on such dates, at such

times, and on such other schedule as the parties may agree, to update the Prepetition Senior

Lenders on the Debtors' financial and operational status, including updates as to relations with

customers, vendors and suppliers.

33.    The Debtors shall also provide the Prepetition Senior Lenders copies of all

reports made for or documents given to the United States Trustee in these chapter 11 cases.

34.    Debtors shall permit representatives, agents, and/or employees of the

Prepetition Senior Lenders, including professionals retained by the Prepetition Senior Lenders'

legal professionals, to have reasonable access to its premises and records during normal business

hours (without unreasonable interference with the proper operation of Debtors' businesses) and

shall cooperate, consult with, and provide to such persons all such non-privileged information as

they may reasonably request.

Modifications/Amendments

35.    Any material and substantive modifications to the terms of this Order, the

DIP Loans or the Note(s) require the prior written consent of the Prepetition Senior Lenders.

Any modifications to the terms of the DIP Loans or the Note(s) require the prior written consent

of the DIP Lenders, and any material and substantive modifications to the terms of this Order

require the prior written consent of the DIP Lenders.

Notice

36.    Under the circumstances, the notice given by the Debtors of the Motion

and of the Final Hearing constitutes due and sufficient notice of the Motion and of the Final

Hearing.

37.    In the event that any provision of this Order conflicts with any term of the

Note(s), this Order shall govern.

38.     The requirement set forth in Local Bankruptcy Rule 9013-1(b) for the

filing of a separate memorandum of law in support of the Motion is satisfied.

Dated: April __, 2008
New York, New York

_____

United States Bankruptcy Judge

Acknowledgement:

Prepetition Senior Lenders hereby consent to the use of Cash Collateral as provided in this Order, including, without limitation, the waiver of the Default Rate Differential in paragraph 8(i) of this Order.

By: _____
      John C. Tishler, Esq.
      WALLER LANSDEN DORTCH & DAVIS, LLP
      511 Union Street, Suite 2700
      Nashville, TN 37219

By: _____
      Scott Zuber, Esq.
      DAY PITNEY LLP
      200 Campus Drive
      Florham Park, NJ 07932

By: _____
      Jeffrey L. Elegant, Esq.
      KATTEN MUCHIN ROSENMAN LLP
      525 West Monroe Street
      Chicago, IL 60661

Attorneys for the Prepetition Secured Lenders

**<u>EXHIBIT A</u>**

Form of Note

## SUPER- PRIORITY DIP NOTE

$_____                                        New York, New York
                                                   Issue Date: _____ ___, 2008


      FOR VALUE RECEIVED, the undersigned, Lexington Precision Corporation and Lexington Rubber Group, Inc., each a Delaware corporation and a debtor in possession (collectively, the "Debtors"), hereby jointly and severally and unconditionally promise to pay to the order of Lubin Partners, LLC, a Delaware limited liability company, William B. Connor and ORA Associates, LLC, a New York limited liability company (collectively, the "Holders"), the aggregate principal sum of ___ Million Dollars ($_____), to be allocated among the Holders as follows:


|                    |             |
|--------------------|-------------|
| Lubin Partners, LLC | $ _____ |
| William B. Connor   | $ _____ |
| ORA Associates, LLC | $ _____ |

      1.    Payment of Principal and Interest.  The principal amount of this Note shall be paid on the earliest of (i) the one year anniversary of the Petition Date, (ii) the effective date of a confirmed chapter 11 plan of reorganization in the Chapter 11 Cases,[1] (iii) the conversion of any of the Chapter 11 Cases to cases under chapter 7 of the Bankruptcy Code, (iv) the appointment of a chapter 11 trustee in any of the Chapter 11 Cases or the appointment of an examiner with expanded powers to operate or manage the financial affairs, the business or the reorganization of any Debtor and (v) the date of acceleration by the Holders pursuant to Section 7 hereof (such date, the "Stated Maturity Date").  The Debtors also promise to pay interest on this Note on the first business day of each month (in arrears) and upon the date this Note matures or otherwise becomes due and payable at the rate of LIBOR plus 7% per annum with a LIBOR floor of 3% per annum (computed on the basis of a 360 day year for the actual number of days lapsed); provided that any principal amount not paid when due, and to the extent permitted by applicable law, any interest not paid when due, in each case whether at Stated Maturity Date, by required prepayment, declaration, acceleration or demand or otherwise (both before as well as after judgment), shall bear interest payable upon demand at the rate that is 2% per annum in excess of the rate of interest otherwise payable upon this Note.  All payments hereunder, including any prepayment, shall be made to the Holders on a pro rata basis based on the respective principal amounts owed to each Holder.

