**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-------------------------------------------------------------x
                                                             :
In re                                        :    Chapter 11 Case No.
                                                             :
**LEXINGTON PRECISION CORP., et al.,**       :    08-11153 (MG)
                                                             :
      Debtors.                               :    (Jointly Administered)
                                                             :
-------------------------------------------------------------x

**ORDER PURSUANT TO SECTIONS 105(a), 362(d), 363(b), AND 503(b) OF THE BANKRUPTCY CODE AND RULES 4001 AND 6004 OF THE FEDERAL RULES OF BANKRUPTCY PROCEDURE (I) (a) AUTHORIZING DEBTORS TO CONTINUE THEIR WORKERS' COMPENSATION PROGRAMS AND THEIR LIABILITY, PRODUCT, PROPERTY, AND OTHER INSURANCE PROGRAMS AND (b) AUTHORIZING DEBTORS TO PAY ALL OBLIGATIONS IN RESPECT THEREOF AND (II) AUTHORIZING FINANCIAL INSTITUTIONS TO HONOR AND PROCESS CHECKS AND TRANSFERS RELATED TO SUCH OBLIGATIONS**

Upon the motion, dated April 2, 2008 (the "Motion"),[1] of Lexington Precision Corporation and Lexington Rubber Group, Inc., as debtors and debtors in possession (together, the "Debtors"), pursuant to sections 105(a), 362(d), 363(b), and 503(b) of the title 11 of the United States Code (the "Bankruptcy Code") and Rules 4001 and 6004 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), for entry of an order (I) authorizing, but not directing, the Debtors to (a) continue their workers' compensation programs (the "Workers' Compensation Programs") and their liability, product, property, and other insurance programs, including, without limitation, all of the policies set forth on Exhibit A annexed hereto (together with the Workers' Compensation Programs, the "Insurance Programs") and (b) pay all obligations in respect thereof, on an uninterrupted basis, consistent with their practices in effect prior to the commencement of the Debtors' chapter 11 cases, including the payment of all premiums, claims, deductibles, administrative expenses, and all other charges incurred, whether

---

[1] Capitalized terms not defined herein shall have the meaning used in the Motion.

relating to the period prior to or after the commencement of these chapter 11 cases (collectively, "Insurance Obligations"), and (II) authorizing certain banks and financial institutions (the "Banks"), including, but not limited to, the Banks listed on Exhibit B, to honor and process checks and transfers related to such obligations, as more fully described in the Motion; and the Court having jurisdiction to consider the Motion and the relief requested therein in accordance with 28 U.S.C. §§ 157 and 1334 and the Standing Order M-61 Referring to Bankruptcy Judges for the Southern District of New York Any and All Proceedings Under Title 11, dated July 10, 1984 (Ward, Acting C.J.); and consideration of the Motion and the relief requested therein being a core proceeding pursuant to 28 U.S.C. § 157(b); and venue being proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409; and due and proper notice of the Motion having been provided and no other or further notice need be provided; and a hearing having been held to consider the relief requested in the Motion (the "Hearing"); and upon the Affidavit of Dennis J. Welhouse Pursuant to Local Bankruptcy Rule 1007-2, sworn to on April 1, 2008 (the "Welhouse Affidavit"), the record of the Hearing, and all of the proceedings had before the Court; and the Court having found and determined that the relief sought in the Motion is in the best interests of the Debtors, their estates and creditors, and all parties in interest and that the legal and factual bases set forth in the Motion establish just cause for the relief granted herein; and after due deliberation and sufficient cause appearing therefor, it is

       ORDERED that the Motion is granted; and it is further

       ORDERED that the Debtors are authorized and empowered to maintain their Insurance Programs without interruption, on the same basis, and in accordance with the same practices and procedures that were in effect prior to the commencement of the Debtors' chapter 11 cases; and it is further

ORDERED that the Debtors are authorized, but not required, to pay, in their sole discretion, all Insurance Obligations, including, without limitation, all premiums, claims, deductibles, excess, retrospective adjustments, administrative and brokers' fees, and all other obligations arising under the Insurance Programs, including those Insurance Obligations that were due and payable or related to the period before the commencement of these chapter 11 cases, without further Order of the Court.; and it is further

ORDERED that, pursuant to section 362(d) of the Bankruptcy Code, to the extent any of the Debtors' employees hold claims under the Debtors' Workers' Compensation Programs, these employees are authorized, at the Debtors' discretion, to proceed with their workers' compensation claims through and including the collection of any judgment in the appropriate judicial or administrative forum under the Workers' Compensation Programs; provided, that the prosecution of such claims is in accordance with the Workers' Compensation Program and the recoveries are limited to the proceeds available under the applicable policy; and it is further

ORDERED that the Banks, including, but not limited to those on the list annexed hereto as Exhibit B, are authorized to honor, process, and pay, to the extent of funds on deposit, any and all prepetition checks or electronic fund transfer requests issued by the Debtors in respect of any Insurance Obligation, whether pre or postpetition; and it is further

