Hearing Date: May 28, 2008 at 2:00 p.m. (prevailing Eastern Time)
Objection Deadline:  May 14, 2008 at 4:00 p.m. (prevailing Eastern Time)

WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007
Richard P. Krasnow, Esq.
Christopher J. Marcus, Esq.

Attorneys for Debtors
and Debtors in Possession

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

```
-------------------------------------------------------------x
                                          :
In re                                     :      Chapter 11 Case No.
                                          :
LEXINGTON PRECISION CORP., et al.,        :      08-11153 (MG)
                                          :
          Debtors.                        :      (Jointly Administered)
                                          :
-------------------------------------------------------------x
```

**NOTICE OF APPLICATION FOR AN ORDER PURSUANT TO**
**SECTIONS 327(a) AND 328(a) OF THE BANKRUPTCY CODE AND**
**FEDERAL RULE OF BANKRUPTCY PROCEDURE 2014(a)**
**AUTHORIZING THE RETENTION OF W.Y. CAMPBELL & COMPANY**
**AS FINANCIAL ADVISORS FOR THE DEBTORS _NUNC PRO TUNC_ TO APRIL 1, 2008**

PLEASE TAKE NOTICE that Lexington Precision Corporation and its wholly-

owned subsidiary, Lexington Rubber Group, Inc. (together, the "Debtors"), in the above-

captioned chapter 11 cases filed an application, dated April 24, 2008 (the "Application"), for

entry of an order, pursuant to sections 327(a) and 328(a) of the title 11 of United States Code

(the "Bankruptcy Code") and Rule 2014 of the Federal Rule of Bankruptcy Procedure (the

"Bankruptcy Rules"), authorizing the retention of W.Y. Campbell & Company ("Campbell") as

financial advisors for the Debtors, _nunc pro tunc_ to April 1, 2008.

PLEASE TAKE FURTHER NOTICE that any objections or responses to the

Application, if any, must be in writing, must conform to the Bankruptcy Rules and the Local

Rules for the United States Bankruptcy Court for the Southern District of New York (the

"Bankruptcy Court"), set forth the name of the objecting party, the basis for the objection and

specific grounds therefore, and must be filed no later than **May 14, 2008 at 4:00 p.m.**

**(prevailing Eastern Time)** with the Bankruptcy Court either electronically in accordance with

General Order M-242 (which can be found at www.nysb.uscourts.gov) by registered users of the

Bankruptcy Court's case filing system or by all other parties in interest, on a 3.5 inch disk,

preferably in Portable Document Format (PDF), WordPerfect, or any other Windows-based word

processing format (with a hard copy delivered directly to the chambers of Judge Martin Glenn)

and served in accordance with General Order M-242, and must be served upon (a) the Debtors,

Lexington Precision Corporation, 800 Third Ave. 15th Floor, New York, New York 10023

(Attn:  Michael A. Lubin), (b) the attorneys for the Debtors, Weil, Gotshal & Manges LLP, 767

Fifth Avenue, New York, New York 10153 (Attn:  Christopher J. Marcus and Conray C. Tseng);

(c) the Office of the United States Trustee for the Southern District of New York, 33 Whitehall

Street, 21st Floor, New York, New York 10004 (Attn:  Paul Schwartzberg); (d) attorneys for the

Debtors' prepetition lenders, Waller, Landsden, Dortch & Davis LLP, 511 Union Street, Suite

2700, Nashville, Tennessee, 37219 (Attn:  John C. Tishler); (e) attorneys for the Official

Creditors' Committee of Unsecured Creditors, Andrews Kurth LLP, 450 Lexington Avenue,

New York, New York 10017 (Attn:  Paul Silverstein); and (f) attorneys for Debtors' postpetition

lenders, O'Melveny & Meyers, LLP, Times Square Tower, 7 Times Square, New York, New

York 10036 (Attn:  Gerald Bender), so as to be received no later than **May 14, 2008, at 4:00**

**p.m. (prevailing Eastern Time)**.

PLEASE TAKE FURTHER NOTICE that a hearing to consider the relief

requested in the Application shall be held before the Honorable Martin Glenn, United States

Bankruptcy Judge, on **May 28, 2008 at 2:00 p.m**. **(prevailing Eastern Time)**, at the United

States Bankruptcy Court, Alexander Hamilton Custom House, One Bowling Green, New York,

New York 10004 or as soon thereafter as counsel may be heard.

PLEASE TAKE FURTHER NOTICE that pursuant to the Application, the

Debtors seek to retain Campbell to perform the following services:

(a)     to the extent deemed desirable by the Debtors, identify, review, evaluate and initiate potential financing transactions or other transactions;

(b)     to the extent Campbell deems necessary, appropriate and feasible, or as the Debtors may request, review and analyze the assets and the operating and financial strategies of the Debtors;

(c)     assist in the definition of objectives related to value and terms of a financing or transaction;

(d)     assist in identification of the Debtors' proprietary attributes;

(e)     the identification and solicitation of appropriate financing or transaction parties;

(f)     the preparation and distribution of confidentiality agreements and appropriate materials (to include placement or offering memorandums, management presentations, and other documentation as may be required or appropriate);

(g)     the initiation of discussions and negotiations with prospective financing or transaction parties;

(h)     assist the Debtors and its other professionals in reviewing and evaluating the terms of any proposed transaction, financing or other transaction, in responding thereto and, if directed, in developing and evaluating alternative proposals for a financing, transaction or other transaction;

(i)     review and analyze any proposals the Debtors receives from third parties in connection with a transaction, financing or other transaction;

(j)     assist or participate in negotiations with the parties in interest in connection with a transaction, financing or other transaction;

(k)     advise and attend meetings of the Debtors' Board of Directors, creditor groups, official constituencies and other interested parties, as the Debtors determines to be necessary or desirable;

(l)     if requested, participate in hearings before this Court or any other court as the Debtors may request and provide relevant testimony with respect to the matters described herein and issues arising with respect thereto in connection with any proposed chapter 11 plan;

(m)     assist the Debtor's internal and external counsel to enable such counsel to provide legal advice to the Debtors, as contemplated under Section 7 of the engagement letter, dated April 1, 2008 (the "Engagement Letter") attached as Exhibit 1 to the Affidavit and Disclosure Statement of Andre A. Augier, dated April 23, 2008, attached to the Application as Exhibit A; and

(n)     render such other financial advisory and investment banking services as may be reasonably requested by the Debtors in connection with any of the foregoing.

PLEASE TAKE FURTHER NOTICE that, if the retention is approved, Campbell will, unless such terms prove to be improvident in light of developments not capable of being anticipated at the time of the hearing, be entitled to receive the following compensation:

(a)     As of April 1, 2008, a cash advisory fee (the "Monthly Fee") of $50,000 per month payable by the Debtors in advance of the first of each month, which in aggregate shall not under any circumstances be les than $500,000; provided, however, that the Monthly Fee for each month preceding entry of an order of the Bankruptcy Court approving and authorizing the Engagement Letter shall be paid as soon as practicable after entry of such order.

(b)     A fee (the "Exit Fee") of $650,000 shall be due and payable in cash upon the Debtors' successful exit from Chapter 11

(c)     Campbell shall credit against the Exit Fee 100% of any Monthly Fees indefeasibly paid in respect of the period from April 1, 2008 through August 31, 2008.

(d)     To the extent the Debtors request Campbell to perform additional services not contemplated by the Engagement Letter, such additional fees shall be mutually agreed upon by Campbell and the Debtor, in writing, in advance.

PLEASE TAKE FURTHER NOTICE that if the Application is granted, the Debtors will indemnify and hold Campbell harmless against liabilities arising out of or in connection with Campbell's retention by the Debtors except for any such liabilities incurred by the Debtors that are finally judicially determined by a court of competent jurisdiction to have arose because of (x) the gross negligence, willful misconduct or fraud of Campbell or (y) a material breach of a term or condition of the Engagement Letter by Campbell.

PLEASE TAKE FURTHER NOTICE that the foregoing summary of certain elements of the retention is not complete and that the full terms of the retention are contained in the Application and Engagement Letter.  To the extent that the summary of the retention terms set forth in this notice conflict with the terms of the Engagement Letter, the terms of the Engagement Letter control.

