Hearing Date: June 5, 2008 at 2:00 p.m. (EDT)
Objection Deadline: June 2, 2008 at 10:00 a.m. (EDT)

ANDREWS KURTH LLP
Paul N. Silverstein (PS 5098)
Jonathan Levine (JL 9674)
450 Lexington Avenue, 15th Floor
New York, New York 10017
Telephone: (212) 850-2800
Facsimile: (212) 850-2929

Counsel to the Official Committee
of Unsecured Creditors

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------------------x
In re:                                              :    Chapter 11
                                                    :
LEXINGTON PRECISION CORP, et al.,                   :    Case No. 08-11153 (MG)
                                                    :
                                                    :    (Jointly Administered)
                        Debtors.                    :
---------------------------------------------------------------x

## APPLICATION FOR ORDER AUTHORIZING THE EMPLOYMENT OF STOUT RISIUS ROSS, INC., AS FINANCIAL ADVISORS TO THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS, EFFECTIVE AS OF MAY 13, 2008

The Official Committee of Unsecured Creditors (the "Committee") of Lexington Precision Corporation ("LEXP") and Lexington Rubber Group, Inc. (collectively with LEXP, the "Debtors") for its application (the "Application") for an order authorizing its employment of Stout Risius Ross, Inc. ("SRR"), as financial advisor to the Committee, effective as of May 13, 2008, pursuant to section 328(a) of title 11 of the United States Code (the "Bankruptcy Code"), respectfully represents:

### JURISDICTION

1.      This Court has jurisdiction over the subject matter of this Application pursuant to 28 U.S.C. §§157 and 1334. This is a core proceeding pursuant to 28 U.S.C. §157(b). Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

NYC:175759.5

## GENERAL BACKGROUND

2.      On April 1, 2008 (the "Petition Date"), the Debtors filed with this Court petitions for relief under chapter 11 of title 11, United States Code (the "Bankruptcy Code").

3.      The Debtors continue to manage their properties and operate their businesses as debtor-in-possession pursuant to section 1107 and 1108 of the Bankruptcy Code. No trustee or examiner has been appointed in these cases.

### The Debtors

4.      The Debtors manufacture rubber and metal components for use primarily in automobiles and medical devices. The Debtors operate through two operating segments, the Rubber Group and the Metals Group. The Debtors' components are generally sold to other manufacturers, primarily tier-one automotive parts manufacturers, which supply parts to the industry's leading automobile producers.

5.      The Rubber Group is one of North America's largest manufacturers of rubber components for the automotive industry. The Rubber Group also manufacturers and sells rubber components used in a variety of medical devices, including drug delivery systems, syringes, laparoscopic instruments, and catheters. The Metals Group manufacturers aluminum, brass, steel and stainless steel components machined from bars, forgings, and cold-headed blanks, primarily for automotive customers. The Committee understands that Delphi Corporation is one of the Debtors' largest customers, representing almost 10% of the Debtors' consolidated net sales.

### The Committee

6.      On April 11, 2008 (the "Formation Date"), pursuant to Section 1102(a)(1) of the Bankruptcy Code, the United States Trustee appointed the Committee. The Committee consists of Wilmington Trust Company, Jefferies High Yield Trading, Wilfrid Aubrey LLC, Valhalla

2

Capital Partners, LLC, Momentive Performance Materials, Inc., Wacker Chemical Corporation and Environmental Products & Services of Vermont, Inc.

## RELIEF REQUESTED

7. By this Application, the Committee seeks authority to retain SRR as its financial advisor, effective as of May 13, 2008, for the purposes set forth and upon the terms and conditions set forth in the engagement letter dated May 13, 2008 (the "Engagement Letter") annexed hereto as Exhibit A.

## BASIS TO RETAIN SRR AS FINANCIAL ADVISOR

SRR's Qualifications

8. The Committee has selected SRR based on its experience and expertise in providing financial advisory services in chapter 11 cases. The Committee believes that SRR is well-qualified and uniquely able to provide financial advisory services to it in these cases in an efficient manner. Moreover, SRR's Managing Directors and Directors have advised debtors and creditors' committees in numerous restructuring transactions. As set forth in the Risius Declaration, SRR's Managing Directors and Directors have advised debtors and creditors in numerous restructuring transactions, including some of the largest and most complicated cases such as Blue Water Automotive Systems, Inc., UAL Corporation (United Airlines), Kmart Corporation, Circle K, Bethlehem Steel, amongst others.

