WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007
Richard P. Krasnow
Adam P. Strochak
Christopher J. Marcus

Attorneys for Debtors and
Debtors in Possession

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------------------x
                                            :
**In re**                                   :    **Chapter 11 Case No.**
                                            :
**LEXINGTON PRECISION CORP., et al.,**      :    **08-11153 (MG)**
                                            :
        Debtors.                            :    **(Jointly Administered)**
                                            :
------------------------------------------------------------x

**DEBTORS' MEMORANDUM OF LAW
IN SUPPORT OF OBJECTION TO THE OFFICIAL
CREDITORS' COMMITTEE'S MOTION FOR AN ORDER TERMINATING
EXCLUSIVITY UNDER SECTION 1121(D) OF THE BANKRUPTCY CODE**

Lexington Precision Corporation ("Lexington Precision") and Lexington Rubber Group, Inc. ("Lexington Rubber Group" and, together with Lexington Precision, "Lexington" or the "Debtors"), as debtors and debtors in possession, respectfully submit this memorandum of law in support of the objection, dated June 4, 2008 (the "Objection"), to the motion (the "Motion"), dated May 21, 2008, of the Official Creditors' Committee (the "Committee"), for entry of an order terminating the Debtors' exclusive statutory right pursuant to section 1121 of title 11 of the United States Code (the "Bankruptcy Code") to file a plan of reorganization.

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES .................................................................................................. ii

I. PRELIMINARY STATEMENT ................................................................................. 1

II. STATEMENT OF FACTS ........................................................................................... 1

III. THERE IS NO LEGAL OR FACTUAL BASIS TO TERMINATE EXCLUSIVITY ............................................................................................................ 1

    A.    Standard For Terminating A Debtor's Exclusivity Period ................................. 1

    B.    The Committee's "Cause" In Support Of Terminating Exclusivity Are Legally And Factually Unsupportable ................................................................ 4

        1.    The Debtors Did Not Breach Any Fiduciary Duties ............................... 4

        2.    The Committee Cannot Demonstrate That A Plan Yet To Filed Will Be Rejected By Creditors, Nor Would Such Justify Terminating Exclusivity ............................................................................ 9

        3.    The Committee Cannot Demonstrate That Terminating Exclusivity Would Expedite These Chapter 11 Cases ........................... 10

IV. CONCLUSION ............................................................................................................ 12

# TABLE OF AUTHORITIES

## FEDERAL CASES

*In re Adelphia Communications Corp.*, 352 B.R. 578 (Bankr. S.D.N.Y. 2006) .............2, 3

*In re BHC Communications Shareholder Litigation, Inc.*, 789 A.2d 1, 4 (Del. Ch. 2001) .................................................................................................................7

*In re BP p.l.c. Derivative Litigation*, 507 F. Supp. 2d 302 (S.D.N.Y. 2007) ....................4

*In re CRIIMI MAE, Inc.*, 251 B.R. 796 (Bankr. D. Md. 2000)...........................................9

*In re Dow Corning Corp.*, 208 B.R. 661 (Bankr. E.D. Mich. 1997) .................................4

*Flast v. Cohen*, 393 U.S. 83 (1968) ...................................................................................9

*In re Geriatrics Nursing Home, Inc.*, 187 B.R. 128 (D.N.J. 1995)................................2, 8

*In re Gibson & Cushman Dredging Corp.*, 101 B.R. 405 (E.D.N.Y. 1989) ....................12

*In re Grand Traverse Development Co. Ltd. Partnership*, 147 B.R. 418 (Bankr. W.D. Mich. 1992)..............................................................................................11

*Grayson-Robinson Stores, Inc. v. Security and Exchange Commission* (*In re Grayson-Robinson Stores, Inc.*), 320 F.2d 940 (2d Cir. 1963)...................................10

*In re Hausman v. Buckley*, 299 F.2d 696 (2d Cir. 1962) ...................................................4

*In re Integrated Resources, Inc.*, 147 B.R. 650 (S.D.N.Y. 1992).......................................6

