ANDREWS KURTH LLP
Paul N. Silverstein (PS 5098)
Jonathan I. Levine (JL 9674)
450 Lexington Avenue, 15th Floor
New York, New York 10017
Telephone: (212) 850-2800
Facsimile: (212) 850-2929

Counsel to the Official Committee
of Unsecured Creditors

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------x

| | |
|---|---|
| In re: | : Chapter 11 |
| | : |
| LEXINGTON PRECISION CORP, <u>et al.</u>, | : Case No. 08-11153 (MG) |
| | : |
| | : |
| Debtors. | : |

-----------------------------------------------------------------x

**REPLY MEMORANDUM IN SUPPORT OF COMMITTEE'S
MOTION FOR ORDER TERMINATING DEBTORS EXCLUSIVITY
UNDER SECTION 1121(d) OF THE BANKRUPTCY CODE**

The Official Committee of Unsecured Creditors (the "Committee") of Lexington Precision Corporation, <u>et</u>. <u>al</u>. (collectively, the "Debtors") submits this reply memorandum (the "Reply") in further support of its motion for order terminating Debtors' exclusivity under Section 1121(d) of the Bankruptcy Code (the "Motion") and in response to the Debtors' Objection thereto, dated June 4, 2008 (the "Objection").

**INTRODUCTION**

The Debtors' Objection mischaracterizes the Debtors' pre and post-petition conduct and applicable law governing the Motion. As set forth below, and in the Committee's submissions in support of the Motion: (A) "Cause" exists to terminate exclusivity; (B) the Debtors have shown no good faith progress towards reorganization and have not used exclusivity to negotiate a

1

consensual plan with their creditors and (C) the Debtors reliance on *Gheewalla* is misplaced as the Debtors owe and, at all relevant times, owed fiduciary duties to their creditors.

For the reasons set forth herein and in the Committee's prior submissions, the Motion should be granted in all respects.

## DISCUSSION

A. **"Cause" Exists to Terminate Exclusivity**

The Debtors concede, as they must, that a fundamental purpose for providing a debtor with an exclusive period under Section 1121 of the Code is to enable a debtor to "**negotiate**" in good faith a plan with creditors. (Objection, at pp. 1-2). Citing *Lehigh Valley*,[1] the Debtors contend that terminating exclusivity would impair the Debtors' ability to negotiate a Plan with creditors (Debtors' Memorandum In Support of Objection (the "Debtors' Memo), at p. 2). The Debtors acknowledge, as they must, that "[d]uring the initial [period of exclusivity] facilitation of discussion between a debtor and its creditors is important." (Debtors' Memo, at p. 9).

Although the Committee has always been prepared to meet, negotiate and discuss numerous matters with the Debtors, the Debtors have not once reached out to the Committee nor have they engaged in an open flow of information and data with the Committee or its advisors. Significantly, the Debtors have never sought to meet or confer with the Committee on any matter relating to the negotiation and formulation of a Chapter 11 plan. (Affidavit of Robert J. Welch sworn to June 10, 2008 (the "Welch Affidavit"), at ¶ 7). Contrary to the Debtors' suggestions to the contrary, there exists only one class of unsecured creditors, excluding insiders, at Lexington Precision Corporation: the 12% Notes and the various providers of goods and services, all of

---

[1] In re *Lehigh Valley Professional Sports Club, Inc.*, 2000 WL 293187 (Bankr. E.D. Pa. 3/14/2000).

2

which are *pari passu* or of equal rank and must be placed in a single class.[2] The 12% Notes comprise the vast bulk of such class, by far.

The Committee is the statutory representative of all of the Debtors' unsecured creditors. The Debtors' utter lack of communication with the Committee with respect to a proposed plan, or otherwise, constitutes "cause" to terminate exclusivity under Section 1121(d) of the Bankruptcy Code. How can there be a continuation of exclusivity, which is predicated on fostering the negotiation of a consensual plan, when no such negotiations have been initiated by the Debtors in these cases? The Debtors merely state that, pursuant to the Cash Collateral Order with their pre-petition secured lenders, they will satisfy the requirements of such Order by filing a plan by June 30, 2008 and a disclosure statement by July 30, 2008. Yet the Debtors' Management is pursuing its own plan agenda as controlling stockholders who collectively own over 70% of the Debtors' common stock. There is no authority for the proposition that a Debtors' controlling stockholders can use exclusivity under Section 1121 to benefit themselves at the expense of creditors. This sort of conduct is precisely what Congress sought to stop when it designed Section 1121 "to limit the delay that makes creditors the hostages of Chapter 11 debtors." *Lehigh Valley*, 2000 WL 293187 at *3.

