# EXHIBIT A

3/27/08
**DRAFT**

**CONFIDENTIAL**
**FOR SETTLEMENT DISCUSSION PURPOSES ONLY**
This Document is submitted pursuant to the confidentiality
agreements between Lexington Precision Corporation and the
Members of the Ad Hoc Committee of Noteholders and its contents
are protected by Rule 408 of the Federal Rules of Evidence.

## Terms of Proposed Pre-Packaged Chapter 11 Plan

### 1. Conversion of Debt.

All Senior Subordinated Notes and Junior Subordinated Notes, including accrued and
unpaid interest thereon, will be converted into newly issued shares of Lexington Precision
Corporation ('LPC") common stock at a price of $_____ per share (the "Conversion
Price"), which represents an implied enterprise value of $__ million.

After giving effect to this conversion, the ownership of LPC would be divided in the
manner set forth in the table below (assuming the Effective Date of the Chapter 11 Plan
is _____):

| Holder | Shares Held (000) | Percentage Ownership |
|---|---|---|
| Lubin/Delano | | |
| Other Noteholders | | |
| Other Stockholders | | |
| Total | | 100% |

### 2. Corporate Governance.

Jefferies & Company, Inc. ("Jefferies"), Warren Delano ("Delano"), and Michael A. Lubin
("Lubin") will enter into an agreement (the "Shareholder Agreement") governing the voting
of their shares and certain other matters after the Effective Date. The Shareholder
Agreement will provide, among other things, that:

(a) For a period of two years following the Effective Date;

(i) The parties will vote their shares for a Board of Directors
comprising four members, of which two will be Delano and
Lubin (or their designees) and two will be designees of
Jefferies;

(ii) Any extraordinary corporate transaction (such as a merger,
acquisition, sale of all or substantially all of the assets of
LPC, or change in Board size) would require the vote of a
majority of the Board; and

(iii) Delano and Lubin would continue as co-chief executive
officers of LPC under the same arrangements as in effect
today.

(b) On the eighteen-month anniversary of the Effective Date, Jefferies would have
the option to terminate the Shareholder Agreement which termination would be
effective on the Second Anniversary of the Effective Date, in which case:

(i)   Delano and Lubin would have a one-time option to purchase the shares owned by Jefferies at a cash price equal to 140% of the Conversion Price at any time through the second anniversary of the Effective Date, provided that Delano and Lubin also offer to purchase the shares held by the other members of the Ad Hoc Committee at the same price.

(ii)  Following the second anniversary of the Effective Date, unless Delano and Lubin have purchased the Jefferies shares, the Shareholder Agreement would terminate, except that Jefferies would agree to continue to vote its shares for the election of Delano and Lubin (or their designees) as Directors.

(c) If Jefferies does not elect to terminate the Shareholder Agreement effective on the second anniversary of the Effective Date, the Shareholder Agreement would be automatically extended for two years, after which the Shareholder Agreement would expire, absent further agreement of the parties.

(d) At all times following the Effective Date, the parties would agree that none of them would sell their shares of LPC common stock without requiring the purchaser to offer to purchase the shares held by the other parties at the same price and on the same terms and conditions.