Hearing Date: July 14, 2008 at 2:00 p.m. (prevailing Eastern Time)
Objection Deadline: July 7, 2008 (prevailing Eastern Time)

WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007
Richard P. Krasnow, Esq.
Christopher J. Marcus, Esq.

Attorneys for Debtors
and Debtors in Possession

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

----------------------------------------------------------------x
                                        :
In re                                   :    Chapter 11 Case No.
                                        :
**LEXINGTON PRECISION CORP., et al.,**  :    08-11153 (MG)
                                        :
        Debtors.                        :    (Jointly Administered)
                                        :
----------------------------------------------------------------x

**NOTICE OF DEBTORS' MOTION PURSUANT TO SECTIONS**
**105(a) AND 363(b) OF THE BANKRUPTCY CODE AND BANKRUPTCY**
**RULE 6004 FOR AN ORDER AUTHORIZING THE DEBTORS TO EMPLOY**
**DEWOLFF, BOBERG & ASSOCIATES, INC. TO PROVIDE CONSULTING SERVICES**

PLEASE TAKE NOTICE THAT Lexington Precision Corporation and its subsidiary, Lexington Rubber Group, Inc. (together, the "Debtors"), in the above-captioned chapter 11 cases filed in the United States Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court") filed a motion, dated June 20, 2008 (the "Motion"), for entry of an order, pursuant to sections 105(a) and 363(b) of the title 11 of the United States Code (the "Bankruptcy Code") and Rule 6004 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), authorizing the Debtors to employ, among other things, DeWolff, Boberg & Associates, Inc. to provide certain consulting services relating to productivity improvement, among other things.

NY2:\1884865\06\14#DD06!.DOC\26690.0008

PLEASE TAKE FURTHER NOTICE that objections or responses, if any, to the Motion must be in writing, must conform to the Bankruptcy Rules and the Local Rules of the Bankruptcy Court for the Southern District of New York, must set forth the identity of the objecting party, the basis for the objection and the specific grounds therefor, and must be filed no later than **July 7, 2008 at 2:00 p.m. (Prevailing Eastern Time)** with the Bankruptcy Court electronically in accordance with General Order M-242 (General Order M-242 and the User's Manual for the Electronic Case Filing System may be found at www.nysb.uscourts.gov, the official website for the Bankruptcy Court) by registered users of the Bankruptcy Court's case filing system, and by all other parties in interest on a 3.5 inch disk, preferably in Portable Document Format (PDF), WordPerfect, or any other Windows-based word processing format (with a hard copy delivered directly to Chambers), in accordance with General Order M-182, and be served upon: (a) the Debtors, Lexington Precision Corp., 800 Third Ave. 15th Floor, New York, New York 10023 (Attn: Michael A. Lubin), (b) the attorneys for the Debtors, Weil, Gotshal & Manges LLP, 767 Fifth Avenue, New York, New York 10153 (Attn: Christopher Marcus and John W. Lucas); (c) the Office of the United States Trustee for the Southern District of New York, 33 Whitehall Street, 21st Floor, New York, New York 10004, (Attn: Paul Schwartzberg, Esq.); (d) the attorneys for the Debtors' prepetition lenders, Waller, Landsden, Dortch & Davis LLP, 511 Union Street, Suite 2700, Nashville, TN, 37219 (Attn: John C. Tishler); (e) the attorneys for the statutory committee of unsecured creditors, Andrews Kurth LLP, 450 Lexington Avenue, New York, New York, 10017 (Attn: Paul Silverstein); and (f) attorneys for the Debtors' postpetition lenders, O'Melveny & Meyers, LLP, Times Square Tower, 7 Times Square, New York, NY 10036 (Attn: Gerald Bender, Esq.), so as to be received no later than **July 7, 2008 (prevailing Eastern Time)**.

PLEASE TAKE FURTHER NOTICE that a hearing to consider the relief requested in the Motion shall be held before the Honorable Martin Glenn, United States Bankruptcy Judge, on **July 14, 2008 at 2:00 p.m. (prevailing Eastern Time)**, in Room 501 at the United States Bankruptcy Court, Alexander Hamilton Custom House, One Bowling Green, New York, New York 10004 or as soon thereafter as counsel may be heard.

