**THIS IS NOT A SOLICITATION OF ACCEPTANCE OR REJECTION OF
THE PLAN. ACCEPTANCES OR REJECTIONS MAY NOT BE SOLICITED
UNTIL A DISCLOSURE STATEMENT HAS BEEN APPROVED BY THE
BANKRUPTCY COURT.**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-------------------------------------------------------------x
:
In re                                          :          Chapter 11 Case No.
:
**LEXINGTON PRECISION CORP., et al.,**          :          **08-11153 (MG)**
:
Debtors.                          :          **(Jointly Administered)**
:
-------------------------------------------------------------x

**DEBTORS' JOINT PLAN OF REORGANIZATION**
**UNDER CHAPTER 11 OF THE BANKRUPTCY CODE**

WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
(212) 310-8000

Attorneys for Debtors and
    Debtors in Possession

Dated:  June 30, 2008

# TABLE OF CONTENTS

**Page**

ARTICLE I    DEFINITIONS AND INTERPRETATION .................................................1

    A.    Definitions ........................................................................................................1

        1.1.    Administrative Expense Claim ........................................................1

        1.2.    Allowed.............................................................................................1

        1.3.    Asbestos-Related Claim ...................................................................2

        1.4.    Bankruptcy Code ..............................................................................2

        1.5.    Bankruptcy Court..............................................................................2

        1.6.    Bankruptcy Rules..............................................................................2

        1.7.    Business Day .....................................................................................2

        1.8.    CapitalSource ....................................................................................2

        1.9.    CapitalSource Secured Claim  ..........................................................2

        1.10.    Cash ...................................................................................................2

        1.11.    Chapter 11 Cases ..............................................................................2

        1.12.    Charging Lien ...................................................................................3

        1.13.    Charter Amendment...........................................................................3

        1.14.    Claim.................................................................................................3

        1.15.    Class..................................................................................................3

        1.16.    Collateral...........................................................................................3

        1.17.    Commencement Date.........................................................................3

        1.18.    Confirmation Date .............................................................................3

        1.19.    Confirmation Hearing .......................................................................3

        1.20.    Confirmation Order...........................................................................3

        1.21.    Contingent Claim ..............................................................................3

        1.22.    Convenience Claim ...........................................................................3

        1.23.    Creditors' Committee ........................................................................3

        1.24.    CSE Mortgage...................................................................................3

        1.25.    CSE Secured Claim ..........................................................................3

        1.26.    Debtors..............................................................................................4

        1.27.    Debtors in Possession .......................................................................4

        1.28.    DIP Financing Order.........................................................................4

        1.29.    DIP Lenders ......................................................................................4

**TABLE OF CONTENTS**
(continued)

Page

1.30.    DIP Loan Claims ..................................................................4

1.31.    DIP Note ..............................................................................4

1.32.    Disallowed Claim .................................................................4

1.33.    Disbursing Agent .................................................................4

1.34.    Disclosure Statement ...........................................................4

1.35.    Disputed Claim ....................................................................4

1.36.    Distribution Record Date .....................................................4

1.37.    Effective Date ......................................................................4

1.38.    Entity....................................................................................4

1.39.    Equity Interest .....................................................................5

1.40.    Exit Facility .........................................................................5

1.41.    Final Cash Collateral Order .................................................5

1.42.    Final Order ...........................................................................5

1.43.    General Unsecured Claim .....................................................5

1.44.    Indenture ..............................................................................5

1.45.    Indenture Trustee .................................................................5

1.46.    Indenture Trustee Fee Claims ..............................................5

1.47.    Insurance Policies ................................................................5

1.48.    Intercompany Claim .............................................................6

1.49.    Junior Subordinated Note ....................................................6

1.50.    Junior Subordinated Note Claim..........................................6

1.51.    Lexington Precision ..............................................................6

1.52.    Lexington Precision Common Stock ....................................6

1.53.    Lexington Rubber Group ......................................................6

1.54.    Lien.......................................................................................6

1.55.    New Subordinated Notes ......................................................6

1.56.    New Subordinated Note Indenture .......................................6

1.57.    Other Priority Claim .............................................................6

1.58.    Other Secured Claim.............................................................6

1.59.    Plan Documents ....................................................................6

1.60.    Plan .......................................................................................6

# TABLE OF CONTENTS
## (continued)

Page

1.61.  Plan Supplement .................................................................... 7

1.62.  Prepetition Credit Agreement ................................................ 7

1.63.  Prepetition Loan Agreement ................................................. 7

1.64.  Priority Tax Claim ................................................................ 7

1.65.  Reorganized Debtors............................................................. 7

1.66.  Reorganized Lexington Precision .......................................... 7

1.67.  Reorganized Lexington Rubber Group ................................... 7

1.68.  Schedules .............................................................................. 7

1.69.  Secured Claim ...................................................................... 7

1.70.  Secured Tax Claim................................................................ 7

1.71.  Senior Subordinated Notes ................................................... 7

1.72.  Senior Subordinated Note Claim .......................................... 7

1.73   Series B Preferred Stock Interest .......................................... 7

1.74   Series C Preferred Stock ....................................................... 8

1.75.  Unliquidated Claim ............................................................... 8

1.76.  Unsecured Claim................................................................... 8

B.  Interpretation; Application of Definitions and Rules of Construction............... 8

ARTICLE II  ADMINISTRATIVE EXPENSE CLAIMS AND PRIORITY TAX CLAIMS ............... 8

2.1.  Administrative Expense Claims............................................. 8

2.2.  Professional Compensation and Reimbursement Claims ................... 8

2.3.  Indenture Trustee Fee Claims ............................................... 9

2.4.  DIP Loan Claims .................................................................. 9

2.5.  Priority Tax Claims............................................................... 9

ARTICLE III  CLASSIFICATION OF CLAIMS AND EQUITY INTERESTS ................................. 10

ARTICLE IV  TREATMENT OF CLAIMS AND EQUITY INTERESTS........................................... 11

4.1.  Class 1:  Other Priority Claims against Lexington Precision............... 11

4.2.  Class 2(a):  CapitalSource Secured Claims against Lexington Precision ........... 11

4.3.  Class 2(b):  CSE Secured Claims against Lexington Precision .......... 11

4.4.  Class 3:  Secured Tax Claims against Lexington Precision............... 11

4.5.  Class 4:  Other Secured Claims against Lexington Precision.......... 12

4.6.  Class 5:  Senior Subordinated Note Claims....................................... 12

iii

# TABLE OF CONTENTS
## (continued)

|  |  | Page |
|---|---|---|
| 4.7. | Class 6: Junior Subordinated Note Claims | 13 |
| 4.8. | Class 7: General Unsecured Claims against Lexington Precision | 13 |
| 4.9. | Class 8: Convenience Claims against Lexington Precision | 13 |
| 4.10. | Class 9: Asbestos-Related Claims | 13 |
| 4.11. | Class 10: Series B Preferred Stock Interests | 14 |
| 4.12. | Class 11: Equity Interests in Lexington Precision | 14 |
| 4.13. | Class 12: Other Priority Claims against Lexington Rubber Group | 14 |
| 4.14. | Class 12(a): CapitalSource Secured Claims against Lexington Rubber Group | 14 |
| 4.15. | Class 12(b): CSE Secured Claims against Lexington Rubber Group | 14 |
| 4.16. | Class 13: Secured Tax Claims against Lexington Rubber Group | 15 |
| 4.17. | Class 14: Other Secured Claims against Lexington Rubber Group | 15 |
| 4.18. | Class 15: General Unsecured Claims against Lexington Rubber Group | 16 |
| 4.19. | Class 16: Convenience Claims against Lexington Rubber Group | 16 |
| 4.20. | Class 17: Equity Interests in Lexington Rubber Group | 16 |
| ARTICLE V | MEANS FOR IMPLEMENTATION | 16 |
| 5.1. | Intercompany Claims | 16 |
| 5.2. | Cancellation and Surrender of Existing Securities and Agreements | 16 |
| 5.3. | Charter Amendment | 17 |
| 5.4 | Incurrence of New Indebtedness | 18 |
| 5.5. | Issuance of Series C Preferred Stock | 18 |
| 5.6. | Issuance of Lexington Precision Common Stock | 18 |
| 5.7. | Issuance of the New Subordinated Notes | 18 |
| 5.8. | Exemption from Securities Laws | 18 |
| ARTICLE VI | VOTING AND DISTRIBUTIONS | 18 |
| 6.1. | Voting of Claims | 18 |
| 6.2. | Nonconsensual Confirmation | 19 |
| 6.3. | Distribution Record Date | 19 |
| 6.4. | Date of Distributions | 19 |
| 6.5. | Disbursing Agent | 19 |
| 6.6. | Rights and Powers of Disbursing Agent | 19 |
| 6.7. | Expenses of the Disbursing Agent | 19 |

# TABLE OF CONTENTS
## (continued)

Page

| | | | |
|---|---|---|---|
| | 6.8. | Delivery of Distributions | 19 |
| | 6.9. | Unclaimed Distributions | 20 |
| | 6.10. | Manner of Payment | 20 |
| | 6.11. | Fractional Shares | 20 |
| | 6.12. | Minimum Cash Distributions | 21 |
| | 6.13. | Setoffs | 21 |
| ARTICLE VII | | PROCEDURES FOR DISPUTED CLAIMS | 21 |
| | 7.1. | Objections | 21 |
| | 7.2. | No Payment Pending Allowance | 21 |
| | 7.3. | Distributions After Allowance | 21 |
| | 7.4. | Resolution of Administrative Expense Claims and other Claims | 22 |
| | 7.5. | Estimation of Claims | 22 |
| | 7.6. | Interest | 22 |
| ARTICLE VIII | | EXECUTORY CONTRACTS AND UNEXPIRED LEASES | 22 |
| | 8.1. | Assumption or Rejection of Executory Contracts and Unexpired Leases | 22 |
| | 8.2. | Approval of Assumption or Rejection of Executory Contracts and Unexpired Leases | 23 |
| | 8.3. | Inclusiveness | 23 |
| | 8.4. | Cure of Defaults | 23 |
| | 8.5. | Bar Date for Filing Proofs of Claim Relating to Executory Contracts and Unexpired Leases Rejected Pursuant to the Plan | 23 |
| | 8.6. | Indemnification Obligations | 24 |
| | 8.7. | Insurance Policies | 24 |
| | 8.8. | Compensation and Benefit Programs | 24 |
| | 8.9. | Retiree Benefits | 24 |
| ARTICLE IX | | CORPORATE GOVERNANCE AND MANAGEMENT OF THE REORGANIZED DEBTORS | 25 |
| | 9.1. | General | 25 |
| | 9.2. | Directors and Officers of the Reorganized Debtors | 25 |
| | 9.3. | Issuance of Non-Voting Securities | 25 |
| ARTICLE X | | EFFECT OF CONFIRMATION | 25 |
| | 10.1. | Vesting of Assets | 25 |

v

# TABLE OF CONTENTS
## (continued)

Page

10.2. Discharge of Claims and Termination of Series B Preferred Stock Interests ......................................................................................................26

10.3. Discharge of Debtors ........................................................................................26

10.4. Injunction or Stay..............................................................................................26

10.5. Term of Injunctions or Stays ............................................................................26

10.6. Injunction Against Interference With Plan ........................................................27

10.7. Exculpation .......................................................................................................27

10.8. Releases .............................................................................................................27

10.9. Avoidance Actions.............................................................................................28

10.10. Retention of Causes of Action/Reservation of Rights ......................................28

10.11. Limitations on Exculpation and Releases of Representatives ...........................28

ARTICLE XI   CONDITIONS PRECEDENT to effective date ...........................................29

11.1. Conditions Precedent to Effectiveness..............................................................29

11.2. Waiver of Conditions.........................................................................................29

11.3. Effect of Failure of Conditions to Effective Date ............................................29

ARTICLE XII   RETENTION OF JURISDICTION .............................................................29

ARTICLE XIII   MISCELLANEOUS PROVISIONS ............................................................31

13.1. Effectuating Documents and Further Transactions............................................31

13.2. Withholding and Reporting Requirements ........................................................31

13.3. Corporate Action...............................................................................................31

13.4. Exemption from Transfer Taxes ........................................................................32

13.5. Expedited Tax Determination. ..........................................................................32

13.6. Payment of Statutory Fees ................................................................................32

13.7. Post-Confirmation Date Professional Fees and Expenses .................................32

13.8. Dissolution of Statutory Committees.................................................................32

13.9. Indenture Trustee as Claim Holder ...................................................................33

13.10. Plan Supplement ...............................................................................................33

13.11. Substantial Consummation ................................................................................33

13.12. Amendments or Modifications of the Plan ........................................................33

13.13. Revocation or Withdrawal of the Plan...............................................................33

13.14. Severability. ......................................................................................................33

13.15. Governing Law .................................................................................................34

## TABLE OF CONTENTS
### (continued)

**Page**

13.16.  Binding Effect ..................................................................................................... 34

13.17.  Exhibits/Schedules ............................................................................................. 34

13.18.  Notices ................................................................................................................. 34

13.19.  Time ..................................................................................................................... 35

13.20.  Section Headings ................................................................................................ 35

## **EXHIBITS**

Exhibit 1.55 – Summary of Terms of New Subordinated Notes

Exhibit 1.74 – Summary of Terms of Series C Preferred Stock

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------------x
                             :

In re                         :       **Chapter 11 Case No.**
                             :

**LEXINGTON PRECISION CORP., et al.,**   :       **08-11153 (MG)**
                             :

        **Debtors.**          :       **(Jointly Administered)**
                             :

-------------------------------------------------------------x

### DEBTORS' JOINT PLAN OF REORGANIZATION
### UNDER CHAPTER 11 OF THE BANKRUPTCY CODE

        Lexington Precision Corporation and Lexington Rubber Group, Inc. propose the following joint chapter 11 plan of reorganization, pursuant to section 1121(a) of title 11 of the United States Code:

## ARTICLE I

### DEFINITIONS AND INTERPRETATION

**A.**     **Definitions**.

        The following terms used herein shall have the respective meanings defined below (such meanings to be equally applicable to both the singular and plural):

        1.1.     ***Administrative Expense Claim*** means any Claim constituting a cost or expense of administration of the Chapter 11 Cases allowed under sections 503(b) (including 503(b)(9)), 507(a)(2) and 507(b) of the Bankruptcy Code, including, without limitation, any actual and necessary costs and expenses of preserving the Debtors' estates, any actual and necessary costs and expenses of operating the Debtors' business, any actual and necessary costs and expenses of the administration and implementation of the Plan, any indebtedness or obligations incurred or assumed by the Debtors, as Debtors in Possession, during the Chapter 11 Cases, including, without limitation, for the acquisition or lease of property or an interest in property or the rendition of services, any allowances of compensation and reimbursement of expenses to the extent allowed by Final Order under section 330 or 503 of the Bankruptcy Code, and any fees or charges assessed against the Debtors' estates under section 1930 of chapter 123 of title 28 of the United States Code.

