Hearing Date: July 14, 2008 at 2 p.m.

ANDREWS KURTH LLP
Paul N. Silverstein (PS 5098)
Jonathan I. Levine (JL 9674)
450 Lexington Avenue, 15th Floor
New York, New York 10017
Telephone: (212) 850-2800
Facsimile: (212) 850-2929

Counsel to the Official Committee
of Unsecured Creditors

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x
In re:                                              :     Chapter 11
                                                    :
LEXINGTON PRECISION CORP, et al.,                   :     Case No. 08-11153 (MG)
                                                    :
                                                    :
                 Debtors.                           :
------------------------------------------------------------x

**OFFICIAL COMMITTEE OF UNSECURED CREDITORS' LIMITED
OBJECTION TO DEBTORS' MOTION FOR AN ORDER
AUTHORIZING THE DEBTORS TO EMPLOY DEWOLFF, BOBERG
& ASSOCIATES, INC. TO PROVIDE CONSULTING SERVICES**

TO:   THE HONORABLE MARTIN GLEN
      UNITED STATES BANKRUPTCY JUDGE

The Official Committee of Unsecured Creditors (the "Committee") of Lexington Precision Corporation, et. al. (collectively, the "Debtors"), by its undersigned counsel, for its limited objection (the "Objection") to the Debtors' motion (the "Motion") for an order authorizing the employment of DeWolff, Boberg & Associates, Inc. ("DeWolff"), respectfully represents:

**INTRODUCTION**

1.   The Debtors seek to retain DeWolff - - a management consulting firm that works with its clients in an attempt to decrease manufacturing costs and/or increase productivity and efficiency. Specifically, the Debtors seek an order authorizing DeWolff's retention in an attempt

1

to identify and remedy cost, productivity, and efficiency issues at the Debtors' facility in Rock Hill, South Carolina (the "Rock Hill Facility"). According to the Motion, as well as DeWolff's engagement letter that is attached as Exhibit A to the Motion (the "Engagement Letter"), DeWolff has apparently identified several such problems at the Rock Hill Facility and proposes to spend eighteen (18) weeks there in order to try to help the Debtors remedy such problems. DeWolff has further "guarantee[d] that annual economic benefits available to [the Debtors] through implementation of our process will be Eight Hundred Seven Thousand Dollars (USD $807,000)."[1] DeWolff will charge the Debtors $462,600 for this engagement - - a significant expense to the Debtors' estates.[2]

2.  For obvious reasons, the Committee does not oppose or object to the Debtors' attempt to improve the productivity and efficiency of their businesses. Based on the information available to the Committee as of the date of this Objection,[3] the Committee does not object to the DeWolff's retention; however, the Committee does object to the terms of DeWolff's engagement to the extent the Debtors seek to use such terms as a tool to determine - - or as we suspect, inflate - - the valuation, for plan confirmation purposes, of the Rock Hill Facility. DeWolff's engagement cannot and should not have any bearing on the question of valuation for plan confirmation purposes. There is no basis to assume that DeWolff's work will result in any significant savings or other financial benefit to the Debtors, particularly the amount of savings described in the Motion and in the Engagement Letter.

---

[1] Engagement Letter at p. 1.
[2] Engagement Letter at p. 2.
[3] On July 2, 2008, the Committee's counsel and financial Advisor interviewed representatives from DeWolff regarding its potential engagement with the Debtors (the "Interview").

2

HOU:2819613.3

**DISCUSSION**

3. The Committee is skeptical of the impact that DeWolff's work will have on the value, long term and otherwise, of the Rock Hill Facility. Accordingly, the Committee objects to DeWolff's work and terms of engagement being considered in any manner in connection with valuation issues in the plan confirmation process.

4. Based upon representations made by DeWolff during the Interview,[4] DeWolff's plan consists of reducing costs by: (i) eliminating overtime hours and (ii) by terminating a certain number of employees at the Rock Hill Facility. DeWolff's plan further consists of training management, supervisors and the remaining employees in methods and techniques that will somehow allow the Rock Hill Facility to maintain its current level of output despite a significantly reduced number of man-hours/employees. Believing that a significantly smaller workforce, working significantly fewer hours, can produce the same level of output as the present workforce is a significant assumption, and one that cannot be tested in any meaningful fashion until months, if not years, after DeWolff commences its work at the Rock Hill Facility. The Engagement Letter makes this point clearly, as it states that the "guarantee" is actually an "estimate [that] could be lowered in the event of a significant reduction in [Lexington's] current or forecasted volume levels." (Engagement Letter at p. 1).

5. The alleged DeWolff "guarantee" assumes that the Rock Hill Facility's current or forecasted volumes will not decrease in any significant manner. Yet, as described above, DeWolff's plan is to cut overtime hours and reduce the number of employees at the facility. Without evidence to the contrary, the Committee is extremely skeptical - - and the Debtors <u>cannot</u> guarantee - - that the volume levels will remain constant. Thus, the Committee is properly concerned that either: (i) the alleged "guarantee" will have to be revisited at some point

---

[4] See footnote 3.

3

during DeWolff's engagement or (ii) the Debtors will not be able to maintain the necessary volumes at any point in the future.

6.  The Motion states that "DeWolff … is prepared to guarantee that the Debtors will save at least $807,000 per annum." (Motion, at ¶8). This is a mischaracterization of DeWolff's "guarantee" and needs to be made clear. DeWolff actually "guarantees" that by the end of its 18-week engagement, Rock Hill will achieve a <u>rate</u> of savings that, if it continues over the course of twelve consecutive months, would result in a yearly savings of $807,000 <u>assuming</u> production levels remain constant. But, as Mr. Warren Delano admitted during the Interview, once DeWolff's engagement is over, it will be Lexington's responsibility to ensure that all aspects of DeWolff's recommendations continue to be implemented properly to ensure that the rate of savings continues. Thus, DeWolff is not actually "guaranteeing" that the Rock Hill division will realize $807,000 in savings over the course of the next year, or any year thereafter. In other words, the "guarantee" is fundamentally meaningless.[5]

7.  The conclusion that DeWolff's work will result in $807,000 in annual savings for the Debtors is built on layer after layer of assumptions. For that reason, any Order approving DeWolff's retention must make clear that neither DeWolff's compensation formula under the Engagement Letter nor the purported savings that the Debtors will allegedly realize in the future because of DeWolff's work shall be considered in connection with valuation in the Plan confirmation process.

---

[5] This is also why, at the end of DeWolff's engagement, the Court's approval of DeWolff's fee application cannot be construed as the Court's agreement or finding that the Debtors will actually realize $807,000 in annual savings. At <u>most</u>, granting DeWolff's application would be an acknowledgement that DeWolff provided the Debtors with a plan to achieve a certain <u>rate</u> of savings by the end of an eighteen-week period.

4

**WHEREFORE**, the Committee respectfully requests that the Court grant the relief requested herein together with such other relief as the Court deems appropriate under the circumstances.

Dated: New York, New York
      July 7, 2008

                                 ANDREWS KURTH LLP

                                 By: /s/ Paul N. Silverstein
                                     Paul N. Silverstein (PS 5098)
                                     Jonathan I. Levine (JL 9674)
                                     450 Lexington Avenue, 15th Floor
                                     New York, New York 10017
                                     Telephone: (212) 850-2800
                                     Facsimile: (212) 850-2929

                                     Counsel to the Official Committee of
                                     Unsecured Creditors

HOU:2819613.3