WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007
Richard P. Krasnow
Adam P. Strochak

Attorneys for Debtors
and Debtors in Possession

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

-----------------------------------------------------------x

| | |
|---|---|
| **In re** : | **Chapter 11 Case No.** |
| : | |
| **LEXINGTON PRECISION CORP., et al.,** : | **08-11153 (MG)** |
| : | |
| **Debtors.** : | **(Jointly Administered)** |
| : | |

-----------------------------------------------------------x

### DEBTORS' REPLY TO OFFICIAL CREDITORS' COMMITTEE OBJECTION TO DEBTORS' MOTION FOR AN ORDER PURSUANT TO SECTION 1121(d) OF THE BANKRUPTCY CODE EXTENDING THE EXCLUSIVITY PERIOD

TO THE HONORABLE MARTIN GLENN,
UNITED STATES BANKRUPTCY JUDGE:

Lexington Precision Corporation ("Lexington Precision") and Lexington Rubber Group, Inc. ("Lexington Rubber Group" and, together with Lexington Precision, "Lexington" or the "Debtors"), as debtors and debtors in possession, as and for their reply, dated July 24, 2008 (the "Reply"), to the objection, dated July 22, 2008 (the "Objection"), of the official creditors' committee (the "Committee") to the Debtors' motion, dated July 9, 2008 (the "Motion"), for entry of an order extending the Debtors' exclusive right to file a plan of reorganization pursuant to section 1121(d) of title 11 of the United States Code (the "Bankruptcy Code"), respectfully represent as follows:

1.     The Committee's Objection, like its now-withdrawn motion to terminate exclusivity, is long on invective but short on substance. Unfounded attempts to impugn the integrity of the Debtors' management – with no supporting evidence – and premature objections to confirmation of the Debtors' proposed plan of reorganization are not substitutes for the factual inquiry related to extending a debtor's exclusivity periods under section 1121 of the Bankruptcy Code.[1] The Committee's Objection, like its objections to numerous other procedural matters, falls far short of demonstrating a factual or legal basis for denial of relief routinely granted in cases that are moving promptly through the chapter 11 process, as are these cases.

2.     These cases have been pending for less than four months and the Debtors have demonstrated clear progress. They filed a plan of reorganization and are preparing a disclosure statement for filing in accordance with deadlines previously agreed upon. They have spent weeks responding in full to extraordinarily broad requests for information from the Committee, providing financial and other data at a level of detail (down to the individual *part* level at a company that makes perhaps two billion parts per year). The Debtors have completed a bottom-up financial projection (provided to the Committee at exactly the same time it was provided to the Debtors own financial advisors) and has compiled and turned over to the Committee backup documentation for the projections, again down to the *part* level, and continue to provide additional information. The Committee has sufficient information to enable it to participate in the plan process and, if it chooses to do so, negotiate a consensual restructuring. It

---

[1] The Committee incorporates by reference its now-withdrawn motion terminate exclusivity (the "Motion to Terminate"), which was based on unsupported allegations of prepetition breaches of fiduciary. As the Court indicated at the hearing on the Motion to Terminate, the Debtors' prepetition conduct is not relevant to the Court's disposition on a motion to terminate or extend a debtor's exclusivity periods. Transcript of June 11, 2008 hearing on Motion to Terminate [Dkt. No. 263], annexed hereto as Exhibit A. Exhibit A at 4:25-5:2-6; 17:7-15; 22:13-17. To the extent necessary, the Debtors' incorporate by reference their pleadings filed in opposition to the Motion to Terminate. *See*, Dkt. Nos. 161 and 162.

appears, however, to be unwilling to negotiate and instead wishes to litigate. The Committee's

unilateral desire to force the Court to adjudicate a dispute over valuation, however, is no basis for

denial of an extension of exclusivity. Indeed, it compels granting the Motion and extending

exclusivity so these cases can move expeditiously to confirmation and, if necessary, adjudication

of valuation.[2]  It would be unprecedented, particularly in the Southern District of New York, and

completely antithetical to the intent and purpose of section 1121 of the Bankruptcy Code to deny

the relief requested in the Motion.

        3.      The Committee acknowledges, as it must, that the list of factors courts

consider when determining a debtor' motion to extend the exclusivity periods pursuant to section

1121(d) of the Bankruptcy Code include:  (i) the size and complexity of the case; (ii) the

necessity for sufficient time to permit the debtor to negotiate a plan of reorganization and prepare

adequate information; (iii) the existence of good faith progress toward reorganization; (iv) the

fact that the debtor is paying its bills as they become due; (v) whether the debtor has

demonstrated reasonable prospects for filing a viable plan; (vi) whether the debtor has made

progress in negotiations with its creditors; (vii) the amount of time which has elapsed in the case;

(viii) whether the debtor is seeking an extension of exclusivity in order to pressure creditors to

submit to the debtor's reorganization demands; and (ix) whether an unresolved contingency

exists.  Objection at ¶ 11.

---

[2] The Committee suggests the Court stay the confirmation process pending adjudication of valuation. The Debtors are prepared to litigate valuation on any schedule that the Court concludes is appropriate. The Committee's proposal, however, does not appear likely to expedite or simplify these chapter 11 cases because the Committee asserts confirmation objections separate from valuation (for example, classification). Unless valuation were the only disputed issue, and unless the Committee agreed that it would take no separate appeal from a valuation decision that finds the Debtors solvent, bifurcation as the Committee proposes would slow not speed the progress of these cases. Because these cases are moving promptly toward a confirmation hearing at which valuation can be adjudicated along with all other plan objections in a single, manageable process, the Debtors believe it makes more sense to continue on this traditional path.

4.        These factors are routinely relied upon by bankruptcy courts and have

been adopted by this Court in numerous decisions.  *In re Adelphia Communications Corp.*, 352

B.R. 578, 587 (Bankr. S.D.N.Y. 2006); *In re Lionel L.L.C.*, 2007 WL 2261539, *6 (Bankr.

S.D.N.Y. Aug. 3, 2007); *In re McLean Indus.*, Inc., 87 B.R. 830, 834 (Bankr. S.D.N.Y. 1987).

