```
 1                    UNITED STATES BANKRUPTCY COURT
                      SOUTHERN DISTRICT OF NEW YORK
 2

 3   ------------------------------------X
                                         :
 4   In Re:                              :   08-11153
                                         :
 5     LEXINGTON PRECISION CORPORATION,  :   One Bowling Green
                                         :   New York, New York
 6                                       :
                              Debtor.    :   June 25, 2008
 7   ------------------------------------X

 8
                       TRANSCRIPT OF CHAMBERS CONFERENCE
 9                   BEFORE THE HONORABLE MARTIN GLENN
                        UNITED STATES BANKRUPTCY JUDGE
10

11   APPEARANCES:

12   For the Debtor:             RICHARD P. KRASNOW, ESQ.
                                 CHRISTOPHER J. MARCUS, ESQ.
13                               VICTORIA VRON, ESQ.
                                 Weil, Gotshal & Manges
14                               767 Fifth Avenue
                                 New York, New York  10153
15

16   For Official Committee of   PAUL N. SILVERSTEIN, ESQ.
       Unsecured Creditors:      TIMOTHY S. MCCONN, ESQ.
17                               GERALD L. BRACHT, ESQ.
                                 JONATHAN I. LEVINE, ESQ.
18                               Andrews Kurth, LLP
                                 450 Lexington Avenue
19                               New York, New York  10017

20

21   Court Transcriber:          RUTH ANN HAGER
                                 TypeWrite Word Processing Service
22                               356 Eltingville Boulevard
                                 Staten Island, New York 10312
23

24

25


     Proceedings recorded by electronic sound recording,
     transcript produced by transcription service
```

```
                                                                2
 1   (Proceedings began at 5:00 p.m.)
 2             THE COURT:  Hello.
 3             MR. SILVERSTEIN:  Hello.  Good afternoon, Your Honor.
 4             MR. KRASNOW:  Good afternoon, Your Honor.  You want
 5   appearances?
 6             THE COURT:  Sure.  Yeah, this is on the record, so --
 7             MR. SILVERSTEIN:  Okay.  Paul Silverstein from
 8   Andrews Kurth.  With me in my office is Gerald Bracht, Tim
 9   McConn and John Levine.
10             MR. KRASNOW:  Your Honor, this is Richard Krasnow.
11   In my office with me is Christopher Marcus and Vickie Vron.
12             THE COURT:  Thank you very much.  Good afternoon,
13   everybody.
14             MR. KRASNOW:  Good afternoon.
15             THE COURT:  We scheduled this so I could get just a
16   status report on where you are at.  I guess you were supposed
17   to have met last week, was it?
18             MR. KRASNOW:  Yes, Your Honor.  Just to update you on
19   a number of items in connection with that.
20             THE COURT:  This is Mr. Silverstein speaking?
21             MR. KRASNOW:  No, this is Richard Krasnow.
22             THE COURT:  All right.  Go ahead, Mr. Krasnow.
23             MR. KRASNOW:  I'm sorry.  As we indicated at the
24   hearing on June 11th, on June 13th we expected to file our
25   schedules, which we did.  On June 19th the debtors did meet
```

3

1  with representatives of the Creditors' Committee.  As we
2  indicated we would at that meeting, actually the day before, we
3  did provide the Committee with a work-in-process plan term
4  sheet.  While there were other items on the agenda, I think
5  it's fair to say that the primary focus of the discussions at
6  that meeting were with expect to that term sheet.
7          THE COURT:  Okay.
8          MR. SILVERSTEIN:  Your Honor, Paul Silverstein.
9          THE COURT:  Sure.  Go ahead, Mr. Silverstein.
10         MR. SILVERSTEIN:  The actual schedules were, in fact,
11 filed and, yes, we did meet on June 19th.  Essentially, Your
12 Honor, nothing has changed really.  As we expected the debtors
13 delivered to us what we referred to as the March 10th plan that
14 was previously provided to the Committee prepetition.  Your
15 Honor did ask Mr. Krasnow three times if the plan was the same
16 as the March 10th plan.  I can confirm, Your Honor, that the
17 debtor's plan is the March 10th plan with some minor tweaks.
18         Second, as my colleague Mr. Brock will explain to
19 Your Honor in more detail, and Mr. Brock is a trial lawyer
20 type, we have not received requested documents and data.  We
21 have not received any information with respect to very basic
22 specific requests for information that is readily available and
23 that we know exists.
24         Jerry, you may want to give some color.  Your Honor,
25 Gerald Brock.

