WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007
Richard P. Krasnow

Attorneys for Debtors
and Debtors in Possession

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------------------x
                                              :
In re                                         :   Chapter 11 Case No.
                                              :
**LEXINGTON PRECISION CORP., et al.,**        :   08-11153 (MG)
                                              :
        Debtors.                              :   (Jointly Administered)
                                              :
------------------------------------------------------------x

**DEBTORS' MOTION PURSUANT TO SECTION 363(b) OF THE BANKRUPTCY
CODE FOR AUTHORITY TO REIMBURSE CERTAIN DUE DILIGENCE FEES**

TO THE HONORABLE MARTIN GLENN,
UNITED STATES BANKRUPTCY JUDGE:

    Lexington Precision Corporation and Lexington Rubber Group, Inc., as debtors

and debtors in possession (collectively, "Lexington" or the "Debtors"), respectfully represent:

**Background**

    1.  On April 1, 2008 (the "Commencement Date"), each of the Debtors

commenced with this Court a voluntary case under chapter 11 of title 11 of the United States

Code (the "Bankruptcy Code"). The Debtors are authorized to continue to operate their

businesses and manage their properties as debtors in possession pursuant to sections 1107(a) and

1108 of the Bankruptcy Code.

2. The Debtors' chapter 11 cases have been consolidated for procedural purposes only and are being jointly administered pursuant to Rule 1015(b) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").

3. On April 11, 2008, the United States Trustee for the Southern District of New York appointed the statutory committee of creditors (the "Creditors' Committee").

### Lexington's Businesses

4. Lexington manufactures large volumes of high-quality rubber and metal components at competitive prices for use primarily in automobiles and medical devices. Lexington operates through two operating segments—the Rubber Group and the Metals Group. Lexington's components are generally sold to other manufacturers.

### Jurisdiction

5. This Court has jurisdiction to consider this matter pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b). Venue is proper before this Court pursuant to 28 U.S.C. § § 1408 and 1409.

### Relief Requested

6. The Debtors request authorization to reimburse Capital One Leverage Finance Corp. (f/k/a North Fork Business Capital Corporation) ("Capital One") for due diligence costs and expenses totaling approximately $130,000 that it has or may incur in connection with negotiations relating to a financing facility in the approximate amount of $40,000,000 to finance the Debtors' chapter 11 plan and exit from bankruptcy (an "Exit Facility"). To implement the relief requested as soon as practicable, the Debtors also request that the Court waive the notice requirements under Bankruptcy Rule 6004(a) and the stay of the order authorizing the use, sale, or lease of property under Bankruptcy Rule 6004(h). In support of this Motion, the Debtors

submit the declaration of Warren Delano, dated August 18, 2008, which is attached hereto as Exhibit 1 (the "Delano Declaration").

**The Exit Facility**

7. On August 8, 2008, the Debtors filed their amended chapter 11 plan[1] (the "Amended Plan") and the proposed disclosure statement thereto.[2] The Debtors hope to confirm the Amended Plan by late fall of 2008. To finance the Amended Plan, the Debtors are negotiating with Capital One to obtain an Exit Facility.

8. In connection with the ongoing negotiations, Capital One is conducting initial diligence of the Debtors and their assets. In addition to reviewing relevant documents and other diligence, Capital One has employed a collateral examination firm, an inventory appraiser, a real estate appraiser, an environmental consultant, and a firm to conduct background checks (collectively, the "Consultants") and incurred related professional fees totaling approximately $110,000 (the "Professional Fees"). The Professional Fees are as follows:

| NAME OF CONSULTANT | TYPE OF SERVICES | MAXIMUM DUE DILIGENCE FEE |
|---|---|---|
| Durkin Group LLC | Collateral audit | $20,000 plus expenses |
| Cashman & Wakefield | Real estate appraisals | $40,000 |
| Bureau Veritas | Environmental Phase I Reports | $21,200 |
| AccuVal Associates, Inc. | Inventory appraisal | $25,000 plus expenses |
| First West Financial Corp. | Background checks | $3,800 |

---

[1] Debtors' Amended Plan of Reorganization Under Chapter 11 of the Bankruptcy Code, dated August 8, 2008 [Docket No. 305].

