WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007
Richard P. Krasnow

Attorneys for Debtors
and Debtors in Possession

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------------------x
                                      :

**In re**                               :      **Chapter 11 Case No.**

                                      :

**LEXINGTON PRECISION CORP., et al.,**      :      **08- 11153 (MG)**

                                      :

           **Debtors.**                    :      **(Jointly Administered)**

                                        :

------------------------------------------------------------x

### NOTICE OF PRESENTMENT OF DEBTORS' APPLICATION PURSUANT TO 28 U.S.C. § 156(c) AND LOCAL RULES 5075-1(a) AND 9074-1 FOR AUTHORITY TO EMPLOY AND RETAIN FINANCIAL BALLOTING GROUP LLC AS SOLICITATION AND BALLOTING AGENT NUNC PRO TUNC TO AUGUST 5, 2008

PLEASE TAKE NOTICE THAT, the undersigned will present the annexed

application, dated August 22, 2008 (the "Application") and proposed order (the "Order"),

pursuant section 156(c) of title 28 of the United States Code and Local Rules 5075-1(a) and

9074-1, authorizing the employment and retention of Financial Balloting Group LLC as

solicitation and balloting agent for the Debtors, nunc pro tunc to August 5, 2008, to the

Honorable Martin Glenn, United States Bankruptcy Judge, for signature on September 2, 2008 at

12:00 noon (prevailing Eastern time).

PLEASE TAKE FURTHER NOTICE that objections or responses, if any, to the

Application must be in writing, must conform to the Federal Rules of Bankruptcy Procedure (the

"Bankruptcy Rules") and the Local Rules of the Bankruptcy Court for the Southern District of

New York, must set forth the name of the objecting party, the nature and amount of claims or interests held or asserted by the objecting party against the Debtors' estates or property, the basis for the objection and the specific grounds therefor, and must be filed no later than **August 29, 2008 at 4:00 p.m. (Prevailing Eastern Time)** with the Bankruptcy Court electronically in accordance with General Order M-242 (General Order M-242 and the User's Manual for the Electronic Case Filing System may be found at www.nysb.uscourts.gov, the official website for the Bankruptcy Court) by registered users of the Bankruptcy Court's case filing system, and by all other parties in interest on a 3.5 inch disk, preferably in Portable Document Format (PDF), WordPerfect, or any other Windows-based word processing format (with a hard copy delivered directly to Chambers), in accordance with General Order M-182, and be served upon: (a) the Debtors, Lexington Precision Corp., 800 Third Ave. 15th Floor, New York, New York 10023 (Attn: Michael A. Lubin), (b) the attorneys for the Debtors, Weil, Gotshal & Manges LLP, 767 Fifth Avenue, New York, New York 10153 (Attn: Richard P. Krasnow and Conray T. Tseng); (c) the Office of the United States Trustee for the Southern District of New York, 33 Whitehall Street, 21st Floor, New York, New York 10004, (Attn: Paul Schwartzberg, Esq.); (d) the attorneys for the Debtors' prepetition lenders, Waller, Landsden, Dortch & Davis LLP, 511 Union Street, Suite 2700, Nashville, TN, 37219 (Attn: John C. Tishler); (e) the attorneys for the statutory committee of unsecured creditors, Andrews Kurth LLP, 450 Lexington Avenue, New York, New York, 10017 (Attn: Paul Silverstein); and (f) attorneys for the Debtors' postpetition lenders, O'Melveny & Meyers, LLP, Times Square Tower, 7 Times Square, New York, NY 10036 (Attn: Gerald Bender, Esq.), so as to be received no later than **August 29, 2008, at 4:00 p.m. (prevailing Eastern Time)**.

PLEASE TAKE FURTHER NOTICE that, if no objections to the Order are timely filed, served, and received in accordance with this Notice, the Court may enter the Order approving the Application without further notice or hearing.

Dated: August 22, 2008
      New York, New York

      /s/ Richard P. Krasnow
      Richard P. Krasnow
      WEIL, GOTSHAL & MANGES LLP
      767 Fifth Avenue
      New York, New York  10153
      Telephone:   (212) 310-8000
      Facsimile:   (212) 310-8007

      Attorneys for Debtors and
      Debtors in Possession

WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007
Richard P. Krasnow

Attorneys for Debtors and
Debtors in Possession

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
----------------------------------------------------------x
**In re**                                                  :
                                                           :        **Chapter 11 Case No.**
**LEXINGTON PRECISION CORP., et al.,**                     :
                                                           :        **08-11153 (MG)**
                                                           :
                                                           :        **(Jointly Administered)**
----------------------------------------------------------x

