UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

----------------------------------------------------------- x

| | | |
|---|---|---|
| In re: | : | Chapter 11 |
| | : | |
| LEXINGTON PRECISION CORP, | : | |
| | : | Case No. 08-11153 (MG) |
| *et al.*, | : | |
| | : | Jointly Administered |
| Debtors. | : | |

----------------------------------------------------------- x

### FIRST INTERIM APPLICATION OF W.Y. CAMPBELL & COMPANY FOR COMPENSATION AND REIMBURSEMENT EXPENSES

| | |
|---|---|
| Name of Applicant: | W.Y. Campbell & Company |
| Authorized to Provide Professional Services to: | Lexington Precisions Corporation and Lexington Rubber Group, Inc. |
| Date of Retention: | As of April 1, 2008 |
| Period for which compensation and reimbursement are sought: | April 1, 2008 through July 31, 2008 |
| Amount of compensation sought as actual, reasonable, and necessary: | $ 200,000.00 |
| Amount of expense reimbursement sought as actual, reasonable, and necessary: | $ 13,777.58 |
| This is a(n): | ___ Monthly    _X_ Interim    ___ Final Application |

If this is not the first application filed, disclose the following for prior application:

| Date Filed | Period Covered | Requested Fees | Requested Expenses | Approved Fees | Approved Expenses |
|---|---|---|---|---|---|
| N/A | | | | | |

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

———————————————————————— x
In re:                                                            :        Chapter 11
                                                                  :
    LEXINGTON PRECISION CORP,         :
                                                                  :        Case No. 08-11153 (MG)
        *et al.*,                                        :
                                                                  :        Jointly Administered
        Debtors.                              :
———————————————————————— x

## FIRST INTERIM APPLICATION OF W.Y. CAMPBELL & COMPANY FOR COMPENSATION AND REIMBURSEMENT EXPENSES

W.Y. Campbell & Company ("W.Y. Campbell") as financial advisor and investment banker for Lexington Precision Corp. and Lexington Rubber Group, Inc., (collectively, "Lexington", the "Debtors" or the "Company") as debtors and debtors-in-possession in the above captioned cases (the "Reorganization Cases"), submits this Interim Application (the "Interim Application") seeking interim allowance and payment of compensation for the period from April 1, 2008 through July 31, 2008 (the "Application Period") under (i) 11 U.S.C. §§ 330 and 331 (the "Bankruptcy Code"), (ii) Rules 2014 and 2016 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), (iii) Administrative Order M-150, Amended Guidelines for Fees and Disbursements for Professionals in Southern District of New York Bankruptcy Case (the "Amended Guideline"), (iv) the Order of this Court dated April 22, 2008 (the "Fee Order") establishing procedures for interim monthly compensation and reimbursement of expenses of professionals, and (v) the Order of this Court, dated May 28, 2008 (the "Retention Order") Authorizing Retention of W.Y. Campbell & Company as Financial Advisor for the Debtors, *nunc pro tunc* to April 1, 2008.  See **Exhibit A**, Retention Order.

As more fully described below, W.Y. Campbell submits this Interim Application for allowance of compensation for professional services as financial advisor and investment banker rendered by W.Y. Campbell to Debtors. W.Y. Campbell certifies that the Debtors and their reorganization counsel have received a copy of this Interim Application and that a copy has been served on the office of the U.S. Trustee and Counsel for the Official Committee of Unsecured Creditors. In support of this Interim Application, W.Y. Campbell respectfully represents as follows:

## BACKGROUND

1. On April 1, 2008 (the "Petition Date"), each of the Debtors filed voluntary petitions in this Court for reorganization relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code"). The Debtors continue to operate their businesses and manage their properties as debtors-in-possession pursuant to sections 1107(b) and 1108 of the Bankruptcy Code. The Debtors' chapter 11 cases have been consolidated for procedural purposes and are being jointly administered pursuant to Rule 1015(b) of the Federal Rules of Bankruptcy Procedures (the "Bankruptcy Rules").

2. On April 22, 2008 the Bankruptcy Court entered its Fee Order establishing procedures for interim monthly compensation and reimbursement of expenses of professionals.

## RETENTION OF W.Y. CAMPBELL

3. By letter agreement dated April 1, 2008 (the "Engagement Letter"), the Debtors retained W.Y. Campbell as final advisors and investment banker to the Debtors in connection with these chapter 11 cases. A copy of the Engagement Letter is attached as **Exhibit B**.

