Hearing Date: October 28, 2008 at 10:00 a.m. ET

ANDREWS KURTH LLP
Paul N. Silverstein (PS 5098)
Jonathan I. Levine (JL 9674)
450 Lexington Avenue, 15th Floor
New York, New York 10017
Telephone: (212) 850-2800
Facsimile: (212) 850-2929

Counsel to the Official Committee
of Unsecured Creditors

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------------------x
In re:                                              :       Chapter 11
                                                    :
LEXINGTON PRECISION CORP., et al.,                  :       Case No. 08-11153 (MG)
                                                    :
                                                    :
                    Debtors.                        :
---------------------------------------------------------------x

**OFFICIAL COMMITTEE OF UNSECURED CREDITORS
OBJECTION TO DEBTORS' MOTION FOR AN ORDER
PURSUANT TO SECTION 1121(d) OF THE BANKRUPTCY CODE
FURTHER EXTENDING THE DEBTORS' EXCLUSIVITY PERIODS**

TO:    THE HONORABLE MARTIN GLENN
       UNITED STATES BANKRUPTCY JUDGE

   The Official Committee of Unsecured Creditors (the "Committee") of Lexington Precision Corporation, et al. (collectively, the "Debtors"), for its objection (the "Objection") to the Debtors' motion for an Order pursuant to Section 1121(d) of the Bankruptcy Code further extending the Debtors' exclusive periods (the "Second Exclusivity Motion" or the "Motion"), respectfully represents:

## INTRODUCTION AND SUMMARY OF OBJECTION

   1.  The Debtors' request for further extensions of the exclusive periods under Section 1121(d) is unwarranted. No "cause" exists for granting such relief. Earlier in these cases, the

NYC:182790.2

Court granted the Debtors extensions of the exclusive periods on the premise that such extensions would allow the Debtors to negotiate plan issues with the Committee and meaningfully move these cases forward. Although the Debtors suggest that the Cash Collateral Order put too tight a time frame on these cases (Motion, at ¶4), the Debtors have made little to no "progress" in these Chapter 11 cases to date. Lots of information has been delivered to Stout Risius Ross ("SRR"), the Committee's financial advisor. The focus of such information flow, however, has been, in essence, an exercise by the Debtors' management to continually reduce revenue projections, as they must, while simultaneously making other adjustments in an attempt to keep existing stockholders "in the money."

2.      The Debtors request is an attempt to continue to stall these Chapter 11 cases in the hope that market and economic conditions get better. As discussed below, despite the Debtors assertion that their "businesses continue to perform very well" (Motion, at ¶3), the value of the Debtors' business has diminished since the Petition Date. In the aggregate, EBITDA is approximately 18.5% below projections for the first three (3) months of the Debtors' five-year plan.[1]

3.      The Debtors likewise have not produced any evidence that they have a reasonable prospect of obtaining exit financing to replace the substantial pre-petition secured debt owed to Capital Source Finance LLC and the other participating lenders (collectively "CapSource"). To date, they have been in extended negotiations with a single lender and have yet to obtain a commitment from such lender. Without the requisite exit financing, the Proposed Plan (as defined below) is essentially moot. The requested extension of exclusivity would continue through the expiration of the Cash Collateral Order [Docket No. 61] which, as indicated in ¶4 of

---

[1] Comparison of the Debtors' Monthly Directors' Financial Reporting Package to the 5-Year Plan dated July 14, 2008.

the Motion, requires that a Chapter 11 plan be confirmed by February 25, 2009. An extension of exclusivity, as requested, would be coterminous with the Cash Collateral Order. Such exclusivity would hamper and prejudice the Committee's efforts to confirm a plan for the Debtors and to address CapSource's secured claims under a Committee sponsored plan.

## BACKGROUND

4. Pursuant to Section 1102(a)(1) of the Bankruptcy Code, the United States Trustee appointed the Committee on April 11, 2008. The Committee consists of Wilmington Trust Company, as Indenture Trustee, Jefferies High Yield Trading, Wilfrid Aubrey LLC, Valhalla Capital Partners, LLC, Momentive Performance Materials, Inc. and Environmental Products & Services of Vermont, Inc. The Committee is the statutory representative of, and fiduciary to, <u>all</u> of the Debtors' unsecured creditors. In the aggregate, the members of the Committee hold very substantial amounts of the Debtors' total unsecured claims both at the parent level (Lexington Precision Corp.) and at the subsidiary level (Lexington Rubber Group, Inc.).

