UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------------------x     NOT FOR PUBLICATION
In re                                                               :
                                                                    :     Case No. 08-11153 (MG)
       LEXINGTON PRECISION CORP., et.al.,     :
                                                                    :     (Chapter 11)
                                   Debtors.      :
----------------------------------------------------------------x


**MEMORANDUM AND ORDER GRANTING MOTION PURSUANT TO § 1121(d) TO
EXTEND THE DEBTORS' EXCLUSIVITY**


*A P P E A R A N C E S:*

WEIL, GOTSCHAL & MANGES LLP
767 Fifth Avenue
New York, NY 10153
By:    Richard P. Krasnow
          Adam P. Strochak
*Attorneys for Debtors*

ANDREWS KURTH LLP
450 Lexington Avenue
New York, NY 10017
By:    Paul N. Silverstein
          Gerald L. Bracht
*Attorneys for Official Committee of Unsecured Creditors*


**MARTIN GLENN**
**United States Bankruptcy Judge**


      Pending before this Court is the opposed motion to extend exclusivity pursuant to 11

U.S.C. § 1121(d) filed on October 7, 2008 by Lexington Precision Corporation and Lexington

Rubber Group, Inc. (collectively "Lexington" or "Debtors"). (ECF Doc. # 428.) The motion

seeks an extension of the period in which the Debtors alone may file a plan to January 26, 2009,

and the period within which the Debtors may solicit acceptances to that plan to February 25,

1

2009.  (*Id*. at ¶ 14.)  On October 8, 2008, the Court entered a Bridge Order extending exclusivity until such time as the Court decided the Debtors' motion.  (ECF Doc. #430.)  The Official Committee of Unsecured Creditors ("Committee") objected to the motion to extend exclusivity.  (ECF Doc. # 436.)  It argues that the extension should be denied because since July 2008, when the Court granted an initial extension, (i) the Debtors have not shown they can propose a viable plan, and (ii) the Debtors and the Committee have made no progress in negotiations because the Debtors have not been negotiating in good faith.  The Debtors' replied that since July the Debtors have made significant progress toward reorganization in that they have filed an amended proposed plan and a proposed disclosure statement.  (ECF Doc. # 444.)  The Debtors also allege that they have made progress towards securing exit financing, they have been acting good faith, and the negotiations with the Committee, while taking longer than expected, have progressed.  An evidentiary hearing was held on October 28, 2008.  This opinion sets forth the Court's findings of fact and conclusions of law pursuant to Federal Rule of Civil Procedure 52(a).

## BACKGROUND

The Debtors filed for chapter 11 relief on April 1, 2008.  On August 8, 2008, the Debtors filed an amended proposed plan and a proposed disclosure statement.  (ECF Doc. # 305, 306.)  A hearing to approve the disclosure statement is scheduled for November 24, 2008.  (ECF Doc. # 446.)

The Debtors primarily manufacture large volumes of high-quality rubber and metal components for use in automobiles and medical devices.  (ECF Doc. #3 at ¶ 5.)  The Debtors' business can be divided into two sectors:  the original equipment manufacturers (or "OEM") divisions and aftermarket divisions.  The OEM sector, which includes the metals division and the connector seals division, supplies automotive parts to domestic car manufacturers and other parts

2

suppliers. The precipitous decline in the automotive industry, particularly over the last three months, has caused significant deterioration in this sector of the Debtors' business. Debtors' Ex. 1; Committee's Ex. O. The aftermarket sector, which includes the medical components and insulators divisions, has not suffered nearly as much. *Id.*

This is the Debtors' second motion to extend exclusivity. Previously, on May 21, 2008, the Committee filed a motion seeking to terminate exclusivity pursuant to 11 U.S.C. § 1121(d). (ECF Doc. # 133.) The Debtors opposed the motion. (ECF Doc. # 161, 162.) Prepetition there were unsuccessful negotiations between the Debtors and an ad-hoc committee of creditors, which eventually ceased with no additional prepetition communications. The Debtors then filed their chapter 11 petitions. After the petitions were filed and the Committee was appointed, largely comprised of members of the ad-hoc committee and represented by the same counsel, neither the Debtors nor the Committee reached out to the other to begin negotiations. (See ECF Doc. # 263 at pg. 4.) A hearing on the motion to terminate exclusivity was held on June 11, 2008. The Court reserved judgment to allow the parties time to meet and begin negotiating the terms of a reorganization plan. The Debtors then filed a motion to extend exclusivity on July 9, 2008. (ECF Doc. # 238.) On July 16, 2008, the Committee withdrew its motion to terminate exclusivity and instead opposed the Debtors' motion to extend exclusivity. (ECF Doc. # 262.) After an evidentiary hearing on July 21, 2008, the Court granted Debtors' motion and extended exclusivity to October 28, 2008. (ECF Doc. # 289.) On October 7, 2008, Debtors filed the instant motion seeking again to extend exclusivity. For the reasons discussed below, the Court grants the extension of both the Debtors' period to file a plan until January 26, 2009, and to solicit acceptances until February 25, 2009.

