|  |  |
|---|---|
| UNITED STATES BANKRUPTCY COURT<br>SOUTHERN DISTRICT OF NEW YORK | **Hearing Date: November 24, 2008**<br>**Hearing Time: 10:00 a.m.** |

-------------------------------x
In re                          :   Case No. 08-11153 (MG)
                               :
LEXINGTON PRECISION            :   Jointly Administered
  CORP., et al.,               :
                               :   Chapter 11
                Debtors.       :
                               :
-------------------------------x

**OBJECTION OF THE UNITED STATES TRUSTEE
TO THE DEBTORS' DISCLOSURE STATEMENT**

The United States Trustee for Region 2 (the "United States Trustee") respectfully submits this Objection to the proposed Disclosure Statement (the "Disclosure Statement") filed in these jointly administered cases.  The Disclosure Statement is deficient and fails to meet the standards of containing "adequate information" set forth in 11 U.S.C. § 1125(a).

In support of her objection, the United States Trustee alleges as follows:

**Introduction**

The Disclosure Statement contains a broad non-debtor release provision.  The Disclosure Statement does not attempt to explain why this provisions is justified.  Accordingly, absent further disclosure and explanation, the Disclosure Statement fails to contain adequate information and should not be approved.[1]

**Background**

---

[1] The Debtors and the United States Trustee are currently discussing revisions to the non-debtor release provision.  The United States Trustee has filed this objection to preserve her rights in the event that such discussions are not resolved to the satisfaction of the United States Trustee.

**General Background**

1.  On April 1, 2008, the Debtors filed their voluntary petitions for relief under Chapter 11 of the Bankruptcy Code. ECF No. 1.  The Debtors are operating their businesses and managing their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

2.  The Debtors manufacture large volumes of high-quality rubber and metal components for use primarily in automotive and medical devises.  See Affidavit of Dennis J. Welhouse Pursuant to Local Rule Bankruptcy Rule 1007-2 at ¶ 5, ECF No. 3.

3.  On April 11, 2008, the United States Trustee appointed an official committee of unsecured creditors (the "Committee") in these cases.  ECF No. 49.  The Committee retained Andrews Kurth, LLP as counsel.  ECF No. 101.

4.  On June 30, 2008, the Debtors filed their Joint Chapter 11 Plan of Reorganization.  ECF No. 196.

5.  On August 8, 2008, the Debtors filed an Amended Joint Chapter 11 Plan of Reorganization (the "Amended Plan").  ECF No. 305.

6.  On August 8, 2008, the Debtors also filed their Disclosure Statement.  ECF No. 306.

**The Amended Plan and Disclosure Statement**

7.  According to the Disclosure Statement, pursuant to the Amended Plan, unsecured claims against the Debtors, other than senior subordinated note claims, junior subordinated note claims and asbestos-related claims, will receive an initial 25%

distribution and, thereafter, three consecutive 26.5% distributions six, twelve and eighteen months after the initial distribution.  Disclosure Statement at 37-38 & 41, ECF No. 306.

8.   Unsecured asbestos related claims, however, are separately classified from general unsecured creditors under the Amended Plan.  Disclosure Statement at 38, ECF No.306.  Pursuant to the Amended Plan, recovery for asbestos related claims is limited to the proceeds of the Debtors' insurance policies.  Id. Therefore, it is unclear what percentage recovery asbestos related claimants will receive.

9.   Under the Amended Plan, holders of common stock in the Debtors, although subject to dilution in the case of Lexington Precision Corp. ("LPC") because of the increase in the number of authorized shares of LPC common stock pursuant to the Amended Plan, will be unaltered.  Id. at 39 & 41.

