HEARING DATE: December 10, 2008 at 10:00 a.m. (prevailing Eastern Time)
OBJECTION DEADLINE: November 26, 2008 at 5:00 p.m. (prevailing Eastern Time)*
*Extended from November 12, 2008 per stipulation approved on November 12, 2008 (Docket No. 467)

WALLER LANSDEN DORTCH & DAVIS LLP
John C. Tishler (*Pro Hac Vice*)
Robert J. Welhoelter (*Pro Hac Vice*)
511 Union Street, Suite 2700
Nashville, Tennessee 37219-8966
TEL: (615) 244-6380
FAX: (615) 244-6804
Email: John.Tishler@Wallerlaw.com
Email: Robert.Welhoelter@Wallerlaw.com

and

CARTER LEDYARD & MILBURN LLP
Aaron R. Cahn
2 Wall Street
New York, New York 10005
TEL: (212) 238-8629
FAX: (212) 732-3232
Email: cahn@clm.com

*Counsel to Agents for the Senior Prepetition Lenders*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

----------------------------------------------------------x
                                                           :

In re                                        :       Chapter 11 Case No.

LEXINGTON PRECISION CORP., et al.,   :       08-11153 (MG)

        Debtors.                     :       (Jointly Administered)

----------------------------------------------------------x

**OBJECTION OF AGENTS FOR PREPETITION SENIOR LENDERS TO
DEBTORS' MOTION FOR APPROVAL OF DISCLOSURE STATEMENT,
SOLICITATION PROCEDURES, AND CONFIRMATION PROCEDURES**

By and through the undersigned attorneys, CapitalSource Finance LLC, as Revolver Agent (defined below) to the Prepetition Revolver Lenders (defined below) and CSE Mortgage LLC, as Term Loan Agent (defined below) to the Senior Term Loan Lenders (defined below, and collectively with the Prepetition Revolver Lenders and the Agents, the "Prepetition Senior

2508465.5

Lenders"), hereby object to the *Debtors' Motion to (i) Approve the Debtors' Proposed Disclosure Statement, (ii) Approve the Procedures to Solicit Acceptances of the Debtors' Proposed Plan, and (iii) Schedule a Hearing and Establish Notice and Objection Procedures for Confirmation of the Debtors' Proposed Plan* (the "Motion") and state as follows:

**Introduction**

1. Unless and until the Debtors obtain a commitment for exit financing, embarking on the confirmation process is a fruitless endeavor that will result in a mountain of costs that should be avoided. Even if the Debtors obtain an exit commitment for $35 million, it is highly doubtful that such level of financing is sufficient to fund the proposed plan. Because the plan is not feasible on its face with only $35 million in financing, the disclosure statement should not be approved. Further, the disclosure statement does not contain adequate information with respect to the prospects of obtaining exit financing or even the critical nature of needing to obtain exit financing. Finally, there are certain clarifications that should be made in order for creditors to be able to make an informed decision when voting on the plan. For each of these reasons, the Prepetition Senior Lenders (defined below) object to the Motion.

**Background Facts**

2. Prior to the Commencement Date, the Prepetition Senior Lenders (as defined below) made certain loans and other financial accommodations available to the Debtors pursuant to, among other things, the following documents (collectively, with any and all other agreements, instruments, and related documents, including without limitation, guaranties, pledges, forbearance agreements and discretionary funding letters executed by any Debtor and any Other Documents (as defined in each of the Credit Agreement (defined below) and the Loan Agreement (defined below)), the "Prepetition Senior Lender Loan Documents"):

(a) that certain Credit and Security Agreement, dated May 31, 2006 (as amended to date and as may be amended, restated or otherwise modified from time to time, the "Credit Agreement"), between the Debtors, as borrowers, and CapitalSource Finance LLC ("CapitalSource"), as a lender, as collateral agent and administrative agent for itself and other lenders under the Credit Agreement (CapitalSource, when acting in such capacity, is herein called the "Revolver Agent"), and as Co-Documentation Agent, and Webster Business Credit Corporation ("Webster") as a lender (CapitalSource and Webster, as lenders, collectively the "Prepetition Revolver Lenders") and as Co-Documentation Agent; and

(b) that certain Loan and Security Agreement, dated May 31, 2006 (as amended to date and as may be amended, restated or otherwise modified from time to time, the "Loan Agreement"), between the Debtors, as borrowers, and CSE Mortgage LLC ("CSE"), as a lender and as collateral agent for itself and each other lender under the Loan Agreement (CSE, when acting in such capacity, is herein called the "Term Loan Agent"), and DMD Special Situations Funding LLC, ("DMD"), as a lender under the Loan Agreement (DMD and CSE, as lenders, the "Prepetition Term Lenders").

