**Hearing Date: December 19, 2008 at 10:00 a.m. ET**

ANDREWS KURTH LLP
Paul N. Silverstein (PS 5098)
Jonathan I. Levine (JL 9674)
450 Lexington Avenue, 15th Floor
New York, New York 10017
Telephone: (212) 850-2800
Facsimile: (212) 850-2929

Counsel to the Official Committee
of Unsecured Creditors

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------------------------------x
In re:                                              :    Chapter 11
                                                    :
LEXINGTON PRECISION CORP., et al.,                  :    Case No. 08-11153 (MG)
                                                    :
                                                    :
                    Debtors.                        :
---------------------------------------------------------------x

**OFFICIAL COMMITTEE OF UNSECURED CREDITORS OBJECTION
TO DEBTORS' MOTION FOR APPROVAL OF DISCLOSURE
STATEMENT AND SOLICITATION PROCEDURES**

TO:   THE HONORABLE MARTIN GLENN
      UNITED STATES BANKRUPTCY JUDGE

The Official Committee of Unsecured Creditors (the "Committee"), by its undersigned counsel, for its Objection to the Debtors' Motion for Approval of Disclosure Statement and Solicitation Procedures (Docket No. 446) (the "Motion"), respectfully represents:

**General**

1.      This Court has made it abundantly clear to the principal parties in interest that, in connection with the Court's consideration of the Debtors' proposed Disclosure Statement, the Court will not conduct a "mini-confirmation" hearing as to the merits of the Debtors' proposed Plan and whether it should be confirmed under Section 1129 of the Bankruptcy Code. As such,

NYC:184480.2

the Committee (and all other parties in interest) reserve their respective rights to address factual and legal issues relating to plan confirmation until a confirmation hearing.

2.  In that light, the Committee has provided the Debtors with comments to the Disclosure Statement, in the form of language inserts which attempt to make the proposed Disclosure Statement more neutral in tenor. The parties remain in discussion concerning such language. (By way of example, many of the Committee's comments insert the phrase "the Debtors believe" prior to a substantive statement in the proposed Disclosure Statement and likewise with respect to the Committee - - "the Committee believes.") Given that language negotiations among the parties are continuing, the Committee has not annexed its form of mark-up to this Objection at this time.

3.  The Committee has also provided the Debtors with forms of letters from the Committee to two classes of unsecured claims that the Committee proposes to mail, or have mailed, as part of the Debtors' solicitation package. Drafts of such letters have not been annexed to this Objection at this time.

**Specific Objections**

4.  In addition to the above-described comments provided to the Debtors, the Committee submits the following objections to the proposed Disclosure Statement and to the Debtors' proposed Voting and Solicitation Procedures (and reserves the right to amend and supplement all of such objections).

**Voting Default**

5.  The forms of ballots and the Debtors' proposed mechanics for disseminating such ballots to impaired classes of creditors must be appropriately finalized. For example, in its comments to the Debtors, the Committee objected to counting a ballot as an acceptance where

the returned ballot indicated neither an acceptance nor a rejection. The Debtors prefer that such a ballot be deemed an acceptance; the Committee disagrees and believes that the Debtors proposal violates Bankruptcy Rule 3018(c), which requires an acceptance or rejection to be "in writing." *See e.g., In re M. Long Arabians*, 103 B.R. 211, 215 (Bankr. 9th Cir. 1989) (stating that a creditor who fails to vote is not deemed to have either accepted or rejected the plan) (citing section 1126(c) and distinguishing *In re Ruti-Sweetwater, Inc.* 836 F.2d 1263 (10th Cir. 1988); *accord In re Westwood Plaza Apts., Ltd.* 192 B.R. 693, 696 (E.D. Tex. 1996).

**Compliance With Rule 3017(e)**

6.      Similarly, the Committee has not been apprised of the proposed procedures to be employed by the Debtors to satisfy the requirements of Rule 3017(e) of the Federal Rules of Bankruptcy Procedure to ensure that beneficial holders of debt securities receive their respective ballots and other materials. Presumably the Debtors will arrange to have solicitation packages sent directly to beneficial holders through their balloting agent. It is not clear to the Committee at this time that the procedures will ensure timely beneficial holder balloting. The procedures must, therefore, be clarified.

