WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007
Richard P. Krasnow
Adam P. Strochak

Attorneys for Debtors
and Debtors in Possession

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

```
-------------------------------------------------------------x
                                                             :
In re                                         :    Chapter 11 Case No.
                                                             :
LEXINGTON PRECISION CORP., et al.,            :    08-11153 (MG)
                                                             :
         Debtors.                             :    (Jointly Administered)
                                                             :
-------------------------------------------------------------x
```

**DEBTORS' THIRD MOTION FOR AN ORDER
PURSUANT TO SECTION 1121(d) OF THE BANKRUPTCY
CODE EXTENDING THE DEBTORS' EXCLUSIVITY PERIODS**

TO THE HONORABLE MARTIN GLENN,
UNITED STATES BANKRUPTCY JUDGE:

Lexington Precision Corporation and Lexington Rubber Group, Inc., as debtors and debtors in possession, (collectively, "Lexington" or the "Debtors") move pursuant to 11 U.S.C. § 1121(d) for a 90-day extension of the exclusive period to file a plan of reorganization and a 120-day extension of the exclusive period to solicit acceptances of a plan of reorganization and respectfully represent:

**Background**

1. On April 1, 2008 (the "Commencement Date"), each of the Debtors commenced with this Court a voluntary case under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code"). Sections 1107(a) and 1108 of the Bankruptcy Code authorize

the Debtors to continue to operate their businesses and manage their properties as debtors in possession.

2. The Debtors' chapter 11 cases have been consolidated for procedural purposes only and are being jointly administered pursuant to Rule 1015(b) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"). On April 11, 2008, the United States Trustee for the Southern District of New York appointed the statutory committee of creditors (the "Creditors' Committee").

3. When these cases began in April of 2008, the Debtors anticipated a relatively brief stay in chapter 11 to de-leverage the company's balance sheet without the need for operational restructuring. This was reflected in a schedule for 330-day chapter 11 cases negotiated with the Debtors' prepetition secured lenders (the "Prepetition Lenders") and embedded in the Cash Collateral Order.[1] The Cash Collateral Order set forth milestones that include (i) the filing of a chapter 11 plan, (ii) the filing of a proposed disclosure statement, and (iii) consummation of a chapter 11 plan. Under the Cash Collateral Order, the Debtors' use of cash collateral during these cases expires on the earlier of (a) February 25, 2009 and (b) the expiration of the Debtors' right to exclusively propose a chapter 11 plan.

4. The Debtors worked diligently to adhere to the 330-day schedule originally anticipated. They filed their Joint Plan of Reorganization, dated June 30, 2008 (the "Plan"),[2] which provides for payment in full to all creditors and for a return for existing equity

---

[1] Final Order Authorizing Debtors to Use Cash Collateral, Granting Adequate Protection to Prepetition Secured Lenders, and Authorizing Postpetition Financing, dated April 17, 2008 [Docket No. 61].

[2] Debtors' Joint Plan of Reorganization Under Chapter 11 of the Bankruptcy Code, dated June 30, 2008 [Docket No. 196].

holders. On August 8, 2008, the Debtors filed an Amended Joint Plan of Reorganization[3] and a proposed disclosure statement thereto.[4] On October 24, 2008, the Debtors moved for approval of the disclosure statement. The Debtors subsequently filed a Second Amended Joint Plan of Reorganization (the "Second Amended Plan")[5] and a revised disclosure statement thereto (the "Proposed Disclosure Statement").[6]

       5.      Notwithstanding extensive negotiations, there remains a gap between the Debtors' views on valuation and those of the Creditors' Committee and a consensual plan has proven to be elusive thus far. The Debtors and the Creditors' Committee do agree, however, that the value available for distribution exceeds by a wide margin the approximately $36 million in secured debt owed to the Prepetition Lenders and the $4 million owed to the DIP Lenders. Although a consensual plan is the Debtors' preference, they were prepared to advance the plan process in accordance with the originally-contemplated schedule and have the Court adjudicate the valuation dispute. To that end, the Debtors scheduled a hearing for January 7, 2009 to consider approval of the Proposed Disclosure Statement.

       6.      As a result of the dramatic deterioration in the automotive original equipment manufacturing ("OEM") segment over the past several months, the Debtors have concluded that, in order to maximize the value of the Debtors' estates for the benefit of all

---

[3] Debtors' Amended Joint Plan of Reorganization under Chapter 11 of the Bankruptcy Code, dated August 8, 2008 [Docket No. 305].

