LAZER, APTHEKER, ROSELLA
      & YEDID, P.C.
Attn: Joseph C. Savino, Esq. (JS8884)
Attorneys for Capital One Leverage
    Finance Corporation
225 Old Country Road
Mineola, New York 11501
(631) 761-0855

Hearing Date:
February 9, 2009
2:00 p.m.

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------------X

In re:

LEXINGTON PRECISION CORP., et al.,

                  Debtors.

-----------------------------------------------------------------------X

**ATTORNEY'S
AFFIRMATION IN
SUPPORT OF
MOTION TO QUASH
SUBPOENA**

Chapter 11
Case No. 08-11153 (mg)

      JOSEPH C. SAVINO, an attorney duly admitted to practice before the United States Bankruptcy Court, Southern District of New York, hereby affirms the following to be true under the penalties of perjury:

      1.    I am a partner of the firm of Lazer, Aptheker, Rosella & Yedid, P.C., attorneys for Capital One Leverage Finance Corporation ("CAPITAL ONE"). I submit this affirmation in support of CAPITAL ONE's application, pursuant to Rule 9016(C)(3)(A) and (B) of the Federal Rules of Bankruptcy Procedure ("Rule"), seeking to quash a subpoena, dated January 16, 2009 ("Subpoena"), served upon it by the attorney for the Official Committee of Unsecured Creditors ("Committee").

2.    I am fully familiar with the facts and circumstances hereinafter set forth and know them to be true, except for those stated to be upon information and belief, and as to those matters, I believe them to be true.

3.    On or about April 11, 2008, the Debtor, Lexington Precision Corp. and its wholly-owned subsidiary, Lexington Rubber Group, Inc. (the "Debtors"), filed for protection under Chapter 11 of the Bankruptcy Code.  Subsequently, the Committee was formed which now seeks, among other things, emails and correspondence from CAPITAL ONE pertaining to a purported credit facility between CAPITAL ONE and the Debtors, as referenced in a letter dated July 29, 2008 ("July 29th letter") which the Debtors did not execute and which expired on August 31, 2008.  A copy of the July 29th letter is annexed hereto and made a part hereof as Exhibit A.  For the reasons that follow, it is respectfully requested that this Court issue an order quashing the Subpoena in its entirety.

4.    On or about January 16, 2009, the attorney for the Committee issued the Subpoena, a copy of which is annexed hereto and made a part hereof as Exhibit B, seeking the following documents:

1.    All emails and correspondence between Capital One and the Debtors regarding any credit facility, line of credit, or other financing that Capital One may provide to Debtors as part of the Debtors' exit from Chapter 11 bankruptcy, including but not limited to the Senior Secured Credit Facility referenced in Stephen Altneu's July 29, 2008 letter to Michael A. Lubin and Warren Delano.

2.    All emails and correspondence between Capital One and Campbell regarding any credit facility, line of credit,

2

or other financing that Capital One may provide to Debtors as
part of the Debtors' exit from Chapter 11 bankruptcy,
including but not limited to the Senior Security Credit Facility
referenced in Stephen Altneu's July 29, 2008 letter to Michael
A. Lubin and Warren Delano.

With respect to document request number 2, while there is a definition of "Campbell,"

there is no connection between Campbell and the Debtor described in the Subpoena. A

review of the Disclosure Statement reveals that Campbell is W.Y. Campbell & Company,

the Debtors' financial advisor ("Campbell").

5.    As an initial matter, a review of the docket of this bankruptcy case does not

reveal that the Committee sought or obtained a Rule 2004 Order from this Court

authorizing the issuance of the Subpoena.  While the attorney for the Committee can

issue a subpoena under Rule 9016(a)(3)(A), it is respectfully submitted that an Order

must first be obtained under Rule 2004(c) or, if seeking documents only, the subpoena

should be issued on Form B256.  Here, the Committee neither obtained a Rule 2004

Order nor used Form B256.

6.    More important, inasmuch as there is no pending adversary proceeding, the

documents sought by the Subpoena are irrelevant to whether or not the Debtors' second

amended plan of reorganization ("Plan") should be confirmed because the Debtors do not

identify CAPITAL ONE, either in their Plan or Disclosure Statement, both filed in mid-

December of 2008, as the lender who is to provide the "New Secured Credit Facility."

Since the Debtors did not execute the July 29th letter and said letter expired on August

3

31, 2008, your affirmant finds it difficult to believe that CAPITAL ONE is the potential lender alluded to in the Disclosure Statement.

