HEARING DATE: **February 23, 2008 at 10:00 a.m.** (prevailing Eastern Time)
OBJECTION DEADLINE: **February 13, 2008 at 12:00 noon** (prevailing Eastern Time)

WALLER LANSDEN DORTCH & DAVIS LLP
John C. Tishler (*Pro Hac Vice*)
Robert J. Welhoelter (*Pro Hac Vice*)
511 Union Street, Suite 2700
Nashville, Tennessee 37219-8966
TEL: (615) 244-6380
FAX: (615) 244-6804
Email: John.Tishler@Wallerlaw.com
Email: Robert.Welhoelter@Wallerlaw.com

and

CARTER LEDYARD & MILBURN LLP
Aaron R. Cahn
2 Wall Street
New York, New York 10005
TEL: (212) 238-8629
FAX: (212) 732-3232
Email: cahn@clm.com

*Counsel to Agents for the Senior Prepetition Lenders*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---------------------------------------------------------------x
                                                      :
**In re**                                             :    **Chapter 11 Case No.**
                                                      :
**LEXINGTON PRECISION CORP., et al.,**                :    **08-11153 (MG)**
                                                      :
         Debtors.                                     :    **(Jointly Administered)**
                                                      :
---------------------------------------------------------------x

**OBJECTION OF AGENTS FOR PREPETITION SENIOR LENDERS TO**
**DEBTORS' MOTION FOR EXTENSION OF EXCLUSIVE PLAN PERIODS**

By and through the undersigned attorneys, CapitalSource Finance LLC, as Revolver

Agent (defined below) to the Prepetition Revolver Lenders (defined below) and CSE Mortgage

LLC, as Term Loan Agent (defined below) to the Senior Term Loan Lenders (defined below,

and collectively with the Prepetition Revolver Lenders and the Agents, the "Prepetition Senior

2627506.5

Lenders"), hereby object to the *Debtors' Third Motion For An Order Pursuant To Section 1121(d) Of The Bankruptcy Code Extending The Debtors' Exclusivity Periods* (the "Exclusivity Motion") and state as follows:

**Introduction**

1. The Debtors have remained at the helm of these bankruptcy cases for ten (10) months and are no closer to a resolution than when they first started. The Debtors seek a further extension of the exclusive periods for 90 and 120 days, respectively, and will presumably seek further extension upon expiration in the event the Exclusivity Motion is granted in light of the significant hurdles present in the current exit facility proposal. Because the Debtors have shown an inability to progress toward a reasonable plan, the time has come for creditors to have a voice in the process of this reorganization. Accordingly, the Prepetition Senior Lenders object to the Exclusivity Motion.

**Background Facts**

2. Prior to the Commencement Date, the Prepetition Senior Lenders made certain loans and other financial accommodations available to the Debtors pursuant to, among other things, the following documents (collectively, with any and all other agreements, instruments, and related documents, including without limitation, guaranties, pledges, forbearance agreements and discretionary funding letters executed by any Debtor and any Other Documents (as defined in each of the Credit Agreement (defined below) and the Loan Agreement (defined below), the "Prepetition Senior Lender Loan Documents"):

    (a)    that certain Credit and Security Agreement, dated May 31, 2006 (as amended to date and as may be amended, restated or otherwise modified from time to time, the "Credit Agreement"), between the Debtors, as borrowers, and CapitalSource

2627506.5                                         2

Finance LLC ("CapitalSource"), as a lender, as collateral agent and administrative agent for itself and other lenders under the Credit Agreement (CapitalSource, when acting in such capacity, is herein called the "Revolver Agent"), and as Co-Documentation Agent, and Webster Business Credit Corporation ("Webster") as a lender (CapitalSource and Webster, as lenders, collectively the "Prepetition Revolver Lenders") and as Co-Documentation Agent; and

(b)    that certain Loan and Security Agreement, dated May 31, 2006 (as amended to date and as may be amended, restated or otherwise modified from time to time, the "Loan Agreement"), between the Debtors, as borrowers, and CSE Mortgage LLC ("CSE"), as a lender and as collateral agent for itself and each other lender under the Loan Agreement (CSE, when acting in such capacity, is herein called the "Term Loan Agent"), and DMD Special Situations Funding LLC, ("DMD"), as a lender under the Loan Agreement (DMD and CSE, as lenders, the "Prepetition Term Lenders").

3.    The Revolver Agent and Term Loan Agent are referred to collectively herein as the "Agents." Any capitalized terms not defined herein shall have the meanings ascribed to them in the Prepetition Senior Lender Loan Documents or the Cash Collateral Order (as defined below), as applicable.

