Dan Shaked
Shaked & Posner
255 West 36th Street, Fl 8
New York, NY 10018
Telephone: (212) 494-0035
Facsimile: (646) 367-4951
  Attorney for Claimant
  Lorraine Cerimele, Claim #262

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| **In re:** | : | **Chapter 11** |
| | : | |
| **LEXINGTON PRECISION CORP., et al.** | : | **Case No. 08-11153 (MG)** |
| | : | |
| Debtors. | : | **(Jointly Administered)** |
| | : | |
| | : | |

**CLAIMANT'S RESPONSE TO DEBTORS' OBJECTION TO
PROOF OF CLAIM #262 OF LORRAINE CERIMELE AND
MOTION OF CLAIMANT FOR RELIEF FROM AUTOMATIC STAY**

LORRAINE CERIMELE (the "Claimant"), an unliquidated creditor in the above referenced Chapter 11 bankruptcy case, hereby moves for an order granting relief from the automatic stay of §362(a) of the United States Bankruptcy Code (the "Code") to permit Claimant to pursue her recovery for her claim against the Debtors in the Common Pleas Court of Trumbull County, Ohio and request the court to overrule the Debtors' objection to her Proof of Claim 262 (the "Proof of Claim"). In support of this opposition, Claimant states as follows:

**I.    BACKGROUND**

On October 30, 2000 Claimant commenced an action in the Common Pleas Court of Trumbull County, Ohio against Debtors Lexington Precision Corp. and Lexington Components, Inc. dba Lexington Connector Seals (Subsidiary of Lexington Precision Corporation) (the

"Debtors"). The respective Corporate Systems C.T. Corporation System and Prentice Hall Corp. Systems was served along with Keith Blockinger, CEO of Vienna, Ohio. The complaint was in tort and for wrongful termination of employment.

On January 30, 2003 Claimant filed an amended complaint for tort and wrongful termination of employment demanding judgment for compensatory damages in the amount of $466,110.25; special damages in the amount of $102,597.24 with pre-judgment interest at 10% from December 17, 1998; and punitive damages in the amount of $2,000,000.00, attorney fees and costs. The Debtors were operating in Ohio through a division known as Lexington Connector Seals, which was and is engaged in the manufacturer of seals and/or other types of component parts and which are and were required to be in accordance with customer specifications and QS-9000 industry standards. Claimant was hired as an employee of the division Lexington Connector Seals on or about April 9, 1990 and continued her employment until December 17, 1998 at which time the Debtors wrongfully discharged her.

Claimant, at the time of her discharge, was the quality control manager at Debtors' Vienna, Ohio plant and her duties required that she implement and supervise the quality of the products manufactured by Debtors in accordance with customer specifications and industry standards. During her employment Claimant achieved General Motors "supplier of the year" award for the Debtors for 3-4 consecutive years.

Keith Blockinger, President of Lexington Components, Inc. dba Lexington Connection Seals, as Chief Executive Officer (the "President Blockinger") was Claimant's superior and as such was the only person who could override the decision of the quality control department.

Prior to Claimant's termination President Blockinger began, more and more, to override quality control decisions implemented by Claimant to the point where gradually the integrity of

2

the department was affected and Debtors were shipping defective and substandard products to its customers such as Delphi Packard Corp., AMP Corp., and others while requiring the quality control department to misrepresent the product to the customers as being of a particular standard, quality or grade expected under customer specifications, QS-9000 and other industry standards.

Claimant and persons working in the quality control department were being required and pressured to destroy paperwork, falsify paperwork and make misrepresentations to the customers by qualifying and passing for shipment inferior product, bad tooling and in some cases approving defective raw materials. Debtors, through President Blockinger, were fully apprised and informed of the serious problems in production and instead of following Claimant's decisions to stop shipment of the defective parts and improve its quality, Debtors, through its President and/or CEO, would countermand the decision of quality control and order the inferior product to be shipped knowing that the product was being falsely certified and misrepresented to the customer as to a particular standard, quality or grade.

Claimant's claim further states that Debtors' deceit, accelerated to the point that during a QS-9000 audit, and a customer audit at Debtors' plant Debtors, through orders of President Blockinger, rented large trailer trucks that were loaded to capacity with rejected parts that Debtors hid from its customers or auditors so that the inferior parts could not be seen on the floor of Debtors' plant and which were later shipped to the customers and represented as product meeting customers specifications and industry standards.

