Hearing Date: **March 24, 2009 at 10:00 a.m. (ET)**
Objection Deadline: **March 17, 2009 at 10:00 a.m. (ET)**

ANDREWS KURTH LLP
Paul N. Silverstein (PS 5098)
Jonathan Levine (JL 9674)
450 Lexington Avenue, 15th Floor
New York, New York 10017
Telephone: (212) 850-2800
Facsimile: (212) 850-2929

Counsel to the Official Committee
of Unsecured Creditors

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------------------x

| | | |
|---|---|---|
| In re: | : | Chapter 11 |
| | : | |
| LEXINGTON PRECISION CORP, et al., | : | Case No. 08-11153 (MG) |
| | : | |
| | : | (Jointly Administered) |
| Debtors. | : | |

---------------------------------------------------------------x

## FIRST AMENDED APPLICATION FOR ORDER AUTHORIZING THE EMPLOYMENT OF STOUT RISIUS ROSS, INC., AS FINANCIAL ADVISORS TO THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS, EFFECTIVE AS OF MAY 13, 2008

The Official Committee of Unsecured Creditors (the "Committee") of Lexington Precision Corporation ("LEXP") and Lexington Rubber Group, Inc. (collectively with LEXP, the "Debtors") for this amended application (the "Application") for an order authorizing its employment of Stout Risius Ross, Inc. ("SRR"), as financial advisor to the Committee, effective as of May 13, 2008, pursuant to section 328(a) of title 11 of the United States Code (the "Bankruptcy Code"), respectfully represents:

### JURISDICTION

1.      This Court has jurisdiction over the subject matter of this Application pursuant to 28 U.S.C. §§157 and 1334. This is a core proceeding pursuant to 28 U.S.C. §157(b). Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

## GENERAL BACKGROUND

2.      On April 1, 2008 (the "Petition Date"), the Debtors filed with this Court petitions for relief under chapter 11 of title 11, United States Code (the "Bankruptcy Code").

3.      The Debtors continue to manage their properties and operate their businesses as debtor-in-possession pursuant to section 1107 and 1108 of the Bankruptcy Code. No trustee or examiner has been appointed in these cases.

4.      On May 13, 2008, the Committee filed with this Court its Application for Order Authorizing the Employment of Stout Risius Ross, Inc. as Financial Advisors to the Official Committee of Unsecured Creditors, Effective as of May 13, 2008 (the "Original Employment Application").

5.      On June 5, 2008, this Court entered its Order Authorizing Employment of Stout Risius Ross, Inc. as Financial Advisors to the Official Committee of Unsecured Creditors, Effective as of May 13, 2008.

## RELIEF REQUESTED

6.      By this Application, the Committee seeks authority to amend the terms of  SRR employment as its financial advisor, effective as of May 13, 2008, for the purposes set forth and upon the terms and conditions initially set forth in the engagement letter dated May 13, 2008 (the "Engagement Letter") annexed hereto as Exhibit A, and as now modified by the addendum letter dated February 27, 2009 (the "Addendum") annexed hereto as Exhibit B (together, the "Amended Engagement Letter").

## BASIS FOR RELIEF REQUESTED

7.      The time allocated and resources provided by SRR in the performance of services to the Committee has surpassed that initially contemplated in the Engagement Letter.

2

8.     Further, although the Engagement Letter anticipated a decline in the amount of

time allocated to Committee advisement as these chapter 11 cases progressed, SRR now

anticipates that its current time allocation will continue to be required for several more months.

9.     As such, SRR has requested, and the Committee has agreed, pursuant to Court

approval, that the terms of SRR employment be modified as follows:

- The company shall pay SRR a Monthly Fee of $50,000 for a minimum of fourteen (14) months rather than ten (10) months as outlined in the Engagement Letter

- SRR agrees that its aggregate out-of-pocket expenses reasonably incurred by SRR in connection with the matters contemplated by the Amended Engagement Letter (hereinafter defined) shall not exceed $50,000 without the Committee's prior approval rather than $25,000 as outlined in the Engagement Letter.

