WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007
Richard P. Krasnow
Adam P. Strochak

Attorneys for Debtors and
Debtors in Possession

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---------------------------------------------------------------x
::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::
In re                                              :    Chapter 11 Case No.
                                                   :
**LEXINGTON PRECISION CORP., et al.,**             :    08-11153 (MG)
                                                   :
        Debtors.                                   :    (Jointly Administered)
                                                   :
---------------------------------------------------------------x

**DEBTORS' RESPONSE AND RESERVATION OF RIGHTS TO THE SECOND
INTERIM FEE AND EXPENSE APPLICATION OF ANDREWS KURTH LLP AS
COUNSEL TO THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS**

TO THE HONORABLE MARTIN GLENN,
UNITED STATES BANKRUPTCY JUDGE:

Lexington Precision Corporation ("Lexington Precision") and Lexington Rubber Group, Inc. ("Lexington Rubber Group" and, together with Lexington Precision, "Lexington" or the "Debtors"), as debtors and debtors in possession, respectfully submit this response and reservation of rights to the second interim fee and expense application of Andrews Kurth LLP ("Andrews Kurth") as counsel to the Official Creditors' Committee (the "Committee") for the period of August 1, 2008 through November 30, 2008 (the "AK Second Interim Fee Application") [Docket No. 525], respectfully represent as follows:

**Background**

1.   On April 1, 2008 (the "Commencement Date"), the Debtors commenced a voluntary case under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code"). The Debtors continue to operate their business and manage their properties as a debtor in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

2.   On April 2, 2008, the Debtors filed the Motion Pursuant to Sections 105(a) and 331 of the Bankruptcy Code and Bankruptcy Rule 2016(a) to Establish Procedures For Interim Monthly Compensation and Reimbursement of Expenses of Professionals [Docket No. 32] (the "Interim Compensation Procedures Motion"). By order, dated April 22, 2008, the Court approved the Interim Compensation Procedures Motion [Docket No. 84] (the "Interim Compensation Procedures Order").

3.   On April 11, 2008, the United States Trustee appointed the Committee to represent the holders of unsecured claims against the Debtors. [Docket No. 49].

**Jurisdiction**

4.   This Court has jurisdiction to consider this Objection pursuant to 28 U.S.C. §1334. This matter is a core proceeding pursuant to 28 U.S.C. § 157(b). Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

**The Second Interim Fee Applications**

5.   On May 13, 2008, the Court entered an order granting the Committee's application to retain Andrews Kurth, as counsel for the Committee. [Docket No. 101].

6.   On January 15, 2009, Andrews Kurth filed the AK Second Interim Fee Application for the period of August 1, 2008 through November 30, 2008 (the "Second Interim Compensation Period"). The AK Second Interim Fee Application seeks interim allowance of compensation in the amount of $405,132.00 and reimbursement of expenses of $16,641.25.

2

7. On January 28, 2009, Weil, Gotshal & Manges LLP ("WG&M") filed its second interim application (the "WG&M Second Interim Fee Application") for fees and expenses incurred as Debtors' counsel for the Second Interim Compensation Period seeking interim allowance of compensation in the amount of $400,657.75 and reimbursement of expenses of $13,819.61.

**Limited Response and Reservation of Rights**

8. Fee applicants bear the burden of proof for a claim for compensation. Howard & Zukin Cap. v. High River Ltd. P'ship, 369 B.R. 111, 113 (S.D.N.Y. 2007). A bankruptcy court has an independent duty to protect the estate "lest overreaching professionals drain it of wealth which by right should inure to the benefit of unsecured creditors." In re Keene Corp., 205 B.R. 690, 695 (Bankr. S.D.N.Y. 1997) (citations omitted).

9. The Court is aware that this case has been contentious and that professional fees incurred during the case have significantly reduced the Debtors' cash availability. The Court has itself noted that it was concerned about the litigious posture of the case and would scrutinize fee applications to ensure that services provided benefit the estate. See Transcript of Mot. to Extend Exclusivity and Application for Fees, 153-155, Oct. 28, 2008, annexed hereto as Exhibit A. The Debtors recognize that extensive litigation over professional fees is likely only to cause further rancor and result in still greater expenses. For these reasons, the Debtors do not at this time object to the AK Second Interim Fee Application but submit this Response to call to the Court's attention to certain issues.

