UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------------------x
                                                    :
In re                                               :        Chapter 11 Case No.
                                                    :
LEXINGTON PRECISION CORP., et al.,                  :        08-11153 (MG)
                                                    :
            Debtors.                                :        (Jointly Administered)
                                                    :
-------------------------------------------------------------------x

## THIRD ORDER PURSUANT TO BANKRUPTCY CODE SECTIONS 105(A), 361, 362, AND 363 (I) AUTHORIZING DEBTORS TO USE CASH COLLATERAL AND (II) GRANTING ADEQUATE PROTECTION TO PREPETITION SECURED LENDERS

Upon the Motion, dated April 29, 2009 (the "Motion") of Lexington Precision

Corporation ("Lexington Precision") and Lexington Rubber Group, Inc. ("Lexington Rubber"

and, together with Lexington Precision, the "Debtors"), as debtors and debtors in possession, for

an order pursuant to sections 105(a), 361, 362, and 363 of chapter 11 of title 11 of the United

States Code (the "Bankruptcy Code") and Rule 4001 of the Federal Rules of Bankruptcy

Procedure (the "Bankruptcy Rules") authorizing them to (i) use Cash Collateral (as defined

below) and (ii) grant adequate protection to the Debtors' Prepetition Senior Lenders (as defined

below), all as more fully described in the Motion; and the Court having jurisdiction to consider

the Motion and the relief requested therein pursuant to 28 U.S.C. §§ 157 and 1334 and the

Standing Order M-61 Referring to Bankruptcy Judges for the Southern District of New York

Any and All Proceedings Under Title 11, dated July 10, 1984 (Ward, Acting C.J.); and

consideration of the Motion and the relief requested therein being a core proceeding pursuant to

28 U.S.C. § 157(b); and venue being proper before this Court pursuant to 28 U.S.C. §§ 1408 and

1409; and due and proper notice of the Motion having been provided to (i) the United States

Trustee for the Southern District of New York (the "U.S. Trustee"), (ii) the attorneys for the

agents for the Debtors' Prepetition Senior Lenders (as defined below), (iii) the attorneys for the

Debtors' postpetition lenders, (iv) the attorneys for the Creditors' Committee (as defined below),

and (v) all other parties that have requested notice in these chapter 11 cases, and it appearing that

no other or further notice need be provided; and the relief requested in the Motion being in the

best interests of the Debtors and their estates and creditors; and the Court having reviewed the

Motion; and based on the evidence adduced and the representations of counsel at the hearings on

February 23, 2009, February 24, 2009, and May 20, 2009 (the "Hearing") in support of the

Motion; and the Court having determined that the legal and factual bases set forth in the Motion

establish just cause for the relief granted herein; and upon all of the proceedings had before the

Court and after due deliberation and sufficient cause appearing therefor,

**THE COURT HEREBY FINDS:**

> A.    On April 1, 2008 (the "Commencement Date"), Debtors filed voluntary

petitions for relief under chapter 11 of the Bankruptcy Code.

> B.    Debtors have retained possession of their property and continue to operate

and manage their business as debtors in possession pursuant to sections 1107 and 1108 of the

Bankruptcy Code. On April 11, 2008, a statutory committee of unsecured creditors (the

"Creditors' Committee") was appointed in these chapter 11 cases. No trustee, examiner, or any

other committee has yet been appointed in these chapter 11 cases.

> C.    Prior to the Commencement Date, the Prepetition Senior Lenders (as

defined below) made certain loans and other financial accommodations available to the Debtors

pursuant to, among other things, the following documents (collectively, with any and all other

agreements, instruments, and related documents, including without limitation, guaranties,

pledges, and discretionary funding letters executed by any Debtor and any Other Documents (as

defined in each of the Credit Agreement (defined below) and the Loan Agreement (defined

below)), the "Prepetition Senior Lender Loan Documents"):

(i) that certain Credit and Security Agreement, dated May 31, 2006 (as amended

to date and as may be amended, restated or otherwise modified from time to time, the

"Credit Agreement"), between the Debtors, as borrowers, and CapitalSource Finance

LLC ("CapitalSource"), as a lender, as collateral agent and administrative agent for itself

and other lenders under the Credit Agreement (CapitalSource, when acting in such

capacity, is herein called the "Revolver Agent"), and as Co-Documentation Agent, and

Webster Business Credit Corporation ("Webster") as a lender (CapitalSource and

Webster, as lenders, collectively the "Prepetition Revolver Lenders") and as Co-

Documentation Agent;

(ii) that certain Loan and Security Agreement, dated May 31, 2006 (as amended

to date and as may be amended, restated or otherwise modified from time to time, the

"Loan Agreement"), between the Debtors, as borrowers, and CSE Mortgage LLC

("CSE"), as a lender and as collateral agent for itself and each other lender under the

Loan Agreement (CSE, when acting in such capacity, is herein called the "Term Loan

Agent") (Revolver Agent and Term Loan Agent, collectively, the "Agents"), and DMD

Special Situations Funding LLC, ("DMD"), as a lender under the Loan Agreement (DMD

and CSE, as the Term Loan Agent and a lender under the Loan Agreement, along with

the Revolver Agent and the Prepetition Revolver Lenders, collectively, the "Prepetition

Senior Lenders");

(iii) that certain First Amendment and Default Waiver Agreement between Debtors and CapitalSource, Webster, CSE and DMD in their various capacities dated as of November 20, 2006; and

(iv) that certain Agreement dated as of May 18, 2007 by and among the Debtors, Agents (in their capacities as agents and lenders) and the other Prepetition Senior Lenders, as amended by that certain First Amendment to Forbearance Agreement, dated as of July 20, 2007, as further amended by that certain Second Amendment to Forbearance Agreement effective as of September 24, 2007, and as further amended by that certain Third Amendment to Forbearance Agreement executed December 11, 2007 and deemed effective as of November 26, 2007 (collectively, the "Forbearance Agreement").

