WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007
Richard P. Krasnow
Adam P. Strochak

Attorneys for Debtors
and Debtors in Possession

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---------------------------------------------------------------x
                                          :
**In re**                                 :          **Chapter 11 Case No.**
                                          :
**LEXINGTON PRECISION CORP., et al.,**    :          **08-11153 (MG)**
                                          :
          **Debtors.**                    :          **(Jointly Administered)**
                                          :
---------------------------------------------------------------x

**DEBTORS' OBJECTION TO MOTION OF LORRAINE CERIMELE**
**FOR RELIEF FROM THE AUTOMATIC STAY TO PURSUE A PENDING**
**ACTION IN THE TRUMBULL COUNTY, OHIO COURT OF COMMON PLEAS**

TO THE HONORABLE MARTIN GLENN,
UNITED STATES BANKRUPTCY JUDGE:

          Lexington Precision Corporation ("Lexington Precision") and its wholly-owned

subsidiary, Lexington Rubber Group, Inc., each as debtors and debtors in possession (together,

the "Debtors"), respectively submit this objection to the motion of Lorraine Cerimele

("Cerimele"), dated February 18, 2009 (the "Motion") [Docket No. 559], for relief from the

automatic stay (the "Automatic Stay") extant under section 362 of title 11 of the United States

Code (the "Bankruptcy Code") for the limited purpose of permitting Cerimele's state court

action to proceed against Lexington Precision:

**Preliminary Statement**

1.     The Automatic Stay should not be lifted under the factual circumstances

here.  The Motion is deficient as a matter of law and should be denied because Cerimele has not

established any of the factors enumerated in the Second Circuit's *Sonnax* decision as

representing cause for relief from the Automatic Stay.  Cerimele failed to prosecute her claim in

the state court for years and only moved forward in response to Lexington Precision's motions to

dismiss the state court action for failure to prosecute.  The Debtors' restructuring is in a crucial

stage and they are nearing the final stages of the operational restructuring of the connector seals

business, pursuing exit financing and other means of raising sufficient capital to emerge from

chapter 11, and devoting their full resources to the reorganization process.  If the Automatic Stay

is lifted to permit Cerimele to continue her action in state court, the Debtors will be required to

refocus their efforts on a prepetition claim that section 362(a) of the Bankruptcy Code is

designed to stay and that would be best resolved through the claims reconciliation process

established by the Bankruptcy Code and the Federal Rules of Bankruptcy Procedure.  For

reasons discussed herein, the *Sonnax* factors weigh decidedly in favor of denying the Motion

and, as a result, Cerimele's claim should be resolved as part of the claims reconciliation process

to which all prepetition claims are subject.

**Background**

2.     On April 1, 2008 (the "Commencement Date"), each of the Debtors

commenced with this Court a voluntary case under chapter 11 of the Bankruptcy Code.  The

Debtors are authorized to continue to operate their businesses and manage their properties as

debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

3.      The Debtors' chapter 11 cases have been consolidated for procedural

purposes only and are being jointly administered pursuant to Rule 1015(b) of the Federal Rules

of Bankruptcy Procedure (the "Bankruptcy Rules").

4.      On April 11, 2008, the United States Trustee for the Southern District of

New York (the "U.S. Trustee") appointed the statutory committee of creditors (the "Creditors'

Committee").

5.      Cerimele is a former employee of Lexington Precision d/b/a Lexington

Connector Seals who was responsible for quality control of certain Lexington Precision products.

On December 17, 1998, Lexington Precision terminated Cerimele's employment for cause, all as

more fully set forth in the Claim Objection.

6.      On October 30, 2000, Cerimele commenced an action against Lexington

Precision in the Court of Common Pleas, Trumbull County, Ohio, styled as *Lorraine L Cerimele*

*v. Lexington Precision Corp.*, *et al.*, Case No. 00-CV-1997 (the "State Court Action"), alleging

that Lexington Precision's termination of her employment violated Ohio public policy and that

its actions were motivated by malice.

