Dan Shaked                                           Return Date:  July 30, 2009
Shaked & Posner                                                     at 2:00 p.m.
255 West 36th Street, Fl 8
New York, NY 10018
Telephone: (212) 494-0035
Facsimile: (646) 367-4951
  Attorney for Claimant
  Lorraine Cerimele, Claim #262

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| **In re:** | : | **Chapter 11** |
| | : | |
| **LEXINGTON PRECISION CORP., et al.** | : | **Case No. 08-11153 (MG)** |
| | : | |
| Debtors. | : | **(Jointly Administered)** |
| | : | |
| | : | |

**CLAIMANT'S REPLY TO DEBTORS' OBJECTION TO CLAIMANT CERIMELE'S MOTION FOR RELIEF FROM THE AUTOMATIC STAY TO PURSUE PENDING ACTION IN THE TRUMBULL COUNTY, OHIO COURT OF COMMON PLEAS**

  To The Honorable Martin Glenn
  United States Bankruptcy Judge

This submission is a reply or answer to Debtors Lexington Precision Corporation and its wholly-owned subsidiary, Lexington Rubber Group Inc.'s ("together, the "Debtors") objection to Claimant Lorraine Cerimele's (the "Claimant") motion for relief from automatic stay in order to pursue pending action in the Trumbull County, Ohio Court of Common Pleas.

**PRELIMINARY STATEMENT**

1. The Debtors have attempted to taint the issue of whether or not this Court in its discretion should grant Claimant relief from an automatic stay under §362 of Title 11 of the Bankruptcy Code by injecting untrue and unsupported statements claiming that:

    a.    Her claim is "frivolous," with "no legal or factual basis to support her claim." (Debtors Obj. p.7; ¶18);

    b.    She "refused to comply with discovery requests" thus causing delays in the State Court action; (Debtors Obj. p.7; ¶19-20);

    c.    She was terminated from her employment with Debtors for "cause" (Debtors Obj. p.5; ¶3) due to her interpersonal skills, inability to work well with co-workers and customer complaints regarding her services [which] were affecting her ability to effectively perform her job. (Debtors Obj. p.7; ¶17).

The Debtors conclusionary statements are contrary to those set forth in Claimant's previously filed motion for relief from automatic stay beginning on page 1 under the heading "I. Background." To prove that Debtors' statements made to this Court are disingenuous and that the true facts are as set forth in Claimant's previously filed motion Claimant has attached the affidavits of seven (7) employees of the Debtors to prove that Claimant was fired because she refused to continue perpetuating lies to Debtors' customers regarding the product standards that the Debtors promoted.

    **2.**    **Lexington Connector Seals Was "Cooking The Books" As The Same Was Related By Witnesses Other Than Claimant.**

Kimberly Hunsbarger gave a five page affidavit stating she was requested by the Debtors' President to run a dual system or have two sets of documents. One was for the Company and the other were "fudged" documents for the customer.[1] Kathryn Vandyke gave a

---

[1] See EXHIBIT A

2

twenty-page affidavit explaining how customers of Debtors were being cheated and furnished defective and substandard parts that did not meet QS-9000 standards.[2]

Carolyn Belden stated under oath that under President of Lexington Connector Seals employees were required to knowingly falsify records and reports to the customers to cover up its inferior products.[3]

Deborah Roley, a supervisor managed the quality on the floor, auditors on three shifts as well as procedures. She stated in a fourteen-page affidavit the problems and cheating that the President of Lexington Connector Seals was ordering that affected and overruled legitimate concerns of those working in quality control. She felt that when she quit there was no quality department because due to President Blockinger's orders no one in the plant was protecting the customer.[4]

Christopher J. Sokal, a quality engineer and assistant to Claimant, gave a four-page affidavit stating how the President of Lexington Connector Seals overruled the quality control department and ordered them to ship defective products.[5]

Kathy Murphy, worked for Delphi Packard and interfaced with Claimant as a quality manager, gave an affidavit stating that Claimant could be counted on for her honesty about problem components and her reputation among Packard's engineers was the same.[6]

Kenneth Mark Shane, employed by Lexington as an Engineering Manager, gave an affidavit stating that he was asked by Lexington's President to fabricate data to make paperwork more appealing to the customers. He also stated that Claimant was asked by the Lexington

---

[2] See EXHIBIT B
[3] See EXHIBIT C
[4] See EXHIBIT D
[5] See EXHIBIT E
[6] See EXHIBIT F

President to change dimensions or to doctor or make numbers look more appealing to what the actual part print would call for in order to bring things into specification.[7]

Claimant was fired because as head of quality control she was used as a pawn and buffer to help perpetuate the dishonesty of the way the company cheated its customers. It finally came to a head when the Claimant was dealing with AMP and she was unable to perpetuate the falsehood any longer to the Company's satisfaction.

