

SRR
STOUT|RISIUS|ROSS

May 13, 2008

Mr. Robert Welch
Chairman, Official Committee of Unsecured Creditors of
Lexington Precision Corporation, *et al.*
c/o Jefferies High Yield Trading
The Metro Center
One Station Place, Three North
Stamford, CT 06902

RE: Financial Advisors to the Official Committee of Unsecured Creditors of Lexington Precision Corporation, *et al.*

Dear Mr. Welch:

Thank you for selecting Stout Risius Ross, Inc. ("SRR") to provide financial advisory services to the Official Committee of Unsecured Creditors (the "Committee") of Lexington Precision Corporation, and its affiliated debtors and debtors-in-possession (collectively, the "Debtors" or the "Company"). This letter shall confirm the understanding of the Committee (the "Engagement Letter") concerning the engagement of SRR, the services to be provided by SRR and the manner in which SRR will be compensated for these services, effective as of May 13, 2008 (the "Effective Date").

## Objectives and Scope

Subject to the Court's approval of SRR's Employment Application, SRR will serve as the Committee's financial advisors to perform the services described below, as needed, as well as any other services reasonably requested by the Committee.

1. Financial advisory services, as reasonably requested by the Committee, including, but not limited to, the preparation of a liquidation analysis, monthly analysis of the Debtors' financial information (including analysis of significant changes financially, operationally or otherwise).

2. Analysis of the Debtors' general financial and business condition, including an analysis of current assets and liabilities, PP&E and other "soft" assets.

3. Qualitative analysis of the Debtors' plants, operations and facilities.

4. Qualitative analysis of the Debtors' customers and suppliers.

5. Qualitative analysis of the Debtors' principal products and markets.

6. Meet with Committee to discuss SRR's various analyses.

4000 Town Center, 20th Floor
Southfield, MI 48075
ph. 248 208-8800
fax 248 208-8822
www.srr.com



Official Committee of Unsecured Creditors of
Lexington Precision Corporation, *et al.*
May 13, 2008
Page 2

7. Determination of the Debtors' enterprise value as of the petition date and as of the effective date of a Chapter 11 plan of reorganization (the "Valuation Dates").

8. Expert witness report and testimony regarding the Debtors' enterprise valuation, the valuation of any securities proposed to be issued under any Chapter 11 plan of reorganization for the Debtors, confirmation issues, or other matters.

The Committee and SRR agree that the Committee may limit or expand the scope of our representation from time to time on terms mutually acceptable to the parties in writing.

Jeffrey M. Risius, or a suitable replacement as determined by SRR and the Committee jointly, shall be the Managing Director in charge of the engagement. Mr. Risius shall be the testifying expert with regard to the business enterprise valuation.

### Fees and Expenses

In consideration of the services it provides to the Committee pursuant to this Engagement Letter, SRR shall be entitled to receive, and the Company shall pay to SRR, the following compensation:

1. Commencing as of the date of the Engagement Letter, SRR shall be paid by the Company a monthly fee (the "Monthly Fee") each month in advance for its services of: (i) $50,000 per month, for the first ten (10) months of the engagement and (ii) $20,000 per month thereafter through the Plan Approval Date (as defined below), subject to any order entered by the Bankruptcy Court regarding the reimbursement of professionals. Notwithstanding any termination of this Engagement Letter upon the terms provided herein, the Company shall pay SRR the Monthly Fee for a minimum of ten (10) months. The initial Monthly Fee of $50,000 shall be paid by the Company as soon as practicable after entry by the Bankruptcy Court of an order approving the Committee's retention of SRR. To the extent the Committee requests SRR to perform additional services not contemplated by this Engagement Letter after the initial ten (10) months of the engagement, the Committee and SRR may mutually agree to modify the Monthly Fee.

2. In addition to the fees described above, the Company agrees to promptly reimburse SRR, upon request from time to time, for all out-of-pocket expenses reasonably incurred by SRR in connection with the matters contemplated by this Engagement Letter including, without limitation, reasonable fees of counsel. Out-of-pocket expenses shall include, but not be limited to, all reasonable travel expenses, duplicating charges (including graphic design charges), on-line service charges (including data room charges), messenger and delivery services, meeting services and long-distance telephone and facsimile charges incurred by SRR. SRR agrees that its expenses shall not exceed $25,000 without the



Official Committee of Unsecured Creditors of
Lexington Precision Corporation, *et al.*
May 13, 2008
Page 3

Committee's prior approval, which approval shall not be unreasonably withheld or delayed.

