## COMMERCIAL INSURANCE PREMIUM NOTE AND SECURITY AGREEMENT

**Repayment Terms:** For value received, the undersigned ("Insured"), promises to pay to the order of **WESTFIELD BANK, FSB**, Two Park Circle, Westfield Center, OH 44251 ("Bank"), the principal sum of $ ___623,854.50___ plus interest at the rate of __4.999__ % on the principal sum outstanding from time to time, commencing on __7/30/2009__, and continuing on the same day of each month thereafter until paid in full. The total payments to be paid to Bank include a processing fee of $50.

**Security for Payment:** The Insured assigns to Bank, as security for payment of amounts due hereunder, all sums payable to the Insured relating to the policies listed on page three (3) (the "Policies"), including, among other things, any payment on account of loss or any return premiums and gross unearned premiums. In addition, Insured grants a security interest in all deposit accounts maintained with Bank and Bank's affiliates.

| Agency | | Insured (Legal Name) (Trade Name) | |
|---|---|---|---|
| Name: | Leonard Insurance Services Agency, Inc. | Name: | Lexington Precision Corporation |
| Address: | 4244 Mt. Pleasant Street, Nw | Address: | 30195 Chagrin Blvd., Suite 208W |
| P.O. Box: | | P.O. Box: | |
| City, State, Zip: | North Canton   OH   44720 | City, State, Zip: | Cleveland   OH   44124 |
| Phone: | (330) 266-1904 | Phone: | (216) 591-1070 |
| Fax: | (330) 498-9952 | Fax: | |
| Bank Agency Code: A00032 | | Federal Tax ID Number: | |

**Payments:**   **Quote Number: 103887**

A Cash Down Payment of ___207,951.50___ shall be paid according to the terms within. Payments of $ __70,774.54__ shall be made **Monthly.**
Number of Payments: _9_    First Payment Due: _7/30/2009_ . Subsequent Payments are due on the same day of each succeeding month.

☐ If this box is checked, all payments shall be automatically debited from the Insured's depository account _____
, routing _____ on the payment due date.

**Security Interest:** Insured is granting a security interest in the Policies to Bank.

**Late Charge:** Upon default in payment of any installment ten days or more, Insured will pay a late charge of 5% of the delinquent installment or $50.00, whichever amount is greater, except that such charge shall be limited to the largest amount allowable under applicable law.

**Prepayment:** If Insured prepays the full amount due hereunder, Insured shall pay a prepayment fee equal to 5% of the total outstanding note balance.

**Assumption:** The obligation under this loan cannot be assumed without written permission of Bank.

## TERMS AND CONDITIONS

1. In consideration of the payment by Bank of the Amount Financed, Insured agrees to pay the Cash Down Payment to the insurance agency listed above ("Agency") and to pay Bank the Payments in accordance with the terms of this Commercial Insurance Premium Note and Security Agreement. Insured hereby authorizes Bank to disburse the loan proceeds to the Agency, to a general agent or broker, or directly to the Insurance Company(ies) listed on the schedule of Policies, as determeined by the bank.

2. An Event of Default occurs when: (i) the Insured does not pay any installment according to the terms of this Agreement or does not otherwise comply with the terms of this Agreement; (ii) any of the Policies is cancelled for any reason; or (iii) a proceeding in bankruptcy, receivership, or insolvency is instituted by or against Insured. When an Event of Default occurs and Bank provides any notice required by applicable law, all amounts due hereunder become immediately due and payable. Bank may also pursue the following remedies and any other remedy permitted it under applicable law:

   a. After providing 15 days notice to Insured, or as otherwise required by law, Bank may cancel the Policies and collect any gross unearned premiums or other amounts payable under the Policies.
   b. Bank may take all necessary actions to enforce payment of this debt. To the extent not limited by law, Bank is entitled to all collection costs and expenses incurred to enforce its rights hereunder and to reasonable attorneys' fees.
   c. After cancellation, Insured shall pay interest at the rate of 21% on the entire unpaid note balance as of the scheduled due date of the first delinquent payment leading to cancellation.

