Hearing Date and Time: August 18, 2009 at 2:00 p.m.

WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007
Richard P. Krasnow
Adam P. Strochak

Attorneys for Debtors and
Debtors in Possession

**UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK**

```
-----------------------------------------------------------x
                                          :
In re                                     :   Chapter 11 Case No.
                                          :
LEXINGTON PRECISION CORP., et al.,        :   08-11153 (MG)
                                          :
       Debtors.                           :   (Jointly Administered)
                                          :
-----------------------------------------------------------x
```

**DEBTORS' LIMITED OBJECTION TO THE SECOND AMENDED
APPLICATION FOR ORDER AUTHORIZING THE EMPLOYMENT
OF STOUT RISIUS ROSS, INC., AS FINANCIAL ADVISORS TO THE
<u>OFFICIAL COMMITTEE OF UNSECURED CREDITORS</u>**

TO THE HONORABLE MARTIN GLENN,
UNITED STATES BANKRUPTCY JUDGE:

Lexington Precision Corporation ("<u>Lexington Precision</u>") and Lexington Rubber Group, Inc. ("<u>Lexington Rubber Group</u>" and, together with Lexington Precision, "<u>Lexington</u>" or the "<u>Debtors</u>"), as debtors and debtors in possession, for their limited objection to the application of the Official Committee of Unsecured Creditors' (the "<u>Committee</u>"), dated July 27, 2009, to amend for the second time the engagement agreement between the Committee and its financial advisor Stout Risius Ross, Inc. ("<u>SRR</u>"), respectfully represent as follows:

**Background**

1.      On April 1, 2008 (the "Commencement Date"), each Debtor commenced a voluntary case under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code").  The Debtors continue to operate their business and manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

2.      On April 11, 2008, the United States Trustee appointed the Committee to represent the holders of unsecured claims against the Debtors.  [Docket No. 49].

**Jurisdiction**

3.      This Court has jurisdiction to consider this Objection pursuant to 28 U.S.C. §1334.  This matter is a core proceeding pursuant to 28 U.S.C. § 157(b).  Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

**The Stout Risius Ross Retention Application**

4.      On May 13, 2008, the Committee filed an application [Docket No. 104] (the "SRR Retention Application") to retain SRR as its financial advisor in these chapter 11 cases.  The SRR Retention Application and the engagement letter, dated May 13, 2008 (the "Engagement Letter"), between the Committee and SRR sets forth the services that SRR will provide to the Committee that include, among other things, an analysis of various aspects of the Debtors' businesses, preparation of liquidation analyses, and a determination of the Debtors' enterprise value.  By order dated June 5, 2008 [Docket No. 163], the Court granted the SRR Retention Application and approved the terms and conditions of the Engagement Letter between SRR and the Committee.

5.      The Engagement Letter provides that this "letter shall confirm the understanding of the Committee (the "Engagement Letter") concerning the engagement of SRR, the services to be provided by SRR and the manner in which SRR will be compensated

for these services." Engagement Letter at 1 (emphasis supplied).  Pursuant to the Engagement Letter, SRR agreed that in consideration of the services to be provided to the Committee it will be compensated by the Debtors in the amount of $50,000 per month for the first ten (10) months of the engagement and $20,000 per month for each month thereafter through the date of an order of the Court confirming a chapter 11 plan in these cases.  The Engagement Letter thus specifically contemplated that SRR would continue to provide services to the Committee beyond the 10-month period in which the Debtors initially hoped to confirm a plan of reorganization.

### The First Amendment to the Engagement Letter

6. On March 4, 2009, the Committee filed an application (the "Amended SRR Retention Application") to approve an amended engagement letter between the Committee and SRR, which would alter the compensation structure that SRR agreed to pursuant to the Engagement Letter.

7. The Amended SRR Retention Application sought to extend SRR's compensation rate of $50,000 per month from the first ten (10) months to the first fourteen (14) months of these cases.  The Committee also sought to increase SRR's expense reimbursement cap from $25,000 to $50,000.

8. SRR alleged that the extension of the $50,000 compensation rate was necessary because "the case is not substantially complete with respect to [SRR's] services as was originally contemplated by the terms of the Engagement Letter." Amended SRR Retention Application, Exhibit B.  Because the parties were just beginning mediation, in which SRR would need to be involved, the Debtors did not object to the Amended SRR Retention Application.

