WALLER LANSDEN DORTCH & DAVIS
511 Union Street, Suite 2700
Nashville, Tennessee 37219
Telephone: (615) 244-6380
Facsimile: (615) 244-6804

and

CARTER LEDYARD & MILBURN LLP
2 Wall Street
New York, NY 10005
Telephone: (212) 732-3200
Facsimile: (212) 732-3232

Attorneys for Agents to the Prepetition Secured Lenders

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

```
-------------------------------------------------------x
                                    :
```
**In re:**                          :        **Chapter 11**
```
                                    :
```
**LEXINGTON PRECISION CORP., et al.,**  :    **Case No. 08-11153 (MG)**
```
                                    :
```
                    **Debtors.**    :        **(Jointly Administered)**
```
                                    :
-------------------------------------------------------x
```

**PREPETITION SECURED LENDERS' MOTION TO (I) APPROVE THE PROPOSED
DISCLOSURE STATEMENT, (II) APPROVE THE PROCEDURES TO SOLICIT
ACCEPTANCES OF THE PREPETITION SECURED LENDERS' PROPOSED PLANS,
AND (III) SCHEDULE A HEARING AND ESTABLISH NOTICE AND OBJECTION
PROCEDURES FOR CONFIRMATION OF THE PREPETITION SECURED
LENDERS' PROPOSED PLANS**

TO THE HONORABLE MARTIN GLENN,

3068523.2.1                          2

6501820.1

UNITED STATES BANKRUPTCY JUDGE:

CapitalSource Finance LLC, as agent under the Prepetition Credit Agreement[2] and CSE

Mortgage LLC, as agent under the Prepetition Loan Agreement (together, the "Agents")

respectfully represent:

## Introduction

1.      The Agents, in consultation with the Prepetition Revolver Lenders and the

Prepetition Term Loan Lenders (collectively, the "Prepetition Secured Lenders") have developed

two plans, one for Lexington Precision Corporation ("LPC") and one for its wholly-owned

subsidiary, Lexington Rubber Group, Inc. ("LRGI", together with LPC the "Debtors"). In order

to establish a reasonable exit strategy from these Chapter 11 cases, the Prepetition Secured

Lenders have developed the Prepetition Secured Lenders' Chapter 11 Plan for Lexington

Rubber Group, Inc. (as may be amended or modified, the "LRGI Proposed Plan") and the

Prepetition Secured Lenders' Chapter 11 Plan for Lexington Precision Corporation (as may be

amended or modified, the "LPC Proposed Plan", together with the LRGI Proposed Plan the

"Proposed Plans", and each individually being a "Proposed Plan") and accompanying

disclosure statement as may be revised (attached hereto as Exhibit A the "Proposed Disclosure

Statement") in order to provide a rapid recovery of value through the concurrent sales processes

set forth in the Proposed Disclosure Statement.  The sales processes are to be conducted by a

post-confirmation trustee (the "Post-Confirmation Trustee") in consultation with sale agent

Gordian Group, LLC ("Gordian"), which has served as investment banker to the Agents.

---

[2] Capitalized terms not otherwise defined herein have the meanings set forth in the Proposed Combined Disclosure
Statement Regarding Prepetition Secured Lender's Chapter 11 Plans for Lexington Rubber Group, Inc. and
Lexington Precision Corporation.

2.    The lack of any acceptable alternative plan has become apparent during the seventeen (17) months of the Chapter 11 Cases, which have resulted in an aborted reorganization plan from the Debtors and no alternatives from any other party in interest.  Accordingly, the Prepetition Secured Lenders have been forced to present a reasonable avenue for the Debtors' exit from the Chapter 11 Cases, lest the Chapter 11 Cases continue to languish and both the value erode and the prospects for recovery dwindle.

3.    Based upon a preliminary review of the market for a sale of the Debtors' businesses and conversations with potentially interested parties, it appears that a sale or sales of the Debtors' assets is the best option for recovery by the constituents in the Chapter 11 Cases.  In contrast to the Debtors' aborted plan, the Prepetition Secured Lenders' Proposed Plans treat the LRGI estate and the LPC estate as separate bankruptcy estates, which reflects the corporate form employed by the Debtors during the operation of their businesses both prior to and during the Chapter 11 Cases.

4.    In addition, the Post-Confirmation Trustees will pursue sales of non-operating assets, as well as prosecution of avoidance actions and other litigation claims for the benefit of each bankruptcy estate.  Finally, to the extent such net operating losses are able to be preserved, the Post-Confirmation Trustee may pursue liquidation of those through a merger transaction.

5.    The first step in exiting these Chapter 11 Cases is approval of the Prepetition Secured Lenders' Proposed Disclosure Statement, to be followed by solicitation of votes and the confirmation process.  By this motion, the Prepetition Secured Lenders seek (i) a determination that the Proposed Disclosure Statement contains adequate information, (ii) approval of the proposed solicitation procedures, (iii) and approval of the proposed confirmation procedures.

## Background

6.     On April 1, 2008 (the "Commencement Date"), the Debtors commenced with this Court a voluntary case under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code"). The Debtors' chapter 11 cases have been consolidated for procedural purposes only and are being jointly administered pursuant to rule 1015(b) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").

7.     On September 1, 2009, the Prepetition Secured Lenders filed the Proposed Plans and the Proposed Disclosure Statement. The Proposed Disclosure Statement is attached hereto as **Exhibit A**.

