**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

-------------------------------------------------------------------x

In re:                                          :

                                                :        **Chapter 11 Case No. 08-11153 (MG)**

**LEXINGTON PRECISION CORPORATION,**            :        **(Jointly Administered)**

                                                :

                                                :

                                                :

         **Debtor**                             :

-------------------------------------------------------------------x


**PREPETITION SECURED LENDERS' CHAPTER 11 PLAN**


WALLER LANSDEN DORTCH & DAVIS, LLP
511 Union Street, Suite 2700
Nashville, Tennessee 37219
(615) 244-6380 TEL
(615) 244-6804 FAX

and

CARTER LEDYARD & MILBURN LLP
2 Wall Street
New York, NY 10005
Telephone: 212-732-3200
Fax: 212-732-3232


Dated: September 1, 2009

3066744.3

# TABLE OF CONTENTS

ARTICLE I - DEFINITIONS AND INTERPRETATION ................................................................ 5

    A.  Definitions ........................................................................................................... 5

    B.  Interpretation; Application of Definitions and Rules of Construction .............. 13

ARTICLE II - ADMINISTRATIVE EXPENSE CLAIMS AND PRIORITY TAX CLAIMS................... 15

    2.1.  Administrative Expense Claim ........................................................................ 15

    2.2  Professional Compensation and Reimbursement Claims ............................... 15

    2.3  Priority Tax Claims........................................................................................... 16

    2.4  DIP Loan Claim ................................................................................................ 16

ARTICLE III - CLASSIFICATION OF CLAIMS AND INTERESTS.............................................. 17

ARTICLE IV - TREATMENT OF CLAIMS AND INTERESTS ................................................... 19

    A.  LPC Claims and Interests .................................................................................. 19

    4.1  Class 1: Other Priority Claims Against LPC ...................................................... 19

    4.2  Class 2(A): CapitalSource Secured Claims Against LPC.................................... 19

    4.3  Class 2(B): CSE Secured Claims Against LPC .................................................... 19

    4.4  Class 3: Secured Tax Claims Against LPC ......................................................... 20

    4.5  Class 4: Other Secured Claims Against LPC ..................................................... 20

    4.6  Class 5: General Unsecured Claims Against LPC, Including Senior Subordinated Note Claims Against LPC........................................................................................................................ 21

    4.7  Class 6: Asbestos-Related Claims Against LPC................................................. 21

    4.8  Class 7: Junior Subordinated Note Claims Against LPC ................................... 22

    4.9  Class 8: Series B Preferred Stock Interests Against LPC .................................. 23

    4.10  Class 9: LPC Common Stock Interests ............................................................ 23

    4.11  Class 10:  Other Equity Interests in LPC ........................................................ 24

ARTICLE V - MEANS FOR IMPLEMENTATION.................................................................... 25

    5.1  Intercompany Claims ....................................................................................... 25

    5.2  Cancellation and Surrender of Existing Securities and Agreements ................ 25

    5.3  LPC Post-Confirmation Trust and LPC Litigation Trust .................................... 26

    5.4  Sales Agent ...................................................................................................... 27

    5.5  Sales Process.................................................................................................... 27

    5.6  Cooperation From the Debtors ....................................................................... 28

ARTICLE VI - VOTING AND DISTRIBUTIONS...................................................................... 29

    6.1  Voting of Claims .............................................................................................. 29

    6.2  Nonconsensual Confirmation.......................................................................... 29

    6.3  Distribution Record Date ................................................................................. 29

    6.4  Date of Distributions ....................................................................................... 29

3066744.3

6.5 Disbursing Agent ............................................................................................. 29
6.6 Rights and Powers of Disbursing Agent ......................................................... 30
6.7 Expenses of the Disbursing Agent ................................................................. 30
6.8 Delivery of Distributions ................................................................................ 30
6.9 Unclaimed Distributions ................................................................................ 31
6.10 Manner of Payment ...................................................................................... 31
6.11 Minimum Cash Distributions ........................................................................ 31
6.12 Setoffs ........................................................................................................... 31

ARTICLE VII - PROCEDURES FOR DISPUTED CLAIMS ................................................. 32
7.1 Objections ....................................................................................................... 32
7.2 No Payment Pending Allowance .................................................................... 32
7.3 Distributions After Allowance ........................................................................ 32
7.4 Resolution of Administrative Expense Claims and Other Claims .................... 32
7.5 Estimation of Claims ....................................................................................... 32
7.6 Interest ........................................................................................................... 33

ARTICLE VIII - EXECUTORY CONTRACTS AND UNEXPIRED LEASES ............................ 34
8.1 Assumption or Rejection of Executory Contracts and Unexpired Leases ........ 34
8.2 Approval of Assumption or Rejection of Executory Contracts and Unexpired Leases ..... 34
8.3 Cure of Defaults .............................................................................................. 34
8.4 Bar Date for Filing Proofs of Claim Relating to Executory Contracts and Unexpired Leases
Rejected Pursuant to the Plan ............................................................................... 35
8.5 Indemnification Obligations ........................................................................... 35
8.6 Insurance Policies ........................................................................................... 35
8.7 Compensation and Benefit Programs ............................................................. 36
8.8 Retiree Benefits .............................................................................................. 36

ARTICLE IX - CORPORATE GOVERNANCE AND MANAGEMENT OF THE
POST-CONFIRMATION DEBTOR .............................................................................. 37

ARTICLE X - EFFECT OF CONFIRMATION ................................................................. 38
10.1 Vesting of Assets ........................................................................................... 38
10.2 Discharge of Debtor ...................................................................................... 38
10.3 Injunction or Stay .......................................................................................... 38
10.4 Term of Injunctions or Stays ......................................................................... 38
10.5 Injunction Against Interference With Plan .................................................... 39
10.6 Exculpation .................................................................................................... 39
10.7 Releases ......................................................................................................... 39
10.8 Limitation on Releases .................................................................................. 40
10.9 Avoidance Actions ......................................................................................... 40
10.10 Retention of Causes of Action/ Reservation of Rights ................................. 40
10.11 Limitations on Exculpation and Releases of Representatives ...................... 41

ARTICLE XI - CONDITIONS PRECEDENT TO EFFECTIVE DATE ................................... 42
11.1 Conditions Precedent to Effectiveness .......................................................... 42

3066744.3

11.2  Waiver of Conditions .................................................................................................. 42
11.3  Effect of Failure of Conditions to Effective Date ...................................................... 42

ARTICLE XII - RETENTION OF JURISDICTION ..................................................................... 43

ARTICLE XIII - MISCELLANEOUS PROVISIONS ................................................................... 45
13.1  Effectuating Documents and Further Transactions ................................................. 45
13.2  Withholding and Reporting Requirements .............................................................. 45
13.3  Corporate Action ..................................................................................................... 45
13.4  Exemption From Transfer Taxes .............................................................................. 45
13.5  Expedited Tax Determination .................................................................................. 46
13.6  Payment of Statutory Fees....................................................................................... 46
13.7  Post-Confirmation Date Professional Fees and Expenses ........................................ 46
13.8  Dissolution of Statutory Committees ...................................................................... 46
13.9  Indenture Trustee as Claim Holder ......................................................................... 46
13.10 Plan Supplement ..................................................................................................... 47
13.11 Substantial Consummation ..................................................................................... 47
13.12 Amendments or Modifications of the Plan .............................................................. 47
13.13 Revocation or Withdrawal of the Plan..................................................................... 47
13.14 Severability .............................................................................................................. 47
13.15 Governing Law ......................................................................................................... 48
13.16 Binding Effect .......................................................................................................... 48
13.17 Exhibits/Schedules .................................................................................................. 48
13.18 Notices...................................................................................................................... 48
13.19 Time.......................................................................................................................... 49
13.20 Section Headings ..................................................................................................... 49

EXHIBIT A................................................................................................................................ 50
EXHIBIT B ................................................................................................................................ 51

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

-----------------------------------------------------------------x
                                                                  :
In re:                                                            :
                                                                  :        Chapter 11 Case No. 08-11153 (MG)
LEXINGTON PRECISION CORPORATION,                                  :        (Jointly Administered)
                                                                  :
                                                                  :
                                                                  :
           Debtor                                                 :
-----------------------------------------------------------------x

        CapitalSource Finance LLC, as agent under the Prepetition Credit Agreement
(defined below) and CSE Mortgage LLC, as agent under the Prepetition Loan Agreement (defined
below), jointly propose the following chapter 11 plan of reorganization for Lexington Precision
Corporation pursuant to section 1121(a) of title 11 of the United States Code:

## ARTICLE I

## DEFINITIONS AND INTERPRETATION

       A. Definitions.

        The following terms used herein shall have the respective meanings defined below
(such meanings to be equally applicable to both the singular and plural):

        1.1. *ADJUDICATION AMOUNT* has the meaning set forth in Section 4.7(c) of this
Plan.

        1.2. *ADMINISTRATIVE EXPENSE CLAIM* means any Claim constituting a cost or
expense of administration of the Chapter 11 Case allowed under sections 503(b) (including
503(b)(9)), 507(a)(2) and 507(b) of the Bankruptcy Code), including, without limitation, any actual
and necessary costs and expenses of preserving the Debtor's estate, any actual and necessary costs
and expenses of operating the Debtor's business, any actual and necessary costs and expenses of
the administration and implementation of the Plan, any indebtedness or obligations incurred or
assumed by the Debtor, as Debtor in Possession, during the Chapter 11 Case, including, without
limitation, for the acquisition or lease of property or an interest in property or the rendition of
services, any allowances of compensation and reimbursement of expenses to the extent allowed by
Final Order under section 330 or 503 of the Bankruptcy Code, and any fees or charges assessed
against the Debtor's estates under section 1930 of chapter 123 of title 28 of the United States Code.

        1.3. *AGENTS* means collectively, CapitalSource, as collateral agent and
administrative agent for itself and other lenders under the Prepetition Credit Agreement, and CSE
Mortgage, as collateral agent for itself and other lenders under the Prepetition Loan Agreement.

1.4. *ALLOWED* means that, with respect to a Claim, (i) such Claim has been listed by the Debtor in its Schedules, as such Schedules may be amended in accordance with Bankruptcy Rule 1009, as liquidated in amount and not disputed or contingent and no contrary proof of claim has been filed, (ii) a proof of claim with respect to such Claim has been timely filed and no objection thereto has been interposed within the time period set forth in Section 7.1 of the Plan or such other applicable period of limitation fixed by the Bankruptcy Code, the Bankruptcy Rules, or the Bankruptcy Court, or an objection thereto has been interposed and such Claim has been allowed in whole or in part by a Final Order, (iii) such Claim has been expressly allowed by a Final Order or under the Plan, or (iv) such Claim has been compromised, settled, or otherwise resolved pursuant to the authority granted to the Post-Confirmation Trustee pursuant to a Final Order of the Bankruptcy Court or under Sections 7.1, 7.4, or 7.5 of the Plan; *provided, however,* that Claims allowed solely for the purpose of voting to accept or reject the Plan pursuant to an order of the Bankruptcy Court shall not be considered "Allowed Claims" under the Plan.

1.5. *ASBESTOS INSURANCE POLICIES* means any and all Insurance Policies issued to LPC or any predecessor in interest that insure LPC against losses arising from any Asbestos-Related Claim.

1.6. *ASBESTOS-RELATED CLAIM* means any Claim, remedy or liability against the Debtor, whether or not such Claim, remedy or liability is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured or unsecured, whether or not the facts of or legal bases therefore are known or unknown, under any theory of law, equity, admiralty or otherwise (including piercing the corporate veil, alter ego and similar theories), for damages for property damage or for death, bodily injury, sickness, disease, medical monitoring or other personal injuries (whether physical, emotional or otherwise) to the extent allegedly arising out of or based on, directly or indirectly, in whole or in part, the presence of or exposure to asbestos or asbestos-containing products or things that were installed, engineered, designed, manufactured, fabricated, constructed, sold, supplied, produced, specified, selected, distributed, released, marketed, serviced, maintained, repaired, purchased, owned, occupied, used, removed, replaced or disposed of by the Debtor or an Entity for whose products or operations the Debtor allegedly has liability or for which the Debtor is otherwise allegedly liable, including any Claim, remedy or liability for compensatory damages (such as loss of consortium, lost wages or other opportunities, wrongful death, medical monitoring, survivorship, proximate, consequential, general and special damages) or punitive damages related thereto, and any Claim under any settlement of an Asbestos-Related Claim entered into by or on behalf of the Debtor prior to the Commencement Date.

1.7. *BANKRUPTCY CASE OR CHAPTER 11 CASE* means the jointly administered Chapter 11 case of Lexington Precision Corporation pending in the United States Bankruptcy Court for the Southern District of New York, styled *In re Lexington Precision Corporation, et al.*, Chapter 11 Case No. 08-11153 (MG) (Jointly Administered).

1.8. *BANKRUPTCY CODE* means title 11 of the United States Code, as amended from time to time, as applicable to the Chapter 11 Case.

1.9. *BANKRUPTCY COURT* means the United States Bankruptcy Court for the

3066744.3

6

Southern District of New York or such other court that exercises jurisdiction over the Chapter 11 Case.

1.10. ***BANKRUPTCY RULES*** means the Federal Rules of Bankruptcy Procedure as promulgated by the United States Supreme Court under section 2075 of title 28 of the United States Code, as amended from time to time, and any Local Rules of the Bankruptcy Court, as applicable to the Chapter 11 Case.

1.11. ***BUSINESS DAY*** means any day other than a Saturday, a Sunday, or any other day on which banking institutions in New York, New York are required or authorized to close by law or executive order.

1.12. ***CAPITALSOURCE*** means CapitalSource Finance LLC.

1.13. ***CAPITALSOURCE SECURED CLAIM*** means all Claims arising under the Prepetition Credit Agreement and all Claims of CapitalSource, as agent, and the Prepetition Revolver Lenders thereunder arising under the Final Cash Collateral Order, less all payments made subsequent to the Commencement Date in respect of such Claims under the Final Cash Collateral Order; provided, however, the CapitalSource Secured Claim shall in no event be reduced by the amount of the Prepetition Senior Lenders' Fee Carve-Out Amount, as provided in paragraph 23 of the Final Cash Collateral Order.   Except for the Default Rate Differential (as defined in the Final Cash Collateral Order) and any prepayment  or yield maintenance premiums, the CapitalSource Secured Claim shall be deemed Allowed as filed, plus, to the extent there are sufficient assets in the estates to pay such amounts, any supplemental fees, interest and charges that have accrued since the Petition Date and through the Effective Date.  For clarity, the CapitalSource Secured Claim shall not include pre-petition or post-petition interest at the default rate; instead, interest payable on such claim shall be limited to the contract rate for all applicable periods.

