SONNENSCHEIN NATH & ROSENTHAL LLP
Jo Christine Reed
1221 Avenue of the Americas
New York, New York 10020
Tel: (212) 768-6700
Fax: (212) 768-6800

    -and-

SONNENSCHEIN NATH & ROSENTHAL LLP
Robert B. Millner
8000 Sears Tower
233 South Wacker Drive
Chicago, Illinois 60606
Tel: (312) 876-8000
Fax: (312) 876-7934

*Counsel to Liberty Mutual Insurance Company*

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------------x
| | | |
|---|---|---|
| In re: | : | Chapter 11 |
| | : | |
| **LEXINGTON PRECISION CORP.**, et al., | : | Case No. 08-11153 (MG) |
| | : | |
| Debtors. | : | (Jointly Administered) |
| | : | |

-------------------------------------------------------------x

**LIBERTY MUTUAL INSURANCE COMPANY'S
OBJECTION TO PREPETITION SECURED LENDERS'
<u>MOTION TO APPROVE THE PROPOSED DISCLOSURE STATEMENT</u>**

Liberty Mutual Insurance Company ("Liberty Mutual") hereby objects to the Proposed Combined Disclosure Statement Regarding Prepetition Secured Lenders' Chapter 11 Plans for Lexington Rubber Group, Inc. and Lexington Precision Corporation (the "Secured Lenders' Disclosure Statement") and to the Prepetition Secured Lenders Motion to… Approve the Proposed Disclosure Statement, etc. (the "Motion") [Dkt. No. 718], to the extent it seeks approval of same [Dkt. No. 695].

Liberty Mutual submits this objection not to impede solicitation or confirmation of the Secured Lenders proposed plans or to favor their plans over that of the Official Committee of Unsecured Creditors, but rather to obtain clarification of the proposed treatment of Liberty Mutual's policies in the Prepetition Secured Lenders' Chapter 11 Plan (the "LPC Plan") as to Lexington Precision Corporation ("LPC") [Dkt. No. 696] -- which is the only Secured Lenders' Plan that affects Liberty Mutual.

This objection focuses on the following provisions:

(i)  the description of Asbestos Cases Against LPC and treatment thereof at pages 27-29 and 52-53 of the Secured Lenders' Disclosure Statement;

(ii)  the description of treatment of insurance policies set forth at pages 60-61 of the Secured Lenders' Disclosure Statement; and

(iii) the provisions of the Prepetition Secured Lenders' Chapter 11 Plan for Lexington Precision Corporation ("LPC Plan") that describes treatment of Class 6 Asbestos-Related Claims Against LPC (LPC Plan at 21-22) and treatment of Insurance Policies (LPC Plan at 35-36).

Liberty Mutual finds the proposed treatment of its policies to be confusing and unworkable and will suggest some "fixes" to resolve its issues.

## I. BACKGROUND

Liberty Mutual issued four liability policies to a prior entity, Blasius Industries Inc. ("Blasius"), which LPC believes provide coverage for Asbestos-Related Claims against it. (Secured Lenders' Disc. St. at 27.)[1] The policies have specified limits of coverage, and were issued for the periods 6/1/85-6/1/86; 6/1/86-6/1/87; 6/1/87-6/1/88; and 6/1/88-6/1/89. LPC is not a named insured on any of the policies except the 6/1/88-6/1/89 policy, to which it was added by endorsement on January 13, 1989.

---

[1] As used herein, the term Asbestos-Related Claims has the same meaning as set forth for that phrase in the LPC Plan.

