**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
------------------------------------------------------------x
**In re:**                                              :    Chapter 11
                                                        :
                                                        :    Case No. 08-11153 (MG)
    **LEXINGTON PRECISION CORP., et al.,**:    Case No. 08-11156 (MG)
                                                        :    (Jointly Administered)
                                  **Debtors.**    :
                                                        :
------------------------------------------------------------x

**AMENDED ORDER RE RECUSAL**

These two jointly-administered chapter 11 cases were filed on April 1, 2008 and were assigned to me through the normal random selection method. The debtors' principal businesses involve the manufacture and sale of automotive parts. At the time of the hearing of the First Day Motions on April 2, 2008, the law firm of O'Melveny & Myers LLP appeared in court for the proposed DIP Lenders. At the start of the hearing on the First Day Motions, I disclosed on the record that I am a retired partner of O'Melveny & Myers LLP and that I receive retirement income from the firm. *See* ECF 52, Transcript of April 2, 2008 Hearing before Judge Martin Glenn, at 3-9. As a result, I am unable to address any disputes regarding the DIP loans and related issues in the cash collateral order. During the April 2, 2009 hearing, I asked whether anyone representing a party-in-interest objected to my any handling matters other than the DIP and cash collateral motions. No one objected. *See id.* Because it appeared that the DIP and cash collateral issues were uncontested, and did not present significant issues in the case, I decided to keep the case rather than recusing myself. My colleague, Judge J. Arthur Gonzalez, then heard and granted those uncontested motions after I heard the other First Day Motions. *See* ECF # 51, Transcript of April 2, 2008 Hearing before Judge Arthur J.

Gonzalez. Judge Gonzalez heard the Dip and cash collateral motions on both an interim and final basis. Later in the case, when a motion to was made to extend the maturity of the DIP loan, Judge Gonzalez heard and decided those matters as well.

After being granted several extensions, the exclusive period for the debtors to propose a reorganization plan expired. While the debtors filed several draft disclosure statements and reorganization plans, those disclosure statements and plans never came on for hearing before the Court. The biggest impediment to going forward with those plans has been the debtors' inability to secure exit financing or new investors, not surprising in light of the problems in the credit markets generally and in the automotive industry in particular.

On September 1, 2009, the debtors' secured prepetition term lenders, for whom CapitalSource Finance LLC is the agent, filed a combined disclosure statement and two separate chapter 11 plans for the two debtor entities. (Hereinafter, the "CapitalSource plan") (*See* ECF ## 695, 696, 697, 705). On September 11, 2009, the Official Committee of Unsecured Creditors filed a proposed disclosure statement and combined chapter 11 plan. (Hereinafter, the "Committee plan") (*See* ECF ## 708, 709, 710, 724, 726, 727, 728, 729, 730). Objections to both disclosure statements and plans were filed by the debtors (represented by Weil, Gotshal & Manges LLP) (*see ECF #* 735) and by the DIP Lenders (represented by O'Melveny & Myers LLP) (*see ECF #* 733). The major but not the exclusive grounds for both objections is the CapitalSource plan proposes to subordinate the repayment of the DIP Lenders' loans to future events and the payment of other claims such that the DIP Lenders would not be repaid in full in cash upon the effective date of the proposed plan. CapitalSource argues that by virtue of the DIP order,

2

the DIP Lenders consented to such treatment. The Committee's disclosure statement and plan provide that the DIP Lenders would be paid in full in cash at the effective date of the plan unless the Court orders otherwise. The Committee leaves open the possibility that pursuant to the DIP order, the prepetition secured lenders can argue that the DIP Lenders consented in effect to subordination of their claim to payment of at least a portion of prepetition secured lenders' claim or other administrative claims. While the objections to both disclosure statements and plans raise other issues, the treatment of the DIP Lenders and the interpretation of the DIP order are central to the future progress of this case. Because the DIP Lenders are represented by O'Melveny & Myers LLP, I cannot hear and decide those objections, whether raised now in the context of the disclosure statement hearing or at a confirmation hearing if the issues can or should be deferred until the confirmation hearing.

On October 2, 2009, I held a telephone hearing with counsel for the debtors, CapitalSource and the Committee. During the hearing I explored whether it is possible or feasible for me to hear and decide all issues ~~relating to~~ other than the DIP Lenders' objections, or to **hear** the debtors' objections that do not require an interpretation of the DIP order, with another judge addressing those remaining issues. I also asked all counsel whether they objected to my proceeding with the disclosure statement hearing in such a fashion. The debtors' counsel objected to me going forward to hear any of the issues regarding the disclosure statements.

While it might be theoretically possible for me to proceed to hear and decide most of the objections to the disclosure statements, in light of the CapitalSource plan and the issues it raises regarding the proposed treatment of the DIP Lenders, in particular, it is

3

unlikely that I could continue to preside over these jointly administered cases without running afoul of applicable conflicts rules.  Therefore, I have concluded that the best course now is for me to recuse myself from these cases.

Therefore, I hereby recuse myself from these cases and request the Clerk of the Court to reassign the cases in the usual manner.

**IT IS SO ORDERED.**

DATED:      October 5, 2009
            New York, New York

                              **/s/Martin Glenn**
                              MARTIN GLENN
                              United States Bankruptcy Judge