**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
----------------------------------------------------------------x
In re:                                              :        **Chapter 11**
                                                    :
**LEXINGTON PRECISION CORP., et al.,**               :        **Case No. 08-11153 (BRL)**
                                                    :
                                                    :
    **Debtors.**                                     :
----------------------------------------------------------------x

## [PROPOSED] JOINT CHAPTER 11 PLAN OF
## OFFICIAL COMMITTEE OF UNSECURED CREDITORS,
## CAPITALSOURCE FINANCE LLC AND CSE MORTGAGE LLC

---

**THIS IS NOT A SOLICITATION OF ACCEPTANCE OR REJECTION OF THE PROPOSED JOINT CHAPTER 11 PLAN.  ACCEPTANCES OR REJECTIONS MAY NOT BE SOLICITED UNTIL A DISCLOSURE STATEMENT HAS BEEN APPROVED BY THE BANKRUPTCY COURT.**

**THE PLAN PROPONENTS RESERVE THE RIGHT TO AMEND OR SUPPLEMENT THIS PROPOSED JOINT CHAPTER 11 PLAN.**

**THIS PROPOSED JOINT CHAPTER 11 PLAN SHALL NOT CONSTITUTE, OR BE CONSTRUED AS, AN ADMISSION OF ANY FACT OR LIABILITY, STIPULATION, OR WAIVER, INCLUDING AS TO VALUATION OF THE DEBTORS; BUT, RATHER, SHALL BE DEEMED AS A STATEMENT MADE IN AND FOR SETTLEMENT NEGOTIATIONS.  THIS PROPOSED JOINT CHAPTER 11 PLAN SHALL NOT BE ADMISSIBLE IN ANY LEGAL PROCEEDING.**

---

ANDREWS KURTH LLP
450 Lexington Avenue, 15th Floor
New York, New York 10017
Telephone: (212) 850-2800
Facsimile: (212) 850-2929

Counsel to the Official Committee
of Unsecured Creditors

WALLER LANSDEN DORTCH & DAVIS
511 Union Street, Suite 2700
Nashville, Tennessee 37219
Telephone: (615) 244-6380
Facsimile: (615) 244-6804

Counsel to CapitalSource Finance LLC
and CSE Mortgage LLC

Dated:  December 16, 2009

# TABLE OF CONTENTS

**Page**

ARTICLE I    DEFINITIONS AND INTERPRETATION ....................................................1

    A.    Definitions .......................................................................................................1

        1.1.    Administrative Expense Claim ..........................................................1

        1.2.    Agents ................................................................................................1

        1.3.    Allowed ..............................................................................................1

        1.4.    Amended and Restated By-Laws........................................................2

        1.5    Amended and Restated Charter ..........................................................2

        1.6    Asbestos Insurance Policies ...............................................................2

        1.7.    Asbestos-Related Claim .....................................................................2

        1.8.    Bankruptcy Code ...............................................................................2

        1.9.    Bankruptcy Court ...............................................................................2

        1.10.    Bankruptcy Rules ...............................................................................2

        1.11.    Business Day ......................................................................................2

        1.12.    CapitalSource .....................................................................................2

        1.13.    CapitalSource Secured Claim ............................................................2

        1.14.    Cash ...................................................................................................3

        1.15.    Chapter 11 Cases ...............................................................................3

        1.16.    Charging Lien .....................................................................................3

        1.17.    Claim...................................................................................................3

        1.18.    Class ...................................................................................................3

        1.19.    Collateral ............................................................................................3

        1.20.    Commencement Date ..........................................................................3

        1.21.    Confirmation Date ..............................................................................3

        1.22.    Confirmation Hearing .........................................................................3

        1.23.    Confirmation Order .............................................................................3

        1.24.    Contingent Claim ...............................................................................3

        1.25.    Convenience Claim .............................................................................3

        1.26.    Committee ...........................................................................................3

        1.27.    CSE Mortgage ....................................................................................4

        1.28.    CSE Secured Claim ............................................................................4

        1.29.    Debtors ...............................................................................................4

NYC:203104.4

# TABLE OF CONTENTS
## (continued)

Page

| | | |
|---|---|---|
| 1.30. | Debtors in Possession | 4 |
| 1.31. | DIP Lenders | 4 |
| 1.32. | DIP Loan Claims | 4 |
| 1.33. | DIP Note | 4 |
| 1.34. | Disallowed Claim | 4 |
| 1.35. | Disbursing Agent | 4 |
| 1.36. | Disclosure Statement | 4 |
| 1.37. | Disclosure Statement Order | 4 |
| 1.38. | Disputed Claim | 4 |
| 1.39. | Distribution Record Date | 4 |
| 1.40. | Effective Date | 5 |
| 1.41. | Entity | 5 |
| 1.42. | Existing Intercreditor Agreement | 5 |
| 1.43. | Exit Financing Agreement | 5 |
| 1.44. | Exit Financing Fee Notes | 5 |
| 1.45. | Exit Financing Notes | 5 |
| 1.46. | Exit Financing Parties | 5 |
| 1.47. | Face Amount | 5 |
| 1.48. | Final Cash Collateral Order | 5 |
| 1.49. | Final Order | 5 |
| 1.50. | General Unsecured Claim | 5 |
| 1.51. | Indenture | 6 |
| 1.52. | Indenture Trustee | 6 |
| 1.53. | Indenture Trustee Fee Claim | 6 |
| 1.54. | Insurance Policies | 6 |
| 1.55. | Intercompany Claim | 6 |
| 1.56. | Intercreditor Agreement | 6 |
| 1.57. | Interest | 6 |
| 1.58. | Junior Subordinated Note | 6 |
| 1.59. | Junior Subordinated Note Claim | 6 |
| 1.60. | LPC | 6 |

ii

# TABLE OF CONTENTS
## (continued)

Page

1.61.    LPC Common Stock ......................................................................6

1.62.    LPC Common Stock Interests.........................................................6

1.63.    LPC Warrant ...............................................................................6

1.64.    LRGI .........................................................................................6

1.65.    Lien ..........................................................................................6

1.66.    New LPC Common Stock..............................................................6

1.67.    New LPC Warrant .......................................................................6

1.68.    New Priority Working Capital Facility ...........................................6

1.69.    New Priority Working Capital Facility Lenders................................6

1.70.    New Secured CapitalSource Credit Agreement.................................6

1.71.    New Secured CapitalSource Debt...................................................7

1.72.    New Secured CSE Debt ................................................................7

1.73.    New Secured CSE Loan Agreement................................................7

1.74.    New Unsecured LPC Note.............................................................7

1.75.    New Unsecured LRGI Note ...........................................................7

1.76.    Other Equity Interest ...................................................................7

1.77.    Other Priority Claim ...................................................................7

1.78.    Other Secured Claim ...................................................................7

1.79.    Plan Documents ..........................................................................7

1.80.    Plan ..........................................................................................7

1.81.    Plan Proponents ..........................................................................7

1.82.    Plan Supplement .........................................................................7

1.83.    Prepetition Credit Agreement .......................................................7

1.84.    Prepetition Loan Agreement .........................................................8

1.85.    Prepetition Revolver Lenders ........................................................8

1.86.    Prepetition Term Loan Lenders .....................................................8

1.87.    Priority Tax Claim .......................................................................8

1.88.    Pro Rata ....................................................................................8

1.89.    Protected Person .........................................................................8

1.90.    Reorganized Debtors ....................................................................8

1.91.    Reorganized LPC .........................................................................8

NYC:203104.4

**TABLE OF CONTENTS**
**(continued)**

1.92.    Reorganized LRGI ..................................................................................8

1.93.    Schedules ...............................................................................................8

1.94.    Secured Claim ........................................................................................8

1.95.    Secured Tax Claim .................................................................................8

1.96.    Senior Subordinated Notes ....................................................................8

1.97.    Senior Subordinated Note Claim ...........................................................9

1.98.    Series B Preferred Stock Interest ..........................................................9

1.99.    Stockholders' Agreement .......................................................................9

1.100.   Unliquidated Claim ................................................................................9

1.101.   Unsecured Claim ....................................................................................9

B.      Interpretation; Application of Definitions and Rules of Construction...............9

ARTICLE II    ADMINISTRATIVE EXPENSE CLAIMS AND PRIORITY TAX CLAIMS ...............9

2.1.    Administrative Expense Claims..............................................................9

2.2.    Professional Compensation and Reimbursement Claims .......................9

2.3.    Indenture Trustee Fee Claims ..............................................................10

2.4.    DIP Loan Claims ..................................................................................10

2.5.    Priority Tax Claims...............................................................................10

ARTICLE III   CLASSIFICATION OF CLAIMS AND INTERESTS ..................................11

ARTICLE IV   TREATMENT OF CLAIMS AND INTERESTS .........................................11

A.      LPC Claims and Interests .....................................................................11

4.1.    Class 1:  Other Priority Claims against LPC ........................................11

4.2.    Class 2(a):  CapitalSource Secured Claims against LPC .....................12

4.3.    Class 2(b):  CSE Secured Claims against LPC .....................................12

4.4.    Class 3:  Secured Tax Claims against LPC...........................................12

4.5.    Class 4: Other Secured Claims against LPC .........................................12

4.6.    Class 5:  Senior Subordinated Note Claims..........................................13

4.7.    Class 6:  Junior Subordinated Note Claims ..........................................13

4.8.    Class 7:  General Unsecured Claims against LPC .................................13

4.9.    Class 8: Convenience Claims against LPC............................................14

4.10.   Class 9:  Asbestos-Related Claims .......................................................14

4.11.   Class 10:  Series B Preferred Stock Interests........................................14

NYC:203104.4

# TABLE OF CONTENTS
## (continued)

Page

4.12. Class 11: LPC Common Stock Interests ........................................................... 14

4.13. Class 12: Other Equity Interests in LPC ......................................................... 15

4.14. Class 13: Other Priority Claims against LRGI ................................................ 15

4.15. Class 14(a): CapitalSource Secured Claims against LRGI .............................. 15

4.16. Class 14(b): CSE Secured Claims against LRGI ............................................. 15

4.17. Class 15: Secured Tax Claims against LRGI ................................................... 15

4.18. Class 16: Other Secured Claims against LRGI ................................................ 16

4.19. Class 17: General Unsecured Claims against LRGI ......................................... 16

4.20. Class 18: Convenience Claims against LRGI .................................................. 17

4.21. Class 19: Interests in LRGI ............................................................................. 17

ARTICLE V    MEANS FOR IMPLEMENTATION ............................................................ 17

5.1. Intercompany Claims ....................................................................................... 17

5.2. Cancellation and Surrender of Existing Securities and Agreements ................ 17

5.3. Incurrence of New Indebtedness ...................................................................... 18

5.4. Issuance of New LPC Common Stock .............................................................. 18

5.5. Exemption from Securities Laws ..................................................................... 18

5.6 Exit Financing .................................................................................................. 18

5.7 Stockholders' Agreement ................................................................................. 19

5.8 New Priority Working Capital Facility ............................................................. 19

ARTICLE VI    VOTING AND DISTRIBUTIONS ............................................................... 19

6.1. Voting of Claims .............................................................................................. 19

6.2. Nonconsensual Confirmation ........................................................................... 19

6.3. Distribution Record Date ................................................................................. 19

6.4. Date of Distributions ....................................................................................... 19

6.5. Disbursing Agent ............................................................................................. 19

6.6. Rights and Powers of Disbursing Agent .......................................................... 19

6.7. Expenses of the Disbursing Agent ................................................................... 20

6.8. Delivery of Distributions ................................................................................. 20

6.9. Unclaimed Distributions .................................................................................. 20

6.10. Manner of Payment .......................................................................................... 21

6.11. Fractional Shares ............................................................................................. 21

## TABLE OF CONTENTS
### (continued)

Page

| | | |
|---|---|---|
| 6.12. | Minimum Cash Distributions | 21 |
| 6.13. | Setoffs | 21 |
| ARTICLE VII | PROCEDURES FOR DISPUTED CLAIMS | 21 |
| 7.1. | Objections | 21 |
| 7.2. | No Payment Pending Allowance | 21 |
| 7.3. | Distributions After Allowance | 22 |
| 7.4. | Resolution of Administrative Expense Claims and other Claims | 22 |
| 7.5. | Estimation of Claims | 22 |
| 7.6. | Interest | 22 |
| ARTICLE VIII | EXECUTORY CONTRACTS AND UNEXPIRED LEASES | 23 |
| 8.1. | Assumption or Rejection of Executory Contracts and Unexpired Leases | 23 |
| 8.2. | Approval of Assumption or Rejection of Executory Contracts and Unexpired Leases | 23 |
| 8.3. | Inclusiveness | 23 |
| 8.4. | Cure of Defaults | 23 |
| 8.5. | Bar Date for Filing Proofs of Claim Relating to Executory Contracts and Unexpired Leases Rejected Pursuant to the Plan | 24 |
| 8.6. | Insurance Policies | 24 |
| 8.7. | Compensation and Benefit Programs | 25 |
| 8.8. | Retiree Benefits | 25 |
| ARTICLE IX | CORPORATE GOVERNANCE AND MANAGEMENT OF THE REORGANIZED DEBTORS | 25 |
| 9.1. | Certificate of Incorporation and By-Laws | 25 |
| 9.2 | General | 25 |
| 9.2. | Directors and Officers of the Reorganized Debtors | 26 |
| 9.3. | Issuance of Non-Voting Securities | 24 |
| 9.4 | Corporate Action | 26 |
| ARTICLE X | EFFECT OF CONFIRMATION | 26 |
| 10.1. | Vesting of Assets | 26 |
| 10.2. | Discharge of Claims and Termination of Series B Preferred Stock Interests | 27 |
| 10.3. | Discharge of Debtors | 27 |
| 10.4. | Injunction or Stay | 27 |

vi

# TABLE OF CONTENTS
## (continued)

10.5.  Term of Injunctions or Stays ...................................................................27

10.6.  Injunction Against Interference With Plan .........................................28

10.7.  Exculpation ...............................................................................................28

10.8.  Avoidance Actions....................................................................................28

10.9.  Retention of Causes of Action/Reservation of Rights .........................28

10.10.  Limitations on Exculpation and Releases of Representatives ............29

ARTICLE XI    CONDITIONS PRECEDENT TO EFFECTIVE DATE ................................29

11.1.  Conditions Precedent to Effectiveness....................................................29

11.2.  Waiver of Conditions................................................................................29

11.3.  Effect of Failure of Conditions to Effective Date ..............................29

ARTICLE XII    RETENTION OF JURISDICTION .................................................................30

ARTICLE XIII MISCELLANEOUS PROVISIONS .................................................................31

13.1.  Effectuating Documents and Further Transactions..............................31

13.2.  Withholding and Reporting Requirements .........................................31

13.3.  Corporate Action......................................................................................32

13.4.  Exemption from Transfer Taxes .............................................................32

13.5.  Expedited Tax Determination .................................................................32

13.6.  Payment of Statutory Fees ......................................................................32

13.7.  Post-Confirmation Date Professional Fees and Expenses ...................32

13.8.  Dissolution of Statutory Committees.....................................................33

13.9.  Indenture Trustee as Claim Holder .......................................................33

13.10.  Plan Supplement ......................................................................................33

13.11.  Substantial Consummation ....................................................................33

13.12.  Amendments or Modifications of the Plan ...........................................34

13.13.  Revocation or Withdrawal of the Plan..................................................34

13.14.  Severability ...............................................................................................34

13.15.  Governing Law ..........................................................................................34

13.16.  Binding Effect............................................................................................34

13.17.  Exhibits/Schedules....................................................................................35

13.18.  Notices .......................................................................................................35

13.19.  Time............................................................................................................35

# TABLE OF CONTENTS
### (continued)

**Page**

13.20.   Section Headings ................................................................................................... 35

NYC:203104.4

## EXHIBITS

Exhibit 1.5 – Summary of Terms of Amended and Restated By-Laws

Exhibit 1.6 – Summary of Terms of Amended and Restated Charter

Exhibit 1.43 – Summary of Terms of Exit Financing Agreement

Exhibit 1.56 – Summary of Terms of Intercreditor Agreement

Exhibit 1.67 – Summary of Terms of New LPC Warrants

Exhibit 1.68 – Summary of Terms of New Priority Working Capital Facility

Exhibit 1.70 – Summary of Terms of New Secured CapitalSource Credit Agreement

Exhibit 1.73 – Summary of Terms of New Secured CSE Loan Agreement

Exhibit 1.74 – Summary of Terms of New Unsecured LPC Notes

Exhibit 1.75 – Summary of Terms of New Unsecured LRGI Notes

Exhibit 1.99 – Summary of Terms of Stockholders' Agreement

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

----------------------------------------------------------------x

| | | |
|---|---|---|
| In re: | : | Chapter 11 |
| | : | |
| LEXINGTON PRECISION CORP., et al., | : | Case No. 08-11153 (MG) |
| | : | |
| | : | |
| Debtors. | : | |

----------------------------------------------------------------x

### JOINT PLAN OF REORGANIZATION UNDER CHAPTER 11 OF THE BANKRUPTCY CODE OF THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS, CAPITALSOURCE FINANCE LLC AND CSE MORTGAGE LLC

The Official Committee of Unsecured Creditors (the "Committee") of Lexington Precision Corporation, et al. (collectively, the "Debtors"), CapitalSource Finance LLC (in its capacity as agent under the Prepetition Credit Agreement, "CapitalSource") and CSE Mortgage LLC (in its capacity as agent under the Prepetition Loan Agreement, "CSE Mortgage" and together with the Committee and CapitalSource, the "Plan Proponents") propose the following joint chapter 11 plan of reorganization, pursuant to section 1121(a) of title 11 of the United States Code:

## ARTICLE I

## DEFINITIONS AND INTERPRETATION

### A.    Definitions.

The following terms used herein shall have the respective meanings defined below (such meanings to be equally applicable to both the singular and plural):

1.1.    ***Administrative Expense Claim*** means any Claim constituting a cost or expense of administration of the Chapter 11 Cases allowed under sections 503(b) (including 503(b)(9)), 507(a)(2) and 507(b) of the Bankruptcy Code, including, without limitation, any actual and necessary costs and expenses of preserving the Debtors' estates, any actual and necessary costs and expenses of operating the Debtors' business, any actual and necessary costs and expenses of the administration and implementation of the Plan, any indebtedness or obligations incurred or assumed by the Debtors, as Debtors in Possession, during the Chapter 11 Cases, including, without limitation, for the acquisition or lease of property or an interest in property or the rendition of services, any allowances of compensation and reimbursement of expenses to the extent allowed by Final Order under section 330 or 503 of the Bankruptcy Code, and any fees or charges assessed against the Debtors' estates under section 1930 of chapter 123 of title 28 of the United States Code.

