Presentment Date and Time: December 30, 2009 at 12:00 p.m. (prevailing Eastern Time)
Objection Deadline: December 30, 2009 at 11:30 a.m. (prevailing Eastern Time)

WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007
Richard P. Krasnow
Adam P. Strochak

Attorneys for Debtors
and Debtors in Possession

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------------------x
: 
**In re**                               :    **Chapter 11 Case No.**
: 
**LEXINGTON PRECISION CORP., et al.,**  :    **08-11153 (BRL)**
: 
Debtors.                          :    **(Jointly Administered)**
: 
------------------------------------------------------------x

**NOTICE OF PRESENTMENT OF STIPULATION, AGREEMENT**
**AND ORDER PURSUANT TO 11 U.S.C. §§ 105 AND 364 AUTHORIZING EXTENSION**
**OF POSTPETITION FINANCING (SECOND EXTENSION)**

PLEASE TAKE NOTICE that the undersigned will present the annexed proposed Stipulation, Agreement and Order (the "Proposed Stipulation") between Lexington Precision Corporation and Lexington Rubber Group, Inc., as debtors and debtors in possession (collectively, the "Debtors") and the lenders to the postpetition financing (collectively, the "DIP Lenders") to the Honorable Burton R. Lifland, United States Bankruptcy Judge, for signature on **December 30, 2009 at 12:00 p.m. (prevailing Eastern time)**.

PLEASE TAKE FURTHER NOTICE that any objections or responses to the Proposed Stipulation, if any, must (a) be in writing; (b) conform to the Federal Rules of Bankruptcy Procedure and the Local Rules for the United States Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court"); and (c) set forth the name of the objecting party, the basis for the objection, and the specific grounds therefore. Any objections or responses must be filed with the Bankruptcy Court no later than **December 30, 2009 at 11:30 a.m. (prevailing Eastern Time)**. In accordance with General Order M-242, registered users of the Bankruptcy Court's case filing system must file their objections and responses electronically. General Order M-242 may be found at www.nysb.uscourts.gov. All other parties-in-interest must file their objections and responses on a 3.5 inch disk (preferably in Portable Document Format (PDF), WordPerfect, or any other Windows-based word processing format) and deliver a hard copy directly to the chambers of Judge Burton R. Lifland.

US_ACTIVE:\43253489\04\26690.0008

PLEASE TAKE FURTHER NOTICE that all objections and responses must be served so as to be received no later than **December 30, 2009, at 11:30 a.m. (prevailing Eastern Time)**, upon: (a) the Debtors, Lexington Precision Corporation, 800 Third Ave. 15th Floor, New York, New York 10023 (Attn: Michael A. Lubin), (b) the attorneys for the Debtors, Weil, Gotshal & Manges LLP, 767 Fifth Avenue, New York, New York 10153 (Attn: Richard P. Krasnow and Victoria Vron); (c) the Office of the United States Trustee for the Southern District of New York, 33 Whitehall Street, 21st Floor, New York, New York 10004 (Attn: Paul Schwartzberg); (d) the attorneys for the Agents, Waller, Landsden, Dortch & Davis LLP, 511 Union Street, Suite 2700, Nashville, Tennessee, 37219 (Attn: John C. Tishler); (e) the attorneys for the official creditors' committee of unsecured creditors, Andrews Kurth LLP, 450 Lexington Avenue, New York, New York 10017 (Attn: Paul Silverstein); and (f) the attorneys for Debtors' postpetition lenders, O'Melveny & Meyers, LLP, Times Square Tower, 7 Times Square, New York, New York 10036 (Attn: Gerald Bender).

PLEASE TAKE FURTHER NOTICE that if a written objection is timely filed, a hearing will be held at the United States Bankruptcy Court for the Southern District of New York, Alexander Hamilton Custom House, One Bowling Green, New York, New York 10004, at a date and time to be established by the Court. The moving and objecting parties are required to attend the hearing, and failure to appear may result in relief being granted or denied upon default.

Dated: December 24, 2009
       New York, New York

/s/ Adam P. Strochak
Richard P. Krasnow
Adam P. Strochak
WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York  10153
Telephone:   (212) 310-8000
Facsimile:   (212) 310-8007

Attorneys for Debtors
and Debtors in Possession

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x
                                                            :
In re                                                       :    Chapter 11 Case No.
                                                            :
**LEXINGTON PRECISION CORP., et al.,**                      :    08-11153 (BRL)
                                                            :
           Debtors.                                         :    (Jointly Administered)
                                                            :
------------------------------------------------------------x

**STIPULATION, AGREEMENT AND ORDER PURSUANT
TO 11 U.S.C. §§ 105 AND 364 AUTHORIZING EXTENSION OF
POSTPETITION FINANCING (SECOND EXTENSION)**

