WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153-0119
Telephone: (212) 310-8000
Facsimile: (212) 310-8007
Richard P. Krasnow
Adam P. Strochak

Attorneys for the Debtors and
Debtors in Possession

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

-------------------------------------------------------------------x
: 
In re:                                           :    Chapter 11
                                                 :
**LEXINGTON PRECISION CORP., et al.,**           :    Case No. 08-11153 (SCC)
                                                 :
        Debtors.                                 :    (Jointly Administered)
                                                 :
-------------------------------------------------------------------x

### DEBTORS' OMNIBUS REPLY TO OBJECTIONS TO APPROVAL OF THE DEBTORS' PROPOSED DISCLOSURE STATEMENT

TO THE HONORABLE SHELLEY C. CHAPMAN,
UNITED STATES BANKRUPTCY JUDGE:

Lexington Precision Corporation ("**LPC**") and its wholly-owned subsidiary, Lexington Rubber Group, Inc. ("**LRGI**," and together with LPC, the "**Debtors**"), as debtors and debtors in possession, in support of their motion, dated October 24, 2008 (as supplemented, the "**Disclosure Statement Motion**"),[1] to, among other things, approve the Debtors' proposed

---

[1] *Debtors' Motion to (I) Approve the Proposed Disclosure Statement, (II) Approve the Procedures to Solicit Acceptances of the Debtors' Proposed Plan, and (III) Schedule a Hearing and Establish Notice and Objection Procedures for Confirmation of the Debtors' Proposed Plan*, dated October 23, 2008 [Docket No. 446]; *Debtors' Supplement to Motion to (I) Approve the Proposed Disclosure Statement, (II) Approve the Procedures to Solicit Acceptances of the Debtors' Proposed Plan, and (III) Schedule a Hearing and Establish Notice and Objection Procedures for Confirmation of the Debtors' Proposed Plan*, dated October 6, 2009 [Docket No. 750]; *Debtors' Second Supplement to Motion to (I) Approve the Proposed Disclosure Statement, (II) Approve the Procedures to Solicit Acceptances of the Debtors' Proposed Plan, and (III) Schedule a Hearing and Establish Notice and Objection Procedures for Confirmation of the Debtors' Proposed Plan*, dated April 19, 2010 [Docket No. 871].

disclosure statement (the "**Disclosure Statement**")[2] for the Debtors' fourth amended plan (the "**Plan**")[3] and in response to the objections thereto (together, the "**Objections**") of (a) the Official Committee of Unsecured Creditors (the "**Committee**")[4] and (b) Wilmington Trust Company ("**Wilmington Trust**"),[5] as indenture trustee under that certain Indenture, dated December 18, 2003 (including any supplemental indentures, the "**Indenture**"), respectfully represent:

### Preliminary Statement

1. From the very first day of these chapter 11 cases, the Committee and its counsel have adopted the most adversarial and confrontational posture on every issue, frustrating the Debtors' ability to maximize enterprise value and multiplying exponentially the legal fees and other costs of administration of these estates. The Committee's objection to the Disclosure Statement continues this unfortunate history.

2. The Committee should be celebrating the Plan as a successful resolution of these cases, not opposing it as "patently unconfirmable," Comm. Obj. at ¶ 19, a contention shown below to be patently incorrect. For two years, the Debtors have charted a path through a global financial crisis, a credit and banking crisis that to this day makes a traditional exit loan unavailable for this business, and what can only be called the devastation of the North American

---

[2] *Proposed Disclosure Statement for Debtors' Fourth Amended Joint Plan of Reorganization under Chapter 11 of the Bankruptcy Code*, dated April 19, 2010 [Docket No. 870].

[3] *Debtors' Fourth Amended Joint Plan of Reorganization under Chapter 11 of the Bankruptcy Code*, dated April 19, 2010 [Docket No. 869]. Capitalized terms not defined herein shall have the meaning ascribed to them in the Plan.

