# **<u>EXHIBIT A</u>**

**Hearing Date: May 26, 2010 at 10:00 a.m. (prevailing Eastern Time)**
**Objection Deadline: May 19, 2010 at 4:00 p.m. (prevailing Eastern Time)**

ANDREWS KURTH LLP
Paul N. Silverstein (PS 5098)
Jonathan I. Levine (JL 9674)
Abhishek Mathur (AM 1269)
450 Lexington Avenue, 15th Floor
New York, New York 10017
Telephone: (212) 850-2800
Facsimile: (212) 850-2929

*Counsel to the Official Committee*
*of Unsecured Creditors*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---------------------------------------------------------------x
In re:                                          :    Chapter 11
                                                :
**LEXINGTON PRECISION CORP., et al.,**          :    Case No. 08-11153 (SCC)
                                                :
                                                :    (Jointly Administered)
                    Debtors.                    :
---------------------------------------------------------------x

### OFFICIAL COMMITTEE OF UNSECURED CREDITORS' OBJECTION TO THE PROPOSED DISCLOSURE STATEMENT IN RESPECT OF DEBTORS' FOURTH AMENDED JOINT PLAN OF REORGANIZATION

The Official Committee of Unsecured Creditors (the "Committee") of the above-captioned debtors, Lexington Precision Corporation ("Lexington Precision") and Lexington Rubber Group, Inc. ("Lexington Rubber Group" and, collectively with Lexington Precision, the "Debtors"), for its Objection to the Debtors' Proposed Disclosure Statement [Docket No. 870] (the "Proposed Disclosure Statement") in respect of the Debtors' Fourth Amended Joint Plan of Reorganization [Docket No. 869] (the "Proposed Plan"),[1] respectfully represents:

---

[1] Capitalized terms not defined herein shall have the meaning ascribed to them in the Proposed Disclosure Statement.

NYC:212247.7

**INTRODUCTION**

1.      On April 19, 2010, more than 2 years after filing for relief under Chapter 11, and 3.5 years after defaulting on, and commencing restructuring negotiations with, the Senior Subordinated Notes, the Debtors filed the Proposed Plan.  The equity sponsor of the Proposed Plan is Aurora Capital Group through its affiliate, Commercial Financial Services 407 LLC ("Aurora"), which under the Proposed Plan, would emerge as the majority owner, and in control, of the Reorganized Debtors.

2.      Inaccuracies in the Proposed Disclosure Statement need correction.  Additional or clarifying information is required as to a number of matters, which are discussed below.  Further, certain aspects of the Proposed Plan render it not confirmable in its present form.  While the Committee recognizes that a hearing to consider the approval of a proposed disclosure statement is not a confirmation hearing under Section 1129 of the Bankruptcy Code, these matters should nonetheless be rectified now or, at the very least, "framed" so that they may efficiently be addressed at the confirmation hearing.

**BACKGROUND**

3.      A long and detailed recitation of the full background of these cases is not necessary.  The condensed version, however, is necessary insofar as it relates to the Proposed Plan's treatment of unsecured creditors.  An overview of the Debtors' capital structure is set forth below.  There are two Debtors. Lexington Precision is the parent company which, other than owning a small unprofitable metals business, operates solely as a holding company that owns all the stock of Lexington Rubber Group, which owns and operates the Debtors' principal operating businesses.  Aside from the post-petition DIP Note, Debtors have two principal secured creditors, CapitalSource Finance LLC and CSE Mortgage LLC (Classes 2a and 2b) which are collectively owed approximately $36.4 million and have liens on substantially all of

the Debtors' assets. The Senior Subordinated Notes, Class 5, are owed approximately $43.28 million, including interest through the Petition Date. In addition, there are general unsecured claims (trade vendors, etc.) at each of Lexington Precision (approximately $1-2 million in the aggregate), and Lexington Rubber Group (approximately $4-5 million in the aggregate).[2]

4. In or about January 2010, Aurora acquired most of the Senior Subordinated Notes, excluding those owned by the insiders of the Debtors. The Proposed Disclosure Statement should reflect Aurora's aggregate ownership of Senior Subordinated Notes.

The Proposed Plan

5. The Proposed Plan provides that CapitalSource Secured Claims against Lexington Precision and CSE Secured Claims against Lexington Precision would each receive a 100% recovery, by consensually "rolling" their existing debt into new credit facilities with the Reorganized Debtors. CapitalSource and CSE would continue to have a first lien on all, or substantially all, of the Debtors' assets.

