Hearing Date: July 21, 2010 at 11:00 a.m. (prevailing Eastern Time)
Objection Deadline: July 15, 2010 at 5:00 p.m. (prevailing Eastern Time)

ANDREWS KURTH LLP
Paul N. Silverstein (PS 5098)
Jonathan I. Levine (JL 9674)
Abhishek Mathur (AM 1269)
450 Lexington Avenue, 15th Floor
New York, New York 10017
Telephone: (212) 850-2800
Facsimile: (212) 850-2929

*Counsel to the Official Committee*
*of Unsecured Creditors*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
------------------------------------------------------------x
In re:                                     :    Chapter 11
                                           :
**LEXINGTON PRECISION CORP., et al.,**     :    Case No. 08-11153 (SCC)
                                           :
                                           :    (Jointly Administered)
                         Debtors.          :
------------------------------------------------------------x

**OFFICIAL COMMITTEE OF UNSECURED CREDITORS' SUPPLEMENTAL
OBJECTION TO THE CONFIRMATION OF DEBTORS' FOURTH
AMENDED JOINT PLAN OF REORGANIZATION**

The Official Committee of Unsecured Creditors (the "Committee") of the above-captioned debtors, Lexington Precision Corporation ("Lexington Precision") and Lexington Rubber Group, Inc. ("Lexington Rubber Group" and, collectively with Lexington Precision, the "Debtors"), for its Supplemental Objection (the "Supplemental Objection") to the Confirmation of the Debtors' Fourth Amended Joint Plan of Reorganization [Docket No. 894] (the "Proposed Plan"),[1] respectfully represents:

1. The Committee previously filed with this Court a short objection (the "Objection") to the Debtors' Proposed Plan [Docket No. 938], which incorporated confirmation objections set forth in its prior objections to the Debtors' then proposed Disclosure Statement.

---
[1] Capitalized terms not defined herein shall have the meaning ascribed to them in the Proposed Plan.

NYC:214896.5

Since filing the Objection, Class 17 voted to reject of the Proposed Plan and, as a consequence, confirmation must comply with Section 1129(b) of the Bankruptcy Code. Accordingly, the Committee submits this Supplemental Objection for purposes of discussing the applicable interest rate for both the postpetition pre-Effective Date period and the post-Effective Date period.

**Class 17 Should Receive a Post-Effective Date Interest Rate of Not Less Than 15% Per Annum on Deferred Payments**

2. Claims against Lexington Rubber Group are structurally senior to claims against its corporate parent, Lexington Precision. Lexington Rubber Group is a solvent debtor. Unless and until Lexington Rubber Group creditors are paid in full, with all post-petition interest, creditors of Lexington Precision are not entitled to receive any recovery.[2] Pursuant to Section 4.19(b)(ii) of the Proposed Plan, in the event Class 17, General Unsecured Claims against Lexington Rubber Group, rejects the Proposed Plan, claim holders are entitled to post-Effective Date interest at the rate determined by this Court.

3. By the Debtors' proposed post-Effective Date interest rate provided in Section 4.19(b)(i), Class 17 would not be paid in full. As such, the Debtors modified the Proposed Plan to allow this Court to determine a higher rate in the event Class 17 rejected the Proposed Plan.

---

[2] "A plan of reorganization may not allocate any property whatsoever to any junior class on account of the members' interest or claim in a debtor unless all senior classes consent, or unless such senior classes receive property equal in value to the full amount of their allowed claims, or the debtor's reorganization value, whichever is less." 7 *Collier on Bankruptcy* 1129.03[4][a][i]; *Group of Institutional Investors v. Chicago, M., St. P. & Pac. R.R.*, 318 U.S. 523, 565 (1943) (absolute priority is satisfied if "each security holder in the order of his priority receives *from that which is available for the satisfaction of his claim* the equitable equivalent of the rights surrendered.") (emphasis added); *see also Consolidated Rock Prods. Co. v. Du Bois*, 312 U.S. 510, 529-30 (1941) ("The method of effecting full compensation for senior claimants will vary from case to case. As indicated in the Boyd case, ... the creditors are entitled to have the full value of the property, whether 'present or prospective, for dividends or only for purposes of control,' first appropriated to payment of their claims."); *Kansas City Terminal Ry. v. Central Union Trust Co.*, 271 U.S. 445, 455 (1926) ("Unsecured creditors of insolvent corporations are entitled to the benefit *of the values which remain* after lienholders are satisfied, whether this is present or prospective, for dividends or only for purposes of control.") (emphasis added).

