Presentment Date and Time: Monday July 26, 2010 at 12:00 p.m. (EDT)
Objection Date and Time: Friday July 23, 2010 at 12:00 p.m. (EDT)

WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York  10153-0119
Telephone: (212) 310-8000
Facsimile: (212) 310-8007
Richard P. Krasnow
Adam P. Strochak

Attorneys for the Debtors and
Debtors in Possession

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------------------------------x
:
In re:                                          :    Chapter 11
:
**LEXINGTON PRECISION CORP., et al.,**          :    Case No. 08-11153 (SCC)
:
Debtors.                                   :    (Jointly Administered)
:
------------------------------------------------------------------------x

**NOTICE OF PRESENTMENT OF DEBTORS' MOTION PURSUANT TO
SECTION 364(c)(2) TO ENTER INTO THAT CERTAIN INSURANCE
PREMIUM FINANCING AGREEMENT WITH IMPERIAL CREDIT CORP.**

PLEASE TAKE NOTICE that upon the annexed motion (the "**Motion**") of Lexington Precision Corporation and its wholly owned subsidiary, Lexington Rubber Group, Inc. (together, the "**Debtors**"), as debtors and debtors in possession in the above-captioned chapter 11 cases, the undersigned will present the order, attached to the Motion, authorizing the debtors to finance certain insurance premiums, to the Honorable Shelley C. Chapman, United States Bankruptcy Judge, at the United States Bankruptcy Court for the Southern District of New York ("**Bankruptcy Court**"), Alexander Hamilton Custom House, One Bowling Green, New York, New York 10004, for signature on **Monday, July 26, 2010 at 12:00 p.m. (EDT)**.

PLEASE TAKE FURTHER NOTICE that copies of the Motion are available for free at http://chapter11.epiqsystems.com/lexington, and for a fee at the Court's website at

US_ACTIVE:\43446275\01\26690.0008

www.nysb.uscourts.gov. Note that a PACER (www.pacer.psc.uscourts.gov) password and login are needed to access documents on the Court's website (www.nysb.uscourts.gov).

PLEASE TAKE FURTHER NOTICE that any objections or responses to the Motion, if any, must (a) be in writing; (b) conform to the Federal Rules of Bankruptcy Procedure and the Local Rules for the Bankruptcy Court; and (c) set forth the name of the objecting party, the basis for the objection, and specific grounds therefore.

PLEASE TAKE FURTHER NOTICE that all objections and responses must be filed with the Bankruptcy Court no later than **Friday, July 23, 2010 at 12:00 p.m. (EDT)** (the "**Objection Deadline**"). In accordance with General Order M-242, registered users of the Bankruptcy Court's case filing system must electronically file their objections and responses. General Order M-242 may be found at www.nysb.uscourts.gov. All other parties-in-interest must file their objections and responses on a 3.5 inch disk (preferably in Portable Document Format (PDF), WordPerfect, or any other Windows-based word processing format) and deliver a hard copy directly to the chambers of Judge Shelley C. Chapman.

PLEASE TAKE FURTHER NOTICE that all objections and responses must be served, so as to be received no later than the Objection Deadline, upon: (i) the Debtors, Lexington Precision Corporation, 800 Third Ave., 15th Floor, New York, New York 10023 (Attn: Michael A. Lubin); (ii) the attorneys for the Debtors, Weil, Gotshal & Manges LLP, 1300 I Street, N.W., Suite 900, Washington, D.C. 20005 (Attn: Adam P. Strochak), and 767 Fifth Avenue, New York, New York 10153 (Attn: Victoria Vron); (iii) the Office of the United States Trustee for the Southern District of New York, 33 Whitehall Street, 21st Floor, New York, New York 10004 (Attn: Paul K. Schwartzberg); (iv) the attorneys for the Debtors' prepetition lenders, Waller, Landsden, Dortch & Davis LLP, 511 Union Street, Suite 2700, Nashville, Tennessee

37219 (Attn: John C. Tishler); (v) the attorneys for the statutory committee of unsecured creditors, Andrews Kurth LLP, 450 Lexington Avenue, New York, New York 10017 (Attn: Paul N. Silverstein and Jonathan I. Levine); and (vi) the attorneys for Debtors' postpetition lenders, O'Melveny & Meyers, LLP, Times Square Tower, 7 Times Square, New York, New York 10036 (Attn: Gerald Bender); and (vii) the attorneys for the plan investor, Jones Day LLP, 222 East 41st, New York, New York (Attn: Lisa G. Laukitis).

