**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------------------------------x
                                                  :
In re:                                            :        Chapter 11
                                                  :
**LEXINGTON PRECISION CORP., <u>et al.</u>,**     :        Case No. 08-11153 (SCC)
                                                  :
          Debtors.                                :        (Jointly Administered)
                                                  :
------------------------------------------------------------------------x

**ORDER CONFIRMING DEBTORS' FOURTH**
**AMENDED JOINT PLAN OF REORGANIZATION UNDER**
**<u>CHAPTER 11 OF THE BANKRUPTCY CODE, AS MODIFIED</u>**

Lexington Precision Corp. and its wholly-owned subsidiary, Lexington Rubber

Group, Inc., as debtors and debtors in possession (together, the "**Debtors**"), having proposed and

filed the *Debtors' Fourth Amended Joint Plan of Reorganization under Chapter 11 of the*

*Bankruptcy Code, as Modified*, dated May 26, 2010 (as modified and amended, the "**Plan**")[1] and

the *Disclosure Statement for Debtors' Fourth Amended Joint Plan of Reorganization under*

*Chapter 11 of the Bankruptcy Code, as Modified*, dated May 26, 2010 (the "**Disclosure**

**Statement**"); and the United States Bankruptcy Court for the Southern District of New York (the

"**Bankruptcy Court**") having entered an order, dated May 26, 2010 (the "**Disclosure Statement**

**Order**") approving the Disclosure Statement as containing "adequate information" (as defined in

section 1125 of the Bankruptcy Code) and approving the procedures for solicitation and

tabulation of votes to accept or reject the Plan (the "**Voting Procedures**"); and the following

documents having been filed in support of confirmation of the Plan:

          (a)          Affidavit of Christine Azzaro, dated June 17, 2010 (the "**Azzaro Service**

---

[1] Unless otherwise defined herein, capitalized terms shall have the meanings ascribed to such terms in the Plan.  A
copy of the Plan, as modified by this Order, is attached hereto as **<u>Exhibit "A."</u>**

**Affidavit**"), attesting to the service of certain solicitation materials approved by the Bankruptcy Court pursuant to the Disclosure Statement Order and in accordance with the Voting Procedures;

(b)     Declaration of Christina F. Pullo, dated July 7, 2010 (the "**Pullo Voting Certification**"), certifying the voting results by holders of claims entitled to vote pursuant to the Voting Procedures;

(c)     Declaration of Michael A. Lubin, Chairman of the Board of the Debtors, dated July 15, 2010 (the "**Lubin Declaration**");

(d)     Declaration and Statement of Kurt L. Haras, Director at W.Y. Campbell & Company, dated July 15, 2010 (the "**Haras Declaration**"); and

(e)     Memorandum of law in support of confirmation of the Plan, dated July 15, 2010 (the "**Confirmation Brief**");

and certain objections (collectively, the "**Objections**") to confirmation of the Plan having been interposed by the deadline to object to confirmation of the Plan (the "**Objection Deadline**"); and each of the Objections having been resolved, overruled, or withdrawn at or prior to the hearing to consider confirmation of the Plan (the "**Confirmation Hearing**"); and the Bankruptcy Court having held the Confirmation Hearing on July 21, 2010; and upon the record of the Chapter 11 Cases (as defined below) and the evidence admitted and arguments of counsel made at the Confirmation Hearing; and the Bankruptcy Court having determined based upon all of the foregoing that the Plan should be confirmed, as reflected by the Bankruptcy Court's rulings made herein and at the Confirmation Hearing; and after due deliberation and sufficient cause appearing therefore,

**IT IS HEREBY DETERMINED, FOUND, ADJUDGED, AND DECREED AS FOLLOWS:**[2]

### I.    The Chapter 11 Cases

A.    On April 1, 2008, (the "**Petition Date**"), each Debtor commenced with this Court a voluntary case under chapter 11 of the Bankruptcy Code (each, a "**Chapter 11 Case**" and together, the "**Chapter 11 Cases**").  Pursuant to sections 1107(a) and 1108 of the Bankruptcy Code, the Debtors have operated their business and managed their properties as debtors in possession.  No trustee has been appointed in the Chapter 11 Cases.

B.    This Court has jurisdiction over the Chapter 11 Cases, the confirmation of the Plan and the Objections pursuant to 28 U.S.C. §§  157(a) and 1334, and the standing order of reference in this judicial district.  Confirmation of the Plan is a core proceeding pursuant to 28 U.S.C. § 157(b), and this Court has jurisdiction to enter a final order with respect thereto.  Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

C.    By that certain order, dated April 2, 2008,[3] the Chapter 11 Cases are being jointly administered pursuant to Bankruptcy Rule 1015 under the caption *In re Lexington Precision Corp., et al*, Case No. 08-11153 (SCC) (Bankr. S.D.N.Y.) before the Honorable Shelly C. Chapman, United States Bankruptcy Judge for the Southern District of New York.

---

[2] The following, together with the findings of fact and conclusions of law set forth in the record of the Confirmation Hearing, constitute the Court's findings of fact and conclusions of law pursuant to Rule 52 of the Federal Rules of Civil Procedure, made applicable hereto by Bankruptcy Rules 7052 and 9014.  To the extent any of the following conclusions of law or findings of fact constitute findings of fact or conclusions of law, respectively, they are adopted as such.

[3] *Order Pursuant to Rule 1015(b) of the Federal Rules of Bankruptcy Procedure Directing Joint Administration of Chapter 11 Cases*, dated April 2, 2008 [Docket No. 19].

D.    On or about April 11, 2008, and as amended thereafter, the Office of the United States Trustee for the Southern District of New York (the "**U.S. Trustee**"), appointed the Official Committee of Unsecured Creditors (the "**Creditors' Committee**").[4]

E.    During the Chapter 11 Cases, the Debtor have complied with all provisions of the Bankruptcy Code, the Bankruptcy Rules, the Local Rules of Bankruptcy Procedure for the Southern District of New York (the "**Local Rules**"), and all orders of the Court.   The Debtors have complied with the operating guidelines and financial reporting requirements of the U.S. Trustee by timely filing all operating reports and financial statements, and maintaining and providing proof of insurance.   The Debtors have paid all statutory fees required to be paid during the Chapter 11 Cases.   The Debtors have timely filed their schedules, lists of executory contracts and leases, and statements of financial affairs.

## II.    The Plan Process

### (a)    Plan Negotiations

F.    Since the commencement of the Chapter 11 Cases and promptly after achieving stabilization of their business operations, the Debtors engaged in extensive and continuing negotiations with the various constituents in the Chapter 11 Cases to negotiate and propose a plan of reorganization.

G.    The Debtors proposed the Plan with the legitimate and honest purpose of reorganizing the Debtors' businesses and affairs and maximizing the value available for distribution to Creditors.   The Plan is the product of extensive, arms'-length negotiations between and among the Debtors, the Plan Sponsor, the DIP Lenders, the Prepetition Secured

---

[4] *See Appointment of Committee of Unsecured Creditors*, dated April 11, 2008 [Docket No. 49]; *Amended Appointment of Committee of Unsecured Creditors*, dated August 22, 2008 [Docket No. 333; *Amended Appointment of Committee of Unsecured Creditors*, dated November 16, 2009 [Docket No. 785]; and *Amended Appointment of Committee of Unsecured Creditors*, dated February 12, 2010 [Docket No. 835].

Lenders, and other participants in the Chapter 11 Cases.  The Plan reflects the culmination of these negotiations.

      **(b)**      **Plan Implementation**

      H.      The Plan, including without limitation, the Plan Supplement and all exhibits and schedules thereto, and all other documents filed in connection with the Plan and/or executed or to be executed in connection with the transactions contemplated by the Plan, and all amendments and modifications of any of the foregoing (collectively, the "**Plan Documents**") are incorporated by reference, and are an integral part of this Order.

      I.      The Plan Documents have been negotiated in good faith and at arms'-length and shall, on and after the Effective Date, constitute legal, valid, binding, and authorized obligations of the respective parties thereto and shall be enforceable in accordance with their terms.

      J.      Pursuant to sections 1123(a)(5) and 1142(a) of the Bankruptcy Code, the Plan Documents shall apply and be enforceable notwithstanding any otherwise applicable non-bankruptcy law.  The Debtors, the Plan Investor, the DIP Lenders, the Prepetition Secured Lenders, the lenders under the Amended and Restated Secured CSE Loan Agreement and related loan documents, and the lenders under the Amended and Restated Secured CapitalSource Credit Agreement and related loan documents, and all of their respective members, officers, directors, agents, financial advisors, investment bankers, attorneys, employees, equity security holders, partners, affiliates, and representatives will be acting in good faith if they proceed to consummate the Plan Documents and the agreements, settlements, transactions, transfers, and documentation contemplated thereby and take any actions authorized and directed by this Order.

(c)      **The Solicitation Process**

K.      By the Disclosure Statement Order, the Court approved the Disclosure

Statement, found that the Disclosure Statement contained "adequate information" within the

meaning of section 1125 of the Bankruptcy Code, and established the Voting Procedures, which

included, among other things, setting (a) Wednesday, May 26, 2010 at 5:00 p.m. (Eastern

Daylight Time) as the Voting Record Date and (b) Friday, July 2, 2010 at 5:00 p.m. (Eastern

Daylight Time) as the deadline to cast votes to accept or reject the Plan (the "**Voting Deadline**")

and the deadline to interpose any objections or responses to confirmation of the Plan (the

"**Objection Deadline**").

