UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------x
In re:

LEXINGTON PRECISION CORP, et al.,

                       Debtors.

-----------------------------------------------------------x

Chapter 11
Case No. 08-11153 (SCC)

## SIXTH AND FINAL APPLICATION OF W.Y. CAMPBELL & COMPANY FOR COMPENSATION AND REIMBURSEMENT OF EXPENSES

| | |
|---|---|
| Name of Applicant: | W.Y. Campbell & Company |
| Authorized to Provide Professional Services to: | Lexington Precision Corporation and Lexington Rubber Group |
| Date of Retention: | May 28, 2008 (effective April 1, 2008) |
| Period for which compensation and reimbursement are sought: | November 30, 2009 through July 30, 2010 |
| Amount of Compensation Sought as Actual, Reasonable, and Necessary: | $1,400,000 |
| Amount of Expense Reimbursement Sought as Actual, Reasonable and Necessary: | $71,993.86 |
| Aggregate Amounts Paid to Date: | $849,255.75 (fees)<br>$71,993.86 (expenses) |
| Amount of Existing Holdback Requested: | $140,744.25 |
| This is a: | Final Application |

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x
In re:

LEXINGTON PRECISION CORP, et al.,

Debtors.
------------------------------------------------------------x

Chapter 11
Case No. 08-11153 (SCC)

### SIXTH AND FINAL APPLICATION OF W.Y. CAMPBELL & COMPANY FOR COMPENSATION AND REIMBURSEMENT OF EXPENSES

**TO:    HONORABLE SHELLEY C. CHAPMAN
            UNITED STATES BANKRUPTCY JUDGE**

W.Y. Campbell & Company ("WYCC"), as financial advisor and investment banker for Lexington Precision Corp. and Lexington Rubber Group, Inc. (collectively, "Lexington," the "Company," or the "Debtors"), as debtors and debtors-in-possession in the above captioned cases (the "Reorganization Cases"), submits this Sixth and Final Application (the "Application") seeking interim allowance and payment of compensation for the period from November 30, 2009 through July 30, 2010 under (i) 11 U.S.C. § 330; (ii) Rules 2014 and 2016 of the Federal Rules of Bankruptcy Procedure; (iii) Administrative Order M-150, Amended Guidelines for Fees and Disbursements for Professionals in Southern District of New York Bankruptcy Case; (iv) the Order of this Court dated April 22, 2008 establishing procedures for interim monthly compensation and reimbursement of expenses of professionals; and (v) the Order of this Court, dated May 28, 2008, authorizing retention of WYCC as Financial Advisor for the Debtors, *nunc pro tunc* to April 1, 2008 (**Ex. A**, the "Retention Order").

As more fully described below, W.Y. Campbell submits this Application for allowance of compensation for professional services as financial advisor and investment banker rendered by WYCC to the Debtors. WYCC certifies that the Debtors and their reorganization counsel have received a copy of this Application and that a copy has been served on the office of the U.S.

1

Trustee and Counsel for the Official Committee of Unsecured Creditors. In support of this Application, WYCC respectfully represents as follows:

**Preliminary Statement**

1. This Application is filed in accordance with the terms of the Retention Order. Under the terms and conditions of the Retention Order, WYCC is entitled to compensation as a result of its efforts as investment banker and financial advisor for Debtors. Specifically, WYCC is entitled to the following remaining amounts due to be paid: (i) 140,744.25 held back from its monthly invoices throughout the course of its Retention; and (ii) a $410,000 "Exit Fee," as set out in the letter agreement dated April 1, 2008, due upon Debtors successful exit from Chapter 11. (**Ex. B**, the "Engagement Letter".)

**Background**

2. On April 1, 2008 (the "Petition Date"), each of the Debtors filed voluntary petitions in this Court for reorganization relief under chapter 11 of title 11 of the United States Code. The Debtors continued to operate their business and manage their properties as debtors-in-possession pursuant to sections 1107(b) and 1108 of the Bankruptcy Code. The Debtors' chapter 11 cases have been consolidated for procedural purposes and are being jointly administered pursuant to Rule 1015(b) of the Federal Rules of Bankruptcy Procedures.

