UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------x
In re:

LEXINGTON PRECISION CORP, et al.,

Debtors.
-----------------------------------------------------------x

Chapter 11
Case No. 08-11153 (SCC)

### CERTIFICATION UNDER GUIDELINES FOR FEES AND DISBURSEMENTS IN CONNECTION WITH SIXTH AND FINAL APPLICATION OF W.Y. CAMPBELL & COMPANY FOR COMPENSATION AND REIMBURSEMENT OF EXPENSES

Kurt Haras, Director of W.Y. Campbell & Company ("WYCC"), hereby submits this certification in compliance with the United States Trustee Guidelines for Reviewing Applications for Compensation and Reimbursement of Expenses Filed Under 11 U.S.C. § 330, adopted on January 30, 1996 (the "UST Guidelines"), and Administrative Order M-389, dated November 25, 2009 Re: Amended Guidelines for Fees and Disbursements for Professionals in Southern District of New York Bankruptcy Cases (the "Administrative Order" and, collectively with the UST Guidelines, the "Guidelines").

1. WYCC has served as the financial advisor and investment banker for Lexington Precision Corporation and Lexington Rubber Group, Inc. (collectively, "Lexington," the "Company," or the "Debtors"), as debtors and debtors-in-possession in the above captioned cases (the "Reorganization Cases").

2. On behalf of WYCC, I submit that I have read WYCC's Sixth and Final Application for Compensation and Reimbursement of Expenses dated September 27, 2010 (the "Application"). To the best of my knowledge, information and belief, formed after reasonable inquiry, the Application complies with the mandatory guidelines set forth in the Administrative Order. Moreover, to the best of my knowledge, information and belief, formed after reasonable

1

inquiry, the fees sought within the Application fall within the requirements set forth in the Guidelines.

3. A copy of the Application was provided to Debtors and all other necessary parties at least 14 days prior to the hearing date on the Application.

4. Additionally, this Certification is submitted pursuant to Rule 2016(a) of the Federal Rules of Bankruptcy Procedure in support of the Application.

5. WYCC performed all services for which it seeks compensation and on behalf of the Debtors. WYCC has not entered any agreement for the performance of services by another, unrelated professional for which it now seeks compensation. Likewise, WYCC does not now seek compensation for services that may have been performed by another professional not employed by WYCC.

6. In the interests of full disclosure, WYCC is a d/b/a for Comerica Capital Markets Corporation, a subsidiary of Comerica Bank. Andre Augier, one of WYCC's managing partners, signed the April 1, 2008 Engagement Letter on behalf of WYCC. From April 2008 through April 16, 2010, Mr. Augier performed substantial services for Debtors on behalf of WYCC. As of April 16, 2010, Mr. Augier resigned as an employee of WYCC and WYCC began winding down its affairs. Because Mr. Augier performed critical services associated with WYCC's work for the Debtors, and in order to ensure Mr. Augier would be available, if necessary, to complete work for the Debtors, WYCC and Mr. Augier entered into an agreement that provided, among other things, that Mr. Augier would continue to work, if necessary, on several remaining WYCC matters, including Debtors' cases.

7. As set forth in this agreement, after April 16, 2010, WYCC was still responsible to provide services to the Debtors in this case. Christopher Scotto DiVetta and I remained at

2

WYCC to oversee, among other things, the conclusion of this engagement with Debtors. The agreement was intended to assist WYCC in its process of winding down in an orderly fashion by ensuring that, in the event it was necessary, Mr. Augier, a critical employee, would be available for a number of WYCC's clients, including Debtors. The agreement provided that Mr. Augier a share in the compensation received by WYCC arising from the payments received from these various clients, including the payments made by Debtors under the Engagement Letter. Specifically, the fee due to WYCC, as part of its wind-down, is to be split 80% to Mr. Augier and 20% to Comerica Bank.

8.  For the months of February, March and April, 2010, WYCC agreed, at Debtors' request, to reduce its $50,000 Monthly Fee due under the Engagement Letter to $20,000 per month. WYCC agreed to reduce its Monthly Fees because its services to the Debtors were winding down. From May, 2010 to present, WYCC has waived its Monthly Fees entirely.

9.  While the agreement contemplated possibly using Mr. Augier to continue to work for WYCC on the Debtors' cases, since WYCC's engagement was largely completed prior to Mr. Augier's departure from WYCC, WYCC's services to Debtors were performed exclusively by WYCC and its employees, including me. Therefore, WYCC is only seeking compensation for services provided by WYCC to the Debtors, and this Application in no way conflicts with the restrictions on fee sharing by professionals set forth in 11 U.S.C. § 504.

3

10.    The fees and disbursements sought in the Application are billed at the rates in accordance with the practice customarily employed by Applicant and generally accepted by Applicant's clients in bankruptcy and non-bankruptcy matters.

Dated: Detroit, Michigan
       September 27, 2010

W.Y. Campbell & Company

By: _____
Kurt Haras, Director
One Woodward Avenue, 26th Floor
Detroit, Michigan 48226
(313) 496-9000