ANDREWS KURTH LLP
Paul N. Silverstein (PS 5098)
Jonathan I. Levine (JL 9674)
Jeremy B. Reckmeyer (JR 7536)
450 Lexington Avenue, 15th Floor
New York, New York 10017
Telephone: (212) 850-2800
Facsimile: (212) 850-2929

*Counsel to the Official
Committee of Unsecured Creditors*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-------------------------------------------------------------x
In re:                                     :    Chapter 11
                                           :
**LEXINGTON PRECISION CORP., et al.,**     :    Case No. 08-11153 (SCC)
                                           :
                                           :
                   Debtors.                :
-------------------------------------------------------------x

**OFFICIAL COMMITTEE OF UNSECURED CREDITORS'**
**RESPONSE TO DEBTORS' LIMITED OBJECTION TO THE**
**FINAL FEE APPLICATION OF ANDREWS KURTH LLP**

TO:    THE HONORABLE SHELLEY CHAPMAN,
       UNITED STATES BANKRUPTCY JUDGE

The Official Committee of Unsecured Creditors (the "Committee") of Lexington Precision Corporation ("Lexington Precision") and Lexington Rubber Group, Inc. ("Lexington Rubber" and, together with Lexington Precision, the "Debtors") for its Response (this "Response") to Debtors' Limited Objection (the "Objection") to the Final Application of Andrews Kurth LLP Under 11 U.S.C. § 330 for Allowance of Compensation and Reimbursement of Expenses as Counsel to the Official Committee of Unsecured Creditors (the "Final Application"), respectfully represents:

1.    The Committee files this Response to address, among other things, the inaccurate "revisionist" history of these chapter 11 cases (these "Cases") set forth in the Debtors' Objection.

NYC:219912.4

While purporting to take the "high road,"[1] the Debtors instead have filed an unnecessary and inflammatory pleading that distorts the facts and ignores the law. Moreover, as to the specific issues in dispute, rather than citing to any legal authority - - as the Debtors appear to acknowledge that it is well settled law that court approval is not required prior to retention of an expert witness[2] - - the Debtors have blatantly misstated the procedural record here in what appears to be an attempt to suggest to this Court that the Committee is somehow the "bad guy" here. Nothing could be further from the truth.[3]

2. It was clear from the outset that the focal point of these Cases would be the valuation of the Debtors' enterprise. Rather than working with the Committee and its advisors to determine a proper valuation, however, the Debtors embarked on a "sham" plan proposal process - - marked by repeated efforts to extend exclusivity without "cause"[4] and the filing of several patently unconfirmable plans of reorganization - - and engaged in the "scorched-earth" litigation tactics of which the Debtors disingenuously accuse the Committee. Among other things, the Debtors: (i) repeatedly scheduled, and then adjourned, disclosure statement hearings for plans of reorganization the Debtors knew (or should have known) were patently unconfirmable, as they did not have the requisite exit financing in place, (ii) "slow-rolled" the discovery process while, at the same time, disingenuously maintaining to this Court that they were engaging in good-faith

---

[1] See Objection, paragraph 2 ("Rather than continue the contentiousness that marked the chapter 11 case by prosecuting a full objection to the Andrews Kurth fee application, the Debtors instead file this Limited Objection to one major disbursement which appears on its face to have been unnecessary and duplicative of other services provided to the Committee.").

[2] See Official Committee of Unsecured Creditors' Memorandum in Support of Final Fee Application of Andrews Kurth LLP Under 11 U.S.C. § 330 for Allowance of Compensation and Reimbursement of Expenses as Counsel to the Official Committee of Unsecured Creditors (the "Fee Application Brief"), filed on September 28, 2010 [Docket No. 1011].

[3] As the Debtors concede, these Cases have been highlighted by significant litigation and an adversarial relationship between the Debtors, on the one hand, and the Committee and Capital Source, the principal secured lender, on the other hand. (The Committee was hopeful that any such "acrimony" had ceased upon the confirmation of the Debtors' plan of reorganization in July 2010. Unfortunately, that does not appear to be the case.)

