**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

----------------------------------------------------------------x

| | | |
|---|---|---|
| In re | : | **Chapter 11 Case No.** |
| | : | |
| **LEXINGTON PRECISION CORP., et al.,** | : | **08- 11153 (SCC)** |
| | : | |
| **Reorganized Debtors.** | : | **(Jointly Administered)** |
| | : | |

----------------------------------------------------------------x

## <u>AFFIDAVIT OF SERVICE</u>

STATE OF NEW YORK      )
                                          ) ss.:
COUNTY OF NEW YORK   )

PETE CARIS, being duly sworn, deposes and says:

1.    I am employed by Epiq Bankruptcy Solutions, LLC, located at 757 Third Avenue, New York, New York 10017.  I am over the age of eighteen years and am not a party to the above-captioned action.

2.    On February 3, 2011, I caused to be served the:

   a.   "Debtors' Second Set of Interrogatories to Lorraine Cerimele," dated February 3, 2011, a sample of which is annexed hereto as <u>Exhibit A</u>,

   b.   "Debtors' Request for Production of Document Served on Claimant, Lorraine Cerimele," dated February 3, 2011, a sample of which is annexed hereto as <u>Exhibit B</u>, and

   c.   "Defendants' Second Requests for Admissions Served on Claimant, Lorraine Cerimele," dated February 3, 2011, a sample of which is annexed hereto as <u>Exhibit C</u>,

by causing true and correct copies to be enclosed securely in a separate postage pre-paid envelope and delivered via overnight mail to Frank R. Bodor, 157 Porter Street NE, Warren, Ohio 44483.

3.  All envelopes utilized in the service of the foregoing contained the following legend:
    "LEGAL DOCUMENTS ENCLOSED. PLEASE DIRECT TO ATTENTION OF
    ADDRESSEE, PRESIDENT OR LEGAL DEPARTMENT."

Pete Caris

Sworn to before me this
4th day of February, 2011

Notary Public

ELENI G KOSSIVAS
NOTARY PUBLIC STATE OF NEW YORK
NEW YORK COUNTY
LIC. #01KO6222093
COMM. EXP. MAY 17, 2014

T:\Clients\LPC\Affidavits\US Active Requests for Lorraine Cerimele_AFF_2-3-11.doc

**EXHIBIT A**

WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007
Richard P. Krasnow
Adam P. Strochak

Attorneys for Reorganized Debtors

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-------------------------------------------------------------x
                          :

**In re**                        :          **Chapter 11 Case No.**
                          :

**LEXINGTON PRECISION CORP., et al.,**  :      **08-11153 (SCC)**
                          :

          **Reorganized Debtors.**    :      **(Jointly Administered)**
                          :
-------------------------------------------------------------x

## <u>DEBTORS' SECOND SET OF INTERROGATORIES TO LORRAINE CERIMELE</u>

Pursuant to Rule 33 of the Federal Rules of Civil Procedure (the "**Rules**"),

Lexington Precision Corporation and its wholly-owned subsidiary Lexington Rubber Group,

Inc., each as debtors and debtors-in-possession (together, the "**Debtors**"), serve the following

interrogatories (collectively, the "**Interrogatories**") on Lorraine Cerimele.[1]  Pursuant to Rule

7033-1 of the Local Bankruptcy Rules for the Southern District of New York, Lexington seeks

responses to the Interrogatories because this action has been pending for many years, discovery

commenced years ago, and interrogatories are a more practical way of obtaining the requested

information than by requests for production of documents or deposition.

## <u>DEFINITIONS</u>

The following definitions apply to these Interrogatories:

---

[1] Lorraine Cerimele filed proof of claim number 262 in the Debtors' chapter 11 cases.

US_ACTIVE:\43623455\02\26690.0008

1.      The words "you," "your," or "Plaintiff" as used herein refer to Lorraine Cerimele, and all persons acting or purporting to act on Plaintiff's behalf for any purpose whatsoever.

2.      "Lexington" refers to Debtors, collectively and individually.

3.      "Complaint" means Plaintiff's Amended Complaint filed on October 30, 2000.

4.      "Person" means any natural person, partnership, corporation, association or other business entity, or any government agency or other entity.