      2.    Optional Prepayment.  Debtors shall have the right at any time or from time to time and without premium or penalty, to voluntarily prepay all or any portion of this Note.  Each prepayment shall be accompanied by the payment of accrued and unpaid interest on

---

[1] Capitalized terms used but not otherwise defined shall have the meanings ascribed to such terms in Section 9 hereof.

the amount being prepaid, through the date of prepayment. Any amounts prepaid hereunder may not be reborrowed.

3.    <u>Lender Fee</u>. Pursuant to the Interim Order and the Final Borrowing Order, the Debtors shall pay to the Holders a fee in cash in the aggregate amount of $80,000,[2] to be allocated to the Holders pro rata based upon their funding commitment.

4.    <u>Use of Proceeds</u>. The proceeds of this Note shall be used by the Debtors to the extent Cash Collateral (as defined in the Interim Order and Final Borrowing Order) is insufficient to fund working capital requirements and general corporate purposes relating to the Debtors' post-petition operations and for other expenditures as authorized in the Interim Order, the Final Borrowing Order or as otherwise authorized by the Bankruptcy Court; <u>provided</u> that no portion of the proceeds shall be used, directly or indirectly, to (a) finance or make any payment or prepayment to any Person with respect to a Prepetition Indebtedness unless authorized by an order of the Bankruptcy Court; or (b) finance in any way any investigation, adversary action, suit, arbitration, proceeding or other litigation of any type against the Holders (solely in their capacity as Holders). The Debtors shall use the entire amount of the proceeds in accordance with this Section 4; <u>provided</u>, <u>however</u>, that nothing herein shall in any way prejudice the Holders from objecting, for any reason, to any requests, motions or applications made in the Bankruptcy Court, including any applications for interim or final allowances of compensation for services rendered or reimbursement of expenses incurred under Sections 105(a), 330 or 331 of the Bankruptcy Code, by any party in interest; and <u>provided</u>, <u>further</u>, that Debtor shall not use the proceeds for any purpose that is prohibited under the Bankruptcy Code. The proceeds of this Note shall be deposited and held in a new bank account at a bank that has been approved by the Office of the United States Trustee for the Southern District of New York as an authorized bank depository (the "<u>DIP Account</u>") as described in the Interim Order and the Final Borrowing Order and no other funds or cash collateral of the Debtors shall be co-mingled with the proceeds of this Note or deposited in the DIP Account.

5.    <u>Superpriority Nature of Obligations</u>. All obligations of the Debtors under this Note (including the obligation to pay principal, interest, fees, costs, charges, commissions and expenses) shall be paid as provided herein when due, without defense, offset, reduction or counterclaim, and shall constitute allowed claims to the full extent thereof against the Debtors arising under Section 364(c)(1) of the Bankruptcy Code, and senior to any and all other claims, including, without limitation, all administrative expenses or other claims arising under sections 105, 326, 328, 330, 331, 503(b), 506(c), 507(a), 507(b), 726, 1113 or 1114 of the Bankruptcy Code; <u>provided</u>, <u>however</u>, that notwithstanding the foregoing, the DIP Super-Priority Claim shall be junior, subordinate, and subject to the Adequate Protection Claim, the Prepetition Senior Secured Debt, the Senior Lender Prepetition Liens, the Carve-Out, and the Adequate Protection Lien (all as defined in the Interim Order and the Final Borrowing Order). Subject to the Carve-Out, the Adequate Protection Liens (as defined in the Interim Order and the Final Borrowing Order), the Prepetition Senior Secured Debt (as defined in the Interim Order and the Final

---

[2] Payment of the first $40,000 (assuming the amount of the initial loan is $2,000,000) shall be authorized in the Interim Order, with the remaining $40,000 to be authorized in the Final Borrowing Order.