ORDERED that any Bank, including, but not limited to those on the list annexed hereto as Exhibit B, may rely on the representations of the Debtors with respect to whether any check or other transfer drawn or issued by the Debtors prior to the Commencement Date should be honored pursuant to this Order, and such Bank shall not have any liability to any party for relying on such representations by the Debtors as provided for herein; and it is further

ORDERED that nothing in this Order or the Motion shall be construed as prejudicing the rights of the Debtors to dispute or contest the amount of or basis for any claims against the Debtors in connection with or relating to the Debtors' Insurance Programs; and it is further

ORDERED that, to the extent that any Insurance Program or any related contract or agreement is deemed an executory contract within the meaning of section 365 of the Bankruptcy Code, neither this Order nor any payments made in accordance with this Order shall constitute the postpetition assumption of any such Insurance Program, contract, or related agreement pursuant to section 365 of the Bankruptcy Code; and it is further

ORDERED that notwithstanding any applicability of Rules 6004(h),[2] 7062, or 9014 of the Bankruptcy Rules, the terms and conditions of this Order shall be immediately effective and enforceable upon its entry; and it is further

ORDERED that the requirement set forth in Local Bankruptcy Rule 9013-1(b) for the filing of a separate memorandum of law in support of the Motion is satisfied.

Dated: **April 22, 2008**
      New York, New York

                                                   **/s/Martin Glenn**
                                               United States Bankruptcy Judge

---

[2] Bankruptcy Rule 6004(h) is an interim bankruptcy rule adopted pursuant to standing General Order M-308 of the United States Bankruptcy Court for the Southern District of New York, signed on October 11, 2005 by Chief Judge Stuart M. Bernstein.

# **EXHIBIT A**

| INSURER POLICY | COVERAGE/ TYPE | INSURED | LIMITS | DEDUCTIBLE | TERM | EXPIRATION | BROKER | PREMIUM |
|---|---|---|---|---|---|---|---|---|
| American International Group WC 3425470 and 3425471 | Workers' Compensation | Lexington Precision Corporation and Lexington Rubber Group, Inc. | Statutory | Fully-insured plan | 52 weeks starting July 1, 2007 | June 30, 2008 | Leonard Insurance Services Agency, Inc. | $815,790 |
| The Travelers Indemnity Company of America No. TC2HUB-133D983-5-04 (St. Paul Travelers Insurance company) (The Travelers Indemnity Company) | Workers' Compensation | Lexington Precision Corporation and Lexington Rubber Group, Inc. | Statutory | Self-insured plan | 52 weeks starting July 1, 2004 | June 30, 2005 | Leonard Insurance Services Agency, Inc. | $513,621 |
| St. Paul Fire and Marine Insurance Company (St. Paul Travelers Insurance Company) (The Travelers Indemnity Company) | Workers' Compensation | Lexington Precision Corporation and Lexington Rubber Group, Inc. | Statutory | Self-insured plan | 52 weeks starting July 1, 2003 | June 30, 2004 | Leonard Insurance Services Agency, Inc. | $593,080 |
| Lumbermens Mutual Casualty Company (Kenper) | Workers' Compensation | Lexington Precision Corporation and Lexington Rubber Group, Inc. | Statutory | Self-insured plan | Seven policy years starting July 1, 1996 | June 30, 2003 | Leonard Insurance Services Agency, Inc. | Different for each policy year |
| Zurich Insurance Company | Workers' Compensation | Lexington Precision Corporation and Lexington Rubber Group, Inc. | Statutory | Self-insured plan | Eleven policy years starting July 1, 1995 | June 30, 2006 | Acordia of Western Pennsylvania | $431,314 |
| The Home Insurance Company in Liquidation | Workers' Compensation | Lexington Precision Corporation and Lexington Rubber Group, Inc. | Statutory | Self-insured plan | June 1, 1991 through June 30, 1995 | June 30, 1995 | Accordia of Western Pennsylvania | Various |
| CHUBB  3581-73-98-CLE  Occurrence | Employer's Liability Stop Gap (Monopolistic States) | Lexington Precision Corporation and Lexington Rubber Group, Inc. | $1,000,000 aggregate and each accident | $0.0 SIR | 52 weeks starting July 1, 2007 | June 30, 2008 | Leonard Insurance Services Agency, Inc. | Included in general liability premium |
| CHUBB  3581-73-98 CLE Occurrence | General Liability, Products & Advertisers, Specified Third Parties and Employers' | Lexington Precision Corporation and Lexington Rubber Group, Inc. | $1 million per occurrence, $2 million general aggregate and products aggregate. (coverage policy period) | $0.0 Deductible Primary | 52 weeks starting July 1, 2007 | June 30, 2008 | Leonard Insurance Services Agency, Inc. | $87,068 |
| State of Ohio Occurrence | Workers' Compensation retrospectively rated plan (Monopolistic States) | Lexington Precision Corporation and Lexington Rubber Group, Inc. | Statutory | $200,000 per claim $460,000 aggregate (approx.) | 52 weeks | June 30, 2008 | N/A | $255,000 |
| State of Ohio Occurrence | Workers' Compensation retrospectively rated plan (Monopolistic States) | Lexington Precision Corporation and Lexington Rubber Group, Inc. | Statutory | Various | 52 Weeks starting July 1, 2007 | From July 1, 2007 to June 30, 2008 | N/A | Various |