Dated: New York, New York
　　　 April 24, 2008

/s/ Christopher J. Marcus
Richard P. Krasnow, Esq.
Christopher J. Marcus, Esq.

WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York  10153
Telephone:   (212) 310-8000
Facsimile:    (212) 310-8007

Attorneys for Debtors
and Debtors in Possession

WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007
Richard P. Krasnow, Esq.
Christopher J. Marcus, Esq.

Attorneys for Debtors
and Debtors in Possession

**UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK**

-------------------------------------------------------------x
                                      :

**In re**                                  :         **Chapter 11 Case No.**
                                        :

**LEXINGTON PRECISION CORP., et al.,**    :         **08-11153 (MG)**
                                        :

        **Debtors.**                    :         **(Jointly Administered)**
                                          :

-------------------------------------------------------------x

**APPLICATION FOR AN ORDER PURSUANT TO SECTIONS 327(a) AND 328(a) OF
THE BANKRUPTCY CODE AND FEDERAL RULE OF BANKRUPTCY PROCEDURE
2014(a) AUTHORIZING THE RETENTION OF W.Y. CAMPBELL & COMPANY AS
FINANCIAL ADVISORS FOR THE DEBTORS *NUNC PRO TUNC* TO APRIL 1, 2008**

TO THE HONORABLE MARTIN GLENN,
UNITED STATES BANKRUPTCY JUDGE:

        Lexington Precision Corporation and Lexington Rubber Group, Inc., as debtors

and debtors in possession (collectively, "Lexington" or the "Debtors"), respectfully represent:

**Background**

        1.      On April 1, 2008 (the "Commencement Date"), each of the Debtors

commenced with this Court a voluntary case under chapter 11 of title 11 of the United States

Code (the "Bankruptcy Code"). The Debtors are authorized to continue to operate their

businesses and manage their properties as debtors in possession pursuant to sections 1107(a) and

1108 of the Bankruptcy Code.

2.     The Debtors' chapter 11 cases have been consolidated for procedural purposes only and are being jointly administered pursuant to Rule 1015(b) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").

### Lexington's Businesses

3.     Lexington manufactures large volumes of high-quality rubber and metal components at competitive prices for use primarily in automobiles and medical devices. Lexington operates through two operating segments—the Rubber Group and the Metals Group. Lexington's components are generally sold to other manufacturers.

### Jurisdiction

4.     This Court has jurisdiction to consider this matter pursuant to 28 U.S.C. §§ 157 and 1334.  This is a core proceeding pursuant to 28 U.S.C. § 157(b).  Venue is proper before this Court pursuant to 28 U.S.C. § § 1408 and 1409.

### Relief Requested

5.     The Debtors seek entry of an order pursuant to sections 327(a) and 328(a) of the Bankruptcy Code authorizing the retention of W.Y. Campbell & Company ("Campbell") as their financial advisors in connection with the prosecution of their chapter 11 cases.  In support of this Application, the Debtors submit the affidavit of Andre A. Augier, a Managing Director at Campbell, sworn to on April 23, 2008 (the "Augier Affidavit"), attached hereto as Exhibit A.  Pursuant to section 328(a) of the Bankruptcy Code, the Debtors, as debtors in possession, request that the Court authorize the retention of Campbell pursuant to that certain letter agreement, dated April 1, 2008 (the "Engagement Letter"), attached to the Augier Affidavit as Exhibit 1.

## Qualifications of Campbell

6.      Campbell is one of North America's premier specialty investment banking firms.  Its activities include assisting corporations and individuals sell and acquire businesses, private capital raising, restructuring, and financial advisory services.

7.      Since commencing operations in 1988, Campbell has completed assignments in virtually every business segment including manufacturing, distribution, services, retail, and technology, and has provided financial advisory services on almost every type of transaction including large public company divestitures, the sale of public and private companies, joint ventures, the structuring and financing of management buyouts, complicated restructurings and recapitalizations, and private placements.  Since its inception, Campbell has completed numerous transactions in a host of industry segments, with particular experience in automotive related transactions.  Campbell has concluded transactions across North America, Europe, and Asia.

8.      In 2007, the Debtors engaged Campbell to explore strategic alternatives, including refinancing and asset sale options.  During this process, Campbell engaged in discussions with numerous financing sources and prospective buyers.

## Scope of Services

9.      The services Campbell will provide to the Debtors under the Engagement Letter are appropriate and necessary to enable the Debtors to execute their duties as debtors in possession and to implement the restructuring and reorganization of the Debtors.  The Debtors propose that Campbell be employed to render the following professional services:

(a)      to the extent deemed desirable by the Debtors, identify, review, evaluate and initiate potential financing transactions or other transactions;

(b)     to the extent Campbell deems necessary, appropriate and feasible, or as the Debtors may request, review and analyze the assets and the operating and financial strategies of the Debtors;

(c)     assist in the definition of objectives related to value and terms of a financing or transaction;

(d)     assist in identification of the Debtors' proprietary attributes;

(e)     the identification and solicitation of appropriate financing or transaction parties;

(f)     the preparation and distribution of confidentiality agreements and appropriate materials (to include placement or offering memorandums, management presentations, and other documentation as may be required or appropriate);

(g)     the initiation of discussions and negotiations with prospective financing or transaction parties;

(h)     assist the Debtors and its other professionals in reviewing and evaluating the terms of any proposed transaction, financing or other transaction, in responding thereto and, if directed, in developing and evaluating alternative proposals for a financing, transaction or other transaction;

(i)     review and analyze any proposals the Debtors receives from third parties in connection with a transaction, financing or other transaction;

(j)     assist or participate in negotiations with the parties in interest in connection with a transaction, financing or other transaction;

(k)     advise and attend meetings of the Debtor's Board of Directors, creditor groups, official constituencies and other interested parties, as the Debtors determines to be necessary or desirable;

(l)     if requested, participate in hearings before this Court or any other court as the Debtors may request and provide relevant testimony with respect to the matters described herein and issues arising with respect thereto in connection with any proposed chapter 11 plan;

(m)     assist the Debtors' internal and external counsel to enable such counsel to provide legal advice to the Debtors, as contemplated under Section 7 of the Engagement Letter; and

(n)    render such other financial advisory and investment banking services as may be reasonably requested by the Debtors in connection with any of the foregoing.

## Campbell's Disinterestedness

10.    To the best of the Debtors' knowledge, the members and associates of Campbell do not have any connection with and do not hold any interest adverse to the Debtors, their creditors, or any other party in interest, or their respective attorneys and accountants, except as may be set forth in the Augier Affidavit.

11.    Based upon the Augier Affidavit, the Debtors submit that Campbell is a "disinterested person," as that term is defined in section 101(14) of the Bankruptcy Code.  The Debtors have been informed that Campbell will conduct an ongoing review of its files to ensure that no disqualifying circumstances arise, and if any new relevant facts or relationships are discovered, Campbell will supplement its disclosure to the Court.

## Professional Compensation

12.    As compensation for the services rendered under the Engagement Letter, Campbell will be entitled to receive the following compensation:[1]

(a)    As of April 1, 2008, a cash advisory fee (the "Monthly Fee") of $50,000 per month payable by the Debtors in advance of the first of each month, which in aggregate shall not under any circumstances be les than $500,000; provided, however, that the Monthly Fee for each month preceding entry of an order of the Bankruptcy Court approving and authorizing the Engagement Letter shall be paid as soon as practicable after entry of such order.

(b)    A fee (the "Exit Fee") of $650,000 shall be due and payable in cash upon the Debtors' successful exit from Chapter 11.

(c)    Campbell shall credit against the Exit Fee 100% of any Monthly Fees indefeasibly paid in respect of the period from April 1, 2008 through August 31, 2008.

---

[1] This summary is qualified in its entirety by reference to the Engagement Letter.

(d)    To the extent the Debtors request Campbell to perform additional services not contemplated by the Engagement Letter, such additional fees shall be mutually agreed upon by Campbell and the Debtor, in writing, in advance.