Scope of SRR's Engagement

9. Subject to the direction of the Committee and further order of this Court, SRR will perform the professional financial advisory services described below, as needed.

    a.    financial advisory services, as reasonably requested by the Committee, including, but not limited to, the preparation of a liquidation analysis, monthly analysis of the Debtors' financial information (including analysis of significant charges financially, operationally, or otherwise);

b. analysis of the Debtors' general financial and business condition, including an analysis of current assets and liabilities, PP&E and other "soft" assets;

c. qualitative analysis of the Debtors' plants, operations and facilities;

d. qualitative analysis of the Debtors' customers and suppliers;

e. qualitative analysis of the Debtors' principal products and markets;

f. meet with Committee to discuss SRR's various analyses;

g. determination of the Debtors' enterprise value as of the Petition Date and as of the effective date of a chapter 11 plan of reorganization; and

h. provide expert witness report and testimony regarding the Debtors' enterprise valuation, the valuation of any securities proposed to be issued under any chapter 11 plan of reorganization of the Debtors, confirmation issues, or other matters.

10. The Committee may limit or expand the scope of SRR's representation from time to time on terms mutually acceptable to the parties in writing.

11. The Committee believes that it is necessary to employ SRR as its financial advisor to provide the above-referenced services to the Committee, so that the Committee may properly fulfill its duties under the Bankruptcy Code.

12. The Committee requests that SRR's retention be approved effective as of May 13, 2008, the date that it was hired.

Terms of SRR's Proposed Engagement

13. The Committee, subject to the applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, the local rules of this District and relevant orders of this Court (the "Local Rules"), proposed to retain SRR pursuant to the terms of the Engagement Letter. SRR has stated its desire and willingness to act in these cases and to render the necessary professional services to the Committee in accordance with the terms set forth in the Engagement Letter.

14. Subject to the Court's approval of this Application and the terms of SRR's retention pursuant to the Engagement Letter as compensation for its services and in accordance

4

NYC:175759.5

with its normal billing practices, SRR has agreed to accept payment for its services on the following terms and conditions (the "Fee Structure"):

    a.    commencing as of May 13, 2008, SRR shall be paid by the Debtors a monthly fee each month in advance of its services, on the first day of each month, of (i) $50,000 per month, for the first 10 months of the engagement and (ii) $20,000 per month thereafter through the Plan Approval Date (as defined in the Engagement Letter). Notwithstanding any termination of SRR's engagement, the Debtors shall pay SRR the monthly fee for a minimum of 10 months;

    b.    the first monthly payment shall be paid by the Debtors as soon as practicable after entry of an order of this Court approving the Committee's retention of SRR;

    c.    to the extent the Committee requests SRR to perform additional services not contemplated by the engagement letter after the initial 10 months of the engagement, the Committee and SRR may mutually agree to modify the monthly fee; and

    d.    reimbursement for all of SRR's reasonable out-of-pocket expenses reasonably incurred in connection with its legal engagement by the Committee, including the reasonable fees and expenses of its legal counsel (SRR agrees that its expenses will not exceed $25,000 without the Committee's prior approval, which approval shall not be unreasonably withheld or delayed).

15.    The balance of the proposed terms of SRR's retention are set forth in the Engagement Letter. The effectiveness of SRR's engagement is explicitly subject to this Court's approval of the Application and of the material terms of SRR's engagement as set forth in the Engagement Letter.