*In re Johns-Manville Corp.*, 26 B.R. 919 (Bankr. S.D.N.Y. 1983) ....................................6

*In re Lehigh Valley Professional Sports Club, Inc.*, 2000 WL 290187 (Bankr. E.D. Pa. Mar. 14, 2000) ................................................................................2, 12

*Official Unsecured Creditors' Committee v. Eagle Picher Industrial, Inc. (In re Eagle Picher Industrial, Inc.)*, 176 B.R. 143 (Bankr. S.D. Ohio 1994) ......................10

*In re Pied Piper Casuals, Inc.*, 40 B.R. 723 (Bankr. S.D.N.Y. 1984) ..............................10

*In re Public Serv. Co. of New Hampshire*, 88 B.R. 521 (Bankr. D.N.H. 1988) .................3

*In re Public Serv. Co. of New Hampshire*, 99 B.R. 155 (Bankr. D.N.H. 1989) .............3, 6

*Rickel & Associates v. Smith (In re Rickel & Associates)*, 272 B.R. 74 (Bankr. S.D.N.Y. 2002) ..................................................................................................................6

*In re Texaco Inc.*, 76 B.R. 322 (Bankr. S.D.N.Y. 1987) ......................................................3

*In re Texaco, Inc.*, 81 B.R. 806 (Bankr. S.D.N.Y. 1988) ............................................1, 2, 11

*The Bohack Corp. v. Gulf & Western Industrial, Inc. (In re Bohack Corp.)*, 607 F.2d 258 (2d Cir. 1979) ...........................................................................................6

*United Savings Assoc. of Texas v. Timbers of Inwood Forest Assocs. (In re Timbers of Inwood Forest Assoc.)*, 808 F.2d 363, 372 (5th Cir. 1987), *aff'd* 484 U.S. 365 (1988) ...................................................................................................7

## STATE CASES

*Angelo, Gordon & Co. v. Allied Riser Committee Corp.*, 805 A.2d 221 (Del. Ch. 2002) ..................................................................................................................6

*Aronson v. Lewis*, 473 A.2d 805, 812 (Del. 1984) ..............................................................7

*In re BHC Communications Shareholder Litigation, Inc.*, 789 A.2d 1 (Del. Ch. 2001) ..................................................................................................................7

*Guth v. Loft*, 5 A.2d 503 (Del. 1939) ..................................................................................5

*Heller v. Kiernan*, 2002 WL 385545 (Del. Ch. Feb. 27, 2002) ..........................................7

*In re Lehigh Valley Professional Sports Club, Inc.*, 2000 WL 290187 (Bankr. E.D. Pa. Mar. 14, 2000) ................................................................................2, 12

*North American Catholic Educational Programming Foundation, Inc. v. Gheewalla*, 930 A.2d 92, 100 (Del. 2007) .................................................................5

*Malone v. Brincat*, 722 A.2d 5 (Del. 1998) .........................................................................5

*Prod. Resources Group L.L.C. v. NCT Group, Inc.*, 863 A.2d 772 (Del. Ch. 2004) ...........6

*Schoon v. Smith*, 2008 WL 375826 (Del. 2008) ..................................................................6

*Smith v. Van Gorkom*, 488 A.2d 858, 872 (Del. 1985) ......................................................6

*Trenwick America Litigation Trust v. Ernst & Young, L.L.P.*, 906 A.2d 168 (Del. Ch. 2006) ...........................................................................................................6

## FEDERAL STATUTE

11 U.S.C. § 1121 ................................................................................................ passim

I.

**PRELIMINARY STATEMENT**

The burden to terminate a debtor's exclusivity period during the initial 120-day statutory period is very heavy. The statutory entitlement a debtor enjoys during the initial 120-day period is not to be disturbed absent extreme circumstances that justify overriding the Bankruptcy Code's policy of facilitating the reorganization of a debtor's business without the attendant interference of competing plans. As demonstrated below, the Committee's assertions do not come close to satisfying this legal standard. The Motion should be denied.

II.