**B.    The Debtors Have Shown
No Good Faith Progress
Towards Reorganization
and Have Not Used Exclusivity to
Attempt to Negotiate a
Consensual Plan**

Among the factors often cited by courts in support of maintaining a debtor's exclusivity under Section 1121 are the "existence of a good faith program toward reorganization," "whether the debtor has demonstrated reasonable prospects for filing a viable plan," and "whether the

---

[2] See Objection at, ¶21. Debtor, Lexington Precision Corporation has only one class of unsecured creditors, excluding insiders. Lexington Rubber Group, Inc. however, may have unsecured creditors that are structurally senior to unsecured creditors of Debtor, Lexington Precision Corporation. Creditors of Lexington Rubber Group, however, would, as subsidiary creditors, be unimpaired and entitled to receive payment in full, in cash with post-petition interest.

3

debtor has made progress in negotiations with its creditors." *In re Adelphia Communications Corp.,* 352 B.R. 578, 587 (Bankr. S.D.N.Y 2006). The Debtors have failed on all counts.

Despite the Debtors' protestation to the contrary, the Debtors' financial reorganization has been underway for eighteen (18) months. The Debtors concede that beginning in 2006 Lexington's business was adversely affected by "problems in the automotive industry." Lexington's customers, which are typically tier-one automotive parts manufacturers, have experienced declining sales, increased pricing pressure, and substantial commodity cost increases (e.g. steel, natural gas, oil and aluminum). (See Lubin Declaration at ¶¶ 8-11). This Court can and should take judicial notice of the fact that since 2006: (i) problems in the automotive industry and the costs of commodities (such as steel, natural gas, oil and aluminum) have become worse; (ii) the credit markets have substantially tightened; and (iii) many suggest that the United States economy is now in, or is on the verge of, a recession.

The Lubin Declaration purports to describe the pre-petition negotiations between Management and the holders of the Debtors 12% Notes. While conceding that Management agreed to "sell all or substantially all of its assets or pursue a refinancing that would repay in full the [12%] Notes" as an inducement for the holders of 12% Notes to forebear (Lubin Declaration at ¶14), the Lubin Declaration then goes on mischaracterize the substance of the "negotiations" prior to the Petition Date. *See generally* Affidavit of Nicholas W. Walsh, sworn to on June 10, 2008 (the "Walsh Affidavit") and the Welch Affidavit.

Although neither the holders of 12% Notes nor the Committee has been provided with copies of any "proposals" or "initial indications of interest" resulting from the Debtors' purported sale process conducted by W.Y. Campbell, the Debtors' financial advisor (except for a cursory summary thereof), all of such "initial indications of interest" and "proposals" were subject to many conditions, including significant due diligence and other conditions typically found in "initial indications of interest." *See* Walsh Affidavit at ¶7. In other words, the Debtors

4

never received any acquisition proposals that could form the basis for the valuation of all or any portion of the Debtors' businesses. Similarly, Mr. Lubin's suggestion (Lubin Declaration at ¶21) that it received a financing "proposal" - - as opposed to a non-binding letter of intent with myriad conditions and contingencies, including a due diligence out - - is belied by the facts. See Walsh Affidavit, at ¶9.

In fact, as set forth in the Walsh Affidavit and the Welch Affidavit, the so called "restructuring proposals" made by the Debtors to the holders of 12% Notes amounted to nothing more than efforts by Management to retain control over the Debtors. None of such proposals would have resulted in the payment in full of the 12% Notes.

**C.  The Debtors Reliance On *Gheewalla* Is Misplaced; the Debtors Owe, And At All Relevant Times Owed, Fiduciary Duties To Their Creditors**

The Debtors erroneously place great weight on *North American Catholic Educational Programming Foundation, Inc. v. Gheewalla*, 930 A. 2d 92, 100 (Del. 2007), for the proposition that, outside of bankruptcy, a Delaware corporation's officers and directors owe no fiduciary duty to the company's creditors when the company is "in the zone of insolvency." (Debtors' Memo, at p. 5).

*Gheewalla,* however, holds that directors and officers of a Delaware corporation do owe fiduciary duties to creditors when the corporation is insolvent. *Gheewalla*, 930 A.2d 92, 103. Such duties flow derivatively and not <u>directly</u>. *Id.* Hence, the corporation, and not the creditor directly, owns any such claim against a company's officer's and directors. *See Schoon v. Smith*, No. 554, 2008 WL 375826, at *6 n. 46 (Del. Feb. 12, 2008) (explaining *Gheewalla*).