Dated: June 20, 2008
      New York, New York

      /s/ Richard P. Krasnow
      Richard P. Krasnow
      Christopher J. Marcus
      WEIL, GOTSHAL & MANGES LLP
      767 Fifth Avenue
      New York, New York 10153
      Telephone: (212) 310-8000
      Facsimile: (212) 310-8007

      Attorneys for Debtors
      and Debtors in Possession

Hearing Date: July 14, 2008 at 2:00 p.m. (prevailing Eastern Time)
Objection Deadline: July 7, 2008 (prevailing Eastern Time)

WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007
Richard P. Krasnow, Esq.
Christopher J. Marcus, Esq.

Attorneys for Debtors
and Debtors in Possession

**UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK**

```
-----------------------------------------------------------------x
                                                                 :
In re                                                            :   Chapter 11 Case No.
                                                                 :
LEXINGTON PRECISION CORP., et al.,                               :   08-11153 (MG)
                                                                 :
          Debtors.                                               :   (Jointly Administered)
                                                                 :
-----------------------------------------------------------------x
```

**DEBTORS' MOTION PURSUANT TO SECTIONS 105(a) AND 363(b)
OF THE BANKRUPTCY CODE AND BANKRUPTCY RULE 6004 FOR
AN ORDER AUTHORIZING THE DEBTORS TO EMPLOY DEWOLFF,
BOBERG & ASSOCIATES, INC. TO PROVIDE CONSULTING SERVICES**

TO THE HONORABLE MARTIN GLENN,
UNITED STATES BANKRUPTCY JUDGE:

Lexington Precision Corporation ("Lexington Precision") and Lexington Rubber Group, Inc. ("Lexington Rubber Group" and, together with Lexington Precision, "Lexington" or the "Debtors"), as debtors and debtors in possession, respectfully represent:

**Background**

1.  On April 1, 2008 (the "Commencement Date"), the Debtors each commenced with this Court a voluntary case under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code"). The Debtors are authorized to continue to operate their

businesses and manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

2.  The Debtors' chapter 11 cases have been consolidated for procedural purposes only and are being jointly administered pursuant to Rule 1015(b) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").

## Jurisdiction and Venue

3.  This Court has jurisdiction to consider this matter pursuant to 28 U.S.C. §§ 157 and 1334.  This is a core proceeding pursuant to 28 U.S.C. § 157(b).  Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

## Relief Requested

4.  By this Motion, pursuant to sections 105(a) and 363(b) of the Bankruptcy Code and Bankruptcy Rule 6004, the Debtors request entry of an order authorizing the Debtors to employ DeWolff, Boberg & Associates, Inc ("DeWolff") and compensate DeWolff in accordance with that certain engagement letter, dated June 12, 2008 (the "Engagement Letter") a copy of which is annexed hereto as Exhibit A, to the extent such employment and compensation is not in the ordinary course of business.  Further, to successfully implement the foregoing, the Debtors request that, pursuant to Bankruptcy Rule 6004(h),[1] the Court direct that the order granting the requested relief be effective immediately upon entry.

---

[1] Bankruptcy Rule 6004(h) is an interim bankruptcy rule adopted pursuant to standing General Order M-308 of the United States Bankruptcy Court for the Southern District of New York, signed on October 11, 2005 by Chief Judge Stuart M. Bernstein.

**The Rock Hill Facility**

5.  The Debtors' business of manufacturing molded rubber components for use in medical devices operates out of a 61,000 square-foot production facility located in Rock Hill, South Carolina (the "Rock Hill Facility"). Approximately 140 people are currently employed at the Rock Hill Facility. The medical components produced at the Rock Hill Facility include injection sites, syringe tips, check valves, diaphragms, and seals for laparoscopic surgical devices.

6.  The Debtors' molding technology and engineering expertise have earned them a reputation for being able to produce highly-complex medical compounds in large quantities, at competitive prices, and to the most-exacting quality standards. As a result, the Rock Hill Facility has experienced dramatic growth in sales and EBITDA over the past two years. The Rock Hill Facility's sales increased from $11 million in 2006 to $15.9 million in 2007, while its EBITDA jumped from $853,000 to $2,828,000.