        1.2.     ***Allowed*** means that, with respect to a Claim, (i) such Claim has been listed by the Debtors in the Schedules, as such Schedules may be amended by the Debtors from time to time in accordance with Bankruptcy Rule 1009, as liquidated in amount and not disputed or contingent and no contrary proof of claim has been filed, (ii) a proof of claim with respect to such Claim has been timely filed and no objection thereto has been interposed within the time period set forth in Section 7.1 of the Plan or such other applicable period of limitation fixed by the Bankruptcy Code, the Bankruptcy Rules, or the Bankruptcy Court, or an objection thereto has been interposed and such Claim has been allowed in whole or in part by a Final Order, (iii) such Claim has been expressly allowed by a Final Order or under the Plan, or (iv) such Claim has been compromised, settled, or otherwise resolved pursuant to the authority granted to the Reorganized Debtors pursuant to a Final Order of the Bankruptcy Court or under

Sections 7.1, 7.4, or 7.5 of the Plan; *provided*, *however*, that Claims allowed solely for the purpose of voting to accept or reject the Plan pursuant to an order of the Bankruptcy Court shall not be considered "Allowed Claims" under the Plan.

1.3.　　***Asbestos-Related Claim*** means any Claim, remedy or liability against any Debtor, whether or not such Claim, remedy or liability is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured or unsecured, whether or not the facts of or legal bases therefor are known or unknown, under any theory of law, equity, admiralty or otherwise (including piercing the corporate veil, alter ego and similar theories), for damages for property damage or for death, bodily injury, sickness, disease, medical monitoring or other personal injuries (whether physical, emotional or otherwise) to the extent allegedly arising out of or based on, directly or indirectly, in whole or in part, the presence of or exposure to asbestos or asbestos-containing products or things that were installed, engineered, designed, manufactured, fabricated, constructed, sold, supplied, produced, specified, selected, distributed, released, marketed, serviced, maintained, repaired, purchased, owned, occupied, used, removed, replaced or disposed of by any Debtor or an Entity for whose products or operations any Debtor allegedly has liability or for which any Debtor is otherwise allegedly liable, including any Claim, remedy or liability for compensatory damages (such as loss of consortium, lost wages or other opportunities, wrongful death, medical monitoring, survivorship, proximate, consequential, general and special damages) or punitive damages related thereto, and any Claim under any settlement of an Asbestos-Related Claim entered into by or on behalf of any Debtor prior to the Commencement Date.

1.4.　　***Bankruptcy Code*** means title 11 of the United States Code, as amended from time to time, as applicable to the Chapter 11 Cases.

1.5.　　***Bankruptcy Court*** means the United States Bankruptcy Court for the Southern District of New York or such other court that exercises jurisdiction over the Chapter 11 Cases.

1.6.　　***Bankruptcy Rules*** means the Federal Rules of Bankruptcy Procedure as promulgated by the United States Supreme Court under section 2075 of title 28 of the United States Code, as amended from time to time, and any Local Rules of the Bankruptcy Court, as applicable to the Chapter 11 Cases.

1.7.　　***Business Day*** means any day other than a Saturday, a Sunday, or any other day on which banking institutions in New York, New York are required or authorized to close by law or executive order.

1.8.　　***CapitalSource*** means CapitalSource Finance LLC.

1.9.　　***CapitalSource Secured Claim*** means all Claims arising under the Prepetition Credit Agreement and all Claims of the agents and lenders thereunder arising under the Final Cash Collateral Order, less all payments made subsequent to the Commencement Date in respect of such Claims under the Final Cash Collateral Order.

1.10.　　***Cash*** means legal tender of the United States of America.

1.11.　　***Chapter 11 Cases*** means the cases under chapter 11 of the Bankruptcy Code commenced by the Debtors on April 1, 2008 in the United States Bankruptcy Court for the Southern District of New York and styled *In re Lexington Precision Corporation*, *et al.*, Chapter 11 Case No. 08-11153 (MG) (Jointly Administered).

1.12.    ***Charging Lien*** means any right of the Indenture Trustee to a Lien upon or other priority in payment with respect to distributions to be made to holders of Senior Subordinated Note Claims for payment of any Indenture Trustee Fees arising prior to the Effective Date.

1.13.    ***Charter Amendment*** means the amendment to the certificate of incorporation of Lexington Precision to be filed in accordance with Section 5.3 of the Plan, a form of which is to be included in the Plan Supplement.

1.14.    ***Claim*** shall have the meaning ascribed in section 101 of the Bankruptcy Code.

1.15.    ***Class*** means any group of Claims or Equity Interests classified by the Plan as set forth in Article III of the Plan.

1.16.    ***Collateral*** means any property or interest in property of the Debtors' estates subject to a Lien, charge, or other encumbrance to secure the payment or performance of a Claim, which Lien, charge, or other encumbrance is not subject to avoidance under the Bankruptcy Code.

1.17.    ***Commencement Date*** means April 1, 2008, the date on which the Debtors commenced the Chapter 11 Cases.

1.18.    ***Confirmation Date*** means the date on which the Clerk of the Bankruptcy Court enters the Confirmation Order on the docket of the Bankruptcy Court with respect to the Chapter 11 Cases.

1.19.    ***Confirmation Hearing*** means the hearing to be held by the Bankruptcy Court regarding confirmation of the Plan in accordance with section 1129 of the Bankruptcy Code, as such hearing may be adjourned or continued from time to time.

1.20.    ***Confirmation Order*** means the order of the Bankruptcy Court confirming the Plan pursuant to section 1129 of the Bankruptcy Code.

1.21.    ***Contingent Claim*** means any Claim, the liability for which attaches or is dependent upon the occurrence of, or is triggered by, an event, which event has not yet occurred as of the date on which such Claim is sought to be estimated or an objection to such Claim is filed, whether or not such event is within the actual or presumed contemplation of the holder of such Claim and whether or not a relationship between the holder of such Claim and the applicable Debtor now or hereafter exists or previously existed.

1.22.    ***Convenience Claim*** means any Unsecured Claim in the amount of $2,000.00 or less, and any other Unsecured Claim that is reduced to such amount by the holder of such Claim.

1.23.    ***Creditors' Committee*** means the statutory creditors' committee appointed pursuant to section 1102 of the Bankruptcy Code in the Chapter 11 Cases, as may be reconstituted from time to time.

1.24.    ***CSE Mortgage*** means CSE Mortgage LLC.

1.25.    ***CSE Secured Claim*** means all Claims arising under the Prepetition Loan Agreement and all Claims of the agents and lenders thereunder arising under the Final Cash Collateral Order, less all payments made subsequent to the Commencement Date in respect of such Claims under the Final Cash Collateral Order.

1.26. **_Debtors_** means Lexington Precision and Lexington Rubber Group.

1.27. **_Debtors in Possession_** means the Debtors in their capacity as debtors in possession in the Chapter 11 Cases pursuant to sections 1101, 1107(a), and 1108 of the Bankruptcy Code.

1.28. **_DIP Financing Order_** means the Final Order entered on April 17, 2008 authorizing the Debtors' incurrence of $4 million in postpetition financing from the DIP Lenders.

1.29. **_DIP Lenders_** means Lubin Partners, LLC, William B. Connor, and ORA Associates, LLC, as the lenders under the DIP Note.

1.30. **_DIP Loan Claims_** means all Claims arising under the DIP Note, as authorized and approved by that certain Final Order Pursuant to Bankruptcy Code Sections 105, 361, 362, 363, and 364 (I) Authorizing Debtors to Use Cash Collateral, (II) Granting Adequate Protection to Prepetition Secured Lenders, and (III) Authorizing Postpetition Financing, entered by the Bankruptcy Court on April 17, 2008, in the Chapter 11 Cases, as may be amended or supplemented.

1.31. **_DIP Note_** means that certain Super-Priority DIP Note issued by the Debtors in favor of the DIP Lenders on April 21, 2008, in the amount of $4 million.

1.32. **_Disallowed Claim_** means a Claim or a portion of a Claim that is disallowed by an order of the Bankruptcy Court or any other court of competent jurisdiction.

1.33. **_Disbursing Agent_** means such Entity as is designated pursuant to Section 6.5 of the Plan to be a disbursing agent.

1.34. **_Disclosure Statement_** means the disclosure statement with respect to the Plan filed with and approved by the Bankruptcy Court in accordance with section 1125 of the Bankruptcy Code, as such disclosure statement may be amended, modified or supplemented.

1.35. **_Disputed Claim_** means any Claim (including any Administrative Expense Claim) against any Debtor, proof of which was timely and properly filed, that is disputed under the Plan or as to which the Debtors have interposed a timely objection and/or request for estimation in accordance with section 502(c) of the Bankruptcy Code and Bankruptcy Rule 3018, which objection and/or request for estimation has not been withdrawn or determined by a Final Order, and any Claim proof of which was required to be filed by order of the Bankruptcy Court but as to which a proof of claim was not timely or properly filed.

1.36. **_Distribution Record Date_** means, with respect to holders of all Claims, the date that is three (3) days after the Confirmation Date.

1.37. **_Effective Date_** means a Business Day specified by the Debtors on or after the Confirmation Date, on which (i) no stay of the Confirmation Order is in effect and (ii) the conditions to the effectiveness of the Plan specified in Article 12 of the Plan have been satisfied or waived.

1.38. **_Entity_** means a person, a corporation, a general partnership, a limited partnership, a limited liability company, a limited liability partnership, an association, a joint stock company, a joint venture, an estate, a trust, an unincorporated organization, a governmental unit or any subdivision thereof, including, without limitation, the Office of the United States Trustee.

1.39.   ***Equity Interest*** means the interest of any holder of an equity security of any of the Debtors represented by any issued and outstanding shares of common stock or any other instrument evidencing an ownership interest in any of the Debtors, whether or not transferable, or any option, warrant, or right, contractual or otherwise, to acquire any such interest, other than the Series B Preferred Stock Interests.

1.40.   ***Exit Facility*** means any financing arrangement that the Reorganized Debtors enter into on or about the Effective Date in connection with the consummation of the Plan, and any amendments, modifications or supplements thereto.

1.41.   ***Final Cash Collateral Order*** means that certain Final Order Pursuant to Bankruptcy Code Sections 105, 361, 362, 363, and 364 (I) Authorizing Debtors to Use Cash Collateral, (II) Granting Adequate Protection to Prepetition Secured Lenders, and (III) Authorizing Postpetition Financing, entered by the Bankruptcy Court on April 17, 2008, in the Chapter 11 Cases, as may be amended or supplemented.

1.42.   ***Final Order*** means an order or judgment of the Bankruptcy Court entered by the Clerk of the Bankruptcy Court on the docket in the Chapter 11 Cases, that has not been reversed, vacated, or stayed, and as to which (i) the time to appeal, petition for *certiorari*, or move for a new trial, reargument, or rehearing has expired, and as to which no appeal, petition for *certiorari*, or other proceedings for a new trial, reargument, or rehearing shall then be pending, or (ii) if an appeal, writ of *certiorari*, new trial, reargument, or rehearing thereof has been sought, such order or judgment of the Bankruptcy Court shall have been affirmed by the highest court to which such order was appealed, or *certiorari* shall have been denied, or a new trial, reargument, or rehearing shall have been denied or resulted in no modification of such order, and the time to take any further appeal, petition for *certiorari* or move for a new trial, reargument, or rehearing shall have expired; *provided, however*, that the possibility that a motion under Rule 59 or Rule 60 of the Federal Rules of Civil Procedure, or any analogous rule under the Bankruptcy Rules, may be filed relating to such order shall not cause such order to not be a Final Order.

1.43.   ***General Unsecured Claim*** means any Claim against any of the Debtors other than a Convenience Claim, an Administrative Expense Claim, a Priority Tax Claim, an Other Priority Claim, a Secured Tax Claim, an Other Secured Claim, a CapitalSource Secured Claim, a CSE Secured Claim, a Senior Subordinated Note Claim, a Junior Subordinated Note Claim, or an Asbestos-Related Claim.

1.44.   ***Indenture*** means the Indenture, dated as of December 18, 2003, entered into by Lexington Precision, with Wilmington Trust Company, as trustee, under which the Senior Subordinated Notes were issued, as such Indenture is or has been amended, modified or supplemented from time to time.

1.45.   ***Indenture Trustee*** means Wilmington Trust Company, in its capacity as the indenture trustee for the Senior Subordinated Notes, or any successor thereto.

1.46.   ***Indenture Trustee Fee Claim*** means any Claim of the Indenture Trustee for the reimbursement of its reasonable accrued and unpaid fees and expenses under the Indenture.

1.47.   ***Insurance Policies*** means any and all insurance policies issued to Lexington Precision that insure Lexington Precision against losses that give rise to any Asbestos-Related Claim.

1.48.    ***Intercompany Claim*** means any Claim against any Debtor held by another Debtor.

1.49.    ***Junior Subordinated Note*** means that certain 13% Junior Subordinated Note due November 1, 2009, issued on December 18, 2003 by Lexington Precision to Michael A. Lubin.

1.50.    ***Junior Subordinated Note Claim*** means all Claims arising under the Junior Subordinated Note, which shall include interest from and after the Commencement Date at the rate of 13% per annum.

1.51.    ***Lexington Precision*** means Lexington Precision Corporation, a Delaware corporation.

1.52.    ***Lexington Precision Common Stock*** means the shares of common stock of Lexington Precision.

1.53.    ***Lexington Rubber Group*** means Lexington Rubber Group, Inc., a Delaware corporation.

1.54.    ***Lien*** means any charge against or interest in property to secure payment of a debt or performance of an obligation.

1.55.    ***New Subordinated Notes*** means the 12% Senior Subordinated Notes due December 31, 2013, to be issued by Reorganized Lexington Precision pursuant to the New Subordinated Note Indenture, and having the principal terms set forth on Exhibit 1.55 (as same may be amended or supplemented).  In the event of any inconsistencies between such term sheet and the New Subordinated Note Indenture, the terms of the New Subordinated Note Indenture shall govern.

1.56.    ***New Subordinated Note Indenture*** means that certain indenture pursuant to which the New Subordinated Notes will be issued, substantially in the form to be included in the Plan Supplement.

1.57.    ***Other Priority Claim*** means any Claim entitled to priority in right of payment under section 507(a) of the Bankruptcy Code, other than an Administrative Expense Claim, a DIP Loan Claim, or a Priority Tax Claim.