The Committee, however, fails to analyze these factors and instead predicates its Objection to the

Debtors' Motion on (i) accusations regarding the failure to produce information and (ii) issues

that relate to confirmation of a plan rather than extension of the exclusivity periods.  The latter is

insufficient as a matter of law to sustain an objection to an extension of exclusivity.  The former,

as the Debtors will demonstrate at an evidentiary on this Motion, is pretextual because the

Debtors have provided all the information and more necessary for the Committee to participate

in the plan process.

A.        **Disclosure of Information**

5.        The Committee's refrain that the Debtors are not providing information

and not being cooperative is not true.  When the Court examines the record, it will find that the

Committee is asserting the alleged lack of information as a pretext because it has no valid basis

to object to an extension of exclusivity

6.        The Debtors will demonstrate at the hearing on the Motion that they have

responded to every reasonable request for information from the Committee and provided all data

necessary to allow the Committee and its professionals to evaluate the proposed chapter 11 plan

of reorganization and, if the Committee is willing to do so, negotiate with the Debtors.  Contrary

to the Committee's assertion that the Debtors did not provide any "meaningful" data until after a

status conference on June 25, 2008 the evidence will show that the Debtors began providing

information on May 21, 2008 made an on-line data room available on May 22, 2008 and

4

continued to respond on a rolling basis with additional productions on June 4, 5, 6, 9, 10, 17, 19, 22, 23, 27, 30, July 2, 3, 9, 10, 15, 21, and 22, 2008. The Debtors made additional highly confidential information available to the Committee's professionals after July 10, 2008 upon execution of an appropriate confidentiality agreement.

7.     While information exchange continues, the information the Debtors have provided to the Committee to date is sufficient to enable the Committee to inform itself, and its professionals, about issues pertinent to valuation, both quantitatively and qualitatively. In terms of quantity, the evidence will show that the Debtors have provided more than 34,000 pages of financial and other data going back five years in many cases. But more importantly, the Debtors have provided to the Committee access to exactly the same financial reporting tools that management uses to run the businesses, down to the business unit, plant, and even part level.

8.     The Committee's demands for production of voluminous financial data much of it having limited or no utility in assessing the value of the Debtors today, required the Debtors to divert resources from tasks critical to the reorganization effort, such as finalization of their financial projections. Despite these distractions, the Debtors completed their five-year projected financial statements on July 15, 2008, and immediately made them available to the Committee, and then promptly started work on compiling backup information in a format that would assist the Committee in understanding and analyzing the projections. That backup data was made available on July 22, 2008. The Debtors will continue to provide information pertinent to their projections.

9.     The Committee, while professing a need for this additional data, apparently has prejudged the projections and determined that they are "patently absurd and wholly unrealistic." Objection at ¶ 19. This gratuitous comment is unfortunately illustrative of

the Committee's intransigence and reveals its cynical strategy: request excessive and unnecessary documentation, complain when the Debtors cannot provide it immediately for the purpose of setting up false allegations of non-cooperation, and then immediately reject the Debtors' position on every issue *before even receiving the information claimed to be necessary for the Committee to evaluate it.*

10.    The evidence – as opposed to the Committee's rhetoric – will show that the Debtors stand ready, willing, and able to engage in substantive negotiations with the Committee at any time, have provided information necessary for the Committee to participate meaningfully in such negotiations, and have several times communicated to the Committee their willingness to negotiate. The only thing standing in the way of negotiations is the Committee's intransigence and its knee-jerk effort to impugn the integrity of the Debtors' management when faced with developments that do not fit its view of the case.

**B.    Confirmation Disputes Are Not Relevant to Exclusivity**

11.    Assertions regarding the potential confirmability of a chapter 11 plan of reorganization are not cause for terminating a debtor's exclusivity periods. *Adelphia*, 352 B.R. at 588 n.18. (holding that "the merits of the plan are to be examined at confirmation and don't play a meaningful role in the court's decision as to whether or not to terminate exclusivity") The Court has also noted that the confirmation hearing is the place an time to address valuation issues.[3] Moreover, a creditor's "displeasure with a plan on file is not one of the enumerated factors, and is not a basis for terminating exclusivity." *Id.* at 587; *In re Geriatrics Nursing Home, Inc.*, 187 B.R. 128, 134 (D.N.J. 1995) (reversing a bankruptcy court's order that

---

[3] Exhibt A at 14:13-16; Transcript of June 25, 2008 status conference annexed hereto as Exhibit B. Exhibit B at 14:14-20.

terminated exclusivity on the basis that one creditor constituency was not happy with the debtor's plan).

12.    In support of its Objection, the Committee first asserts that the classes relating to the asbestos claimholders and trade claimholders under the Debtors' proposed plan have been manufactured in violation of the classification requirements of section 1122 of the Bankruptcy Code.  Second, the Committee contends that the Debtors' projections are overly optimistic and will not be accepted by the Committee.  Third, the Committee challenges the Debtors' ability to propose a feasible plan on the basis that they will not be able to obtain exit financing.

13.    The Committee is wrong on all three points, but each of these issues is unripe for determination now.[4]  The Debtors will respond to challenges to the confirmation of their plan in the context of a confirmation hearing when the Debtors have submitted to the Court all the facts and circumstances supporting confirmation.  Unfortunately if, as the Objection suggests it is preordained that there will be a contested confirmation hearing, it is the Court's, not the Committee's acceptance of feasibility of the projections that will be relevant.  For now, the inchoate objections to terms of a proposed plan are no basis for denial of a reasonable extension of exclusivity.

C.    **The Committee's Intransigence Compels Extension of Exclusivity**

14.    As is customary in any chapter 11 case, the Debtors are seeking an appropriate extension of the exclusivity periods to provide the Committee with the opportunity to

---

[4] As to classification, the Committee seems to suggest that bondholders and trade creditors must be classified together.  At an appropriate time, the Debtors will direct the Court to legal authority and examples of numerous chapter 11 cases where separate classification was approved.  In the meantime, we note that the effect of the Committee's position would be that a handful of bondholders holding large positions would swamp the vote of trade creditors holding claims in a much smaller amount.

fully vet the projections with the hope that it would result in substantive discussions and

feedback in an effort to achieve a consensus that would serve as the basis for plan negotiations.