4

1          THE COURT:  Go ahead, Mr. Brock.
2          MR. BROCK:  Jerry Brock.  Good afternoon.  If you
3 would like to hear more detail, Your Honor, I would be happy to
4 give it to you, but what's happened is, among other things,
5 there were site visits that were done by our valuation
6 consultants.  At those site visits there were specific items,
7 data information documents that were either shown to them or
8 that they observed in meeting rooms where they met with the
9 management operations people of those various businesses.  Much
10 of that information was considered to be very important by our
11 consultants.  The information was requested at that time and it
12 was refused.
13          We have subsequently made very specific requests
14 by -- in writing to Mr. Krasnow and his colleagues concerning
15 information that our consultants have indicated that they need
16 to understand and begin to understand the nature of the
17 business and the approach to valuation that the debtor is
18 taking.  Among the things that we requested were items that
19 were alluded to in Mr. Luvin's [Ph.] affidavit that was filed
20 in connection with the opposition to terminate exclusivity.
21          So these are not blunderbuss requests, Your Honor.
22 These are very specific requests concerning documents and
23 information that we have very good reason to believe exists.
24 Haven't been told that they don't exist.  What we've been told
25 is that we just can't get to the information now and that we're

5

1  just going to have to wait, and we don't know when we're going
2  to get the information even, other than the fact that we know
3  it's there and I guess we're going to get it sometime.  But we
4  would like to get started in trying to understand what's going
5  on with the business so we don't get kind of behind the eight
6  ball if we decide that we need to contest valuation.
7            MR. SILVERSTEIN:  Your Honor, it's Paul Silverstein
8  again.  Just to give a little more color, the debtor's counsel
9  did inform us yesterday that their projections are not going to
10 be ready as scheduled and that they are going to file their
11 plan, you know, without having the benefit of the projections.
12 Obviously, you know, we think the projections are clearly a
13 priority.  Normally, you get projections done before you file
14 your plan, but the documentation and data that we're trying to
15 get to that we can do our jobs as counsel for the Committee you
16 really can't do, you know, without cooperation.  It's not
17 something that the CFO who is busy with the projections has to
18 be dealing with.  You know, we've specifically identified
19 documents.  For better and worse -- and I apologize for the
20 characterization -- but our perception and that's our
21 projection is that the debtor's management is sort of hiding
22 the ball.
23           MR. KRASNOW:  Your Honor, this is Richard Krasnow.  I
24 take issue with any number of the statements that have been
25 made.  I'd like to remind the parties and advise the Court

1  that -- and I do want to get back to if I may, Your Honor, what
2  I understood the purpose of this status call to be, which
3  related to the plan, that there is no pending proceeding before
4  the Court where one might view it appropriate to have
5  discovered.  That's not what we're talking about.  This is an
6  informal production, if you will -- and I use that term in the
7  nondiscovery sense -- of documents to assist the Committee in
8  fulfilling its obligations.
9         We would take issue with any characterizations about
10 the requests being reasonable or appropriate at one level.  At
11 other levels they are quite appropriate.  So that the Court is
12 not under the misapprehension that the company has not been
13 responsive, I would point out that at least as of Monday there
14 were over 70 -- 7,300 pages of documents that were provided.
15 Had we provided the Committee with all of the documents that
16 they have requested which requests are kind of ongoing and
17 continuous?  No.  Do we have issues with respect to some of the
18 requests?  Yes, we do, but I don't believe there's any pending
19 matter before the Court which would properly provide a platform
20 for the Committee to engage in the kinds of characterizations
21 or presumably requests of the Court in this record.
22         THE COURT:  Mr. Krasnow, what --
23         MR. KRASNOW:  If I may go back to what I understood
24 the status conference to be -- and, Your Honor, it is whatever
25 the Court wants it to be -- obviously that with respect to the