[2] Proposed Disclosure Statement for Debtors' Amended Plan of Reorganization Under Chapter 11 of the Bankruptcy Code, dated August 8, 2008 [Docket No. 306].

9. Capital One may also incur additional fees and expenses in connection with its due diligence.

10. As is typical with financing transactions of this nature, Capital One has requested the Debtors reimburse Capital One for the Professional Fees as well as any additional fees and expenses up to $20,000 that Capital One may incur in connection with its due diligence (collectively, the "Due Diligence Fees"). The terms of the proposed reimbursement are set forth in the letter dated August 13, 2008, (the "Reimbursement Letter") a copy of which is attached to the Delano Declaration as Exhibit A. Upon approval of this Motion, Capital One shall, in the first instance, apply the $21,200 held on deposit by Capital One against the Due Diligence Fees.[3] The Debtors shall then reimburse Capital One the remaining balance of the Due Diligence Fees as the fees are incurred by Capital One.

11. Pursuant to the Reimbursement Letter, upon the reimbursement of the Due Diligence Fees, Capital One has agreed to provide the Debtors with certain written reports that have been or will be prepared by the Consultants (collectively, the "Due Diligence Reports"), which include real estate appraisals. Each of the Due Diligence Reports provides information about the Debtors and their businesses that is useful in plan negotiations between the Debtors and the Creditors' Committee. Upon receipt of the Due Diligence Reports, the Debtors shall share the reports with the Committee.

12. Given the Debtors' desire to proceed with plan negotiations, the Debtors have filed concurrent with this motion a motion to shorten the notice period for consideration of this Motion. The Debtors also request the Court to waive the notice requirements under

---

[3] The Debtors had inadvertently paid said deposit to Capital One during the course of these chapter 11 cases. Rather than seeking a return of the deposit and then re-advancing the same to Capital One if the Court approves this motion, the Debtors are seeking the ratification and approval of said payment.

Bankruptcy Rule 6004(c) and the stay of the order authorizing the relief requested under Bankruptcy Rule 6004(h).

## Good Business Reasons Exist to
## Reimburse the Due Diligence Fees

13.     Section 363(b) of the Bankruptcy Code provides that "the [Debtor], after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate. . ." 11 U.S.C. § 363(b).  A court should approve a request for relief under section 363 of the Bankruptcy Code where the debtor demonstrates a sound business justification for seeking such relief.  In re Lionel Corp., 722 F.2d 1063, 1071 (2d Cir. 1983) ("The rule we adopt requires that a judge determining a § 363(b) application expressly find from the evidence presented before him a good business reason to grant the application").  In this regard, courts have applied the business judgment rule.  In re Integregated Resources, Inc., 147 B.R. 650, 656 (S.D.N.Y. 1992).  The business judgment rule is "a presumption that in making a business decision the directors of a corporation acted on an informed basis, in good faith and in the honest belief that the action taken was in the best interest of the company." Id. (internal citations and quotations omitted).  Courts are loath to interfere with corporate decisions absent a showing of bad faith, self-interest, or gross negligence.  Id.  Further, parties opposing the proposed exercise of a debtor's business judgment have the burden of rebutting the presumption of validity.  Id.

14.     As set forth in more detail in the Delano Declaration, the Debtors submit that the reimbursement of the Due Diligence Fees is, within the Debtors' business judgment, in the best interests of the Debtors, their estates, and all parties in interest therein because such reimbursement will allow the Debtors to proceed with the Exit Facility negotiations and obtain the Due Diligence Reports to assist with plan negotiations.

15. The Debtors also submit that reimbursement of due diligence fees is customary business practice and would be necessary to obtain any exit facility.

16. Notably, courts have approved the payment of due diligence fees incurred by third-parties where the third-parties undertook due diligence in relation to a future transaction that was necessary for a debtor's reorganization. See e.g. In re Bethlehem Steel Corp., 2003 WL 21738964 (S.D.N.Y. July 28, 2003) (approving the payment of, among other things, due diligence fees and expenses for a union in relationship to the renegotiation of a union collective bargaining agreement); In re Integrated Resources, Inc., 135 B.R. 746 (Bankr. S.D.N.Y. 1992), aff'd 147 B.R. 650 (S.D.N.Y. 1992) (approving the payment of, among other things, due diligence fees and expenses for a potential purchaser in relation to a sale of the Debtors' assets, the proceeds of which would fund the Debtors' chapter 11 plan).