**APPLICATION PURSUANT TO 28 U.S.C. § 156(c)**
**AND LOCAL RULES 5075-1(a) AND 9074-1 FOR AUTHORITY TO EMPLOY**
**AND RETAIN FINANCIAL BALLOTING GROUP LLC AS SOLICITATION**
**AND BALLOTING AGENT NUNC PRO TUNC TO AUGUST 5, 2008**

TO THE HONORABLE MARTIN GLENN,
UNITED STATES BANKRUPTCY JUDGE:

        Lexington Precision Corporation and Lexington Rubber Group, Inc., as debtors

and debtors in possession (collectively, "Lexington" or the "Debtors"), respectfully represent:

<u>**Background**</u>

        1.      On April 1, 2008 (the "Commencement Date"), each of the Debtors

commenced with this Court a voluntary case under chapter 11 of title 11 of the United States

Code (the "Bankruptcy Code"). The Debtors are authorized to continue to operate their

businesses and manage their properties as debtors in possession pursuant to sections 1107(a) and

1108 of the Bankruptcy Code.

2.      The Debtors' chapter 11 cases have been consolidated for procedural purposes only and are being jointly administered pursuant to Rule 1015(b) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").

### Jurisdiction

3.      This Court has jurisdiction to consider this matter pursuant to 28 U.S.C. §§ 157 and 1334.  This is a core proceeding pursuant to 28 U.S.C. § 157(b).  Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

### Relief Requested

4.      By this application (the "Application"), the Debtors seek authorization to employ Financial Balloting Group LLC ("FBG"), nunc pro tunc to August 5, 2008, as the Debtors' solicitation and balloting agent in connection with the Debtors' chapter 11 cases pursuant to the terms and conditions of the Agreement, dated August 5, 2008, a copy of which is annexed hereto as Exhibit 1 (the "Retention Agreement").

### The Retention of FBG

5.      Section 156(c) of title 28 of the United States Code, which governs the staffing and expenses of the Bankruptcy Court, authorizes the Court to use facilities other than those of the Clerk's Office for the administration of chapter 11 cases.  It provides:

> [a]ny court may utilize facilities or services, either on or off the court's premises, which pertain to the provision of notices, dockets, calendars, and other administrative information to parties in cases filed under the provisions of title 11, United States Code, where the costs of such facilities or services are paid for out of the assets of the estates and are not charged to the United States.

28 U.S.C. § 156(c).

6.     Further, Local Rule 5075-1(a) of the Local Rules of the Bankruptcy

Procedure for the United States Bankruptcy Court for the Southern District of New York (the

"Local Rules") provides:

> The Court may direct... the use of agents either on or off the
> Court's premises to file Court records, either by paper or electronic
> means, to issue notices, to maintain case dockets, to maintain
> Judge's calendars, and to maintain and disseminate other
> administrative information where the costs of such facilities or
> services are paid for by the estate.

Local Rule 5075-1(a).

7.     The Debtors estimate that they have in excess of 5,000 holders of claims

and interests and approximately 4,900 are entitled to vote.  Taking into account those members

of the classes of claim and interest holders that are impaired and entitled to vote under the

Debtors' Amended Joint Plan of Reorganization Under Chapter 11 of the Bankruptcy Code,

dated August 8, 2008 [Docket No. 305],  noticing, soliciting, receiving, and tabulating votes

from such claim and interest holders may be unduly time consuming and burdensome for the

Debtors.  Further, as FBG is an affiliate of Epiq Bankruptcy Solutions, LLC ("Epiq"), the

Debtors' court approved claims agent [Doc. No. 24], FBG will be able to coordinate with Epiq to

conduct an orderly and efficient solicitation and balloting process.  The Debtors are requesting

that the Court enter an order nunc pro tunc to August 5, 2008 so that the minimal services FBG

has provided are covered by this Application.  Accordingly, the Debtors believe that the retention

of FBG as soliciting and balloting agent is in the best interests of the Debtors, their estates, and

parties in interest therein.

8.     As set forth more fully in the Declaration of Jane Sullivan, annexed

hereto as Exhibit 2 (the "Sullivan Declaration"), FBG is a nationally recognized specialist in

chapter 11 administration with significantly experienced employees in all areas of bankruptcy

balloting and related assignments, with a specialization in soliciting, tabulating, and noticing holders of public debt and equity securities.  FBG was retained as solicitation and balloting agent in  In re Silicon Graphics, Inc., No. 06-10977 (BRL) (Bankr. S.D.N.Y. July 27, 2006) [Doc. No. 416] and FBG's employees worked on the solicitation and balloting assignments in the following cases, In re Global Crossing Ltd., et al., No 02-40188 (Bankr. S.D.N.Y. Jan. 29, 2002) [Doc. No. 31]; In re Worldcom, Inc., et al., No. 02-13533 (Bankr. S.D.N.Y. July 25, 2002) [Doc. No. 102]; and In re Enron Corp., et al. No. 01-16034 (Bankr. S.D.N.Y. Jan 30, 2002) [Doc. No. 1191].