4. W.Y. Campbell refers this Court to the Engagement Letter for a full recitation of its terms. In sum, Debtors retained W.Y. Campbell to:

2

a.  identify, review, evaluate, and initiate potential financing, or other transactions;

b.  to the extent W.Y. Campbell deems necessary, appropriate, and feasible, or as the Company may request, review and analyze the assets and the operating and financial strategies of the Company;

c.  assist in the definition of objectives related to value and terms of financing or an alternative transaction;

d.  assist in identification of the Company's proprietary attributes;

e.  assist in the identification and solicitation of appropriate financing or transaction parties;

f.  prepare and distribute confidentiality agreements and appropriate descriptive materials (to include placement or offering memorandum, management presentations, and other documentation as may be required or appropriate);

g.  initiate discussions and negotiations with prospective financing or transaction parties;

h.  assist the Company and its other professionals in reviewing and evaluating the terms of any proposed financing or other transaction, in responding thereto and, if directed, in developing and evaluating alternative proposals for a financing or other transaction;

i.  review and analyze any proposals the Company receives from third parties in connection with a financing, or other transaction;

j.  assist or participate in negotiations with the parties in interest in connection with a financing, or other transaction;

k.  advise and attend meetings of the Company's Board of Directors, creditor groups, official constituencies and other interested parties, as the Company determines to be necessary or desirable;

l.  if requested, participate in hearings before the United States Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court") or such district or other bankruptcy courts as the Company may request and provide relevant testimony with respect to the matters described herein and issues arising with respect thereto in connection with any proposed chapter 11 plan;

3

  m.  assist the Debtors' internal and external counsel to enable counsel to provide legal advise to the Company; and

  n.  render such other financial advisory and investment banking services as may be reasonably requested by the Company in connection with any of the foregoing.

## **COMPENSATION**

5. Pursuant to the Engagement Letter and as more fully set forth in Retention Order, in consideration for the services provided to the Debtors, the Debtors have agreed to pay W.Y. Campbell the following amounts, pursuant to Section 328 of the Bankruptcy Code, and subject to the final approval of the Bankruptcy Court:

  a.  Commencing as of the effective date of the Engagement letter, a cash advisory fee (the "Monthly Fee") of $50,000 per month payable by the Company in advance on the first day of each month, which in the aggregate shall not under any circumstance be less than $500,000; provided, however, that the Monthly Fee for each month preceding entry of an order of the Bankruptcy Court approving and authorizing this Agreement shall be paid as soon as practicable after entry of such order.

  b.  A fee (the "Exit Fee") of $650,000 shall be due and payable in cash upon the Company's successful exit from Chapter 11.

  c.  To the extent the Debtors request W.Y. Campbell to perform additional services not contemplated by this Agreement, such additional fees shall be mutually agreed upon by W.Y. Campbell and the Debtors, in writing, in advance.

6. Pursuant to the Engagement Letter and the Retention Order, the Debtors will reimburse W.Y. Campbell for reasonable out-of-pocket expenses incurred in connection with the provision of services under the Engagement Letter, including, without limitation, the reasonable fees, disbursements and other charges of W.Y. Campbell's outside counsel. Out-of-pocket expense include expenses incurred in connection with travel and lodging, data processing and communication charges, database, research, postage and courier services.

4

7. W.Y. Campbell has submitted monthly statement of fees and disbursements covering the period for April, May, June and July 200 seeking $160,000 representing 80% of its Monthly Advisory Fees from April through July 2008 and $13,777.58 in out-of-pocket expenses to (i) the Debtors, (ii) counsel for the Debtors, (iii) counsel for the official committee of unsecured creditors, (iv) the Office of the United States Trustee, (v) counsel for the Debtors' pre-petition lenders, and (vi) counsel for Debtors' post-petition lenders.

### RELIEF REQUESTED

8. By this Application, W.Y. Campbell seeks an Order (i) granting interim allowance and approval of compensation for services rendered during the period April 1, 2008 though and including July 31, 2008 consisting of $200,000.00 of fees plus the reimbursement of reasonable and necessary expenses incurred by W.Y. Campbell during the Application Period in the amount of $13,777.58, (ii) authorizing and directing the Debtors to make payments in respect of 100% of such fees, to the extent not yet received by W.Y. Campbell for the Application Period, including, without limitation, the 20% holdback amount withheld pursuant to the terms of the Fee Order, and (iii) authorizing and directing the Debtors to pay 100% of such expenses, to the extent not yet received by W.Y. Campbell for the Application Period.

9. W.Y. Campbell performed all services for which it seeks compensation for and on behalf of the Debtors. W.Y. Campbell has not entered into any agreement, express or implied, with any party in interest for the purpose of fixing or sharing fees or other compensation to be paid for professional services rendered in these cases.

10. Attached as **Exhibit C** are invoices for the total compensation and expenses sought by W.Y. Campbell for the Relevant Period and a breakdown of W.Y. Campbell's expenses incurred during the Relevant Period. Attached as **Exhibit D** are daily time logs detailing the activities and services performed by W.Y. Campbell on behalf of the Debtors

5

during the Relevant Period. The resumes of key professional of W.Y. Campbell providing services to the Debtors are attached as **Exhibit E**.