5. On June 30, 2008, the Debtors filed their proposed Joint Plan of Reorganization. On August 8, 2008, the Debtors filed their Amended Joint Plan of Reorganization (the "Proposed Plan") and a proposed draft disclosure statement with respect thereto (the "Disclosure Statement"). As discussed in the prior hearing regarding the Debtors' first request for an extension of exclusivity, the Proposed Plan is substantially similar to the restructuring proposal made to holders of Lexington Precision Corp.'s 12% Senior Subordinated Notes (the "12% Notes") on or about March 10, 2008.

6. On July 9, 2008, the Debtors filed their first motion to extend their exclusive periods. On July 31, 2008, a lengthy evidentiary was held before this Court. Promptly thereafter, the Court: (i) extended the Debtors exclusive periods to propose a Chapter 11 plan and solicit acceptances thereof to October 28, 2008 and December 27, 2008, respectively and (ii)

3

directed the Debtors to promptly provide the Committee with all of the information it requested so that both sides could participate meaningfully in plan discussions and negotiations.

**The Second Exclusivity Motion**

7.  The Second Exclusivity Motion requests that this Court extend exclusivity for another sixty (60) and ninety (90) days, until January 26, 2009 and February 25, 2009, respectively. The Second Exclusivity Motion provides no factual support for such a request. Rather, the Debtors fill the Motion with hollow statements. For instance, the Debtors state that the "businesses continue to perform very well, particularly in view of the overall economic conditions and the plunge in demand in the automotive OEM segment." (Second Exclusivity Motion, at ¶3). As indicated above, however, the Debtors do not inform the Court that the actual aggregate 2008 EBITDA is tracking 18.5% below the Debtors' projections.[2] The Debtors state that since the first exclusivity hearing they have worked diligently to provide information to the Committee and that the case schedule has slipped despite their best efforts. (Motion, at ¶¶8 and 9). Although the Debtors have provided the Committee with a good deal of information, the majority of such information was readily available to the Debtors, and could have been provided at a quicker pace - - *i.e.*, the requests were not as burdensome as depicted.[3] Moreover, the bulk of the information provided has been and may still be unreliable and/or flawed. The revenue projections provided by the Debtors, has been reduced and/or "reformulated" on several occasions. The Committee and its advisors believe that the Debtors' efforts are geared solely at preserving value for existing equity at the expense and to the detriment of the unsecured creditors.

---

[2] Comparison of the Debtors' Monthly Directors' Financial Reporting Package to the 5-Year Plan dated July 14, 2008.

[3] By way of example. SRR did not receive the supporting data for the Connector Seals projections, a business which represents approximately 16% of the Debtors' estimated 2008 EBITDA until October 20, 2008.

4

8. As a consequence of the slow information flow and the revised and reformulated projections, there have been no meaningful plan negotiations to date, despite such being a mandate of the Court in connection with the Debtors first extension of exclusivity. Based on the Committee's professionals' analysis to date, the Committee believes that: (i) the Debtors are insolvent and (ii) existing equity has no value.

9. Finally, the Debtors allege that they have been diligently negotiating with "3,500 asbestos personal injury claimants" (Second Exclusivity Motion, at ¶10) and that they "have not concluded plan negotiations with certain constituencies, such as asbestos claimants . . . ." (Motion, at ¶10) The Debtors' reliance on asbestos-related claimants is startling. The Debtors' financial statements and SEC filings, since inception, have never mentioned any liability of the Debtors to asbestos-related claimants (by footnote or otherwise).[4] The Debtors have contended that they: (i) do not have liability to the asbestos-related claimants; (ii) have never paid anything to any asbestos-related claimants; and (iii) would seek to estimate any such claims at zero (and, in any event, any potential liability to such asbestos-related claimants is amply covered by insurance). The Proposed Plan provides for asbestos-related claimants to have recourse to any insurance maintained by the Debtors, which is precisely what such claimants now have. The Second Exclusivity Motion does not provide much beyond these so called "facts" to establish the requisite "cause."

---

[4] Debtors' management seems to have placed itself into a corner. Either management is attempting to manufacture an impaired accepting class under Section 1129(a)(10), or they have historically failed to make adequate public disclosure thereby exposing themselves to personal liability under applicable non-bankruptcy law.