## DISCUSSION

### A.  Exclusivity Pursuant to §1121

The Bankruptcy Code grants a debtor the exclusive right to file a plan during the first 120 days after the order granting relief.  11 U.S.C. § 1121(b).  Once the 120-day period expires or is terminated, any party in interest may file a plan of reorganization.  11 U.S.C. § 1121(c).  Events explicitly recognized by statute that end the exclusivity period include a failure to file a plan within 120 days of the order for relief or a failure to obtain acceptance of the timely filed plan within 180 days by all impaired classes.

The Bankruptcy Code allows the exclusivity period to be terminated or extended upon a showing of cause by a party in interest.  11 U.S.C. § 1121(d).  The burden of proving cause to extend exclusivity is on the moving party, in this case the Debtors.  *See In re R.G. Pharm., Inc.*, 374 B.R. 484, 487 (Bankr. D. Conn. 2007) (stating debtor has burden in motion to extend); *In re Texaco, Inc.*, 76 B.R. 322, 326 (Bankr. S.D.N.Y. 1987) (finding that party seeking either an extension or a termination of exclusivity bears the burden of proving cause).  Some courts have held that for the moving party to meet its burden it must produce affirmative evidence to support a finding of cause.  *See In re Parker Street Florist & Garden Center, Inc.*, 31 B.R. 206, 207 (Bankr. D. Mass. 1983) (debtor's assertion that it did not want the interference of competing plans was found insufficient to make an affirmative showing of cause).

### B.  Cause Pursuant to § 1121(d)

The determination of cause under section 1121(d) is a fact-specific inquiry in which the court has broad discretion in extending or terminating exclusivity.  *See In re Adelphia Commc'ns Corp.*, 352 B.R. 578, 586 (Bankr. S.D.N.Y. 2006) ("A decision to extend or terminate exclusivity for cause is within the discretion of the bankruptcy court, and is fact-

4

specific."); *see also In re Lehigh Valley Prof'l Sports Club, Inc.*, 2000 WL 290187, at *2 (Bankr. E.D. Pa. Mar. 14, 2000) (relief under §1121(d) is committed to the sound discretion of the bankruptcy judge); *In re Sharon Steel Corp.*, 78 B.R. 762, 763 (Bankr. W.D. Pa. 1987) ("The decision of whether or not to extend the debtor's period of exclusivity rests with the discretion of the Court.").

As with the first exclusivity motion, the Court will focus on the nine factors for determining cause identified by Judge Gerber in his *Adelphia* decision: (a) the size and complexity of the case; (b) the necessity for sufficient time to permit the debtor to negotiate a plan of reorganization and prepare adequate information; (c) the existence of good faith progress toward reorganization; (d) the fact that the debtor is paying its bills as they become due; (e) whether the debtor has demonstrated reasonable prospects for filing a viable plan; (f) whether the debtor has made progress in negotiations with its creditors; (g) the amount of time which has elapsed in the case; (h) whether the debtor is seeking an extension of exclusivity in order to pressure creditors to submit to the debtor's reorganization demands; and (i) whether an unresolved contingency exists. *In re Adelphia*, 352 B.R. at 587.

While not all of these factors are applicable in the current case, they do provide the necessary framework in considering the relief requested. The factors that the Court considers most relevant based on the arguments presented by the Debtors and the Committee are as follows: (i) the existence of good faith progress toward reorganization; (ii) whether the debtor has demonstrated reasonable prospects for filing a viable plan; and (iii) whether the debtor has made progress in negotiations with its creditors. *In re Adelphia*, 352 B.R. at 587. The Committee's objection similarly addresses these factors in alleging that the Debtors (1) have not

5

demonstrated reasonable prospects for filing a viable plan, and (2) have not engaged in good faith negotiations with the Committee. The Court will address each argument in turn.

As to the first argument, the Committee points to three facts to support a finding that the Debtors do not have reasonable prospects of filing a viable plan: Debtors' lack of exit financing; the alleged continued diminution in value of the Debtors' business over the past several months, including the Debtors' failure to meet forecasted earnings projections; and the dramatic deterioration of the automotive industry in general over that same time period. The Court finds that none of these facts supports a denial of an extension of exclusivity.

With respect to exit financing, the Court finds that, based on the evidence at the hearing, the Debtors have reasonable prospects of obtaining exit financing. CapitalOne Bank previously entered into a non-binding letter agreement with Debtors to provide exit financing. Committee's Ex. N. While the term of the agreement has since expired, *id.* at 9, the Court heard uncontroverted testimony from the Debtors' Chairman that the Debtors remain in negotiations with CapitalOne, CapitalOne continues to perform due diligence, and CapitalOne has indicated that it is still interested in extending exit financing. Thus, while the Committee strenuously argued that Debtors have "zero prospects" of securing exit financing, the evidence does not support such a conclusion.