10.  The Disclosure Statement also sets forth certain non-debtor releases (the "Non-Debtor Releases") that are included in the Amended Plan.  See Disclosure Statement at 53, Section IV.J.5, Amended Plan at 28, Article 10.8, ECF Nos. 305 and 306. Specifically, under the Amended Plan, holders of claims and equity interests against the Debtors that are either (A) deemed to accept the Amended Plan, or (B) that do not vote to accept the Amended Plan will release each present or former officer, director, employee, agent, financial advisor, attorney, and representative of the Debtors and the Committee, the agents under the pre-petition credit agreement and the pre-petition loan

agreement, the lenders party to the DIP note, and each of their respective members, officers, directors, agents, financial advisors, attorneys, employees, equity holders, partners corporations, subsidiaries, partners affiliates and representatives from all liabilities based, in whole or in part, on, among other things, all claims that relate to the operation of the Debtors' business, the transaction giving rise to the claim, the business arrangements between the Debtor and such claim holder, or any act, omission, occurrence, or event in any manner related to such transaction or arising out of the Chapter 11 cases, except for willful misconduct, gross negligence, fraud, criminal conduct.  Id.  A copy of the Non-Debtor Releases are annexed hereto as Exhibit A.

## Argument

## General Standards

11.  Under § 1125(b) of the Bankruptcy Code, a disclosure statement must contain "adequate information" before the debtor may solicit acceptance of a plan of reorganization. 11 U.S.C. § 1125(b).

> Adequate information is defined as:
>
> information of a kind, and in sufficient detail, as far as is reasonably practicable in light of the nature and history of the debtor and the condition of the debtor's books and records . . . that would enable a such a hypothetical reasonable investor . . . to make an informed judgment about the plan . . . .

11 U.S.C. § 1125(a)(1).

12.  The court may require disclosure appropriate to the circumstances of each case. In re Ionosphere Clubs, Inc., 179

-4-

B.R. 24, 29 (S.D.N.Y. 1995).  See also  In re Metrocraft Pub. Services, Inc., 39 B.R. 567, 568 (Bankr. N.D. Ga. 1984) (citing nineteen nonexclusive factors that courts may use to evaluate the adequacy of a disclosure statement) and In re Ferretti, 128 B.R. 16, 18-19 (Bankr. D.N.H. 1991) (citing eighteen of the Metrocraft factors).  The purpose of the disclosure statement is to give creditors enough information so that they can make an informed choice of whether to approve or reject the debtor's plan.  In re Duratech Industries, 241 B.R. 291, 298 (Bankr. E.D.N.Y.), *aff'd*, 241 B.R. 283 (E.D.N.Y. 1999).  Accordingly, a disclosure statement must set forth the justification for any non-debtor releases contained in a plan.  See In re Source Enterprises, Inc., Case No. 06-11707(AJG)(Bankr. S.D.N.Y. July 31,2007)(minute order and opinion, ECF No. 322, denying approval of disclosure statement that, among other things, failed to justify third party releases under Metromedia standards).

**No Justification is Provided for the Non-Debtor Releases**

13.  Neither the Disclosure Statement nor the Amended Plan explain why the Non-Debtor Releases are warranted or justified. In order to be valid, the Non-Debtor Releases must meet the standard set forth under Deutsche Bank AG v. Metromedia Fiber Network, Inc. (In re Metromedia Fiber Network, Inc.), 416 F. 3d 136, 141 (2d Cir. 2005)("Metromedia").

14.  The Second Circuit has held that non-debtor releases do not pass muster merely by virtue of the fact that they appear in

the plan; the Debtors must demonstrate that the facts justify the release being sought - a rare circumstance. See id. at 141-43.

15. Specifically, as noted above, "[i]n bankruptcy cases, a Court may enjoin a creditor from suing a third party, provided the injunction plays an important part in the Debtor's reorganization plan." Metromedia, 416 F. 3d at 141 (quoting Drexel Burnham Lambert Group, Inc., 960 F.2d at 292 (2d Cir. 1992)). In Metromedia, the Second Circuit expressed its dissatisfaction with the frequency in which non-debtor releases are included in plans. These releases were identified by the Court as "a bankruptcy discharge arranged without a filing and without the safeguards of the Code." Id. at 142. Therefore, non-debtor releases are appropriate only in rare cases, and a non-debtor release in a plan of reorganization should not be approved absent the finding that truly unusual circumstances render the release terms important to the success of the plan. See id.. at 141-143.