3. The Revolver Agent and Term Loan Agent are referred to collectively herein as the "Agents." Any capitalized terms not defined herein shall have the meanings ascribed to them in the Prepetition Senior Lender Loan Documents or the Cash Collateral Order (as defined below), as applicable.

4. On April 17, 2008, this Court entered that certain *Final Order Pursuant To Bankruptcy Code Sections 105, 361, 362, 363, & 364 (i) Authorizing Debtors To Use Cash Collateral, (ii) Granting Adequate Protection To Prepetition Secured Lenders, and*

2508465.5                              3

*(iii) Authorizing Postpetition Financing* (the "Cash Collateral Order"), whereby the Prepetition Senior Lenders consented to the use of their Cash Collateral subject to certain conditions. Chief among those conditions is that the Debtors' confirm and consummate a plan of reorganization that provides for the indefeasible payment in full of the obligations to the Prepetition Senior Lenders within three hundred thirty (330) days of the Commencement Date, i.e. February 25, 2009 (the "Cash Collateral Deadline"). (Cash Collateral Order, ¶ 11(viii).)

5. At various times during these cases, the Prepetition Senior Lenders have indicated to the Debtors that the Prepetition Senior Lenders are not willing to serve as exit lenders, and that the Prepetition Senior Lenders are not willing to extend the terms of the Cash Collateral Order beyond the deadline set forth above.

6. On October 24, 2008, the Debtors filed the Motion. Attached as Exhibit A is their *Proposed Disclosure Statement for Debtors' Amended Joint Plan of Reorganization Under Chapter 11 of the Bankruptcy Code*, dated August 8, 2008 (the "Disclosure Statement"), which relates to the *Debtors' Amended Joint Plan of Reorganization Under Chapter 11 of the Bankruptcy Code*, dated August 8, 2008 (the "Proposed Plan").

7. The Debtors and the Prepetition Senior Lenders have engaged in multiple discussions on the Proposed Plan in early and mid October, prior to the filing of the Motion, but none of the issues discussed or their resolution are reflected in the Proposed Plan. For some reason, the Debtors have submitted a Disclosure Statement and Proposed Plan that is nearly two (2) months old, despite having had multiple conversations with parties in interest regarding plan terms from and after August 8, 2008, but prior to the filing of the Motion.

**Prepetition Senior Lender's Objection**

8. The Prepetition Senior Lenders' objection has three grounds: (i) the Disclosure Statement cannot be approved where the Proposed Plan is patently unconfirmable and approval is not in the parties' economic best interest, (ii) the Disclosure Statement cannot be approved because it does not contain adequate information, and (iii) there are certain additional disclosure concerns that are addressed at the end of the objection.

A. The Underlying Plan is Unconfirmable

9. In order for a bankruptcy court to confirm a plan, the plan must comply with the applicable provisions of the Bankruptcy Code. 11 U.S.C. § 1129(a)(1). Pursuant to Section 1129(a)(10), a requirement for confirmation of a plan is that "Confirmation of the plan is not likely to be followed by the liquidation, or the need for further financial reorganization, of the debtor or any successor to the debtor under the plan, unless such liquidation or reorganization is proposed in the plan." 11 U.S.C. § 1129(a)(10).

10. If a plan is unable to be confirmed under the applicable provisions of the Bankruptcy Code, the accompanying disclosure statement should not be approved. *See, e.g.*, In re Main Street AC, Inc., 234 B.R. 771, 775 (Bankr. N.D. Cal. 1999) ("It is now well accepted that a court may disapprove of a disclosure statement, even if it provides adequate information about a proposed plan, if the plan could not possibly be confirmed"); In re Curtis Center LP, 195 B.R. 631, 638 (Bankr. E.D. Pa. 1996) ("a disclosure statement should be disapproved where the plan it describes is patently unconfirmable"); In re 266 Washington Assocs., 141 B.R. 275, 288 (Bankr. E.D.N.Y. 1992) ("A disclosure statement will not be approved where…it describes a plan which is fatally flawed and thus incapable of confirmation); In re Copy Crafters Quickprint,

2508465.5           5

Inc., 92 B.R. 973, 980 (Bankr. N.D.N.Y. 1989) (approval of disclosure statement should be withheld if it is apparent plan will not comply with section 1129(a)).