7.      In addition, in these cases (as in most other Chapter 11 cases), numerous claims against the Debtors have changed hands (*i.e.*, have been transferred in accordance with Rule 3001(e) of the Federal Rules of Bankruptcy Procedure). The present status of the claims "register" reflecting such transfer is not clear to the Committee. Whether the Debtors' claims register or records are sufficiently up to date to ensure that the present holders of claims receive ballots and solicitation packages must be clarified and assured.

3

**Plan Supplement, etc.**

8. The Committee believes that the "Plan Supplement" (Plan §§ 1.69 and 13.10) and the Plan Documents (Plan § 1.67), including the Charter Amendment (Plan § 1.16), all of which are referenced in the proposed Disclosure Statement, should be provided and disseminated with the solicitation package - - as opposed to a later time. In contrast, the Debtors propose to file (and somehow disseminate) such materials during the tail-end of the Plan voting period. The Committee submits that such materials should be disseminated with the solicitation package, because otherwise it is highly unlikely that such materials will be timely received by creditors.

**Releases**

9. Paragraphs 13-22 of the Objection to the Motion by the United States Trustee object to certain provisions of the Plan which provide for granting non-debtor releases, including releases for pre-petition conduct, acts and omissions. The Committee understands that such objection has largely been resolved in that the Debtors now propose that such releases would be voluntary. A voluntary release, however, is one where the affected creditor affirmatively and knowingly grants such a release. Here, the mechanics or implementation for the releases appear to be an "opt out" mechanism rather than an affirmative act. In other words, presently, unless creditors affirmatively opt out of such release, the release would be granted. The Committee submits that any release should be effected only through an affirmative check-off on the ballot as opposed to an "opt out" mechanism.

**Estimation of Asbestos Related Claims**

10. Among the language inserts the Committee provided to the Debtors was a sentence with respect to Asbestos Related Claims and their ability to vote on the proposed Plan: "The Committee believes that holders of Asbestos Related Claims do not have a right to vote on

4

NYC:184480.2

the Second Amended Plan as Asbestos Related Claims are not valid [or allowed] claims." The Debtors object to such language and, in their voting procedures portion of the Motion, seek to estimate "Asbestos Related Claims" for voting purposes at $1.00. No factual or legal basis exist for such estimation for voting purposes.

11. The Debtors have consistently stated that they have <u>no liability whatsoever</u> to Asbestos Related Claimants: "Lexington Precision is one of many defendants named in approximately 3,500 asbestos-related actions before the Court of Common Pleas of Cuyahoga County, Ohio. In each case, the plaintiffs generally allege that Lexington Precision or one of its predecessors produced a product containing asbestos, with which the plaintiffs came into contact during the course of their careers. None of the complaints allege any specific facts as to which products Lexington Precision allegedly produced that contained asbestos or the time of exposure. Lexington Precision does not believe that its predecessors manufactured any asbestos-containing products to which plaintiffs may have been exposed and has denied any liability with respect to the Asbestos Actions. ***To date, the Debtors have never been found liable on any Asbestos-Related Claims and approximately 1,000 cases have been dismissed***." (Disclosure Statement, at Page 32; emphasis added.) The Debtors have been clear that they have no liability in respect of the Asbestos Related Claims and that such claims are meritless. The Debtors, which are reporting companies under the Exchange Act of 1934, have never, ever mentioned the potential for liability in respect of Asbestos Related Claims, by footnote or otherwise, in their financial statements, SEC filings or discussion thereof.

12. The Debtors, however, seek to use the class of Asbestos Related Claims as an impaired accepting class under Section 1129(a)(10) of the Code, and then cram-down their plan

5

on creditors under Section 1129(b). The Debtors attempt to have the Court estimate the Asbestos Related Claims for voting purposes is highly inappropriate under the facts of this case.