[4] Proposed Disclosure Statement for Debtors' Amended Joint Plan of Reorganization under Chapter 11 of the Bankruptcy Code, dated August 8, 2008 [Docket No. 306].

[5] Exhibit A to the Proposed Disclosure Statement for Debtors' Second Amended Joint Plan of Reorganization under Chapter 11 of the Bankruptcy Code, dated December 17, 2008 [Docket No. 489].

[6] Proposed Disclosure Statement for Debtors' Second Amended Joint Plan of Reorganization under Chapter 11 of the Bankruptcy Code, dated December 17, 2008 [Docket No. 489].

parties-in-interest, it will be necessary to undertake an operational restructuring of their connector seals business, which primarily serves the automotive OEM segment. For the year ended December 31, 2008, the Debtors estimate that the Vienna, Ohio facility, which houses the connector seals business, generated net sales of approximately $13.7 million and EBITDA of less than $0.5 million.

7. The Debtors have developed an operational restructuring plan for the closing of the Vienna, Ohio facility and the transfer of a portion of the connector seals business to the Jasper, Georgia, Rock Hill, South Carolina, and North Canton, Ohio facilities. The Debtors have also produced a financial forecast reflecting the implementation of this plan, which indicates that the operational restructuring should generate net cash proceeds of approximately $6.6 million, after the costs of completing the transfers, and that the business transferred to the Debtors' other facilities should generate net sales of approximately $11.0 million and EBITDA of approximately $3.7 million in 2010.

8. The Debtors believe that the implementation of this operational restructuring plan will not only serve to maximize value but will also significantly enhance their ability to consummate the new secured credit facility that is critical to their ability to emerge from chapter 11, regardless of what the enterprise value of the Debtors is determined to be and what the exact breakdown of the ownership interests in the Debtors may be. The Debtors project that the implementation of the operational restructuring plan would have the two-pronged effect of reducing their total financing requirements (by converting assets to cash) and increasing their ongoing cash flows. Based upon their discussions with prospective exit lenders, the Debtors believe that substantial progress toward completion of such plan will improve their ability to complete their exit financing on satisfactory terms.

9. Because the Debtors view the exit financing as a lynch-pin to the reorganization, the Debtors requested and the Court granted an adjournment of the hearing to approve the Proposed Disclosure Statement to February 9, 2009. The Debtors made the decision to defer the plan process reluctantly but believe it is necessary due to the current economic conditions —a situation that no one anticipated when the chapter 11 cases began. Consolidation of the connector seals business will require several months to complete and the Debtors are hopeful that demonstration of significant progress on this operational restructuring over the next few months will enhance their ability to obtain an exit financing commitment and remove this obstacle from the plan of reorganization process. This extension will necessitate further authorization for use of cash collateral. The Debtors intend to pursue a consensual extension of the use of cash collateral through negotiations with the Prepetition Lenders. If a consensual extension is not possible, the Debtors will move the Court for appropriate relief.

## Jurisdiction

10. This Court has jurisdiction to consider and grant the relief requested herein pursuant to 28 U.S.C. §§ 157 and 1334 and the Standing Order M-64 of the United States Bankruptcy Court for the Southern District of New York, dated July 10, 1984 (Ward, Acting C.J.). This is a core proceeding pursuant to 28 U.S.C. § 157(b). Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

## Relief Requested

11. To preserve the ongoing plan process without the deterioration and disruption of the Debtors' businesses that is likely to be caused by the filing of competing plans by non-debtor parties, the Debtors request a 90-day extension[7] of the exclusive period to file a

---

[7] Because a 90th day falls on Sunday, April 26, 2009, the Debtors are seeking a 91-day extension to Monday, April 27, 2009.

5

plan of reorganization[8] and a 120-day extension of the exclusive periods to solicit the acceptances thereof through and including April 27, 2009 and June 25, 2009, respectively, without prejudice to the Debtors' right to seek further extensions of such periods as may be appropriate under the circumstances. Unless extended, the Debtors' exclusive period to file a chapter 11 plan and solicit acceptances thereof will expire January 26, 2009 and February 25, 2009, respectively.

## Legal Standard

12. Section 1121(b) of the Bankruptcy Code provides for an initial period of 120 days after commencement of a chapter 11 case during which a debtor has the exclusive right to propose and file a chapter 11 plan (the "Exclusive Filing Period"). 11 U.S.C. § 1121(b). Section 1121(c)(3) of the Bankruptcy Code provides that, if a debtor files a plan within the 120-day Exclusive Filing Period, it has a period of 180 days after the commencement of the case to obtain acceptances of such plan, during which time competing plans may not be filed (the "Solicitation Period," and together with the Exclusive Filing Period, the "Exclusive Periods"). Id. at § 1121(c)(3). Pursuant to section 1121(d) of the Bankruptcy Code, the Court may extend the Exclusive Filing Period and the Solicitation Period for cause shown. Id. at § 1121(d).