7.    In addition to being irrelevant, the Subpoena subjects CAPITAL ONE to undue burden under Rule 9016(3)(A)(iv) because CAPITAL ONE is a non-party and the information sought from CAPITAL ONE is information readily available from the Debtors and/or their agents and attorneys and Campbell.  Specifically, aside from the terms contained in the July 29th letter, upon information and belief the balance of the information set forth in the July 29th letter was from preliminary conversations had with officers of the Debtors and the meeting in Ohio had with Michael Lubin and/or Warren Delano referenced in the first sentence of the July 29th letter.  There is nothing in the July 29th letter to even suggest that CAPITAL ONE had discussions with Campbell that did not also involve the officers of the Debtors.

8.    Furthermore, the July 29th letter, by its terms, was only an expression of CAPITAL ONE's willingness to proceed, and not a commitment to finance.  A commitment to finance would only have been issued after CAPITAL ONE underwriting personnel performed a credit investigation and obtained final approval from their superiors as well as compliance by the Debtors with the other conditions precedent stated in the July 29th letter which included, among other things, a final order of this Court confirming the Debtors' Plan.

9.    Upon information and belief, since the Debtors did not execute the July 29th letter and it expired, no credit investigation was completed and no additional

4

material discussions, if any, regarding any credit facility were had.  As a result, since the July 29th letter summarized all prior discussions, all the Committee would learn from CAPITAL ONE that it could not learn from the Debtors or Campbell is CAPITAL ONE's credit analysis and decision making process which are completely irrelevant and protected under Rule 9016(3)(B)(i).

10.    Finally, inasmuch as there was no letter accompanying the Subpoena or any reference in the Subpoena explaining its purpose, CAPITAL ONE need not presume that the purpose is to impeach witnesses or otherwise inquire into the truthfulness of the Debtors' written and oral statements which pertain to exit financing.  As such, the wide berth given discovery requests that pertain to issues of credibility has no applicability to this situation.

WHEREFORE, based on the foregoing, CAPITAL ONE respectfully requests that this Court grant its application to quash the Committee's subpoena, together with such other and further relief as to this Court seems just, proper and equitable.

Dated:    Melville, New York
          January 20, 2009

LAZER, APTHEKER, ROSELLA
& YEDID, P.C.

By: _____
     JOSEPH C. SAVINO (JS8884)
Attorneys for Capital One Leverage
     Finance Corporation
225 Old Country Road
Melville, New York 11747
(631) 761-0800

# EXHIBIT A



July 29, 2008


Mr. Michael A. Lubin
Chairman of the Board
Mr. Warren Delano
President
Lexington Precision Corporation
800 Third Avenue
New York, NY 10022

Dear Messrs Lubin and Delano:

Thank you for providing us with the opportunity to visit Lexington's Ohio facilities. All five members of the Capital One Leverage Finance Corp. ("COLF" or "Lender") team were impressed with Lexington's capabilities and the trip reinforced our interest in moving forward with a financing for Lexington's business post-chapter 11.

It is our understanding that, in connection with its plan to emerge from chapter 11, Lexington desires to refinance its existing senior credit facilities with Capital Source Finance LLC with up to a $39,500,000 senior secured credit facility to be provided by COLF. We understand that the owned real estate locations in Lakewood, NY and Ellijay, GA are targeted to be sold within approximately 30 months of the Closing, and 100% of the net proceeds will be used to repay the new senior secured facility.

Based upon our understanding of the financial and collateral information you have provided us to date, we are pleased to provide you the following financing proposal. It should be emphasized that the following is only a letter of proposal and it is not intended nor should it be construed as a commitment on the part of COLF.

**BORROWERS**:
Lexington Precision Corporation and each of its operating subsidiaries (the "Company" or "Borrower").

**GUARANTORS:**
Any parent, non-borrower subsidiary and any newly created holding company shall guarantee the obligations of the Borrower.

**LENDER:**

COLF alone or as Agent with other financial institutions acceptable to Lender and reasonably acceptable to the Borrower. COLF intends to underwrite the entire credit facility subject to a plan of reorganization (the "Plan") satisfactory to COLF, in its sole discretion and the fulfillment by the Borrower of all the conditions precedent set forth on page 7. COLF would have the right to sell a part or all of the transaction to a third party.