4.    On April 17, 2008, this Court entered that certain *Final Order Pursuant To Bankruptcy Code Sections 105, 361, 362, 363, & 364 (i) Authorizing Debtors To Use Cash Collateral, (ii) Granting Adequate Protection To Prepetition Secured Lenders, and (iii) Authorizing Postpetition Financing* (the "Cash Collateral Order"), whereby the Prepetition Senior Lenders consented to the use of their Cash Collateral subject to certain conditions. Chief among those conditions is that the Debtors' confirm and consummate a plan of reorganization

that provides for the indefeasible payment in full of the obligations to the Prepetition Senior Lenders within three hundred thirty (330) days of the Commencement Date, i.e. February 25, 2009 (the "Cash Collateral Deadline").  (Cash Collateral Order, ¶ 11(viii).)

5.    In addition, certain financial covenants were included in the Cash Collateral Order, including the requirement to meet net sales of at least 90% of the forecasted amounts in the applicable budgets, measured from the beginning of the case through the relevant measuring date.[1]  The Debtors' most recent reconciliation certificate, dated February 11, 2009, a copy of which is annexed hereto as Exhibit A, indicates that for the period from April 2, 2008 through February 6, 2009, cumulative net sales were 10.6% below the budgeted forecast.  Accordingly, a Termination Event has occurred, the Debtors are in default of the Cash Collateral Order (the "Net Sales Default"), and the Prepetition Senior Lenders have reserved, by letter dated February 12, 2009, any and all rights stemming from such default.

6.    By order entered July 31, 2008 (the "First Exclusivity Order"), the Court granted the Debtors' first request for an extension of the exclusive periods through October 28, 2008 for plan filing and December 27, 2008 for solicitation of votes.  Among the factors cited for such extension were: (i) the Debtors' active steps to move the reorganization process along; (ii) the length of time the case has been pending (4 months at that time); and (iii) the Debtors' ability to propose a viable plan.  (First Exclusivity Order, pp. 5-6).

7.    By order entered October 31, 2008 (the "Second Exclusivity Order"), the Court granted the Debtors' second request for an extension of the exclusive periods through January

---

[1] Section 11(vii) of the Cash Collateral Order provides, in relevant part:

> With respect to the use of Cash Collateral hereunder, each of the following shall constitute a "Termination Event":
> …
> (vii) if on a cumulative basis, measured every four weeks from the Commencement Date through the last day of every four-week period thereafter, net sales are less than 90% of the net sales reflected in the Budget or any New Budget…

26, 2009 for plan filing and February 25, 2009 for solicitation of votes.  Among the factors cited for such extension were: (i) the Debtors' reasonable prospects of obtaining exit financing, as established by uncontroverted testimony from the Debtors; (ii) dispute over the effects of the diminution in the Debtors' business over the past few months and the overall deterioration of the general automotive market; (iii) Committee's unwillingness to negotiate until receipt of all requested information; (iv) delays in the Debtors' presentation of the valuation report; and (v) sufficient progress in negotiations.  (Second Exclusivity Order, pp. 6-9).

8.      On January 12, 2009, the Debtors filed the Motion, seeking a 90-day extension of the exclusive plan filing period and a 120-day extension of the exclusive voting solicitation period.  On January 12, 2009, the Court entered a bridge order extending the exclusive periods through any ruling on the Motion.

9.      In light of the contested nature of these cases and the Debtors' pending request for further use of cash collateral in light of the Cash Collateral Deadline (the "Cash Collateral Motion"), the Court combined the hearing on the Motion with the Cash Collateral Motion and set an objection deadline for February 13, 2009 at 12:00 noon (prevailing Eastern Time).

### Prepetition Senior Lender's Objection

10.     The Prepetition Senior Lenders' Objection has two primary grounds: (i) deterioration in the relationship with the proposed exit lender whose interest in providing the exit facility for the Proposed Plan has waned to the point that significant operational restructuring steps must be taken to even engage in a conversation regarding an exit facility; and (ii) the Debtors cannot meet the multi-factor test for demonstrating "cause" to extend the exclusive plan periods.

A.      Deterioration of Capital One's Appetite to Provide Exit Lending

11.     As revealed by the deposition of the representative from Capital One Leverage Finance Corporation ("Capital One") on January 29, 2009 (the "Deposition"), the Debtors received several different proposals from Capital One, the first one in Spring 2008, the second in July, 2008, and a final one in Fall 2008.  *See* Deposition,[2] pp. 7, 11, 36, 38, 50-51, & 94 (excerpts of the transcript of the Deposition are annexed hereto as Exhibit B).  The Debtors never signed and returned any of the proposal letters to Capital One despite Capital One's ability and willingness to underwrite the exit facility.  Id. at pp. 55, 66.