Claimant alleged in her claim that included among the important defective parts that the quality control department was ordered by Debtors to ship to the customer were defective ABS seals as part of an anti-lock brake system for motor vehicles for AMP, Corp. AMP Corp. representatives reiterated on numerous occasions the seriousness of the need for quality

3

standards of the seals that are components of anti-lock braking systems that, if defective, could possibly cause brake failure on motor vehicles. One of the standards prohibits what is called "tumbling" of defective seals. The defective seals were caused by tool deterioration. Instead of correcting the tooling President Blockinger would order the parts "tumbled" contrary to specifications, standards, and customer requirements in order to give the seals the appearance of being manufactured to proper standards and thus attempt to disguise the defects and deceive the customers of the quality of the seals.

Claimant also claims that President Blockinger also reduced required "cure time" on products and ordered employees to falsify and to purge official "cure time" reduction documents in order to falsify the certification of Debtors' product.

Claimant stated that she and other employees were eventually required by Debtors to compromise and abandon quality control standards mandated for the Debtors, through its agent President Blockinger's countermands, order, and intimidations to the extent that Claimant and other employees lived in fear of being discharged if they refused or failed to participate in Debtors deceptive trade practices.

Claimant stated in her claim that Debtors numerous deceptive trade practices with various customers continued to escalate and President Blockinger required Claimant to explain away the improper practices and to placate Debtors' customers in spite of Claimant's rejected attempts to innovate and initiate proper quality control and standards required by the customers in industry.

Shortly before Claimant's discharge by Debtors, AMP participated in an audit meeting, which Claimant was required to attend, and which the Debtors' CEO avoided. During the meeting of several days Claimant kept President Blockinger informed about the meeting and the customer's demands. President Blockinger said to the Claimant, "Fuck them—we can't do that,

4

we ain't going to do that, you deal with it." Shortly after that AMP representatives and President Blockinger held a meeting. The next day Claimant was called into President Blockinger's office and discharged from her employment.

Claimant states that Debtors was engaged in extreme and outrageous deceptive trade practices, contrary to O.R.C. §4165.02 ¶(2), ¶(4), ¶(7), ¶(8) and ¶(9).

Claimant further stated that her termination and discharge was contrary to and in violation of public policy in that it was based upon retaliation for her awareness, resistance and protest to Debtors repetitive deceptive trade practices toward customers contrary to O.R.C. §4165.02 whereby industry standards and customer specifications for products were deceptively compromised, misrepresented and falsified as to standard, quality or grade contrary to the best interest, safety and welfare of the general public who were the ultimate consumers of said product components manufactured by the Debtors.

Claimant alleged that as a direct and proximate result of her retaliatory and wrongful discharge by the Debtors she was damaged by loss and deprivation of salary, income, bonuses, vacation pay, and other fringe benefits.

For her second cause of action Claimant stated that the Debtors actions were motivated by malice, hatred, insult, ill-will and the spirit of revenge with a conscious, willful or wanton disregard for the legal rights and safety of Claimant and others and which had a great probability of causing great substantial harm.

## II.    CLAIMANT'S PROOF OF CLAIM MUST BE ALLOWED

    A.   *The State Trial Court Has Already Determined As A Matter Of Law That The Claimant Has Presented A "Prima Facie" Case Necessary To Bring An Action For A Claim For Wrongful Discharge In Violation Of Public Policy.*

Debtors filed a motion for judgment on the pleadings in the state court attempting to test Claimant's claim. The state court, having reviewed all of the relevant pleadings and applicable law, determined that Claimant met the criteria necessary to bring an action for wrongful termination in common law and overruled the Debtors' motion for judgment on the pleadings. By so doing the state court has already decided, as a matter of law, that Claimant's claim is with merit and is thus *res judicata*. The state court had jurisdiction to determine whether or not the Claimant had a *prima facie* case necessary to bring an action for a claim of wrongful discharge in violation of public policy. (See EXHIBIT A, State Court's Judgment Entry of 1/30/04)

> B.  *Debtors Claim That Claimant Did Not Properly Respond To Discovery Without Debtors Taking Like Responsibility Is Disingenuous.*

Debtors at ¶12 page 7 of its objections attempts to give an impression that Claimant is responsible for a lapse of time caused by her failure to respond to discovery. Debtors, however, fail to reveal its role in cooperating with discovery. On November 7, 2006 the state court determined that neither party had answered discovery in a timely fashion because arguments still existed over the discovery. The state court found that no direct harm had been visited on either side significant enough to sustain the Debtors' motion to dismiss.