10.    Otherwise, all the terms and conditions of the Engagement Letter would still be

applicable.

SRR Holds No Interest Adverse to the Committee or Its Constituents

11.    As represented in the Original Employment Application, to the best of the

Committee's knowledge, information and belief: (a) SRR does not hold or represent any interest

adverse to the Committee in the matters for which it is to be retained, (b) SRR is a "disinterested

person" as that phrase is defined in section 101(14) of the Bankruptcy Code, (c) neither SRR nor

its professionals have any connection with the Debtors, their creditors or any other parties in

interest, including any United States Bankruptcy Judge in the Southern District of New York,

and (d) SRR's employment is necessary and is in the best interests of the Committee and the

Debtors' estates.

12.    SRR will continue to apply the disclosure procedure if additional information

concerning entities having a connection with the Debtors emerges and will file appropriate

supplemental disclosure with the Court (if any).

3

HOU:2905480.2

## NOTICE

13.     Notice of this Application has been given to the Debtors, the United States Trustee, and will be served on those parties on the Master Service List comprising: (a) the Office of the United States Trustee for the Southern District of New York; (b) counsel for the Debtors; (c) the indenture trustee under the Debtors' senior note indenture; (d) the Debtors' thirty (30) largest unsecured creditors; (e) those persons who have formally appeared and requested service in this proceeding pursuant to Bankruptcy Rule 2002; and (f) government agencies to the extent required by the Bankruptcy Rules and the Local Rules.  In light of the nature of the relief requested, the Committee submits that no further notice need be given.

WHEREFORE, the Committee respectfully requests that this Court (i) approve the proposed order attached hereto as Exhibit C; (ii) authorize the Committee to retain and employ SRR as financial advisors pursuant to the terms of the Amended Engagement Letter effective as of May 13, 2008, pursuant to sections 328(a) and 1103 of the Bankruptcy Code, on a final basis; and (iii) provide such other and further relief as is just and proper.

Dated:  New York, New York
        March 4, 2009

4

Respectfully submitted,

**THE OFFICIAL COMMITTEE OF
UNSECURED CREDITORS OF
LEXINGTON PRECISION CORPORATION**

By: /s/ Paul N. Silverstein
ANDREWS KURTH LLP
Paul N. Silverstein (PS 5098)
Jonathan Levine (JL 9674)
450 Lexington Avenue
New York, New York 10017
(212) 850-2800

Counsel to the Official
Committee of Unsecured Creditors

HOU:2905480.2

# EXHIBIT A



May 13, 2008

Mr. Robert Welch
Chairman, Official Committee of Unsecured Creditors of
Lexington Precision Corporation, *et al.*
c/o Jefferies High Yield Trading
The Metro Center
One Station Place, Three North
Stamford, CT 06902

RE:    Financial Advisors to the Official Committee of Unsecured Creditors of Lexington Precision Corporation, *et al.*

Dear Mr. Welch:

Thank you for selecting Stout Risius Ross, Inc. ("SRR") to provide financial advisory services to the Official Committee of Unsecured Creditors (the "Committee") of Lexington Precision Corporation, and its affiliated debtors and debtors-in-possession (collectively, the "Debtors" or the "Company"). This letter shall confirm the understanding of the Committee (the "Engagement Letter") concerning the engagement of SRR, the services to be provided by SRR and the manner in which SRR will be compensated for these services, effective as of May 13, 2008 (the "Effective Date").

<u>Objectives and Scope</u>

Subject to the Court's approval of SRR's Employment Application, SRR will serve as the Committee's financial advisors to perform the services described below, as needed, as well as any other services reasonably requested by the Committee.

1.    Financial advisory services, as reasonably requested by the Committee, including, but not limited to, the preparation of a liquidation analysis, monthly analysis of the Debtors' financial information (including analysis of significant changes financially, operationally or otherwise).

2.    Analysis of the Debtors' general financial and business condition, including an analysis of current assets and liabilities, PP&E and other "soft" assets.