10. Andrews Kurth's fees for the Second Interim Compensation Period were slightly more than those of the Debtors' counsel during the same period. A substantial portion of the time spent by Debtors counsel on the case during the Second Interim Compensation

Period, however, was driven by the Committee's decision to oppose a second extension of exclusivity. Some of the tasks undertaken by Debtors' counsel and the Committee's counsel were similar – for example, analyzing valuation issues in September and litigating the second motion to extend exclusivity in October – and it is thus understandable why fees would be comparable for these tasks. But in addition to responding to objections filed by Andrews Kurth, Debtors' counsel also prepared and filed a plan and disclosure statement during this same period, work that the Committee's counsel did not undertake. It thus appears that Andrews Kurth's work during the Second Interim Compensation Period was focused largely on litigation rather than reorganization efforts.

11. The Debtors also note that Andrews Kurth has staffed this engagement heavily with senior lawyers. The AK Second Interim Fee Application reflects that partners and counsel billed 320.3 hours, which accounts for nearly 50% of the total hours incurred by Andrews Kurth for the Second Interim Compensation Period. By comparison, the WG&M Second Interim Fee Application reflects that partners billed 242.3, which accounted for approximately 31% of the total hours incurred by WG&M for the Second Compensation Period. While the Debtors do not contend that senior level staffing is necessarily inappropriate, they call this to the attention of the Court because both the number of senior lawyers at Andrews Kurth and the ratio of partner/counsel hours to associate hours appears very high. Although this case is contentious, it remains a modest one in terms of size and complexity.

12. The Debtors file this limited response to reserve their rights to object to the fees of Andrews Kurth at the Court's hearing on the final approval of professionals' fee applications for these chapter 11 cases. In raising these issues now, it is the Debtors intention to work constructively with the Court and counsel for the Committee to manage legal fees

4

effectively as the case moves forward in order to preserve value for all constituents.

Dated: Mach 25, 2009
      New York, New York

    /s/ Adam P. Strochak
    Richard P. Krasnow
    Adam P. Strochak

    WEIL, GOTSHAL & MANGES LLP
    767 Fifth Avenue
    New York, New York 10153
    Telephone: (212) 310-8000
    Facsimile: (212) 310-8007

    Attorneys for Debtors and
    Debtors in Possession

# EXHIBIT A

**(October 28, 2008 Transcript)**

```
 1                    UNITED STATES BANKRUPTCY COURT
                       SOUTHERN DISTRICT OF NEW YORK
 2


 3   ------------------------------------X
     In Re:                              :   08-11153 (MG)
 4                                       :
        LEXINGTON PRECISION CORPORATION, :    One Bowling Green
 5                                       :    New York, New York
                    Debtor.              :    October 28, 2008
 6   ------------------------------------X

 7
              TRANSCRIPT OF MOTION TO EXTEND EXCLUSIVITY
 8        APPLICATION FOR FEES OF WEIL, GOTSHAL & MANGES LLP
             APPLICATION FOR FEES OF ANDREWS KURTH, LLP
 9        APPLICATION FOR FEES OF W.Y. CAMPBELL & COMPANY
          APPLICATION FOR FEES OF STOUT RISIUS ROSS, INC.
10               BEFORE THE HONORABLE MARTIN GLENN
                    UNITED STATES BANKRUPTCY JUDGE
11

12   APPEARANCES:

13
     For the Debtors:         ADAM P. STROCHAK, ESQ.
14                            CONRAY C. TSENG, ESQ.
                              Weil, Gotshal & Manges LLP
15                            767 Fifth Avenue
                              New York, New York  10153
16
     For the Bondholders:     PAUL N. SILVERSTEIN, ESQ.
17    Committee               JONATHAN I. LEVINE, ESQ.
                              GERALD BRACHT, ESQ.
18                            Andrews Kurth LLP
                              450 Lexington Avenue
19                            New York, New York  10017

20   For Webster:             SCOTT A. ZUBER, ESQ.
                              Day Pitney LLP
21                            PO Box 1945
                              Morristown, New Jersey 07962

22

23                    (Appearances continued on next page.)

24

25



     Proceedings recorded by electronic sound recording,
     transcript produced by transcription service
```

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

For Capital Source:       AARON R. CAHN, ESQ.
 Finance                  Carter Ledyard & Milburn LLP
                          2 Wall Street
                          New York, New York 10005