D.      The Court (J. Gonzalez) approved the use of Cash Collateral by order dated April 17, 2008 [Docket No. 61] (the "First Cash Collateral Order") and this Court approved a further extension by order dated March 4, 2009 [Docket No. 579] (the "Second Cash Collateral Order").

E.      As used herein, "Prepetition Senior Secured Debt," means all Obligations, as defined in the Prepetition Senior Lender Loan Documents, including, without limitation, costs, fees (including without limitation allowed prepayment or termination fees) and expenses that were outstanding under the Prepetition Senior Lender Loan Documents as of the Commencement Date. Without limiting the foregoing and in addition to any other amounts included in the Prepetition Senior Secured Debt, (i) the Debtors (a) acknowledge that section 14.1 of the Credit Agreement and section 3.8 of the Loan Agreement refer to the payment of prepayment premiums and/or termination fees (the "Prepayment Fees") and (b) refers to said sections as to the terms

and provisions thereof, and (ii) the Prepetition Senior Lenders (a) reserve their rights to assert that the Debtors have an obligation to pay such Prepayment Fees and (b) acknowledge that the Debtors and all other parties in interest shall have the right to challenge or otherwise object to the payment of such Prepayment Fees.

F.      The Debtors represent, stipulate, acknowledge, and agree that:

(i) the Prepetition Senior Secured Debt is (a) legal, valid, binding, and enforceable against each Debtor; and (b) not subject to any contest, objection, recoupment, defense, counterclaim, offset, claim of subordination, claim of recharacterization, claim of avoidance of any nature, attack or challenge under the Bankruptcy Code, other applicable non-bankruptcy law, or otherwise;

(ii) all the Prepetition Senior Secured Debt is secured by the security interests in the Collateral (as defined below) previously granted under the Prepetition Senior Lender Loan Documents to the Prepetition Senior Lenders, that the Agents have, and will continue to have after entry of this Order, a legal, valid, enforceable, non-avoidable and continuing duly-perfected first priority security interest (and junior security interest, as applicable, subject to the terms of that certain Intercreditor Agreement dated as of May 31, 2006 between Revolver Agent, as agent and lender, Revolver Lenders, Term Loan Agent, as agent and lender, and Term Loan Lenders (the "Intercreditor Agreement")) in and lien on the Collateral, as more fully described and defined in the Prepetition Senior Lender Loan Documents (all such "Collateral", as the same existed on or at any time prior to the Commencement Date, together with all cash and non-cash proceeds thereof, shall be hereinafter referred to as "Senior Lender Prepetition Collateral" and such liens thereon shall be referred to as the "Senior Lender Prepetition Liens"), subject to no liens

or security interests other than the liens expressly permitted under the Prepetition Senior Lender Loan Documents;

(iii) nothing contained herein in any way impairs the Prepetition Senior Lenders' first and junior (as applicable in accordance with the terms of the Intercreditor Agreement) priority lien status in the Senior Lender Prepetition Collateral;

(iv) as of the Commencement Date, and without giving effect to this Order, the Debtors are not aware of any liens or security interests having priority over the Senior Lender Prepetition Liens, except certain "Permitted Encumbrances" (as defined in the applicable Prepetition Senior Lender Loan Documents);

(v) the Senior Lender Prepetition Liens in the Senior Lender Prepetition Collateral were granted to the Prepetition Senior Lenders for fair consideration and reasonably equivalent value, and were granted contemporaneously with the making of the loans secured thereby; and

(vi) all cash of the Debtors wherever located on the Commencement Date (other than the funds in the DIP Account (as defined in the First Cash Collateral Order)) represents either proceeds of loans under the Prepetition Senior Lender Loan Documents or proceeds of the Senior Lender Prepetition Collateral; and pursuant to the Prepetition Senior Lender Loan Documents and section 552(b) of the Bankruptcy Code, the Prepetition Senior Lenders have a valid, duly perfected, first-priority lien upon and security interest in and to all of the cash of the Debtors (other than the cash in the DIP Account), and these funds, along with the proceeds of the Senior Lender Prepetition Collateral, constitute "cash collateral" within the meaning of section 363(a) of the Bankruptcy Code (the "Cash Collateral").

G.    The Debtors have an immediate need to use Cash Collateral and obtain

funds in order to permit, among other things, the orderly continuation of the operation of their

businesses, to maintain business relationships with vendors, suppliers and customers, to meet

payroll, to make capital expenditures and to satisfy other working capital and operational needs

including the consummation of the connector seals consolidation. Good cause has been shown

for the entry of this Order. Use of Cash Collateral and the obtaining of funds is vital to avoid

immediate and irreparable harm to Debtors' estates.