7.      On August 14, 2008, Cerimele filed the Proof of Claim No. 262 ("Claim

262") asserting a contingent claim in the amount of $2,466,110 (compensatory damages of

$466,110 and punitive damages of $2,000,000) with respect to the State Court Action..

8.      On December 30, 2008, the Debtors objected to the validity of Claim 262

(the "Claim Objection") [Docket No. 503].  On February 18, 2009, Cerimele filed the Motion

opposing the Claim Objection and requested relief from the Automatic Stay to permit her to

proceed with the prosecution of the State Court Action.

9.      On May 11, 2009, the Debtors and Cerimele agreed to divide the Motion into two parts [Docket No. 625].  Cerimele's request for relief from the Automatic Stay will be heard on June 25, 2009.  If the Court denies such request, the parties will agree upon a briefing schedule and hearing date for the Claim Objection.

## Jurisdiction

10.      This Court has jurisdiction to consider this matter pursuant to 28 U.S.C. § § 157 and 1334.  This is a core proceeding pursuant to 28 U.S.C. § 157(b).

## The Automatic Stay

11.      Section 362(a)(1) of the Bankruptcy Code provides, in relevant part, that a bankruptcy petition

> operates as a stay, applicable to all entities, of . . . the commencement or continuation . . . of a judicial, administrative, or other action or proceeding against the debtor that was or could have been commenced before the commencement of the case under [the Bankruptcy Code], or to recover a claim against the debtor that arose before the commencement of the case under [the Bankruptcy Code].

11 U.S.C. § 362(a)(1).

12.      The Automatic Stay is "one of the fundamental debtor protections provided by the bankruptcy laws." *Mid-Atlantic Natl'l Bank v. New Jersey Dep't of Envtl. Prot.*, 474 U.S. 494, 503 (1986).  It provides a debtor with a "'breathing spell' from the collection process." *See, e.g., Eastern Refractories Co. Inc. v. Forty Eight Insulations Inc.*, 157 F.3d 169, 172 (2d Cir. 1998).  "The principal purpose of the automatic stay of acts against property of the estate . . . is to preserve that property for distribution or use in reorganization of the debtor." *Official Creditors' Comm. of Unsecured Creditors v. PSS S.S. Co., Inc.* (*In re Prudential Lines, Inc.*), 114 B.R. 27, 29 (Bankr. S.D.N.Y. 1989).  The Automatic Stay "is necessary to exclude any interference by the acts of others or by proceedings in other courts where such activities or

proceedings tend to hinder the process of reorganization." *Fidelity Mortgage Inv. v. Camelia Builders, Inc.*, 550 F.2d 47, 53 (2d Cir. 1976).

13.   A party is only entitled to relief from the Automatic Stay under certain circumstances.  11 U.S.C. § 362(d); *In re Eclair Bakery Ltd.*, 255 B.R. 121, 132 (Bankr. S.D.N.Y. 2000).  Because section 362(d) does not define "cause," courts determine what constitutes such cause based on the totality of the circumstances.  *In re Wilson*, 116 F.3d 87, 90 (3d Cir. 1997).  In the Second Circuit, *Sonnax Indus., Inc. v. Tri-Component Prods. Corp.* (*In re Sonnax Indus., Inc.*), 907 F.2d 1280, 1285 (2d Cir. 1990), is the seminal case with respect to relief from the Automatic Stay for cause.  In *Sonnax*, the Second Circuit catalogued twelve factors (the "Sonnax Factors") to be considered and balanced when deciding whether the Automatic Stay should be lifted.  They are:

(1) whether relief would result in a partial or complete resolution of the issues;

(2) lack of any connection with or interference with the bankruptcy case;

(3) whether the other proceeding involves the debtor as a fiduciary;

(4) whether a specialized tribunal with the necessary expertise has been established to hear the cause of action;

(5) whether the debtor's insurer has assumed full responsibility for defending it;

(6) whether the action primarily involves third parties;

(7) whether litigation in another forum would prejudice the interests of other creditors;

(8) whether the judgment claim arising from the other action is subject to equitable subordination;

(9) whether movant's success in the other proceeding would result in a judicial lien avoidable by the debtor;

(10) the interests of judicial economy and the expeditious and economical resolution of litigation;

(11) whether the parties are ready for trial in the other proceeding; and

(12) impact of the stay on the parties and the balance of harms.