Consequently the Debtors' statement that Claimant's claim is frivolous and its fallacious statements that she was fired for cause without any supporting evidence to the contrary flies in the face of seven witnesses' statements, which support the Claimant's legitimate complaint that she was fired because she could no longer successfully perpetuate the lies and cover-ups demanded by her employer Lexington Connector Seals.

### 3. The Debtors' Assertions That The Trial Delays In The Ohio Common Pleas Court Were Caused Primarily By Claimant Is Likewise Disingenuous As Shown By Evidence Of The Trial Court's Ruling And Correspondence Of Debtors Own Legal Counsel.

The Debtors propensity to want to paint Claimant as a culprit for delaying discovery in the trial court is likewise refuted by the fact that the trial court by judgment entry of January 10, 2007 stated:

> "… While the Court certainly does not wish to countenance dilatory tactics by either side in this case, Defendants' [Lexington] sudden outrage at Plaintiff's failure to respond sooner strikes the Court as perhaps somewhat disingenuous and at the very least, based upon an incomplete recitation of the history of the case."[8]

The Court by footnote further stated:

---

[7] See EXHIBIT G
[8] See EXHIBIT H

4

> "Interestingly, the only motion to compel ever filed by Defendants in this matter was filed less than a month ago."

It was not until seven months after the trial court's entry that Debtors' attorney finally delivered to Claimant's counsel 22,500 pages of documents (equivalent to eight bankers boxes) on two CD-Roms. A copy of counsel's letter of August 31, 2007 verifying the late delivery is attached as EXHIBIT I.

4.  **The Claimant's Common Pleas Court Action Should Be Permitted To Proceed And The Stay Lifted For The Reason That The Outcome Of The Case Will Probably Give The Creditors Committee Valuable Insight And Information As To Gross Mismanagement Practices That Debtors Have Perpetrated, Which If Continued Could Affect The Reorganization Plan Of The Bankruptcy Case.**

The seven affidavits attached to this reply (Exhibits A-G) consist of nearly fifty-pages of sworn affidavits of Debtors' employees, or former employees, alleging that Debtors continuously and routinely cheated and lied to its customers by fudging information, maintaining two sets of parceled computer records, namely one actual account and another fictitious one for its customers. It hid defective products from its customers and led customers to falsely believe that merchandise was within specifications. It disregarded the role of quality control and its President Keith Blockinger was heard stating to its employees, "we cannot tell them what happened what are you going to tell them?" He was also heard to refer to customers AMP, Elcom and Cardell specifications as "Fuck them, we're not going to do it."

The statements show in great detail the mismanagement practices of deceit, lies, and product inferiority, which the Debtors' President expected his employees to perpetuate. These practices, if proven in the state court to be against public policy, are also important factors that a Creditors Committee may wish to consider in developing an effective plan of reorganization. If

5

these practices continue they may have a bearing upon the success of any reorganization plan adopted by this Court.

Consequently, it is in the best interests not only of the Claimant but also the Creditors of this bankruptcy court to allow the State Court case to play out. If the allegations are proven, as the wealth of testimony would tend to show, then the Creditors may want to put in place different management teams to run the reorganized company.

### 5. Relief From Automatic Stay May Be Granted For Cause Taking Into Consideration The Sonnax Factors Set Forth In Debtors' Objection To Claimant's Motion For Relief From Automatic Stay

§362(d)(1) of the Bankruptcy Code provides that the bankruptcy court may grant relief from a stay "for cause." Congress intended that the stay be lifted to allow proceedings to continue in forums other than the bankruptcy court under appropriate circumstances:

> "[I]t will often be more appropriate to permit proceedings to continue in their place of origin, when no great prejudice to the bankruptcy estate would result, in order to leave the parties to their chosen forum and to relieve the bankruptcy court from any duties that may be handled elsewhere."