### Wire Transfer

All payments required hereunder shall be paid by wire transfer unless otherwise permitted by us. Set forth below are our funds transfer instructions:

Stout Risius Ross, Inc.
Fifth Third Bank
Wire ABA Number 042000314
ACH ABA Number 072405455
Account Number 7911786619

### Bankruptcy Court

The Committee, as soon as practicable following the execution of this Engagement Letter by the Committee, shall seek an order authorizing the employment of SRR pursuant to the terms of this Engagement Letter, as a professional person pursuant to (and subject to the standard of review of) section 328(a) of the Bankruptcy Code, the Bankruptcy Rules and applicable local rules and orders. The Committee shall use its best efforts to cause such application to be considered promptly. The employment application and the order authorizing employment of SRR shall be provided to SRR sufficiently in advance of their filing, and must be acceptable to SRR in its discretion. If the order authorizing the employment of SRR is obtained, the Company shall pay all fees and expenses as promptly as possible in accordance with the terms of this Engagement Letter, any orders entered in the Chapter 11 Cases regarding reimbursement of professionals, the Bankruptcy Code, the Bankruptcy Rules and applicable local rules and orders, and the Committee will work with SRR to promptly file any and all necessary applications regarding such fees and expenses with the Bankruptcy Court. If the order authorizing the employment of SRR is not obtained (or is later reversed or set aside for any reason), SRR may terminate this Engagement Letter and the Company shall reimburse SRR for all fees and expenses reasonably incurred prior to the date of termination, subject to the requirements of the Bankruptcy Code, Bankruptcy Rules and applicable local rules and orders. The terms of this paragraph are solely for the benefit of SRR and may be waived, in whole or in part, only by SRR.

### Term of Engagement

This Engagement Letter shall extend until the entry of an order by the Bankruptcy Court approving a chapter 11 plan of reorganization (the "Plan Approval Date") unless earlier terminated upon thirty (30) days' written notice by the Committee. After the Plan Approval Date, this Engagement Letter may be terminated by either the Committee or SRR upon thirty


Official Committee of Unsecured Creditors of
Lexington Precision Corporation, *et al.*
May 13, 2008
Page 4

(30) days' written notice by the Committee or SRR without liability or continuing obligation; provided, however, that termination of this Engagement Letter shall not affect (a) the Company's indemnification, reimbursement, contribution and other obligations as set forth in this Engagement Letter; (b) the confidentiality provisions set forth herein; and (c) SRR's right to receive, and the Company's obligation to pay, any and all fees and expenses accrued as of the effective date of termination of this Engagement Letter.

<u>Entire Agreement, Waiver, Modification, and Notices</u>

This Agreement, including any Exhibits, constitutes the final and complete expression of the parties with respect to its subject matter and supersedes and replaces any other written or oral agreement or understanding between the parties. This Agreement may be amended, modified, supplemented or waived only by a written instrument signed by both parties. No waiver of a breach hereof shall be deemed to constitute a waiver of a future breach, whether of a similar or a dissimilar nature. All notices, demands or other communications which are required or are permitted to be given in this Agreement shall be in writing and shall be deemed to have been sufficiently given (i) upon personal delivery, (ii) the third business day following due deposit in the U.S. mail, postage prepaid, and sent certified mail, return receipt requested, correctly addressed or (iii) when receipt is acknowledged if sent via facsimile transmission. Notices to you shall be sent to the address set forth on page one of this Agreement with a copy to Committee counsel.

To the extent of any inconsistency between the terms of this Agreement (including the attached Professional Terms), and any Order of the Bankruptcy Court, the Order of the Bankruptcy Court authorizing our employment shall govern.