3. Insured hereby appoints Bank, upon the occurrence of an Event of Default, its irrevocable attorney in fact, with full power of substitution, which attorney in fact shall be coupled with an interest, with full authority, after notice has been mailed as required by law, to cancel the Policies and to receive any unearned premium or other amounts with respect to the Policies and to sign any check or draft issued therefor in Insured's name and to direct the insurance companies to make said check or draft payable to Bank.

4. Insured agrees not to assign the Policies except for the interests of mortgagees or loss payees without the prior written consent of Bank. Bank may assign or negotiate this Agreement without Insured's consent, and all Bank's rights hereunder shall inure to Bank's successors and assigns.

5. The Agency is not an agent of Bank and cannot bind Bank. Bank is not the agent of any insurer and is not liable for any insurer's act or omission. Insured's obligations under this Agreement shall not be relieved or diminished by any such act or omission.

6. Insured warrants that the proceeds of the loan contemplated herein will be used to purchase insurance for other than personal, family, agricultural or household purposes and that all information provided Bank or Agency in connection with this loan is true, correct, complete and not misleading.

7. Insured agrees to cooperate fully with Bank in executing additional instruments, documents, financing statements, and the like as may be deemed necessary or advisable by Bank in order to maintain and continue the security interest created by this Agreement. If automatic debit of payments has been selected by [checking the relevant box on page 1,] Insured hereby specifically authorizes Bank to automatically debit payments due hereunder as described in the Payment Schedule above and also agrees to execute any document Bank deems necessary in order for Bank to be authorized to automatically debit such payments.

8. Insured agrees to pay promptly any additional premiums assessed on the Policies by any insurer. Insured agrees to pay Bank a cancellation charge of $10.00 in the event Bank cancels any one or more of the Policies. Insured also agrees to pay a fee of $10.00 in the event any request by Bank to automatically debit Insured's account listed above is denied or any check Bank may accept from Insured is dishonored.

WFBZZ1(091407)   Initial_____

9. Insured agrees that any payments made and accepted after Policy cancellation shall not constitute reinstatement or obligate Bank to request reinstatement of the Policies, and Insured acknowledges that Bank has no authority to reinstate coverage, and that such payments may be applied to Insured's indebtedness hereunder.

**10. Neither Bank nor its assignee shall be liable for any loss or damage to the Insured by reason of failure of any insurance company to issue or maintain in force any of the Policies or by reason of the exercise by Bank or its assignee of the rights conferred herein. In no event will Bank be responsible to Insured or Agency for lost profits or for any special, indirect, incidental or consequential damages which Insured, Agency or any third party may incur arising out of or related to this Agreement, even if Bank has been advised of the possibility of such damages.**

11. Insured represents and warrants that the execution and performance of this Agreement are within its respective corporate or organizational powers, have been duly authorized by all necessary requisite actions, do not contravene any governmental or contractual restrictions binding upon such party, and that this Agreement is valid, binding and legally enforceable in accordance with its terms. Insured's signatory, by signing below, represents that he/she is duly authorized and has full authority to sign for Insured.

12. Insured represents and warrants that no proceeding in bankruptcy, receivership or insolvency has been or will be instituted by or against Insured, or, if Insured is the subject of such a proceeding, it is noted on this Agreement in the space in which Insured's name and address is placed.

13. This Agreement shall have no force or effect until accepted by Bank. The Bank shall be deemed to accept this Agreement only upon complete funding of the Amount Financed. All rights and remedies in this Agreement are cumulative and not exclusive. If any part of this Agreement is determined to be invalid or unenforceable, the remaining provisions of this Agreement shall continue to be in full force and effect. This Agreement constitutes the entire Agreement between Bank and Insured and may not be modified except as agreed upon in writing. Bank's acceptance of late or partial payments shall not be deemed a waiver by Bank of any provisions of this Agreement, and Bank is entitled to require Insured to strictly comply with the terms hereof. This Agreement is governed by the law of the State of Ohio. If any amount contracted for or received by Bank is determined to violate any law or regulation, Bank may return such amount without any further liability therefor.