9.  On April 1, 2009, the Court entered an order granting the Amended SRR Retention Application [Docket No. 604] (the "First Amendment Order").

**The Second Amendment to the Engagement Letter**

10.  On July 27, 2009, the Committee filed a second application (the "Second Amended Application") to amend the Engagement Letter.  In the Second Amended Application, the Committee seeks to (i) further extend SRR's compensation rate of $50,000 per month from the first fourteen (14) months to the first seventeen (17) months of these cases, and (ii)  increase SRR's expense reimbursement cap from $25,000 to $50,000.  The Second Amended Application thus requests to increase costs to the estate by *at least* $30,000 per month for the next three months – a total of $90,000.

**Limited Objection to the Second Amendment to the Engagement Letter**

11.  The Committee does not provide a sufficient basis to justify the increase in compensation to SRR by $90,000.  In support of the Second Amended Application, the Committee states that the "time allocated and resources provided by SRR in the performance of services to the Committee has surpassed that initially contemplated in the Engagement Letter."  Second Amended Application at ¶ 9.  This is incorrect on its face.  There is nothing in the SRR Engagement Letter that even speaks to the amount of time or resources that SRR was expected to provide, only a recitation of the types of services SRR was to provide and a commitment by SRR to provide those services for the entire term of these chapter 11 cases in return for the fees specified.  In fact, the SRR Engagement Letter permits the Committee to terminate the engagement at any time, subject to a 30-day notice period, but does not permit SRR to terminate the engagement until after the approval of a plan of reorganization.  The SRR Engagement Letter specifically contemplated (in fact, required) services beyond the initial 10-

month period, just at a lower compensation rate. It is not the case that SRR is now working for free while performing services never contemplated in the SRR Engagement Letter.

12. In fact, while the chapter 11 cases have lasted longer than the Debtors hoped they would, the scope of SRR's services has not changed at all. SRR is preparing for a contested valuation hearing and advising the Committee on the Debtors' exit strategies, just as it has done from the outset of these cases. Over the first 10 months of the case, SRR completed extensive due diligence efforts, including visits to each of the Debtors' plants, requested and reviewed copious documentation, and scoured the Debtors' projections. All of this work was completed by the end of December 2008, and SRR had to have reached its conclusions on valuation by then because the case was at the cusp of the plan confirmation process. In addition, based on Andrews Kurth's interim fee application for the period December 1, 2008 to March 31, 2009 [Docket No. 641], it appears that the Committee, without Court approval, even engaged an additional valuation consultant, Pluris Valuation Advisors LLC, to perform the services that SRR said it would do in the SRR Engagement Letter, thus appearing to actually reduce the services that SRR is required to provide the Committee.

13. What may be left for SRR to do is update and finalize its valuation and present testimony at a confirmation hearing. Additionally, SRR may need to analyze any investment transaction that the Debtors may propose in connection with securing emergence capital. None of that, however, is beyond the scope of work contemplated by the original Engagement Letter, and none suggests the need for $90,000 in additional compensation over the next three months. The Court is familiar with the Debtors' cash budget and the impact of professional fees and other restructuring costs on the Debtors' available cash. The Committee should be working to contain the cost of its professionals to the estate, not increase that cost

without need or justification. The Debtors have already agreed to one $120,000 increase with respect to the Amended SRR Retention Application because of the intervening mediation process and do not believe that there is sufficient justification for any further increases in SRR's compensation.

14. For the reasons stated above, the Court should require the Committee to explain the specific services SRR will provide that were not contemplated by the original Engagement Letter and limit any increase to an amount commensurate with the additional services. If the Committee cannot do so, the Court should deny the Second Amended Application and limit SRR's compensation to that provided by the terms and conditions of the original Engagement Letter, as modified by the First Amendment Order.

### Increase of the Expense Reimbursement Cap

15. The Debtors do not object to the increase in the expense reimbursement cap from $25,000 to $50,000 provided that such expenses relate to actual, documented expenses incurred by SRR in connection with its engagement by the Committee.

WHEREAS the Debtors request that the Court deny the Second Amended Application to the extent requested herein.

Dated: August 13, 2009
      New York, New York

/s/ Richard P. Krasnow
Richard P. Krasnow
Adam P. Strochak

WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007

Attorneys for Debtors and
Debtors in Possession