## Jurisdiction

8.     This Court has jurisdiction to consider and determine this Motion pursuant to 28 U.S.C. §§ 157(b)(1) and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2). Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

## Relief Requested

9.     Pursuant to sections 105, 502, 1125, 1126, and 1128 of the Bankruptcy Code and Bankruptcy Rules 2002, 3003, 3017, 3018, and 3020, the Prepetition Secured Lenders request that the Court –

   (a)     approve the Proposed Disclosure Statement as containing adequate information pursuant to section 1125 of the Bankruptcy Code;

   (b)     approve the following procedures (the "Solicitation Procedures") for the Prepetition Secured Lenders to solicit the acceptance of the Proposed Plans, which include –

      (1)     determining which holders of claims or interests may vote to accept or reject the Proposed Plans;

      (2)     temporarily allowing certain claims for voting purposes;

(3)     setting the date three (3) days after entry of the Disclosure Statement Order (the "Record Date") as the date and time which determines which claim and interest holders may vote to accept or reject the Proposed Plans or receive notice of non-voting status;

(4)     setting the date fifteen (15) days prior to the scheduled Confirmation Hearing (the "Voting Deadline") as the deadline by which the Solicitation Agent must receive a ballot for such ballot to be counted;

(5)     approving the materials to send to holders of claims and interests;

(6)     approving the forms of ballots (the "Ballots") substantially in the form of collective **Exhibit B**.

(7)     establishing voting and tabulation procedures; and

(8)     approving a notice to holders of claims and interests not entitled to vote advising of their status (the "Notice of Non-Voting Status") substantially in the form of **Exhibit C**; and

(c)     approve the following procedures for the confirmation of the Proposed Plans, which include –

(1)     scheduling a pre-trial conference for the Confirmation Hearing during the week of _____, **2009** (the "Confirmation Pretrial Conference");

(2)     scheduling a hearing to confirm the Proposed Plans during the week of _____, **2009** (the "Confirmation Hearing");

(3)     approving the form and manner of notice of the confirmation hearing (the "Confirmation Hearing Notice") substantially in the form of **Exhibit D**; and

(4)     establishing the date fifteen (15) days prior to the scheduled Confirmation Hearing (the "Objection Deadline") as the deadline to file and serve objections and responses to the Proposed Plans.

## I.

### THE PROPOSED DISCLOSURE STATEMENT
### CONTAINS ADEQUATE INFORMATION AND SHOULD BE APPROVED

10.     The Prepetition Secured Lenders submit that the Proposed Disclosure Statement

contains information with respect to the applicable subject matter identified above, including, but

not limited to:

      (a)      an overview of the Proposed Plans (Arts. II, IV, and V);

      (b)      the operation of the Debtors' businesses (Art. III);

      (c)      the indebtedness of the Debtors (Art. III.B);

      (d)      key events leading to the commencement of the Debtors' chapter 11 cases (Art. III.D);

      (e)      events that occurred during the chapter 11 cases (Art. III.E);

      (f)      information regarding the effects of confirmation (Art. VI.H);

      (g)      projected financial information (Art. VII);

      (h)      risk factors affecting the Proposed Plans (Art. VIII);

      (i)      confirmation of the Proposed Plans (Art. XI); and

      (j)      tax consequences of the Proposed Plans (Art. IX).

11.     The Proposed Disclosure Statement contains the information bankruptcy courts

typically consider when determining whether the information in a disclosure statement is

adequate. Accordingly, the Prepetition Secured Lenders respectfully request that this Court

approve the Proposed Disclosure Statement as it meets the requirements of section 1125 of the

Bankruptcy Code.

## II.

## SOLICITATION PROCEDURES

**A.    Cooperation from the Debtors**

12.    As reasonably requested by the Plan Proponents or the Solicitation Agent, the Debtors shall cooperate with the Plan Proponents to facilitate solicitation of votes on the Proposed Plans.

**B.    Holders of Claims and Interests Entitled to Vote**

13.    The LPC Proposed Plan provides for ten (10) classes of claims and interests. The LPC Proposed Plan leaves its priority claim class (Class 1) unimpaired, and the class Other Equity Interests in LPC (Class 10) fully impaired.  Holders of claims in the priority class are deemed to accept the LPC Proposed Plan and are not entitled to vote.  Holders of Other Equity Interests in LPC (Class 10) are deemed to reject the LPC Proposed Plan and are not entitled to vote.

14.    The LRGI Proposed Plan provides for six (6) classes of claims and interests. The LPC Proposed Plan leaves its priority claim class (Class 1) unimpaired.  Holders of claims in the priority class are deemed to accept the LRGI Proposed Plan and are not entitled to vote.

15.    The Proposed Plans impair all other classes of claims against or interests in either LRGI or LPC, respectively (the "Voting Classes"). Accordingly, members of the Voting Classes are entitled to vote and receive an appropriate Ballot; provided, however, holders of claims in any such Voting Class shall not be entitled to vote and receive a Ballot if (a) as of the Record Date, the outstanding amount of such claim is not greater than zero ($0.00); (b) as of the Record Date, such claim has been disallowed, expunged, disqualified, or suspended; (c) the Debtors'

Schedules show such claim as contingent, unliquidated, or disputed and a proof of claim was not

filed by the Bar Date or Government Bar Date, as applicable, or deemed timely filed by order of

the Court at least five (5) business days prior to the Voting Deadline; or (d) as of the Record

Date, such claim is subject to a pending objection.