1.14. ***CASH*** means legal tender of the United States of America.

1.15. ***CLAIM*** shall have the meaning ascribed in section 101 of the Bankruptcy Code.

1.16. ***CLASS*** means any group of Claims or Interests classified by the Plan as set forth in Article III of the Plan.

1.17. ***COLLATERAL*** means any property or interest in property of the Debtor's estate subject to a Lien, charge, or other encumbrance to secure the payment or performance of a Claim, which Lien, charge, or other encumbrance is not subject to avoidance under the Bankruptcy Code.

1.18. ***COMMENCEMENT DATE*** means April 1, 2008, the date on which the Debtor commenced the Chapter 11 Case.

1.19. ***CONFIRMATION DATE*** means the date on which the Clerk of the Bankruptcy Court enters the Confirmation Order on the docket of the Bankruptcy Court with respect to the Chapter 11 Case.

1.20. **CONFIRMATION HEARING** means the hearing to be held by the Bankruptcy Court regarding confirmation of the Plan in accordance with section 1129 of the Bankruptcy Code, as such hearing may be adjourned or continued from time to time.

1.21. **CONFIRMATION ORDER** means the order of the Bankruptcy Court confirming the Plan pursuant to section 1129 of the Bankruptcy Code.

1.22. **CONTINGENT CLAIM** means any Claim, the liability for which attaches or is dependent upon the occurrence of, or is triggered by, an event, which event has not yet occurred as of the date on which such Claim is sought to be estimated or an objection to such Claim is filed, whether or not such event is within the actual or presumed contemplation of the holder of such Claim and whether or not a relationship between the holder of such Claim and the Debtor now or hereafter exists or previously existed.

1.23. **CREDITORS' COMMITTEE** means the statutory creditors' committee appointed pursuant to section 1102 of the Bankruptcy Code in the Chapter 11 Case, as may be reconstituted from time to time.

1.24. **CSE MORTGAGE** means CSE Mortgage LLC.

1.25. **CSE SECURED CLAIM** means all Claims arising under the Prepetition Loan Agreement and all Claims of CSE Mortgage, as agent, and the Prepetition Term Loan Lenders thereunder arising under the Final Cash Collateral Order, less all payments made subsequent to the Commencement Date in respect of such Claims under the Final Cash Collateral Order; provided, however, the CSE Secured Claim shall in no event be reduced by the amount of the Prepetition Senior Lenders' Fee Carve Out Amount, as provided in paragraph 23 of the Final Cash Collateral Order. Except for the Default Rate Differential (as defined in the Final Cash Collateral Order) and any prepayment or yield maintenance premiums, the CSE Secured Claim shall be deemed Allowed as filed, plus, to the extent there are sufficient assets in the estates to pay such amounts, any supplemental fees, interest and charges that have accrued since the Petition Date and through the Effective Date.  For clarity, the CSE Secured Claim shall not include (a) pre-petition or post-petition interest at the default rate; instead, interest payable on such claim shall be limited to the contract rate for all applicable periods; or (b) any prepayment or yield maintenance premium, the claim for which amount the Prepetition Term Loan Lenders shall be deemed to have waived.

1.26. **DEBTOR** means LPC.

1.27. **DEBTOR IN POSSESSION** means the Debtor in its capacity as debtor in possession in the Chapter 11 Case pursuant to sections 1101, 1107(a), and 1108 of the Bankruptcy Code.

1.28. **DIP LENDERS** means Lubin Partners, LLC, William B. Connor, and ORA Associates, LLC, as the lenders under the DIP Note.

1.29. **DIP LOAN CLAIM** means a Claim arising under the DIP Note, as authorized and approved by that certain Final Cash Collateral Order.

1.30. *DIP NOTE* means that certain Super-Priority DIP Note issued by the LPC and LRGI in favor of the DIP Lenders on April 21, 2008, in the amount of $4 million, as authorized under the Final Cash Collateral Order and as amended and restated pursuant to subsequent order of the Bankruptcy Court.

1.31. *DISALLOWED CLAIM* means a Claim or a portion of a Claim that is disallowed by an order of the Bankruptcy Court or any other court of competent jurisdiction.

1.32. *DISBURSING AGENT* means such Entity as is designated pursuant to Section 6.5 of the Plan to be a disbursing agent.

1.33. *DISCLOSURE STATEMENT* means the disclosure statement with respect to the Plan filed with and approved by the Bankruptcy Court in accordance with section 1125 of the Bankruptcy Code, as such disclosure statement may be amended, modified or supplemented.

1.34. *DISCLOSURE STATEMENT ORDER* means the order of the Bankruptcy Court approving the Disclosure Statement and establishing procedures with respect to the solicitation and tabulation of votes to accept or reject the Plan.

1.35. *DISPUTED CLAIM* means any Claim (including any Administrative Expense Claim) against the Debtor, proof of which was timely and properly filed, that is disputed under the Plan or as to which the Debtor or the Plan Proponents have interposed a timely objection and/or request for estimation in accordance with section 502(c) of the Bankruptcy Code and Bankruptcy Rule 3018, which objection and/or request for estimation has not been withdrawn or determined by a Final Order, and any Claim proof of which was required to be filed by order of the Bankruptcy Court but as to which a proof of claim was not timely or properly filed.

1.36. *DISTRIBUTION RECORD DATE* means, with respect to holders of all Claims, the date that is three (3) days after the Confirmation Date.

1.37. *EFFECTIVE DATE* means a Business Day specified by the Post-Confirmation Trustee or the Plan Proponents on or after the Confirmation Date, on which (i) no stay of the Confirmation Order is in effect and (ii) the conditions to the effectiveness of the Plan specified in Article 11 of the Plan have been satisfied or waived.

1.38. *ENTITY* means a person, a corporation, a general partnership, a limited partnership, a limited liability company, a limited liability partnership, an association, a joint stock company, a joint venture, an estate, a trust, an unincorporated organization, a governmental unit or any subdivision thereof, including, without limitation, the Office of the United States Trustee.

1.39. *FINAL CASH COLLATERAL ORDER* means collectively the following: (a) that certain Final Order Pursuant to Bankruptcy Code Sections 105, 361, 362, 363, and 364 (I) Authorizing Debtor to Use Cash Collateral, (II) Granting Adequate Protection to Prepetition Secured Lenders, and (III) Authorizing Postpetition Financing, entered by the Bankruptcy Court on April 17, 2008, in the Chapter 11 Case, as may be amended or supplemented; (b) that

certain Final Order Pursuant to Bankruptcy Code Sections 105(A), 361,362, And 363 (I)
Authorizing Debtors to Use Cash Collateral and (II) Granting Adequate Protection to Prepetition
Secured Lenders, entered by the Bankruptcy Court on March 4, 2009, in the Chapter 11 Case, as
may be amended or supplemented;  (c) that certain Final Order entitled Third Order Pursuant
to Bankruptcy Code Sections 105(A), 361, 362, and 363 (I) Authorizing Debtors to Use Cash
Collateral And (II) Granting Adequate Protection to Prepetition Secured Lenders, entered by the
Bankruptcy Court on May 20, 2009, in the Chapter 11 Case, as may be amended or
supplemented; and (d) that certain Final Order entitled Stipulation, Agreement and Order
Pursuant to Bankruptcy Code Sections 105(A), 361, 362, And 363 (I) Authorizing Debtors to Use
Cash Collateral And (II) Granting Adequate Protection to Prepetition Secured Lenders, entered
by the Bankruptcy Court on August 17, 2009, in the Chapter 11 Case, as may be amended or
supplemented.

1.40. *FINAL ORDER* means an order or judgment of the Bankruptcy Court entered by
the Clerk of the Bankruptcy Court on the docket in the Chapter 11 Case, that has not been reversed,
vacated, or stayed, and as to which (i) the time to appeal, petition for *certiorari*, or move for a new
trial, reargument, or rehearing has expired, and as to which no appeal, petition for *certiorari*, or
other proceedings for a new trial, reargument, or rehearing shall then be pending, or (ii) if an
appeal, writ of *certiorari*, new trial, reargument, or rehearing thereof has been sought, such order
or judgment of the Bankruptcy Court shall have been affirmed by the highest court to which such
order was appealed, or *certiorari* shall have been denied, or a new trial, reargument, or rehearing
shall have been denied or resulted in no modification of such order, and the time to take any
further appeal, petition for *certiorari* or move for a new trial, reargument, or rehearing shall have
expired; *provided, however*, that the possibility that a motion under Rule 59 or Rule 60 of the
Federal Rules of Civil Procedure, or any analogous rule under the Bankruptcy Rules, may be filed
relating to such order shall not cause such order to not be a Final Order.

1.41. *GENERAL UNSECURED CLAIM* means any Claim against the Debtor other than
an Administrative Expense Claim, a Priority Tax Claim, an Other Priority Claim, a Secured Tax Claim,
an Other Secured Claim, a CapitalSource Secured Claim, a CSE Secured Claim, a Senior Subordinated
Note Claim, a Junior Subordinated Note Claim, or an Asbestos-Related Claim.

1.42. *INDENTURE* means the Indenture, dated as of December 18, 2003, entered
into by LPC, with Wilmington Trust Company, as trustee, under which the Senior Subordinated
Notes were issued, as such Indenture is or has been amended, modified or supplemented from
time to time.

1.43. *INDENTURE TRUSTEE* means Wilmington Trust Company, in its capacity as
the indenture trustee for the Senior Subordinated Notes, or any successor thereto.

1.44. *INSURANCE POLICIES* means any and all insurance policies issued to LPC, or
any of their predecessors in interest.

1.45. *INTERCOMPANY CLAIM* means any Claim against LPC or LRGI held by
the other entity.

3066744.3

1.46. ***INTERCREDITOR AGREEMENT*** means that certain Intercreditor Agreement, dated as of May 31, 2006, by and among CapitalSource Finance, LLC, as working capital agent, and CSE Mortgage, LLC, as term loan agent, regarding the Prepetition Credit Agreement and Prepetition Loan Agreement.

1.47. ***INTEREST*** means any LPC Common Stock Interest, Other Equity Interest or Series B Preferred Stock Interest.

1.48. ***JUNIOR SUBORDINATED NOTE*** means that certain 13% Junior Subordinated Note due November 1, 2009, issued on December 18, 2003 by LPC to Michael A. Lubin.

1.49. ***JUNIOR SUBORDINATED NOTE CLAIM*** means all Claims arising under the Junior Subordinated Note, which shall include interest from and after the Commencement Date at the rate of 13% per annum.

1.50. ***LPC*** means Lexington Precision Corporation, a Delaware corporation.

1.51. ***LPC COMMON STOCK*** means the shares of common stock of LPC.

1.52. ***LPC COMMON STOCK INTERESTS*** means the interest of any holder of LPC Common Stock.

1.53. ***LPC POST-CONFIRMATION TRUST or POST-CONFIRMATION TRUST*** means the post-confirmation trust established pursuant to Section 5.3 below.

1.54. ***LPC POST-CONFIRMATION TRUSTEE or POST-CONFIRMATION TRUSTEE*** means the trustee of the LPC Post-Confirmation Trust and the trustee of the LPC Litigation Trust. The LPC Post-Confirmation Trustee shall be identified in the Plan Supplement.

1.55. ***LPC LITIGATION TRUST*** means the litigation trust established pursuant to Section 5.3 below.

1.56. ***LPC WARRANT*** means a warrant issued on December 18, 2003, entitling the holder to purchase one share of the LPC Common Stock for $3.50 from August 1, 2005, through August 1, 2009.

1.57. ***LRGI*** means Lexington Rubber Group, Inc., a Delaware corporation.

1.58. ***LRGI PLAN*** means the plan of reorganization proposed by the Agents for LRGI.

1.59. ***LRGI POST-CONFIRMATION TRUST*** means the post-confirmation trust established pursuant to the LRGI Plan.

1.60. ***LRGI POST-CONFIRMATION TRUSTEE*** means the trustee of the LRGI Post-Confirmation Trust and the LRGI Litigation Trust.

1.61. ***LRGI LITIGATION TRUST*** means the litigation trust established pursuant to the

LRGI Plan.

     1.62. *LIEN* means any charge against or interest in property to secure payment of a debt or performance of an obligation.

     1.63. *OTHER EQUITY INTEREST* means the interest of any holder of an equity security of the Debtor represented by any instrument evidencing an ownership interest in the Debtor, whether or not transferable, or any option, warrant, or right, contractual or otherwise, to acquire any such interest, including the LPC Warrants, but excluding the LPC Common Stock Interests and the Series B Preferred Stock Interests.

     1.64. *OTHER PRIORITY CLAIM* means any Claim entitled to priority in right of payment under section 507(a) of the Bankruptcy Code, other than an Administrative Expense Claim, a DIP Loan Claim, or a Priority Tax Claim.

     1.65. *OTHER SECURED CLAIM* means any Secured Claim other than a Secured Tax Claim, the CapitalSource Secured Claim and the CSE Secured Claim.

     1.66. *PLAN DOCUMENTS* means the documents to be executed, delivered, assumed, and/or performed in conjunction with the consummation of the Plan on the Effective Date, including but not limited to the documents listed on Exhibit A hereto. Each of the Plan Documents to be entered into as of the Effective Date will be included in draft form in the Plan Supplement.

     1.67. *PLAN* means this Plan, including the Plan Documents, the Plan Supplement, and the exhibits and schedules hereto and thereto, as the same may be amended or modified by the Plan Proponents from time to time in accordance with the provisions of the Bankruptcy Code and the terms of the Plan. Collectively, the Plan and the LRGI Plan shall be called the "Plans."

     1.68. *PLAN PROPONENTS* means CapitalSource and CSE, as Agents.

     1.69. *PLAN SUPPLEMENT* means the document (as may be amended, modified or supplemented) containing the forms of documents specified in Section 13.10 of the Plan.

     1.70. *PREPETITION CREDIT AGREEMENT* means that certain Credit and Security Agreement, dated May 31, 2006 (as amended, restated or otherwise modified), between LPC and LRGI, as borrowers, and CapitalSource, as a lender, as collateral agent and administrative agent for itself and each other lender, and as co-documentation agent, and Webster Business Credit Corporation as a lender and as co-documentation agent, together with all other relevant Prepetition Senior Lender Loan Documents (as defined in the Final Cash Collateral Order).

     1.71. *PREPETITION LOAN AGREEMENT* means that certain Loan and Security Agreement, dated May 31, 2006 (as amended, restated or otherwise modified), between LPC and LRGI, as borrowers, and CSE Mortgage, as a lender and a collateral agent for itself and each other lender, and DMD Special Situations Funding LLC, as a lender, together with all other relevant Prepetition Senior Lender Loan Documents (as defined in the Final Cash Collateral Order).