- 2 -

Liberty Mutual has defended or participated in the defense of numerous Asbestos-Related Claims asserted against Blasius and/or LPC, subject to reservation of rights. To date, plaintiffs in those actions have been unable to establish the merits of Asbestos-Related Claims, and Liberty Mutual has not paid indemnity amounts. LPC itself has consistently denied all liability for Asbestos-Related Claims, and plaintiffs' cases have generally been disposed of by dismissal.[2]

Under the LPC Plan, a key aspect of the treatment of Asbestos-Related Claims is to pass such claims through to the tort system, where the claimants may seek to establish their claims and recover insurance proceeds, to the extent legally available. (LPC Plan § 4.7; Secured Lenders' Disc. St. at 52.) Liberty Mutual is not averse to this arrangement, provided that the Liberty Mutual is satisfied that LPC Plan does not impair or diminish Liberty Mutual's rights and LPC's corresponding obligations under the policies and applicable law.[3] At a minimum, in the context of the LPC Plan, which is a plan of liquidation, the LPC Post-Confirmation Trust, as

---

[2] See Secured Lenders Disclosure Statement at 27: "Generally, none of the complaints allege any specific facts as to which products LPC allegedly produced that contained asbestos or the time of the exposure.... To date, the Debtors have never been found liable on any asbestos-related Claims and approximately 1,000 cases were dismissed."

[3] The legal principles that bar impairment of an insurer's contract rights under its policies are well known and long established:

- "Congress has generally left the determination of property rights in the assets of a bankrupt's estate to state law." *Butner v. United States*, 440 U.S. 48, 54 (1979).

- Nothing in the Bankruptcy Code authorizes the rewriting of insurance policies for the benefit of a debtor's creditors -- to the contrary, a debtor must take its contracts as it finds them. *Zartman v. First Nat'l Bank of Waterloo*, 216 U.S. 134, 135 (1910) ("[T]he trustee takes the property of the bankrupt… as the debtor had it at the time of the petition . . . ."); *Moody v. Amoco Oil Co.*, 734 F.2d 1200, 1213 (7th Cir. 1984)("Thus, whatever rights a debtor has in property at the commencement of the case continue in bankruptcy -- no more, no less."); *see Integrated Solutions, Inc. v. Service Support Specialties, Inc.,* 124 F.3d 487, 492-93 (3d Cir. 1997); *Foothill Capital Corp v. Clare's Food Mkt., Inc.* (*In re Coupon Clearing Serv., Inc.)* 113 F.3d 1091, 1099 (9th Cir. 1997).

- Bankruptcy courts thus recognize that they lack the power to alter the rights and obligations of insurers under the policies. *Amatex Corp. v. Aetna Cas. & Sur. Co.* (*In re Amatex Corp.*), 97 B.R. 220, 221 (Bankr. E.D. Pa. 1989), aff'd, *Amatex Corp. v. Stonewall Ins. Co.*, 102 B.R. 411 (E.D. Pa. 1989).

a successor to LPC, must remain bound by all policy terms and conditions -- including the obligation to give Liberty Mutual notice of claims and to cooperate in their defense.[4]

## II. ARGUMENT

### A. The Disclosure Statement And Plan Are Unclear And Unworkable As To How Liberty Mutual's Policies Will Be Treated

As an initial matter, the fact that the LPC Plan is a liquidating plan raises a few mechanical issues. Section 4.7 of the LPC Plan requires each Asbestos-Related Claim "to be adjudicated in the forum in which such Claim had been pending prior to the Commencement Date" and if the claimant has not commenced an action pre-petition, he "shall promptly as possible after sixty (60) days from the appointment of the LPC Post-Confirmation Trustee commence a proceeding in a court of competent jurisdiction other than the Bankruptcy Court…." (LPC Plan at 22; see Secured Lenders Disc. Statement at 52.)

An obvious question is who should the defendant be in the tort action commenced or continued post-confirmation. Under *Green v. Welsh*, 956 F.2d 30, 35 (2d Cir. 1992), LPC could be sued nominally, at least to the extent not barred by state law of corporate dissolution. As to claims that have been properly filed in the Bankruptcy Court (which are the only claims that the LPC Plan treats), one would think that prosecution of the claim against LPC post-petition is appropriate. On the other hand, since the LPC Plan transfers the policies to the LPC Post-Confirmation Trust (LPC Plan §5.3(a)), the LPC Post Confirmation Trust also logically could be

---

[4] For example, if interrogatories were to be served by plaintiff on LPC, the Trust would have to provide any necessary verification for the answers. As for notice, Liberty Mutual suggests that the LPC Plan and/or confirmation order specify prepetition defense counsel, Swartz Campbell, be agent for Asbestos-Related Claims that are contemplated to be filed in a non-Bankruptcy Court under the LPC Plan. Liberty Mutual has checked with Swartz Campbell, and that firm is amenable to being so named.