1.2.    ***Agents*** means collectively, CapitalSource, as collateral agent and administrative agent for itself and other lenders under the Prepetition Credit Agreement, and CSE Mortgage, as collateral agent for itself and other lenders under the Prepetition Loan Agreement.

1.3.    ***Allowed*** means that, with respect to a Claim, (i) such Claim has been listed by the Debtors in the Schedules, as such Schedules may be amended by the Debtors from time to time in accordance with Bankruptcy Rule 1009, as liquidated in amount and not disputed or contingent and no contrary proof of claim has been filed, (ii) a proof of claim with respect to such Claim has been timely filed and no objection thereto has been interposed within the time period set forth in Section 7.1 of the Plan or such other applicable period of limitation fixed by the Bankruptcy Code, the Bankruptcy Rules, or

the Bankruptcy Court, or an objection thereto has been interposed and such Claim has been allowed in whole or in part by a Final Order, (iii) such Claim has been expressly allowed by a Final Order or under the Plan, or (iv) such Claim has been compromised, settled, or otherwise resolved pursuant to the authority granted to the Reorganized Debtors pursuant to a Final Order of the Bankruptcy Court or under Sections 7.1, 7.4, or 7.5 of the Plan; *provided*, *however*, that Claims allowed solely for the purpose of voting to accept or reject the Plan pursuant to an order of the Bankruptcy Court shall not be considered "Allowed Claims" under the Plan.

1.4.    ***Amended and Restated By-Laws*** means the amended and restated by-laws of Reorganized LPC substantially in the form attached to the Plan as Exhibit 1.5.

1.5.    ***Amended and Restated Charter*** means the amended and restated certificate of incorporation of Reorganized LPC substantially in the form attached to the Plan as Exhibit 1.6.

1.6.    ***Asbestos Insurance Policies*** means any and all Insurance Policies issued to LPC or any predecessor in interest that insure LPC against losses that give rise to any Asbestos-Related Claim.

1.7.    ***Asbestos-Related Claim*** means any Claim, remedy or liability against any Debtor, whether or not such Claim, remedy or liability is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured or unsecured, whether or not the facts of or legal bases therefor are known or unknown, under any theory of law, equity, admiralty or otherwise (including piercing the corporate veil, alter ego and similar theories), for damages for property damage or for death, bodily injury, sickness, disease, medical monitoring or other personal injuries (whether physical, emotional or otherwise) to the extent allegedly arising out of or based on, directly or indirectly, in whole or in part, the presence of or exposure to asbestos or asbestos-containing products or things that were installed, engineered, designed, manufactured, fabricated, constructed, sold, supplied, produced, specified, selected, distributed, released, marketed, serviced, maintained, repaired, purchased, owned, occupied, used, removed, replaced or disposed of by any Debtor or an Entity for whose products or operations any Debtor allegedly has liability or for which any Debtor is otherwise allegedly liable, including any Claim, remedy or liability for compensatory damages (such as loss of consortium, lost wages or other opportunities, wrongful death, medical monitoring, survivorship, proximate, consequential, general and special damages) or punitive damages related thereto, and any Claim under any settlement of an Asbestos-Related Claim entered into by or on behalf of any Debtor prior to the Commencement Date.

1.8.    ***Bankruptcy Code*** means title 11 of the United States Code, as amended from time to time, as applicable to the Chapter 11 Cases.

1.9.    ***Bankruptcy Court*** means the United States Bankruptcy Court for the Southern District of New York or such other court that exercises jurisdiction over the Chapter 11 Cases.

1.10.    ***Bankruptcy Rules*** means the Federal Rules of Bankruptcy Procedure as promulgated by the United States Supreme Court under section 2075 of title 28 of the United States Code, as amended from time to time, and any Local Rules of the Bankruptcy Court, as applicable to the Chapter 11 Cases.

1.11.    ***Business Day*** means any day other than a Saturday, a Sunday, or any other day on which banking institutions in New York, New York are required or authorized to close by law or executive order.

1.12.    ***CapitalSource*** means CapitalSource Finance LLC.

NYC:203104.4

1.13.    ***CapitalSource Secured Claim*** means all Claims arising under the Prepetition Credit Agreement and all Claims of CapitalSource, as agent, and the Prepetition Revolver Lenders thereunder arising under the Final Cash Collateral Order, less all payments made subsequent to the Commencement Date in respect of such Claims under the Final Cash Collateral Order, and expressly including default interest, fees, expenses, costs, and other charges under the Prepetition Credit Agreement (including without limitation full reimbursement of financial advisor and legal fees incurred in connection with the Chapter 11 Cases); provided, however, the CapitalSource Secured Claim shall in no event be reduced by the amount of the Prepetition Senior Lenders' Fee Carve-Out Amount, as provided in paragraph 23 of the Final Cash Collateral Order.

1.14.    ***Cash*** means legal tender of the United States of America.

1.15.    ***Chapter 11 Cases*** means the cases under chapter 11 of the Bankruptcy Code commenced by the Debtors on April 1, 2008 in the United States Bankruptcy Court for the Southern District of New York and styled *In re Lexington Precision Corporation*, *et al.*, Chapter 11 Case No. 08-11153 (MG) (Jointly Administered).

1.16.    ***Charging Lien*** means any right of the Indenture Trustee to a Lien upon or other priority in payment with respect to distributions to be made to holders of Senior Subordinated Note Claims for payment of any Indenture Trustee Fee Claim arising prior to the Effective Date.

1.17.    ***Claim*** shall have the meaning ascribed in section 101 of the Bankruptcy Code.

1.18.    ***Class*** means any group of Claims or Interests classified by the Plan as set forth in Article III of the Plan.

1.19.    ***Collateral*** means any property or interest in property of the Debtors' estates subject to a Lien, charge, or other encumbrance to secure the payment or performance of a Claim, which Lien, charge, or other encumbrance is not subject to avoidance under the Bankruptcy Code.

1.20.    ***Commencement Date*** means April 1, 2008, the date on which the Debtors commenced the Chapter 11 Cases.

1.21.    ***Confirmation Date*** means the date on which the Clerk of the Bankruptcy Court enters the Confirmation Order on the docket of the Bankruptcy Court with respect to the Chapter 11 Cases.

1.22.    ***Confirmation Hearing*** means the hearing to be held by the Bankruptcy Court regarding confirmation of the Plan in accordance with section 1129 of the Bankruptcy Code, as such hearing may be adjourned or continued from time to time.

1.23.    ***Confirmation Order*** means the order of the Bankruptcy Court confirming the Plan pursuant to section 1129 of the Bankruptcy Code.

1.24.    ***Contingent Claim*** means any Claim, the liability for which attaches or is dependent upon the occurrence of, or is triggered by, an event, which event has not yet occurred as of the date on which such Claim is sought to be estimated or an objection to such Claim is filed, whether or not such event is within the actual or presumed contemplation of the holder of such Claim and whether or not a relationship between the holder of such Claim and the applicable Debtor now or hereafter exists or previously existed.

1.25.    ***Convenience Claim*** means any Unsecured Claim in the amount of $2,000.00 or less, and any other Unsecured Claim that is reduced to such amount by the holder of such Claim pursuant to the procedures set forth in the Disclosure Statement Order.

1.26.    ***Committee*** means the Official Committee of Unsecured Creditors of Lexington Precision Corporation, et al.

1.27.    ***CSE Mortgage*** means CSE Mortgage LLC.

1.28.    ***CSE Secured Claim*** means all Claims arising under the Prepetition Loan Agreement and all Claims of CSE Mortgage, as agent, and the Prepetition Term Loan Lenders thereunder arising under the Final Cash Collateral Order, less all payments made subsequent to the Commencement Date in respect of such Claims under the Final Cash Collateral Order, and expressly including default interest, fees, expenses, costs, and other charges under the Prepetition Loan Agreement (including without limitation full reimbursement of financial advisor and legal fees incurred in connection with the Chapter 11 Cases); provided, however, the CSE Secured Claim shall in no event be reduced by the amount of the Prepetition Senior Lenders' Fee Carve Out Amount, as provided in paragraph 23 of the Final Cash Collateral Order.

1.29.    ***Debtors*** means LPC and LRGI.

1.30.    ***Debtors in Possession*** means the Debtors in their capacity as debtors in possession in the Chapter 11 Cases pursuant to sections 1101, 1107(a), and 1108 of the Bankruptcy Code.

1.31.    ***DIP Lenders*** means Lubin Partners, LLC, William B. Connor, and ORA Associates, LLC, as the lenders under the DIP Note.

1.32.    ***DIP Loan Claims*** means all Claims arising under the DIP Note, as authorized and approved by the Final Cash Collateral Order.

1.33.    ***DIP Note*** means that certain Super-Priority DIP Note issued by the Debtors in favor of the DIP Lenders on April 21, 2008, in the amount of $4 million.

1.34.    ***Disallowed Claim*** means a Claim or a portion of a Claim that is disallowed by an order of the Bankruptcy Court or any other court of competent jurisdiction.

1.35.    ***Disbursing Agent*** means such Entity as is designated pursuant to Section 6.5 of the Plan to be a disbursing agent.

1.36.    ***Disclosure Statement*** means the disclosure statement with respect to the Plan filed with and approved by the Bankruptcy Court in accordance with section 1125 of the Bankruptcy Code, as such disclosure statement may be amended, modified or supplemented.

1.37.    ***Disclosure Statement Order*** means the order of the Bankruptcy Court approving the Disclosure Statement and establishing procedures with respect to the solicitation and tabulation of votes to accept or reject the Plan.

1.38.    ***Disputed Claim*** means any Claim (including any Administrative Expense Claim) against any Debtor, proof of which was timely and properly filed, that is disputed under the Plan or as to which the Plan Proponents have interposed a timely objection and/or request for estimation in accordance with section 502(c) of the Bankruptcy Code and Bankruptcy Rule 3018, which objection and/or request for estimation has not been withdrawn or determined by a Final Order, and any Claim

- 4 -

proof of which was required to be filed by order of the Bankruptcy Court but as to which a proof of claim was not timely or properly filed.

        1.39.    **Distribution Record Date** means, with respect to holders of all Claims, the date that is three (3) days after the Confirmation Date.

        1.40.    **Effective Date** means a Business Day specified by the Plan Proponents on or after the Confirmation Date, on which (i) no stay of the Confirmation Order is in effect and (ii) the conditions to the effectiveness of the Plan specified in Article XII of the Plan have been satisfied or waived.

        1.41.    **Entity** means a person, a corporation, a general partnership, a limited partnership, a limited liability company, a limited liability partnership, an association, a joint stock company, a joint venture, an estate, a trust, an unincorporated organization, a governmental unit or any subdivision thereof, including, without limitation, the Office of the United States Trustee.

        1.42.    **Existing Intercreditor Agreement** means that certain Intercreditor Agreement, dated as of May 31, 2006, by and among CapitalSource Finance, LLC, as agent under the Prepetition Credit Agreement, and CSE Mortgage, LLC, as agent under the Prepetition Loan Agreement, regarding the Prepetition Credit Agreement and Prepetition Loan Agreement, as such intercreditor agreement as may have been and may be further amended.

        1.43.    **Exit Financing Agreement** means a secured credit facility with principal terms as set forth on Exhibit 1.43.

        1.44.    **Exit Financing Fee Notes** means the notes in the aggregate principal amount of $1.5 million issued to the Exit Financing Parties as a fee for providing new capital to the Reorganized Debtors pursuant to the Exit Financing Agreement. Pursuant to the Intercreditor Agreement, as described on Exhibit 1.56, the Exit Financing Fee Notes shall be unsecured and fully subordinated to the New Secured CapitalSource Debt, the New Secured CSE Debt, and the New Priority Working Capital Facility, such that there shall be no payment on account of the Exit Financing Notes and the Exit Financing Fee Notes unless and until all obligations under the New Secured CapitalSource Credit Agreement, the New Secured CSE Loan Agreement and the New Priority Working Capital Facility are paid indefeasibly in full.

        1.45.    **Exit Financing Notes** means the notes issued by the Reorganized Debtors pursuant to the Exit Financing Agreement. Pursuant to the Intercreditor Agreement, as described on Exhibit 1.56, the Exit Financing Notes shall be unsecured and fully subordinated to the New Secured CapitalSource Debt, the New Secured CSE Debt, and the New Priority Working Capital Facility, such that there shall be no payment on account of the Exit Financing Notes and the Exit Financing Fee Notes unless and until all obligations under the New Secured CapitalSource Credit Agreement, the New Secured CSE Loan Agreement and the New Priority Working Capital Facility are paid indefeasibly in full.

        1.46.    **Exit Financing Parties** means those entities, other than the Reorganized Debtors, which are parties to the Exit Financing Agreement.

        1.47.    **Face Amount** means the full stated liquidated amount claimed by the holder of a Claim or Interest in any proof of claim timely filed with the Bankruptcy Court or otherwise deemed timely filed by any Final Order of the Bankruptcy Court or other applicable bankruptcy law

        1.48.    **Final Cash Collateral Order** means collectively the following, as may be supplemented or amended by further Final Order: (a) that certain Final Order Pursuant to Bankruptcy Code Sections 105, 361, 362, 363, and 364 (I) Authorizing Debtor to Use Cash Collateral, (II) Granting

- 5 -

Adequate Protection to Prepetition Secured Lenders, and (III) Authorizing Postpetition Financing, entered by the Bankruptcy Court on April 17, 2008; (b) that certain Final Order Pursuant to Bankruptcy Code Sections 105(A), 361,362, And 363 (I) Authorizing Debtors to Use Cash Collateral and (II) Granting Adequate Protection to Prepetition Secured Lenders, entered by the Bankruptcy Court on March 4, 2009; (c) that certain Final Order entitled Third Order Pursuant to Bankruptcy Code Sections 105(A), 361, 362, and 363 (I) Authorizing Debtors to Use Cash Collateral And (II) Granting Adequate Protection to Prepetition Secured Lenders, entered by the Bankruptcy Court on May 20, 2009; (d) that certain Final Order entitled Stipulation, Agreement and Order Pursuant to Bankruptcy Code Sections 105(A), 361, 362, And 363 (I) Authorizing Debtors to Use Cash Collateral And (II) Granting Adequate Protection to Prepetition Secured Lenders, entered by the Bankruptcy Court on August 17, 2009; (e) that certain Stipulation, Agreement and Order Pursuant To Bankruptcy Code Sections 105(A), 361, 362, and 363 (i) Authorizing Debtors To Use Cash Collateral and (ii) Granting Adequate Protection To Prepetition Secured Lenders (Fifth Extension); and (f) that certain Sixth Order Pursuant To Bankruptcy Code Sections 105(A), 361, 362, and 363 (i) Authorizing Debtors To Use Cash Collateral and (ii) Granting Adequate Protection To Prepetition Secured Lenders.

1.49. **_Final Order_** means an order or judgment of the Bankruptcy Court entered by the Clerk of the Bankruptcy Court on the docket in the Chapter 11 Cases, that has not been reversed, vacated, or stayed, and as to which (i) the time to appeal, petition for _certiorari_, or move for a new trial, reargument, or rehearing has expired, and as to which no appeal, petition for _certiorari_, or other proceedings for a new trial, reargument, or rehearing shall then be pending, or (ii) if an appeal, writ of _certiorari_, new trial, reargument, or rehearing thereof has been sought, such order or judgment of the Bankruptcy Court shall have been affirmed by the highest court to which such order was appealed, or _certiorari_ shall have been denied, or a new trial, reargument, or rehearing shall have been denied or resulted in no modification of such order, and the time to take any further appeal, petition for _certiorari_ or move for a new trial, reargument, or rehearing shall have expired; _provided, however_, that the possibility that a motion under Rule 59 or Rule 60 of the Federal Rules of Civil Procedure, or any analogous rule under the Bankruptcy Rules, may be filed relating to such order shall not cause such order to not be a Final Order.

1.50. **_General Unsecured Claim_** means any Claim against any of the Debtors other than a Convenience Claim, an Administrative Expense Claim, a Priority Tax Claim, an Other Priority Claim, a Secured Tax Claim, an Other Secured Claim, a CapitalSource Secured Claim, a CSE Secured Claim, a Senior Subordinated Note Claim, a Junior Subordinated Note Claim, or an Asbestos-Related Claim.

1.51. **_Indenture_** means the Indenture, dated as of December 18, 2003, entered into by LPC, with Wilmington Trust Company, as trustee, under which the Senior Subordinated Notes were issued, as such Indenture is or has been amended, modified or supplemented from time to time.

1.52. **_Indenture Trustee_** means Wilmington Trust Company, in its capacity as the indenture trustee for the Senior Subordinated Notes, or any successor thereto.

1.53. **_Indenture Trustee Fee Claim_** means any Claim of the Indenture Trustee for the reimbursement of its reasonable accrued and unpaid fees and expenses under the Indenture.

1.54. **_Insurance Policies_** means any and all insurance policies issued to LPC or LRGI, or any of their predecessors in interest.

1.55. **_Intercompany Claim_** means any Claim against any Debtor held by another Debtor.

1.56.    ***Intercreditor Agreement*** means that certain intercreditor agreement substantially in the form attached hereto as Exhibit 1.56.

1.57.    ***Interest*** means any LPC Common Stock Interest, Other Equity Interest or Series B Preferred Stock Interest.

1.58.    ***Junior Subordinated Note*** means that certain 13% Junior Subordinated Note due November 1, 2009, issued on December 18, 2003 by LPC to Michael A. Lubin.

1.59.    ***Junior Subordinated Note Claim*** means all Claims arising under the Junior Subordinated Note, which shall include interest up to the Commencement Date at the rate of 13% per annum.

1.60.    ***LPC*** means Lexington Precision Corporation, a Delaware corporation.

1.61.    ***LPC Common Stock*** means the shares of common stock of LPC.

1.62.    ***LPC Common Stock Interests*** means the interest of any holder of LPC Common Stock.