**Recitals**

   A. Lexington Precision Corporation ("LPC") and Lexington Rubber Group, Inc. ("LRGI", and together with LPC, the "Debtors") each commenced voluntary chapter 11 cases under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") on April 1, 2008 (the "Commencement Date"). The Debtors' chapter 11 cases have been consolidated for procedural purposes only and are being jointly administered pursuant to Rule 1015(b) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"). The Debtors continue to operate their businesses and manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

   B. On April 11, 2008, the United States Trustee for the Southern District of New York appointed the statutory committee of unsecured creditors pursuant to section 1102 of the Bankruptcy Code (the "Creditors' Committee").

   C. On April 17, 2008, the Court entered an order approving the use of Cash Collateral (as defined therein) and authorized the Debtors to obtain postpetition financing in the aggregate amount of $4 million (the "DIP Loan") from Lubin Partners, LLC, William B. Conner, and ORA Associates LLC (collectively, the "DIP Lenders") [Docket No. 61] (the "First Cash

Collateral/DIP Order"). On April 21, 2008, the Debtors issued a note in the amount of $4 million to the DIP Lenders (the "Existing DIP Note"). The original DIP Loan was set to mature on April 1, 2009 (or upon certain earlier termination events).

        D.      By order dated March 23, 2009, the Court authorized the extension of the DIP Loan through and including December 31, 2009 or certain earlier termination events [Docket No. 594] (the "First DIP Financing Extension Order"). Subsequent thereto, the Debtors amended and restated the Existing DIP Note to reflect the extension of the maturity date (the "Amended and Restated DIP Note").

        E.      The Court also approved further extensions of use of Cash Collateral by orders dated March 4, 2009 [Docket No. 579] (the "Second Cash Collateral Order"), May 20, 2009 [Docket No. 634] (the "Third Cash Collateral Order"), August 17, 2009 [Docket No. 690] (the "Fourth Cash Collateral Order"); September 25, 2009 [Docket No. 725] (the "Fifth Cash Collateral Order"); and October 28, 2009 [Docket No. 772] (the "Sixth Cash Collateral Order"). The Debtors' use of Cash Collateral currently expires on December 31, 2009. Contemporaneously herewith, the Debtors, with the consent of their prepetition lenders, filed a proposed stipulation, agreement and order to further extend the use of Cash Collateral through and including March 1, 2010 or certain earlier termination events (the "Proposed Seventh Cash Collateral Order").

        F.      The Debtors have an immediate need to further extend the maturity date of the DIP Loan in order to permit the orderly continuation of the operation of their businesses, to maintain business relationships with vendors, suppliers and customers, to meet payroll, to make capital expenditures, to satisfy other working capital and operational needs, and to satisfy the

cost of administering these chapter 11 cases. Extension of the maturity date is vital to avoid immediate and irreparable harm to the Debtors' estates.

   G. In light of the foregoing, the Debtors and the DIP Lenders have agreed to the terms of this stipulation, agreement, and order (the "<u>Stipulation, Agreement, and Order</u>"), subject to approval of this Court, further extending the maturity date of the DIP Loan on the terms set forth below.

   H. The terms of the extension of the maturity date have been negotiated at arms' length and in "good faith," as that term is used in section 364(e) of the Bankruptcy Code, and are in the best interests of the Debtors, their estates and creditors.

**<u>Agreement</u>**

   1. The Recitals set forth above form an integral part of this Stipulation, Agreement, and Order and are incorporated fully herein.

   2. The maturity date of the DIP Loan is hereby extended to the earliest of (i) March 1, 2010, (ii) the date upon which the Debtors' use of Cash Collateral terminates, (iii) the effective date of a confirmed chapter 11 plan of reorganization in these chapter 11 cases, (iv) the conversion of any of these chapter 11 cases to cases under chapter 7 of the Bankruptcy Code, (v) the appointment of a chapter 11 trustee in any of these chapter 11 cases or the appointment of an examiner with expanded powers to operate or manage the financial affairs, the business or the reorganization of any Debtor, and (vi) the date of acceleration by the DIP Lenders pursuant to section 7 (Events of Default) of the Note (as defined below) (collectively, the "<u>Second DIP Loan Extension</u>").

   3. The Debtors are hereby authorized to execute an amended and restated promissory note substantially in the form attached hereto as <u>Exhibit A</u> (the "<u>Note</u>") to effectuate

the Second DIP Loan Extension (upon which execution, the DIP Lenders shall return to the Debtors the Amended and Restated DIP Note) on the terms and conditions set forth in the Note and this Stipulation, Agreement, and Order, including without limitation, monthly payment of interest on the DIP Loan at the rate set forth therein, and are hereby authorized and directed to do and perform all acts, including, without limitation, making, executing, and delivering all instruments and documents, that may be necessary or desirable to implement the Second DIP Loan Extension.