[4] *Official Committee of Unsecured Creditors' Objection to the Proposed Disclosure Statement in Respect of Debtors' Fourth Amended Joint Plan of Reorganization*, dated May 19, 2010 [Docket No. 879].

[5] *Objection of Indenture Trustee to Debtors' Motion Dated October 24, 2008 as Supplement to: (I) Approve the Proposed Disclosure Statement, (II) Approve the Procedures to Solicit Acceptances of the Debtors' Proposed Plan, and (III) Schedule a Hearing and Establish Notice and Objection Procedures for Confirmation of the Debtors' Proposed Plan*, dated May 19, 2010 [Docket No. 880].

automobile industry. Notwithstanding these circumstances, the Debtors have managed their businesses effectively, retained all of their key employees, won new business from existing and new customers, reconfigured their connector seals business so it can operate profitably at much lower volumes, resurrected their previously unprofitable metals business so that it now operates profitably, continued to generate positive cash flow through the chapter 11 cases, and attracted a plan investor who will provide at least $22 million of new equity capital, permitting the Debtors to propose the Plan, which provides for *payment in full* to LRGI creditors and substantial recovery to LPC creditors.

3.    None of the Committee's objections go to confirmability of the Plan and none should stop this Plan from going out to creditors for a vote. Rather, they are a grab bag of complaints about the adequacy of the information in the disclosure statement, some based on plain errors of fact, and requests for changes to non-material terms of the Plan. Indeed, the Committee's objections to several plan provisions appear to be nothing more than a continuation of the efforts of its counsel to impose unnecessary legal fees on these estates and impute ill-intent to the Debtors and their management where there is none. For example, several of the plan provisions that the Committee now disparages as a "free option in favor of the Debtors' management" at the expense of unsecured creditors, Comm. Obj. at ¶ 16, are *exactly the same* as provisions in the plan proposed *by the Committee itself* in the fall of 2009.

4.    The Plan is confirmable. It has the support of the Debtors' Senior Secured Lenders and the Plan Investor, which holds more than 70% of the Class 5 Senior Subordinated Note Claims. There can be little doubt that this Plan is near certain to win acceptance from these classes of impaired creditors and therefore is highly likely to satisfy section 1129(a)(10). The Debtors anticipate that the Plan also will attract great support from Class 17 general unsecured

creditors of LRGI, who have the option of accepting either an immediate cash recovery of 51% of their allowed claims or deferred payments over a 27-month period equaling 106.75% of their claim. There is nothing in this proposed treatment that makes the Plan unconfirmable. If Class 17 votes to accept, the Committee's objection to the treatment of that class is moot. And even if Class 17 votes to reject, the Plan can be confirmed under section 1129(b)(2)(B)(i) and the Disclosure Statement specifically so provides. *See* Disclosure Statement at pp. 79, 102.

5. The Committee's objection to the post-confirmation interest rate applied to Class 17 claims electing deferred payments is a classic confirmation objection that can and should be addressed at the confirmation hearing, not now. There is nothing "patently unconfirmable" about an effective post-confirmation interest rate equal to of 6.02% annually. This is, in fact, greater than the interest rate that might apply if the Debtors have to seek confirmation under section 1129(b)(2)(B)(i) should Class 17 not vote to accept the Plan. Indeed, the cases cited by the Committee confirm that courts will determine a cramdown interest rate by adding a risk premium of 1-3% to a risk free rate. *See* Comm. Obj. at p.5 & n.7. The interest rate on a 2-year U.S. treasury note is now around 0.75 percent. Even adding a 3% risk premium would yield a rate significantly less than the 6% provided in the Plan. Although there is no doubt the Plan is confirmable as proposed, the Debtors have modified it to provide specifically that, in the event Class 17 rejects and the Debtors must seek confirmation under section 1129(b), general unsecured creditors of LRGI electing deferred payments will receive payments over the deferral period in whatever amount the Court may decide is necessary to equal the allowed amount of their claims. With this change, there can be no dispute that Class 17 treatment meets all requirements of the Bankruptcy Code.