6. Senior Subordinated Notes, Class 5, are impaired under the Proposed Plan. Class 5 can elect to receive either: (i) a cash payment equal to 51% of their Allowed Claim on the Effective Date or (ii) shares of the Reorganized Debtors' stock equal to the amount of such Class 5 holder's Allowed Claim divided by $10.

7. Under the Proposed Plan, Class 7, General Unsecured Claims against Lexington Precision, would receive either (i) a cash payment equal to 51% of their Allowed Claims, or (ii) an initial payment equal to 8% of their Allowed Claims, followed by 9 equal quarterly payments of 8.6% of Allowed Claims, allegedly reflecting a 80% recovery.[3]

---

[2] These amounts include 503(b)(9) claim amounts.

[3] The Proposed Disclosure Statement is inconsistent and provides that Class 7 will receive a 80% recovery and a 85.4% recovery. Proposed Disclosure Statement, Page 6 and 51.

8. Class 17, General Unsecured Claims against Lexington Rubber, would receive either (i) a cash payment equal to 51% of their Allowed Claims, or (ii) an initial payment equal to 10% of their Allowed Claims, followed by 9 equal quarterly payments of 10.75% of Allowed Claims, allegedly reflecting an 100% recovery. Class 17 would receive post-petition interest at the federal judgment rate, discussed below, and post-confirmation interest at 6.02% per annum.

## DISCUSSION

Treatment of Claims at Lexington Precision - Default Rate
Applicable to Senior Subordinated Note Claims

9. The Proposed Disclosure Statement provides that Senior Subordinated Note Claims include "accrued and postpetition interest at 12% per annum."[4] The applicable interest rate, however, for the Senior Subordinate Note Claims should be the default rate of interest in the governing indenture. If there are any holders of Senior Subordinated Notes that do not elect the stock treatment, the Proposed Plan should be modified to provide for such default rate, or the Proposed Disclosure Statement should include a statement concerning such issue.

Treatment of Claims at Lexington Rubber Group

10. Claims against Lexington Rubber Group are structurally senior to claims against the parent entity, Lexington Precision. Lexington Rubber Group is a solvent debtor. Unless and until Lexington Rubber Group creditors are paid in full, with all post-petition interest, creditors of Lexington Precision are not entitled to receive any recovery.[5] Pursuant to Sections 4.8 and

---

[4] Proposed Disclosure Statement, Page 51.

[5] "A plan of reorganization may not allocate any property whatsoever to any junior class on account of the members' interest or claim in a debtor unless all senior classes consent, or unless such senior classes receive property equal in value to the full amount of their allowed claims, or the debtor's reorganization value, whichever is less." 7 *Collier on Bankruptcy* 1129.03[4][a][i]; *Group of Institutional Investors v. Chicago, M., St. P. & Pac. R.R.*, 318 U.S. 523, 565 (1943) (absolute priority is satisfied if "each security holder in the order of his priority receives *from that which is available for the satisfaction of his claim* the equitable equivalent of the rights surrendered.") (emphasis added); *see also Consolidated Rock Prods. Co. v. Du Bois*, 312 U.S. 510, 529-30 (1941) ("The method of effecting full compensation for senior

-4-

4.19 of the Proposed Plan, Class 17, General Unsecured Claims against Lexington Rubber are not being paid in full. In fact, the Proposed Plan imposes the brunt of the risk of a potential failure of the Debtors post-emergence upon Class 17.[6] Although Class 17 would prefer to be paid in cash, in full, on the Effective Date, if such creditors are to be paid over time, they must be compensated for the high risk associated with delayed payments. The Proposed Plan applies an improper market rate – 6.02% – to the delayed (post-Effective Date) payments to Class 17 under the Proposed Plan. By way of example, an interest rate of approximately 15% per annum is provided to the Term B loan, which represents a <u>secured</u> position in the capital structure protected by covenants restricting incurrence of new debt and other matters. The 6.02% per annum post-Effective Date interest to Class 17 is well below the market rate, resulting in such claims <u>not</u> being paid in full. The Committee believes that the market rate is in the range of 20% - 25%. Such rate accurately reflects the risk for such a junior unsecured claim.[7] The Proposed

---

claimants will vary from case to case. As indicated in the Boyd case, ... the creditors are entitled to have the full value of the property, whether 'present or prospective, for dividends or only for purposes of control,' first appropriated to payment of their claims."); *Kansas City Terminal Ry. v. Central Union Trust Co.*, 271 U.S. 445, 455 (1926) ("Unsecured creditors of insolvent corporations are entitled to the benefit *of the values which remain* after lienholders are satisfied, whether this is present or prospective, for dividends or only for purposes of control.") (emphasis added).