As currently structured, the Proposed Plan involuntarily imposes the brunt of the risk of a potential post-emergence failure of the Debtors upon Class 17.[3] Although Class 17 would prefer to be paid in cash, in full, on the Effective Date, if such creditors are to be paid over time, in order for them to be paid in full for cram-down purposes under Section 1129(b) of the Code, they must be compensated for the high risk associated with such delayed payments. *In re Bryson Props., XVIII*, 961 F.2d 496, 500-502 (4th Cir.), *cert. denied*, 506 U.S. 866 (1992).

4. The Proposed Plan, in Section 4.19(b)(i), applies an improper market rate – 6.02%[4] – to the delayed (post-Effective Date) payments to Class 17 under the Proposed Plan. In comparison or contrast, an interest rate of approximately 15.5% per annum is provided to the Term B loan, Class 14(B) under the Proposed Plan. The Term B loan is a secured position in the capital structure protected by various covenants, including the restriction on incurrence of new debt. Conversely, Class 17 is unsecured and is not protected by any such covenants. Accordingly, the Committee believes that the correct market rate for interest on deferred post-Effective Date payments to Class 17 is, at a minimum, the same interest rate provided to the Term B loan, approximately 15.5% per annum, along with covenants similarly protecting Class 17 creditors. Such an interest rate is necessary to accurately incorporate the risk of delayed payments for this junior unsecured claim.

---

[3] With respect to Class 17, the Proposed Plan provides the following treatment:

> (a) an initial Cash payment … equal to 10% of the sum of (i) its the Allowed General Unsecured Claim against [Lexington Rubber Group] and (ii) postpetition interest from the Commencement Date through and including the Effective Date at the rate determined by the Bankruptcy Court and (b) an additional nine (9) quarterly payments, each in the amount determined by the Bankruptcy Court to be adequate to satisfy in full Allowed General Unsecured Claims against [Lexington Rubber Group].

(emphasis added) Proposed Plan, Page 20.

[4] The 6.02% is the effective interest rate when payments are made over time in nine (9) equal quarterly payments, including interest payments of 0.75%.

5. When determining the appropriate interest rate for Class 17's delayed payments, it is pertinent to determine the market rate of interest (if such a market rate exists) in order to ensure that the stream of principal payments equal the allowed amount of the unsecured claim; otherwise, a stream of payments using a lower interest rate would not be "fair and equitable." *In re Bryson Props., XVIII*, 961 F.2d 496, 500-502 (4th Cir.), *cert. denied*, 506 U.S. 866 (1992) (holding that a rate that is less than the "market" rate will result in the stream of payments not equaling the present value of the allowed amount of the claim.); *see also* 7 COLLIER ON BANKRUPTCY ¶ 1129.03[3][a] (Alan N. Resnick & Henry J. Sommer eds., 16th ed. 2009). Courts have historically placed a heavy value on the market rate of interest, (i.e., the interest rate currently being provided to the Term B <u>secured</u> loan), in order to determine an appropriate rate. *In re Prussia Associates*, 322 B.R. 572, 585 (Bankr. E.D. Pa. 2005). As the Supreme Court stated recently in *In re American HomePatient, Inc.*, "the market rate should be applied in Chapter 11 cases where there exists an efficient market." 420 F.3d 559, 568 (6th Cir. 2005), *cert. denied*, 127 S. Ct. 55 (U.S. 2006).