Dated: July 20, 2010
      New York, New York

/s/ Adam P. Strochak
Richard P. Krasnow
Adam P. Strochak
WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone:   (212) 310-8000
Facsimile:   (212) 310-8007
Attorneys for Debtors
and Debtors in Possession

**Presentment Date and Time:** Monday July 26, 2010 at 12:00 p.m. (EDT)
**Objection Date and Time:** Friday July 23, 2010 at 12:00 p.m. (EDT)

WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007
Richard P. Krasnow
Adam Strochak

Attorneys for Debtors
and Debtors in Possession

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---------------------------------------------------------------x
: 
In re                                                                          :    Chapter 11
                                                                                    :
**LEXINGTON PRECISION CORP., et al.,**              :    Case No. 08-11153 (SCC)
                                                                                    :
        Debtors.                                                           :    (Jointly Administered)
                                                                                    :
---------------------------------------------------------------x

### DEBTORS' MOTION PURSUANT TO SECTION 364(c)(2) TO ENTER INTO THAT CERTAIN INSURANCE PREMIUM FINANCING AGREEMENT WITH IMPERIAL CREDIT CORP.

Lexington Precision Corporation and, its debtor subsidiary, Lexington Rubber Group, Inc. (together, the "**Debtors**"), respectfully represent:

### Relief Requested

1. By this motion (the "**Motion**"), the Debtors request authorization, pursuant to section 364(c)(2) of title 11 of the United States Code (the "**Bankruptcy Code**"), to incur secured debt financing from Imperial Credit Corporation ("**Imperial**") to finance the Debtors' workers' compensation insurance premiums. A proposed form of order is attached hereto as Exhibit "A." The proposed form of financing agreement is attached hereto as Exhibit "B" (the "**Financing Agreement**").

US_ACTIVE:\43446275\01\26690.0008

**The Insurance Policies and Proposed Financing**

2. By an order of the Court, dated April 22, 2008,[1] the Court authorized the Debtors to, among other things, maintain and continue their insurance coverage and any and all necessary renewals and replacements thereof in the ordinary course of business. In accordance with the Court's order, the Debtors have purchased and continue to maintain their insurance policies, including, among others, workers' compensation insurance.

3. Because the Debtors' previous worker's compensation policy expired on July 1, 2010, the Debtors obtained a new workers' compensation policy from the Charter Oak Fire Insurance Company, which provides coverage from July 1, 2010 through July 1, 2011 (the "**Charter Policy**"). The total premium for the policy is $598,209, which is due on August 1, 2010.

4. To help manage the Debtors' cash flow, the Debtors propose to finance 65% of the premium (*i.e.*, $388,835.85) for eight months through Imperial on the terms set forth in the Financing Agreement at an annual percentage rate of 5.65%. The total financing charge over the term of the loan is $7,357.15. Pursuant to the Financing Agreement, the Debtors will make seven monthly payments of $56,599.00, the first of which, is scheduled to be made on August 1, 2010 and the last of which is scheduled to be made on February 1, 2011.

5. Because Imperial will not provide financing on an unsecured basis, the Debtors propose to grant Imperial a security interest in all right, title, and interest of the policy, including (but only to the extent permitted by applicable law) (a) all money that is or may be due

---

[1] *Order Pursuant to Sections 105(a), 362(d), 363(b), and 503(b) of the Bankruptcy Code and Rules 4001 and 6004 of the Federal Rules of Bankruptcy Procedure (I)(a) Authorizing Debtors to Continue Their Workers' Compensation Programs and Their Liability, Product, Property, and Other Insurance Programs and (b) Authorizing Debtors to Pay All Obligations in Respect Thereof and (II) Authorizing Financial Institutions to Honor and Process Checks and Transfers Related to Such Obligations*, dated April 22, 2008 [Docket No. 80].

to the Debtors because of a loss under the Charter Policy that reduces the unearned premiums (subject to the interest of any applicable mortgagee or loss payee), (b) any return of the premium for the Charter Policy, and (c) dividends which may become due to the Debtors in connection with the Charter Policy (collectively, the "**Collateral**").

6. The proposed terms of the financing arrangement are substantially similar to those approved earlier by the Court.

**Basis for Relief Requested**

7. Pursuant to section 364(c)(2) of the Bankruptcy Code, if the Debtors are unable to obtain unsecured financing, the Court may authorize the Debtors to obtain financing secured by a lien on property of the estate that is not otherwise subject to a lien. Because Imperial will not provide the Debtors insurance premium financing on an unsecured basis, the Debtors must resort to such secured financing.