L.      By that certain order, dated April 2, 2008,[5] the Debtors retained Epiq

Bankruptcy Solutions LLC (the "**Voting Agent**") as, among other things, voting agent for the

Debtors.  In accordance with the Voting Procedures, Epiq served the Solicitation Packages (as

defined below) upon the parties listed in the Azzaro Service Affidavit.

M.      For those holders of claims that were entitled to vote on the Plan, the

Solicitation Packages contained, among other things, (1) the Plan, (2) the Disclosure Statement,

(3) notice of the Confirmation Hearing, and (4) a ballot for acceptance or rejection of the Plan

and for making certain elections under the Plan.

N.      The Disclosure Statement Order required the Debtors to complete service

of the Solicitation Packages by June 2, 2010, and the Debtors timely completed such service in

accordance with the Disclosure Statement Order.  All persons required to receive notice of the

---

[5] *Order Pursuant to 28 U.S.C. § 156(c) and Local Rule 5075-1(a) (i) Authorizing the Employment of Epiq Bankruptcy Solutions LLC as Claims and Noticing Agent for the Debtors and (ii) Appointing Epiq Bankruptcy Solutions, Inc. as Agent of the Bankruptcy Court*, dated April 2, 2010 [Docket No. 24].

Confirmation Hearing have received proper, timely, and adequate notice in accordance with the Disclosure Statement Order and have had an opportunity to be heard with respect thereto.

O.    Section 13.9 of the Plan provides that the Debtors shall file a Plan Supplement no later than 10 days before the Voting Deadline (*i.e.*, June 22, 2010).  On June 22, 2010, in accordance with Section 13.9 of the Plan, the Debtors filed the Plan Supplement, which included the following exhibits:

(1)    Charter Amendment,

(2)    Securityholders Agreement,

(3)    List of directors and officers,

(4)    List of executory contracts to be rejected,

(5)    List of insurance policies and agreements to be rejected,

(6)    Restructuring Transactions,

(7)    Stock Purchase Agreement,

(8)    Revised Summary of Amended and Restated Secured CSE Loan Agreement,

(9)    Revised Summary of Amended and Restated Secured CapitalSource Credit Agreement,

(10)    Revised Amended and Restated Secured CSE Loan Agreement,

(11)    Revised Amended and Restated Secured CapitalSource Credit Agreement.

(12)    Ancillary documents related to Amended and Restated Secured CSE Loan Agreement,

(13)    Ancillary documents related to Amended and Restated Secured CapitalSource Credit Agreement, and

(14)    the Management Incentive Plan.

P.       The Debtors served notice of the filing of the Plan Supplement on the parties listed in the certificate of service of the Plan Supplement.[6]  Notice of the Plan Supplement was due, proper, and sufficient, and no further notice is necessary.

Q.       Votes on the Plan were solicited after disclosure to holders of Claims against the Debtors of "adequate information," as defined in section 1125 of the Bankruptcy Code.  As evidenced by the Pullo Voting Certification, the Debtors and the Voting Agent properly solicited and tabulated votes with respect to the Plan in good faith and in a manner consistent with the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, and the Disclosure Statement Order, and all creditors who were entitled to vote on the Plan were afforded a fair and adequate opportunity to vote.

R.       On July 15, 2010, the Debtors provided notice of a supplemental disclosure (the "**Supplemental Disclosure**") regarding certain transaction fees payable to an affiliate of the Plan Investor and to the DIP Lenders that would dilute the New LPC Common Stock to be received by holders of Claims in Class 5 (Senior Subordinated Note Claims) who made the election to receive such stock (the "**Class 5 Stock Election**") by approximately 5.4%.[7] The Debtors also provided those holders of such claims the opportunity to withdraw their Class 5 Stock Elections and instead receive a cash payment equal to 51% of their allowed claims.  By that certain interim order dated, July 15, 2010, the Court approved the Supplemental Disclosure and the procedures to withdraw the Class 5 Stock Election on an interim basis.  Concurrently herewith, the Court has approved the Supplemental Disclosure and the Class 5 Stock Election withdrawal procedures on a final basis.

---

[6] *Plan Supplement for the Debtors' Fourth Amended Joint Plan of Reorganization Under Chapter 11 of the Bankruptcy Code, as Modified*, dated June 22, 2010 [Docket No. 919].

[7] *See Affidavit of Solicitation Mailing*, dated July 19,2 010 [Docket No. 966].

(d)    **Resolution of Creditors' Committee's Objection**

S.    On July 2, 2010, the Creditors' Committee filed an objection to

confirmation of the Plan (as supplemented, the "**Committee Objection**"), objecting to, among

other things, the rates of interest to be paid on Allowed Claims in Class 17.    The Creditors'

Committee has agreed that the Committee Objection shall be deemed withdrawn.    The Debtors

and the Creditors' Committee have further agreed that with respect to Class 17, (a) the federal

judgment rate as of the Effective Date for the time period between the Commencement Date and

the Effective Date and (b) an implied interest rate of 10.0% on the stream of payments after the

Effective Date is sufficient to satisfy Allowed General Unsecured Claims against LRGI in full as

required by section 1129(b)(2)(B)(i) of the Bankruptcy Code, and that, accordingly, the Plan

satisfies section 1129(b) of the Bankruptcy Code.

III.    **Confirmation of the Plan**

(a)    **The Confirmation Hearing**

T.    On July 21, 2010, the Court held the Confirmation Hearing to consider

confirmation of the Plan.  At the hearing, all parties in interest had an opportunity to be heard.

(b)    **Burden of Proof**

U.    The Debtors have satisfied their burden of proof of producing evidence

that the Plan complies with section 1129 of the Bankruptcy Code.

(c)    **Bankruptcy Rule 3016(a).**

V.    In accordance with Bankruptcy Rule 3016(a), the Plan is dated and

identifies the Debtors as the proponents thereof.

## IV.    The Plan Satisfies Section 1129(a) of the Bankruptcy Code

### (a)    The Plan Satisfies Section 1129(a)(1) of the Bankruptcy Code

W.    As set forth below, the Plan satisfies all the applicable provisions of the Bankruptcy Code, thereby satisfying section 1129(a)(1) of the Bankruptcy Code.

### (1)    *The Plan Satisfies Section 1122(a) of the Bankruptcy Code – Classification of the Claims and Interests*

X.    Because (1) Article IV of the Plan classifies the Claims against and Interests in the Debtors into 19 distinct classes and, as classified, each Claim and Interest is substantially similar to the other Claims and Interests within its class, (2) valid business, factual, and legal reasons exist for separately classifying the various classes of Claims and Interests created under the Plan, and (3) such Classes do not effect unfair discrimination as between holders of Claims and Interests, and (4) the Plan does not propose a classification scheme to create an impaired consenting class or to manipulate voting, the Plan satisfies section 1122(a) of the Bankruptcy Code.

### (2)    *The Plan Satisfies Section 1122(b) of the Bankruptcy Code – Convenience Claims*

Y.    Because Sections 4.9 and 4.20 of the Plan classify claims equal to or under $2,000 separately for administrative convenience and such classification is reasonable and necessary, the Plan complies with section 1122(b) of the Bankruptcy Code.

### (3)    *The Plan Satisfies Section 1123(a)(1) of the Bankruptcy Code – Designation of Classes of Claims and Interests*

Z.    Because Article IV of the Plan properly and adequately classifies all Claims against and Interests in the Debtors required to be so classified, the Plan satisfies section 1123(a)(1) of the Bankruptcy Code.

(4)     ***The Plan Satisfies Section 1123(a)(2) of the Bankruptcy Code – Classes that Are Not Impaired by the Plan***

AA.     Because Article IV of the Plan designates the following classes as unimpaired under the Plan, the Plan satisfies section 1123(a)(2) of the Bankruptcy Code:

(1)     Class 1 (Other Priority Claims against LPC);

(2)     Class 3 (Secured Tax Claims against LPC);

(3)     Class 4 (Other Secured Claims against LPC);

(4)     Class 8 (Convenience Claims against LPC);

(5)     Class 13 (Other Priority Claims against LRGI);

(6)     Class 15 (Secured Tax Claims against LRGI);

(7)     Class 16 (Other Secured Claims against LRGI);

(8)     Class 18 (Convenience Claims against LRGI); and

(9)     Class 19 (Interests in LRGI).

(collectively, the "**Unimpaired Classes**").

(5)     ***The Plan Satisfies Section 1123(a)(3) of the Bankruptcy Code – Treatment of Impaired Classes***

BB.     Because Article IV of the Plan specifies the treatment for the following classes impaired by the Plan, the Plan satisfies section 1123(a)(3) of the Bankruptcy Code:

(1)     Class 2(a) (CapitalSource Secured Claims against LPC);

(2)     Class 2(b) (CSE Secured Claims against LPC);

(3)     Class 5 (Senior Subordinated Note Claims);

(4)     Class 6 (Junior Subordinated Note Claims);

(5)     Class 7 (General Unsecured Claims against LPC);

(6)     Class 9 (Asbestos-Related Claims);

(7)     Class 10 (Series B Preferred Stock Interests);

(8)     Class 11 (LPC Common Stock Interests);

(9)    Class 12 (Other Equity Interests in LPC);

(10)    Class 14(a) (CapitalSource Secured Claims against LRGI);

(11)    Class 14(b) (CSE Secured Claims against LRGI); and

(12)    Class 17 (General Unsecured Claims against LRGI).