3. On April 22, 2008, this Court entered its fee order establishing procedures for interim monthly compensation and reimbursement of expenses of professionals.

4. On July 21, 2010, this Court entered its Order Confirming Debtors' Fourth Amended Joint Plan of Reorganization Under Chapter 11 of the Bankruptcy Code, As Modified (Docket No. 975, the "Confirmation Order").

5. Pursuant to Debtors' Notice of (A) Entry of An Order Confirming the Debtors' Fourth Amended Joint Plan of Reorganization Under Chapter 11 of the Bankruptcy Code, as Modified, and (B) Occurrence of the Effective Date, the Effective Date of the Plan, as confirmed by the Court, was July 30, 2010 (Docket No. 983). Moreover, that Notice required that all final fee applications must be filed on or before September 28, 2010.

**Retention of WYCC**

6. Through the Engagement Letter, the Debtors retained WYCC as final advisors and investment banker to the Debtors in connection with these chapter 11 cases.

7. WYCC refers this Court to the Engagement Letter for a full recitation of its terms. In summary, Debtors retained WYCC to:

  a. identify, review, evaluate, and initiate potential financing, or other transactions;

  b. to the extent WYCC deems necessary, appropriate, and feasible, or as the Company may request, review and analyze the assets and the operating and financial strategies of the Company;

  c. assist in the definition of objectives related to value and terms of financing or an alternative transaction;

  d. assist in identification of the Company's proprietary attributes;

  e. assist in the identification and solicitation of appropriate financing or transaction parties;

  f. prepare and distribute confidentiality agreements and appropriate descriptive materials (to include placement or offering memorandum, management presentations, and other documentation as may be required or appropriate);

  g. initiate discussions and negotiations with prospective financing or transaction parties;

  h. assist the Company and its other professionals in reviewing and evaluating the terms of any proposed financing or other transaction, in responding thereto, and if directed, in developing and evaluating alternative proposals for a financing or other transaction;

3

  i. review and analyze any proposals the Company receives from third parties in connection with a financing, or other transaction;

  j. assist or participate in negotiations with the parties in interest in connection with a financing, or other transaction;

  k. advise and attend meetings of the Company's Board of Directors, creditor groups, official constituencies and other interested parties, as the Company determines to be necessary or desirable;

  l. if requested, participate in hearings before the United States Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court") or such district or other bankruptcy courts as the Company may request and provide relevant testimony with respect to the matters described herein and issues arising with respect thereto in connection with any proposed chapter 11 plan;

  m. assist the Debtors' internal and external counsel to enable counsel to provide legal advice to the Company; and

  n. render such other financial advisory and investment banking services as may be reasonably requested by the Company in connection with any of the foregoing.

  8. Throughout its engagement with Debtors, WYCC has engaged senior-level professionals with extensive experience in the area of investment banking and bankruptcy. Beginning in May, 2009, the Debtors and WYCC engaged in an extensive marketing process of the Debtors and their operations, seeking an investor to assist the Debtors in exiting their Chapter 11 cases. As part of the marketing process, WYCC contacted a total of 125 potential investors. Of this total, 69 signed non-disclosure agreements and were provided preliminary information on the Debtors and their operations. After further discussions and review of the preliminary information packages, 20 potential investors attended management presentations at which they were provided additional information regarding the Debtors along with the opportunity to meet senior management. At the conclusion of these management presentations, nine parties expressed interest in visiting the Debtor's facilities located in Rock Hill, South Carolina, Jasper, Georgia and Rochester, New York. In addition, these parties were provided access to an online data room

4

that contained financial, operational, environmental and other information necessary for potential investors to conduct confirmatory due diligence.

9. Despite the highly challenging economic environment, WYCC was able to generate strong interest in a transaction involving the Debtors and their operations. Following the management presentations and facility tours, WYCC received proposals from eight parties. Following additional rounds of negotiations with the bidding parties, the Debtors and WYCC determined that the final proposal submitted by the Plan Investor represented the highest and best value for the Debtors.