NYC:219912.4

negotiations with the Committee and other creditors, and (iii) in what can only be described as a "Hail Mary pass,"[5] sought recusal of Judge Glenn on the eve of a disclosure statement hearing for the Committee's plan of reorganization, which the Debtors knew was confirmable. All of this was done for the sole purpose of continuing to entrench Debtors' management. Central to the Debtors' shenanigans was their contention throughout these Cases that the Debtors were not insolvent and, hence, the Debtors owed no fiduciary duties to their creditors! Such contention was false, as the Committee continually asserted. The Debtors' actions throughout these Cases - - up to and including the filing of the Objection - - wasted significant time and resources of the Debtors' estates, the Committee and its professionals, all of which resulted in a smaller recovery for the Debtors' creditors. This Court should see the Debtors' tactics for what they are.

3.   More than two months following the commencement of these Cases, the Debtors filed their first proposed plan of reorganization (the "Initial Debtor Plan"). The Initial Debtor Plan was substantially similar to a pre-petition restructuring proposal made by the Debtors to a pre-petition committee of holders of the vast bulk of Lexington Precision's 12% Senior Subordinated Notes (the "12% Notes"), which was represented by the undersigned, and was based on a materially overstated valuation of the Debtors. The Initial Debtor Plan was predicated on a purported exit financing by Capital One Leveraged Finance Corporation ("Capital One"). Notably, however, the Initial Debtor Plan did not contain a commitment to lend by Capital One; but, rather, was filed solely in the "hope" that the Debtors could convince Capital One to provide funding. On August 8, 2008, the Debtors filed their proposed Amended

---

[4] Ultimately, with respect to exclusivity, this Court granted a very limited exclusivity "window" for the Debtors to put together a viable plan of reorganization. The Debtors were not able to do so and, therefore, exclusivity was terminated - - it did not lapse by choice.

[5] "[A] long forward pass in football, esp. as a last-ditch attempt at the end of a game, where completion is considered unlikely." See http://dictionary.reference.com/browse/hail+mary+pass (October 26, 2010).

- 3 -

Joint Plan of Reorganization (the "Second Debtor Plan").  Like the Initial Debtor Plan, the Second Debtor Plan relied upon exit financing to be provided by Capital One.  Also like the Initial Debtor Plan, however, the Second Debtor Plan contained no commitment by Capital One to lend.  In December 2008, the Debtors filed yet another proposed plan of reorganization (the "Third Debtor Plan") that assumed that the Debtors would receive exit financing from Capital One. Again the Debtors' plan *did not contain any commitment by Capital One to provide such funding*.  Indeed, as would later become evident through discovery and other means, notwithstanding that the purported Capital One exit financing was the underlying foundation for the Debtors' first three proposed plans of reorganization, at no point did Capital One ever commit to provide exit financing to the Debtors.

4.  In preparation for a contested confirmation hearing with respect to the Third Debtor Plan, Andrews Kurth retained Pluris Valuation Advisors, LLC ("Pluris").  Pluris was retained for the purpose of providing expert testimony with respect to the fair market value of preferred stock the Debtors proposed to issue to creditors under the Third Debtor Plan.  The Committee made the judgment to retain Pluris because Pluris was specifically and extensively qualified to provide such testimony.  It was the Committee's professionals' judgment that Pluris was far better qualified to testify on such matters than Stout Risius Ross, Inc. ("SRR"), which had been retained as the Committee's financial advisor in these Cases.