5.      "Relate to," "Relating to," and "regarding" mean constituting, comprising, concerning, containing, setting forth, showing, disclosing, describing, explaining, supporting, substantiating, summarizing or referring to, directly or indirectly, in whole or in part, and should be given the broadest possible construction consistent with the Rules.

6.      "Identify," when used in reference to a document, means, to the extent known, to state:

       a.      the general subject matter of the document;

       b.      the date of the document;

       c.      the author(s); addressee(s); and recipient(s) of the document;

       d.      type of document (i.e. , letter, memorandum, handwritten notes, receipt); and

       e.      the document's present location or custodian.

7.      "Identify," when used in reference to a person, means, to the extent known, to:

a.    state the person's full name and any other names by which he or he is known and to;

b.    state the person's current or last known home addresses and telephone numbers;

c.    state the person's current or last known employer, business address, telephone number, and job title;

d.    identify any written materials, including but not limited to reports, notes or memoranda prepared by the person or at his or his direction regarding or in any manner relating to the events described in the Petition in this action.

8.    "Describe," when used in reference to a communication or event, means, to the extent known, to:

a.     state the date of the communication or event;

b.    identify all persons who were present or participated in the communication or event;

c.    state in detail the substance of each communication or event;

d.    identify all documents relating to that communication or event, including but not limited to all letters, notes of the communication or event, or other correspondence;

e.    identify all other persons who have knowledge of the communication or event and state in detail each person's knowledge.

9.    "Describe the factual basis," means to give a complete factual summary, organized chronologically, which includes:

      a.      a description of all facts that support your answer;

      b.      a description of all communications, whether written or oral, that

support your answer;

      c.      the identity of all persons who have knowledge of any of the facts

that support your answer; and

      d.      a brief description of the facts known by each person.

10.      Where appropriate, the word "or" shall mean "and/or" and the word "and" shall also mean "and/or."

11.      Where appropriate, the word "each" shall include "every" and the word "every" shall include "each."

12.      Where appropriate, words in the singular shall include their plural, and words in the plural shall include their singular.

13.      Where appropriate, the masculine gender, when used herein, shall include the feminine and the neuter.

## INSTRUCTIONS

14.      If a request or interrogatory calls for disclosure of any information as to which you claim any privilege or protection as a ground for non-disclosure, furnish the following information with respect to each such request:

      a.      the nature of the privilege or protection claimed;

      b.      the type of document withheld, if any, and its date, title, length,

author(s) and recipient(s), the general subject matter of the information

withheld, and the identity of all persons who are privy to the information;

and

c.       such other information as will allow the court to determine the

validity of your claim of privilege or protection.

15.      In the event that you object to any of the Interrogatories set forth below on

the basis of a contention that it is overbroad for any reason, respond to that Interrogatory or

request as narrowed in such a way to render it not overbroad in your opinion, and state the extent

to which you have narrowed that response for purposes of your response.

16.      Lack of information or knowledge is not a proper response unless you

state that a reasonable inquiry was made but that the information known or easily obtainable is

insufficient to enable you to admit or deny.

17.      In the event that you discover any further information that should augment

or modify your answers or responses, you are to provide the same promptly after discovery.

18.      Your failure to respond to these Interrogatories as required by the Ohio

Rules of Civil Procedure within the time required may result in facts being deemed admitted

against you, the entry of judgment against you, the assessment of additional attorney's fees

against you, or other sanctions of the Court.

19.      These requests are continuing.

## INTERROGATORIES

**INTERROGATORY NO. 1.**       For each "Request for Admission" that you denied in whole
or part, please explain the factual basis of each and every denial below.

**ANSWER:**

**INTERROGATORY NO. 2.**        Identify any actions of Lexington that are the subject of your complaint that involved issues of  workplace safety and the factual basis for your beliefs.

> **ANSWER:**

**INTERROGATORY NO. 3.**        Describe any actions of Lexington that are the subject of your complaint that posed a risk of physical harm or injury to the public and the factual basis for your beliefs.

> **ANSWER:**

**INTERROGATORY NO. 4.**        Did you make any written or oral reports to a Lexington manager or supervisor regarding any of the alleged actions in Interrogatories 2 and 3?  If so, please identify the person to whom you made the report, the date on which it was made, whether it was written or oral, and the substance of the report.