Borrowing Order) and the Adequate Protection Claim (as defined in the Interim Order and the Final Borrowing Order), the DIP Super-Priority Claim will at all times be senior to any unsecured claims of any creditor or other entity in this and any subsequent case under the Bankruptcy Code.  With the exception of the Carve-Out, the Adequate Protection Liens, the Prepetition Senior Secured Debt, and the Adequate Protection Claim, no cost or expense of administration or any claims in this case, including those resulting from or incurred after any conversion of this case pursuant to Section 1112 of the Bankruptcy Code shall rank prior to, or on parity with, the DIP Super-Priority Claims.

      6.    Covenants.  Each of the Debtors covenant and agree that until this Note is paid in full, neither of the Debtors shall, without the prior written consent of the Required Holders:

      (a)    Asset Sales.  enter into any transaction of merger or consolidation, or liquidate, wind-up or dissolve itself (or suffer any liquidation or dissolution), or convey, sell, lease or sub-lease (as lessor or sublessor), transfer or otherwise dispose of, in one transaction or a series of transactions, all or any part of its business, property or assets, whether now owned or hereafter acquired, other than sales of inventory and equipment in the ordinary course of business and sales of obsolete equipment or equipment that is no longer required in the business; provided, however, that the Debtors shall be permitted to sell, in one transaction or a series of transactions, all or any part of its business, property or assets, whether now owned or hereafter acquired, provided that the proceeds of such sale (less all costs, expenses and fees related thereto) shall be subject to the DIP Super-Priority Claim.

      (b)    Chapter 11 Claims.  unless all obligations under this Note [and the Previous DIP Note] have been indefeasibly paid in full in cash, incur, create, assume, suffer or permit any claim or encumbrance against it or any of its property or assets in any Chapter 11 Case (other than the Existing Secured Claims, the Carve-Out, the Adequate Protection Claim, and the Insurance Premium Financing) to be pari passu with or senior to the claims of the Holders against such Debtor in respect of the obligations hereunder, or apply to the Bankruptcy Court for authority to do so; or

      (c)    Limitation on Payments Related to Prepetition Obligations.  (i) make any payment or prepayment on or redemption or acquisition for value of any Prepetition Indebtedness or other pre-Petition Date obligations of such Debtor, (ii) pay any interest on any Prepetition Indebtedness of such Debtor, including, without limitation, by way of depositing with the trustee with respect thereto money or securities before due for the purpose of paying when due (whether in cash, in kind, in securities or otherwise), or (iii) make any payment or create or permit any lien pursuant to Section 361 of the Bankruptcy Code (other than the Adequate Protection Liens (as such term is defined in the Interim Order and the Final Borrowing Order), or apply to the Bankruptcy Court for the authority to do any of the foregoing; provided that the Debtors may make payments as permitted in the Interim Order, the Final Borrowing Order, or as authorized in any other order of the Bankruptcy Court, including, for example, making Adequate Protection Payments (as such term is defined in the Interim Order and the Final Borrowing Order).