| INSURER POLICY | COVERAGE/ TYPE | INSURED | LIMITS | DEDUCTIBLE | TERM | EXPIRATION | BROKER | PREMIUM |
|---|---|---|---|---|---|---|---|---|
| Fireman's Fund Insurance Company SU0-000-9929-6262 Occurrence | Umbrella Liability | Lexington Precision Corporation and Lexington Rubber Group, Inc. | $25 million each occurrence and in the aggregate | Excess primary | 52 weeks starting July 1, 2007 | June 30, 2008 | Leonard Insurance Services Agency, Inc. | $41,244 |
| CHUBB 7980-25-32 Occurrence | Excess Umbrella Liability | Lexington Precision Corporation and Lexington Rubber Group, Inc. | $25 million each occurrence and in the aggregate | Excess primary and umbrella | 52 weeks starting July 1, 2007 | June 30, 2008 | Leonard Insurance Services Agency, Inc. | $28,785 |
| Affiliated FM Insurance Company MG480 Occurrence | Property Damage & Business Interruption Boiler & Machinery | Lexington Precision Corporation and Lexington Rubber Group, Inc. | Blanket replacement cost, except for replacement of tools and molds, which is actual cash value | Property/Boiler: $100,000 Earthquake & Flood: $100,000 | 52 weeks starting Dec. 1, 2007 | December 1, 2008 | Leonard Insurance Services Agency, Inc. | $175,7850 |
| CHUBB 7498-03-09-CLE Occurrence | Foreign General Liability, including Auto Liability, Property, Workers' Compensation, and Fidelity | Lexington Precision Corporation and Lexington Rubber Group, Inc. | General Liability, Products, Advertising, Employee Benefits & Auto $1 million | None | 52 weeks starting July 1, 2006 | June 30, 2007 | Leonard Insurance Services Agency, Inc. | $2,750 |
| CHUBB 7498-03-09-CLE Occurrence | Ocean Cargo & War | Lexington Precision Corporation and Lexington Rubber Group, Inc. | Various with respect to type of occurrence. | $1,000 | 52 Weeks starting Aug. 10, 2007 | August 10, 2008 | Leonard Insurance Services Agency, Inc. | $2,000 |
| CHUBB 6801-1252 Claims Made | Directors & Officers Liability | Lexington Precision Corporation | $2.5 million annual aggregate | Executive liability and indemnification: none All others: $250,000 | 52 Weeks starting Jan. 1, 2008 | June 30, 2008 | Leonard Insurance Services Agency, Inc. | $60,0000 |
| CHUBB 6801-1252 Claims made | Pension / Welfare Fiduciary Liability | Lexington Precision Corporation | $10 million | $25,000 retention | 52 Weeks starting July 1, 2007 | June 30, 2008 | Leonard Insurance Services Agency, Inc. | $7,500 |
| CHUBB 6801-1252 Claims made | Crime | Lexington Precision Corporation | $5 million | $100,000 | 52 Weeks starting July 1, 2007 | June 30, 2008 | Leonard Insurance Services Agency, Inc. | $17,500 |
| CHUBB 6801-1252 Claims made | Employment Practices | Lexington Precision Corporation | $2 million | $125,000 | 52 Weeks starting July 1, 2007 | June 30, 2008 | Leonard Insurance Services Agency, Inc. | $29,000 |
| **TOTAL CURRENT INSURANCE/ANNUAL PREMIUM (excludes deductibles, retentions, payments for prior years' workers' compensation claims under retrospective policies issued in prior years. etc.)** | | | | | | | | **$1,582,422** |

## **EXHIBIT B**

## **DISBURSEMENT ACCOUNTS**

| FirstMerit Bank N.A.<br>295 FirstMerit Circle<br>Akron, OH 44307<br>Attn: Thomas Heidy | 5999000546<br>5999000554<br>5999000562<br>5999000570<br>5999000588<br>5999000596<br>5999000619<br>5999000627<br>5999000855 |
|---|---|

## **MASTER OPERATING (DISBURSEMENT) ACCOUNT**

| Bank Name and Address | Account Number |
|---|---|
| FirstMerit Bank N.A.<br>295 FirstMerit Circle,<br>Akron, Ohio 44307<br>Attn: Thomas Heidy | 5923007871 |