13.    Pursuant to the Engagement Letter, and subject to approval of this Court, the Debtors have agreed to indemnify Campbell from and against any actions or claims brought by any party in connection with Campbell's engagement by the Debtors, other than claims arising because of (x) the gross negligence, willful misconduct or fraud of Campbell or (y) a material breach of a term or condition of the Engagement Letter by Campbell.  The Debtors submit that such indemnification is standard in the financial advisory industry and that the provision of such indemnification by the Debtors is fair and reasonable considering Campbell's qualifications and expectations of other financial advisors in connection with engagements of this scope and size.  Accordingly, as part of this Application, the Debtors request the Court approve Campbell's terms of engagement as set for in the Engagement Letter.

14.    The Debtors and Campbell acknowledge and agree that (a) the hours worked, (b) the results achieved, and (c) the ultimate benefit to the Debtors of the work performed, in each case, in connection with this engagement may be variable, and the Debtors and Campbell have taken such factors into account in setting the fees under the Engagement Letter; provided, however, that with respect to the hours worked, Campbell shall devote whatever resources as are required to fulfill the purposes of this engagement on a timely basis.

15.    In the event that this Court approves the retention of Campbell by the Debtors, (a) Campbell's fees and expenses shall be subject to (i) the jurisdiction and approval of this Court under section 328(a) of the Bankruptcy Code and the order approving this Application, (ii) any applicable fee and expense guidelines, and (iii) any requirements governing interim and final fee applications, and (b) the Debtors shall pay all fees and expenses of

Campbell under the Engagement Letter as promptly as practicable in accordance with the terms thereof and the orders of this Court governing interim and final fee applications, and after obtaining all necessary further approvals from this Court, if any.

16.     Campbell intends to apply to this Court for allowance of compensation and reimbursement of expenses through interim and final fee applications in accordance with the procedures set forth in the applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, and the Local Rules, as those procedures may be modified or supplemented by order of this Court.  Consistent with its ordinary practice and the practice of financial advisors in other chapter 11 cases whose fee arrangements are typically not hours-based, Campbell ordinarily does not maintain time records or conform to or provide a schedule of hourly rates for its professionals.  Therefore, Campbell requests that it be excused from compliance with such requirements.

17.     The Debtors submit that the appointment of Campbell on the terms and conditions set forth herein and in the Engagement Letter is in the best interest of the Debtors, their creditors, and all parties in interest.

## **Memorandum of Law**

18.     The Debtors submit that the relevant authorities are set forth herein, and accordingly, that the requirement contained in Local Bankruptcy Rule 9013-1(b) for the filing of a separate memorandum in support of the Motion is satisfied.

## **Notice**

19.     No trustee or examiner has been appointed in these chapter 11 cases. Notice of this Motion has been provided to (i) the United States Trustee for the Southern District of New York, (ii) the attorneys for the agents for the Debtors' prepetition lenders, (iii) the attorneys for the Debtors' proposed postpetition lenders, (iv) the attorneys for the statutory

creditors' committee of noteholders, and (v) all other parties entitled to notice in these chapter 11 cases. The Debtors submit that no other or further notice need be provided.

WHEREFORE, the Debtors respectfully request entry of an order granting the relief requested herein and such other and further relief as is just.

Dated: New York, New York
    April 24, 2008

LEXINGTON PRECISION CORPORATION


By: /s/ Michael A. Lubin
    Michael A. Lubin
    Chairman of the Board of Directors
    (Co-Principal Executive Officer)


LEXINGTON RUBBER GROUP, INC.


By: /s/ Michael A. Lubin
    Michael A. Lubin
    Chairman of the Board of Directors
    (Co-Principal Executive Officer)


Debtors and Debtors in Possession

**EXHIBIT A**

WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007
Richard P. Krasnow, Esq.
Christopher J. Marcus, Esq.

Attorneys for Debtors
and Debtors in Possession

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------------------x
                                    :

**In re**                            :        **Chapter 11 Case No.**
                                     :

**LEXINGTON PRECISION CORP., et al.,**    :        **08-11153 (MG)**
                                     :

        **Debtors.**                 :        **(Jointly Administered)**
                                     :
------------------------------------------------------------x

**AFFIDAVIT AND DISCLOSURE STATEMENT OF ANDRE A. AUGIER PURSUANT
TO BANKRUPTCY CODE SECTIONS 327, 328(a), AND 504, AND FEDERAL RULES
OF BANKRUPTCY PROCEDURE 2014(a) AND 2016(b) IN SUPPORT
OF DEBTORS' APPLICATION FOR AN ORDER AUTHORIZING
THE RETENTION OF W.Y. CAMPBELL & COMPANY AS FINANCIAL ADVISORS**

STATE OF MICHIGAN        )
                            )     ss.:
COUNTY OF WAYNE        )

        Andre A. Augier, being duly sworn, deposes and says:

        1.        I am a Managing Director at the financial advisory and investment

banking firm of W.Y. Campbell & Company ("Campbell"), which maintains its principal office

at 1 Woodward Avenue, 26th Floor, Detroit, Michigan 48226.  I am authorized to execute this

affidavit (this "Affidavit") on behalf of Campbell.  I submit this Affidavit under sections 327(a)

and 328 of title 11 of the United States Code (the "Bankruptcy Code") and Rules 2014 and 2016

of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") in support of Debtors'

Application for an Order Pursuant to Sections 327(a) and 328(a) of the Bankruptcy Code and

Federal Rule of Bankruptcy Procedure 2014(a) Authorizing the Retention of W.Y. Campbell &

Company as Financial Advisors for the Debtors *Nunc Pro Tunc* to April 1, 2008 (the

"Application"), filed contemporaneously herewith by Lexington Precision Corporation and

Lexington Rubber Group, Inc., as debtors and debtors in possession (collectively, the "Debtors").

Except as otherwise indicated, I have personal knowledge of the matters set forth herein and if

called as a witness, would testify competently thereto.[2]

## Qualifications of Campbell

2.       Campbell is one of North America's premier specialty investment banking

firms.  Its activities include helping corporations and individuals sell and acquire businesses,

private capital raising, restructuring, and financial advisory services.

3.       Since commencing operations in 1988, Campbell has completed

assignments in virtually every business segment including manufacturing, distribution, services,

retail, and technology, and has provided financial advisory services on almost every type of

transaction including large public company divestitures, the sale of public and private

companies, joint ventures, the structuring and financing of management buyouts, complicated

restructurings and recapitalizations, and private placements.  Since its inception, Campbell has

completed numerous transactions in a host of industry segments, with particular experience in

automotive related transactions.  Campbell has concluded transactions across North America,

Europe, and Asia.

---

[2] Certain of the disclosures herein relate to matters within the knowledge of other professionals at
Campbell and are based on information provided by them.  Capitalized terms used but not defined herein
have the meanings given to such terms in the Engagement Letter (as defined below).

## Services to be Rendered

4.      If the Application is approved, Campbell will render financial advisory and investment banking services to the Debtors as need through the course of these chapter 11 cases, as contemplated, and in accordance with the terms of the engagement letter, dated April 1, 2008 (the "Engagement Letter"), attached hereto as Exhibit 1.

## Campbell's Disinterestedness

5.      In connection with the preparation of this Affidavit, Campbell has reviewed a list of parties-in-interest in this proceeding (the "Interested Parties"), attached hereto as Exhibit 2.

6.      As indicated previously, Campbell has represented multiple entities in automotive related transactions, each of which entities may be parties-in-interest in these proceedings.  To the best of my knowledge, and except as otherwise set forth below, Campbell has not represented any party-in-interest in these proceedings in connection with matters relating to the Debtors, their estates, assets, or businesses and will not represent other entities which are creditors of, or have other relationships with, the Debtors in matters relating to the Debtors, their estates, assets, or businesses.  Moreover, neither Campbell, I, nor any other employee of Campbell that will work on this engagement has any connection with or holds any interest adverse to the Debtors, their estates, or the Interested Parties in the matters on which Campbell is proposed to be retained or otherwise, except as set forth below:

> (a)      Delphi Corporation, which filed for chapter 11 protection on October 8, 2005, is the Debtors' largest customer.  During the course of Delphi's bankruptcy, Delphi retained Campbell to advise Delphi in the sale of its Ride Dynamics and Engine and Suspension Mount businesses.  As to the sale of the Ride Dynamics business, Campbell has assisted Delphi since May 2007.  However, the Campbell personnel advising Delphi on the Ride Dynamic sale differ from the Campbell personnel advising the

Debtors.  To the best of my knowledge, the Debtors did not supply products to the Ride Dynamics business.