<u>SRR Holds No Interest Adverse to the Committee or Its Constituents</u>

16.    In connection with its proposed retention by the Committee, SRR conducted a conflicts check and due inquiry (the "Disclosure Procedure") to determine whether it had any relationships with the following entities:

    (i)    the Debtors;

    (ii)    current officers and directors of the Debtors;

    (iii)    the beneficial holders of the 12% Senior Subordinated Notes to the extent known by the Debtors;

    (iv)    significant holders of the LEXP's stock (those holding more than 5%);

5

      (v)     members of the Ad Hoc committee;

      (vi)    members of the Official Committee of Unsecured Creditors;

      (vii)   the indenture trustee for the 12% Senior Subordinated Notes;

      (viii)  the Debtors' pre-petition secured lenders; and

      (ix)    the entities listed as the Debtors' 30 largest creditors.

Among other things, SRR circulated a list of the parties-in-interest in these chapter 11 cases to its professionals for their review of any relationships or potential conflicts of interest. A list of the names of each of the entities searched is set forth on <u>Schedule 1</u> to the attached Affidavit of Jeffrey M. Risius, executed on May 13, 2008 and attached hereto as <u>Exhibit B</u> (the "Risius Affidavit").

    17.    As disclosed in <u>Schedule 2</u> to the Risius Declaration, SRR or its professionals have, from time to time, provided and may continue to provide various services to certain of the Debtors' creditors or other parties in interest in matters unrelated to these chapter 11 cases. In connection with SRR's retention in March 2007 by Waller, Lansden Dortch & Davis LLP, counsel to Capital Source Finance LLC and CSE Mortgage LLC, SRR performed real estate valuations on certain of the Debtors' owned real property.

    18.    To the best of the Committee's knowledge, information and belief: (a) SRR does not hold or represent any interest adverse to the Committee in the matters for which it is to be retained, (b) SRR is a "disinterested person" as that phrase is defined in section 101(14) of the Bankruptcy Code, (c) neither SRR nor its professionals have any connection with the Debtors, their creditors or any other parties in interest, including any United States Bankruptcy Judge in the Southern District of New York, and (d) SRR's employment is necessary and is in the best interests of the Committee and the Debtors' estates.

19. SRR will continue to apply the disclosure procedure if additional information concerning entities having a connection with the Debtors emerges and will file appropriate supplemental disclosure with the Court (if any).

Fee Application and Compensation

20. Except as otherwise provided herein, SRR intends to apply to the Court for payment of compensation and reimbursement of expenses in accordance with applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, the guidelines promulgated by the Office of the United States Trustee for the Southern District of New York (the "U.S. Trustee"), and pursuant to any additional procedures that may be or have already been established by the Court in this case.

21. As SRR will be compensated with a fixed fee, the Committee requests that SRR be relieved of providing detailed time records or schedules of rates in connection with its monthly statements or interim and final fee applications. This is consistent with the practice of financial advisors under other chapter 11 cases whose fee agreements are not hours-based.

22. As described in the Risius Declaration, the fees set forth herein are consistent with SRR's typical fees for work of this nature. These fees are set at a level designed to compensate SRR fairly for the work of its professionals and assistants and to cover fixed and routine overhead expenses. It is SRR's policy to charge its clients for all reasonable disbursements and expenses incurred in the rendition of services.

23. The hours worked, the results achieved and the ultimate benefit to the Committee of the work performed by SRR in connection with this engagement may vary and the Committee and SRR have taken this into account in setting the above fees. In order to induce SRR to do business with the Committee in bankruptcy, the fees were set against the difficulty of the assignment and the potential for failure. Additionally, and in connection therewith, the

Committee has been advised by SRR that it will endeavor to coordinate with the other retained professionals in these bankruptcy cases to eliminate unnecessary duplication or overlap of work.

24.  In sum, in light of the foregoing and given the numerous issues which SRR may be required to address in the performance of its services hereunder, SRR's commitment to the variable level of time and effort necessary to address all such issues as they arise, and the market price for SRR's services for engagements of this nature in an out-of-court context, the Committee acknowledges and agrees that the Fee Structure is both fair and reasonable under the standards set forth in 11 U.S.C. § 328(a).

Indemnity; Limitation of Liability

25.  As set forth in the Engagement Letter, the Debtors will provide SRR and the other Indemnified Parties (as that term is defined in the Engagement Letter) with an indemnity in connection with the engagement unless such claim arises out of the willful misconduct, gross negligence, bad faith or self-dealing of SRR or any such Indemnified Party.