**STATEMENT OF FACTS**

The pertinent facts are set forth in the Objection and Lubin Declaration and are incorporated by reference as if fully set forth. All capitalized terms not defined herein shall have the meaning used in the Objection.

III.

**THERE IS NO LEGAL OR FACTUAL BASIS TO TERMINATE EXCLUSIVITY**

A.  **Standard For Terminating
    A Debtor's Exclusivity Period**

The Bankruptcy Code provides that upon the commencement of a chapter 11 case, "only the debtor may file a plan until after 120 days after the date of the order for relief under this chapter." 11 U.S.C. § 1121(b). Congress enacted section 1121 of the Bankruptcy Code to provide a debtor during the initial 120-day statutory period with the "unqualified opportunity to negotiate a settlement and propose a plan of reorganization without interference from creditors and other interests." *In re Texaco, Inc.*, 81 B.R. 806, 809 (Bankr. S.D.N.Y. 1988). The statutory presumption to negotiate and propose a plan during the initial 120-day statutory

period is so strong that even the prospect of a more favorable plan proposed by a creditor has been held to be insufficient cause to terminate exclusivity during this period. *In re Geriatrics Nursing Home, Inc.*, 187 B.R. 128, 134 (D.N.J. 1995).

Section 1121(d)(1) of the Bankruptcy Code provides "on request of a party in interest . . . the court may for cause reduce or increase the 120-day or the 180-day period referred to in this section." 11 U.S.C. § 1121(d)(1). Modification of the exclusivity period is committed to the sound discretion of the bankruptcy court and is fact specific. *In re Adelphia Communications Corp.*, 352 B.R. 578, 586 (Bankr. S.D.N.Y. 2006). The burden is always upon the party seeking to modify the exclusivity period —here, the Committee. *Texaco*, 81 B.R. at 813. The burden is especially heavy when the motion to terminate is filed during the initial 120-day statutory period. *In re Lehigh Valley Professional Sports Club, Inc.*, 2000 WL 290187,*4 (Bankr. E.D. Pa. Mar. 14, 2000) (denying a motion to terminate exclusivity filed 14 days after commencement of chapter 11 case). As the court in *Lehigh Valley* held, this heavy burden exists because terminating exclusivity removes any incentive for creditors to negotiate with the debtor. *Id.* Accordingly, a court's review of the allegations supporting cause should be considered in the context of the Bankruptcy Code's policy to promote an environment in which a debtor may formulate, propose, and negotiate a plan that is acceptable to all parties without the interference of competing plans. *Id.* at *3.

The Bankruptcy Code does not define what constitutes cause under section 1121(d)(1). Moreover, as the Court noted in *Lehigh Valley*, the majority of decisions attempting to define "cause" within the confines of section 1121(d)(1) "arise in the context of requests to extend, not contract, exclusivity. Thus, the factors articulated in [those] decisions have marginal utility here since many of them assume the initial statutory period has been afforded." *Lehigh*

*Valley*, 2000 WL 290187 at *2 (identifying the factors courts consider regarding motions to terminate exclusivity during the initial 120-day statutory period).[1] This court has noted that the cause necessary to terminate the exclusivity period during the initial 120-day statutory period requires at least a showing of gross mismanagement of the debtor's operations or feuding between the debtor's principals, neither of which has been alleged by the Committee or is present in these chapter 11 cases. *In re Texaco Inc.*, 76 B.R. 322, 327 (Bankr. S.D.N.Y. 1987) (denying a motion to terminate the debtor' exclusivity period filed within the first 90 days of the case).

The Committee did not cite to any reported decisions in which a bankruptcy court terminated a debtor's exclusivity period prior to the expiration of the initial 120-day statutory period. Nor have the Debtors found any cases in which a bankruptcy court considered in its determination of such motions (i) prepetition conduct akin to the breach of fiduciary duties alleged by the Committee; (ii) a conjecture that a plan yet to be filed would be resoundingly rejected by a debtor's creditors; or (iii) the expedition of a case in which the debtor has already agreed to file its plan on or before 90 days after commencement.