At all relevant times, the Debtors have been insolvent under Delaware law. Under Delaware law, there are two tests, for determining whether a corporation is insolvent: "(1) a deficiency of assets below liabilities with no reasonable prospect that the business can be

5

continued in the face thereof," or (2) "an inability to meet maturing obligations as they fall due in the ordinary course of business." *Production Resources Grp. LLC v. NCT Grp., Inc.*, 863 A.2d 772, 782 (Del. Ch. 2004); *Siple v. S&K Plumbing & Heating, Inc.*, No. 6731, 1982 WL 8789, at *2 (Del. Ch. Apr. 13, 1982).[3]  In a federal case applying Delaware law, *LaSalle Nat'l Bank v. Perelman*, 82 F. Supp.2d 279, 290 (D. Del. 2000), the District Court for the District of Delaware cited these two tests as determining the existence of insolvency for the purpose of finding whether fiduciary duties were owed to a creditor.  In *La Salle,* the Court held that the debtor was not insolvent because it "was not unable to pay [its] debts as they became due."  In the present case, the Debtors concede that they are, and were, unable to pay their debts when due.  The Debtors defaulted on the 12% Notes in 2006 because of their illiquid financial condition and Debtors concede that they are unable to repay their unsecured creditors.  Hence, under Delaware state law, as set forth in *Gheewalla,* the Debtors owe, and at all relevant times owed, fiduciary duties to the holders of 12% Notes (among others).

Moreover, under the Bankruptcy Code, a Chapter 11 debtor in possession "must act as a fiduciary to its creditors." *In re Ionosphere Clubs, Inc.*, 113 B.R. 164, 170 (Bankr. S.D.N.Y. 1990).  "As fiduciaries, the debtor in possession and its managers are obligated to treat all parties to the case fairly [and] maximize the value of the estate." *In re Centennial Textiles, Inc.*, 227 B.R. 606, 612 (Bankr. S.D.N.Y. 1998).  Moreover, a debtor in possession must "not act in its own interest but must act in the best interest of the creditors of the estate." *In re Bowman*, 181 B.R. 836, 843 (Bankr. D. Md. 1995) (citations omitted).  The fiduciary duties of debtor in possession "include a duty of care. . .a duty of loyalty, and a duty of impartiality," and the duty of loyalty includes the duty "to avoid self-dealing." *Id.* (citations omitted).  *In Bowman*, the

---

[3]  These cases deal with allegations of insolvency for the purpose of appointing a receiver.  *Ghewalla* deals with a breach of fiduciary duty claim brought by the creditor of a corporation in the "zone of insolvency," but also cites these two cases for a definition of "insolvency."  *Gheewalla* defers the issue as to how the definition of "zone of insolvency" may differ from actual "insolvency."  *See Gheewalla* at 98.

NYC:177797.2

court ruled that the debtor-in-possession would be unable to fulfill its fiduciary obligations to creditors and had to be removed because its own interests were in direct conflict with those of the creditors. *Id.* at 845. Here, Management, acting in its capacity as controlling stockholder, is fighting to maintain its 70% plus equity stake in the Debtors. In so doing, Management has not, and cannot, fulfill its fiduciary duties to creditors. Therefore, the Debtors' exclusivity should be terminated.

## CONCLUSION

Typically, a debtor's initial 120 day exclusive period is not terminated because a debtor is generally accorded the right to negotiate a Chapter 11 plan with its creditors. The negotiation of a consensual plan is central to the Chapter 11 process. Where, as here, however, the Debtors have no intention of negotiating a consensual Chapter 11 plan with creditors and are merely attempting to use exclusivity as an offensive sword against creditors, termination of exclusivity is appropriate and necessary. As set forth in the Walsh Affidavit and the Welch Affidavit, the Debtors are unwilling to engage with the Committee in good faith negotiations regarding a chapter 11 plan. As evidenced by Management's pre-petition conduct described in the Walsh Affidavit and the Welch Affidavit, it is no secret that, in order to maintain control of the Debtors, Management has proposed, and will continue to propose, a plan of reorganization which is patently unreasonable and not based upon market realities - - *i.e*, a plan that will not be accepted by the Debtors' single unsecured creditor class. Therefore, based upon such facts and the relevant case law described above and in the Committee's other submissions, the Debtors' exclusive period should be terminated pursuant to section 1121(d) of the Bankruptcy Code.

NYC:177797.2

Dated: New York, New York
      June 10, 2008

                              ANDREWS KURTH LLP

                        By: /s/ Paul N. Silverstein
                            Paul N. Silverstein (PS 5098)
                            Jonathan I. Levine (JL 9674)
                            450 Lexington Avenue, 15th Floor
                            New York, New York 10017
                            Telephone: (212) 850-2800
                            Facsimile: (212) 850-2929

                            Counsel to the Official Committee of
                            Unsecured Creditors