7.  Although the Debtors are pleased with the operating results at the Rock Hill Facility, they believe that the dramatic growth has strained the systems in place and that there are significant opportunities to (a) improve the profitability of the Rock Hill Facility at the current level of volume and (b) add significant amounts of highly profitable medical business that will enhance the value of the Rock Hill Facility. Consequently, the Debtors wish to maximize the efficiency and profitability of the Rock Hill Facility, while putting in place systems and procedures that will ensure their ability to expand dramatically the volume at the Rock Hill Facility in a profitable, efficient, and virtually risk-free manner.

8.  At the Debtors' request, DeWolff analyzed the operations of the Rock Hill Facility during a two-week period and identified (a) substantial economic benefits that could be

achieved by improving productivity, reducing labor costs, and increasing operational efficiencies, and (b) certain weaknesses in the project management systems at the Rock Hill Facility that, if eliminated, would significantly enhance the probability of success in taking new projects from the inquiry stage to profitable production business. The Debtors seek to engage DeWolff to assist them in achieving the goals set forth above. DeWolff will work alongside the Rock Hill Facility's front-line managers and management team to, among other things, (i) identify how supervisors can better manage their time and workforce and set goals for the facility; (ii) implement problem solving models that respond to the underlying cause rather than the symptom; and (iii) design workshops focused on the interventions necessary to develop a proactive work environment. With respect to this portion of the project, DeWolff has identified annual cost saving opportunities of $800,000 to $1,100,000, based upon the current level of sales at the Rock Hill Facility, and is prepared to guarantee that the Debtors will save at least $807,000 per annum (the "Guaranteed Savings").

    9.  In addition, DeWolff will assist the Debtors in the design and installation of a project management system for the development of new products for the Rock Hill Facility. Before any new project becomes a production component, the Debtors are required to assist their customer with component design, materials development and testing, tooling design, process development, prototyping, and product validation. This product-development process requires the coordinated efforts of personnel of both the Debtors and the customer, including individuals involved in computer simulation, materials science, product design, tooling engineering, process engineering, automation engineering, operations, metrology, and quality control. The Debtors' ability to manage this process efficiently and to communicate effectively (both internally and with their customers) will significantly enhance their ability to expand the volume at the Rock

Hill Facility rapidly and increase profitably with less risk of failure. The Debtors believe that DeWolff will be able to provide invaluable assistance in the design and implementation of a product-development system that will be, and will be viewed by the Debtors' customers as, "world-class." This phase of the project will substantially enhance the Debtors' ability to achieve the sales growth that is key to their business plan for the Rock Hill Facility.

10. A corollary benefit of the productivity improvement to be achieved through the DeWolff engagement is that the increased efficiencies will create a significant amount of additional effective production capacity. The Debtors believe that, after the completion of the DeWolff engagement, they will be able to accommodate the projected growth at the Rock Hill Facility (where volume is expected to nearly double by 2012) without the need to expand the buildings comprising the Rock Hill Facility or to make any significant additional investment in equipment.

11. The Guaranteed Savings is based on the Rock Hill Facility's current performance and volume levels. With the anticipated increase in the Rock Hill Facility's volume, the benefits from this engagement would increase proportionately. In addition, if the Debtors do not achieve the Guaranteed Savings, DeWolff will (i) continue to provide services at the Rock Hill Facility at its own cost until the Debtors achieve savings equal the Guaranteed Savings or (ii) reimburse a portion of the consulting fees in an amount equal to the shortfall of the Guaranteed Savings.

12. The Engagement Letter sets forth the terms and conditions that apply to the consulting services that DeWolff will provide to help the Debtors achieve the Guaranteed Savings. DeWolff has committed that the development and implementation of programs to

achieve the above-referenced efficiencies will take approximately 18 weeks at total cost of approximately $462,600 or $25,700 per week.

13.     Pursuant to the Engagement Letter, the Debtors must approve all aspects of DeWolff's recommendations prior to their implementation.  The Debtors may discontinue DeWolff's employment at any time during the 18 week period and will only be billed for the services provided up until the time of the termination, however, if the Debtors chose to terminate the engagement prior to the conclusion of the 18 period, DeWolff will no longer guarantee the Guaranteed Savings.