1.58.    ***Other Secured Claim*** means any Secured Claim other than a Secured Tax Claim, the CapitalSource Secured Claim and the CSE Secured Claim.

1.59.    ***Plan Documents*** means the documents to be executed, delivered, assumed, and/or performed in conjunction with the consummation of the Plan on the Effective Date, including but not limited to (i) the New Subordinated Note Indenture, (ii) the Charter Amendment, and (iii) the list of executory contracts and unexpired leases listed on Schedule 8.1.  Each of the Plan Documents to be entered into as of the Effective Date will be included in draft form in the Plan Supplement.

1.60.    ***Plan*** means this Joint Plan of Reorganization Under Chapter 11 of the Bankruptcy Code, including the Plan Documents, the Plan Supplement, and the exhibits and schedules hereto and thereto, as the same may be amended or modified from time to time in accordance with the provisions of the Bankruptcy Code and the terms of the Plan.

1.61.    ***Plan Supplement*** means the document (as may be amended, modified or supplemented) containing the forms of documents specified in Section 13.10 of the Plan.

1.62.    ***Prepetition Credit Agreement*** means that certain Credit and Security Agreement, dated May 31, 2006 (as amended), between the Debtors, as borrowers, and CapitalSource, as a lender, as collateral agent and administrative agent for itself and other lenders, and as co-documentation agent, and Webster Business Credit Corporation as a lender and as co-documentation agent.

1.63.    ***Prepetition Loan Agreement*** means that certain Loan and Security Agreement, dated May 31, 2006 (as amended), between the Debtors, as borrowers, and CSE Mortgage, as a lender and a collateral agent for itself and each other lender, and DMD Special Situations Funding LLC, as a lender.

1.64.    ***Priority Tax Claim*** means any Claim of a governmental unit of the kind entitled to priority in payment as specified in sections 502(i) and 507(a)(8) of the Bankruptcy Code.

1.65.    ***Reorganized Debtors*** means each of the Debtors, as reorganized as of the Effective Date in accordance with the Plan, and their successors.

1.66.    ***Reorganized Lexington Precision*** means Lexington Precision, as reorganized as of the Effective Date in accordance with the Plan.

1.67.    ***Reorganized Lexington Rubber Group*** means Lexington Rubber Group, as reorganized as of the Effective Date in accordance with the Plan.

1.68.    ***Schedules*** means the schedules of assets and liabilities and the statements of financial affairs filed by the Debtors pursuant to section 521 of the Bankruptcy Code, Bankruptcy Rule 1007, and the Official Bankruptcy Forms of the Bankruptcy Rules, as such schedules and statements may be supplemented or amended on or prior to the Effective Date.

1.69.    ***Secured Claim*** means any Claim that is secured by a Lien on Collateral to the extent of the value of such Collateral, as determined in accordance with section 506(a) of the Bankruptcy Code, or, in the event that such Claim is subject to a permissible setoff under section 553 of the Bankruptcy Code, to the extent of such permissible setoff.

1.70.    ***Secured Tax Claim*** means any Secured Claim that, absent its secured status, would be entitled to priority in right of payment under section 507(a)(8) of the Bankruptcy Code (determined irrespective of any time limitations therein), and including any related Secured Claim for penalties.

1.71.    ***Senior Subordinated Notes*** means the 12% Senior Subordinated Notes due August 1, 2009, issued by Lexington Precision pursuant to the Indenture.

1.72.    ***Senior Subordinated Note Claim*** means any Claim arising under the Senior Subordinated Notes, which shall include interest from and after the Commencement Date at the rate of 12% per annum.

1.73.    ***Series B Preferred Stock Interest*** means the interest of any holder of issued and outstanding shares of Lexington Precision's $8 Cumulative Convertible Preferred Stock, Series B.

1.74.    ***Series C Preferred Stock*** means the shares of preferred stock, par value $100 per share, of Lexington Precision authorized as of the Commencement Date that will be issued hereunder and delivered to holders of certain Claims under the Plan, and having the principal terms set forth on Exhibit 1.74 (as same may be amended or supplemented).  In the event of any inconsistencies between such term sheet and the Charter Amendment, the terms of the Charter Amendment shall govern.

1.75.    ***Unliquidated Claim*** means any Claim, the amount of liability for which has not been fixed, whether pursuant to agreement, applicable law, or otherwise, as of the date on which such Claim is sought to be estimated.

1.76.    ***Unsecured Claim*** means any Claim that is not a Secured Claim, an Administrative Expense Claim, a Priority Tax Claim or Other Priority Claim.

### B.    Interpretation; Application of Definitions and Rules of Construction.

Unless otherwise specified, all section or exhibit references in the Plan are to the respective section in, or exhibit to, the Plan, as the same may be amended, waived, or modified from time to time.  The words "herein," "hereof," "hereto," "hereunder," and other words of similar import refer to the Plan as a whole and not to any particular section, subsection, or clause contained therein.  A term used herein that is not defined herein shall have the meaning ascribed to that term in the Bankruptcy Code.  The rules of construction contained in section 102 of the Bankruptcy Code shall apply to the Plan.  In the event that a particular term of the Plan (including any exhibits or schedules hereto) conflicts with a particular term of the definitive documentation required to be implemented pursuant to the terms of the Plan or any settlement or other agreement contemplated hereunder, the definitive documentation shall control and shall be binding on the parties thereto.  The headings in the Plan are for convenience of reference only and shall not limit or otherwise affect the provisions of the Plan.

## ARTICLE II

## ADMINISTRATIVE EXPENSE CLAIMS AND PRIORITY TAX CLAIMS

2.1.    ***Administrative Expense Claims***.

Except to the extent that a holder of an Allowed Administrative Expense Claim agrees to a less favorable treatment, each Allowed Administrative Expense Claim shall be paid by the Reorganized Debtors in full, in Cash, in an amount equal to such Allowed Administrative Expense Claim on or as soon as reasonably practicable following the later to occur of (a) the Effective Date and (b) the date on which such Administrative Expense Claim shall become an Allowed Claim; *provided, however*, that Allowed Administrative Expense Claims against any of the Debtors representing liabilities incurred in the ordinary course of business by any of the Debtors, as Debtors in Possession, or liabilities arising under loans or advances to or other obligations incurred by any of the Debtors, as Debtors in Possession, whether or not incurred in the ordinary course of business, shall be paid by the Debtors in the ordinary course of business, consistent with past practice and in accordance with the terms and subject to the conditions of any agreements governing, instruments evidencing, or other documents relating to such transactions.

2.2.    ***Professional Compensation and Reimbursement Claims***.

The Bankruptcy Court shall fix in the Confirmation Order a date for the filing of, and a date to hear and determine, all applications for final allowance of compensation for services rendered or reimbursement of expenses incurred through and including the Confirmation Date under sections 328 and 330 of the Bankruptcy Code or applications for allowance of Administrative Expense Claims arising

under section 503(b)(2), 503(b)(3), 503(b)(4), or 503(b)(5) of the Bankruptcy Code.  Unless otherwise agreed to by the claimant and the Debtors or the Reorganized Debtors, as applicable, the Allowed Administrative Expense Claims arising under section 330, 331, 503(b)(2), 503(b)(3), 503(b)(4), and 503(b)(5) of the Bankruptcy Code shall be paid in full, in Cash, as soon as practicable following the later to occur of (a) the Effective Date and (b) the date upon which any such Administrative Expense Claim becomes an Allowed Administrative Expense Claim.  The Debtors and the Reorganized Debtors, as applicable, are authorized to pay compensation for services rendered or reimbursement of expenses incurred after the Confirmation Date and until the Effective Date in the ordinary course of business and without the need for Bankruptcy Court approval.

2.3.    *Indenture Trustee Fee Claims*.

Notwithstanding any provision contained in this Plan to the contrary, unless otherwise agreed to by an indenture trustee and Reorganized Lexington Precision, all Indenture Trustee Fee Claims and fees for services related to distributions pursuant to the Plan shall be paid in Cash on the Effective Date by Reorganized Lexington Precision as Administrative Expense Claims, without the need for application to, or approval of, any court.  The Indenture Trustee's Charging Lien will be discharged solely upon payment in full of the Indenture Trustee Fee Claims.  Nothing herein shall be deemed to impair, waive or discharge the Charging Lien for any fees and expenses not paid by Reorganized Lexington Precision.

2.4.    *DIP Loan Claims.*

Except to the extent that a DIP Lender agrees to a different treatment, the DIP Loan Claims shall be paid in full, in Cash, as soon as reasonably practicable following the Effective Date.

2.5.    *Priority Tax Claims*.

Except to the extent that a holder of an Allowed Priority Tax Claim has been paid by the Debtors prior to the Effective Date or agrees to a less favorable treatment, each holder of an Allowed Priority Tax Claim shall receive, at the sole option of the Debtors or the Reorganized Debtors, (a) Cash in an amount equal to such Allowed Priority Tax Claim on or as soon as reasonably practicable following the later to occur of (i) the Effective Date and (ii) the date on which such Administrative Priority Tax Claim shall become an Allowed Priority Tax Claim, (b) equal semi-annual Cash payments in an aggregate amount equal to such Allowed Priority Tax Claim, together with interest at the applicable non-bankruptcy rate, commencing upon the later of the Effective Date and the date such Priority Tax Claim becomes an Allowed Priority Tax Claim, or as soon thereafter as is practicable and continuing over a period of eighteen (18) months (but in no event exceeding five (5) years from and after the Commencement Date), or (c) such other treatment as shall be determined by the Bankruptcy Court to provide the holder of such Allowed Priority Tax Claim deferred Cash payments having a value, as of the Effective Date, equal to such Allowed Priority Tax Claim.

# ARTICLE III

## CLASSIFICATION OF CLAIMS AND EQUITY INTERESTS

The following table designates the Classes of Claims against and Equity Interests in the Debtors and specifies which of those Classes are (i) impaired or unimpaired by the Plan and (ii) entitled to vote to accept or reject the Plan in accordance with section 1126 of the Bankruptcy Code or deemed to reject the Plan.

| CLASS | Designation | STATUS | ENTITLED TO VOTE? |
|---|---|---|---|
| **Class 1** | Other Priority Claims against Lexington Precision | Unimpaired | No (deemed to accept) |
| **Class 2(a)** | CapitalSource Secured Claims against Lexington Precision | Unimpaired | No (deemed to accept) |
| **Class 2(b)** | CSE Secured Claims against Lexington Precision | Unimpaired | No (deemed to accept) |
| **Class 3** | Secured Tax Claims against Lexington Precision | Unimpaired | No (deemed to accept) |
| **Class 4** | Other Secured Claims against Lexington Precision | Unimpaired | No (deemed to accept) |
| **Class 5** | Senior Subordinated Note Claims | Impaired | Yes |
| **Class 6** | Junior Subordinated Note Claims | Impaired | Yes |
| **Class 7** | General Unsecured Claims against Lexington Precision | Impaired | Yes |
| **Class 8** | Convenience Claims against Lexington Precision | Unimpaired | No (deemed to accept) |
| **Class 9** | Asbestos-Related Claims | Impaired | Yes |
| **Class 10** | Series B Preferred Stock Interests | Impaired | Yes |
| **Class 11** | Equity Interests in Lexington Precision | Impaired | Yes |
| **Class 12** | Other Priority Claims against Lexington Rubber Group | Unimpaired | No (deemed to accept) |
| **Class 13(a)** | CapitalSource Secured Claims against Lexington Rubber Group | Unimpaired | No (deemed to accept) |
| **Class 13(b)** | CSE Secured Claims against Lexington Rubber Group | Unimpaired | No (deemed to accept) |
| **Class 14** | Secured Tax Claims against Lexington Rubber Group | Unimpaired | No (deemed to accept) |
| **Class 15** | Other Secured Claims against Lexington Rubber Group | Unimpaired | No (deemed to accept) |
| **Class 16** | General Unsecured Claims against Lexington Rubber Group | Impaired | Yes |
| **Class 17** | Convenience Claims against Lexington Rubber Group | Unimpaired | No (deemed to accept) |
| **Class 18** | LRGI Equity Interests | Unimpaired | No (deemed to accept) |

# ARTICLE IV

## TREATMENT OF CLAIMS AND EQUITY INTERESTS

### 4.1. *Class 1: Other Priority Claims against Lexington Precision*

(a)    <u>Impairment and Voting</u>.  Class 1 is unimpaired by the Plan.  Each holder of an Allowed Other Priority Claim against Lexington Precision is conclusively presumed to have accepted the Plan and is not entitled to vote to accept or reject the Plan.

(b)    <u>Distributions</u>.  Except to the extent that a holder of an Allowed Other Priority Claim against Lexington Precision agrees to a less favorable treatment, each such holder shall receive, in full satisfaction of such Allowed Other Priority Claim, Cash in an amount equal to such Allowed Other Priority Claim, on or as soon as reasonably practicable after the later of (i) the Effective Date, and (ii) the date such Claim becomes Allowed.

### 4.2. *Class 2(a): CapitalSource Secured Claims against Lexington Precision*

(a)    <u>Impairment and Voting</u>.  Class 2(a) is unimpaired by the Plan.  Each holder of an Allowed CapitalSource Secured Claim against Lexington Precision is conclusively presumed to have accepted the Plan and is not entitled to vote to accept or reject the Plan.

(b)    <u>Distributions</u>.  Except to the extent that a holder of an Allowed CapitalSource Secured Claim against Lexington Precision agrees to a less favorable treatment, each such holder shall receive, in full satisfaction of such Claim, Cash in an amount equal to such Allowed CapitalSource Secured Claim (including accrued and unpaid postpetition interest at the non-default rate and any reasonable fees and costs payable under the Prepetition Credit Agreement and the Final Cash Collateral Order) on or as soon as reasonably practicable after the later of (i) the Effective Date, and (ii) the date such Claim becomes Allowed.

### 4.3. *Class 2(b): CSE Secured Claims against Lexington Precision*

(a)    <u>Impairment and Voting</u>.  Class 2(b) is unimpaired by the Plan.  Each holder of an Allowed CSE Secured Claim against Lexington Precision is conclusively presumed to have accepted the Plan and is not entitled to vote to accept or reject the Plan.

(b)    <u>Distributions</u>.  Except to the extent that a holder of an Allowed CSE Secured Claim against Lexington Precision agrees to a less favorable treatment, each such holder shall receive, in full satisfaction of such Claim, Cash in an amount equal to such Allowed CSE Secured Claim (including accrued and unpaid postpetition interest at the non-default rate and any reasonable fees and costs payable under the Prepetition Loan Agreement and the Final Cash Collateral Order) on or as soon as reasonably practicable after the later of (i) the Effective Date, and (ii) the date such Claim becomes Allowed.