By its Objection, the Committee has made it clear that it will not engage in this process with an

open mind and argues for termination of exclusivity so that it may propose a plan that transfers

all of the Debtors' enterprise value to the Committee's constituency to the exclusion of all other

parties in interest.

15.    In its Objection, the Committee expressly states "there is no possibility

that common ground will be found between the Debtors and its creditors upon which to base a

plan," which illustrates not only the Committee's unwillingness to negotiate, but also that the

only plan that the Committee believes is appropriate is a plan that provides all of the value of

these estates to its constituency and no one else.  The Committee has written off every other

constituency in this chapter 11 case and, by its Objection, requests the Court due the same.  As

fiduciaries, the Debtors have not written off any constituency and will explore every alternative

for the benefit of all of their constituents.

16.    As has been held, the recalcitrance of a single creditor or creditor

constituency is not a basis to alter a debtor's exclusivity periods because it "would permit

litigious creditors to manufacture 'cause' shown to shorten the exclusivity period through their

own unilateral actions."  *In re Grand Traverse Dev. Co. Ltd. P'ship*, 147 B.R. 418, 421 (Bankr.

W.D. Mich. 1992) (denying a creditor's motion to terminate exclusivity at the conclusion of the

initial 120-day period because cause is not shown when such creditor contests most if not all of

debtor's actions and a successful reorganization by the debtor is still possible).  Indeed, creditors'

refusal to negotiate with a debtor supports continuation of the exclusive periods rather than

termination.  *In re Lehigh Valley Professional Sports Club, Inc.*, 2000 WL 290187, *4 (Bankr.

E.D. Pa. Mar. 14, 2000); *In re Gibson & Cushman Dredging Corp.*, 101 B.R. 405, 410

(E.D.N.Y. 1989) (extension of exclusivity granted due to recalcitrance of creditors to negotiate

on an equitable plan).

17.    The Committee has all of the materials needed to engage in substantive

negotiations and the Debtors are ready, willing, and able to participate in that process.  The

exclusivity period is intended to afford a debtor a full, fair, and reasonable opportunity to

negotiate and propose a plan and solicit acceptances thereof without the deterioration and

disruption of the debtor's business that unquestionably will arise in the context of competing

plans.  The alternative proposed by the Committee is termination of exclusivity and a chaotic

process in which the Court must consider two or more plans yet still adjudicate exactly the same

valuation dispute.  While all of this goes on, the Debtors will be greatly prejudiced in their

efforts to run the businesses for the benefit of all constituencies because customers and vendors

may be unwilling to do business with a company that cannot demonstrate progress on a clear and

organized path through the chapter 11 process.  As the Committee's Objection makes plain,

under the circumstances of these cases and its current posture, the Debtors have not been

afforded this opportunity.

### Conclusion

18.    Section 1121 of the Bankruptcy Code contemplates that a debtor must have a realistic opportunity to formulate, negotiate, propose and confirm a chapter 11 plan of reorganization without the interference, disruption and distraction of competing plans. The Debtors have not been afforded this opportunity. For the reasons set forth in the Motion and in this Reply, the Court should overrule the objection and grant the Motion.

WHEREFORE the Debtors respectfully request entry of an order overruling the Objection and granting the extension of the Debtors' exclusive periods to file a plan through October 28, 2008 and solicit acceptances therefor through December 27, 2008, as requested in the Motion and granting them such other and further relief as the Court may deem just.

Dated: July 24, 2008
New York, New York

Richard P. Krasnow
Adam P. Strochak
WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007

Attorneys for Debtors
and Debtors in Possession

## EXHIBIT A

**(Transcript of June 11, 2008 Hearing on Motion to Terminate)**

1                    UNITED STATES BANKRUPTCY COURT
                      SOUTHERN DISTRICT OF NEW YORK
2

3      --------------------------------X
                                       :   08-11153
4      In re:                          :
                                       :
5        LEXINGTON PRECISION CORP.     :   June 11, 2008
                                       :
6                         Debtor.      :   One Bowling Green
       --------------------------------X   New York, New York
7

8

9            TRANSCRIPT OF MOTION FOR ORDER TERMINATING
                      DEBTORS' EXCLUSIVITY
10           BEFORE THE HONORABLE MARTIN GLENN
               UNITED STATES BANKRUPTCY JUDGE

11

12

13     APPEARANCES:

14     For the Debtor:          CHRISTOPHER MARCUS, ESQ.
                                JOHN LUCAS, ESQ.
15                              RICHARD KRASNOW, ESQ.
                                Weil, Gotshal and Manges
16                              767 5th Avenue
                                New York, New York 10153
17

18     For the Committee:       PAUL SILVERSTEIN, ESQ.
                                JONATHAN I. LEVINE, ESQ.
19                              Andrews Kurth
                                450 Lexington Avenue
20                              New York, New York 10017

21

22

23

24

25

       Proceedings recorded by electronic sound recording,
       transcript produced by transcription service.

4

1          THE COURT:  No, just since the filing of the petition

2    have you picked up the phone and called Mr. Marcus and Mr.

3    Krasnow and said on behalf of the committee -- since you've

4    been retained on behalf of the committee, not for your ad hoc

5    committee.  Since you're counsel for the committee have you

6    picked up the phone and called and said let's sit down and

7    start negotiating?

8          MR. SILVERSTEIN:  I patiently waited for them to call

9    us, Your Honor.

10          THE COURT:  That wasn't my question.

11          MR. SILVERSTEIN:  No, I have not because under the

12    circumstances, Your Honor, it made absolutely no sense because

13    basically what we have before us in terms of the dynamic --

14          THE COURT:  You know, when I was practicing law, Mr.

15    Silverstein, I used to find that the phone was right there on

16    my desk and I could pick it up and there wasn't a set of rules

17    that said they've got to call me before I call them.