1  meeting to focus once again on the plan, yes, Your Honor, as I
2  had indicated on the June 11th hearing while I was not in a
3  position to advise the Court as to the specifics of the plan
4  outline, because we were still working on it, I believe I
5  informed the Court that it would generally be consistent with
6  the proposals that had been made prior to the commencement of
7  the case.
8          We did engage in somewhat of a dialogue with the
9  Committee with respect to that plan proposal.  We indicated to
10 the Committee that we intended to file, as we are required to
11 by the final cash collateral order, a plan this coming Monday.
12 We do not believe we need the projections in order to file the
13 plan.  We certainly need them in the context of the disclosure
14 statement, which will be filed on or before the end of July as
15 contemplated and provided for in the final cash collateral
16 order.
17         But we also indicated at that meeting as we did in
18 court that we do not view the filing of the plan as the end of
19 a dialogue we hope to have with the Committee in a hope that we
20 can still have a consensual plan.  Yes, we did indicate to the
21 Committee an expectation of being able to provide them with
22 projections which are, we think, very important for the
23 Committee to have and obviously we need them as well in order
24 for them to not only better understand the plan itself but to
25 address many of the questions and they were legitimate

8

1  questions that the Committee asked of the company.

2  　　　　We anticipate providing them with those projections
3  sometime next week.  We would hope that after they've had an
4  opportunity to review, consider those projections and
5  discussion them with their financial advisor we will sometime
6  after the July 4th weekend schedule yet another meeting with
7  the Committee to discuss the plan.

8  　　　　We advised the Committee that we are hopeful that
9  they will respond to our plan proposal by making a counter
10 proposal so that, in fact, we can engage in discussions.  So,
11 Your Honor, that's where things stand with respect to the plan.
12 I'm hopeful that we will engage in ongoing discussions with the
13 Committee.  Whether or not it can ultimately result in a
14 consensual plan, I can't say obviously.

15 　　　　But with respect to these informal requests for
16 information what documents have been provided, what documents
17 haven't been provided so far, the timing, I would submit, Your
18 Honor, that this is an inappropriate forum for those issues to
19 be raised.  Yes, there are issues on both sides with respect to
20 the requests, but there is really no pending matter with
21 respect to those requests.

22 　　　　THE COURT:  Okay.

23 　　　　MR. KRASNOW:  Either those requests or those issues
24 and objections that we have with respect to certain of the
25 requests, which I might add, Your Honor, some of the

9

1  information that they've sought go not to the current
2  operations and projections of the business but go back to --
3  relate to requests for information going back five years.  So,
4  Your Honor, that's where things currently stand.
5          THE COURT:  Mr. Silverstein?
6          MR. BROCK:  Your Honor, this is Jerry Brock.
7          THE COURT:  Okay, Mr. Brock.
8          MR. BROCK:  We wanted to enter into the dialogue with
9  the debtors in a cooperative fashion to try to get the
10 information that our experts, our consultants believe to be
11 relevant and material to their job.  We have received documents
12 of debtors [ph.], some of the documents that we requested, some
13 documents that we didn't request but we've not received the
14 documents that our consultants believed to be necessary in
15 order to get -- to work and doing their job.  Those are the
16 documents that we've requested.
17         I realize that there's no formal proceeding that
18 would be -- serve as a platform for a motion or something like
19 that but I didn't think that's what we were about.  I thought
20 what we were about they need to provide us with the information
21 that we need to do our jobs.  That's what we've requested.
22         The debtors had given us the information that they
23 chose -- that they had chosen to give us either because it's
24 convenient to them or because it's what they want to give us
25 and they, for whatever reason, decided not to give us