17. Based upon the foregoing, the Debtors submit that sound business justification exists to authorize the reimbursement of the Due Diligence Fees and the Motion should be granted in its entirety.

**Notice**

18. No trustee or examiner has been appointed in these chapter 11 cases. Notice of this Motion has been provided to (i) the United States Trustee for the Southern District of New York, (ii) the attorneys for the agents for the Debtors' prepetition lenders, (iii) the attorneys for the Debtors' postpetition lenders, (iv) the attorneys for Creditors' Committee, and (v) all other parties that have requested notice in these chapter 11 cases. The Debtors submit that no other or further notice need be provided.

WHEREFORE the Debtors respectfully request entry of an order granting the relief requested herein and such other and further relief as is just.

Dated: New York, New York
August 18, 2008

/s/ Richard P. Krasnow
Richard P. Krasnow
WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York  10153
Telephone:   (212) 310-8000
Facsimile:    (212) 310-8007

Attorneys for Debtors
and Debtors in Possession

# EXHIBITS

## Exhibit 1 – Declaration of Warren Delano

# **EXHIBIT 1**

NY2:\1879127\06\149XZ06!.DOC\26690.0008

WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007
Richard P. Krasnow
Attorneys for Debtors
and Debtors in Possession

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-------------------------------------------------------------x
: 
**In re** : **Chapter 11 Case No.**
: 
**LEXINGTON PRECISION CORP., <u>et</u> <u>al</u>.,** : **08-11153 (MG)**
: 
**Debtors.** : **(Jointly Administered)**
: 
-------------------------------------------------------------x

**DECLARATION OF WARREN DELANO IN SUPPORT OF
THE DEBTORS' MOTION FOR ENTRY OF AN ORDER
PURSUANT TO SECTION 363(b) OF THE BANKRUPTCY CODE
<u>FOR AUTHORITY TO REIMBURSE CERTAIN DUE DILIGENCE FEES</u>**

I, Warren Delano, pursuant to 28 U.S.C. § 1746, hereby declare as follows:

1. I am President of Lexington Precision Corporation and Lexington Rubber Group, Inc., which are debtors and debtors in possession in the above-referenced chapter 11 cases (collectively, the "<u>Debtors</u>" or "<u>Lexington</u>"). Since 1985, I have also been a member of the Debtors' Boards of Directors. Prior to joining Lexington, I worked as a commercial loan officer specializing in problem loans and as a workout consultant working with troubled companies.

2. I have been involved in the ongoing negotiation to obtain exit financing from Capital One Leverage Finance Corp. (f/k/a/ North Fork Business Capital Corporation) ("<u>Capital One</u>"). Except as otherwise indicated, I have personal knowledge of the matters set forth herein and if called as a witness, would testify competently thereto.

NY2:\1879127\06\149XZ06!.DOC\26690.0008

3. The Debtors submit this declaration in support of their motion pursuant to section 363(b) of the Bankruptcy Code for Authority to Reimburse Certain Due Diligence Fees (the "Motion").

### Negotiations with Capital One

4. To fund their chapter 11 plan, the Debtors and Capital One have engaged in negotiations to obtain a financing facility in the approximate amount of $40,000,000 to finance the Debtors' chapter 11 plan and exit from bankruptcy (an "Exit Facility").

5. In connection with the Exit Facility negotiations, Capital One has commenced initial due diligence of the Debtors and their assets. During this diligence, Capital One hired a collateral examination firm, an inventory appraiser, a real estate appraiser, an environmental consultant, and a firm to conduct background checks (collectively, the "Consultants") and incurred certain professional fees totaling approximately $110,000 (the "Professional Fees"). The Professional Fees are:

| NAME OF FIRM ("Consultant") | TYPE OF SERVICES | MAXIMUM DUE DILIGENCE FEE |
|---|---|---|
| Durkin Group LLC | Collateral audit | $20,000 plus expenses |
| Cushman Wakefield | Real estate appraisals | $40,000 |
| Bureau Veritas | Environmental Phase I Reports | $21,200 |
| AccuVal Associates, Inc. | Inventory appraisal | $25,000 plus expenses |
| First West Financial Corp. | Background checks | $3,800 |