### Scope of Services

9.     Subject to the Court's approval, FBG has agreed, upon the Debtors' request, to:[1]

(a)    Provide advice to the Debtors and their counsel regarding all aspects of the plan vote, including timing issues, voting and tabulation procedures, and documents needed for the vote;

(b)    Review the voting portions of the disclosure statement and ballots, particularly as they may relate to beneficial owners of securities held in street name;

(c)    Work with the Debtors to request appropriate information from The Depository Trust Company, the trustee of the bonds, and the transfer agent for the common stock;

(d)    Mail appropriate documents to any registered holders of securities and any non-noteholder creditors;

(e)    Coordinate the distribution of voting documents to street name holders of voting securities by forwarding the appropriate documents to the banks and brokerage firms holding the securities (or their agent), who in turn will forward it to beneficial owners for voting;

---

[1]  To the extent that this Application and the terms of the Retention Agreement are inconsistent, the terms of the Retention Agreement shall control. Capitalized terms used in this Application without definition shall have the meanings assigned to them in the Retention Agreement.

(f)     Distribute copies of the master ballots to the appropriate nominees (after the initial distribution of documents) so that firms may cast votes on behalf of beneficial owners;

(g)     Prepare a certificate of service for filing with the court;

(h)     Handle requests for documents from parties in interest, including brokerage firm and bank back-offices and institutional holders;

(i)     Respond to telephone inquiries from security holders regarding the disclosure statement and the voting procedures;

(j)     If requested to do so, FBG will make telephone calls to any known beneficial owners and/or registered holders of bonds to confirm receipt of plan documents and respond to questions about the voting procedures;

(k)     Receive and examine all ballots and master ballots cast by bondholders and other parties entitled to vote;

(l)     Tabulate all ballots and master ballots received prior to the voting deadline in accordance with established procedures, and prepare a vote certification for filing with the court; and

(m)     Undertake such other duties as may be agreed upon by the Debtors and FBG.

## Compensation

10.     The Debtors request authority to compensate and reimburse FBG in accordance with the payment terms of the Retention Agreement for all services rendered and expenses incurred in connection with the Debtors' chapter 11 cases.  The Retention Agreement also provides for a $5,000 retainer.  Courts in this and other districts have approved similar retainers in other chapter 11 cases, including, among others:  In re Silicon Graphics, Inc., No. 06-10977 (BRL) (Bankr. S.D.N.Y. July 27, 2006) [Doc. No. 416]; In re Global Crossing Ltd., et al., No 02-40188 (Bankr. S.D.N.Y. Jan. 29, 2002) [Doc. No. 31]; and In re Worldcom, Inc., et al., No. 02-13533 (Bankr. S.D.N.Y. July 25, 2002) [Doc. No. 102].  This Court also approved a $5,000 retainer for Epiq as the Debtors' claims agent.

11.      The Debtors believe that such compensation rates are reasonable and appropriate for services of this nature and comparable to those other providers charge for similar services.  In an effort to reduce the administrative expenses related to FBG's retention, the Debtors seek authorization to pay FBG's fees and expenses in accordance with the provisions of the Retention Agreement without FBG filing formal fee applications.

### FBG's Disinterestedness

12.      The Debtors have been advised that, except as set forth more fully in the Sullivan Declaration, based on the results of the search performed to date (i) FBG has no connection with the Debtors, their creditors, or other parties in interest in these cases, and (ii) FBG does not hold or represent any interest adverse to the Debtors' estates.

13.      To the best of the Debtors' knowledge, FBG is a "disinterested person" as such term is defined in section 101(14) of the Bankruptcy Code, as modified by section 1107(b) of the Bankruptcy Code.  FBG has represented to the Debtors that FBG will not represent any entities or individuals other than the Debtors in these chapter 11 cases or in connection with any matters that would be adverse to the interests of the Debtors.

14.      As set forth in the Sullivan Declaration, the Debtors owe no amount to FBG.

15.      FBG has advised the Debtors that FBG will conduct an ongoing review of its files to ensure that no conflicts or other disqualifying circumstances exist or arise.  If any new facts or circumstances are discovered, FBG will supplement its disclosure to the Court.

16.      FBG has also advised the Debtors that, FBG has agreed not to share with any person or firm, other than its own affiliates, partners, and employees, the compensation to be paid for professional services rendered in connection with these cases.

17.      Because the claims-related services are necessary in these cases, the Debtors believe that the employment of FBG for the services set forth above is appropriate and in the best interests of the Debtors and their estates.  Therefore, the Debtors request, authority to employ and retain FBG on the terms and conditions set forth in the Retention Agreement.