## LEGAL BASIS FOR REQUESTED COMPENSATION

11. W.Y. Campbell is entitled to receive the fees requested in accordance with the express terms of the Engagement Letter and the provisions of Section 328(a) of the Bankruptcy Code which permits a debtor, with the Court's approval, to employ a professional person "on reasonable terms and conditions of employment, including on a retainer, on an hourly basis, or on a contingent fee basis." 11 U.S.C. § 328(a).

12. Moreover, Section 330 of the Bankruptcy Code provides for the award of compensation to professionals "subject to" the provisions of Section 328 of the Bankruptcy Code. 11 U.S.C. § 330.

13. Congress intended Section 328(a) to enable debtors to retain professionals pursuant to specific fee arrangements to be determined at the time of the court's approval of the retention, subject to reversal only if the terms are found to be improvident in light of "developments not capable of being anticipated at the time of the fixing of such terms and conditions." 11 U.S.C. § 328(a). See also *Donaldson, Lufkin, & Jenrette Sec. Corp. v. Nat'l Gypsum Co.*, 123 F.3d 861, 862-63 (5th Cir. 1997)("[I]f the most competent professionals are to be available for complicated capital restructuring and the development of successful corporate reorganization, they must know what they will receive for their expertise and commitment.").

14. Pursuant to the Retention Order, this Court approved the retention of W.Y. Campbell under the terms of the Engagement Letter, subject to the standard of review provided under Section 328(a). See Exhibit A.

15. The compensation for services rendered during the Relevant Period has been earned and is due and payable in full under the terms of the Engagement Letter. W.Y. Campbell

6

submits that there have been no developments since the entry of the Retention Order that were "not capable of being anticipated" and that would justify any modification to the terms of W.Y. Campbell's retention. Thus, W.Y. Campbell submits that the fees and expense reimbursements sought should be allowed and approved by the Court under Sections 328(a) and 330 of the Bankruptcy Code.

16. Senior level professionals with extensive experience in the area of investment banking and bankruptcy have directed W.Y. Campbell's team. The services rendered by W.Y. Campbell have been performed by Andre A. Augier, Managing Director; Kurt Haras, Director; Gregory McGowan, Vice President; and Alexander Schroeder, Analyst. W.Y. Campbell's assigns seniors bankers, experienced junior bankers, and financial analysts to each restructuring assignment. In this case, Andre A. Augier has overall responsibility for the case. His responsibilities include developing strategy with respect to the case, directing negotiations, and interfacing with other senior professionals involved with the case. Kurt Haras is responsible for the day-to-day coordination of the case and the review of the financial analyses. As the experienced junior banker on the case, Gregory McGowan assists in the day-to-day coordination of the case and performs, with the analyst Alexander Schroeder, extensive financial analyses. Mr. Augier, Mr. Haras, Mr. McGowan, and Mr. Schroeder coordinate their actions so as not to duplicate efforts. Given the different roles of these professionals and overlapping responsibilities, there are times where it is appropriate for two or more bankers to be present at a meeting.

17. The amount of fees and expenses sought in this application and W.Y. Campbell's billing process are consistent with market practices for investment banking firms both in and out of a bankruptcy context.

18.  W.Y. Campbell does not bill its clients based on the number of hours expended by its professionals. It generally bills its client on a retainer basis (generally monthly), plus a transaction fee or fee based upon completion. As a result, W.Y. Campbell does not have hourly rates for its professionals and W.Y. Campbell's professionals generally do not maintain time records for the work performed for its client. Although not required by the Retention Order, W.Y. Campbell has maintained daily time logs detailing the activities and services performed by its professionals on behalf of the Debtors, in half-hour increments, during the Relevant Period. A copy of these records is attached as **Exhibit D**.

19.  In light of the complexity of this case, as well as the corporate and financial structure of the Debtors, the amount of activity during the Relevant period, and the level of services rendered by W.Y. Campbell to the Debtors, W.Y. Campbell considers the compensation sought both fair and reasonable. In addition, it is consistent with the terms of the Engagement Letter.

## SUMMARY OF SERVICES RENDERED

20.  All services rendered by W.Y. Campbell during the Relevant Period were performed at the request or direction of the Debtors or legal professionals of Weil, Gotshal & Manges, LLP ("Weil").

21.  During the Application Period, W.Y. Campbell has provided a broad range of necessary financial advisory services with respect to the formulation, analysis, negotiation, and implementation of strategic initiatives relating to Debtors' Chapter 11 reorganization. This work occurred between April 2, 2008 and July 31, 2008 and is described in further detail in the monthly time sheets submitted by W. Y. Campbell & Company, attached as **Exhibit D**.