5

**DISCUSSION**

**The Debtors Have Not Demonstrated That
"Cause" Exists to Extend Exclusivity**

10. It is well settled that a "debtor seeking to extend the 120-day exclusive period bears the burden of proof and must show that cause exists for granting an extension." *In re Southwest Oil Company of Jourdanton, Inc.*, 84 B.R. 448, 450 (Bankr. W.D. Texas 1987). *See also In re Gen. Bearing Corp.*, 136 B.R. 361, 367 (Bankr. S.D.N.Y. 1992) (same); *In re Curry Corporation*, 148 B.R. 754, 756 (Bankr. S.D.N.Y. 1992) (Debtor must make a clear showing of "cause" to support an extension of the exclusivity period); *In re McLean Industries, Inc.*, 87 B.R. 830, 834 (Bankr. S.D.N.Y. 1987) (debtor bears burden of proof that cause exists for extending exclusivity). Considering the history and purpose of Section 1121 of the Bankruptcy Code, specifically to limit the delay that makes creditors the hostages of Chapter 11 debtors,[5] a "request to extend . . . exclusivity is a serious matter." *In re Matter of All Seasons Indus., Inc.* 121 B.R. 1002, 1004 (Bankr. N.D. Ind. 1990). Such a motion must not "be granted routinely" or without a compelling reason. *McLean Industries, Inc.*, 87 B.R. at 834; *Matter of All Seasons,* 121 B.R. at 1004.[6]

---

[5] *See In re Timbers of Inwood Forest Assocs, Ltd.* 808 F.2d 363, 372 (5th Cir. 1987) ("Section 1121 was designed, and should be faithfully interpreted, to limit the delay that makes creditors the hostages of Chapter 11 debtors"); *In re Curry Corp.,* 148 B.R. at 755 (same); *In re Gen. Bearing Corp.*, 136 B.R. at 367 (same).

[6] When determining whether a debtor has demonstrated that "cause" exists to extend exclusivity, courts look to the facts of each specific case. Among the "factors" that courts have considered in assessing whether "cause" exists include, but are not limited to, the following:
(i)     the size and complexity of the case;
(ii)    the necessity for sufficient time to permit the debtor to negotiate a plan of reorganization and prepare adequate information;
(iii)   the existence of good faith progress toward reorganization;
(iv)    the fact that the debtor is paying its bills as they become due;
(v)     whether the debtor has demonstrated reasonable prospects for filing a viable plan;
(vi)    whether the debtor has made progress in negotiations with its creditors;
(vii)   the amount of time which has elapsed in the case;
(viii)  whether the debtor is seeking an extension of exclusivity in order to pressure creditors to submit to the debtor's reorganization demands; and
(ix)    whether an unresolved contingency exists.

6

11. The Debtors allege, <u>with no factual basis whatsoever</u>, that "deterioration and disruption of the Debtors' businesses . . . is likely to be caused by the filing of competing plans by non-debtor parties." (Motion, at ¶14.) Given the upcoming expiration of the Cash Collateral Order, creditors should have the ability to file and confirm their own plan that addresses CapSource's pre-petition secured claims and protects and preserves, to every extent possible, recoveries on unsecured claims. Unsecured creditors at both the parent and subsidiary level are entitled to payment in full before any recovery by equity.

12. Here, the Debtors <u>have not</u> made any factual showing in the Second Exclusivity Motion that "cause" exists to extend exclusivity. The Second Exclusivity Motion lacks substance. Even a cursory review yields the same conclusion - - there is no justification for these cases to be delayed any further. These Chapter 11 cases boil down to a contested valuation hearing, the focal points of which are (1) the valuation of the Debtors' businesses and (2) the value of the securities (debt and equity) proposed to be issued under the Plan. The Debtors want to stall theses cases as they hope that, in time: (i) businesses improves so drastically that the Debtors can justify their inflated valuation and (ii) the lending markets improve so that they can obtain exit financing. The Debtors' "hopes," however, do not constitute "cause" sufficient to extend exclusivity. Granting an extension of exclusivity would only delay the process and would not move these cases forward. Extending exclusivity would prejudice the legitimate interests of creditors.

---

*In re Adelphia Communications Corp.*, 352 B.R. 578, 587 (Bankr. S.D.N.Y. 2006). *See also In re Tripodi*, No. 04-30793, 2005 WL 2589185, at *1-2 (Bankr. D. Conn., Oct. 9, 2005); *In re Service Merchandise Company, Inc.*, 256 B.R. 744, 751 (Bankr. M.D. Tenn. 2000); *McLean Industries, Inc.*, 87 B.R. at 834.

WHEREFORE, the Committee respectfully requests that the Court deny the Exclusivity Motion and grant such other relief as the Court deems appropriate.

Dated: New York, New York
October 21, 2008

ANDREWS KURTH LLP

By: /s/ Paul N. Silverstein
Paul N. Silverstein (PS 5098)
Jonathan I. Levine (JL 9674)
450 Lexington Avenue, 15th Floor
New York, New York 10017
Telephone: (212) 850-2800
Facsimile: (212) 850-2929

Counsel to the Official Committee of
Unsecured Creditors