Nor is the decline of the Debtors' business enough to support denying an extension of exclusivity. As a result of the decline in business, the Debtors have missed their projected earnings over the past several months. Committee's Ex. O. But the effect the decline in net sales and EBITDA may have had on the Debtors' business's value is disputed. While the Committee points out that Debtors have missed projections by 18.5% on a consolidated EBITDA basis from June through August, the Court credits the Debtors' evidence that this

6

diminution is primarily in the OEM businesses, and that its aftermarket businesses—the medical components and insulators divisions—are either meeting or very close to meeting projections.[1] Committee's Ex. O; Debtors' Ex. 1. The testimony shows that Debtors' financial advisor, W.Y. Campbell & Co., currently values the OEM businesses at wind-down or near-liquidation value. Therefore, the EBITDA declines in the OEM businesses may not materially impact the value of the entire enterprise. In any event, as the *Adelphia* decision made clear, in evaluating cause for extensions of exclusivity, the court should consider whether a debtor *could* present a viable plan, not whether the currently proposed plan is viable. 352 B.R. at 588. As a result, the Court finds that the diminution of Debtors' business over the past few months is not a reason to deny an extension of exclusivity.

Lastly, the Committee argues that the deterioration of the general automotive market in the past few months also compels a finding that the Debtors cannot propose a viable plan. The Court disagrees. The Court is, of course, aware of the difficult market conditions all companies, not just the Debtors, are facing right now. Not only has the automotive industry declined, but the tightening credit markets have made securing exit financing very difficult. But that is not reason enough to deny an extension of exclusivity. If the Court were to accept the Committee's argument, few, if any, debtors could continue to maintain exclusivity in the current economic climate.

The Committee's second argument opposing an extension of exclusivity is that the Debtors are not engaging in good faith negotiations, and that the Committee and the Debtors have not made any progress in negotiations. In its last exclusivity order in July, the Court

---

[1] The Committee argued that the medical components division's falling short of its June-August EBITDA projections by 5.6% is a significant miss. Committee's Ex. O at 2. The Court disagrees. The 5.6% miss amounts to $59,000 in EBITDA over a three-month period. As the Committee's financial advisor testified, and the Court so finds, this amount is not material.

7

indicated that it expected serious negotiations to begin in September; that obviously did not happen, as the Debtors and the Committee did not sit down to negotiate until very recently. Since that order, however, the Debtors prepared revised forecasts in light of comments from the Committee's financial advisor, Stout Risius & Ross, as well as from changing conditions in their business and the market. The testimony shows that the Committee was not prepared to begin negotiations until it received all of the information it requested from the Debtors, including the updated projections and backup information related to the revised forecasts. While the Committee's insistence on receiving all of the information before negotiations commenced cannot be faulted, it cannot then be turned into an argument for ending exclusivity.

In addition, the Debtors' financial advisor, W.Y. Campbell & Co., took longer than expected to complete its draft valuation report, delaying the start of the negotiations by a month. Debtors' Ex. 3. The Court credits the Debtors' testimony that W.Y. Campbell's delay was not purposeful and was the result of a good faith effort to prepare an accurate report in light of changing industry conditions.

The Debtors have also been providing the Committee with all the documentation that the Committee's financial advisor requested. Indeed, the Committee's financial advisor testified that he currently has all the documentation he has requested, although he did say that he may need more information, as his review continues. Documentary evidence also shows that the Debtors have provided the Committee with numerous documents and reams of data. Debtors' Ex. 4. The Committee and the Debtors have also recently met twice. While progress has been tentative, the uncontroverted testimony, including from the Committee's financial advisor, was that the parties "are not at an impasse" in negotiations. The inference and expectation is that further negotiations could be fruitful. The Court expects the parties to continue to negotiate in

8

good faith with a view towards agreeing on a viable plan for reorganization. In sum, the Court concludes that sufficient progress has been made in negotiations—and that Debtors have been negotiating in good faith—such that it would be inappropriate to terminate exclusivity now.

The Court concludes that the Debtors have shown the necessary cause under section 1121(d) to further extend exclusivity. It would not benefit the Debtors or the estate to deny an extension of exclusivity now. It has been clear since the start of this case that the Debtors and the Committee have substantial differences regarding the proper valuation of the Debtors. The Debtors claim there is substantial value for equity. The Committee vehemently disagrees. The time and place to resolve this issue will be in connection with a confirmation hearing.

The motion to extend exclusivity is granted to the extent provided herein.

**IT IS ORDERED**

Dated:  October 31, 2008
       New York, New York

                ___/s/ Martin Glenn_____
                UNITED STATES BANKRUPTCY JUDGE