16. The Second Circuit has approved of non-debtor releases in unique circumstances. Such circumstances are where: 1) the estate received substantial consideration, see Drexel Burnham Lambert Group, Inc., 960 F.2d at 292 (2d Cir. 1992) (multi-billion dollar settlement including a payment of over a billion dollars into fund by Michael Milken and other co-liable Drexel personnel); 2) enjoined claims were "channeled" to a settlement fund rather than extinguished, see MacArthur Co. v. Johns-Manville Corp. (In re Johns-Manville Corp.), 837 F.2d 89, 93-94

(2d Cir. 1988); 3) where the enjoined claims would indirectly impact the debtor's reorganization "by way of indemnity or contribution," and the plan otherwise provided for the full payment of the enjoined claims, see Menard-Sanford v. Mabey (In re A.H. Robins Co.), 880 F.2d 694, 701 (4th Cir. 1989); and 4) the affected creditors consented. See In re Specialty Equip. Cos., 3 F.3d 1043, 1047 (7th Cir. 1993). See also Metromedia at 143.

17. Recent cases further clarify the Metromedia requirements. In In re Karta Corp., 342 B.R. 45 (S.D.N.Y. 2006), the Court, with an eye on Metromedia and following the Second Circuit's narrow standard, found that the case before it was "the rare case" involving unusual facts that justified the release of certain non-debtor parties, including the Plan funders and an affiliated company. Id. at 55.

18. The Court in Karta determined that the non-debtor release provisions were "important" to the Debtor's plan of reorganization for the following reasons: the released parties agreed to make a substantial financial contribution to fund the plan **only** if they would be released from Creditors' claims. Id. If the releases were not approved, the released parties would not fund the plan. Without funding, the proposed plan would fail, therefore the releases could not be excised from the plan. Id. However, the Court noted that it would be an abuse of process simply to allow the release of a non-debtor in return for its financial contribution. Something else was therefore needed in

order to make a case "unique." Id. The Court framed the issue as follows: "whether a significant non-debtor financial contribution plus other unusual factors render a situation so 'unique' that non-debtor releases are appropriate." Id.

19. By contrast, in this case, the Debtors simply have not shown, or attempted to show, that this case meets any of the requirements for "uniqueness" set forth in Metromedia or its progeny that would justify the approval of the Non-Debtor Releases. Nor is the United States Trustee able to discern from the Amended Plan or Disclosure Statement any factors that would justify a finding that this is the sort of rare situation where broad releases would be appropriate.[2]

20. Additionally, in Karta, the District Court emphasized that "a necessary corollary of Metromedia must be that the

---

[2] See also In re Adelphia, 2007 WL 866643, *105-108 (Bankr. S.D.N.Y. 2007 (three categories of third party releases are acceptable under Metromedia: (1) persons indemnified by the estate under by-laws, employment contracts, or loan agreements; (2) persons involved in unique transactions, such as a party who makes a substantial financial contribution to the estate; and (3) persons who consent to the releases); In re Oneida Ltd., 351 B.R. 79 (Bankr. S.D.N.Y. 2006) (the Equity Committee had raised, but then abandoned, an objection to the validity of the Non-Debtor releases. In dicta, the Court stated that the releases were acceptable because all of the affected creditors had consented: they affirmatively checked a box on the Plan solicitation ballots indicating their willingness to grant releases); In re Spiegel Inc., 2006 WL 2577825, *7 (Bankr. S.D.N.Y. Aug. 16, 2006) (No. 03-11540 BRL) (Plan's third-party releases and injunctions were critical components of the Settlement that played a "vital part in the plan" and were "necessary to the proposed reorganization of the Debtors and the successful administration of their estates"); In re XO Communications, Inc., 330 B.R. 394, 440 (Bankr. S.D.N.Y. 2005) (third-party releases permissible where non-Debtors provided significant consideration, non-Debtor releases were integral to the Plan, and non-Debtors' interests aligned with those of the Debtors with regard to claims.)

releases offered to the Non-Debtors bear a reasonable relationship to the protection of the estate and go no further than necessary to protect those interests." Karta, 342 B.R. at 57. Although the Court in Karta held that non-debtor releases were appropriate, it also found that the wording of the proposed releases was overbroad, potentially providing the release of claims that had nothing to do with the Debtors' business. Id. The offensive language stated that ". . . all Claims of Creditors that are potentially viable against the released Parties. . ." were released. Id. The Court, therefore, modified the confirmation order by limiting the release of Creditor claims against non-debtors to "all claims relating to the operation and management of the . . . business operated by Debtors and their affiliates. . . ." Id. at 59.