11. The reason is simple: to avoid needless expense and effort. *See* In re Allied Gaming Mgmt., Inc., 209 B.R. 201, 202 (Bankr. W.D. La. 1997) ("...the estate should not be burdened (both in terms of time and expense) with going through the printing, mailing, noticing, balloting, and other exercises in the confirmation process where inability to attain confirmation is a *fait accompli*"). In re Valrico Square Ltd. P'ship, 113 B.R. 794, 796 (Bankr. S.D. Fla. 1990) ("Soliciting votes and seeking court approval on a clearly fruitless venture is a waste of the time of the Court and the parties"); In re S.E.T. Income Properties, III, 83 B.R. 791, 792 (Bankr. N.D. Okla. 1988) ("A clear showing that the plan is not confirmable justifies denial of the sufficiency of the disclosure statement to avoid the cost and delay of a fruitless venture").

12. Indeed, feasibility of the plan is often properly considered at the disclosure statement stage, not just confirmation. *See, e.g.*, In re Ferretti, 128 B.R. 16, 21 (Bankr. D.N.H. 1991) (denying approval of disclosure statement where plan contains inadequate basis for feasibility); Copy Crafters, 92 B.R. at 981 (denying approval of disclosure statement where plan premised on shaky valuation and speculative sale); In re Olive St. Invs., Inc., 117 B.R. 488, 490-01 (Bankr. E.D. Mo. 1990) (denying approval of disclosure statement based partly on lack of disclosure regarding feasibility of plan, including disclosure regarding factors affecting availability of financing and debtor's inability to obtain commitment for financing); S.E.T., 83 B.R. at 794 (denying approval of disclosure statement because of plan's lack of feasibility).

13. In the case at hand, the only way the Debtors' plan is even arguably feasible is through the securing of exit financing. In order to move toward confirmation, the Disclosure Statement should not be approved if the Debtors fail to obtain a firm commitment for such

2508465.5

6

financing prior to solicitation on the Proposed Plan. Failure to have financing in hand is a non-starter in the current economic climate.

14.    The inquiry, however, does not stop there. Even assuming a firm commitment for $35 million[1] in exit financing, it remains highly doubtful that the Debtors' plan is feasible. Any plan must provide for the full payment of the Debtors' obligations to Prepetition Senior Lenders, which currently stand at approximately $35 million. (Cash Collateral Order, ¶ 11(viii).) By the last possible time for plan consummation in late February, 2009, the Prepetition Senior Lender Claims will total approximately $34 million as a result of amortization through certain Adequate Protection Payments, which result in a net monthly reduction of approximately $270 thousand. It is unclear that the net proceeds of the Exit Facility (approximately $1 million) plus cash on hand, which continues to erode, will be sufficient to pay off the DIP Lender Claims (currently outstanding in an amount equal to at least $4 million), plus Administrative and Professional Fees, which continue to mount as the case lingers. In fact, the Administrative and Professional fees are likely to exceed $5 million[2]. On top of those expenses, the plan proposes (i) a twenty-five percent (25%) dividend payable to certain unsecured creditors on the effective date of the Proposed Plan, plus (ii) three semi-annual dividends equal to twenty-six and a half percent (26.5%) of such unsecured creditors' claims after the effective date of the Proposed Plan, plus

---

[1] At the recent hearing on October 27, 2008, regarding the Debtors' motion for extension of its exclusive periods, there was evidence presented that $35 million is currently the figure being discussed with the single prospect for exit financing.

[2] Based on the first round of interim fees covering the first four months of the case, and assuming two more interim periods, the total compensation to Debtors' counsel would be an estimated $3 million (first interim fee application of approximately $1 million), the total compensation to Committee Counsel would be an estimated $1.5 million (first interim fee application of approximately $500 thousand), the total compensation to the Debtors' financial advisors would be an estimated $500 thousand, plus the total compensation to the Committee's financial advisors would be an estimated $500 thousand. The sum of the foregoing estimates is $5.5 million.

2508465.5                                                      7

(iii) a $15 million dollar note in favor of certain bondholders to be serviced from cash flow. Considering the foregoing, feasibility is a major problem even at the Disclosure Statement stage.