13. As stated above, the Asbestos Related Claims are, at best, highly speculative. As a result, if such claims are to be estimated for purposes of voting, they should be estimated at zero. *See, e.g., Ryan v. Loui (In re Corey)*, 892 F.2d 829, 834 (9th Cir.1989) (affirming estimation of speculative claim at zero). Claims with little or no probability of success should be assigned a zero value in the estimation process. As stated by one court: "An estimator of claims must take into account the likelihood that each party's version might or might not be accepted by a trier of fact. The estimated value of a claim is then the amount of the claim diminished by probability that it may be sustainable only in part or not at all." *In re Windsor Plumbing Supply Co.*, 170 B.R. 503, 520 (Bankr. E.D.N.Y. 1994). Given that the Debtors have never been held liable on any asbestos claims lends to the probability that the Asbestos Related Claims, if litigated, would be similarly unsuccessful and should thus be assigned a zero probability. *E.g.*, *In re Pacific Gas & Elec. Co.*, 295 B.R. 635, 675-75 (Bankr. N.D. Cal. 2003) (estimating claims at zero where claimants could not establish any potential liability and damages were highly speculative). Moreover, the "backup" of insurance to pay such claims should close the book on this matter and Asbestos Related Claims should be estimated for voting purposes at zero.

14. The Debtors, however, as their sole legal support for assigning a value of $1.00 to the Asbestos Related Claims, rely on *Kane v. Johns-Mansville Corp. (In re Johns-Manville Corp.)*, 843 F. 2d 636, 647-48 (2d Cir. 1988), contending that "in the context of asbestos related claims assigning a $1.00 per vote method can be used when the support for the plan is overwhelming and an alternative voting method would not change the result." The present case, however, is nothing like *Johns-Mansville*. Here, unlike *Johns-Mansville*, support for the plan is

6

most underwhelming. Second, it is curious why the Debtors, who have always claimed that there is no liability whatsoever for asbestos related claims are now, while they maintain that position, nonetheless arguing that Asbestos Related Claims should be estimated for voting purposes. The Debtors are attempting to "gerrymander" or create an impaired accepting class because, absent an impaired accepting class of Asbestos Related Claims, the Debtors' Plan cannot go forward with a cram-down under Section 1129(b) of the Bankruptcy Code.[1]  It is the Debtors who are seeking estimation. The Asbestos Related Claimants have, for all intents and purposes, not even appeared in these cases.

**Lack of Exit Financing**

15.     The Pre-Petition Senior Lenders object to the proposed Disclosure Statement on the grounds that it makes little sense to spend the time, effort and money on a "fruitless endeavor" to proceed with a proposed Plan for which there is no exit financing and for which the proposed exit financing that the Debtors hope to obtain is, in any event, inadequate. As this Court is aware, the Committee, as a statutory fiduciary to all unsecured creditors, has expressed its view that the Debtors lack the ability to obtain exit financing and that the Plan process is a charade by the Debtors geared solely at maintaining current stockholders'/management's (*i.e.,* Messrs. Lubin and Delano) control over the Debtors. The Committee agrees with the Pre-Petition Secured Lenders that no solicitation of votes on a Plan should be had absent exit financing. This Court will no doubt address this issue as it sees fit and further comment by the Committee is not additive on this point.

16.     More importantly, however, the Prepetition Secured Lenders' Objection states that they "are not willing to extend the terms of the Cash Collateral Order beyond [February 25,

---

[1] Where the classification scheme is nothing more than a mask for the voting process, the classification scheme should not be approved. *In re Greystone III Joint Venture*, 995 F.2D 1274, 1279 (5th Cir. 1991).

NYC:184480.2

2009]." The Prepetition Secured Lenders thus seem to suggest that this Court cannot modify or in any way deal with the claims held by the Prepetition Secured Lenders (and their liens on cash collateral) if and when the Debtors' efforts to confirm their ill-conceived proposed Plan fails. The Committee respectfully submits that this Court has, and must exercise, the authority and jurisdiction to effect necessary modifications to the Cash Collateral Order at that time.

WHEREFORE, the Committee respectfully requests that this Court sustain its objections set forth above and grant such other relief as is just and proper.

Dated: New York, New York
December 16, 2008

ANDREWS KURTH LLP

By: /s/ Paul N. Silverstein
Paul N. Silverstein (PS 5098)
Jonathan I. Levine (JL 9674)
450 Lexington Avenue, 15th Floor
New York, New York 10017
Telephone: (212) 850-2800
Facsimile: (212) 850-2929

Counsel to the Official Committee of
Unsecured Creditors

NYC:184480.2