13. Section 1121(d) of the Bankruptcy Code authorizes a court to further extend a debtor's Exclusive Periods for cause. Although the Bankruptcy Code does not define the term "cause," the legislative history indicates it is intended to be a flexible standard to balance the competing interests of a debtor and its creditors. See H.R. Rep. No. 95-595, at 231-32 (1978), reprinted in 1978 U.S.C.C.A.N. 5787, 6191 (noting that Congress intended to give

---

[8] Although the Debtors already have filed a proposed plan, they seek an extension of the exclusive period to file a chapter 11 plan out of an abundance of caution.

6

Bankruptcy Courts flexibility to protect a debtor's interests by allowing unimpeded opportunity to negotiate settlement of debts without interference from other parties in interest).

14.     Congress built flexibility into section 1121 of the Bankruptcy Code to give the debtor an adequate opportunity to stabilize its business operations at the outset of its chapter 11 case and to negotiate an effective plan of reorganization with creditors. In re Newark Airport/Hotel Ltd. P'ship., 156 B.R. 444, 451 (Bankr. D.N.J.), aff'd, 155 B.R. 93 (D.N.J. 1993) (noting that Congress designed chapter 11 provisions to enable a debtor to remain in control for some period of time, thereby making reorganization an attractive alternative to financially troubled companies); Gaines v. Perkins (In re Perkins), 71 B.R. 294, 297-98 (W.D. Tenn. 1987) (Congress designed section 1121 to give the debtor time to reach an agreement with its creditors regarding a plan of reorganization).

15.     In determining whether cause exists to extend the Exclusive Periods, a court may consider a variety of factors to assess the totality of circumstances in each case. See In re Dow Corning Corp., 208 B.R. 661, 664, 670 (Bankr. E.D. Mich 1997); In re Express One Int'l, Inc., 194 B.R. 98, 100 (Bankr. E.D. Tex. 1996); In re McLean Indus., Inc., 87 B.R. 830, 834 (Bankr. S.D.N.Y. 1987) (identifying the factors used by courts to determine whether cause exists to extend exclusivity).

16.     Courts have had held that the relevant factors include:

    a.    the size and complexity of the case;
    b.    the necessity for sufficient time to permit the debtor to negotiate a plan of reorganization and prepare adequate information;
    c.    the existence of good faith progress toward reorganization;
    d.    the fact that the debtor is paying its bills as they become due;
    e.    whether the debtor has demonstrated reasonable prospects for filing a viable plan;
    f.    whether the debtor has made progress in negotiations with its creditors;
    g.    the amount of time which has elapsed in the case;

    h. whether the debtor is seeking an extension of exclusivity in order to pressure creditors to submit to the debtor's reorganization demands; and

    i. whether an unresolved contingency exists.

In re Adelphia Comm'n Corp., 352 B.R. 578, 587 (Bankr. S.D.N.Y. 2006); see, e.g., McLean Indus., 87 B.R. at 834 (identifying a number of similar factors); accord In re Express One Int'l, Inc., 194 B.R. at 100 (identifying four of the nine above-quoted factors, among others, as relevant in determining whether "cause" exists to extend exclusivity); In re United Press Int'l, Inc., 60 B.R. 265, 269 (Bankr. D.D.C. 1986) (holding that the debtor showed "cause" to extend its exclusivity period based upon certain of the above-quoted factors). Notably, "displeasure with a plan on file is not one of the enumerated factors, and is not a basis for terminating exclusivity. Nor, without more, is creditor constituency unhappiness with a debtor's plan proposals, with or without a formal plan on file." Adelphia Comm'n Corp., 352 B.R. at 587.

### Cause Exists to Extend Exclusivity

17. Application of the foregoing standards to the facts of these cases demonstrates that cause exists to grant a further extension of exclusivity. Most importantly, an extension of exclusivity is necessary to allow the Debtors adequate time to consolidate and restructure the connector seals business. This operational restructuring is necessitated by unprecedented reductions in production in the automobile OEM sector as the industry downturn of mid-2008 metastasized into a crisis in the fourth quarter.