**CREDIT FACILITY:**

A $39,500,000 Senior Secured Credit Facility (the "Credit Facility") consisting of a Revolving Credit Facility, a Term Loan, Capital Equipment Line, and a Bridge Term Loan subject to the availability of eligible collateral as outlined below. All Loans to the Borrower by Lender will be cross-collateralized with all pools of collateral, cross-defaulted and cross-guaranteed.

1. A $17,500,000 forty-eight (48) month Revolving Credit Facility providing for loan availability of up to (i) eighty-five percent (85%) of eligible accounts receivable, not more than 90 days from original invoice date; plus (ii) the lesser of: a) sixty-five percent (65%) of eligible raw material, work-in -process and finished goods inventory (lower of FIFO cost or market) and b) eighty-five percent (85%) of the appraised net orderly liquidation of inventory performed by an appraiser acceptable to the Lender. Total inventory availability will be limited to $7,000,000 in the aggregate at any time. The Revolving Credit Facility will include a $2,000,000 sub-limit for letters of credit fully reserved from availability as used.

   Eligible receivables shall include only accounts receivable to customers located in the United States, Puerto Rico, or Canada and (i) foreign accounts where payment is through a letter of credit naming the Borrower as beneficiary and (ii) specific foreign accounts approved by the Lender not to exceed $1,000,000 in the aggregate. In all cases, eligible receivables must arise out of sales made in the ordinary course of business by Borrower to a person, firm or corporation which is not an affiliate of Borrower or controlled by an affiliate of Borrower. Ineligible receivables would include any disputed accounts, chargebacks, amounts in excess of approved concentration limitations to a single account debtor, receivables over 90 days from invoice date including a 50% cross-age rule, foreign accounts not supported by a letter of credit or specifically approved by Lender, and bankrupt or insolvent accounts. In addition, a dilution reserve shall be established equal to the level of dilution in excess of 5% of sales.

   Eligible inventory would consist of raw materials, work-in-process and finished goods and individual inventory advance rates by major product line may be established at Lender's discretion. Ineligible inventory shall include obsolete, slow moving, packaging supplies, damaged, defective, samples or inventory at a location not covered by a collateral access agreement. COLF would have discretionary rights in determining eligibility.

2. A forty-eight (48) month amortizing Term Loan equal to the lesser of (i) $17,000,000 or (ii) eighty percent (80%) of the appraised net orderly liquidation value of machinery and equipment performed by an appraiser satisfactory to Lender, plus seventy-five percent (75%) of the

appraised fair market value of the Borrower's operating real estate (under a twelve (12) month maximum marketing period) located in Vienna, OH, Jasper, GA, North Canton, OH, Rock Hill, SC, Lakewood, NY and Rochester, NY performed by an appraiser engaged by the Lender. The Term Loan will amortize monthly on a straight-line basis over five (5) years for the machinery and equipment portion and seven (7) years for the real estate portion.

3. A thirty (30) month, interest only Bridge Term Loan of the lesser of (i) $3,000,000 or (ii) fifty percent (50%) of the appraised fair market value of real estate location in Ellijay, GA performed by an appraiser engaged by Lender under a twelve (12) month maximum marketing period. We understand that the Ellijay, GA location represents "property held for sale" and the Bridge Term Loan will be repaid from the property sale proceeds.

4. A $2,000,000 Capital Equipment Line providing for loan availability of up to eighty percent (80%) of the purchase price (excluding tax, freight, and installation charges) of new or used equipment in good working condition, purchased by the Borrower. Drawings under the Capital Expenditure Line must be made in minimum amounts of at least $200,000. Drawings would not be permitted after thirty (30) months following the closing date. Loans under the Capital Equipment Line above would amortize monthly on a straight-line basis over sixty (60) months subject to a balloon payment at maturity.

In addition, fifty percent (50%) of excess annual cash flow (to be defined) would be applied to prepay the Term Loans and such payments would be applied pro-rata to the Bridge Term Loan, the Amortizing Term Loan and the Capital Equipment Line. The portion applied to the Amortizing Term Loan and Capital Equipment Line would ratably reduce all remaining payments on the Amortizing Term Loan and Capital Equipment Line. The full amount of the Amortizing Term Loan and Bridge Term Loan will be funded in a single drawing on the closing date and amounts borrowed under the all Term Loans that are repaid may not be re-borrowed.

## CONTRACT TERM:
Revolving Credit Facility, Term Loan and Capital Equipment Line:
Four years from the closing date of the Credit Facility.

Bridge Term Loan:
Thirty (30) months from the closing date of the Credit Facility.