12.     Unfortunately, as the economy deteriorated, so did Capital One's desire and ability to provide the exit facility.  Id. at 61, 94-95, 98-99.  From the original proposal, which represented a fully underwritten loan, each subsequent proposal was adjusted negatively, ultimately resulting in a proposed exit facility with multiple contingencies and modified terms that have significantly decreased the chances of obtaining exit financing for the Proposed Plan. Id. at 60-61, 94-95, 98-99, 100-01, 119-20, 135-36.  Specifically, the adjustments include, but are not limited to, the following negative features:  (i) requirement that there be around a $15 million mezzanine financing to be provided by the debtors' management or some other participating entity (id. at 41, 140-41); (ii) that a commitment from a separate real property lender be obtained (id. at 140-41, 143-44, 147; (iii) that a significant percentage of the participants in the loan subscribe to such participation in advance of the loan being funded (id. at 100-01); and (iv) that the connector seals operational restructuring be completed before the loan is processed (id. at 120-21, 123, 124-25).

---

[2] Reference to page numbers are references to the transcript pages, the pagination of which does not correspond exactly with the printed pages of Exhibit B.

13. The window of opportunity is indeed nearly closed, as Capital One has indicated, by letter dated February 5, 2009 (a copy of which is annexed hereto as <u>Exhibit C</u>), that discussions for a financing arrangement will only continue with the Debtors through March 15, 2009. In light of the Debtors' failure to lock in the exit facility when the terms were favorable, the creditor constituents are left with significant hurdles between the expiration of the Cash Collateral Deadline and the Debtors' pursuit of either the Proposed Plan or some modified version with cramdown features.

14. Accordingly, the Prepetition Senior Lenders object to an open-ended extension of exclusivity. Opening up the plan process to creditors will propel this case forward toward resolution. Termination of exclusivity, together with the Prepetition Senior Lenders' proposed restrictions on use of Cash Collateral, if adopted by the Court, will provide incentive for the parties to negotiate a resolution of these cases with vigor that has not been present to date.

B. <u>Debtors Cannot Demonstrate "Cause" for the Requested Extension</u>

15. The relevant factors for an extension of the Debtors' exclusive periods were set forth by Judge Gerber in <u>In re Adelphia Communications Corporation</u>, 352 B.R. 578, 587 (Bankr. S.D.N.Y. 2006): (a) the size and complexity of the case; (b) the necessity for sufficient time to permit the debtor to negotiate a plan of reorganization and prepare adequate information; (c) the existence of good faith progress toward reorganization; (d) the fact that the debtor is paying its bills as they become due; (e) whether the debtor has demonstrated reasonable prospects for filing a viable plan; (f) whether the debtor has made progress in negotiations with its creditors; (g) the amount of time which has elapsed in the case; (h) whether the debtor is seeking an extension of exclusivity in order to pressure creditors to submit to the debtor's reorganization demands; and (i) whether an unresolved contingency exists.

16.     In the Second Exclusivity Order, the Court identified three factors as more relevant than the others in this case: (a) the existence of good faith progress toward reorganization; (ii) whether the debtor has demonstrated reasonable prospects for filing a viable plan; and (iii) whether the debtor has made progress in negotiations with its creditors. (Second Exclusivity Order, p. 5).

17.     The Debtors cannot meet their burden for an extension of exclusivity under the Adelphia factors. This objection will first address the three items identified as important in the Second Exclusivity Order and then discuss the remaining factors.

18.     <u>Good Faith Progress Toward Reorganization.</u> The Prepetition Senior Lenders acknowledge that the Debtors made significant progress toward the Debtors' narrow vision of reorganization, but that progress has recently been halted in light of the unavailability of exit financing. In addition, such progress has been without significant input from the creditor body as a whole and without consideration of all the constituents' respective interests. Admittedly, the lack of input from the Prepetition Senior Lenders was the product of the negotiated Cash Collateral Order, which provided the Debtors eleven (11) months to develop and implement a plan that would pay the Prepetition Senior Lenders in full. Unfortunately, the progress to this point has revealed that the defining feature of any reorganization plan – the exit financing needed to implement the plan – is missing. The connector seals reorganization referred to in the Exclusivity Motion is yet another hurdle to be overcome before any conversation regarding an exit facility for the currently proposed plan (the "<u>Proposed Plan</u>") can even begin. In the meantime, other avenues of reorganization should be explored so that the Debtors and the constituents in this case can make reasoned decisions regarding the ultimate resolution