This case involved many boxes of information, which Claimant attempted to obtain from Debtors that was necessary in the preparation of her case. Debtors did not cooperate. (See EXHIBIT B, State Court's Judgment Entry of 11/27/06)

> C.  *Debtors Are Wrong In Stating That There Is No Case Law In Ohio That Supports The Claimants Assertion That Ohio Revised Code §4165.02 Provides The Type Of "Clear Public Policy" Required To Support Her Wrongful Discharge Claim.*

Debtors assert at ¶14 page 8 of its objections that Claimant cannot meet the threshold element of the *Greeley* case because she failed to establish that Debtors violated any clear public

6

policy under Ohio Revised Code §4165.02. This is refuted by the case of *Celeste v. Wiseco Piston (2003-Ohio-703) 151 Ohio App.3d 554* decided by the Eleventh District Court of Appeals of Ohio, which reversed a court of common pleas in an identical factual situation. The Appellate District handles the district in which Claimant's trial court is situated.

In that case the defendant raised the defense of the *Greeley* case, however, the plaintiff made the argument that the underlying public policy was codified in the Ohio Revised Code §4113.52, Ohio Whistleblower Statute.

An employee is entitled to maintain a Greeley claim against his employer whether or not the employee complies with the dictates of R.C. 4113.52 if he can identify a source of public policy separate from the public policy embodied in R.C. 4113.52. *Doddy v. Centerior Energy Corp. (2000), 137 Ohio App.3d 673, 679. See, also, Kulch at 162; Evans v. PHTG, Inc., 11th Dist. No. 2001-T-0054, 2002-Ohio-3381, at ¶25; Iberis v. Mahoning Valley Sanitary Dist. (Dec. 21, 2001), 11th Dist. No. 2000-T-0036, 2000 WL 1647184, at 5.* The appellate court indicated that a complaint should not be dismissed for failure to state a claim merely because the allegations do not support the legal theory on which the plaintiff relies. It stated that Civil Rule 8(A) requires only that a pleading contain a short and plain statement of the circumstances entitling the party to relief. A party is not required to plead the legal theory of recovery or the consequences that naturally flow by operation of law from the legal relationships of the parties. The rules make it clear that a pleader is not bound by any particular theory of a claim but that the facts of the claim developed by the proof establishes the right to relief. The appellate court determined that there was an arguable theory upon which the plaintiff could recover.

In this case the Claimant has alleged that Debtors were engaged in deceptive trade practices toward customers contrary to O.R.C. §4165.02 whereby industry standards and

7

customer specifications for products were deceptively compromised, misrepresented and falsified as to standard, quality or grade contrary to the best interest, safety and welfare of the general public who were the ultimate consumers of the product components manufactured by Debtors. In the *Celeste* case the appellate court maintained that it was arguable that Ohio's Product Liability Act R.C. 2307.71, etc. may contain a public policy prohibiting employers from terminating an employee who reports to management his/her concerns about consumer safety as to the products being produced by the employer. (See, EXHIBIT C *Celeste, supra*)

By the same token Claimant, in the case at bar, is able to recover on the grounds that O.R.C. §4165.02 embraces a public policy separate from the public policy embodied in the statute to protect the general public from harm due to defective and unsafe products that can harm the public such as defective and compromised seals in anti-lock brakes.

> D.  *Claimant's Claim Involves A Matter Of State Public Policy Requiring This Court To Apply The Doctrine Of Abstention And To Lift Its Stay And Remand This Case Back To The State Court For Final Determination.*

*Burford v. Sun Oil Co. 319 U.S. 315, 63 S. Ct. 1098, 86 L.Ed. 1424 (1943)* the U.S. Supreme Court indicated that abstention is appropriate to "avoid resolving difficult state law issues involving important public policies or avoid interfering with state efforts to maintain a coherent policy in an area of comprehensive regulation or administration." *See American Disposal Services, Inc. v. O'Brien 839 F.2d 84, 87 (2d Cir. 1988) see also, Hanlin Group, Inc. v. Power Authority of the State of NY, 703 F. Supp. 305, 307 (S.D.N.Y. 1989) aff'd. 923 F.2d 844 (1990).*

The court in *Hanlin* determined that the factors to be considered to invoke the *Burford* abstention are 1) the degree of specificity of the state regulatory scheme, the 2) necessity for discretionary interpretation of state statutes, and 3) whether the subject matter of the litigation is

8

traditionally one of state concern.

In the case now before this Bankruptcy Court the state court has already indicated that Claimant has a *prime fascia* case, which requires the discretionary interpretation of Ohio law. In addition the state statutes and the public policy aspect necessitates discretionary interpretation and the public policy of the State of Ohio is one of state concern and not federal concern.