3.    Qualitative analysis of the Debtors' plants, operations and facilities.

4.    Qualitative analysis of the Debtors' customers and suppliers.

5.    Qualitative analysis of the Debtors' principal products and markets.

6.    Meet with Committee to discuss SRR's various analyses.

*4000 Town Center, 20th Floor*
*Southfield, MI 48075*
*ph. 248 208-8800*
*fax 248 208-8822*
*www.srr.com*



Official Committee of Unsecured Creditors of
Lexington Precision Corporation, *et al.*
May 13, 2008
Page 2

7.      Determination of the Debtors' enterprise value as of the petition date and as of the
        effective date of a Chapter 11 plan of reorganization (the "Valuation Dates").

8.      Expert witness report and testimony regarding the Debtors' enterprise valuation, the
        valuation of any securities proposed to be issued under any Chapter 11 plan of
        reorganization for the Debtors, confirmation issues, or other matters.

        The Committee and SRR agree that the Committee may limit or expand the scope of our
representation from time to time on terms mutually acceptable to the parties in writing.

        Jeffrey M. Risius, or a suitable replacement as determined by SRR and the Committee
jointly, shall be the Managing Director in charge of the engagement.  Mr. Risius shall be the
testifying expert with regard to the business enterprise valuation.

<u>Fees and Expenses</u>

        In consideration of the services it provides to the Committee pursuant to this Engagement
Letter, SRR shall be entitled to receive, and the Company shall pay to SRR, the following
compensation:

1.      Commencing as of the date of the Engagement Letter, SRR shall be paid by the Company
        a monthly fee (the "Monthly Fee") each month in advance for its services of : (i) $50,000
        per month, for the first ten (10) months of the engagement and (ii) $20,000 per month
        thereafter through the Plan Approval Date (as defined below), subject to any order
        entered by the Bankruptcy Court regarding the reimbursement of professionals.
        Notwithstanding any termination of this Engagement Letter upon the terms provided
        herein, the Company shall pay SRR the Monthly Fee for a minimum of ten (10) months.
        The initial Monthly Fee of $50,000 shall be paid by the Company as soon as practicable
        after entry by the Bankruptcy Court of an order approving the Committee's retention of
        SRR.  To the extent the Committee requests SRR to perform additional services not
        contemplated by this Engagement Letter after the initial ten (10) months of the
        engagement, the Committee and SRR may mutually agree to modify the Monthly Fee.

2.      In addition to the fees described above, the Company agrees to promptly reimburse SRR,
        upon request from time to time, for all out-of-pocket expenses reasonably incurred by
        SRR in connection with the matters contemplated by this Engagement Letter including,
        without limitation, reasonable fees of counsel.  Out-of-pocket expenses shall include, but
        not be limited to, all reasonable travel expenses, duplicating charges (including graphic
        design charges), on-line service charges (including data room charges), messenger and
        delivery services, meeting services and long-distance telephone and facsimile charges
        incurred by SRR.  SRR agrees that its expenses shall not exceed $25,000 without the



Official Committee of Unsecured Creditors of
Lexington Precision Corporation, *et al.*
May 13, 2008
Page 3

Committee's prior approval, which approval shall not be unreasonably withheld or delayed.

<u>Wire Transfer</u>

All payments required hereunder shall be paid by wire transfer unless otherwise permitted by us. Set forth below are our funds transfer instructions:

> Stout Risius Ross, Inc.
> Fifth Third Bank
> Wire ABA Number 042000314
> ACH ABA Number 072405455
> Account Number 7911786619