U.S. Trustee:             PAUL SCHWARTZBERG, ESQ.
                          U.S. Department of Justice
                          Office of the United States Trustee
                          33 Whitehall Street, 21st Floor
                          New York, New York 10004


Court Transcriber:        SALLY REIDY
                          TypeWrite Word Processing Service
                          211 N. Milton Road
                          Saratoga Springs, New York 12866

153

1         MR. SILVERSTEIN:  I will look into that amount
2  expense.
3         THE COURT:  Okay.  Okay.  More seriously, and I'm not
4  -- not reflected in these adjustments.
5         MR. SILVERSTEIN:  Well, Your Honor, what was the
6  number so I can just write that down, three?
7         THE COURT:  Yes.  $3,394.50.
8         MR. SILVERSTEIN:  Thank you, Your Honor.
9         THE COURT:  Okay.  92,000 -- this is not an
10 adjustment, it's an issue I'm raising.  $92,726.50 of your fee
11 application was incurred in connection with the first
12 exclusivity motion.
13        MR. SILVERSTEIN:  Lot of money.
14        THE COURT:  And the question that I'm raising is
15 whether -- and I recognize that I during a telephone hearing
16 determined that it was a contested matter, I gave you limited
17 discovery, and I understand it's expensive.  You know, the
18 standard in the Second Circuit is whether the services are
19 necessary at the time in which the services were rendered.  And
20 services are necessary if they benefit the estate.  Judge
21 Bernstein's opinion In Re Keene Corp, 205 B.R. 690 and 695
22 (Bankr. S.D.N.Y. 1997).  And there's nothing astounding about
23 that proposition.
24        I've not made any adjustment.  And I flagged the
25 exclusivity hearing but there was also -- and actually we

1  couldn't -- you put in an objection to the debtors' application
2  to extend time to file schedules.  And I have to tell you it
3  seemed like a absolute waste of time to me and a waste of money
4  of the estate.  That was earlier, that was even earlier in the
5  case.  I mean it's the first time.  Look, Mr. Silverstein, I've
6  only been on the bench two years but I don't think I've ever
7  had anybody file a written opposition to a relatively modest
8  request to extend time to file schedules.
9            MR. SILVERSTEIN:  Yeah, I think -- I'm refreshing my
10 recollection from my colleague, Mr. Levine.  I think the
11 committee requested that we did that, that we do that, and I
12 think it was a very modest cost in doing that.  I don't think
13 had a hearing on that.
14           THE COURT:  Well, it was -- we did have a hearing.
15           MR. SILVERSTEIN:  But it wasn't just for that, I
16 think it was --
17           THE COURT:  No, we didn't just do that.
18           MR. SILVERSTEIN:  -- on account with other matters.
19 But I --
20           THE COURT:  My point is this.  Early in this case it
21 seemed that you objected to everything the debtor proposed to
22 do.  And at one hearing I thought you more or less said that,
23 you know, your theme and theory was that the debtor was wasting
24 time, that this was -- they had -- they're -- you know, the
25 pre-petition negotiations didn't get anywhere, all they're

1  doing is proposing the same thing.  And then everything you
2  did, you objected to everything the debtor proposed, even as
3  simple as a motion to extend time to file schedules.  I mean
4  this may not be the biggest case in the world but it's still a
5  relatively complicated case.  I'm just telling you that I'm
6  going to be mindful reviewing fee applications in the future
7  whether the services performed viewed from the time when they
8  were done benefitted the estate.  And if they didn't, they're
9  not going to get compensated.  Okay?  Now, with respect to your
10 expenses.
11          MR. SILVERSTEIN:  Yes.
12          THE COURT:  Submit the detail.  I would ask you
13 before you submit it, the expenses you were seeking of
14 $21,817.18.
15          MR. SILVERSTEIN:  Yes.
16          THE COURT:  Please review them carefully.
17          MR. SILVERSTEIN:  Yeah, we will.
18          THE COURT:  If --
19          MR. SILVERSTEIN:  If I find something that --
20          THE COURT:  Yeah.  I mean I do -- this issue -- I
21 mean we haven't revised the guidelines on overtime meals for a
22 very long time.  But, you know, if people are working hard,
23 it's hard to actually eat something for more than $20.  But I
24 do regularly enforce it, okay?  So if -- submit the backup.  If
25 you adjust the amount, so indicate and what you've reduced, and