H.    The Debtors have requested that the Prepetition Senior Lenders consent to

the use of their Cash Collateral. The ability of the Debtors to continue their businesses and

reorganize under chapter 11 of the Bankruptcy Code depends upon the Debtors using such Cash

Collateral. The Prepetition Senior Lenders have not consented to the Debtors' use of Cash

Collateral. The adequate protection provided herein and other benefits and privileges contained

herein are consistent with and authorized by the Bankruptcy Code, Bankruptcy Rules 4001 and

6003 and Local Bankruptcy Rule 4001-3 and serve to adequately protect the Prepetition Senior

Lenders' interest in the Collateral securing their claims under the Prepetition Credit Agreements.

I.    The relief requested in the Motion is necessary, essential and appropriate

for the continued operation of the Debtors' businesses, the management and preservation of their

assets and properties, and is in the best interests of the Debtors, their estates, and creditors. Use

of Cash Collateral under the terms and conditions set forth herein is necessary to avoid

immediate and irreparable harm. Accordingly, good, adequate and sufficient cause has been

shown to justify the granting of the relief requested herein.

J.    Based on the record before the Court, the terms of the use of the

Prepetition Senior Lenders' Cash Collateral as provided in this Order have been negotiated at

arms' length and in "good faith," as that term is used in section 364(e) of the Bankruptcy Code,

and are in the best interests of the Debtors, their estates and creditors.

**NOW, THEREFORE, IT IS HEREBY ORDERED:**

       1.     The Motion is hereby granted as modified herein, with the foregoing

findings incorporated herein by reference.

<u>**Authorization to Use Cash Collateral**</u>

       2.     Subject to the terms and conditions set forth in this Order, the Debtors are

authorized, pursuant to section 363(c)(2)(B) of the Bankruptcy Code, to use Cash Collateral

through the earlier of either August 21, 2009, or until the occurrence of a Termination Event (as

defined below).

       3.     Pursuant to the First Cash Collateral Order and the order approving the

Debtors' centralized cash management system [Docket No. 25] (the "Cash Management Order"),

FirstMerit Bank N.A., Akron, Ohio ("FirstMerit") shall, subject to the terms of the Cash

Management Order (including the reservation of Debtors' rights to modify their cash

management system to comply with section 345(b) of the Bankruptcy Code), maintain the

Debtors' cash management system by which First Merit transferred all available funds in or

received in the Debtors' lockbox accounts and the consolidation account at FirstMerit into the

Debtors' master operating account at FirstMerit (the "Master Operating Account"), without the

necessity to comply with any lockbox or blocked account agreement or any preexisting transfer

arrangement concerning such accounts; provided, however, that the Master Operating Account,

along with all other bank accounts, deposit accounts and securities accounts established or in

existence on or after the Commencement Date, shall be subject to any and all security interests

and liens granted hereunder and this Order shall be deemed the only action necessary to perfect

such liens in favor of the Revolver Agent for the benefit of the Senior Prepetition Lenders.

4.    The Debtors shall use Cash Collateral only for (a) working capital and

capital expenditures, (b) other general corporate purposes of the Debtors (including, without

limitation, the making of Adequate Protection Payments (as defined below)), (c) the costs of

administration of these chapter 11 cases, and (d) the consummation of the connector seals

consolidation, with each of the foregoing in compliance with the thirteen (13) week budget (the

"Budget"), which is annexed hereto as Exhibit A and incorporated herein by reference, subject to

the permitted variances as provided for in this Order.

5.    Debtors may, with the prior written consent of the Revolver Agent and

Term Loan Agent, use Cash Collateral in excess of the limits set forth in the Budget, as

applicable; provided, however, that such consent shall not be necessary for variances that do not

exceed, in the aggregate, 110% of the cumulative expenditures set forth in the Budget, as

measured from May 22, 2009 through the Date of Determination (as defined below), with bi-

weekly reports due to the Revolver Agent and Term Loan Agent by 5:00 p.m. on Wednesday

following the end of the second week being reported, showing comparisons and percentage

variance by line item as well as on a cumulative basis; provided further that the Debtors shall be

allowed to make advance cash payments or deposits of cash (collectively, "Advances") in the

amount of goods and services to be provided, if required by vendors, so long as all projected

Advances are included as expenditures in the Budget, and all actual Advances are included in the

reconciliation referred to in paragraph 14(v). The "Date of Determination" shall initially be June

12, 2009 and subsequently shall be every other Friday thereafter.

6.      In no event shall any costs or expenses of administration be imposed upon the Prepetition Senior Lenders or any of the Senior Lender Prepetition Collateral pursuant to sections 506(c) and/or 105(a) of the Bankruptcy Code or otherwise, except as set forth in paragraphs 8, 11, and 17.

7.      The Debtors shall (i) maintain their cash balance at the levels set forth in paragraph 14(vi) hereof, and (ii) provide the Revolver Agent and Term Loan Agent, prior to 5:00 p.m. on the Tuesday following the week being reported, a weekly reconciliation of net cash available to the Debtors compared to actual cash available through their Master Operating Account, DIP Account, and any other accounts. For the avoidance of doubt, the reconciliation will be a reconciliation of "book cash" to "bank cash."