*Sonnax*, 907 F.2d at 1286.

14.    Not all of the factors are relevant in every case, *Mazzeo v. Lenhart* (*In re Mazzeo*), 167 F.3d 139, 143 (2d Cir. 1999), and a court need not assign equal weight to each factor. *In re Keene Corporation*, 171 B.R. 180, 183 (Bankr. S.D.N.Y. 1994).  It is well established that the party seeking to lift or modify the Automatic Stay bears the initial burden to show cause why the stay should be lifted.  *Sonnax*, 907 F.2d at 1285.  "Conclusory statements that a continuance of the stay will cause irreparable harm or that injury will occur if relief is denied are insufficient to establish cause.  *In re Texaco Inc.*, 81 B.R. 820, 829 (Bankr. S.D.N.Y. 1988) (citing *In re Penn Dixie*, 6 B.R. 832 (Bankr. S.D.N.Y. 1980)).

15.    "If the movant fails to make an initial showing of cause . . . the court should deny relief without requiring any showing from the debtor that it is entitled to continued protection." *Sonnax*, 907 F.2d at 1285.  As one court noted, "the debtor does not start out by proving the absences of cause if a creditor with an unsecured claim fails to show some evidence of good cause for relief."  *In re Pioneer Commercial Funding Corp.*, 114 B.R. 45, 48 (Bankr. S.D.N.Y. 1990).  In  *Pioneer*, the court found that "an unliquidated, unsecured creditor . . . must establish extraordinary circumstances before the stay would be lifted in order to compel the debtor to continue to participate as a defendant in [another court]." *Id.* at 47 (citing *In re Sonnax Industries, Inc.*, 99 B.R. 591, 595 (D. Vt. 1989)).

16.    The Motion fails to discuss any of the Sonnax Factors.  As described in more detail below, the Debtors' application of the relevant Sonnax Factors demonstrates that Cerimele has failed to meet her burden to establish that cause exists to justify modifying the Automatic Stay.  Accordingly, the Motion should be denied.

**A.       The First Sonnax Factor - Relief Would Not Result In A Complete Resolution**

17.    As discussed in more detail in the Debtors' Claim Objection, Cerimele

was an at-will employee who was terminated for cause nearly 11 years ago.  Prior to her

termination, Lexington Precision advised Cerimele that her lack of interpersonal skills, inability

to work well with co-workers, and customer complaints regarding her services were affecting her

ability to effectively perform her job.  After more than a year of addressing these issues with her,

Cerimele's conduct continued and Lexington Precision terminated her employment for these

reasons.

18.    Two years after her termination, Cerimele commenced the State Court

Action alleging that her termination was in violation of Ohio state law prohibiting deceptive

trade practices.  The Debtors believe that Cerimele's $2.5 million claim is frivolous and in the

Claim Objection argued there is no legal or factual basis to support her claim.  In the Motion,

Cerimele asserts without any support that "the state court has already decided, as a matter of law,

that Claimant's claim is with merit and is thus *res judicata*."  Motion at p. 6.

19.    During the 9 years since the commencement of the State Court Action, the

state court has never held that Cerimele's claim has merit.  On the contrary, the state court held

that Cerimele sufficiently pled a claim for relief but "by no means suggests Plaintiff will prevail

in such an action, only that she has thus far presented a *prima facie* case necessary to bring an

action . . . ."  Motion, Exhibit A at p. 4.  After the court's decision, the State Court Action was

again delayed because Cerimele wrongly refused to comply with Lexington Precision's

discovery demands until Lexington Precision first produced the information that Cerimele

sought.  In response, Lexington Precision filed another motion to dismiss the State Court Action

for failure to prosecute.  The state court denied the motion and discovery is still not complete.