H.R. Rep. No. 595, 95th Cong., 1st Sess. 341 (1977); S. Rep. No. 989, 95th Cong. 2d Sess. 50 (1978) reprinted in 1978 U.S.C.C.A.N. 5787, 5836, 6297; Smith v. Tricare Rehabilitation Systems, Inc. (In re Tricare Rehabilitation Systems, Inc.), 181 B.R. 569, 572-73 (Bankr. N.D. Ala. 1994).

Whether "cause" exists is a question committed to the sound discretion of the Bankruptcy Court. §362(d)(1) requires an initial showing of cause by the movant while §362(g) places the burden of proof on the debtor for all issues other than the debtor's equity in property. Sonnax

6

Indus., Inc. v. TriComponent Prod. Corp. (In re Sonnax Indus., Inc., 907 F.2d 1280 at 1285 (2d Cir. 1990).

The determination of whether cause exists to lift the automatic stay involves a weighing of the factors articulated in In re Curtis, 40 B.R. 795 (Bankr. Utah 1984) and adopted by the Second Circuit in Sonnax Indus., Inc. v. TriComponent Prod. Corp. (In re Sonnax Indus., Inc. 907 F.2d 1280 (2d Cir. 1990).

Claimant's case favors the granting of relief from the automatic stay in order to permit her to pursue her claim in the lawsuit pending in the Ohio Common Pleas Court against Lexington Precision Corp. based upon the following factors or indicia set forth in Sonnax, supra:

   *a.    Whether Relief Would Result In A Partial Or Complete Resolution Of The Issues.*

Debtors lament that the Ohio State Court action will be delayed due to incomplete discovery. As indicated earlier it was not until August 31, 2007 that Debtors' legal counsel finally produced 22,500 pages of documents (equivalent of 8 bankers boxes) that Claimant's discovery requested early in the case. This material was essential to her claims to prove that Debtors were engaged in extreme and outrageous deceptive trade practices contrary to Ohio Revised Code §4165.02. Debtors knew this information was critical and stalled hoping it would not be necessary to produce. The bulk of discovery is now completed and in review of that fact that this case is a nine-year-old case it has priority over all other civil cases to expeditiously proceed to a jury trial in the State Court.

The Debtors' assertion that Claimant's case is without merit is disingenuous in light of the seven attached affidavits of employees, which testify to the Debtors egregious deceptive trade practices that ensued with its customers.

Permitting Claimant to prosecute her claim in the Ohio Court will result in a complete resolution of a final undisputed liquidated claim against the Debtors. This Court will not have to deal with having to resolve the complex legal and factual issues dealing with the application of Ohio law on public policy issues.

Also, it is unlikely that other creditors may object to Claimant's claim since the case outcome may assist them in understanding how the Debtors have been operating its business in an illegal and nefarious way which could affect how it should conduct its business in the reorganization process in the future.

### b.     *Lack Of Any Communication With Or Interference With The Bankruptcy Case.*

Claimant's claim lacks any connection with the Debtors' reorganization efforts since resolution of the claim is not necessary to effectuate the Debtors' reorganization. Instead it will result in the claim's liquidation, which will ultimately aid in the claims allowance process.

The result of the lawsuit, which involves the trade practices of the Debtors, will have a positive effect on the Debtors and its market by revealing and cleansing its unwarranted practices to make for a more reliable competitor in doing business during reorganization.

The lifting of the stay would also relieve this Court from any burden and distraction from these reorganization proceedings rather than interfere with the bankruptcy proceedings.

### c.     *Whether The Former Proceeding Involves The Debtors As A Fiduciary.*

To Creditors knowledge the forum proceeding does not involve Debtors as a fiduciary.

### d.     *Whether A Specialized Tribunal Has Been Established To Hear The Particular Cause Of Action And That Tribunal Has The Expertise To Hear Such Cases.*

8

Although the Ohio State Court is not a specialized tribunal the case involves interpretation and application of State Court policy relating to the firing of an employee that refused to continue to perpetuate serious violations of an Ohio statute (O.R.C. §4165.02) involving deceptive trade practices. This subject matter involves the discretionary interpretation of a state statute, as it applies to the tort wrongful discharge of an employee, and is one of state concern and public policy not federal.