<u>Indemnification</u>

The Debtors agree to indemnify and hold harmless SRR and its affiliates, and their respective past, present and future directors, officers, shareholders, employees, agents and controlling persons within the meaning of either Section 15 of the Securities Act of 1933, as amended, or Section 20 of the Securities Exchange Act of 1934, as amended (collectively, the "Indemnified Parties"), to the fullest extent lawful, from and against any and all losses, claims, damages or liabilities (or actions in respect thereof), joint or several, arising out of or related to the engagement, any actions taken or omitted to be taken by an Indemnified Party (including acts or omissions constituting ordinary negligence) in connection with the engagement, or any Sale or proposed Sale contemplated thereby. In addition, the Debtors agree to reimburse the Indemnified Parties for any legal or other expenses reasonably incurred by them in respect thereof at the time such expenses are incurred; provided, however, the Debtors shall not be liable under the foregoing for any loss, claim, damage or liability which is finally judicially determined to have resulted primarily from the willful misconduct, gross negligence, bad faith or self-dealing of any Indemnified Party.



Official Committee of Unsecured Creditors of
Lexington Precision Corporation, *et al.*
May 13, 2008
Page 5

If for any reason, the foregoing indemnification is unavailable to any Indemnified Party or insufficient to hold it harmless, the Debtors shall contribute to the amount paid or payable by the Indemnified Party as a result of such losses, claims, damages, liabilities or expenses in such proportion as is appropriate to reflect the relative benefits received (or anticipated to be received) by the Debtors, on the one hand, and SRR, on the other hand, in connection with the services rendered by SRR. If, however, the allocation provided by the immediately preceding sentence is not permitted by applicable law or otherwise, then the Debtors shall contribute to such amount paid or payable by any Indemnified Party in such proportion as is appropriate to reflect not only such relative benefits, but also the relative fault of the Debtors, on the one hand, and SRR, on the other hand, in connection therewith, as well as any other relevant equitable considerations. Notwithstanding the foregoing, the aggregate contribution of all Indemnified Parties to any such losses, claims, damages, liabilities and expenses shall not exceed the amount of fees actually received by SRR pursuant to the Engagement Letter.

The Debtors shall not effect any settlement or release from liability in connection with any matter for which an Indemnified Party would be entitled to indemnification from the Debtors, unless such settlement or release contains an unconditional release of the Indemnified Parties reasonably satisfactory in form and substance to SRR, from all liability to the party being settled with in connection with such matter. The Debtors shall not be required to indemnify any Indemnified Party for any amount paid or payable by such party in the settlement or compromise of any claim or action without the Debtors' prior written consent.

Prior to entering into any engagement or arrangement with respect to, or effecting, any (i) merger, statutory exchange or other business combination or proposed sale, exchange, dividend or other distribution or liquidation of all or a significant proportion of its assets, or (ii) significant recapitalization or reclassification of its outstanding securities that does not directly or indirectly provide for the assumption of the obligations of the Debtors set forth in this Engagement Letter, the Debtors will notify SRR in writing thereof (if not previously so notified) and, if requested by SRR, shall arrange in connection therewith alternative means of providing for the obligations of the Debtors set forth herein, including the assumption of such obligations by another party, insurance, surety bonds or the creation of an escrow, in each case in an amount and upon terms and conditions reasonably satisfactory to SRR.

The Debtors further agree that neither SRR nor any other Indemnified Party shall have any liability, regardless of the legal theory advanced, to the Debtors or any other person or entity (including, the Debtors' equity holders and creditors) related to or arising out of SRR's engagement, except for any liability for losses, claims, damages, liabilities or expenses incurred by the Debtors, which either (a) are finally judicially determined to have resulted primarily from, or (b) is agreed by such Indemnified Party to have resulted primarily from, the willful misconduct, gross negligence, bad faith or self-dealing of any Indemnified Party.



Official Committee of Unsecured Creditors of
Lexington Precision Corporation, *et al.*
May 13, 2008
Page 6

The obligations of the Debtors set forth herein shall apply to any modifications of the Engagement Letter and shall be in addition to any liability, which the Debtors may otherwise have, and shall be binding upon and inure to the benefit of any successors, assigns, heirs and personal representatives of the Debtors and each Indemnified Party. The foregoing provisions shall survive any termination of the relationship established by the Engagement Letter.