14. Any disputes between the parties with respect to any matter arising out of this Agreement which cannot be settled amicably by the parties thereto will be settled by arbitration in Medina County, Ohio, or in such other location as the parties shall mutually agree, in accordance with the rules of arbitration of the American Arbitration Association.

15. In the event any Policy endorsement is changed or any other material change in coverage under the Policies occurs, whether or not by action of the Insured, then Insured agrees to submit a new application to Bank and reapply under whatever application procedure Bank then requires or deems advisable. Should Bank approve Insured's application under this section, Insured agrees that Insured will execute a new note and security agreement and take all other actions Bank deems, in its sole discretion, necessary or advisable, including but not limited to, paying a cash down payment of at least 25% of the total increased premium. Bank shall be under no obligation whatsoever to approve any extension of additional credit under this section.

16. Insured represents and warrants that none of the Policies requires advance notice of cancellation to any party or is subject to any audit or reporting form requirements, except as provided herein or as provided in a writing signed by insured and Bank. No loan proceeds need be disbursed by Bank until Bank has received any filing and audit information which Bank, in its sole discretion, deems necessary.

By signing below, the Insured agrees to make all payments required by this Agreement and to be bound by all provisions of this Agreement. The Insured is not required to enter into an insurance premium financing arrangement as a condition to the purchase of any insurance policy. The undersigned certifies that all statements provided by Insured to any person in connection with Insured's loan application, whether orally or in writing, are true and complete.

**Insured represents that it is a (check only one box)**    ☐ **corporation, limited liability company or partnership**
☐ **sole proprietorship**

The Insured certifies that this loan is being obtained for other than personal, family or household purposes.

_____    _____    _____    _____
**Insured Name**              **By**                             **Title**              **Date**

_____    _____    _____
**Witness**                   **Print Name**                     **Date**

The agency signing below has read and agrees to all terms of the Commercial Insurance Premium Referral Master Agreement.

_____    _____    _____    _____
**Agency's Name**             **By**                             **Title**              **Date**

Q# 103887, PRN: 062609, CFG: Bank, RT: Platinum, DD: N/A, BM: Coupon, P/F: 0.00 Qtd For: A00032 Original

| Policy Number | Full Names and Addresses of Insurance Co. to Whom the Amount Financed is Paid | Type of Insurance | Term in Months | Effective Date | Minimum Earned ($) | Policy Premium |
|---|---|---|---|---|---|---|
| **Schedule of Policies Covered By This Agreement ("Policies")** ||||||
| TBD | C00403-AIG Casualty Company [SR] | W/C | 12 FIN TXS/FEES ERN TXS/FEES | 7/1/2009 | 0.00 | 679,935.00 29,477.00 0.00 |
| TBD | C00010-Chubb Group Of Insurance Companies [SR] | EPLI | 12 FIN TXS/FEES ERN TXS/FEES | 6/30/2009 | 0.00 | 55,000.00 0.00 0.00 |
| TBD | C00457-Firemans Fund Insurance Company of Ohio [SR] | UMB | 12 FIN TXS/FEES ERN TXS/FEES | 7/1/2009 | 0.00 | 38,609.00 0.00 0.00 |
| TBD | C00010-Chubb Group Of Insurance Companies [SR] | UMB | 12 FIN TXS/FEES ERN TXS/FEES | 7/1/2009 | 0.00 | 28,785.00 0.00 0.00 |

**PAYMENT DISCLOSURE (the amount and cost of your loan):**   Cash Price (Total Premiums): $    831,806.00

WFBZZ1(091407)                                                                                                                                    Initial_____