**B.      Temporary Allowance of Claims for Voting Purposes**

16.      Solely for the purposes of voting to accept or reject either Proposed Plan and not

for allowance of, or distribution on account of, any claim or interest, and without prejudice to the

Prepetition Secured Lenders' rights in any other context, the Prepetition Secured Lenders

propose that each claim or holder of a claim entitled to vote to accept or reject the appropriate

Proposed Plan be temporarily allowed in the amount equal to the amount in the Schedules;

provided, however, --

> (a)      if a claim holder has timely and properly filed a proof of claim, the holder
> may vote the claim amount set forth in the proof of claim subject to any
> applicable limitation below;
>
> (b)      if the claim for which a proof of claim has been timely filed is partially
> liquidated and partially unliquidated, such claim is temporarily allowed for
> voting purposes in the liquidated amount only;
>
> (c)      if the Court estimates or otherwise allows a claim for voting purposes,
> such claim is temporarily allowed in the amount so estimated or allowed
> by the Court for voting purposes only, and not for purposes of allowance
> or distribution;
>
> (d)      if the Debtors' Schedules list a claim as contingent, unliquidated, or
> disputed and a proof of claim was not either filed by the Bar Date or
> Government Bar Date, as applicable; or deemed timely filed by an order
> of the Court prior to the Voting Deadline, then such claim is disallowed
> for voting, allowance, and distribution purposes pursuant to Bankruptcy
> Rule 3003(c) absent the Agents' written consent to the contrary;
>
> (e)      if a holder of a claim on the Debtors' Schedules is listed as not contingent,
> unliquidated, or disputed and such holder files an untimely proof of claim,

such claim shall be allowed for voting, allowance, and distribution purposes in the amount set forth in the Schedules;

    (f)    if the Agents serve an objection to a claim at least ten (10) days before the Voting Deadline, such claim is temporarily disallowed for voting purposes only, but not allowance or distribution purposes, except to the extent and in the manner as may be set forth in such objection; and

    (g)    each Asbestos-Related Claim (as defined in the LPC Plan) as well as any potential rejection damage claims in LPC and LRGI Classes 5 shall be allowed solely for voting purposes in the amount of $1.00.

17.    Bankruptcy Rule 3018(a) provides that a court "may temporarily allow the claim or interest in an amount which the court deems proper for the purpose of accepting or rejecting a plan." The statutory predicate to Bankruptcy Rule 3018(a) is section 502(c) of the Bankruptcy Code, which permits the estimation of "any contingent or unliquidated claim, the fixing of which, as the cases may be, would unduly delay the administration of the case." 11 U.S.C. § 502(c); In re Ralph Lauren Womenswear, Inc., 197 B.R. 771, 775 (Bankr. S.D.N.Y. 1996). Because the Bankruptcy Code and Bankruptcy Rules do not prescribe a method for estimating a claim, it is left to the discretion of the court and does not entail consideration of the merits of the claim. Id. A creditor's voting power should be commensurate with its economic interest in the case. In re Quigley Co., 346 B.R. 647, 654 (Bankr. S.D.N.Y. 2006); In re Enron Corp., 2004 WL 2434928, *5 (Bankr. S.D.N.Y. Nov. 1, 2004).

18.    As to the allowance of each of the Asbestos-Related Claims in the amount of $1.00, the United States Court of Appeals for the Second Circuit has held that in the context of asbestos related claims assigning a $1.00 per vote method can be used when the claims are unliquidated and the liability is uncertain. Kane v. Johns-Mansville Corp. (In re Johns-Manville Corp.), 843 F.2d 636, 647-48 (2d Cir. 1988). In Johns-Manville, the debtors assigned the value of $1.00 to each vote because the reorganization would have been delayed for years if the dollar

value of each disputed asbestos claim had to be determined prior to the solicitation of each holder's vote. Id. at 646.

19.    LPC has claimed that it is one of many defendants named in approximately 3,500 pending asbestos-related actions before the Court of Common Pleas of Cuyahoga County, Ohio ("Asbestos Actions")[3].  In each case, the plaintiffs generally allege that LPC or one of its predecessors produced a product containing asbestos, with which the plaintiffs came into contact during the course of their careers. None of the complaints allege any specific facts as to which products LPC allegedly produced that contained asbestos at the time of exposure. LPC does not believe that its predecessors manufactured any asbestos-containing products to which plaintiffs may have been exposed and has denied any liability with respect to the Asbestos Actions. To date, it is believed that the Debtors have never been found liable on any Asbestos-Related Claims and approximately 1,000 cases have been dismissed. As such, the assignment of $1.00 to each Asbestos-Related Claim fairly represents the economic interests in these cases and because these claimants are in a class by themselves under the LPC Proposed Plan, it does not prejudice their votes to either accept or reject the treatment of their claims under the LPC Proposed Plan.

20.    Similarly, potential rejection damage claims can be allowed in the amount of $1.00 to avoid undue delay in these Chapter 11 Cases.

21.    If any creditor seeks to challenge the allowance of its claim for voting purposes in accordance with the above procedures, the Prepetition Secured Lenders request that the Court direct such creditor to serve on the Prepetition Secured Lenders, the Debtors, the Creditors'

---

[3] This description of the Asbestos Actions and claims arising therefrom is based upon the Debtors' Disclosure Statement filed in these Chapter 11 Cases on December 17, 2008.

Committee, and the U.S. Trustee and file with the Court (with a copy to Chambers) a motion for

an order pursuant to Bankruptcy Rule 3018(a) temporarily allowing such claim in a different

amount for purposes of voting to accept or reject the appropriate Proposed Plan on or before the

10th day after the later of (i) service of notice of the Confirmation Hearing and (ii) the

Prepetition Secured Lenders' service of notice of an objection or request for estimation, if any, as

to such claim. The Prepetition Secured Lenders further propose, in accordance with Bankruptcy

Rule 3018, that as to any creditor filing such a motion, such creditor's Ballot should not be

counted unless temporarily allowed by an order entered by the Court prior to the Voting

Deadline.

**C.    Fixing the Record Date**

22.    Bankruptcy Rule 3017(d) provides that, for the purposes of soliciting votes in

connection with confirmation of a chapter 11 plan, "creditors and equity security holders shall

include holders of stock, bonds, debentures, notes and other securities of record on the date the

order approving the disclosure statement is entered or another date fixed by the court, for cause,

after notice and a hearing." Bankruptcy Rule 3018(a) contains a similar provision regarding

determination of the record date for voting purposes.