1.72. *PREPETITION REVOLVER LENDERS* means CapitalSource and Webster Business Credit Corporation, as lenders under the Prepetition Credit Agreement.

1.73. *PREPETITION TERM LOAN LENDERS* means CSE Mortgage and DMD Special Situations Funding LLC, as lenders under the Prepetition Loan Agreement.

1.74. *PRIORITY TAX CLAIM* means any Claim of a governmental unit of the kind entitled to priority in payment as specified in sections 502(i) and 507(a)(8) of the Bankruptcy Code.

1.75. *SCHEDULES* means the schedules of assets and liabilities and the statements of financial affairs filed by the Debtor pursuant to section 521 of the Bankruptcy Code, Bankruptcy Rule 1007, and the Official Bankruptcy Forms of the Bankruptcy Rules, as such schedules and statements may be supplemented or amended on or prior to the Effective Date.

1.76. *SECURED CLAIM* means any Claim that is secured by a Lien on Collateral to the extent of the value of such Collateral, as determined in accordance with section 506(a) of the Bankruptcy Code, or, in the event that such Claim is subject to a permissible setoff under section 553 of the Bankruptcy Code, to the extent of such permissible setoff.

1.77. *SECURED TAX CLAIM* means any Secured Claim that, absent its secured status, would be entitled to priority in right of payment under section 507(a)(8) of the Bankruptcy Code (determined irrespective of any time limitations therein), and including any related Secured Claim for penalties.

1.78. *SENIOR SUBORDINATED NOTES* means the 12% Senior Subordinated Notes due August 1, 2009, issued by LPC pursuant to the Indenture.

1.79. *SENIOR SUBORDINATED NOTE CLAIM* means any Claim arising under the Senior Subordinated Notes, which shall include interest from and after the Commencement Date at the rate of 12% per annum.

1.80. *SERIES B PREFERRED STOCK INTEREST* means the interest of any holder of issued and outstanding shares of LPC's $8 Cumulative Convertible Preferred Stock, Series B.

1.81. *UNLIQUIDATED CLAIM* means any Claim, the amount of liability for which has not been fixed, whether pursuant to agreement, applicable law, or otherwise, as of the date on which such Claim is sought to be estimated.

1.82. *UNSECURED CLAIM* means any Claim that is not a Secured Claim, an Administrative Expense Claim, a Priority Tax Claim or Other Priority Claim.

**B.      Interpretation; Application of Definitions and Rules of Construction.**

Unless otherwise specified, all section or exhibit references in the Plan are to the respective section in, or exhibit to, the Plan, as the same may be amended, waived, or modified from time to time.  The words "herein," "hereof," "hereto," "hereunder," and other words of

similar import refer to the Plan as a whole and not to any particular section, subsection, or clause contained therein.  A term used herein that is not defined herein shall have the meaning ascribed to that term in the Bankruptcy Code.  The rules of construction contained in section 102 of the Bankruptcy Code shall apply to the Plan.  In the event that a particular term of the Plan (including any exhibits or schedules hereto) conflicts with a particular term of the definitive documentation required to be implemented pursuant to the terms of the Plan or any settlement or other agreement contemplated hereunder, the definitive documentation shall control and shall be binding on the parties thereto.  The headings in the Plan are for convenience of reference only and shall not limit or otherwise affect the provisions of the Plan.

## ARTICLE II

### ADMINISTRATIVE EXPENSE CLAIMS AND PRIORITY TAX CLAIMS

2.1. *ADMINISTRATIVE EXPENSE CLAIMS*.

Except to the extent that a holder of an Allowed Administrative Expense Claim agrees to a less favorable treatment, each Allowed Administrative Expense Claim shall be paid from the LPC Post-Confirmation Trust and the LRGI Post-Confirmation Trust in full, in Cash, in an amount equal to such Allowed Administrative Expense Claim on or as soon as reasonably practicable following the later to occur of (a) the Effective Date and (b) the date on which such Administrative Expense Claim shall become an Allowed Claim; *provided, however*, that Allowed Administrative Expense Claims against the Debtor representing liabilities incurred in the ordinary course of business by the Debtor, as Debtor in Possession or through the Post-Confirmation Trustee, or liabilities arising under loans or advances to or other obligations incurred by the Debtor, as Debtor in Possession or through the Post-Confirmation Trustee, whether or not incurred in the ordinary course of business, shall be paid by the Post-Confirmation Trustee in the ordinary course of business, consistent with past practice and in accordance with the terms and subject to the conditions of any orders, agreements governing, instruments evidencing, or other documents relating to such transactions, including without limitation the Final Cash Collateral Order. The Post-Confirmation Trustee shall have the sole and exclusive authority to liquidate and pay Administrative Expense Claims accruing after the Confirmation Date or any Administrative Expense Claim that remains unpaid as of the Confirmation Date.

To the extent that an Allowed Administrative Expense Claim may also be recoverable from the LRGI bankruptcy estate in addition to this LPC estate, no recovery on account of such Claim shall exceed the Allowed Amount of such Administrative Expense Claim, with the allocable share for each estate to be determined by either (a) agreement between the LRGI Post-Confirmation Trustee and the LPC Post-Confirmation Trustee or (b) the Bankruptcy Court.

2.2. *PROFESSIONAL COMPENSATION AND REIMBURSEMENT CLAIMS*.

The Bankruptcy Court shall fix in the Confirmation Order a date for the filing of, and a date to hear and determine, all applications for final allowance of compensation for services rendered or reimbursement of expenses incurred through and including the Confirmation Date under sections 328 and 330 of the Bankruptcy Code or applications for allowance of Administrative Expense Claims arising under section 503(b)(2), 503(b)(3), 503(b)(4), or 503(b)(5) of the Bankruptcy Code. Unless otherwise agreed to by the claimant and the Post-Confirmation Trustee, the Allowed Administrative Expense Claims arising under section 330, 331, 503(b)(2), 503(b)(3), 503(b)(4), and 503(b)(5) of the Bankruptcy Code shall be paid in full, in Cash, as soon as practicable following the later to occur of (a) the Effective Date and (b) the date upon which any such Administrative Expense Claim becomes an Allowed Administrative Expense Claim. The Post-Confirmation Trustee is authorized to pay compensation for services rendered or reimbursement of expenses incurred after the Confirmation Date and until the Effective Date in the ordinary course of business and without the need for Bankruptcy Court approval.

To the extent that an Allowed Professional Compensation and Reimbursement Claim

3066744.3

may also be recoverable from the LRGI bankruptcy estate in addition to this LPC estate, no recovery on account of such Claim shall exceed the Allowed Amount of such Professional Compensation and Reimbursement Claim, with the allocable share for each estate to be determined by either (a) agreement between the LRGI Post-Confirmation Trustee and the LPC Post-Confirmation Trustee or (b) the Bankruptcy Court.

### 2.3. *PRIORITY TAX CLAIMS*.

Except to the extent that a holder of an Allowed Priority Tax Claim either has been paid by the Debtor or the Post-Confirmation Trustee prior to the Effective Date or agrees to a less favorable treatment, each holder of an Allowed Priority Tax Claim shall receive, at the sole option of the Post-Confirmation Trustee, (a) Cash in an amount equal to such Allowed Priority Tax Claim on or as soon as reasonably practicable following the later to occur of (i) the Effective Date and (ii) the date on which such Administrative Priority Tax Claim shall become an Allowed Priority Tax Claim, (b) equal semi-annual Cash payments in an aggregate amount equal to such Allowed Priority Tax Claim, together with interest at the applicable non-bankruptcy rate, commencing upon the later of the Effective Date and the date such Priority Tax Claim becomes an Allowed Priority Tax Claim, or as soon thereafter as is practicable and continuing over a period of eighteen (18) months (but in no event exceeding five (5) years from and after the Commencement Date), or (c) such other treatment as shall be determined by the Bankruptcy Court to provide the holder of such Allowed Priority Tax Claim deferred Cash payments having a value, as of the Effective Date, equal to such Allowed Priority Tax Claim.

To the extent that an Allowed Priority Tax Claim may also be recoverable from the LRGI bankruptcy estate in addition to this LPC estate, no recovery on account of such Claim shall exceed the Allowed Amount of such Priority Tax Claim, with the allocable share for each estate to be determined by either (a) agreement between the LRGI Post-Confirmation Trustee and the LPC Post-Confirmation Trustee or (b) the Bankruptcy Court.

### 2.4. *DIP LOAN CLAIM.*

Unless otherwise agreed to by the holders of the DIP Loan Claim, each holder of an Allowed DIP Loan Claim shall receive, in full satisfaction of such claim, distributions from the LRGI Post-Confirmation Trust, the LRGI Litigation Trust, the LPC Post-Confirmation Trust and/or the LPC Litigation Trust in the form of Cash, in an amount equal to such Allowed DIP Loan Claim; provided, however, pursuant to the subordination contained in the Final Cash Collateral Order, payment of such Allowed DIP Loan Claim shall be made only after payment in full of Classes 2(a), 2(b), 3, and 4 Claims under this Plan, and Classes 2(a), 2(b), 3, and 4 Claims under the LRGI Plan. Payments of the DIP Loan Claim from the LRGI Post-Confirmation and the LPC Post-Confirmation trusts shall not, in the aggregate, exceed the total Allowed DIP Loan Claim.

To the extent that an Allowed DIP Loan Claim may also be recoverable from the LRGI bankruptcy estate in addition to this LPC estate, no recovery on account of such Claim shall exceed the Allowed Amount of such DIP Loan Claim, with the allocable share for each estate to be determined by either (a) agreement between the LRGI Post-Confirmation Trustee and the LPC Post-Confirmation Trustee or (b) the Bankruptcy Court.

## ARTICLE III

## CLASSIFICATION OF CLAIMS AND INTERESTS

The following table designates the Classes of Claims against and Interests in the Debtor and specifies which of those Classes are (i) impaired or unimpaired by the Plan and (ii) entitled to vote to accept or reject the Plan in accordance with section 1126 of the Bankruptcy Code or deemed to reject the Plan.

| LPC CLASS | DESIGNATION | STATUS | ENTITLED TO VOTE? | DISTRIBUTION |
|---|---|---|---|---|
| 1 | *OTHER PRIORITY CLAIMS AGAINST LPC* | Unimpaired | No (deemed to accept) | Paid in full. In Cash on the Effective Date |
| 2(a) | *CAPITALSOURCE SECURED CLAIMS AGAINST LPC* | Impaired | Yes | First priority beneficial interest in LPC Post-Confirmation Trust and a limited first priority beneficial interest in the LPC Litigation Trust* |
| 2(b) | *CSE SECURED CLAIMS AGAINST LPC* | Impaired | Yes | First priority beneficial interest in LPC Post-Confirmation Trust and a limited first priority beneficial interest in the LPC Litigation Trust* |
| 3 | *SECURED TAX CLAIMS AGAINST LPC* | Impaired | Yes | Second priority beneficial interest in LPC Post-Confirmation Trust |
| 4 | *OTHER SECURED CLAIMS AGAINST LPC* | Impaired | Yes | Third Priority beneficial interest in LPC Post-Confirmation Trust |
| 5 | *GENERAL UNSECURED CLAIMS AGAINST LPC (INCLUDING SENIOR SUBORDINATED NOTE CLAIMS)* | Impaired | Yes | Fourth priority beneficial interest in LPC Post-Confirmation Trust and first priority beneficial interest in LPC Litigation Trust (subject to the rights of Classes 2(a) and 2(b))* |
| 6 | *ASBESTOS-RELATED CLAIMS* | Impaired | Yes | Insurance proceeds, and to the extent such proceeds are insufficient, a fourth priority beneficial interest in LPC Post-Confirmation Trust and first priority beneficial interest in LPC Litigation Trust (subject to the rights of Classes 2(a) and 2(b))* |
| 7 | *JUNIOR SUBORDINATED NOTE CLAIMS* | Impaired | Yes | Fifth priority beneficial interest in LPC Post-Confirmation Trust and second priority beneficial interest in LPC Litigation Trust (subject to the rights |

* Clases 2(a) and 2(b) may also be entitled to a distribution from the LPC Litigation Trust on account of certain replacement liens on unencumbered assets and avoidance actions under the Final Cash Collateral Order.

3066744.3

| | | | | of Classes 2(a) and 2(b))* |
|---|---|---|---|---|
| 8 | *SERIES B PREFERRED STOCK INTERESTS* | Impaired | Yes | Sixth priority beneficial interest in LPC Post-Confirmation Trust and third priority beneficial interest in LPC Litigation Trust (subject to the rights of Classes 2(a) and 2(b))* |
| 9 | *LPC COMMON STOCK INTERESTS* | Impaired | Yes | Seventh priority residual beneficial interest in LPC Post-Confirmation Trust and fourth priority residual beneficial interest in LPC Litigation Trust (subject to the rights of Classes 2(a) and 2(b))* |
| 10 | *OTHER EQUITY INTERESTS IN LPC* | Impaired | No (deemed to reject) | No distribution - cancelled and extinguished. |

---

* Clases 2(a) and 2(b) may also be entitled to a distribution from the LPC Litigation Trust on account of certain replacement liens on unencumbered assets and avoidance actions under the Final Cash Collateral Order.

## ARTICLE IV

## TREATMENT OF CLAIMS AND INTERESTS

Notwithstanding anything to the contrary in the Disclosure Statement, the Confirmation Order, the LRGI Plan, or any other Order of the Bankruptcy Court, there shall be no substantive consolidation of the LRGI bankruptcy estate and the LPC Bankruptcy estate.

A.    **LPC Claims and Interests**.

### 4.1. *CLASS 1: OTHER PRIORITY CLAIMS AGAINST LPC*.

(a) <u>Impairment and Voting</u>. Class 1 is unimpaired by the Plan.  Each holder of an Allowed Other Priority Claim against LPC is conclusively presumed to have accepted the Plan and is not entitled to vote to accept or reject the Plan.

(b) <u>Distributions</u>. Except to the extent that a holder of an Allowed Other Priority Claim against LPC agrees to a less favorable treatment, each such holder shall receive, in full satisfaction of such Allowed Other Priority Claim, Cash in an amount equal to such Allowed Other Priority Claim, on or as soon as reasonably practicable after the later of (i) the Effective Date, and (ii) the date such Claim becomes Allowed.

### 4.2. *CLASS 2(A): CAPITALSOURCE SECURED CLAIMS AGAINST LPC*.

(a) <u>Impairment and Voting</u>. Class 2(a) is impaired by the Plan.  Each holder of an Allowed CapitalSource Secured Claim against LPC is entitled to vote to accept or reject the Plan.