- 4 -

sued by the claimants who seek to resolve Asbestos-Related Claims and access insurance.[5] The LPC Plan should be explicit on which entity is to be named as the defendant.

Another question is how do the affected claimants and Liberty Mutual know when the LPC Post-Confirmation Trustee has been appointed -- which event triggers the Claimant's obligation to file post-confirmation suit. (LPC Plan at 22.) The Plan should require the LPC Post-Confirmation Trust to give the claimants and Liberty Mutual notice of appointment.

Now to more substantive matters. By way of background, Liberty Mutual early on negotiated with Debtors' counsel plan language that would preserve Liberty Mutual's policy rights and LPC's corresponding policy obligations. That language was included in the Debtors' amended plan [Dkt. No. 305] and is set forth verbatim in Section 8.6 of the Official Committee of Unsecured Creditors' [Proposed] Amended Joint Chapter 11 Plan (the "Committee Plan") [Dkt. No. 724]. A copy of that language is attached hereto as Exhibit A.

Seemingly equivalent (but materially different) language as to insurance rights and obligations is set forth at Section 8.6 of the LPC Plan. That language, blacklined against the language in the Committee Plan (which Liberty Mutual accepts as adequate) is set forth below.[6]

---

[5] Liberty Mutual has not consented to the transfer of its policies to the LPC Post-Confirmation Trust or to any other entity. Liberty Mutual's policies prohibit assignment without its consent, and Liberty Mutual reserves its right to object to confirmation of the LPC Plan on that ground (or any other ground).

[6] Section 8.6 of the LPC Plan, blacklined against §8.6 of the Unsecured Creditors' Proposed Plan, is as follows:

> 8.6. *INSURANCE POLICIES.*
>
> Notwithstanding anything contained in the Plan to the contrary, unless specifically rejected by order of the Bankruptcy Court, all of the Debtors'**s** Insurance Policies and any agreements, documents or instruments relating thereto, are treated as executory contracts under the Plan and will be assumed pursuant to the Plan, effective as of the Effective Date. **The Post-Confirmation Trustee shall have the exclusive authority to move the Bankruptcy Court for rejection of any insurance policy in its sole discretion.** Nothing contained in this Section 8.7**8.6** shall constitute or be deemed a waiver of any cause of action that the Debtors**Debtor or Post-Confirmation Trustee** may hold against any entity, including, without limitation, the insurer, under any of the Debtors'**Debtor's or the Post-Confirmation Trustee's** Insurance Policies.
>
> To the extent the Insurance Policies are determined not to be executory contracts, they will remain in full force and effect in accordance with their terms and will be treated as unimpaired (as defined in section 1124 of the Bankruptcy Code), including without limitation for purposes of payment of Claims for retrospective premiums, deductibles, and self-insurance retentions.

- 5 -

1. <u>Common Elements of the Committee Plan and the Secured Lenders LPC Plan</u>

Both versions of §8.6 -- the Committee Plan version and Secured Lenders' LPC Plan version -- provide for treatment of insurance policies, including those issues by Liberty Mutual, as executory contracts, which will be assumed pursuant to the Plan. As a technical matter, it is at least possible that a court -- if called upon to rule on the "executoriness" of the Liberty Mutual policies -- would find them nonexecutory.[7] But, at least in the Committee Plan, the effect of such treatment (assumption of contract as executory) is to preserve Liberty Mutual's rights and LPC's corresponding obligations -- under the familiar <u>cum onere</u> principle. *E.g.*, *NLRB v. Bildisco & Bildisco*, 465 U.S. 513, 531 (1984) ("Should the debtor-in-possession elect to assume the executory contract, however, it assumes the contract <u>cum onere</u>."); *The Leslie Fay Cos., Inc. v. Corporate Property Assoc. 3 (In re Leslie Fay Cos., Inc.),* 166 B.R. 802, 808 (Bankr. S.D.N.Y. 1994) (same).