1.63.    ***LPC Warrant*** means a warrant issued on December 18, 2003, entitling the holder to purchase one share of the LPC Common Stock for $3.50 from August 1, 2005, through August 1, 2009.

1.64.    ***LRGI*** means Lexington Rubber Group, Inc., a Delaware corporation.

1.65.    ***Lien*** means any charge against or interest in property to secure payment of a debt or performance of an obligation.

1.66.    ***New LPC Common Stock*** means the shares of common stock of Reorganized LPC to be issued for distribution pursuant to the Plan.

1.67.    ***New LPC Warrant*** means a warrant to purchase shares of New LPC Common Stock issued to holders of Allowed Class 2(a), Class 2(b), Class 14(A) and Class 14(B) Claims pursuant to the Plan with principal terms as set forth on Exhibit 1.67.

1.68.    ***New Priority Working Capital Facility*** means a secured working capital facility with principal terms as set forth on Exhibit 1.68.

1.69.    ***New Priority Working Capital Facility Lenders*** means CapitalSource and Webster Business Credit Corporation, as lenders under the New Priority Working Capital Facility.

1.70.    ***New Secured CapitalSource Credit Agreement*** means a secured credit facility with principal terms as set forth on Exhibit 1.70.

1.71.    ***New Secured CapitalSource Debt*** means debt obligations incurred by the Reorganized Debtors pursuant to the terms set forth in the New Secured CapitalSource Credit Agreement.

1.72.    ***New Secured CSE Debt*** means debt obligations incurred by the Reorganized Debtors pursuant to the terms set forth in the New Secured CSE Loan Agreement.

1.73.    ***New Secured CSE Loan Agreement*** means a secured credit facility with principal terms as set forth on Exhibit 1.73.

NYC:203104.4

1.74.    ***New Unsecured LPC Notes*** means promissory notes issued by the Reorganized Debtors with principal terms as set forth on Exhibit 1.74.

1.75.    ***New Unsecured LRGI Notes*** means promissory notes issued by the Reorganized Debtors with principal terms as set forth on Exhibit 1.75.

1.76.    ***Other Equity Interest*** means the interest of any holder of an equity security of any of the Debtors represented by any instrument evidencing an ownership interest in any of the Debtors, whether or not transferable, or any option, warrant, or right, contractual or otherwise, to acquire any such interest, including the LPC Warrants, but excluding the LPC Common Stock Interests and the Series B Preferred Stock Interests.

1.77.    ***Other Priority Claim*** means any Claim entitled to priority in right of payment under section 507(a) of the Bankruptcy Code, other than an Administrative Expense Claim, a DIP Loan Claim, or a Priority Tax Claim.

1.78.    ***Other Secured Claim*** means any Secured Claim other than a Secured Tax Claim, the CapitalSource Secured Claim and the CSE Secured Claim.

1.79.    ***Plan Documents*** means the documents to be executed, delivered, assumed, and/or performed in conjunction with the consummation of the Plan on the Effective Date, including but not limited to (i) the New Secured CapitalSource Credit Agreement, (ii) the New Secured CSE Loan Agreement, (iii) the New Secured CapitalSource Debt, (iv) the New Secured CSE Debt, (v) the Exit Financing Agreement, (vi) the Amended and Restated Charter, (vii) the Amended and Restated By-Laws, (viii) the Exit Financing Fee Notes, (ix) the Stockholders' Agreement, (x) the Intercreditor Agreement, (xi) the New Unsecured LPC Note, (xii) the New Unsecured LRGI Note, (xiii) the New LPC Warrants, (xiv) the New Priority Working Capital Facility, and (xv) the list of executory contracts and unexpired leases listed on Schedule 8.1. Each of the Plan Documents to be entered into as of the Effective Date will be included in draft form in the Plan Supplement.

1.80.    ***Plan*** means this Joint Plan of Reorganization Under Chapter 11 of the Bankruptcy Code, including the Plan Documents, the Plan Supplement, and the exhibits and schedules hereto and thereto, as the same may be amended or modified from time to time in accordance with the provisions of the Bankruptcy Code and the terms of the Plan.

1.81.    ***Plan Proponents*** means the Committee and the Agents.

1.82.    ***Plan Supplement*** means the document (as may be amended, modified or supplemented) containing the forms of documents specified in Section 13.10 of the Plan.

1.83.    ***Prepetition Credit Agreement*** means that certain Credit and Security Agreement, dated May 31, 2006 (as amended, restated or otherwise modified), between the Debtors, as borrowers, and CapitalSource, as a lender, as collateral agent and administrative agent for itself and each other lender, and as co-documentation agent, and Webster Business Credit Corporation as a lender and as co-documentation agent, together with all other relevant Prepetition Senior Lender Loan Documents (as defined in the Final Cash Collateral Order).

1.84.    ***Prepetition Loan Agreement*** means that certain Loan and Security Agreement, dated May 31, 2006 (as amended, restated or otherwise modified), between the Debtors, as borrowers, and CSE Mortgage, as a lender and a collateral agent for itself and each other lender, and DMD Special Situations Funding LLC, as a lender, together with all other relevant Prepetition Senior Lender Loan Documents (as defined in the Final Cash Collateral Order).

NYC:203104.4

1.85.    ***Prepetition Revolver Lenders*** means CapitalSource and Webster Business Credit Corporation, as lenders under the Prepetition Credit Agreement, including the revolving credit loan and the equipment term loan.

1.86.    ***Prepetition Term Loan Lenders*** means CSE Mortgage and DMD Special Situations Funding LLC, as lenders under the Prepetition Loan Agreement.

1.87.    ***Priority Tax Claim*** means any Claim of a governmental unit of the kind entitled to priority in payment as specified in sections 502(i) and 507(a)(8) of the Bankruptcy Code.

1.88.    ***Pro Rata*** means (a) with respect to Claims, at any time, the proportion that the Face Amount of a Claim in a particular Class or Classes bears to the aggregate Face Amount of all Claims in such Class or Classes, unless the Plan provides otherwise and (b) with respect to Interests, at any time, the proportion that the number of Interests held by a certain Interest holder in a particular Class or Classes bears to the aggregate number of all Interests in such Class or Classes.

1.89.    ***Protected Person*** has the meaning ascribed to such term in Section 10.7 of the Plan.

1.90.    ***Reorganized Debtors*** means each of the Debtors, as reorganized as of the Effective Date in accordance with the Plan, and their successors.

1.91.    ***Reorganized LPC*** means LPC, as reorganized as of the Effective Date in accordance with the Plan.

1.92.    ***Reorganized LRGI*** means LRGI, as reorganized as of the Effective Date in accordance with the Plan.

1.93.    ***Schedules*** means the schedules of assets and liabilities and the statements of financial affairs filed by the Debtors pursuant to section 521 of the Bankruptcy Code, Bankruptcy Rule 1007, and the Official Bankruptcy Forms of the Bankruptcy Rules, as such schedules and statements may be supplemented or amended on or prior to the Effective Date.

1.94.    ***Secured Claim*** means any Claim that is secured by a Lien on Collateral to the extent of the value of such Collateral, as determined in accordance with section 506(a) of the Bankruptcy Code, or, in the event that such Claim is subject to a permissible setoff under section 553 of the Bankruptcy Code, to the extent of such permissible setoff.

1.95.    ***Secured Tax Claim*** means any Secured Claim that, absent its secured status, would be entitled to priority in right of payment under section 507(a)(8) of the Bankruptcy Code (determined irrespective of any time limitations therein), and including any related Secured Claim for penalties.

1.96.    ***Senior Subordinated Notes*** means the 12% Senior Subordinated Notes due August 1, 2009, issued by LPC pursuant to the Indenture.

1.97.    ***Senior Subordinated Note Claim*** means any Claim arising under the Senior Subordinated Notes, which shall include interest up to the Commencement Date at the rate of 12% per annum.

1.98.    ***Series B Preferred Stock Interest*** means the interest of any holder of issued and outstanding shares of LPC's $8 Cumulative Convertible Preferred Stock, Series B.

1.99. ***Stockholders' Agreement*** means that certain stockholders' agreement substantially in the form attached hereto as Exhibit 1.99.

1.100. ***Unliquidated Claim*** means any Claim, the amount of liability for which has not been fixed, whether pursuant to agreement, applicable law, or otherwise, as of the date on which such Claim is sought to be estimated.

1.101. ***Unsecured Claim*** means any Claim that is not a Secured Claim, an Administrative Expense Claim, a Priority Tax Claim or Other Priority Claim.

**B.      Interpretation; Application of Definitions and Rules of Construction**.

Unless otherwise specified, all section or exhibit references in the Plan are to the respective section in, or exhibit to, the Plan, as the same may be amended, waived, or modified from time to time. The words "herein," "hereof," "hereto," "hereunder," and other words of similar import refer to the Plan as a whole and not to any particular section, subsection, or clause contained therein. A term used herein that is not defined herein shall have the meaning ascribed to that term in the Bankruptcy Code. The rules of construction contained in section 102 of the Bankruptcy Code shall apply to the Plan. In the event that a particular term of the Plan (including any exhibits or schedules hereto) conflicts with a particular term of the definitive documentation required to be implemented pursuant to the terms of the Plan or any settlement or other agreement contemplated hereunder, the definitive documentation shall control and shall be binding on the parties thereto. The headings in the Plan are for convenience of reference only and shall not limit or otherwise affect the provisions of the Plan.

## ARTICLE II

## ADMINISTRATIVE EXPENSE CLAIMS AND PRIORITY TAX CLAIMS

### 2.1. ***ADMINISTRATIVE EXPENSE CLAIMS***.

Except to the extent that a holder of an Allowed Administrative Expense Claim agrees to a less favorable treatment, each Allowed Administrative Expense Claim shall be paid by the Reorganized Debtors in full, in Cash, in an amount equal to such Allowed Administrative Expense Claim on or as soon as reasonably practicable following the later to occur of: (a) the Effective Date and (b) the date on which such Administrative Expense Claim shall become an Allowed Claim; *provided, however*, that Allowed Administrative Expense Claims against any of the Debtors representing liabilities incurred in the ordinary course of business by any of the Debtors, as Debtors in Possession, or liabilities arising under loans or advances to or other obligations incurred by any of the Debtors, as Debtors in Possession, whether or not incurred in the ordinary course of business, shall be paid by the Debtors in the ordinary course of business, consistent with past practice and in accordance with the terms and subject to the conditions of any agreements governing, instruments evidencing, or other documents relating to such transactions.

### 2.2. ***PROFESSIONAL COMPENSATION AND REIMBURSEMENT CLAIMS***.

The Bankruptcy Court shall fix in the Confirmation Order a date for the filing of, and a date to hear and determine, all applications for final allowance of compensation for services rendered or reimbursement of expenses incurred through and including the Confirmation Date under sections 328 and 330 of the Bankruptcy Code or applications for allowance of Administrative Expense Claims arising under section 503(b)(2), 503(b)(3), 503(b)(4), or 503(b)(5) of the Bankruptcy Code. Unless otherwise agreed to by the claimant and the Reorganized Debtors, the Allowed Administrative Expense Claims arising under section 330, 331, 503(b)(2), 503(b)(3), 503(b)(4), and 503(b)(5) of the Bankruptcy Code shall be paid in full, in Cash, as soon as practicable following the later to occur of (a) the Effective Date and (b) the date upon which any such Administrative Expense Claim becomes an Allowed Administrative

- 10 -

Expense Claim.  The Reorganized Debtors are authorized to pay compensation for services rendered or reimbursement of expenses incurred after the Confirmation Date and until the Effective Date in the ordinary course of business and without the need for Bankruptcy Court approval.

2.3.    ***INDENTURE TRUSTEE FEE CLAIMS***.

Notwithstanding any provision contained in the Plan to the contrary, unless otherwise agreed to by an indenture trustee and Reorganized LPC, all Indenture Trustee Fee Claims and fees for services related to distributions pursuant to the Plan shall be paid in Cash on the Effective Date by Reorganized LPC as Administrative Expense Claims, without the need for application to, or approval of, any court.  The Indenture Trustee's Charging Lien will be discharged solely upon payment in full of the Indenture Trustee Fee Claims.  Nothing herein shall be deemed to impair, waive or discharge the Charging Lien for any fees and expenses not paid by Reorganized LPC.

2.4.    ***DIP LOAN CLAIMS***.

Each holder of DIP Loan Claims shall receive on the Effective Date, cash in the total amount of their DIP Loan Claims, in full satisfaction of said DIP Loan Claims; provided, however, if the Bankruptcy Court determines that the Final Cash Collateral Order does not allow payment of the DIP Loan Claims in full in cash on the Effective Date, the DIP Loan Claims shall be paid as directed by the Bankruptcy Court under the Confirmation Order or other Final Order.

2.5.    ***PRIORITY TAX CLAIMS***.

Except to the extent that a holder of an Allowed Priority Tax Claim has been paid by the Debtors prior to the Effective Date or agrees to a less favorable treatment, each holder of an Allowed Priority Tax Claim shall receive, at the sole option of the Reorganized Debtors, (a) Cash in an amount equal to such Allowed Priority Tax Claim on or as soon as reasonably practicable following the later to occur of (i) the Effective Date and (ii) the date on which such Administrative Priority Tax Claim shall become an Allowed Priority Tax Claim, (b) equal semi-annual Cash payments in an aggregate amount equal to such Allowed Priority Tax Claim, together with interest at the applicable non-bankruptcy rate, commencing upon the later of the Effective Date and the date such Priority Tax Claim becomes an Allowed Priority Tax Claim, or as soon thereafter as is practicable and continuing over a period of fifty (50) months (but in no event exceeding five (5) years from and after the Commencement Date), or (c) such other treatment as shall be determined by the Bankruptcy Court to provide the holder of such Allowed Priority Tax Claim deferred Cash payments having a value, as of the Effective Date, equal to such Allowed Priority Tax Claim.

## ARTICLE III

## CLASSIFICATION OF CLAIMS AND INTERESTS

The following table designates the Classes of Claims against and Interests in the Debtors and specifies which of those Classes are (i) impaired or unimpaired by the Plan and (ii) entitled to vote to accept or reject the Plan in accordance with section 1126 of the Bankruptcy Code or deemed to reject the Plan.

| LPC CLASSES | Designation | STATUS | ENTITLED TO VOTE? |
|---|---|---|---|
| **Class 1** | Other Priority Claims against LPC | Unimpaired | No (deemed to accept) |

| Class 2(a) | CapitalSource Secured Claims against LPC | Impaired | Yes |
|---|---|---|---|
| Class 2(b) | CSE Secured Claims against LPC | Impaired | Yes |
| Class 3 | Secured Tax Claims against LPC | Unimpaired | No (deemed to accept) |
| Class 4 | Other Secured Claims against LPC | Unimpaired | No (deemed to accept) |
| Class 5 | Senior Subordinated Note Claims | Impaired | Yes |
| Class 6 | Junior Subordinated Note Claims | Impaired | No (deemed to reject) |
| Class 7 | General Unsecured Claims against LPC | Impaired | Yes |
| Class 8 | Convenience Claims against LPC | Unimpaired | No (deemed to accept) |
| Class 9 | Asbestos-Related Claims | Impaired | No (deemed to reject) |
| Class 10 | Series B Preferred Stock Interests | Impaired | No (deemed to reject) |
| Class 11 | LPC Common Stock Interests | Impaired | No (deemed to reject) |
| Class 12 | Other Equity Interests in LPC | Impaired | No (deemed to reject) |
| **LRGI CLASSES** | **Designation** | **STATUS** | **ENTITLED TO VOTE?** |
| Class 13 | Other Priority Claims against LRGI | Unimpaired | No (deemed to accept) |
| Class 14(a) | CapitalSource Secured Claims against LRGI | Impaired | Yes |
| Class 14(b) | CSE Secured Claims against LRGI | Impaired | Yes |
| Class 15 | Secured Tax Claims against LRGI | Unimpaired | No (deemed to accept) |
| Class 16 | Other Secured Claims against LRGI | Unimpaired | No (deemed to accept) |
| Class 17 | General Unsecured Claims against LRGI | Impaired | Yes |
| Class 18 | Convenience Claims against LRGI | Unimpaired | No (deemed to accept) |
| Class 19 | Interests in LRGI | Unimpaired | No (deemed to accept) |

## ARTICLE IV

## TREATMENT OF CLAIMS AND INTERESTS

**LPC Claims and Interests**

4.1.    *CLASS 1: OTHER PRIORITY CLAIMS AGAINST LPC*.

(a)    Impairment and Voting.  Class 1 is unimpaired by the Plan.  Each holder of an Allowed Other Priority Claim against LPC is conclusively presumed to have accepted the Plan and is not entitled to vote to accept or reject the Plan.

(b)    Distributions.  Except to the extent that a holder of an Allowed Other Priority Claim against LPC agrees to a less favorable treatment, each such holder shall receive, in full satisfaction of such Allowed Other Priority Claim, Cash in an amount equal to such Allowed Other Priority Claim, on or as soon as reasonably practicable after the later of (i) the Effective Date, and (ii) the date such Claim becomes Allowed.

4.2.    *CLASS 2(A): CAPITALSOURCE SECURED CLAIMS AGAINST LPC*.

(a)    Impairment and Voting.  Class 2(a) is impaired by the Plan.  Each holder of an Allowed CapitalSource Secured Claim against LPC is entitled to vote to accept or reject the Plan.

(b)    _Distributions_.  Except to the extent that a holder of an Allowed CapitalSource Secured Claim against LPC agrees to a less favorable treatment, each such holder shall receive, in full satisfaction of such Claim, its Pro Rata share of the New Secured CapitalSource Debt and the New LPC Warrants on or as soon as reasonably practicable after the the Effective Date, with such claims Allowed in the aggregate amount set forth in that certain stipulation by and between the Committee and the Agents.

4.3.    **_CLASS 2(B):  CSE SECURED CLAIMS AGAINST LPC_**.

(a)    _Impairment and Voting_.  Class 2(b) is impaired by the Plan.  Each holder of an Allowed CSE Secured Claim against LPC is entitled to vote to accept or reject the Plan.

(b)    _Distributions_.  Except to the extent that a holder of an Allowed CSE Secured Claim against LPC agrees to a less favorable treatment, each such holder shall receive, in full satisfaction of such Claim, its Pro Rata share of the New Secured CSE Debt and the New LPC Warrants on or as soon as reasonably practicable after the Effective Date, with such claims Allowed in the aggregate amount set forth in that certain stipulation by and between the Committee and the Agents.