4.    The DIP Lenders, having been found to be acting in good faith, shall be entitled to the full protection of section 364(e) of the Bankruptcy Code and, therefore, if any or all of the provisions of the First Cash Collateral/DIP Order, the First DIP Financing Extension Order or this Stipulation, Agreement, and Order are hereafter reversed, stayed, modified, or vacated, such reversal, stay, modification, or vacation shall not affect (i) the validity of any obligation, indebtedness, or liability incurred by the Debtors to the DIP Lenders prior to written notice to such party of the effective date of such reversal, stay, modification, or vacation, or (ii) the validity and enforceability of any priority authorized or created hereby or pursuant to the Note with respect to any such indebtedness, obligation, or liability, including, without limitation, the DIP Super-Priority Claim (as defined in the Note). Notwithstanding any such reversal, stay, modification, or vacation, any indebtedness, obligations, or liabilities incurred by the Debtors to the DIP Lenders prior to written notice to such party of the effective date of such reversal, stay, modification, or vacation shall be governed in all respects by the original provisions of this Order, and the DIP Lenders shall be entitled to all the claims, priorities, rights, remedies, privileges, and benefits granted herein and/or pursuant to the Note until all of the obligations under the Note are indefeasibly paid in full and discharged in cash.

5. All terms and provisions, including the findings and conclusions of law, of the First Cash Collateral/DIP Order pertaining to the DIP Loan are incorporated herein by reference to the extent not inconsistent with this Stipulation, Agreement, and Order.

6. All parties reserve their rights with respect to the proviso in the first sentence of Paragraph 5 of the Note and the Second DIP Loan Extension shall not prejudice the DIP Lenders in any way with respect to such proviso.

7. The Parties agree that this Court shall be the exclusive forum with respect to any disputes or controversies relating to or arising under this Stipulation, Agreement, and Order.

8. This Stipulation, Agreement, and Order can only be amended or otherwise modified by a signed writing executed by the Parties.

9. The person who executes this Stipulation, Agreement, and Order by or on behalf of each respective Party represents and warrants that he or she has been duly authorized and empowered to execute and deliver this Stipulation, Agreement, and Order on behalf of such Party.

10. This Stipulation, Agreement, and Order may be executed in counterparts, each of which shall be deemed an original but all of which together shall constitute one and the same instrument, and it shall constitute sufficient proof of this Stipulation, Agreement, and Order to present any copy, copies, electronic copies, or facsimiles signed by the Parties here to be charged.

11. This Stipulation, Agreement, and Order is subject to the approval of the Court and upon such approval shall inure to the benefit of the parties hereto and their respective successors and assigns.

12. This Stipulation, Agreement, and Order shall be governed by the laws of the State of New York, without regard to the application of New York's conflict of law principles.

Dated: December 24, 2009
  New York, New York

| /s/ Adam P. Strochak | /s/ Gerald Bender |
|---|---|
| Richard P. Krasnow | Gerald Bender |
| Adam P. Strochak | |
| | |
| WEIL, GOTSHAL & MANGES LLP | O'MELVENY & MEYERS, LLP |
| 767 Fifth Avenue | Times Square Tower, 7 Times Square |
| New York, New York 10153 | New York, New York 10036 |
| Telephone: (212) 310-8000 | Telephone: (212) 326-2059 |
| Facsimile: (212) 310-8007 | Facsimile: (212) 326-2061 |
| | |
| Attorneys for Debtors and Debtors in Possession | Attorneys for the DIP Lenders |

Dated: December __, 2009

_____
UNITED STATES BANKRUPTCY JUDGE

# EXHIBIT A

**(Form of Note)**

## SECOND AMENDED AND RESTATED
## <u>SUPER- PRIORITY DIP NOTE</u>

$4,000,000                                                                                                              New York, New York
                                                                                                                          Issue Date:  April 21, 2008

FOR VALUE RECEIVED, the undersigned, Lexington Precision Corporation and Lexington Rubber Group, Inc., each a Delaware corporation and a debtor in possession (collectively, the "<u>Debtors</u>"), hereby jointly and severally and unconditionally promise to pay to the order of Lubin Partners, LLC, a Delaware limited liability company, William B. Connor and ORA Associates, LLC, a New York limited liability company (collectively, the "<u>Holders</u>"), the aggregate principal sum of Four Million Dollars ($4,000,000), to be allocated among the Holders as follows:

| Lubin Partners, LLC | $2,000,000 |
| William B. Connor | $1,500,000 |
| ORA Associates, LLC | $500,000 |