6. The Debtors similarly have modified the Plan to provide that Wilmington Trust's claims for attorneys fees and other expenses will be determined by the Court at the confirmation hearing. This is consistent with section 503(b) of the Bankruptcy Code and the terms of the indenture itself, both of which require that expenses and attorneys fees be reasonable. *See* 11 U.S.C. § 503(b)(3), (4) & (5).

7. As discussed below, and as reflected in the revised Disclosure Statement and Plan filed concurrently, the Debtors have added information to the Disclosure Statement and made certain revisions to the Plan to address the objections of the Committee and Wilmington Trust. The Disclosure Statement provides adequate information as required by section 1125 of the Bankruptcy Code and the Plan is confirmable. The Court should overrule the objections and allow creditors to vote on a plan that will provide full payment to LRGI creditors and a substantial recovery to LPC creditors.

## Summary of Objections

8. The Committee asserts a number of objections which purportedly go to the adequacy of the information contained in the disclosure statement. Specifically, the Committee asserts that the Disclosure Statement should include discussions of the following items:

- The Plan Investor's aggregate ownership of Senior Subordinated Notes;

- The lack of covenants in the promissory note to be distributed to holders of general unsecured claims in Class 17 (General Unsecured Claims against LRGI);

- Class 19 treatment -- retention of equity interests in LRGI by its parent company, LPC;

- Details of the Management Incentive Plan;

- The Debtors' estimated enterprise value; and

- The Indenture Trustee Fee Claims.

9.  The Committee and Wilmington Trust also object to certain provisions in the Plan. Specifically, they contend that the Plan must be modified to provide for:

- Default rate interest to holders of Senior Subordinated Note Claims (Class 5);

- Post-effective date interest at a purported market rate of 20-25% to holders of general unsecured claims in Class 17 (General Unsecured Claims against LRGI);

- Elimination of the Debtors' right to move to vacate the confirmation order if the conditions to effectiveness of the Plan are not satisfied within 90 days of confirmation;

- Shortening of the 120 day period after the Effective Date for the Debtors to object to proofs of claim;

- Establishment of a claims reserve;

- Elimination of an asserted 90-day delay between the Confirmation Date and the Effective Date; and

- Monitoring and reporting to the Court between the Confirmation Date and the Effective Date.

Many of these objections are based on misreading of the Plan or simple errors of fact. None of them form a basis for denying approval of Disclosure Statement; they are merely the Committee's and Wilmington's Trust's views on what they would like to see in the Plan. This reply addresses each of the objections in turn below.

### Response to Objections to Adequacy of Information

10.  The Debtors have proposed revisions to the Disclosure Statement to address each of the objections going to adequacy of information. Specifically, the Disclosure Statement has been revised to reflect:

- That the Plan Investor's owns approximately $24 million in Senior Subordinated Notes at their principal value, constituting slightly more than 70% of the aggregate amount outstanding, and that it acquired these notes at the same price (65% of face value) that is being paid under the Plan to holders of Class 17 claims who elect the cash payment option (Revised Disclosure Statement at p. 41);

- That the promissory note to be distributed to holders of general unsecured claims in Class 17 (General Unsecured Claims against LRGI) will not contain any covenants (Revised Disclosure Statement at p. 57);

- Additional detail regarding the Management Incentive Plan, including the fact that the warrants or options to be granted will have a strike price that begins at the share price implied by the Plan and escalates 20% annually thereafter (Revised Disclosure Statement at p. 45). The Debtors will also include the terms of the Management Incentive Plan in the Plan Supplement;

- Additional discussion of the Debtors' estimated enterprise value implied by the Plan Investment and a calculation showing how the estimate is derived (Revised Disclosure Statement at pp. 79-80); and

- Additional information regarding the Indenture Trustee Fee Claims (Revised Disclosure Statement at p. 47).