[6] With respect to Class 17, the Proposed Plan provides the following treatment:

> "an initial cash payment of 10% of the allowed claim, followed by nine (9) additional equal quarterly cash payments in the amount of 10.75% of the allowed claim, unless the holder elects to receive a single cash payment equal to 51% of the holder's allowed claim."

Proposed Disclosure Statement, Page 7.

[7] In the event the interest rate is below a market rate of interest, a stream of principal payments equal to the allowed amount of the unsecured claim is not deemed "fair and equitable." 7 *Collier on Bankruptcy* ¶ 1129.03[3][a] (Alan N. Resnick & Henry J. Sommer eds., 16th ed. 2009); *In re Bryson Props., XVIII*, 961 F.2d 496, 500-502 (4th Cir.), *cert. denied*, 506 U.S. 866 (1992) (holding that a rate that is less than the "market" rate will result in the stream of payments not equaling the present value of the allowed amount of the claim.); *In re Prussia Associates*, 322 B.R. 572, 585 (Bankr. E.D. Pa. 2005) (stating that a heavy value is placed on the market rate of interest when evidence exists regarding such an efficient and relevant market.); *In re Martinez*, 409 B.R. 35, 41 (Bankr.S.D.N.Y. 2009) (holding that courts have generally approved risk adjustment rates between 1% - 3%); *Interim Capital, LLC v. *12 Hank's Dock,*

-5-

Plan also applies the wrong interest rate in connection with post-petition interest to Class 17.[8] In addition, the pay-out or "term" debt to be issued to holders of Class 17 claims should contain protective covenants similar to those with Term B loan, which, among other things, restrict additional debt incurrence and the like.

11.    To illuminate the foregoing, consider that under the Proposed Plan, secured debt is receiving a <u>higher</u> interest rate and is <u>protected</u> by covenants restricting incurrence of additional debt. The delayed payments over time to Class 17 contain neither.[9] At the very least, the foregoing matters as to Class 17 must be discussed, or conspicuously disclosed, in the Proposed Disclosure Statement. In that regard, the Committee intends to send a clear and concise written communication to Class 17 with respect to these matters that would be transmitted along with the Debtors' solicitation materials.

<u>Proposed Disclosure Statement Does Not Explain Treatment of Class 19</u>

12.    The Proposed Disclosure Statement states the treatment of Class 19 - Interests in Lexington Rubber to be: "[i]nterests are retained,"[10] which the Committee assumes to mean that Lexington Precision would retain such equity interests in its subsidiary. Class 19 is the most junior class at that Debtor and such equity interests cannot be "retained" when creditors more senior (i.e. Class 17) are not being paid in full. Creditors may not receive less than payment in

---

*Inc.*, 2006 U.S. Dist. LEXIS 66827, *6 (D.Tenn. 2006) ("a Bankruptcy Court deciding upon an interest rate in a Chapter 11 case should apply the market rate of interest where there exists an efficient market."); *In re American HomePatient, Inc.*, 420 F.3d 559, 568 (6th Cir. 2005), *cert. denied*, 127 S. Ct. 55 (U.S. 2006) ("the market rate should be applied in Chapter 11 cases where there exists an efficient market.")

[8] Hearing Tr. of 11/17/09, *In re Pilgrim's Pride Corp.*, No. 08-45664 (DML), Docket # 4171, at 63 (stating that the state rate is the appropriate rate of interest).

[9] The risk of financial or operational default that unfairly and unreasonably falls upon Class 17 suggests that the Proposed Plan should be modified. *In re Miami Center Assocs., Ltd.*, 144 B.R. 937, 940 (Bankr. S.D.Fla. 1992).

[10] Proposed Disclosure Statement, Page 7.

-6-

full, while Lexington Precision preserves ownership of the equity interests in its subsidiary. The Proposed Disclosure Statement omits relevant and pertinent information regarding the treatment of Class 19.