6. Under the Bankruptcy Code, no party is permitted to receive a recovery that is greater than 100% of their claim. *Chicago Title & Trust Co. v. Fox Theatres Corp.*, 178 F.Supp. 899, 903 (D.C.N.Y. 1959) ("the well settled proposition that in no case can a claimant in a bankruptcy or receivership proceeding recover more than the full amount of his claim"); *In re United Cigar Stores Co. of America*, 73 F.2d 296, 298 (2nd Cir. 1934) ("[i]n no case can the appellant recover from all sources more than the full amount of its claim."); *In re Genesis Health Ventures, Inc.*, 266 B.R. 591, 612 (Bankr. D.Del. 2001) (holding that if senior lenders receive more than 100% of their claims, the plan would not be fair and equitable as to the non-consenting creditors). Accordingly, the 15.5% per annum interest rate on the secured Term B

loan must be at least the market interest rate for a junior secured debt, because otherwise the Proposed Plan would be violating the Bankruptcy Code by paying the holders of the Term B loan more than in full. *Chicago Title & Trust*, 178 F.Supp. at 903. As such, the market rate offered to the Term B loan is a good or reasonable approximation of, and the appropriate market data point for, the rate that should be utilized by this Court for post-Effective Date interest to Class 17 as payments to such class are being deferred.

**Post-Petition, Pre-Effective Date Interest Rate Should Be The Contract Rate or the State Rate**

7.  Section 4.19(b)(ii) of the Proposed Plan also provides that in the event Class 17 rejects the Proposed Plan, Class 17 will receive "postpetition interest from the Commencement Date through and including the Effective Date, at the rate determined by the Bankruptcy Court." This is in comparison to the postpetition interest rate set forth in Section 4.19(b)(i) of the Proposed Plan, where the Debtors propose the federal judgment rate. It is undisputed that where a debtor is solvent, unsecured creditors are entitled to postpetition interest. *See* 11 U.S.C. §§ 1124(1) (to be unimpaired, plan may not alter creditor's legal, equitable or contractual rights); 1129(a)(7) (creditors must receive at least as much under a chapter 11 plan as they would in a chapter 7 liquidation); 726(a)(5) (creditors of a solvent chapter 7 debtor are entitled to receive postpetition interest "at the legal rate"); *see also Groundhog, Inc. v. San Joaquin Estates, Inc. (In re San Joaquin Estates, Inc.)*, 64 B.R. 534, 536 (Bankr. 9th Cir. 1986).

8.  By its terms, section 1129(a)(7) (and, thus, section 726(a)(5)) does not apply to unimpaired classes. It would defy logic under the Bankruptcy Code's current construct, however, to contend that an unimpaired class is ***not*** entitled to receive at least as much as it would in a chapter 7 case (hence, the payment of postpetition interest in a solvent case) in view

-5-

of the 1994 amendments to the Bankruptcy Code which eliminated former section 1124(3) and effectively overruled the holding of *In re New Valley Corp.*, 168 B.R. 73 (Bankr. D.N.J. 1994).[5]

9. Although the Bankruptcy Code does not explicitly set forth a specific rate of postpetition interest to be paid when an estate is solvent, many courts have determined that when there is a surplus estate, creditors should be afforded their rights under state law (which in turn requires payment at the rate called for under state law). Hearing Tr. of 11/17/09, *In re Pilgrim's Pride Corp.*, No. 08-45664 (DML), Docket # 4171, at 63 (stating that the state rate is the appropriate rate of interest); s*ee generally Vanston Bondholders Protec. Comm'n v. Green*, 329 U.S. 156, 164 (1942) (court must strive to balance the equities between creditors, and between creditors and the debtor, and when there is a surplus estate, creditors must be paid at the rate to which they would be entitled under state law); *In re Carter*, 220 B.R. 411, 417 (Bankr. D.N.M. 1998) ("if the solvent estate produces a sufficient surplus from which to pay interest in full to all claimants at the rates prescribed [by] any underlying agreements, contracts or judgments, then that is the interest rate that should be applied by the Court"); *see also In re Schoeneberg*, 156 B.R. 963, 969, 972 (Bankr. W.D. Tex. 1993); *In re Shaffer Furniture Co.*, 68 B.R. 827, 831 (Bankr. E.D. Pa. 1987).