8. The Debtors submit that the proposed Collateral is not subject to any existing liens such as the liens of the Debtors' prepetition secured lenders. Specifically, that certain order, dated October 28, 2009 (the "**Sixth Cash Collateral Order**"),[2] carves-out collateral such as the proposed Collateral from the adequate protection liens provided to the Debtors' prepetition secured lenders.

9. While the Sixth Cash Collateral Order does limit the Debtors' ability to obtain insurance premium financing above $800,000 and prohibits any security interest granted to an insurance premium financier from priming or impairing the prepetition secured lender's liens, such limitations and prohibitions are inapplicable to the proposed financing arrangement.

---

[2] *Sixth Order Pursuant to Bankruptcy Code Sections 105(a), 361, 362, and 363 (I) Authorizing Debtors to Use Cash Collateral and (II) Granting Adequate Protection to Prepetition Secured Lenders*, dated October 28, 2009 [Docket No. 772]. While there have been subsequent cash collateral orders, the terms of the Sixth Cash Collateral Order has been incorporated into such orders by reference.

10.  Based upon the foregoing and given the importance of maintaining insurance coverage while preserving the Debtors' cash flow, the Debtors submit that the relief requested in the best interest of the Debtors, their estates, and their creditors.

### Jurisdiction and Venue

11.  This Court has jurisdiction to consider this matter pursuant to 28 U.S.C. §§ 157 and 1334.  This is a core proceeding pursuant to 28 U.S.C. § 157(b).  Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

### Notice

12.  No trustee or examiner has been appointed in these chapter 11 cases. Notice of this motion has been provided to (a) the United States Trustee for the Southern District of New York, (b) counsel to the agents for the Debtors' prepetition lenders, (c) counsel to the Debtors' postpetition lenders, (d) counsel to the Official Committee of Unsecured Creditors, and (e) all other parties requesting service in these chapter 11 cases.  The Debtors submit that notice is due, proper, and sufficient and no other or further notice is necessary.

WHEREFORE the Debtors respectfully request the relief requested herein and any other relief the Court may determine as just and appropriate.

Dated: July 20, 2010
New York, New York

/s/ Adam P. strochak
Richard P. Krasnow
Adam P. Strochak
WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York  10153
Telephone:    (212) 310-8000
Facsimile:    (212) 310-8007

Attorneys for Debtors
and Debtors in Possession

**EXHIBT A**

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------------x
: 
In re                                                      :    Chapter 11
:
LEXINGTON PRECISION CORP., et al.,    :    Case No. 08-11153 (SCC)
:
Debtors.                                          :    (Jointly Administered)
:
------------------------------------------------------------------x

### ORDER PURSUANT TO SECTION 364(c)(2) AUTHORIZING THE DEBTORS TO ENTER INTO THAT CERTAIN INSURANCE PREMIUM FINANCING AGREEMENT WITH IMPERIAL CREDIT CORP.

Upon the motion, dated [__] (the "**Motion**") of Lexington Precision Corporation and its debtor subsidiary, Lexington Rubber Group, Inc. (together, the "**Debtors**") pursuant to section 364(c)(2) of title 11 of the United States Code (the "**Bankruptcy Code**") requesting authorization to enter into a certain insurance premium financing agreement (the "**Financing Agreement**") between the Debtors and Imperial Credit Corporation ("**Imperial**") to finance insurance premiums under that certain workers' compensation policy provided by Charter Oak Fire Insurance Company (the "**Charter Policy**"); and the Court having jurisdiction to consider the Motion and the relief requested therein pursuant to 28 U.S.C. §§ 157 and 1334; and venue being proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409; and due and proper notice of the Motion having been provided to (a) the United States Trustee for the Southern District of New York, (b) counsel to the agents for the Debtors' prepetition lenders, (c) counsel to the Debtors' postpetition lenders, (d) counsel to the Official Committee of Unsecured Creditors, and (e) all other parties requesting service in these chapter 11 cases; and such notice being due, proper, and sufficient and no other or further notice being necessary; and the Court having reviewed the Motion; and the Court having determined that (w) the legal and factual bases set forth in the Motion establish just and sufficient cause for the relief granted herein,