CC.    The following impaired classes shall be referred to collectively herein as

the "**Impaired Voting Classes**" under the Plan:

(1)    Class 2(a) (CapitalSource Secured Claims against LPC);

(2)    Class 2(b) (CSE Secured Claims against LPC);

(3)    Class 5 (Senior Subordinated Note Claims);

(4)    Class 7 (General Unsecured Claims against LPC);

(5)    Class 9 (Asbestos-Related Claims);

(6)    Class 14(a) (CapitalSource Secured Claims against LRGI);

(7)    Class 14(b) (CSE Secured Claims against LRGI); and

(8)    Class 17 (General Unsecured Claims against LRGI).

DD.    The following impaired classes shall be referred to collectively herein as

the "**Impaired Non-Voting Classes**" under the Plan:

(1)    Class 6 (Junior Subordinated Note Claims);

(2)    Class 10 (Series B Preferred Stock Interests);

(3)    Class 11 (LPC Common Stock Interests); and

(4)    Class 12 (Other Equity Interests).

The Impaired Voting Classes and the Impaired Non-Voting Classes are collectively referred

herein as the "**Impaired Classes**."

> **(6)** ***The Plan Satisfies Section 1123(a)(4) of the Bankruptcy Code – Equal
> Treatment Within Each Class***

EE.     Because each member of each class under the Plan receives the same

treatment as any other member within the same class, the Plan satisfies section 1123(a)(4) of the

Bankruptcy Code.

> **(7)** ***The Plan Satisfies Section 1123(a)(5) of the Bankruptcy Code –
> Adequate Means of Implementation***

FF.     Because the Plan provides for, among other things, (a) continuation of the

Debtors' operations, (b) funding through the investment of the Plan Investor and the DIP

Lenders, (c) continued funding through an extension of credit resulting from the restructuring of

the Amended and Restated Secured CapitalSource Credit Agreement and the Amended and

Restated Secured CSE Loan Agreement, (d) distribution of recoveries to creditors,

(e) assumption of certain unexpired leases and executory contracts, and (f) resolution of claims,

the Plan provides adequate means of implementation.

> **(8)** ***The Plan Satisfies Section 1123(a)(6) of the Bankruptcy Code –
> Prohibition on the Issuance of Non-Voting Securities***

GG.     Because Section 9.3 of the Plan provides that the Reorganized Debtors

will comply with section 1123(a)(6) of the Bankruptcy Code and because the Plan does not

provide for the issuance of non-voting equity securities, the Plan complies with

section 1123(a)(6) of the Bankruptcy Code.

> **(9)** ***The Plan Satisfies Section 1123(a)(7) of the Bankruptcy Code –
> Provisions Regarding Directors and Officers***

HH.     Because Section 9.2 of the Plan provides the manner of selection of the

Reorganized Debtors' directors and officers and such manner is consistent with the interests of

creditors and equity security holders and with public policy and because the Debtors' initial list

of directors and officers is set forth in the Plan Supplement, the Plan complies with

Section 1123(a)(7) of the Bankruptcy Code.

> **(10)**   ***The Plan Complies with Section 1123(b)(2) of the Bankruptcy Code –
> the Assumption and Rejection of Executory Contracts and Unexpired
> Leases***

II.     Because Section 8.1 of the Plan provides for the assumption of all

executory contracts and expired leases in accordance with section 365 of the Bankruptcy Code

and because the Debtors, in turn, complied with section 365 of the Bankruptcy Code in the

assumption of such contracts and leases, the Plan complies with section 1123(b)(2) of the

Bankruptcy Code.  Specifically, because the Debtors require the assumed contracts to continue to

operate their businesses, the Debtors have provided a sound business justification for the

assumption of such contracts and leases.  To the extent that any defaults exist under the assumed

executory contracts or unexpired leases, Section 8.4 of the Plan provides for the cure of such

defaults.   The Debtors have provided adequate assurance of future performance under such

contracts and leases.  To the extent that applicable non-bankruptcy law excuses a non-debtor

contract counterparty from accepting performance or rendering performance, such contract

counterparty is deemed to have consented to the assumption of its agreement.  Each assumed

executory contract or unexpired lease shall be legal, valid, and binding upon the applicable

Debtor and all non-debtor counterparties to such contracts or leases.

JJ.     While the Plan contemplates the rejection of certain executory contracts

and unexpired leases, Schedule 8.1 of the Plan Supplement does not contain any such contracts

or leases and, as such, those provisions of the Plan are inapplicable.

> **(11)    The Plan Complies with Section 1123(b)(3) of the Bankruptcy Code –
> Settlement of Claims and Causes of Action**

KK.    Because the releases by the Debtors provided in Sections 10.8, 10.9, and

10.10 of the Plan are a negotiated term of the Plan and, in turn, their inclusion in the Plan is a

valid exercise of the Debtors' business judgment, is fair and reasonable, and is in the best

interests of the Debtors and their estates, the releases comply with section 1123(b)(3)(A) of the

Bankruptcy Code.  *See In re Spansion, Inc.*, 2010 WL 1292837, at * 21 (Bankr. D. Del. April 1,

2010); *In re DBSD N. Am., Inc.*, 419 B.R. 179, 217 (Bankr. S.D.N.Y. 2009).

LL.    In accordance and in compliance with section 1123(b)(3)(B) of the

Bankruptcy Code, Section 10.13 of the Plan properly reserves certain causes of action of the

Debtors.

> **(12)    The Plan Complies with Section 1123(b)(5) of the Bankruptcy Code –
> Modification of Secured Lender Rights**

MM.    In accordance and in compliance with section 1123(b)(5) of the

Bankruptcy Code, the Plan properly modifies the rights of holders of the CapitalSource Secured

Claims against LPC, the CSE Secured Claims against LPC, the CapitalSource Secured Claims

against LRGI, and the CSE Secured Claims against LRGI.

> **(13)    The Plan Complies with Section 1123(b)(6) of the Bankruptcy Code –
> Other Appropriate Provisions**

NN.    The Plan's other provisions are appropriate and consistent with the

applicable provisions of the Bankruptcy Code, including, without limitation, provisions for

(1) distributions to holders of allowed claims, (2) approval and authorization of the Plan

Documents, (3) resolution of Disputed Claims, (4) allowance of certain Claims,

(5) indemnification obligations, (6) releases by the Debtors of certain parties, (7) releases by

holders of Claims and Interests, and (8) exculpation of certain parties.

OO.    The third-party releases and exculpation provisions provided in

Sections 10.7, 10.8, 10.9, and 10.10 of the Plan are a necessary and integral part of the Plan, are

in consideration of valuable consideration by the released and exculpated parties, and are largely

consented to by the releasing parties and, accordingly, are in accordance with Section 1123(b)(6)

of the Bankruptcy Code.

PP.    In particular, the Plan Investor Release set forth in Section 10.9 of the Plan

is necessary to the Debtors' reorganization and plays an important part in the Plan.  The Plan

Investor Release is fair and equitable, is reasonable, and is in the best interest of the Debtors,

their estates, and their creditors.  The following factors support approval of the Plan Investor

Release:

> (1)    The investment made by the Plan Investor pursuant to the terms of the Stock Purchase Agreement constitutes a material and substantial contribution to the Debtors' estates;
>
> (2)    The Plan Investor's contribution is necessary and integral to the success of the Plan because the Plan Investor's investment provides substantial source of funds to the Debtors' estates and allows substantial distributions to be made to holders of claims;
>
> (3)    The Plan Investor Release is an important part of the Plan because without it, the Plan Investor would not have agreed to make the substantial contribution to the Debtors' estates; and
>
> (4)    The breadth of the Plan Investor Release is necessary to the Plan and bears a reasonable relationship to the protection of the Debtors' estates.

### *(14)    The Plan Complies with Section 1123(d) of the Bankruptcy Code – Cure of Defaults*

QQ.    Because Section 8.4 of the Plan provides for the cure of all defaults under

any assumed executory contract or unexpired lease, the Plan satisfies section 1123(d) of the

Bankruptcy Code.

       **(b)**      **The Debtors Satisfy Section 1129(a)(2) of the Bankruptcy Code – The Debtors Have Complied With the Bankruptcy Code**

       RR.     The Debtors have complied with all applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, and the orders of this Court, thereby satisfying section 1129(a)(2) of the Bankruptcy Code. Specifically, each Debtor is qualified to be a chapter 11 debtor under section 109 of the Bankruptcy Code. In accordance with section 1125 of the Bankruptcy Code, the Debtors did not solicit acceptances of the Plan until entry of the Disclosure Statement Order, after which the Debtors complied with the solicitation and voting procedures set forth in the Disclosure Statement Order. In accordance with section 1126 of the Bankruptcy Code, the Debtors only solicited acceptances of the Plan from holders of Claims in impaired Classes that will receive or retain property under the Plan on account of such Claims.