## Compensation

10. Pursuant to the Engagement letter and as more fully set forth in the Retention Order, in consideration for the services provided to the Debtors, the Debtors have agreed to pay WYCC the following amounts, pursuant to Section 328 of the Bankruptcy Code and subject to the final approval of the Bankruptcy Court:

    a. Commencing as of the effective date of the Engagement Letter, a cash advisory fee (the "Monthly Fee") of $50,000 per month payable by the Company in advance on the first day of each month, which in the aggregate shall not under any circumstance be less than $500,000;

    b. A fee (the "Exit Fee") of $650,000 shall be due and payable in cash upon the Company's successful exit from Chapter 11.

    c. WYCC shall credit against the Exit Fee 100% of any Monthly Fees indefeasibly paid in respect of the period from April 1, 2008 through August 31, 2008.

11. Pursuant to the Engagement Letter and the Retention Order, the Debtors will reimburse WYCC for its reasonable out-of-pocket expenses incurred in connection with the provision of services under the Engagement Letter, including, without limitation, the reasonable fees, disbursements and other charges of WYCC's outside counsel. Out-of-pocket expense

5

includes expenses incurred in connection with travel and lodging, data processing and communication charges, database, research, postage and courier services.

12. WYCC has submitted monthly statements of fees and disbursements covering the period for December 1, 2009 through June 30, 2010. For the months of December 2009 and January 2010, WYCC submitted two statements of fees and disbursements each in the amount of $50,000 for its Monthly Fee. WYCC had no expenses for that time period. For each of the months February, March, and April, WYCC submitted statements of fees and disbursements each in the amount of $20,000 for its Monthly Fee. For this time period, WYCC voluntarily reduced its Monthly Fee at the request of Debtors and had no expenses. For the months May and June, WYCC waived its Monthly Fee and only sought expenses in the amount of $927 for its legal fees.

13. WYCC's monthly statements have been paid with the exception of the Debtors' holdback of $10,000 for each month of December 2009 and January 2010, and a $4,000 holdback for each month of February 2010 through April 2010.

14. Pursuant to this Court's November 6, 2008 Order Allowing Interim Compensation for Professional Services Rendered and Reimbursement of Actual and Necessary Expenses Incurred, the Court approved $190,000 of WYCC's $200,000 fee request, and directed the Debtors to hold-back $10,000.

15. Pursuant to this Court's April 7, 2009 Order Allowing Interim Compensation for the Period of August 1, 2008 through November 30, 2008 for Professional Services Rendered and Reimbursement of Actual and Necessary Expenses Incurred, the Court approved $200,000 of WYCC's $200,000 fee request, and directed the Debtors to hold back $20,000.

GMD/692398.1/059426

16.  Therefore, for the period April 1, 2008 through August 30, 2008, less the holdbacks directed by the Court, WYCC received $240,000 in compensation. Since Debtors successfully emerged from Chapter 11, pursuant to this Court's Confirmation Order, WYCC has earned its Exit Fee of $650,000 – less the $240,000 already paid to it for the period of April 1, 2008 through August 30, 2008 – or $410,000.

17.  From each of WYCC's monthly statements, Debtors have held back a total of $142,000. Debtors have also indicated that they are entitled to a Credit from the Third Interim Payment Order of $1,255.75, which WYCC does not contest. Therefore, in total, Debtors have held back $140,744.25 in compensation earned by and due to WYCC.

## Relief Requested

18.  By this Application, WYCC seeks an Order (i) granting allowance and approval of compensation for services rendered during the period April 1, 2008 through and including April 30, 2010 consisting of $990,000 of fees plus the reimbursement of reasonable and necessary expenses incurred by WYCC from April 1, 2008 through June 30, 2010 totaling $71,993.86; (ii) authorizing and directing Debtors to pay WYCC $140,744.25 in compensation held back by Debtors for the period April 1, 2008 through April 30, 2010; and (iii) authorizing and directing Debtors to pay WYCC its Exit Fee of $410,000.

19.  WYCC performed all services for which it seeks compensation and on behalf of the Debtors. WYCC has not entered any agreement for the performance of services by another, unrelated professional for which it now seeks compensation. Likewise, WYCC does not now

GMD/692398.1/059426

seek compensation for services that may have been performed by another professional not employed by WYCC.[1]

### Legal Basis for Requested Compensation

20. WYCC is entitled to receive the fees requested in accordance with the express terms of the Engagement Letter and the provisions of Section 328(a) of the Bankruptcy Code.