5.  While the Debtors were proposing these patently unconfirmable plans of reorganization, the Debtors were, at the same time, seeking to extend exclusivity in an attempt to "wait out" the economic crisis that arose in mid-2008.  Continuing the charade that the Debtors were solvent and that management owed no fiduciary duties to creditors, the Debtors filed three motions seeking to extend exclusivity, the last of which was filed in January 2009.  At the

- 4 -

NYC:219912.4

hearing on the third motion, this Court admonished the Debtors and gave them "one last chance" at negotiating a confirmable plan of reorganization with the Debtors' creditor constituencies. Not surprisingly, the exclusivity period expired without the Debtors negotiating a consensual deal with the Committee and the Debtors' other creditors - - the Debtors did not merely let exclusivity lapse as they suggest.  The Debtors woefully failed in their efforts to negotiate a consensual deal with their creditors - - because the centerpiece of all such negotiations from the Debtors' side was that existing management retain ownership in, control of, and enter into consulting agreements with, the Debtors.

6. In the fall of 2009, the Debtors' prepetition secured lenders (the "Secured Lenders") filed a plan of reorganization (the "Initial Lender Plan") that would have liquidated the Debtors, with the proceeds to go to the Secured Lenders.  In response, the Committee filed its own plan (the "Committee Plan") that provided for a recovery to the Debtors' general unsecured creditors, fully paid the Secured Lenders and replaced Debtors' management. Rather than joining with the Committee to oppose the Initial Lender Plan and promote the Committee Plan - - which would have been in the best interests of the Debtors' creditors and would have allowed the Debtors to emerge from these Cases in the fall of 2009 - - the Debtors took a dramatic shot. On October 1, 2009, five days before the scheduled hearing to consider the proposed disclosure statements for the Committee Plan and the Initial Lender Plan, the Debtors requested a conference with this Court.  At such conference, held on October 2, 2009, with the transparent goal of delaying these Cases and prejudicing the Committee's efforts to proceed with the Committee Plan, the Debtors moved for Judge Glenn to recuse himself (the "Recusal Motion") because of a purported "conflict."  On October 5, 2009, Judge Glenn recused himself and these Cases were transferred to Judge Lifland.

7.  In spring 2010, Jefferies High Yield, LLC ("Jefferies"), a member of, and Chairperson of, the Committee, successfully identified a plan investor - - Aurora Resurgence Management Partners LLC ("Aurora") - - that was interested in acquiring the Debtors. In furtherance thereof, Aurora agreed to purchase all of the outstanding 12% Notes for sixty-five cents ($0.65) on the dollar, in cash. These efforts led directly to the plan of reorganization that was recently confirmed by this Court.

8.  At its core, the Objection is a transparent attempt by the Debtors (and their management) to continue what they refer to as a "contentious relationship" with the Committee and its counsel. Although the Debtors contend that SRR could have, and should have, performed the services that Pluris provided, Pluris' services were not duplicative of SRR's and were incurred as necessary expenses in connection with the Third Debtor Plan confirmation hearing - - a hearing which, in the end, never took place (because the Debtors knew that the Third Debtor Plan was patently unconfirmable). As set forth in the Fee Application Brief, retention of Pluris by Andrews Kurth was squarely within Andrews Kurth's purview as counsel to the Committee and was squarely in the best interests of the Committee's constituents. As set forth in the Committee's prior submissions, case law is clear that court approval is not required to retain witnesses, such as Pluris, to provide expert testimony - - here, as to the fair market and likely trading value of preferred stock that the Debtors sought to foist upon unsecured creditors in exchange for their allowed claims.

- 7 -

WHEREFORE, the Committee respectfully requests that this Court (i) overrule the Objection and (ii) grant such other and further relief as this Court may deem just and proper.

Dated: New York, New York
October 26, 2010

ANDREWS KURTH LLP

By: /s/ Paul N. Silverstein
Paul N. Silverstein (PS 5098)
Jonathan I. Levine (JL 9674)
Jeremy B. Reckmeyer (JR 7536)
450 Lexington Avenue
New York, New York 10017
Telephone: (212) 850-2800
Facsimile: (212) 850- 2929

*Counsel to the Official
Committee of Unsecured Creditors*