> **ANSWER:**

**INTERROGATORY NO. 5.**        Regarding any alleged actions in Interrogatory 2 and 3, did you make any written or oral reports to the prosecuting authority of the county or municipal corporation where the alleged violation occurred, with a peace officer, with the inspector general, or with any other appropriate public official or agency that has regulatory authority over Lexington and the industry, trade, or business in which Lexington was engaged?  If the answer is

yes, please identify the official to whom you made the report, the date of the report, whether it was written or oral and the substance of the report.

      **ANSWER:**

**INTERROGATORY NO. 6.**      At any point before or after your complaints regarding Lexington's alleged unlawful conduct under O.R.C. § 4165.02, did you ever receive any verbal or written discipline or counseling regarding your conduct or performance during your employment with Lexington?

      **ANSWER:**

**INTERROGATORY NO. 7.**      Identify all conduct for which you were ever disciplined or counseled, including the dates, in regard to Interrogatory 6.

      **ANSWER:**

**INTERROGATORY NO. 8.**      Describe how you were informed of Lexington's decision to terminate your employment, including identifying anyone present at the meeting, any documents that you were presented, the reasons stated for your termination, and the content of any discussion that occurred.

      **ANSWER:**

**INTERROGATORY NO. 9.**        Describe the factual basis upon which you assert that you were not terminated by Lexington for a legitimate, non-retaliatory business reason.

    **ANSWER:**

**INTERROGATORY NO. 10.**        Describe every effort made to secure employment from December 1998 to the present, including each position applied for, the date of each application, the individuals with whom you communicated, and the manner of the communication.

    **ANSWER:**

**INTERROGATORY NO. 11.**        Identify every employment or independent contractor position (and please include full-time, part-time and temporary positions) that you have held since the time of your termination from Lexington and please include the name of your employer or contractor, the address and phone number of the location where you worked, your title(s), the dates of your employment, your annual compensation (including bonuses, overtime or other compensation), any benefits for which you were eligible, and the reason you left your position (if you are not longer employed).  Please identify your supervisor(s) at each position.

    **ANSWER:**

**INTERROGATORY NO. 12.**        Provide an itemized list of all income you have received from January 1999 to the present and the sources thereof.

    **ANSWER:**

**INTERROGATORY NO. 13.**        Please supplement each and every response to the interrogatories which were previously served in this action.

**ANSWER:**

Dated:  February 3, 2011
          New York, New York

                              /s/ Adam P. Strochak
                              Richard P. Krasnow
                              Adam P. Strochak

                              WEIL, GOTSHAL & MANGES LLP
                              767 Fifth Avenue
                              New York, New York  10153
                              Telephone:   (212) 310-8000
                              Facsimile:   (212) 310-8007

                              Attorneys for the Reorganized Debtors

**EXHIBIT B**

WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York  10153
Telephone:  (212) 3108000
Facsimile:  (212) 310~8007
Richard P. Krasnow
Adam P. Strochak Attorneys for the Reorganized Debtors

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-------------------------------------------------------------x
                                                :
In re                                           :        **Chapter 11 Case No.**
                                                :
**LEXINGTON PRECISION CORP., et al.,**          :        **08-11153 (SCC)**
                                                :
            **Reorganized Debtors.**            :        **(Jointly Administered)**
                                                :
-------------------------------------------------------------x

<div align="center">

**DEBTORS' REQUEST FOR PRODUCTION**
**OF DOCUMENT SERVED ON CLAIMANT, LORRAINE CERIMELE**

</div>

Pursuant to Rule 34 of the Federal Rules of Civil Procedure, Lexington Precision

Corporation and its wholly-owned subsidiary Lexington Rubber Group, Inc., each as debtors and

debtors-in-possession (together, the "**Debtors**") serve the following Requests for Production of

Documents on Lorraine Cerimele.[1]

<div align="center">

**DEFINITIONS**

</div>

1.       You" or "your" refers to Claimant, Lorraine Cerimele, and, where

applicable, agents or representatives of the Claimant, including attorneys.

2.       "Person" or "persons" means natural persons, firms, partnerships,

associations, joint ventures, corporations, or any other form of business organization or

arrangement.

3.       "Lexington" refers to Debtors, collectively and individually.