3

7.    Events of Default.  Notwithstanding the provisions of Section 362 of the Bankruptcy Code and without application or motion to, or order from, the Bankruptcy Court, if any of the following conditions or events ("Events of Default") shall occur:

(a)    Failure to Make Payments When Due.  Failure by the Debtors to pay any installment of principal on this Note when due or pay any installment of interest within 3 business days of when due, whether at stated maturity, by acceleration, by notice of voluntary prepayment, by mandatory prepayment or otherwise; or failure by the Debtors to pay any fee or any other amount due under this Note within three days after the date due;

(b)    Chapter 11 Cases.  With respect to the Chapter 11 Cases, (i) the entry of an order authorizing any Debtor in any of the Chapter 11 Cases to obtain additional financing under Section 364(c) or (d) of the Bankruptcy Code (other than Insurance Premium Financing, as defined in the Interim Order and the Final Borrowing Order) if such order does not provide for the indefeasible payment in full in cash of all obligations under this Note [and the Previous DIP Note]; (ii) the appointment of an interim or permanent trustee in any of the Chapter 11 Cases or the appointment of an examiner in any of the Chapter 11 Cases with expanded powers to operate or manage the financial affairs, the business, or the reorganization of any Debtor; (iii) the dismissal of any of the Chapter 11 Cases, or the conversion of any of the Chapter 11 Cases to a case under chapter 7 of the Bankruptcy Code; (iv) the entry of an order granting relief from or modifying the automatic stay of Section 362 of the Bankruptcy Code (a) to allow any creditor to execute upon or enforce a lien on any material portion of the property or assets of any Debtor or (b) with respect to any lien of, or the granting of any lien on any other property or assets of any Debtor to, any state or local environmental or regulatory agency or authority, but only to the extent that it would have a Material Adverse Effect; (v) exercise of rights by the Prepetition Senior Lenders (as defined in the Interim Order and the Final Borrowing Order) pursuant to Paragraph 13 of the Interim Order and the corresponding paragraph of the Final Borrowing Order against the Senior Lender Prepetition Collateral and/or the other collateral in which Adequate Protection Liens were granted to the Prepetition Senior Lenders; (vi) the entry of an order amending, supplementing, staying, vacating or otherwise modifying any of the Interim Order, the Final Borrowing Order or this Note or any of the Holders' rights, benefits, privileges or remedies under the Interim Order, the Final Borrowing Order or this Note; (vii) the entry of an order consolidating or combining any Debtor with any other Person (other than another Debtor); (viii) an order shall be entered approving, or the Debtor shall have consented to, any claim or administrative expense claim (other than the Carve-Out and the Adequate Protection Claim) having any priority over, or being pari passu to the super-priority administrative expense claim of the obligations under this Note; or (ix) use of the proceeds of this Note for any purpose that is prohibited under Section 6(c) hereof;

(c)    The Final Borrowing Order.  The Bankruptcy Court shall fail to enter the Final Borrowing Order on or prior to the date that is 30 days after entry of the Interim Order;

(d)    Default.  Any Debtor shall default in the due performance or observance by it of any term, covenant or agreement contained in this Note or any term or agreement relating to this Note that is contained in the Interim Order or the Final Borrowing Order, and such default

4

shall continue for a period of 5 days after receipt by the Debtors of notice from the Holders of such default; or

        (e)    <u>Judgments</u>.  (i) Any money judgment, writ or warrant of attachment or similar process as to post-Petition Date liability or debt (a) in any individual case an amount in excess of $50,000 or (b) in the aggregate at any time an amount in excess of $250,000 (in either case not adequately covered by insurance as to which a solvent and unaffiliated insurance company has acknowledged coverage) shall be entered or filed against the Debtors or any of their respective assets and shall remain undischarged, unvacated, unbonded or unstayed for a period of 60 days; or (ii) any non-monetary judgment or order with respect to a post-Petition Date event shall be rendered against any Debtor that would reasonably be expected to result in a Material Adverse Effect and shall remain undischarged, unvacated, unbonded or unstayed for a period of 60 days.

        (f)    <u>Use of Proceeds</u>.  Funds or Cash Collateral (as defined in the Interim Order and Final Borrowing Order) are co-mingled with the proceeds of this Note in the DIP Account or proceeds of this Note are used in a manner prohibited by this Note.