As to the sale of the Engine and Suspension Mount businesses, Campbell assisted Delphi from September 2006 to February 2008. Some of the Campbell personnel, who advised on the Engine and Suspension Mount sale also advise the Debtors.  To the best of my knowledge, the Debtors did not supply products to the Engine and Suspension Mount business.

(b)     As part of its practice, Campbell appears in numerous cases, proceedings, and transactions involving many different professionals, some of which may represent claimants and parties-in-interest in the Debtors' chapter 11 cases, and has in the past and will likely in the future be working with or against other professionals involved in these cases in matters unrelated to this case.  Based on my current knowledge of the professionals involved, and to the best of my knowledge and information, none of these business relationships represents an interest materially adverse to the Debtors herein in matters upon which Campbell is to be engaged.

(c)     In addition, various professionals employed by Campbell have numerous other business, professional and social relationships wholly unrelated to the Debtors and the chapter 11 cases with multiple professional persons involved in the Debtors proceedings, including professional persons engaged on behalf of the Debtors and professional persons engaged on behalf of other parties-in-interest, and may have such relationships with various employees of the Debtors.  To the best of my knowledge and information, none of these relationships represents an interest materially adverse to the Debtors herein in matters upon which Campbell is to be engaged.

(d)     Campbell is a large investment banking firm and has likely provided services unrelated to the Debtors for companies and individuals that have conducted business in the past and/or currently conduct business with the Debtors, and who may be creditors of the Debtors.  To the best of my knowledge, Campbell's services to these parties were and are wholly unrelated to the Debtors, their estates, and these chapter 11 cases.

7.     To the best of my knowledge, Campbell has not been retained to assist any entity or person other than the Debtors on matters relating to these chapter 11 cases.  If Campbell's proposed retention by the Debtors is approved by this Court, Campbell will not

accept any engagement or perform any service for any entity or person other than the Debtors in

these chapter 11 cases.  Campbell will, however, continue to provide professional services to

entities or persons that may be creditors, equity security holders, or parties-in-interest of the

Debtors in these chapter 11 cases, as set forth herein, provided, however, that such services do

not relate to, or have any connection with, these chapter 11 cases or the Debtors.

   8.  Based on the results of the conflicts search conducted to date and

described more fully herein, and except as otherwise set forth herein, to the best of my

knowledge, neither I, Campbell, nor any officer or employee thereof who will work on this

engagement, insofar as I have been able to ascertain, has any connection with the Debtors, their

creditors, other parties-in-interest (as reasonably known to Campbell), their respective attorneys,

the Office of the United States Trustee for the Southern District of New York, or any person

employed by such office with respect to the matters upon which Campbell is to be engaged, and

Campbell does not, by reason of any direct or indirect relationship to, connection with, or interest

in the Debtors, hold or represent any interest adverse to the Debtors, their estates, or any class of

creditors or equity interest holders.

   9.  To the best of my knowledge, Campbell is a "disinterested person"

pursuant to sections 101(14) and 327(a) of the Bankruptcy Code.

   10.  No promises have been received by Campbell, nor any employee thereof,

as to compensation or payment in connection with these chapter 11 cases other than in

accordance with the provisions of the Bankruptcy Code and the Bankruptcy Rules.  Further,

Campbell has no agreement with any other entity to share with such entity any compensation

received by Campbell in connection with these chapter 11 cases, except as permitted under

section 504 of the Bankruptcy Code.

11.     If any new relevant facts or relationships are discovered or arise during the

pendency of these chapter 11 cases, Campbell will use reasonable efforts to identify such further

developments and will, if appropriate, promptly file a supplemental declaration as required by

Bankruptcy Rule 2014(a).

Dated: New York, New York
         April 23, 2008

                                        /s/ Andre A. Augier
                                        Andre A. Augier
                                        Campbell
                                        Managing Director


         Sworn to and subscribed before me, a notary public for the State of Michigan, County of
Wayne, this 23rd day of April, 2008.


/s/ T. McInchak
Notary Public

Notary Public, State of Michigan
Qualified in Wayne County
Commission Expires 9/6/2009

**<u>Exhibit 1</u>**

**Engagement Letter**



# W. Y. CAMPBELL & COMPANY
INVESTMENT BANKING

ONE WOODWARD AVENUE • 26TH FLOOR • DETROIT, MI 48226
313-496-9000 • 313-496-9001 FAX

April 1, 2008


Mr. Michael A. Lubin
Chairman of the Board
Lexington Precision Corporation
800 Third Avenue
15th Floor
New York, NY 10022


Dear Mr. Lubin:

This letter agreement (this "Agreement"), by and among Lexington Precision Corporation (together with its direct and indirect subsidiaries, the "Company") and W.Y. Campbell & Co. ("Campbell"), shall confirm the terms and conditions of the retention of Campbell as financial advisor and investment banker to the Company in connection with Chapter 11 bankruptcy proceedings.

**Section 1.**  <u>Services to be Rendered</u>. In connection with the formulation, analysis, and negotiation of strategic alternatives relating to the Company, whether pursuant to a single or a series or combination of transactions or otherwise, Campbell will perform the following services, and, in connection therewith advise the Company, as requested by the Company (collectively, the "Services"):

(a)     to the extent deemed desirable by the Company, identify, review, evaluate and initiate potential financing transactions or other transactions;

(b)     to the extent Campbell deems necessary, appropriate and feasible, or as the Company may request, review and analyze the assets and the operating and financial strategies of the Company;

(c)     assist in the definition of objectives related to value and terms of a financing or transaction;

(d)     assist in identification of the Company's proprietary attributes;

(e)     the identification and solicitation of appropriate financing or transaction parties;

(f)     the preparation and distribution of confidentiality agreements and appropriate materials (to include placement or offering memorandums, management presentations, and other documentation as may be required or appropriate);

(g)     the initiation of discussions and negotiations with prospective financing or transaction parties;

(h)    assist the Company and its other professionals in reviewing and evaluating the terms of any proposed transaction, financing or other transaction, in responding thereto and, if directed, in developing and evaluating alternative proposals for a financing, transaction or other transaction;

(i)    review and analyze any proposals the Company receives from third parties in connection with a transaction, financing or other transaction;

(j)    assist or participate in negotiations with the parties in interest in connection with a transaction, financing or other transaction;

(k)    advise and attend meetings of the Company's Board of Directors, creditor groups, official constituencies and other interested parties, as the Company determines to be necessary or desirable;

(l)    if requested, participate in hearings before the United States Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court") or such district or other bankruptcy courts as the Company may request and provide relevant testimony with respect to the matters described herein and issues arising with respect thereto in connection with any proposed chapter 11 plan;

(m)    assist the Company's internal and external counsel to enable such counsel to provide legal advice to the Company, as contemplated under Section 7 hereof; and

(n)    render such other financial advisory and investment banking services as may be reasonably requested by the Company in connection with any of the foregoing.

In performing its services pursuant to this Agreement, and notwithstanding anything to the contrary herein, Campbell is not assuming any responsibility for the Company's decision to pursue (or not to pursue) or to effect (or not to effect) a transaction, financing or other transaction. Campbell shall not have any obligation or responsibility to provide accounting, audit, "crisis management" or business consultant services to the Company, and shall have no responsibility for designing or implementing operating, organizational, administrative, cash management or liquidity improvements.

**Section 2.**    Information Provided by the Company.

(a)    The Company will cooperate with Campbell and furnish to, or cause to be furnished to, Campbell any and all information reasonably available to the Company which Campbell deems appropriate to enable Campbell to render services hereunder (all such information being the "Information"). The Company recognizes and confirms that Campbell (i) will use and rely on the Information and on information available from generally recognized public sources in performing the services contemplated by this Agreement without having assumed any obligation to verify independently any such information; (ii) does not assume responsibility for the accuracy or completeness of the

Information provided by the Company and such other information, and (iii) will not act in the official capacity of appraiser of specific assets of the Company or any other party. Each party confirms that the information to be furnished by it, when delivered, to the best of its knowledge will be true and correct in all material respects, will be prepared in good faith, and will, to the knowledge of the delivering party, not contain any material misstatement of fact or omit to state any material fact. Each party will promptly notify the other party if it learns of any material inaccuracy or misstatement in, or material omission from, any Information theretofore it delivered to the other party. The Company acknowledges that in the course of this engagement it may be necessary for Campbell and the Company to communicate electronically.