26.  The indemnification provision of the Engagement Letter (the "Indemnity") is a reasonable term and condition of the SRR engagement. *See In re Joan & David Halpern, Inc.*, 248 B.R. 43 (Bankr. S.D.N.Y. 2000); *In re AI Realty Marketing of N.Y., Inc. (In re Sunbeam)*, No. 01-40291 (AJG) (Bankr. S.D.N.Y. April 17, 2001). Unlike the market for other professionals that a debtor or committee may retain, indemnification is the standard term of the market for investment bankers and financial advisors. In fact, the Indemnity is comparable to those generally obtained by financial advisory and investment banking firms of similar stature to that of SRR and for comparable engagements, both in and out of court.

### ENGAGEMENT UNDER SECTION 328 IS REASONABLE AND APPROPRIATE UNDER THE CIRCUMSTANCES

27.  The Engagement Letter provides that SRR will be retained pursuant to section 328(a) of the Bankruptcy Code. Section 328 of the Bankruptcy Code provides, in relevant part,

8

NYC:175759.5

that a Committee "with the court's approval, may employ or authorize the employment of a professional person under section ... 1103 of this title ... on any reasonable terms and conditions of employment, including on a retainer, on an hourly basis, on a fixed or percentage fee basis, or on a contingent basis." 11 U.S.C. § 328(a). Section 328 reflects a significant departure from prior bankruptcy practice relating to the compensation of professionals, as it permits the compensation of professionals, including financial advisors, on more flexible terms that reflect the nature of their services and market conditions.

28.  Section 328(a) provides courts with inherent flexibility to approve alternative fee structures to the customary hourly rate. The Fee Structure set forth in the Engagement Letter is comparable to that generally charged by firms of a similar nature to SRR and for comparable engagements, both in and out of court. Moreover, the fee arrangement is both fair and reasonable under the standards set forth in section 328(a) of the Bankruptcy Code.

29.  The Committee respectfully submits that the terms of the proposed retention are reasonable based on the customary compensation charged by SRR and comparably skilled practitioners in matters outside and other than chapter 11 cases, as well as cases under chapter 11, and have been approved and implemented in this jurisdiction as well as in chapter 11 cases elsewhere. Furthermore, the entire engagement set forth in the Engagement Letter is common within the industry and reflects what is considered to be "market" both in and out of chapter 11 proceedings. Accordingly, the Committee respectfully submits that the terms of the proposed engagement of SRR including, without limitation, the Fee Structure, should be approved.

## NOTICE

30.  Notice of this Application has been given to the Debtors, the United States Trustee, and will be served on those parties on the Master Service List comprising: (a) the Office of the United States Trustee for the Southern District of New York; (b) counsel for the Debtors;

(c) the indenture trustee under the Debtors' senior note indenture; (d) the Debtors' thirty (30) largest unsecured creditors; (e) those persons who have formally appeared and requested service in this proceeding pursuant to Bankruptcy Rule 2002; and (f) government agencies to the extent required by the Bankruptcy Rules and the Local Rules. In light of the nature of the relief requested, the Committee submits that no further notice need be given.

31. No previous application for the relief sought herein has been made by the Committee to this or any other Court.

WHEREFORE, the Committee respectfully requests that this Court (i) approve the proposed Interim Order attached hereto as <u>Exhibit C</u>; (ii) authorize the Committee to retain and employ SRR as financial advisors pursuant to the terms of the Engagement Letter effective as of May 13, 2008, pursuant to sections 328(a) and 1103 of the Bankruptcy Code, on a final basis; and (iii) provide such other and further relief as is just and proper.

Dated: New York, New York
May 13, 2008

Respectfully submitted,

**THE OFFICIAL COMMITTEE OF
UNSECURED CREDITORS OF
LEXINGTON PRECISION CORPORATION**

By: /s/ Paul N. Silverstein
ANDREWS KURTH LLP
Paul N. Silverstein (PS 5098)
Jonathan Levine (JL 9674)
450 Lexington Avenue
New York, New York 10017
(212) 850-2800

Counsel for the Official
Committee of Unsecured Creditors

NYC:175759.5