The very few decisions dealing with a motion pursuant to section 1121 relied upon by the Committee all dealt with exclusivity extensions beyond the initial 120-day period and are readily distinguishable by the facts of this case. *See, e.g., In re Public Serv. Co. of New Hampshire*, 88 B.R. 521, 537 (Bankr. D.N.H. 1988) (denying objections to debtor's motion to extend the exclusivity period in what was then the largest chapter 11 case to date involving the complex arrangement of a privately held utility company); *In re Public Serv. Co. of New*

---

[1] These post-120-day factors include: (i) the size and complexity of the case; (ii) the necessity for sufficient time to permit the debtor to negotiate a plan of reorganization and prepare adequate information; (iii) the existence of good faith progress toward reorganization; (iv) the fact that the debtor is paying its bills as they become due; (v) whether the debtor has demonstrated reasonable prospects for filing a viable plan; (vi) whether the debtor has made progress in negotiations with its creditors; (vii) the amount of time which has elapsed in the case; (viii) whether the debtor is seeking an extension of exclusivity in order to pressure creditors to submit to the debtor's reorganization demands; and (ix) whether an unresolved contingency exists. *Adelphia*, 352 B.R. at 587.

*Hampshire*, 99 B.R. 155, 173 (Bankr. D.N.H. 1989) (terminating exclusivity 15 months into case after a several month stalemate); *In re Dow Corning Corp.*, 208 B.R. 661, 670 (Bankr. E.D. Mich. 1997) (two years into the case, extending the exclusivity period in a complex mass tort case involving numerous unresolved contingencies).

In sum, the Motion is, on its face, singularly devoid of merit. The Committee has failed to satisfy its burden of showing that there is even a scintilla of evidence that could constitute the extraordinary cause necessary to terminate the Debtors' current exclusivity period.

**B.    The Committee's "Cause" In Support Of Terminating Exclusivity Are Legally And Factually Unsupportable**

The Committee argues that "cause" exists to terminate the Debtors' exclusivity period less than two months into these chapter 11 cases because (i) prior to the Commencement Date, management purportedly breached it fiduciary duties to creditors, *see* Motion at ¶¶ 2.A and 27-27; (ii) a plan that has yet to be filed "will be rejected by creditors" and "cannot be confirmed by this Court." *see* Motion at ¶ 35; and (iii) terminating exclusivity at this time would expedite these chapter 11 cases. *See* Motion at ¶¶ 2.B and 32-35. These assertions are false and, even if relevant, which as demonstrated herein they are not, are insufficient bases for terminating exclusivity.

**1.    The Debtors Did Not Breach Any Fiduciary Duties**

*(i)    The Committee Misstates the Law of Fiduciary Duties*

The Committee's assertion that "the Debtors owe fiduciary duties to their creditors" is wrong. Motion at ¶ 26. The Debtors are Delaware corporations. *See* Petition at pg. 9 [Docket No. 1]; Petition at pg. 9, (Case No. 08-11154) [Docket No. 1]. Accordingly, Delaware law defines the rights and duties of the Debtors' management. *In re Hausman v. Buckley*, 299 F.2d 696, 702 (2d Cir. 1962); *In re BP p.l.c. Derivative Litigation*, 507 F. Supp. 2d 302

(S.D.N.Y. 2007). There is no dispute that officers and directors of a solvent corporation owe their fiduciary duties to shareholders and not to creditors. *Malone v. Brincat*, 722 A.2d 5, 10 (Del. 1998) (citing *Guth v. Loft*, 5 A.2d 503, 510 (Del. 1939)).