14.     This is not the first time the Debtors have retained DeWolff for its consulting services.  DeWolff has worked on projects at the Debtors' Vienna, Ohio Facility (March 4, 2005 – May 6, 2005), Rochester, New York Facility (March 4, 2005 - May 25, 2005), and Jasper, Georgia Facility (May 13, 2005 - July 6, 2005).  In each of these cases, the Debtors were completely satisfied with DeWolff's performance and obtained all of the efficiencies and benefits projected by DeWolff.

### The Debtors' Employment Of DeWolff Is Supported By Sound Business Judgment And Should Be Approved By The Court

15.     The Debtors believe, based on the governing jurisprudence, that they can employ and compensate DeWolff in the ordinary course of business.[2]  Nevertheless, out of an

---

[2] The United States Court of Appeals for the Second Circuit has adopted a two part test for determining whether a transaction is in the ordinary course of a debtor's business. *In re Lavigne*, 114 F.3d 379, 385 (2d Cir. 1997).  The "vertical test" views the transaction from a hypothetical creditor's point of view and inquires whether the transaction subjects a creditor to economic risks that differ from the risks such creditor anticipated when it commenced business with the debtor.  *Id.*  The "horizontal test" compares the transaction to those made in the debtor's industry to determine whether the debtor's transaction is similar to those entered into by others in the debtor's industry.  *Id.*  Regularity is not a prerequisite for a transaction to be ordinary.  *In re John-Manville Corp.*, 60 B.R. 612, 618 (Bankr. S.D.N.Y. 1986).  The Debtors believe that employment of DeWolff satisfies this two-part test.

abundance of caution, the Debtors seek authorization to employ and compensate DeWolff pursuant to section 363(b) of the Bankruptcy Code to the extent the engagement is not in the ordinary course of business.

16. Section 363(b)(1) of the Bankruptcy Code provides, in relevant part, "the trustee, after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate." 11 U.S.C. § 363(b)(1). When considering a transaction outside the ordinary course of business, Courts in the Second Circuit, and others, require that such transaction be based upon the sound business judgment of the debtor. *Comm. of Equity Sec. Holders v. Lionel Corp.* (*In re Lionel Corp.*), 722 F.2d 1063, 1070 (2d Cir. 1983); *accord In re Chateaugay Corp.*, 973 F.2d 141, 143 (2d Cir. 1992); *In re Martin*, 91 F.3d 389, 395 (3d Cir. 1996) (citing *Fulton State Bank v. Schipper* (*In Re Schipper*), 933 F.2d 513, 515 (7th Cir. 1991)); *Institutional Creditors of Cont'l Airlines, Inc. v. Cont'l Airlines, Inc.* (*In re Cont'l Airlines, Inc.*), 780 F.2d 1223, 1226 (5th Cir. 1986).

17. It is generally understood that "[w]here the debtor articulates a reasonable basis for its business decisions (as distinct from a decision made arbitrarily or capriciously), courts will generally not entertain objections to the debtor's conduct." *In re Johns-Manville Corp.*, 60 B.R. 612, 616 (Bankr. S.D.N.Y. 1986). If a valid business justification exists, there is a strong presumption that "'the directors of a corporation acted on an informed basis, in good faith and in the honest belief that the action taken was in the best interests of the company.'" *In re Integrated Res., Inc.*, 147 B.R. 650, 656 (S.D.N.Y. 1992) (quoting *Smith v. Van Gorkom,* 488 A.2d 858, 872 (Del. 1985)), *appeal dismissed*, 3 F.3d 49 (2d Cir. 1993). The burden of rebutting this presumption falls to parties opposing the proposed exercise of a debtor's business judgment. *Id.* (citing *Aronson v. Lewis*, 473 A.2d 805, 812 (Del. 1984)).

18.     The employment of DeWolff is an exercise of the Debtors' sound business judgment.  First, there is little or no economic risk to the estate or the Debtors' creditors because DeWolff guarantees the projected benefits described in the Engagement Letter.  If the Debtors do not achieve the Guaranteed Savings, DeWolff will (i) continue providing services at DeWolff's expense until the Debtors achieve savings equal the Guaranteed Savings or (ii) reimburse a portion of the consulting fees in an amount proportionate to the shortfall from the Guaranteed Savings.

19.     Second, the Debtors have engaged DeWolff on three prior occasions to increase the productivity at the Debtors' Vienna, Ohio, Rochester, New York, and Jasper, Georgia Facilities.  In all three cases, the Debtors utilized DeWolff to implement its recommendations, which translated into significant savings.