### 4.4. *Class 3: Secured Tax Claims against Lexington Precision*

(a)    <u>Impairment and Voting</u>.  Class 3 is unimpaired by the Plan.  Each holder of an Allowed Secured Tax Claim against Lexington Precision is conclusively presumed to have accepted the Plan and is not entitled to vote to accept or reject the Plan.

(b)    <u>Distributions</u>.  Except to the extent that a holder of an Allowed Secured Tax Claim against Lexington Precision agrees to a less favorable treatment, each holder shall receive, at the

sole option of Lexington Precision or Reorganized Lexington Precision, (i) Cash in an amount equal to such Allowed Secured Tax Claim, including any interest on such Allowed Secured Tax Claim required to be paid pursuant to section 506(b) of the Bankruptcy Code, as soon as practicable after the later of the Effective Date and the date such Claim becomes Allowed, (ii) equal semi-annual Cash payments in an aggregate amount equal to such Allowed Secured Tax Claim, together with interest at the applicable non-bankruptcy rate, commencing upon the later of the Effective Date and the date such Secured Tax Claim becomes an Allowed Secured Tax Claim, or as soon thereafter as is practicable and continuing over a period of eighteen (18) months (but in no event exceeding five (5) years from and after the Commencement Date), or (iii) such other treatment as shall be determined by the Bankruptcy Court to provide the holder of such Allowed Secured Tax Claim deferred Cash payments having a value, as of the Effective Date, equal to such Allowed Secured Tax Claim.

4.5.    *Class 4: Other Secured Claims against Lexington Precision*

(a)    <u>Impairment and Voting</u>.  Class 4 is unimpaired by the Plan.  Each holder of an Allowed Other Secured Claim against Lexington Precision is conclusively presumed to have accepted the Plan and is not entitled to vote to accept or reject the Plan.

(b)    <u>Distributions</u>.  Except to the extent that a holder of an Allowed Other Secured Claim against Lexington Precision agrees to a less favorable treatment, at the sole option of Lexington Precision or Reorganized Lexington Precision, (i) each Allowed Other Secured Claim shall be reinstated and rendered unimpaired in accordance with section 1124(2) of the Bankruptcy Code, notwithstanding any contractual provision or applicable nonbankruptcy law that entitles the holder of an Allowed Other Secured Claim to demand or receive payment of such Allowed Other Secured Claim prior to the stated maturity of such Allowed Other Secured Claim from and after the occurrence of a default, or (ii) each holder of an Allowed Other Secured Claim shall receive, in full satisfaction of such Allowed Other Secured Claim, either (w) Cash in an amount equal to such Allowed Other Secured Claim, including any interest on such Allowed Other Secured Claim required to be paid pursuant to section 506(b) of the Bankruptcy Code, (x) the proceeds of the sale or disposition of the Collateral securing such Allowed Other Secured Claim to the extent of the value of the holder's security interest in such Collateral, (y) the Collateral securing such Allowed Other Secured Claim and any interest on such Allowed Other Secured Claim required to be paid pursuant to section 506(b) of the Bankruptcy Code, or (z) such other distribution as necessary to satisfy the requirements of section 1124 of the Bankruptcy Code.  In the event Lexington Precision or Reorganized Lexington Precision elects to treat a Claim under clause (w) or (x) of this Section, the Liens securing such Secured Claim shall be deemed released.

4.6.    *Class 5:  Senior Subordinated Note Claims*

(a)    <u>Impairment and Voting</u>.  Class 5 is impaired by the Plan.  Each holder of an Allowed Senior Subordinated Note Claim is entitled to vote to accept or reject the Plan.

(b)    <u>Distributions</u>.  Except to the extent that a holder of an Allowed Senior Subordinated Note Claim agrees to a less favorable treatment, as soon as reasonably practicable after the later of (i) the Effective Date, and (ii) the date the Senior Subordinated Note Claim becomes Allowed, each holder of an Allowed Senior Subordinated Note Claim shall receive, in full satisfaction of such Allowed Senior Subordinated Note Claim, (a) such holder's *pro rata* share (based upon the principal amount of Senior Subordinated Notes held by each holder) of $15,000,000.00 in principal amount of New Subordinated Notes, and (b) at the sole option of each holder of an Allowed Senior Subordinated Note Claim either (y) a number of shares of Lexington Precision Common Stock having a value equal to the excess of such holder's Allowed Senior Subordinated Note Claim over the principal amount of New Subordinated Notes issued to such holder, or (z) a number of shares of Series C Preferred Stock with a

liquidation preference equal to the excess of such holder's Allowed Senior Subordinated Note Claim over the principal amount of New Subordinated Notes issued to such holder.

4.7.   ***Class 6:  Junior Subordinated Note Claims***

(a)   <u>Impairment and Voting</u>.  Class 6 is impaired by the Plan.  Each holder of an Allowed Junior Subordinated Note Claim is entitled to vote to accept or reject the Plan.

(b)   <u>Distributions</u>. As soon as reasonably practicable after the later of (i) the Effective Date, and (ii) the date the Junior Subordinated Note Claim becomes Allowed, each holder of an Allowed Junior Subordinated Note Claim shall receive, in full satisfaction of such Junior Subordinated Note Claim, a number of shares of Lexington Precision Common Stock having a value equal to the full amount of such Allowed Junior Subordinated Note Claim.

4.8.   ***Class 7:  General Unsecured Claims against Lexington Precision***

(a)   <u>Impairment and Voting</u>.  Class 7 is impaired by the Plan.  Each holder of an Allowed General Unsecured Claim against Lexington Precision is entitled to vote to accept or reject the Plan.

(b)   <u>Distributions</u>.  Each holder of an Allowed General Unsecured Claim against Lexington Precision shall receive, in full satisfaction of such Allowed General Unsecured Claim, (i) Cash in the amount of 25% of such Allowed General Unsecured Claim as soon as reasonably practicable after the later of (a) the Effective Date, and (b) the date such General Unsecured Claim becomes Allowed, and (ii) three equal Cash payments, each in an amount equal to 26.5% of such allowed claim, payable six months, twelve months and eighteen months after the Effective Date or, if later, the date such claim becomes Allowed.

4.9.   ***Class 8: Convenience Claims against Lexington Precision***

(a)   <u>Impairment and Voting</u>.  Class 8 is unimpaired by the Plan.  Each holder of an Allowed Convenience Claim in Lexington Precision is conclusively presumed to have accepted the Plan and is not entitled to vote to accept or reject the Plan.

(b)   <u>Distributions</u>.  Each holder of an Allowed Convenience Claim against Lexington Precision shall receive, in full satisfaction of such Allowed Convenience Claim, Cash in an amount equal to 100% of such Allowed Convenience Claim, on or as soon as reasonably practicable after the later of (i) the Effective Date, and (ii) the date such Claim becomes Allowed.

4.10.   ***Class 9:  Asbestos-Related Claims***

(a)   <u>Impairment and Voting</u>.  Class 9 is impaired by the Plan.  Each holder of an Asbestos-Related Claim is entitled to vote to accept or reject the Plan.

(b)   <u>Distributions</u>.  On the Effective Date or as soon thereafter as reasonably practicable, each Asbestos-Related Claim shall be reinstated; *provided, however*, that recovery on any Asbestos-Related Claim shall be limited to proceeds of the Insurance Policies and holders of Asbestos-Related Claims shall be permanently and forever stayed, restrained, and enjoined from taking any action for the purpose of, directly or indirectly, collecting, recovering, or receiving payment of, on, or with respect to any Asbestos-Related Claim against the Debtors or the Reorganized Debtors (other than against the Insurance Policies).

4.11.    *Class 10:  Series B Preferred Stock Interests*

(a)    <u>Impairment and Voting</u>.  Class 10 is impaired by the Plan.  Each holder of a Series B Preferred Stock Interest is entitled to vote to accept or reject the Plan.

(b)    <u>Distributions</u>.  On the Effective Date, the Series B Preferred Stock Interests shall be cancelled and each holder of a Series B Preferred Stock Interest shall receive a number of shares of Lexington Precision Common Stock having a value equal to the full amount of its Series B Preferred Stock Interest.

4.12.    *Class 11:  Equity Interests in Lexington Precision*

(a)    <u>Impairment and Voting</u>.  Class 11 is impaired by the Plan.  Each holder of an Equity Interest in Lexington Precision is entitled to vote to accept or reject the Plan.

(b)    <u>Distributions</u>.  Although Equity Interests in Lexington Precision shall be unaltered, Equity Interests in Lexington Precision will be diluted because of the increase in the number of authorized shares of Lexington Precision Common Stock.

4.13.    *Class 12:  Other Priority Claims against Lexington Rubber Group*

(a)    <u>Impairment and Voting</u>.  Class 12 is unimpaired by the Plan.  Each holder of an Allowed Other Priority Claim against Lexington Rubber Group is conclusively presumed to have accepted the Plan and is not entitled to vote to accept or reject the Plan.

(b)    <u>Distributions</u>.  Except to the extent that a holder of an Allowed Other Priority Claim against Lexington Rubber Group agrees to a less favorable treatment, each such holder shall receive, in full satisfaction of such Allowed Other Priority Claim, Cash in an amount equal to such Allowed Other Priority Claim, on or as soon as reasonably practicable after the later of (i) the Effective Date, and (ii) the date such Claim becomes Allowed.

4.14.    *Class 12(a):  CapitalSource Secured Claims against Lexington Rubber Group*

(a)    <u>Impairment and Voting</u>.  Class 12(a) is unimpaired by the Plan.  Each holder of an Allowed CapitalSource Secured Claim against Lexington Rubber Group is conclusively presumed to have accepted the Plan and is not entitled to vote to accept or reject the Plan.

(b)    <u>Distributions</u>.  Except to the extent that a holder of an Allowed CapitalSource Secured Claim against Lexington Rubber Group agrees to a less favorable treatment, each such holder shall receive, in full satisfaction of such Claim, Cash in an amount equal to such Allowed CapitalSource Secured Claim (including accrued and unpaid postpetition interest at the non-default rate and any reasonable fees and costs payable under the Prepetition Credit Agreement and the Final Cash Collateral Order), on or as soon as reasonably practicable after the later of (i) the Effective Date, and (ii) the date such Claim becomes Allowed.

4.15.    *Class 12(b):  CSE Secured Claims against Lexington Rubber Group*

(a)    <u>Impairment and Voting</u>.  Class 12(b) is unimpaired by the Plan.  Each holder of an Allowed CSE Secured Claim against Lexington Rubber Group is conclusively presumed to have accepted the Plan and is not entitled to vote to accept or reject the Plan.

(b)    _Distributions_.  Except to the extent that a holder of an Allowed CSE Secured Claim against Lexington Rubber Group agrees to a less favorable treatment, each such holder shall receive, in full satisfaction of such Claim, Cash in an amount equal to such Allowed CSE Secured Claim (including accrued and unpaid postpetition interest at the non-default rate and any reasonable fees and costs payable under the Prepetition Loan Agreement and the Final Cash Collateral Order) on or as soon as reasonably practicable after the later of (i) the Effective Date, and (ii) the date such Claim becomes Allowed.

### 4.16.    *Class 13:  Secured Tax Claims against Lexington Rubber Group*

(a)    _Impairment and Voting_.  Class 13 is unimpaired by the Plan.  Each holder of an Allowed Secured Tax Claim against Lexington Rubber Group is conclusively presumed to have accepted the Plan and is not entitled to vote to accept or reject the Plan.

(b)    _Distributions_.  Except to the extent that a holder of an Allowed Secured Tax Claim against Lexington Rubber Group agrees to a less favorable treatment, each holder shall receive, at the sole option of Lexington Rubber Group or Reorganized Lexington Rubber Group, (i) Cash in an amount equal to such Allowed Secured Tax Claim, including any interest on such Allowed Secured Tax Claim required to be paid pursuant to section 506(b) of the Bankruptcy Code, as soon as practicable after the later of the Effective Date and the date such Claim becomes Allowed, (ii) equal semi-annual Cash payments in an aggregate amount equal to such Allowed Secured Tax Claim, together with interest at the applicable non-bankruptcy rate, commencing upon the later of the Effective Date and the date such Secured Tax Claim becomes an Allowed Secured Tax Claim, or as soon thereafter as is practicable and continuing over a period of eighteen (18) months (but in no event exceeding five (5) years from and after the Commencement Date), or (iii) such other treatment as shall be determined by the Bankruptcy Court to provide the holder of such Allowed Senior Tax Claim deferred Cash payments having a value, as of the Effective Date, equal to such Allowed Senior Tax Claim.

### 4.17.    *Class 14: Other Secured Claims against Lexington Rubber Group*

(a)    _Impairment and Voting_.  Class 14 is unimpaired by the Plan.  Each holder of an Allowed Other Secured Claim against Lexington Rubber Group is conclusively presumed to have accepted the Plan and is not entitled to vote to accept or reject the Plan.

(b)    _Distributions_.  Except to the extent that a holder of an Allowed Other Secured Claim against Lexington Rubber Group agrees to a less favorable treatment, at the sole option of Lexington Rubber Group or Reorganized Lexington Rubber Group, (i) each Allowed Other Secured Claim shall be reinstated and rendered unimpaired in accordance with section 1124(2) of the Bankruptcy Code, notwithstanding any contractual provision or applicable nonbankruptcy law that entitles the holder of an Allowed Other Secured Claim to demand or receive payment of such Allowed Other Secured Claim prior to the stated maturity of such Allowed Other Secured Claim from and after the occurrence of a default, or (ii) each holder of an Allowed Other Secured Claim shall receive, in full satisfaction of such Allowed Other Secured Claim, either (w) Cash in an amount equal to such Allowed Other Secured Claim, including any interest on such Allowed Other Secured Claim required to be paid pursuant to section 506(b) of the Bankruptcy Code, (x) the proceeds of the sale or disposition of the Collateral securing such Allowed Other Secured Claim to the extent of the value of the holder's security interest in such Collateral, (y) the Collateral securing such Allowed Other Secured Claim and any interest on such Allowed Other Secured Claim required to be paid pursuant to section 506(b) of the Bankruptcy Code, or (z) such other distribution as necessary to satisfy the requirements of section 1124 of the Bankruptcy Code.  In the event Lexington Rubber Group or Reorganized Lexington Rubber Group elects to treat a Claim under clause (w) or (x) of this Section, the Liens securing such Secured Claim shall be deemed released.

4.18.  ***Class 15:  General Unsecured Claims against Lexington Rubber Group***

(a)  <u>Impairment and Voting</u>.  Class 15 is impaired by the Plan.  Each holder of an Allowed General Unsecured Claim against Lexington Rubber Group is entitled to vote to accept or reject the Plan.