18          MR. SILVERSTEIN:  It's not a question of standing on

19    ceremony, it's a question of the history of these cases and the

20    history of the last 18 months because basically to sort of get

21    to the end, Your Honor, what has basically happened is that

22    management said to the pre-petition committee either take this

23    deal or we'll ram this deal down your throat in a Chapter 11.

24    And on that note, there's no reason for me --

25          THE COURT:  You know, I'll be quite candid, I don't

5

1   find -- you know, the affidavits that you submitted with the

2   affidavit of your initial filing and with your reply which

3   focused almost exclusively, not entirely, almost exclusively on

4   the pre-petition period, I don't find it particularly

5   persuasive as to the issue of terminating exclusivity once this

6   case started.

7           MR. SILVERSTEIN:  Your Honor, we understand the plan

8   that the debtor will propose because the debtor told us pre-

9   petition what plan they would propose, and therefore, there's

10  been no activity in terms of plan negotiations by the debtor

11  whatsoever.  The debtor has an obligation to negotiate with

12  creditors.

13          THE COURT:  On what day after the filing of a case

14  are they supposed to pick up the phone and call you and say

15  it's time to start negotiating?

16          MR. SILVERSTEIN:  Well, they're supposed to pick up

17  the phone when either the committee's appointed or when the

18  committee's first set of professionals, specifically counsel,

19  is retained to say okay -- at least that's what I've done 25

20  years of practicing in this arena.  You call up the committee

21  and you say it's time to start exchanging, for us to give you

22  the following information and let's try to streamline the

23  process, let's try to get whatever data we need to have back

24  and forth and let's sit down and start this case in earnest.

25  That has never happened.

14

1  so if the debtor comes and seeks to extend exclusivity they're

2  going to say oh, but we told you back then.

3        MR. SILVERSTEIN:  Yes, and that wasn't the purpose,

4  Your Honor.  The purpose was exactly what we said.  The purpose

5  was that we've spent 18 months in what we view as as

6  fundamentally a bad faith exercise by management.  I

7  understand, Your Honor, why management wants to keep a company

8  that they formed, you know, 20, 30, whatever years ago.  Okay.

9  This is their baby.  I understand that.  The problem is they're

10 insolvent, and they're insolvent under the Castro equity test

11 which we've cited in our papers.  It's not just a balancing

12 test because we don't have to get to the balancing test today.

13        THE COURT:  Sounds like some day we're going to have

14 an interesting evaluation hearing.  It's not today.

15        MR. SILVERSTEIN:  At some point we will.

16        THE COURT:  It's not today.

17        MR. SILVERSTEIN:  It's not today.  It's not today but

18 on a cash flow [unintelligible] test there's no question under

19 applicable case law that we cited --

20        THE COURT:  That doesn't say -- you know, they may be

21 insolvent, and therefore, they belong in a chapter proceeding.

22 It doesn't mean there's value in the equity.  You can have

23 companies who can't pay their debts as they mature, and that

24 may well be this situation.

25        MR. SILVERSTEIN:  But for the purpose of duties and

17

1  attempted to mischaracterize the pre-petition negotiations and

2  the three proposals that were made.  I felt it was incumbent

3  upon us to tell Your Honor exactly what happened.  There were

4  specific details in the Walsh affidavit in support of the

5  reply.  There were specific facts in the Welsh affidavit in

6  support of the reply.  These are not conclusory --

7        THE COURT:  Then focus on the pre-petition period

8  because I'm -- you know, you have not excited me about anything

9  that happened in the pre-petition period.  Once the Chapter 11

10  petition was filed, okay, tell me -- I didn't see any non-

11  conclusory evidence that supported the rather conclusory

12  statements you make as to what they've done wrong since the

13  petition was filed.  I understand that 18 months of contentious

14  pre-petition workout negotiations and you were unable to reach

15  a satisfactory conclusion and so you're here now.

16        MR. SILVERSTEIN:  But that's a very kind description

17  of the 18 months, Your Honor, because the 18 months were not

18  just an unsatisfactory --

19        THE COURT:  I have enough to worry about what's going

20  to happen in this case now that it's before me and will hold

21  you and the debtors' counsel to the standards that are expected

22  of them now that you're here.  I'm not going to go back and --

23  it's not as if your affidavits say they were self-dealing, they

24  stole money, they did this that would justify appointment, you

25  know -- at some hearing early on you said oh, we're thinking

22

1  petition were they obligated to call you and say let's sit

2  down?

3          MR. SILVERSTEIN:  No particular day, Your Honor, but

4  they haven't done it.  So the answer is to date it hasn't

5  happened.  It's not just a phone call.  Phone calls are empty,

6  phone calls are easy, phone calls are words.  It would have

7  been nice to get a phone call but there's been no engagement

8  with the statutory representative of creditors, and that is one

9  of the grounds to terminate exclusivity.  It's the breach of

10  fiduciary duty pre-petition that's not abated post petition

11  because nothing's changed.  Had they done anything

12  affirmatively post petition --

13          THE COURT:  I didn't see anything in the Walsh

14  affidavit that persuaded me that even pre-petition there was a

15  breach of fiduciary duty.  What the affidavit showed was a real

16  lack of agreement about how to work this out.  But that doesn't

17  equate to breach of fiduciary duty.

18          MR. SILVERSTEIN:  Let's accept that for a second

19  there's no breach of fiduciary duty.  There's certainly a lack

20  of good faith in the negotiations because each of the

21  proposals  --

22          THE COURT:  That was Mr. Walsh's conclusion.

23          MR. SILVERSTEIN:  And Mr. Welsh's conclusion, and the

24  conclusion --

25          THE COURT:  Fine.  Walsh and Welsh thought it was bad

53

1     I certify that the foregoing is a court transcript from an

2   electronic sound recording of the proceedings in the above-

3   entitled matter.