10

1  information that we believed to be as clearly relevant to the
2  issues before the Court and that are not burdensome and are
3  very specific in their tone.
4          So we're just trying to get down the road.  We're not
5  trying to be obstreperous or to cause burden to the debtor.
6  We're just trying to get the information we need to do our job.
7          MR. KRASNOW:  Your Honor, may I respond?
8          THE COURT:  Yes, go ahead.
9          MR. KRASNOW:  Briefly.  First of all, Your Honor, I
10 have to apologize because I did not understand and counsel did
11 not advise us that they intended to use this status conference
12 as a forum to raise these issues.  Had I been aware of that, I
13 would have requested that my partner, who is really involved in
14 dealing with the document requests, to be on this call.  I did
15 not because I wasn't aware that this issue would be raised.
16         THE COURT:  No, I --
17         MR. KRASNOW:  Secondly, I simply want to note that
18 counsel has used a lot of conclusory statements.  We take issue
19 with them but, again, notwithstanding the fact that we take
20 issue with them we certainly do intend to -- have provided them
21 with information documents, intend to provide them with
22 additional information documents.  Yes, there are some
23 informational documents that we had provided to them that they
24 have not asked for that we, for example, have thought would be
25 relevant to their analysis.  If counsel is suggesting that we

11

1  should not undertake such action and not volunteer, then we're
2  happy only to respond to the specific requests.
3          But again, I don't believe that at least at this
4  point this is the appropriate forum for there to be an exchange
5  regarding what requests are reasonable, what are not, when we
6  can provide certain documents.
7          THE COURT: Well, let me just say, Mr. Krasnow -- let
8  me stop you there. The context of this status conference, of
9  course, is we had a hearing on the Committee's motion to
10 terminate exclusivity. At the conclusion of that hearing I
11 said I still hadn't determined whether a factual hearing would
12 be necessary. The Committee's filing certainly asserted that
13 this was a contested matter, affidavits have been submitted,
14 conflicting affidavits submitted by both sides. It was in the
15 context during a recess when the Committee and the debtors
16 agreed to arrange the meeting for the 19th, which has now
17 occurred. There was some discussion at that last hearing about
18 the Committee requesting information in advance of the June
19 19th meeting. No specifics discussed but I expected and I have
20 no reason to believe otherwise that the parties proceeded in
21 good faith with that.
22         MR. SILVERSTEIN: Your Honor, we did precisely
23 that just [inaudible] --
24         THE COURT: Let me finish, Mr. Silverstein.
25         MR. SILVERSTEIN: Sorry, Your Honor.

12

1            THE COURT:  Where I see things now and why I think
2   that the discussion about -- in general terms about what
3   information has been provided and what's not been provided I do
4   think is relevant to the pending motion.  I said at the hearing
5   and while I'm not ruling I still feel fairly strongly that the
6   prepetition history -- at least I didn't find anything in the
7   papers that showed a prima facie case for breach of fiduciary
8   duty by the debtor or its management.  I think I commented
9   then -- Mr. Silverstein didn't agree with me, but my
10  characterization then was what he was complaining was the lack
11  of a phone call.  I don't mean to reopen that subject for
12  debate.  That was sort of my euphemism for the lack of
13  communication and the disagreement about the workout proposals
14  that were exchanged prepetition.
15           But based on the hearing, the prior hearing, the
16  filings, the status report today, I would conclude that there
17  is -- it is a contested matter.  I do need to hold an
18  evidentiary hearing.  It does provide a forum for limited
19  discovery.  The hearing will take place on Monday, July 21, at
20  9:00 a.m.  I will give each side -- actually, we'll do it at
21  9:30 a.m. on the 21st -- 9:30 a.m. on the 21st.  I will give
22  each side a maximum of two and a half hours to use for some
23  combination of argument, direct examination and cross-
24  examination.  If you haven't used that method before, you'll
25  use the time to count -- whatever time you spend will count