6. Capital One may also incur additional fees and expenses in connection with its due diligence.

7. As is typical with financing transactions of this type, Capital One has requested that the Debtors reimburse Capital One for the Professional Fees as well as any additional fees or expenses up to $20,000 that Capital One may incur in connection with its due

diligence up to $20,000 (the "Due Diligence Fees").  The terms of reimbursement are set forth in the letter dated August 13, 2008 (the "Reimbursement Letter"), which is attached hereto as Exhibit A.

8. Pursuant to the Reimbursement Letter, upon approval of the Motion, Capital One shall in the first instance, apply the $21,200 held on deposit by Capital One against the Due Diligence Fees.[1]  The Debtors shall then reimburse the remaining balance of the Due Diligence Fees as such fees are incurred by Capital One.  Further, upon reimbursement, Capital One will provide the Debtors certain reports that have been or will be prepared by the Consultants (the "Due Diligence Reports"), which include the real estate appraisals.

9. Each of the Due Diligence Reports provides information about the Debtors and their businesses that is useful in plan negotiations between the Debtors and the statutory creditors' committee (the "Committee").

**Reimbursement of the Due Diligence Fees is in the Best Interest of the Debtors**

10. In my business judgment, the reimbursement of the Due Diligence Fees is in the Debtors' best interests because it would advance ongoing Exit Facility negotiations and provide access to the Due Diligence Reports to advance plan negotiations.

---

[1] The Debtors had inadvertently paid said deposit to Capital One during the course of these chapter 11 cases.  Rather than seeking a return of the deposit and then re-advancing the same to Capital One if the Court approves this motion, the Debtors are seeking the ratification and approval of said payment.

11. Further, based upon my numerous years of experience as the Debtors' Co-CEO and my previous experience as a loan officer and a workout consultant, I submit that the requested reimbursement is customary in such financial transactions and, as such, the Debtors would likely be required to reimburse similar fees to obtain exit financing from other sources.

Dated: August 18, 2008
      New York, New York

                                              /s/ Warren Delano
                                              Warren Delano

# **EXHIBIT A**

**Letter, dated August 13, 2008**

**Lexington Precision Corporation**
800 Third Avenue, 15th Floor
New York, NY 10022

August 13, 2008

Mr. Stephen E. Altneu
Vice President
Capital One Leverage Finance Corporation
404 Fifth Avenue
New York, NY 10022

Dear Mr. Altneu:

      This letter confirms the terms of the reimbursement of certain due diligence fees that Capital One Leverage Finance Corporation ("Capital One") has incurred or may incur in connection with Capital One's ongoing negotiations with Lexington Precision Corporation and Lexington Rubber Group, Inc. (collectively, "Lexington") regarding the request by Lexington for Capital One to provide exit financing to Lexington in connection with Lexington's Chapter 11 plan (the "Exit Facility"). Nothing contained herein should be considered a commitment or agreement by Capital One to provide such financing.

      Lexington will seek authority from the United States Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court") to reimburse Capital One for the fees listed below and up to an additional $20,000 of other due-diligence expenses that may be incurred by Capital One prior to the issuance of a proposal letter with respect to the Exit Facility, in each case, as they are incurred by Capital One in conducting the initial due diligence in connection with the Exit Facility (the "Due Diligence Fees"):

| Name of Firm ("Consultant") | Type of Services | Estimated Maximum Due Diligence Fee |
|---|---|---|
| Durkin Group LLC | Collateral audit | $20,000 plus expenses |
| Cushman & Wakefield | Real estate appraisals | $40,000 |
| Bureau Veritas | Environmental Phase I reports | $21,200 |
| AccuVal Associates, Inc. | Inventory appraisal | $25,000 plus expenses |
| First West Financial Corp. | Background checks | $ 3,800 |

When Lexington reimburses the Due Diligence Fees related to the real estate appraisals, the environmental Phase I reports, and the inventory appraisal, Capital One shall provide Lexington with copies of the related document(s). It is understood that the payment previously made by Lexington to Capital One in the amount of $21,200 will be considered the initial reimbursement.