### Notice

18.      No trustee or examiner has been appointed in these chapter 11 cases. Notice of this Motion has been provided to (i) the United States Trustee for the Southern District of New York, (ii) the attorneys for the agents for the Debtors' prepetition lenders, (iii) the attorneys for the Debtors' postpetition lenders, (iv) the attorneys for the statutory committee of unsecured creditors, and (v) all other parties that have requested notice in these chapter 11 cases. The Debtors submit that no other or further notice need be provided.

WHEREFORE the Debtors respectfully request entry of an order granting the relief requested herein and such other and further relief as is just.

Dated:  August 22, 2008
      New York, New York

LEXINGTON PRECISION CORPORATION

By:    /s/ Michael A. Lubin
      Michael A. Lubin
      Chairman of the Board of Directors
      (Co-Principal Executive Officer)

LEXINGTON RUBBER GROUP, INC.

By:    /s/ Michael A. Lubin
      Michael A. Lubin
      Chairman of the Board of Directors
      (Co-Principal Executive Officer)

Debtors and Debtors in Possession

**EXHIBIT 1**
**Retention Agreement**

FINANCIAL BALLOTING GROUP LLC
757 THIRD AVENUE, 3RD FLOOR
NEW YORK, NY 10017

August 5, 2008

Lexington Precision Corporation
800 Third Avenue, 15th Floor
New York, New York 10023
Attn: Michael A. Lubin

## AGREEMENT

This Agreement sets forth the terms and conditions under which Financial Balloting Group LLC ("FBG") will serve as balloting agent, tabulator, and consultant to Lexington Precision Corporation and Lexington Rubber Group, Inc. ("Lexington") in connection with their prepackaged plan vote.

### Assumptions

We are making the following assumptions about the creditors and interest holders entitled to vote on the plan of reorganization and/or receive notice:

- Public debt securities held in two cusips, whose holders would be entitled to vote on the plan;

- Two issues of public equity (the common stock held by approximately 700 holders, and the preferred by less than approximately 50 holders), whose holders would be entitled to vote or receive notice; and

- Other creditors who may be entitled to vote or receive notice.

### Balloting and Tabulation Services

As balloting agent, FBG shall:

1. Provide advice to Lexington and its counsel regarding all aspects of the plan vote, including timing issues, voting and tabulation procedures, and documents needed for the vote.

2. Review the voting portions of the disclosure statement and ballots, particularly as they may relate to beneficial owners of securities held in Street name.

3. Work with Lexington to request appropriate information from The Depository Trust Company, the trustee of the bonds, and the transfer agent for the common stock.

4. Mail appropriate documents to any registered holders of securities and any non-noteholder creditors.

5. Coordinate the distribution of voting documents to Street name holders of voting securities by forwarding the appropriate documents to the banks and brokerage firms holding the securities (or their agent), who in turn will forward it to beneficial owners for voting.

6. Distribute copies of the master ballots to the appropriate nominees (after the initial distribution of documents) so that firms may cast votes on behalf of beneficial owners.

7. Prepare a certificate of service for filing with the court.

8. Handle requests for documents from parties in interest, including brokerage firm and bank back-offices and institutional holders.

9. Respond to telephone inquiries from security holders regarding the disclosure statement and the voting procedures. FBG will restrict its answers to the information contained in the plan documents. We will seek assistance from the company or their counsel on any questions that fall outside of the voting documents.

10. If requested to do so, FBG will make telephone calls to any known beneficial owners and/or registered holders of bonds to confirm receipt of plan documents and respond to questions about the voting procedures.

11. Receive and examine all ballots and master ballots cast by bondholders and other parties entitled to vote. FBG will date- and time-stamp the originals of all such ballots and master ballots upon receipt.

12. Tabulate all ballots and master ballots received prior to the voting deadline in accordance with established procedures, and prepare a vote certification for filing with the court.

13. Undertake such other duties as may be agreed upon by Lexington and FBG.

**Pricing for Balloting and Tabulation**

For the above mentioned services, Lexington agrees to pay FBG on the following basis:

1. For the mailing to holders in Street name, the project fee is waived. This covers the coordination with all brokerage firms, banks, institutions and other interested parties, including the distribution of voting materials. This assumes one distribution of materials, which will be directed to the firms' proxy departments (for voting only, and no election or subscription), a single plan, and no extensions of the voting deadline. (Because we understand the issues involved have an extremely small number of beneficial owners, we have waived our customary project fee of $15,000, and waived our customary fee of $3,000 for each CUSIP or ISIN entitled to vote.)