- Advised Lexington in regards to its Plan of Reorganization
- Facilitated data requests from advisors to the Committee

8

- Extensive discussions with Lexington in regards to data requests from advisors to the Committee
- Fulfilled data requests from advisors to the Committee
- Hosted advisors to the Committee on tours of Lexington's manufacturing facilities
- Held conference calls with advisors to the Committee
- Analyzed and reviewed Lexington's financial projections
- Extensive discussions with Lexington in regards to financial projections
- Constructed financial model utilized in the valuation of Lexington
- Performed valuation research in connection with the valuation report
- Drafted valuation report to be utilized in connection with Lexington's Plan of Reorganization
- Drafted and reviewed portions of Lexington's disclosure statement and Plan of Reorganization

22. In sum, W.Y. Campbell has been instrumental in formulating and analyzing different strategic initiatives for the Debtors' reorganization during the Application Period.

## EXPENSES INCURRED DURING THE RELEVANT PERIOD

23. W.Y. Campbell incurred reasonable and necessary out-of-pocket expenses aggregating $13,777.58. Details of the expenses incurred during the Relevant Period are also provided in **Exhibit C**. W.Y. Campbell submits that all such expenses were necessarily incurred, are reasonable in the amount and represent only the actual costs incurred.

24. W.Y. Campbell charges for expenses to the Debtors are determined in the same manner as for clients in non-bankruptcy matters. Out-of-pocket expenses incurred by W.Y. Campbell are charged to a client or are otherwise necessary in connection with services rendered for such particular client. W.Y. Campbell does not factor general overhead expenses into disbursements charged to clients in connection with Chapter 11 cases. W.Y. Campbell follows

9

its general internal policies with respect to out-of-pocket expenses billed to the Debtors as set forth below, with any exceptions fully explained:

(a) W.Y. Campbell's general policy permits its employees to bill lunch or dinner meals to a client if the employee is required to provide services to the client during such mealtime due to extreme time constraints. W.Y. Campbell's employees are permitted to order meals in the office if required to work after 8:00 p.m. on weekdays or more than five (5) consecutive hours on weekends or holidays. Meal expenses incurred during meetings which employees and other meeting participants are required to attend are billed at cost.

(b) Messengers and couriers are used by W.Y. Campbell to deliver hard copy documents relating to a client matter, which require receipt on an expedited basis; otherwise W.Y. Campbell uses the regular postal system. Any charges for either messengers or couriers are billed to the client at cost.

(c) All airfare and other transportation charges incurred by W.Y. Campbell's employees directly in connection with services to the client are billed to client at cost.

(d) The research/database category consists of the cost of using databases to which W.Y. Campbell subscribes to search for and obtain information used in W.Y. Campbell's financial analyses. W.Y. Campbell pays the vendor's standard rate for such database services. In certain instances, W.Y. Campbell has determined that paying a flat annual or monthly fee for such services is less costly than contracting for such services on a per use basis. Such annual or monthly services are allocated to clients based on such clients' use of each service. The research category also consists of charges from outside services, which supply, for a fee, financial documents from regulatory agencies, which cannot be obtained from databases subscribed to by W.Y. Campbell.

(e) W.Y. Campbell bills photocopying charges at the rate of $.10 per page for black and white copies and $1.00 per page for color copies.

(f) With respect to local travel, W.Y. Campbell's general policy enables employees to travel by car, to and from meetings while rendering services to a client on a client related matter, for which the client is charged. W.Y. Campbell's employees are not permitted to charge personal commuting expenses to a client unless the employee is traveling after 8:00 p.m. and has been required to work late as a result of the time exigencies of that client's matters.

(g) Telephone expenses are charged based on W.Y. Campbell's actual costs of telephone charges with respect to client matters. Cellular phone charges are based on vendor's actual invoices.

10

## CONCLUSION

W.Y. Campbell rendered substantial services as financial advisors and investment banker to Debtors during the Application Period. W.Y. Campbell respectfully submits that the compensation requested by this application is reasonable in light of the nature and value of the services provided to the Debtors.

WHEREFORE, W.Y. Campbell respectfully requests that this Court enter an order (i) granting interim allowance and approval of compensation for services rendered during the Relevant Period, consisting of $200,000 of fees plus the reimbursement of reasonable and necessary expenses incurred by W.Y. Campbell during the Application Period in the amount of $13,777.58, for a total of $213,777.58, (ii) authorizing and directing the Debtors to make payment in respect of 100% of such fees, to the extent not yet received by W.Y. Campbell for the Relevant Period, including, without limitation, the 20% holdback amount withheld pursuant to the terms of the Fee Order; (iii) authorizing and directing the Debtors to pay 100% of such expenses, to the extent not yet received by W.Y. Campbell for the Application Period; and (iv) granting such other and further relief as this court deems just and proper.

Dated: Detroit, MI
September 11, 2008

W.Y. CAMPBELL & CO

By: _____
Andre Augier, Managing Director

DETROIT 21924-20 1056594v1

11