21. In the instant case, the Disclosure Statement and Amended Plan fail to provide any justification for the Non-Debtor Releases. Moreover, the proposed provisions in Article 10.8 of the Amended Plan are too broad because the proposed releases are not restricted to business-related claims. Specifically, the proposed Non-Debtor Releases release all claims "in any manner related to . . . or arising out of the Chapter 11 Cases." Amended Plan at 28, Article 10.8, ECF No. 305. Thus, under Karta and Metromedia, absent adequate explanation from the Debtors as to their justification, the proposed releases should be disallowed.

22.  The Debtors have informally advised the United States Trustee that the Non-Debtor Releases are justified under <u>In re A.H. Robins Co.</u>, 880 F.2d 694, 701 (4th Cir. 1989) because unsecured creditors are being paid in full.  However, as noted in paragraph 8 herein, asbestos claimants against the Debtors are not provided a 100% recovery.  Moreover, in <u>A.H. Robins</u>, the non-debtor release was limited to suits that have a connection to the Dalkon Shield.  <u>A.H. Robins</u>, 880 F.2d at 700.  The Non-Debtor Releases in the Amended Plan are much more broad and cover all claims related to the Debtors' business, transactions giving rise to the claim against the Debtors, or any matter related to the Debtors' chapter 11 cases. <u>See</u> Exhibit A.  Furthermore, in <u>A.H. Robins</u>, the court found that the release was necessary because suits against the releases parties would affect the reorganization.  <u>Id</u>. at 701.  In the instant matter, the Disclosure Statement does not provide any reason for the Non-Debtor Releases.  Finally, it is unclear if full payment in <u>A.H. Robins</u> contemplated the 18 month payout provided in the Amended Plan.  <u>Id</u>.  Accordingly, the Debtors' reliance on <u>A.H. Robins</u> is misplaced.

### Carve-Out Of Governmental Claims

23.  Finally, the Amended Plan also fails to include the appropriate language carving out Government claims from the proposed releases.  At a minimum, the Debtors must add the following language to their release provisions:

> Nothing in the Confirmation order or the Amended Plan of Reorganization shall effect a release of any claim

by the United States Government or any of its agencies or any state and local authority whatsoever, including without limitation any claim arising under the Internal Revenue Code, the environmental laws or any criminal laws of the United States or any state and local authority against the Released Parties, nor shall anything in the Confirmation Order or the Plan of Reorganization enjoin the United States or any state or local authority from bringing any claim, suit, action or other proceedings against the Released Parties for any liability whatever, including without limitation any claim, suit or action arising under the Internal Revenue Code, the environmental laws or any criminal laws of the United States or any state or local authority, nor shall anything in the Confirmation Order or the Amended Plan of Reorganization exculpate any party from any liability to the United States Government or any of its agencies or any state and local authority whatsoever, including any liabilities arising under the Internal Revenue Code, the environmental laws or any criminal laws of the United States or any state and local authority against the Released Parties.

## **Conclusion**

24.  The Disclosure Statement and Amended Plan do not explain why the Non-Debtor Release provisions are justified. Accordingly, absent additional information, the Disclosure Statement fails to contain adequate information under 11 U.S.C. §1125.  Therefore, the United States Trustee respectfully

-11-

requests that the Court decline to approve the Disclosure Statement. <u>In re Source Enterprises, Inc.</u>, Case No. 06-11707(AJG)(Bankr. S.D.N.Y. July 31,2007)(minute order and opinion, ECF No. 322, denying approval of disclosure statement that, among other things, failed to justify third party releases under <u>Metromedia</u> standards).

Dated: New York, New York
      November 10, 2008

                           Respectfully submitted,

                           DIANA G. ADAMS
                           UNITED STATES TRUSTEE

     By:               <u>*/s/ Paul K. Schwartzberg*</u>
                           Paul K. Schwartzberg
                           Trial Attorney
                           33 Whitehall Street, 21st Floor
                           New York, New York  10004
                           Tel. No. (212) 510-0500