15. Moreover, at least one court, In re One Canandaigua Properties, Inc., 140 B.R. 616 (Bankr. W.D.N.Y. 1992), has recognized that "…there are factors which might lead a bankruptcy court to exercise its discretion to rule on 'confirmability' issues prior to a hearing on confirmation, and thereby achieve economy of resources and time." 140 B.R. at 618 (collecting cases). One basis proposed by the Canandaigua court is "where the issue requiring resolution will have to be resolved sooner or later, and a sooner resolution is in the economic best interest of all parties." Id.

16. Before indulging in the expense and time of the solicitation and confirmation process, all parties' economic best interests are served through requiring a commitment for sufficient exit financing, which would produce a plan with a reasonable chance at consummation, let alone confirmation. Furthermore, given that the current conversations with the single prospect for exit financing contemplates exit financing at a level insufficient for a feasible plan, the Disclosure Statement should not be approved.

B.     The Disclosure Statement Does Not Contain Adequate Information

17. To approve the Disclosure Statement, the court must find that it contains adequate information to enable a reasonable creditor typical of the Debtors' claim holders to make an informed judgment about the plan. 11 U.S.C. § 1125(a). Adequate information is information of a kind, and in sufficient detail, as far as is reasonably practicable in light of the nature and history of the debtor and the condition of the debtor's books and records, that would enable a hypothetical reasonable investor typical of holders of claims or interests of the relevant class to

make an informed judgment about the plan. 11 U.S.C. § 1125(a)(1); Momentum Mfg. Corp. v. Employee Creditors Comm. (In re Momentum Mfg. Corp.), 25 F.3d 1132, 1136 (2d. Cir. 1994).

18.  Section 1125 of the Bankruptcy Code places a heavy burden on the debtor to provide information, and the disclosure statement hearing is to be the "heart" of the bankruptcy case. See H.R. Rep. No. 95-595, 95th Cong., 1st Sess. 408 (1977) (Section 1125 "is the heart of the consolidation of the various reorganization chapters found in current law."). The importance of full disclosure is emphasized because of the reliance placed on the disclosure statement by the creditors and the court. The principle of disclosure is "of prime importance" in the reorganization process, Momentum Mfg., 25 F.3d at 1136, and is the "pivotal concept of Chapter 11 reorganization," Kuniea v. St. Jean Fin. Inc., 233 B.R. 46, 54 (S.D.N.Y. 1999).

19.  A disclosure statement "must clearly and succinctly inform the average unsecured creditor what it is going to get, when it is going to get it, and what contingencies there are to getting its distribution," Ferretti, 128 B.R. at 19; see also In re Stanley Hotel, Inc., 13 B.R. 926, 929-30 (Bankr. D. Colo. 1981) ("…the information to be provided should be comprised of all those factors presently known to the plan proponent that bear upon the success or failure of the proposals contained in the plan").

20.  The Disclosure Statement provides little to no disclosure of the single most important contingency in these cases: the Exit Facility. A scant four sentences are given to this vital contingency:

> To fund the distributions under the Amended Plan and continued operations of the Reorganized Debtors, the Reorganized Debtors shall enter into the Exit Facility. The Debtors are currently engaged in negotiations with a financial institution that may provide the Exit Facility. As of the date hereof, however, that institution has not committed to provided the Exit Facility. The Exit Facility shall be approved concurrently with the confirmation of the Amended Plan.

(Disclosure Statement, Section IV.D.1). No further mention of the impact of not obtaining the exit financing is made in the Disclosure Statement. Indeed, the Feasibility section of the Disclosure Statement (Section X.G) makes no mention of the exit financing contingency. Neither does the Financial Information, Projections and Valuation Analysis, starting on page 58 of the Disclosure Statement.

21.     The Disclosure Statement fails to emphasize the speculative nature of the Proposed Plan, which is wholly contingent upon obtaining sufficient exit financing. And without a firm commitment for sufficient exit financing, the creditors are asked to make a bet on the Proposed Plan. It is an expensive bet given the costs and effort for solicitation, which can all be mooted instantly if the single proposed exit lender decides not to provide the exit facility. Accordingly, the Disclosure Statement should not be approved since the creditors of the Debtors' estates cannot make an informed decision without a firm commitment for a sufficient exit facility.

C.     Additional Disclosure Concerns

22.     The many references to agents for the Prepetition Senior Lenders, as well as the definitions used to describe the agents and the Prepetition Senior Lenders, especially in respect of the releases and exculpation provisions, should be specified so that the scope of such provisions is properly defined. The Debtors and the Prepetition Senior Lenders have discussed such provisions and reached agreement in principle, but the Proposed Plan does not reflect such agreement.