18. Specifically, the Debtors intend to move certain of the molding presses and other machinery associated with their connector seals business in Vienna, Ohio to their other three manufacturing facilities located at North Canton, Ohio, Rock Hill, South Carolina, and Jasper, Georgia. Prior to and during this transition period, the Debtors will increase production levels so that there is no interruption in supply to their customers. The Debtors estimate that the

operations at the Vienna facility will be complete by the end of the second quarter of 2009 and that the consolidation of operations will take place over the next several months as customers utilize the "inventory banks" built during the first half of 2009. Increased production levels to build inventory for customers during the transition will result in increased cash flow for the Debtors and, once the consolidation is complete, the connector seals business will be able to operate profitably even at the lower production levels now forecasted due to the reduction in operating costs that will result from the elimination of the overhead structure of a stand-alone connector seals facility. The Debtors estimate the connector seals business remaining after the consolidation will generate incremental EBITDA of approximately $3.7 million in 2010 on an annualized basis.

19. The Debtors are acting responsibly to return their connector seals business to profitability for the benefit of all stakeholders, but doing so will require more time in chapter 11 than originally anticipated. The general economic crisis and the specific problems of the OEM automotive industry thus have made these cases more complex than the balance-sheet restructuring contemplated at the outset, and that additional and unanticipated complexity is cause for an extension of exclusivity.

20. The need for an extension of exclusivity is not the result of any lack of diligence by the Debtors. The Debtors took cost-control measures in the fall of 2008 as the OEM sector began to unravel, but it was only in late 2008, as production forecasts continued to fall, that the need for structural change to the connector seals business became apparent. And it was only in the last two weeks of 2008 that the Debtors concluded that an exit financing commitment sufficient to fund the payments required under the Second Amended Plan and to provide

9

adequate working capital for the business likely was not likely to be forthcoming until they could demonstrate meaningful progress on their plan to consolidate the connector seals business.

21. Through discussions with the Creditors' Committee and the Prepetition Lenders, the Debtors have made material modifications to the Second Amended Plan that satisfy the claims of the Prepetition Lenders and narrow the disagreement between the Debtors and the Creditors' Committee regarding on a plan structure by providing for repayment of the senior subordinated notes with preferred stock in the reorganized company. The Debtors have also accepted and incorporated many of the Creditors' Committee's comments into the Proposed Disclosure Statement. Both documents also include revisions arising from discussions with other parties, including, the Prepetition Lenders and the holders of certain asbestos-related claims.

22. The foregoing demonstrates that the Debtors have made good faith efforts to move these chapter 11 cases forward by exchanging extensive financial information with the Creditors' Committee, proposing a plan of reorganization that would pay creditors in full, negotiating with the Creditors' Committee and holders of asbestos personal injury claims, preparing a disclosure statement, and pursuing confirmation of the plan. The Court already is familiar with the history of information exchange and negotiations between the Debtors and the Creditors' Committee. Since the last hearing on extension of exclusivity in October of 2008, the Debtors and the Creditors' Committee have exchanged settlement proposals. While there remains a significant gap between the Debtors' and the Creditors' Committee's views on value, the Debtors continue to believe that during the time required for the implementation of the operational restructuring it will be possible for the parties to narrow the gap.

23. The Debtors have complied with all of their obligations under the Bankruptcy Code and Bankruptcy Rules including (a) the filing of their (i) schedules of assets of liabilities, (ii) statements of financial affairs, and (iii) monthly operating reports, and (b) the payment of all postpetition obligations in the ordinary course of their business.

24. Notwithstanding the current abysmal economic conditions, the core of the Debtors' operations continues to perform admirably. For 2008, the Debtors estimate that the insulators business, which primarily serves the automotive aftermarket, will generate net sales of $32.1 million and EBITDA of $7.8 million, or 24.3% of net sales, and the medical business will generate pro forma net sales of $16.7 million and pro forma EBITDA of $5.0 million, or 30.2% of net sales. For 2009, the Debtors forecast that the insulators business will generate net sales of $36.7 million and EBITDA of $8.7 million, or 23.6% of net sales, and the medical business will generate net sales of $20.9 million and EBITDA of $6.6 million, or 31.5% of net sales.

25. The connector seals business has been afflicted by the same volume issues that have affected every other supplier to the automotive OEM sector and, consequently, its contribution to the overall EBITDA of the Debtors has been minimal. The Debtors have devised a strategy that will convert this business into a significant contributor, even at the depressed volume levels the industry is forecasting. The Debtors believe that the expectation of this strategy will dramatically improve their chances of completing the exit financing that is critical to the consummation of the Second Amended Plan. The Debtors submit that they should be afforded the time to complete the shut-down of the Vienna facility and commence the migration of the remaining connector seals business to their other facilities, without the disruption that would inevitably result from the pursuit of competing reorganization plans.