## SECURITY:
All loans, advances and other obligations, of the Company to the Lender (the "Obligations") would be secured by valid, perfected and enforceable first priority liens and security interests in all present and future assets of the Borrower,  including receivables, inventory, accounts, license rights, chattel paper, titles, notes, cash, security accounts, other investment property, insurance proceeds, royalties, contract rights, lease agreements, tax refunds, documents, notes, tradenames, trademarks, patents, customer lists, general intangibles; all inventory wherever located; all unencumbered equipment

3

and real property, and by a pledge of the capital stock of all direct and indirect subsidiaries of the Borrower.

### USE OF PROCEEDS:

Proceeds of the loans under the Credit Facility will be used to (i) refinance Borrower's senior debt with Capital Source Finance LLC, (ii) pay allowed administrative expenses and allowed claims in accordance with the Plan, (iii) provide financing for ongoing working capital and capital expenditure needs of Borrowers, and (iv) pay related expenses approved by Lender.

### PRICING:

At the Company's option, the Loans bear interest at a rate per annum equal to: (a) the Base Rate plus the Applicable Margin or (b) the Libor Rate plus the Applicable Margin, as set forth in the table below:

|  | -Applicable Margin- | |
| --- | --- | --- |
|  | Base Rate | Libor Rate |
| Revolving Credit Facility | 1.50% | 3.00% |
| Term Loan | 2.50% | 4.00% |
| Capital Equipment Line | 2.50% | 4.00% |
| Bridge Term Loan | 4.50% | 6.00% |

The Base Rate is defined as the higher of (i) the highest prime, base, or equivalent rate as announced from time to time among Capital One Bank, Citibank N.A., and Bank of America or (ii) the published, annualized rate for 90-day dealer commercial paper which normally appears in the "Money Rates" section of *The Wall Street Journal.*

The Libor Rate means the rate for Eurodollar deposits for a period equal to one, two, or three months, as selected by Borrower.  LIBOR Rate loans may not exceed the outstanding Revolving Loans plus 100% of the outstanding Term Loans minus any scheduled amortization during the LIBOR period. The Agreement shall contain a limitation on the maximum number of LIBOR contracts that may be outstanding at any one time.

An interest rate grid shall be structured during the Lender's due diligence which shall provide for two 25 basis point step-downs and two 25 basis point step-ups to the interest rate for the Revolver and Term Loans. The grid would be subject to the Borrower achieving certain levels of fixed charge coverage and minimum availability, which would be tested on a quarterly basis. The grid pricing will not take effect until receipt of the FY 2009 audited financial statements.

Interest would be payable monthly in arrears on the first day of each month. The Loan Agreement will include standard yield protection and reimbursement mechanisms.

| **Closing Fee:** | One percent (1%) of the aggregate Credit Facility, with said fee earned by COLF and payable one-half at the acceptance |
| --- | --- |

4

by Borrower of a commitment letter issued by Lender and one-half at Closing.

**Unused Line Fee:** Three-eighths of one percent (0.375%) per annum on the unused portion of the Revolving Credit Facility.

**Letter of Credit Fee:** Two percent (2%) per annum on any outstanding letters of credit plus any related bank charges or fees.

**Collateral Management Fee:** $2,000 per month

Unless otherwise noted, interest and fees would be payable monthly in arrears by charging the Borrower's loan account and/or any other accounts that the Borrower has with the Lender or any affiliate of the Lender. All fees and interest would be computed on the basis of a 360-day year.

**PREPAYMENT FEE:**
Should the Company terminate the Credit Facility prior to its maturity, then a prepayment fee would apply as follows: three percent (3%) of the total Credit Facility then in effect if outstandings were repaid during the first year after signing the loan agreement, two percent (2%) of the total Credit Facility then in effect if repaid during the second year, one percent (1%) of the total Credit Facility then in effect if repaid during the third year, and none thereafter.

**DEFAULT RATE:**
If an event of default occurs under the Loan Agreement, the interest rate would increase by two percent (2%) per annum. However, if and when the default is cured, the two percent premium would be suspended.

**COLLATERAL PROCEEDS:**
All collateral proceeds would be deposited into a lock-box/blocked account with Capital One Bank on terms and conditions satisfactory to Lender. The proceeds would then be transferred to COLF's account at Capital One Bank for further credit to the Revolver.

The outstanding Loan shall increase immediately with new borrowings and decrease as collections are received, subject to a one (1) business day collection period after good funds are received in COLF's account at Capital One Bank. For purposes of availability, the revolving loan will immediately decrease when collections are received by Lender.