19. <u>Reasonable Prospects for Filing a Viable Plan.</u>  Because of the lack of available exit financing, the prospects of a viable plan have been demonstrated as unreasonable.  While a viable plan might include a sale of some or all of the Debtors' assets or business segments, the Debtors' continued refusal to even entertain such options leaves only the Proposed Plan and its terms on the table.  As evidenced by the Debtors' decision to adjourn the hearing on the Second Amended Disclosure Statement indefinitely, the exit financing required to make the prospects of such plan reasonable is not anticipated in the near future.  Opening up the plan process to other constituents will force the Debtors' to take a realistic look at their businesses and propose a revised plan that addresses some of the Prepetition Senior Lenders' and the Committee's concerns.

20. The Debtors are engaging in brinksmanship to try and force the Prepetition Senior Lenders (and/or the Committee) to accede to the Debtors' wishes, all the while refusing to even entertain the idea of even a partial sale of any assets, including even non-core or non-operating assets of the Debtors.  Indeed, the Debtors' true intentions of delaying the creditors' ability to influence these cases is revealed when the discrepancy between the requests under the Exclusivity Motion and the Cash Collateral Motion are compared.  Pursuant to the Cash Collateral Motion, the Debtors have made a request for an extension of over ten (10) months for the use of Cash Collateral, which extension would outpace the requested exclusivity extension by seven (7) months.  In fact, the requested Cash Collateral extension would take the Debtors three (3) months beyond the maximum exclusive plan filing period of eighteen (18) months under 11 U.S.C. § 1129(d)(2)(A), which would expire on October 1, 2009, and one (1) month beyond the maximum exclusive solicitation period under 11 U.S.C. § 1129(d)(2)(B), which would expire on December 1, 2009.

21.     <u>Progress in Negotiations with Creditors.</u>  The pitched tone of these cases has intensified over time.  The Debtors and the Committee have a significant disagreement regarding valuation of the Debtors, an issue that will be hashed out for months to come.  It does not appear that any negotiations with the Committee have been successful during these bankruptcy cases, let alone the numerous months preceding the filings in these cases.  Those relationships appear to be irretrievably broken, as evidenced by the litigious posture of virtually every motion in these cases.

22.     Unfortunately, the accord struck between the Prepetition Senior Lenders and the Debtors has also turned sour.  Despite negotiating a good faith Cash Collateral Order, which contemplated automatic stay relief if and when no plan was forthcoming 330 days from the Commencement Date, the Debtors now seek to force the Prepetition Senior Lenders as unwilling interim lenders in this case, and in the Cash Collateral Motion, even threaten to cram the Prepetition Senior Lenders down as coerced exit lenders.  Although the Debtors have engaged in conversations with the Prepetition Senior Lenders regarding possible resolutions of the Exclusivity Motion and the Cash Collateral Motion, such negotiations are no closer to producing a realistic compromise.

23.     Taking the remaining <u>Adelphia</u> factors in turn, the Debtors still cannot meet their burden for extension of the exclusive periods.

24.     <u>Size and Complexity of the Cases.</u>  The size and complexity of these cases is mitigated by the passage of time, for much of the complexity of this case has been reduced to one simple issue – the exit financing.  At this point, implementation of the connector seals restructuring, if successful, may work to eventually enhance the availability of exit financing, but such implementation is not a factor that renders these cases complex.

25. <u>Sufficient Time to Negotiate a Plan.</u>  The Debtors have had nearly ten (10) months to negotiate and implement a plan.  The reasonableness of such time frame is reflected in the terms and conditions of the Cash Collateral Order, which contemplates a Termination Event if and when a reorganization plan paying the Prepetition Senior Lenders in full is not forthcoming.  The Debtors developed their Plan and engaged in discussions with the Prepetition Senior Lenders and the Committee, but have generally rebuffed any attempts to reach a consensual approach that might involve anything other than slight modification of the Debtors' preferred reorganization plan.  Discussion of sales, at any pace or any price, have been off limits.  The Debtors first filed their Plan on August 8, 2008 and then filed a revised version on December 10, 2009, indicating four months of negotiations that resulted in a failed attempt at the Proposed Plan.  During the interim adjournment, it does not appear that any meaningful movement has been made by the Debtors from the Proposed Plan, and as a result, these cases are no closer to resolution and stuck in neutral as the parties contest the Exclusivity Motion and the Cash Collateral Motion.