If a case has been removed from state court to federal court and it is determined that *Burford* type abstention is appropriate, the federal court may remand the case to state court rather than dismiss the case. *See Melahn v. Pennock Ins. Co., C.A. 8th, 1992, 965 F.2d 1497, 1501; Corcoran v. Ardra Ins. Co., C.A. 2d, 1988, 842 F.2d 31; Navajo Life Ins. Co. v. Fidelity & Deposit Co. of Md., C.D. Ariz. 1992, 807 F.Supp. 1485, 1490.*

In the case of *In re Joint Eastern and Southern Dist. Asbestos Litigation, 78 F.3d 764 C.A. 2.N.Y. 1996* it was decided that under the abstention doctrine, a district court may properly decline to decide difficult questions of state law bearing on substantial public policy matters whose importance transcends results in any particular case. In the case of *Shiflett v. GE Fanuc Automation Corp. Civ. A. No. 95-0073-C (1996)* the U.S. District Court of W.D. Virginia Charlottesville Division determined that federal courts should not be in the business of charting new waters for state public policy. §157 of Title 28 U.S.C. repeatedly emphasizes that the bankruptcy courts have no power to make factual determinations regarding personal injury tort claims. *See 28 U.S.C. §157(b)(2)(B)* (core jurisdiction does not extend to "the liquidation or estimation of contingent or unliquidated personal injury tort or wrongful death claims against the estate for purposes of distribution in a case under title 11"). Accordingly, under the *Burford* doctrine this court should abstain from deciding this case since it is a matter of public policy involving state law pertaining to a tort claim for wrongful termination.

9

Debtors contention at page 9 ¶16 of its objections that Claimant's dismissal was motivated by her poor work performance arising from her inability to work effectively with co-workers and customer dissatisfaction is merely an allegation and not necessarily a fact by which this court should dismiss her claim. On the contrary the state court has already concluded, as a matter of law, that Claimant has a *prima facie* case and already overruled Debtors motion to dismiss the case on that basis.

>   E.   *Claimant Denies All Factual Allegations And Defenses Advanced By Debtors And Submits That Debtors Cannot Introduce Evidence Necessary To Support Its Position.*

Debtors claim that Claimant's second cause of action is without merit should also be overruled in that if the case is to be remanded to the state court, under the *Burford* doctrine, then the entire matter should be remanded rather than the bankruptcy court deciding only a portion of the claim. This also should be a matter for the state court to decide since it is related to the Claimant's cause of action for tort-wrongful termination of employment.

**III.   RELIEF FROM AUTOMATIC STAY MAY BE GRANTED FOR CAUSE**.

§362(d)(1) of the Bankruptcy Code provides that the bankruptcy court may grant relief from the stay "for cause." Congress intended that the stay be lifted to allow the proceedings to continue in forms other than the bankruptcy court under appropriate circumstances:

> "It will often be more appropriate to permit proceedings to continue in their place of origin, when no great prejudice to the bankruptcy estate would result, in order to leave the parties to their chosen form and to relieve the bankruptcy court from any duties that may be handled elsewhere." *H.R. Rep. No. 95-595, at 341 (1977); S. Rep. No. 95-989 at 50 (1978) reprinted in 1978 U.S.C.C.A.N. 5787, 5836, 6297; Smith v. Tricare Rehabilitation Systems, Inc., 181 B.R. 569, 572-73 (Bankr. N.D. Ala. 1994).*

The interest of judicial economy and the expedition and economical resolution of litigation and whether the parties are ready for trial in the other proceeding is another factor that the court should consider in remanding the case back to the state court.

Clearly it would be more economical and expeditious to allow the claim to be resolved in the Ohio Common Pleas Court. Otherwise, this court will be burdened by the complex, unique, and time-consuming litigation that would distract the court from matters pertaining to the Debtors reorganization efforts.

A significant amount of time and effort has been invested in this case in Ohio by the parties and by the court. The Ohio court is well positioned to resolve the legal and factual issues fully and more expeditiously than this bankruptcy court.

WHEREFORE, based upon the foregoing, the Claimant respectfully requests that this court deny the Debtors objection to proof of claim of Lorraine Cerimele and grant her motion for relief from the automatic stay, and terminate, annul, modify or condition the automatic stay to permit her to adjudicate and liquidate her claim against Debtors in the Trumbull County Common Pleas Court of Ohio.

Dated: New York, NY  
February 18, 2009

SHAKED & POSNER

By:   /s/ Dan Shaked  
Dan Shaked, Esq. (DS-3331)  
255 West 36th Street, Fl 8  
New York, NY 10018  
Telephone: (212) 494-0035  
Facsimile: (646) 367-4951  
dan@shakedandposner.com

Attorney for Claimant  
Lorraine Cerimele, Claim #262

11