<u>Bankruptcy Court</u>

The Committee, as soon as practicable following the execution of this Engagement Letter by the Committee, shall seek an order authorizing the employment of SRR pursuant to the terms of this Engagement Letter, as a professional person pursuant to (and subject to the standard of review of) section 328(a) of the Bankruptcy Code, the Bankruptcy Rules and applicable local rules and orders. The Committee shall use its best efforts to cause such application to be considered promptly. The employment application and the order authorizing employment of SRR shall be provided to SRR sufficiently in advance of their filing, and must be acceptable to SRR in its discretion. If the order authorizing the employment of SRR is obtained, the Company shall pay all fees and expenses as promptly as possible in accordance with the terms of this Engagement Letter, any orders entered in the Chapter 11 Cases regarding reimbursement of professionals, the Bankruptcy Code, the Bankruptcy Rules and applicable local rules and orders, and the Committee will work with SRR to promptly file any and all necessary applications regarding such fees and expenses with the Bankruptcy Court. If the order authorizing the employment of SRR is not obtained (or is later reversed or set aside for any reason), SRR may terminate this Engagement Letter and the Company shall reimburse SRR for all fees and expenses reasonably incurred prior to the date of termination, subject to the requirements of the Bankruptcy Code, Bankruptcy Rules and applicable local rules and orders. The terms of this paragraph are solely for the benefit of SRR and may be waived, in whole or in part, only by SRR.

<u>Term of Engagement</u>

This Engagement Letter shall extend until the entry of an order by the Bankruptcy Court approving a chapter 11 plan of reorganization (the "Plan Approval Date") unless earlier terminated upon thirty (30) days' written notice by the Committee. After the Plan Approval Date, this Engagement Letter may be terminated by either the Committee or SRR upon thirty



Official Committee of Unsecured Creditors of
Lexington Precision Corporation, *et al.*
May 13, 2008
Page 4

(30) days' written notice by the Committee or SRR without liability or continuing obligation;
provided, however, that termination of this Engagement Letter shall not affect (a) the Company's
indemnification, reimbursement, contribution and other obligations as set forth in this
Engagement Letter; (b) the confidentiality provisions set forth herein; and (c) SRR's right to
receive, and the Company's obligation to pay, any and all fees and expenses accrued as of the
effective date of termination of this Engagement Letter.

### Entire Agreement, Waiver, Modification, and Notices

This Agreement, including any Exhibits, constitutes the final and complete expression of
the parties with respect to its subject matter and supersedes and replaces any other written or oral
agreement or understanding between the parties. This Agreement may be amended, modified,
supplemented or waived only by a written instrument signed by both parties. No waiver of a
breach hereof shall be deemed to constitute a waiver of a future breach, whether of a similar or a
dissimilar nature. All notices, demands or other communications which are required or are
permitted to be given in this Agreement shall be in writing and shall be deemed to have been
sufficiently given (i) upon personal delivery, (ii) the third business day following due deposit in
the U.S. mail, postage prepaid, and sent certified mail, return receipt requested, correctly
addressed or (iii) when receipt is acknowledged if sent via facsimile transmission. Notices to
you shall be sent to the address set forth on page one of this Agreement with a copy to
Committee counsel.

To the extent of any inconsistency between the terms of this Agreement (including the
attached Professional Terms), and any Order of the Bankruptcy Court, the Order of the
Bankruptcy Court authorizing our employment shall govern.

### Indemnification

The Debtors agree to indemnify and hold harmless SRR and its affiliates, and their
respective past, present and future directors, officers, shareholders, employees, agents and
controlling persons within the meaning of either Section 15 of the Securities Act of 1933, as
amended, or Section 20 of the Securities Exchange Act of 1934, as amended (collectively, the
"Indemnified Parties"), to the fullest extent lawful, from and against any and all losses, claims,
damages or liabilities (or actions in respect thereof), joint or several, arising out of or related to
the engagement, any actions taken or omitted to be taken by an Indemnified Party (including acts
or omissions constituting ordinary negligence) in connection with the engagement, or any Sale
or proposed Sale contemplated thereby. In addition, the Debtors agree to reimburse the
Indemnified Parties for any legal or other expenses reasonably incurred by them in respect
thereof at the time such expenses are incurred; provided, however, the Debtors shall not be liable
under the foregoing for any loss, claim, damage or liability which is finally judicially determined
to have resulted primarily from the willful misconduct, gross negligence, bad faith or self-
dealing of any Indemnified Party.