8.      Notwithstanding anything herein to the contrary, no Cash Collateral (including without limitation the amounts held in the Master Operating Account) may be used by any of the Debtors (or any subsequent trustee), the Creditors' Committee, any other statutory committee or any other person or entity (i) to object to or contest in any manner, or raise any defense or contest to, the validity, perfection, priority or enforceability of the Prepetition Senior Secured Debt, the Senior Lender Prepetition Liens, and the Prepetition Senior Lender Loan Documents or under this Order, or to assert or prosecute any action for preferences, fraudulent conveyances, other avoidance power claims (whether under chapter 5 of the Bankruptcy Code or otherwise) or any other claims or causes of action against the Prepetition Senior Lenders, including without limitation for lender liability or pursuant to sections 105, 510, 544, 547, 548, 549, or 550 of the Bankruptcy Code (collectively, the "Claims and Defenses"); (ii) subject to paragraph 14(viii) below, to sell any portion of the Senior Lender Prepetition Collateral (other than sales of inventory in the ordinary course of business, sales to customers of tooling and

equipment that will be used by the Debtors to produce inventory for sale to such customers in the

ordinary course of business, and sales of surplus or obsolete equipment, provided that the fair

market value of the surplus or obsolete equipment to be sold after the Commencement Date shall

not exceed $50,000 in the case of any single transaction or $200,000 in the aggregate) without

either providing for the indefeasible payment of the Prepetition Senior Secured Debt (subject to

the provisions of paragraphs 11(i) and 18 hereof), any outstanding Adequate Protection

Payments, and any other allowed obligations accruing on or after the Commencement Date with

respect to the Prepetition Senior Secured Debt pursuant to the Prepetition Senior Lender Loan

Documents, section 506(b) of the Bankruptcy Code, or otherwise (the "Postpetition

Obligations") in full in cash on the sale closing date or obtaining prior written consent to such

sale from the Agents (subject to the Intercreditor Agreement); (iii) to incur any new indebtedness

that would be *pari passu* with or have priority over the Prepetition Senior Secured Debt and that

would not provide for the indefeasible payment of the Prepetition Senior Secured Debt (subject

to the provisions of paragraphs 11(i) and 18 hereof), any outstanding Adequate Protection

Payments, and the Postpetition Obligations, in full in cash on the closing date of such financing;

or (iv) to modify the rights of the Prepetition Senior Lenders under this Order.

### Connector Seals Consolidation

9.      The Debtors operational restructuring of their connector seals business

(the "Connector Seals Consolidation") is subject to the following benchmarks, with written

evidence of compliance to be provided to the Agents within two (2) business days of the listed

dates for each benchmark, subject to any variances to which the Debtors, Revolver Agent, and

Term Loan Agent may agree in writing:

(i)      [omitted]

(ii)     [omitted]

(iii)     at least 90% of the "inventory banks" for the Connector Seals

Consolidation shall be completed by May 31, 2009; and

(iv)     the closure of the Vienna, Ohio facility shall be substantially completed by

June 30, 2009.

### Exit Transaction Reporting

10.     The Debtors shall provide the Agents with detailed bi-weekly written

reports by 5:00 p.m. every other Tuesday, beginning May 26, 2009, regarding their efforts with

respect to an exit transaction in whatever form (including without limitation exit financing or

some other capital infusion and any offering memorandum with respect to the foregoing), with

such reports to include information (by way of example and without limitation) regarding

potential and actual bids, including interested party names and amounts, expressions of interest,

and any other information regarding the progress of the Debtors' pursuit of an exit.

### Adequate Protection

11.     As adequate protection for the use of Cash Collateral, the Prepetition

Senior Lenders shall receive:

(i) adequate protection payments ("Adequate Protection Payments") in amounts

equal to the following amounts, provided, only in the event that it is determined that the

claims of the Agents and the Prepetition Senior Lenders are not fully secured, the

Adequate Protection Payments shall be subject to reallocation, recharacterization, or

disgorgement, after notice and a hearing before the Court:

(a) interest payments (at the contractual non-default rate) and principal

payments due under the Prepetition Senior Lender Loan Documents, according to

the schedule of interest and principal payments contained therein; provided that in consideration for the receipt of principal payments, Prepetition Senior Lenders shall forever waive any and all claims for the difference between the contractual non-default rate and the contractual default rate (the "Default Rate Differential") from May 22, 2009, until the occurrence of a Termination Event; provided, further that (i) the Debtors (x) acknowledge that sections 3.1 of each of the Credit Agreement and the Loan Agreement refer to the payment of default interest and (y) refer to said sections as to the terms and provisions thereof, and (ii) the Prepetition Senior Lenders reserve their rights to assert that the Debtors have an obligation to pay the Default Rate Differential on or after the occurrence of a Termination Event and the Debtors and all other parties-in-interest shall have the right to challenge or otherwise object to the payment of such Default Rate Differential. For the avoidance of doubt, in the event Prepetition Senior Secured Debt is, and the amounts due to the Prepetition Senior Lenders hereunder are, indefeasibly paid in full in cash prior to the occurrence of or in connection with a Termination Event (subject to the provisions of paragraph 18 hereof), Prepetition Senior Lenders shall automatically be deemed to forever waive their claims to the Default Rate Differential with respect to the period between May 22, 2009 and the date of such payment; provided, further, however, notwithstanding anything to the contrary contained herein, that both the Debtors and the Prepetition Senior Lenders' respective rights are preserved with respect to the Default Rate Differential under the First Cash Collateral Order, the Second Cash Collateral Order, and those certain Termination Events (A) under paragraphs 9(i) and 9(ii)

of the Second Cash Collateral Order, (B) reflected by that certain Compliance Certificate by the Debtors, dated February 11, 2009, and (C) reflected by that certain Compliance Certificate by the Debtors, dated May 6, 2009; and