20.     Relief from the Automatic Stay is not warranted because it would only resume what has already been a prolonged, multi-step and expensive litigation process that would not necessarily lead to a complete resolution of Cerimele's claim.  There is a substantial amount of discovery that has not been completed.  Lexington Precision still has not deposed Cerimele due to her refusals to appear and her motions for protective orders in response to Lexington Precision's deposition notices.  Second, Lexington Precision also has not deposed the seven individuals who submitted witness statements on behalf of Cerimele.  Moreover, the completion of discovery will only lead to pre-trial dispositive motions that may or may not resolve Cerimele's claim.  If the State Court Action proceeds to trial, it will not necessarily lead to complete resolution of the issues because rulings and decisions at the trial level may be subject to several levels of appeal.

21.     Instead of resuming the State Court Action, the Debtors should be permitted to proceed with the Claim Objection against Cerimele's claim and reconcile such claim in the same manner as all the other general unsecured claims filed against the Debtors. The Second Circuit has held that one of the core principals of the Automatic Stay is to allow "the bankruptcy court to centralize all disputes concerning property of the debtor's estate in the bankruptcy court so that reorganization can proceed efficiently, unimpeded by uncoordinated proceedings in other arenas." *In re Ionosphere Clubs, Inc.*, 922 F.2d 984, 989 (2d Cir. 1990). Thus, lifting the Automatic Stay will prevent the Debtors from resolving Cerimele's claim in this forum, along with the claims of all other similarly situated general unsecured creditors, and require them to devote time and resources away from these cases.  Accordingly, application of the first Sonnax Factor weighs against granting the relief sought by Cerimele.

**B.     The Second Sonnax Factor –**
**Lack of Any Connection Or Interference With The Bankruptcy Case**

22.     Cerimele's claim is directly related to these cases and lifting of the

Automatic Stay will interfere with the Debtors' ability to effectively administer their chapter 11

cases.  The Debtors' management is comprised of a small team of individuals and they are

required to devote substantially all of their time to administration of these cases and the

operation of the business.  At this juncture, the Debtors' chapter 11 cases are at a crucial stage as

the Debtors' management works to complete the operational restructuring and obtain exit

financing or other investments that will enable them to emerge from chapter 11.  Lifting the

Automatic Stay will unnecessarily divert the Debtors from completing these tasks and courts

have regularly denied requests to lift the automatic stay in such instances.  *See*, *e.g.*, *In re Bally*

*Total Fitness of Greater New York, Inc.*, 402 B.R. 616, 623 (Bankr. S.D.N.Y. 2009) (holding that

allowing the actions to proceed "would distract the Debtors' management from the bankruptcy

proceeding by forcing them to litigate the [action] and hinder its ability to perform its fiduciary

duty of maximizing the value of the Debtors' estates, thereby affecting the interests of other

creditors").  Thus, application of the second Sonnax Factor weighs against granting the relief

sought by Cerimele.

**C.     The Third Sonnax Factor – Lexington Precision Was Not Sued as a Fiduciary**

23.     Admittedly, "proceedings in which the debtor is a fiduciary need not be

stayed because they bear no relationship to the purpose of the automatic stay, which is debtor

protection from his creditors."  *In re Bailey*, 11 B.R. 199, 201 (Bankr. E.D.Va. 1981) (internal

citations omitted).  Here, Lexington Precision was not sued in the State Court Action as a

fiduciary (such as a trustee) on behalf of others.  Rather, Cerimele seeks to collect property of

Lexington Precision's estate for alleged acts taken by Lexington Precision.  Thus, application of the third Sonnax Factor weighs against granting the relief sought by Cerimele.