In <u>Burford v. Sun Oil Co</u>. 319 U.S. 315, 63 S. Ct. 1098, 86 L.Ed. 1424 (1943) the U.S. Supreme Court indicated that abstention is appropriate to "avoid resolving difficult state law issues involving important public policies or avoid interfering with state efforts to maintain a coherent policy in an area of comprehensive regulation or administration." *See American Disposal Services, Inc. v. O'Brien 839 F.2d 84, 87 (2d Cir. 1988) see also, Hanlin Group, Inc. v. Power Authority of the State of NY, 703 F. Supp. 305, 307 (S.D.N.Y. 1989) aff'd. 923 F.2d 844 (1990).*

The court in <u>Hanlin</u> determined that the factors to be considered to invoke the <u>Burford</u> abstention are 1) the degree of specificity of the state regulatory scheme, the 2) necessity for discretionary interpretation of state statutes, and 3) whether the subject matter of the litigation is traditionally one of state concern.

If a case has been removed from state court to federal court and it is determined that <u>Burford</u> type abstention is appropriate, the federal court may remand the case to state court rather than dismiss the case. *See Melahn v. Pennock Ins. Co., C.A. 8th, 1992, 965 F.2d 1497, 1501; Corcoran v. Ardra Ins. Co., C.A. 2d, 1988, 842 F.2d 31; Navajo Life Ins. Co. v. Fidelity & Deposit Co. of Md., C.D. Ariz. 1992, 807 F.Supp. 1485, 1490.*

In the case of <u>In re Joint Eastern and Southern Dist. Asbestos Litigation</u>, 78 F.3d 764

9

C.A. 2.N.Y. 1996 it was decided that under the abstention doctrine, a district court may properly decline to decide difficult questions of state law bearing on substantial public policy matters whose importance transcends results in any particular case. In the case of Shiflett v. GE Fanuc Automation Corp. Civ. A. No. 95-0073-C (1996) the U.S. District Court of W.D. Virginia Charlottesville Division determined that federal courts should not be in the business of charting new waters for state public policy. §157 of Title 28 U.S.C. repeatedly emphasizes that the bankruptcy courts have no power to make factual determinations regarding personal injury tort claims. *See 28 U.S.C. §157(b)(2)(B)* (core jurisdiction does not extend to "the liquidation or estimation of contingent or unliquidated personal injury tort or wrongful death claims against the estate for purposes of distribution in a case under title 11"). Accordingly, under the Burford doctrine this court should abstain from deciding this case since it is a matter of public policy involving state law pertaining to a tort claim for wrongful termination.

    *e.*    ***Whether Debtors' Insurance Carrier Has Assumed Full Financial Responsibility For Defending The Litigation.***

Claimant is not aware that the matter involved is covered by insurance but believes that there is no carrier particularly since the claimed tort is a wanton and willful wrongful discharge of an employee refusing to perpetuate deceptive trade practices in violation of Ohio State law.

    *f.*    ***Whether The Action Essentially Involves Third Parties And The Debtors Functions Only As A Bailer Or Conduit For Goods Or Proceeds In Question.***

In this case the action does not involve third parties and the Debtors do not function as a bailee or conduct for goods or proceeds.

    *g.*    ***Whether The Litigation In Another Forum Would Prejudice The Interests Of Other Creditors, The Creditors Committee, And Other Interested Parties.***

10

The litigation in the Ohio Court would not prejudice the interests of other creditors, the creditors committee or other parties. In fact it will instead be advantageous.

The parties and their counsel, as well as the Ohio Court, have spent many hours on this case. They are all familiar with the facts and legal issues and are well positioned to proceed to trial expeditiously since the case, because of its age, stands to have priority.

The failure to vacate the automatic stay and removing the case to the Bankruptcy Court will mean that the parties and the Bankruptcy Court will have to duplicate their efforts all over again, wasting valuable time and money.

      *h.*      *Whether The Judgment Claim Arising From The Foreign Action Is Subject To Equitable Subordination Under 510(C).*

Depending on the final judgment it is not possible to determine whether or not such claim would be subordinated therefore the factor would not weigh favorably or unfavorably to creditor or debtors.

      *i.*      *Whether Movant's Success In The Foreign Proceeding Would Result In A Judicial Lien Avoidable By The Debtors Under Section 522(F).*

Claimant agrees with Debtors assessment that if Claimant were to prevail in the State Court case she would be an unsecured creditor and that this factor of <u>Sonnax</u> is inapplicable to the present dispute.