Please indicate your agreement with the terms of this letter (including the Professional Terms), subject to approval of the Bankruptcy Court, by signing and returning to me the enclosed copy of this letter. We appreciate the opportunity to be of service to you and look forward to working with you on this important project.

* * * * * *

Very truly yours,

STOUT RISIUS ROSS, INC.

By: _[signature]_

Attachments: Professional Terms


Acknowledged and Accepted:

Official Committee of Unsecured Creditors of
Lexington Precision Corporation, *et al.*

Signed: _[signature]_
Name: ROBERT J. WORCLT
Title: Committee Chairman
Date: May 13, 2008

## STOUT RISIUS ROSS, INC.
## PROFESSIONAL TERMS

1. **Our Services** We will provide the services as described in our engagement letter, as may be modified from time to time by mutual consent.

2. **Independent Contractor** We are an independent contractor and not your employee, agent, joint venturer or partner, and will determine the method, details and means of performing our services. We assume full and sole responsibility for the payment of all compensation and expenses of our employees and for all of their state and federal income tax, unemployment insurance, Social Security, disability insurance and other applicable employee withholdings.

3. **Fees and Expenses** Our fees, out-of-pocket expenses, and payment terms are set out in our engagement letter. Those fees do not include taxes. You will be responsible for and pay all applicable sales, use, excise, value added and other taxes associated with the provision or receipt of the services, excluding taxes on our income generally.

4. **Confidentiality** With respect to any information supplied in connection with this engagement and designated by any party as confidential, or which the other party(s) should reasonably believe is confidential based on its subject matter or the circumstances of its disclosure, the other party(s) agree to protect the confidential information in a reasonable and appropriate manner, and use confidential information only to perform its obligations under this engagement and for no other purpose. This will not apply to information which is: (i) publicly known, (ii) already known to the recipient, (iii) disclosed by a third party without restriction, (iv) independently developed, or (v) disclosed pursuant to legal requirement or order. We may also mention the name of the Company and provide a general description of the engagement in our client lists or marketing presentations to others.

5. **Use of Financial & Other Information / GAAS** In the course of the Engagement, we will use financial and other information, including prospective financial information, obtained from you, the Company, and/or your representatives, and other public and private sources. The scope of our work will not enable us to accept responsibility for the accuracy and completeness of such information, and it is understood that we will have no duty of independent investigation or verification of such information. While our work may involve analysis of various records, our engagement does not include an examination in accordance with generally accepted auditing standards known as "GAAS." Furthermore, we will take no responsibility for the achievability of any expected, forecasted, projected, or hypothetical results anticipated or assumed by the management of the Company, whether relied upon by us or not.

6. **Our Financial Interest / Compensation** None of our employees who will work on this engagement have any known financial interest in the Company or the outcome of our analysis, and our compensation is neither based upon nor contingent upon the conclusions we reach. We do not warrant or predict results or final developments in this matter.

7. **Staffing** While we will attempt to comply with your requests for specific individuals, we retain the right to assign and reassign our personnel, as appropriate, to perform the services.

8. **General** (a) These Professional Terms, together with the engagement letter, including all its attachments, constitute the entire understanding and agreement between us with respect to the services and deliverables described in the engagement letter, supersede all prior oral and written communications between us, and may be amended, modified or changed only in writing when signed by all parties. If there is a conflict between these Professional Terms and the terms of the engagement letter, these Professional Terms will govern.

(b) No term of this agreement will be deemed waived, and no breach of this agreement excused, unless the waiver or consent is in writing signed by the party granting such waiver or consent.

(c) The terms of this agreement which by their nature are to survive this agreement will survive its expiration or termination.

(d) We will retain files related to this engagement in accordance with our document retention policy.

(e) We each acknowledge that we may correspond or convey documentation via Internet e-mail and that none of the parties has control over the performance, reliability, availability, or security of Internet e-mail. Therefore, none of the parties will be liable for any loss, damage, expense, harm or inconvenience resulting from the loss, delay, interception, corruption, or alteration of any Internet e-mail due to any reason beyond our reasonable control.

(f) All of our respective rights and duties and all controversies and claims in connection with this engagement will be determined in accordance with the laws of the State of Michigan.

* * *