23.    In accordance with these rules, the Prepetition Secured Lenders request that the

Court set the Record Date as the date three (3) days after entry of the Confirmation Order.

Holders of claims or interests, as of the Record Date and as determined by the Debtors' books

and records, shall be the holders of record and, as such, shall be entitled to vote or otherwise

receive a notice of non-voting status. Any claim transfer notices received by the Debtors, their

claims agent, the Prepetition Secured Lenders, or the solicitation agent (a) prior to the Record

3068523.2.1

6501820.1

Date, but with respect to which the twenty (20) day period required pursuant to Bankruptcy Rule 3001(e)(4) has not expired prior to the Record Date or (b) after the Record Date, shall not be recognized for purposes of voting. The Record Date shall have no preclusive effect as to distributions under the Proposed Plans.

**D.    Approving Solicitation Packages**
**And Procedures for Distribution Thereof**

24.    In an effort to conserve estate assets, the Prepetition Secured Lenders intend to continue to use Financial Balloting Group LLC ("FBG") as the "Solicitation Agent", as the Debtors have already retained FBG with respect to their proposed plan and presumably FBG is already prepared and ready to serve as Solicitation Agent. The use of FBG will save time and estate resources as it has already prepared to act in this capacity in this case.

25.    Bankruptcy Rule 3017(d) sets forth the disclosure and notice requirements for soliciting votes on a proposed plan:

> Upon approval of a disclosure statement – except to the extent that the court orders otherwise with respect to one or more unimpaired classes of creditors or equity security holders – the debtor in possession . . . shall mail to all creditors and equity security holders, and . . . the United States trustee,
>
> > (1)    the plan or a court-approved summary of the plan;
> >
> > (2)    the disclosure statement approved by the court;
> >
> > (3)    notice of the time within which acceptances and rejections of such plan may be filed; and
> >
> > (4)    any other information as the court may direct, including any court opinion approving the disclosure statement or a court-approved summary of the opinion.
>
> In addition, notice of the time fixed for filing objections and the hearing on confirmation shall be mailed to all creditors and equity

security holders in accordance with Rule 2002(b), and a form of
ballot conforming to the appropriate Official Form shall be mailed
to creditors and equity security holders entitled to vote on the
plan.

Fed. R. Bankr. P. 3017(d).    Accordingly, the Prepetition Secured Lenders propose to cause

distribution, either through FBG or some other solicitation agent, of the following materials to

each of the voting holders of claims and interests.

26.    With the exception of certain holders of Asbestos-Related Claims in Class 6 under

the LPC Proposed Plan, as identified in the subsequent paragraph, the Prepetition Secured

Lenders shall cause distribution of the following to each member of a Voting Class:

(a)    the order approving the Proposed Disclosure Statement;

(b)    the Confirmation Hearing Notice;

(c)    the Proposed Disclosure Statement, which shall include the Proposed
Plans as exhibits;

(d)    a ballot customized for such holder as described below with instructions
and a return envelope; and

(e)    such other materials as the Court may direct (collectively, the "Voting
Solicitation Package").

27.    Certain holders of Asbestos-Related Claims are represented by counsel who

previously represented to the Debtors (according to their prior filed disclosure statement and

motion) that such holders have authorized such counsel to vote the Asbestos-Related claims on

the holders' behalf ("Authorized Counsel"). Such holder's Authorized Counsel will receive a

Voting Solicitation Package under certain circumstances (rather than the holder itself).  For any

such holders of an Asbestos-Related Claim, the Prepetition Secured Lenders shall send such

Authorized Counsel a Voting Solicitation Package on behalf of any such holder; provided,

however, that the Authorized Counsel shall send the Solicitation Agent and the Prepetition

Secured Lenders within ten (10) days after entry of an order granting the relief requested herein (a) an affidavit indicating the name and address of each holder of an Asbestos-Related Claim represented by such Authorized Counsel for whom Authorized Counsel is authorized to vote (an "Authorization Affidavit") and (b) a list of the names and addresses of each holder of an Asbestos-Related Claim represented by such Authorized Counsel for whom no such authority exists or such authority has been revoked (a "No Authorization List"). If the Prepetition Secured Lenders or the Solicitation Agent fail to receive an Authorization Affidavit and a No Authorization List within ten (10) days after entry of an order granting the relief requested herein, the Solicitation Agent shall send a Voting Solicitation Package to each holder of an Asbestos-Related Claim represented by the Authorized Counsel within thirteen (13) business days after entry of an order granting the relief requested herein.

28.    To any holder of an Asbestos-Related Claim not represented by Authorized Counsel, the Prepetition Secured Lenders shall send a Voting Solicitation Package within seven (7) days after entry of an order granting the relief requested herein.

29.    If a holder of a claim or interest is not entitled to vote, the Prepetition Secured Lenders shall cause the following documents to be distributed to each holder of such Class:

(a)    the Confirmation Hearing Notice;

(b)    Notice of Non-Voting Status;

(c)    such other materials as the Court may direct (collectively, the "Non-Voting Solicitation Package").

30.    If holder of a claim is not entitled to vote as a result of a pending objection, the Prepetition Secured Lenders shall supplement the Non-Voting Solicitation Package and include a Proposed Disclosure Statement. If the pending claim objection is resolved or withdrawn and the

holder of the claim becomes eligible to vote at least ten (10) business days prior to the Voting

Deadline, the Prepetition Secured Lenders shall mail to such holder, via express or overnight

mail, a Voting Solicitation Package within three (3) business days after such member becomes

eligible to vote.