(b) <u>Distributions</u>. Each holder of an Allowed CapitalSource Secured Claim against LPC (or its designee) shall receive, in full satisfaction of such Claim, a beneficial first priority interest in the LPC Post-Confirmation Trust in an amount equal to the Allowed Amount of such claim, on or as soon as reasonably practicable after the entry of the Confirmation Order.  Each holder of an Allowed CapitalSource Secured Claim against LPC will receive distributions from the LPC Post-Confirmation Trust as soon as reasonably practicable after any sale is consummated.  In no event shall the combination of distributions on account of Class 2(a) Claims under this Plan and Class 2(a) Claims under the LRGI Plan exceed the Allowed Amount of the Class 2(a) Claims under this Plan.  Subject to the occurrence of the Effective Date, any and all Liens on LPC's assets in favor of CapitalSource shall be deemed released, with such liens attaching and becoming automatically perfected in first position on the corpus (including all income on and increases thereto) of the LPC Post-Confirmation Trust (with relative priority versus the CSE Secured Claims against LPC being subject to the terms and conditions of the Intercreditor Agreement).  Holders of an allowed CapitalSource Secured Claim may also be entitled to a distribution from the LPC Litigation Trust on account of certain replacement liens or avoidance actions under the Final Cash Collateral Order.

### 4.3. *CLASS 2(B): CSE SECURED CLAIMS AGAINST LPC*.

(a) <u>Impairment and Voting</u>. Class 2(b) is impaired by the Plan.  Each holder of an Allowed CSE Secured Claim against LPC is entitled to vote to accept or reject the Plan.

(b) Distributions. Each holder of an Allowed CSE Secured Claim against LPC (or its designee) shall receive, in full satisfaction of such Claim, a beneficial first priority interest in the LPC Post-Confirmation Trust in an amount equal to the Allowed Amount of such claim, on or as soon as reasonably practicable after the entry of the Confirmation Order. Each holder of an Allowed CSE Secured Claim against LPC will receive distributions from the LPC Post-Confirmation Trust as soon as reasonably practicable after any sale is consummated. In no event shall the combination of distributions on account of Class 2(b) Claims under this Plan and Class 2(b) Claims under the LRGI Plan exceed the Allowed Amount of the Class 2(b) Claims under this Plan. Subject to the occurrence of the Effective Date, any and all Liens on LPC's assets in favor of CSE shall be deemed released, with such liens attaching and becoming automatically perfected in first position on the corpus (including all income on and increases thereto) of the LPC Post-Confirmation Trust (with relative priority versus the CapitalSource Secured Claims against LPC being subject to the terms and conditions of the Intercreditor Agreement). Holders of an allowed CapitalSource Secured Claim may also be entitled to a distribution from the LPC Litigation Trust on account of certain replacement liens or avoidance actions under the Final Cash Collateral Order.

### 4.4. *CLASS 3: SECURED TAX CLAIMS AGAINST LPC*.

(a) Impairment and Voting. Class 3 is impaired by the Plan. Each holder of an Allowed Secured Tax Claim against LPC is entitled to vote to accept or reject the Plan.

(b) Distributions. Each holder of a Class 3 Claim will receive, in full satisfaction of such Claim, a beneficial interest in the LPC Post-Confirmation Trust in an amount equal to the Allowed Amount of such claim on or as soon as reasonably practicable after entry of the Confirmation Order. Except to the extent that a holder of an Allowed Secured Tax Claim against LPC agrees to a less favorable treatment, and after the Allowed Class 2(a) and Class 2(b) Claims are paid in full, each holder shall receive, at the sole option of the LPC Post-Confirmation Trustee, distributions from the LPC Post-Confirmation Trust in the form of (i) Cash in an amount equal to such Allowed Secured Tax Claim, including any interest on such Allowed Secured Tax Claim required to be paid pursuant to section 506(b) of the Bankruptcy Code, as soon as practicable after the later of the Effective Date and the date such Claim becomes Allowed, (ii) equal semi-annual Cash payments in an aggregate amount equal to such Allowed Secured Tax Claim, together with interest at the applicable non-bankruptcy rate, commencing upon the later of the Effective Date and the date such Secured Tax Claim becomes an Allowed Secured Tax Claim, or as soon thereafter as is practicable and continuing over a period of eighteen (18) months (but in no event exceeding five (5) years from and after the Commencement Date), or (iii) such other treatment as shall be determined by the Bankruptcy Court to provide the holder of such Allowed Senior Tax Claim deferred Cash payments having a value, as of the Effective Date, equal to such Allowed Senior Tax Claim. Subject to the occurrence of the Effective Date, any and all Liens on LPC's assets in favor of a holder of a Secured Tax Claim against LPC shall be deemed released, with such liens attaching and becoming perfected in second position on the corpus (including all income on and increases thereto) of the LPC Post-Confirmation Trust.

### 4.5. *CLASS 4: OTHER SECURED CLAIMS AGAINST LPC*.

(a) Impairment and Voting. Class 4 is impaired by the Plan. Each holder of an Allowed Other Secured Claim against LPC is entitled to vote to accept or reject the Plan.

(b) <u>Distributions</u>. Each holder of a Class 4 Claim will receive, in full satisfaction of such claim, a beneficial interest in the LPC Post-Confirmation Trust in an amount equal to the Allowed Amount of such claim on or as soon as reasonably practicable after entry of the Confirmation Order.  Except to the extent that a holder of an Allowed Other Secured Claim against LPC agrees to a less favorable treatment, and after the Allowed Class 2(a), Class 2(b) and,Class 3 Claims are paid in full, each holder shall receive, at the sole option of the LPC Post-Confirmation Trustee, distributions from the LPC Post-Confirmation Trust in the form of (i) Cash in an amount equal to such Allowed Other Secured Claim, including any interest on such Allowed Other Secured Claim required to be paid pursuant to section 506(b) of the Bankruptcy Code, (ii) the proceeds of the sale or disposition of the Collateral securing such Allowed Other Secured Claim, including any interest on such Allowed Other Secured Claim required to be paid pursuant to section 506(b) of the Bankruptcy Code, to the extent of the value of the holder's security interest in such Collateral, or (iii) the Collateral securing such Allowed Other Secured Claim and any interest on such Allowed Other Secured Claim required to be paid pursuant to section 506(b) of the Bankruptcy Code.  Subject to the occurrence of the Effective Date, any and all Liens on LPC's assets in favor of a holder of an Other Secured Claim against LPC shall be deemed released, with such liens attaching and becoming automatically perfected in third position on the corpus (including all income on and increases thereto) of the LPC Post-Confirmation Trust.

4.6. ***CLASS 5: GENERAL UNSECURED CLAIMS AGAINST LPC, INCLUDING SENIOR SUBORDINATED NOTE CLAIMS AGAINST LPC***.

(a) <u>Impairment and Voting</u>. Class 5 is impaired by the Plan.  Each holder of an Allowed General Unsecured Claim or Senior Subordinated Note Claim is entitled to vote to accept or reject the Plan.

(b) <u>Distributions</u>.  Each holder of a Class 5 Claim will receive, in full satisfaction of such claim, both (i) a fourth priority beneficial interest in the LPC Post-Confirmation Trust in an amount equal to the Allowed Amount of such claim on or as soon as reasonably practicable after entry of the Confirmation Order, and (ii) a first priority beneficial interest in the LPC Litigation Trust in an amount equal to the Allowed Amount of such claim.  Except to the extent that a holder of an Allowed General Unsecured Claim against LPC agrees to a less favorable treatment, and on account of such beneficial interests, at the sole option of the LPC Post-Confirmation Trustee, each holder shall receive a combination of the following in the form of Cash in an amount equal to the Allowed amount of the Class 5 Claim: (a) only after the Allowed Class 2(a), 2(b), 3 and 4 Claims, and the Allowed DIP Loan Claim are paid in full, distributions from the LPC Post-Confirmation Trust; and (b) only after the Allowed Class 2(a) and 2(b) Claims and the Allowed DIP Loan Claim are paid in full, distributions from the LPC Litigation Trust.

4.7. ***CLASS 6: ASBESTOS-RELATED CLAIMS AGAINST LPC***.

(a) <u>Impairment and Voting</u>. Class 6 is impaired by the Plan.  Each holder of an Asbestos-Related Claim is entitled to vote to accept or reject the Plan.

(b) <u>Treatment</u>. Each Asbestos-Related Claim shall be deemed a Disputed Claim without the need for a separate formal objection to be filed thereto.

(c) <u>Distributions</u>. Following sixty (60) days after the appointment of

the LPC Post-Confirmation Trustee, each Asbestos-Related Claim shall be commenced to be adjudicated in the forum in which such Claim had been pending prior to the Commencement Date; provided, however that any claimant who has filed an Asbestos-Related Claim, but has not commenced a proceeding prior to the Commencement Date, shall promptly as possible after sixty (60) days from the appointment of the LPC Post-Confirmation Trustee commence a proceeding in a court of competent jurisdiction other than the Bankruptcy Court, subject to any and all defenses that any defendant may have thereto, including without limitation, statute of limitations, laches, and any other defense.

To the extent that the proceeds of the Asbestos Insurance Policies are sufficient to cover the recovery on any Asbestos-Related Claim as determined by a final and non-appealable order or judgment of a court of competent jurisdiction (the "Adjudication Amount"), the holders of such Asbestos-Related Claims shall be permanently and forever stayed, restrained, and enjoined from taking any action for the purpose of, directly or indirectly, collecting, recovering, or receiving payment of, on, or with respect to any Asbestos-Related Claim against the Debtor, the LPC Post-Confirmation Trust or the LPC Litigation Trust (other than against the Asbestos Insurance Policies).

To the extent the proceeds of the Asbestos Insurance Policies are not sufficient to cover the entire Adjudication Amount for any specific Asbestos-Related Claim, and such holder (after application of all of the insurance proceeds) has received less than what general unsecured creditors would have received under the Plan, shall have a claim against the LPC Post-Confirmation Trust and shall receive both (i) a fourth priority beneficial interest in the LPC Post-Confirmation Trust in an amount equal to the Allowed Amount of such claim on or as soon as reasonably practicable after entry of the Confirmation Order, and, less the amount received from proceeds of the Asbestos Insurance Policies; and (ii) a first priority beneficial interest in the LPC Litigation Trust in an amount equal to the Allowed Amount of such claim, less the amount received from the proceeds of the Asbestos Insurance Policies.   On account of such beneficial interests, at the sole option of the LPC Post-Confirmation Trustee, each holder shall receive, as promptly as possible after the determination of the Adjudication Amount of such Asbestos-Related Claim, a combination of the following in Cash, equal to the difference between such Adjudication Amount and the proceeds of the Asbestos Insurance Policies: (a) only after the Allowed Class 2(a), 2(b), 3, 4, and 5 Claims, and the Allowed DIP Loan Claim are paid in full, distributions from the LPC Post-Confirmation Trust; and (b) only after Allowed Class 2(a), 2(b), 3, and 4 Claims, the Allowed DIP Loan Claim, and Class 5 Claims are paid in full, distributions from the LPC Litigation Trust.

(d) **Nothing in this Plan or the Disclosure Statement is an admission of any liability by LPC or any other party, including the Post-Confirmation Trustee or the Plan Proponents, or an admission of insurance coverage by Liberty Mutual or Fireman's Fund. Further, the treatment provided to holders of Asbestos-Related Claims is not an admission of any liability by LPC or any other party, including the Post-Confirmation Trustee or the Plan Proponents, or an admission of insurance coverage by Liberty Mutual or Fireman's Fund.**

4.8. *CLASS 7: JUNIOR SUBORDINATED NOTE CLAIMS AGAINST LPC*.

(a) Impairment and Voting. Class 7 is impaired by the Plan.  Each

holder of an Allowed Junior Subordinated Note Claim is entitled to vote to accept or reject the Plan.

(b) <u>Distributions</u>. Each holder of a Class 7 Claim will receive, in full satisfaction of such claim, both (i) a fifth priority beneficial interest in the LPC Post-Confirmation Trust in an amount equal to the Allowed Amount of such claim on or as soon as reasonably practicable after entry of the Confirmation Order, and (ii) a second priority beneficial interest in the LPC Litigation Trust in an amount equal to the Allowed Amount of such claim.  On account of such beneficial interests, at the sole option of the LPC Post-Confirmation Trustee, each holder shall receive a combination of the following in the form of Cash in an amount equal to the Allowed amount of the Class 7 Claim: (a) only after the Allowed Class 2(a), 2(b), 3, and 4 Claims, the Allowed DIP Loan Claim, and the Allowed Class 5 and 6 Claims are paid in full, distributions from the LPC Post-Confirmation Trust; and (b) only after Allowed Class 2(a), 2(b), 3, and 4 Claims, the Allowed DIP Loan Claim, and Class 5 and 6 Claims are paid in full, distributions from the LPC Litigation Trust.

### 4.9. *CLASS 8: SERIES B PREFERRED STOCK INTERESTS AGAINST LPC*.

(a) <u>Impairment and Voting</u>. Class 8 is impaired by the Plan.  Each holder of a Series B Preferred Stock Interest is entitled to vote to accept or reject the Plan.

(b) <u>Distributions</u>. Each holder of a Class 8 Interest will receive, in full satisfaction of such interest, both (i) a sixth priority beneficial interest in the LPC Post-Confirmation Trust in an amount equal to the Allowed Amount of such interest on or as soon as reasonably practicable after entry of the Confirmation Order, and (ii) a third priority beneficial interest in the LPC Litigation Trust in an amount equal to the Allowed Amount of such interest.  On account of such beneficial interests, at the sole option of the LPC Post-Confirmation Trustee, (a) only after the Allowed Class 2(a), 2(b), 3, and 4 Claims, and the Allowed DIP Loan Claim, and Allowed Class 5, 6, and 7 Claims are paid in full, distributions from the LPC Post-Confirmation Trust; and (b) only after Allowed Class 2(a), 2(b), 3, and 4 Claims, the Allowed DIP Loan Claim, and Class 5, 6, and 7 Claims are paid in full, distributions from the LPC Litigation Trust.

### 4.10. *CLASS 9: LPC COMMON STOCK INTERESTS*.

(a) <u>Impairment and Voting</u>. Class 9 is impaired by the Plan.  Each holder of an LPC Common Stock Interest is entitled to vote to accept or reject the Plan.