---

~~The Debtors and the Reorganized Debtors~~**Unless rejected, the Post-Confirmation Trustee** will perform the ~~insureds'~~**insured's** obligations under the Insurance Policies, whether they are treated as executory or non-executory. ~~The~~**Except as by motion by the Post-Confirmation Trustee, the** Plan shall not, and is not intended to, modify any of the rights or obligations of insurers or the Debtor~~s~~ under any of the Insurance Policies~~. Notwithstanding any other provision of the Plan, including Article X and anything supervening or preemptory, the Debtors and Reorganized Debtors shall be, and intend to remain, bound by all of the terms, conditions, limitations and/or exclusions contained in the Insurance Policies, which shall continue in full force and effect~~. Notwithstanding anything contained in the Plan or the Disclosure Statement to the contrary, to the extent that there is an inconsistency between the Insurance Policies and any provision of the Plan or Disclosure Statement, the terms of the Insurance Policies shall control. No provision of the Plan shall (i) expand or alter any insurance coverage under any of the Insurance Policies, or shall be deemed to create any insurance coverage that does not otherwise exist, if at all, under the terms of the Insurance Policies, (ii) create any direct right of action against insurers that did not otherwise exist, and/or (iii) be construed as an acknowledgment either that the Insurance Policies cover or otherwise apply to any Claims or that any Claims are eligible for payment under any of the Insurance Policies.

Notwithstanding any provision of the Plan, including Article X and anything supervening or preemptory, the Plan and Confirmation of the Plan shall be without prejudice to any of insurers' **or the Post-Confirmation Trustee's** rights, claims and/or defenses in any subsequent litigation in any appropriate forum in which coverage is at issue, including any litigation in which insurers seek a declaration regarding the nature and/or extent of any insurance coverage under the Insurance Policies.

[7]  *E.g. Olah v. Baird (In re Baird)*, 567 F.3d 1207 (10th Cir. 2009) ("[I]nsurance policies for which the policy periods have expired and the premium has been paid are not executory contracts, despite continuing obligations on the part of the insured") (quoting *In re Vanderveer Estates Holding, LLC*, 328 B.R. 18, 26 (Bankr. E.D.N.Y. 2005)).

Both plan versions provide that if the policies are determined to be non-executory, they will still be treated as unimpaired and, except as discussed below as to Secured Lenders' LPC Plan, the insured's obligations will be performed post-confirmation.

### 2. Unique Elements Of § 8.6 Of The Secured Lenders' LPC Plan That Make It Confusing And Unworkable

Unfortunately, the Secured Lenders, without discussion with Liberty Mutual, have made changes in the agreed § 8.6 language that make it confusing and unworkable. For starters, the Secured Lenders have added a sentence purporting to give the Post-Confirmation Trustee authority to "move the Bankruptcy Court for rejection of any insurance policy in its sole discretion." Note that this rejection power is not limited to policies whose term has not ended prior to confirmation -- were it so limited, Liberty Mutual would not object to it. Therefore, Trust's post-confirmation rejection power applies to the Liberty Mutual policies. The rejection power is not limited in time; the rejection could take place years post-petition.

Rejection, of course, means breach. "[T]he rejection of an executory contract or unexpired lease of the debtor constitutes a breach of such contract or lease…." 11 U.S.C. § 365(g). Presumably, if the Post-Confirmation Trustee were to reject the Liberty Mutual policies, the insured would then refuse to perform its obligations to cooperate in the defense of claims or to give notice or any other obligation. The result would be to generate coverage defenses and to put into question availability of coverage -- and to render illusory the LPC Plan's treatment of Class 6 Asbestos-Related Claims (LPC Plan § 4.7 at pp. 21-22), which treatment surely assumes that neither LPC nor the Post-Confirmation Trustee would take affirmative steps to undo coverage.