4.4.    **_CLASS 3:  SECURED TAX CLAIMS AGAINST LPC_**.

(a)    _Impairment and Voting_.  Class 3 is unimpaired by the Plan.  Each holder of an Allowed Secured Tax Claim against LPC is conclusively presumed to have accepted the Plan and is not entitled to vote to accept or reject the Plan.

(b)    _Distributions_.  Except to the extent that a holder of an Allowed Secured Tax Claim against LPC agrees to a less favorable treatment, each holder shall receive, at the sole option of Reorganized LPC, (i) Cash in an amount equal to such Allowed Secured Tax Claim, including any interest on such Allowed Secured Tax Claim required to be paid pursuant to section 506(b) of the Bankruptcy Code, as soon as practicable after the later of the Effective Date and the date such Claim becomes Allowed, (ii) equal semi-annual Cash payments in an aggregate amount equal to such Allowed Secured Tax Claim, together with interest at the applicable non-bankruptcy rate, commencing upon the later of the Effective Date and the date such Secured Tax Claim becomes an Allowed Secured Tax Claim, or as soon thereafter as is practicable and continuing over a period of eighteen (18) months (but in no event exceeding five (5) years from and after the Commencement Date), or (iii) such other treatment as shall be determined by the Bankruptcy Court to provide the holder of such Allowed Secured Tax Claim deferred Cash payments having a value, as of the Effective Date, equal to such Allowed Secured Tax Claim.

4.5.    **_CLASS 4: OTHER SECURED CLAIMS AGAINST LPC_**.

(a)    _Impairment and Voting_.  Class 4 is unimpaired by the Plan.  Each holder of an Allowed Other Secured Claim against LPC is conclusively presumed to have accepted the Plan and is not entitled to vote to accept or reject the Plan.

(b)    _Distributions_.  Except to the extent that a holder of an Allowed Other Secured Claim against LPC agrees to a less favorable treatment, at the sole option of Reorganized LPC, (i) each Allowed Other Secured Claim shall be reinstated and rendered unimpaired in accordance with section 1124(2) of the Bankruptcy Code, notwithstanding any contractual provision or applicable nonbankruptcy law that entitles the holder of an Allowed Other Secured Claim to demand or receive payment of such Allowed Other Secured Claim prior to the stated maturity of such Allowed Other Secured Claim from and after the occurrence of a default, or (ii) each holder of an Allowed Other Secured Claim shall receive, in full satisfaction of such Allowed Other Secured Claim, either (w) Cash in an amount equal to such Allowed Other Secured Claim, including any interest on such Allowed Other Secured Claim required to be paid pursuant to section 506(b) of the Bankruptcy Code, (x) the proceeds of the sale or disposition of

the Collateral securing such Allowed Other Secured Claim, including any interest on such Allowed Other Secured Claim required to be paid pursuant to section 506(b) of the Bankruptcy Code, to the extent of the value of the holder's security interest in such Collateral, (y) the Collateral securing such Allowed Other Secured Claim and any interest on such Allowed Other Secured Claim required to be paid pursuant to section 506(b) of the Bankruptcy Code, or (z) such other distribution as necessary to satisfy the requirements of section 1124 of the Bankruptcy Code.  In the event LPC or Reorganized LPC elects to treat a Claim under clause (w) or (x) of this Section, the Liens securing such Secured Claim shall be deemed released.

### 4.6.    *CLASS 5:  SENIOR SUBORDINATED NOTE CLAIMS*.

(a)    <u>Impairment and Voting</u>.  Class 5 is impaired by the Plan.  Each holder of an Allowed Senior Subordinated Note Claim is entitled to vote to accept or reject the Plan.

(b)    <u>Distributions</u>.  Except to the extent that a holder of an Allowed Senior Subordinated Note Claim agrees to a less favorable treatment, each holder of an Allowed Senior Subordinated Note Claim shall receive, in full satisfaction of such Senior Subordinated Note Claim, as soon as reasonably practicable after the later of (i) the Effective Date or (ii) the date such Claim becomes Allowed, its Pro Rata share of 65% of the New LPC Common Stock.

### 4.7.    *CLASS 6:  JUNIOR SUBORDINATED NOTE CLAIMS*.

(a)    <u>Impairment and Voting</u>.  Class 6 is impaired by the Plan.  Each holder of an Allowed Junior Subordinated Note Claim is deemed to reject the Plan.

(b)    <u>Distributions</u>.  On the Effective Date, each Junior Subordinated Note shall be cancelled and holders of Allows Junior Subordinated Note Claims shall not receive or retain any property under the Plan on account of such Claims.

### 4.8.    *CLASS 7:  GENERAL UNSECURED CLAIMS AGAINST LPC*.

(a)    <u>Impairment and Voting</u>.  Class 7 is impaired by the Plan.  Each holder of an Allowed General Unsecured Claim against LPC is entitled to vote to accept or reject the Plan.

(b)    <u>Distributions</u>.  Each holder of an Allowed General Unsecured Claim against LPC shall receive, in full satisfaction of such Allowed General Unsecured Claim, its Pro Rata share of New Unsecured LPC Notes, as soon as reasonably practicable after the later of (a) the Effective Date or (b) the date such General Unsecured Claim becomes Allowed.  The New Unsecured LPC Notes shall be expressly subordinated to the New Secured CapitalSource Debt, the New Secured CSE Debt, and the New Priority Working Capital Facility.

### 4.9.    *CLASS 8: CONVENIENCE CLAIMS AGAINST LPC*.

(a)    <u>Impairment and Voting</u>.  Class 8 is unimpaired by the Plan.  Each holder of an Allowed Convenience Claim in LPC is conclusively presumed to have accepted the Plan and is not entitled to vote to accept or reject the Plan.

(b)    <u>Distributions</u>.  Each holder of an Allowed Convenience Claim against LPC shall receive, in full satisfaction of such Allowed Convenience Claim, Cash in an amount equal to 100% of such Allowed Convenience Claim, on or as soon as reasonably practicable after the later of (i) the Effective Date, and (ii) the date such Claim becomes Allowed.

4.10.    *CLASS 9:  ASBESTOS-RELATED CLAIMS*.

(a)    <u>Impairment and Voting</u>.  Class 9 is impaired by the Plan.  Each holder of an Asbestos-Related Claim is deemed to reject the Plan.

(b)    <u>Treatment</u>.  Each Asbestos-Related Claim shall be deemed a Disputed Claim without the need for the Debtors to file a separate formal objection thereto.

(c)    <u>Distributions</u>. Any recovery on any Asbestos-Related Claim shall be limited to the proceeds of the Insurance Policies and holders of Asbestos-Related Claims shall be permanently and forever stayed, restrained, and enjoined from taking any action for the purpose of, directly or indirectly, collecting, recovering, or receiving payment of, on, or with respect to any Asbestos-Related Claim against the Debtors or the Reorganized Debtors (other than against the Insurance Policies); provided that after the Effective Date, each Asbestos-Related Claim shall be adjudicated in the forum in which such Claim had been pending prior to the Commencement Date; and provided further that any claimant who has filed an Asbestos-Related Claim, but has not commenced a proceeding prior to the Commencement Date, shall promptly as possible commence a proceeding after the Effective Date in a court of competent jurisdiction other than the Bankruptcy Court, subject to any and all defenses that any defendant may have thereto, including without limitation, statute of limitations, laches, and any other defense.

(d)    **Nothing in this Plan or the Disclosure Statement is an admission of any liability by the Debtors or an admission of insurance coverage by Liberty Mutual or Fireman's Fund.  Further, the treatment provided to holders of Asbestos-Related Claims is not an admission of any liability by the Debtors or an admission of insurance coverage by Liberty Mutual or Fireman's Fund.**

4.11.    *CLASS 10:  SERIES B PREFERRED STOCK INTERESTS*.

(a)    <u>Impairment and Voting</u>.  Class 10 is impaired by the Plan.  Each holder of a Series B Preferred Stock Interest is deemed to reject the Plan.

(b)    <u>Distributions</u>.  On the Effective Date, the Series B Preferred Stock shall be cancelled and holders of Series B Preferred Stock shall not receive or retain any property under the Plan on account of such Interests.

4.12.    *CLASS 11:  LPC COMMON STOCK INTERESTS*.

(a)    <u>Impairment and Voting</u>.  Class 11 is impaired by the Plan.  Each holder of an LPC Common Stock Interest is deemed to reject the Plan.

(b)    <u>Distributions</u>.  On the Effective Date, LPC Common Stock shall be cancelled and holders of LPC Common Stock shall not receive or retain any property under the Plan on account of such Interests.

4.13.    *CLASS 12:  OTHER EQUITY INTERESTS IN LPC*.

(a)    <u>Impairment and Voting</u>.  Class 12 is impaired by the Plan.  Each holder of an Other Equity Interest in LPC is deemed to reject the Plan.

(b)    <u>Distributions</u>.  All Other Equity Interests shall be cancelled and holders of Other Equity Interests shall not receive or retain any property under the Plan on account of such Interests.

- 15 -

**LRGI Claims and Interests**

### 4.14.    *CLASS 13:  OTHER PRIORITY CLAIMS AGAINST LRGI*.

(a)    <u>Impairment and Voting</u>.  Class 13 is unimpaired by the Plan.  Each holder of an Allowed Other Priority Claim against LRGI is conclusively presumed to have accepted the Plan and is not entitled to vote to accept or reject the Plan.

(b)    <u>Distributions</u>.  Except to the extent that a holder of an Allowed Other Priority Claim against LRGI agrees to a less favorable treatment, each such holder shall receive, in full satisfaction of such Allowed Other Priority Claim, Cash in an amount equal to such Allowed Other Priority Claim, on or as soon as reasonably practicable after the later of (i) the Effective Date, and (ii) the date such Claim becomes Allowed.

### 4.15.    *CLASS 14(A):  CAPITALSOURCE SECURED CLAIMS AGAINST LRGI*.

(a)    <u>Impairment and Voting</u>.  Class 14(a) is impaired by the Plan.  Each holder of an Allowed CapitalSource Secured Claim against LRGI is entitled to vote to accept or reject the Plan.

(b)    <u>Distributions</u>.  Except to the extent that a holder of an Allowed CapitalSource Secured Claim against LRGI agrees to a less favorable treatment, each such holder shall receive, in full satisfaction of such Claim, its Pro Rata share of the New Secured CapitalSource Debt and the New LPC Warrants on or as soon as reasonably practicable after the the Effective Date, with such claims Allowed in the aggregate amount set forth in that certain stipulation by and between the Committee and the Agents.

### 4.16.    *CLASS 14(B):  CSE SECURED CLAIMS AGAINST LRGI*.

(a)    <u>Impairment and Voting</u>.  Class 14(b) is impaired by the Plan.  Each holder of an Allowed CSE Secured Claim against LRGI is entitled to vote to accept or reject the Plan.

(b)    <u>Distributions</u>.  Except to the extent that a holder of an Allowed CSE Secured Claim against LRGI agrees to a less favorable treatment, each such holder shall receive, in full satisfaction of such Claim, its Pro Rata share of the New Secured CSE Debt and the New LPC Warrants on or as soon as reasonably practicable after the the Effective Date, with such claims Allowed in the aggregate amount set forth in that certain stipulation by and between the Committee and the Agents.

### 4.17.    *CLASS 15:  SECURED TAX CLAIMS AGAINST LRGI*.

(a)    <u>Impairment and Voting</u>.  Class 15 is unimpaired by the Plan.  Each holder of an Allowed Secured Tax Claim against LRGI is conclusively presumed to have accepted the Plan and is not entitled to vote to accept or reject the Plan.

(b)    <u>Distributions</u>.  Except to the extent that a holder of an Allowed Secured Tax Claim against LRGI agrees to a less favorable treatment, each holder shall receive, at the sole option of Reorganized LRGI, (i) Cash in an amount equal to such Allowed Secured Tax Claim, including any interest on such Allowed Secured Tax Claim required to be paid pursuant to section 506(b) of the Bankruptcy Code, as soon as practicable after the later of the Effective Date and the date such Claim becomes Allowed, (ii) equal semi-annual Cash payments in an aggregate amount equal to such Allowed Secured Tax Claim, together with interest at the applicable non-bankruptcy rate, commencing upon the later of the Effective Date and the date such Secured Tax Claim becomes an Allowed Secured Tax Claim, or as soon thereafter as is practicable and continuing over a period of eighteen (18) months (but in no event exceeding five (5) years from and after the Commencement Date), or (iii) such other treatment as shall be determined by the Bankruptcy Court to provide the holder of such Allowed Senior Tax Claim

- 16 -

deferred Cash payments having a value, as of the Effective Date, equal to such Allowed Senior Tax Claim.

### 4.18.    *CLASS 16: OTHER SECURED CLAIMS AGAINST LRGI*.

(a)    <u>Impairment and Voting</u>.  Class 16 is unimpaired by the Plan.  Each holder of an Allowed Other Secured Claim against LRGI is conclusively presumed to have accepted the Plan and is not entitled to vote to accept or reject the Plan.

(b)    <u>Distributions</u>.  Except to the extent that a holder of an Allowed Other Secured Claim against LRGI agrees to a less favorable treatment, at the sole option of Reorganized LRGI, (i) each Allowed Other Secured Claim shall be reinstated and rendered unimpaired in accordance with section 1124(2) of the Bankruptcy Code, notwithstanding any contractual provision or applicable nonbankruptcy law that entitles the holder of an Allowed Other Secured Claim to demand or receive payment of such Allowed Other Secured Claim prior to the stated maturity of such Allowed Other Secured Claim from and after the occurrence of a default, or (ii) each holder of an Allowed Other Secured Claim shall receive, in full satisfaction of such Allowed Other Secured Claim, either (w) Cash in an amount equal to such Allowed Other Secured Claim, including any interest on such Allowed Other Secured Claim required to be paid pursuant to section 506(b) of the Bankruptcy Code, (x) the proceeds of the sale or disposition of the Collateral securing such Allowed Other Secured Claim, including any interest on such Allowed Other Secured Claim required to be paid pursuant to section 506(b) of the Bankruptcy Code, to the extent of the value of the holder's security interest in such Collateral, (y) the Collateral securing such Allowed Other Secured Claim and any interest on such Allowed Other Secured Claim required to be paid pursuant to section 506(b) of the Bankruptcy Code, or (z) such other distribution as necessary to satisfy the requirements of section 1124 of the Bankruptcy Code.  In the event LRGI or Reorganized LRGI elects to treat a Claim under clause (w) or (x) of this Section, the Liens securing such Secured Claim shall be deemed released.

### 4.19.    *CLASS 17:  GENERAL UNSECURED CLAIMS AGAINST LRGI*.

(a)    <u>Impairment and Voting</u>.  Class 17 is impaired by the Plan.  Each holder of an Allowed General Unsecured Claim against LRGI is entitled to vote to accept or reject the Plan.

(b)    <u>Distributions</u>.  Except to the extent that a holder of an Allowed General Unsecured Claim against LRGI agrees to a less favorable treatment, each such holder shall receive, in full satisfaction of such Allowed General Unsecured Claim, its Pro Rata share of New Unsecured LRGI Notes, as soon as reasonably practicable after the later of (a) the Effective Date or (b) the date such General Unsecured Claim becomes Allowed.  The New Unsecured LRGI Notes shall be expressly subordinated to the New Secured CapitalSource Debt, the New Secured CSE Debt, and the New Priority Working Capital Facility.

### 4.20.    *CLASS 18: CONVENIENCE CLAIMS AGAINST LRGI*.

(a)    <u>Impairment and Voting</u>.  Class 18 is unimpaired by the Plan.  Each holder of an Allowed Convenience Claim in LRGI is conclusively presumed to have accepted the Plan and is not entitled to vote to accept or reject the Plan.

(b)    <u>Distributions</u>.  Each holder of an Allowed Convenience Claim against LRGI shall receive, in full satisfaction of such Allowed Convenience Claim, Cash in an amount equal to 100% of such Allowed Convenience Claim, on or as soon as reasonably practicable after the later of (i) the Effective Date, and (ii) the date such Claim becomes Allowed.

4.21.    ***CLASS 19:  INTERESTS IN LRGI***.

(a)    <u>Impairment and Voting</u>.  Class 19 is unimpaired by the Plan.  Each holder of an Interest in LRGI is conclusively presumed to have accepted the Plan and is not entitled to vote to accept or reject the Plan.

(b)    <u>Distributions</u>.  All Interests in LRGI shall be unaltered.

## ARTICLE V

## MEANS FOR IMPLEMENTATION

5.1.    ***INTERCOMPANY CLAIMS***.

In settlement and compromise of certain existing and potential disputes regarding intercompany claims and related matters, pursuant to Sections 1123(b)(3) and (6) of the Bankruptcy Code and Bankruptcy Rule 9019, the Plan treats the Debtors as comprising a single estate solely for the purposes of voting on the Plan, confirmation of the Plan and making Plan distributions in respect of Claims against the equity interests in the Debtors under the Plan.  Such settlement and compromise shall not affect any Debtor's status as a separate legal entity, change the organizational structure of the Debtors' business enterprise, constitute a change of control of any Debtor for any purpose, cause a merger or consolidation of any legal entities, nor cause the transfer of any assets; and <u>except</u> as otherwise provided by or permitted in the Plan, all Debtors shall continue to exist as separate legal entities. This settlement and compromise (and the treatment derived therefrom) serves only as a mechanism to effect a fair distribution of value to the Debtors' constituencies.  Intercompany claims between the Debtors shall, solely for the purposes of receiving Plan distributions, be deemed resolved and therefore not entitled to any Plan distribution and shall not be entitled to vote on the Plan.

5.2.    ***CANCELLATION AND SURRENDER OF EXISTING SECURITIES AND AGREEMENTS***.

(a)    Except (i) as otherwise expressly provided in the Plan, (ii) with respect to executory contracts or unexpired leases that have been assumed by the Debtors, (iii) for purposes of evidencing a right to distributions under the Plan, or (iv) with respect to any Claim that is reinstated and rendered unimpaired under the Plan, on the Effective Date, any document, agreement, or debt instrument evidencing any Claim or Series B Preferred Stock Interest, LPC Common Stock Interest or Other Equity Interest, including without limitation, the Prepetition Credit Agreement, the Prepetition Loan Agreement, the DIP Notes, the Indenture and all notes issued thereunder, shall be deemed automatically cancelled without further act or action under any applicable agreement, law, regulation, order or rule and the obligations of the Debtors thereunder shall be discharged.