1.      <u>Payment of Principal and Interest</u>.  The principal amount of this Note shall be paid on the earliest of (i) March 1, 2010, (ii) the date upon which the Debtors' use of Cash Collateral terminates, (iii) the effective date of a confirmed chapter 11 plan of reorganization in the Chapter 11 Cases,[1] (iv) the conversion of any of the Chapter 11 Cases to cases under chapter 7 of the Bankruptcy Code, (v) the appointment of a chapter 11 trustee in any of the Chapter 11 Cases or the appointment of an examiner with expanded powers to operate or manage the financial affairs, the business or the reorganization of any Debtor and (vi) the date of acceleration by the Holders pursuant to Section 7 hereof (such date, the "<u>Stated Maturity Date</u>").  The Debtors also promise to pay interest on this Note on the first business day of each month (in arrears) and upon the date this Note matures or otherwise becomes due and payable at the rate of LIBOR plus 7% per annum with a LIBOR floor of 3% per annum (computed on the basis of a 360 day year for the actual number of days lapsed); <u>provided</u> that any principal amount not paid when due, and to the extent permitted by applicable law, any interest not paid when due, in each case whether at Stated Maturity Date, by required prepayment, declaration, acceleration or demand or otherwise (both before as well as after judgment), shall bear interest payable upon demand at the rate that is 2% per annum in excess of the rate of interest otherwise payable upon this Note.  All payments hereunder, including any prepayment, shall be made to the Holders on a pro rata basis based on the respective principal amounts owed to each Holder.

2.      <u>Optional Prepayment</u>.  Debtors shall have the right at any time or from time to time and without premium or penalty, to voluntarily prepay all or any portion of this Note. Each prepayment shall be accompanied by the payment of accrued and unpaid interest on the amount being prepaid, through the date of prepayment.  Any amounts prepaid hereunder may not be reborrowed.

---

[1] Capitalized terms used but not otherwise defined shall have the meanings ascribed to such terms in Section 9 hereof.

       3.      <u>Lender Fee</u>.  Pursuant to the Final Borrowing Order, the Debtors have paid to the Holders a fee in cash in the aggregate amount of $80,000, which was allocated to the Holders pro rata based upon their funding commitment.  No additional fees are payable.

       4.      <u>Use of Proceeds</u>.  The proceeds of this Note shall be used by the Debtors to the extent Cash Collateral is insufficient to fund working capital requirements and general corporate purposes relating to the Debtors' post-petition operations and for other expenditures as authorized in the Second DIP Extension Order, the relevant order of the Bankruptcy Court authorizing use of Cash Collateral or as otherwise authorized by the Bankruptcy Court; <u>provided</u> that no portion of the proceeds shall be used, directly or indirectly, to (a) finance or make any payment or prepayment to any Person with respect to a Prepetition Indebtedness unless authorized by an order of the Bankruptcy Court; or (b) finance in any way any investigation, adversary action, suit, arbitration, proceeding or other litigation of any type against the Holders (in their capacity as Holders).  The Debtors shall use the entire amount of the proceeds in accordance with this Section 4; <u>provided</u>, <u>however</u>, that nothing herein shall in any way prejudice the Holders from objecting, for any reason, to any requests, motions or applications made in the Bankruptcy Court, including any applications for interim or final allowances of compensation for services rendered or reimbursement of expenses incurred under Sections 105(a), 330 or 331 of the Bankruptcy Code, by any party in interest; and <u>provided</u>, <u>further</u>, that Debtors shall not use the proceeds for any purpose that is prohibited under the Bankruptcy Code.  The proceeds of this Note have been deposited and shall be held in the bank account at a bank that has been approved by the Office of the United States Trustee for the Southern District of New York as an authorized bank depository (the "<u>DIP Account</u>") as described in the Final Borrowing Order and no other funds or cash collateral of the Debtors shall be co-mingled with the proceeds of this Note or deposited in the DIP Account.