11. The Committee's objection to the adequacy of information regarding the retention of equity interests in LRGI should be overruled. The Disclosure Statement clearly states that LPC will retain its equity interests in LRGI and the text that describes this treatment is unambiguous, providing that all LRGI equity interests "will be unaltered" and that this class of interests is unimpaired  This description is substantially identical to that found in the disclosure statement that the Committee itself proposed for its own plan (subsequently withdrawn), which provided exactly the same treatment for this class. *Compare* Committee Second Amended Disclosure Statement at p. 32 [Docket 733][6] *with* Debtors' Revised Disclosure Statement at p. 58.

12. As to what constitutes an "Indenture Trustee Fee Claim,"[7] the Debtors have modified the Plan to clarify that an Indenture Trustee Fee Claim is a Claim consisting of

---

[6] *[Proposed] Second Amended Disclosure Statement for Official Committee of Unsecured Creditors' [Proposed] Amended Joint Chapter 11 Plan*, dated September 29, 2009 [Docket No. 733].

[7] The Committee's Plan also used the same definition of "Indenture Trustee Fee Claim" as did the Debtors. *See* Committee Plan §§ 1.53, 2.3.

reasonable fees and expenses, including, without limitation, the fees and expenses of counsel to Wilmington Trust, for which Wilmington Trust is entitled under the Indenture to exercise its charging lien. The Debtors have also modified the Plan to provide that the Indenture Trustee must file an application for approval of its Indenture Trustee Fee Claim at least seventeen (17) days prior to the Confirmation Hearing and that the Court will determine what fees and expenses are reasonable under the terms of the Indenture and under section 503(b) of the Bankruptcy Code at the Confirmation Hearing. The Debtors believe this procedure is neutral and appropriate. Wilmington Trust is seeking approximately $138,000 in attorneys fees for its outside counsel and another $80,000 in as-yet-undocumented internal costs incurred to participate as a member of the Committee and "administration fees." The necessity and reasonableness of these charges should be subject to Court review and approval; the Debtors will pay whatever amount the Court approves. As to Wilmington Trust's request that the Disclosure Statement define the term "reasonable" as it applies to fees and expenses owed to the Indenture Trustee, the Debtors submit that the term "reasonable" requires no definition; it is whatever the Court decides.

13.     The Committee's request to send a "clear and concise" written communication to creditors regarding Class 17 treatment is inappropriate and the Committee has neither provided a draft to the Debtors nor included any in its objection. It is clear from the arguments set forth in the Committee's objection, however, that the hypothetical communication proposed by the Committee is based on an erroneous application of the absolute priority rule and a fundamental misunderstanding of the requirements of section 1129(b)(2)(B)(i) of the Bankruptcy Code. It is beyond comprehension that this Committee and its counsel would wish Class 17 creditors to vote against a Plan that provides them an option of full recovery by suggesting to them – erroneously – that they are entitled to post-effective date interest of 20 to

25%. If the Court does require the Debtors to include such a communication in the solicitation package, it should require that it be part of the disclosure statement itself and permit the Debtors to include a response to the Committee's comments.

14.     The Revised Disclosure Statement addresses all objections to the adequacy of information in the Disclosure Statement. The Debtors accordingly request that, to the extent either the Committee or Wilmington Trustee still believe their Disclosure Statement Objections have not been adequately addressed, such Disclosure Statement Objections should be overruled.

### Response to Plan Objections

15.     Although the hearing to consider the adequacy of information in the Disclosure Statement is not the appropriate forum to consider the Committee's and Wilmington Trust's objections to the Plan (the "**Plan Objections**"), this reply addresses each Plan Objection in turn to show that each Plan Objection is either based on a misreading of the Plan or does not constitute a valid ground for objecting to the Plan.