Management Incentive Plan Inappropriate

13.     The Management Incentive Plan (the "Proposed MIP") described in the Proposed Disclosure Statement provides participants with warrants exercisable in the aggregate for 20% of the New LPC Common Stock.[11]  The details of the Proposed MIP warrants, i.e., strike price, term, etc., are not discussed in either the Proposed Plan or the Proposed Disclosure Statement. Such an incentive plan seems excessive given that creditors at Lexington Precision are not receiving payment in full. While the Proposed Disclosure Statement does not ascribe any value to the Proposed MIP, which must be included therein, the Proposed MIP further appears inconsistent with comparable management incentive plans approved by bankruptcy courts. The Proposed Disclosure Statement should elaborate as to the substance and mechanics of the Proposed MIP.

Lack of Valuation Information

14.     The Proposed Disclosure Statement provides a very succinct description of the Debtors' "estimated enterprise value."[12]  The Proposed Disclosure Statement provides no explanation regarding the actual methodology for arriving at such enterprise valuation. The Proposed Disclosure Statement should provide more information regarding the estimated enterprise valuation and the methodologies employed to arrive at such amount.[13]

---

[11] Proposed Disclosure Statement, Page 45.

[12] Proposed Disclosure Statement, Page 78.

[13] Approval of a disclosure statement should be denied when it does not contain "adequate information." *Menard Sanford v. Mabey (In re A.H. Robins Co.)*, 880 F.2d 694, 696 (4th Cir. 1989).

NYC:212247.7

Effect of Failure of Conditions to Effective Date

15.     The Proposed Plan provides that, in the event conditions specified in Section 11.1 of the Proposed Plan have not occurred 90 days after the Confirmation Order becomes a Final Order, no distributions would be made pursuant to the Proposed Plan and the Debtors and all holders of Claims would be restored to the *status quo ante*.[14]  If the Proposed Plan is confirmed, the Debtors should not have the unilateral right to "void" the Proposed Plan without consent of creditors and approval of the Court.  This provision makes the Proposed Plan akin to a free option in favor of the Debtors' management, without any justification therefor.

Claims Reconciliation After the Effective Date and No Disputed Claims Reserve

16.     The Bar Date (for unsecured claims) in these cases was established as September 29, 2008.[15]  The proposed Effective Date is estimated to occur almost 2 years after the Bar Date. The Proposed Plan would give the Reorganized Debtors the right to object to claims for up to 120 days after the Effective Date.[16]  This means, as a practical matter, that general unsecured claims would not be paid for a significant period of time and there is no mechanism for a reserve for the future payments of such claims.  In light of the time that has elapsed since the Bar Date (more than 2 years), the Proposed Disclosure Statement lacks information regarding the state of claims reconciliation, information which is necessary for creditors to evaluate and vote on the Proposed Plan.[17]  Moreover, it appears that, here too, the Debtors seek a "free option" by having a plan confirmed without having either to pay claims or reserve sufficient funds to pay claims.

---

[14] Proposed Plan, Section 11.3.

[15] Notice of Deadlines for Filing of Proofs of Claims [Docket No. 195] filed on June 30, 2008.

[16] Section 7.1, Proposed Plan.

[17] The primary purpose of a disclosure statement is to give creditors the information necessary for them to decide whether to accept or reject a plan.  *Tenn-Fla Partners v. First Union Nat'l Bank of Fla.*, 229 B.R. 720 (W.D. Tenn. 1999); *In re Scioto Valley Mortgage Co.*, 88 B.R. 168 (Bankr. S.D. Ohio 1988).

NYC:212247.7

Legal Fees and Expenses of Indenture Trustee

17.    The Proposed Plan and Proposed Disclosure Statement suggest that the Indenture Trustee's fees and expenses, including attorneys' fees, would be paid in cash on the Effective Date and that the Indenture Trustee's "charging lien" would then be released. The Committee requests that the definition under the Proposed Plan of "Indenture Trustee Fee Claim" be clarified to make clear that it includes the Indenture Trustee's attorneys' fees.[18] If there is a dispute as to this issue, the Proposed Disclosure Statement should so reflect.

The Proposed Plan is Unconfirmable

18.    As explained in *In re Eastern Maine Elec. Coop., Inc.*, 125 B.R. 329, 332 (Bankr. D. Maine 1991), the process of evaluating a disclosure statement involves two stages of analysis. First, "[i]f the disclosure statement describes a plan that is so fatally flawed that confirmation is impossible, the court should exercise its discretion to refuse to consider the adequacy of disclosures."[19] Second, assuming that the debtor satisfies this initial hurdle, the court must evaluate whether the disclosure statement contains adequate information based upon the facts unique to the case.[20]

---

[18] The Proposed Plan currently defines Indenture Trustee Fee Claim as, "any Claim of the Indenture Trustee for the reimbursement of its reasonable accrued and unpaid fees and expenses under the Indenture." Section 1.58.