10. In *Pilgrim's Pride*, the Court set forth the following analysis of post-petition interest, "'[l]egal rate of interest' is a term of art.... It seems to me that that [sic] is a state rate, and it seems to me that that [sic] is the appropriate rate to set under these circumstances.... All of these establish that the proper rate for prejudgment interest is the state rate...[and] the proper point proper point to consider 'judgment' in a Chapter 11 case where there is surplus value

---

[5] Following the 1994 deletion of section 1124(3), unsecured creditors are to be paid postpetition interest when a debtor is solvent and the class in question is to be paid in full in cash. *See* 140 Cong. Rec. H10,764, H10,768 (daily ed. Oct. 4, 1994)).

NYC:214896.5

would be the effective date -- that is, the moment at which the confirmation order, which seems to me to be the judgment we are talking about here, becomes effective and unappealable" Hearing Tr. of 11/17/09, *In re Pilgrim's Pride Corp.*, No. 08-45664 (DML), Docket # 4171, at 63-64. Accordingly, a creditor is to receive postpetition interest at either its contract rate, or absent a contract, the state judgment rate. *See In re Martin Ready Mix Corp.*, 220 B.R. 148, 160 (Bankr. E.D.N.Y. 1998); *In re Schoeneberg*, 156 B.R. 963, 972 (Bankr.W.D.Tex. 1993); *Shaffer Furniture*, 68 B.R. 827; *FSLIC v. Moneymaker (In re A&L Properties)*, 96 B.R. 287, 290 (C.D. Cal. 1988). Use of the federal judgment rate would be inequitable given that, as of the week ending July 2, 2010, the federal judgment rate was 0.31%. On the Commencement Date, the federal judgment rate was 1.63%. In contrast, as discussed in paragraph 11 below, potentially applicable state judgment rates range from 8% to 9.25%.[6]

11.    Multiple state judgment rates may potentially apply based upon, *inter alia*, the state in which the creditor in question resides or where the transaction that gave rise to the claim arose. For example, the Debtors do and have done business and/or maintain (or maintained) facilities in, among others, the states of Georgia (the Prime Rate plus 3%)[7], Ohio (8%),[8] and South Carolina (Prime Rate plus 4%). *See generally* Disclosure Statement at DS-13. Accordingly, the Debtors will no doubt contend that the federal judgment rate should be applied for convenience because, they will allege, it could be difficult to determine which particular state judgment rate applies to a particular creditor. Recognizing the legitimate need for both

---

[6] There is a split of authority on whether the term "legal rate of interest" in section 726(a)(5) means the state judgment rate or the federal judgment rate. *See, e.g., In re Carter*, 220 B.R. at 415 (recognizing split of authority). Under the facts of this case, however, as well as the reasoning in case law such as *Johnson v. Norris*, 190 F. 459 (5th Cir. 1911), as outlined in *In re Martin Ready Mix Corp.*, 220 B.R. 148, 160 (Bankr. E.D.N.Y. 1998), the state judgment rate should apply in this case, where a creditor either has no contract with the Debtors or has a contract that does not provide for a specific rate of interest.

[7] On the Commencement Date, the Prime Rate was 5.25%, thus making the Georgia state judgment rate 8.25%.

[8] The Ohio State rate was 8% in 2008 and is currently 4%.

expedience and fairness, the Committee submits that the Court should determine a "blended" state judgment rate, in the range of not less than 8.5% per annum, that should apply across-the-board to all holders of Allowed General Unsecured Claims in Class 7 who either do not have a contract with the Debtors, or whose contracts do not specify a particular rate of interest. In this manner, all such creditors will be treated equally, fairly, and equitably.

*[Remainder of Page Intentionally Left Blank]*

WHEREFORE, the Committee respectfully requests that the Court consider this Supplemental Objection, along with the Objection, and require modifications to the Proposed Plan consistent herewith, together with such other and further relief as the Court may deem just and proper.

Dated: New York, New York
July 15, 2010

ANDREWS KURTH LLP

By: /s/ Paul N. Silverstein
Paul N. Silverstein (PS 5098)
Jonathan I. Levine (JL 9674)
Abhishek Mathur (AM 1269)
450 Lexington Avenue, 15th Floor
New York, New York 10017
Telephone: (212) 850-2800
Facsimile: (212) 850-2929

*Counsel to the Official Committee
of Unsecured Creditors*