(x) the Debtors exercised sound business judgment in negotiating the Financing Agreement, (y) Imperial has extended credit to the Debtors in good faith, and (z) the relief requested in the Motion is fair and reasonable; and after due deliberation and sufficient cause appearing therefor,

ORDERED that the Financing Agreement is APPROVED; and it is further

ORDERED that the Debtors are authorized to enter into and to perform under the Financing Agreement and to execute and deliver such documents and amendments to the Agreement that the Debtor and Imperial may down reasonably necessary or desirable to carry out the Agreement; and it is further

ORDERED that, pursuant to section 364(c)(2) of the Bankruptcy Code, the Debtors are authorized to grant Imperial a first priority security interest (the "**Lien**") in the Charter Policy including (but only to the extent permitted by applicable law (a) all money that is or may become due under the Financing Agreement because of a loss under the Charter Policy that reduces unearned premiums (subject to the interest of any applicable mortgagee or loss payee); (b) any return of premiums or unearned premiums under the Charter Policy; and (c) any dividends that may become due to the Debtors in connection with the Charter Policy; and it is further

ORDERED that in the event that the Debtors default under the terms of the Financing Agreement, Imperial may, in accordance with the terms of the Financing Agreement and applicable non-bankruptcy law, and without further order of the court, cancel the Charter Policy and receive and apply the unearned or returned premiums to the account of the Debtors; and it is further

ORDERED that, in the event that returned or unearned premiums or other amounts due under the Charter Policy are insufficient to pay the total amount owing by the

Debtors to Imperial, any remaining amount owing to Imperial, including reasonable attorney's fees and costs to the extent permitted by applicable non-bankruptcy law, shall be an allowed claim in these chapter 11 cases with priority as an administrative expense pursuant to section 503(b)(1) of the Bankruptcy Code; and it is further

ORDERED that, any monies due under the Financing Agreement not otherwise satisfied through returned or unearned premiums or through payment of an allowed administrative claim filed by Imperial shall not be subject to discharge or release in these chapter 11 cases or any corresponding chapter 7 proceeding, notwithstanding any provision to the contrary set forth in any chapter 11 plan or confirmation order entered in these chapter 11 cases; and it is further

ORDERED that, because Imperial has extended credit to the Debtors in good faith, the reversal or modification of this Order on appeal shall not affect the validity of the debt owed to Imperial or the priority of its liens, as provided in section 364(e) of the Bankruptcy Code; and it is further

ORDERED this Court shall retain jurisdiction with respect to any matters related to or arising from the implementation, interpretation or enforcement of this Order.

Dated: July __, 2010
       New York, New York

                                            _____
                                            HONORABLE SHELLY C. CHAPMAN
                                            UNITED STATES BANKRUPTCY JUDGE

# EXHIBT B

**PREMIUM FINANCE AGREEMENT
DISCLOSURE STATEMENT
AND SECURITY AGREEMENT**



IMPERIAL CREDIT CORPORATION
877- 902-4242
101 Hudson Street, Jersey City, NJ 07302
1001 Winstead Drive, Suite 500, Cary, NC 27513
45 East River Park Place West, Suite 308, Fresno, CA 93720

| | | | |
|---|---|---|---|
| A | TOTAL PREMIUMS | $ | 598,209.00 |
| B | CASH DOWN PAYMENT REQUIRED | $ | 209,373.15 |
| C | AMOUNT FINANCED (The Amount of Credit Provided to Insured or on its behalf) | $ | 388,835.85 |
| D | FINANCE CHARGE (Dollar amount credit will cost) | $ | 7,357.15 |
| E | TOTAL PAYMENTS (Amounts which will have been paid after making all scheduled payments) | $ | 396,193.00 |

BORROWER / INSURED (The "Insured")
(Name, Address and Telephone Number)

Lexington Precision Corp
Dennis Welhouse
3565 Highland Park St N W

North Canton    OH    44720
E-Mail Address (optional):    330-305-1032

Acct. No.