       **(c)**      **The Plan Satisfies Section 1129(a)(3) of the Bankruptcy Code – The Plan Has Been Proposed in Good Faith and Not By Any Means Forbidden by Law**

       SS.     Because the Debtors have proposed the Plan (including the related Plan Documents) in good faith and not by any means forbidden by law as evidenced by, among other things, the facts and records of these Chapter 11 Cases, the Disclosure Statement, and the record of the Confirmation Hearing, the Plan satisfies section 1129(a)(3) of the Bankruptcy Code. The Debtors proposed the Plan (including the related Plan Documents) with the legitimate and honest purposes of maximizing the value of the Debtors' estates and effectuating a successful reorganization. Further, the Plan's indemnification, exculpation, release, and injunction provisions have been negotiated in good faith and at arms length, are consistent with sections 105, 1122, 1123(b)(6), 1129, and 1142 of the Bankruptcy Code, and are necessary for the Debtors' successful reorganization.

      **(d)**     **The Plan Satisfies Section 1129(a)(4) of the Bankruptcy Code – The Plan Provides that the Debtors' and the Creditors' Committees' Professional Fees and Expenses Are Subject to Court Approval**

      TT.     Because Section 2.2 of the Plan provides that any payment to a professional retained by the Debtors and the Creditors' Committee in the Chapter 11 Cases is subject to Court approval and because any payment to professionals retained by the Debtors and the Creditors' Committee in the Chapter 11 Cases for costs and expenses incurred to date in connection with the Chapter 11 Cases were paid pursuant to orders of the Court, the Plan complies with section 1129(a)(4) of the Bankruptcy Code.

      **(e)**     **The Plan Satisfies Section 1129(a)(5) of the Bankruptcy Code – The Debtors have Disclosed All Necessary Information Regarding Directors, Officers, and Insiders**

      UU.     Because (1) Section V.L of the Disclosure Statement as well as Tab C of the Plan Supplement disclose (a) the identity and affiliation of any individual who will serve as a director or officer of the Reorganized Debtors and (b) the identity of any insider who will be employed or retained by the Reorganized Debtors and the nature of any compensation for such insider, and (2) the appointment of the proposed directors and officers is consistent with the interests of creditors and equity security holders and with public policy, the Plan satisfies section 1129(a)(5) of the Bankruptcy Code.

      **(f)**     **Section 1129(a)(6) of the Bankruptcy Code is Inapplicable**

      VV.     Because the Plan does not provide for any changes in the rates that require regulatory approval of any government agency, section 1129(a)(6) of the Bankruptcy Code is inapplicable.

(g)     **The Plan Satisfies Section 1129(a)(7) of the Bankruptcy Code – The Plan Satisfies the Best Interest Test**

WW.    Because each creditor or holder of any equity interest in an Impaired Class will (a) receive a distribution or retain property under the Plan of a value not less than that which such creditor or equity interest holder would receive or retain under a chapter 7 liquidation or (b) voted to accept the Plan, the Plan satisfies the "best interest" test under section 1129(a)(7) of the Bankruptcy Code.  The liquidation analysis provided in the Disclosure Statement (and as attested to in the Lubin Declaration) (1) is persuasive and credible, (2) has not been controverted by other evidence, (3) is based on reasonable and sound assumptions, and (4) provides a reasonable estimate of the liquidation values upon conversion to a case under chapter 7 of the Bankruptcy Code.  Based upon the testimony and documentary evidence presented at the Confirmation Hearing, holders of Claims and Interests will receive or retain at least as much under the Plan as they would have received or retained under a chapter 7 liquidation.

(h)     **Section 1129(a)(8) of the Bankruptcy Code – Acceptance by Each Impaired Class**

XX.    Because (1) Class 6 (Junior Subordinated Note Claims), (2) Class 10 (Series B Preferred Stock Interests), (3) Class 11 (LPC Common Stock Interests), and (4) Class 12 (Other Equity Interests in LPC) shall not receive a distribution or retain any property under the Plan and, accordingly, are deemed to reject the Plan, the Plan does not satisfy section 1129(a)(8) of the Bankruptcy Code.  In addition, Class 17 voted to reject the Plan.  All other classes have either accepted the Plan or are deemed to accept the Plan.  Although the Plan does not satisfy section 1129(a)(8) of the Bankruptcy Code as to all classes, the Plan may be confirmed pursuant to section 1129(b) of the Bankruptcy Code as set forth herein.

    **(i)**      **The Plan Satisfies Section 1129(a)(9) of the Bankruptcy Code – The Plan Provides for Payment in Full of All Allowed Priority Claims**

        YY.    Because Section 2.1 of the Plan provides that, unless agreed otherwise, a holder of an Allowed Administrative Expense Claim shall receive payment in full, in Cash, on account of such claim, the Plan satisfies section 1129(a)(9)(A) of the Bankruptcy Code.  Because Sections 4.1 and 4.14 of the Plan provide that, unless agreed otherwise, each holder of an Allowed Other Priority Claim shall receive payment in full, in Cash, on account of such claim, the Plan satisfies section 1129(a)(9)(B) of the Bankruptcy Code.  Because Sections 2.5, 4.4 and 4.17 of the Plan provides that, unless agreed otherwise, a holder of an Allowed Secured Tax Claim or Allowed Priority Tax Claim shall receive on account of such claim (1) a payment in Cash in an amount equal to such claim, (2) equal semi-annual Cash payments in an aggregate amount equal to such claim over a period of eighteen months (but in no event exceeding five years from the Commencement Date), or (3) such other treatment as determined by the Court to provide such holder deferred Cash payments having a value, as of the Effective Date, equal to such claim, the Plan satisfies sections 1129(a)(9)(C) and (D) of the Bankruptcy Code.

    **(j)**      **The Plan Satisfies Section 1129(a)(10) of the Bankruptcy Code – At Least One Class of Impaired Claims Excluding Votes of Insiders Has Accepted the Plan.**

        ZZ.    Classes  2(a) (CapitalSource Secured Claims against LPC), 2(b) (CSE Secured Claims against LPC), 5 (Senior Subordinated Note Claims), 7 (General Unsecured Claims against LRGI), Class 9 (Asbestos-Related Claims), 14(a) (CapitalSource Secured Claims against LRGI), and 14(b) (CSE Secured Claims against LRGI), each of which is an impaired class, voted to accept the Plan, the Plan satisfies Section 1129(a)(10) of the Bankruptcy Code.

    **(k)**    **The Plan Satisfies Section 1129(a)(11) of the Bankruptcy Code – The Plan is Feasible**

AAA.  Because the evidence proffered or adduced at the Confirmation Hearing (1) is persuasive and credible, (2) has not been controverted by other evidence, and (3) establishes that (a) the Plan is feasible, (b) there is a reasonable prospect that the Reorganized Debtors will meet their financial obligations under the Plan and in the ordinary course of their business, and (c) confirmation of the Plan will not likely be followed by a liquidation or a need for further financial reorganization of the Reorganized Debtors, the Plan satisfies section 1129(a)(11) of the Bankruptcy Code.

    **(l)**    **The Plan Satisfies Section 1129(a)(12) of the Bankruptcy Code – All Statutory Fees Have Been or Will be Paid**

BBB.  Because Section 13.5 of the Plan provides for the payment of all fees payable pursuant to section 1930 of chapter 123 of title 28 of the United States Code, the Plan satisfies section 1129(a)(12) of the Bankruptcy Code.

    **(m)**    **Sections 1129(a)(13), 1129(a)(14), 1129(a)(15), and 1129(a)(16) of the Bankruptcy Code are Not Applicable to the Plan**

CCC.  Sections 1129(a)(13), 1129(a)(14), 1129(a)(15), and 1129(a)(16) of the Bankruptcy Code are not applicable to the Plan.

**V.**    **The Plan Complies with Section 1129(b) of the Bankruptcy Code**

DDD.  As set forth below, the Plan is fair and equitable and does not unfairly discriminate with respect to (1) Class 6 (Junior Subordinated Note Claims), (2) Class 10 (Series B Preferred Stock Interests), (3) Class 11 (LPC Common Stock Interests), (4) Class 12 (Other Equity Interests in LPC), and (5) Class 17 (General Unsecured Claims in LRGI).

(a)     **The Plan is Fair and Equitable**

EEE.    Because the Plan provides that no holder of any claim or interest junior to

Junior Subordinated Note Claims will receive or retain any property under the Plan, the Plan is

fair and equitable with respect to Class 6 (Junior Subordinated Note Claims).  Because the Plan

provides that no holder of an interest junior to (1) Series B Preferred Stock Interests, (2) LPC

Common Stock Interests, or (3) Other Equity Interests in LPC will receive or retain any property

under the Plan, the Plan is fair and equitable with respect to Class 10 (Series B Preferred Stock

Interests), Class 11 (LPC Common Stock Interests), and Class 12 (Other Equity Interests in

LPC).

FFF.    With respect to Class 17, the Plan provides that holders of Allowed

Claims in Class 17 will receive a stream of payments (which include interest from the

Commencement Date to the Effective Date) commencing on the Effective Date at an interest rate

to be determined by the Court.  The Debtors and the Creditors' Committee agree that (a) the

federal judgment rate as of the Effective Date for the time period between the Commencement

Date and the Effective Date and (b) an implied interest rate of 10.0% on the stream of payments

after the Effective Date is sufficient to satisfy Allowed General Unsecured Claims against LRGI

in full, thus satisfying section 1129(b)(2)(B)(i) of the Bankruptcy Code.  Based on the foregoing

and the pleadings filed with the Court, the Court finds that (a) the federal judgment rate as of the

Effective Date for the time period between the Commencement Date and the Effective Date and

(b) an implied interest rate of 10.0% on the stream of payments after the Effective Date is

sufficient to satisfy Allowed General Unsecured Claims against LRGI in full, thus satisfying

section 1129(b)(2)(B)(i) of the Bankruptcy Code.  In light of the foregoing, the Plan provides

that holders of Claims in Class 17 (General Unsecured Claims against LRGI) will receive on

account of their Claims property of a value, as of the Effective Date, equal to the allowed amount

of their Claims and, accordingly, the Plan is fair and equitable with respect to Class 17 (General Unsecured Claims against LRGI).