21. Moreover, section 330 of the Bankruptcy Code provides for the award of compensation to professionals "subject to" the provisions of Section 328 of the Bankruptcy Code. *See* 11 U.S.C. § 330.

---

[1] In the interests of full disclosure, WYCC is a d/b/a for Comerica Capital Markets Corporation, a subsidiary of Comerica Bank. Andre Augier, one of WYCC's managing partners, signed the April 1, 2008 Engagement Letter on behalf of WYCC. From April 2008 through April 16, 2010, Mr. Augier performed substantial services for Debtors on behalf of WYCC. As of April 16, 2010, Mr. Augier resigned as an employee of WYCC, and WYCC began winding down its affairs. Because Mr. Augier performed critical services associated with WYCC's work for the Debtors, and in order to ensure Mr. Augier would be available, if necessary, to complete work for the Debtors, WYCC and Mr. Augier entered into an agreement that provided, among other things, that Mr. Augier would continue to work, if necessary, on several remaining WYCC matters, including Debtors' cases.

As set forth in this agreement, after April 16, 2010, WYCC was still responsible to provide services to the Debtors in this case. Christopher Scotto DiVetta and Kurt Haras remained at WYCC to oversee, among other things, the conclusion of this engagement with Debtors. The agreement was intended to assist WYCC in its process of winding down in an orderly fashion by ensuring that, in the event it was necessary, Mr. Augier, a critical employee, would be available for a number of WYCC's clients, including Debtors. The agreement provided that Mr. Augier a share in the compensation received by WYCC arising from the payments received from these various clients, including the payments made by Debtors under the Engagement Letter. Specifically, the fee due to WYCC, as part of its wind-down, is to be split 80% to Mr. Augier and 20% to Comerica Bank.

While the agreement contemplated possibly using Mr. Augier to continue to work for WYCC on the Debtors' cases, since WYCC's engagement was largely completed prior to Mr. Augier's departure from WYCC, WYCC's services to Debtors were performed exclusively by WYCC and its employees, including Mr. Haras. Therefore, WYCC is only seeking compensation for services provided by WYCC to the Debtors, and this Application in no way conflicts with the restrictions on fee sharing by professionals set forth in 11 U.S.C. § 504.

8

22. Pursuant to the Retention Order, this Court approved the retention of WYCC under the terms of the Engagement Letter, subject to the standard of review provided in section 328(a).

23. The compensation for services rendered has been earned and is due and payable in full under the terms of the Engagement Letter. WYCC submits that there have been no developments since the entry of the Retention Order that were "not capable of being anticipated" that would justify any modification of WYCC's retention. Thus, WYCC submits that the fees and expense reimbursements sought should be allowed and approved by the Court under sections 328(a) and 330 of the Bankruptcy Code.

24. The amount of fees and expenses sought in this Application and WYCC's billing processes are consistent with market practices for investment banking firms both in and out of a bankruptcy context. In light of the complexity of this case, as well as the corporate and financial structure of Debtors and the level of services rendered by WYCC, WYCC considers the compensation sought to be both fair and reasonable. In addition, it is consistent with the terms of the Engagement Letter. (Annexed hereto as Exhibit "C" are copies of WYCC's invoices and itemized expense reports.)

## Conclusion

25. Based upon the foregoing, Applicant respectfully submits that the services rendered have been efficient, effective and valuable to the Debtors' estates. As previously stated, WYCC seeks an award of fees in the amount of $550,744.25, which amount includes holdback amounts totaling $140,744.25.

GMD/692398.1/059426

WHEREFORE, WYCC respectfully requests that this Court grant the Application and grant such further relief as this Court deems proper.

Dated: Detroit, Michigan
September 28, 2010

          W.Y. Campbell & Company

          By: __s/ Kurt Haras_____
              Kurt Haras, Director
          One Woodward Avenue, 26th Floor
          Detroit, Michigan 48226
          (313) 496-9000

Counsel for W.Y. Campbell & Company:

Adam L. Rosen
Silverman Acampora LLP
100 Jericho Quadrangle
Suite 300
Jericho, New York 11753
(516) 479-6370
(516) 945-6370 (facsimile)

GMD/692398.1/059426