---

[1] Lorraine Cerimele filed proof of claim number 262 in the Debtors' chapter 11 cases.

4.    "Document" means any written, graphic, recorded or illustrative material of every kind and description, drafts and final version, originals and reproductions, signed or unsigned versions, however produced or reproduced, and regardless of whether approved, signed, sent, received, redrafted, or executed, prepared by or for, or in the possession, custody or control of you or any agents, employees, officers, attorneys, or other persons acting on your behalf including all information stored or transmitted electronically.

5.    "Relate to," "Relating to," and "regarding" mean constituting, comprising, concerning, containing, setting forth, showing, disclosing, describing, explaining, supporting, substantiating, summarizing or referring to, directly or indirectly, in whole or in part, and should be given the broadest possible construction consistent with the Rules.

6.    Where appropriate, the word "or" shall mean "and/or" and the word "and" shall also mean "and/or."

7.    Where appropriate, the word "each" shall include "every" and the word "every" shall include "each."

8.    Where appropriate, words in the singular shall include their plural, and words in the plural shall include their singular.

9.    Where appropriate, the masculine gender, when used herein, shall include the feminine and the neuter.

10.    "Ohio's Deceptive Trade Practices Act" refers to Ohio Revised Code§ 4165.02 and its subsections.

## **INSTRUCTIONS**

11.    If any documents requested herein have been lost, discarded, or destroyed, the document so lost, discarded, or destroyed shall be identified as completely as possible,

including the terms set forth in paragraph 5(a. – g.) above, and the following additional

information:

      a.      date of disposal or loss;

      b.      manner of disposal;

      c.      reason for disposal or explanation of loss;

      d.      person authorizing the disposal;

      e.      persons having knowledge of the disposal or loss; and

      f.      persons disposing of the document.

      12.      You are requested to produce all documents that are in your actual or

constructive possession, custody or control or that are in the possession, custody or control of

your attorneys, accountants, representatives, consultants, agents, employees, or anyone else

acting on your behalf.

      13.      You are requested to respond in writing and state as to each of the

requests:

      a.      that there are such documents and they will be produced;

      b.      that there are such documents but you refuse to produce them because of a
claim of privilege, or for some other reason, or

      c.      that there are no documents as are requested by the particular request

      14.      You are requested to identify and list in a Privilege Log all documents

called for by the Requests for Production that you withhold on the grounds of privilege or work

product protection.  All such documents shall be retained intact pending a ruling by the Court on

the claim of privilege.  Each document shall be identified by:

      d.      the names and titles of all authors and recipients;

      e.      the date the document was prepared;

f.  the name and title of each person who had access to or custody of the document;

g.  a general description of the subject matter and nature of the document;

h.  the present custodian;

i.  the subject matter and nature of the privilege claimed; and

j.  if the attorney-client privilege is claimed, the date when the alleged attorney-client relationship arose.

15.  In the event that you discover any document that should augment or modify your answers or responses, you are to provide the same promptly after discovery.

16.  Your failure to respond to these requests as required by the Ohio Rules of Civil Procedure within the time required may result in facts being deemed admitted against you, the entry of judgment against you, the assessment of additional attorney's fees against you, or other sanctions of the Court.

17.  These requests are continuing.

18.  If you have already provided responsive documents in your prior response, you are not required to produce it again.  Please refer to its bates number or other identifying information in your response.

## **REQUESTS FOR PRODUCTION OF DOCUMENTS**

19.  All Form W-2s, 1099s or Schedule Ks issued to you for years 1999 through present.

20.  All documents you have submitted to companies with which you have sought employment since December 17, 1998, including resumes, cover letters, and job applications.

21.  All documents that supplement your responses to Lexington's First Set of Requests for Production of Documents, which you served on Lexington on October 11, 2006.

22.     All written reports you submitted to Lexington, prosecuting authorities, peace officers, inspector generals, public officials, or agencies regarding Lexington's alleged violations of Ohio's Deceptive Trade Practices Act.

23.     Any and all documents showing that Lexington's alleged violation of Ohio's Deceptive Trade Practices Act was likely to cause an imminent risk of physical harm to persons.

24.     Any and all documents showing that Lexington's alleged violation of Ohio's Deceptive Trade Practices Act was likely to cause a hazard to public health or safety.