Upon the occurrence and during the continuance of any Event of Default, the Holders may (notwithstanding the provisions of Section 362 of the Bankruptcy Code and without application or motion to, or order from, the Bankruptcy Court) by written notice to the Debtors declare (i) the unpaid principal amount of and accrued interest on the Notes and (ii) all other obligations immediately due and payable, without presentment, demand, protest or other requirements of any kind, all of which are hereby expressly waived by the Debtors, and the same shall forthwith become, immediately due and payable.

        9.    <u>Definitions</u>.  The following terms shall have the following meanings in this Note:

"Bankruptcy Code" means title 11 of the United States Code entitled "Bankruptcy", as now and hereafter in effect, or any successor statute.

"Bankruptcy Court" means the United States Bankruptcy Court for the Southern District of New York.

"Business Day" means each day that is not a Legal Holiday.

"Chapter 11 Cases" means those certain proceedings for relief filed by the Debtors under Chapter 11 of the Bankruptcy Code and being jointly administered under Case No. 08-11153 in the United States Bankruptcy Court for the Southern District of New York.

"Existing Secured Claims" means any secured claims in existence as of the commencement of the Chapter 11 Cases.

5

"Final Borrowing Order" means an order substantially in the form of the Interim Order entered by the Bankruptcy Court in these Chapter 11 cases after a final hearing under Bankruptcy Rule 4001.

"Final Order" means an order, judgment or other decree of the Bankruptcy Court or any other court or judicial body with proper jurisdiction, as the case may be, which is in full force and effect and has not been reversed, stayed, modified or amended and as to which (i) any right to appeal or seek certiorari, review or rehearing has been waived or (ii) the time to appeal or seek certiorari, review or rehearing has expired and as to which no appeal or petition for certiorari, review or rehearing is pending.

"Interim Order" means that certain Interim Order Pursuant to Bankruptcy Code Sections 105, 361, 362, 363, and 364 (i) Authorizing the Debtors to Use Cash Collateral, (ii) Granting Adequate Protection to Prepetition Secured Lenders, (iii) Authorizing Post-Petition Financing, and (iv) Scheduling a Final Hearing Pursuant to Bankruptcy Rule 4001.

"Issue Date" means the issue date of this Note on April ___, 2008.

"Legal Holiday" means a Saturday, a Sunday or a day on which banking institutions in the State of New York are authorized or required by law to close.  If a payment date is a Legal Holiday, payment shall be made on the next succeeding date that is not a Legal Holiday, and interest shall accrue for the intervening period at the rate set forth in Section 1 hereof.  If a regular record date is a Legal Holiday, the record shall not be affected.

"LIBOR" means a fluctuating rate of interest determined on a daily basis equal to the one-month rate of interest appearing on Telerate Page 3750 (or any successor page) as the 30-day London interbank offered rate for deposits in U.S. Dollars at approximately 11:00 a.m. (London Time) on the second preceding Business Day.  If for any reason such rate is not available, "LIBOR" means the fluctuating rate of interest calculated on a daily basis equal to the one-month rate of interest appearing on Reuters Screen LIBO Page as the 30-day London interbank offered rate for deposits in U.S. Dollars at approximately 11:00 a.m. (London time) on the second preceding Business Day; provided, however, if more than one rate is specified on Reuters Screen LIBO Page, the applicable rate shall be the arithmetic mean of all such rates; provided, however, if such rate is not available, "LIBOR" shall mean a fluctuating rate of interest based upon a comparable rate designated by the Holders as a substitute therefore.  "Telerate Page 3750" means the British Bankers Association Libor Rates (determined as of 11:00 a.m. London time) that are published by Moneyline Telerate (or any successor thereto).  As used in this definition, the term "Business Day" means a day on which commercial banks are open for international business (including dealings in U.S. Dollar deposits in London, England).

"Material Adverse Effect" means (i) a material adverse effect upon the business, operations, liabilities (whether contractual, environmental or otherwise), properties, assets, condition (financial or otherwise) or prospects of the Debtors taken as a whole or (ii) the material impairment of the ability of any Debtor to perform the obligations of the Debtors under the Note.