(b)    Each party acknowledges that although it will use commercially reasonable procedures to check for the most commonly known viruses, the electronic transmission of information cannot be guaranteed to be secure or error-free. Furthermore such information could be intercepted, corrupted, lost, destroyed, arrive late or incomplete or otherwise be adversely affected or unsafe to use. Accordingly, each party agrees that the other party shall have no liability with respect to any error or omission arising from or in connection with: (i) the electronic communication of information; or (ii) the other party's reliance on such information.

**Section 3.**    Application for Retention of Campbell. Campbell and the Company hereby acknowledge that the Debtors will apply promptly to the Bankruptcy Court pursuant to Sections 327(a) and 328(a) of the Bankruptcy Code, Rule 2014 of the Federal Rules of Bankruptcy Procedure, applicable local rules and procedural orders of the Bankruptcy Court and procedural guidelines established by the Office of the United States Trustee, for approval of this Agreement and Campbell's retention by the Debtors under the terms of this Agreement, *nunc pro tunc* to the date of this Agreement, and that the Debtors and their counsel are each satisfied in their reasonable judgment that Campbell is a "disinterested person" as such term is defined in Section 101(14) of the Bankruptcy Code. The Debtors shall continue to use their best efforts to obtain Bankruptcy Court approval and authorization of this Agreement, subject only to the subsequent review by the Bankruptcy Court under the standard of review provided in Section 328(a) of the Bankruptcy Code, and not subject to the standard of review set forth in Section 330 of the Bankruptcy Code.  The Debtors and its counsel will supply Campbell with a draft of such application and the proposed order authorizing Campbell's retention sufficiently in advance of the filing of such application and proposed order to enable Campbell and its counsel to review and comment thereon. Campbell shall not have any obligation to provide any services under this Agreement unless its retention under the terms of this Agreement is approved in the manner set forth above by a final order of the Bankruptcy Court no longer subject to appeal, rehearing, reconsideration or petition for certiorari, and which order is reasonably acceptable to Campbell.

Campbell acknowledges that in the event that the Bankruptcy Court approves its retention by the Debtors pursuant to the application process described in this Section 3, payment of Campbell's fees and expenses hereunder shall be subject to the jurisdiction and approval of the Bankruptcy Court under Section 328(a) of the Bankruptcy Code and any order approving such Advisor's retention.  In the event that Campbell's engagement hereunder is approved by the Bankruptcy Court, the Company shall pay all fees and expenses hereunder as promptly as practicable in accordance with the terms hereof.  In so seeking Campbell's retention under Section 328(a) of the Bankruptcy Code, the

Company acknowledges that it believes that Campbell's general professional experience and expertise, its knowledge of the industry in which the Company operates and the capital markets and its merger and acquisition capabilities will inure to the benefit of the Company in pursuing any transaction which will enable the Company to exit chapter 11 (an "Exit Transaction") or other transaction that the value to the Company of Campbell's services hereunder derives in substantial part from that expertise and experience and that, accordingly, the structure and amount of the Monthly Fees, the Exit Fee, (as each is defined below), the expense reimbursements provided for herein and the indemnification and exculpation provisions provided herein and in Exhibit A hereto are reasonable regardless of the number of hours to be expended by Campbell's professionals in performance of the services to be provided hereunder.

**Section 4.**  Campbell's Fees. As compensation for the services rendered hereunder, the Company, and its successors, if any, agree to pay to Campbell (via wire transfer or other mutually acceptable means) the following fees in cash. All amounts to which Campbell becomes entitled under this Agreement, including all fees payable under this Section 4 hereto, all expense reimbursements payable under Section 6 hereof and any amounts that become payable under Section 8 hereof and Exhibit A hereto, shall be paid directly to Campbell.

(a)  Commencing as of the date of this letter, a cash advisory fee (the "Monthly Fee") of $50,000 per month payable by the Company in advance on the first day of each month, which in the aggregate shall not under any circumstance be less than $500,000; provided, however, that the Monthly Fee for each month preceding entry of an order of the Bankruptcy Court approving and authorizing this Agreement shall be paid as soon as practicable after entry of such order.

(b)  A fee (the "Exit Fee") of $650,000 shall be due and payable in cash upon the Company's successful exit from chapter 11.

(c)  To the extent the Company requests Campbell to perform additional services not contemplated by this Agreement, such additional fees as shall be mutually agreed upon by Campbell and the Company, in writing, in advance.

The Company and Campbell acknowledge and agree that (i) the hours worked, (ii) the results achieved and (iii) the ultimate benefit to the Company of the work performed, in each case, in connection with this engagement, may be variable, and that the Company and Campbell have taken such factors into account in setting the fees hereunder; provided, however, that with respect to the hours worked, Campbell shall devote whatever resources as are required to fulfill the purposes of this engagement on a timely basis.

**Section 5.**  Credit. Campbell shall credit against the Exit Fee 100% of any Monthly Fees indefeasibly paid in respect of the period from the date of this agreement through August 31, 2008 (the "Monthly Fee Credit").

**Section 6**.  Expenses. Without in any way reducing or affecting the Monthly Fees, the Exit Fee or the provisions of Exhibit A hereto, the Company shall reimburse Campbell for its reasonable expenses incurred in connection with the performance of its engagement

hereunder, and the enforcement of this Agreement, including without limitation the reasonable fees, disbursements and other charges of Campbell's counsel. Reasonable expenses shall also include, but not be limited to, expenses incurred in connection with travel and lodging, data processing and communication charges, data base, research, postage and courier services. Consistent with and subject to interim and final approval by the Bankruptcy Court, the Company shall promptly reimburse Campbell for such expenses under this Section 6 upon presentation of an invoice or other similar documentation with reasonable detail. The Company has advised Campbell regarding its expense reimbursement guidelines, and Campbell agrees to make reasonable efforts, as appropriate (but shall not be obligated), to incur expenses consistent with such guidelines.

**Section 7**.   Sharing of Information with Counsel. The Company has retained the law firm of Weil, Gotshal & Manges L.L.P. ("Weil Gotshal") to provide legal advice to the Company in connection with the legal aspects of the Chapter 11 Case. The Company believes that from time to time information or analyses prepared by Campbell may be required to enable Weil Gotshal to render appropriate legal services and advice to the Company. The Company also anticipates that from time to time privileged communications may need to be shared with Campbell in order to permit Campbell to provide the most comprehensive advice to the Company and to counsel to the Company in order to support such counsel's provision of legal advice to the Company. In addition, the Company and Campbell share a common interest for this purpose, and the Company intends that any such sharing of privileged information will occur only in pursuit of such common interest and without waiver of the attorney-client privilege or of any other privileges that may apply.

This letter will confirm Campbell's agreement that, to the extent directed by the Company, Campbell will provide information or advice within its field of expertise to assist Weil Gotshal in rendering legal services or advice to the Company.

This letter will also confirm the parties' agreement that, to the extent privileged information is shared with Campbell, such sharing is made solely for the purpose of facilitating Campbell's provision of services pursuant to this Agreement and in recognition that Campbell and the Company share a common interest for that purpose. Campbell will maintain the confidentiality of all privileged communications that are shared with it and will not disclose such privileged matters to any other person without the consent of the Company or as required by law or by court order. In order to assist Campbell in this regard, the Company agrees that privileged communications that are shared with Campbell will be labeled as such.

**Section 8**.   Indemnity. The Company agrees to the provisions of Exhibit A hereto which provides for indemnification and exculpation by the Company of Campbell and certain related persons. Such indemnification and exculpation is an integral part of this Agreement and the terms thereof are incorporated by reference as if fully stated herein. Such indemnification and exculpation shall survive any termination, expiration or completion of this Agreement or Campbell's engagement hereunder.