The Committee contends, however, that prior to the Commencement Date the Debtors were in the "zone of insolvency" and, therefore, owed creditors fiduciary duties. Motion at ¶¶ 2.A and 27. Assuming, *arguendo*, without conceding, that during the relevant prepetition period the Debtors were in the "zone of insolvency," the Committee's assertions regarding a company's fiduciary duties are wrong under Delaware law. In the controlling dispositive decision on this issue, the Supreme Court of Delaware, in *North American Catholic Educational Programming Foundation, Inc. v. Gheewalla*, held that directors and officers of a corporation that is in the "zone of insolvency" owe <u>no</u> fiduciary duties to the company's creditors. 930 A.2d 92, 100 (Del. 2007).[2] The Supreme Court of Delaware reasoned that duties to creditors would conflict with the duties owed to the company and its shareholders. *Id.* at 99. Instead, creditors have available to them "the protections afforded by their negotiated agreements, their security instruments, the implied covenant of good faith and fair dealing, fraudulent conveyance law, and bankruptcy law [each of which] render the imposition of an additional, unique layer of protection through direct claims for breach of fiduciary duty unnecessary." *Id.* at 100.

Even where the corporation is <u>insolvent</u>, officers and directors owe no direct fiduciary duties to the company's creditors. *Id.* at 103. Direct duties conflict with existing duties owed to the corporation "to maximize value of the insolvent corporation for the benefit of all those having an interest in it." *Id.* Further, the Supreme Court of Delaware found that directors

---

[2] It is inconceivable that the Committee was unaware of *Ghewalla*. This key decision is cited in the Debtors' letter to the Committee, which is Exhibit C of the Walsh Affidavit, and formed the basis for the Debtors' assertion that creditors do not have direct causes of action against management for breach of fiduciary. *See* Motion at ¶ 20.

and officers must be free "to engage in vigorous, good faith negotiations with individual creditors for the benefit of the corporation." *Id.*

Directors and officers always owe duties to the corporation to exercise their business judgment in the corporation's best interest. *Id.* at 100, 103. Insolvency merely provides standing to a creditor, outside the chapter 11 context, to bring an action on behalf of the company but does nothing to affect management's duties. *Id.* at 103; *see Schoon v. Smith*, 2008 WL 375826, *6 n.46 (Del. 2008) (noting that creditors merely stand in the shoes of shareholders when a company is insolvent).[3]

> (ii) *The Committee Fails to Identify Any Conduct That Could Be Construed As A Breach Of Fiduciary Duty*

Directors and officers are insulated from liability when exercising their business judgment. *Trenwick Am. Litig. Trust v. Ernst & Young, L.L.P.*, 906 A.2d 168, 205 (Del. Ch. 2006); *Prod. Res. Group L.L.C. v. NCT Group, Inc.*, 863 A.2d 772, 791 (Del. Ch. 2004); *Angelo, Gordon & Co. v. Allied Riser Comm. Corp.*, 805 A.2d 221, 229 (Del. Ch. 2002). The business judgment rule "is a presumption that in making a business decision the directors of a corporation acted on an informed basis, in good faith and in the honest belief that the action taken was in the best interests of the company." *In re Integrated Resources, Inc.*, 147 B.R. 650, 656 (S.D.N.Y. 1992) (internal quotations omitted) (citing *Smith v. Van Gorkom*, 488 A.2d 858, 872 (Del. 1985);

---

[3] It is the members of the Committee who appear to be ignoring their own fiduciary duties in these chapter 11 cases. Members of an official committee of unsecured creditors owe their duties to <u>all</u> unsecured creditors. *The Bohack Corp. v. Gulf & Western Indus., Inc. (In re Bohack Corp.)*, 607 F.2d 258, 262 n.4 (2d Cir. 1979) (noting that a creditors' committee main function is to advise the creditors of their rights and proper course of action in the case); *see also Rickel & Assocs. v. Smith (In re Rickel & Assocs.)*, 272 B.R. 74, 99 (Bankr. S.D.N.Y. 2002) (analyzing claims of breach of fiduciary duty against an individual member of a creditors' committee). Nevertheless, the Committee explicitly relies on the <u>Ad Hoc Committee's</u> dissatisfaction with the Debtors' prepetition proposals in its conclusion that Debtors and <u>all</u> creditors are at an impasse and that <u>all</u> creditors are best served by a termination of exclusivity. *In re Public Serv. Co. of New Hampshire*, 99 B.R. 155, 173 (Bankr. D.N.H. 1989). By advancing the parochial interests and agenda of the members of the Committee who were former members of the Ad Hoc Committee, and catering to only a subset of Lexington Precision's creditors, the Committee risks breaching its own duties to the other members of the unsecured creditor constituency. *In re Johns-Manville Corp.*, 26 B.R. 919, 925 (Bankr. S.D.N.Y. 1983).