20.     Third, the Rock Hill Facility's existing business model has been profitable and the Debtors intend capitalize on this success by having DeWolff implement its recommendations to make the facility more efficient and to prepare the facility for future, profitable growth.  This process will enable the Debtors to maximize the profitability of their current base business and to garner substantial new and profitable business with minimal risk of failure.  This result will translate into increased profitability and enhance value for all parties-in-interest.

**Memorandum of Law**

21.     The Debtors submit that the relevant authorities are set forth herein, and accordingly, that the requirement contained in Local Bankruptcy Rule 9013-1(b) for the filing of a separate memorandum in support of the Motion is satisfied.

**Notice**

22.     No trustee or examiner has been appointed in these chapter 11 cases. Notice of this Motion has been provided to (i) the United States Trustee for the Southern District of New York, (ii) the attorneys for the agents for the Debtors' prepetition lenders, (iii) the attorneys for the Debtors' postpetition lenders, (iv) the attorneys for the statutory creditors' committee, and (v) all other parties entitled to notice in these chapter 11 cases.  The Debtors submit that no other or further notice need be provided.

23.     No previous request for the relief sought herein has been made to this or any other Court.

WHEREFORE, the Debtors respectfully request entry of an order granting the relief requested herein and such other and further relief as is just.

Dated: June 20, 2008
       New York, New York

/s/ Richard P. Krasnow
Richard P. Krasnow
Christopher J. Marcus
WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007

Attorneys for Debtors
and Debtors in Possession

# EXHIBIT A

**(Engagement Letter)**

JUN-20-2008 11:06
06/20/08 FRI 10:05 FAX 3148634666
08-11153-scc    Doc 182    Filed 06/20/08    Entered 06/20/08 16:02:04    Main Document
HI-TEC COPY
Pg 14 of 17
P.02/03
@002

**DEWOLFF, BOBERG & ASSOCIATES, INC.**
*Resources to management for improving performance*

12750 Merit Drive  Dallas, Texas  75251  (800) 800-6030

June 12, 2008

Michael Lubin
Chairman
Lexington Precision Corporation
800 Third Avenue
New York, NY 10022

Warren Delano
President
Lexington Precision Corporation
800 Third Avenue
New York, NY 10022

Dear Mr. Lubin & Mr. Delano:

Thank you for the opportunity you provided us to analyze your medical operations facility in Rock Hill, SC. Our objective was to determine whether we could make a worthwhile application of our methods and efforts, designed to assist you in achieving your business objectives in these areas.

We realize that your management group may have previously considered many of the thoughts we expressed. Your ideas, combined with ours and developed through full participation during the course of the engagement, will assure maximum results. We consider our ability to install our proposals, achieving predictable and measurable results, to be the most important factor in our usefulness to you.

In our presentations we have taken only limited time to praise the many good points we have seen. Our findings indicated many areas are operating well, however they have the ability to improve through maximizing performance. Our focus has been on quantifying the opportunities available. The engagement will consist of working with your people to improve the existing operating systems and position Lexington to better cope with substantial new business opportunities and the demands of new product development requested by your customers. Naturally, our preliminary analysis can only outline areas inviting more detailed study in the application of the principles we propose.

In addition to helping you with the project management capabilities you require, we guarantee that annual economic benefits available to you through implementation of our process will be Eight Hundred Seven Thousand Dollars (USD $807,000). These benefits will be made available to you from improved productivity, increased throughput, reduced overtime & organization restructuring. This estimate could be lowered in the event of a significant reduction in your current or forecasted volume levels. The benefit corresponds to improvement based on current

performance & volume levels. As a result, increased volume intake suggests the potential to outperform the guaranteed amount. The precise metrics and baselines to be used to measure these savings will be developed and finalized with you during the first few weeks of the project.

The total cost for the development, training and installation of this process is Four Hundred Sixty-Two Thousand Six Hundred Dollars (USD $462,600). We anticipate spending Eighteen (18) calendar weeks on your premises. During this time, we would invoice you Twenty-Five Thousand Seven Hundred Dollars (USD $25,700) per week for each week of the engagement. All invoices are payable weekly as invoiced. You may discontinue this program at any point and will only be charged for time spent to date. Also, DeWolff, Boberg and Associates and Lexington Precision Corporation agree not to solicit and/or hire the other's employees for employment during the implementation of our program and for one (1) year following completion of the implementation.