(b)  <u>Distributions</u>.  Except to the extent that a holder of an Allowed General Unsecured Claim against Lexington Rubber Group agrees to a less favorable treatment, each such holder shall receive, in full satisfaction of such Allowed General Unsecured Claim, (i) Cash in the amount of 25% of such Allowed General Unsecured Claim as soon as reasonably practicable after the later of (a) the Effective Date, and (b) the date such General Unsecured Claim becomes Allowed, and (ii) three equal Cash payments, each in an amount equal to 26.5% of such allowed claim, payable six months, twelve months and eighteen months after the Effective Date or, if late, the date such claim becomes Allowed.

4.19.  ***Class 16: Convenience Claims against Lexington Rubber Group***

(a)  <u>Impairment and Voting</u>.  Class 16 is unimpaired by the Plan.  Each holder of an Allowed Convenience Claim in Lexington Rubber Group is conclusively presumed to have accepted the Plan and is not entitled to vote to accept or reject the Plan.

(b)  <u>Distributions</u>.  Each holder of an Allowed Convenience Claim against Lexington Rubber Group shall receive, in full satisfaction of such Allowed Convenience Claim, Cash in an amount equal to 100% of such Allowed Convenience Claim, on or as soon as reasonably practicable after the later of (i) the Effective Date, and (ii) the date such Claim becomes Allowed.

4.20.  ***Class 17:  Equity Interests in Lexington Rubber Group***

(a)  <u>Impairment and Voting</u>.  Class 17 is unimpaired by the Plan.  Each holder of an Equity Interest in Lexington Rubber Group is conclusively presumed to have accepted the Plan and is not entitled to vote to accept or reject the Plan.

(b)  <u>Distributions</u>.  All Equity Interests in Lexington Rubber Group shall be unaltered.

## ARTICLE V

## MEANS FOR IMPLEMENTATION

5.1.  ***Intercompany Claims.***

Notwithstanding anything to the contrary herein, Intercompany Claims shall be adjusted, continued or discharged to the extent determined appropriate by the Debtors or the Reorganized Debtors, in their sole discretion.  Any such transaction may be effected on or subsequent to the Effective Date without any further action by the stockholders of any of the Debtors, the Debtors in Possession or the Reorganized Debtors.

5.2.  ***Cancellation and Surrender of Existing Securities and Agreements***.

(a)  Except (i) as otherwise expressly provided in the Plan, (ii) with respect to executory contracts or unexpired leases that have been assumed by the Debtors, (iii) for purposes of evidencing a right to distributions under the Plan, or (iv) with respect to any Claim that is reinstated and

rendered unimpaired under the Plan, on the Effective Date, any document, agreement, or debt instrument evidencing any Claim or Series B Preferred Stock Interest, including without limitation, the Prepetition Credit Agreement, the Prepetition Loan Agreement, the DIP Notes, the Indenture and all notes issued thereunder, shall be deemed automatically cancelled without further act or action under any applicable agreement, law, regulation, order or rule and the obligations of the Debtors thereunder shall be discharged.

(b)      Unless waived by Lexington Precision or Reorganized Lexington Precision, each holder of the Senior Subordinated Notes shall surrender such note(s) to the Indenture Trustee, or in the event such note(s) are held in the name of, or by a nominee of, the Depository Trust Company, the Debtors shall follow the applicable procedures of the Depository Trust Company for book-entry transfer of the Senior Subordinated Notes to the Indenture Trustee.  No distributions hereunder shall be made for or on behalf of any such holder unless and until such note is received by the Indenture Trustee or appropriate instructions from Depository Trust Company shall be received by the Indenture Trustee, or the loss, theft or destruction of such note is established to the reasonable satisfaction of the Indenture Trustee, which satisfaction may require such holder to (i) submit a lost instrument affidavit and an indemnity bond and (ii) hold the Debtors and the Indenture Trustee harmless in respect of such note and any distributions made in respect thereof.  Upon compliance with this Section by a holder of any note, such holder shall, for all purposes under this Plan, be deemed to have surrendered such note.  Any holder of Senior Subordinated Notes that fails to surrender such note or satisfactorily explain its non-availability to the applicable Indenture Trustee within one (1) year of the Effective Date shall be deemed to have no further Claim against the Debtors, or their property or against the Indenture Trustee in respect of such Claim and shall not participate in any distribution hereunder, and the distribution that would have otherwise been made to such holder shall be returned to Reorganized Lexington Precision by the Indenture Trustee.

(c)      Unless waived by Lexington Precision or Reorganized Lexington Precision, any holder of the Junior Subordinated Note shall surrender such note to Reorganized Lexington Precision.  No distributions hereunder shall be made for or on behalf of any such holder unless and until such note is received by Reorganized Lexington Precision, or the loss, theft or destruction of such note is established to the reasonable satisfaction of Reorganized Lexington Precision, which satisfaction may require such holder to (i) submit a lost instrument affidavit and an indemnity bond and (ii) hold the Debtors harmless in respect of such note and any distributions made in respect thereof.  Upon compliance with this Section by a holder of any note, such holder shall, for all purposes under this Plan, be deemed to have surrendered such note.  Any holder of the Junior Subordinated Note that fails to surrender such note or satisfactorily explain its non-availability to Reorganized Lexington Precision within one (1) year of the Effective Date shall be deemed to have no further Claim against the Debtors, or their property in respect of such Claim and shall not participate in any distribution hereunder, and the distribution that would have otherwise been made to such holder shall be retained by Reorganized Lexington Precision.

5.3.     ***Charter Amendment***

On the Effective Date or as soon as practicable thereafter, Lexington Precision will file the Charter Amendment with the Secretary of State of the State of Delaware.  The Charter Amendment will amend Lexington Precision's certificate of incorporation in order to, among other things, (i) establish the rights and priorities of the Series C Preferred Stock, (ii) increase the number of authorized shares of Lexington Precision Common Stock to 20,000,000, and (iii) reduce the par value of Lexington Precision Common Stock from $0.25 to $0.01 per share.   Lexington Precision is hereby authorized to file the Charter Amendment without the need for any further corporate action and without any further action by holders of Claims, Series B Preferred Stock Interests, or Equity Interests.

5.4.    ***Incurrence of New Indebtedness***.

The Reorganized Debtors' entry into the Exit Facility and the incurrence of the indebtedness thereunder on the Effective Date is hereby authorized without the need for any further corporate action and without any further action by holders of Claims, Series B Preferred Stock Interests, or Equity Interests.

5.5.    ***Issuance of Series C Preferred Stock***.

The issuance by Reorganized Lexington Precision of the Series C Preferred Stock on the Effective Date is hereby authorized without the need for any further corporate action and without any further action by holders of Claims, Series B Preferred Stock Interests, or Equity Interests.  The Series C Preferred Stock shall have the principal terms set forth in Exhibit 1.74 to the Plan and shall be distributed to holders of Allowed Senior Subordinated Note Claims pursuant to Section 4.6 of the Plan.

5.6.    ***Issuance of Lexington Precision Common Stock.***

The issuance by Reorganized Lexington Precision of additional shares of Lexington Precision Common Stock on the Effective Date is hereby authorized without the need for any further corporate action and without any further action by holders of Claims, Series B Preferred Stock Interests, or Equity Interests.  Newly-issued shares of Lexington Precision Common Stock shall be distributed to holders of Allowed Senior Subordinated Note Claims, Allowed Junior Subordinated Note Claims and Series B Preferred Stock Interests pursuant to Sections 4.6, 4.7, and 4.11 of the Plan.

5.7.    ***Issuance of the New Subordinated Notes.***

Reorganized Lexington Precision is hereby authorized, on the Effective Date, to execute and deliver the New Subordinated Note Indenture and to issue the New Subordinated Notes without the need for any further corporate action and without any further action by holders of Claims, Series B Preferred Stock Interests, or Equity Interests.  The New Subordinated Notes shall be distributed to holders of Allowed Senior Subordinated Note Claims pursuant to Section 4.6 of the Plan.

5.8.    ***Exemption from Securities Laws***.

To the maximum extent provided by section 1145 of the Bankruptcy Code and applicable non-bankruptcy law, the issuance under the Plan of the New Subordinated Notes, Series C Preferred Stock and Lexington Precision Common Stock will be exempt from registration under the Securities Act of 1933, as amended, and all rules and regulations promulgated thereunder, and under applicable state securities laws.

## ARTICLE VI

## VOTING AND DISTRIBUTIONS

6.1.    ***Voting of Claims***.

Each holder of an Allowed Claim in an impaired Class of Claims that is entitled to vote on the Plan pursuant to Article III of the Plan shall be entitled to vote separately to accept or reject the Plan, as provided in such order as is entered by the Bankruptcy Court establishing procedures with respect to the solicitation and tabulation of votes to accept or reject the Plan, or any other order or orders of the Bankruptcy Court.

6.2.    *Nonconsensual Confirmation*.

If any impaired class of Claims entitled to vote shall not accept the Plan by the requisite statutory majority provided in section 1126(c) of the Bankruptcy Code, the Debtors reserve the right to undertake to have the Bankruptcy Court confirm the Plan under section 1129(b) of the Bankruptcy Code.

6.3.    *Distribution Record Date*.

On the Distribution Record Date the claims register shall be closed and any transfer of any Claim therein shall be prohibited.  The Disbursing Agent shall instead be authorized and entitled to recognize and deal for all purposes under the Plan with only those record holders stated on the claims register as of the close of business on the Distribution Record Date.

6.4.    *Date of Distributions*.

In the event that any payment or act under the Plan is required to be made or performed on a date that is not a Business Day, then the making of such payment or the performance of such act may be completed on the next succeeding Business Day, but shall be deemed to have been completed as of the required date.

6.5.    *Disbursing Agent*.

All distributions under the Plan (other than with respect to the Allowed Senior Subordinated Note Claims) shall be made by Reorganized Lexington Precision as the Disbursing Agent or such other Entity designated by the Debtors as a Disbursing Agent.  The Indenture Trustee, or such other entity designated by the Debtors, shall be the Disbursing Agent for the Senior Subordinated Notes. The Disbursing Agent shall not be required to give any bond or surety or other security for the performance of its duties unless otherwise ordered by the Bankruptcy Court and, in the event that a Disbursing Agent is so otherwise ordered, all costs and expenses of procuring any such bond or surety shall be borne by the Reorganized Debtors.

6.6.    *Rights and Powers of Disbursing Agent*.

The Disbursing Agent shall be empowered to (a) effect all actions and execute all agreements, instruments and other documents necessary to perform its duties under the Plan, (b) make all distributions contemplated hereby, and (c) exercise such other powers as may be vested in the Disbursing Agent by order of the Bankruptcy Court, pursuant to the Plan or as deemed by the Disbursing Agent to be necessary and proper to implement the provisions hereof.

6.7.    *Expenses of the Disbursing Agent*.

Except as otherwise ordered by the Bankruptcy Court, any reasonable fees and expenses incurred by the Disbursing Agent on or after the Effective Date shall be paid in Cash by the Reorganized Debtors in the ordinary course of business.

6.8.    *Delivery of Distributions*.

(a)    <u>General</u>.  Subject to Bankruptcy Rule 9010, all distributions to a holder of an Allowed Claim shall be made at the address of the holder thereof as set forth on the Schedules filed with the Bankruptcy Court or on the books and records of the Debtors or their agents or in a letter of transmittal unless the Debtors have been notified in writing of a change of address, including, without

limitation, by the filing of a proof of claim by such holder that contains an address for such holder different from the address reflected on such Schedules for such holder.

(b)      Distributions to holders of Allowed Senior Subordinated Note Claims. Reorganized Lexington Precision shall deliver all distributions in respect of Allowed Senior Subordinated Note Claims to the Indenture Trustee  or such other entity designated by the Debtors as the Disbursing Agent under the Senior Subordinated Notes.  Upon delivery of the foregoing distributions to the Indenture Trustee or such designee, Reorganized Lexington Precision shall be released of all liability with respect to the delivery of such distributions.  The Indenture Trustee or such designee shall transmit the distributions to the holders of the Allowed Senior Subordinated Note Claims.  Reorganized Lexington Precision shall provide whatever reasonable assistance may be required by the Indenture Trustee or such designee with respect to such distributions.

(c)      Withholding and Reporting Requirements.  In connection with the Plan and all instruments issued in connection therewith and distributed thereon, any party issuing any instrument or making any distribution under the Plan, including any party described in Section 6.5 above, shall comply with all applicable withholding and reporting requirements imposed by any federal, state or local taxing authority, and all distributions under the Plan shall be subject to any such withholding or reporting requirements.  Notwithstanding the above, each holder of an Allowed Claim that is to receive a distribution under the Plan shall have the sole and exclusive responsibility for the satisfaction and payment of any tax obligations imposed by any governmental unit, including income, withholding and other tax obligations, on account of such distribution.  Any party issuing any instrument or making any distribution under the Plan has the right, but not the obligation, to not make a distribution until such holder has made arrangements satisfactory to such issuing or disbursing party for payment of any such tax obligations.

6.9.    *Unclaimed Distributions*.

In the event that any distribution to any holder is returned as undeliverable, the Reorganized Debtors shall use reasonable efforts to determine the current address of such holder, but no distribution to such holder shall be made unless and until the Reorganized Debtors have determined the then-current address of such holder, at which time such distribution shall be made to such holder without interest from the original distribution date through the new distribution date; *provided* that such distributions shall be deemed unclaimed property under section 347(b) of the Bankruptcy Code at the expiration of one year from the Effective Date.  After such date, all unclaimed property or interest in property (including any stock) shall revert to Reorganized Lexington Precision or Reorganized Lexington Rubber Group, as applicable, and the Claim of any other Entity to such property or interest in property shall be discharged and forever barred.

6.10.    *Manner of Payment*.

At the option of the Disbursing Agent, any Cash payment to be made hereunder may be made by a check or wire transfer or as otherwise required or provided in applicable agreements.

6.11.    *Fractional Shares*.

No fractional shares of Lexington Precision Common Stock or Series C Preferred Stock shall be distributed under the Plan.  When any distribution pursuant to the Plan on account of an Allowed Claim would otherwise result in the issuance of a number of shares of Lexington Precision Common Stock or Series C Preferred Stock that is not a whole number, the actual distribution of shares of Lexington Precision Common Stock or Series C Preferred Stock shall be rounded as follows:  (i) fractions

of one-half (½) or greater shall be rounded to the next higher whole number and (ii) fractions of less than one-half (½) shall be rounded to the next lower whole number with no further payment or other distribution therefor.  The total number of authorized shares of Lexington Precision Common Stock or Series C Preferred Stock to be distributed to holders of Allowed Claims shall be adjusted as necessary to account for the rounding provided in this Section 6.11.