4

5                                    _____

6                                            Mary Greco

7   Dated:   June 13, 2008

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

# EXHIBIT B

**(Transcript of June 25, 2008 Status Conference)**

1                        UNITED STATES BANKRUPTCY COURT
                          SOUTHERN DISTRICT OF NEW YORK
2

3    ----------------------------------X
                                       :
4    In Re:                            :    08-11153
                                       :
5      LEXINGTON PRECISION CORPORATION,  :    One Bowling Green
                                       :    New York, New York
6                                      :
                          Debtor.      :    June 25, 2008
7    ----------------------------------X

8
                     TRANSCRIPT OF CHAMBERS CONFERENCE
9                 BEFORE THE HONORABLE MARTIN GLENN
                     UNITED STATES BANKRUPTCY JUDGE
10

11   APPEARANCES:

12   For the Debtor:              RICHARD P. KRASNOW, ESQ.
                                  CHRISTOPHER J. MARCUS, ESQ.
13                                VICTORIA VRON, ESQ.
                                  Weil, Gotshal & Manges
14                                767 Fifth Avenue
                                  New York, New York  10153
15

16   For Official Committee of    PAUL N. SILVERSTEIN, ESQ.
       Unsecured Creditors:       TIMOTHY S. MCCONN, ESQ.
17                                GERALD L. BRACHT, ESQ.
                                  JONATHAN I. LEVINE, ESQ.
18                                Andrews Kurth, LLP
                                  450 Lexington Avenue
19                                New York, New York  10017

20

21   Court Transcriber:           RUTH ANN HAGER
                                  TypeWrite Word Processing Service
22                                356 Eltingville Boulevard
                                  Staten Island, New York 10312
23

24

25


     Proceedings recorded by electronic sound recording,
     transcript produced by transcription service

2

1   (Proceedings began at 5:00 p.m.)

2           THE COURT:  Hello.

3           MR. SILVERSTEIN:  Hello.  Good afternoon, Your Honor.

4           MR. KRASNOW:  Good afternoon, Your Honor.  You want

5   appearances?

6           THE COURT:  Sure.  Yeah, this is on the record, so --

7           MR. SILVERSTEIN:  Okay.  Paul Silverstein from

8   Andrews Kurth.  With me in my office is Gerald Bracht, Tim

9   McConn and John Levine.

10          MR. KRASNOW:  Your Honor, this is Richard Krasnow.

11  In my office with me is Christopher Marcus and Vickie Vron.

12          THE COURT:  Thank you very much.  Good afternoon,

13  everybody.

14          MR. KRASNOW:  Good afternoon.

15          THE COURT:  We scheduled this so I could get just a

16  status report on where you are at.  I guess you were supposed

17  to have met last week, was it?

18          MR. KRASNOW:  Yes, Your Honor.  Just to update you on

19  a number of items in connection with that.

20          THE COURT:  This is Mr. Silverstein speaking?

21          MR. KRASNOW:  No, this is Richard Krasnow.

22          THE COURT:  All right.  Go ahead, Mr. Krasnow.

23          MR. KRASNOW:  I'm sorry.  As we indicated at the

24  hearing on June 11th, on June 13th we expected to file our

25  schedules, which we did.  On June 19th the debtors did meet

3

1    with representatives of the Creditors' Committee.  As we

2    indicated we would at that meeting, actually the day before, we

3    did provide the Committee with a work-in-process plan term

4    sheet.  While there were other items on the agenda, I think

5    it's fair to say that the primary focus of the discussions at

6    that meeting were with expect to that term sheet.

7              THE COURT:  Okay.

8              MR. SILVERSTEIN:  Your Honor, Paul Silverstein.

9              THE COURT:  Sure.  Go ahead, Mr. Silverstein.

10             MR. SILVERSTEIN:  The actual schedules were, in fact,

11   filed and, yes, we did meet on June 19th.  Essentially, Your

12   Honor, nothing has changed really.  As we expected the debtors

13   delivered to us what we referred to as the March 10th plan that

14   was previously provided to the Committee prepetition.  Your

15   Honor did ask Mr. Krasnow three times if the plan was the same

16   as the March 10th plan.  I can confirm, Your Honor, that the

17   debtor's plan is the March 10th plan with some minor tweaks.

18             Second, as my colleague Mr. Brock will explain to

19   Your Honor in more detail, and Mr. Brock is a trial lawyer

20   type, we have not received requested documents and data.  We

21   have not received any information with respect to very basic

22   specific requests for information that is readily available and

23   that we know exists.

24             Jerry, you may want to give some color.  Your Honor,

25   Gerald Brock.

4

1          THE COURT:  Go ahead, Mr. Brock.

2          MR. BROCK:  Jerry Brock.  Good afternoon.  If you

3   would like to hear more detail, Your Honor, I would be happy to

4   give it to you, but what's happened is, among other things,

5   there were site visits that were done by our valuation

6   consultants.  At those site visits there were specific items,

7   data information documents that were either shown to them or

8   that they observed in meeting rooms where they met with the

9   management operations people of those various businesses.  Much

10  of that information was considered to be very important by our

11  consultants.  The information was requested at that time and it

12  was refused.

13          We have subsequently made very specific requests

14  by -- in writing to Mr. Krasnow and his colleagues concerning

15  information that our consultants have indicated that they need

16  to understand and begin to understand the nature of the

17  business and the approach to valuation that the debtor is

18  taking.  Among the things that we requested were items that

19  were alluded to in Mr. Luvin's [Ph.] affidavit that was filed

20  in connection with the opposition to terminate exclusivity.

21          So these are not blunderbuss requests, Your Honor.

22  These are very specific requests concerning documents and

23  information that we have very good reason to believe exists.

24  Haven't been told that they don't exist.  What we've been told

25  is that we just can't get to the information now and that we're

5

1    just going to have to wait, and we don't know when we're going

2    to get the information even, other than the fact that we know

3    it's there and I guess we're going to get it sometime.  But we

4    would like to get started in trying to understand what's going

5    on with the business so we don't get kind of behind the eight

6    ball if we decide that we need to contest valuation.

7            MR. SILVERSTEIN:  Your Honor, it's Paul Silverstein

8    again.  Just to give a little more color, the debtor's counsel

9    did inform us yesterday that their projections are not going to

10   be ready as scheduled and that they are going to file their

11   plan, you know, without having the benefit of the projections.