1 against your two and a half hours. It shouldn't take that
2 long, but just to make sure that everybody knows what the
3 ground rules are going in, so whatever -- we'll time you on
4 your arguments, and direct examination, and cross-examination.
5     MR. SILVERSTEIN: You have to be frugal, I suspect.
6     THE COURT: That's -- yes. That actually is generous
7 for this hearing. I want to make clear that while I'm not -- I
8 won't rule -- I'm not ruling now that I'm not going to hear
9 evidence regarding the prepetition period. Mr. Silverstein,
10 I'm really -- nothing that you showed me in support of the
11 motion persuaded me that there was any breach of fiduciary duty
12 by the debtor's management by the then company's management in
13 the prepetition period. So what I'm primarily interested in
14 what's happened since the filing of the petition.
15     I will express a strong hope that one of you will
16 write jointly on behalf of both the Committee and the debtor
17 saying that the hearing on the 21st is unnecessary because of
18 ongoing cooperation between the Committee and the debtor and
19 providing information, et cetera. So while I think that the
20 informal exchange of information is preferable, there is indeed
21 a hearing now scheduled for Monday, July 21, at 9:30 a.m.
22 Obviously, I would shorten time for discovery. I would suggest
23 that you exchange your request for information by letter rather
24 than formal request for documents. Try and work out the timing
25 of the exchange.

1            I had asked at that hearing about any depositions
2   that people wanted.  It seems to me that at most two
3   depositions -- unless somebody seeks relief from this, a
4   maximum of two depositions per side for a maximum of three
5   hours each.  Depositions may be completely unnecessary, but
6   I'll allow each side to take two depositions, each deposition
7   not to exceed three hours.  We'll count on you to work out the
8   schedule, but I really do -- I think that -- I was hoping that
9   the result of today's status conference would be -- that there
10  would be no need to go forward with the hearing on the
11  Committee's motion because I think all of your time would be
12  much better spent negotiating and trying to come up with a
13  consensual plan or narrowing the issues of disagreement.
14           You've both made clear from the start there are
15  likely to be valuation issues, but the time for that to be
16  thought out is at a confirmation hearing if necessary if you
17  can't, so I am not enamored of the notion of this hearing, but
18  I believe that the disputed issues give rise to a contested
19  matter that will -- that I guess the Court is going to have to
20  resolve unhappily.  I would just say that both sides probably
21  would be happier working out a result on their own rather than
22  the ruling from the Court that may make neither side
23  particularly happy.
24           MR. KRASNOW:  I would agree with that, Your Honor,
25  but I do have one inquiry of the Court.  As was pointed out by

15

1  counsel for the Committee, their information requests are
2  focused from their perspective on issues relating to the
3  business, the plan, presumably projections, and ultimately
4  valuation which, as Your Honor noted, are really confirmation
5  issues.
6          So I would anticipate, and that's why I want to raise
7  this now, a potential here to utilize this discovery that may
8  be taken by the parties to focus on those issues rather than
9  discovery which would be relevant to the Committee's motion and
10 so I think it would be helpful for the parties to kind of
11 understand the scope of the hearing and the ground rules of
12 that regard --
13         THE COURT:  Let me ask Mr. Silverstein.
14         MR. SILVERSTEIN:  That was -- I'm sorry.  That was
15 Richard Krasnow.
16         MR. KRASNOW:  No, I know that, but I want to
17 ask Mister -- I knew it was Mr. Krasnow speaking, but I want to
18 ask Mr. Silverstein some questions.
19         MR. SILVERSTEIN:  Yes, Your Honor.
20         THE COURT:  In the post-petition period I understood
21 your -- the thrust of your motion to be that the debtor hasn't
22 been negotiating with you and hasn't been providing you with
23 information that the Committee and its professionals need in
24 order to evaluate any proposals that are put on the table.  Am
25 I right in that?

16

1    MR. SILVERSTEIN:  Yes, you are, Your Honor.

2    THE COURT:  Mr. Krasnow, I thought I heard you now to
3 say that you thought that information of that type is the kind
4 you think that discovery should focus on.  Am I right?

5    MR. KRASNOW:  Your Honor, first of all, I'd have to
6 reread the pleadings, but I'm not sure that in the motion, in
7 fact, that was pled as a grounds for determination of
8 exclusivity.

9    THE COURT:  Well, the motion complained that there
10 had been absolutely zero contact between the debtor and the
11 Committee.  I certainly gave each side -- asked a lot of
12 questions about why you didn't each call each other and it
13 seemed kind of petty to me, but -- you know, the absence of --
14 and I do recall Mr. Silverstein saying "lack of information."
15 He said say that some information had begun to flow in the few
16 days before the hearing.  I distinctly recall that.