Mr. Stephen E. Altneu
August 13, 2008
Page 2

Should you find the terms outlined herein to be acceptable, please acknowledge below and return to the undersigned. If you have any questions or comments, please feel free to contact me.

                Sincerely,
                LEXINGTON PRECISION CORPORATION

                By: _____
                    Warren Delano
                    President

                LEXINGTON RUBBER GROUP, INC.

                By: _____
                    Warren Delano
                    President

Accepted and Agreed to this
13th day of August, 2008

CAPITAL ONE LEVERAGE FINANCE CORPORATION

By: _____
Name: Barry S. Fein
Title: Senior Vice President

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------x
:
In re                                             :    Chapter 11 Case No.
                                                  :
**LEXINGTON PRECISION CORP., et al.,**            :    08-11153 (MG)
                                                  :
        Debtors.                      :    (Jointly Administered)
                                                  :
------------------------------------------------------------x

### ORDER PURSUANT TO SECTION 363(b) OF THE BANKRUPTCY CODE GRANTING AUTHORITY TO REIMBURSE CERTAIN DUE DILIGENCE FEES

Upon the motion, dated August 18, 2008 (the "Motion") of Lexington Precision Corporation and Lexington Rubber Group, Inc., as debtors and debtors in possession (collectively, the "Debtors"), pursuant to section 363(b) of title 11 of the United States Code (the "Bankruptcy Code"), for authority to reimburse certain due diligence fees, all as more fully set forth in the Motion; and the Court having jurisdiction to consider the Motion and the relief requested therein in accordance with 28 U.S.C. §§ 157 and 1334 and the Standing Order M-61 Referring to Bankruptcy Judges for the Southern District of New York Any and All Proceedings Under Title 11, dated July 10, 1984 (Ward, Acting C.J.); and consideration of the Motion and the relief requested therein being a core proceeding pursuant to 28 U.S.C. § 157(b); and venue being proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409; and notice of the Motion having been provided as described in the Motion; and a hearing having been held to consider the relief requested in the Motion (the "Hearing"); and upon the record of the Hearing and all of the proceedings had before the Court and the declaration of Warren Delano in support of the Motion (the "Delano Declaration"), the Court finds and determines, after due deliberation, that the relief sought in the Motion is in the best interests of the Debtors, their estates, and all parties in interest therein; notice of the Motion was due and proper and no further notice is necessary; and the legal

and factual bases set forth in the Motion establish just cause for the relief granted herein; and therefore, it is

ORDERED that the Motion is granted; and it is further

ORDERED that the Debtors are authorized to reimburse Capital One Leverage Finance Corp. (f/k/a North Fork Business Capital Corp.) ("Capital One") for the professional fees and expenses of Durkin Group LLC, Cushman & Wakefield, Bureau Veritas, AccuVal Associates, Inc., and First West Financial incurred during the course of Capital One's due diligence (the "Professional Fees") on the terms and conditions set forth in the letter dated August 13, 2008, which is attached to the Delano Declaration as Exhibit A (the "Reimbursement Agreement"); and it is further

ORDERED that the Debtors are authorized to reimburse Capital One for any additional fees and expenses incurred during the Capital One's due diligence up to $20,000 (together with the Professional Fees, the "Due Diligence Fees") on the terms and conditions set forth in the Reimbursement Agreement; and it is further

ORDERED that the $21,200 deposit held by Capital One is ratified and approved, which deposit Capital One shall apply against the Due Diligence Fees before the Debtors reimburse any remaining balance; and it is further

ORDERED that notwithstanding any applicability of Bankruptcy Rules 6004(h),[1] the terms and conditions of this Order shall be immediately effective and enforceable upon its entry; and it is further

---

[1] Bankruptcy Rule 6004(h) is an interim bankruptcy rule adopted pursuant to standing General Order M-308 of the United States Bankruptcy Court for the Southern District of New York, signed on October 11, 2005 by Chief Judge Stuart M. Bernstein.

ORDERED that the requirements of Bankruptcy Rule 6004(a) are waived.

Dated: New York, New York
       August ___, 2008

_____
UNITED STATES BANKRUPTCY JUDGE