2. For the mailing to any registered holders of voting securities and any non-noteholder creditors, we would estimate labor charges at $1.75 - $2.25 per voting package, depending on the complexity of the mailing, with a $500 minimum for each file. The charge indicated assumes the package would include the disclosure statement, a ballot, a return envelope, and one other document. It also assumes that a window envelope will be used for the mailing, and will therefore not require a matched mailing.

3.  A minimum charge of $2,000 to take up to 250 telephone calls from creditors within a 30-day solicitation period. If more than 250 calls are received within the period, those additional calls will be charged at $8.00 per call. Any calls to creditors or security holders will be charged at $8.00 per call.

4.  A charge of $125 per hour for the tabulation of ballots and master ballots, plus set up charges of $1,000 for each tabulation element (e.g., each CUSIP, ISIN, or plan class). Standard hourly rates (as enumerated below) will apply for any time spent by senior executives reviewing and certifying the tabulation and dealing with special issues that may develop. Set up charges will be capped at $2,000.

5.  We will bill for consulting hours at our then applicable standard hourly rates. Listed below are our current standard hourly rates. Consulting services by FBG would include the review and development of materials, including the disclosure statement, plan, ballots, and master ballots; participation in telephone conferences, strategy meetings or the development of strategy relative to the project; efforts related to special balloting procedures, including issues that may arise during the balloting or tabulation process; computer programming or other project-related data processing services; visits to cities outside of New York for client meetings or legal or other matters; efforts related to the preparation of testimony and attendance at court hearings; and the preparation of affidavits, certifications, fee applications (if required by the court), invoices, and reports.

Hourly rates:

| | |
|---|---|
| Executive Director | $410 per hour |
| Director | $360 per hour |
| Senior Case Manager | $300 per hour |
| Case Manager | $240 per hour |
| Case Analyst | $190 per hour |
| Programmer II | $195 per hour |
| Programmer I | $165 per hour |
| Clerical | $65 per hour |

## Notice Mailings

FBG would receive printed copies of the notice (or print them) and work with the company to request appropriate information to ensure that the mailing can be done correctly. Mailings are completed as quickly and efficiently as possible. A certificate of service will be prepared for filing with the court.

Notice mailings to any registered holders and non-noteholder creditors are straightforward, because their identities are known and notices can be sent directly to them. The mailing process is more complex for security holders in street name, because the notices need to be forwarded to beneficial owners of securities by the brokers or banks holding the securities, or their agent. We will coordinate with the firms in question, deliver the appropriate documents to them with instructions for mailing, and follow-up to be certain the notices are forwarded to beneficial owners.

**Pricing for Notice Mailings**

*Mailings to Creditors and Registered Holders of Securities:*
Mailings to any registered record holders of securities (or other individual parties) will be charged at $0.50 - $0.65 per holder, for up to two paper notices included in the same envelope, with a $250 minimum. This assumes that labels and/or electronic data for these holders would be provided by the transfer agent, trustee, or other party maintaining the records.

*Mailings to Stockholders in "Street" name*
*(FOR MAILINGS OTHER THAN SOLICITATION DOCUMENTS):*
FBG's charge for a notice mailing to holders of securities in Street name is $3,500.

Hourly rates, enumerated above, would apply to any additional related consulting work in connection with notice mailings. Out of pocket expenses would be charged separately, as noted below.

**Out of Pocket Expenses**

All out-of-pocket expenses relating to any work undertaken by FBG will be charged separately, and will include such items as travel costs, postage, messengers and couriers, etc., expenses incurred by FBG in obtaining or converting depository participant, creditor, shareholder and/or lists of Non-Objecting Beneficial Owners; and appropriate charges for supplies, in-house photocopying, telephone usage, etc.

**Charges**

For services rendered by FBG under this Agreement, Lexington shall pay the charges set forth above. FBG will bill Lexington monthly. All invoices shall be due and payable upon 30 days of receipt.

In addition to all charges for services, Lexington shall pay to FBG all taxes, however designated, levied or based that are applicable to this Agreement or are measured directly by payments made under this Agreement and are required to be collected by FBG or paid by FBG to taxing authorities. This provision includes, but is not limited to, sales, use and excise taxes, but does not include personal property taxes or taxes based on net income.

Where Lexington requires measures that are unusual and beyond normal business practice of FBG such as, but not limited to, CPA audit, errors and omissions insurance, or off-premises storage of data, the cost of such measures, if provided by FBG, shall be charged to Lexington at a competitive rate.

In the event of termination due to Lexington's default, Lexington shall be liable for all amounts then owing.

**Retainer**

Upon the effectiveness of the Agreement, Lexington shall pay FBG a retainer in the amount of $5,000 to be applied against FBG's final invoice for the services provided herein.