23.     The Proposed Plan does provide for the Debtors' indefeasible payment in full of the obligations to the Prepetition Senior Lenders, but several provisions require clarification that such payoff is without retention of setoff rights or causes of action against the Prepetition Senior

Lenders. Specifically, Section 6.13 of the Proposed Plan should be adjusted to reflect that setoff rights are not to be asserted against the Prepetition Senior Lenders. Similarly, Section 10.10 of the Proposed Plan should reflect that the Debtors' retention of causes of action and reservation of rights are not effective with respect to the Prepetition Senior Lenders in light of their payment in full under the Proposed Plan. The Debtors and Prepetition Senior Lenders have discussed both the setoff provision and the retention of causes of action provision, and reached a partial agreement in principle, but the Proposed Plan does not reflect such agreement.

24. The occurrence of the effective date of the Proposed Plan should be conditioned upon payment in full of the obligations owing to the Prepetition Senior Lenders. The parties have discussed such condition and reached an agreement in principle that the Proposed Plan would not be effective until payment of the Prepetition Senior Lenders in full, but the Proposed Plan does not reflect such agreement.

25. Section 11.2 of the Proposed Plan provides that the Debtors can waive conditions to the effectiveness of the Proposed Plan. This provision is not acceptable to the Prepetition Senior Lenders. There should be some oversight and approval rights, at least by the Prepetition Senior Lenders and the Committee, with respect to any such waiver. The parties have begun discussions regarding this provision but have not yet reached an agreement in principle.

**Reservation of Rights**

26. The Prepetition Senior Lenders have clearly indicated to the Debtors that they are unwilling to extend the Cash Collateral Deadline, and that failure to meet the Cash Collateral Deadline will constitute a Termination Event under the Cash Collateral Order. The Prepetition Senior Lenders are concerned about any further adjournment of the Hearing, especially in light of the increasingly compressed timing for the Debtors to meet the Cash Collateral Deadline by

confirming and consummating a plan of reorganization taking out the Prepetition Senior Lenders.

27.   The Prepetition Senior Lenders reserve the right to amend, supplement, or withdraw this objection prior to or at the hearing on the Motion, and reserve the right to oppose the Motion at the hearing on any grounds whatsoever, whether or not contained in this objection or any amendment or supplement hereto.

Based on the foregoing, the Agents object to the Motion and urge the Court to deny approval of the Disclosure Statement, and not to enter the proposed order.

Dated: New York, New York
November 26, 2008

                WALLER LANSDEN DORTCH & DAVIS LLP

                ___John C. Tishler_____
                John C. Tishler (*Pro Hac Vice*)
                Robert J. Welhoelter (*Pro Hac Vice*)
                511 Union Street, Suite 2700
                Nashville, Tennessee  37219-8966
                TEL: (615) 244-6380
                FAX: (615) 244-6804
                Email: John.Tishler@Wallerlaw.com
                Email: Robert.Welhoelter@Wallerlaw.com

                and

CARTER LEDYARD & MILBURN LLP

/s/ Aaron R. Cahn
Aaron R. Cahn
2 Wall Street
New York, New York 10005
TEL: (212) 238-8629
FAX: (212) 732-3232
Email: cahn@clm.com

*Counsel to Agents for Senior Prepetition Lenders*

## Certificate of Service

      I hereby certify that a true and correct copy of the foregoing pleading was served upon the following parties in accordance with that certain *Notice of Hearing of Debtors' Motion to (I) Approve the Debtors' Proposed Disclosure Statement, (II) Approve the Procedures to Solicit Acceptances of the Debtors' Proposed Plan, And (III) Schedule a Hearing and Establish Notice and Objection Procedures for Confirmation of the Debtors' Proposed Plan*, on this the 26th day of November, 2008.

Lexington Precision Corporation
(Attn: Michael A. Lubin)
800 Third Avenue, 15th Floor
New York, New York 10023

Weil, Gotshal & Manges, LLP
(Attn: Conray C. Tseng)
767 Fifth Avenue
New York, New York 10153

Office of the United States Trustee for the Southern District of New York
(Attn: Paul Schwartzberg)
33 Whitehall Street
New York, New York 10004

Andrews Kurth LLP
(Attn: Paul Silverstein)
450 Lexington Avenue
New York, New York 10017

O'Melveny & Meyers, LLP
(Attn: Gerald Bender)
Times Square Tower
7 Times Square
New York, New York 10036

                                                          /s/ Aaron R. Cahn
                                                        Aaron R. Cahn