11

26. The Debtors are continuing their discussions with prospective exit lenders and believe that they will be able to obtain a satisfactory exit financing commitment once they demonstrate progress on the consolidation plan. Once the Debtors are confident in their prospects for exit financing, the Debtors will quickly move forward with the approval of the Proposed Disclosure Statement and confirmation of the Second Amended Plan. Thus, the requested extension will serve to protect and preserve the substantial progress made in these cases to date and provide the Debtors additional time to continue negotiation with the Creditors' Committee in an effort present a consensual plan of reorganization for the Court's approval.

27. Indeed, in Adelphia, the Bankruptcy Court for the Southern District of New York noted that, when a plan is on file and proceeding toward a confirmation hearing, as it is in the Debtors' chapter 11 cases, it is "exactly the wrong time to be terminating exclusivity." 352 B.R. at 590. Further extending the Exclusive Periods will be in line with the purpose of Exclusive Periods in general – i.e., to provide the Debtors with a full and fair opportunity to rehabilitate their businesses and negotiate, develop, propose, confirm, and consummate a plan of reorganization.

28. Based upon the foregoing, sufficient cause exists for the Court to grant the requested extension of the Debtors' Exclusive Periods to protect the ongoing plan process and enable the Debtors to complete their reorganization.

## Notice

29. No trustee or examiner has been appointed in these chapter 11 cases. Notice of this motion has been provided to (i) the United States Trustee for the Southern District of New York, (ii) the attorneys for the agents for the Debtors' Prepetition Lenders, (iii) the attorneys for the Debtors' postpetition lenders, (iv) the attorneys for the Creditors' Committee,

and (v) all other parties that have requested notice in these chapter 11 cases. The Debtors submit that no other or further notice need be provided.

WHEREFORE the Debtors respectfully request entry of an order granting the relief requested herein and such other and further relief as is just.

Dated: January 12, 2009
         New York, New York

/s/ Adam P. Strochak
Richard P. Krasnow
Adam P. Strochak

WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone:   (212) 310-8000
Facsimile:    (212) 310-8007
Attorneys for Debtors
and Debtors in Possession

13

**UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK**

-----------------------------------------------------------x
:
In re                                              :        Chapter 11 Case No.
                                                   :
**LEXINGTON PRECISION CORP., et al.,**             :        08-11153 (MG)
                                                   :
　　　　　　　Debtors.                              :        (Jointly Administered)
                                                   :
-----------------------------------------------------------x

**ORDER PURSUANT TO SECTION 1121(d) OF THE BANKRUPTCY CODE
GRANTING THE THIRD EXTENSION OF THE DEBTORS' EXCLUSIVITY PERIOD**

Upon the motion, dated January 12, 2009 (the "Motion"), of Lexington Precision Corporation and Lexington Rubber Group, Inc. (together, the "Debtors"), pursuant to section 1121(d) of title 11 of the United States Code (the "Bankruptcy Code"), for an extension of the period during which the Debtors have the exclusive right to file a chapter 11 plan to April 27, 2009 (the "Exclusive Filing Period") and the period within which the Debtor may solicit acceptances thereof to June 25, 2009 (the "Solicitation Period" and together with the Exclusive Filing Period, the "Exclusive Periods"), all as more fully described in the Motion; and the Court[1] having jurisdiction to consider the Motion and the relief requested therein in accordance with 28 U.S.C. § 1334 and the Standing Order of Referral of Cases to Bankruptcy Court Judges of the District Court for the Southern District of New York, dated July 19, 1984 (Ward, Acting C.J.); and consideration of the Motion and the relief requested therein being a core proceeding pursuant to 28 U.S.C. § 157(b); and venue being proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409; and due and proper notice of the Motion having been provided; and no other notice need be provided; and such relief being in the best interest of the Debtors, their estates and creditors; and after due deliberation, and sufficient cause appearing therefor, it is hereby

---

[1] Capitalized terms used herein but not defined have the meanings ascribed in the Motion.

ORDERED that the Motion is granted; and it is further

ORDERED that the Debtors' Exclusive Filing Period is extended through and including April 27, 2009; and it is further

ORDERED that the Debtors' Solicitation Period is extended through and including June 25, 2009; and it is further

ORDERED that the extension of the Exclusivity Periods granted herein is without prejudice to such further requests that may be made pursuant to section 1121(d) of the Bankruptcy Code.

Dated: February ___, 2009
      New York, New York

_____
UNITED STATES BANKRUPTCY JUDGE