**TRANSACTION COSTS:**
All reasonable expenses (including initial and ongoing per diem charges related to COLF's auditing and collateral evaluation) incurred by Lender in entering into this transaction and in fulfilling its

obligations thereunder, including but not limited to legal and appraisal fees and other out-of-pocket expenses would be borne by Borrower.

**REPORTING:**

1. Provide Lender, within 45 days of the end of each fiscal quarter and 30 days of the end of each other month, in each case other then the end of Borrowers fiscal year, consolidated (and if applicable, consolidating) profit and loss, balance sheet, statement of cash flows, statement of change in any inter-company accounts, if applicable; and a statement of compliance with the terms and conditions of the Lender's loan, all certified by the Chief Financial Officer or Chief Executive Officer of Borrower.

2. Provide Lender annually, within 90 days of the year-end, the certified consolidated (and if applicable, consolidating) financial statements of Borrower would be submitted to Lender with an unqualified opinion by an independent certified public accountant acceptable to Lender.

3. Prior to Closing, Borrower would provide Lender four (4) years of projected balance sheets, profit and loss statements, cash flow statements, and availability forecasts, of which the first year would be on a monthly basis, and the next three (3) years would be on an annual basis. Subsequent to Closing, annual budgets would be required before the beginning of each new fiscal year.

4. Provide Lender with (i) a weekly borrowing base certificate with a calculation of availability along with sales, collections, debit and credit adjustments in a form satisfactory to Lender; (ii) monthly receivable and accounts payable agings and reconciliation; and (iii) a monthly inventory consignment reporting inventory by location and otherwise satisfactory to Lender.

**DOCUMENTATION:**

The Loan Documents would include certain covenants and conditions as well as inducing representations as Lender may deem appropriate and which are customary for this type transaction. Customary provisions include, but would not be limited to: delivery of financial statements, access to financial and collateral information, maintenance of adequate insurance, compliance with Federal, State, and local laws including environmental laws and regulations, notification to Lender of any material suit, the maintenance of a solvent condition at all times, limitations on liens, indebtedness, asset sales, mergers and acquisitions and restrictions on dividends, distributions, guarantees, and loans to affiliates. All of the Loan Documents would be prepared or approved by Lender and counsel to Lender and incorporate Lender's customary terms and provisions, including, without limitation, the absence of any default as a condition to all loans and other financial accommodations, further assurances with respect to the creation, perfection and protection of any liens under Revised Article 9 of the Uniform Commercial Code and such other provisions as Lender may require in the context of the transactions contemplated hereby.

**EVENTS OF DEFAULT:**

Standard events of default typically found in Lender's agreement would include, but not be limited to, payment and covenant default; material adverse change; change of ownership; bankruptcy; loss of trade support; cross-default; the failure of Borrower and Guarantors to comply with the Confirmation Order (defined below) or any other applicable bankruptcy court order or stipulation; the Confirmation Order is revoked, remanded, vacated, reversed, stayed, rescinded, modified, or amended on appeal in any material respect (other than modifications or amendments proposed or consented to by the Borrower and Lender; and misrepresentation.

## COVENANTS:

Financial Covenants would include a Fixed Charge Coverage Ratio, Maximum Leverage Ratio, Minimum Tangible Net Worth to be measured on a quarterly basis, and limitations on capital expenditures, dividends, executive salaries, management and Director's fees and other distributions. The Credit Facility will also include a Minimum Excess Availability Covenant of $1,250,000 which shall be (i) reduced proportionately to any partial repayment in the Bridge Term Loan and (ii) eliminated upon the full repayment of the Bridge Term Loan. The covenants and ratios would be based upon the information presented by Company in its forecasts and would be tested on a monthly basis except as noted above.

## CONDITIONS PRECEDENT TO LENDING:

1. Completion of our credit investigation and final credit approval by Lender. Our credit investigation would include the satisfactory completion of a field examination of Company's assets, liabilities, books and records; and a satisfactory review of Borrower's financial condition, and results of a background survey.

2. The Plan shall be satisfactory to Lender and all conditions to the consummation of the Plan (other than the funding of the Credit Facility) shall have been met, and all undertakings of the parties thereunder to be performed by such time shall have been performed and no motion action or proceeding shall be pending that adversely affects or could reasonably expect to adversely affect the Plan, the Borrowers or Guarantors or their business or operations, or the credit facility in any material respect.