26. <u>Paying Bills as They Become Due</u>.  For reasons set forth more fully in the Prepetition Senior Lenders' objection to the Debtors' Cash Collateral Motion, and as demonstrated by the Debtors monthly operating reports, the Debtors are burning through cash at a rapid rate.  Although the Debtors have enough cash on hand to pay several months' worth of expenses, the day is quickly approaching where the Debtors may not have enough available cash to meet their needs.  Accordingly, this factor is not decisively in either party's favor, but the Prepetition Senior Lenders maintain that the continued pendency of these cases has been and will be at the expense of their Cash Collateral position.

27. <u>Time Elapsed in the Case</u>. As of the hearing, nearly eleven (11) months will have passed since the Commencement Date. As evidenced by the Cash Collateral Order, the Debtors' were given their shot at their Proposed Plan and have failed. It is time for the Prepetition Senior Lenders and the Committee to have their input into the resolution of these cases.

28. <u>Tactics to Pressure Creditors to Submit to Demands</u>. The unwillingness of the Debtors to engage in any sort of exploration of a sale process reveals their true intentions of squeezing additional concessions out of the Prepetition Senior Lenders and forcing use of Cash Collateral. As set forth above, the discrepancy in requested extensions supports a finding that the Exclusivity Motion, in concert with the Cash Collateral Motion, are designed by the Debtors to pressure the Prepetition Senior Lenders into further consensual use of Cash Collateral and going along with the continued pursuit of the Proposed Plan without any reasonable exploration of additional plan or sale options.

29. <u>Unresolved Contingency Exists</u>. This factor does not appear to apply to these cases. To the extent that the Debtor attempts to characterize the connector seals operational restructuring as an unresolved contingency, the Prepetition Senior Lenders posit that such restructuring and any effects on the availability of exit financing can be put to the market test in the form of soliciting bids from potential buyers. It should be noted that it is not clear that even a successful resolution of the contingency will result in the obtaining of exit financing or the confirmation of the proposed plan. Thus, to characterize the operational restructuring as an unresolved contingency is to give such factor too much weight in the analysis, as even a successful resolution may not enhance the Debtors' realization of their narrow vision for the ultimate resolution of these cases.

30.     Based on each of the foregoing factors, the Prepetition Senior Lenders maintain that the Debtors cannot meet their burden to demonstrate "cause" for a further extension of the exclusive periods pursuant to 11 U.S.C. § 1121, and the Exclusivity Motion should be denied.

## Reservation of Rights

31.     The Prepetition Senior Lenders reserve the right to amend, supplement, or withdraw this objection prior to or at the hearing on the Exclusivity Motion, and reserve the right to oppose the Exclusivity Motion at the hearing on any grounds whatsoever, whether or not contained in this objection or any amendment or supplement hereto.

Based on the foregoing, the Agents object to the Exclusivity Motion and urge the Court to deny extension of the exclusive periods, and not to enter the proposed order.

Respectfully submitted:

WALLER LANSDEN DORTCH & DAVIS LLP

*/s/ Robert J. Welhoelter*
John C. Tishler (*Pro Hac Vice*)
Robert J. Welhoelter (*Pro Hac Vice*)
511 Union Street, Suite 2700
Nashville, Tennessee  37219-8966
TEL: (615) 244-6380
FAX: (615) 244-6804
Email: John.Tishler@Wallerlaw.com
Email: Robert.Welhoelter@Wallerlaw.com

and

CARTER LEDYARD & MILBURN LLP

*/s/ Aaron R. Cahn*
Aaron R. Cahn
2 Wall Street
New York, New York 10005
TEL: (212) 238-8629
FAX: (212) 732-3232
Email: cahn@clm.com

*Counsel to Agents for Senior Prepetition Lenders*

**Certificate of Service**

I hereby certify that a true and correct copy of the foregoing pleading was served by email and hand delivery, upon the following parties on this the 13th day of February, 2009.

    Lexington Precision Corporation
    (Attn: Michael A. Lubin)
    800 Third Avenue, 15th Floor
    New York, New York 10023

    Weil, Gotshal & Manges, LLP
    (Attn: Adam Strochak)
    767 Fifth Avenue
    New York, New York 10153

    Office of the United States Trustee for the Southern District of New York
    (Attn: Paul Schwartzberg)
    33 Whitehall Street
    New York, New York 10004

    Andrews Kurth LLP
    (Attn: Paul Silverstein)
    450 Lexington Avenue
    New York, New York 10017

    O'Melveny & Meyers, LLP
    (Attn: Gerald Bender)
    Times Square Tower
    7 Times Square
    New York, New York 10036

I further hereby certify that a courtesy copy was delivered by hand delivery to Judge Glenn's chambers, also on this the 13th day of February, 2009.

                                      */s/ Aaron R. Cahn*
                                      Aaron R. Cahn