Official Committee of Unsecured Creditors of
Lexington Precision Corporation, *et al.*
May 13, 2008
Page 5

If for any reason, the foregoing indemnification is unavailable to any Indemnified Party or insufficient to hold it harmless, the Debtors shall contribute to the amount paid or payable by the Indemnified Party as a result of such losses, claims, damages, liabilities or expenses in such proportion as is appropriate to reflect the relative benefits received (or anticipated to be received) by the Debtors, on the one hand, and SRR, on the other hand, in connection with the services rendered by SRR. If, however, the allocation provided by the immediately preceding sentence is not permitted by applicable law or otherwise, then the Debtors shall contribute to such amount paid or payable by any Indemnified Party in such proportion as is appropriate to reflect not only such relative benefits, but also the relative fault of the Debtors, on the one hand, and SRR, on the other hand, in connection therewith, as well as any other relevant equitable considerations. Notwithstanding the foregoing, the aggregate contribution of all Indemnified Parties to any such losses, claims, damages, liabilities and expenses shall not exceed the amount of fees actually received by SRR pursuant to the Engagement Letter.

The Debtors shall not effect any settlement or release from liability in connection with any matter for which an Indemnified Party would be entitled to indemnification from the Debtors, unless such settlement or release contains an unconditional release of the Indemnified Parties reasonably satisfactory in form and substance to SRR, from all liability to the party being settled with in connection with such matter. The Debtors shall not be required to indemnify any Indemnified Party for any amount paid or payable by such party in the settlement or compromise of any claim or action without the Debtors' prior written consent.

Prior to entering into any engagement or arrangement with respect to, or effecting, any (i) merger, statutory exchange or other business combination or proposed sale, exchange, dividend or other distribution or liquidation of all or a significant proportion of its assets, or (ii) significant recapitalization or reclassification of its outstanding securities that does not directly or indirectly provide for the assumption of the obligations of the Debtors set forth in this Engagement Letter, the Debtors will notify SRR in writing thereof (if not previously so notified) and, if requested by SRR, shall arrange in connection therewith alternative means of providing for the obligations of the Debtors set forth herein, including the assumption of such obligations by another party, insurance, surety bonds or the creation of an escrow, in each case in an amount and upon terms and conditions reasonably satisfactory to SRR.

The Debtors further agree that neither SRR nor any other Indemnified Party shall have any liability, regardless of the legal theory advanced, to the Debtors or any other person or entity (including, the Debtors' equity holders and creditors) related to or arising out of SRR's engagement, except for any liability for losses, claims, damages, liabilities or expenses incurred by the Debtors, which either (a) are finally judicially determined to have resulted primarily from, or (b) is agreed by such Indemnified Party to have resulted primarily from, the willful misconduct, gross negligence, bad faith or self-dealing of any Indemnified Party.



Official Committee of Unsecured Creditors of
Lexington Precision Corporation, *et al.*
May 13, 2008
Page 6

    The obligations of the Debtors set forth herein shall apply to any modifications of the Engagement Letter and shall be in addition to any liability, which the Debtors may otherwise have, and shall be binding upon and inure to the benefit of any successors, assigns, heirs and personal representatives of the Debtors and each Indemnified Party. The foregoing provisions shall survive any termination of the relationship established by the Engagement Letter.

    Please indicate your agreement with the terms of this letter (including the Professional Terms), subject to approval of the Bankruptcy Court, by signing and returning to me the enclosed copy of this letter. We appreciate the opportunity to be of service to you and look forward to working with you on this important project.

*   *   *   *   *   *

Very truly yours,

**STOUT RISIUS ROSS, INC.**

By:

Attachments:  Professional Terms

Acknowledged and Accepted:

**Official Committee of Unsecured Creditors of
Lexington Precision Corporation, *et al.***

Signed:

Name:  Robert J. Wright

Title:  Committee Chairman

Date:  May 13, 2008

**SRR**
STOUT | RISIUS | ROSS

# STOUT RISIUS ROSS, INC.
# PROFESSIONAL TERMS

**1. Our Services**  We will provide the services as described in our engagement letter, as may be modified from time to time by mutual consent.

**2. Independent Contractor**  We are an independent contractor and not your employee, agent, joint venturer or partner, and will determine the method, details and means of performing our services.  We assume full and sole responsibility for the payment of all compensation and expenses of our employees and for all of their state and federal income tax, unemployment insurance, Social Security, disability insurance and other applicable employee withholdings.