(b) payment of reasonable fees and expenses of (1) two legal counsel (i.e., two law firms) for the Agents, one of which shall be local counsel, (2) a single financial advisor (one financial advisor firm) for the Agents, provided that, until a Termination Event shall have occurred, the fees and expenses of such financial advisor shall not exceed $20,000 per month in the aggregate (the "Financial Advisor Monthly Cap") on a rolling basis, such that any overages may be carried over and recovered from any subsequent month's amounts to the extent such subsequent month's amount is less than the Financial Advisor Monthly Cap; (3) other legal counsel retained by any of the Prepetition Senior Lenders, provided that, until a Termination Event shall have occurred, the fees and expenses of each such counsel shall not exceed $7,500 per month in the aggregate with respect to each Prepetition Senior Lender (the "Participant Monthly Cap") on a rolling basis, such that any overages may be carried over and recovered from any subsequent month's amounts to the extent such subsequent month's amount is less than the Participant Monthly Cap; provided, however, that nothing in this paragraph 11(i) shall prejudice the rights of (x) any Prepetition Senior Lender under section 506(b) of the Bankruptcy Code to seek its reasonable fees and expenses pursuant to the Prepetition Senior Lender Loan Documents and (y) the Debtors to challenge or otherwise object to any such request;

(c) the Debtors shall pay current all the Agents' and the Prepetition Senior Lenders' requested reimbursements for fees and expenses through the entry of this order immediately upon entry of this order or upon request, whichever is later; provided, however, the outstanding fees and expenses for the Prepetition Senior Lenders financial advisor firm for the period through February, 2009 shall be paid in the following manner:  the Debtors shall pay one hundred forty five thousand dollars ($145,000.00) immediately, with the outstanding balance of approximately seventy five thousand $75,000.00) to be paid in subsequent months to the extent that the fees and expenses of such financial advisor firm for such subsequent month are less than twenty thousand dollars ($20,000.00); provided further, however, that the parties hereby reserve their respective rights as to whether the Financial Advisor Monthly Cap applies to any fees and expenses of the financial advisor firm from and after the entry of this order up to any future Termination Event;

(ii) for any diminution in the value of the Prepetition Senior Lenders' interests in the Cash Collateral from and after the Commencement Date, (a) replacement security interests in and liens upon all of the Debtors' assets in which the Agents, for the benefit of the Prepetition Senior Lenders, had liens on the Commencement Date (including, without limitation, cash and receivables and the proceeds thereof, whether existing or hereafter acquired after the Commencement Date and whether or not deposited in the Master Operating Account), (b) first priority security interests and liens upon any and all unencumbered assets of the Debtors, including without limitation the Master Operating Account, the DIP Account, and causes of action under sections 542, 543, 544, 545, 547,

548, 549, 550, 551, or 553 of the Bankruptcy Code, and (c) junior liens on all

encumbered assets which were not otherwise subject to the Prepetition Secured Lenders'

liens as of the Commencement Date (collectively, the "Adequate Protection Liens");

provided, however, that the Adequate Protection Liens shall (w) be subject to the Carve-

Out (as defined below), (x) exclude any insurance policy (but not exclude the Debtors'

entitlement, if any, to payments thereunder (subject to the Senior Lender Prepetition

Liens and the Adequate Protection Liens) net of any amounts that may be due to an

Insurance Premium Finance Party (as such term is defined in the Prepetition Senior

Lender Loan Documents) with respect to such policy) where, subject to authorization of

the Court, security interests and liens are granted to an Insurance Premium Finance Party

on the Insurance Premium Collateral (as such term is defined in the Prepetition Senior

Lender Loan Documents, provided that in no instance will the Insurance Premium

Finance Party be granted a security interest in or lien on the DIP Account or the Master

Operating Account) to secure the indebtedness of the Debtors to an Insurance Premium

Finance Party in connection with insurance policies maintained by the Debtors arising as

a result of such Insurance Premium Finance Party entering into arrangements to allow the

Debtors to pay all or a portion of the applicable insurance premiums on such insurance

policies in installments rather than in one lump sum annual payment; provided that the

Debtors shall continue to abide by the requirements under sections 4.11 of each of the

Credit Agreement and the Loan Agreement, provided, however, that notwithstanding

anything contained in said sections to the contrary, amounts payable to Agents as loss

payees under a casualty or property insurance coverage shall be reduced by amounts

owed, if any, to the Insurance Premium Finance Parties with respect to such policies; and

provided further that such indebtedness of the Debtors to all Insurance Premium Finance Parties shall not exceed the aggregate principal amount outstanding of $800,000 at any one time ("Insurance Premium Financing"); and (y) neither prime nor impair any perfected liens or perfected security interests in the same collateral that are senior in rank and priority to the Senior Lender Prepetition Liens or the Adequate Protection Liens under applicable nonbankruptcy law as of the Commencement Date, such as statutory liens, if any, that are senior in priority as a result of being perfected under applicable state law prior to the granting of the Adequate Protection Liens; and provided further, however, except as expressly set forth in this Order, the Adequate Protection Liens granted herein shall not be subject to any liens that are avoided and preserved for the benefit of any of the Debtors' estates under section 551 of the Bankruptcy Code, and shall not be subordinated to or made *pari passu* with any other lien under section 364(d) or any other section of the Bankruptcy Code or otherwise; and

(iii) for any diminution in the value of the Prepetition Senior Lenders' interests in the Cash Collateral from and after the Commencement Date, an administrative expense claim pursuant section 507(b) of the Bankruptcy Code (the "Adequate Protection Claim"), which shall be senior to any and all other claims (including the DIP Super-Priority Claim, as defined below), but subject to the Carve-Out (as defined below).