**D.      The Fourth Sonnax Factor – No Specialized Tribunal Has been Established**

24.      No specialized tribunal has been established to consider the State Court Action.  A state court such as the one in which the State Court Action is pending is not a specialized tribunal, it is a court of general jurisdiction.  *In re Cicale*, 2007 WL 1893301, *3 n.3 (Bankr. S.D.N.Y. June 29, 2007).  Cerimele relies upon *Hanlin Group, Inc. v. Power Authority of the State of New York*, 703 F. Supp. 305, 308 (S.D.N.Y. 1989), for the proposition that (a) this Court should abstain from hearing the Claim Objection on the basis of the Supreme Court's abstention doctrine established in *Burford v. Sun Oil Co.*, 319 U.S. 315 (1943), (b) this Court is without jurisdiction to hear and determine the allowance of Claim 262 because it is based in tort, and (c) this Court is expressly prohibited from "liquidating or estimating a contingent or unliquidated personal injury tort or wrongful death claim against the estate . . . ."  28 U.S.C. § 157(b)(2)(B).

25.      This argument fails for the following reasons.  First, not all tort claims fall into the jurisdictional exception set forth in 28 U.S.C. § 157(b)(2)(B).  Tort claims without physical injury do not fall within the personal injury tort exception.  *Siewert v. Christy (In re Finley, Kumble, Wagner, Heine, Underberg, Manley, Myerson & Casey)*, 194 B.R. 728, 734 (S.D.N.Y. 1995) (emotional damages, while not inconsequential, are not sufficient to transfer a business tort into a personal injury tort); *Perino v. Cohen (In re Cohen)*, 107 B.R. 453 (S.D.N.Y. 1989) (personal injury within the meaning of 28 U.S.C. § 157 requires impairment beyond "mere shame and humiliation"); *Priest v. Interco, Inc. (In re Interco)*, 135 B.R. 359, 361-62 (Bankr. E.D. Mo. 1991) (holding that the personal injury exception should be construed narrowly so as not to include torts without physical injury); *In re Atron Inc.*, 172 B.R. 541, 544-45 (Bankr. W.D.

Mich. 1994) ("While not minimizing the emotional pain characteristic of job loss, the Claimant in the present case simply does not allege that his emotional suffering reached the level of a personal injury tort . . . . We are unwilling to adopt the broad exception to bankruptcy court jurisdiction urged by Claimant and thus open the door to a mass exodus of the claims allowance process to the district court . . . ."). Cerimele has not alleged that she suffered even emotional distress, let alone any personal, physical injury, and she has not prayed for damages for emotional distress or personal injury.

26. Second, assuming *arguendo* that Cerimele's claim did fall within the jurisdictional exception, the Court would not be prohibited from determining the validity of such claim. *United States Lines, Inc. v. United States Lines Reorganization Trust*, 262 B.R. 223, 234-35 (S.D.N.Y. 2001) (holding that "a bankruptcy court may disallow a personal injury claim based on that court's determination that the claim, if litigated, would not be viable in light of the estate's available defenses"); *In re Chateaugay Corp.*, 111 B.R. 67, 78 (Bankr. S.D.N.Y. 1990) (holding that a bankruptcy court is not precluded from determining the legal sufficiency of a claim based in tort).

27. Cerimele submitted to this Court's jurisdiction by filing Claim 262, which is nothing more than an alleged employment discrimination claim that does not have any elements of physical injury that would prohibit this Court from exercising its jurisdiction to determine its validity and, if necessary, the amount of such claim, all of which are core matters. Accordingly, application of the fourth Sonnax Factor weighs against granting the relief sought by Cerimele.