      *j.*      *The Interests Of Judicial Economy And The Expeditious And Economical Determination Of Litigation For The Parties.*

As previously noted the Ohio State case, with some additional discovery, is poised for trial having priority over other civil cases due to its age. The Debtors will be required to spend time in litigating the case regardless of which court hears the case. In fact the Debtors will be

able to spend less time completing the case in the State Court than if they were required to start all over again in a new court that will have to grapple over the application of complicated State public policy issues in arriving at a final judgment.

By allowing the case to proceed in the Ohio State Court this Bankruptcy Court will have more judicial time to dedicate to the reorganization of this case and its already overloaded docket. In effect it will be outsourcing the trial of the case and thus save its valuable time to devote to other creditors' problems as well as the Debtors' reorganization.

### k.    Whether The Foreign Proceedings Have Progressed To The Point Where The Parties Are Prepared For Trial.

Debtors, at this late hour, suggest that after nine years it has not yet taken the deposition of the Claimant or her witnesses. Why not? How can the Debtors type the Claimant's case as "frivolous" with "no legal or factual basis to support her claim" at page 7 of its objection to Claimant's motion for relief when it wants this Court to believe that it hasn't completed the discovery necessary to assess her claim?

It is to be noted that the Ohio Court in its judgment entry on its first page dated January 10, 2007[9] in footnote number one stated:

> "Interestingly, the only motion to compel ever filed by Defendants in this matter was filed less than a month ago."

Note this is seven years after the commencement of the case. On the other hand Claimant has already obtained the elaborate affidavits of seven witnesses (Exhibits A-G) and Debtors'

---

[9] See EXHIBIT H

12

counsel acknowledged delivering 22,500 pages of documents (equivalent to 8 bankers boxes) on August 31, 2007.[10]

With some limited additional discovery Claimant is in a position to proceed to trial and the procrastination of the Debtors should not be used as a basis to derail the case from the granting of relief for the automatic stay.

### l.     *The Impact Of The Stay On The Parties And The "Balance Of Hurt."*

Claimant and her counsel, as well as Debtors' counsel, and the Ohio Court have spent many hours on this case. Both parties legal counsel are in Ohio in close proximity to the Ohio Court located in Warren, Ohio. Trying the case in New York would be a hardship on both parties and the parties' counsel to have to travel and stay in New York. Alternatively, if the case is tried in New York the parties only other option would be to hire new counsel at higher fees who would have to go through extensive file review at added costs to come up to speed for trial. The Bankruptcy Judge would also have to spend considerable time to review voluminous files and become familiar with the facts and issues, which the Ohio Judge has already assimilated.

As a result the Debtors and Claimant costs of trial will be greater in the Bankruptcy Court. Witnesses are located in the vicinity of the Ohio Court and can more easily be subpoenaed at much less cost for travel, lodging, and food. The Debtors have a significant corporate and legal presence in the county where the Court is located.

A trial in Ohio is not only in the best interest of judicial economy, and less costly to litigants but the case would also be expedited due to its priority for civil cases on the docket. Furthermore, as stated in Shiflett, supra, the federal court should not be in the business of charting new waters for state public policy matters involving a tort of firing an employee that

---

[10] See EXHIBIT I

refused to perpetuate serious violations of an Ohio Statute (O.R.C. §4165.02) involving deceptive trade practices of her employer.

In this case the balance of harms and impact of the stay on the parties dictates that the automatic stay be lifted.

### 6.  Conclusion

Claimant, Lorraine Cerimele, has offered at least eight exhibits in support of its motion for relief from automatic stay whereas Debtors have offered none to support the factual premises upon which it relies. Although the decision to lift the stay is discretionary the application of the Sonnax factors and the State public policy issue involved in this set of facts clearly indicate that this is a case where the automatic stay should be lifted in the best interests of all concerned.

| | |
|---|---|
| Dated: New York, NY<br>July 21, 2009 | SHAKED & POSNER<br><br>By:  /s/ Dan Shaked<br>Dan Shaked, Esq. (DS-3331)<br>255 West 36th Street, Fl 8<br>New York, NY 10018<br>Telephone: (212) 494-0035<br>Facsimile: (646) 367-4951<br>dan@shakedandposner.com<br><br>Attorney for Claimant<br>Lorraine Cerimele, Claim #262 |