31.    If a claim is allowed for voting purposes on or before ten (10) business days

before the Voting Deadline, the Prepetition Secured Lenders shall mail, via express or overnight

mail, a Voting Solicitation Package to the holder of such claim within three (3) business days

after entry of an order temporarily allowing such creditor's claim for voting purposes.

32.    The Prepetition Secured Lenders propose to distribute the following materials to

(i) the U.S. Trustee, (ii) the attorneys for the Creditors' Committee, and (iii) all other parties

requesting service in these chapter 11 cases:

      (a)    the order approving the Proposed Disclosure Statement;

      (b)    the Confirmation Hearing Notice;

      (c)    the Disclosure Statement, which shall include the Proposed Plans as
            exhibits; and

      (d)    such other materials as the Court may direct (collectively, the "Notice
            Solicitation Package" together with the Voting and Non-Voting
            Solicitation Packages, the "Solicitation Packages").

33.    Because of significantly reduced costs and environmental benefits, the Prepetition

Secured Lenders propose to send the Solicitation Packages in a CD-ROM format instead of

printed hard copies; provided, however, the Prepetition Secured Lenders shall provide printed

hard copies upon request.

34.    Except as provided above, the Prepetition Secured Lenders shall mail each of the

Solicitation Packages described above within seven (7) days of entry of an order granting the

relief requested herein (the "Solicitation Date") to the mailing address listed in the Debtors'

books and records as of the Record Date. If the Debtors' books and records reflect multiple

addresses for any individual, the Prepetition Secured Lenders shall send the appropriate

Solicitation Packages to each address. If any such Solicitation Packages contain a ballot, the

ballot shall indicate that "A ballot in respect of the same claim was also sent to you at one or

more other addresses." If the Debtors' books and records reflect multiple addresses on account of

an attorney or another agent, the ballot shall indicate that "A ballot in respect of the same claim

was also sent to your attorney or other agent (or your client, if you are an attorney or other agent

for a creditor)."

35.     In the past, the United States Postal Service has returned some notices mailed

during the course of Debtors' chapter 11 cases as undeliverable. The Prepetition Secured Lenders

submit sending Solicitation Packages to the same addresses would be wasteful. Therefore, in an

effort to conserve resources, the Prepetition Secured Lenders will send Solicitation Packages

only to known deliverable addresses; provided, however, the Prepetition Secured Lenders will

send a Solicitation Package to any entity who provides written notice of a new mailing address or

forwarding addresses prior to the Solicitation Date.

## E.    Approving Forms of Ballots and Master Ballots

36.     Bankruptcy Rule 3017(d) requires a debtor to mail a form of ballot, substantially

in the form of Official Form No. 14 ("Official Form No. 14"), to "creditors and equity security

holders entitled to vote on the plan." Bankruptcy Rule 3018(c) provides that, to be valid, a ballot

shall be written, signed by the claimholder or interest holder or an authorized agent therefor, and

appropriately conforms to Official Form No. 14.

37.    As indicated above, the members of the Voting Classes are entitled to vote. All other classes are unimpaired or fully impaired and their members are presumed to have accepted or fully rejected the applicable Proposed Plan. Accordingly, the Prepetition Secured Lenders propose to distribute to the members of the Voting Classes one or more ballots substantially in the form annexed hereto as collective **Exhibit B**. To address the particular aspects of these chapter 11 cases, the Prepetition Secured Lenders have modified the Official Form No. 14 to include certain additional information or procedures that the Prepetition Secured Lenders believe to be relevant and appropriate for the respective classes.

38.    With regard to the LPC Proposed Plan, the Prepetition Secured Lenders propose to send a ballot (a "Beneficial Holder Ballot"), substantially in the form of **Exhibit B-5A**, to each member of LPC Classes 7 (Junior Subordinated Note Claims), 8 (Series B Preferred Stock Interests) and 9 (LPC Common Stock Interests) who holds the underlying securities for their own benefit, respectively. In addition, certain holders of Senior Subordinated Note Claims in Class 5 may beneficially hold underlying securities for their own benefit, and such holders will receive a ballot substantially in the form of **Exhibit B-3D**. If a member of an LPC Class 5 or 7[4] holds the underlying security for the benefit of a third-party (*e.g.*, brokers, banks, dealers, or other agents or nominees) (collectively, the "Voting Nominees"), the Prepetition Secured Lenders shall provide the Voting Nominee with sufficient Solicitation Packages for distribution to each of the beneficial holders represented by the Voting Nominee.

---

[4] Because no members of the LPC Class 8 (Series B Preferred Stock Interests) or LPC Class 9 (Lexington Precision Common Stock Interest) under the LPC Proposed Plan hold such interests for the benefit of third-parties, the procedures contained in this paragraph are inapplicable to them.

39.     The Voting Nominee may elect to (a) "prevalidate" the Ballot contained in the Solicitation Package, forward the Solicitation Package to the beneficial holder, and instruct the beneficial holder to return the ballot to the Solicitation Agent or (b) forward the Solicitation Package to the beneficial holder with instructions for the beneficial holder to return the ballot to the Voting Nominee, the Voting Nominee shall tabulate the ballots on a master ballot, substantially in form as **Exhibits B-2B, B-3C, B-4B** and **B-5B** (each a "Master Ballot," and collectively, the "Master Ballots"), and return the Master Ballot to the Solicitation Agent.[5] To be prevalidated, a Ballot must indicate the name and address of the beneficial holder, the amount of the underlying securities, and the corresponding account numbers. In either instance, the Voting Nominee shall provide the beneficial holder with the appropriate materials within five (5) business days of receipt of the Solicitation Packages.

40.     To be counted, the Ballots or Master Ballots, as applicable, must be received in accordance with the voting procedures outlined below.