(b) <u>Distributions</u>. Each holder of a Class 9 Interest will receive, in full satisfaction of such interest, both (i) a pro-rated seventh priority residual beneficial interest in the LPC Post-Confirmation Trust in an amount equal to the Allowed Amount of such interest on or as soon as reasonably practicable after entry of the Confirmation Order, and (ii) a pro-rated third priority residual beneficial interest in the LPC Litigation Trust in an amount equal to the Allowed Amount of such interest.  On account of such beneficial interests, at the sole option of the LPC Post-Confirmation Trustee, (a) only after the Allowed Class 2(a), 2(b), 3 and 4 Claims, the Allowed DIP Loan Claim, and Allowed Class 5, 6 and 7 Claims are paid in full, and Allowed Class 8 Interests are paid in full, distributions from the LPC Post-Confirmation Trust; and (b) only after the Allowed Class 2(a), 2(b), 3 and 4 Claims, the Allowed DIP Loan Claim, and Allowed Class 5, 6 and 7 Claim are paid in full, and the Class 8 Interests are paid in full, distributions from the LPC Litigation Trust.

3066744.3

### 4.11. *CLASS 10: OTHER EQUITY INTERESTS IN LPC*.

(a) <u>Impairment and Voting</u>. Class 10 is fully impaired by the Plan. Each holder of an Other Equity Interest in LPC is deemed to reject the Plan and is not entitled to vote to accept or reject the Plan.

(b) <u>Distributions</u>.  All Other Equity Interests in LPC are cancelled and will receive no distribution.

## ARTICLE V

## MEANS FOR IMPLEMENTATION

5.1. *INTERCOMPANY CLAIMS*.

Notwithstanding anything to the contrary herein, Intercompany Claims shall be adjusted, continued or discharged to the extent determined appropriate by the Post-Confirmation Trustee, in its sole discretion. Any such transaction may be effected on or subsequent to the Confirmation Date without any further action by the stockholders of the Debtor, the Debtor in Possession or the Debtor and Post-Confirmation Trustee.

5.2. *CANCELLATION AND SURRENDER OF EXISTING SECURITIES AND AGREEMENTS*.

Except (i) as otherwise expressly provided in the Plan, (ii) with respect to executory contracts or unexpired leases that have been assumed by the Debtor prior to the Confirmation Date, (iii) for purposes of evidencing a right to distributions under the Plan, or (iv) with respect to any Claim that is reinstated and rendered unimpaired under the Plan, on the Effective Date, any document, agreement, or debt instrument evidencing any Claim or Interest, including without limitation, the Prepetition Credit Agreement, the Prepetition Loan Agreement, the DIP Notes, the Indenture and all notes issued thereunder, shall be deemed automatically cancelled without further act or action under any applicable agreement, law, regulation, order or rule and the obligations of the Debtor thereunder shall be discharged (subject, however, to the simultaneous receipt by the holder of such Claim or Interest in the beneficial interest accorded to such person or entity in the LPC Post-Confirmation Trust and the LPC Litigation Trust pursuant to Section 4 above).

(b) Unless waived by the Post-Confirmation Trustee, each holder of the Senior Subordinated Notes shall surrender such note(s) to the Indenture Trustee, or in the event such note(s) are held in the name of, or by a nominee of, the Depository Trust Company, the Post-Confirmation Trustee shall follow the applicable procedures of the Depository Trust Company for book-entry transfer of the Senior Subordinated Notes to the Indenture Trustee. No distributions hereunder shall be made for or on behalf of any such holder unless and until such note is received by the Indenture Trustee or appropriate instructions from Depository Trust Company shall be received by the Indenture Trustee, or the loss, theft or destruction of such note is established to the reasonable satisfaction of the Indenture Trustee, which satisfaction may require such holder to (i) submit a lost instrument affidavit and an indemnity bond and (ii) hold the Debtor and the Indenture Trustee harmless in respect of such note and any distributions made in respect thereof. Upon compliance with this Section by a holder of any note, such holder shall, for all purposes under this Plan, be deemed to have surrendered such note. Any holder of Senior Subordinated Notes that fails to surrender such note or satisfactorily explain its non-availability to the applicable Indenture Trustee within one (1) year of the Effective Date shall be deemed to have no further Claim against the Debtor, or their property or against the Indenture Trustee in respect of such Claim and shall not participate in any distribution hereunder, and the distribution that would have otherwise been made to such holder shall be returned to the Post-Confirmation Trustee by the Indenture Trustee.

(c) Unless waived by the Post-Confirmation Trustee, any holder of the Junior

Subordinated Note shall surrender such note to the Post-Confirmation Trustee.  No distributions hereunder shall be made for or on behalf of any such holder unless and until such note is received by the Post-Confirmation Trustee, or the loss, theft or destruction of such note is established to the reasonable satisfaction of the Post-Confirmation Trustee, which satisfaction may require such holder to (i) submit a lost instrument affidavit and an indemnity bond and (ii) hold the Post-Confirmation Trustee harmless in respect of such note and any distributions made in respect thereof.  Upon compliance with this Section by a holder of any note, such holder shall, for all purposes under this Plan, be deemed to have surrendered such note. Any holder of the Junior Subordinated Note that fails to surrender such note or satisfactorily explain its non-availability to the Post-Confirmation Trustee within one (1) year of the Effective Date shall be deemed to have no further Claim against the Debtor, the Post-Confirmation Trustee, or their respective property in respect of such Claim and shall not participate in any distribution hereunder, and the distribution that would have otherwise been made to such holder shall be distributed to holders of other Classes of Interests or Claims as set forth hereunder.

(d) In the event proceeds from the applicable trust are not available to make any distribution to the holders of the Senior Subordinated Notes or the Junior Subordinated Notes, after the priorities of this Plan are fulfilled by the Post-Confirmation Trustee, the claims of all such holders shall be deemed fully discharged regardless of whether such Senior Subordinated Notes or Junior Subordinated Notes are surrendered or not on the Effective Date.

### 5.3. *LPC POST-CONFIRMATION TRUST AND LPC LITIGATION TRUST*

(a)  On the Confirmation Date, all assets of LPC (except as set forth in section 5.3(b) below), including without limitation any residual beneficial interest in the LRGI Post-Confirmation Trust, shall be deemed to be transferred from the Debtor to the LPC Post-Confirmation Trust, and the LPC Post-Confirmation Trustee shall continue ongoing operations of the Debtor's businesses while pursuing one or more sales of the assets, either on a going concern or a liquidation basis as circumstances may warrant and in consultation with the Sale Agent.  The LPC Post-Confirmation Trustee shall be vested with any and all authority to operate the businesses of LPC, including without limitation the hiring and/or firing of corporate officers, entry into contracts, termination of contracts, and the determination of compensation levels  (including "stay bonuses" to incent quick resolution of the Plan and sales hereunder), all without the need for further Court authority. Except as consented to by the LPC Post-Confirmation Trustee, the current management shall refrain from management, and in all cases shall not interfere with the LPC Post-Confirmation Trustee's operation of the business.  The terms and conditions of the LPC Post-Confirmation Trust shall be governed by that certain "LPC Post-Confirmation Trust Agreement," the form of which shall be included in the Plan Supplement.

(b)  On the Confirmation Date, all avoidance actions under chapter 5 of the Bankruptcy Code, the ability to object to any Claims or Interests, and litigation claims appearing on Exhibit B hereto shall be vested in the LPC Litigation Trust.  The LPC Post-Confirmation Trustee shall have the power to commence, prosecute, pursue, settle, dismiss or otherwise control all aspects of any claims.  The terms and conditions of the LPC Litigation Trust shall be governed by that certain "LPC Litigation Trust Agreement," the form of which shall be included in the Plan Supplement.

3066744.3

(c) The LPC Post-Confirmation Trustee shall be designated in the Plan Supplement. The LPC Post-Confirmation Trustee shall take reasonable steps to preserve net operating losses and certain tax attributes for the benefit of the LPC bankruptcy estate; and to the extent that potential net recovery on account the net operating losses and certain tax attributes appears reasonably likely to produce additional proceeds for distribution from the LPC estate, the Post-Confirmation Trustee shall pursue such liquidation in its absolute and sole discretion.

(d) The reasonable fees and expenses incurred by the Post-Confirmation Trustee shall be treated as an administrative priority claim with priority ahead of all other administrative priority claimants and shall be paid, in cash, on the Effective Date (and thereafter) from the proceeds of the LPC Liquidation Trust, in accordance with any cash collateral budgets approved by the Agents.

### 5.4. *SALE AGENT*

On the Confirmation Date, Gordian Group, LLC shall be appointed the sole and exclusive "Sale Agent" of the Post-Confirmation Trustee in order to commence and explore sale possibilities of the assets of the LRGI Post-Confirmation Trust and the LPC Post-Confirmation Trust either as a whole or in separate lots. The marketing process shall last up to one hundred (100) days from the Confirmation Date. To the extent the marketing process yields a Stalking Horse Bidder prior to the 100th day after the Confirmation Date, the marketing process may be shorter than 100 days in the applicable Post-Confirmation Trustee's discretion in consultation with the Plan Proponents and the Sale Agent. Such sales shall be conducted in accordance with Section 363 of the Bankruptcy Code by motion by the Post-Confirmation Trustee and in consultation with the Sale Agent and the Agents. The LPC Post-Confirmation Trustee, subject to approval of the Plan Proponents, may move the Bankruptcy Court or withdraw, replace, or substitute the Sale Agent should the situation warrant such action.

### 5.5. *SALE PROCESS*

Once the Sale Agent has obtained a party or parties interested in serving as the highest and best bidder for some or all of the assets (hereinafter the "Stalking Horse Bidder"), the Post-Confirmation Trustee shall file a motion with the Bankruptcy Court seeking a process by which to sell the business unit or assets to the highest and best bidder. The Prepetition Revolver Lenders and/or the Prepetition Term Loan Lenders may serve as the Stalking Horse Bidder on account of a credit bid of their Class 2(a) and 2(b) Claims, as allocated by the Bankruptcy Court with respect to the business unit or assets being sold. The form and substance of such sale procedures motion shall be in conformity with the terms of the Plan but shall otherwise be in the sole discretion of the Post-Confirmation Trustee. Once the Bankruptcy Court has approved a buyer for the assets or business unit, the Post-Confirmation Trustee shall proceed forthwith to consummate such sale. Upon consummation of any such sale, the Post-Confirmation Trustee shall make distribution of the proceeds of such sale in the manner contemplated by the Plan. The LPC Post-Confirmation Trustee, subject to approval of the Plan Proponents, may move the Bankruptcy Court to withdraw, replace, or substitute the Sale Agent should the situation warrant such action.

### 5.6. *COOPERATION FROM THE DEBTORS*

LPC and LRGI together with any present or former employees, managers, attorneys, consultants, directors, officers, independent contractors, financial advisors, or any affiliates of the foregoing, shall cooperate upon reasonable request of the applicable Post-Confirmation Trustee and/or the Sale Agent to carry out the provisions and purposes of the LPC Plan, with any disputes regarding same to be brought before the Bankruptcy Court by the Post-Confirmation Trustee through an expedited order to show cause or other appropriate relief.

3066744.3

## ARTICLE VI
## VOTING AND DISTRIBUTIONS

6.1. *VOTING OF CLAIMS*.

Each holder of an Allowed Claim in an impaired Class of Claims that is entitled to vote on the Plan pursuant to Article IV of the Plan shall be entitled to vote separately to accept or reject the Plan, as provided in the Disclosure Statement Order, or any other order or orders of the Bankruptcy Court.

6.2. *NONCONSENSUAL CONFIRMATION*.

If any impaired class of Claims entitled to vote does not accept the Plan by the requisite statutory majority provided in section 1126(c) of the Bankruptcy Code, the Plan Proponents reserve the right to undertake to have the Bankruptcy Court confirm the Plan under section 1129(b) of the Bankruptcy Code.  The Plan Proponents intend to proceed under section 1129(a) of the Bankruptcy Code, however if they cannot, the Plan Proponents will then proceed under section 1129(b) of the Bankruptcy Code.

6.3. *DISTRIBUTION RECORD DATE*.

On the Distribution Record Date the claims register shall be closed and any transfer of any Claim therein shall be prohibited.  The Disbursing Agent shall instead be authorized and entitled to recognize and deal for all purposes under the Plan with only those record holders stated on the claims register as of the close of business on the Distribution Record Date.

6.4. *DATE OF DISTRIBUTIONS*.

In the event that any payment or act under the Plan is required to be made or performed on a date that is not a Business Day, then the making of such payment or the performance of such act may be completed on the next succeeding Business Day, but shall be deemed to have been completed as of the required date.

6.5. *DISBURSING AGENT*.

All distributions under the Plan (other than with respect to the Allowed Senior Subordinated Note Claims) shall be made by the Post-Confirmation Trustee as the Disbursing Agent or such other Entity designated by the Post-Confirmation Trustee as a Disbursing Agent.  The Indenture Trustee, or such other entity designated by the Post-Confirmation Trustee, shall be the Disbursing Agent for the Senior Subordinated Notes.  The Disbursing Agent shall not be required to give any bond or surety or other security for the performance of its duties unless otherwise ordered by the Bankruptcy Court and, in the event that a Disbursing Agent is so otherwise ordered, all costs and expenses of procuring any such bond or surety shall be borne by the bankruptcy estate. To the extent the Indenture Trustee has incurred during this Bankruptcy Case or shall incur any costs or expenses (including legal fees or expenses), such costs or expenses shall be paid from any and all distributions made under the Plan on account of the Senior Subordinated Note Claims. The

Indenture Trustee is authorized to pay such fees and expenses first from the distributions it receives from the Post-Confirmation Trustee before making distributions to the holders of the Senior Subordinated Notes from proceeds paid to it by the Post-Confirmation Trustee or as otherwise may be permitted in accordance with the applicable Indenture.

### 6.6. *RIGHTS AND POWERS OF DISBURSING AGENT*.

The Disbursing Agent shall be empowered to (a) effect all actions and execute all agreements, instruments and other documents necessary to perform its duties under the Plan, (b) make all distributions contemplated hereby, and (c) exercise such other powers as may be vested in the Disbursing Agent by order of the Bankruptcy Court, pursuant to the Plan or as deemed by the Disbursing Agent to be necessary and proper to implement the provisions hereof.

### 6.7. *EXPENSES OF THE DISBURSING AGENT*.

Except as otherwise ordered by the Bankruptcy Court, any reasonable fees and expenses incurred by the Disbursing Agent on or after the Effective Date shall be paid in Cash by the Post-Confirmation Trustee in the ordinary course of business. The Disbursing Agent shall not be required to file any fee applications or request court approval of such fees and expenses, but shall provide invoices and other information reasonably calculated to give the Post-Confirmation Trustee and the Plan Proponents notice of such fees and expenses. The Post-Confirmation Trustee or the Plan Proponents may seek Court review of the reasonableness of such fees and expenses upon motion filed within 120 days of receipt of such invoices.

### 6.8. *DELIVERY OF DISTRIBUTIONS*.

(a) <u>General</u>. Subject to Bankruptcy Rule 9010, all distributions to a holder of an Allowed Claim shall be made at the address of the holder thereof as set forth on the Schedules filed with the Bankruptcy Court or on the books and records of the Debtor or its agents or in a letter of transmittal unless the Post-Confirmation Trustee has been notified in writing of a change of address, including, without limitation, by the filing of a proof of claim by such holder that contains an address for such holder different from the address reflected on such Schedules for such holder.