The rejection process which seems to be contemplated by LPC Plan § 8.6 also is incompatible with the Bankruptcy Code. Under § 365(a), it is the "trustee" -- and therefore the debtor-in-possession pursuant to Code § 1107(a) -- who "may assume or reject any executory

contract…." The Code gives no rejection authority to post-confirmation liquidation trustees, and exercise of such power post-confirmation pursuant to Code § 105 (except perhaps for a limited time to clean up loose ends, like rejection motions pending as of confirmation) makes no legal sense. Confirmation terminates the LPC bankruptcy estate, which is the source of the Court's in rem jurisdiction, and vests the estate's property in the LPC Post-Confirmation Trust and the LPC Litigation Trust. (LPC Plan § 10.1). See 11 U.S.C. § 1141(b). Accordingly, contrary to the LPC Plan, Code § 365(d)(2) sets confirmation as the outside time limit for assumption or rejection. *In re Dana Corp.*, 350 B.R. 144, 147 (Bankr. S.D. N.Y. 2006) ("[I]t is the clear policy of the Bankruptcy Code to provide the debtor with breathing space following the filing of a bankruptcy petition, in which to assume or reject an executory contract."; quoting *In re Adelphia Commons Corp.*, 291 B.R. 283, 292 (Bankr. SD.N.Y. 2003)); see also *COR Route 5 Co., LLC v. Penn Traffic Co.*, (*In re Penn Traffic Co.*), 524 F.3d 373, 378-79 (2d Cir. 2008) ("The plain language of the Code permits a chapter 11 trustee (and, by extension through §1107, a debtor-in-possession) to assume or reject the executory contract 'at any time before the confirmation of a plan.'"(citing 11 U.S.C.A. §365(d)(2))).[8]

The Secured Lenders' version of §8.6 also seems to contemplate that the Court can somehow rewrite policy terms and conditions "by motion of the Post-Confirmation Trustee." ("<u>Except as by Motion by the Post-Confirmation Trustee</u>, the Plan shall not, and is not intended to, modify any of the rights or obligations of insurers of the Debtors under any of the Insurance Policies.") (emphasis supplied.) No such power exists in the Bankruptcy Code. See <u>supra</u> text accompanying footnote 3.

---

[8] Section 365(d)(2) of the Bankruptcy Code provides in full:
"In a case under chapter 9, 11, 12, or 13 of this title, the trustee may assume or reject an executory contract or unexpired lease of residential real property or of personal property of the debtor at any time before the confirmation of a plan but with the court, on the request of any party to such contract or lease, may order the trustee to determine within a specified period of time whether to assume or reject such contract or lease."

- 8 -

Even more significantly, the Secured Lenders' LPC Plan completely removes the following sentence: "Notwithstanding any other provision of the Plan, including Article X and anything supervening or preemptory, the Debtors and Reorganized Debtors [Post-Confirmation Trust] shall be, and intend to remain, bound by all of the terms, conditions, limitations and/or exclusions contained in the Insurance Policies, which shall continue in full force and effect." Instead of being removed, this critical sentence should be modified to make clear that the Post-Confirmation Trust is bound by the policy terms.

The LPC Plan is a liquidating plan. Ultimately, there will be no debtor or reorganized debtor. The resolution of Asbestos-Related Claims will take some time; disputes may arise as to coverage; indeed, Section 8.6 expressly contemplates "litigation in which insurers seek a declaration regarding the nature and/or extent of any insurance coverage under the Insurance Policies." Without the omitted language, there will be a lack of clarity as to whether the transfer of policies to the Post-Confirmation Trust (which does not assume the insurance contracts or receive an assignment per Code § 365) was <u>cum onere</u>. The removed language would make clear that the Trust is bound by the policy terms and conditions and that Liberty Mutual could seek declaratory relief against the Trust as to coverage issues, including any failure of performance on the Trust's part.