(b)    Unless waived by LPC or Reorganized LPC, each holder of the Senior Subordinated Notes shall surrender such note(s) to the Indenture Trustee, or in the event such note(s) are held in the name of, or by a nominee of, the Depository Trust Company, the Debtors shall follow the applicable procedures of the Depository Trust Company for book-entry transfer of the Senior Subordinated Notes to the Indenture Trustee.  No distributions hereunder shall be made for or on behalf of any such holder unless and until such note is received by the Indenture Trustee or appropriate instructions from Depository Trust Company shall be received by the Indenture Trustee, or the loss, theft or destruction of such note is established to the reasonable satisfaction of the Indenture Trustee, which satisfaction may require such holder to (i) submit a lost instrument affidavit and an indemnity bond and (ii) hold the Debtors and the Indenture Trustee harmless in respect of such note and any distributions made in respect thereof.  Upon compliance with this Section by a holder of any note, such holder shall, for all purposes under the Plan, be deemed to have surrendered such note.  Any holder of Senior

NYC:203104.4

Subordinated Notes that fails to surrender such note or satisfactorily explain its non-availability to the applicable Indenture Trustee within one (1) year of the Effective Date shall be deemed to have no further Claim against the Debtors, or their property or against the Indenture Trustee in respect of such Claim and shall not participate in any distribution hereunder, and the distribution that would have otherwise been made to such holder shall be returned to Reorganized LPC by the Indenture Trustee.

### 5.3. *INCURRENCE OF NEW INDEBTEDNESS*.

The Reorganized Debtors' entry into the New Secured CapitalSource Credit Agreement, the New Secured CSE Loan Agreement and the Exit Financing Agreement, and the issuance of the New Unsecured LPC Notes and New Unsecured LRGI Notes, and the incurrence of the indebtedness thereunder on the Effective Date, is hereby authorized without the need for any further corporate action and without any further action by holders of Claims or Interests.

### 5.4. *ISSUANCE OF NEW LPC COMMON STOCK*.

On or as soon as reasonably practicable after the Effective Date, Reorganized LPC shall issue all instruments, certificates and other documents, including but not limited to the New LPC Common Stock required to be issued or distributed pursuant to this Plan without further act or action under applicable law, regulation, order, or rule. In the period pending distribution of New LPC Common Stock to any holder entitled pursuant to this Plan to receive New LPC Common Stock, such holder shall be entitled to exercise any voting rights and receive any dividends or other distributions payable in respect of such holder's New LPC Common Stock (including receiving any proceeds of permitted transfers of such New LPC Common Stock) and to exercise all other rights in respect of the New LPC Common Stock (so that such holder shall be deemed for tax purposes to be the owner of the New LPC Common Stock).

### 5.5. *EXEMPTION FROM SECURITIES LAWS*.

The offer and issuance of the New LPC Common Stock to holders of Allowed Class 5 Claims, and the distribution thereof, under the Plan shall be exempt from registration under applicable securities laws pursuant to section 1145(a) of the Bankruptcy Code.

### 5.6. *EXIT FINANCING*.

On the Effective Date, the Exit Financing Parties shall transfer $9.5 million to the Debtor in return for their Pro Rata share of the Exit Financing Notes, 35% of the New LPC Common Stock and the Exit Financing Fee Notes.

### 5.7. *STOCKHOLDERS' AGREEMENT*.

The Reorganized Debtors and the Exit Financing Parties shall enter into the Stockholders' Agreement on or prior to the Effective Date.

### 5.8. *NEW PRIORITY WORKING CAPITAL FACILITY.*

On the Effective Date, the Reorganized Debtors and the New Priority Working Capital Facility Lenders shall enter into the New Priority Working Capital Facility.

### ARTICLE VI

### VOTING AND DISTRIBUTIONS

- 19 -

6.1.   *VOTING OF CLAIMS*.

Each holder of an Allowed Claim in an impaired Class of Claims that is entitled to vote on the Plan pursuant to Article III of the Plan shall be entitled to vote separately to accept or reject the Plan, as provided in the Disclosure Statement Order, or any other order or orders of the Bankruptcy Court.

6.2.   *NONCONSENSUAL CONFIRMATION*.

If any impaired class of Claims entitled to vote shall not accept the Plan by the requisite statutory majority provided in section 1126(c) of the Bankruptcy Code, the Plan Proponents reserve the right to undertake to have the Bankruptcy Court confirm the Plan under section 1129(b) of the Bankruptcy Code.

6.3.   *DISTRIBUTION RECORD DATE*.

On the Distribution Record Date the claims register shall be closed and any transfer of any Claim therein shall be prohibited.  The Disbursing Agent shall instead be authorized and entitled to recognize and deal for all purposes under the Plan with only those record holders stated on the claims register as of the close of business on the Distribution Record Date.

6.4.   *DATE OF DISTRIBUTIONS*.

In the event that any payment or act under the Plan is required to be made or performed on a date that is not a Business Day, then the making of such payment or the performance of such act may be completed on the next succeeding Business Day, but shall be deemed to have been completed as of the required date.

6.5.   *DISBURSING AGENT*.

All distributions under the Plan (other than with respect to the Allowed Senior Subordinated Note Claims) shall be made by Reorganized LPC as the Disbursing Agent or such other Entity designated by the Debtors as a Disbursing Agent.  The Indenture Trustee, or such other entity designated by the Debtors, shall be the Disbursing Agent for the Senior Subordinated Notes.  The Disbursing Agent shall not be required to give any bond or surety or other security for the performance of its duties unless otherwise ordered by the Bankruptcy Court and, in the event that a Disbursing Agent is so otherwise ordered, all costs and expenses of procuring any such bond or surety shall be borne by the Reorganized Debtors.

6.6.   *RIGHTS AND POWERS OF DISBURSING AGENT*.

The Disbursing Agent shall be empowered to (a) effect all actions and execute all agreements, instruments and other documents necessary to perform its duties under the Plan, (b) make all distributions contemplated hereby, and (c) exercise such other powers as may be vested in the Disbursing Agent by order of the Bankruptcy Court, pursuant to the Plan or as deemed by the Disbursing Agent to be necessary and proper to implement the provisions hereof.

6.7.   *EXPENSES OF THE DISBURSING AGENT*.

Except as otherwise ordered by the Bankruptcy Court, any reasonable fees and expenses incurred by the Disbursing Agent on or after the Effective Date shall be paid in Cash by the Reorganized Debtors in the ordinary course of business.

6.8.    ***DELIVERY OF DISTRIBUTIONS***.

(a)    <u>General</u>.    Subject to Bankruptcy Rule 9010, all distributions to a holder of an Allowed Claim shall be made at the address of the holder thereof as set forth on the Schedules filed with the Bankruptcy Court or on the books and records of the Debtors or their agents or in a letter of transmittal unless the Debtors have been notified in writing of a change of address, including, without limitation, by the filing of a proof of claim by such holder that contains an address for such holder different from the address reflected on such Schedules for such holder.

(b)    <u>Distributions to Holders of Allowed Senior Subordinated Note Claims</u>.    The Disbursing Agent shall deliver all distributions in respect of Allowed Senior Subordinated Note Claims to the Indenture Trustee.    Upon delivery of the foregoing distributions to the Indenture Trustee, the Disbursing Agent shall be released of all liability with respect to the delivery of such distributions.    The Indenture Trustee shall transmit the distributions to the holders of the Allowed Senior Subordinated Note Claims.    The Disbursing Agent shall provide whatever reasonable assistance may be required by the Indenture Trustee with respect to such distributions.

(c)    <u>Withholding and Reporting Requirements</u>.    In connection with the Plan and all instruments issued in connection therewith and distributed thereon, any party issuing any instrument or making any distribution under the Plan, including any party described in Section 6.5 above, shall comply with all applicable withholding and reporting requirements imposed by any federal, state or local taxing authority, and all distributions under the Plan shall be subject to any such withholding or reporting requirements.    Notwithstanding the above, each holder of an Allowed Claim that is to receive a distribution under the Plan shall have the sole and exclusive responsibility for the satisfaction and payment of any tax obligations imposed by any governmental unit, including income, withholding and other tax obligations, on account of such distribution.    Any party issuing any instrument or making any distribution under the Plan has the right, but not the obligation, to not make a distribution until such holder has made arrangements satisfactory to such issuing or disbursing party for payment of any such tax obligations.

6.9.    ***UNCLAIMED DISTRIBUTIONS***.

In the event that any distribution to any holder is returned as undeliverable, the Disbursing Agent shall use reasonable efforts to determine the current address of such holder, but no distribution to such holder shall be made unless and until the Disbursing Agent has determined the then-current address of such holder, at which time such distribution shall be made to such holder without interest from the original distribution date through the new distribution date; *provided* that such distributions shall be deemed unclaimed property under section 347(b) of the Bankruptcy Code at the expiration of one year from the Effective Date.    After such date, all unclaimed property or interest in property (including any stock) shall revert to Reorganized LPC or Reorganized LRGI, as applicable, and the Claim of any other Entity to such property or interest in property shall be discharged and forever barred.

6.10.    ***MANNER OF PAYMENT***.

At the option of the Disbursing Agent, any Cash payment to be made hereunder may be made by a check or wire transfer or as otherwise required or provided in applicable agreements.

6.11.    ***FRACTIONAL SHARES***.

No fractional shares of New LPC Common Stock shall be distributed under the Plan. When any distribution pursuant to the Plan on account of an Allowed Claim would otherwise result in the issuance of a number of shares of LPC Common Stock that is not a whole number, the actual distribution

of shares of New LPC Common Stock shall be rounded as follows: (i) fractions of one-half (½) or greater shall be rounded to the next higher whole number and (ii) fractions of less than one-half (½) shall be rounded to the next lower whole number with no further payment or other distribution therefor. The total number of authorized shares of New LPC Common Stock to be distributed to holders of Allowed Claims shall be adjusted as necessary to account for the rounding provided in this Section 6.11.

6.12.    *MINIMUM CASH DISTRIBUTIONS*.

Notwithstanding anything set forth herein to the contrary, no payment of Cash less than $25.00 shall be made to any holder of an Allowed Claim unless a request therefor is made in writing to the Disbursing Agent.

6.13.    *SETOFFS*.

The Reorganized Debtors may, but shall not be required to, set off against any Claim (for purposes of determining the Allowed amount of such Claim on which distribution shall be made) any Claims of any nature whatsoever that the Debtors or the Reorganized Debtors may have against the holder of such Claim, but neither the failure to do so nor the allowance of any Claim hereunder shall constitute a waiver or release by the Debtors or the Reorganized Debtors of any such Claim the Debtors or Reorganized Debtors may have against the holder of such Claim; provided, however, that neither the Debtors nor the Reorganized Debtors shall exercise setoff rights with respect to the respective Claims of the Holders of the Senior Subordinated Notes, the Exit Financing Parties, the Prepetition Revolver Lenders, the Prepetition Term Loan Lenders and/or the Agents under the Prepetition Credit Agreement and the Prepetition Loan Agreement, with all such claims having been released pursuant to the Final Cash Collateral Order and Section 10.8 of the Plan.

## ARTICLE VII

## PROCEDURES FOR DISPUTED CLAIMS

7.1.    *OBJECTIONS*.

Any objections to Claims shall be served and filed with the Bankruptcy Court on or before the later of (i) one hundred twenty (120) days after the Effective Date, as such time may be extended by order of the Bankruptcy Court and (ii) such later date as may be fixed by the Bankruptcy Court, whether fixed before or after the date specified in clause (i) above.

7.2.    *NO PAYMENT PENDING ALLOWANCE*.

Notwithstanding any other provision in the Plan, if any portion of a Claim is disputed, then no payment or distribution provided hereunder shall be made on account of any portion of such Claim unless and until such Disputed Claim becomes an Allowed Claim.

NYC:203104.4

7.3.      *DISTRIBUTIONS AFTER ALLOWANCE*.

        To the extent that a Disputed Claim becomes an Allowed Claim, the Disbursing Agent shall distribute to the holder of such Claim, the property distributable with respect to such Claim in accordance with Article IV of the Plan.  Such distributions shall be made as soon as practicable after the later of (i) the date that the order or judgment of the Bankruptcy Court allowing such Disputed Claim (or portion thereof) becomes a Final Order, (ii) the date on which any objection to such Disputed Claim has been withdrawn, or (iii) the date on which such Disputed Claim has been settled, compromised or otherwise resolved.  To the extent that all or a portion of a Disputed Claim is disallowed, the holder of such Claim shall not receive any distribution on account of the portion of such Claim that is disallowed and any property withheld, if any, pending the resolution of such Claim shall revest in the applicable Reorganized Debtor.

7.4.      *RESOLUTION OF ADMINISTRATIVE EXPENSE CLAIMS AND OTHER CLAIMS*.

        On and after the Effective Date, the Reorganized Debtors shall have the authority to compromise, settle, otherwise resolve, or withdraw any objections to Administrative Expense Claims and any other Claims and to compromise, settle, or otherwise resolve any Disputed Claims without approval of the Bankruptcy Court, other than with respect to Administrative Expense Claims relating to compensation of professionals.

7.5.      *ESTIMATION OF CLAIMS*.

        A party may at any time request that the Bankruptcy Court estimate any Contingent Claim, Unliquidated Claim, or Disputed Claim pursuant to section 502(c) of the Bankruptcy Code regardless of whether any of the Debtors or the Reorganized Debtors previously objected to such Claim or whether the Bankruptcy Court has ruled on any such objection, and the Bankruptcy Court will retain jurisdiction to estimate any Claim at any time during litigation concerning any objection to any Claim, including, without limitation, during the pendency of any appeal relating to any such objection.  In the event that the Bankruptcy Court estimates any Contingent Claim, Unliquidated Claim, or Disputed Claim, the amount so estimated shall constitute either the Allowed amount of such Claim or a maximum limitation on such Claim, as determined by the Bankruptcy Court.  If the estimated amount constitutes a maximum limitation on the amount of such Claim, a party may pursue supplementary proceedings to object to the allowance of such Claim.  All of the aforementioned objection, estimation and resolution procedures are intended to be cumulative and not exclusive of one another.  Claims may be estimated and subsequently compromised, settled, withdrawn, or resolved by any mechanism approved by the Bankruptcy Court.

7.6.      *INTEREST*.

        To the extent that a Disputed Claim becomes an Allowed Claim after the Effective Date, the holder of such Claim shall not be entitled to any interest thereon from the Effective Date to the date such Claim becomes Allowed.

NYC:203104.4

### ARTICLE VIII

### EXECUTORY CONTRACTS AND UNEXPIRED LEASES

8.1.    *ASSUMPTION OR REJECTION OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES*.

Pursuant to sections 365(a) and 1123(b)(2) of the Bankruptcy Code, all executory contracts and unexpired leases that exist between the Debtors and any person or entity shall be deemed assumed by the Debtors as of the Effective Date, except for any executory contract or unexpired lease (i) that has been assumed, assumed and assigned, or rejected pursuant to an order of the Bankruptcy Court entered on or before the Effective Date, (ii) as to which a motion for approval of the assumption, assumption and assignment, or rejection has been filed and served prior to the Confirmation Date and with respect to rejection provides for a rejection date prior to the Effective Date, or (iii) that is specifically designated as a contract or lease to be rejected on Schedule 8.1, which Schedule shall be contained in the Plan Supplement; *provided*, *however*, that the Plan Proponents reserve the right, on or prior to the Confirmation Date, to amend Schedule 8.1 to delete therefrom or add thereto any executory contract or unexpired lease, in which event such executory contract(s) or unexpired lease(s) shall be deemed to be, respectively, either assumed or rejected as of the Effective Date.  The Plan Proponents shall provide notice of any amendments to Schedule 8.1 to the parties to the executory contracts and unexpired leases affected thereby.  The listing of a document on Schedule 8.1 shall not constitute an admission by the Plan Proponents that such document is an executory contract or an unexpired lease or that the Debtors have any liability thereunder.

8.2.    *APPROVAL OF ASSUMPTION OR REJECTION OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES*.

Entry of the Confirmation Order shall, subject to and upon the occurrence of the Effective Date, constitute (i) the approval, pursuant to sections 365(a) and 1123(b)(2) of the Bankruptcy Code, of the assumption of the executory contracts and unexpired leases assumed pursuant to Section 8.1 of the Plan, (ii) the extension of time, pursuant to section 365(d)(4) of the Bankruptcy Code, within which the Debtors may assume, assume and assign, or reject the executory contracts and unexpired leases specified in Section 8.1 of the Plan through the date of entry of an order approving the assumption, assumption and assignment, or rejection of such executory contracts and unexpired leases and (iii) the approval, pursuant to sections 365(a) and 1123(b)(2) of the Bankruptcy Code, of the rejection of the executory contracts and unexpired leases rejected pursuant to Section 8.1 of the Plan.

8.3.    *INCLUSIVENESS*.

Unless otherwise specified on Schedule 8.1 of the Plan Supplement, each executory contract and unexpired lease listed or to be listed on Schedule 8.1 shall include any and all modifications, amendments, supplements, restatements, or other agreements made directly or indirectly by any agreement, instrument, or other document that in any manner affects such executory contract or unexpired lease, without regard to whether such agreement, instrument or other document is listed on Schedule 8.1.

8.4.    *CURE OF DEFAULTS*.

Except to the extent that different treatment has been agreed to by the non-debtor party or parties to any executory contract or unexpired lease to be assumed pursuant to Section 8.1 of the Plan, the Plan Proponents shall, pursuant to the provisions of sections 1123(a)(5)(G) and 1123(b)(2) of the Bankruptcy Code and consistent with the requirements of section 365 of the Bankruptcy Code, at least 20 days prior to the Confirmation Hearing, file with the Bankruptcy Court and serve by first class mail on each non-debtor party to such executory contracts or unexpired leases to be assumed pursuant to Section

8.1 of the Plan, a notice (the "Assumption Notice"), which shall list the cure amount as to each executory contract or unexpired lease to be assumed. The parties to such executory contracts or unexpired leases to be assumed or assumed and assigned by the Debtors shall have twenty (20) days from the date of service of the Assumption Notice to file and serve any objection to the cure amounts listed by the Plan Proponents. If there are any objections filed, the Bankruptcy Court shall hold a hearing on a date to be set by the Bankruptcy Court. Notwithstanding Section 8.1 of the Plan, the Plan Proponents shall retain their rights to reject any of the Debtors' executory contracts or unexpired leases that are subject to a dispute concerning amounts necessary to cure any defaults through the Effective Date.