       5.      <u>Superpriority Nature of Obligations</u>.  All obligations of the Debtors under this Note (including the obligation to pay principal, interest, fees, costs, charges, commissions and expenses) shall be paid as provided herein when due, without defense, offset, reduction or counterclaim, and shall constitute allowed claims to the full extent thereof against the Debtors arising under Section 364(c)(1) of the Bankruptcy Code, and senior to any and all other claims, including, without limitation, all administrative expenses or other claims arising under sections 105, 326, 328, 330, 331, 503(b), 506(c), 507(a), 507(b), 726, 1113 or 1114 of the Bankruptcy Code; <u>provided</u>, <u>however</u>, that notwithstanding the foregoing, the DIP Super-Priority Claim shall be junior, subordinate, and subject to the Adequate Protection Claim, the Prepetition Senior Secured Debt, the Senior Lender Prepetition Liens, the Carve-Out, and the Adequate Protection Lien (all as defined in the Sixth Cash Collateral Order).  Subject to the Carve-Out, the Adequate Protection Liens (as defined in Sixth Cash Collateral Order), the Prepetition Senior Secured Debt (as defined in the Sixth Cash Collateral Order) and the Adequate Protection Claim (as defined in the Sixth Cash Collateral Order), the DIP Super-Priority Claim will at all times be senior to any unsecured claims of any creditor or other entity in this and any subsequent case under the Bankruptcy Code.  With the exception of the Carve-Out, the Adequate Protection Liens, the Prepetition Senior Secured Debt, and the Adequate Protection Claim, no cost or expense of administration or any claims in this case, including those resulting from or incurred after any conversion of this case pursuant to Section 1112 of the Bankruptcy Code shall rank prior to, or on parity with, the DIP Super-Priority Claims.

6. Covenants. Each of the Debtors covenant and agree that until this Note is paid in full, neither of the Debtors shall, without the prior written consent of the Required Holders:

(a) Asset Sales. enter into any transaction of merger or consolidation, or liquidate, wind-up or dissolve itself (or suffer any liquidation or dissolution), or convey, sell, lease or sub-lease (as lessor or sublessor), transfer or otherwise dispose of, in one transaction or a series of transactions, all or any part of its business, property or assets, whether now owned or hereafter acquired, other than sales of inventory and equipment in the ordinary course of business and sales of obsolete equipment or equipment that is no longer required in the business; provided, however, that the Debtors shall be permitted to sell, in one transaction or a series of transactions, all or any part of its business, property or assets, whether now owned or hereafter acquired, provided that the proceeds of such sale (less all costs, expenses and fees related thereto) shall be subject to the priorities set forth in the relevant order of the Bankruptcy Court authorizing use of Cash Collateral and the Second DIP Extension Order.

(b) Chapter 11 Claims. unless all obligations under this Note have been indefeasibly paid in full in cash, incur, create, assume, suffer or permit any claim or encumbrance against it or any of its property or assets in any Chapter 11 Case (other than the Existing Secured Claims, the Carve-Out, the Adequate Protection Claim, and the Insurance Premium Financing) to be pari passu with or senior to the claims of the Holders against such Debtor in respect of the obligations hereunder, or apply to the Bankruptcy Court for authority to do so; or

(c) Limitation on Payments Related to Prepetition Obligations. (i) make any payment or prepayment on or redemption or acquisition for value of any Prepetition Indebtedness or other pre-Petition Date obligations of such Debtor, (ii) pay any interest on any Prepetition Indebtedness of such Debtor, including, without limitation, by way of depositing with the trustee with respect thereto money or securities before due for the purpose of paying when due (whether in cash, in kind, in securities or otherwise), or (iii) make any payment or create or permit any lien pursuant to Section 361 of the Bankruptcy Code (other than the Adequate Protection Liens (as such term is defined in the Sixth Cash Collateral Order), or apply to the Bankruptcy Court for the authority to do any of the foregoing; provided that the Debtors may make payments as permitted in the Second DIP Extension Order, the relevant order of the Bankruptcy Court authorizing use of Cash Collateral, or as authorized in any other order of the Bankruptcy Court, including, for example, making Adequate Protection Payments (as such term is defined in the Sixth Cash Collateral Order).

7. Events of Default. Notwithstanding the provisions of Section 362 of the Bankruptcy Code and without application or motion to, or order from, the Bankruptcy Court, if any of the following conditions or events ("Events of Default") shall occur:

(a) Failure to Make Payments When Due. Failure by the Debtors to pay any installment of principal on this Note when due or pay any installment of interest within 3 business days of when due, whether at stated maturity, by acceleration, by notice of voluntary

prepayment, by mandatory prepayment or otherwise; or failure by the Debtors to pay any fee or any other amount due under this Note within three days after the date due;