*Default Interest*

16.     The Committee and Wilmington Trust assert that holders of Subordinated Note Claims should receive interest at the Default Rate. The indenture, however, provides only for 12% interest and contains no provision establishing a default rate of interest. The only "default" rate is in the Supplemental Indenture, which provides for interest at 16% for the period from March 9, 2007 through March 31, 2008. The allowed Class 5 Senior Subordinated Note Claims under the Plan include all prepetition accrued interest, at whatever rate is applicable under the Indenture or the Supplemental Indenture. The Debtors have modified the Plan and the Disclosure Statement to make this point clearer. In addition, the Debtors have modified the Plan

and the Disclosure Statement to remove the reference to postpetition interest because no postpetition interest will be paid to holders of Subordinated Note Claims.[8]

### *Interest to Class 17*

17.     The Committee's assertion that the Plan violates the absolute priority rule is incorrect and, in any event, is no basis to deny approval of the Disclosure Statement. The absolute priority rule is applicable only if the Debtors seek to confirm the Plan under section 1129(b) of the Bankruptcy Code. If the Plan is accepted by Class 17, the treatment proposed – cashout payment of 51% of allowed claims or deferred payments equal to 106.75% of allowed claims – binds the entire class. Only if Class 17 rejects the Plan will the Court need to determine whether a higher (or lower) rate of interest should be paid to holders of Class 17 claims to ensure that they receive deferred payments equal to the full amount of their allowed claims in accordance with section 1129(b)(2)(B)(i).

18.     The Committee's assertion that no plan can provide for a recovery to structurally subordinate LPC creditors "unless and until" all LRGI creditors are paid "in full," Comm. Obj. at ¶ 10, is wrong as a matter of law. There is no reason in the Bankruptcy Code why Class 17 creditors can't determine for themselves whether the proposed plan treatment for their class is not a tremendously successful outcome and vote in favor of that treatment. And even if the class rejects, the Court can still find that the proposed treatment does in fact provide for full recovery of allowed LRGI unsecured claims. The Committee cannot contend this structure is impermissible because it advocated for a similar one in the plan it co-proposed with the Senior Secured Lenders last fall. That plan provided that holders of Senior Subordinated

---

[8] Class 5 Senior Subordinated Note claims do not receive post-petition interest under the Plan. Language in the Plan and Disclosure Statement suggesting that they did was included erroneously and the Revised Plan and Disclosure Statement have been amended to correct this error.

Notes would receive payment on their claims immediately in the form of stock in the reorganized debtors, but general unsecured creditors of LRGI would receive no payment at all unless and until all Senior Secured Debt claims were satisfied in full.

19. While the Debtors submit that the Plan as proposed provides payment in full of the allowed Class 17 claims of creditors who elect deferred payments, the Debtors have revised the Plan to provide that, if Class 17 rejects the Plan, each Class 17 creditor who so elects will receive deferred payments in whatever amount the Court determines is necessary to provide a recovery equal to the allowed amount of its claim. Without suggesting that the Committee's position has any merit whatsoever, this clarification resolves any possible objection to confirmability of the Plan.

### *Vacating the Confirmation Order*

20. Section 11.3 of the Plan provides that if the conditions to the Effective Date do not occur on or prior to 90 days after the confirmation order becomes a final order, the Debtors or the Agents may request that the Court vacate the confirmation order. The Committee and Wilmington Trust object to the inclusion of such provision because they claim the Debtors can unilaterally void the Plan without creditor consent or Court approval and thus give themselves a "free option in favor of Debtors' management." This objection is specious and should be overruled.

21. First, nothing in section 11.3 of the Plan confers any improper advantage on the Debtors. The Debtors must request Court approval to vacate the confirmation order, subject to notice and hearing. There is no unilateral right to do so. Second, nothing in the Bankruptcy Code or the Bankruptcy Rules prohibit such a provision nor is inclusion of such a provision a basis to deny confirmation of the Plan, much less reach a conclusion that the Plan is patently unconfirmable and, consequently, should not be permitted to go out to creditors for a

vote. In fact, Section 11.3 of the Plan is a prudent provision because the Debtors must have the ability to return to the drawing board after confirmation if for any reason the conditions necessary to effectuate the Plan cannot be met. Absent such a provision, the Debtors could be left in a state of limbo that would harm not just the Debtors, but all creditors. For example, in the *Delphi* case, the absence of such a provision stalled the chapter 11 cases when plan investors refused post-confirmation to close. Third, the provision in question is exactly the same as one included in the Committee's own plan, except the Committee gave itself what it now characterizes as a "free option" for 180 days.