[19] *See In re Filex, Inc.*, 116 B.R. 37, 41 (Bankr. S.D.N.Y 1990) ("this court will not approve a disclosure statement for an admittedly unconfirmable plan"); *In re Beyond.com Corp.*, 289 B.R. 138, 140 (Bankr. N.D. Cal. 2003) (explaining that disclosure statement may not be approved when the underlying plan is patently unconfirmable); *Cardinal Congregate I*, 121 B.R. 760, 764 (Bankr. S.D. Ohio 1990) (explaining that disapproval of a disclosure statement may be appropriate when it describes a plan that is so fatally flawed that the plan cannot be confirmed).

[20] *See In re Texas Extrusion Corp.*, 844 F.2d 1142, 1157 (5th Cir. Tex. 1988), *cert. denied*, 488 U.S. 926 (1988) (explaining that the determination of what is adequate information is subjective and made on a case-by-case basis).

NYC:212247.7

19.     At disclosure statement hearings, courts have generally refused to address issues that are confirmation rather than disclosure issues, such as classification or treatment of claims or whether a plan is fair and equitable.[21] On the other hand, most courts refused to approve a disclosure statement if the underlying plan is clearly unconfirmable on its face.[22] In connection with the approval of a disclosure statement, courts in this district have required "a showing by the debtor and a determination by the bankruptcy court that the plan at issue is not patently unconfirmable and has a realistic chance of being confirmed."[23] With respect to the matter set forth and described above, no such showing has been made.

20.     The Committee reserves the right to amend or supplement this objection.

## CONCLUSION

21.     For the reasons set forth above, the Proposed Disclosure Statement does not provide adequate information to creditors, and the Proposed Plan is unconfirmable, because it violates basic principles of the Bankruptcy Code, including the absolute priority rule.

---

[21] *See In re Sunshine Precious Metals, Inc.*, 142 B.R. 918, 920 (Bankr.D.Idaho 1992); *In re Stoneridge Apts.*, 125 B.R. 794, 796 (Bankr.W.D.Mo. 1991).

[22] *In re Comandante Management Co., LLC*, 359 B.R. 410, 415-16 (Bankr.D.P.R. 2006) (if a chapter 11 plan is unconfirmable on its face as a matter of law, then the court cannot approve the disclosure statement); *In re Atlanta West VI*, 91 B.R. 620, 622 (Bankr. N.D.Ga. 1988); *In re century Inv. Fund VIII Ltd. P'ship*, 114 B.R. 1003, 1005 (Bankr.E.D.Wis. 1990) (*dictum*); *see also In re Market Square Inn, Inc.*, 163 B.R. 64, 67-68 (Bankr.W.D.Pa. 1994) (holding that since it is clear that the plan is not capable of confirmation, it is "appropriate to refuse approval of the disclosure statement"); *In re Cardinal Congregate I*, 121 B.R. 760, 764 (Bankr. S.D. Ohio 1990); *In re Filex, Inc.*, 116 B.R. 37, 41 (Bankr.S.D.N.Y. 1990) (disclosure not approved because parties admitted plan was unconfirmable).

[23] *In re 500 Fifth Ave. Associates*, 148 B.R. 1010, 1016 (Bankr. S.D.N.Y. 1993); *see In re 266 Washington Assocs.*, 141 B.R. 275, 281 (Bankr. E.D.N.Y.1992), *aff'd*, 147 B.R. 827 (E.D.N.Y.1992).

-10-

WHEREFORE, the Committee respectfully requests that the Court deny approval of the Debtors' Proposed Disclosure Statement, together with such other and further relief as the Court may deem just and proper.

Dated: New York, New York
       May 19, 2010

                                      ANDREWS KURTH LLP

                                      By: /s/ Paul N. Silverstein
                                          Paul N. Silverstein (PS 5098)
                                          Jonathan I. Levine (JL 9674)
                                          Abhishek Mathur (AM 1269)
                                          450 Lexington Avenue, 15th Floor
                                          New York, New York 10017
                                          Telephone: (212) 850-2800
                                          Facsimile: (212) 850-2929

                                      Counsel to the Official Committee of
                                      Unsecured Creditors