ANNUAL PERCENTAGE RATE   5.65 %
(Cost of Credit figured as a yearly rate)

**PAYMENT SCHEDULE**

| Amount of Each Payment | Number of Payments | | | 1st Payment Due | Final Payment Due |
|---|---|---|---|---|---|
| | Annual | Qtrly | Mthly | | |
| 56,599.00 | | | 7 | 08/01/2010 | 02/01/2011 |

## SEE PAGE 3 FOR SCHEDULE OF FINANCED POLICIES

AGREEMENT OF INSURED (JOINT AND SEVERAL, IF MORE THAN ONE)

THE UNDERSIGNED INSURED:

1. In consideration of the premium payments being financed, and if applicable, the down payment being advanced by IPFS Corporation d/b/a Imperial Credit Corporation ("LENDER") to the Insurance companies listed on the SCHEDULE OF FINANCED POLICIES, or their representative, agrees to pay LENDER the TOTAL OF PAYMENTS to be made in accordance with the PAYMENT SCHEDULE and if applicable, the amount of any down payment advanced by LENDER subject to the provisions set forth in this Agreement.

2. Irrevocably appoints LENDER Attorney-in-Fact with full authority, in the event of default, to (i) cancel the said policies in accordance with the provisions herein, (ii) receive all sums assigned to LENDER and (iii) execute and deliver on behalf of the undersigned all documents, forms and notices relating to the insurance Policies listed on the SCHEDULE OF FINANCED POLICIES in furtherance of this Agreement.

**IMPORTANT NOTICE TO INSURED**

NOTICE:  1. Do not sign this Agreement before you read it or if it contains any blank spaces.  2. You are entitled to a complete filled-in-copy of this Agreement.  3. Keep your copy of this Agreement to protect your legal rights.

THE INSURED AGREES TO THE PROVISIONS
ABOVE AND ON PAGES 2 AND 3

_____   _____
DATE       SIGNATURE (AND TITLE) OF INSURED(S) OR AGENT OR
          BROKER ON THEIR BEHALF (to extent permitted by Law)

AGENT OR BROKER   Lockton Insurance Brokers LLC - Los Angeles
BUSINESS ADDRESS
                 725 South Figueroa Street
                 35th Floor

                 Los Angeles              CA   90017

TEL. NO./E-MAIL ADDRESS    213-689-0065

The Undersigned Agent or Broker:

1. Represents and warrants as follows: (a) to the best of the undersigned's knowledge and belief, the Insured's signature is genuine or, to the extent permitted by applicable Law, the undersigned Agent or Broker has been authorized by the Insured to sign this Agreement on their behalf, (b) the Insured has received a copy of this Agreement, (c) the scheduled Policies are in full force and effect and the premiums indicated therefore are correct, (d) the Insured may cancel all scheduled Policies immediately upon request, (e) none of the Policies scheduled in the Agreement are non-cancelable, and (f) the down payment as indicated in Box "B" and installments totaling _____ have been collected and are being retained by us.

2. Upon cancellation of any of the scheduled Policies, the undersigned Agent or Broker agrees upon demand to pay to LENDER or its assigns their commission on any unearned premiums applicable to the cancelled Policies.

THE AGENT OR BROKER AGREES TO THE
PROVISIONS ABOVE AND ON PAGE 3

_____   _____
DATE       SIGNATURE AND TITLE OF AGENT OR BROKER

ADDITIONAL AGREEMENTS OF INSURED (JOINT AND SEVERAL, IF MORE THAN ONE)