       **(b)**     **The Plan Does Not Unfairly Discriminate**

       GGG.  Because there are no Claims or Interests with the same priority as the Claims or Interests within (1) Class 6 (Junior Subordinated Note Claims), (2) Class 10 (Series B Preferred Stock Interests), (3) Class 11 (LPC Common Stock Interests), and (4) Class 12 (Other Equity Interests in LPC), the Plan does not unfairly discriminate against Claims or Interests in such classes.

**VI.**     <u>**Section 1129(c) of the Bankruptcy Code is Inapplicable**</u>

       HHH.  Because the Plan is the only plan of reorganization before the Court in the Chapter 11 Cases, section 1129(c) of the Bankruptcy Code is inapplicable.

**VII.**     <u>**The Plan Complies with Section 1129(d) of the Bankruptcy Code**</u>

       III.     Because the Debtors proposed the Plan not for the principal purpose of avoiding taxes or the application of section 5 of the Securities Act of 1933, the Plan complies with section 1129(d) of the Bankruptcy Code.

**VIII.**     <u>**Section 1129(e) of the Bankruptcy Code is Inapplicable**</u>

       JJJ.     Because the Chapter 11 Cases are not small business cases, section 1129(e) of the Bankruptcy Code is inapplicable.

**IX.**     **The Modifications to the Plan Satisfy the Requirements**
          <u>**of Section 1127 of the Bankruptcy Code and Bankruptcy Rule 3019**</u>

       KKK.  Because any modifications to the Plan reflected in Exhibit "A" hereto do not adversely affect any creditor, they comply with section 1127 of the Bankruptcy Code and Bankruptcy Rule 3019.

X.    **Other Findings of Fact and Conclusions of Law**

(a)    **Valuation**

LLL.    The Valuation analysis set forth in Article VI of the Disclosure Statement and the total enterprise value described therein is based on the implied enterprise value of the Debtors under the financial terms of the plan investment by the Plan Investor.  The Plan Investor's investment was accepted after extensive marketing and extended exposure to the marketplace and represents the best available transaction for the Debtors.  The value implied by the transaction is reasonable.

(b)    **Exemption from Securities Law**

MMM. Section 1145 of the Bankruptcy Code applies to any securities offered, issued, or distributed pursuant to the Plan, including, without limitation, the New LPC Common Stock, and the issuance of such securities is exempt from registration under the Securities Act of 1933, as amended, and all rules and regulations promulgated thereunder, and under applicable state securities law.

(c)    **Exemption from Transfer Taxes**

NNN.  Section 1146(a) of the Bankruptcy Code applies to the issuance, transfer, or exchange of notes or equity securities under the Plan, the creation of any mortgage, deed of trust, or other security interest, the making or assignment of any lease or sublease, the implementation of any intercompany transfer or other Restructuring Transaction, or the making or delivery of any deed or other instrument of transfer under, in furtherance of, and in connection with the Plan, including, without limitation, the New LPC Common Stock, the Amended and Restated Secured CapitalSource Credit Agreement, the Amended and Restated Secured CSE Loan Agreement, any merger agreement or agreement of consolidation, and any deeds, bills of

sale, or assignments executed in connection with any of the transactions contemplated under the Plan.

**ACCORDINGLY, IT IS DECREED, ORDERED, AND ADJUDGED AS FOLLOWS:**

### I.    Confirmation of the Plan

    **(a)**    **Confirmation of the Plan**

        1.    The Plan is **CONFIRMED**.

    **(b)**    **Record of the Confirmation Hearing**

        2.    The record of the Confirmation Hearing is **CLOSED**.

    **(c)**    **Objections to the Plan**

        3.    All Objections to the Plan that have not been withdrawn prior to entry of this Order or are not resolved by the relief granted herein are **OVERRULED** in their entirety. All withdrawn Objections are deemed **WITHDRAWN WITH PREJUDICE**.

    **(d)**    **Modifications of the Plan**

        4.    Any holder of a Claim or Interest that has accepted or rejected the Plan is deemed to have accepted or rejected the Plan as modified.  The Debtors are not required to resolicit acceptances or rejections of the Plan.  After the Confirmation Date, in accordance with Section 13.11 of the Plan and subject to section 1127(b) of the Bankruptcy Code, the Debtors may alter, amend, or modify the Plan.  The Debtors may modify the Plan Documents, as necessary, if such modification does not materially alter the terms of such document and is consistent with the Plan and this Order.

II.   **Implementation of the Plan**

    (a)   **Approval of Transactions and Related Documents**

        5.   All transactions contemplated under the Plan and all documents related thereto are hereby **AUTHORIZED** and **APPROVED**, including, without limitation, the following:

        (A)   the Charter Amendment,

        (B)   the Amended and Restated Secured CapitalSource Credit Agreement and all other documents related thereto,

        (C)   the Amended and Restated Secured CSE Loan Agreement and all other documents related thereto,

        (D)   the Stock Purchase Agreement, and

        (E)   the issuance of the New LPC Common Stock.

        6.   The Debtors and their respective directors, officers, members, agents, attorneys, financial advisors, investment bankers, and other representatives are **AUTHORIZED** to take any action in furtherance of implementing the Plan and any transactions contemplated thereby, including, without limitation, those contemplated by decretal paragraph 5 of this Order.

    (b)   **Corporate Action**

        7.   On the Effective Date, all matters provided for under the Plan that would otherwise require approval of the stockholders or directors of one or more of the Debtors or Reorganized Debtors shall be deemed to have occurred and shall be in effect from and after the Effective Date pursuant to applicable general corporation law of the states in which the Debtors and the Reorganized Debtors are incorporated, without any requirement for further action or approval by the stockholders or directors of the Debtors or the Reorganized Debtors.

8.        Without any further action or approval, the initial directors and officers of

the Reorganized Debtors shall be deemed to be appointed to their respective positions on the

Effective Date.

**(c)        Exemption from Non-Applicable Bankruptcy Law**

9.        Pursuant to section 1123(a)(5) of the Bankruptcy Code, each Reorganized

Debtor, as applicable, is **EXEMPT** from compliance with any applicable non-bankruptcy law or

regulation related to the transactions contemplated by the Plan, including, without limitation the

transactions listed in decretal paragraph 5 of this Order.  Authorization and approval by this

Order shall constitute authorization and approval as required by any applicable non-bankruptcy

law, rule, or regulation of any state or other governmental authority.

**III.    Assumption of Executory Contracts and Unexpired Leases**

10.        The assumption of all executory contracts and unexpired leases is

**APPROVED**.  The cure amounts (the "**Cure Amounts**") set forth on the notices of assumption

provided to each contract or lease counterparty, a copy of which is on file with the Court at

Docket No. 921, is **APPROVED**.

11.        Within 30 days after the Effective Date, the Debtors shall pay the Cure

Amounts to the respective contract and lease counterparties.  Upon the payment of the applicable

Cure Amount or, if no Cure Amount is owing, upon the Effective Date, the applicable contract or

unexpired lease shall be **DEEMED ASSUMED** by the applicable Debtor effective as of the

Effective Date without further action by any Debtor, and any contract counterparty to such

contract or lease shall be deemed to have consented to such assumption.   The payment of the

applicable Cure Amount shall constitute the cure of all defaults arising under the applicable

executory contract or unexpired lease in accordance with section 365(b) of the Bankruptcy Code.

12.     Upon the assumption of an executory contract or unexpired lease, the applicable contract or lease counterparty is **BARRED** and **PERMANENTLY ENJOINED** from asserting against the applicable Debtor any default, claim, or liability existing, accrued or arising under, or relating to the applicable executory contract or lease for the period prior to the entry of this Order, **except** any obligation arising under such executory contract or lease from and after the Commencement Date but not yet due and payable under the terms of the applicable executory contract or lease.

## IV.     Distributions under the Plan

### (a)     Allowance of Certain Claims

13.     The CapitalSource Secured Claim against LPC is **ALLOWED** as a secured claim in the amount of $18,822,078.28.

14.     The CapitalSource Secured Claim against LRGI is **ALLOWED** as a secured claim in the amount of $18,822,078.28.

15.     The CSE Secured Claim against LPC is **ALLOWED** as a secured claim in the amount of $13,130,634.47.

16.     The CSE Secured Claim against LRGI is **ALLOWED** as a secured claim in the amount of $13,130,634.47.

### (b)     Distributions to Class 17 Allowed Claims

17.     Unless a holder of an Allowed General Unsecured Claim against LRGI has timely elected the Class 17 Cash Election, such holder will receive under the Plan Cash payments in the aggregate amount of 111.7% of such Claim (which includes interest from the Commencement Date through the date of last payment) as follows: (a) ten percent (10%) of the sum of (i) its Allowed General Unsecured Claim against LRGI and (ii) postpetition interest from the Commencement Date through and including the Effective Date, calculated at the federal

judgment rate as of the Effective Date, in Cash as soon as reasonably practicable after the later of

the Effective Date and the date such Claim is Allowed and (b) an additional nine (9) equal

quarterly Cash payments, each in an amount equal to eleven and three-tenths percent (11.3%) of

the sum of (i) its Allowed General Unsecured Claim, and (ii) postpetition interest from the

Commencement Date through and including the Effective Date, calculated at the federal

judgment rate as of the Effective Date, commencing three (3) months after the later of the

Effective Date and the date such Claim is Allowed.