25.     Any statements or draft statements you provided to or received from the following individuals:  Kimberly Hunsbarger, Kathryn VanDyke, Deborah Roley, Christopher Sokal, Kenneth Mark Shane, Carolyn Belden, and Kathy Murphy.

26.     All communications between you and Kimberly Hunsbarger, Kathryn VanDyke, Deborah Roley, Christopher Sokal, Kenneth Mark Shane, Carolyn Belden, and/or Kathy Murphy that relate in any way to your employment with Lexington, your termination therefrom or this lawsuit.

27.     Any statements, draft statements, or affidavits you received from any person regarding your claim against Lexington or your allegation that Lexington violated Ohio's Deceptive Trade Practices Act.

28.     All documents that support any of your claims for damages of any nature.

29.     All documents that support your assertion that you were terminated in retaliation for your actions to bring to Lexington's attention your concerns about alleged violations of the Ohio Deceptive Trade Practices Act.

30.     If you have left any positions of employment since your termination from Lexington, provide all documents that refer or relate to the reasons that you left that employment position, including but not limited to, claims for unemployment, termination or resignation letters, or other communications that identify the reason for leaving employment.

31.     All documents that refer or relate to education or training programs in which you have enrolled or participated since your termination from Lexington.

32.     All communications that you have had with any person (other than counsel) that refer to or relate to the allegations in the lawsuit, your employment with Lexington or your termination therefrom.

33.     Any tax forms prepared for or by Plaintiff, including supporting documentation thereto.


Dated:  February 3, 2011
        New York, New York

<div style="margin-left:40%">

/s/ Adam P. Strochak
Richard P. Krasnow
Adam P. Strochak

WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York  10153
Telephone:   (212) 310-8000
Facsimile:   (212) 310-8007

Attorneys for the Reorganized Debtors

</div>

**EXHIBIT C**

WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007
Richard P. Krasnow
Adam P. Strochak

Attorneys for Reorganized Debtors

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-------------------------------------------------------------x
                                                             :
In re                                                        :        **Chapter 11 Case No.**
                                                             :
**LEXINGTON PRECISION CORP., et al.,**        :        **08-11153 (SCC)**
                                                             :
          **Reorganized Debtors.**                 :        **(Jointly Administered)**
                                                             :
-------------------------------------------------------------x

<div align="center">

**DEFENDANTS' SECOND REQUESTS FOR**
**ADMISSIONS SERVED ON CLAIMANT, LORRAINE CERIMELE**

</div>

          Pursuant to Rule 36 of the Federal Rules of Procedure, Lexington Precision

Corporation and its wholly-owned subsidiary Lexington Rubber Group, Inc., each as debtors and

debtors-in-possession (together, the "**Debtors**"), serve the following requests for admissions on

Lorraine Cerimele.[1]

<div align="center">

**DEFINITIONS**

</div>

          1.          "You" or "your" refers to Claimant, Lorraine Cerimele, and, where

applicable, agents or representatives of the Claimant, including attorneys.

          2.          "Person" or "persons" means natural persons, firms, partnerships,

associations, joint ventures, corporations, or any other form of business organization or

arrangement.

---

[1] Lorraine Cerimele filed proof of claim number 262 in the Debtors' chapter 11 cases.

3.      "Lexington" refers to Debtors, collectively and individually.

4.      Ohio Revised Code (O.R.C.) § 4165.02 and its subsections refer to

"Ohio"s Deceptive Trade Practices Act."

## INSTRUCTIONS

5.      Unless you state an objection or assert a privilege, you must specifically

admit or deny the request or explain in detail the reasons that you cannot admit or deny the

request. A response must fairly meet the substance of the request. You may qualify an answer, or

deny a request in part, only when good faith requires.

6.      If you do not admit the truth of the facts stated in the Requests for

Admissions, you must specifically deny the same or set forth in detail the reasons why you

cannot truthfully either admit or deny such statements of fact.

7.      Lack of information or knowledge is not a proper response unless you

state that a reasonable inquiry was made but that the information known or easily obtainable is

insufficient to enable you to admit or deny.

## REQUESTS FOR ADMISSIONS

8.      **ADMIT** that the only sections of O.R.C. § 4165.02 upon which you base

your claims against Lexington with regard to its products are §§ 4165.02(A)(2), 4165.02(A)(4),

4165.02(A)(7), 4165.02(A)(8), 4165.02(A)(9).