6

"Motion" means the Debtors' Motion (A) for Authorization Pursuant to 11 U.S.C. §§ 105, 361, 362, 364(c)(1), and 364(e) to (i) Use Cash Collateral, (ii) Grant Adequate Protection to Prepetition Secured Lenders, and (iii) Obtain Postpetition Financing, and (B) to Schedule a Final Hearing Pursuant to Bankruptcy Rule 4001.

"Note" means this $_____ Super-Priority DIP Note by and between the Debtors and the Holders and issued on _____ ___, 2008.

"Person" an individual, partnership, corporation, limited liability company, business trust, joint stock company, trust, unincorporated association, joint venture, governmental authority or other entity of whatever nature.

"Petition Date" means April 1, 2008, the date on which the Debtors filed their petitions for relief commencing these Chapter 11 Cases.

"Prepetition Indebtedness" means indebtedness of any Debtor outstanding on the Petition Date, including Indebtedness under the Prepetition Credit Agreements, the Senior Subordinated Notes and the 13% Junior Subordinated Note (as those terms are defined and/or referenced in the Motion).

["Previous DIP Note" means the Super-Priority DIP Note by and between the Debtors and the Holders issued on April 3, 2008."]

"Required Holders" means Holders holding more than 50% of the principal amount of the Note.

       10.    <u>Successors and Assigns</u>.  This Note shall inure to the benefit of the Holders and their respective successors and assigns and shall bind the Holders, their respective successors and assigns, and any chapter 7 or chapter 11 trustee appointed after the Petition Date or elected for the estates of the Debtors or an examiner appointed pursuant to section 1104 of the Bankruptcy Code.

       11.    <u>Presentment and Demand</u>.  Demand, presentment, protest and notice of nonpayment and protest are hereby waived by the Debtors.

       12.    <u>Amendment and Non-Waiver</u>.

       (a)    This Note may not be amended, modified, or waived except by an agreement in writing signed by the Debtors and the Required Holders; <u>provided</u> that consent of all Holders shall be required to reduce the principal amount, the interest rate, or extend any payment date.

       (b)    To the extent permitted by law, no failure to exercise and no delay on the part of the Holders in exercising any power or right in connection with this Note or available at law or in equity, shall operate as a waiver thereof, and no single or partial exercise of any such rights or power, or any abandonment or discontinuance of steps to enforce such a right or power, shall preclude any other or further exercise thereof or the exercise of any other right or power.

13.    <u>Notices</u>.  Except as otherwise provided herein, any notice, demand, request, consent, approval, declaration, delivery or other communication hereunder to be made pursuant to the provisions of this Note shall be sufficiently given or made if in writing and either delivered in person with receipt acknowledged or three (3) Business Days after being sent by registered or certified mail, return receipt requested, postage prepaid, or by telecopy and confirmed by telecopy answerback, addressed as follows:

(a)    If to the Debtors:

Lexington Precision Corporation
Lexington Rubber Group, Inc.
800 Third Avenue, 15th Floor
New York, NY 10022
Attn:  Warren Delano
Telecopy No.:  212-319-4695

with a copy to:

Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, NY 10153
Telecopy No.:  212-310-8000
Attn:  Marcia L. Goldstein, Esq.
    Christopher J. Marcus, Esq.

(b)    If to the Holders:

c/o Michael A. Lubin
Lexington Precision Corporation
800 Third Avenue, 15th Floor
New York, NY 10022
Telecopy No.:  212-319-4659

with a copy to:

O'Melveny & Myers LLP
7 Times Square
New York, NY 10036
Telecopy No.:  212-362-2061
Attn:  Gerald C. Bender, Esq.

or at such other address as may be substituted by notice given as herein provided.  The giving of any notice required hereunder may be waived in writing by the party entitled to receive such notice.

14.    <u>Submission to Jurisdiction:  Waiver of Jury Trial</u>.