**Section 9**.   Term. The term of Campbell's engagement shall extend until the later of the consummation of the Company's chapter 11 plan, provided that this Agreement may be terminated by either the Company or Campbell after two hundred and seventy (270) days from the effective date hereof by providing thirty (30) days advance notice in

writing. If terminated, Campbell shall be entitled to payment of any fees for any monthly period which are due and owing to Campbell upon the effective date of termination; however, such amounts will be prorated for any incomplete monthly period of service, and Campbell will be entitled to reimbursement of any and all reasonable expenses described in Section 6. Termination of Campbell's engagement hereunder shall not affect or impair the Company's continuing obligation to indemnify Campbell and certain related persons as provided in Exhibit A. Without limiting any of the foregoing, if this Agreement is terminated by the Company (other than for a material breach thereof which is not cured within a reasonable period of time, after receipt by Campbell of written notice thereof), the Exit Fee shall be payable in the event that an Exit Transaction for which an Exit Fee would otherwise be due under this Agreement is closed at any time prior to the expiration of eighteen (18) months after such termination, or a letter of intent or definitive agreement with respect thereto is executed at any time prior to eighteen (18) months after such termination (which letter of intent or definitive agreement subsequently results in the consummation at any time of an Exit Transaction).

**Section 10.**  Miscellaneous.

(a)    *Administrative Expense Priority.* The Company agrees that Campbell's post petition compensation as set forth herein and payments made pursuant to reimbursement and indemnification provisions of this Agreement shall be entitled to priority as expenses of administration under Sections 503(b)(1)(A) and 507(a)(1) of the Bankruptcy Code and shall be entitled to the benefits of any "carve-outs" for professional fees and expenses in effect in such Chapter 11 Cases pursuant to one or more financing orders entered by the Bankruptcy Court on an equal basis with all other professionals.

(b)    *Survival, Successors & Assigns.* Sections 4 through 10 hereof, inclusive, including the provisions set forth in Exhibit A hereto, shall survive the termination or expiration of this Agreement. The benefits of this Agreement and the indemnification and other obligations of the Company to Campbell shall inure to the respective permitted successors and assigns of Campbell and of the indemnified parties, and the obligations and liabilities assumed in this Agreement and Exhibit A by the Company shall be binding upon its successors and assigns. Campbell shall not have the right to assign any of its rights under this Agreement without the prior written consent of the Company.

(c)    *Benefit of Agreement; No Reliance by Third Parties.* The advice (oral or written) rendered by Campbell pursuant to this Agreement is intended solely for the benefit and use of the Company and its affiliates, and their respective officers and directors in considering the matters to which this Agreement relates, and the Company agrees that such advice may not be relied upon by any other person, used for any other purpose or reproduced, disseminated, quoted or referred to at any time, in any manner or for any purpose without the prior written consent of Campbell, which shall not be unreasonably withheld or delayed, provided that nothing contained herein shall prohibit disclosure of such advice in the event and only to the extent the Company has been advised by counsel that such disclosure is necessary to satisfy applicable legal or regulatory requirements.

(d)    *Nature of Relationship.* The relationship of Campbell to the Company hereunder shall be that of independent contractors and Campbell shall have no authority to bind, represent or otherwise act as agent, executor, administrator, trustee, lawyer or guardian for the Company, nor shall Campbell have the authority to manage money or property of the Company. The parties hereto acknowledge and agree that by providing

the services contemplated hereunder, Campbell will not act, nor will it be deemed to have acted, in any managerial or fiduciary capacity whatsoever with respect to the Company or any third party including security holders, creditors or employees of the Company.

(f)    *Public Announcements.* With the prior written consent of the Company, which shall not be unreasonably withheld, the Company acknowledges that Campbell may at its option and expense, after announcement of a transaction, place announcements and advertisements or otherwise publicize such transaction in such financial and other newspapers and journals as it may choose, stating that Campbell acted as financial advisor and investment banker to the Company in connection with such transaction. The Company further consents to Campbell's public use or display of the Company's logo, symbol or trademark as part of Campbell's general marketing or promotional activities after the announcement of a transaction, provided that such use or display is in the nature of a public record or tombstone announcement in relation to such transaction, and, provided further, that the Company approves of such announcements, advertising or other publication, which approval shall not be unreasonably withheld.

(g)    *CHOICE OF LAW: JURISDICTION.* THIS AGREEMENT HAS BEEN NEGOTIATED, EXECUTED AND DELIVERED AT AND SHALL BE DEEMED TO HAVE BEEN MADE IN MICHIGAN. THIS AGREEMENT SHALL BE GOVERNED BY AND CONSTRUED IN ACCORDANCE WITH THE LAWS OF THE STATE OF NEW YORK, WITHOUT GIVING EFFECT TO SUCH STATE'S PRINCIPLES OF CONFLICTS OF LAWS.

(h)    *Waiver of Jury Trial.* Each of the parties hereto hereby knowingly, voluntarily and irrevocably waives any right it may have to a trial by jury in respect of any claim upon, arising out of or in connection with this Agreement or other transaction. Each of the parties hereto hereby certifies that no representative or agent of any other party hereto has represented expressly or otherwise that such party would not seek to enforce the provisions of this waiver. Each of the parties hereto hereby acknowledges that it has been induced to enter into this Agreement by and in reliance upon, among other things, the provisions of this paragraph.

(i)    *Entire Agreement.* This Agreement embodies the entire agreement and understanding of the parties hereto and supersedes any and all prior agreements, arrangements and understandings relating to the matters provided for herein. No alteration, waiver, amendment, change or supplement hereto shall be binding or effective unless the same is set forth in writing signed by a duly authorized representative of each of the parties hereto.

(j)    *Authority.* Each party hereto represents and warrants that it has all requisite power and authority to enter into this Agreement, including Exhibit A attached hereto and to consummate the transactions contemplated hereby. Each party hereto further represents that this Agreement has been duly and validly authorized by all necessary corporate action and has been duly executed and delivered by each of the parties hereto and constitutes the legal, valid and binding agreement thereof, enforceable in accordance with its terms. Campbell will assume that any instructions, notices or requests have been properly authorized by the Company if they are given or purported to be given by a director, officer, employee or authorized agent of the Company, or by a person that is reasonably believed by Campbell to be a director, officer, employee or authorized agent of the Company.

(k)      *Counterparts.* This Agreement may be executed in as many counterparts as may be deemed necessary and convenient, and by the different parties hereto on separate counterparts, each of which when so executed shall be deemed an original, but all such counterparts shall constitute one and the same instrument. Delivery of an executed counterpart of a signature page to this Agreement by telecopy shall be effective as delivery of a manually executed counterpart to this Agreement.

If the foregoing correctly sets forth the understanding and agreement between Campbell and the Company, please so indicate by signing the enclosed copy of this letter, whereupon, subject to entry of an order of the Bankruptcy Court approving and authorizing this Agreement, it shall become a binding agreement between the parties hereto as of the date first above written.

Sincerely

W. Y. CAMPBELL & COMPANY


/s/ André A. Augier

André A. Augier
Managing Director

Confirmed and agreed by:

LEXINGTON PRECISION CORPORATION


By: /s/ Michael A. Lubin
        Mr. Michael A. Lubin

Its:      Chairman of the Board

On:      April 1, 2008

**Exhibit A**

Lexington agrees to indemnify and hold harmless Campbell and its affiliates, counsel and other professional advisors, and the respective directors, officers, controlling persons, agents and employees of each of the foregoing (Campbell and all of such other persons collectively, the "Indemnified Parties"), from and against any losses, claims or proceedings, including without limitation stockholder actions, damages, judgments, assessments, investigation costs, settlement costs, fines, penalties, arbitration awards and any other liabilities, reasonable costs, reasonable fees and reasonable expenses (collectively, "Losses") (a) directly or indirectly related to or arising out of (i) oral or written information provided by the Company, the Company's employees or other agents, which either the Company or an Indemnified Party provides to any person or entity or (ii) any other action or failure to act by the Company, the Company's employees or other agents or any Indemnified Party at the Company's request or with the Company's consent, in each case in connection with, arising out of, based upon, or in any way related to the letter agreement (the "Agreement") entered into between the Company and Campbell regarding the retention of Campbell as financial advisor and investment banker to the Company, the retention of and services provided by Campbell under the Agreement; or (b) otherwise directly or indirectly in connection with, arising out of, based upon, or in any way related to the engagement of Campbell under this Agreement, provided that the Company shall not be required to indemnify an Indemnified Party for such Losses if and only to the extent that it is finally judicially determined by a court of competent jurisdiction that such Losses arose (x) because of the gross negligence, willful misconduct or fraud of such Indemnified Party or (y) because of a material breach of a term or condition of the Agreement by such Indemnified Party.