*Aronson v. Lewis*, 473 A.2d 805, 812 (Del. 1984)). The burden is on the party challenging management's actions to demonstrate bad faith, self-in-interest, or gross negligence. *Id.* at 657.

The Committee's self-serving statements that management "does not seek to maximize creditor recoveries," and that its course of action is "geared solely to maintaining their ownership and control of the Debtors," fail to support a breach of fiduciary duty claim. Motion at ¶ 31. Mere allegations of a breach of fiduciary duty are insufficient to demonstrate a breach. *In re BHC Communications Shareholder Litigation, Inc.*, 789 A.2d 1, 4 (Del. Ch. 2001) (recognizing the "bedrock principle of Delaware corporate law that, where a claim for breach of fiduciary duty fails to contain allegations of fact that, if true, would rebut the presumption of the business judgment rule, that claim should ordinarily be dismissed). To demonstrate a breach of fiduciary duty, the Committee must, at a minimum establish by a preponderance of evidence that (i) a fiduciary duty exists; and (ii) that a fiduciary breached that duty. *Heller v. Kiernan*, 2002 WL 385545, *3 (Del. Ch. Feb. 27, 2002). The Committee has failed to do so. Instead, the Committee cites *United Savings Assoc. of Texas v. Timbers of Inwood Forest Assocs.* (*In re Timbers of Inwood Forest Assoc.*), 808 F.2d 363, 372 (5th Cir. 1987), *aff'd* 484 U.S. 365 (1988) for the proposition that section 1121 was designed to limit the delay that makes creditors hostages of debtors. Motion at ¶ 25. The decision in *Timbers*, however, had nothing to do with exclusivity. Rather, the issue before the court was whether unsecured creditors are entitled to adequate protection for compensation of lost opportunity costs.

Even if Debtors' management owed fiduciary duties to creditors, a point which the Debtors deny, neither the Motion nor the Walsh Affidavit identify any conduct amounting to a breach of such alleged duties. As set forth in the Lubin Declaration, management undertook the difficult task of restructuring the entire capital structure of the company, searched for

refinancing, and conducted a sale process all while running the business with the backdrop of a declining automotive industry. Management, with the assistance of its advisors, carefully analyzed each refinance proposal and each sale offer before making any decisions regarding the merits of each. Moreover, management carefully analyzed each restructuring proposal made to the secured lenders and the Noteholders in a effort to consensually restructure Lexington's debt obligations and believed, in good faith, that the proposals were fair, would result in full payment of the secured debt and Notes, and were in the best interests of Lexington. In short, management appropriately exercised its business judgment. *See generally*, Lubin Declaration.

The Committee has established nothing more than the Ad Hoc Committee's dissatisfaction with management's prepetition restructuring proposals. This dissatisfaction, however, does not amount to a breach of fiduciary duty (if such duty were to exist), and falls far short from "cause" for terminating exclusivity. *In re Geriatrics Nursing Home, Inc.*, 187 B.R. 128, 134 (D.N.J. 1995). In *Geriatrics Nursing*, the district court reversed the bankruptcy court's termination of exclusivity because "cause" was not shown simply because creditors are dissatisfied with a proposed plan of reorganization. *Id.* The debtor proposed a plan during the initial 120-day exclusivity period that paid all claims in full but over time. *Id.* at 130 and 133. Creditors moved to terminate exclusivity on the basis that their plans were more favorable. *Id.* at 133. The bankruptcy court terminated exclusivity reasoning that the filing of competing plans would ultimately produce the best plan for all parties in interest. *Id.* On appeal, the district court reversed holding that during the initial 120-day exclusivity period, a bankruptcy court may not terminate exclusivity simply because a creditor is unhappy with the proposed plan and alleges it can propose a better plan. *Id.* at 134. During the initial 120 days, facilitation of discussion

between a debtor and its creditors is important, but does not override a debtor's statutory right to propose a plan during this period. *Id.*