Should we not be able to achieve our guaranteed annual savings rate by the planned completion date of our program, we would either continue working on your premises at our expense until this rate is attained, or we would reimburse a portion of our fees equal to the percentage of savings shortfall. This choice would be made at our discretion. We will also monitor our cash flow projections and be prepared, if necessary, to adjust our billing to stay within these commitments.

So that we may use staff members already familiar with your processes and this proposal, we would appreciate your authorization to proceed today. This proposal of engagement is valid for a period of forty-five (45) days, beyond this period the proposal is null and void.

We look forward to working with you and your people, and are convinced you will find it a rewarding experience.

Sincerely yours,

DEWOLFF, BOBERG & ASSOCIATES, INC.

Peter Schultz
Presenting Analyst

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-------------------------------------------------------------x
                                                             :
**In re**                                                    :    Chapter 11 Case No.
                                                             :
**LEXINGTON PRECISION CORP., et al.,**                       :    08-11153 (MG)
                                                             :
            Debtors.                                         :    (Jointly Administered)
                                                             :
-------------------------------------------------------------x

### ORDER PURSUANT TO SECTIONS 105(a) AND 363(b) OF THE BANKRUPTCY CODE AND BANKRUPTCY RULE 6004 AUTHORIZING THE DEBTORS TO EMPLOY DEWOLFF, BOBERG & ASSOCIATES, INC. TO PROVIDE CONSULTING SERVICES

Upon the Motion, dated June 20, 2008 (the "Motion"), of Lexington Precision Corporation and Lexington Rubber Group, Inc., as debtors and debtors in possession (collectively, the "Debtors"), pursuant to sections 105(a) and 363(b) of title 11 of the United States Code (the "Bankruptcy Code") and Rule 6004 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), for an order authorizing the Debtors to employ DeWolff, Boberg & Associates, Inc. ("DeWolff") to provide consulting services, all as more fully described in the Motion; and the Court having jurisdiction to consider the Motion and the relief requested therein in accordance with 28 U.S.C. §§ 157 and 1334 and the Standing Order M-61 Referring to Bankruptcy Judges for the Southern District of New York Any and All Proceedings Under Title 11, dated July 10, 1984 (Ward, Acting C.J.); and consideration of the Motion and the relief requested therein being a core proceeding pursuant to 28 U.S.C. § 157(b); and venue being proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409; and due and proper notice of the Motion having been provided to (i) the United States Trustee for the Southern District of New York, (ii) the attorneys for the agents for the Debtors' prepetition lenders, (iii) the attorneys for the Debtors' postpetition lenders, (iv) the attorneys for the statutory creditors' committee, and

(v) all other parties entitled to notice in these chapter 11 cases, and it appearing that no other or further notice need be provided; and a hearing having been held to consider the relief requested in the Motion (the "Hearing"); and the Court having found and determined that the relief sought in the Motion is in the best interests of the Debtors, their estates and creditors, and all parties in interest and that the legal and factual bases set forth in the Motion establish just cause for the relief granted herein; and after due deliberation and sufficient cause appearing therefor, it is

ORDERED that the Motion is granted; and it is further

ORDERED that the Debtors are authorized to employ and compensate DeWolff pursuant to the Engagement Letter (as defined in the Motion) for the consulting services to be provided to the extent such employment and compensation is not in the ordinary course of the Debtors' businesses; and it is further

ORDERED that pursuant to Bankruptcy Rule 6004(h),[3] this Order shall be effective immediately upon entry; and it is further

ORDERED that the requirement set forth in Local Bankruptcy Rule 9013-1(b) for the filing of a separate memorandum of law in support of the Motion is satisfied.

Dated: July __, 2008
      New York, New York

                                                        _____
                                                        United States Bankruptcy Judge

---

[3] Bankruptcy Rule 6004(h) is an interim bankruptcy rule adopted pursuant to standing General Order M-308 of the United States Bankruptcy Court for the Southern District of New York, signed on October 11, 2005 by Chief Judge Stuart M. Bernstein.