6.12.    *Minimum Cash Distributions.*

Notwithstanding anything set forth herein to the contrary, no payment of Cash less than $50 shall be made to any holder of an Allowed Claim unless a request therefor is made in writing to the Disbursing Agent.

6.13.    *Setoffs*.

The Debtors may, but shall not be required to, set off against any Claim (for purposes of determining the Allowed amount of such Claim on which distribution shall be made) any Claims of any nature whatsoever that the Debtors may have against the holder of such Claim, but neither the failure to do so nor the allowance of any Claim hereunder shall constitute a waiver or release by the Debtors of any such Claim the Debtors may have against the holder of such Claim.

## ARTICLE VII

## PROCEDURES FOR DISPUTED CLAIMS

7.1.    *Objections*.

Objections to all Claims against the Debtors may be interposed and prosecuted only by the Debtors and the Reorganized Debtors.  The Reorganized Debtors shall be entitled to object to any Claim through and after the Effective Date.  Any objections to Claims shall be served and filed with the Bankruptcy Court on or before the later of (i) one hundred twenty (120) days after the Effective Date, as such time may be extended by order of the Bankruptcy Court and (ii) such later date as may be fixed by the Bankruptcy Court, whether fixed before or after the date specified in clause (i) above.

7.2.    *No Payment Pending Allowance*.

Notwithstanding any other provision in the Plan, if any portion of a Claim is disputed, then no payment or distribution provided hereunder shall be made on account of any portion of such Claim unless and until such Disputed Claim becomes an Allowed Claim.

7.3.    *Distributions After Allowance*.

To the extent that a Disputed Claim becomes an Allowed Claim, the Disbursing Agent shall distribute to the holder of such Claim, the property distributable with respect to such Claim in accordance with Article IV of the Plan.  Such distributions shall be made as soon as practicable after the later of (i) the date that the order or judgment of the Bankruptcy Court allowing such Disputed Claim (or portion thereof) becomes a Final Order, (ii) the date on which any objection to such Disputed Claim has been withdrawn, or (iii) the date on which such Disputed Claim has been settled, compromised or otherwise resolved.  To the extent that all or a portion of a Disputed Claim is disallowed, the holder of such Claim shall not receive any distribution on account of the portion of such Claim that is disallowed and any property withheld, if any, pending the resolution of such Claim shall revest in the applicable Reorganized Debtor.

7.4.    ***Resolution of Administrative Expense Claims and other Claims***.

On and after the Effective Date, the Reorganized Debtors shall have the authority to compromise, settle, otherwise resolve, or withdraw any objections to Administrative Expense Claims and any other Claims and to compromise, settle, or otherwise resolve any Disputed Claims without approval of the Bankruptcy Court, other than with respect to Administrative Expense Claims relating to compensation of professionals.

7.5.    ***Estimation of Claims***.

Requests for estimation of all Claims against the Debtors may be interposed and prosecuted only by the Debtors and the Reorganized Debtors.  The Debtors and the Reorganized Debtors may at any time request that the Bankruptcy Court estimate any Contingent Claim, Unliquidated Claim, or Disputed Claim pursuant to section 502(c) of the Bankruptcy Code regardless of whether any of the Debtors or the Reorganized Debtors previously objected to such Claim or whether the Bankruptcy Court has ruled on any such objection, and the Bankruptcy Court will retain jurisdiction to estimate any Claim at any time during litigation concerning any objection to any Claim, including, without limitation, during the pendency of any appeal relating to any such objection.  In the event that the Bankruptcy Court estimates any Contingent Claim, Unliquidated Claim, or Disputed Claim, the amount so estimated shall constitute either the Allowed amount of such Claim or a maximum limitation on such Claim, as determined by the Bankruptcy Court.  If the estimated amount constitutes a maximum limitation on the amount of such Claim, the Debtors or the Reorganized Debtors may pursue supplementary proceedings to object to the allowance of such Claim.  All of the aforementioned objection, estimation and resolution procedures are intended to be cumulative and not exclusive of one another.  Claims may be estimated and subsequently compromised, settled, withdrawn, or resolved by any mechanism approved by the Bankruptcy Court.

7.6.    ***Interest***.

To the extent that a Disputed Claim becomes an Allowed Claim after the Effective Date, the holder of such Claim shall not be entitled to any interest thereon from the Effective Date to the date such Claim becomes Allowed.

## ARTICLE VIII

## EXECUTORY CONTRACTS AND UNEXPIRED LEASES

8.1.    ***Assumption or Rejection of Executory Contracts and Unexpired Leases***.

Pursuant to sections 365(a) and 1123(b)(2) of the Bankruptcy Code, all executory contracts and unexpired leases that exist between the Debtors and any person or entity shall be deemed assumed by the Debtors as of the Effective Date, except for any executory contract or unexpired lease (i) that has been assumed, assumed and assigned, or rejected pursuant to an order of the Bankruptcy Court entered on or before the Effective Date, (ii) as to which a motion for approval of the assumption, assumption and assignment, or rejection has been filed and served prior to the Confirmation Date, or (iii) that is specifically designated as a contract or lease to be rejected on Schedule 8.1, which Schedule shall be contained in the Plan Supplement; *provided*, *however*, that the Debtors reserve the right, on or prior to the Confirmation Date, to amend Schedule 8.1 to delete therefrom or add thereto any executory contract or unexpired lease, in which event such executory contract(s) or unexpired lease(s) shall be deemed to be, respectively, either assumed or rejected as of the Effective Date.  The Debtors shall provide notice of any amendments to Schedule 8.1 to the parties to the executory contracts and unexpired leases affected

thereby.  The listing of a document on Schedule 8.1 shall not constitute an admission by the Debtors that such document is an executory contract or an unexpired lease or that the Debtors have any liability thereunder.

        8.2.     **_Approval of Assumption or Rejection of Executory Contracts and Unexpired Leases_**.

        Entry of the Confirmation Order shall, subject to and upon the occurrence of the Effective Date, constitute (i) the approval, pursuant to sections 365(a) and 1123(b)(2) of the Bankruptcy Code, of the assumption of the executory contracts and unexpired leases assumed pursuant to Section 8.1 of the Plan, (ii) the extension of time, pursuant to section 365(d)(4) of the Bankruptcy Code, within which the Debtors may assume, assume and assign, or reject the executory contracts and unexpired leases specified in Section 8.1 of the Plan through the date of entry of an order approving the assumption, assumption and assignment, or rejection of such executory contracts and unexpired leases and (iii) the approval, pursuant to sections 365(a) and 1123(b)(2) of the Bankruptcy Code, of the rejection of the executory contracts and unexpired leases rejected pursuant to Section 8.1 of the Plan.

        8.3.     **_Inclusiveness_**.

        Unless otherwise specified on Schedule 8.1 of the Plan Supplement, each executory contract and unexpired lease listed or to be listed on Schedule 8.1 shall include any and all modifications, amendments, supplements, restatements, or other agreements made directly or indirectly by any agreement, instrument, or other document that in any manner affects such executory contract or unexpired lease, without regard to whether such agreement, instrument or other document is listed on Schedule 8.1.

        8.4.     **_Cure of Defaults_**.

        Except to the extent that different treatment has been agreed to by the non-debtor party or parties to any executory contract or unexpired lease to be assumed pursuant to Section 8.1 of the Plan, the Debtors shall, pursuant to the provisions of sections 1123(a)(5)(G) and 1123(b)(2) of the Bankruptcy Code and consistent with the requirements of section 365 of the Bankruptcy Code, at least 20 days prior to the Confirmation Hearing, file with the Bankruptcy Court and serve by first class mail on each non-debtor party to such executory contracts or unexpired leases to be assumed pursuant to Section 8.1 of the Plan, a notice (the "Assumption Notice"), which shall list the cure amount as to each executory contract or unexpired lease to be assumed.  The parties to such executory contracts or unexpired leases to be assumed or assumed and assigned by the Debtors shall have twenty (20) days from the date of service of the Assumption Notice to file and serve any objection to the cure amounts listed by the Debtors.  If there are any objections filed, the Bankruptcy Court shall hold a hearing on a date to be set by the Bankruptcy Court.  Notwithstanding Section 8.1 of the Plan, the Debtors shall retain their rights to reject any of their executory contracts or unexpired leases that are subject to a dispute concerning amounts necessary to cure any defaults through the Effective Date.

        8.5.     **_Bar Date for Filing Proofs of Claim Relating to Executory Contracts and Unexpired Leases Rejected Pursuant to the Plan_**.

        In the event that the rejection of an executory contract or unexpired lease by the Debtors pursuant to the Plan results in damages to the other party or parties to such contract or lease, a Claim for such damages, if not heretofore evidenced by a timely filed proof of claim, shall be forever barred and shall not be enforceable against the Debtors or the Reorganized Debtors, or their properties or interests in property as agents, successors, or assigns, unless a proof of claim is filed with Epiq Bankruptcy Solutions, LLC and served upon the attorneys for the Debtors on or before the thirtieth (30th) day after the later of

(i) the date of service of notice of the Confirmation Date, (ii) notice of modification to Schedule 8.1 of the Plan Supplement (solely with respect to the party directly affected by such modification), or (iii) the date of service of notice of such later rejection date that occurs as a result of a dispute concerning amounts necessary to cure any defaults (solely with respect to the party directly affected by such modification).

8.6.    *Indemnification Obligations*.

Subject to the occurrence of the Effective Date, the obligations of the Debtors as of the Commencement Date to indemnify, defend, reimburse or limit the liability of directors, officers or employees who are directors, officers or employees of the Debtors on or before the Confirmation Date, against any claims or causes of action, as provided in the Debtors' certificates of incorporation, bylaws, other organizational documents or applicable law, shall survive confirmation of the Plan, remain unaffected thereby and not be discharged, irrespective of whether such indemnification, defense, reimbursement or limitation is owed in connection with an event occurring before or after the Commencement Date.

8.7.    *Insurance Policies*.

Notwithstanding anything contained in the Plan to the contrary, unless specifically rejected by order of the Bankruptcy Court, all of the Debtors' insurance policies and any agreements, documents or instruments relating thereto, are treated as executory contracts under the Plan and will be assumed pursuant to the Plan, effective as of the Effective Date.  Nothing contained in this Section 8.7 shall constitute or be deemed a waiver of any cause of action that the Debtors may hold against any entity, including, without limitation, the insurer, under any of the Debtors' insurance policies.

8.8.    *Compensation and Benefit Programs*.

Notwithstanding anything contained in the Plan to the contrary, unless specifically rejected by order of the Bankruptcy Court, all employment and severance policies and workers' compensation programs, and all compensation and benefit plans, policies and programs of the Debtors applicable to their present and former employees, officers and directors, including, without express or implied limitation, all savings plans, retirement plans, health care plans, disability plans, and life, accidental death, and dismemberment insurance plans, shall be deemed to be, and shall be treated as though they are, executory contracts that are deemed assumed under the Plan, and the Debtors' obligations under such plans, policies, and programs shall be deemed assumed pursuant to section 365(a) of the Bankruptcy Code, shall survive confirmation of the Plan, shall remain unaffected thereby, and shall not be discharged in accordance with section 1141 of the Bankruptcy Code.  Any default existing under any of such plans, policies, or programs shall be cured promptly after it becomes known by the Reorganized Debtors.

8.9.    *Retiree Benefits*.

On and after the Effective Date, pursuant to section 1129(a)(13) of the Bankruptcy Code, the Reorganized Debtors shall continue to pay all retiree benefits of the Debtors (within the meaning of and subject to section 1114 of the Bankruptcy Code) for the duration of the period for which the Debtors had obligated themselves to provide such benefits and subject to the right of the Reorganized Debtors to modify or terminate such retiree benefits in accordance with the terms thereof.

## ARTICLE IX

## CORPORATE GOVERNANCE AND
## MANAGEMENT OF THE REORGANIZED DEBTORS

9.1.    *General*.

On the Effective Date, the management, control, and operation of the Reorganized Debtors shall become the general responsibility of the Boards of Directors of Reorganized Lexington Precision and Reorganized Lexington Rubber Group, respectively.

9.2.    ***Directors and Officers of the Reorganized Debtors***.

(a)    Boards of Directors of the Reorganized Debtors.  The Boards of Directors of the Reorganized Debtors shall consist of eight members each.  Two members of each Board shall be the designated members of holders of Series C Preferred Stock.  The initial directors of the Reorganized Debtors shall consist of the directors of the Debtors immediately prior to the Effective Date and two new members selected by the Creditors' Committee to become the designated members of the Series C Preferred Stock; *provided*, *however*, that such new members are not competitors of the Reorganized Debtors nor employees or affiliates thereof.  The Creditors' Committee shall file with the Court the identity and biographical information (including any information required to be disclosed by Lexington Precision under Item 5.02(d) of Form 8-K under the Securities Exchange Act of 1934) of its designees no later than ten (10) days prior to the last day by which holders of impaired Claims may vote to accept or reject the Plan.  Each of the members of such initial Boards of Directors shall serve in accordance with applicable nonbankruptcy law and the certificates of incorporation and by-laws of the Reorganized Debtors, as the same may be amended from time to time.

(b)    Officers of the Reorganized Debtors.  The officers of the Debtors immediately prior to the Effective Date shall serve as the initial officers of the Reorganized Debtors on and after the Effective Date.  Such officers shall serve in accordance with applicable nonbankruptcy law, any employment agreement with the Reorganized Debtors, and the certificates of incorporation and by-laws of the Reorganized Debtors, as the same may be amended from time to time.

9.3.    ***Issuance of Non-Voting Securities.***

From and after the Effective Date, the Reorganized Debtors will comply with section 1123(a)(6) of the Bankruptcy Code so long as it is applicable.

## ARTICLE X

## EFFECT OF CONFIRMATION

10.1.    *Vesting of Assets*.

Upon the Effective Date, pursuant to section 1141(b) and (c) of the Bankruptcy Code, all property of the Debtors shall vest in each of the Reorganized Debtors free and clear of all Claims, Liens, encumbrances, charges, and other interests, except as provided in the Plan.  From and after the Effective Date, the Reorganized Debtors may operate their businesses and may use, acquire, and dispose of property free of any restrictions of the Bankruptcy Code or the Bankruptcy Rules and in all respects as if there were no pending case under any chapter or provision of the Bankruptcy Code.

10.2.    ***Discharge of Claims and Termination of Series B Preferred Stock Interests***.