12   Obviously, you know, we think the projections are clearly a

13   priority.  Normally, you get projections done before you file

14   your plan, but the documentation and data that we're trying to

15   get to that we can do our jobs as counsel for the Committee you

16   really can't do, you know, without cooperation.  It's not

17   something that the CFO who is busy with the projections has to

18   be dealing with.  You know, we've specifically identified

19   documents.  For better and worse -- and I apologize for the

20   characterization -- but our perception and that's our

21   projection is that the debtor's management is sort of hiding

22   the ball.

23           MR. KRASNOW:  Your Honor, this is Richard Krasnow.  I

24   take issue with any number of the statements that have been

25   made.  I'd like to remind the parties and advise the Court

6

1  that -- and I do want to get back to if I may, Your Honor, what

2  I understood the purpose of this status call to be, which

3  related to the plan, that there is no pending proceeding before

4  the Court where one might view it appropriate to have

5  discovered.  That's not what we're talking about.  This is an

6  informal production, if you will -- and I use that term in the

7  nondiscovery sense -- of documents to assist the Committee in

8  fulfilling its obligations.

9        We would take issue with any characterizations about

10  the requests being reasonable or appropriate at one level.  At

11  other levels they are quite appropriate.  So that the Court is

12  not under the misapprehension that the company has not been

13  responsive, I would point out that at least as of Monday there

14  were over 70 -- 7,300 pages of documents that were provided.

15  Had we provided the Committee with all of the documents that

16  they have requested which requests are kind of ongoing and

17  continuous?  No.  Do we have issues with respect to some of the

18  requests?  Yes, we do, but I don't believe there's any pending

19  matter before the Court which would properly provide a platform

20  for the Committee to engage in the kinds of characterizations

21  or presumably requests of the Court in this record.

22        THE COURT:  Mr. Krasnow, what --

23        MR. KRASNOW:  If I may go back to what I understood

24  the status conference to be -- and, Your Honor, it is whatever

25  the Court wants it to be -- obviously that with respect to the

7

1   meeting to focus once again on the plan, yes, Your Honor, as I

2   had indicated on the June 11th hearing while I was not in a

3   position to advise the Court as to the specifics of the plan

4   outline, because we were still working on it, I believe I

5   informed the Court that it would generally be consistent with

6   the proposals that had been made prior to the commencement of

7   the case.

8          We did engage in somewhat of a dialogue with the

9   Committee with respect to that plan proposal.  We indicated to

10  the Committee that we intended to file, as we are required to

11  by the final cash collateral order, a plan this coming Monday.

12  We do not believe we need the projections in order to file the

13  plan.  We certainly need them in the context of the disclosure

14  statement, which will be filed on or before the end of July as

15  contemplated and provided for in the final cash collateral

16  order.

17         But we also indicated at that meeting as we did in

18  court that we do not view the filing of the plan as the end of

19  a dialogue we hope to have with the Committee in a hope that we

20  can still have a consensual plan.  Yes, we did indicate to the

21  Committee an expectation of being able to provide them with

22  projections which are, we think, very important for the

23  Committee to have and obviously we need them as well in order

24  for them to not only better understand the plan itself but to

25  address many of the questions and they were legitimate

8

1   questions that the Committee asked of the company.

2          We anticipate providing them with those projections

3   sometime next week.  We would hope that after they've had an

4   opportunity to review, consider those projections and

5   discussion them with their financial advisor we will sometime

6   after the July 4th weekend schedule yet another meeting with

7   the Committee to discuss the plan.

8          We advised the Committee that we are hopeful that

9   they will respond to our plan proposal by making a counter

10  proposal so that, in fact, we can engage in discussions.  So,

11  Your Honor, that's where things stand with respect to the plan.

12  I'm hopeful that we will engage in ongoing discussions with the

13  Committee.  Whether or not it can ultimately result in a

14  consensual plan, I can't say obviously.

15         But with respect to these informal requests for

16  information what documents have been provided, what documents

17  haven't been provided so far, the timing, I would submit, Your

18  Honor, that this is an inappropriate forum for those issues to

19  be raised.  Yes, there are issues on both sides with respect to

20  the requests, but there is really no pending matter with

21  respect to those requests.

22         THE COURT:  Okay.

23         MR. KRASNOW:  Either those requests or those issues

24  and objections that we have with respect to certain of the

25  requests, which I might add, Your Honor, some of the

9

1    information that they've sought go not to the current

2    operations and projections of the business but go back to --

3    relate to requests for information going back five years.  So,

4    Your Honor, that's where things currently stand.

5              THE COURT:  Mr. Silverstein?

6              MR. BROCK:  Your Honor, this is Jerry Brock.

7              THE COURT:  Okay, Mr. Brock.

8              MR. BROCK:  We wanted to enter into the dialogue with

9    the debtors in a cooperative fashion to try to get the

10   information that our experts, our consultants believe to be

11   relevant and material to their job.  We have received documents

12   of debtors [ph.], some of the documents that we requested, some

13   documents that we didn't request but we've not received the

14   documents that our consultants believed to be necessary in

15   order to get -- to work and doing their job.  Those are the

16   documents that we've requested.

17             I realize that there's no formal proceeding that

18   would be -- serve as a platform for a motion or something like

19   that but I didn't think that's what we were about.  I thought

20   what we were about they need to provide us with the information

21   that we need to do our jobs.  That's what we've requested.

22             The debtors had given us the information that they

23   chose -- that they had chosen to give us either because it's

24   convenient to them or because it's what they want to give us

25   and they, for whatever reason, decided not to give us

10

1   information that we believed to be as clearly relevant to the

2   issues before the Court and that are not burdensome and are

3   very specific in their tone.

4           So we're just trying to get down the road.  We're not

5   trying to be obstreperous or to cause burden to the debtor.