17   MR. KRASNOW:  Yeah, that is correct, Your Honor.
18 Yes, Your Honor, I do recall that as well, but -- and my
19 focus --

20   THE COURT:  And I'm telling both --

21   MR. KRASNOW:  -- in my prior statement was there -- I
22 can see two potential avenues of discovery in the context of
23 the motion.  One would at least in my mind go to the issue you
24 just raised, Your Honor, which is what information has been
25 requested and what's been provided.

17

1        THE COURT:  Well, I'm going to judge it as of the
2 date of that hearing --
3        MR. KRASNOW:  But for reasons that [inaudible] for --
4        THE COURT:  Mr. Krasnow --
5        MR. KRASNOW:  -- that information not having been
6 provided today.
7        THE COURT:  Mr. Krasnow --
8        MR. KRASNOW:  And --
9        THE COURT:  Mr. Krasnow, just stop for a second.
10        MR. KRASNOW:  Yes, Your Honor.
11        THE COURT:  I'll tell you, when we have a hearing on
12 July 21st what I'm going to be interested in is what's happened
13 up to that day of July 21st, so you've given whatever you've
14 given.  There'll be -- there will or won't be agreement as --
15 you know, that -- here are the ten requests that have been
16 made.  They've given us seven of them.  That may be perfectly
17 reasonable.  I mean, I don't expect -- projections are not an
18 easy thing to develop.  It may -- I'm not saying that the
19 debtor is not required -- won't be required to produce
20 projections at that hearing, but I mean, what I'm going to be
21 most interested and concerned about is whether the debtor is
22 providing the Committee with the kinds, quality, and character
23 of information that a committee appropriately needs to properly
24 consider and negotiate a plan.
25        You've indicated -- you've put an outline of a plan,

18

1  not firmed up but put an outline of a plan in front of Mr.
2  Silverstein and the Committee.  What I'm going to be most
3  interested in hearing is whether the Committee is being given
4  access to and provided with information of the kind, quality,
5  type that would be expected where a debtor is negotiating in
6  good faith with the Committee.  Without the Committee and its
7  professionals having access to the information needed to
8  evaluate the plan, to come back with counter proposals, it
9  would at least raise a question in my mind whether the debtor
10 is fulfilling its obligations.
11         I think that either you or Mr. Marcus acknowledged an
12 obligation by the debtor to endeavor to negotiate in good
13 faith.  That doesn't mean you're going to reach an agreement.
14 You may not in the end.  I understand that, but, you know, the
15 other side of the coin is if the evidence establishes at the
16 hearing that the Committee is being intransigent, is making
17 unreasonable demands, is simply posturing, and is not
18 proceeding in good faith, the Court will be very mindful of
19 that evidence as well.
20         So I'm looking for both sides to move forward in good
21 faith.  You can do this all with informal discovery by letter.
22 I will certainly consider those as formal requests.  I'm hoping
23 that before July 21st I will hear that this hearing is no
24 longer necessary; if it is, you've got it scheduled.  You know,
25 I've set the time limits and I've indicated that absent further

19

1  order of the Court you're limited to two depositions each of a
2  maximum of three hours each.  You've got two and a half hours
3  each to use as you wish at the hearing.
4           MR. SILVERSTEIN:  Your Honor, it's Paul Silverstein.
5  I have nothing to add.  You've articulated the issues quite
6  well.
7           MR. KRASNOW:  Very well, Your Honor.
8           THE COURT:  Okay.
9           MR. KRASNOW:  [Inaudible]
10          THE COURT:  Thank you very much.  Good evening.
11          MR. SILVERSTEIN:  Thank you, Your Honor.
12          MR. KRASNOW:  Okay.  Thank you.
13                         * * * * *

1     I certify that the foregoing is a court transcript
2  from an electronic sound recording of the proceedings in the
3  above-entitled matter.
4
5                                    _____
6                                           Ruth Ann Hager
7  Dated:  July 11, 2008
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25