-4-

## Term

This Agreement shall become effective on the later of (i) the date it has been accepted by both FBG and Lexington or (ii) if Bankruptcy Court approval is required, the date of entry of an order by the Bankruptcy Court approving this Agreement or such earlier date set by the Bankruptcy Court. The agreement shall remain in effect until it is terminated by Lexington or FBG on one (1) month's prior written notice.

## Indemnity

Lexington agrees to indemnify and hold FBG harmless against any loss, damage, expense (including, without limitation, legal and other related fees and expenses), liability or claim arising out of FBG's fulfillment of the Agreement (except for any loss, damage, expense, liability or claim resulting out of FBG's own gross negligence or willful misconduct). At its election, Lexington may assume the defense of any such action. FBG hereby agrees to advise Lexington of any such liability or claim promptly after receipt of the notice thereof; provided however, that FBG's right to indemnification hereunder shall not be limited by its failure to promptly advise Lexington of any such liability or claim, except to the extent that Lexington is prejudiced by such failure. The indemnification contained in this paragraph will survive the term of the Agreement. Except as provided herein, FBG's liability to Lexington or any person claiming through or under Lexington for any claim, loss, damage, expense of any kind, or for any lost profits, loss of business or other consequential damages even if FBG has been advised of the possibility of such damages, whether direct or indirect and unless due to gross negligence or willful misconduct of FBG shall be limited to the total amount billed or billable to Lexington for the portion of the particular work which gave rise to the loss or damage. In no event shall FBG be liable to Lexington for any special or consequential damages (including loss of anticipated profits) incurred by Lexington in connection with or arising out of the services provided for in this Agreement.

## Confidentiality

FBG agrees to preserve the confidentiality of all non-public information provided by Lexington or its agents for its use in providing services under this Agreement, or information developed by FBG based upon such non-public information. All of Lexington's data given to FBG will be safeguarded by FBG to the same extent that FBG safeguards data relating to its own business; provided, however, that if data is publicly available, was already in FBG's possession or known to it, or was rightfully obtained by FBG from a third party, FBG shall bear no responsibility for disclosure. Lexington agrees that FBG shall not be liable beyond the limits provided under "Indemnity," above, for damages or losses of any nature whatsoever arising out of the unauthorized acquisition or use of any material supplied by Lexington to FBG in the performance of this Agreement.

## General

No waiver alteration, amendment or modification of any of the provisions of this Agreement shall be binding upon either party unless signed in writing by a duly authorized representative of both parties.

This agreement may not be assigned by Lexington without the express written consent of FBG, which consent shall not be unreasonably withheld. The services provided under this Agreement are for the sole benefit and use of Lexington, and shall not be made available to any other persons.

This Agreement shall be governed by the laws of the State of New York, without regard to that state's provisions for choice of law.

Certain financial products may be provided to Lexington pursuant to FBG's agreement with Commerce Bank, N.A., and FBG may receive compensation from Commerce Bank for services FBG provides to it pursuant to that agreement.

The parties agree that this Agreement is the complete and exclusive statement of the agreement between the parties which supersedes all proposals or prior agreements, oral or written, and all other communications between the parties relating to the subject matter of this Agreement.

Notices to be given or submitted by either party to the other, pursuant to this Agreement, shall be sufficiently given or made if given or made in writing and sent by certified mail or overnight courier, postage prepaid, and addressed as follows:

If to FBG:

        Financial Balloting Group LLC
        757 Third Avenue, 3rd Floor
        New York, New York 10017
        Attn: Jane Sullivan

If to Lexington:

        Lexington Precision Corporation
        800 Third Avenue, 15th Floor
        New York, New York 10023
        Attn: Michael A. Lubin

        and

        Weil, Gotshal & Manges LLP
        767 Fifth Avenue
        New York, New York 10153
        Attn: Marcia L. Goldstein, Esq.

If the above is agreed to by you, please sign and return this Agreement to Financial Balloting Group LLC, Attention: Jane Sullivan, 757 Third Avenue, 3rd Floor, New York, NY 10017.

ACCEPTED:

LEXINGTON PRECISION CORPORATION    FINANCIAL BALLOTING GROUP LLC

By: _____        By: _____
WARREN DELAND                                 Jane Sullivan
Title: PRESIDENT _____                        Executive Director

Date 8/6/08 _____


LEXINGTON RUBBER GROUP, INC.

By: _____
WARREN DELANO
Title: PRESIDENT _____

Date 8/6/08 _____

-7-

## EXHIBIT 2

**Declaration of Jane Sullivan**

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------------x

In re                                               :

                                                    :          Chapter 11 Case No.