3. A Final order confirming the Plan (the "Confirmation Order"), on terms satisfactory to Lender, in its sole discretion shall have been entered by the bankruptcy court, no later than November 15th, after due notice to creditors and other parties in interest and the Confirmation Order shall be in full force and effect and shall not be modified, reversed, stayed or vacated.

4. Satisfactory cash management and management information systems and execution of a lockbox/blocked account with Bank satisfactory to COLF.

5. Minimum excess availability at Closing of at least $2,500,000 (inclusive of cash) after all closing costs and professional fees have been paid.

7

6. Receipt and satisfactory review of appraisal on inventory, machinery and equipment and real estate performed by an appraiser acceptable to, and, in the case of the appraisal of real estate, engaged directly by, COLF.

7. Review of environmental survey covering each real property location satisfactory to the Lender.

8. No material adverse change in the financial condition, operations, industry or prospects of the Company prior to funding.

9. A review of the corporate and capital structure of Company shall be satisfactory to COLF and COLF's counsel. The Company would prepare a schedule of all subsidiaries and affiliates of the Company.

10. Execution of final loan documentation in form and substance satisfactory to Lender.

11. Satisfactory opinion letters from Company's counsel.

12. Perfection of all security interests granted to Lender and evidence that there are no other security interests on any collateral.

13. Compliance with all Federal, State, local, and foreign laws and regulations including, but not limited to, income, unemployment, social security taxes, pension funds, and retirement benefits as required by ERISA, as well as all environmental laws and regulations.

14. Receipt of stock pledges satisfactory to the Lender and delivery of stock certificates and stock powers covering all of the capital stock of any of the Borrower's subsidiaries.

15. Receipt of landlord waivers, if any.

16. Lender intends to commence syndication efforts promptly, and the Borrower agrees to actively assist in achieving a syndication of the Facility.

17. Other documents, instruments and evidence as Lender may request.

## LAW:
This letter and the proposed Credit Facility are intended to be governed by and construed in accordance with New York law without regard to its conflict of law provisions.

## INDEMNITY:
Borrower agrees to indemnify and to hold harmless Lender and its officers, directors and employees against all claims, damages, liabilities and expenses which may be incurred by or asserted against any such person in connection with or arising out of this letter and the transactions contemplated

8

hereby, other than for claims, damages, liability, and expenses proximately resulting from such person's gross negligence or willful misconduct.

## CONFIDENTIALITY:

This letter is delivered to you with the understanding that neither it nor its substance shall be disclosed to any third person except those who are in a confidential relationship to you (such as your legal counsel and accountants), or where the same is required by law. Notwithstanding the forgoing, the Borrower may file this letter with the bankruptcy court in connection with any request for approval of Borrower's entry into this arrangement or reimbursement of fees and expenses contemplated herein.

## EXPIRATION DATE:

This proposal letter expires at the close of business on August 31, 2008.

## CONDITIONS OF ACCEPTANCE:

This letter is an expression of Lender's willingness to proceed to complete Lender's due diligence which would enable Lender to determine whether Lender will issue a commitment for financing to Borrower. Except for the provisions concerning (i) the payment of the expense deposit, (ii) the payment of Lender's reasonable expenses, (iii) indemnification and (iv) the confidentiality of the proposed transaction, it is not intended to, and does not create, any binding legal obligation on the part of Lender or Borrower and no obligation, express or implied, (other than those described in items (i) - (iv) of this sentence) is intended. This letter constitutes the entire understanding between the Borrower and Lender in connection with this proposed transaction, superseding all prior written or oral communications or understandings, and may be amended or supplemented only in a writing signed by Lender and Borrower.

Please note that by acceptance of the terms and conditions of this letter of proposal, you acknowledge that this letter of proposal is issued at a time when COLF has not yet undertaken a full business, credit, and legal analysis of the Borrowers and the proposed financial arrangement contemplated hereby. Only after the above analysis is complete can final credit approval be given. Such credit approval can only be given through the issuance of a Commitment Letter.