**3. Fees and Expenses**  Our fees, out-of-pocket expenses, and payment terms are set out in our engagement letter. Those fees do not include taxes. You will be responsible for and pay all applicable sales, use, excise, value added and other taxes associated with the provision or receipt of the services, excluding taxes on our income generally.

**4. Confidentiality**  With respect to any information supplied in connection with this engagement and designated by any party as confidential, or which the other party(s) should reasonably believe is confidential based on its subject matter or the circumstances of its disclosure, the other party(s) agree to protect the confidential information in a reasonable and appropriate manner, and use confidential information only to perform its obligations under this engagement and for no other purpose. This will not apply to information which is: (i) publicly known, (ii) already known to the recipient, (iii) disclosed by a third party without restriction, (iv) independently developed, or (v) disclosed pursuant to legal requirement or order.  We may also mention the name of the Company and provide a general description of the engagement in our client lists or marketing presentations to others.

**5. Use of Financial & Other Information / GAAS**  In the course of the Engagement, we will use financial and other information, including prospective financial information, obtained from you, the Company, and/or your representatives, and other public and private sources.  The scope of our work will not enable us to accept responsibility for the accuracy and completeness of such information, and it is understood that we will have no duty of independent investigation or verification of such information. While our work may involve analysis of various records, our engagement does not include an examination in accordance with generally accepted auditing standards known as "GAAS." Furthermore, we will take no responsibility for

the achievability of any expected, forecasted, projected, or hypothetical results anticipated or assumed by the management of the Company, whether relied upon by us or not.

**6. Our Financial Interest / Compensation**  None of our employees who will work on this engagement have any known financial interest in the Company or the outcome of our analysis, and our compensation is neither based upon nor contingent upon the conclusions we reach.  We do not warrant or predict results or final developments in this matter.

**7. Staffing**  While we will attempt to comply with your requests for specific individuals, we retain the right to assign and reassign our personnel, as appropriate, to perform the services.

**8. General**  (a) These Professional Terms, together with the engagement letter, including all its attachments, constitute the entire understanding and agreement between us with respect to the services and deliverables described in the engagement letter, supersede all prior oral and written communications between us, and may be amended, modified or changed only in writing when signed by all parties.  If there is a conflict between these Professional Terms and the terms of the engagement letter, these Professional Terms will govern.

(b)    No term of this agreement will be deemed waived, and no breach of this agreement excused, unless the waiver or consent is in writing signed by the party granting such waiver or consent.

(c)    The terms of this agreement which by their nature are to survive this agreement will survive its expiration or termination.

(d)    We will retain files related to this engagement in accordance with our document retention policy.

(e)    We each acknowledge that we may correspond or convey documentation via Internet e-mail and that none of the parties has control over the performance, reliability, availability, or security of Internet e-mail. Therefore, none of the parties will be liable for any loss, damage, expense, harm or inconvenience resulting from the loss, delay, interception, corruption, or alteration of any Internet e-mail due to any reason beyond our reasonable control.

(f)    All of our respective rights and duties and all controversies and claims in connection with this engagement will be determined in accordance with the laws of the State of Michigan.

*  *  *

# EXHIBIT B



February 27, 2009

Mr. Robert Welch
Chairman, Official Committee of Unsecured Creditors of
Lexington Precision Corporation, *et al.*
c/o Jefferies High Yield Trading
The Metro Center
One Station Place, Three North
Stamford, CT  06902

RE:  Financial Advisors to the Official Committee of Unsecured Creditors of Lexington
Precision Corporation, *et al.*

Dear Mr. Welch:

This letter shall serve as an addendum to our previously issued engagement letter dated
May 13, 2008 (the "Engagement Letter"), which is attached.

Given that the case is not substantially complete with respect to our services as was
originally contemplated by the terms of the Engagement Letter, we request the following
updated terms related to items one and two in the "Fees and Expenses" section of the
Engagement Letter.

1.  The Company shall pay SRR a Monthly Fee of $50,000 for a minimum of
    fourteen (14) months (rather than ten (10) months as outlined in the Engagement
    Letter).