12.    The Adequate Protection Liens on property of the Debtors' estates granted herein, including without limitation the security interests and liens in postpetition cash and receivables, the Master Operating Account, the DIP Account and proceeds of each of the foregoing, are valid, binding, effective, enforceable, and fully perfected, and no filing or recordation or other act in accordance with any applicable local, state, for federal law, rule, or

regulation, is necessary to create or perfect such Adequate Protection Liens. The above provision

notwithstanding, Debtors shall cooperate with Prepetition Senior Lenders to execute such

documents and instruments, and do such other things as Prepetition Senior Lenders may

reasonably request, to evidence and perfect such Adequate Protection Liens for the convenience

and information of third parties, and to evidence the obligations undertaken by the Debtors

hereunder.

13.     None of the Prepetition Senior Lenders shall be deemed to be in control of

the Debtors or their operations or to be acting as a "responsible person," "managing agent," or

"owner or  operator" with respect to the operation or management of the Debtors.

14.     With respect to the use of Cash Collateral hereunder, each of the following

shall constitute a "Termination Event":

(i) the closing or dismissal of the chapter 11 cases;

(ii) the conversion of the Debtors' chapter 11 cases to cases under chapter 7 of the

Bankruptcy Code;

(iii) the appointment in these chapter 11 cases of a chapter 11 trustee or an

examiner with expanded powers to operate or manage the financial affairs, the businesses

or the reorganization of any Debtor;

(iv) non-compliance by any Debtor with any of the terms or provisions of this

Order;

(v) the Debtors' cumulative expenditures from May 22, 2009 through the Date of

Determination are more than 110% of the cumulative expenditures for such periods, as

set forth in the Budget;

(vi) the aggregate total of the Debtors' short-term investments and the cash available in their Master Operating Account and the DIP Account shall not fall below the amounts corresponding to the dates forth below:

Week Ending Minimum Available Cash

| | | |
|---|---|---|
| (1) | 29-May | $2,111,000 |
| (2) | 5-June | $2,032,000 |
| (3) | 12-June | $2,063,000 |
| (4) | 19-June | $2,394,000 |
| (5) | 26-June | $2,712,000 |
| (6) | 3-July | $2,103,000 |
| (7) | 10-July | $2,028,000 |
| (8) | 17-July | $1,793,000 |
| (9) | 24-July | $1,996,000 |
| (10) | 31-July | $2,076,000 |
| (11) | 7-Aug | $1,483,000 |
| (12) | 14-Aug | $1,323,000 |
| (13) | 21-Aug | $1,348,000; |

(vii) if on a cumulative basis, measured every four weeks from the Commencement Date through the last day of every four week period thereafter, net sales are less than eighty-two percent (82%) of the net sales reflected in the Budget; provided, that the Debtors shall report such net sales in writing certified by the Debtors' CFO within five (5) days of the end of each four week period and provide comparison to the amounts reflected in the Budget, with a narrative explaining the reasons for any deviations, provided, however, that "net sales" shall not include any sales of tooling or equipment or other sales of the Debtors' assets;

(viii) entry of an order providing for the sale of more than $1,000,000 (to be measured in aggregate purchase price and/or book value, whichever is greater for each asset sold) of the Debtors' assets that does not provide that the proceeds of such sale (less all costs, expenses and fees related thereto) shall be applied to the Prepetition Senior

Secured Debt in accordance with the terms set forth in the Prepetition Senior Lender

Loan Documents (subject to the Intercreditor Agreement) on the sale closing date, or for

which sale the Prepetition Senior Lenders have not provided prior written consent

(subject to the Intercreditor Agreement); provided, however, that in no case shall the

aggregate of any sales permitted hereunder exceed $5,000,000;

(ix)  [omitted]

(x) entry of any order pursuant to section 364 of the Bankruptcy Code authorizing

Debtors to obtain credit that is *pari passu* with or has priority over the Prepetition Senior

Secured Debt and does not provide for the indefeasible payment in full in cash of the

Prepetition Senior Secured Debt (subject to the provisions of paragraphs 11(i) and 18

hereof) and any outstanding Adequate Protection Payments and allowed Postpetition

Obligations on the closing date of such financing;

(xi) the automatic stay is lifted as to any party in order to take possession or to

permit foreclosure on any portion of the Senior Lender Prepetition Collateral or any other

collateral subject to the Adequate Protection Liens, the value of which, as measured by

fair market value or book value, whichever is greater, exceeds $1,000,000 in the

aggregate;

(xii) any uninsured loss with respect to the Senior Lender Prepetition Collateral or

any other collateral subject to the Adequate Protection Liens in an amount equal to or

exceeding $1,000,000; or

(xiii) August 21, 2009.