E.      **The Fifth Sonnax Factor – Lexington Precision Lacks Insurance Coverage**

28. The fifth Sonnax Factor, the availability of insurance coverage, is particularly salient to the present analysis. The Debtors do not have insurance coverage to

satisfy either the litigation costs that will be incurred if the Automatic Stay is lifted or the potential costs of any judgment arising from the State Court Action.  As a result, this is not a situation in which a claimant is seeking relief from the Automatic Stay for the limited purpose of recovering insurance proceeds.  *Int'l Business Machs. v. Fernstrom Storage & Van Co.* (*In re Fernstrom Storage & Van Co.*), 938 F.2d 731, 736 (7th Cir. 1991).  Instead, Cerimele, if successful, seeks to enforce the judgment against the Lexington Precision.  Thus, application of the fifth Sonnax Factor weighs against the relief sought by Cerimele.

**F.    The Sixth Sonnax Factor – The State Court Action
Involves Lexington Precision and Third Parties as Primary Defendants**

29.    This Court has previously explained that it "may lift a stay for actions which bear little relation to the bankruptcy case." *City Ins. Co. v. Mego Int'l Inc.* (*In re Mego Int'l, Inc.*), 28 B.R. 324, 326 (Bankr. S.D.N.Y. 1983).  In *Mego*, the Court found that "[s]uch lack of connection with the title 11 case occurs where the action essentially involves third parties, the debtor functions only as a bailee or conduit for the goods or proceeds in question, and resolution of the issue in no way frustrates the orderly distribution of assets of the estate. *Id.* (citing *In re Columbia Ribbon & Carbon Manufacturing Co., Inc.*, 13 B.R. 276. (Bankr. S.D.N.Y. 1981)).  The Court in *Mego* denied the movant's request for relief from the Automatic Stay because the debtor was "more than a mere conduit for the flow of proceeds" and where the property recovered would "constitute property of the estate." *Id.*

30.    Likewise, in the instant case, Cerimele asserts a claim directly against Lexington Precision that, if successful, will reduce the value of its estate.  Thus, application of the sixth Sonnax Factor militates against granting the Motion.

**G.**     **The Seventh Sonnax Factor - Litigation in State
Court Would Prejudice the Interests of Other Creditors**

31.     Cerimele seeks to lift the Automatic Stay to prosecute her claim at the

expense of the Debtors' estates and other stakeholders in these chapter 11 cases.  By allowing

Cerimele to proceed with the State Court Action, the Debtors' estates and creditors will be

harmed because it will require the Debtors focus their attention away from the chapter 11 cases

and utilize cash that is needed to operate the business and administer the chapter 11 cases, which

will reduce distributions to other creditors and might delay the Debtors' emergence from chapter

11.  Cerimele's claim should be liquidated in the same manner and forum as other, similarly

situated creditors of the Debtors' estates, through the claims reconciliation process.  Application

of the seventh Sonnax Factor, therefore, weighs against granting the relief sought by Cerimele.

**H.**     **The Eighth Sonnax Factor – Cerimele's Claim, if Allowed,
Would Be A General Unsecured Claim Against Lexington Precision**

32.     The eighth Sonnax Factor is whether the judgment claim arising from the

State Court Action is subject to equitable subordination.  The payment of punitive damages

claims are subordinated pursuant to section 726(a)(4) of the Bankruptcy Code.  At this juncture

of the cases it is not possible to determine whether such claim, assuming it is valid and

enforceable, would be subordinated.  Because this factor might not be applicable, it does not

provide support for Cerimele's request.

**I.**     **The Ninth Sonnax Factor – Cerimele's Success in the
State Court Action Would Not Result In a Judicial Lien**

33.     Assuming, *arguendo*, that Cerimele were to prevail in the State Court

Action, she would, at best, be an unsecured creditor of Lexington Precision's estate.

Consequently, the ninth Sonnax Factor is inapplicable to the present dispute.