41.     The Prepetition Secured Lenders shall reimburse each Voting Nominee for its reasonable and customary costs and expenses associated with the distribution of the Solicitation Packages and tabulation of the Beneficial Holders Ballots.

42.     For members of the LPC Class 6 (Asbestos-Related Claim) under the Proposed Plan for LPC who are not represented by Authorized Counsel, the Debtors shall send a Ballot substantially in the form of **Exhibit B-4A** (the "Individual Asbestos Ballot").

---

[5] Consistent with securities industry practice in bankruptcy solicitations, the Debtors shall provide Master Ballots to Voting Nominees after the Debtors distribute the Solicitation Packages and the Voting Nominee indicates how it intends to proceed.

43.    For members of the LPC Class 6 who are represented by Authorized Counsel, the Debtors shall provide such Authorized Counsel with a master ballot substantially in the form of **Exhibit B-4B** (the "Asbestos Master Ballot"); provided, however, if (a) Authorized Counsel fails to send the Prepetition Secured Lenders and the Solicitation Agent an Authorization Affidavit within ten (10) days of entry of an order granting the relief requested herein or (b) such holder is on the No Authority List, the Prepetition Secured Lenders shall send such holder an Individual Asbestos Ballot.

44.    In addition to reducing the cost of solicitation significantly, the Prepetition Secured Lenders believe that this method also better reflects the reality of how Asbestos-Related Claims are managed. Often, an attorney for the holder of an Asbestos-Related Claims will hold a power of attorney that gives such attorney the authority to make decisions such as voting on a chapter 11 plan. If this is not the case, however, then the Asbestos Attorney is required to advise the Solicitation Agent so that the Prepetition Secured Lenders may directly solicit the individual claimant's vote. The Prepetition Secured Lenders believe that this feature, together with other mechanisms contained in the solicitation procedures, adequately protect the interests of the holders of Asbestos-Related Claims and will make the voting process more efficient and cost-effective for both the Prepetition Secured Lenders and holders of Asbestos-Related Claims.

45.    To the extent potential rejection damage claimants do not already hold a claim entitled to vote, they will receive a ballot in the form of **Exhibit B-1B** under the LRGI Proposed Plan and **Exhibit B-3D** under the LPC Proposed Plan.

F.    **Voting and Tabulation Procedures**

(i)    Voting Deadline

46.    Bankruptcy Rule 3017(c) provides that, on or before approval of a disclosure

statement, the court shall fix a time within which the holders of claims or equity security

interests may accept or reject a plan. A noted above, the Prepetition Secured Lenders shall mail

the Solicitation Packages within ten (10) business days of entry of an order granting the relief

requested herein. Based on such schedule, the Prepetition Secured Lenders propose that in order

to be counted as a vote to accept or reject the appropriate Proposed Plan, each Ballot must be

properly executed, completed, and delivered to the Solicitation Agent as to be received by

Solicitation Agent no later than the Voting Deadline which will be at least 25 days after the

anticipated Solicitation Date. The Prepetition Secured Lenders submit that such solicitation

period is a sufficient period within which holders of claims and interests can make an informed

decision whether to accept or reject the Proposed Plan.

(ii)    Procedures to Tabulate Votes

47.    Section 1126(c) of the Bankruptcy Code provides:

> A class of claims has accepted a plan if such plan has been
> accepted by creditors, other than any entity designated under
> subsection (e) of this section, that hold at least two-thirds in
> amount and more than one-half in number of the allowed claims
> of such class held by creditors, other than any entity designated
> under subsection (e) of this section, that have accepted or rejected
> such plan.

11 U.S.C. § 1126(c).

48.    The Prepetition Secured Lenders propose the following procedures for tabulating

votes:

(a)    A vote shall be disregarded if the Court determines, after notice and a
hearing, that a vote was not solicited or procured in good faith or in
accordance with the provisions of the Bankruptcy Code;

(b)    All votes to accept or reject the applicable Proposed Plan must be cast by using the appropriate Ballot and in accordance with the voting instructions attached to each Ballot and/or as set forth on the Ballot (as may be applicable) and votes cast in any other manner shall <u>not</u> be counted;

(c)    Any Ballot that is returned to the Solicitation Agent, but which is unsigned, or has a non-original signature, shall <u>not</u> be counted;

(d)    A holder of multiple claims or interests must use a separate Ballot for each class of claims or interests;

(e)    A holder of claims shall be deemed to have voted the full amount of its claims in each class and shall <u>not</u> be entitled to split its vote within a particular class;

(f)    Any Ballot that partially accepts and partially rejects the applicable Proposed Plan shall be deemed to constitute an acceptance of that Proposed Plan;

(g)    Any entity entitled to vote to accept or reject the applicable Proposed Plan may change its vote before the Voting Deadline by casting a superseding Ballot so that it is received on or before the Voting Deadline;

(h)    Any entity casting more than one (1) Ballot voting the same claim or interest prior to the Voting Deadline, the Solicitation Agent shall count only the last Ballot timely received;

(i)    If the Solicitation Agent receives Ballots on the same day but which are voted inconsistently, such Ballots shall be deemed to constitute an acceptance of the applicable Proposed Plan;

(j)    Any executed Ballot timely received by the Solicitation Agent that does not indicate either an acceptance or rejection of the applicable Proposed Plan shall be deemed to constitute an acceptance of that Proposed Plan;

(k)    Any executed Ballot, which indicates both acceptance and rejection of the applicable Proposed Plan shall be deemed to constitute an acceptance of that Proposed Plan; and

(l)    The Solicitation Agent shall not accept a vote by facsimile or telecopy transmission (the Solicitation Agent may accept votes by electronic mail addressed to tabulation@fbgllc.com).