(b) <u>Distributions to Holders of Allowed Senior Subordinated Note Claims</u>. The Post-Confirmation Trustee shall deliver all distributions in respect of Allowed Senior Subordinated Note Claims to the Indenture Trustee or such other entity designated by the Post-Confirmation Trustee as the Disbursing Agent under the Senior Subordinated Notes. Upon delivery of the foregoing distributions to the Indenture Trustee or such designee, the Post-Confirmation Trustee shall be released of all liability with respect to the delivery of such distributions. The Indenture Trustee or such designee shall transmit the distributions to the holders of the Allowed Senior Subordinated Note Claims in accordance with the Indenture. The Post-Confirmation Trustee shall provide whatever reasonable assistance may be required by the Indenture Trustee or such designee with respect to such distributions.

(c) <u>Withholding and Reporting Requirements</u>. In connection with the Plan and all instruments issued in connection therewith and distributed thereon, any party issuing any instrument or making any distribution under the Plan, including any party described in Section 6.5

above, shall comply with all applicable withholding and reporting requirements imposed by any federal, state or local taxing authority, and all distributions under the Plan shall be subject to any such withholding or reporting requirements.  Notwithstanding the above, each holder of an Allowed Claim that is to receive a distribution under the Plan shall have the sole and exclusive responsibility for the satisfaction and payment of any tax obligations imposed by any governmental unit, including income, withholding and other tax obligations, on account of such distribution. Any party issuing any instrument or making any distribution under the Plan has the right, but not the obligation, to not make a distribution until such holder has made arrangements satisfactory to such issuing or disbursing party for payment of any such tax obligations.

### 6.9. *UNCLAIMED DISTRIBUTIONS*.

In the event that any distribution to any holder is returned as undeliverable, the Post-Confirmation Trustee shall use reasonable efforts to determine the current address of such holder, but no distribution to such holder shall be made unless and until the Post-Confirmation Trustee has determined the then-current address of such holder, at which time such distribution shall be made to such holder without interest from the original distribution date through the new distribution date; *provided* that such distributions shall be deemed unclaimed property under section 347(b) of the Bankruptcy Code at the expiration of one year from the Effective Date.  After such date, all unclaimed property or interest in property (including any stock) shall be distributed to holders of other Claims or Interests in accordance with this Plan, and the Claim of any other Entity to such property or interest in property shall be discharged and forever barred.

### 6.10. *MANNER OF PAYMENT*.

At the option of the Disbursing Agent, any Cash payment to be made hereunder may be made by a check or wire transfer or as otherwise required or provided in applicable agreements.

### 6.11. *MINIMUM CASH DISTRIBUTIONS*.

Notwithstanding anything set forth herein to the contrary, no payment of Cash less than $50 shall be made to any holder of an Allowed Claim unless a request therefore is made in writing to the Disbursing Agent.

### 6.12. *SETOFFS*.

The Post-Confirmation Trustee may, but shall not be required to, set off against any Claim (for purposes of determining the Allowed amount of such Claim on which distribution shall be made) any Claims of any nature whatsoever that the Debtor or the Post-Confirmation Trustee may have against the holder of such Claim, but neither the failure to do so nor the allowance of any Claim hereunder shall constitute a waiver or release by the Post-Confirmation Trustee of any such Claim the Debtor may have against the holder of such Claim; provided, however, that the Debtor and the Post-Confirmation Trustee shall not exercise setoff rights with respect to the respective Claims of the Prepetition Revolver Lenders, the Prepetition Term Loan Lenders and/or the Agents under the Prepetition Credit Agreement and the Prepetition Loan Agreement.

## ARTICLE VII

## PROCEDURES FOR DISPUTED CLAIMS

7.1. *OBJECTIONS*.

Objections to all Claims against the Debtor may be interposed and prosecuted only by the Post-Confirmation Trustee, who shall be entitled to object to any Claim through and after the Effective Date. Any objections to Claims shall be served and filed with the Bankruptcy Court on or before the later of (i) one hundred twenty (120) days after the Effective Date, as such time may be extended by order of the Bankruptcy Court and (ii) such later date as may be fixed by the Bankruptcy Court, whether fixed before or after the date specified in clause (i) above.

7.2. *NO PAYMENT PENDING ALLOWANCE*.

Notwithstanding any other provision in the Plan, if any portion of a Claim is disputed, then no payment or distribution provided hereunder shall be made on account of any portion of such Claim unless and until such Disputed Claim becomes an Allowed Claim.

7.3. *DISTRIBUTIONS AFTER ALLOWANCE*.

To the extent that a Disputed Claim becomes an Allowed Claim, the Disbursing Agent shall distribute to the holder of such Claim, the property distributable with respect to such Claim in accordance with Article IV of the Plan. Such distributions shall be made as soon as practicable after the later of (i) the date that the order or judgment of the Bankruptcy Court allowing such Disputed Claim (or portion thereof) becomes a Final Order, (ii) the date on which any objection to such Disputed Claim has been withdrawn, or (iii) the date on which such Disputed Claim has been settled, compromised or otherwise resolved. To the extent that all or a portion of a Disputed Claim is disallowed, the holder of such Claim shall not receive any distribution on account of the portion of such Claim that is disallowed and any property withheld, if any, pending the resolution of such Claim shall be held in the LPC Post-Confirmation Trust.

7.4. *RESOLUTION OF ADMINISTRATIVE EXPENSE CLAIMS AND OTHER CLAIMS*.

On and after the Effective Date, the Post-Confirmation Trustee shall have the authority to compromise, settle, otherwise resolve, or withdraw any objections to Administrative Expense Claims and any other Claims and to compromise, settle, or otherwise resolve any Disputed Claims without approval of the Bankruptcy Court, other than with respect to Administrative Expense Claims relating to compensation of professionals.

7.5. *ESTIMATION OF CLAIMS*.

Requests for estimation of all Claims against the Debtor may be interposed and prosecuted only by the Plan Proponents (prior to and including the Confirmation Date) or the Post-Confirmation Trustee (after the Confirmation Date), who may at any time request that the Bankruptcy Court estimate any Contingent Claim, Unliquidated Claim, or Disputed Claim pursuant to section 502(c) of the Bankruptcy Code regardless of whether either the Debtor, the Plan

Proponents or the Post-Confirmation Trustee previously objected to such Claim or whether the
Bankruptcy Court has ruled on any such objection, and the Bankruptcy Court will retain jurisdiction
to estimate any Claim at any time during litigation concerning any objection to any Claim, including,
without limitation, during the pendency of any appeal relating to any such objection.  In the event
that the Bankruptcy Court estimates any Contingent Claim, Unliquidated Claim, or Disputed Claim,
the amount so estimated shall constitute either the Allowed amount of such Claim or a maximum
limitation on such Claim, as determined by the Bankruptcy Court.  If the estimated amount
constitutes a maximum limitation on the amount of such Claim, the Plan Proponents or the Post-
Confirmation Trustee, as applicable, solely may pursue supplementary proceedings to object to the
allowance of such Claim.  All of the aforementioned objection, estimation and resolution
procedures are intended to be cumulative and not exclusive of one another.  Claims may be
estimated and subsequently compromised, settled, withdrawn, or resolved by any mechanism
approved by the Bankruptcy Court.

The Agents reserve the right to undertake the estimation of claims for voting
purposes, including rejection damages claims, with any such estimated claim participating in the
applicable class of unsecured creditors.

7.6. *INTEREST*.

To the extent that a Disputed Claim becomes an Allowed Claim after the Effective
Date, the holder of such Claim shall not be entitled to any interest thereon from the Effective Date
to the date such Claim becomes Allowed.

3066744.3

## ARTICLE VIII

## EXECUTORY CONTRACTS AND UNEXPIRED LEASES

Unless otherwise specified, each executory contract and unexpired lease shall include any and all modifications, amendments, supplements, restatements, or other agreements made directly or indirectly by any agreement, instrument, or other document that in any manner affects such executory contract or unexpired lease.

### 8.1. *ASSUMPTION OR REJECTION OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES*.

Pursuant to sections 365(a) and 1123(b)(2) of the Bankruptcy Code, all executory contracts and unexpired leases that exist between the Debtor and any person or entity shall be deemed rejected by the Debtor as of the Effective Date, except for any executory contract or unexpired lease (i) that has been assumed, assumed and assigned, or rejected pursuant to an order of the Bankruptcy Court entered on or before the Effective Date, including without limitation any such contracts or leases assumed and assigned in connection with any asset sales, or (ii) as to which a motion for approval of the assumption, assumption and assignment, or rejection has been filed and served prior to the Effective Date. The Post-Confirmation Trustee shall have the exclusive authority to determine whether any executory contracts or unexpired leases are to be assumed or rejected and to file and/or prosecute any motion relative thereto.

### 8.2. *APPROVAL OF ASSUMPTION OR REJECTION OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES*.

Entry of the Confirmation Order shall, subject to and upon the occurrence of the Effective Date (or, as to clause (i) hereof, earlier as provided in Section 8.1(i) above), constitute (i) the approval, pursuant to sections 365(a) and 1123(b)(2) of the Bankruptcy Code, of the rejection of the executory contracts and unexpired leases rejected pursuant to Section 8.1 of the Plan, and (ii) the extension of time, pursuant to section 365(d)(4) of the Bankruptcy Code, within which the Post-Confirmation Trustee may assume, assume and assign, or reject the executory contracts and unexpired leases specified in Section 8.1 of the Plan through the date of entry of an order approving the assumption, assumption and assignment, or rejection of such executory contracts and unexpired leases.

### 8.3. *CURE OF DEFAULTS*.

Except to the extent that different treatment has been agreed to by the non-debtor party or parties to any executory contract or unexpired lease, the Post-Confirmation Trustee shall, pursuant to the provisions of sections 1123(a)(5)(G) and 1123(b)(2) of the Bankruptcy Code and consistent with the requirements of section 365 of the Bankruptcy Code, at least 30 days prior to any hearing regarding the assumption or rejection of such agreement, file with the Bankruptcy Court and serve by first class mail on each non-debtor party to such executory contracts or unexpired leases, a notice (the "Assumption Notice"), which shall list the cure amount as to each executory contract or unexpired lease to be assumed. The parties to such executory contracts or unexpired leases to be assumed or assumed and assigned by the Post-Confirmation Trustee shall

have twenty (20) days from the date of service of the Assumption Notice to file and serve any objection to the cure amounts listed by the Post-Confirmation Trustee. If there are any objections filed, the Bankruptcy Court shall hold a hearing on a date to be set by the Bankruptcy Court. If no objection is filed within the twenty (20) day period, the cure amount identified by the Post-Confirmation Trustee shall be deemed the amount of the cure without further notice of hearing. The Post-Confirmation Trustee shall retain the right to reject any of the Debtor's executory contracts or unexpired leases that are subject to a dispute concerning amounts necessary to cure any defaults through the Effective Date.

### 8.4. *BAR DATE FOR FILING PROOFS OF CLAIM RELATING TO EXECUTORY CONTRACTS AND UNEXPIRED LEASES REJECTED PURSUANT TO THE PLAN*.

In the event that the rejection of an executory contract or unexpired lease by the Debtor pursuant to the Plan results in damages to the other party or parties to such contract or lease, a Claim for such damages, if not heretofore evidenced by a timely filed proof of claim, shall be forever barred and shall not be enforceable against the Debtor or the Post-Confirmation Trustee, or their properties or interests in property as agents, successors, or assigns, unless a proof of claim is filed with Epiq Bankruptcy Solutions, LLC and served upon the attorneys for the Post-Confirmation Trustee on or before the thirtieth (30th) day after the earlier of (i) the date of service of notice of the Effective Date, or (ii) entry of an order rejecting such executory contract or unexpired lease (solely with respect to the party directly affected by such rejection).

### 8.5. *INDEMNIFICATION OBLIGATIONS*.

The obligations of the Debtor to indemnify, defend, reimburse or limit the liability of directors, officers or employees who are or were directors, officers or employees of the Debtor on or before the Confirmation Date, against any claims or causes of action, as provided in the Debtor's certificates of incorporation, bylaws, other organizational documents or applicable law, shall not survive confirmation of the Plan and are discharged as of the Confirmation Date.

### 8.6. *INSURANCE POLICIES*.

Notwithstanding anything contained in the Plan to the contrary, unless specifically rejected by order of the Bankruptcy Court, all of the Debtor's Insurance Policies and any agreements, documents or instruments relating thereto, are treated as executory contracts under the Plan and will be assumed pursuant to the Plan, effective as of the Effective Date. The Post-Confirmation Trustee shall have the exclusive authority to move the Bankruptcy Court for rejection of any insurance policy in its sole discretion. Nothing contained in this Section 8.6 shall constitute or be deemed a waiver of any cause of action that the Debtor or Post-Confirmation Trustee may hold against any entity, including, without limitation, the insurer, under any of the Debtor's or Post-Confirmation Trustee's Insurance Policies.

To the extent the Insurance Policies are determined not to be executory contracts, they will remain in full force and effect in accordance with their terms and will be treated as unimpaired (as defined in section 1124 of the Bankruptcy Code), including without limitation for purposes of payment of  Claims for retrospective premiums, deductibles, and self-insurance

retentions.

Unless rejected, the Post-Confirmation Trustee will perform the insured's obligations under the Insurance Policies, whether they are treated as executory or non-executory. Except as by motion by the Post-Confirmation Trustee, the Plan shall not, and is not intended to, modify any of the rights or obligations of insurers or the Debtor under any of the Insurance Policies. Notwithstanding anything contained in the Plan or the Disclosure Statement to the contrary, to the extent that there is an inconsistency between the Insurance Policies and any provision of the Plan or Disclosure Statement, the terms of the Insurance Policies shall control. No provision of the Plan shall (i) expand or alter any insurance coverage under any of the Insurance Policies, or shall be deemed to create any insurance coverage that does not otherwise exist, if at all, under the terms of the Insurance Policies, (ii) create any direct right of action against insurers that did not otherwise exist, and/or (iii) be construed as an acknowledgment either that the Insurance Policies cover or otherwise apply to any Claims or that any Claims are eligible for payment under any of the Insurance Policies. Notwithstanding any provision of the Plan, including Article X and anything supervening or preemptory, the Plan and Confirmation of the Plan shall be without prejudice to any of insurers' or the Post-Confirmation Trustee's rights, claims and/or defenses in any subsequent litigation in any appropriate forum in which coverage is at issue, including any litigation in which insurers seek a declaration regarding the nature and/or extent of any insurance coverage under the Insurance Policies.