**B.     Section 10.3 of the LPC Plan Should Be Clarified To Make Clear That
        <u>Liberty Mutual's Rights of Settlement Recoupment Are Preserved</u>**

Section 8.6 of the LPC Plan provides that the Plan is without prejudice to any of an insurers defenses in any subsequent litigation "[n]otwithstanding … Article X [of the Plan]." Thus, although Section 10.3, which is in Article X, does bar assertion of rights of setoff and recoupment, Liberty Mutual's setoff and recoupment defenses (like all its other defenses) should be preserved. To prevent any confusion on this point, Section 10.3 should be clarified by adding

a proviso that insurers' defenses of setoff, subrogation and recoupment are preserved under Section 8.6.[9]

Moreover, setoff and recoupment require mutuality of parties. Section 5.3 and 10.1 of the LPC Plan have the effect of transferring the Liberty Mutual policies to the LPC Post-Confirmation Trust. Plan language requiring the Post-Confirmation Trust to be bound by all terms of the policies -- discussed immediately above (at pages 8-9 hereof) -- also makes certain that Liberty Mutual's setoff and recoupment defenses are preserved in the event of a coverage dispute with the Trust. Such language effectively removes the shell post-confirmation Debtor as a party that needs be named or involved in any coverage dispute between Liberty Mutual and the Trust.

---

[9] The Committee Plan should also be so clarified.

### III. CONCLUSION

For the reasons stated, Liberty Mutual requests that the Court deny the Prepetition Secured Lenders Motion to the extent it seeks approval of the Secured Lenders' Disclosure Statement.

Dated: October 1, 2009
New York, New York

>Respectfully submitted,
>
>SONNENSCHEIN NATH & ROSENTHAL LLP
>
>*/s/ Jo Christine Reed*_____
>Jo Christine Reed
>1221 Avenue of the Americas
>New York, New York 10020
>Tel: (212) 768-6700
>Fax: (212) 768-6800
>        -and-
>
>Robert B. Millner
>8000 Sears Tower
>233 South Wacker Drive
>Chicago, Illinois 60606
>Tel: (312) 876-8000
>Fax: (312) 876-7934
>
>*Counsel to Liberty Mutual Insurance Company*

## EXHIBIT A

### Excerpt from Official Committee of Unsecured Creditors' [Proposed] Joint Chapter 11 Plan.

8.6. *INSURANCE POLICIES.*

Notwithstanding anything contained in the Plan to the contrary, unless specifically rejected by order of the Bankruptcy Court, all of the Debtors' Insurance Policies and any agreements, documents or instruments relating thereto, are treated as executory contracts under the Plan and will be assumed pursuant to the Plan, effective as of the Effective Date. Nothing contained in this Section 8.7 shall constitute or be deemed a waiver of any cause of action that the Debtors may hold against any entity, including, without limitation, the insurer, under any of the Debtors' Insurance Policies.

To the extent the Insurance Policies are determined not to be executory contracts, they will remain in full force and effect in accordance with their terms and will be treated as unimpaired (as defined in section 1124 of the Bankruptcy Code), including without limitation for purposes of payment of Claims for retrospective premiums, deductibles, and self-insurance retentions.

The Debtors and the Reorganized Debtors will perform the insureds' obligations under the Insurance Policies, whether they are treated as executory or non-executory. The Plan shall not, and is not intended to, modify any of the rights or obligations of insurers or the Debtors under any of the Insurance Policies. Notwithstanding any other provision of the Plan, including Article X and anything supervening or preemptory, the Debtors and Reorganized Debtors shall be, and intend to remain, bound by all of the terms, conditions, limitations and/or exclusions contained in the Insurance Policies, which shall continue in full force and effect. Notwithstanding anything contained in the Plan or the Disclosure Statement to the contrary, to the extent that there is an inconsistency between the Insurance Policies and any provision of the Plan or Disclosure Statement, the terms of the Insurance Policies shall control. No provision of the Plan shall (i) expand or alter any insurance coverage under any of the Insurance Policies, or shall be deemed to create any insurance coverage that does not otherwise exist, if at all, under the terms of the Insurance Policies, (ii) create any direct right of action against insurers that did not otherwise exist, and/or (iii) be construed as an acknowledgment either that the Insurance Policies cover or otherwise apply to any Claims or that any Claims are eligible for payment under any of the Insurance Policies.

Notwithstanding any provision of the Plan, including Article X and anything supervening or preemptory, the Plan and Confirmation of the Plan shall be without prejudice to any of insurers' rights, claims and/or defenses in any subsequent litigation in any appropriate forum in which coverage is at issue, including any litigation in which insurers seek a declaration regarding the nature and/or extent of any insurance coverage under the Insurance Policies.