8.5. *BAR DATE FOR FILING PROOFS OF CLAIM RELATING TO EXECUTORY CONTRACTS AND UNEXPIRED LEASES REJECTED PURSUANT TO THE PLAN*.

In the event that the rejection of an executory contract or unexpired lease by the Plan Proponents pursuant to the Plan results in damages to the other party or parties to such contract or lease, a Claim for such damages, if not heretofore evidenced by a timely filed proof of claim, shall be forever barred and shall not be enforceable against the Debtors or the Reorganized Debtors, or their properties or interests in property as agents, successors, or assigns, unless a proof of claim is filed with Epiq Bankruptcy Solutions, LLC and served upon the attorneys for the Plan Proponents on or before the thirtieth (30th) day after the later of (i) the date of service of notice of the Confirmation Date, (ii) notice of modification to Schedule 8.1 of the Plan Supplement (solely with respect to the party directly affected by such modification), or (iii) the date of service of notice of such later rejection date that occurs as a result of a dispute concerning amounts necessary to cure any defaults (solely with respect to the party directly affected by such modification).

8.6. *INSURANCE POLICIES*.

Notwithstanding anything contained in the Plan to the contrary, unless specifically rejected by order of the Bankruptcy Court, all of the Debtors' Insurance Policies and any agreements, documents or instruments relating thereto, are treated as executory contracts under the Plan and will be assumed pursuant to the Plan, effective as of the Effective Date. Nothing contained in this Section 8.7 shall constitute or be deemed a waiver of any cause of action that the Debtors may hold against any entity, including, without limitation, the insurer, under any of the Debtors' Insurance Policies.

To the extent the Insurance Policies are determined not to be executory contracts, they will remain in full force and effect in accordance with their terms and will be treated as unimpaired (as defined in section 1124 of the Bankruptcy Code), including without limitation for purposes of payment of Claims for retrospective premiums, deductibles, and self-insurance retentions.

The Debtors and the Reorganized Debtors will perform the insureds' obligations under the Insurance Policies, whether they are treated as executory or non-executory. The Plan shall not, and is not intended to, modify any of the rights or obligations of insurers or the Debtors under any of the Insurance Policies. Notwithstanding any other provision of the Plan, including Article X and anything supervening or preemptory, the Debtors and Reorganized Debtors shall be, and intend to remain, bound by all of the terms, conditions, limitations and/or exclusions contained in the Insurance Policies, which shall continue in full force and effect. Notwithstanding anything contained in the Plan or the Disclosure Statement to the contrary, to the extent that there is an inconsistency between the Insurance Policies and any provision of the Plan or Disclosure Statement, the terms of the Insurance Policies shall control. No provision of the Plan shall (i) expand or alter any insurance coverage under any of the Insurance Policies, or shall be deemed to create any insurance coverage that does not otherwise exist, if at all, under the terms of the Insurance Policies, (ii) create any direct right of action against insurers that did not otherwise exist, and/or (iii) be construed as an acknowledgment either that the Insurance Policies cover or otherwise apply to any Claims or that any Claims are eligible for payment under any of the Insurance Policies.

- 25 -

NYC:203104.4

Notwithstanding any provision of the Plan, including Article X and anything supervening or preemptory, the Plan and Confirmation of the Plan shall be without prejudice to any of insurers' rights, claims and/or defenses in any subsequent litigation in any appropriate forum in which coverage is at issue, including any litigation in which insurers seek a declaration regarding the nature and/or extent of any insurance coverage under the Insurance Policies.

8.7.    *COMPENSATION AND BENEFIT PROGRAMS*.

Notwithstanding anything contained in the Plan to the contrary, unless specifically rejected by order of the Bankruptcy Court, all employment and severance policies and workers' compensation programs, and all compensation and benefit plans, policies and programs of the Debtors applicable to their present and former employees, officers and directors, including, without express or implied limitation, all savings plans, retirement plans, health care plans, disability plans, and life, accidental death, and dismemberment insurance plans, shall be deemed to be, and shall be treated as though they are, executory contracts that are deemed assumed under the Plan, and the Debtors' obligations under such plans, policies, and programs shall be deemed assumed pursuant to section 365(a) of the Bankruptcy Code, shall survive confirmation of the Plan, shall remain unaffected thereby, and shall not be discharged in accordance with section 1141 of the Bankruptcy Code.  Any default existing under any of such plans, policies, or programs shall be cured promptly after it becomes known by the Reorganized Debtors.

8.8.    *RETIREE BENEFITS*.

On and after the Effective Date, pursuant to section 1129(a)(13) of the Bankruptcy Code, the Reorganized Debtors shall continue to pay all retiree benefits of the Debtors (within the meaning of and subject to section 1114 of the Bankruptcy Code) for the duration of the period for which the Debtors had obligated themselves to provide such benefits and subject to the right of the Reorganized Debtors to modify or terminate such retiree benefits in accordance with the terms thereof.

## ARTICLE IX

## CORPORATE GOVERNANCE AND
## MANAGEMENT OF THE REORGANIZED DEBTORS

9.1.    *CERTIFICATE OF INCORPORATION AND BY-LAWS*.  Effective on the Effective Date, the certificates of incorporation and by-laws of the Reorganized Debtors shall be amended and restated substantially as set forth in Exhibits 1.5 and 1.6, respectively, to the Plan, which shall (i) include, among other things, pursuant to section 1123(a)(6) of the Bankruptcy Code, a provision prohibiting the issuance of non-voting equity securities, but only to the extent required by section 1123(a)(6) of the Bankruptcy Code; and (ii) authorize the issuance of New LPC Common Stock and the New LPC Warrants in an amount not less than the amount necessary to permit the distributions thereof required or contemplated by the Plan.  On the Effective Date, or as soon thereafter as is practicable, the Reorganized Debtors shall file with the Secretary of State of the State of Delaware, in accordance with Section 303 of the Delaware General Corporation Law, the Amended and Restated Charter.  After the Effective Date, the Reorganized Debtors may amend and restate their certificates or articles of incorporation and by-laws as permitted by applicable law.

9.2.    *GENERAL*.

On the Effective Date, the management, control, and operation of the Reorganized Debtors shall become the general responsibility of the Boards of Directors of Reorganized LPC and Reorganized LRGI, respectively.

NYC:203104.4

9.3.     ***DIRECTORS AND OFFICERS OF THE REORGANIZED DEBTORS***.

(a)     Boards of Directors of the Reorganized Debtors.  The Boards of Directors of the Reorganized Debtors shall consist of 5 members each, with one such director of each of the Reorganized Debtors being an independent director, the identity of which shall be subject to the approval, not to be unreasonably withheld, of the Agents.   The initial directors of the Reorganized Debtors shall consist of the directors elected by the holders of New LPC Common Stock.  Pursuant to Section 1129(a)(5) of the Bankruptcy Code, the Plan Proponents shall file with the Court the identity and biographical information (including any information required to be disclosed by LPC under Item 5.02(d) of Form 8-K under the Securities Exchange Act of 1934) of the initial directors no later than three (3) days prior to the Confirmation Hearing.  Each of the members of such initial Boards of Directors shall serve in accordance with applicable nonbankruptcy law and the certificates of incorporation and by-laws of the Reorganized Debtors, as the same may be amended from time to time.

(b)     Officers of the Reorganized Debtors. At or prior to the Confirmation Hearing, the Plan Proponents will identify all officers of the Reorganized Debtors.

(c)     Limits on Board Action and Authority.  The voluntary filing of any insolvency action (assignment for the benefit of creditors, receivership, bankruptcy, or similar actions) of the Reorganized Debtors requires unanimous consent of the Board of Directors of Reorganized LPC or Reorganized LRGI, as applicable.

(d)     Board Observation Rights.  Representatives of CapitalSource and CSE Mortgage shall have the right to be non-voting observers of any meeting of the Boards of Directors of the Reorganized Debtors.

9.4.     ***CORPORATE ACTION***.

On the Effective Date, the adoption of the amended certificates of incorporation and by-laws and the selection of directors and officers for the Reorganized Debtors, and all other actions contemplated by the Plan, shall be authorized and approved in all respects (subject to the provisions of the Plan).   All matters provided for in the Plan involving the corporate structure of the Debtors or the Reorganized Debtors, and any corporate action required by the Debtors or the Reorganized Debtors in connection with the Plan, shall be deemed to have timely occurred in accordance with applicable law and shall be in effect, without any requirement of further action by the security holders or directors of the Debtors or the Reorganized Debtors.  On the Effective Date, the appropriate officers of the Reorganized Debtors and members of the boards of directors of the Reorganized Debtors are authorized and directed to issue, execute, and deliver the agreements, documents, securities, and instruments contemplated by the Plan in the name of and on behalf of the Reorganized Debtors.

9.5.     ***ISSUANCE OF NON-VOTING SECURITIES***.

From and after the Effective Date, the Reorganized Debtors will comply with section 1123(a)(6) of the Bankruptcy Code so long as it is applicable.

## ARTICLE X

## EFFECT OF CONFIRMATION

10.1.     ***VESTING OF ASSETS***.

Upon the Effective Date, pursuant to section 1141(b) and (c) of the Bankruptcy Code, all property of the Debtors shall vest in each of the Reorganized Debtors free and clear of all Claims, Liens,

- 27 -

encumbrances, charges, and other interests, except as provided in the Plan.  From and after the Effective Date, the Reorganized Debtors may operate their businesses and may use, acquire, and dispose of property free of any restrictions of the Bankruptcy Code or the Bankruptcy Rules and in all respects as if there were no pending case under any chapter or provision of the Bankruptcy Code.

        10.2.  *DISCHARGE OF CLAIMS AND TERMINATION OF SERIES B PREFERRED STOCK INTERESTS, LPC COMMON STOCK INTERESTS AND ALL OTHER EQUITY INTERESTS*.

        Except as provided in the Plan, the rights afforded in and the payments and distributions to be made under the Plan shall be in exchange for and in complete satisfaction, discharge, and release of all Series B Preferred Stock Interests, all LPC Common Stock Interests, all Other Equity Interests and all existing debts and Claims of any kind, nature, or description whatsoever, including any interest accrued on such Claims from and after the Commencement Date, against the Debtors or any of their assets or properties to the fullest extent permitted by section 1141 of the Bankruptcy Code.  Except as provided in the Plan, upon the Effective Date, all existing Claims against the Debtors and Series B Preferred Stock Interests, LPC Common Stock Interests and Other Equity Interests in the Debtors shall be, and shall be deemed to be, discharged and terminated, and all holders of Claims and Series B Preferred Stock Interests, LPC Common Stock Interests and Other Equity Interests shall be precluded and enjoined from asserting against the Reorganized Debtors, their successors or assignees, or any of their assets or properties, any other or further Claim or Series B Preferred Stock Interest, LPC Common Stock Interest or Other Equity Interest based upon any act or omission, transaction, or other activity of any kind or nature that occurred prior to the Effective Date, whether or not such holder has filed a proof of Claim or proof of Series B Preferred Stock Interest, LPC Common Stock Interest or Other Equity Interest, and whether or not the facts or legal bases therefor were known or existed prior to the Effective Date.

        10.3.  *DISCHARGE OF DEBTORS*.

        Upon the Effective Date and in consideration of the distributions to be made under the Plan, except as otherwise expressly provided in the Plan, each holder (as well as any trustee or agent on behalf of any holder) of a Claim or Interest and any affiliate of such holder shall be deemed to have forever waived, released and discharged the Debtors and their assets, to the fullest extent permitted by section 1141 of the Bankruptcy Code, of and from any and all Claims, Interests, rights, and liabilities that arose prior to the Effective Date.  Upon the Effective Date, all such persons shall be forever precluded and enjoined, pursuant to section 524 of the Bankruptcy Code, from prosecuting or asserting any such Claim against or Interest in the Debtors or their assets.

        10.4.  *INJUNCTION OR STAY*.

        Except as otherwise expressly provided in the Plan, all persons or entities who have held, hold or may hold Claims or Interests and all other parties in interest, along with their respective present or former employees, agents, officers, directors, principals and affiliates, are permanently enjoined, from and after the Effective Date, from (i) commencing or continuing in any manner any action or other proceeding of any kind with respect to any such Claim against or Interest in the Debtors or the Reorganized Debtors, (ii) the enforcement, attachment, collection or recovery by any manner or means of any judgment, award, decree or order against the Debtors or Reorganized Debtors, (iii) creating, perfecting, or enforcing any encumbrance of any kind against the Debtors or Reorganized Debtors or against the property or interests in property of the Debtors or Reorganized Debtors, (iv) asserting any right of setoff, subrogation or recoupment of any kind against any obligation due from the Debtors or the Reorganized Debtors or against the property or interests in property of the Debtors or the Reorganized Debtors, with respect to any such Claim or Interest, or (v) pursuing any Claim released pursuant to Article X of the Plan or under the Final Cash Collateral Order.  Such injunction shall extend to any successors of the Debtors and the Reorganized Debtors and their respective properties and interest in properties.

10.5.   *TERM OF INJUNCTIONS OR STAYS*.

Unless otherwise provided, all injunctions or stays arising under or entered during the Chapter 11 Cases under section 105 or 362 of the Bankruptcy Code, or otherwise, and in existence on the Confirmation Date, shall remain in full force and effect until the later of the Effective Date and the date indicated in the order providing for such injunction or stay.  Without limiting the foregoing, any releases in favor of the Committee, the Agents, the Prepetition Revolver Lenders, or the Prepetition Term Loan Lenders shall survive the Effective Date and remain in place into perpetuity

10.6.   *INJUNCTION AGAINST INTERFERENCE WITH PLAN*.

Upon the entry of the Confirmation Order, all holders of Claims or Interests and other parties in interest, along with their respective present or former employees, agents, officers, directors, principals and affiliates shall be enjoined from taking any actions to interfere with the implementation or consummation of the Plan.

10.7.   *EXCULPATION*.

**Notwithstanding anything herein to the contrary, as of the Effective Date, none of the Plan Proponents or the Prepetition Revolver Lender or the Prepetition Term Loan Lenders and their respective directors, officers, employees, partners, members, agents, representatives, accountants, financial advisors, investment bankers, or attorneys (but solely in their capacities as such) (each a "<u>Protected Person</u>") shall have or incur any liability for any claim, cause of action or other assertion of liability for any act taken or omitted to be taken since the Commencement Date in connection with, or arising out of, the Chapter 11 Cases, the formulation, dissemination, confirmation, consummation, or administration of the Plan, property to be distributed under the Plan, or any other act or omission in connection with the Chapter 11 Cases, the Plan, the Disclosure Statement or any contract, instrument, document or other agreement related thereto; <u>provided</u>, <u>however</u>, that the foregoing shall not affect the liability of any person that would otherwise result from any such act or omission to the extent such act or omission is determined by a Final Order to have constituted willful misconduct, gross negligence, fraud, criminal conduct, intentional unauthorized misuse of confidential information that causes damages, or *ultra vires* act.  The Confirmation Order shall enjoin all holders of Claims and Interests from asserting or prosecuting any claim or cause of action against any Protected Person as to which such Protected Person has been exculpated from liability pursuant to the preceding sentence.**

10.8.   *RELEASES*

**Effective as of the Confirmation Date, but subject to the occurrence of the Effective Date, and in consideration of the services provided to the Debtors by (a) the Agents, (b) the Prepetition Revolver Lenders, (c) the Prepetition Term Loan Lenders and (d) the Committee, (1) the Debtors, (2) each holder of a Claim or Interest that votes to accept a Plan but does not elect to "opt-out," (3) each holder of a Claim or Interest that is deemed to accept a Plan, and (4) to the fullest extent permissible under applicable law, as such law may be extended or integrated after the Effective Date, each holder of a Claim or Interest that does not vote to accept a Plan and that does not elect to "opt-out," shall release, unconditionally and forever, each future, present or former affiliate, agent, financial advisor, attorney and representative (and their respective affiliates) of the Agents, the Prepetition Revolver Lenders, the Prepetition Term Loan Lenders, and the Committee, and each of their respective present and future members, officers, directors, agents, financial advisors, attorneys, employees, equity holders, parent corporations, subsidiaries, partners, affiliates and representatives from any and all claims or causes of action that exist as of the Effective Date and arise from or relate, in any manner, in whole or in part, to the operation of the business of the Debtors, the subject matter of, or the transaction or event giving rise to, the Claim or Interest of**

such holder, the business or contractual arrangements between any Debtor and such holder, any restructuring of such Claim or Interest prior to the Commencement Date, or any act, omission, occurrence, or event in any manner related to such subject matter, transaction or obligation, or arising out of the Chapter 11 Cases, including, but not limited to, the pursuit of confirmation of the Plan, the consummation thereof, the administration thereof, or the property to be distributed thereunder; provided, that the foregoing shall not operate as a waiver of or release from any causes of action arising out of the willful misconduct, gross negligence, fraud, criminal conduct, intentional unauthorized misuse of confidential information that causes damages, or ultra vires acts of any such person or entity.

10.9.   *AVOIDANCE ACTIONS*.

Other than any releases granted herein, by the Confirmation Order and by Final Order of the Bankruptcy Court, as applicable, from and after the Effective Date, the Reorganized Debtors shall have the sole right to prosecute any and all avoidance actions, equitable subordination actions or recovery actions under sections 105, 502(d), 510, 542 through 551, and 553 of the Bankruptcy Code that belong to the Debtors or Debtors in Possession.  The net proceeds, if any, received shall be used for Reorganized Debtors, subject to the adequate protection liens in favor of the Agents, the Prepetition Revolver Lenders and the Prepetition Term Loan Lenders under the Final Cash Collateral Order, which liens shall remain in place subject to the occurrence of the Effective Date, and for clarity, which amounts are subject to the lien grants of the New Secured CapitalSource Credit Agreement and the New Secured CSE Loan Agreement.

10.10.   *RETENTION OF CAUSES OF ACTION/RESERVATION OF RIGHTS*.