(b) <u>Chapter 11 Cases</u>.  With respect to the Chapter 11 Cases, (i) the entry of an order authorizing any Debtor in any of the Chapter 11 Cases to obtain additional financing under Section 364(c) or (d) of the Bankruptcy Code (other than Insurance Premium Financing, as defined in the Sixth Cash Collateral Order) if such order does not provide for the indefeasible payment in full in cash of all obligations under this Note; (ii) the appointment of an interim or permanent trustee in any of the Chapter 11 Cases or the appointment of an examiner in any of the Chapter 11 Cases with expanded powers to operate or manage the financial affairs, the business, or the reorganization of any Debtor; (iii) the dismissal of any of the Chapter 11 Cases, or the conversion of any of the Chapter 11 Cases to a case under chapter 7 of the Bankruptcy Code; (iv) the entry of an order granting relief from or modifying the automatic stay of Section 362 of the Bankruptcy Code (a) to allow any creditor to execute upon or enforce a lien on any material portion of the property or assets of any Debtor or (b) with respect to any lien of, or the granting of any lien on any other property or assets of any Debtor to, any state or local environmental or regulatory agency or authority, but only to the extent that it would have a Material Adverse Effect; (v) exercise of rights by the Prepetition Senior Lenders (as defined in the Sixth Cash Collateral Order) pursuant to the relevant order of the Bankruptcy Court authorizing use of Cash Collateral against the Senior Lender Prepetition Collateral and/or the other collateral in which Adequate Protection Liens were granted to the Prepetition Senior Lenders; (vi) the entry of an order amending, supplementing, staying, vacating or otherwise modifying any of the Final Borrowing Order (as it pertains to this Note or the Holders), the Second DIP Extension Order, the relevant order of the Bankruptcy Court authorizing use of Cash Collateral, or this Note or any of the Holders' rights, benefits, privileges or remedies under the Final Borrowing Order, the Second DIP Extension Order, the relevant order of the Bankruptcy Court authorizing use of Cash Collateral, or this Note; (vii) the entry of an order consolidating or combining any Debtor with any other Person (other than another Debtor); (viii) an order shall be entered approving, or the Debtor shall have consented to, any claim or administrative expense claim (other than the Carve-Out and the Adequate Protection Claim) having any priority over, or being pari passu to the super-priority administrative expense claim of the obligations under this Note; or (ix) use of the proceeds of this Note for any purpose that is prohibited under Section 6(c) hereof;

(c) <u>Default</u>.  Any Debtor shall default in the due performance or observance by it of any term, covenant or agreement contained in this Note or any term or agreement relating to this Note that is contained in the Final Borrowing Order or the Second DIP Extension Order, and such default shall continue for a period of 5 days after receipt by the Debtors of notice from the Holders of such default; or

(d) <u>Judgments</u>.  (i) Any money judgment, writ or warrant of attachment or similar process as to post-Petition Date liability or debt (a) in any individual case an amount in excess of $50,000 or (b) in the aggregate at any time an amount in excess of $250,000 (in either case not adequately covered by insurance as to which a solvent and unaffiliated insurance company has acknowledged coverage) shall be entered or filed against the Debtors or any of their respective assets and shall remain undischarged, unvacated, unbonded or unstayed for a period of 60 days; or (ii) any non-monetary judgment or order with respect to a post-Petition

Date event shall be rendered against any Debtor that would reasonably be expected to result in a Material Adverse Effect and shall remain undischarged, unvacated, unbonded or unstayed for a period of 60 days.

      (e)    <u>Use of Proceeds</u>.  Funds or Cash Collateral are co-mingled with the proceeds of this Note in the DIP Account or proceeds of this Note are used in a manner prohibited by this Note.

Upon the occurrence and during the continuance of any Event of Default, the Holders may (notwithstanding the provisions of Section 362 of the Bankruptcy Code and without application or motion to, or order from, the Bankruptcy Court) by written notice to the Debtors declare (i) the unpaid principal amount of and accrued interest on the Notes and (ii) all other obligations immediately due and payable, without presentment, demand, protest or other requirements of any kind, all of which are hereby expressly waived by the Debtors, and the same shall forthwith become, immediately due and payable.

      9.    <u>Definitions</u>.  The following terms shall have the following meanings in this Note:

"Bankruptcy Code" means title 11 of the United States Code entitled "Bankruptcy", as now and hereafter in effect, or any successor statute.

"Bankruptcy Court" means the United States Bankruptcy Court for the Southern District of New York.

"Business Day" means each day that is not a Legal Holiday.

"Cash Collateral" has the meaning ascribed to that term in Sixth Cash Collateral Order.

"Chapter 11 Cases" means those certain proceedings for relief filed by the Debtors under Chapter 11 of the Bankruptcy Code and being jointly administered under Case No. 08-11153 in the United States Bankruptcy Court for the Southern District of New York.

"Existing Secured Claims" means any secured claims in existence as of the commencement of the Chapter 11 Cases.

"Final Borrowing Order" means that certain Final Order (i) Authorizing the Debtors to Use Cash Collateral, (ii) Granting Adequate Protection to Prepetition Secured Lenders, and (iii) Authorizing Post-Petition Financing entered by the Bankruptcy Court on April 17, 2008.