### *Claims Objections*

22. Section 7.1 of the Plan permits the Debtors to object to claims up to 120 days after the Effective Date. The Committee[9] and Wilmington Trust object to any delay this may cause for distributions to creditors. Neither the Bankruptcy Code nor Bankruptcy Rules impose a deadline by which the Debtors must object to claims. Disagreeing with the time period during which the Debtors may object to claims is not a basis for objecting to confirmation.

23. The Debtors have already addressed the majority of non-substantive objections and any remaining claims resolution is primarily limited to substantive objections. One hundred twenty days is a reasonable period of time to review disputed claims and prepare and file objections or seek to effectuate compromises, particularly in light of the limited personnel the Debtors have available to complete this task. Lexington is not a large company. It has no in-house legal staff and its corporate finance team is very lean; only two or three individuals at the Debtors have access to and knowledge about the Debtors' books and records to perform the claims reconciliation function and such individuals maintain their ongoing corporate

---

[9] Notably, the Committee Plan also provided for a 120 day time period after the Effective Date to object to claims. Committee's Plan § 7.1.

responsibilities (*e.g.*, ongoing fiscal reporting and management of the Debtors' day-to-day fiscal operations). While these chapter 11 cases have been pending, the Debtors have directed their resources to the pressing needs of the chapter 11 cases, including an exhaustive search for exit financing and a lengthy marketing process to attract a plan investor. Further, the Debtors made a prudent decision to preserve assets and minimize costs of administration by deferring the claims reconciliation process until the likely outcome of the chapter 11 cases became clearer.

24. The 120-day period to object to claims provided in the Debtors' Plan is *exactly* the same provision that the Committee proposed in its own plan last fall. The Committee offers no explanation why a routine and reasonable provision that was included in its own plan somehow is objectionable when included in the Debtors' plan.

### *Claims Reserve*

25. The Committee objects to the Plan on the basis that the Plan does not provide a claims reserve. The Debtors submit that a disputed claims reserve is not necessary because creditors will not be sharing *pro rata* from a single pool of assets (*i.e.*, the Plan is not a "pot" plan), the Plan is not a plan of liquidation, and the Debtors have shown in the Disclosure Statement that they will have sufficient assets to pay claims under the Plan. No claims reserve is required in order to confirm the Plan and no additional disclosure about the claims reconciliation process is necessary in light of the structure of the Plan.

### *Ninety-Day Delay between the Effective Date and Confirmation Date*

26. Wilmington Trust objects to an asserted 90 day delay between the Confirmation Date and the Effective Date. The Plan, however, includes no such provision and it is the Debtors' intention to close on the Plan Investment and go effective on the Plan as soon as practicable after entry of the confirmation order. This objection should be overruled.

### *Lack of Monitoring*

27. Wilmington Trust objects to the Plan on the basis that there is no monitoring or reporting by the Debtors between the Confirmation Date and the Effective Date. Because (a) the Plan does not suspend the Debtors' obligations to continue to provide quarterly reports to the Office of the United States Trustee for the Southern District of New York, (b) the Committee will remain in existence until the Effective Date, and (c) the Court will retain jurisdiction over a wide variety of matters relating to the chapter 11 cases, there is no basis for Wilmington Trust's objection.

WHEREFORE based upon the foregoing, the Debtors submit that the Disclosure Statement, as modified, contains "adequate information" as such term is defined in section 1125(a)(1) of the Bankruptcy Code and request the Court enter of an order approving the Disclosure Statement, as modified, overrule the Objections to the Disclosure Statement Motion, and grant such other and further relief as is just.

Respectfully submitted,

Dated: May 24, 2010
New York, New York

/s/ Adam P. Strochak
Richard P. Krasnow
Adam P. Strochak

WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone:    (212) 310-8000
Facsimile:    (212) 310-8007

Attorneys for Debtors
and Debtors in Possession