3. **Cancellation.** LENDER may cancel the insurance Policies listed in the schedule after providing at least 10 days written notice of intent to cancel (13 days in Iowa) if the Insured does not pay any installment or transfers any of the scheduled policies to a third party, provided said default is not cured within such period, and LENDER may proceed to collect the entire unpaid balance due hereunder or any part thereof by appropriate legal proceedings. If any default results in the cancellation of the Policy, Insured agrees to pay a cancellation charge in accordance with applicable law (Kentucky and Texas - None).
4. **Money Received After Cancellation.** Any payment received after Policy cancellation may be credited to the indebtedness due hereunder without any liability or obligation on the part of LENDER to request reinstatement of such cancelled Policy. Any sum received from an insurance company shall be credited to the balance due hereunder; any surplus shall be paid over to the Insured; in case of deficiency, the Insured shall pay the same. In the event that LENDER does request a reinstatement of the Policy on behalf of the Insured, such a request does not guarantee that coverage under the Policy will be reinstated or continued. Only the insurance company has authority to reinstate the Policy. The Insured agrees that LENDER has no liability to the Insured if the Policy is not reinstated.
5. **Application of Payments.** If applicable law permits, all payments received by LENDER will be applied to the oldest invoice first. Any remaining amounts will be applied to late fees and other charges (if applicable), the remainder will be applied to any other outstanding amounts.
6. **Returned Check Charge.** If any payment made by check or electronic funding is dishonored for any reason, Insured will be charged the maximum fee, if any, permitted under applicable law (not applicable in Kentucky).
7. **Default.** If any of the following happens: (a) a payment is not made when it is due, (b) a proceeding in bankruptcy, receivership, insolvency or similar proceeding is instituted by or against insured, or (c) Insured fails to keep any promise the Insured makes in this Agreement. Insured will be in default; provided, however, that, to the extent required by applicable law, Insured may be held to be in default only upon the occurrence of an event described in clause (a) above. Clauses (b) and (c) not applicable in Kentucky.
8. **Security.** To secure payment of all amounts due under this Agreement, Insured assigns LENDER a security interest in all right, title and interest to the Policy, including (but only to the extent permitted by applicable law): (a) all money that is or may be due Insured because of a loss under the Policy that reduces the unearned premiums (subject to the interest of any applicable mortgagee or loss payee), (b) any return of the premium for the Policy, and (c) dividends which may become due Insured in connection with the Policy. Clause (c) not applicable in Kentucky.
9. **Right to Demand Immediate Payment in Full.** At any time after default, LENDER can demand and have the right to receive immediate payment (except to the extent otherwise provided by applicable law, in which case LENDER will have the right to receive such payment in accordance with such law) of the total unpaid balance due under this Agreement even if LENDER has not received any refund of unearned premium.
10. **Warranties.** Insured warrants to LENDER (a) to have received a copy of this Agreement and (b) if the insured is not an individual, that the signatory is authorized to sign this Agreement on behalf of the Insured. The Insured represents that it is not presently the subject of or in contemplation of a proceeding in bankruptcy, receivership, or insolvency, or if it is a debtor in bankruptcy, the Bankruptcy Court has authorized this transaction.
11. **Early Payment.** At any time, Insured may pay the whole amount still unpaid. If Insured pays the full amount before it is due, Insured will be given a refund for the unearned Finance Charge computed by the method of refund as required by applicable law (Rule of 78th method of refund in Texas after deducting fully earned charge of $10 on finance amounts of $1,000 or less or $25 on finance amounts exceeding $1,000.
12. **Assignments.** Insured may not assign the Policy or this Agreement without LENDER's written consent. However, Insured does not need LENDER's written consent to add mortgagees or other persons as loss payees. LENDER may transfer its rights under this Agreement to anyone without Insured's consent. All of LENDER's rights shall inure to the benefit of LENDER's successors and assigns.
13. **Collection.** If money is due and Insured fails to pay, LENDER may collect the unpaid balance from Insured without recourse to the security interest granted under this Agreement.
14. **Late Charges.** Upon default in payment of any installments for not less than five days (or such greater number of days required by applicable law), Insured agrees to pay a late charge in accordance with applicable law. In no event shall such late charge exceed a maximum of 5% of such installment ($5 plus an amount not to exceed 2% in Kansas; and 5% of installment in Texas).
15. **Finance Charge.** The finance charge begins to accrue from the effective date of this Agreement or the earliest inception date of the insurance Policy(ies) listed on the Schedule of Policies, whichever is earlier. In Texas, the finance charge begins to accrue from each Policy effective date or the date on which LENDER made payment to the insurer for the financed Policy, whichever is earlier. If LENDER terminates this Agreement due to a default, Insured will pay interest on the outstanding indebtedness at the maximum rate authorized by applicable state law in effect on the date of cancellation and from said date until Insured pays the outstanding indebtedness in full to LENDER. To the extent permitted by applicable law, the Finance charge may include a nonrefundable Agreement charge not to exceed $20 ($10 in KS; $15 in KY; $18 in MI).
16. **Attorney's Fees.** If LENDER hires an attorney to collect any money insured owes under this Agreement, Insured will pay such attorney fees and other collection costs if and to the extent permitted by applicable law (not applicable in Kentucky).
17. **Agent or Broker.** The Agent or Broker named on the front of this Agreement is neither authorized by LENDER to receive installments payable under this Agreement nor is authorized to make any representations to Insured on LENDER's behalf, either orally or in writing (except as required by applicable law).
18. **Amendments.** If the insurance contract has not been issued at the time of the signing of this Agreement, and if the Policies being financed are assigned risk policies or policies listed in a state fund, the Policy numbers, if omitted herein, may be inserted in this Agreement after it has been signed.
19. **Effective Date.** This Agreement will not go into effect until it is accepted by LENDER in writing, except in the State of Texas. In the State of Texas, any unacceptable premium finance agreement received by LENDER must be returned within three (3) working days of LENDER'S receipt. LENDER's failure to return such Agreement will be deemed acceptance.
20. **Limitation of Liability.** Insured recognizes and agrees that LENDER is a lender and not an insurance company and that LENDER assumes no liability as an insurer hereunder. LENDER's liability for breach of any of the terms of this Agreement or the wrongful or improper exercise of any of its powers under this Agreement shall be limited to the amount of the principal balance outstanding, except in the event of LENDER's gross negligence or willful misconduct.
21. **Wisconsin Insureds.** For Wisconsin Insureds, this contract is governed by the laws of the State of Wisconsin.
22. **Governing Law.** The law of the State of the Insured's residence shall govern this Agreement, except, for AR, IN, IA, LA, MN, NE, OK, SD and WV Insureds this contract is governed by the laws of the State of New York.
23. **Signature and Acknowledgement.** Insured has signed and received a copy of this Agreement. If the Insured is not an individual, the undersigned is authorized to sign this Agreement on behalf of the Insured. All the Insureds listed in any Policy have signed. Insured acknowledges and understands that insurance premium financing law does not require an Insured to enter into a premium financing agreement as a condition of the purchase of any insurance Policy.
24. **Additional Insured.** There is no term or provision in any Policy that would require LENDER to notify or get consent of any third party to effect cancellation of such Policy.
25. **Privacy Notice.** Information regarding our privacy policies and compensation arrangements with your agent/broker may be found at http://www.imperialcredit.com/privacy.html.
26. **Classification of Agreement.** This Agreement is and will be a general intangible and not an instrument (as those terms are used in the Uniform Commercial Code) for all purposes.
27. **Formation of Agreement:** Any electronic signature or electronic record may be used in the formation of this Agreement, and the signatures of the Insured and Agent and the record of this Agreement may be in electronic form (as those terms are used in the Uniform Electronic Transactions Act). A photocopy, a facsimile or other paper or electronic record of this Agreement shall have the same legal effect as a manually signed copy.