      **(c)**     **Claims Resolution**

      18.     The provisions in Articles V, VI, and VII of the Plan governing

distributions and the procedures for resolving and treating Disputed Claims under the Plan are

**APPROVED**.

      **(d)**     **The Administrative Expense Claim Bar Date**

      19.     Each holder of an Administrative Expense Claim, other than (a) a claim

covered by Section 2.2, 2.3, or 2.4 of the Plan, (b) a liability incurred and payable in the ordinary

course of business by a Debtor (and not past due), or (c) an Administrative Expense Claim that

has been Allowed on or before the Effective Date, shall file with the Court and serve upon the

Debtors or Reorganized Debtors, as applicable, and the U.S. Trustee, notice (an "**Administrative**

**Expense Claim Request**") of such Administrative Expense Claim on or prior to the

Administrative Expense Bar Date (*i.e.*, that certain date that is 60 days after the Effective Date).

      20.     An Administrative Expense Claim Request must include (a) the name of

the Debtor that is purported to be liable for the Claim, (b) the name of the holder of the Claim,

(c) the amount of the Claim, and (d) the basis for the Claim.

      21.     **Any holder of an Administrative Expense Claim that must file an**

**Administrative Expense Claim Request and fails to timely and properly file and serve an**

**Administrative Expense Claim Request shall be forever barred from asserting such Administrative Expense Claim against the Debtors or Reorganized Debtors and the Debtors and Reorganized Debtors shall be discharged from any liability arising from or related to such Administrative Expense Claim.**

       (e)      **Unclaimed Distributions**

       22.     In the event that any distribution to any holder is returned as undeliverable, the Reorganized Debtors shall use reasonable efforts to determine the current address of such holder, but no distribution to such holder shall be made unless and until the Reorganized Debtors have determined the then-current address of such holder, at which time such distribution shall be made to such holder without interest from the original distribution date through the new distribution date; **provided**, **however**, that such distribution shall be deemed unclaimed property under section 347(b) of the Bankruptcy Code at the expiration of one year from the Effective Date.  After such date, all unclaimed property or interests in property (including any stock) shall revert to the applicable Reorganized Debtor.

**V.**       **Effects of Confirmation**

       (a)      **Vesting of Assets**

       23.     Upon the Effective Date, pursuant to sections 1141(b) and (c) of the Bankruptcy Code, all property of the Debtors shall vest in each of the Reorganized Debtors **FREE** and **CLEAR** of all Claims, Liens, encumbrances, charges, and other interests, except as provided in the Plan, this Order, the Amended and Restated CapitalSource Secured Credit Agreement and all related loan documents, which supersede the Prepetition Credit Agreement, and the Amended and Restated Secured CSE Loan Agreement and all related loan documents, which supersede the Prepetition Loan Agreement.

**(b)**     **Binding Effect**

24.     In accordance with section 1141(a) of the Bankruptcy Code and

Section 13.15 of the Plan, the Plan shall be binding upon (a) the Debtors, (b) all holders of

Claims and Interests, whether or not such Claim or Interest is impaired under the Plan and

whether or not such holder has filed a proof of claim or accepted the Plan, (c) any and all non-

debtor counterparties to any assumed executory contracts or unexpired leases, (d) any other party

in interest in the Chapter 11 Cases, and (e) any and all of the foregoing parties' respective

successors and assigns, including, without limitation, the Reorganized Debtors.

**(c)**     **Injunctions or Stays and Terms Thereof**

25.     Pursuant to Section 10.4 of the Plan, except as otherwise expressly

provided in the Plan, all persons or Entities who have held or may hold Claims against or

Interests in the Debtors and all other parties in interest, along with their respective present or

former employees, agents, officers, directors, principals and affiliates, are permanently enjoined,

from and after the Effective Date, from (a) commencing and continuing in any manner any

action or other proceeding of any kind with respect to any such Claim or Interest, (b) pursuing

the enforcement, attachment, collection, or recovery, by any manner or means, of any judgment,

award, decree, or order against the Debtors or Reorganized Debtors with respect to any such

Claim or Interest, (c) creating, perfecting, or enforcing any encumbrance of any kind against the

Debtors or Reorganized Debtors or against the property or interests in property of the Debtors or

Reorganized Debtors with respect to any such Claim or Interest, (d) asserting any right of setoff,

subrogation, or recoupment of any kind against any obligation due from the Debtors or the

Reorganized Debtors or against the property or interests in property of the Debtors or the

Reorganized Debtors, with respect to any such Claim or Interest, or (e) pursuing any Claim or

Interest released pursuant to Article X of the Plan.  Such injunction shall extend to any

successors of the Debtors and the Reorganized Debtors and their respective properties and interests in property.

26.     Except for actions brought before the Court in accordance with the provisions of Article XII of the Plan ("*Retention of Jursidiction*"), upon entry of the Confirmation Order, all holders of Claims or Interests and other parties in interest, along with their respective present or former employees, agents, officers, directors, principals, and affiliates, shall be enjoined from taking any actions to interfere with the implementation or consummation of the Plan.

27.     Unless otherwise provided in the Plan or an order of the Court, all injunctions or stays arising under or entered during the Chapter 11 Cases under sections 105 or 362 of the Bankruptcy Code, or otherwise, and in existence on the Confirmation Date, shall remain in full force and effect until the later of the Effective Date and the date indicated in the order providing for such injunction or stay.

**(d)     Discharge of Claims and Interests**

28.     **Pursuant to Section 10.2 of the Plan, except as provided in the Plan, the rights afforded in, and the payments and distributions to be made under, the Plan shall be in exchange for and in complete satisfaction, discharge, termination, cancellation, and release of all existing debts, Claims, and Interests of any kind, nature, or description whatsoever, including any interest accrued on such Claim from and after the Commencement Date, against the Debtors or any of their assets or properties to the fullest extent permitted by section 1141 of the Bankruptcy Code.  Except as provided in the Plan, upon the Effective Date, all existing Claims and Interests against the Debtors shall be, and shall be deemed to be, discharged and terminated, and all holders of Claims and Interests shall be precluded and enjoined from asserting against the Reorganized Debtors, their**

successors or assigns, or any of their respective assets or properties, any other or further

Claim or Interest based upon any act or omission, transaction, or other activity of any kind

or nature that occurred prior to the Effective Date, whether or not such holder has filed a

proof of Claim or proof of Interest, and whether or not the facts or legal basis    herefore

were known or existed prior to the Effective Date.

      (e)    **Discharge of the Debtors**

      29.    Pursuant to Section 10.3 of the Plan, upon the Effective Date and in

consideration of the distributions to be made under the Plan, except as expressly provided

in the Plan and this Order, each holder (as well as any trustee or agent on behalf of any

holder) of a Claim or Interest and any affiliate of such holder shall be deemed to have

forever waived, released, and discharged the Debtors, to the fullest extent permitted by

section 1141 of the Bankruptcy Code, of and from any and all Claims, Interests, rights, and

liabilities that arose prior to the Effective Date.  Upon the Effective Date, all such persons

shall be forever precluded and enjoined, pursuant to section 524 of the Bankruptcy Code,

from prosecuting or asserting any such Claim or Interest against the Debtors.

      (f)    **Releases**

      *(1)*    *Releases of Directors, Officers, and Employees*

      30.    Subject to Section 10.11 of the Plan, effective as of the Confirmation

Date, but subject to the occurrence of the Effective Date, and in consideration of the

services provided to the Debtors by present and former directors, officers, and employees

of the Debtors, (a) the Debtors, (b) the Reorganized Debtors, (c) each holder of a Claim or

Interest that has voted to accept the Plan (or is deemed to accept the Plan) and that has not

elected to opt out of the releases provided therein, and (d) to the fullest extent permissible

under applicable law, as such law may be extended or integrated after the Effective Date,

each holder of a Claim or Interest that has not voted to accept the Plan and that has not elected to opt out of the releases provided therein, shall release, unconditionally and forever, each present or former director, officer, and employee from any and all Claims or causes of action that exist as of the Effective Date and arise from or relate to, in any manner, in whole or in part, the operation of the business of the Debtors, the subject matter of, or the transactions or events giving rise to, the Claim or Interest of such holder, the business or contractual arrangement between any Debtor and such holder, any restructuring of such Claim or Interest prior to the Confirmation Date, or any act, omission, occurrence, or event in any manner related to such subject matter, transaction, or obligation or arising out of the Chapter 11 Cases, including, but not limited to, the pursuit of confirmation of the Plan, the consummation thereof, the administration thereof, or the property to be distributed thereunder; _provided_, _however_, that the foregoing shall not operate as a waiver of or release from any cause of action arising out of the willful misconduct, gross negligence, intentional fraud, criminal conduct, intentional unauthorized misuse of confidential information that causes damages, or _ultra_ _vires_ act of any such person or Entity.