**ANSWER:**

9.      **ADMIT** that Lexington's alleged wrongdoing under § 4165.02 with

regard to its products did not involve workplace safety.

**ANSWER:**

10.     **ADMIT** that you never notified any Lexington manager or supervisor –
either orally or in writing – about any concerns of workplace safety related to Lexington's
alleged wrongdoing under O.R.C. § 4165.02.

**ANSWER:**

11.     **ADMIT** that Lexington's alleged violations of  O.R.C. § 4165.02 were not
likely to cause an imminent risk of physical harm to persons.

**ANSWER:**

12.     **ADMIT** that Lexington's alleged violations of O.R.C. § 4165.02 were not
likely to cause a hazard to public health or safety.

**ANSWER:**

13.     **ADMIT** that you were aware of cure time reductions being done without
customer knowledge.

**ANSWER:**

14.    **ADMIT** that you knowingly shipped parts that did not meet customer specifications.

**ANSWER:**

15.    **ADMIT** that you challenged various decisions made by Keith Blockinger, President of Lexington Connector Seals.

**ANSWER:**

16.    **ADMIT** that you and Mr. Blockinger argued about various decisions and issues.

**ANSWER:**

17.    **ADMIT** that you falsified paperwork in order to ship substandard products to Lexington's customers.

**ANSWER:**

18.    **ADMIT** that you supported the Quality Control Department by arguing with Mr. Blockinger over directions and decisions he made that were contrary to the position of the Quality Control Department.

**ANSWER:**

19.    **ADMIT** that many members of the Quality Control Department challenged Mr. Blockinger's decisions.

**ANSWER:**

20.    **ADMIT** that Deborah Roley argued with Mr. Blockinger.

**ANSWER:**

21.    **ADMIT** that you never submitted a written report to describe Lexington's alleged violations of O.R.C. § 4165.02 to any prosecuting authority of the state, county or municipality wherein the alleged violations occurred.

**ANSWER:**

22.    **ADMIT** that you never submitted a written report to describe Lexington's

alleged violation of O.R.C. §  4165.02 to the prosecuting authority of the state, county or

municipal corporation where the alleged violation occurred, with a peace officer, with the

inspector general, or with any other appropriate public official or agency that has regulatory

authority over Lexington and the industry, trade, or business in which Lexington was engaged.

**ANSWER:**


23.    **ADMIT** that you believe you were terminated as punishment for Mr.

Blockinger's decisions to ignore quality standards.

**ANSWER:**


24.    **ADMIT** that the clear public policy on which you bring your claim is

contained in Ohio Revised Code § 4165.02.

**ANSWER:**

25.    **ADMIT** that you and Mr. Blockinger had more than one discussion

regarding your job performance

**ANSWER:**

26.    **ADMIT** that Lexington warned you about its problems with your

performance prior to your complaints to Lexington about its product practices.

**ANSWER:**

27.    **ADMIT** that you and Mr. Blockinger met on November 20, 1997 at the

Tavern on the Green adjacent to the Avalon Resort in Warren, Ohio.

**ANSWER:**

28.    **ADMIT** that during the November 20, 1997 meeting, Mr. Blockinger

informed you that your job was in jeopardy and that you would need to make changes in your

performance.

**ANSWER:**

29.     **ADMIT** that the date on which your employment with Lexington was terminated was December 17, 1998.

**ANSWER:**

30.     **ADMIT** that after your termination with Lexington ended, various companies asked you to submit a resume to them.

**ANSWER:**

31.     **ADMIT** that you have failed to mitigate your damages since the time of your termination in 1998.

**ANSWER:**

32.     **ADMIT** that Lexington had a legitimate, non-retaliatory business justification for its decision to terminate your employment.

**ANSWER:**

Dated:  February 3, 2011
         New York, New York

                              /s/ Adam P. Strochak
                              Richard P. Krasnow
                              Adam P. Strochak

                              WEIL, GOTSHAL & MANGES LLP
                              767 Fifth Avenue
                              New York, New York  10153
                              Telephone:   (212) 310-8000
                              Facsimile:    (212) 310-8007

                              Attorneys for the Reorganized Debtors