(a)    The Debtors and the Holders hereby irrevocably submit to the jurisdiction of the Bankruptcy Court, and they hereby irrevocably agree that any action concerning the Note shall be heard and determined in the Bankruptcy Court.  The Debtors and the Holders hereby irrevocably waive, to the fullest extent they may effectively do so, the defense of an inconvenient forum to the maintenance of any such action in the Bankruptcy Court.  The Debtors and the Holders hereby irrevocably agree that the summons and complaint or any other process in any such action may be served by mailing in accordance with the provisions set forth in Section 13 hereof.

(b)    EACH OF THE DEBTORS AND THE HOLDERS HEREBY IRREVOCABLY WAIVE ALL RIGHT TO TRIAL BY JURY IN ANY ACTION, PROCEEDING OR COUNTERCLAIM ARISING OUT OF OR RELATING TO ANY OBLIGATIONS UNDER THIS NOTE.

15.    <u>Governing Law</u>.  This Note shall be governed by, construed and enforced in accordance with the laws of the State of New York applicable to agreements made and to be wholly performed in such State and without giving effect to the conflict of laws principles thereof.

16.    <u>Indemnification for Expenses</u>.  The Debtors agree to pay all reasonable out-of-pocket expenses of the Holders (solely in their capacity as Holders) incurred in connection with the preparation, execution, delivery, enforcement and administration of this Note, the documents and instruments referred to herein and any amendments, waivers or consents relating hereto or thereto including, without limitation, the reasonable fees and expenses of O'Melveny & Myers LLP, counsel for the Holders.  In addition, the Debtors agree to pay, and save Holders (solely in their capacity as Holders) harmless from all liability for, any stamp or other documentary taxes which may be payable in connection with the execution or delivery of this Note by the Debtors.

17.    <u>Indemnification of Holders</u>.  The Debtors hereby agree to protect, indemnify, pay and save harmless the Holders (solely in their capacity as Holders) from and against any and all claims, demands, liabilities, damages, losses, costs, chargers and expenses (including reasonable fees, expenses and disbursements of outside counsel) that Holders (solely in their capacity as Holders) may incur or be subject to as consequence, direct or indirect, of the issuance of this Note by the Debtors other than as a result of the gross negligence or willful misconduct of the Holders (solely in their capacity as Holders) as determined by a final judgment of a court of competent jurisdiction.

[SIGNATURE PAGE FOLLOWS]

9

      **IN WITNESS WHEREOF,** the Debtors have executed and delivered this Note as of the day and year and at the place first above written.

LEXINGTON PRECISION CORPORATION


By: _____
      Name:  Warren Delano
      Title:    President



LEXINGTON RUBBER GROUP, INC.