The Company shall further reimburse any Indemnified Party promptly after obtaining the necessary approval of the Bankruptcy Court, if any, for any legal or other fees, disbursements or expenses as they are incurred (a) in investigating, preparing or pursuing any action or other proceeding (whether formal or informal) or threat thereof, whether or not in connection with pending or threatened litigation or arbitration and whether or not any Indemnified Party is a party, in each case to the extent relating to Losses for which indemnification is available hereunder (each, an "Action") and (b) in connection with enforcing such Indemnified Party's rights under the Agreement; provided, however, that in the event and only to the extent that it is finally judicially determined by a court of competent jurisdiction that the Losses of such Indemnified Party arose (x) because of the gross negligence, willful misconduct or fraud of such Indemnified Party or (y) because of a material breach of a term or condition of the Agreement by such Indemnified Party, such Indemnified Party will promptly remit to the Company any amounts reimbursed under this paragraph.

Upon receipt by an Indemnified Party of notice of any Action, such Indemnified Party shall notify the Company in writing of such Action, but the failure to so notify shall not relieve the Company from any liability hereunder (i) if the Company had actual notice of such Action or (ii) unless and only to the extent that the Company is prejudiced thereby. The Company shall have the right to assume the defense of any such Action including the employment of counsel reasonably satisfactory to Campbell and will not, without the prior written consent of Campbell (which shall not be unreasonably withheld or delayed), settle, compromise, consent or otherwise resolve or seek to terminate any pending or

threatened Action (whether or not any Indemnified Party is a party thereto) unless such settlement, compromise, consent or termination (a) contains an express, unconditional release of each Indemnified Party which is a party to the Action from all liability relating to such Action and (b) does not include an admission of fault, culpability or a failure to act by or on behalf of any Indemnified Party. Any Indemnified Party shall be entitled to retain separate counsel of its choice and participate in the defense of any Action in connection with any of the matters to which the Agreement relates, but the fees and expenses of such counsel shall be at the expense of such Indemnified Party unless (x) the Company has failed promptly to assume the defense and employ counsel or (y) the named parties to any such Action (including any impleaded parties) include such Indemnified Party and the Company, and such Indemnified Party shall have been advised by counsel that there may be one or more legal defenses available to it which are different from or in addition to those available to the Company; provided, that the Company shall not in such event be responsible under the Agreement for the fees and expenses of more than one firm of separate counsel (in addition to local counsel) in connection with any such Action in the same jurisdiction.

The Company agrees that if any right of any Indemnified Party set forth in the preceding paragraphs is finally judicially determined to be unavailable (except by reason of the gross negligence, willful misconduct or fraud of such Indemnified Party or because of a material breach of a term  or condition of the Agreement by such Indemnified Party), or is insufficient to hold such Indemnified Party harmless against such Losses as contemplated herein, then the Company shall contribute to such Losses (a) in such proportion as is appropriate to reflect the relative benefits received by the Company and its creditors and stockholders, on the one hand, and such Indemnified Party, on the other hand, in connection with the transactions contemplated hereby, and (b) if (and only if) the allocation provided  in clause (a) is not permitted by applicable law, in such proportion as is appropriate to reflect not only the relative benefits referred to in clause (a) but also the relative fault of the Company and such Indemnified Party; provided, that, in no event shall the aggregate contribution of all such Indemnified Parties exceed the amount of fees received by Campbell under the Agreement. Benefits received by Campbell shall be deemed to be equal to the compensation paid by the Company to Campbell in connection with the Agreement. Relative fault shall be determined by reference to, among other things, whether any alleged untrue statement or omission or any other alleged conduct relates to information provided by the Company or other conduct by the Company (or the Company's employees or other agents) on the one hand or by Campbell on the other hand.

The Company also agrees that no Indemnified Party shall have any liability (whether direct or indirect, in contract or tort or otherwise) to the Company for or in connection with advice or services rendered or to be rendered by any Indemnified Party pursuant to the Agreement, the transactions contemplated hereby or any Indemnified Party's actions or inactions in connection with any such advice, services or transactions except for and only to the extent that such Losses of the Company are finally judicially determined by a court of competent jurisdiction to have arisen (x) because of the gross negligence, willful misconduct or fraud of, or (y) because of a material breach of a term or condition of the Agreement by such Indemnified Party in connection with any such advice, actions, inactions or services.

The rights of the Indemnified Parties and the Company hereunder shall be in addition to any other rights that any Indemnified Party or the Company may have at common law,

by statute or otherwise. Except as otherwise expressly provided for in the Agreement, if any term, provision, covenant or restriction contained in the Agreement is held by a court of competent jurisdiction or other authority to be invalid, void, unenforceable or against its regulatory policy, the remainder of the terms, provisions, covenants and restrictions contained in the Agreement shall all remain in full force and effect and shall in no way be affected, impaired or invalidated. The reimbursement, indemnity and contribution obligations of the Company set forth herein shall apply to any modification of the Agreement and shall remain in full force and effect regardless of any termination of, or the completion of any Indemnified Party's services under or in connection with, the Agreement.

## Exhibit 2

### Interested Parties

Debtors and Affiliates
>Lexington Precision Corporation
>Lexington Rubber Group, Inc.

Secured Creditors
>Capital Source Finance LLC
>Webster Business Credit Corporation
>CSE Mortgage LLC
>DMD Special Situations, LLC
>Commercial Alloys
>Inter-Tel

30 Largest Unsecured Creditors
>Wilmington Trust Company Corporate Capital Markets
>Wacker Silicones
>Chase Brass & Copper, Inc.
>Dow Corning, STI
>Momentive Performance Materials, Inc.
>St. Paul Travelers
>Earle M. Jorgensen Company
>Degussa-Huls Corporation
>Copper & Brass Sales
>Gold Key Processing, LTD
>Ohio Edison
>American Express
>The William L. Bonnel Co.
>Channel Prime Alliance
>Shin-Etsu Silicones of America
>Lintech International
>American International Group, Inc.
>Vitex Corporation
>QAD Inc.
>China Auto Group
>Imperial Die & Mfg Co.
>Goodyear Tire & Rubber Co.
>Haley & Associates, Inc.
>U.S. Silica
>Georgia Power
>Burgess Pigment Company
>Energetx
>Dalton Box
>Process Oils

Roy Metal Finishing Co. Inc.

Noteholders
Michael A. Lubin (includes affiliates)
Warren Delano
Jefferies & Company
Wilfred Aubrey International LTD
Cape Investments, Inc.
Sandler Capital Management
Valhalla Capital Partners LLC
Hedgehog Capital LLC
Imperial Capital, LLC
Harch Capital Management, Inc.
Leon G. Wagner
Mario A. Monello
John Gildea
R. Marcus Lane
Fred L. Schmitt, TTEE
Cliff Ferguson
Jane S. Rose
Sally Gardner Reed & Joyce Loveland Reed & Keith R. Read Jt. Ten.
Stanley Jacobson & Barber Jacobson Jt. Ten.
Neil Giardino
Craig MacKay
Steven Shapiro and Deborah Freedman
Edward Dugen & Tracy Dugan
Free Buffone
Contrarian Capital Management
AGF Management Ltd.


Indenture Trustees
Wilmington Trust Company

Significant Customers
Delphi Corporation
General Cable Corporation
Prestolite Wire Corporation
Tyco International LTD
Cooper-Standard Automotive, Inc.
Ethicon, Inc.