        2.      The Committee Cannot Demonstrate That A Plan Yet To Filed Will Be Rejected By Creditors, Nor Would Such Justify Terminating Exclusivity

The Committee asserts, without any supporting allegations, that the Debtors' proposed plan "will be rejected by creditors" and "cannot be confirmed by this Court." Motion at ¶ 35. It is questionable whether such conjecture even gives rise to a justiciable controversy. *Flast v. Cohen*, 393 U.S. 83, 94-95 (1968). In any event, given these allegations, the Committee's Motion should more appropriately be styled as a preemptive objection to confirmation. Just as bankruptcy courts do not entertain objections to a disclosure statement that are substantively objections to a plan, *In re CRIIMI MAE, Inc.*, 251 B.R. 796, 799 (Bankr. D. Md. 2000) ("objections to confirmation of the plan, as opposed to the adequacy of disclosure of information in the Disclosure Statement, would not be heard and determined at the [disclosure statement] [h]earing"), this Court should not consider the Committee's premature objections to the Debtors' plan that has yet to be proposed. As the Court observed in *Lehigh Valley* when creditors in that case made these same assertions, when creditors "control the vote of the class of unsecured claims, the Debtor may be able to propose a plan that garners the support of another impaired class and utilize the cramdown provisions of § 1129(b) to secure confirmation." *Lehigh Valley*, 2000 WL 290187 at *5.

The Debtors have the right to respond to challenges to the confirmation of their plan after it is filed and in the context of a confirmation hearing when the Debtors have submitted to the Court the facts and circumstances supporting confirmation of the plan. Until then, the Committee's objections to the plan should be raised in the confirmation context, not in a motion to terminate exclusivity 50 days into the case and even before the plan has been filed.

The Committee further asserts that "Management has made it very clear to creditors that they are attempting to use Chapter 11 to force upon their creditors a plan that does not repay creditors." Motion at ¶ 33. To support these claims, the Committee cites *In re Pied Piper Casuals, Inc.*, 40 B.R. 723, 727 (Bankr. S.D.N.Y. 1984)[4] for the proposition that it is the job of a debtor to get creditors paid. That statement was made, however, in the context of converting a case from chapter 11 to 7 because an administratively insolvent debtor was not able to propose a plan. As demonstrated in the Lubin Declaration, the Debtors made numerous proposals to the Ad Hoc Committee prior to the Commencement Date that would have satisfied their claims in full. Lubin Declaration at ¶¶ 24-28. Similarly, the Debtors intend to propose a plan that will provide consideration to creditors that satisfies their claims in full. Just as the Committee's Motion is a premature, disguised plan objection, so is the Committee's claim that creditors will not be paid, assertions that were made a mere two months into these cases and prior to their review of the plan.

3.     The Committee Cannot Demonstrate That
<u>Terminating Exclusivity Would Expedite These Chapter 11 Cases</u>

The Committee asserts that terminating exclusivity will "expedite" these chapter 11 cases. Motion at ¶¶ 32-35. Terminating exclusivity for the purpose of expediting or facilitating the reorganization must be supported by evidence, not "expressions of counsel." *Official Unsecured Creditors' Committee v. Eagle Picher Indus., Inc. (In re Eagle Picher Indus., Inc.)*, 176 B.R. 143, 147 (Bankr. S.D. Ohio 1994). In *Eagle Picher*, the court held that