Except as provided in the Plan, the rights afforded in and the payments and distributions to be made under the Plan shall be in exchange for and in complete satisfaction, discharge, and release of all Series B Preferred Stock Interests and all existing debts and Claims of any kind, nature, or description whatsoever, including any interest accrued on such Claims from and after the Commencement Date, against the Debtors or any of their assets or properties to the fullest extent permitted by section 1141 of the Bankruptcy Code.  Except as provided in the Plan, upon the Effective Date, all existing Claims against the Debtors and Series B Preferred Stock Interests in the Debtors shall be, and shall be deemed to be, discharged and terminated, and all holders of Claims and Series B Preferred Stock Interests shall be precluded and enjoined from asserting against the Reorganized Debtors, their successors or assignees, or any of their assets or properties, any other or further Claim or Series B Preferred Stock Interest based upon any act or omission, transaction, or other activity of any kind or nature that occurred prior to the Effective Date, whether or not such holder has filed a proof of Claim or proof of Series B Preferred Stock Interest, and whether or not the facts or legal bases therefor were known or existed prior to the Effective Date.

10.3.    ***Discharge of Debtors***.

Upon the Effective Date and in consideration of the distributions to be made under the Plan, except as otherwise expressly provided in the Plan, each holder (as well as any trustee or agent on behalf of any holder) of a Claim or Series B Preferred Stock Interest and any affiliate of such holder shall be deemed to have forever waived, released and discharged the Debtors, to the fullest extent permitted by section 1141 of the Bankruptcy Code, of and from any and all Claims, Series B Preferred Stock Interests, rights, and liabilities that arose prior to the Effective Date.  Upon the Effective Date, all such persons shall be forever precluded and enjoined, pursuant to section 524 of the Bankruptcy Code, from prosecuting or asserting any such Claim against or Series B Preferred Stock Interest in the Debtors.

10.4.    ***Injunction or Stay***.

Except as otherwise expressly provided in the Plan, all persons or entities who have held, hold or may hold Claims, Series B Preferred Stock Interests or Equity Interests and all other parties in interest, along with their respective present or former employees, agents, officers, directors, principals and affiliates, are permanently enjoined, from and after the Effective Date, from (i) commencing or continuing in any manner any action or other proceeding of any kind with respect to any such Claim against or Series B Preferred Stock Interest or Equity Interest in the Debtors or the Reorganized Debtors, (ii) the enforcement, attachment, collection or recovery by any manner or means of any judgment, award, decree or order against the Debtors or Reorganized Debtors, (iii) creating, perfecting, or enforcing any encumbrance of any kind against the Debtors or Reorganized Debtors or against the property or interests in property of the Debtors or Reorganized Debtors, (iv) asserting any right of setoff, subrogation or recoupment of any kind against any obligation due from the Debtors or the Reorganized Debtors or against the property or interests in property of the Debtors or the Reorganized Debtors, with respect to any such Claim, Series B Preferred Stock Interest or Equity Interest, or (v) pursuing any Claim released pursuant to Article XII of the Plan.  Such injunction shall extend to any successors of the Debtors and the Reorganized Debtors and their respective properties and interest in properties.

10.5.    ***Term of Injunctions or Stays***.

Unless otherwise provided, all injunctions or stays arising under or entered during the Chapter 11 Cases under section 105 or 362 of the Bankruptcy Code, or otherwise, and in existence on the

Confirmation Date, shall remain in full force and effect until the later of the Effective Date and the date indicated in the order providing for such injunction or stay.

10.6.    *Injunction Against Interference With Plan*.

Upon the entry of the Confirmation Order, all holders of Claims, Series B Preferred Stock Interests, Equity Interests and other parties in interest, along with their respective present or former employees, agents, officers, directors, principals and affiliates shall be enjoined from taking any actions to interfere with the implementation or consummation of the Plan.

10.7.    *Exculpation*.

**Notwithstanding anything herein to the contrary, as of the Effective Date, none of the Debtors, the Reorganized Debtors, the Creditors' Committee, the agents under the Prepetition Credit Agreement and the Prepetition Loan Agreement, the lenders party to the DIP Note, and their respective directors, officers, employees, partners, members, agents, representatives, accountants, financial advisors, investment bankers, or attorneys (but solely in their capacities as such) shall have or incur any liability for any claim, cause of action or other assertion of liability for any act taken or omitted to be taken since the Commencement Date in connection with, or arising out of, the Chapter 11 Cases, the formulation, dissemination, confirmation, consummation, or administration of the Plan, property to be distributed under the Plan, or any other act or omission in connection with the Chapter 11 Cases, the Plan, the Disclosure Statement or any contract, instrument, document or other agreement related thereto; *provided*, *however*, that the foregoing shall not affect the liability of any person that would otherwise result from any such act or omission to the extent such act or omission is determined by a Final Order to have constituted willful misconduct, gross negligence, fraud, criminal conduct, intentional unauthorized misuse of confidential information that causes damages, or *ultra vires* act.**

10.8.    *Releases*.

**Effective as of the Confirmation Date but subject to the occurrence of the Effective Date, and in consideration of the services provided to the Debtors by (a) the present and former directors, officers, employees, affiliates, agents, financial advisors, attorneys, and representatives of the Debtors who acted in such capacities after the Commencement Date; (b) the Creditors' Committee, (b) the agents under the Prepetition Credit Agreement and the Prepetition Loan Agreement; and (c) the lenders party to the DIP Note, the Debtors and the Reorganized Debtors, each holder of a Claim, a Series B Preferred Stock Interest or an Equity Interest that votes to accept the Plan (or is deemed to accept the Plan), and to the fullest extent permissible under applicable law, as such law may be extended or integrated after the Effective Date, each holder of a Claim, a Series B Preferred Stock Interest, or Equity Interest that does not vote to accept the Plan, shall release unconditionally and forever each present or former director, officer, employee, agent, financial advisor, attorney and representative (and their respective affiliates) of the Debtors, the Creditors' Committee, the agents under the Prepetition Credit Agreement and the Prepetition Loan Agreement, the lenders party to the DIP Note, and each of their respective members, officers, directors, agents, financial advisors, attorneys, employees, equity holders, parent corporations, subsidiaries, partners, affiliates and representatives from any and all claims or causes of action that exist as of the Effective Date and arise from or relate to, in any manner, in whole or in part, the operation of the business of the Debtors, the subject matter of, or the transaction or event giving rise to, the Claim, Series B Preferred Stock Interest or Equity interest of such holder, the business or contractual arrangements between any Debtor and such holder, any restructuring of such claim or equity  prior to the Chapter 11 Cases, or any act, omission, occurrence, or event in any manner**

related to such subject matter, transaction or obligation, or arising out of the Chapter 11 Cases, including, but not limited to, the pursuit of confirmation of the Plan, the consummation thereof, the administration thereof, or the property to be distributed thereunder; *provided*, that the foregoing shall not operate as a waiver of or release from any causes of action arising out of the willful misconduct, gross negligence, fraud, criminal conduct, intentional unauthorized misuse of confidential information that causes damages, or *ultra vires* acts of any such person or entity.

    10.9.    *Avoidance Actions*.

    Other than any releases granted herein, by the Confirmation Order and by Final Order of the Bankruptcy Court, as applicable, from and after the Effective Date, the Reorganized Debtors shall have the sole right to prosecute any and all avoidance actions, equitable subordination actions or recovery actions under sections 105, 502(d), 510, 542 through 551, and 553 of the Bankruptcy Code that belong to the Debtors or Debtors in Possession.

    10.10.    *Retention of Causes of Action/Reservation of Rights*.

    (a)    Except as provided in Section 10.8 hereof, nothing contained in the Plan or the Confirmation Order shall be deemed to be a waiver or relinquishment of any rights or causes of action that the Debtors or the Reorganized Debtors may have or which the Reorganized Debtors may choose to assert on behalf of their respective estates under any provision of the Bankruptcy Code or any applicable nonbankruptcy law, including, without limitation, (i) any and all Claims against any Entity, to the extent such Entity asserts a crossclaim, a counterclaim, and/or a Claim for setoff that seeks affirmative relief against the Debtors, the Reorganized Debtors, their officers, directors, or representatives and (ii) the turnover of any property of the Debtors' estates.

    (b)    Nothing contained in the Plan or the Confirmation Order shall be deemed to be a waiver or relinquishment of any claim, cause of action, right of setoff, or other legal or equitable defense that the Debtors had immediately prior to the Commencement Date, against or with respect to any Claim left unimpaired by the Plan.  The Reorganized Debtors shall have, retain, reserve, and be entitled to assert all such claims, causes of action, rights of setoff, and other legal or equitable defenses that the Debtors had immediately prior to the Commencement Date as fully as if the Chapter 11 Cases had not been commenced, and all of the Reorganized Debtors' legal and equitable rights respecting any Claim that are left unimpaired by the Plan may be asserted after the Confirmation Date to the same extent as if the Chapter 11 Cases had not been commenced.

    10.11.    *Limitations on Exculpation and Releases of Representatives*.

    Nothing in Sections 10.7 or 10.8 of the Plan shall (i) be construed to release or exculpate any entity from fraud, malpractice, criminal conduct, intentional unauthorized misuse of confidential information that causes damages, or *ultra vires* acts, or (ii) limit the liability of the professionals of the Debtors, the Reorganized Debtors, or the Creditors' Committee to their respective clients pursuant to DR 6-102 of the Code of Professional Responsibility.

# ARTICLE XI

## CONDITIONS PRECEDENT TO EFFECTIVE DATE

11.1.    ***Conditions Precedent to Effectiveness***.

The Effective Date shall not occur and the Plan shall not become effective unless and until the following conditions are satisfied in full or waived in accordance with Section 11.2 of the Plan:

(a)    The Confirmation Order, in form and substance acceptable to the Debtors, shall have been entered and shall not be subject to any stay or injunction;

(b)    All actions, documents, and agreements necessary to implement the Plan shall have been effected or executed;

(c)    The conditions precedent to the effectiveness of the Exit Facility shall have been satisfied or waived by the parties thereto and the Reorganized Debtors shall have access to funding under the Exit Facility; and

(d)    The Debtors shall have received all authorizations, consents, regulatory approvals, rulings, letters, no-action letters, opinions, or documents that are determined by the Debtors to be necessary to implement the Plan or that are required by law, regulation, or order.

11.2.    ***Waiver of Conditions.***

Each of the conditions precedent in Section 11.1 hereof may be waived in whole or in part by the Debtors, in their sole discretion.  Any such waiver may be effected at any time, without notice or leave or order of the Bankruptcy Court and without any formal action.

11.3.    ***Effect of Failure of Conditions to Effective Date***.

In the event the conditions precedent specified in Section 11.1 hereof have not been satisfied or waived pursuant to Section 11.2 hereof on or prior to the 120th day after the Confirmation Order becomes a Final Order, then (i) the Confirmation Order shall be vacated, (ii) no distributions under the Plan shall be made, (iii) the Debtors and all holders of Claims and Equity Interests shall be restored to the *status quo ante* as of the day immediately preceding the Confirmation Date as though the Confirmation Date had never occurred, and (iv) all of the Debtors' obligations with respect to the Claims and Equity Interests shall remain unchanged and nothing contained herein shall be deemed to constitute a waiver or release of any claims by or against the Debtors or any other Entity or to prejudice in any manner the rights of the Debtors or any other Entity in any further proceedings involving the Debtors.

# ARTICLE XII

## RETENTION OF JURISDICTION

On and after the Effective Date, the Bankruptcy Court shall have exclusive jurisdiction over all matters arising out of, arising under, and related to the Chapter 11 Cases and the Plan pursuant to, and for the purpose of, sections 105(a) and 1142 of the Bankruptcy Code, including, without limitation:

(a)    To hear and determine pending applications for the assumption or rejection of executory contracts or unexpired leases, the allowance of Claims resulting therefrom and any disputes

with respect to executory contracts or unexpired leases relating to the facts and circumstances arising out of or relating to the Chapter 11 Cases;

(b)    To determine any motion, adversary proceeding, application, contested matter, and other litigated matter pending on or commenced after the Confirmation Date;

(c)    To ensure that distributions to holders of Allowed Claims are accomplished as provided herein;

(d)    To consider Claims or the allowance, classification, priority, compromise, estimation, or payment of any Claim, Administrative Expense Claim, or Equity Interest;

(e)    To enter, implement, or enforce such orders as may be appropriate in the event the Confirmation Order is stayed, reversed, revoked, modified, or vacated for any reason;

(f)    To issue injunctions, enter and implement other orders, and take such other actions as may be necessary or appropriate to prevent interference by any person with the consummation, implementation, or enforcement of the Plan, the Confirmation Order, or any other order of the Bankruptcy Court;

(g)    To hear and determine any application to modify the Plan in accordance with section 1127 of the Bankruptcy Code, to remedy any defect or omission or reconcile any inconsistency in the Plan, the Disclosure Statement, or any order of the Bankruptcy Court, including the Confirmation Order, in such a manner as may be necessary to carry out the purposes and effects thereof;

(h)    To hear and determine all applications under sections 330, 331, and 503(b) of the Bankruptcy Code for awards of compensation for services rendered and reimbursement of expenses incurred prior to the Confirmation Date;

(i)    To consider any amendments to or modifications of the Plan or to cure any defect or omission, or reconcile any inconsistency, in  any order of the Bankruptcy Court, including, without limitation, the Confirmation Order;

(j)    To hear and determine disputes arising in connection with the interpretation, implementation, or enforcement of the Plan, the Confirmation Order, any transactions or payments contemplated hereby or thereby, or any agreement, instrument, or other document governing or relating to any of the foregoing;

(k)    To take any action and issue such orders as may be necessary to construe, enforce, implement, execute, and consummate the Plan or to maintain the integrity of the Plan following the Effective Date;

(l)    To determine such other matters and for such other purposes as may be provided in the Confirmation Order;

(m)    To hear and determine matters concerning state, local, and federal taxes in accordance with sections 346, 505, and 1146 of the Bankruptcy Code (including the expedited determination of tax under section 505(b) of the Bankruptcy Code);

(n)    To determine the scope of any discharge of any Debtor under the Plan or the Bankruptcy Code;

(o)       To recover all assets of the Debtors and all property of the Debtors' estates, wherever located;

(p)       To hear and determine any rights, claims or causes of action held by or accruing to the Debtors pursuant to the Bankruptcy Code, any other federal or state statute, or any legal theory;

(q)       To enter a final decree closing the Chapter 11 Cases;

(r)       To determine any other matters that may arise in connection with or are related to the Plan, the Disclosure Statement, the Confirmation Order any of the Plan Documents, or any other contract, instrument, release or other agreement or document related to the Plan, the Disclosure Statement or the Plan Supplement; and

(s)       To hear and determine any other matter not inconsistent with the Bankruptcy Code.