6   We're just trying to get the information we need to do our job.

7           MR. KRASNOW:  Your Honor, may I respond?

8           THE COURT:  Yes, go ahead.

9           MR. KRASNOW:  Briefly.  First of all, Your Honor, I

10  have to apologize because I did not understand and counsel did

11  not advise us that they intended to use this status conference

12  as a forum to raise these issues.  Had I been aware of that, I

13  would have requested that my partner, who is really involved in

14  dealing with the document requests, to be on this call.  I did

15  not because I wasn't aware that this issue would be raised.

16          THE COURT:  No, I --

17          MR. KRASNOW:  Secondly, I simply want to note that

18  counsel has used a lot of conclusory statements.  We take issue

19  with them but, again, notwithstanding the fact that we take

20  issue with them we certainly do intend to -- have provided them

21  with information documents, intend to provide them with

22  additional information documents.  Yes, there are some

23  informational documents that we had provided to them that they

24  have not asked for that we, for example, have thought would be

25  relevant to their analysis.  If counsel is suggesting that we

11

1  should not undertake such action and not volunteer, then we're

2  happy only to respond to the specific requests.

3       But again, I don't believe that at least at this

4  point this is the appropriate forum for there to be an exchange

5  regarding what requests are reasonable, what are not, when we

6  can provide certain documents.

7       THE COURT:  Well, let me just say, Mr. Krasnow -- let

8  me stop you there.  The context of this status conference, of

9  course, is we had a hearing on the Committee's motion to

10  terminate exclusivity.  At the conclusion of that hearing I

11  said I still hadn't determined whether a factual hearing would

12  be necessary.  The Committee's filing certainly asserted that

13  this was a contested matter, affidavits have been submitted,

14  conflicting affidavits submitted by both sides.  It was in the

15  context during a recess when the Committee and the debtors

16  agreed to arrange the meeting for the 19th, which has now

17  occurred.  There was some discussion at that last hearing about

18  the Committee requesting information in advance of the June

19  19th meeting.  No specifics discussed but I expected and I have

20  no reason to believe otherwise that the parties proceeded in

21  good faith with that.

22       MR. SILVERSTEIN:  Your Honor, we did precisely

23  that just [inaudible] --

24       THE COURT:  Let me finish, Mr. Silverstein.

25       MR. SILVERSTEIN:  Sorry, Your Honor.

12

1          THE COURT:  Where I see things now and why I think

2     that the discussion about -- in general terms about what

3     information has been provided and what's not been provided I do

4     think is relevant to the pending motion.  I said at the hearing

5     and while I'm not ruling I still feel fairly strongly that the

6     prepetition history -- at least I didn't find anything in the

7     papers that showed a prima facie case for breach of fiduciary

8     duty by the debtor or its management.  I think I commented

9     then -- Mr. Silverstein didn't agree with me, but my

10    characterization then was what he was complaining was the lack

11    of a phone call.  I don't mean to reopen that subject for

12    debate.  That was sort of my euphemism for the lack of

13    communication and the disagreement about the workout proposals

14    that were exchanged prepetition.

15          But based on the hearing, the prior hearing, the

16    filings, the status report today, I would conclude that there

17    is -- it is a contested matter.  I do need to hold an

18    evidentiary hearing.  It does provide a forum for limited

19    discovery.  The hearing will take place on Monday, July 21, at

20    9:00 a.m.  I will give each side -- actually, we'll do it at

21    9:30 a.m. on the 21st -- 9:30 a.m. on the 21st.  I will give

22    each side a maximum of two and a half hours to use for some

23    combination of argument, direct examination and cross-

24    examination.  If you haven't used that method before, you'll

25    use the time to count -- whatever time you spend will count

13

1  against your two and a half hours.  It shouldn't take that

2  long, but just to make sure that everybody knows what the

3  ground rules are going in, so whatever -- we'll time you on

4  your arguments, and direct examination, and cross-examination.

5          MR. SILVERSTEIN:  You have to be frugal, I suspect.

6          THE COURT:  That's -- yes.  That actually is generous

7  for this hearing.  I want to make clear that while I'm not -- I

8  won't rule -- I'm not ruling now that I'm not going to hear

9  evidence regarding the prepetition period.  Mr. Silverstein,

10 I'm really -- nothing that you showed me in support of the

11 motion persuaded me that there was any breach of fiduciary duty

12 by the debtor's management by the then company's management in

13 the prepetition period.  So what I'm primarily interested in

14 what's happened since the filing of the petition.

15         I will express a strong hope that one of you will

16 write jointly on behalf of both the Committee and the debtor

17 saying that the hearing on the 21st is unnecessary because of

18 ongoing cooperation between the Committee and the debtor and

19 providing information, et cetera.  So while I think that the

20 informal exchange of information is preferable, there is indeed

21 a hearing now scheduled for Monday, July 21, at 9:30 a.m.

22 Obviously, I would shorten time for discovery.  I would suggest

23 that you exchange your request for information by letter rather

24 than formal request for documents.  Try and work out the timing

25 of the exchange.

14

1          I had asked at that hearing about any depositions

2     that people wanted.  It seems to me that at most two

3     depositions -- unless somebody seeks relief from this, a

4     maximum of two depositions per side for a maximum of three

5     hours each.  Depositions may be completely unnecessary, but

6     I'll allow each side to take two depositions, each deposition

7     not to exceed three hours.  We'll count on you to work out the

8     schedule, but I really do -- I think that -- I was hoping that

9     the result of today's status conference would be -- that there

10    would be no need to go forward with the hearing on the

11    Committee's motion because I think all of your time would be

12    much better spent negotiating and trying to come up with a

13    consensual plan or narrowing the issues of disagreement.

14         You've both made clear from the start there are

15    likely to be valuation issues, but the time for that to be

16    thought out is at a confirmation hearing if necessary if you

17    can't, so I am not enamored of the notion of this hearing, but

18    I believe that the disputed issues give rise to a contested

19    matter that will -- that I guess the Court is going to have to

20    resolve unhappily.  I would just say that both sides probably

21    would be happier working out a result on their own rather than

22    the ruling from the Court that may make neither side

23    particularly happy.