LEXINGTON CORPORATION, et al.,          :          08-11153 (MG)

                                                    :

                                                    :          (Jointly Administered)

                    Debtors.                   :

-------------------------------------------------------------x

### DECLARATION OF JANE SULLIVAN IN SUPPORT OF THE APPLICATION TO EMPLOY AND RETAIN FINANCIAL BALLOTING GROUP LLC AS SOLICITATION AND BALLOTING AGENT FOR THE DEBTORS

STATE OF NEW YORK      )
                                   )      ss:
COUNTY OF NEW YORK  )

JANE SULLIVAN, being duly sworn, deposes and says:

1.      I am Executive Director of Financial Balloting Group LLC ("FBG"), which provides solicitation, balloting, and tabulation services.  I submit this Declaration in support of the application (the "Application") of Lexington Precision Corporation and Lexington Rubber Group, as debtors and debtors in possession (collectively, the "Debtors"), for authority to employ and retain FBG as solicitation and balloting agent in these chapter 11 cases.

2.      The Application and that certain Agreement, dated as of August 5, 2008, attached to the Application as Exhibit 1 (the "Retention Agreement") and incorporated herein by reference, describe the services FBG proposes to render as agent.

3.      FBG specializes in providing solicitation, balloting, and tabulation services to chapter 11 debtors in connection with the solicitation of votes to accept or reject chapter 11 plans.  FBG specializes and has expertise in serving as outside solicitation and tabulation agent with respect to all aspects of the plan solicitation process.

4.      I have had significant experience providing services to debtors and debtors in possession relating to voting and solicitation issues.  I have provided services in over 100 cases and FBG has provided identical or substantially similar services to In re Silicon Graphics, Inc., No. 06-10977 (BRL) (Bankr. S.D.N.Y. July 27, 2006) [Doc. No. 416] and FBG's employees have provided similar services in the following chapter 11 cases, In re Global Crossing Ltd., et al., No 02-40188 (Bankr. S.D.N.Y. Jan. 29, 2002) [Doc. No. 31]; and In re Worldcom, Inc., et al., No. 02-13533 (Bankr. S.D.N.Y. July 25, 2002) [Doc. No. 102]. Accordingly, I believe FBG is well qualified to act as solicitation and balloting for these cases.

5.      FBG does not have or represent any interest materially adverse to the interests of the Debtors by reason of any direct or indirect relationship to, or connection with, any class of creditors of the Debtors, or for any other reason.  However, FGB is an affiliate of Epiq Bankruptcy Solutions, LLC, the Debtors court approved noticing and claims agent.  FBG has no connection with the Debtors, their creditors or other parties in interest in these cases except FBG is the solicitation and balloting agent for Delphi, a major customer of the Debtors. Further, FBG does not hold or represent any interest adverse to the Debtors' estates.

6.      To the best of my knowledge, FBG is a "disinterested person" as that term is defined in section 101(14) of title 11 of the United States Code (as amended, the "Bankruptcy Code"), as modified by section 1107(b) of the Bankruptcy Code.

7.      FBG will conduct an ongoing review of its files to ensure that no conflicts or other disqualifying circumstances exist or arise.  If any new facts or circumstances are discovered, FBG will supplement its disclosure to the Court.

8.      FBG has not been retained to assist any entity or person other than the Debtors on matters relating to these chapter 11 cases.  If FBG's proposed retention is approved

by this Court, FBG will not accept any engagement or perform any service for any entity or person other than the Debtors in these chapter 11 cases. FBG may, however, provide professional services to entities or persons that may be creditors or parties in interest in these chapter 11 cases, provided that such services do not relate to the Debtors or their chapter 11 cases. In addition, FBG may utilize services provided by vendors that may be creditors or parties in interest of the Debtors.

9.      To date, there are no outstanding amounts owed by the Debtors to FBG.

10.      As compensation for FBG's services, FBG will charge the rates set forth in the Retention Agreement. These rates are at least as favorable as those FBG charges to other chapter 11 debtors for similar services. FBG proposes the Debtor pay FBG in the ordinary course of their business without further application to this Court.

11.      FBG will not share with any person or firm, other than FBG's own affiliates, partners, and employees, the compensation to be paid for professional services rendered in connection with this case.

12.      FBG will perform its duties if it is retained in the Debtors' chapter 11 case regardless of payment. To the extent that FBG requires redress, it will seek appropriate relief from the Court.

_____/s/ Jane Sullivan_____
Name:  Jane Sullivan
Title:  Executive Director

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

----------------------------------------------------------------x

In re                                          :

                                               :       Chapter 11 Case No.