If the proposal outlined above is satisfactory and reflects an arrangement that substantially meets your needs, we ask that you indicate your sincere intention to go forward by signing and returning a copy of this letter along with a check or wire for an additional $203,800. The Lender acknowledges receipt of a previous deposit in the amount of $21,200 to cover a portion of expenses previously incurred. These deposits will be refunded less "out of pocket" expenses, including appraisal, audit and reasonable legal expenses incurred in the event an approval is not granted and funds provided substantially as outlined herein. If at any time subsequent to the acceptance of this letter you decide not to proceed with COLF, we will retain the entire deposit as a processing fee. Additionally, you acknowledge that in the event the deposit is insufficient to cover our "out of pocket" expenses, you will immediately reimburse us for any excess costs which we incur regardless of whether or not a Commitment Letter is issued and you elect to proceed with COLF. If a commitment for financing

is made, accepted, and eventually funded, the deposit (less "out of pocket", audit, and reasonable legal expenses) will be applied to the first charges normally occurring under the loan agreement. Company acknowledges that additional funds would be required to prepare Lender's legal documentation and that it will deposit additional monies upon request, if appropriate..

We look forward to moving quickly with our due diligence and credit approval process and appreciate the opportunity to structure this proposal.

Very truly yours,

CAPITAL ONE LEVERAGE FINANCE CORP.

_____

Stephen Altneu
Vice President – Business Development

**ACCEPTED AND AGREED TO THIS**

_____ day of _____, 2008

LEXINGTON PRECISION CORPORATION

_____

Name:
Title:

10

**EXHIBIT B**

AO88 (Rev. 1/94) Subpoena in a Civil Case

Issued by the

# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF NEW YORK

In re: LEXINGTON PRECISION CORP. et al.

**SUBPOENA IN A CIVIL CASE**

V.

**CASE NO. 08-11153 (mg)**
United States Bankruptcy Court for the
Southern District of New York

TO:   **Capital One Leverage Finance Corporation**
404 Fifth Avenue
New York, New York 10018

☐   YOU ARE COMMANDED to appear in the United States District court at the place, date, and time specified below to testify in the above case.

| PLACE OF TESTIMONY | COURTROOM |
|---|---|
| | |
| | DATE AND TIME |
| | |

YOU ARE COMMANDED pursuant to Federal Rule of Civil Procedure 30(b)(6) (made applicable to this proceeding by Federal Rule of Bankruptcy Procedure 7030(b)(6)) to designate one or more representatives to appear
X   at the place, date, and time specified below to testify at the taking of a deposition in the above case.
   **See attached Exhibit A for subjects of examination.**

| PLACE OF DEPOSITION<br>Andrews Kurth LLP,<br>450 Lexington Avenue, 15th Floor, New York, New York 10017 | DATE AND TIME<br>January 28, 2009;<br>10:00 a.m. (ET) |
|---|---|

X   YOU ARE COMMANDED to produce and permit inspection and copying of the following documents or objects at the place, date, and time specified below (list documents or objects).
   **See attached Exhibit B.**

| PLACE<br>Andrews Kurth LLP,<br>450 Lexington Avenue, 15th Floor, New York, New York 10017 | DATE AND TIME<br>January 28, 2009;<br>10:00 a.m. (ET) |
|---|---|

☐   YOU ARE COMMANDED to permit inspection of the following premises at the date and time specified below.

| PREMISES | DATE AND TIME |
|---|---|
| | |

Any organization not a party to this suit that is subpoenaed for the taking of a deposition shall designate one or more officers, directors, or managing agents, or other persons who consent to testify on its behalf, and may set forth, for each person designated, the matters on which the person will testify. Federal Rules of Civil Procedure, 30(b)(6).

| ISSUING OFFICER'S SIGNATURE AND TITLE (INDICATE IF ATTORNEY FOR PLAINTIFF OR DEFENDANT)<br>Attorney for Official Committee of Unsecured Creditors | DATE<br>1/16/09 |
|---|---|

ISSUING OFFICER'S NAME, ADDRESS AND PHONE NUMBER
Jonathan Levine, Andrews Kurth LLP, 450 Lexington Avenue, 15th Floor, New York, NY 10017      Ph: 212-850-2816

(See Rule 45, Federal Rules of Civil Procedure, Parts C & D on next page)

HOU:2891220.3

## EXHIBIT A

## DEFINITIONS AND INSTRUCTIONS

1.      "Capital One" means Capital One Leverage Finance Corp. and/or its respective predecessors, successors, parents, subsidiaries, segments, units, divisions, affiliates, partners, officers, directors, employees, agents, representatives, independent contractors, shareholders, and/or any person or entity acting or purporting to act on Capital One's behalf.