2.  SRR agrees that its aggregate out-of-pocket expenses reasonably incurred by SRR
    in connection with the matters contemplated by the Engagement Letter shall not
    exceed $50,000 without the Committee's prior approval (rather than $25,000 as
    outlined in the Engagement Letter).

All of the other terms and conditions of the Engagement Letter shall still be applicable to
this assignment.

*4000 Town Center, 20th Floor*
*Southfield, MI 48075*
  *ph. 248 208-8800*
  *fax 248 208-8822*
*www.srr.com*



Official Committee of Unsecured Creditors of
Lexington Precision Corporation, *et al.*
February 27, 2009
Page 2 of 2

Please indicate your agreement with the terms of this addendum to the Engagement
Letter, subject to approval of the Bankruptcy Court, by signing and returning to me the
enclosed copy of this letter.

\*    \*    \*    \*    \*    \*

Very truly yours,

**STOUT RISIUS ROSS, INC.**

By:        _____
           Jeffrey M. Risius, CPA/ABV, CFA, ASA
           Managing Director

Attachments:   Engagement Letter dated May 13, 2008

Acknowledged and Accepted:

**Official Committee of Unsecured Creditors of
Lexington Precision Corporation, *et al.***

Signed: _____

Name: _____

Title: _____

Date: _____

# EXHIBIT C

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------x
In re:                                          :          Chapter 11
                                                :
LEXINGTON PRECISION CORP, et al.,               :          Case No. 08-11153 (MG)
                                                :
                                                :          (Jointly Administered)
                          Debtors.              :
-----------------------------------------------------------------x

## ORDER AUTHORIZING AMENDMENT OF EMPLOYMENT TERMS OF STOUT RISIUS ROSS, INC. AS FINANCIAL ADVISORS TO THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS, EFFECTIVE AS OF MAY 13, 2008

Upon consideration of the application (the "Application") of the Official Committee of

Unsecured Creditors (the "Committee") of Lexington Precision Corporation ("LEXP") and

Lexington Rubber Group, Inc. (collectively with LEXP, the "Debtors") in the above-captioned

Chapter 11 cases for entry of an order, under sections 328(a) and 1103(a) of title 11 of the United

States Code (the "Bankruptcy Code"), and Rule 2014 of the Federal Rules of Bankruptcy

Procedure (the "Bankruptcy Rules"), authorizing the amendment of the terms of employment of

Stout Risius Ross, Inc. ("SRR") as its financial advisor, effective as of May 13, 2008, pursuant to

the terms of SRR's engagement letter dated as of May 13, 2008 (the "Engagement Letter"), and

as modified by the addendum letter dated February 27, 2009 (the "Addendum") (collectively

with the Engagement Letter, the "Amended Engagement Letter"); and the Court having

considered the Application, and it appearing that the amended terms and conditions of SRR's

employment as set forth in the Application and the Amended Engagement Letter are fair and

reasonable, including, without limitation, the Fee Structure (as defined in the Application); and

the Court having jurisdiction to consider and determine the Application as a core proceeding

under 28 U.S.C. §§ 157 and 1334; and it appearing that notice has been given and no other or

further notice need be given; and after due deliberation and sufficient cause appearing therefor, it

is hereby

ORDERED that, pursuant to sections 328(a) and 1103 of the Bankruptcy Code, the Application is hereby granted, and the terms of SRR employment as the Committee's financial advisors, as of May 13, 2008, shall be amended as set forth in the Addendum; and it is further

ORDERED that, except those terms modified under the Addendum, all terms and conditions relating to SRR employment as set forth in this Court's Order Authorizing Employment of Stout Risius Ross, Inc. as Financial Advisors to the Official Committee of Unsecured Creditors, Effective as of May 13, 2008 [Docket # 163], entered June 5, 2008, shall remain in effect, and it is further

ORDERED that the Court shall retain jurisdiction with respect to any matters arising from or related to this Order or the implementation hereof.

Dated: _____, 2008


_____
UNITED STATES BANKRUPTCY JUDGE

2