15.    Following the occurrence of a Termination Event, other than a

Termination Event under paragraph 14(xiii), the Debtors shall have five (5) business days after

receipt of written notice from Revolver Agent and Term Loan Agent, on behalf of themselves,

and the Prepetition Senior Lenders to cure such Termination Event, if it is capable of cure (the

"Cure Period"). The Revolver Agent and the Term Loan Agent shall serve notice of the

Termination Event on the Debtors, the U.S. Trustee, the Committee.

        16.     On the earlier to occur of either (a) August 21, 2009, or (b) if upon the

expiration of the Cure Period, the Debtors have not cured the Termination Event (assuming such

Termination Event is curable) and any required notice referred to in paragraph 15 has not been

withdrawn (herein referred to as the "Termination Date"), then (1) the Debtors shall cease all use

of Cash Collateral and any authority of Debtors under this Order to use Cash Collateral shall

terminate; and (2) the Prepetition Senior Lenders shall be granted, without further action of the

Prepetition Senior Lenders or the Court, immediate and automatic relief from the automatic stay

under section 362 of the Bankruptcy Code, which shall be automatically terminated as it relates

to the Senior Lender Prepetition Collateral and all other collateral in which Adequate Protection

Liens have been granted without further action of the Prepetition Senior Lenders or this Court.

Notwithstanding the occurrence of the Termination Date or anything herein to the contrary, all of

the rights, remedies, benefits, and protections provided to the Prepetition Senior Lenders under

this Order shall survive the Termination Date. In addition, upon the occurrence of the

Termination Date, if instructed by the Revolver Agent and the Term Loan Agent, FirstMerit or

any other bank or financial institution with which the Debtors establish an account, shall transfer

all of the available funds on deposit in such account as directed by the Revolver Agent and the

Term Loan Agent; provided, however, that if it is subsequently determined that the Prepetition

Senior Lenders did not have Senior Lender Prepetition Liens or Adequate Protection Liens on

such accounts, the Prepetition Secured Lenders shall disgorge and repay to the Debtors' estates

such portion of the funds as to which they did not have Senior Lender Prepetition Liens or

Adequate Protection Liens; provided, further, however, that notwithstanding the foregoing,

(i) any existing deposit account control agreements shall continue in full force and effect subject

to the terms of this Order, and (ii) within 45 days of the establishment of a new bank account,

deposit account, securities account or other account, the Debtors, the Revolver Agent (for the

benefit of the Prepetition Senior Lenders, subject to the Intercreditor Agreement) and each bank

or financial institution with which the Debtors establish such deposit account shall enter into a

deposit account control agreement or similar applicable agreement, which shall be in form and

substance reasonably satisfactory to the Revolver Agent; provided, further, that the Debtors shall

notify the Revolver Agent in writing within five (5) business days thereof of the establishment of

any new bank account, deposit account, securities account, or other account.

### **Carve-Out**

17.     The Senior Lender Prepetition Liens, the Adequate Protection Claim, the

Adequate Protection Liens, and the DIP Super-Priority Claim shall be subject to the payment of

the following items (collectively, the "Carve-Out"): (i) fees of the clerk of the Bankruptcy Court,

the clerk of any court to which an appeal may be taken, and the United States Trustee pursuant to

28 U.S.C. § 1930(a) and (b); (ii) pursuant to section 726(b) of the Bankruptcy Code, reasonable

fees and expenses of a trustee that are incurred after the conversion of these chapter 11 cases to a

case under chapter 7 of the Bankruptcy Code, in an amount not to exceed $100,000; and

(iii) upon the occurrence of the Termination Date or the Maturity Date (which occurrences shall

be the trigger dates of this clause and not the measuring points with respect to any fees or

expenses), the aggregate allowed unpaid professional fees and expenses payable under sections

330 and 331 of the Bankruptcy Code to professionals retained pursuant to an order of the Court

by the Debtors and any statutory committee(s) appointed in the Debtors' chapter 11 cases for services rendered and expenses incurred, as well as fees and expenses payable to any trustee or examiner appointed or elected in these chapter 11 cases, to the extent this Court allows the payment thereof, in an amount not to exceed $500,000, provided that the first $400,000 only shall be paid from the assets subject to Senior Lender Prepetition Liens and the Adequate Protection Liens (including Cash Collateral) and that would otherwise be paid to the Prepetition Senior Lenders in respect of the Adequate Protection Claim (the "Prepetition Senior Lenders' Fee Carve-Out Amount"), and the balance between $500,000 and the Prepetition Senior Lenders' Fee Carve-Out Amount shall be paid from whatever assets would be distributed on account of the DIP Super-Priority Claim; provided, however, that prior to the occurrence of the Termination Date or the Maturity Date, the Debtors shall be permitted to pay from the Cash Collateral and the Interim DIP Loan, as the same may be due and payable, all professional fees and expenses pursuant to sections 330 and 331 of the Bankruptcy Code as authorized by the Court that were rendered or incurred, as applicable, prior to the occurrence of the Termination Date or the Maturity Date. For the avoidance of doubt, with respect to the Prepetition Senior Lenders, the Carve-Out for clauses (ii) and (iii) of the preceding sentence shall not exceed $500,000 in the aggregate.