**J.      The Tenth Sonnax Factor – The Interests Of Judicial Economy
And The Expeditious And Economical Resolution Of State Court Action**

34.      The State Court Action involves a disputed, unliquidated, prepetition

claim.  Such a claim will be more efficiently dealt with as part of the Debtors' claims resolution

process.  Cerimele has filed a proof of claim in Lexington Precision's chapter 11 case and will be

given similar treatment to all other similarly situated unsecured claimants who can demonstrate a

valid and enforceable claim.  The commencement of the Debtors' chapter 11 cases should enable

the Debtors to resolve all prepetition claims in a single forum subject to the requirements

established under the Bankruptcy Code.  If the Debtors are required to litigate Cerimele's claim

in Ohio they will have to shift a portion of their of time and resources away from the chapter 11

cases at a time when they are most needed.  Thus, to divert management attention from the

chapter 11 cases at this time would serve neither judicial economy nor the purposes of section

362 of the Bankruptcy Code.  Accordingly, application of the tenth Sonnax Factor weighs

against granting the relief sought by Cerimele.

**K.      The Eleventh Sonnax Factor – The Parties Are Not Ready For Trial**

35.      Although the State Court Action was commenced almost 9 years ago, the

deposition of Cerimele and her numerous witnesses has not been completed, and Cerimele has

not produced all of the documents sought from her in discovery.  After the conclusion of

discovery, the parties will likely engage in various forms of motion practice, including the filing

and arguing of dispositive motions.  The fact that fact that the parties are not ready for trial

weighs in favor of the Debtors.  *See In re WorldCom, Inc.*, Case No. 02-13533, 2007 WL

841948, *8 (Bankr. S.D.N.Y. Mar. 12, 2007) (holding that when the parties are not ready for trial

resolving the claim in the bankruptcy case is more a expeditious and economical means to

resolve the litigation).  The facts of this case are unlike the facts of *Burger Boys, Inc. v. South*

*Street Seaport Ltd. P'ship* (*In re Burger Boys, Inc.*), 183 B. R. 682, 683 (S.D.N.Y. 1994),

wherein the debtor commenced its chapter 11 case on the eve of the trial. Rather, Cerimele

commenced the State Court Action almost 9 years ago and failed to take any action to prosecute

her claim for extended during those 9 years. The State Court Action it is still far from ready for

trial. The Debtors should not be forced to turn their attention and efforts away from their

restructuring and litigate this claim in a different forum merely because Cerimele desires to

resume the litigation in the Ohio state court as opposed to this Court. Consequently, application

of the eleventh Sonnax Factor weighs against granting the relief sought by Cerimele.

**L.    The Twelfth Sonnax Factor – Impact Of
the Stay on the Parties and the Balance of Harms**

36.    The twelfth Sonnax factor, the balance of harms, weighs in favor of the

Debtors. Cerimele does not specifically allege any "harm" that will occur if she does not obtain

the requested relief from the Automatic Stay. The fact that the State Court Action has been

lingering for 9 years, with extended periods during which Cerimele failed to prosecute her claim,

demonstrates that no harm will befall Cerimele if the Automatic Stay is not lifted. In *Sonnax*, the

Second Circuit affirmed a bankruptcy court's denial of relief from the Automatic Stay, where the

movant would suffer little harm if the stay was left in place and lifting the stay would have

interfered with the debtors' efforts to advance their reorganization. *Sonnax*, 907 F.2d at 1287.

Cerimele cannot argue that she is harmed by having to litigate her claim in this Court when the

purpose of the Automatic Stay is to stay all litigation against the Debtors so that they can resolve

all of their prepetition claims in a central forum. The impact of the Automatic Stay on Cerimele

is minimal at best and the Claim Objection one of many tools debtors have at their disposal to

administer their chapter 11 cases. Accordingly, application of the twelfth *Sonnax* factor weighs

heavily against granting the relief sought by Cerimele.

## Conclusion

37.     For all of the foregoing reasons, the Debtors respectfully request that the

Court deny the Motion.

Dated:  June 18, 2009
          New York, New York

<div style="margin-left: 40%;">

/s/ Adam P. Strochak
Richard P. Krasnow
Adam P. Strochak

WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone:     (212) 310-8000
Facsimile:     (212) 310-8007

Attorneys for Debtors
and Debtors in Possession

</div>