49.     With respect to the tabulation of Master Ballots cast by Voting Nominees, for purposes of voting, the Solicitation Agent shall use the principal amount held as of Record Date, as applicable (the "Record Amount").

50.     The following additional rules will apply to the tabulation of Master Ballots cast by Voting Nominees:

(a)     Votes cast by beneficial holders through a Voting Nominee will be applied against the positions held by such entities in the securities as of Voting Record Date as evidenced by the record and depository listings. Votes submitted by a Voting Nominee, whether pursuant to a Master Ballot or prevalidated Ballots, will not be counted in excess of the Record Amount of such securities held by such Voting Nominee.

(b)     To the extent that conflicting votes or "overvotes" are submitted by a Voting Nominee, whether pursuant to a Master Ballot or prevalidated Ballots, the Solicitation Agent will attempt and is authorized to reconcile discrepancies with the Voting Nominees.

(c)     To the extent that overvotes on a Master Ballot or prevalidated Ballots are not reconcilable prior to the preparation of the vote certification, the Solicitation Agent will apply the votes to accept and to reject the Proposed Plan in the same proportion as the votes to accept and reject the Proposed Plan submitted on the Master Ballot or prevalidated Ballots that contained the overvote, but only to the extent of the Voting Nominee's position in the security.

(d)     For purposes of tabulating votes, each Voting Nominee will be deemed to have voted the principal amount relating to such security, although Solicitation Agent may be asked and is authorized to adjust such principal amount to reflect the claim amount, including prepetition interest.

51.     Upon reasonable request from the Prepetition Secured Lenders, the Solicitation Agent shall provide updates regarding the progress of voting, with preliminary tabulation due to the Prepetition Secured Lenders at least 7 days prior to the Confirmation Hearing and a finalized tabulation due to the Prepetition Secured Lenders at least 3 days prior to the Confirmation Hearing.

52.    The foregoing tabulation procedures are subject to change and may be amended at

any time on or before the hearing to approve the Disclosure Statement Hearing. These tabulation

procedures, including any amendment thereto, will be submitted for Court approval at the

Disclosure Statement Hearing and will be incorporated into the voting instructions to be included

with each Ballot and within the Proposed Plan.  The Prepetition Secured Lenders believe that the

foregoing proposed procedures provide for a fair and equitable voting process.

G.    **Notices of Non-Voting Status**

53.    Bankruptcy Rule 3017(d) provides, in relevant part, as follows:

> If the court orders that the disclosure statement and the plan or a
> summary of the plan shall not be mailed to any unimpaired class,
> notice that the class is designated in the plan as unimpaired and
> notice of the name and address of the person from whom the plan
> or summary of the plan and disclosure statement may be obtained
> upon request and at the plan proponent's expense, shall be mailed
> to members of the unimpaired class together with the notice of the
> time fixed for filing objections to and the hearing on confirmation.

54.    Class 1 under each Proposed Plan is unimpaired and, thus, are conclusively

deemed to accept the applicable Proposed Plan pursuant to section 1126(f) of the Bankruptcy

Code. As noted earlier, the Debtors propose to send to holders of unimpaired claims and interests

a Notice of Non-Voting Status, substantially in the form annexed hereto as **Exhibit C**. The

Notice of Non-Voting Status will indicate that the holder of such claim or interest is unimpaired,

deemed to accept the applicable Proposed Plan, and is not entitled to vote.

55.  Conversely, LPC Class 10 is fully impaired and is deemed to reject the LPC

Proposed Plan pursuant to Section 1126(g) of the Bankruptcy Code.  Rather than solicit votes,

the Prepetition Secured Lenders propose to send a Notice of Non-Voting Status that will indicate

that the holder of such interest is fully impaired and is deemed to have rejected the Proposed

Plan, and is not entitled to vote.

## III.

### THE CONFIRMATION HEARING, AND ESTABLISHING NOTICE AND OBJECTION PROCEDURES IN RESPECT OF CONFIRMATION OF THE PROPOSED PLAN

#### A.    **The Confirmation Hearing**

56.    Bankruptcy Rule 3017(c) provides:

> On or before approval of the disclosure statement, the court shall fix a time within which the holders of claims and interests may accept or reject the plan and may fix a date for the hearing on confirmation.

57.    In accordance with Bankruptcy Rules 2002(b) and 3017(c) and in view of the

Prepetition Secured Lenders' proposed solicitation procedures described herein, the Prepetition

Secured Lenders request that the Confirmation Pretrial Conference and the Confirmation

Hearing to consider confirmation of the Proposed Plans be scheduled, subject to the Court's

availability, during the weeks of _____, **2009**, and _____, **2009**, respectively.  The

Confirmation Hearing is contemplated to be at least 55 days after the Disclosure Statement

Hearing to allow adequate time for solicitation of votes on the Proposed Plans. The Confirmation

Hearing may be continued from time to time by the Court or the Prepetition Secured Lenders

without further notice other than adjournments announced in open court at the Confirmation

Hearing or any subsequent adjourned Confirmation Hearing and that the Proposed Plans may be

modified pursuant to section 1127 of the Bankruptcy Code prior to, during, or as a result of the

Confirmation Hearing, in each case without further notice to parties in interest. The Prepetition

Secured Lenders submit that the proposed timing for the Confirmation Hearing complies with

the Bankruptcy Code, the Bankruptcy Rules, and the Local Rules and will enable the Debtors to pursue confirmation of the Proposed Plan in a timely fashion.