### 8.7. *COMPENSATION AND BENEFIT PROGRAMS*.

Notwithstanding anything contained in the Plan to the contrary, unless specifically rejected by order of the Bankruptcy Court on motion by the Post-Confirmation Trustee, all employment and severance policies and workers' compensation programs, and all compensation and benefit plans, policies and programs of the Debtor applicable to their present and former employees, officers and directors, including, without express or implied limitation, all savings plans, retirement plans, health care plans, disability plans, and life, accidental death, and dismemberment insurance plans, shall be deemed to be, and shall be treated as though they are, executory contracts that are deemed assumed under the Plan, and the Debtor's and the Post-Confirmation Trustee's obligations under such plans, policies, and programs shall be deemed assumed pursuant to section 365(a) of the Bankruptcy Code, shall survive confirmation of the Plan, shall remain unaffected thereby, and shall not be discharged in accordance with section 1141 of the Bankruptcy Code. Any default existing under any of such assumed plans, policies, or programs shall be cured promptly after it becomes known by the Post-Confirmation Trustee.

### 8.8. *RETIREE BENEFITS*.

Solely to the extent any ongoing obligations exist, on and after the Effective Date, pursuant to section 1129(a)(13) of the Bankruptcy Code, the Post-Confirmation Trustee shall, until rejection of any underlying agreement, continue to pay all retiree benefits of the Debtor (within the meaning of and subject to section 1114 of the Bankruptcy Code) for the duration of the period for which the Debtor had obligated itself to provide such benefits and subject to the right of the Post-Confirmation Trustee to modify or terminate such retiree benefits in accordance with the terms thereof.

3066744.3

## ARTICLE IX

**CORPORATE GOVERNANCE AND MANAGEMENT OF THE POST-CONFIRMATION DEBTOR**

On the Confirmation Date, the management, control, and operation of LPC's business units and/or assets shall become the sole and exclusive responsibility of the Post-Confirmation Trustee, which role shall include without limitation:

    (a)  Amendment of the Plan or any Plan Documents (subject to the Plan Proponents' ability to also amend the Plan or any Plan Documents);

    (b)  Negotiation and agreement for the use of the Agents' Cash Collateral pending the auction sales of the business units and/or assets of LPC on terms agreeable to Agents;

    (c)  Negotiation and entry into contracts, as well as the exercise of contractual rights held by LPC;

    (d)  Prosecute objections to Claims;

    (e)  Amend the charter dcuments to provide for the replacement of the board of directors by the Post-Confirmation Trustee and eliminate all shareholder rights other than those provided for in this Proposed Plan; or

    (f)  Any other tasks, responsibilities or authorities provided in this Plan or any Plan Documents.

3066744.3

## ARTICLE X

## EFFECT OF CONFIRMATION

10.1. *VESTING OF ASSETS*.

Upon the Confirmation Date, pursuant to section 1141(b) and (c) of the Bankruptcy Code, all property of the Debtor shall vest in the LPC Post-Confirmation Trust and the LPC Litigation Trust, as applicable, as provided in the Plan. From and after the Confirmation Date, the Post-Confirmation Trustee may operate LPC's businesses and may use, acquire, and dispose of property free of any restrictions of the Bankruptcy Code or the Bankruptcy Rules and in all respects as if there were no pending case under any chapter or provision of the Bankruptcy Code, except that any sales of the assets of the LPC Post-Confirmation Trust shall be done in accordance with section 363 of the Bankruptcy Code.

10.2. *DISCHARGE OF DEBTOR*.

Upon the Effective Date and in consideration of the distributions to be made under the Plan, except as otherwise expressly provided in the Plan, each holder (as well as any trustee or agent on behalf of any holder) of a Claim or Interest and any affiliate of such holder shall be deemed to have forever waived, released and discharged the Debtor, to the fullest extent permitted by section 1141 of the Bankruptcy Code, of and from any and all Claims, Interests, rights, and liabilities that arose prior to the Effective Date. Upon the Effective Date, all such persons shall be forever precluded and enjoined, pursuant to section 524 of the Bankruptcy Code, from prosecuting or asserting any such Claim against or Interest in the Debtor or the Post-Confirmation Trust.

10.3. *INJUNCTION OR STAY*.

Except as otherwise expressly provided in the Plan, all persons or entities who have held, hold or may hold Claims or Interests and all other parties in interest, along with their respective present or former employees, agents, officers, directors, principals and affiliates, are permanently enjoined, from and after the Effective Date, from (i) commencing or continuing in any manner any action or other proceeding of any kind with respect to any such Claim against or Interest in the Debtor, (ii) the enforcement, attachment, collection or recovery by any manner or means of any judgment, award, decree or order against the Debtor, (iii) creating, perfecting, or enforcing any encumbrance of any kind against the Debtor or against the property or interests in property of the Debtor, (iv) asserting any right of setoff, subrogation or recoupment of any kind against any obligation due from the Debtor or against the property or interests in property of the Debtor or the Post-Confirmation Trust, with respect to any such Claim or Interest, or (v) pursuing any Claim released pursuant to Article X of the Plan. Such injunction shall extend to any successors of the Debtor and their respective properties and interest in properties.

10.4. *TERM OF INJUNCTIONS OR STAYS*.

Unless otherwise provided, all injunctions or stays arising under or entered during the Chapter 11 Case under section 105 or 362 of the Bankruptcy Code, or otherwise, and in

existence on the Confirmation Date, shall remain in full force and effect until the later of the Effective Date and the date indicated in the order providing for such injunction or stay.

10.5. *INJUNCTION AGAINST INTERFERENCE WITH PLAN*.

Upon the entry of the Confirmation Order, all holders of Claims or Interests and other parties in interest, along with their respective present or former employees, agents, officers, directors, principals and affiliates shall be enjoined from taking any actions to interfere with the implementation or consummation of the Plan.

10.6. *EXCULPATION*.

**Notwithstanding anything herein to the contrary, as of the Effective Date, none of the Agents present or future, the Prepetition Revolver Lenders, and the Prepetition Term Loan Lenders, and their respective affiliates, directors, officers, employees, partners, members, agents, representatives, accountants, financial advisors, investment bankers, or attorneys (but solely in their capacities as such) shall have or incur any liability for any claim, cause of action or other assertion of liability for any act taken or omitted to be taken since the Commencement Date in connection with, or arising out of, the Chapter 11 Case, the formulation, dissemination, confirmation, consummation, or administration of this Plan, property to be distributed under this Plan, or any other act or omission in connection with the Chapter 11 Case, this Plan, the Disclosure Statement or any contract, instrument, document or other agreement related thereto; provided, however, that the foregoing shall not affect the liability of any person that would otherwise result from any such act or omission to the extent such act or omission is determined by a Final Order to have constituted willful misconduct, gross negligence, fraud, criminal conduct, intentional unauthorized misuse of confidential information that causes damages, or *ultra vires* act.**

10.7. *RELEASES*.

**Subject to Section 10.8 of the Plan, effective as of the Confirmation Date, but subject to the occurrence of the Effective Date, and in consideration of the services provided to the Debtor by (a) the Agents, (b) the Prepetition Revolver Lenders, and (c) the Prepetition Term Loan Lenders, (1) the Debtor, (2) the Debtor and Post-Confirmation Trustee, (3) each holder of a Claim or Interest that votes to accept the Plan that does not elect to "opt-out" the releases as provided herein, (4) each holder of a Claim or Interest that is deemed to accept the Plan, and (5) to the fullest extent permissible under applicable law, as such law may be extended or integrated after the Effective Date, each holder of a Claim or Interest that does not vote to accept the Plan and that does not elect to "opt-out" of the releases as provided herein, shall release, unconditionally and forever, each future, present or former affiliate, agent, financial advisor, attorney and representative (and their respective affiliates) of the Agents, the Prepetition Revolver Lenders, and the Prepetition Term Loan Lenders and each of their present and future respective members, officers, directors, agents, financial advisors, attorneys, employees, equity holders, parent corporations, subsidiaries, partners, affiliates and representatives from any and all claims or causes of action that exist as of the Effective Date and arise from or relate, in any manner, in whole or in part, to the operation of the business of the Debtor, the subject matter of,**

or the transaction or event giving rise to, the Claim or Interest of such holder, the business or contractual arrangements between the Debtor and such holder, any restructuring of such Claim or Interest prior to the Commencement Date, or any act, omission, occurrence, or event in any manner related to such subject matter, transaction or obligation, or arising out of the Chapter 11 Case, including, but not limited to, the pursuit of confirmation of the Plan, the consummation thereof, the administration thereof, or the property to be distributed thereunder; provided, that the foregoing shall not operate as a waiver of or release from any causes of action arising out of the willful misconduct, gross negligence, fraud, criminal conduct, intentional unauthorized misuse of confidential information that causes damages, or *ultra vires* acts of any such person or entity.

10.8. *LIMITATION ON RELEASES.*

Notwithstanding anything to the contrary in the Plan or in the Confirmation Order, the releases set forth in Section 10.7 of the Plan shall not effect a release of any claim against a non-Debtor by the United States Government or any of its agencies or any state and local authority whatsoever, including without limitation any claim arising under the Internal Revenue Code, the environmental laws or any criminal laws of the United States or any state and local authority. Nothing in Sections 10.7 or 10.8 of the Plan nor the Confirmation Order shall enjoin the United States or any state or local authority from bringing any claim, suit, action or other proceeding against a non-Debtor for any liability whatsoever, including, without limitation, any claim, suit or action arising under the Internal Revenue Code, the environmental laws or any criminal laws of the United States or any state or local authority.  Other than as set forth in Section 10.6 of the Plan, nothing in the Plan or the Confirmation Order shall exculpate any non-Debtor from any liability to the United States Government or any of its agencies or any state or local authority whatsoever, including any liabilities arising under the Internal Revenue Code, the environmental laws or any criminal laws of the United States or any state or local authority.

10.9. *AVOIDANCE ACTIONS.*

Other than any releases granted herein, by the Confirmation Order and by Final Order of the Bankruptcy Court, as applicable, from and after the Confirmation Date, the Post-Confirmation Trustee shall have the sole and exclusive right to prosecute any and all avoidance actions, equitable subordination actions or recovery actions under sections 105, 502(d), 510, 542 through 551, and 553 of the Bankruptcy Code that belong to the Debtor, Debtor in Possession, or the Post-Confirmation Trustee.

10.10. *RETENTION OF CAUSES OF ACTION/RESERVATION OF RIGHTS.*

(a) Except as provided in Section 10.7 hereof, nothing contained in the Plan or the Confirmation Order shall be deemed to be a waiver or relinquishment of any rights or causes of action that the Debtor or the Post-Confirmation Trustee may have or which the Post-Confirmation Trustee may in its sole discretion choose to assert on behalf of the estate under any provision of the Bankruptcy Code or any applicable nonbankruptcy law, including, without limitation, (i) any and all Claims against any Entity, to the extent such Entity asserts a crossclaim, a counterclaim, and/or a Claim for setoff that seeks affirmative relief against the Debtor or the Post-Confirmation Trustee, its officers, directors, or representatives and (ii) the turnover of any property of the Debtor's estate or

the Post-Confirmation Trust.

(b) Except as provided in Section 10.7 of the Plan, nothing contained in the Plan or the Confirmation Order shall be deemed to be a waiver or relinquishment of any claim, cause of action, right of setoff, or other legal or equitable defense that the Debtor had immediately prior to the Commencement Date, against or with respect to any Claim left unimpaired by the Plan.  The Post-Confirmation Trustee shall have, retain, reserve, and be entitled to exclusively assert all such claims, causes of action, rights of setoff, and other legal or equitable defenses that the Debtor had immediately prior to the Commencement Date as fully as if the Chapter 11 Case had not been commenced, and all of the Post-Confirmation Trustee's legal and equitable rights respecting any Claim that are left unimpaired by the Plan may be asserted by the Post-Confirmation Trustee after the Confirmation Date to the same extent as if the Chapter 11 Case had not been commenced.

### 10.11. *LIMITATIONS ON EXCULPATION AND RELEASES OF REPRESENTATIVES*.

Nothing in Sections 10.6 or 10.7 of the Plan shall (i) be construed to release or exculpate any entity from fraud, malpractice, criminal conduct, intentional unauthorized misuse of confidential information that causes damages, or *ultra vires* acts, or (ii) limit the liability of the professionals of the Debtor, the Debtor and Post-Confirmation Trustee, or the Creditors' Committee to their respective clients pursuant to DR 6-102 of the Code of Professional Responsibility.

3066744.3

## ARTICLE XI

### CONDITIONS PRECEDENT TO EFFECTIVE DATE

11.1. *CONDITIONS PRECEDENT TO EFFECTIVENESS*.

The Effective Date shall not occur and the Plan shall not become effective unless and until the following conditions are satisfied in full or waived in accordance with Section 11.2 of the Plan upon the occurrence of which the Post-Confirmation Trustee will provide notice of the Effective Date:

(a) The Confirmation Order, in form and substance acceptable to the Agents, shall have been entered and shall not be subject to any stay or injunction;

(b) All actions, documents, and agreements necessary to implement the Plan shall have been effected or executed;

(c) All conditions precedent to the effectiveness of the LPC Post-Confirmation Trust Agreement and the LPC Litigation Trust Agreement are either satisfied or waived by the Plan Proponents;

(d) In the Post-Confirmation Trustee's sole discretion, funds sufficient to pay Allowed Administrative Claims in full will have been generated from sales of the Debtor's business units and/or assets; and

(e) The marketing and sale process shall have generated one or more Stalking Horse Bidders for all or a portion of LPC's assets on or before the 100th day after the Confirmation Date, subject to extension by agreement between the Plan Proponents and the LPC Post-Confirmation Trustee And in consultation with the Sale Agent.

11.2. *WAIVER OF CONDITIONS*.

Except for the conditions set forth in Sections 11.1 (a), each of the conditions precedent in Section 11.1 hereof may be waived in whole or in part by the Agents, in their sole discretion. Any such waiver may be effected at any time, without notice or leave or order of the Bankruptcy Court and without any formal action.

11.3. *EFFECT OF FAILURE OF CONDITIONS TO EFFECTIVE DATE*.

In the event the conditions precedent specified in Section 11.1 hereof have not been satisfied or waived pursuant to Section 11.2 on or prior to the earlier of the time set forth in Section 11.1 (or such time as extended pursuant to Section 11.1(e)) or the 100th day after the Confirmation Order becomes a Final Order, then upon motion by either the Plan Proponents or the Post-Confirmation Trustee, no distributions under the Plan shall be made and the Post-Confirmation Trustee, in consultation with the Sale Agent and the Plan Proponents, shall take whatever steps in its discretion will maximize the value for the creditors of the bankruptcy estate, which may include dismissal of the Chapter 11 Case, liquidation of the Debtor's assets for distribution in accordance with the Bankruptcy Code, or some other appropriate action. Dismissal of the LPC Bankruptcy Case shall be subject to the consent of the Plan Proponents as long as the collective Claims of the Prepetition Revolver Lenders and the Prepetition Term Loan Lenders have not been satisfied in full.