(a)     Except as provided in Section 5.1 or Article X hereof, nothing contained in the Plan or the Confirmation Order shall be deemed to be a waiver or relinquishment of any rights or causes of action that the Debtors or the Reorganized Debtors may have or which the Reorganized Debtors may choose to assert on behalf of their respective estates under any provision of the Bankruptcy Code or any applicable nonbankruptcy law, including, without limitation, (i) any and all Claims against any Entity, to the extent such Entity asserts a crossclaim, a counterclaim, and/or a Claim for setoff that seeks affirmative relief against the Debtors, the Reorganized Debtors, their officers, directors, or representatives and (ii) the turnover of any property of the Debtors' estates.

(b)     Except as provided in Section 5.1 or Article X hereof, nothing contained in the Plan or the Confirmation Order shall be deemed to be a waiver or relinquishment of any claim, cause of action, right of setoff, or other legal or equitable defense that the Debtors had immediately prior to the Commencement Date, against or with respect to any Claim left unimpaired by the Plan.  The Reorganized Debtors shall have, retain, reserve, and be entitled to assert all such claims, causes of action, rights of setoff, and other legal or equitable defenses that the Debtors had immediately prior to the Commencement Date as fully as if the Chapter 11 Cases had not been commenced, and all of the Reorganized Debtors' legal and equitable rights respecting any Claim that are left unimpaired by the Plan may be asserted after the Confirmation Date to the same extent as if the Chapter 11 Cases had not been commenced.

10.11.   *LIMITATIONS ON EXCULPATION AND RELEASES OF REPRESENTATIVES*.

Nothing in Sections 10.7 or 10.8 of the Plan shall (i) be construed to release or exculpate any entity from fraud, malpractice, criminal conduct, intentional unauthorized misuse of confidential information that causes damages, or *ultra vires* acts, or (ii) limit the liability of the professionals of the Debtors, the Reorganized Debtors, the Plan Proponents, the Prepetition Revolver Lenders, or the Prepetition Term Loan Lenders to their respective clients pursuant to DR 6-102 of the Code of Professional Responsibility.

NYC:203104.4

## ARTICLE XI

## CONDITIONS PRECEDENT TO EFFECTIVE DATE

11.1.    *CONDITIONS PRECEDENT TO EFFECTIVENESS*.

The Effective Date shall not occur and the Plan shall not become effective unless and until the following conditions are satisfied in full or waived in accordance with Section 11.2 of the Plan:

(a)    The Confirmation Order, in form and substance acceptable to the Plan Proponents, shall have been entered and shall not be subject to any stay or injunction;

(b)    All actions, documents, and agreements necessary to implement the Plan shall have been effected or executed;

(c)    The conditions precedent to the effectiveness of the New Secured CapitalSource Credit Agreement, the New Secured CSE Loan Agreement, the Exit Financing Agreement and the New Priority Working Capital Facility shall have been satisfied or waived by the parties thereto and the Reorganized Debtors shall have access to funds pursuant to the Exit Financing Agreement and the New Priority Working Capital Facility; and

(d)    The Plan Proponents shall have received all authorizations, consents, regulatory approvals, rulings, letters, no-action letters, opinions, or documents that are determined by the Plan Proponents to be necessary to implement the Plan or that are required by law, regulation, or order.

11.2.    *WAIVER OF CONDITIONS*.

Other than item (a), each of the conditions precedent in Section 11.1 hereof may be waived in whole or in part by the Plan Proponents, in their sole discretion; provided that such waiver is by the party in whose favor such conditions precedent run, with such waiving party being only either the Committee or the Agents, as applicable.  Any such waiver may be effected at any time, without notice or leave or order of the Bankruptcy Court and without any formal action.

11.3.    *EFFECT OF FAILURE OF CONDITIONS TO EFFECTIVE DATE*.

In the event the conditions precedent specified in Section 11.1 hereof have not been satisfied or waived pursuant to Section 11.2 hereof on or prior to the 120th day after the Confirmation Order becomes a Final Order, then, upon the Plan Proponents' motion (i) the Confirmation Order shall be vacated, (ii) no distributions under the Plan shall be made, (iii) the Debtors and all holders of Claims and Interests shall be restored to the *status quo ante* as of the day immediately preceding the Confirmation Date as though the Confirmation Date had never occurred, and (iv) all of the Debtors' obligations with respect to the Claims and Interests shall remain unchanged and nothing contained herein shall be deemed to constitute a waiver or release of any claims by or against the Debtors or any other Entity or to prejudice in any manner the rights of the Debtors or any other Entity in any further proceedings involving the Debtors.

## ARTICLE XII

## RETENTION OF JURISDICTION

On and after the Effective Date, the Bankruptcy Court shall have exclusive jurisdiction over all matters arising out of, arising under, and related to the Chapter 11 Cases and the Plan pursuant to, and for the purpose of, sections 105(a) and 1142 of the Bankruptcy Code, including, without limitation:

NYC:203104.4

(a)     To hear and determine pending applications for the assumption or rejection of executory contracts or unexpired leases, the allowance of Claims resulting therefrom and any disputes with respect to executory contracts or unexpired leases relating to the facts and circumstances arising out of or relating to the Chapter 11 Cases;

(b)     To determine any motion, adversary proceeding, application, contested matter, and other litigated matter pending on or commenced after the Confirmation Date;

(c)     To ensure that distributions to holders of Allowed Claims and Interests are accomplished as provided herein;

(d)     To consider Claims or the allowance, classification, priority, compromise, estimation, or payment of any Claim, Administrative Expense Claim, or Interest;

(e)     To enter, implement, or enforce such orders as may be appropriate in the event the Confirmation Order is stayed, reversed, revoked, modified, or vacated for any reason;

(f)     To issue injunctions, enter and implement other orders, and take such other actions as may be necessary or appropriate to prevent interference by any person with the consummation, implementation, or enforcement of the Plan, the Confirmation Order, or any other order of the Bankruptcy Court;

(g)     To hear and determine any application to modify the Plan in accordance with section 1127 of the Bankruptcy Code, to remedy any defect or omission or reconcile any inconsistency in the Plan, the Disclosure Statement, or any order of the Bankruptcy Court, including the Confirmation Order, in such manner as may be necessary to carry out the purposes and effects thereof;

(h)     To hear and determine all applications under sections 330, 331, and 503(b) of the Bankruptcy Code for awards of compensation for services rendered and reimbursement of expenses incurred prior to the Confirmation Date;

(i)     To consider any amendments to or modifications of the Plan or to cure any defect or omission, or reconcile any inconsistency, in  any order of the Bankruptcy Court, including, without limitation, the Confirmation Order;

(j)     To hear and determine disputes arising in connection with the interpretation, implementation, or enforcement of the Plan, the Confirmation Order, any transactions or payments contemplated hereby or thereby, or any agreement, instrument, or other document governing or relating to any of the foregoing;

(k)     To take any action and issue such orders as may be necessary to construe, enforce, implement, execute, and consummate the Plan or to maintain the integrity of the Plan following the Effective Date;

(l)     To determine such other matters and for such other purposes as may be provided in the Confirmation Order;

(m)     To hear and determine matters concerning state, local, and federal taxes in accordance with sections 346, 505, and 1146 of the Bankruptcy Code (including the expedited determination of tax under section 505(b) of the Bankruptcy Code);

(n)     To determine the scope of any discharge of any Debtor under the Plan or the Bankruptcy Code;

- 32 -

(o)      To recover all assets of the Debtors and all property of the Debtors' estates, wherever located;

(p)      To hear and determine any rights, claims or causes of action held by or accruing to the Debtors pursuant to the Bankruptcy Code, any other federal or state statute, or any legal theory;

(q)      To enter a final decree closing the Chapter 11 Cases;

(r)      To determine any other matters that may arise in connection with or are related to the Plan, the Disclosure Statement, the Confirmation Order any of the Plan Documents, or any other contract, instrument, release or other agreement or document related to the Plan, the Disclosure Statement or the Plan Supplement; and

(s)      To hear and determine any other matter not inconsistent with the Bankruptcy Code.

NYC:203104.4

## ARTICLE XIII

## MISCELLANEOUS PROVISIONS

13.1.    *EFFECTUATING DOCUMENTS AND FURTHER TRANSACTIONS*.

The Reorganized Debtors are authorized to execute, deliver, file, or record such contracts, instruments, releases, indentures, and other agreements or documents (including, without limitation, the Amended and Restated By-Laws, the Amended and Restated Charter, the New LPC Warrants, the New Secured CapitalSource Credit Agreement, the New Secured CSE Loan Agreement, the New Unsecured LPC Notes, the New Unsecured LRGI Notes, the Exit Financing Agreement, the Stockholders' Agreement, the New Priority Working Capital Facility and the Intercreditor Agreement) and take such actions as may be necessary or appropriate to effectuate and further evidence the terms and conditions of the Plan and any securities issued pursuant to the Plan.

13.2.    *WITHHOLDING AND REPORTING REQUIREMENTS*.

In connection with the Plan and all instruments issued in connection therewith and distributed thereunder, any party issuing any instrument or making any distribution under the Plan, shall comply with all applicable withholding and reporting requirements imposed by any federal, state, or local taxing authority, and all distributions under the Plan shall be subject to any such withholding or reporting requirements.  Notwithstanding the above, each holder of an Allowed Claim that is to receive a distribution under the Plan shall have the sole and exclusive responsibility for the satisfaction and payment of any tax obligations imposed by any governmental unit, including income, withholding, and other tax obligations, on account of such distribution.  Any party issuing any instrument or making any distribution under the Plan has the right, but not the obligation, to not make a distribution until such holder has made arrangements satisfactory to such issuing or disbursing party for payment of any such tax obligation.

13.3.    *CORPORATE ACTION*.

On the Effective Date, all matters provided for under the Plan that would otherwise require approval of the stockholders or directors of one or more of the Debtors or the Reorganized Debtors (including, without limitation, the filing of the Amended and Restated Charter, the adoption of the Amended and Restated By-Laws, the authorization to issue or cause to be issued the LPC Common Stock, the change in the size of the Boards of Directors of the Reorganized Debtors, and the election or appointment, as the case may be, of directors and officers of the Reorganized Debtors) shall be deemed to have occurred and shall be in effect from and after the Effective Date pursuant to the applicable general corporation law of the states in which the Debtors or the Reorganized Debtors are incorporated, without any requirement for further action by the stockholders or directors of the Debtors or the Reorganized Debtors.

13.4.    *EXEMPTION FROM TRANSFER TAXES*.

Pursuant to section 1146(a) of the Bankruptcy Code, the issuance, transfer, or exchange of notes or equity securities under the Plan, the creation of any mortgage, deed of trust, or other security interest, the making or assignment of any lease or sublease, or the making or delivery of any deed or other instrument of transfer under, in furtherance of, or in connection with the Plan, including, without limitation, the LPC Common Stock, the New LPC Warrants, the New Secured CapitalSource Credit Agreement, the New Secured CSE Loan Agreement, the Exit Financing Agreement, the New Priority Working Capital Facility, the New Unsecured LPC Notes, the New Unsecured LRGI Notes, any merger

- 34 -

agreements or agreements of consolidation, deeds, bills of sale, or assignments executed in connection with any of the transactions contemplated under the Plan, shall not be subject to any stamp, real estate transfer, mortgage recording, or other similar tax. All sale transactions consummated by the Debtors and approved by the Bankruptcy Court on and after the Commencement Date through and including the Effective Date, including, without limitation, the transfers effectuated under the Plan, the sale by the Debtors of owned property pursuant to section 363(b) of the Bankruptcy Code, and the assumption, assignment, and sale by the Debtors of unexpired leases of non-residential real property pursuant to section 365(a) of the Bankruptcy Code, shall be deemed to have been made under, in furtherance of, or in connection with the Plan and, thus, shall not be subject to any stamp, real estate transfer, mortgage recording, or other similar tax.

13.5.    ***EXPEDITED TAX DETERMINATION***.

The Debtors and the Reorganized Debtors are authorized to request an expedited determination of taxes under section 505(b) of the Bankruptcy Code for any and all returns filed for, or on behalf of, the Debtors for any and all taxable periods (or portions thereof) ending after the Commencement Date through, and including, the Effective Date.

13.6.    ***PAYMENT OF STATUTORY FEES***.

On the Effective Date, and thereafter as may be required, the Debtors shall pay all fees payable pursuant to section 1930 of chapter 123 of title 28 of the United States Code.

13.7.    ***POST-CONFIRMATION DATE PROFESSIONAL FEES AND EXPENSES***.

From and after the Confirmation Date, the Reorganized Debtors shall, in the ordinary course of business and without the necessity for any approval by the Bankruptcy Court, pay the reasonable fees and expenses of professional persons thereafter incurred by the Reorganized Debtors.

13.8.    ***DISSOLUTION OF STATUTORY COMMITTEES***.

On the Effective Date, the Committee shall be dissolved and the members thereof shall be released and discharged of and from all further authority, duties, responsibilities and obligations relating to and arising from and in connection with the Chapter 11 Cases, and the retention or employment of the Committee's attorneys, financial advisors, accountants and other agents, if any, shall terminate other than for purposes of filing and prosecuting applications for final allowances of compensation for professional services rendered and reimbursement of expenses incurred in connection therewith.

13.9.    ***INDENTURE TRUSTEE AS CLAIM HOLDER***.

Consistent with Bankruptcy Rule 3003(c), the Reorganized Debtors shall recognize proofs of claim timely filed by any Indenture Trustee in respect of any Claims under the Indenture. Accordingly, any Claim, proof of which is filed by the registered or beneficial holder of a Claim, may be disallowed as duplicative of the Claim of the Indenture Trustee, without any further action of the Bankruptcy Court.

13.10.    ***PLAN SUPPLEMENT***.

A draft form of the Plan Documents to be entered into as of the Effective Date and any other appropriate documents shall be contained in the Plan Supplement and filed with the Clerk of the Bankruptcy Court no later than ten (10) days prior to the last date by which holders of impaired Claims may vote to accept or reject the Plan. Upon its filing with the Bankruptcy Court, the Plan Supplement

- 35 -

may be inspected in the office of the Clerk of the Bankruptcy Court during normal court hours. Documents to be included in the Plan Supplement will be posted at a website identified in the Disclosure Statement as they become available, but no later than five (5) days prior to the last date by which votes to accept or reject the Plan must be received.

### 13.11. *SUBSTANTIAL CONSUMMATION*.

On the Effective Date, the Plan shall be deemed to be substantially consummated under sections 1101 and 1127(b) of the Bankruptcy Code.

### 13.12. *AMENDMENTS OR MODIFICATIONS OF THE PLAN*.

Alterations, amendments, or modifications of or to the Plan may be proposed in writing by the Plan Proponents at any time prior to the Confirmation Date, provided that the Plan, as altered, amended, or modified, satisfies the conditions of sections 1122 and 1123 of the Bankruptcy Code, and the Plan Proponents shall have complied with section 1125 of the Bankruptcy Code. After the Confirmation Date, so long as such action does not materially and adversely affect the treatment of holders of Claims or Interests under the Plan, the Plan Proponents may institute proceedings in the Bankruptcy Court to remedy any defect or omission or reconcile any inconsistencies in the Plan or the Confirmation Order, with respect to such matters as may be necessary to carry out the purposes and effects of the Plan. A holder of a Claim or Interest that has accepted the Plan shall be deemed to have accepted the Plan, as altered, amended, or modified, if the proposed alteration, amendment, or modification does not materially and adversely change the treatment of the Claim or Interest of such holder.

### 13.13. *REVOCATION OR WITHDRAWAL OF THE PLAN*.

The Plan Proponents reserve the right to revoke or withdraw the Plan prior to the Effective Date. If the Plan Proponents take such action, the Plan shall be deemed null and void. In such event, nothing contained in the Plan shall constitute or be deemed a waiver or release of any Claims against or Series B Preferred Stock Interests, LPC Common Stock Interests or Other Equity Interests in the Debtors, any claims or rights of the Plan Proponents against any other person or to prejudice in any manner the rights of the Plan Proponents or any other person in any further proceedings involving the Debtors.

### 13.14. *SEVERABILITY*.

If, prior to the entry of the Confirmation Order, any term or provision of the Plan is held by the Bankruptcy Court to be invalid, void, or unenforceable, the Bankruptcy Court, at the request of the Debtors, shall have the power to alter and interpret such term or provision to make it valid or enforceable to the maximum extent practicable, consistent with the original purpose of the term or provision held to be invalid, void, or unenforceable, and such term or provision as altered or interpreted shall then be applicable. Notwithstanding any such holding, alteration, or interpretation, the remainder of the terms and provisions of the Plan will remain in full force and effect and will in no way be affected, impaired, or invalidated by such holding, alteration, or interpretation. The Confirmation Order shall constitute a judicial determination and shall provide that each term and provision of the Plan, as it may have been altered or interpreted in accordance with the foregoing, is valid and enforceable pursuant to its terms.

NYC:203104.4

13.15.  *GOVERNING LAW*.

Except to the extent that the Bankruptcy Code or other federal law is applicable, or to the extent an exhibit hereto or a schedule or document in the Plan Supplement provides otherwise, the rights, duties, and obligations arising under the Plan shall be governed by, and construed and enforced in accordance with, the laws of the State of New York, without giving effect to the principles of conflict of laws thereof.

13.16.  *BINDING EFFECT*.

The Plan shall be binding upon and inure to the benefit of the Plan Proponents, the Debtors, the holders of Claims and Interests, and their respective successors and assigns, including, without limitation, the Reorganized Debtors.

13.17.  *EXHIBITS/SCHEDULES*.

All exhibits and schedules to the Plan, including the Plan Supplement, are incorporated into and are a part of the Plan as if set forth in full herein.

13.18.  *NOTICES*.

In order to be effective, all notices, requests, and demands to or upon the Plan Proponents must be in writing (including by facsimile transmission) and, unless otherwise expressly provided herein, shall be deemed to have been duly given or made when actually delivered or, in the case of notice by facsimile transmission, when received and telephonically confirmed, addressed as follows:

ANDREWS KURTH LLP
450 Lexington Avenue, 15th Floor
New York, New York 10017
Attn: Paul N. Silverstein and Jonathan Levine
Telephone: (212) 850-2800
Facsimile: (212) 850-2929

- and -

WALLER LANSDEN DORTCH & DAVIS
511 Union Street, Suite 2700
Nashville, Tennessee 37219
Attn: John C. Tishler
Telephone: (615) 244-6380
Facsimile: (615) 244-6804

13.19.  *TIME*.