"Final Order" means an order, judgment or other decree of the Bankruptcy Court or any other court or judicial body with proper jurisdiction, as the case may be, which is in full force and effect and has not been reversed, stayed, modified or amended and as to which (i) any right to appeal or seek certiorari, review or rehearing has been waived or (ii) the time to appeal or seek certiorari, review or rehearing has expired and as to which no appeal or petition for certiorari, review or rehearing is pending.

"Issue Date" means the issue date of this Note on April 21, 2008.

"Legal Holiday" means a Saturday, a Sunday or a day on which banking institutions in the State of New York are authorized or required by law to close.  If a payment date is a Legal Holiday, payment shall be made on the next succeeding date that is not a Legal Holiday, and interest shall accrue for the intervening period at the rate set forth in Section 1 hereof.  If a regular record date is a Legal Holiday, the record shall not be affected.

"LIBOR" means a fluctuating rate of interest determined on a daily basis equal to the one-month rate of interest appearing on Telerate Page 3750 (or any successor page) as the 30-day London interbank offered rate for deposits in U.S. Dollars at approximately 11:00 a.m. (London Time) on the second preceding Business Day.  If for any reason such rate is not available, "LIBOR" means the fluctuating rate of interest calculated on a daily basis equal to the one-month rate of interest appearing on Reuters Screen LIBO Page as the 30-day London interbank offered rate for deposits in U.S. Dollars at approximately 11:00 a.m. (London time) on the second preceding Business Day; _provided_, _however_, if more than one rate is specified on Reuters Screen LIBO Page, the applicable rate shall be the arithmetic mean of all such rates; _provided_, _however_, if such rate is not available, "LIBOR" shall mean a fluctuating rate of interest based upon a comparable rate designated by the Holders as a substitute therefore.  "Telerate Page 3750" means the British Bankers Association Libor Rates (determined as of 11:00 a.m. London time) that are published by Moneyline Telerate (or any successor thereto).  As used in this definition, the term "Business Day" means a day on which commercial banks are open for international business (including dealings in U.S. Dollar deposits in London, England).

"Material Adverse Effect" means (i) a material adverse effect upon the business, operations, liabilities (whether contractual, environmental or otherwise), properties, assets, condition (financial or otherwise) or prospects of the Debtors taken as a whole or (ii) the material impairment of the ability of any Debtor to perform the obligations of the Debtors under the Note.

"Motion" means the Debtors' Motion for Authorization Pursuant to 11 U.S.C. §§ 105, 361, 362, 364(c)(1), and 364(e) to (i) Use Cash Collateral, (ii) Grant Adequate Protection to Prepetition Secured Lenders, and (iii) Obtain Postpetition Financing.

"Note" means this $4,000,000 Second Amended and Restated Super-Priority DIP Note by and between the Debtors and the Holders.  Upon execution, the Note will supersede in its entirety the $4,000,000 Amended and Restated Super-Priority DIP Note by and between the Debtors and the Holders, issued on April 21, 2008, which shall be promptly returned to the Debtors.

"Person" an individual, partnership, corporation, limited liability company, business trust, joint stock company, trust, unincorporated association, joint venture, governmental authority or other entity of whatever nature.

"Petition Date" means April 1, 2008, the date on which the Debtors filed their petitions for relief commencing these Chapter 11 Cases.

"Prepetition Indebtedness" means indebtedness of any Debtor outstanding on the Petition Date, including Indebtedness under the Prepetition Credit Agreements, the Senior Subordinated Notes and the 13% Junior Subordinated Note (as those terms are defined and/or referenced in the Motion).

"Required Holders" means Holders holding more than 50% of the principal amount of the Note.

"Second DIP Extension Order" means that certain Order Pursuant to 11 U.S.C. §§ 105 And 364 Authorizing Extension of Postpetition Financing (Second Extension), entered by the Bankruptcy Court on December __, 2009.

"Sixth Cash Collateral Order" means the Sixth Order Pursuant to Bankruptcy Code Sections 105(a), 361, 362, and 363 (i) Authorizing Debtors to Use Cash Collateral and (ii) Granting Adequate Protection To Prepetition Secured Lenders, entered by the Bankruptcy Court on October 28, 2009.

10. <u>Successors and Assigns</u>.  This Note shall inure to the benefit of the Holders and their respective successors and assigns and shall bind the Holders, their respective successors and assigns, and any chapter 7 or chapter 11 trustee appointed after the Petition Date or elected for the estates of the Debtors or an examiner appointed pursuant to section 1104 of the Bankruptcy Code.

11. <u>Presentment and Demand</u>.  Demand, presentment, protest and notice of nonpayment and protest are hereby waived by the Debtors.

12. <u>Amendment and Non-Waiver</u>.