## SCHEDULE OF POLICIES (Continue Schedule on Attachment If Necessary)

| Policy Number and Prefix (itemized) | Place (X) If Not Authorized (See #3 below) ⇩ X | Full Name of Insurance Company and Name and Address of Policy Issuing Agent or Company Office To Which Premium is Paid and Notices are Sent | Type of Policy Premium | Audit Info* | Earn % Minimum | Term in Mos. Cov. By Prem. | Effective Date M/ D/ Y | Policy Premiums |
|---|---|---|---|---|---|---|---|---|
| YOUB4264R03810 | | C: Charter Oak Fire Ins Co | WMC :0 Surcharge Fee | | 0.00 | 12 | 07/01/2010 | 578,751.00 19,458.00 |
| *(AR=ASSIGNED RISK), (A=AUDITABLE), (LS=LOSS SENSITIVE) | | | | | | | TOTAL PREMIUMS (Record in "A") | **598,209.00** |

## ADDITIONAL REPRESENTATIONS & WARRANTIES OF BROKER OR AGENT

3. Warrants that this is the authorized Policy issuing agent of the insurance companies or the broker placing the coverage directly with the insurance company on all the Policies scheduled except those indicated with an "X" above.
4. Warrants that there are no policies included in this Agreement which are subject to audit, report of values, retrospective rating, or minimum earned premium, except as indicated below, and that, if there are any, the deposit or provisional premium thereon is not less than the anticipated premium to be earned for the full term of the Policy.
   **Policy No.(s):**_____ **Minimum** earned premium, if any: $_____
5. Warrants that there are no assigned risk policies in the Schedule of Policies except as indicated in the Schedule of Policies.
6. The Agent or Broker will hold in trust for LENDER any payments made or credited to the Insured through the Agent or Broker directly, indirectly, actually or constructively, by any of the insurance companies listed in the Schedule of Policies and will pay the monies to LENDER upon demand to satisfy the then outstanding balance hereunder.
7. The Agent or Broker will promptly notify LENDER in writing if any information on this Agreement becomes inaccurate.
8. Warrants that all material information concerning the insured and the Policies necessary for LENDER to cancel the policies and receive the unearned premium has been disclosed to LENDER.
9. There is no term or provision in any Policy that would require LENDER to notify or get the consent of any third party to effect cancellation of such Policy.