       *(2)*    *Plan Investor Release*

    31.    **Notwithstanding anything contained in the Plan to the contrary, on the Effective Date and effective as of the Effective Date, each holder of a Claim that receives a distribution under the Plan and that has not elected to opt out of the releases provided therein, shall provide a full discharge and release (and each Entity so released shall be deemed released) to the Plan Investor and its affiliates and each of their respective directors, officers, employees, members, attorneys, financial advisors, accountants, investment bankers, investment advisors, actuaries, professionals, agents and**

representatives, each in their representative capacities as such, and their respective property from any and all causes of action, whether known or unknown, foreseen or unforeseen, liquidated or unliquidated, contingent or non-contingent, existing as of the Effective Date at law or in equity, whether for tort, fraud, contract, violation of federal or state securities laws or otherwise, arising from or related in any way to the Debtors, including, without limitation, those in any way related to the Chapter 11 Cases, this Plan, or the Disclosure Statement; **provided**, **however**, that the foregoing shall not operate to waive or release any cause of action (a) arising from any contractual obligation; (b) expressly set forth in and preserved by the Plan, the Plan Supplement or related documents; (c) arising from Claims for fraud or willful misconduct.

### (3)    *Other Releases*

32.    **Subject to Section 10.11 of the Plan, effective as of the Confirmation Date, but subject to the occurrence of the Effective Date, and in consideration of the services provided to the Debtors by (a) the present and former affiliates, agents, financial advisors, attorneys, and representatives of the Debtors who acted in such capacities after the Commencement Date, (b) the Plan Investor, (c) the Creditors' Committee, (d) the Agents, (e) the Prepetition Revolver Lenders, (f) the Prepetition Term Loan Lenders, and (g) the DIP Lenders, (t) the Debtors, (w) the Reorganized Debtors, (x) each holder of a Claim or Interest that has voted to accept the Plan and has not elected to opt out of the releases provided therein, (y) each holder of a Claim or Interest that is deemed to accept the Plan, and (z) to the fullest extent permissible under applicable law, as such law may be extended or integrated after the Effective Date, each holder of a Claim or Interest that has not voted to accept the Plan and that has not elected to opt out of the releases provided therein, shall release, unconditionally and forever, each present and former affiliate, agent,**

financial advisor, attorney, and representative (and their respective affiliates) of the

Debtors, the Plan Investor, the Creditors' Committee, the Agents, the Prepetition Revolver

Lenders, the Prepetition Term Loan Lenders, the DIP Lenders, and each of their respective

members, officers, directors, agents, financial advisors, attorneys, employees, equity

holders, parent corporations, subsidiaries, partners, affiliates, and representatives from

any and all claims or causes of action that exist as of the Effective Date and arise from or

relate, in any manner, in whole or in part, to the operation of the business of the Debtors,

the subject matter of, or the transaction or event giving rise to, the Claim or Interest of

such holder, the business or contractual arrangements between any Debtor and such

holder, any restructuring of such Claim or Interest prior to the Commencement Date, or

any act, omission, occurrence, or event in any manner related to such subject matter,

transaction, or obligation or arising out of the Chapter 11 Cases, including, but not limited

to, the pursuit of confirmation of the Plan, the consummation thereof, the administration

thereof, or the property to be distributed thereunder; provided, however, that the

foregoing shall not operate as a waiver of or release from any causes of action arising out of

the willful misconduct, gross negligence, intentional fraud, criminal conduct, intentional

unauthorized misuse of confidential information that causes damages, or ultra vires acts of

any such person or Entity.  For the avoidance of the doubt, the claims or causes of actions

released hereunder include those claims and causes of action released under the Final Cash

Collateral Order.

### *(4)    Limitation on Releases*

33.    **Notwithstanding anything to the contrary in the Plan or in the**

**Confirmation Order, the releases set forth in Section 10.8, 10.9, or 10.10 of the Plan shall**

**not effect a release of any claim against a non-Debtor by the United States Government or**

any of its agencies or any state and local authority whatsoever, including without

limitation, any claim arising under the Internal Revenue Code, the environmental laws or

criminal laws of the United States or any state and local authority.  Nothing in

Sections 10.8, 10.9, and 10.10 of the Plan or the Confirmation Order shall enjoin the United

States or any state or local authority from bringing any claim, suit, action, or other

proceeding against a non-Debtor for any liability whatsoever, including, without limitation,

any claim, suit, or action arising under the Internal Revenue Code, the environmental laws

or any criminal laws of the United States or any state or local authority.  Other than as set

forth in Section 10.7 of the Plan, nothing in the Plan or the Confirmation Order shall

exculpate any non-Debtor from any liability to the United States Government or any of its

agencies or any state or local authority whatsoever, including any liabilities arising under

the Internal Revenue Code, the environmental laws or criminal laws of the United States or

any state or local authority.

> 34.    As to the United States, its agencies, departments, or agents (the

"United States"), nothing in the Plan or this Order:  (a) discharges, releases, or precludes

any liability that is not a claim (as that term is defined in the Bankruptcy Code), or any

claim (as that term is defined in the Bankruptcy Code) of the United States that arises on

or after the Confirmation Date; (b) releases the Debtors or Reorganized Debtors from

liability under environmental law as the owner or operator of property that such person

owns or operates after the Confirmation Date; (c) enjoins the United States from asserting

or enforcing, outside this Court, any liability referred to in the preceding two clauses; or

(iv) precludes any valid right of recoupment or setoff that may be allowed under section

553 of the Bankruptcy Code.

35.    Nothing in Section 10.7, 10.8, or 10.9 of the Plan shall (a) be construed to release or exculpate any Entity from intentional fraud, malpractice, criminal conduct, intentional unauthorized misuse of confidential information that causes damages, or <u>ultra vires</u> acts or (b) limit the liability of the professionals of the Debtors, the Reorganized Debtors, or the Creditors' Committee to their respective clients pursuant to DR 6-102 of the Code of Professional Responsibility.

(g)    Exculpation

36.    Notwithstanding anything in the Plan to the contrary, and except with respect to any Claim or Interest of any holder of such Claim or Interest that has elected to opt out of the releases provided in the Plan, as of the Effective Date, none of the Debtors, the Reorganized Debtors, the Plan Investor, the Creditors' Committee, the Agents, the Prepetition Revolver Lenders, the Prepetition Term Loan Lenders, the DIP Lenders, and their respective advisors, investment bankers, or attorneys (solely in their capacities as such) shall have or incur any liability for any claim, cause of action, or other assertion of liability for any act taken or omitted to be taken since the Commencement Date in connection with, or arising out of, the Chapter 11 Cases, the formulation, dissemination, or confirmation of the Plan, property to be distributed under the Plan, or any other act or omission in connection with the Chapter 11 Cases, the Plan, the Disclosure Statement or any contract, instrument, document, or other agreement related thereto; <u>provided</u>, <u>however</u>, that the foregoing shall not affect the liability of any person that would otherwise result from any such act or omission to the extent such act or omission is determined by a Final Order to have constituted willful misconduct, gross negligence, intentional fraud, criminal conduct, intentional unauthorized misuse of confidential information that causes damages, or <u>ultra vires</u> act.

(h)        **Reservation of Avoidance Actions**

37.        Other than any releases granted in the Plan, by this Order, or  by Final

Order of the Bankruptcy Court, from and after the Effective Date, the Reorganized Debtors shall

have the sole right to prosecute any and all avoidance actions, equitable subordination actions, or

recovery actions under sections 105, 502(d), 510, 542 through 551, and 553 of the Bankruptcy

Code that belong to the Debtors or Debtors in Possession.

38.        Except as provided in Section 10.8, 10.9, or 10.10 of the Plan, nothing

contained in the Plan or this Order shall be deemed to be a waiver or relinquishment of any rights

or causes of action that the Debtors or the Reorganized Debtors may have or that the Debtors or

the Reorganized Debtors may choose to assert on behalf of their respective estates under any

provision of the Bankruptcy Code or any applicable nonbankruptcy law, including, without

limitation, (a) any and all Claims against any Entity, to the extent such Entity asserts a cross

claim, a counterclaim, and/or a Claim for setoff that seeks affirmative relief against the Debtors,

the Reorganized Debtors, their officers, directors, or representatives and (b) the turnover of any

property of the Debtors' estates.

39.        Except as provided in Section 10.8, 10.9, or 10.10 of the Plan, nothing

contained in the Plan or this Order shall be deemed to be a waiver or relinquishment of any

claim, cause of action, right of setoff, or other legal or equitable defense that the Debtors had

immediately prior to the Commencement Date, against or with respect to any Claim left

unimpaired by the Plan.  The rights of setoff, and other legal or equitable defenses that the

Debtors had immediately prior to the Commencement Date as fully as if the Chapter 11 Cases

had not been commenced, and all of the Reorganized Debtors' legal and equitable rights

respecting any Claim that is left unimpaired by the Plan may be asserted after the Confirmation

Date to the same extent as if the Chapter 11 Cases had not been commenced.