By:_____
      Name:  Warren Delano
      Title:    President

## **EXHIBIT B**

Budget

**LEXINGTON PRECISION CORPORATION**

**FORECAST OF CASH RECEIPTS AND DISBURSEMENTS FROM APRIL 2 THROUGH JUNE 20, 2008**
(in thousands of dollars)

| | Week Ended | | | | | | | | | | | |
| --- | --- | --- | --- | --- | --- | --- | --- | --- | --- | --- | --- | --- |
| | 2-4 Apr | 11-Apr | 18-Apr | 25-Apr | 2-May | 9-May | 16-May | 23-May | 30-May | 6-Jun | 13-Jun | 20-Jun |
| Cash receipts: | 1,286 | 1,365 | 1,578 | 1,664 | 1,562 | 1,664 | 1,794 | 1,400 | 1,889 | 1,511 | 1,433 | 1,425 |
| | | | | | | | | | | | | |
| Cash disbursements: | | | | | | | | | | | | |
| Debt service: | | | | | | | | | | | | |
| CapitalSource principal (1) | - | - | - | - | 269 | - | - | - | - | 269 | - | - |
| CapitalSource interest | - | - | - | - | 207 | - | - | - | - | 207 | - | - |
| CapitalSource fees (LOC & unused line) | - | - | - | - | 5 | - | - | - | - | 5 | - | - |
| DIP Interest and fees | 40 | - | 40 | 23 | - | - | - | - | 34 | - | - | - |
| LSD | - | - | - | - | - | - | - | - | - | - | - | - |
| Payroll and payroll taxes | 339 | 338 | 666 | 333 | 666 | 333 | 666 | 334 | 665 | 334 | 659 | 326 |
| Retirement & Savings Plan 401(k) | 25 | 25 | 57 | 25 | 57 | 25 | 57 | 25 | 57 | 25 | 57 | 25 |
| Group Medical Care Plan Administrative Fees | - | - | 20 | - | - | - | 20 | - | - | - | - | 20 |
| Prescription drug plan | - | 25 | - | 25 | - | 25 | - | 25 | - | 25 | - | 25 |
| | | | | | | | | | | | | |
| Reorganization professional fees and expenses | - | 125 | 125 | 25 | 175 | 175 | 25 | 90 | 25 | 75 | 125 | - |
| DIP legal counsel | - | - | - | - | 10 | - | - | - | - | 10 | - | - |
| Ordinary course professionals | - | - | - | - | 35 | - | - | - | - | 35 | - | 35 |
| | | | | | | | | | | | | |
| Vendors - check disbursements (excluding Dow & Wacker): | | | | | | | | | | | | |
| Dow Coming | 34 | 40 | 51 | 69 | 133 | 44 | 51 | 83 | 75 | 83 | 75 | 83 |
| Wacker | 51 | 145 | 265 | 26 | 187 | 164 | 48 | 126 | 130 | 108 | 126 | 128 |
| All other excluding capex | 1,000 | 648 | 636 | 625 | 550 | 559 | 700 | 614 | 541 | 578 | 671 | 579 |
| Capex | 35 | 23 | 33 | 23 | 23 | 33 | 23 | 23 | 18 | 13 | 48 | 13 |
| Ohio BWC and UMR Health Disbursements | 36 | 60 | 60 | 60 | 60 | 120 | 60 | 60 | 60 | 60 | 60 | 60 |
| Commercial Traffic | 19 | 20 | 19 | 20 | 19 | 20 | 19 | 19 | 20 | 21 | 19 | 20 |
| Utilities | - | - | 130 | - | - | - | - | - | - | - | - | - |
| Total cash disbursed | 1,579 | 1,449 | 2,102 | 1,254 | 2,436 | 1,498 | 1,669 | 1,399 | 1,625 | 1,848 | 1,840 | 1,314 |
| | | | | | | | | | | | | |
| Net cash received (used) | (293) | (84) | (524) | 410 | (874) | 166 | 125 | 1 | 264 | (337) | (407) | 111 |
| Cumulative net cash received (used) | (293) | (377) | (901) | (491) | (1,365) | (1,199) | (1,074) | (1,073) | (809) | (1,146) | (1,553) | (1,442) |
| | | | | | | | | | | | | |
| DIP loan proceeds | 2,000 | 2,000 | 4,000 | 4,000 | 4,000 | 4,000 | 4,000 | 4,000 | 4,000 | 4,000 | 4,000 | 4,000 |
| | | | | | | | | | | | | |
| Net cash available | 1,707 | 1,623 | 3,099 | 3,509 | 2,635 | 2,801 | 2,926 | 2,927 | 3,191 | 2,854 | 2,447 | 2,558 |
| | | | | | | | | | | | | |
| (1) Subject to agreement on the waiver of default interest | | | | | | | | | | | | |
| | | | | | | | | | | | | |
| Net sales (based on date shipped) | 955 | 1,498 | 1,535 | 1,626 | 1,896 | 1,610 | 1,637 | 1,616 | 1,731 | 1,634 | 1,633 | 1,799 |
| | | | | | | | | | | | | |
| Net cumulative sales | 955 | 2,453 | 3,988 | 5,614 | 7,510 | 9,120 | 10,757 | 12,373 | 14,104 | 15,738 | 17,371 | 19,170 |