Other Customers
General Motors Corporation


Accountants Employed or Retained Within Two Years of Commencement Date

Malin, Berquist & Company LLP

Significant Lessors and Lessees
 1984 Holdings, LLC
 Boulter Industrial Contractor, Inc
 Putnam Properties
 Kings Grave Road
 Inter-Tel
 IKON
 Pepper Pike Place Associates, LLC

Government and State Regulatory Agencies
 U. S. Securities and Exchange Commission
 U. S. Department of Labor

Significant Stockholders (5% or more)
 Michael A. Lubin
 Warren Delano
 William B. Conner

Current Officers and Directors
 *Officers*
  Michael A. Lubin, Chairman
  Warren Delano, President
  Dennis J. Welhouse, CFO
  Charles R. Jenkins, Assistant Treasurer

 *Directors(or Managers, as applicable)*
  Michael A. Lubin, Director
  Warren Delano, Director
  William B. Conner, Director
  Kenneth I. Greenstein, Director
  Joseph A. Pardo, Director
  Elizabeth Ruml, Director
  Keith G. Blockinger, President, Lexington Connector Seals Division
  Michael D. Berry, President, Lexington Insulators Division
  John C. Miller, President, Lexington Technologies Division
  Kenneth Vivlamore, President, Lexington Machining Division

Former Officers and Directors for Last 3 Years
 *Officers*
  Florence Herst, Treasurer
 *Directors*
  None

Director and Officer Affiliations

Lubin, Delano & Company
Conner Holding Company
Nixon Peabody LLP
Salant Corporation
Phoenix Advisors LLC
Brothers Gourmet Coffee Co.
Weblink Wireless
Deutsche Bank
Bankers Trust Company
Salomon Brothers
Benjamin Moore & Company

Insurance/Benefits Providers
American International Group
CHUBB Group
Federal Insurance Company
Fireman's Fund Insurance Companies
Kemper Insurance
St. Paul Travelers Companies, Inc.
Affiliated FM Insurance Company
Reliance Standard Life Insurance Co.

Employees in the Office of the U.S. Trustee
None

Unions
United Steel Workers of America
IUE division of the Communication Workers of America

Tax Authorities
U. S. Department of the Treasury Internal Revenue Service
Arizona Department of Revenue
State of Delaware
Georgia Department of Revenue
Michigan Department of Revenue
New York State Department of Taxation and Finance
Ohio Department of Taxation
Commonwealth of Pennsylvania Department of Revenue
South Carolina Department of Revenue and Taxation
Tennessee Department of Revenue
New York State Sales Tax
New York State Tax Processing
Treasurer State of Ohio

Professionals

Malin, Bergquist & Company LLP
Nixon Peabody, LLP
Thompson Hine LLP
Snell & Wilmer LLP

W. Y. W.Y. Campbell & Company
Weil, Gotshal & Manges LLP
Chelko Consulting Group

Womble Carlyle Sandridge & Rice
Haley & Aldrich, Inc
Buck Consultants, LLC
Clark & Clark
Fisher & Phillips, LLP
Landair Surveying Co. of Georgia
Moreland Altobelli & Associates, Inc.
Sullivan & Worcester
Sutherland, Asbil & Brennan, LLP
CompManagement, Inc.

<u>Banks</u>
FirstMerit Bank , N.A.

<u>Utility Providers</u>
Ohio Edison
Dominion East Ohio (Gas)
Trumbull County Ohio Water
Embarq Communications, Inc.
Waste Management of Ohio
City of Rock Hill, SC
York County, SC Natural Gas
Comporium Communications
Allied Waste
City of North Canton, Ohio PU (water)
Stark County Sanitary Dept
AT&T
WCS
CanNet Internet Services
Georgia Power Company
Georgia Natural Gas
City of Jasper
ETC Communications, LLC
Premiere Global Services
AT&T Easylink Services
Sprint
Advanced Disposal Services

Superior Waste Services, Inc.
National Grid
City of Jamestown
Rochester Gas & Electric
Energetix
City Treasurer (Rochester, NY) (water)
Frontier Telephone
Safety-Clean
Waste Management of NY
ADT
Avaya
Pepper Pike Place Associates, LLC

Litigation Adversaries
Autoliv ASP, Inc.
Autoliv, Inc.
Lorraine Cerimele

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-------------------------------------------------------------x
                                    :
In re                               :        **Chapter 11 Case No.**
                                    :
**LEXINGTON PRECISION CORP., et al.,**   :        **08-11153 (MG)**
                                    :
        **Debtors.**                :        **(Jointly Administered)**
                                    :
-------------------------------------------------------------x

### ORDER PURSUANT TO SECTIONS 327(a) AND 328(a) OF THE BANKRUPTCY CODE AND FEDERAL RULE OF BANKRUPTCY PROCEDURE 2014(a) AUTHORIZING THE RETENTION OF W.Y. CAMPBELL & COMPANY AS FINANCIAL ADVISORS FOR THE DEBTORS, *NUNC PRO TUNC* TO APRIL 1, 2008

Upon the application, dated April 24, 2008 (the "Application") of Lexington

Precision Corporation and Lexington Rubber Group, Inc., as debtors and debtors in possession

(collectively, the "Debtors"), pursuant to sections 327(a) and 328(a) of title 11 of the United

States Code (the "Bankruptcy Code") and Rule 2014(a) of the Federal Rules of Bankruptcy

Procedure (the "Bankruptcy Rules"), for approval and authority to employ W.Y. Campbell &

Company ("Campbell") as their financial advisors pursuant to that certain Engagement Letter,

dated April 1, 2008 (the "Engagement Letter"), all as more fully set forth in the Application; and

upon consideration of the affidavit of Andre A. Augier, a Managing Director of Campbell, sworn

to on April 23, 2008 (the "Augier Affidavit") and the Court being satisfied, based on the

representations made in the Application and the Augier Affidavit, that Campbell represents or

holds no interest adverse to the Debtors or their estates and is disinterested under section 101(14)

of the Bankruptcy Code, as modified by section 1107(b) of the Bankruptcy Code; and the Court

having jurisdiction to consider the Application and the relief requested therein in accordance

with 28 U.S.C. §§ 157 and 1334 and the Standing Order M-61 Referring to Bankruptcy Judges

for the Southern District of New York Any and All Proceedings Under Title 11, dated July 10,

1984 (Ward, Acting C.J.); and consideration of the Application and the relief requested therein being a core proceeding pursuant to 28 U.S.C. § 157(b); and venue being proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409; and due and proper notice of the Application having been provided and no other or further notice need be provided; and a hearing having been held to consider the relief requested in the Application (the "Hearing"); and upon the record of the Hearing and all of the proceedings had before the Court; and the Court having found and determined that the relief sought in the Application is in the best interests of the Debtors, their estates and creditors, and all parties in interest and that the legal and factual bases set forth in the Application establish just cause for the relief granted herein; and after due deliberation and sufficient cause appearing therefor, it is

ORDERED that the Application is approved; and it is further

ORDERED that pursuant to sections 327(a) and 328(a) of the Bankruptcy Code, the Debtors' retention of Campbell as their financial advisors pursuant to the Engagement Letter is approved *nunc pro tunc* to April 1, 2008 and the Debtors are authorized to retain Campbell on the terms set forth in the Engagement Letter; and it is further

ORDERED that Campbell shall apply for compensation and reimbursement in accordance with the applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, the Local Rules of Civil Practice and Procedure of the United States District Court for the Southern District of New York, the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the Southern District of New York, the guidelines established by the Office of the United States Trustee, and such other procedures as may be fixed by order of this Court; and it is further

ORDERED that the requirement Campbell maintain contemporaneous time records or conform to or provide a schedule of hourly rates for its professionals is waived; and it is further

ORDERED that all requests of Campbell for payment of indemnity pursuant to the Engagement Letter shall be made by means of an application (interim or final as the case may be) and shall be subject to review by the Court to ensure that payment of such indemnity conforms to the terms of the Engagement Letter and is reasonable based upon the circumstances of the litigation or settlement in respect of which indemnity is sought, provided, however, that in no event shall the Debtors indemnify Campbell for claims, as determined by final order of a court, arising because of (x) the gross negligence, willful misconduct or fraud of Campbell or (y) a material breach of a term or condition of the Engagement Letter by Campbell; and it is further

ORDERED that the requirement set forth in Local Bankruptcy Rule 9013-1(b) for the filing of a separate memorandum of law in support of the Application is satisfied.

Dated: New York, New York
       May ___, 2008

_____
United States Bankruptcy Judge