---

[4] Quoting *Grayson-Robinson Stores, Inc. v. Security and Exchange Commission*, 320 F.2d 940 (2d Cir. 1963), in which the Court of Appeals for the Second Circuit reversed a lower court's decision to convert a case under Chapter XI of the former Bankruptcy Act of 1898, as amended, in which creditors would recover value, to a Chapter X case, where creditors would recover no value. *Grayson-Robinson Stores, Inc. v. Security and Exchange Commission*, 320 F.2d 940 (2d Cir. 1963). In considering the underlying policies, the Second Circuit noted that the "[t]he prime objective of the Bankruptcy Act remains simple one of getting creditors paid. . . . In such circumstances, a court can hardly ignore a substantially uncontradicted factual showing that Chapter XI affords some hope of paying off creditors where as Chapter X affords none." *Id.* at 949-50.

termination of exclusivity would most likely have the opposite effect of facilitating the reorganization and "undermine the prospects for a prompt resolution" of these chapter 11 cases. *Id.* at 148; *Texaco*, 81 B.R. at 811. Here, the Committee's conclusory statements fail to articulate a reason or provide any evidentiary support to demonstrate that these cases will be expedited by termination of exclusivity. Motion at ¶ 35.

There is no basis for the Committee to support its assertion that terminating exclusivity will expedite these cases because it has reached an impasse with the Debtors. The alleged "impasse" is entirely the Committee's creation as it has not yet requested a meeting with the Debtors to discuss anything regarding these chapter 11 cases, including the terms of the plan. As is evidenced by the Committee's opposition to a routine administrative motion extending the time to file schedules, *see* [Docket No. 128], and this Motion, it appears that the Committee is more interested in pursuing its own agenda rather than the Debtors' reorganization. It is the Committee's conduct, not the Debtors', that is increasing the cost of administering these cases and potentially delaying their resolution.

Moreover, these chapter 11 cases are already on a fast track, and terminating exclusivity would not expedite them. The Debtors' use of cash collateral during these chapter 11 cases is conditioned upon, among other things, (i) the filing of a plan of reorganization on or before June 30, 2008; (ii) the filing of a disclosure statement on or before July 30, 2008; and (iii) emerging from chapter 11 on or before February 25, 2009. See Objection at ¶ 10; DIP Order at ¶ 11 [Docket No. 61].

If termination of exclusivity could be achieved through the recalcitrance of creditors, it "would permit litigious creditors to manufacture 'cause' shown to shorten the exclusivity period through their own unilateral actions." *In re Grand Traverse Dev. Co. Ltd.*

*P'ship*, 147 B.R. 418, 421 (Bankr. W.D. Mich. 1992) (denying a creditor's motion to terminate at the conclusion of the initial 120-day exclusivity period because cause is not shown when such creditor contests most if not all of debtor's actions and a successful reorganization by the debtor is still possible). Indeed, creditors' refusal to negotiate with a debtor supports continuation of the exclusive periods rather than termination. *In re Lehigh Valley Professional Sports Club, Inc.*, 2000 WL 290187, *4 (Bankr. E.D. Pa. Mar. 14, 2000); *In re Gibson & Cushman Dredging Corp.*, 101 B.R. 405, 410 (E.D.N.Y. 1989) (extension of exclusivity granted due to recalcitrance of creditors to negotiate on an equitable plan).

## IV.

## **CONCLUSION**

The Committee's reliance on boilerplate propositions cited in the Motion is unpersuasive without showing how the facts in those cases match those facts in these cases. The Motion is fundamentally flawed and is devoid of any legal or factual support. Moreover, termination of the exclusive period at this early juncture would not only be unprecedented but would also be highly detrimental to the Debtors' reorganization efforts, and would almost certainly thwart the Debtors' ability to maintain existing customers, generate new business, and address the day to day operations of their businesses. Granting the Motion would only serve to drive a wedge between the Committee and Debtors and divest the Debtors of their statutory

entitlement to propose and negotiate a plan for the benefit of all parties in interest. For reasons stated herein and the Objection, the Debtors respectfully request the Court to deny the Motion.

Dated: June 4, 2008
      New York, New York

                                 /s/ Richard P. Krasnow
Richard P. Krasnow
Adam P. Strochak
Christopher J. Marcus
WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007

Attorneys for Debtors and
Debtors in Possession