## ARTICLE XIII

## MISCELLANEOUS PROVISIONS

13.1.    *Effectuating Documents and Further Transactions*.

The Reorganized Debtors are authorized to execute, deliver, file, or record such contracts, instruments, releases, indentures, and other agreements or documents (including, without limitation, the Charter Amendment and the New Subordinated Note Indenture) and take such actions as may be necessary or appropriate to effectuate and further evidence the terms and conditions of the Plan and any securities issued pursuant to the Plan.

13.2.    *Withholding and Reporting Requirements.*

In connection with the Plan and all instruments issued in connection therewith and distributed thereunder, any party issuing any instrument or making any distribution under the Plan, shall comply with all applicable withholding and reporting requirements imposed by any federal, state, or local taxing authority, and all distributions under the Plan shall be subject to any such withholding or reporting requirements.  Notwithstanding the above, each holder of an Allowed Claim that is to receive a distribution under the Plan shall have the sole and exclusive responsibility for the satisfaction and payment of any tax obligations imposed by any governmental unit, including income, withholding, and other tax obligations, on account of such distribution.  Any party issuing any instrument or making any distribution under the Plan has the right, but not the obligation, to not make a distribution until such holder has made arrangements satisfactory to such issuing or disbursing party for payment of any such tax obligation.

13.3.    *Corporate Action*.

On the Effective Date, all matters provided for under the Plan that would otherwise require approval of the stockholders or directors of one or more of the Debtors or the Reorganized Debtors (including, without limitation, the filing of the Charter Amendment, the authorization to issue or cause to be issued the New Subordinated Notes, the Series C Preferred Stock or the Lexington Precision Common Stock, the increase in the size of the Boards of Directors of the Reorganized Debtors, and the election or appointment, as the case may be, of directors and officers of the Reorganized Debtors) shall be deemed to have occurred and shall be in effect from and after the Effective Date pursuant to the

applicable general corporation law of the states in which the Debtors or the Reorganized Debtors are incorporated, without any requirement for further action by the stockholders or directors of the Debtors or the Reorganized Debtors.

### 13.4. *Exemption from Transfer Taxes*.

Pursuant to section 1146(a) of the Bankruptcy Code, the issuance, transfer, or exchange of notes or equity securities under the Plan, the creation of any mortgage, deed of trust, or other security interest, the making or assignment of any lease or sublease, or the making or delivery of any deed or other instrument of transfer under, in furtherance of, or in connection with the Plan, including, without limitation, the New Subordinated Notes, the Lexington Precision Common Stock, the Series C Preferred Stock, the Exit Facility, any merger agreements or agreements of consolidation, deeds, bills of sale, or assignments executed in connection with any of the transactions contemplated under the Plan, shall not be subject to any stamp, real estate transfer, mortgage recording, or other similar tax.  All sale transactions consummated by the Debtors and approved by the Bankruptcy Court on and after the Commencement Date through and including the Effective Date, including, without limitation, the transfers effectuated under the Plan, the sale by the Debtors of owned property pursuant to section 363(b) of the Bankruptcy Code, and the assumption, assignment, and sale by the Debtors of unexpired leases of non-residential real property pursuant to section 365(a) of the Bankruptcy Code, shall be deemed to have been made under, in furtherance of, or in connection with the Plan and, thus, shall not be subject to any stamp, real estate transfer, mortgage recording, or other similar tax.

### 13.5. *Expedited Tax Determination*.

The Debtors and the Reorganized Debtors are authorized to request an expedited determination of taxes under section 505(b) of the Bankruptcy Code for any and all returns filed for, or on behalf of, the Debtors for any and all taxable periods (or portions thereof) ending after the Commencement Date through, and including, the Effective Date.

### 13.6. *Payment of Statutory Fees*.

On the Effective Date, and thereafter as may be required, the Debtors shall pay all fees payable pursuant to section 1930 of chapter 123 of title 28 of the United States Code.

### 13.7. *Post-Confirmation Date Professional Fees and Expenses.*

From and after the Confirmation Date, the Reorganized Debtors shall, in the ordinary course of business and without the necessity for any approval by the Bankruptcy Court, pay the reasonable fees and expenses of professional persons thereafter incurred by Reorganized Debtors.

### 13.8. *Dissolution of Statutory Committees*.

On the Effective Date, the Creditors' Committee shall be dissolved and the members thereof shall be released and discharged of and from all further authority, duties, responsibilities and obligations relating to and arising from and in connection with the Chapter 11 Cases, and the retention or employment of the Creditors' Committee's attorneys, financial advisors, accountants and other agents, if any, shall terminate other than for purposes of filing and prosecuting applications for final allowances of compensation for professional services rendered and reimbursement of expenses incurred in connection therewith.

13.9.    *Indenture Trustee as Claim Holder*.

Consistent with Bankruptcy Rule 3003(c), the Reorganized Debtors shall recognize proofs of claim timely filed by any Indenture Trustee in respect of any Claims under the Indenture. Accordingly, any Claim, proof of which is filed by the registered or beneficial holder of a Claim, may be disallowed as duplicative of the Claim of the Indenture Trustee, without any further action of the Bankruptcy Court.

13.10.    *Plan Supplement*.

A draft form of the Plan Documents to be entered into as of the Effective Date and any other appropriate documents shall be contained in the Plan Supplement and filed with the Clerk of the Bankruptcy Court no later than ten (10) days prior to the last date by which holders of impaired Claims may vote to accept or reject the Plan.  Upon its filing with the Bankruptcy Court, the Plan Supplement may be inspected in the office of the Clerk of the Bankruptcy Court during normal court hours. Documents to be included in the Plan Supplement will be posted at a website identified in the Disclosure Statement as they become available, but no later than five (5) days prior to the last date by which votes to accept or reject the Plan must be received.

13.11.    *Substantial Consummation*.

On the Effective Date, the Plan shall be deemed to be substantially consummated under sections 1101 and 1127(b) of the Bankruptcy Code.

13.12.    *Amendments or Modifications of the Plan*.

Alterations, amendments, or modifications of or to the Plan may be proposed in writing by the Debtors at any time prior to the Confirmation Date, provided that the Plan, as altered, amended, or modified, satisfies the conditions of sections 1122 and 1123 of the Bankruptcy Code, and the Debtors shall have complied with section 1125 of the Bankruptcy Code.  After the Confirmation Date, so long as such action does not materially and adversely affect the treatment of holders of Claims or Equity Interests under the Plan, the Debtors or the Reorganized Debtors may institute proceedings in the Bankruptcy Court to remedy any defect or omission or reconcile any inconsistencies in the Plan or the Confirmation Order, with respect to such matters as may be necessary to carry out the purposes and effects of the Plan. A holder of a Claim or Equity Interest that has accepted the Plan shall be deemed to have accepted the Plan, as altered, amended, or modified, if the proposed alteration, amendment, or modification does not materially and adversely change the treatment of the Claim or Equity Interest of such holder.

13.13.    *Revocation or Withdrawal of the Plan*.

The Debtors reserve the right to revoke or withdraw the Plan prior to the Effective Date. If the Debtors take such action, the Plan shall be deemed null and void.  In such event, nothing contained in the Plan shall constitute or be deemed a waiver or release of any Claims against or Series B Preferred Stock Interests in the Debtors, any claims or rights of the Debtors against any other person or to prejudice in any manner the rights of the Debtors or any other person in any further proceedings involving the Debtors.

13.14.    *Severability*.

If, prior to the entry of the Confirmation Order, any term or provision of the Plan is held by the Bankruptcy Court to be invalid, void, or unenforceable, the Bankruptcy Court, at the request of the

Debtors, shall have the power to alter and interpret such term or provision to make it valid or enforceable to the maximum extent practicable, consistent with the original purpose of the term or provision held to be invalid, void, or unenforceable, and such term or provision as altered or interpreted shall then be applicable. Notwithstanding any such holding, alteration, or interpretation, the remainder of the terms and provisions of the Plan will remain in full force and effect and will in no way be affected, impaired, or invalidated by such holding, alteration, or interpretation. The Confirmation Order shall constitute a judicial determination and shall provide that each term and provision of the Plan, as it may have been altered or interpreted in accordance with the foregoing, is valid and enforceable pursuant to its terms.

13.15. ***Governing Law***.

Except to the extent that the Bankruptcy Code or other federal law is applicable, or to the extent an exhibit hereto or a schedule or document in the Plan Supplement provides otherwise, the rights, duties, and obligations arising under the Plan shall be governed by, and construed and enforced in accordance with, the laws of the State of New York, without giving effect to the principles of conflict of laws thereof.

13.16. ***Binding Effect***.

The Plan shall be binding upon and inure to the benefit of the Debtors, the holders of Claims and Equity Interests, and their respective successors and assigns, including, without limitation, the Reorganized Debtors.

13.17. ***Exhibits/Schedules***.

All exhibits and schedules to the Plan, including the Plan Supplement, are incorporated into and are a part of the Plan as if set forth in full herein.

13.18. ***Notices***.

In order to be effective, all notices, requests, and demands to or upon the Debtors must be in writing (including by facsimile transmission) and, unless otherwise expressly provided herein, shall be deemed to have been duly given or made when actually delivered or, in the case of notice by facsimile transmission, when received and telephonically confirmed, addressed as follows:

> Lexington Precision Corporation
> 800 Third Avenue, 15th Floor
> New York, New York 10022
> Attn: Michael A. Lubin
> Title: Chairman of the Board
> Telephone: (212) 319-4655
> Facsimile: (212) 319-4659

> - and -

Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, New York 10153
Attn: Richard P. Krasnow, Esq.
      Christopher J. Marcus, Esq.
Telephone: (212) 310-8000
Facsimile: (212) 310-8007

13.19.   ***Time***.

In computing any period of time prescribed or allowed by the Plan, unless otherwise set forth herein or determined by the Bankruptcy Court, the provisions of Bankruptcy Rule 9006 shall apply.

13.20.   ***Section Headings***.

The section headings contained in the Plan are for reference purposes only and shall not affect in any way the meaning or interpretation of the Plan.

Dated: June 30, 2008
     New York, New York

Respectfully submitted,

LEXINGTON PRECISION CORPORATION

By:    /s/ Michael A. Lubin
        Name: Michael A. Lubin
        Title: Chairman of the Board

LEXINGTON RUBBER GROUP, INC.

By:    /s/ Michael A. Lubin
        Name: Michael A. Lubin
        Title: Chairman of the Board

**EXHIBIT 1.55**

**SUMMARY OF TERMS OF NEW SUBORDINATED NOTES**

Exhibit 1.55

**Lexington Precision Corporation**
**Summary of Terms of New Subordinated Notes**

**Issuer** ................................................ Lexington Precision Corporation (the "Company").

**Securities to be Issued** .................... $15,000,000 aggregate principal amount of 12% Senior Subordinated Notes due 2013 (the "Notes").

**Maturity** ........................................... December 31, 2013.

**Interest Payments** ........................... Payable semi-annually in arrears with the first payment to be made on the first day of the first calendar month that commences after the five-month anniversary of the Effective Date, and at maturity.

**Ranking** ........................................... The Notes will be subordinate and junior in right of payment to all indebtedness except for (1) instruments that explicitly state that they are not senior in right to the Notes, (2) debt of the Company to its subsidiaries or affiliates, (3) liabilities for compensation to employees of the Company, and (4) liabilities incurred for the purchase of goods, materials or services in the ordinary course of business. The subordination provisions of the Notes will be substantially the same as those contained in the Company's Indenture with Wilmington Trust Company, as trustee, dated December 18, 2003.

**Optional Redemption** ..................... Redeemable at the option of the Company at any time, in whole or in part, on thirty days prior written notice, at 100% of the principal amount to be redeemed plus accrued interest thereon to the date of redemption.

**Indenture** ........................................ The Notes will be issued under an indenture between the Company and [ ], as trustee. Except as set forth below with respect to the standstill period, the indenture will be in substantially the same form as the Company's Indenture with Wilmington Trust Company, as trustee, dated December 18, 2003.

**Standstill Provision** ........................ Holders of the Notes may not accelerate the Notes or enforce remedies against the Company until 120 days after an event of default. During such 120-day period, interest on the Notes shall accrue at the same rate as before an event of default.

**EXHIBIT 1.74**

**SUMMARY OF TERMS OF SERIES C PREFERRED STOCK**

**Exhibit 1.74**

**Lexington Precision Corporation**
**Summary of Terms of Series C Preferred Stock**

| | |
|---|---|
| **Issuer** ................................................ | Lexington Precision Corporation (the "Company"). |
| **Securities to be Issued** ..................... | [  ] shares of the Company's Series C Preferred Stock, par value $100 per share. |
| **Liquidation Preference** ................... | $100 per share, plus any accumulated but unpaid dividends thereon. In the event of any sale or liquidation of the Company each holder will be entitled to receive the greater of (1) the Liquidation Preference or (2) the amount such holder would have received if its shares of Series C Preferred Stock had been converted into shares of the Company's common stock immediately prior to the sale or liquidation of the Company. |
| **Dividend Rate** ................................. | 12% per annum. |
| **Dividends** ........................................ | When, as and if declared by the Board, dividends will be payable quarterly in cash on each January 1, April 1, July 1, and October 1, commencing on the first such date to occur after the Effective Date.  Any dividend that is (1) not declared or (2) is declared but is not paid on the scheduled dividend payment date, will be added to the Liquidation Preference. |
| **Conversion** ...................................... | Each share of Series C Preferred Stock may be converted at any time at the option of the holder into a number of shares of the Company's common stock equal to $100 divided by the price per share at which the Company's 13% Junior Subordinated Notes, Series B Preferred Stock, and 12% Senior Subordinated Notes were converted or had the option to convert on the Effective Date, subject to standard anti-dilution adjustments for stock splits, stock dividends and other similar transactions. |
| **Optional Redemption** ...................... | The Company may redeem the Series C Preferred Stock at any time, in its entirety, at 100% of the Liquidation Preference, upon 90 days' prior written notice to the holders of record of the Series C Preferred Stock. |
| **Board of Directors Seats** ................ | So long as at least 100,000 shares (as adjusted for stock splits, stock dividends and other similar transactions) of Series C Preferred Stock are issued and outstanding, the holders of the Series C Preferred Stock, voting together as a single class, will have the right to select two (2) members of the Company's Board of Directors.

So long as at least 50,000 shares (as adjusted for stock splits, stock dividends and other similar transactions) of Series C Preferred Stock are issued and outstanding, the holders of the Series C Preferred Stock, voting together as a single class, will have the right to select one (1) member of the Company's Board of Directors. |

- 3 -

**Voting Rights**.................................. The Series C Preferred Stock shall have no voting rights except as described in the heading "Board of Directors Seats" above and as required by law.