24         MR. KRASNOW:  I would agree with that, Your Honor,

25    but I do have one inquiry of the Court.  As was pointed out by

15

1    counsel for the Committee, their information requests are

2    focused from their perspective on issues relating to the

3    business, the plan, presumably projections, and ultimately

4    valuation which, as Your Honor noted, are really confirmation

5    issues.

6            So I would anticipate, and that's why I want to raise

7    this now, a potential here to utilize this discovery that may

8    be taken by the parties to focus on those issues rather than

9    discovery which would be relevant to the Committee's motion and

10   so I think it would be helpful for the parties to kind of

11   understand the scope of the hearing and the ground rules of

12   that regard --

13           THE COURT:  Let me ask Mr. Silverstein.

14           MR. SILVERSTEIN:  That was -- I'm sorry.  That was

15   Richard Krasnow.

16           MR. KRASNOW:  No, I know that, but I want to

17   ask Mister -- I knew it was Mr. Krasnow speaking, but I want to

18   ask Mr. Silverstein some questions.

19           MR. SILVERSTEIN:  Yes, Your Honor.

20           THE COURT:  In the post-petition period I understood

21   your -- the thrust of your motion to be that the debtor hasn't

22   been negotiating with you and hasn't been providing you with

23   information that the Committee and its professionals need in

24   order to evaluate any proposals that are put on the table.  Am

25   I right in that?

16

1           MR. SILVERSTEIN:  Yes, you are, Your Honor.

2           THE COURT:  Mr. Krasnow, I thought I heard you now to

3  say that you thought that information of that type is the kind

4  you think that discovery should focus on.  Am I right?

5           MR. KRASNOW:  Your Honor, first of all, I'd have to

6  reread the pleadings, but I'm not sure that in the motion, in

7  fact, that was pled as a grounds for determination of

8  exclusivity.

9           THE COURT:  Well, the motion complained that there

10  had been absolutely zero contact between the debtor and the

11  Committee.  I certainly gave each side -- asked a lot of

12  questions about why you didn't each call each other and it

13  seemed kind of petty to me, but -- you know, the absence of --

14  and I do recall Mr. Silverstein saying "lack of information."

15  He said say that some information had begun to flow in the few

16  days before the hearing.  I distinctly recall that.

17           MR. KRASNOW:  Yeah, that is correct, Your Honor.

18  Yes, Your Honor, I do recall that as well, but -- and my

19  focus --

20           THE COURT:  And I'm telling both --

21           MR. KRASNOW:  -- in my prior statement was there -- I

22  can see two potential avenues of discovery in the context of

23  the motion.  One would at least in my mind go to the issue you

24  just raised, Your Honor, which is what information has been

25  requested and what's been provided.

17

1          THE COURT:  Well, I'm going to judge it as of the

2  date of that hearing --

3          MR. KRASNOW:  But for reasons that [inaudible] for --

4          THE COURT:  Mr. Krasnow --

5          MR. KRASNOW:  -- that information not having been

6  provided today.

7          THE COURT:  Mr. Krasnow --

8          MR. KRASNOW:  And --

9          THE COURT:  Mr. Krasnow, just stop for a second.

10         MR. KRASNOW:  Yes, Your Honor.

11         THE COURT:  I'll tell you, when we have a hearing on

12 July 21st what I'm going to be interested in is what's happened

13 up to that day of July 21st, so you've given whatever you've

14 given.  There'll be -- there will or won't be agreement as --

15 you know, that -- here are the ten requests that have been

16 made.  They've given us seven of them.  That may be perfectly

17 reasonable.  I mean, I don't expect -- projections are not an

18 easy thing to develop.  It may -- I'm not saying that the

19 debtor is not required -- won't be required to produce

20 projections at that hearing, but I mean, what I'm going to be

21 most interested and concerned about is whether the debtor is

22 providing the Committee with the kinds, quality, and character

23 of information that a committee appropriately needs to properly

24 consider and negotiate a plan.

25         You've indicated -- you've put an outline of a plan,

18

1  not firmed up but put an outline of a plan in front of Mr.

2  Silverstein and the Committee.  What I'm going to be most

3  interested in hearing is whether the Committee is being given

4  access to and provided with information of the kind, quality,

5  type that would be expected where a debtor is negotiating in

6  good faith with the Committee.  Without the Committee and its

7  professionals having access to the information needed to

8  evaluate the plan, to come back with counter proposals, it

9  would at least raise a question in my mind whether the debtor

10 is fulfilling its obligations.

11        I think that either you or Mr. Marcus acknowledged an

12 obligation by the debtor to endeavor to negotiate in good

13 faith.  That doesn't mean you're going to reach an agreement.

14 You may not in the end.  I understand that, but, you know, the

15 other side of the coin is if the evidence establishes at the

16 hearing that the Committee is being intransigent, is making

17 unreasonable demands, is simply posturing, and is not

18 proceeding in good faith, the Court will be very mindful of

19 that evidence as well.

20        So I'm looking for both sides to move forward in good

21 faith.  You can do this all with informal discovery by letter.

22 I will certainly consider those as formal requests.  I'm hoping

23 that before July 21st I will hear that this hearing is no

24 longer necessary; if it is, you've got it scheduled.  You know,

25 I've set the time limits and I've indicated that absent further

19

1    order of the Court you're limited to two depositions each of a

2    maximum of three hours each.   You've got two and a half hours

3    each to use as you wish at the hearing.

4             MR. SILVERSTEIN:   Your Honor, it's Paul Silverstein.

5    I have nothing to add.   You've articulated the issues quite

6    well.

7             MR. KRASNOW:   Very well, Your Honor.

8             THE COURT:   Okay.

9             MR. KRASNOW:   [Inaudible]

10            THE COURT:   Thank you very much.   Good evening.

11            MR. SILVERSTEIN:   Thank you, Your Honor.

12            MR. KRASNOW:   Okay.   Thank you.

13                         *  *  *  *  *

14

15

16

17

18

19

20

21

22

23

24

25

20

1        I certify that the foregoing is a court transcript

2 from an electronic sound recording of the proceedings in the

3 above-entitled matter.

4

5        _____

6                                    Ruth Ann Hager

7 Dated:   July 11, 2008

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25