LEXINGTON PRECISION CORP., et al.,             :       08-11153 (MG)

                                               :

                                               :       (Jointly Administered)

        Debtors.                               :

----------------------------------------------------------------x

### ORDER PURSUANT TO 28 U.S.C. § 156(c) AND LOCAL RULE 5075-1(a) AUTHORIZING THE EMPLOYMENT OF FINANCIAL BALLOTING GROUP LLC AS SOLICITATION AND BALLOTING AGENT FOR THE DEBTORS NUNC PRO TUNC TO AUGUST 5, 2008

Upon the application, dated August 22, 2008 (the "Application"), of Lexington Precision Corporation and Lexington Rubber Group, Inc., as debtors and debtors in possession (collectively, the "Debtors"), for an order, pursuant to section 156(c) of title 28 of the United States Code and Local Rule 5075-1(a), for authorization to employ Financial Balloting Group LLC ("FBG") as solicitation and balloting agent nunc pro tunc to August 5, 2008, as more fully set forth in the Application; and upon consideration of Declaration of Jane Sullivan in Support of the Application, annexed to the Application as Exhibit 2; and the Court being authorized under 28 U.S.C. § 156(c) and Local Rule 5075-1(a) of the Local Rules of the United States Bankruptcy Court for the Southern District of New York to utilize, at the Debtors' expense, outside agents and facilities to assist in the administration of these chapter 11 cases; and the Court having jurisdiction to consider the Application and the relief requested therein in accordance with 28 U.S.C. §§ 157 and 1334 and the Standing Order M-61 Referring to Bankruptcy Judges for the Southern District of New York Any and All Proceedings Under Title 11, dated July 10, 1984 (Ward, Acting C.J.); and consideration of the Application and the relief requested therein being a core proceeding pursuant to 28 U.S.C. § 157(b); and venue being proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409; and notice of the Application having been provided as

described in the Application; and a hearing having been held to consider the relief requested in the Application (the "Hearing"); the Court finds and determines that FBG is qualified to provide the necessary solicitation and balloting services; FBG does not hold an interest adverse to the Debtors or the Debtors' estates with respect to the matters upon which FBG is to be engaged; the relief sought in the Application is in the best interests of the Debtors, their estates and creditors, and all parties in interest; and that the legal and factual bases set forth in the Application establish just cause for the relief granted herein; and after due deliberation and sufficient cause therefor, it is

ORDERED that the Application is granted; and it is further

ORDERED that the Agreement, dated August 5, 2008 (the "Retention Agreement") and the terms and conditions contained therein are approved; and it is futher

ORDERED that the Debtors are authorized to retain and employ FBG, nunc pro tunc to August 5, 2008, to perform the noticing, solicitation, balloting, tabulation and other services described in the Application; and it is further

ORDERED that, upon the Debtors' request, FBG shall:

(a)     Provide advice to the Debtors and their counsel regarding all aspects of the plan vote, including timing issues, voting and tabulation procedures, and documents needed for the vote;

(b)     Review the voting portions of the disclosure statement and ballots, particularly as they may relate to beneficial owners of securities held in street name;

(c)     Work with the Debtors to request appropriate information from the Depository Trust Company, the trustee of the bonds, and the transfer agent for the common stock;

(d)     Mail appropriate documents to any registered holders of securities and any non-noteholder creditors;

(e)     Coordinate the distribution of voting documents to street name holders of voting securities by forwarding the appropriate

documents to the banks and brokerage firms holding the securities (or their agent), who in turn will forward it to beneficial owners for voting;

(f)    Distribute copies of the master ballots to the appropriate nominees (after the initial distribution of documents) so that firms may cast votes on behalf of beneficial owners;

(g)    Prepare a certificate of service for filing with the court;

(h)    Handle requests for documents from parties in interest, including brokerage firm and bank back-offices and institutional holders;

(i)    Respond to telephone inquiries from security holders regarding the disclosure statement and the voting procedures;

(j)    If requested to do so, FBG will make telephone calls to any known beneficial owners and/or registered holders of bonds to confirm receipt of plan documents and respond to questions about the voting procedures;

(k)    Receive and examine all ballots and master ballots cast by bondholders and other parties entitled to vote;

(l)    Tabulate all ballots and master ballots received prior to the voting deadline in accordance with established procedures, and prepare a vote certification for filing with the court; and

(m)    Undertake such other duties as may be agreed upon by the Debtors and FBG.

ORDERED that the Debtors and FBG are authorized to take such other action as is reasonably necessary to comply with all duties set forth in the Application and this Order; and it is further

ORDERED that, in accordance with the Retention Agreement, the Debtors are authorized to compensate FBG on a monthly basis upon receipt of reasonably detailed invoices setting forth the services FBG provided in the prior month and the rates charged for each service, and to reimburse FBG for all reasonable and necessary expenses FBG may incur upon the presentation of appropriate documentation and without the necessity for FBG to file an application for reimbursement with the Court.

Dated: September __, 2008
       New York, New York

_____
UNITED STATES BANKRUPTCY JUDGE