2.      "Debtors" means Lexington Precision Corp. and Lexington Rubber Group, Inc., and/or their respective predecessors, successors, parents, subsidiaries, segments, units, divisions, affiliates, partners, officers, directors, employees, agents, representatives (*including all financial advisors and attorneys retained by the Debtors in the Chapter 11 case*), independent contractors, shareholders, and/or any person or entity acting or purporting to act on the Debtors' behalf.

3.      "Campbell" means W.Y. Campbell & Company, its predecessors, successors, parents, subsidiaries, segments, units, divisions, affiliates, partners, officers, directors, employees, agents, representatives, independent contractors, shareholders, and/or any person or entity acting or purporting to act on Campbell's behalf.

## SUBJECTS OF EXAMINATION

1.      All communications between Capital One and the Debtors regarding any credit facility, line of credit, or other financing that Capital One may agree to provide to Debtors as part of the Debtors' exit from Chapter 11 bankruptcy, including but not limited to the Senior Secured Credit Facility referenced in Stephen Altneu's July 29, 2008 letter to Michael A. Lubin and Warren Delano.

2.      All negotiations between Capital One and the Debtors regarding any credit facility, line of credit, or other financing that Capital One may agree to provide to Debtors as part of the Debtors' exit from Chapter 11 bankruptcy, including but not limited to the Senior Secured Credit Facility referenced in Stephen Altneu's July 29, 2008 letter to Michael A. Lubin and Warren Delano.

3.      The terms or possible terms of any credit facility, line of credit, or other financing that Capital One may agree to provide to the Debtors as part of the Debtors' exit from Chapter 11 bankruptcy, including but not limited to the Senior Secured Credit Facility referenced in Stephen Altneu's July 29, 2008 letter to Michael A. Lubin and Warren Delano.

## EXHIBIT B

## DEFINITIONS AND INSTRUCTIONS

1.      "Capital One" means Capital One Leverage Finance Corp. and/or its respective predecessors, successors, parents, subsidiaries, segments, units, divisions, affiliates, partners, officers, directors, employees, agents, representatives, independent contractors, shareholders, and/or any person or entity acting or purporting to act on Capital One's behalf.

2.      "Debtors" means Lexington Precision Corp. and Lexington Rubber Group, Inc., and/or their respective predecessors, successors, parents, subsidiaries, segments, units, divisions, affiliates, partners, officers, directors, employees, agents, representatives (*including all financial advisors and attorneys retained by the Debtors in the Chapter 11 case*), independent contractors, shareholders, and/or any person or entity acting or purporting to act on the Debtors' behalf.

3.      "Campbell" means W.Y. Campbell & Company, its predecessors, successors, parents, subsidiaries, segments, units, divisions, affiliates, partners, officers, directors, employees, agents, representatives, independent contractors, shareholders, and/or any person or entity acting or purporting to act on Campbell's behalf.

4.      Rule 26.3 of the Local Civil Rules of the United States District Court for the Southern District of New York (including the definitions and instructions set forth therein), made applicable by Local Bankruptcy Rule 7026-1, is incorporated herein by reference.

5.      Documents produced shall be produced either (i) in the manner and file in which they are kept in the usual course of business or as currently retained by Capital One or (ii) in files organized and labeled to correspond with the categories in this document request.

HOU:2891138.1

6.      These requests are continuing; supplemental responses must be served seasonably pursuant to Federal Rule of Civil Procedure 26(e) if further or different documents or information become known subsequent to the date responses are given to these requests.

7.      To the extent that any document requested has been destroyed or discarded, Capital One shall identify such document, its author, its recipients, the date thereof, the subject matter, the person who directed that the document be destroyed or discarded and the date such action was taken.

8.      If any document requested herein is withheld on the basis of any claim of privilege or for any other reason, you shall provide the information required by Rule 26.2(a) of the Local Civil Rules of the United States District Court for the Southern District of New York.

## DOCUMENT REQUESTS

1.      All emails and correspondence between Capitol One and the Debtors regarding any credit facility, line of credit, or other financing that Capitol One may provide to Debtors as part of the Debtors' exit from Chapter 11 bankruptcy, including but not limited to the Senior Secured Credit Facility referenced in Stephen Altneu's July 29, 2008 letter to Michael A. Lubin and Warren Delano.

2.      All emails and correspondence between Capital One and Campbell regarding any credit facility, line of credit, or other financing that Capitol One may provide to Debtors as part of the Debtors' exit from Chapter 11 bankruptcy, including but not limited to the Senior Secured Credit Facility referenced in Stephen Altneu's July 29, 2008 letter to Michael A. Lubin and Warren Delano.