**<u>Protection of Prepetition Senior Lenders</u>**

18.    With respect to any issued and outstanding letters of credit (collectively, the "Outstanding Letters of Credit"), the Debtors shall comply with the terms of section 2.7(k) of the Credit Agreement, provided that in any event, such Outstanding Letters of Credit shall be released and returned to the holder thereof within ninety (90) days of indefeasible payment in full of the Senior Lender Prepetition Debt (subject to the provisions of paragraph 11(i) hereof).

19.     The provisions of this Order are binding upon all the parties in interest in

these chapter 11 cases, including without limitation the Prepetition Senior Lenders, the DIP

Lenders and the Debtors, the Creditors' Committee, and their respective successors and assigns

(including any chapter 7 or chapter 11 trustee hereafter appointed or elected for the estates of the

Debtors or an examiner appointed pursuant to section 1104 of the Bankruptcy Code), and inure

to the benefit of the Prepetition Senior Lenders and the Debtors and, except with respect to any

trustee hereafter appointed or elected for the estates of the Debtors, their respective successors

and assigns; provided, however, that this Order shall not limit or affect the rights of the Debtors

in their prosecution of a chapter 11 plan or the rights and defenses thereto of the Prepetition

Senior Lenders, the DIP Lenders, and the Creditors' Committee. In addition, neither the terms of

this Order, nor the filing of these bankruptcy cases generally, shall be deemed to modify or affect

the respective rights and obligations among the Prepetition Senior Lenders under the

Intercreditor Agreement.

20.     Notwithstanding anything herein to the contrary, this Order is without

prejudice to, and does not constitute a waiver (other than the waiver set forth in paragraph 11(i)

regarding the Default Rate Differential), expressly or implicitly, of the rights of the Prepetition

Senior Lenders to seek additional adequate protection should circumstances warrant.

21.     Entry of this Order shall not in any way (i) constitute agreement, consent,

or acquiescence to the terms of any plan of reorganization by virtue of any term or provision of

this Order; or (ii) prevent the Prepetition Senior Lenders from objecting, for any reason, to any

requests, motions or applications made in this Court (other than this Order), including any

applications for interim or final allowances of compensation for services rendered or

reimbursement of expenses incurred under sections 105(a), 330 or 331 of the Bankruptcy Code, by any party in interest.

## **Reporting**

22.     Existing reporting requirements shall continue, including without limitation full financial reports required under the Prepetition Senior Lender Loan Documents, which shall be provided on a monthly basis within thirty (30) days of the end of each month and on a quarterly and yearly basis pursuant to and in the form prescribed by the Prepetition Senior Lender Loan Documents (or on such other schedule or in such other form as the parties may agree).  In addition, and without limiting the foregoing or any other reporting requirement contained hereunder, the Debtors shall prepare and submit (a) the reports referred to in paragraphs 5, 7, 9, 10 and 14(vii) hereof prior to the deadlines set forth therein, (b) reports indicating any and all information that is required by the borrowing base certificates under the Prepetition Senior Lender Loan Documents for the previous week prior to 5:00 p.m. on Tuesday following the week being reported (or by such other date and time as the parties may agree); and (c) any other and further reports reasonably requested by the Prepetition Senior Lenders. Commencing on May 29, 2009, the Prepetition Senior Lenders and the Debtors shall have a bi-weekly phone conference (the "Status Call"), on such dates, at such times, and on such other schedule as the parties may agree, to update the Prepetition Senior Lenders on the Debtors' financial and operational status, including updates as to relations with customers, vendors and suppliers.

## **Releases**

23.     In consideration of Debtors' use of Cash Collateral, the Debtors (on behalf of themselves and any successor to the Debtors, including any chapter 11 trustee or chapter 7

trustee) voluntarily and knowingly release and forever discharge the Prepetition Senior Lenders

in all their respective capacities, their predecessors, agents, attorneys, financial advisors, direct

and indirect parents, subsidiaries and affiliates, members, managers, servicers, directors, officers,

employees, successors and assigns from all possible claims, counterclaims, demands, actions,

causes of action, damages, costs, expenses and liabilities whatsoever, known or unknown,

anticipated or unanticipated, suspected or unsuspected, at law or in equity, originating in whole

or in part on or before the date hereof, which the Debtors may now know or hereafter come to

know they have against Prepetition Senior Lenders in all of their respective capacities, their

predecessors, agents, attorneys, direct and indirect parents, subsidiaries and affiliates, members,

managers, servicers, directors, officers, employees, successors and assigns, if any, and

irrespective of whether any such claims arise out of contract, tort, violation of law or regulations,

or otherwise.

24.     The Debtors shall also provide the Prepetition Senior Lenders copies of all

reports made for or documents given to the United States Trustee in these chapter 11 cases.

25.     Debtors shall permit representatives, agents, and/or employees of the

Prepetition Senior Lenders, including professionals retained by the Prepetition Senior Lenders'

legal professionals, to have reasonable access to its premises and records during normal business

hours (without unreasonable interference with the proper operation of Debtors' businesses) and

shall cooperate, consult with, and provide to such persons all such non-privileged information as

they may reasonably request.

      26.    Any material and substantive modifications to the terms of this Order, the

require the prior written consent of the Prepetition Senior Lenders or authorization of the Court.

Dated: **May 20, 2009**
      New York, New York


              **/S/Martin Glenn**
              UNITED STATES BANKRUPTCY JUDGE

## EXHIBIT A

**(Budget)**