**B.      Notice of the Confirmation Hearing**

58.     Bankruptcy Rule 2002(b) and (d) require not less than twenty-five (25) days' notice to all creditors and equity security holders of the time fixed for filing objections and the hearing to consider confirmation of a chapter 11 plan. In accordance with Bankruptcy Rules 2002 and 3017(d), the Prepetition Secured Lenders propose to provide to all creditors and equity security holders as of the Record Date a copy of the Confirmation Hearing Notice setting forth (a) the Record Date, (b) the Voting Deadline, (c) the Objection Deadline, and (d) the time, date, and place for the Confirmation Hearing. As noted above, all Solicitation Packages shall contain a Confirmation Hearing Notice.

59.     Bankruptcy Rule 2002(l) permits the Court to "order notice by publication if it finds that notice by mail is impracticable or that it is desirable to supplement the notice." In addition to mailing the Confirmation Hearing Notice, the Prepetition Secured Lenders propose to publish the Confirmation Hearing Notice once not less than ten (10) days before the Objection Deadline to confirmation of the Proposed Plans in the national edition of the New York Times. The Prepetition Secured Lenders believe that publication of the Confirmation Hearing Notice will provide sufficient notice of the Court's approval of the Proposed Disclosure Statement, the Record Date, the Voting Deadline, the Objection Deadline, and the time, date, and place of the Confirmation Hearing to persons who do not otherwise receive notice.

60. The Prepetition Secured Lenders submit that the foregoing procedures will provide adequate notice of the Confirmation Hearing and, accordingly, request that the Court approve such notice as adequate.

## C.    Objections to Confirmation of the Proposed Plan

61. Pursuant to Bankruptcy Rule 3020(b)(1), objections to confirmation of a proposed plan must be filed and served "within a time fixed by the court." The Prepetition Secured Lenders request the Court implement the following procedures and deadlines for filing objections and responses to the Proposed Plans. Objections or responses to confirmation of or proposed modifications to the Proposed Plans, if any, must (a) be in writing; (b) conform to the Bankruptcy Rules and the Local Rules for the United States Bankruptcy Court for the Southern District of New York; and (c) set forth the name of the objecting party, the basis for the objection, and the specific grounds therefore.

62. All objections and responses to the confirmation of or proposed modifications to the Proposed Plans must be filed with the Court no later than the Objection Deadline. In accordance with General Order M-242, registered users of the Court's case filing system must electronically file their objections and responses. All other parties in interest must file their objections and responses on a 3.5 inch floppy disk (preferably in Portable Disk Format (PDF), WordPerfect, or any other Windows-based word processing format) and deliver a hard copy to Chambers.

63. All objections and responses must be served, so as to be received no later than the Objection Dealine upon: (a) the attorneys for the Prepetition Secured Lenders, Waller, Lansden, Dortch & Davis LLP, 511 Union Street, Suite 2700, Nashville, Tennessee, 37219 (Attn: John C.

Tishler); (b) the Debtors, Lexington Precision Corporation, 800 Third Ave. 15th Floor, New

York, New York 10023 (Attn: Michael A. Lubin); (c) the attorneys for the Debtors, Weil,

Gotshal & Manges LLP, 767 Fifth Avenue, New York, New York 10153 (Attn: Victoria Vron);

(d) the Office of the United States Trustee for the Southern District of New York, 33 Whitehall

Street, 21st Floor, New York, New York 10004 (Attn: Paul Schwartzberg); (e) the attorneys for

the statutory creditors' committee, Andrews Kurth LLP, 450 Lexington Avenue, New York,

New York 10017 (Attn: Paul Silverstein); and (f) the attorneys for the Debtors' postpetition

agents, O'Melveny & Meyers, LLP, Times Square Tower, 7 Times Square, New York, New

York 10036 (Attn: Gerald Bender).

64.     The proposed timing for filing and service of objections and responses to the

confirmation of or modification of the Proposed Plans, if any, will afford the Court, the

Prepetition Secured Lenders, and other parties in interest sufficient time to consider the

objections and responses prior to the Confirmation Hearing. Objections not timely filed and

served in accordance with the provisions of this Motion may be overruled on that basis alone.

The Prepetition Secured Lenders respectfully request that the Court approve these procedures for

filing objections to the Proposed Plans and replies thereto pursuant to Bankruptcy Rule 3020 and

Local Rule 9014-1.

## Notice

65.     No trustee or examiner has been appointed in these chapter 11 cases. Notice of

this Motion has been provided to (i) the United States Trustee for the Southern District of New

York, (ii) the attorneys for the Debtors, (iii) the attorneys for the Debtors' postpetition agents,

(iv) the attorneys for the Committee, (v) Authorized Counsel, and (vi) all other parties that have

requested notice in these chapter 11 cases. The Prepetition Secured Lenders submit that no other or further notice need be provided.

WHEREFORE the Prepetition Secured Lenders respectfully requests the entry of an order substantially in the form of **Exhibit E** hereto granting the relief requested herein and such other and further relief as is just.

Dated: September 3, 2009
New York, New York

/s/ John Tishler
John C. Tishler

WALLER LANSDEN DORTCH & DAVIS
511 Union Street, Suite 2700
Nashville, Tennessee 37219
Telephone: (615) 244-6380
Facsimile: (615) 244-6804

and

/s/ Aaron Cahn
Aaron R. Cahn

CARTER LEDYARD & MILBURN LLP
2 Wall Street
New York, NY 10005
Telephone: (212) 732-3200
Facsimile: (212) 732-3232

*Attorneys for the Agents to the Prepetition Secured Lenders*

3068523.2.1

6501820.1

29

EXHIBIT A:                              Form of Proposed Disclosure Statement

COLLECTIVE EXHIBIT B:                   Forms of Ballots

EXHIBIT C:                              Form of Notice of Non-Voting Status

EXHIBIT D:                              Form of Notice of Confirmation Hearing

EXHIBIT E:                              Form of Proposed Order Approving Disclosure Statement