3066744.3

**ARTICLE XII**

**RETENTION OF JURISDICTION**

On and after the Effective Date, the Bankruptcy Court shall have exclusive jurisdiction over all matters arising out of, arising under, and related to the Chapter 11 Case and the Plan pursuant to, and for the purpose of, sections 105(a) and 1142 of the Bankruptcy Code, including, without limitation:

(a) To hear and determine pending applications for the assumption or rejection of executory contracts or unexpired leases, the allowance of Claims resulting therefrom and any disputes with respect to executory contracts or unexpired leases relating to the facts and circumstances arising out of or relating to the Chapter 11 Case;

(b) To determine any motion, adversary proceeding, application, contested matter, and other litigated matter pending on or commenced after the Confirmation Date;

(c) To ensure that distributions to holders of Allowed Claims and Interests are accomplished as provided herein;

(d) To consider Claims or the allowance, classification, priority, compromise, estimation, or payment of any Claim, Administrative Expense Claim, or Interest;

(e) To enter, implement, or enforce such orders as may be appropriate in the event the Confirmation Order is stayed, reversed, revoked, modified, or vacated for any reason;

(f) To issue injunctions, enter and implement other orders, and take such other actions as may be necessary or appropriate to prevent interference by any person with the consummation, implementation, or enforcement of the Plan, the Confirmation Order, or any other order of the Bankruptcy Court;

(g) To hear and determine any application to modify the Plan in accordance with section 1127 of the Bankruptcy Code, to remedy any defect or omission or reconcile any inconsistency in the Plan, the Disclosure Statement, or any order of the Bankruptcy Court, including the Confirmation Order, in such a manner as may be necessary to carry out the purposes and effects thereof;

(h) To hear and determine all applications under sections 330, 331, and 503(b) of the Bankruptcy Code for awards of compensation for services rendered and reimbursement of expenses incurred prior to the Confirmation Date;

(i) To consider any amendments to or modifications of the Plan or to cure any defect or omission, or reconcile any inconsistency, in any order of the Bankruptcy Court, including, without limitation, the Confirmation Order;

(j) To hear and determine disputes arising in connection with the interpretation, implementation, or enforcement of the Plan, the Confirmation Order, any transactions or payments contemplated hereby or thereby, or any agreement, instrument, or other document governing or relating to any of the foregoing;

3066744.3

(k) To take any action and issue such orders as may be necessary to construe, enforce, implement, execute, and consummate the Plan or to maintain the integrity of the Plan following the Effective Date;

(l) To determine such other matters and for such other purposes as may be provided in the Confirmation Order;

(m) resignation, removal, or replacement of the LPC Post-Confirmation Trustee or the Sale Agent;

(n) To hear and determine matters concerning state, local, and federal taxes in accordance with sections 346, 505, and 1146 of the Bankruptcy Code (including the expedited determination of tax under section 505(b) of the Bankruptcy Code);

(o) To determine the scope of any discharge of the Debtor under the Plan or the Bankruptcy Code;

(p) To recover all assets of the Debtor and all property of the Debtor's estate, wherever located;

(q) To hear and determine any rights, claims or causes of action held by or accruing to the Debtor or the Post-Confirmation Trustee pursuant to the Bankruptcy Code, any other federal or state statute, or any legal theory;

(r) To enter a final decree closing the Chapter 11 Case;

(s) To determine any other matters that may arise in connection with or are related to the Plan, the Disclosure Statement, the Confirmation Order any of the Plan Documents, or any other contract, instrument, release or other agreement or document related to the Plan, the Disclosure Statement or the Plan Supplement; and

(t) To hear and determine any other matter not inconsistent with the Bankruptcy Code.

## ARTICLE XIII

## MISCELLANEOUS PROVISIONS

### 13.1. *EFFECTUATING DOCUMENTS AND FURTHER TRANSACTIONS.*

The Post-Confirmation Trustee is authorized to execute, deliver, file, or record such contracts, instruments, releases, indentures, and other agreements or documents and take such actions as may be necessary or appropriate to effectuate and further evidence the terms and conditions of the Plan and any securities issued pursuant to the Plan.

### 13.2. *WITHHOLDING AND REPORTING REQUIREMENTS*.

In connection with the Plan and all instruments issued in connection therewith and distributed thereunder, any party issuing any instrument or making any distribution under the Plan, shall comply with all applicable withholding and reporting requirements imposed by any federal, state, or local taxing authority, and all distributions under the Plan shall be subject to any such withholding or reporting requirements. Notwithstanding the above, each holder of an Allowed Claim that is to receive a distribution under the Plan shall have the sole and exclusive responsibility for the satisfaction and payment of any tax obligations imposed by any governmental unit, including income, withholding, and other tax obligations, on account of such distribution. Any party issuing any instrument or making any distribution under the Plan has the right, but not the obligation, to not make a distribution until such holder has made arrangements satisfactory to such issuing or disbursing party for payment of any such tax obligation.

### 13.3. *CORPORATE ACTION*.

On the Effective Date, all matters provided for under the Plan that would otherwise require approval of the stockholders or directors of the Debtor or the Debtor and Post-Confirmation Trustee shall be deemed to have occurred to permit transfer of the Debtor's asset to the LPC Post-Confirmation Trust, and shall be in effect from and after the Confirmation Date pursuant to the applicable general corporation law of the state in which the Debtor is incorporated, without any requirement for further action by the stockholders or directors of the Debtor or the Debtor and Post-Confirmation Trustee.

### 13.4. *EXEMPTION FROM TRANSFER TAXES*.

Pursuant to section 1146(a) of the Bankruptcy Code, the issuance, transfer, or exchange of notes or equity securities under the Plan, the creation of any mortgage, deed of trust, or other security interest, the making or assignment of any lease or sublease, or the making or delivery of any deed or other instrument of transfer under, in furtherance of, or in connection with the Plan, including, without limitation, the LPC Common Stock, any merger agreements or agreements of consolidation, deeds, bills of sale, or assignments executed in connection with any of the transactions contemplated under the Plan, shall not be subject to any stamp, real estate transfer, mortgage recording, or other similar tax. All sale transactions consummated by the Debtor, the Post-Confirmation Trustee and approved by the Bankruptcy Court on and after the

3066744.3

Commencement Date through and including the Effective Date, including, without limitation, the transfers effectuated under the Plan, the sale by the Debtor or the Post-Confirmation Trustee of owned property pursuant to section 363(b) of the Bankruptcy Code, and the assumption, assignment, and sale by the Debtor or Post-Confirmation Trustee of unexpired leases of non-residential real property pursuant to section 365(a) of the Bankruptcy Code, shall be deemed to have been made under, in furtherance of, or in connection with the Plan and, thus, shall not be subject to any stamp, real estate transfer, mortgage recording, or other similar tax.

### 13.5. *EXPEDITED TAX DETERMINATION*.

The Debtor and the Post-Confirmation Trustee, solely and exclusively through the Post-Confirmation Trustee, are authorized to request an expedited determination of taxes under section 505(b) of the Bankruptcy Code for any and all returns filed for, or on behalf of, the Debtor or the Post-Confirmation Trustee for any and all taxable periods (or portions thereof) ending after the Commencement Date through, and including, the Effective Date.

### 13.6. *PAYMENT OF STATUTORY FEES*.

On the Confirmation Date, and thereafter as may be required, the Post-Confirmation Trustee shall pay all fees payable pursuant to section 1930 of chapter 123 of title 28 of the United States Code.

### 13.7. *POST-CONFIRMATION DATE PROFESSIONAL FEES AND EXPENSES*.

From and after the Confirmation Date, the Post-Confirmation Trustee shall, in the ordinary course of business and without the necessity for any approval by the Bankruptcy Court, pay the reasonable fees and expenses of professional persons thereafter incurred by the Post-Confirmation Trustee in accordance with any Cash Collateral budgets approved by the Agents.

### 13.8. *DISSOLUTION OF STATUTORY COMMITTEES*.

On the Effective Date, the Creditors' Committee shall be dissolved and the members thereof shall be released and discharged of and from all further authority, duties, responsibilities and obligations relating to and arising from and in connection with the Chapter 11 Case, and the retention or employment of the Creditors' Committee's attorneys, financial advisors, accountants and other agents, if any, shall terminate other than for purposes of filing and prosecuting applications for final allowances of compensation for professional services rendered and reimbursement of expenses incurred in connection therewith.

### 13.9. *INDENTURE TRUSTEE AS CLAIM HOLDER*.

Consistent with Bankruptcy Rule 3003(c), the Post-Confirmation Trustee shall recognize proofs of claim timely filed by any Indenture Trustee in respect of any Claims under an Indenture. Accordingly, any Claim, proof of which is filed by the registered or beneficial holder of a Claim, may be disallowed as duplicative of the Claim of the Indenture Trustee, without any further action of the Bankruptcy Court.

13.10. *PLAN SUPPLEMENT*.

A draft form of the Plan Documents to be entered into as of the Effective Date and any other appropriate documents shall be contained in the Plan Supplement and filed with the Clerk of the Bankruptcy Court no later than ten (10) days prior to the last date by which holders of impaired Claims may vote to accept or reject the Plan. Upon its filing with the Bankruptcy Court, the Plan Supplement may be inspected in the office of the Clerk of the Bankruptcy Court during normal court hours. Documents to be included in the Plan Supplement will be posted at a website identified in the Disclosure Statement as they become available, but no later than five (5) days prior to the last date by which votes to accept or reject the Plan must be received.

13.11. *SUBSTANTIAL CONSUMMATION*.

On the Effective Date, the Plan shall be deemed to be substantially consummated under sections 1101 and 1127(b) of the Bankruptcy Code.

13.12. *AMENDMENTS OR MODIFICATIONS OF THE PLAN*.

Alterations, amendments, or modifications of or to the Plan may be proposed in writing by the Agents or the Post-Confirmation Trustee at any time prior to the Effective Date, provided that the Plan, as altered, amended, or modified, satisfies the conditions of sections 1122 and 1123 of the Bankruptcy Code, and the Agents shall have complied with section 1125 of the Bankruptcy Code. After the Confirmation Date, so long as such action does not materially and adversely affect the treatment of holders of Claims or Interests under the Plan, the Agents or the Post-Confirmation Trustee may institute proceedings in the Bankruptcy Court to remedy any defect or omission or reconcile any inconsistencies in the Plan or the Confirmation Order, with respect to such matters as may be necessary to carry out the purposes and effects of the Plan. A holder of a Claim or Interest that has accepted the Plan shall be deemed to have accepted the Plan, as altered, amended, or modified, if the proposed alteration, amendment, or modification does not materially and adversely change the treatment of the Claim or Interest of such holder.

13.13. *REVOCATION OR WITHDRAWAL OF THE PLAN*.

The Agents reserve the right to revoke or withdraw the Plan prior to the Effective Date. If the Agents take such action, the Plan shall be deemed null and void. In such event, nothing contained in the Plan shall constitute or be deemed a waiver or release of any Claims against or Interests in the Debtor, any claims or rights of the Debtor against any other person or to prejudice in any manner the rights of the Debtor or any other person in any further proceedings involving the Debtor.

13.14. *SEVERABILITY*.

If, prior to the entry of the Confirmation Order, any term or provision of the Plan is held by the Bankruptcy Court to be invalid, void, or unenforceable, the Bankruptcy Court, at the request of the Agents, shall have the power to alter and interpret such term or provision to make it valid or enforceable to the maximum extent practicable, consistent with the original purpose of the term or provision held to be invalid, void, or unenforceable, and such term or provision as altered

3066744.3

47

or interpreted shall then be applicable. Notwithstanding any such holding, alteration, or interpretation, the remainder of the terms and provisions of the Plan will remain in full force and effect and will in no way be affected, impaired, or invalidated by such holding, alteration, or interpretation.  The Confirmation Order shall constitute a judicial determination and shall provide that each term and provision of the Plan, as it may have been altered or interpreted in accordance with the foregoing, is valid and enforceable pursuant to its terms.

### 13.15. *GOVERNING LAW*.

Except to the extent that the Bankruptcy Code or other federal law is applicable, or to the extent an exhibit hereto or a schedule or document in the Plan Supplement provides otherwise, the rights, duties, and obligations arising under the Plan shall be governed by, and construed and enforced in accordance with, the laws of the State of New York, without giving effect to the principles of conflict of laws thereof.

### 13.16. *BINDING EFFECT*.

The Plan shall be binding upon and inure to the benefit of the Debtor, the holders of Claims and Interests, and their respective successors and assigns, including, without limitation, the Post-Confirmation Trustee.

### 13.17. *EXHIBITS/SCHEDULES*.

All exhibits and schedules to the Plan, including the Plan Supplement, are incorporated into and are a part of the Plan as if set forth in full herein.

### 13.18. *NOTICES*.

In order to be effective, all notices, requests, and demands to or upon the Agents must be in writing (including by facsimile transmission) and, unless otherwise expressly provided herein, shall be deemed to have been duly given or made when actually delivered or, in the case of notice by facsimile transmission, when received and telephonically confirmed, addressed as follows:

Waller, Lansden, Dortch & Davis LLP
Attn: John C. Tishler
511 Union Street
Suite 2700
Nashville, TN 37219

And

CapitalSource Finance, LLC
Attn: Lisa J. Lenderman
4445 Willard Avenue
12th Floor
Chevy Chase, MD 30815

3066744.3

13.19. *TIME*.

In computing any period of time prescribed or allowed by the Plan, unless otherwise set forth herein or determined by the Bankruptcy Court, the provisions of Bankruptcy Rule 9006 shall apply.

13.20. *SECTION HEADINGS*.

The section headings contained in the Plan are for reference purposes only and shall not affect in any way the meaning or interpretation of the Plan.

Dated: September 1, 2009

CAPITALSOURCE FINANCE LLC, As Agent

By:_____

Name:_____

Title:_____

and

CSE MORTGAGE LLC, As Agent

By:_____

Name:_____

Title:_____

3066744.3

EXHIBIT A

List of Plan Documents:

1.  LPC Post-Confirmation Trust Agreement

2.  LPC Litigation Trust Agreement

3.  LRGI Post-Confirmation Trust Agreement

4.  LRGI Litigation Trust Agreement

3066744.3

## EXHIBIT B

List of Retained Causes of Action:

1. [list to be provided]

2. [list to be provided]

3066744.3