In computing any period of time prescribed or allowed by the Plan, unless otherwise set forth herein or determined by the Bankruptcy Court, the provisions of Bankruptcy Rule 9006 shall apply.

13.20.  *SECTION HEADINGS*.

The section headings contained in the Plan are for reference purposes only and shall not affect in any way the meaning or interpretation of the Plan.

Dated:  New York, New York
        December 16, 2009

Respectfully submitted,

OFFICIAL COMMITTEE OF UNSECURED
CREDITORS


By: _____
     Name:
     Title:  Authorized Signatory


CAPITALSOURCE FINANCE LLC,

*AS AGENT FOR THE PREPETITION REVOLVER
LENDERS*


By: _____
     Name:
     Title:  Authorized Signatory


CSE MORTGAGE LLC,

*AS AGENT FOR THE PREPETITION TERM LOAN
LENDERS*


By: _____
     Name:
     Title:  Authorized Signatory

**EXHIBIT 1.5**

**Amended and Restated By-Laws**

**[TO BE PROVIDED]**

NYC:203104.4

**EXHIBIT 1.6**

**Amended and Restated Charter**

**[TO BE PROVIDED]**

NYC:203104.4

**EXHIBIT 1.44**

**Summary of Terms of Exit Financing Agreement**

**Lender(s)**........................................... Certain Holders of Allowed Class 5 Claims (the "Exit Financing Parties").

**Amount** ............................................. Cash in the amount of $9.5 million.

**Maturity**........................................... [60] months from the Effective Date.

**Interest Rate** ................................... [LIBOR plus 1000 bps with a floor of 350 bps]. Interest will be Paid In Kind, but the Board of Directors of Reorganized LPC may elect to pay cash interest if the bank debt leverage ratio is less than certain agreed upon levels; provided, however, that interest may not be paid in cash until all amounts outstanding under the Senior Debt Documents are indefeasibly paid in full in cash and all commitments under the Senior Debt Documents are terminated.

**Security and Ranking** ..................... The Exit Financing Notes shall be unsecured and expressly subordinate (in the manner described in Exhibit 1.58) to any and all rights to payment under the New Secured CapitalSource Credit Agreement, the New Secured CSE Loan Agreement and the New Priority Working Capital Facility. The Exit Financing Agreement shall contain limitations on incurrence of senior indebtedness (other than under the New Secured CapitalSource Credit Agreement, the New Secured CSE Loan Agreement and the New Priority Working Capital Facility).

**Fee** ................................................... The Exit Financing Parties shall receive on a pro rata basis 35% of the New LPC Common Stock and unsecured and expressly subordinated notes in the aggregate amount of $1.5 million issued as a fee for providing new capital to the Reorganized Debtors. The Exit Financing Fee Notes shall be expressly subordinate (in the manner described in Exhibit 1.58) to any and all rights to payment under the New Secured CapitalSource Credit Agreement, the New Secured CSE Loan Agreement and the New Priority Working Capital Facility.

**Use of Proceeds**............................... The proceeds received pursuant to the issuance of the Exit Financing Notes shall be used (i) to pay off the DIP Loan in full, (ii) to implement distributions under the Plan on the Effective Date, (iii) to pay professional fees and expenses and (iv) for general corporate purposes up to $2 million.

NYC:203104.4

**EXHIBIT 1.58**

**Summary of Terms of the Intercreditor Agreement**

**Subordinated Lender(s)**.................. (i) Holders of Allowed Classes 7 and 17 Claims and (ii) certain holders of Allowed Class 5 Claims, which are parties to the Exit Financing Agreement (collectively, "Subordinated Lenders").

**Senior Lender(s)**.............................. (i) Holders of Allowed Classes 2(A), 2(B), 14(A) and 14(B) Claims and (ii) all lenders under the New Priority Working Capital Facility (collectively, "Senior Lenders")

**Subordination**................................. All obligations, liabilities and/or indebtedness of every nature of any Reorganized Debtor from time to time owed to any Subordinated Lender under the Subordinated Debt Documents (as defined hereinafter) or otherwise, whether now existing or hereafter created (collectively, the "Subordinated Debt") shall be subordinate and subject in right and time of payment to the indefeasible payment in full in cash of all obligations, liabilities and/or indebtedness of every nature of any Reorganized Debtor from time to time owed to any Senior Lender under the Senior Debt Documents (as defined hereinafter) or otherwise, whether now existing or hereafter created (collectively, the "Senior Debt").

**No Security** ...................................... Until (i) all Senior Debt is indefeasibly paid in cash and (ii) all commitments under (a) the New CapitalSource Credit Agreement, (b) the New CSE Loan Agreement and (c) any other document, agreement and/or instrument now existing or hereafter entered into evidencing or pertaining to all or any portion of the Senior Debt (collectively, the "Senior Debt Documents") are terminated, neither the Subordinated Debt nor any portion thereof shall be secured by any lien or security interest in any of the property (real or personal, tangible or intangible) of any Reorganized Debtor.

**No Payments** ................................... No Subordinated Lender shall accept any form of payment from any Reorganized Debtor on account of any Subordinated Debt until all of the Senior Debt is indefeasibly paid in full in cash and all commitments under the Senior Debt Documents are terminated.

**No Enforcement Action** .................. Until the Senior Debt is indefeasibly paid in full in cash and all commitments under the Senior Debt Documents are terminated, the Subordinated Lenders shall not, without the prior written consent of the Senior Lenders, take any enforcement action against any Reorganized Debtor with respect to any Subordinated Debt, including, without limitation, (i) to take from or for the account of any Reorganized Debtor by set-off or in any manner, the whole or any part of any moneys which may now or hereafter be owing by any Reorganized Debtor with respect to any Subordinated Debt; (ii) to sue for payment of, or to initiate or participate with others in any suit, action or proceeding

NYC:203104.4

against any Reorganized Debtor; (iii) to enforce payment of or to collect the whole or any part of any Subordinated Debt; or (iv) to commence judicial enforcement of any of the rights and remedies under (a) the New Unsecured LPC Notes, (b) the New Unsecured LRGI Notes and/or (c) any other document, agreement and/or instrument now existing or hereafter entered into evidencing or pertaining to all or any portion of the Subordinated Debt (collectively, the "Subordinated Debt Documents") or applicable law with respect to the Subordinated Debt.

**Proceedings**........................................ In the event of any voluntary or involuntary insolvency, bankruptcy, receivership, custodianship, liquidation, dissolution, reorganization, assignment for the benefit of creditors, appointment of a custodian, receiver, trustee or other officer with similar powers or any other proceeding for the liquidation, dissolution or other winding up of any Reorganized Debtor, the Senior Debt shall continue to be treated as the set forth in the Intercreditor Agreement and the Intercreditor Agreement shall continue to govern the relative rights and priorities of Senior Lenders and Subordinated Lenders.

**Sale, Transfer or other Disposition of Subordinated Loans** .................... No Subordinated Lender shall sell, assign, pledge, dispose of or otherwise transfer all or any portion of the Subordinated Debt or any Subordinated Debt Document to any Entity unless such Entity has entered into an intercreditor agreement in favor of Senior Lenders in substantially the same terms as the Intercreditor Agreement.

**Modifications of Debt Documents** . Senior Lenders may at any time and from time to time without the consent of or notice to any Subordinated Lender amend, supplement or otherwise modify in any manner the terms and conditions of the Senior Debt Documents. Until the Senior Debt is indefeasibly paid in full in cash and all commitments under the Senior Debt Documents are terminated, no Subordinated Lender shall, without the prior written consent of the Senior Lenders, agree to amend, supplement or otherwise modify the Subordinated Debt Documents in any manner adverse to the Senior Lenders, as reasonably determined by the Senior Lenders.

## EXHIBIT 1.69

### Summary of Terms of New LPC Warrants

**Warrants**…………………………    Equity warrants equal to 100,000 shares (i.e. 10%) of the voting stock in Reorganized LPC shall be granted and distributable Pro Rata to the holders of the New CapitalSource Secured Debt and the holders of the New CSE Secured Debt.  The warrants shall be exercisable under a Liquidity Event (to be defined in the New Secured Capital Source Credit Agreement and the New CSE Secured Loan Agreement), and shall expire upon full payment and satisfaction and payment in full of the New Priority Working Capital Facility, the New CapitalSource Secured Debt and the New CSE Secured Debt. The warrants shall have strike price/put rights to reflect that the Agents shall receive their Pro Rata portion of net proceeds generated in a Liquidity Event following satisfaction of the New CapitalSource Secured Debt and the New CSE Secured Debt, the amounts outstanding under the Exit Financing Notes and recoveries to the holders of the Senior Subordinated Notes equal to 70% of their pre-petition principal outstanding, or $23.9 million.

- 44 -

NYC:203104.4

**EXHIBIT 1.70**

**Summary of Terms of New Priority Working Capital Facility**

| | |
|---|---|
| **Lenders** | CapitalSource and Webster Business Credit |
| **Amount** | A working capital facility of up to $4,000,000 (the "<u>New Priority Working Capital Facility</u>"). |
| **Term** | 24 months from the Effective Date |
| **Interest Rate** | LIBOR plus the applicable interest rate margin of 700 bps with a LIBOR floor of 250 bps. |
| **Security and Ranking** | Same as in the Prepetition Credit Agreement and all ancillary documents (the "<u>Prepetition Revolver Loan Documents</u>"). The New Priority Working Capital Facility shall have a priority first lien position, subject to the terms of the Existing Intercreditor Agreement, as may be amended. |
| | Advances under the New Priority Working Capital Facility shall be subject to a borrowing base formula, similar to the prepetition facility under the Prepetition Revolver Loan Documents, with availability based on new or incremental availability created after the Effective Date. For example, assuming availability under the borrowing base formula equals $10,000,000 on the Effective Date. Advances would only be permitted under the facility to the extent availability exceeds $10,000,000. |
| **General Terms** | The New Priority Working Capital Facility will contain customary protections and covenants afforded to senior secured lenders and will be substantially the same as the Prepetition Revolver Loan Documents, including full cash dominion and control. |
| **Fees** | (i) 2% commitment fee ($80,000) based on the New Priority Working Capital Facility commitment, to be fully earned on the Effective Date and financed from the New Secured Loans[ and (ii) an unused line fee in the amount of 50 basis points per annum, payable monthly]. |

- 45 -

NYC:203104.4

**EXHIBIT 1.72**

**Summary of Terms of New Secured CapitalSource Credit Agreement**

| | |
|---|---|
| **Lender(s)**........................................... | CapitalSource Finance LLC ("CapitalSource") and Webster Business Credit (the "New Revolver Lenders"). |
| **Amount** ........................................... | The Committee and CaptialSource shall stipulate to the amount fully due and owing under the Prepetition Credit Agreement on the Confirmation Date, and that amount shall represent the original principal amount of the New Secured CapitalSource Credit Agreement (collectively, the "New Secured Revolver Loans"). |
| **Term**................................................. | 24 months from the Effective Date |
| **Interest Rate** .................................... | LIBOR plus the applicable interest rate margin of 700 bps with a LIBOR floor of 250 bps blended throughout the various tranches under the New Secured Revolver Loans. |
| **Fees**................................................... | Letter of Credit fees equal to the interest rate margin. |
| **Security and Ranking** ..................... | Same as in the Prepetition Revolver Loan Documents (as defined in Exhibit 1.69), subject to the terms of the Existing Credit Agreement, as may be amended. |
| **Amortization**.................................... | Substantially the same as set forth in the Prepetition Credit Agreement. |
| **Excess Cash Flow Recapture** ......... | Mandatory prepayments of 50% of Excess Cash Flow shall be applied to the New Secured Revolver Loans in a customary manner. Excess Cash Flow shall be measured on a quarterly basis with mandatory prepayments required for any amounts exceeding 1.50x an agreed-upon fixed charge coverage ratio. |
| **General Terms**................................. | The New Secured Capital Source Credit Agreement will include customary protections and covenants afforded to senior secured lenders and will be substantially the same as the Prepetition Revolver Loan Documents. |
| **Asset Sales**....................................... | 100% of the net proceeds from any sales of assets on which the Senior Lenders have first priority liens and shall be used to pay down the New Secured Revolver Loans, and shall be allocated in a manner consistent with the Prepetition Credit Agreement, subject to the terms of Existing Intercreditor Agreement, as may be amended. |
| **Sale of Non-Core Assets**.................. | The Reorganized Debtors will use commercially reasonable efforts to sell certain non-core assets identified in the Disclosure Statement. The net proceeds (after reasonable and necessary fees, costs and expenses associated with the sale) will be required to pay down the New Secured Revolver Loans, subject to the terms of the Existing Intercreditor Agreement, as may be |

amended.  The ultimate decision to sell the non-core assets will be made by the Reorganized Debtors' board of directors, subject to the consent of the agent for the New Revolver Lenders, with value thresholds to be pre-agreed if possible.

Further, on the first anniversary of the Effective Date, if the New Revolver Lenders have received net proceeds from non-core asset sales, additional cash equity contributions or any other paydown (other than scheduled amortization payments), to pay down the New Secured Revolver Loans in an amount:

(i) less than or equal to $2,500,000, then the applicable interest rate shall increase by 1.50%;
(ii) greater than $2,500,000, but equal to or less than $5,000,000, then the applicable interest rate shall increase by 1.00%;
(iii) greater than $5,000,000, but equal to or less than $7,500,000, then the applicable interest rate shall increase by 0.50%;
(iv) greater than $7,500,000, the applicable interest rate shall remain unchanged.

**Covenants** ........................................ The Committee and CapitalSource shall agree on financial covenants prior to the Confirmation Date.  It is expected that the financial covenants will include:

1. Minimum EBITDA, measured monthly on a trailing twelve month basis, shall be greater than $8,000,000 in the first 12 months, and $9,000,000 thereafter.
2. Maximum Capital Expenditures, measured monthly on a cumulative basis, shall not exceed $3,000,000 in fiscal 2010, and shall not exceed $4,000,000 in fiscal 2010.
3. Minimum Liquidity (defined as cash on hand, plus any unused availability under the Working Capital Facility) shall be greater than $2,000,000 at all times.

- 47 -

**EXHIBIT 1.75**

**Summary of Terms of New Secured CSE Loan Agreement**

| | |
|---|---|
| **Lender(s)**........................................... | CSE Mortgage LLC ("CSE Mortgage") and the other holders of the senior secured credit facilities (together with CSE Mortgage,the "Senior CSE Lenders") under the Prepetition Loan Agreement. |
| **Amount** ............................................ | The Committee and CSE Mortgage shall stipulate to the amount fully due and owing under the Prepetition Loan Agreement on the Confirmation Date, and that amount shall represent the original principal amount of the New Secured CSE Loan Agreement (the "New Secured CSE Loans"). |
| **Term**.................................................. | 24 months from the Effective Date |
| **Interest Rate** .................................... | LIBOR plus the applicable interest rate margin of 700 bps with a LIBOR floor of 250 bps blended throughout the various tranches under the New Secured CSE Loans. |
| **Security and Ranking** ..................... | Same as in the Prepetition Loan Agreement, and all ancillary documents (the "Prepetition Term Loan Documents"), subject to the terms of the Existing Intercreditor Agreement, as may be amended. |
| **Amortization**.................................... | Substantially the same as set forth in the Prepetition Loan Agreement. |
| **Excess Cash Flow Recapture** ......... | Mandatory prepayments of 50% of Excess Cash Flow shall be applied to the New Secured CSE Loans in a customary manner. Excess Cash Flow shall be measured on a quarterly basis with mandatory prepayments required for any amounts exceeding 1.50x of an agreed-upon fixed charge coverage ratio. |
| **Asset Sales**....................................... | 100% of the net proceeds from any sales of assets on which the Senior CSE Lenders have first priority liens and shall be used to pay down the New Secured CSE Loans, and shall be allocated in a manner consistent with the Prepetition Term Loan Documents, subject to the terms of the Existing Intercreditor Agreement, as may be amended. |
| **Sale of Non-Core Assets**.................. | The Reorganized Debtors will use commercially reasonable efforts to sell certain non-core assets identified in the Disclosure Statement. The net proceeds (after reasonable and necessary fees, costs and expenses associated with the sale) will be required to pay down the New Secured CSE Loans, subject to the terms of the Existing Intercreditor Agreement, as may be amended. The ultimate decision to sell the non-core assets will be made by the Reorganized Debtors' board of directors, subject to the consent of the agent for the Senior CSE Lenders, with value thresholds to be pre-agreed if possible. |

- 48 -

Further, on the first anniversary of the Effective Date, if the Senior CSE Lenders have received net proceeds from non-core asset sales, additional cash equity contributions or any other paydown (other than scheduled amortization payments), to pay down the New Secured CSE Loans in an amount:

(i) less than or equal to $2,500,000, then the applicable interest rate shall increase by 1.50%;

(ii) greater than $2,500,000, but less than or equal to $5,000,000, then the applicable interest rate shall increase by 1.00%;

(iii) greater than $5,000,000, but less than or equal to $7,500,000, then the applicable interest rate shall increase by 0.50%;

(iv) greater than $7,500,000, the applicable interest rate shall remain unchanged.

**Covenants** ........................................    The Committee and CSE Mortgage shall agree on financial covenants prior to the Confirmation Date.  It is expected that the financial covenants will include:

1. Minimum EBITDA, measured monthly on a trailing twelve month basis, shall be greater than $8,000,000 in the first 12 months, and $9,000,000 thereafter.
2. Maximum Capital Expenditures, measured monthly on a cumulative basis, shall not exceed $3,000,000 in fiscal 2010, and shall not exceed $4,000,000 in fiscal 2010.
3. Minimum Liquidity (defined as cash on hand, plus any unused availability under the Working Capital Facility) shall be greater than $2,000,000 at all times.

NYC:203104.4

**EXHIBIT 1.76**

**Summary of Terms of the New Unsecured LPC Notes**

**[TO BE PROVIDED]**

NYC:203104.4

**EXHIBIT 1.77**

**Summary of Terms of the New Unsecured LRGI Notes**

**[TO BE PROVIDED]**

NYC:203104.4

**EXHIBIT 1.101**

**Summary of Terms of the Stockholders' Agreement**

**[TO BE PROVIDED]**

NYC:203104.4