(a) This Note may not be amended, modified, or waived except by an agreement in writing signed by the Debtors and the Required Holders; <u>provided</u> that consent of all Holders shall be required to reduce the principal amount, the interest rate, or extend any payment date.

(b) To the extent permitted by law, no failure to exercise and no delay on the part of the Holders in exercising any power or right in connection with this Note or available at law or in equity, shall operate as a waiver thereof, and no single or partial exercise of any such rights or power, or any abandonment or discontinuance of steps to enforce such a right or power, shall preclude any other or further exercise thereof or the exercise of any other right or power.

13. <u>Notices</u>.  Except as otherwise provided herein, any notice, demand, request, consent, approval, declaration, delivery or other communication hereunder to be made pursuant to the provisions of this Note shall be sufficiently given or made if in writing and either delivered in person with receipt acknowledged or three (3) Business Days after being sent by registered or certified mail, return receipt requested, postage prepaid, or by telecopy and confirmed by telecopy answerback, addressed as follows:

      (a)      If to the Debtors:

Lexington Precision Corporation
Lexington Rubber Group, Inc.
800 Third Avenue, 15th Floor
New York, NY 10022
Attn: Warren Delano
Telecopy No.: 212-319-4659

    with a copy to:

Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, NY 10153
Telecopy No.: 212-310-8000
Attn:   Richard P. Krasnow, Esq.
          Adam P. Strochak, Esq.

      (b)      If to the Holders:

c/o Michael A. Lubin
Lexington Precision Corporation
800 Third Avenue, 15th Floor
New York, NY 10022
Telecopy No.: 212-319-4659

    with a copy to:

O'Melveny & Myers LLP
7 Times Square
New York, NY 10036
Telecopy No.: 212-362-2061
Attn: Gerald C. Bender, Esq.

or at such other address as may be substituted by notice given as herein provided. The giving of any notice required hereunder may be waived in writing by the party entitled to receive such notice.

      14.      <u>Submission to Jurisdiction: Waiver of Jury Trial</u>.

      (a)      The Debtors and the Holders hereby irrevocably submit to the jurisdiction of the Bankruptcy Court, and they hereby irrevocably agree that any action concerning the Note shall be heard and determined in the Bankruptcy Court. The Debtors and the Holders hereby irrevocably waive, to the fullest extent they may effectively do so, the defense of an inconvenient forum to the maintenance of any such action in the Bankruptcy Court. The Debtors and the Holders hereby irrevocably agree that the summons and complaint or any

other process in any such action may be served by mailing in accordance with the provisions set forth in Section 13 hereof.

(b)    EACH OF THE DEBTORS AND THE HOLDERS HEREBY IRREVOCABLY WAIVE ALL RIGHT TO TRIAL BY JURY IN ANY ACTION, PROCEEDING OR COUNTERCLAIM ARISING OUT OF OR RELATING TO ANY OBLIGATIONS UNDER THIS NOTE.

15.    <u>Governing Law</u>.  This Note shall be governed by, construed and enforced in accordance with the laws of the State of New York applicable to agreements made and to be wholly performed in such State and without giving effect to the conflict of laws principles thereof.

16.    <u>Indemnification for Expenses</u>.  The Debtors agree to pay all reasonable out-of-pocket expenses of the Holders (solely in their capacity as Holders) incurred in connection with the preparation, execution, delivery, enforcement and administration of this Note, the documents and instruments referred to herein and any amendments, waivers or consents relating hereto or thereto including, without limitation, the reasonable fees and expenses of O'Melveny & Myers LLP, counsel for the Holders.  In addition, the Debtors agree to pay, and save Holders (solely in their capacity as Holders) harmless from all liability for, any stamp or other documentary taxes that may be payable in connection with the execution or delivery of this Note by the Debtors.

17.    <u>Indemnification of Holders</u>.  The Debtors hereby agree to protect, indemnify, pay and save harmless the Holders (solely in their capacity as Holders) from and against any and all claims, demands, liabilities, damages, losses, costs, chargers and expenses (including reasonable fees, expenses and disbursements of outside counsel) that Holders (solely in their capacity as Holders) may incur or be subject to as a consequence, direct or indirect, of the issuance of this Note by the Debtors other than as a result of the gross negligence or willful misconduct of the Holders (solely in their capacity as Holders) as determined by a final judgment of a court of competent jurisdiction.

[SIGNATURE PAGE FOLLOWS]

**IN WITNESS WHEREOF,** the Debtors have executed and delivered this Note as of the day and year and at the place first above written.

          LEXINGTON PRECISION CORPORATION

          By: _____
              Name:  Warren Delano
              Title:    President

          LEXINGTON RUBBER GROUP, INC.

          By: _____
              Name:  Warren Delano
              Title:    President