**(i)      Effect of Confirmation on CapitalSource Secured Claims and CSE Secured Claims**

40.      Notwithstanding anything to the contrary in the Plan or this Order, the CapitalSource Secured Claims and the CSE Secured Claims, which arose under the Prepetition Credit Agreement and the Prepetition Loan Agreement, respectively, shall (i) survive as amended by the Amended and Restated Secured Credit Agreement and the Amended and Restated Secured Loan Agreement, respectively, and the related loan documents, (ii) retain Liens in the same priority as existed prior to the Commencement Date, without making any additional or amended filings or recordings of any kind (including, without limitation, financing statements filed under the Uniform Commercial Code, mortgages or other filings with respect to real or personal property of any nature) to create or perfect any such Liens, and (iii) be paid pursuant to the terms of the Amended and Restated Secured Credit Agreement and the Amended and Restated Secured Loan Agreement and the related documents, as applicable. All financing statements, mortgages and other filings or recordings previously made to perfect the Liens granted under, in furtherance of or in connection with the Prepetition Credit Agreement and the Prepetition Loan Agreement are valid and shall remain in full force and effect on and after the date hereof. The Amended and Restated Secured Credit Agreement and the Amended and Restated Secured Loan Agreement expressly supersede the Prepetition Credit Agreement and the Prepetition Loan Agreement, respectively.

**VI.    Other Provisions**

**(a)      Payment of Statutory Fees**

41.      Pursuant to Section 13.5 of the Plan, on the Effective Date, and thereafter as may be required, the Debtors shall pay all fees payable pursuant to section 1930 of chapter 123 of title 28 of the United States Code.

(b)        **Exemption from Securities Law**

42.        To the maximum extent provided by section 1145 of the Bankruptcy Code and applicable non-bankruptcy law, the offer and issuance of securities under the Plan, including without limitation, the New LPC Common Stock, shall be exempt from registration under the Securities Act of 1933, as amended, and all rules and regulations promulgated thereunder, and under applicable state securities laws.

(c)        **Exemption from Transfer Taxes**

43.        Pursuant to section 1146(a) of the Bankruptcy Code, the issuance, transfer, or exchange of notes or equity securities under the Plan, the creation of any mortgage, deed of trust, or other security interest, the making or assignment of any lease or sublease, the occurrence of any intercompany or other Restructuring Transactions, or the making or delivery of any deed or other instrument of transfer under, in furtherance of, or in connection with the Plan, including, without limitation, the New LPC Common Stock, the Stock Purchase Agreement, the Amended and Restated Secured CapitalSource Credit Agreement, the Amended and Restated Secured CSE Loan Agreement, any merger agreement or agreement of consolidation, deed, bill of sale, or assignment executed in connection with any of the transactions contemplated under the Plan, or any modifications or amendments of any of the foregoing, shall not be subject to any stamp, real estate transfer, mortgage recording, sales or use, or other similar tax.

44.        Each and every federal, state, and local government agency is hereby directed to accept any and all documents and instruments necessary, useful, or appropriate (including Uniform Commercial Code financing statements) to effectuate, implement, and consummate the transactions contemplated by the Plan Documents and this Order without payment of any stamp, real estate transfer, mortgage recording, sales or use, or other similar tax.

45.     All sale transactions consummated by the Debtors and approved by the

Court on and after the Commencement Date through and including the Effective Date, including,

without limitation, the transfers effectuated under the Plan Documents, the sale by the Debtors of

property pursuant to section 363(b) of the Bankruptcy Code, and the assumption, assignment,

and sale by the Debtors of any unexpired leases or executory contracts pursuant to section 365(a)

of the Bankruptcy Code shall be deemed to have been made under, in furtherance of, or in

connection with the Plan and, consequently, shall not be subject to any stamp, real estate

transfer, mortgage recording, sales or use, or other similar tax.

**(d)     Conditions to the Effective Date**

46.     The Plan shall not become effective unless and until the conditions

precedent set forth in Section 11.1 of the Plan have been satisfied or waived.

47.     In the event the conditions precedent specified in Section 11.1 of the Plan

have not been satisfied or waived pursuant to Section 11.2 of the Plan on or prior to the **90th day**

after this Order becomes a Final Order, then, upon the Debtors' or Agents' motion and after

notice and a hearing, this Order may be vacated and, as a result (a) no distributions under the

Plan will be made, (b) the Debtors and all holders of Claims and Interests will be restored to the

status quo ante as occurred, and (c) all of the Debtors' obligations with respect to the Claims and

Interests will remain unchanged and nothing contained herein will be deemed to constitute a

waiver or release of any claims by or against the Debtors or any other Entity or to prejudice in

any manner the rights of the Debtors or any other Entity in any further proceedings involving the

Debtors.

**(e)     Substantial Consummation**

48.     On the Effective Date, the Plan shall be deemed to be substantially

consummated under sections 1101 and 1127(b) of the Bankruptcy Code.

**(f)      Right to Revoke Plan**

49.      The Debtors may revoke or withdraw the Plan prior to the Effective Date. If the Debtors take such action, the Plan shall be deemed null and void.  In such event, nothing contained in the Plan shall constitute or be deemed a waiver or release of any Claims against or Interests in the Debtors, or any claims or rights of the Debtors against any other person, or prejudice in any manner the rights of the Debtors or any other person in any further proceedings involving the Debtors.

**(g)      Dissolution of Statutory Committee**

50.      On the Effective Date, the Creditors' Committee shall be dissolved and the members thereof shall be released and discharged of and from all further authority, duties, responsibilities, and obligations relating to and arising from and in connection with the Chapter 11 Cases, and the retention or employment of the Creditors' Committee's professionals, including without limitation, attorneys, financial advisors, accountants, and other agents, if any, shall terminate other than for purposes of filing and prosecuting applications for final allowances of compensation for professional services rendered and reimbursement of expenses incurred in connection therewith.

**(h)      Compensation and Reimbursement of Administrative Expenses**

51.      The deadline to file applications for final allowance of compensation for services rendered or reimbursement of expenses incurred through and including the Confirmation Date under sections 328 and 330 of the Bankruptcy Code or applications for allowance of Administrative Expense Claims arising under sections 330, 331, 503(b)(2), 503(b)(3), 503(b)(4), or 503(b)(5) of the Bankruptcy Code shall be **sixty (60) days** after the Effective Date.

**(i)**      **Return of Utility Security Depositss**

52.      To the extent a utility received a security deposit pursuant to section 366 of the Bankruptcy Code, the utility shall return the security deposit to the applicable Reorganized Debtor by check or wire transfer within twenty-eight (28) days after the date of this Order.

**(j)**      **Governing Law**

53.      Except to the extent that the Bankruptcy Code or other federal law is applicable, or to the extent that a Plan Document provides otherwise, the rights, duties, and obligations arising under the Plan and the Plan Documents shall be governed by, and construed and enforced in accordance with, the laws of the State of New York, without giving effect to the principles of conflicts of laws thereof.

**(k)**      **Retention of Jurisdiction**

54.      Pursuant to sections 105(a) and 1142 of the Bankruptcy Code, the Court shall retain and shall have exclusive jurisdiction over any matter (a) arising in or related to, the Chapter 11 Cases or the Plan or (b) that relates to the matters set forth in Article XII of the Plan.

**(l)**      **Appeal of the Confirmation Order**

55.      Except as otherwise provided in this Order, if any or all of the provisions of this Order are hereafter reversed, modified, vacated, or stayed by subsequent order of this Court or any other court, such reversal, stay, modification, or vacatur shall not affect the validity or enforceability of any act, obligation, indebtedness, liability, priority, or lien incurred or undertaken by the Debtors or Reorganized Debtors, as applicable, prior to the effective date of such reversal, stay, modification, or vacatur.  Notwithstanding any such reversal, stay, modification, or vacatur of this Order, any such act or obligation incurred or undertaken pursuant to, or in reliance on, this Order prior to the effective date of such reversal, stay, modification, or

vacatur shall be governed in all respects by the provisions of this Order and the Plan or any amendments or modifications thereto.

**(m)    Notice of Confirmation and Effective Date**

56.    The form of notice of entry of this Order and the occurrence of the Effective Date attached hereto as Exhibit "B" (the "**Notice of Confirmation/Effective Date**") is **APPROVED**.  On or before the **fourteenth (14th) day** following the occurrence of the Effective Date, the Debtors shall file with the Court and serve the Notice of Confirmation/Effective Date on the following parties by first class mail, postage-prepaid:

(A)    all creditors and interest holders of the Debtors;

(B)    all contract and lease counterparties affected hereby;

(C)    the U.S. Trustee;

(D)    counsel to the Creditors' Committee;

(E)    counsel to the Plan Investor;

(F)    all professionals retained in the Chapter 11 Cases; and

(G)    any other party requesting service in the Chapter 11 Cases.

**(n)    Failure to Specify a Plan Provision**

57.    The failure specifically to include any particular provision of the Plan in this Order shall not diminish or impair the efficacy of such provision, it being understood that it is the intent of this Court that the Plan be confirmed and approved in its entirety.

**(o)    Inconsistencies**

58.    In the event of any inconsistency between the Plan or the Plan Documents and this Order, this Order shall govern.

**(p)    Waiver of 14-Day Stay**

59.    Pursuant to Bankruptcy Rule 3020, the automatic fourteen (14) day stay of

this Order is **WAIVED**.  This Order shall be **EFFECTIVE IMMEDIATELY** upon entry.

Dated: July 21, 2010
New York, New York

/s/Shelley C. Chapman
HONORABLE SHELLEY C. CHAPMAN
UNITED STATES BANKRUPTCY JUDGE

## <u>EXHIBIT A</u>

**THE PLAN**
(Blacklined to May 26, 2010 Solicitation Version)

## <u>EXHIBIT B</u>

**FORM OF NOTICE OF CONFIRMATION/EFFECTIVE DATE**